UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

             EXCELL AUTO GROUP, INC.

                Debtor.

Case No.: 22-12790-EPK
Chapter 7

-------------------------------------------------------------------- /

NICOLE TESTA MEHDIPOUR, as Chapter 7 Trustee for
Excell Auto Group, Inc.

                Plaintiff.

          -v-

Adv. Pro. No. 23-01132-EPK

HI BAR CAPITAL, LLC, SPIN CAPITAL LLC,
YISROEL HERBST, MORDECHAI DOV BER
HERBST a/k/a MORDI HERBST, AVRUMI LUBIN
a/k/a JOSH LUBIN, FRANKLIN CAPITAL FUNDING,
LLC and FRANKLIN CAPITAL GROUP, LLC d/b/a
WING LAKE CAPITAL,

                Defendants.

-------------------------------------------------------------------- /

**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND
INCORPORATED MEMORANDUM OF LAW
<u>BY DEFENDANTS SPIN CAPITAL LLC AND AVRUMI LUBIN</u>**

<u>**TABLE OF CONTENTS**</u>

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................................ iii

INTRODUCTION ............................................................................................................................... 1

FACTS ................................................................................................................................................. 3

ARGUMENT ....................................................................................................................................... 6

   I.   The FAC Should Be Dismissed Under the Res Judicata and Collateral Estoppel
       Doctrines ............................................................................................................................. 6

i

II.   Plaintiff Lacks Standing Because the Debtor Has No Actual Damages from the Spin Contracts ................................................................................................ 10

III.  The FAC Is Barred by the Releases in the Debtor's Two Settlement Agreements .......... 11

IV.   The MCA Agreements Are Not Loans and Not Subject to New York Usury Laws ........ 14

    1.   The Spin and First Hi Bar Contracts Contain Mandatory Reconciliation and Adjustment Provisions ..................................................................... 16

    2.   The Spin Contracts Have No Fixed Duration ....................................................... 18

    3.   Bankruptcy Is Not an Event of Default.................................................................. 19

    4.   Plaintiff's Other Contentions that the Spin and First Hi Bar Contracts Are Loans Fail.................................................................................. 20

V.    Counts IV and IX for Declaratory Judgment Setting Aside the Spin Contracts Should Be Dismissed .................................................................................... 22

VI.   Counts I and II Concerning the Franklin Assignment and Balance Transfer Agreement Should Be Dismissed ......................................................................... 25

VII.  Counts X, XI, XII, XIII, XIV, XV, XVI Should Be Dismissed Because Plaintiff Admits that Spin Provided Adequate Consideration to the Debtor ................................ 27

CONCLUSION................................................................................................................. 31

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*2013 Funding LLC v. Park 91 LLC,*
    2013 N.Y. Slip Op. 32941(U) (N.Y. Co. Sup. Ct. Nov. 6, 2013) ...............................................24

*72nd Ninth LLC v. 753 Ninth Ave Realty LLC,*
    168 A.D.3d 597 (1st Dept. 2019) ...............................................................................................13

*AH Wines, Inc. v. C6 Capital Funding LLC,*
    208 A.D.3d 1623 (4th Dept. 2022), *app. dismissed* 2023 N.Y. Slip Op. 68543
    (N.Y. June 13, 2023) ....................................................................................................................22

*Alrai Naked Opportunity, LLC v. Naked Brand Grp. Ltd.,*
    2019 N.Y. Slip Op. 33241(U) (N.Y. Co. Sup. Ct. Oct. 30, 2019) ...........................................27

*Amsterdam Capital Sols. LLC v. Taylor Mgmt. Servs. LLC,*
    2023 N.Y. Misc. LEXIS 2365 (Monroe Co. Sup. Ct. May 15, 2023) ......................................17

*Bakst v. Levenson (In re Goldberg),*
    229 B.R. 877 (Bankr. S.D. Fla. 1998) .......................................................................................29

*Barrier Grp. Inc. v. BMF Advance LLC,*
    2023 N.Y. Misc. LEXIS 1032 (Orange Co. Sup. Ct. Mar. 15, 2023) ..........................14, 15, 18

*BMF Advance, LLC v. Litig. Practice Grp. PC,*
    2023 N.Y. Misc. LEXIS 993 (Kings Co. Sup. Ct. Feb. 24, 2023) ............................................15

*Brodsky v. N.Y.C. Campaign Fin. Bd.,*
    2023 U.S. App. LEXIS 10532 (2d Cir. May 1, 2023) ................................................................9

*Cash4Cases, Inc. v. Brunetti,*
    167 A.D.3d 448 (1st Dept. 2018) ...............................................................................................14

*Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.,*
    17 N.Y.3d 269 (2011) ............................................................................................................11, 12

*Champion Auto Sales, LLC v. Pearl Beta Funding LLC,*
    159 A.D.3d 507 (1st Dept. 2018) ...............................................................................................15

*Colonial Funding Network, Inc. v. Davincitek Corp.,*
    2021 N.Y. Slip Op. 30026(U) (N.Y. Co. Sup. Ct. 2021) ..........................................................16

*Command Components Corp. v. HWJ Eng'g & Surveying, PLLC*,
189 A.D.3d 990 (2d Dept. 2020) ........................................................................23

*Coots v. Chamberlain*,
39 Mich. 565 (1878) .................................................................................25, 26

*Ctr. Lane Partners III, L.P. v. Nature's Bounty Co.*,
193 A.D.3d 498 (1st Dept. 2021)...........................................................................11

*Da Silva v. Musso*,
76 N.Y.2d 436 (1990) ........................................................................................8

*Dabriel, Inc. v. First Paradise Theaters Corp.*,
99 A.D.3d 517 (1st Dept. 2012)...........................................................................23

*Dormescar v. Att'y Gen.*,
690 F.3d 1258 (11th Cir. 2012) ...........................................................................7

*FGH Contracting Co. v. Weiss*,
185 A.D.2d 969 (2d Dept. 1992) ........................................................................23

*Fleetwood Servs., LLC v. Ram Capital Funding, LLC*,
2022 U.S. Dist. LEXIS 148032 (S.D.N.Y. Aug. 17, 2022).......................................10

*Fleetwood Servs., LLC v. Richmond Capital Grp. LLC*,
2023 U.S. App. LEXIS 14241 (2d Cir. June 8, 2023) ...............................14, 15, 20

*Fox Capital Grp., Inc. v. Relik Realty, LLC*,
2023 N.Y. Slip Op. 32444(U) (Nassau Co. Sup. Ct. July 14, 2023) .......................22

*Funderburk v. Snyder*,
2023 U.S. Dist. LEXIS 51717 (S.D. Fla. Mar. 27, 2023).......................................10

*Genaro Partners, Inc. v. Somwaru*,
200 A.D.3d 858 (2d Dept. 2021) ..........................................................................8

*Gillman v. Chase Manhattan Bank*,
73 N.Y.2d 1 (1988) .........................................................................................23

*Giventer v. Arnow*,
37 N.Y.2d 305 (1975).......................................................................................14

*Hi Bar Capital, LLC v. Excell Auto Grp., Inc.*,
2023 N.Y. Slip Op. 31593(U) (Kings Co. Sup. Ct.2023).............................1, 14, 15

*Hilliard v. Gutierrez*,
2021 U.S. Dist. LEXIS 123079 (S.D. Fla. July 1, 2021).......................................9

*Hooker v. Sec'y U.S. Dep't of Veterans Affairs*,
    607 F. App'x 918 (11th Cir. 2015) ...................................................................................7, 9

*HSBC Bank USA, N.A. v. Campos*,
    2017 N.Y. Slip Op. 50695(U) (Queens Co. Sup. Ct. May 15, 2017) ....................................24

*IBIS Capital Group, LLC v. Four Paws Orlando LLC*,
    2017 N.Y. Misc. LEXIS 884 (Nassau Co. Sup. Ct. Mar. 10, 2017)................................16, 19

*John v. Whiteacre Funding, LLC*,
    2016 N.Y. Slip Op. 31234(U) (Kings Co. Sup. Ct. June 17, 2016)........................................24

*In re Jurgens*,
    780 F. App'x 839 (11th Cir. 2019) .........................................................................................7

*Kapila v. TD Bank, N.A. (In re Pearlman)*,
    440 B.R. 900 (Bankr. M.D. Fla. 2010) .................................................................................29

*Kennard Law P.C. v. High Speed Capital LLC*,
    199 A.D.3d 1406 (4th Dept. 2021), (Erie Co. Sup. Ct. 2020) ...............................................14

*Kizzire v. Baptist Health Sys.*,
    441 F.3d 1306 (11th Cir. 2006) ...............................................................................................7

*Lateral Recovery, LLC v. Capital Merch. Servs., LLC*,
    2022 U.S. Dist. LEXIS 181044 (S.D.N.Y. Sep. 30, 2022).....................................................17

*LG Funding, LLC v. Johnson & Son Locksmith, Inc.*,
    170 A.D.3d 1153 (2d Dept. 2019) ..........................................................................................24

*LG Funding, LLC v. United Senior Props. of Olathe, LLC*,
    181 A.D.3d 664 (2d Dept. 2020) ......................................................................................14, 22

*MatlinPatterson ATA Holdings LLC v. Federal Express Corp.*,
    87 A.D.3d 836 (1st Dept. 2011)..............................................................................................27

*MCA Master Fund (MMF) v. Universal Scrap Motors Inc.*,
    2021 N.Y. Slip Op. 30097(U) (Nassau Co. Sup. Ct. Jan. 14, 2021)................................18, 22

*Merchant Cash & Capital, LLC v. Cramer E. Constr. LLC*,
    2016 N.Y. Misc. LEXIS 4647 (Nassau Co. Sup. Ct. Nov. 4, 2016)......................................18

*Migra v. Warren City Sch. Dist. Bd. of Educ.*,
    465 U.S. 75 (1984)...................................................................................................................6

*Montana v. United States*,
    440 U.S. 147 (1979).................................................................................................................6

*New York v. Mt. Tobacco Co.*,
   942 F.3d 536 (2d Cir. 2019)..................................................................................7, 9

*NewCo Capital Grp. VI LLC v. ERS Homes LLC*,
   2023 N.Y. Misc. LEXIS 1157 (Monroe Co. Sup. Ct. Mar. 22, 2023)................................17, 18

*NY Capital Asset Corp. v. F & B Fuel Oil Co., Inc.*,
   58 Misc. 3d 1229(A) (Westchester Co. Sup. Ct. Mar. 8, 2018) ................................................18

*OriginClear Inc. v. GTR Source, LLC*,
   2021 U.S. Dist. LEXIS 239013 (W.D.N.Y. Dec. 14, 2021)................................................11, 21

*Palms of Destin Club, LLC v. Commc'ns Processing Sys., Inc.*,
   2022 U.S. App. LEXIS 2931 (11th Cir. Feb. 1, 2022) ............................................................8

*Parkside Funding Grp., LLC v. Middlebury Chiropractic, PLC*,
   2023 N.Y. Misc. LEXIS 2247 (Kings Co. Sup. Ct. May 9, 2023) ..........................................21

*Paycation Travel v. Glob. Merch. Cash*,
   192 A.D.3d 1040 (2d Dept. 2021) ....................................................................................22

*Pearl Delta Funding, LLC v. Superior Contracting & Restoration, Inc.*,
   2022 N.Y. Misc. LEXIS 6038 (Nassau Co. Sup. Ct. Sep. 13, 2022)......................................19

*People v. Richmond Capital Grp. LLC*,
   2023 N.Y. Slip Op. 50975(U) (N.Y. Co. Sup. Ct. Sep. 15, 2023)............................................10

*Perkins v. Haines*,
   661 F.3d 623 (11th Cir. 2011) ..............................................................................................30

*Perkins v. Suburban Mobility Auth.*,
   2022 Mich. App. LEXIS 5256 (Mich. App. Ct. Sept. 1, 2022)..............................................25

*Pirs Capital, LLC v. D & M Truck, Tire & Trailer Repair Inc.*,
   69 Misc. 3d 457 (N.Y. Co. Sup. Ct. 2020) ..........................................................................22

*Plaza PH2001 LLC v. Plaza Residential Owner LP*,
   98 A.D.3d 89 (1st Dept. 2012)..............................................................................................8

*Price v. Haynes*,
   37 Mich. 487 (1877) ............................................................................................................25

*Principis Capital, LLC v. I Do, Inc.*,
   201 A.D.3d 752 (2d Dept. 2022) .................................................................................. *passim*

*Progressive Water Treatment Inc. v. Yellowstone Capital, LLC.*
   2021 N.Y. Misc. LEXIS 5 (Erie Co. Sup. Ct. Jan. 4, 2021) ....................................................11

*Prospect St. Ventures I, LLC v. Eclipsys Sols. Corp.*,
    23 A.D.3d 213 (1st Dept. 2005)........................................................................................27

*PSN Liquidating Tr. v. Intelsat Corp. (In re PSN USA, Inc.)*,
    615 F. App'x 925 (11th Cir. 2015) ...................................................................................28

*Quicksilver Capital LLC v. Obioha*,
    2020 N.Y. Slip Op. 31321(U) (N.Y. Co. Sup. Ct. May 11, 2020) .........................................16

*Roopchand v. Mohammed*,
    154 A.D.3d 986 (2d Dept. 2017) .......................................................................................14

*Samson MCA LLC v. Joseph A. Russo M.D. P.C.*,
    2023 N.Y. Slip Op. 04271 (4th Dept. 2023)................................................................ *passim*

*Seabrook Funding, Inc. v. Behavioral Servs. of Nev. LLC*,
    2023 N.Y. Misc. LEXIS 1649 (Kings Co. Sup. Ct. Apr. 4, 2023) ..........................................21

*Soifer v. Bozarth (In re Lydia Cladek, Inc.)*,
    494 B.R. 555 (Bankr. M.D. Fla. 2013) ...............................................................................30

*Spin Capital, LLC v. Golden Foothill Ins. Servs., LLC*,
    2023 N.Y. Slip Op. 30594(U) (N.Y. Co. Sup. Ct. Feb. 28, 2023)..............................13, 20, 21

*Spin Capital, LLC v. Golden Foothill Ins. Servs., LLC*,
    2023 N.Y. Slip Op. 30594(U) (N.Y. Co. Sup. Ct. Feb. 28, 2023)............................................15

*Spin Capital v. Tex. Med. Ctr. Supply, LLC*,
    2022 N.Y. Slip Op. 32914(U) (Ontario Co. Sup. Ct. Aug. 29, 2022) ....................................15

*Spin Capital v. Tex. Med. Ctr. Supply, LLC*,
    2022 N.Y. Slip Op. 32914(U) (Ontario Co. Sup. Ct. Aug. 29, 2022) ....................................24

*Star Funding, Inc. v. Vault Minerals, LLC*,
    2018 U.S. Dist. LEXIS 51930 (S.D.N.Y. Mar. 26, 2018) .......................................................13

*Stevens v. Town of Chenango (Forks)*,
    167 A.D.3d 1105 (3d Dept. 2018) .......................................................................................12

*Streamlined Consultants, Inc. v. EBF Holdings LLC*,
    2022 U.S. Dist. LEXIS 171085 (S.D.N.Y. Sep. 20, 2022)................................................ *passim*

*Streamlined Consultants, Inc. v. EBF Holdings, LLC*,
    2023 U.S. Dist. LEXIS 159199 (S.D.N.Y. Sep. 8, 2023).........................................................2

*Tal Props. of Pomona, LLC v. Vill. of Pomona*,
    2023 U.S. App. LEXIS 8825 (2d Cir. Apr. 13, 2023) .............................................................8

*Tender Loving Care Homes Inc. v. Reliable Fast Cash, LLC*,
  76 Misc. 3d 314 (Richmond Co. Sup. Ct. 2022)........................................................23

*Turner v Williams*,
  65 F.4th 564 (11th Cir 2023) .....................................................................................10

*United States Info. Grp. LLC v. EBF Holdings, LLC*,
  2023 U.S. Dist. LEXIS 169605 (S.D.N.Y. Sep. 22, 2023)..............................15, 17

*Vernon Capital Grp. LLC v. Walnut Spring Farms L.L.C.*,
  2022 N.Y. Slip Op. 32731(U) (Kings Co. Sup. Ct. Aug. 12, 2022) .........................18

*Wiand v. Lee*,
  753 F.3d 1194 (11th Cir. 2014) .................................................................................29

*Williams v. City of N.Y.*,
  2015 U.S. Dist. LEXIS 136170 (E.D.N.Y. Oct. 5, 2015)..........................................13

*Wilson v. Dantas*,
  29 N.Y.3d 1051 (2017) ..............................................................................................26

*Womack v. Capital Stack, LLC*,
  2019 U.S. Dist. LEXIS 148644 (S.D.N.Y. 2019).....................................................21

*Zen Grp., Inc. v. Fla. Agency for Health Care Admin.*,
  80 F.4th 1319 (11th Cir. 2023) ..................................................................................10

**Statutes**

11 U.S.C. § 548(a)(1)(A) ...............................................................................................28

11 U.S.C. § 548(a)(1)(B) ...............................................................................................27

11 U.S.C. §548(c) ..........................................................................................................30

18 U.S.C. § 1964(c) .......................................................................................................10

Fla. Stat. § 726.105(1)(a) ....................................................................................27, 28, 29

Fla. Stat. § 726.105(1)(b) ...............................................................................................27

Fla. Stat. § 726.106(1).....................................................................................................27

Fla. Stat. § 726.109(1).....................................................................................................30

N.Y. Bank. L. § 6-l .........................................................................................................24

N.Y. Gen. Oblig. L. § 5-501(6)(b).................................................................................3, 13

ix

N.Y. Gen. Oblig. L. § 5-521 ...................................................................................................22

N.Y. Penal L. § 190.40 .................................................................................................14, 22

Defendants Spin Capital LLC ("Spin") and Avrumi Lubin ("Lubin") (collectively, "Spin Defendants"), hereby move to dismiss the First Amended Complaint dated September 11, 2023 (Dkt. No. 17) ("FAC").[1] Plaintiff, as Chapter 7 Trustee for Excell Auto Group, Inc. ("Debtor"), seeks to re-litigate issues of New York law that were adversely determined to thirteen affiliates of the Debtor ("Debtor Affiliates") in *Hi Bar Capital LLC v. Excell Auto Group et al.,* N.Y. Sup. Kings Co. Index No. 502846/2022 ("New York Action").[2] Plaintiff's claims are barred under the principles of *res judicata* and collateral estoppel, because Plaintiff lacks standing, and the FAC fails to state a cause of action.

## INTRODUCTION

This litigation against the Spin Defendants is absolutely senseless and serves no benefit to the Debtor or its creditors since neither Spin (which entered the three "Spin Contracts" with the Debtor and the Debtor Affiliates) nor co-Defendant Hi Bar Capital LLC ("Hi Bar"; which entered the "First Hi Bar Contract" and two settlement agreements between Hi Bar and the Debtor Affiliates) have filed claims in the Debtor's bankruptcy or are otherwise pursuing the Debtor to enforce any obligation. Furthermore, the Debtor has been the "net winner" from its transactions with Spin since Plaintiff admits the Debtor actually received $2,564,437.50 from Spin, but only paid over the sum of $2,381,625.00 (or a net gain to the Debtor of $182,812.50). FAC ¶ 172. Plaintiff stands to gain nothing from setting aside these agreements because the Debtor has no exposure thereunder nor does Plaintiff have any likelihood of a financial recovery from the Spin Defendants. Putting aside the senseless waste of resources in this litigation, the FAC as against the Spin Defendants should be dismissed for a host of reasons.

First, the New York court (i) granted summary judgment to Hi Bar, enforcing a certain receivables purchase agreement (also known as "merchant cash advance" or "MCA" agreement), identified as the "First Hi Bar Contract" (identified at FAC ¶ 113, Exh. I) and two settlement agreements between Hi Bar and the Debtor Affiliates, and the Debtor's principals Kristin Zankl

---

[1] The FAC [D.E. 17] and its exhibits are referred to in the accompanying Declaration of Jacob H. Nemon, Esq. ("Nemon Decl.") attached hereto as Exhibit 1. "Exh. __" references below are to the Nemon Decl., unless indicated that it is to an exhibit to the FAC itself.

[2] The Debtor Affiliates include Karma of Palm Beach, Inc., Automotive Service Systems, Inc., KZ Consultants, Inc., Miss Kriss, LLC, Excell Auto Leasing Inc., Excell Auto Wholesale Inc., Dealer Souq USA LLC, EAG Wholesale LLC, Karma of Broward, Inc., Lavish Hero Fund, Apple 3 Investments, Inc., KZ Consultants Inc. and Excell Auto Sport and Services Inc. The May 11, 2023, decision in the New York Action is available at *Hi Bar Capital, LLC v. Excell Auto Grp., Inc.*, 2023 N.Y. Slip Op. 31593(U) (Kings Co. Sup. Ct.2023).

1

and Scott Thomas Zankl (the "Zankls"), and (ii) dismissed the Debtor Affiliates' counterclaims based upon lack of consideration, fraudulent inducement, criminal usury and unjust enrichment related to the very transactions at issue in this action, including without limitation the three nearly identical "Spin Contracts" (identified at FAC ¶¶ 27, 46, 40, Exhs. E, F). Plaintiff steps into the Debtor's shoes to relitigate the issues actually litigated in the New York Action, and determined on the merits against the Debtor Affiliates, based upon the same transactions and which could have been litigated in the New York Action. Under New York's transactional approach to *res judicata*, asserting different legal theories (such as RICO, declaratory judgment and fraudulent conveyance claims) solely on behalf of the Debtor, rather than the Debtor Affiliates (who were in privity with the Debtor), does not avoid the doctrine's application.[3]

Second, the Complaint should be dismissed for lack of standing because Plaintiff fails to plead that the Debtor suffered an injury-in-fact on account of the Spin Contracts. Plaintiff admits the *Debtor actually netted a gain of $182,812.50* from the amount advanced by Spin with respect to the three contracts. But even if not barred by *res judicata* and collateral estoppel and Plaintiff had standing, the FAC fails to state a cause of action as to the Spin Defendants.

Third, the FAC is barred by the releases in two settlement agreements executed by the Debtor in favor of the "affiliates," "related entities," "representatives" and "agents" of Hi Bar— which under Plaintiff's allegations (which are accepted as true solely for the purpose of this Motion), covers the Spin Defendants, due to their alleged involvement in Hi Bar's dealings with the Debtor Affiliates.

Fourth, Counts IV-VIII fail because they are predicated upon the argument that the underlying contracts are criminally usurious under New York law. However, it is clear under New York law that the Spin Contracts and the First Hi Bar Contract are purchases of future receivables, not loans, and therefore not subject to New York's criminal usury law. This was recently reaffirmed by a New York appellate court considering identical contractual forms as those used by Spin and Hi Bar in *Samson MCA LLC v. Joseph A. Russo M.D. P.C.*, 2023 N.Y. Slip Op. 04271, ¶ 2 (4th Dept. 2023).[4] Separately, the two settlement agreements are exempt from New York's

---

[3] This is not dissimilar to the conduct in *Streamlined Consultants, Inc. v. EBF Holdings, LLC*, 2023 U.S. Dist. LEXIS 159199, at *32-34 (S.D.N.Y. Sep. 8, 2023) ("*Streamlined II*"), which dismissed an action and imposing Rule 11 sanctions on merchant and its counsel for filing an amended complaint asserting RICO causes of action after the court previously determined as a matter of law that the MCA agreement was not a usurious loan.

[4] *Id.* (holding that "plaintiff established as a matter of law that the agreements were revenue purchase agreements rather than loans" where "the agreements submitted by plaintiff contained reconciliation provisions requiring the

2

usury law because each had face values in excess of $2.5 million. N.Y. Gen. Oblig. Law § 5-501(6)(b).

Fifth, Counts IV and IX (declaratory relief) fail to state a claim because under applicable New York law there can be no affirmative declaratory judgment claim for criminal usury, just an affirmative defense in a collections action. Furthermore, Count IX (unconscionability) fails because it fails to allege the element of "procedural unconscionability," and, separately, fails to allege any substantive terms that would render such agreements "substantively unconscionable."

Sixth, Courts I, II and XXVII asserting essentially that Spin's execution of the Assignment of Obligations and Merchant Documents dated November 1, 2021 (FAC, Exh. L) ("Franklin Assignment") between Spin and co-Defendants Franklin Capital Funding LLC and Franklin Capital Group LLC (together "Franklin")[5] somehow waived the $2,114,312.50 balance of the "Third Spin Contract," should be dismissed because the Franklin Assignment by its own terms is limited to the First and Second Spin Contracts, not any other obligations between Spin and the Debtor Parties.  Spin made no clear and unambiguous representation to Franklin (a sophisticated lender), let alone to the Debtor—who contemporaneously signed the Hi Bar Balance Transfer Agreement acknowledging the balance—that there was no balance under the Third Spin Contract.

Seventh, Counts X-XVI, which assert federal bankruptcy and Florida state law claims for intentional and constructive fraudulent conveyance, must be dismissed because Plaintiff admits Spin gave "reasonably equivalent value" to the Debtor (and even lost money).  Even if Plaintiff's generalized allegations that the Debtor was engaged in a Ponzi scheme are credited for the purpose of this motion, there can be no intentional fraudulent conveyance claim against Spin, which gave the Debtor a net gain of $182,812.50 (making it a "net winner" from the alleged Ponzi scheme).

## FACTS

The facts alleged in the FAC are deemed true for the purpose of the motion, except to the extent that they are implausible or contradicted by documentary evidence attached to the FAC or in the record of the New York Action.

---

adjustment of the remittance amount upon request based on changes to the entity defendants' revenues, and had no finite term and no payment schedule"), *affirming* 2022 N.Y. Misc. LEXIS 1127, at *7 (Ontario Co. Sup. Ct. Apr. 1, 2022) (quoting in full the identical reconciliation and adjustment provisions as in paragraphs 1.3 and 1.4 of the Spin Contracts and First Hi Bar Contracts and granting summary judgment dismissing usury defense).

[5] It is not apparent why Plaintiff has taken up Franklin's cause, or how doing Franklin's bidding would serve to benefit the creditors of the Debtor (since neither Spin nor Hi Bar have filed claims in this bankruptcy).

On January 28, 2022, Hi Bar sought to enforce the "First Settlement Agreement" (referenced at FAC ¶ 166, Exh. J) in the New York Action, by filing its summons and complaint. FAC ¶ 179; Exh. C. On February 2, 2022, the Debtor, Debtor Affiliates and Zankls (together, the "Debtor Parties") entered into the "Second Settlement Agreement" with Hi Bar. FAC ¶ 181, Exh. K. On March 7, 2022, Hi Bar filed a motion for a default judgment against the Debtor Parties' upon their failure to make timely payment under the Second Settlement Agreement. Exh. B (New York Action Docket) at 16-24.

On March 18, 2022, the Debtor Parties filed an amended answer and counterclaims ("New York Counterclaims") against Hi Bar, asserting causes of action based upon lack of consideration, fraudulent inducement, criminal usury and unjust enrichment. Exh. F. The New York Counterclaims specifically referenced the *alleged conduct of the Spin Defendants* in (a) entering the three Spin Contracts, not obtaining information concerning the Debtor's actual receivables, receiving payments from the Debtor and effectively entering into loan agreements (*id.* ¶¶ 7-18), (b) representing to Franklin in late October 2021 that the Debtor's obligations to Spin had been satisfied (*id.* ¶¶ 19-20), (c) negotiating with the Debtor Parties to enter the First Hi Bar Agreement for a (*id.* ¶¶ 20-26), and (d) transferring the Spin balance to Hi Bar without providing additional funds to the Debtor (*id.* ¶¶ 25-30). That same date, the Debtor Parties also filed a third-party complaint *against Spin* in the New York action, that sought to invalidate the Third Spin Contract and First Hi Bar Contract, based on theories of fraudulent inducement and criminal usury. Exh. G. Those are the same issues and facts underlying the claims in this action.

On April 6, 2022, Hi Bar filed a motion for summary judgment and to dismiss the New York Counterclaims. Exh. B at 57-70. On August 10, 2022, the Debtor Parties filed opposition to Hi Bar's motion for default judgment (*id.* at 98-104), and on September 14, 2022, they filed opposition to Hi Bar's motion for summary judgment (*id.* at 108-122).

On October 26, 2022, Plaintiff as the Debtor's trustee entered a stipulation together **with Hi Bar only**, to discontinue the New York Action as against **the Debtor only**, and agreed that "Neither the Excell Trustee nor the Excell Estate (i) is in privity with any of the remaining defendants in the above-entitled action, and (ii) has, or will have, a full and fair opportunity to litigate in the above-entitled action." Exh. H. However, the Spin Defendants—despite being parties to the New York Action—did not execute the stipulation and are not bound by it. *See id.*

On January 13, 2023, the New York court issued a decision. Exh. I. It denied Hi Bar's motion for a default judgment and stayed Spin's motion to dismiss. *Id.* at 4. It also denied Hi Bar's motion seeking summary judgment on its affirmative claim, because the court initially believed there was a question of fact concerning usury *in the First and Second Settlement Agreements* (but not the *First Hi Bar Agreement*, which it held was not a loan):

> While the parties' initial Purchase Agreement indicates that the transaction was not a loan for the reasons expounded by plaintiff, plaintiff fails to demonstrate that the parties' subsequent agreements should be treated the same way given the absence of a mandatory reconciliation provision and the existence of finite terms for repayment contained in the Settlement Agreement and Stipulation (*see Principis Capital, LLC v I Do, Inc.*, 201 AD3d 752, 754 [2d Dept 2022] … ).

*Id.* Nonetheless, the court dismissed each of the New York Counterclaims for criminal usury, fraudulent inducement, lack of consideration and unjust enrichment. *Id.* at 5-6. It also held:

> [D]efendants do not have a viable claim for fraudulent inducement as the alleged misrepresentation, that defendant would be executing a "no-net refinance" of Spin's loan with no increase in principal, is directly contradicted by the Purchase Agreement's express terms which clearly reflect that the outstanding balance is increased. As such, defendants cannot claim to have reasonably relied upon a representation that is directly contradicted by the Purchase Agreement.

*Id.* at 5.

On February 10, 2023, Hi Bar moved for reargument of its motion for summary judgment on its affirmative claims. Exh. B at 153-154. On April 17, 2023, the Debtor Affiliates and Zankls cross-moved for reargument of the summary judgment decision dismissing the New York Counterclaims. *Id.* at 164-165.

On May 11, 2023, the New York court granted Hi Bar's motion for reargument and determined that the First and Second Settlement Agreements were not usurious because the criminal usury law does not apply even to loans if they have a face value of over $2.5 million:

> [E]ven if the subject transactions are viewed as loans, the usury statute does not apply to loans that are for amounts greater than $2.5 million (*see* General Obligations Law $ 5-501 [6] [b]); see also 72nd Ninth LLC v 753 Ninth Ave Realty LLC, 168 AD3d 597, 598 1st Dept 2019]). Here, the agreements at issue—the Purchase Agreement, Settlement Agreement and Stipulation—concern amounts greater than $2.5 million. As such, defendants' defense of criminal usury fails as a matter of law.

Exh. J. The court further denied the Debtor Affiliates' and Zankls' cross-motion, determining it had not overlooked or misapprehended the facts or law in its earlier decision dismissing the New York counterclaims.

On June 8, 2023, the Debtor Affiliates and Zankls filed *a second motion for reargument*— effectively their third bite at the apple. Exh. B at 190-191. However, on August 10, 2023, the New York court denied their motion as procedurally defective, but stated the motion would still be denied on substantive grounds:

> Here, defendants contend that the court, by finding that a criminal usury defense did not apply to the subject "loan" insofar as it exceeded $2.5 million, mistakenly conflated individual usurious loans to constitute one aggregate loan. The court notes, however, that this argument was not raised by defendants in the underlying briefs resulting in the Previous Decision. Thus, defendants' motion to reargue the previous motion on such basis must be denied.

> Even if the court considered defendants' new argument, defendants fail to demonstrate that the Purchase Agreement, which is the only agreement that arguably relates to an amount less than $2.5 million, is subject to New York's usury laws. As indicated in the Previous Decision, the Purchase Agreement concerned a purchase and sale of receivables whereby plaintiff agreed to purchase $3,177,880 of defendants' future receivables for an upfront purchase price of $2,120,000. Defendants fail to show or argue that this court's finding that the Purchase Agreement did not constitute a loan under *Principis* was erroneous.

Exh. K. On September 14, 2023, a judgment in the amount of $3,136,071.44 was entered in the New York Action in favor of Hi Bar and against the Debtor Affiliates and Zankls. Exh. L. The Judgment further dismissed each of the New York Counterclaims. *Id*.

**ARGUMENT**

I.     **The FAC Should Be Dismissed Under the Res Judicata and Collateral Estoppel Doctrines**

The judgment entered in the New York Action is *res judicata* and collateral estoppel, baring all counts against the Spin Defendants. The doctrine of *res judicata*, or claim preclusion, refers to "the preclusive effect of a judgment in foreclosing relitigation of matters that should have been raised in an earlier suit." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984). "A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction … cannot be disputed in a subsequent suit between the same parties *or their privies*." *Montana v. United States*, 440 U.S. 147, 153 (1979) (citations omitted; emphasis supplied). In the Eleventh Circuit:

> As a general rule, [r]es judicata bars the filing of claims *which were raised or could have been raised in an earlier proceeding*. A party asserting res judicata bears the burden of showing these elements: (1) the prior decision must have been rendered

6

by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action. Only if all four of those requirements are met do we consider whether the claim in the new suit was or could have been raised in the prior action; if the answer is yes, res judicata applies.

*Dormescar v. Att'y Gen.*, 690 F.3d 1258, 1268 (11th Cir. 2012) (citations and quotation marks omitted); *accord In re Jurgens*, 780 F. App'x 839, 841 (11th Cir. 2019); *Hooker v. Sec'y U.S. Dep't of Veterans Affairs*, 607 F. App'x 918, 920 (11th Cir. 2015).

The court looks to the *res judicata* principles of the state where the judgment was issued to determine its preclusive effect. *Kizzire v. Baptist Health Sys.*, 441 F.3d 1306, 1308 (11th Cir. 2006) ("When we are 'asked to give *res judicata* effect to a state court judgment, [we] must apply the *res judicata* principles of the law of the sate whose decision is set up as a bar to further litigation.'") (quoting *Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1509 (11th Cir. 1985)). Under New York's transactional approach to *res judicata*, "all other claims arising out of the same transaction or series of transactions are barred, even if they are based on different legal theories or seek different remedies." *New York v. Mt. Tobacco Co.*, 942 F.3d 536, 543 (2d Cir. 2019). Each element for *res judicata* under Eleventh Circuit and New York precedent is met here.

First, the New York court is a court of competent jurisdiction over disputes between Hi Bar and the Spin Defendants, on the one hand, and the Debtor Parties, on the other hand, since each of the First Hi Bar Agreement (¶ 4.5), First Settlement Agreement (¶ 8), Second Settlement Agreement (¶ 8) and Spin Contracts (¶ 4.5) contain New York choice-of-venue and choice-of-law provisions.  Indeed, the Debtor Parties affirmatively accepted jurisdiction of the New York court (and applicability of New York law)[6] by interposing the New York Counterclaims and third-party complaint against Spin.  Although Debtor's bankruptcy filing deprived the New York court of jurisdiction with respect to Debtor, it did not do so with respect to the Debtor Affiliates and Zankls, who proceeded in the New York Action (and lost on the merits).

Second, a final judgment on the merits dismissing the New York Counterclaims—which were based on theories of lack of consideration, fraudulent inducement, criminal usury and unjust

---

[6] Although the FAC variously argues that the contracts violate "Florida law or New York law" (FAC ¶¶ 33, 38, 45, 50, 87, 121, 160, 170, 183, 206, 209, 211, 213, 214, 215, 220, 222, 225, 226, 227, 370, 372 ), it elsewhere claims solely violations of New York law (*id.* ¶¶ 276, 280, 359, 360, 363, 481), but it never claims only Florida law applies to any claims. But Plaintiff presents no allegation for why Florida, rather than New York, law should apply when the parties all agreed that it would apply.

enrichment—was entered on September 14, 2023. Exh. L. Under New York law, a "final judgment or order represents a valid and conclusive adjudication of the parties' substantive rights, unless and until it is overturned on appeal." *Da Silva v. Musso*, 76 N.Y.2d 436, 440 (1990). Moreover, under New York law, even a mere order granting summary judgment has *res judicata* effect. *Genaro Partners, Inc. v. Somwaru*, 200 A.D.3d 858, 860 (2d Dept. 2021); *Plaza PH2001 LLC v. Plaza Residential Owner LP*, 98 A.D.3d 89, 98 (1st Dept. 2012).

Third, the New York Action involved the privies of the Debtor and alleged privies of the Spin Defendants. Exact identity of the parties is not required:

> Under the third element of res judicata, if the cases do not involve the same parties, res judicata may still bar a subsequent action when a party in the new suit is in privity with one involved in the prior decision. Privity is defined as a relationship between one who is a party of record and a nonparty that is sufficiently close so a judgment for or against the party should bind or protect the nonparty. Privity exists where the nonparty's interests were represented adequately by the party in the original suit. Privity also exists where a party to the original suit is so closely aligned to a nonparty's interest as to be his virtual representative.

*Palms of Destin Club, LLC v. Commc'ns Processing Sys., Inc.*, 2022 U.S. App. LEXIS 2931, at *11 (11th Cir. Feb. 1, 2022); *accord Tal Props. of Pomona, LLC v. Vill. of Pomona*, 2023 U.S. App. LEXIS 8825, at *7 (2d Cir. Apr. 13, 2023) ("Literal privity is not a requirement for *res judicata* to apply; rather, the Court must engage in a functional inquiry to determine whether the parties' interests were adequately represented by another vested with the authority of representation.").

Here, there is privity between the Debtor and the Zankls, since the original Complaint alleges "Scott Zankl was the president of the Debtor" and "[a]t all times relevant, Kristen Zankl was a shareholder of the Debtor." Dkt. No. 1 ¶¶ 11, 25. The FAC omits those allegations, but alleges "Scott Zankl … was primarily responsible for running the day-to-day operations of the Debtor." FAC ¶ 19. Moreover, the Debtor Affiliates were co-privies to the First Hi Bar Agreement, First Settlement Agreement, Second Settlement Agreement and Spin Contracts and are described in the FAC as "*related* non-debtor entities" and "entities in which Scott and Kristen Zankl had an ownership interest." *Id.* ¶¶ 36, 171 (emphases supplied).[7] The FAC alleges privity between the Spin Defendants and Hi Bar, since it alleges that Lubin (the president of Spin):

---

[7] Although Hi Bar and Plaintiff entered a stipulation in the New York action purporting to agree that Plaintiff and the Debtor's estate are not in privity with the Debtor Affiliates, that is (i) factually false, and (ii) never stipulated to by Spin, which was represented in the New York Action by its own counsel, or Lubin.

exercised management and control of Hi Bar in that Josh Lubin negotiated one or more Contracts between the Debtor and Hi Bar, negotiated one or more settlement agreements between the Debtor and Hi Bar, directed outside counsel of Hi Bar in its dealings with the Debtor, and was engaged in managing the collection activities for Hi Bar regarding the Debtor.

*Id.* ¶ 8.

Fourth, the FAC and New York Counterclaims "arise[] out of the same nucleus of operative fact, [and are] based upon the same factual predicate," making clear "the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata." *Hooker v. Sec'y U.S. Dep't of Veterans Affairs*, 607 F. App'x 918, 921 (11th Cir. 2015); *Brodsky v. N.Y.C. Campaign Fin. Bd.*, 2023 U.S. App. LEXIS 10532, at *6 (2d Cir. May 1, 2023). The court also asks "whether the issues to be resolved 'arise out of the same transaction or series of transactions' as the issues previously explored, whether the plaintiff could have brought the claim he now pursues when he brought the first claim, and whether he should have brought it earlier. If [the court] answer[s] yes to these questions, then the claim is barred by res judicata." *Hooker v*, 607 F. App'x at 921; *Mt. Tobacco*, 942 F.3d at 543; *see Hilliard v. Gutierrez*, 2021 U.S. Dist. LEXIS 123079, at *19 (S.D. Fla. July 1, 2021) ("Res judicata applies not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same operative nucleus of fact. … That the claims in this action assert different theories of liability than the claims in *Hilliard I* is immaterial to the Court's analysis.") (citations and alterations omitted).

Here, both cases indisputably arise out the same operative nucleus of facts and series of transactions. The New York Counterclaims, like the FAC, contain allegations beginning in June 2021 with the Spin Defendants' alleged (i) solicitation of the Debtor Parties to enter into three Spin Contracts, (ii) representation to Franklin about the balances under the Spin Contracts, (iii) carrying over the balances between Spin Contracts, (iii) solicitation of the First Hi Bar Agreement, and (iv) solicitation of the First and Second Settlement Agreements. *Compare* FAC ¶¶ 27-59 *with* Exh. D at ¶¶ 7-30. Furthermore, the New York Counterclaims interpose closely-related causes of action to those herein, for criminal usury (akin to the RICO counts), fraudulent inducement (akin to the declaratory judgment over Franklin assignment and unconscionability counts), lack of consideration (akin to the fraudulent conveyance counts) and unjust enrichment (akin to all counts seeking recovery of funds collected). The relief sought by the two cases—recovery of damages and voiding the underlying agreements—is related as well.

9

Given that the four factors are met, *res judicata* bars the FAC against the Spin Defendants.[8]

## II.   **Plaintiff Lacks Standing Because the Debtor Has No Actual Damages from the Spin Contracts**

> To have standing, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. … A plaintiff must demonstrate standing for each claim and for each form of relief that is sought. And when plaintiffs seek prospective relief to prevent future injuries, they must prove that their threatened injuries are certainly impending.

*Zen Grp., Inc. v. Fla. Agency for Health Care Admin.*, 80 F.4th 1319 (11th Cir. 2023) (citations, quotation marks and alterations omitted). To establish a claim for RICO, the plaintiff must allege actual damages by reason of the RICO violation. 18 U.S.C. § 1964(c). As one court recently held:

> The purpose of a civil RICO award is to return the plaintiff to the same financial position he would have enjoyed absent the illegal conduct. That is, a RICO plaintiff *can only recover to the extent* that he has been injured in his business or property by the conduct constituting the violation.  A proper calculation of the damages sustained by reason of a violation of RICO—one that puts Fleetwood in the same financial position that it would have occupied absent the illegal conduct—requires a reduction of the financial benefit that it received at the time of the transaction. … Thus, treating as damages the full $119,617 that was deducted from Fleetwood's account would not account for the fact that Fleetwood also received a financial benefit from that Agreement through the funds Richmond advanced to it.

*Fleetwood Servs., LLC v. Ram Capital Funding, LLC*, 2022 U.S. Dist. LEXIS 148032, at *13 (S.D.N.Y. Aug. 17, 2022) (citations, quotation marks and alterations omitted).  Moreover, under New York law, "restitution and recission [of a usurious loan agreement] *do not mandate return of principal* that was never the property of the Borrowers." *People v. Richmond Capital Grp. LLC*, 2023 N.Y. Slip Op. 50975(U), ¶ 17 (N.Y. Co. Sup. Ct. Sep. 15, 2023) (emphasis supplied).

Plaintiff's pleadings admit the Debtor was not injured by the Spin Contracts, and because Spin filed no proof of claim, there is no possibility the Debtor will be injured in the future. *See generally Turner v Williams*, 65 F.4th 564, 583, n 27 (11th Cir 2023) ("[A] litigant may be defeated by his own evidence, the pleader by his own exhibits when he has pleaded too much and has

---

[8] The New York Action decisions determining the First Hi Bar Contract, which was identical in form and involved a refinancing of the debt under the Spin Contracts, is also collateral estoppel. *Funderburk v. Snyder*, 2023 U.S. Dist. LEXIS 51717, at *12-13 (S.D. Fla. Mar. 27, 2023) ("five elements must be present: '(1) an identical issue must have been presented in the prior proceedings; (2) the issue must have been a critical and necessary part of the prior determination; (3) there must have been a full and fair opportunity to litigate that issue; (4) the parties in the two proceedings must be identical; and (5) the issues must have been actually litigated.'")

refuted his own allegations by setting forth the evidence relied on to sustain them.") (quotation marks and citations omitted).  Plaintiff's original complaint alleged:

> Between June 1, 2021 through October 27, 2021, Spin actually loaned the Debtor $2,564,437.50 between the First Spin Contract, the Second Spin Contract and the Third Spin Contract. During this time period, the Debtor actually paid Spin $2,421,625.00 towards these loans.

Dkt. No. 1 ¶ 28. In the FAC, Plaintiff revised that amount *downward*: "Notably by December 20, 2021, the Debtor had paid Spin the sum of $2,381,625.00." FAC ¶ 172 (crediting $40,000 for a duplicate payment). The schedule of payments annexed to the FAC as actually indicates that Debtor had a net benefit of $142,812.50 from entering the Spin Contracts (which must be $182,812.50, after applying the $40,000 credit). Given that the Debtor has failed to show damages from the Spin Contracts, all causes of action against the Spin Defendants should be dismissed for lack of standing, but especially Counts I, II, IV, V, IX, X, XI, XII, XIII, XIV, XV, XVI, XXVIII, which are predicated solely on alleged damages caused by the Spin Contracts must be dismissed.

### III.   The FAC Is Barred by the Releases in the Debtor's Two Settlement Agreements

The First and Second Settlement Agreements entered between Hi Bar and the Debtor require dismissal of the claims against the Spin Defendants. Under New York law, "a valid release constitutes a complete bar to an action on a claim which is the subject of the release." *Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276 (2011). Where the release is broadly worded and releases such persons as, for example, "affiliates" of the signatories, all claims between a party to the release and the affiliates of the other party are barred. *Ctr. Lane Partners III, L.P. v. Nature's Bounty Co.*, 193 A.D.3d 498, 498 (1st Dept. 2021). A release bars claims of criminal usury under New York law provided that the settlement agreement itself is not usurious. *OriginClear Inc. v. GTR Source, LLC*, 2021 U.S. Dist. LEXIS 239013, at *20-21 (W.D.N.Y. Dec. 14, 2021); *Progressive Water Treatment Inc. v. Yellowstone Capital, LLC.* 2021 N.Y. Misc. LEXIS 5, at *9 (Erie Co. Sup. Ct. Jan. 4, 2021). Here, Plaintiff alleges that the Spin Defendants are affiliates of Hi Bar, which allegations must be accepted as true for the purpose of this Motion, which defeats them.

The FAC admits Hi Bar entered into the First and Second Settlement Agreements with the Debtor and Debtor Affiliates, which contained releases for Hi Bar's "affiliates," "related entities," representatives" and "agents"—which terms include the Spin Defendants pursuant to Plaintiff's theory of the case.  First, on December 19, 2023, Hi Bar and the Debtor entered the First Settlement

11

Agreement, with a total settlement amount of $4,016,820.00. FAC ¶¶ 166, Exh. J. Paragraph 6 states:

> Upon the Effective Date [December 19, 2021], the Sellers …. Discharges Purchaser and its respective parents, divisions, subsidiaries, **affiliates, related entities, representatives,** successors, directors, officers, owners, **agents,** employees, insurance carriers and assigns of an from any and all claims … arising from … the Action or the underlying Agreement, including any claims that were or could have been asserted, other than Purchaser's obligations under this Settlement Agreement.

*Id.* (emphasis supplied); *see* FAC ¶ 171 ( "[t]he First Settlement Agreement required the Debtor and related non-debtor entities to give complete releases for the entry of the First Settlement Agreement other than Hi Bar's obligations under the First Settlement Agreement."). Further, paragraph 7 states, "Seller and Guarantor further agree to waive all defenses, claims, or counterclaims that may arise from this Agreement or the Purchase Agreement."

Second, the FAC admits that on February 1, 2022, Hi Bar and the Debtor entered the Second Settlement Agreement, with a total settlement amount of $3,800,000.00. FAC ¶ 181, Exh. K. Paragraph 6 contains a nearly identical release provision to the First Settlement Agreement, and paragraph 7 provides, "Merchant and Guarantors hereby withdraw any defenses they may have to the claims asserted in the [New York] Action."

The FAC concedes that Spin and Lubin were understood by the Debtor Parties to be beneficiaries of the release since they were Hi Bar's alleged "affiliates," "related entities," "representatives" and "agents." The FAC alleges that Lubin exercised "management and control" of Hi Bar in negotiating the Hi Bar Contracts and Settlement Agreements and otherwise managing counsel in dealing with the Debtor. FAC ¶¶ 8, 249. Spin and Hi Bar are alleged to be an "association in fact" that are collecting upon the same debt, at Lubin's direction. *Id.* ¶¶ 248-249. Further evidencing the Debtor Affiliates' own intent at the time of contracting, the New York Counterclaims asserted that Lubin acted on behalf of Hi Bar. Exh. D ¶ 22.

"[A]bsent fraud, duress, illegality, mutual mistake or other cause sufficient to invalidate a contract, the signing of a release that contains clear and unambiguous language is a jural act binding on the parties." *Stevens v. Town of Chenango (Forks)*, 167 A.D.3d 1105, 1106 (3d Dept. 2018). "[A] signed release shifts the burden of going forward to the plaintiff to show that there has been fraud, duress or some other fact which will be sufficient to void the release." *Centro Empresarial Cempresa*, 17 N.Y.3d at 276. Here, the FAC is devoid of allegations of fraud, duress, illegality or mutual mistake upon or concerning the Debtor (let alone allegations pled with

12

specificity) in entering the First and Second Settlement Agreements (*e.g.*, that the Debtor was misled or unaware of the amounts agreed to in exchange for granting the releases). While Plaintiff asserts the settlements were "done under the threat of litigation" on a usurious contract and are therefore "unconscionable" (FAC ¶¶ 357, 363), settlement agreements are typically entered between parties when litigation is contemplated and, as set forth in Section IV, *infra*, there was nothing usurious about the underlying First Hi Bar Contract.[9]

Finally, contrary to Plaintiff's allegations that the First and Second Settlement Agreements were subject to New York criminal usury law (FAC ¶¶ 211, 213), they were actually exempt as a matter of law because the face value of each agreement exceeded $2.5 million.  N.Y. Gen. Oblig. Law § 5-501(6)(b) ("No law regulating the maximum rate of interest which may be charged, taken or received, including section 190.40 and section 190.42 of the penal law [the criminal usury statutes], shall apply to any loan or forbearance in the amount of two million five hundred thousand dollars or more."); *72nd Ninth LLC v. 753 Ninth Ave Realty LLC*, 168 A.D.3d 597, 598 (1st Dept. 2019) ("the usury statute does not apply to loans, like the one at issue in this case, that are for amounts greater than $2.5 million."). New York looks solely at the face amount of the loan document in determining whether it meets the $2.5 million cap on the criminal usury law, not to the actual amount advanced. *Star Funding, Inc. v. Vault Minerals, LLC*, 2018 U.S. Dist. LEXIS 51930, at *8 (S.D.N.Y. Mar. 26, 2018) ("courts consider the amount agreed upon between corporations, not the actual loan amount, in determining the applicability of criminal usury laws. … the relevant 'loan' amount in this case was the amount agreed to by the parties as set forth in the Agreement, not the actual loan amount") (citing *Tides Edge Corp. v. Cent. Fed. Sav., F.S.B.*, 151 A.D.2d 741, 741-42 (2d Dept. 1989)); *Spin Capital, LLC v. Golden Foothill Ins. Servs., LLC*, 2023 N.Y. Slip Op. 30594(U) (N.Y. Co. Sup. Ct. Feb. 28, 2023) (loan not subject to criminal usury where "the face amount of the Loan … is $2.7 million and this amount exceeds the $2.5 million threshold to which New York's usury laws apply" even through "[t]he Loan included [only] $1,307,403 in new money" and "$1,162,597 to satisfy the defendants' obligations under" prior obligations to the lender).

---

[9] *See, e.g. Williams v. City of N.Y.*, 2015 U.S. Dist. LEXIS 136170, at *2-3 (E.D.N.Y. Oct. 5, 2015) ("settlement was not voidable for duress—as Plaintiff had claimed during a February 2015, conference—because nothing in the record reflected that the settlement was the result of economic duress, and Defendants' threat of proceeding with litigation against Plaintiff and deposing him absent settlement was not unlawful."). Consequently, to the extent Count XVII seeks a declaration that the settlement agreements are unconscionable, it must be dismissed.

Hence, the New York court actually determined that the First and Second Agreements were not usurious as a matter of law since they have face values of $4,016,820.00 and $3,800,000.00 respectively. *Excell Auto Grp.*, 2023 N.Y. Slip Op. 31593(U) at *4 ("the Purchase Agreement, Settlement Agreement and Stipulation—concern amounts greater than $2.5 million. As such, defendants' defense of criminal usury fails as a matter of law."). Therefore, the FAC as against the Spin Defendants must be dismissed as barred by the releases.

**IV.      The MCA Agreements Are Not Loans and Not Subject to New York Usury Laws**

Each usury count against the Spin Defendants (Counts IV, V, VI, VII, VIII) is predicated on allegations that the Spin Contracts or Hi Bar Contracts constitute loans that charge interest in excess of the 25% limit under New York's criminal usury statute, N.Y. Penal L. § 190.40.  *See* FAC. ¶ 218, 220, 234, 255.  Hence, if the Spin and Hi Bar Contracts are not loans subject to New York usury laws, each of these counts must be dismissed. *Fleetwood Servs., LLC v. Richmond Capital Grp. LLC*, 2023 U.S. App. LEXIS 14241, at *2-3 (2d Cir. June 8, 2023) ("All other facts at issue in this case flow from that determination, such that if the Agreement [is not] properly construed as a loan" as a matter of New York law, then Plaintiff's claims must all be dismissed).

Two well-established principles of New York jurisprudence *preclude* a finding of usury: (1) the strong presumption *against* usury, and (2) a transaction cannot be usurious if it is not a loan.  First, there is a strong presumption against a finding of usury, and a party claiming usury bears the heavy burden of proving it by clear and convincing evidence. *Giventer v. Arnow*, 37 N.Y.2d 305, 309 (1975); *Roopchand v. Mohammed*, 154 A.D.3d 986, 988 (2d Dept. 2017). Second, "[i]f the transaction is not a loan, there can be no usury, *however unconscionable the contract may be*." *LG Funding, LLC v. United Senior Props. of Olathe, LLC*, 181 A.D.3d 664, 665 (2d Dept. 2020) (emphasis supplied). "To constitute a loan, the agreement must provide for repayment absolutely and at all events or that the principal in some way be secured as distinguished from being put in hazard." *Cash4Cases, Inc. v. Brunetti*, 167 A.D.3d 448, 449 (1st Dept. 2018). "Loans generally consist of a face value that must be repaid with interest over a specific finite time period." *Barrier Grp. Inc. v. BMF Advance LLC*,  2023 N.Y. Misc. LEXIS 1032, at *21 (Orange Co. Sup. Ct. Mar. 15, 2023) (citation omitted).

New York appellate courts agree that an MCA agreement is not generally a loan because it is a purchase of receivables. *Samson MCA*, 2023 N.Y. Slip Op. 04271, at ¶ 2; *Principis Capital, LLC v. I Do, Inc.*, 201 A.D.3d 752, 754-55 (2d Dept. 2022); *Kennard Law P.C. v. High Speed*

14

*Capital LLC*, 199 A.D.3d 1406 (4th Dept. 2021), *aff'g* 2020 N.Y. Misc. LEXIS 10407 (Erie Co. Sup. Ct. 2020); *Champion Auto Sales, LLC v. Pearl Beta Funding LLC*, 159 A.D.3d 507 (1st Dept. 2018). In reviewing whether an MCA agreement is a true purchase of receivables, New York courts apply a three-factor test:

> The court must examine whether the plaintiff is absolutely entitled to repayment under all circumstances. Unless a principal sum advanced is repayable absolutely, the transaction is not a loan. Usually, courts weigh three factors when determining whether repayment is absolute or contingent: (1) whether there is a reconciliation provision in the agreement; (2) whether the agreement has a finite term; and (3) whether there is any recourse should the merchant declare bankruptcy.

*Principis Capital*, 201 A.D.3d at 754. Where all three factors are present, an agreement is an MCA agreement not subject to usury laws. *Principis Capital*, 201 A.D.3d at 754 (granting summary judgment to funder). The Second Circuit, in a RICO action, recently endorsed the *Principis* test as the sole factors for determining whether an MCA agreement is a loan transaction or purchase of receivables. *Fleetwood Servs.*, 2023 U.S. App. LEXIS 14241, at *3; *accord United States Info. Grp. LLC v. EBF Holdings, LLC*, 2023 U.S. Dist. LEXIS 169605, at *17-19 (S.D.N.Y. Sep. 22, 2023) (dismissing RICO action where agreement complied with three factors).

Applying the *Principis* three-factor test, New York courts have repeatedly rejected challenges to the *identical form of agreement* used for the Spin Contracts and First Hi Bar Contract. *See, e.g., Samson MCA*, 2023 N.Y. Slip Op. 04271, at ¶ 2, *affg.* 2022 N.Y. Misc. LEXIS 1127, at *7 (containing identical reconciliation and adjustment provisions).[10] The aforementioned contracts actually provide the parties intended purchases of receivables, not loans:

> **Sale of Receipts.** [Merchant] and [Plaintiff] agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount, and that such Purchase Price is not intended to be, nor shall it be construed as a loan from [Plaintiff] to Merchant/ Merchant agrees the Purchase Price is in exchange for the Receipts pursuant to this Agreement, and that it equals the fair market value of such Receipts… Payments made to [Plaintiff] in respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services, and the payment therefore by Merchant's customers.

---

[10] *Accord Spin Capital, LLC v. Golden Foothill Ins. Servs., LLC*, 2023 N.Y. Slip Op. 30594(U) (N.Y. Co. Sup. Ct. Feb. 28, 2023); *Spin Capital v. Tex. Med. Ctr. Supply, LLC*, 2022 N.Y. Slip Op. 32914(U) (Ontario Co. Sup. Ct. Aug. 29, 2022); *Excell Auto Grp.*, 2023 N.Y. Slip Op. 31593(U) at *3-4; *see also Barrier Grp.*, 2023 N.Y. Misc. LEXIS 1032, at *19-21; *BMF Advance, LLC v. Litig. Practice Grp. PC*, 2023 N.Y. Misc. LEXIS 993, at *6 (Kings Co. Sup. Ct. Feb. 24, 2023).

Exh. M at ¶ 1.10. On the first page of the contracts, the parties stipulated, "Merchant is selling a portion of a future revenue stream to [Plaintiff] at a discount, *and is not borrowing money from SPC,* therefore there *is no interest rate or payment schedule and no time period during which the Purchase Amount must be collected by SPC*." Exh. M (emphasis supplied); *see Colonial Funding Network, Inc. v. Davincitek Corp.*, 2021 N.Y. Slip Op. 30026(U), ¶ 13 (N.Y. Co. Sup. Ct. 2021) (parties' stipulation that MCA agreement was not a loan was dispositive). The allegations in the FAC ignore the fact that New York courts have repeatedly found identical or materially similar contracts were true purchases of receivables upon application of the three-factor test, and merely assert conclusory allegations to the contrary.

### 1. *The Spin and First Hi Bar Contracts Contain Mandatory Reconciliation and Adjustment Provisions*

An MCA agreement is not a loan even if it contains a fixed daily remittance as an estimate of a specified percentage of daily receivables where "the Agreement provided no liability in the event that the seller's business failed because it could not generate sufficient revenue to continue operating." *IBIS Capital Group, LLC v. Four Paws Orlando LLC*, 2017 N.Y. Misc. LEXIS 884, *7 (Nassau Co. Sup. Ct. Mar. 10, 2017). The fixed amount can be adjusted through a reconciliation provision, which allows the merchant to request a reduction of the remittance amounts to reflect diminutions of its receivables. *Quicksilver Capital LLC v. Obioha*, 2020 N.Y. Slip Op. 31321(U), ¶¶ 7-8 (N.Y. Co. Sup. Ct. May 11, 2020) ("[t]he agreement contains a reconciliation provision … provid[ing] that plaintiff is to collect future receivables based on amounts collected by defendant during a particular calendar month. If defendant is not in default, she may once each calendar month request that plaintiff reconcile the [monthly amount to be paid by defendant] to more closely reflect defendant's actual future receipts times the purchased percentage.").

The Spin and First Hi Bar Contracts contained mandatory reconciliation (*i.e.*, to true up total payments with receivables generated for the prior period) and adjustment (*i.e.,* to make the regular remittance more closely reflect the receivables) provisions:

> 1.3 Reconciliation. As long as an Event of Default, or breach of this agreement, has not occurred, Merchant may request a **retroactive reconciliation** of the total Remittance Amount. All requests hereunder must be in writing to reconciliations@spincapital.com. Said request must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable report outstanding if applicable, from the date of this Agreement through and including the date the request is made. … Such reconciliation, if applicable, **shall be performed** by SPC within two (2) Business

> Days following its receipt of Merchant's request for reconciliation by either crediting or debiting the difference back to, or from, Merchants Bank Account so that the total amount debited by SPC shall equal the Specific Percentage of the Future Receipts that Merchant collected during the requested month. …
>
> 1.4 Adjustments to the Remittance. As long an Event of Default, or breach of this agreement, has not occurred, Merchant may give notice **to SPC to request a decrease in the Remittance, should they experience a decrease in its Future Receipts**. All requests hereunder must be in writing to reconciliations@spincapital.com and must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable report outstanding from the date of this Agreement through and including the date the request is made. … The Remittance **shall be modified** to more closely reflect the Merchant's actual receipts by multiplying the Merchant's actual receipts by the Purchased Percentage divided by the number of business days in the previous (2) calendar weeks. …

Exh. M (emphases supplied).[11] "A reconciliation and an adjustment provision help ensure that, on a retrospective basis, the merchant has not paid an amount that is disproportionate to the receivables that the funder has actually acquired, and going forward, where the merchant has experienced a steady decrease in its Daily Receipts, the merchant has the right to request a modification of the amount of the fixed daily payment." *Lateral Recovery, LLC v. Capital Merch. Servs., LLC*, 2022 U.S. Dist. LEXIS 181044, at *120-21 (S.D.N.Y. Sep. 30, 2022) (determining form agreements that contain these provisions are "are agreements for the purchase of receivables when viewed in their totality"). These are not an illusory reconciliation provisions, but mandatory ones, since they use the term "shall." *Streamlined Consultants, Inc. v. EBF Holdings LLC*, 2022 U.S. Dist. LEXIS 171085, at *15 (S.D.N.Y. Sep. 20, 2022) ("*Streamlined I*") ("the Funding Agreement includes a reconciliation provision, which—contrary to Plaintiffs' baseless argument in opposition—provides that reconciliation is mandatory if requested by Streamlined Consultants[,]" since it provided … Within four business days … [funder] *shall* reconcile …");[12] *United States Info. Grp.*, 2023 U.S. Dist. LEXIS 169605, at *23 ("shall" in reconciliation provision makes it mandatory); *accord Amsterdam Capital Sols. LLC v. Taylor Mgmt. Servs. LLC*, 2023 N.Y. Misc. LEXIS 2365, at *4 (Monroe Co. Sup. Ct. May 15, 2023); *NewCo Capital Grp. VI LLC*

---

[11] These are virtually identical to the provisions in agreements that were ruled to be purchases of receivables and not loans in *Samson MCA*, 2023 N.Y. Slip Op. 04271, at ¶ 2, *affg.* 2022 N.Y. Misc. LEXIS 1127, at *7 and other cases cited in fn. 10. *See* Exh. N (copy of *Samson MCA* agreement).

[12] *Streamlined I*, a federal district court decision, was cited with approval by the New York Appellate Division in *Samson MCA*, 2023 N.Y. Slip Op. 04271, at ¶ 2.

17

*v. ERS Homes LLC*, 2023 N.Y. Misc. LEXIS 1157, at *7 (Monroe Co. Sup. Ct. Mar. 22, 2023); *Vernon Capital Grp. LLC v. Walnut Spring Farms L.L.C.*, 2022 N.Y. Slip Op. 32731(U) (Kings Co. Sup. Ct. Aug. 12, 2022). The identical provisions were held to be mandatory in *Samson MCA*, 2022 N.Y. Misc. LEXIS 1127, at *10.

> ### 2. *The Spin Contracts Have No Fixed Duration*

"An agreement for purchase of future receivables has a 'non-finite term' because the time to complete the transaction contemplated by the agreement is contingent on an outside factor, which is customers shopping and paying the merchant for products or services which creates receivables that are available to be collected by the purchaser." *Barrier Grp.*, 2023 N.Y. Misc. LEXIS 1032, at *21; *accord Merchant Cash & Capital, LLC v. Cramer E. Constr. LLC*, 2016 N.Y. Misc. LEXIS 4647, *7-8 (Nassau Co. Sup. Ct. Nov. 4, 2016) (MCA agreement not loan where funder assumed "the risk that, if the receipts were less than anticipated, the period of repayment would be correspondingly longer, and the investment would yield a correspondingly lower annual return."). An MCA is not a loan where "it has an 'indefinite term' and remains in effect until [the merchant's] obligations are 'fully satisfied,'" because "[t]he indefiniteness of the Agreement supports the contention that it is contingency based and not absolute." *MCA Master Fund.*, 2021 N.Y. Slip Op. 30097(U), ¶ 4; *see NY Capital Asset Corp. v. F & B Fuel Oil Co., Inc.*, 58 Misc. 3d 1229(A) (Westchester Co. Sup. Ct. Mar. 8, 2018) ("the time span for plaintiff's collection of a percentage of defendants' sales proceeds is contingent upon defendants actually generating sales and those sales resulting in the collection of revenue. As such, the agreement has an indefinite term, evidencing the contingent nature of the repayment plan."). An agreement providing it "remains in force until the purchased amount and other amounts due are received by" the funder is consistent with this requirement. *NewCo Capital*, 2023 N.Y. Misc. LEXIS 1157, at *7-8.

Here, the Spin and First Hi Bar Contracts have indefinite terms since they expressly provide that they are "in full force an effect until the entire Purchased Amount and any other amounts due are received by [Plaintiff] as per the terms of this Agreement." Exh. M ¶ 1.2; *see Samson MCA*, 2022 N.Y. Misc. LEXIS 1127, at *10 ("The agreements also do not provide for a finite term, providing instead that the agreement remains in force until the purchased amount and other amounts due are received by Plaintiff. <u>See</u> Agreements, at §1.2."). They explicitly provide on the first page for "no interest rate or payment schedule and no time period during which the Purchase Amount must be collected by SPC." Exh. M; *see Streamlined I*, 2022 U.S. Dist. LEXIS 171085,

18

at *16-17 (indefinite term where the funding agreement stated "[t]here is . . . no payment schedule and no time period during which the [p]urchased [a]mount must be collected by" the funder). Moreover, the contracts could potentially be extended over an indefinite duration because they were subject to regular adjustment under the reconciliation provision. *Principis Capital*, 201 A.D.3d at 754 ("Concomitantly, as the amount of the monthly payments could change, the term of the agreement was not finite."). The durations are "contingent upon [the merchant's] actually generating sales and those sales actually resulting in the collection of revenue." *IBIS Capital Group, LLC v. Four Paws Orlando LLC*, 2017 N.Y. Misc. LEXIS 884, *8-9 (Nassau Co. Sup. Ct. 2017); *Power Up Lending Grp.*, 2019 U.S. Dist. LEXIS 57527, at *15-16 ("[T]he term in the Agreement is indefinite because…every time Defendants' receipts change the amount of time it will take for Plaintiff to be reimbursed will change, and there is no fixed end date by which Plaintiff must be paid"). "The existence of this uncertainty in the length of the Agreement is an express recognition by the parties of the wholly contingent nature of this Agreement." *Four Paws*, 2017 N.Y. Misc. LEXIS 884, at *9.

### 3.    *Bankruptcy Is Not an Event of Default*

An MCA agreement is not a loan where not only do "[t]he default provisions of the agreement do not make a bankruptcy filing an event of the default," but, like here, "[a] bankruptcy filing is expressly not an event of default under the contract, and thus that factor also weighs in favor of the plaintiff." *Cloudfund*, 2022 N.Y. Misc. LEXIS 4179, at *4-5. Not only is bankruptcy not listed as an "Event of Default" under ¶ 3.1 of the Spin and First Hi Bar Contracts, but they specifically provide on their front pages, "Merchant going bankrupt or going of business…in and of itself, does not constitute a breach of this Agreement." One district court recently found identical language militated against finding a loan. *Streamlined I*, 2022 U.S. Dist. LEXIS 171085, at *18.

An MCA is not a loan where, like here, it "acknowledges that bankruptcy by Defendants would not constitute a breach." *Image Capital Partners*, 2022 N.Y. Misc. LEXIS 6037, at *9; *accord Pearl Delta Funding, LLC v. Superior Contracting & Restoration, Inc.*, 2022 N.Y. Misc. LEXIS 6038, at *4-5 (Nassau Co. Sup. Ct. Sep. 13, 2022) (not a loan where "bankruptcy and business failure are not events of default. Rather, the Agreement expressly provides that 'Merchant going bankrupt or going out of business, or experiencing a slowdown in business, or a delay in collecting its receivables, in and of itself will not constitute a breach of this Agreement. [Funder]

19

is entering this Agreement knowing the risks that Merchant's business may slow down or fail, and [funder] assumes these risks ...'").

### 4. Plaintiff's Other Contentions that the Spin and First Hi Bar Contracts Are Loans Fail

Faced with Spin and First Hi Bar Contracts that make clear they are legitimate purchases of receivables in accordance with the *Principis* test, Plaintiff desperately and misleadingly claims:

> The Spin Contracts contained false, misleading, and illusory provisions to disguise the fact that the Spin Contracts are in fact loans subject to applicable usury laws. Some of the false, misleading, or illusory provisions are: (i) that the Purchased Amount was based upon good faith estimates of the receipts purchased; (ii) no interest was being charged; (iii) that the Merchant and Guarantors are only guaranteeing their performance and not payment; (iv) the Remittance amount was subject to changes through a reconciliation provision.

FAC ¶ 48. These arguments not only seek to improperly expand the factors beyond the *Principis* test, which is binding on federal courts (*Fleetwood Servs.*, 2023 U.S. App. LEXIS 14241, at *3), but also fail on their own.

First, the parties – *i.e.*, Spin or Hi Bar together with the Debtor and Debtor Affiliates – together agreed on the daily remittances as good faith estimates of the receipts purchases not only from Debtor, but also from the Debtor Affiliates. Thus, "even if there were misstatements [about the value of the receivables], which there were not, the misstatements were made by the seller-defendants of the accounts receivable not the purchasers-Counterclaim Defendants." *Golden Foothill Ins. Servs.*, 2023 N.Y. Slip Op. 30594(U) at *9 (rejecting claim by merchant that the initial daily payment was not a good faith estimate of the receivables). Even if there were fluctuations in the estimates of receivables, as alleged in FAC ¶¶ 52-54, those estimates were agreed to and acknowledged by the Debtor and Debtor's Affiliates.[13]

Second, as a matter of law, no interest was charged under the Spin Contracts.  Because the Spin and First Hi Bar Contracts by their express terms purchased receivables and the amount to be remitted were subject to reconciliation and adjustment, no interest was being charged. Exh. M ¶ 1.9. Plaintiff does not allege, because she cannot, that if Excell took longer to remit the total

---

[13] To the extent Plaintiff argues, "[a] review of the Debtor's books and records for the three months prior to entering the First Spin Contract demonstrates that there was insufficient revenue being generated by the Debtor to support the good faith estimate under the terms of the First Spin Contract" (FAC ¶ 55), Plaintiff's allegations fail because they do not take into consideration revenues generated by the Debtor's Affiliates.  Indeed, Plaintiff acknowledges elsewhere, "[t]he Debtor and the Non-Debtor entities are included in the definition of 'Merchant' or 'Seller.'  The Non-Debtor entities are separate businesses each with their own bank accounts." *Id.* ¶ 69.

purchased amounts of receivables, it would have ever had to pay a penny in interest beyond the agreed purchase amounts. The amounts due do not increase with the passage of time.

Third, the Spin and First Hi Bar Contracts specifically provide the Zankls' "Guaranty of *Performance*" (*i.e.*, that the Debtor and Debtor Affiliates comply with their obligations to remit and not divert receivables), not payment. *See id.* at p. 6 (Zankls "will not be personally liable for any amount due under the Revenue Purchase Agreement unless Merchant commits an Event of Default …"). A guaranty of performance, which makes the guarantor liable where there is an underlying default by the merchant, does not convert an MCA agreement into a loan. *E.g.*, *OriginClear*, 2021 U.S. Dist. LEXIS 239013 at *18 (W.D.N.Y. Dec. 14, 2021) (not a loan where "the personal guaranty is no broader than the obligations under the agreements and the requirement of payment by [guarantor] is no greater than that of [merchant].") (alterations and citation omitted); *Womack v. Capital Stack, LLC*, 2019 U.S. Dist. LEXIS 148644 (S.D.N.Y. 2019) ("Womack's Guaranty merely guaranteed 'prompt and complete performance of all of Seller's obligations under the Purchase Agreement.' Thus, Womack's obligations under the Guaranty were no broader than OTC's obligations under the Agreement, and Womack did not agree to pay the Purchase Amount if OTC was unable to pay because it ceased operations in the ordinary course of business. The Guaranty did not alter Capital Stack's risk of non-payment if OTC's business failed.") (citation omitted). Indeed, nearly every New York MCA case in which an agreement was determined not to be a loan involved a personal guaranty of performance and the courts do not find that alone renders the agreement a loan. *See, e.g.*, *Principis*, 201 A.D.3d at 753. Here, there is no provision that makes the Zankls obligated to make payment in the event Debtor and Debtor Affiliates had a business slowdown.

Fourth, Plaintiff cannot challenge whether the reconciliation or adjustment provisions were effective because there is no allegations the Debtor ever exercise such rights and was denied. New York courts regularly dismiss usury defenses where the merchant does not allege it actually made a reconciliation request supported by requisite financial statements that was denied. *Streamlined I*, 2022 U.S. Dist. LEXIS 171085, at *15 ("This counsels against a finding that the Funding Agreement is a usurious loan, particularly where Plaintiffs have not alleged that reconciliation did not in actuality function as agreed (or, indeed, that Plaintiffs ever even requested reconciliation)."); *Parkside Funding Grp., LLC v. Middlebury Chiropractic, PLC*, 2023 N.Y. Misc. LEXIS 2247, at *3-4 (Kings Co. Sup. Ct. May 9, 2023); *Seabrook Funding, Inc. v. Behavioral Servs. of Nev. LLC*,

21

2023 N.Y. Misc. LEXIS 1649, at *3 (Kings Co. Sup. Ct. Apr. 4, 2023); *MCA Master Fund (MMF) v. Universal Scrap Motors Inc.*, 2021 N.Y. Slip Op. 30097(U), ¶ 4 (Nassau Co. Sup. Ct. Jan. 14, 2021); *Pirs Capital, LLC v. D & M Truck, Tire & Trailer Repair Inc.*, 69 Misc. 3d 457, 462 (N.Y. Co. Sup. Ct. 2020).

Plaintiff further contends the reconciliation and adjustment provisions were illusory because they are only permitted where there is no "event of default," and the Debtor and Debtor Affiliates would have been in default for maintaining multiple bank accounts for each party and for obtaining financing from other sources prior to entering the Spin Contracts. FAC ¶¶ 67-77. However, the FAC alleges Spin entered the Spin Contracts knowing of these inconsistencies (*id.* ¶¶ 70-71, 76-77), and thereby would be estopped from asserting these as events of default.

Finally, despite Plaintiff's allegations that the Spin Contracts contained provisions to reduce risks (FAC ¶ 82), New York courts have been clear that the fact that an MCA agreement contains provisions reducing risk to the funder or seem disadvantageous to the merchant does not itself render the MCA a loan. *See Fox Capital Grp., Inc. v. Relik Realty, LLC*, 2023 N.Y. Slip Op. 32444(U), ¶ 10 (Nassau Co. Sup. Ct. July 14, 2023) ("Most fundamentally, the Court considers that the Agreement requires plaintiff to bear some risk that the Purchased Amount will not be paid in full, notwithstanding the excess of terms and conditions provided for its protection.").

## V. Counts IV and IX for Declaratory Judgment Setting Aside the Spin Contracts Should Be Dismissed

Counts IV and IX allege, "[t]o the extent that the First Spin Contract, Second Spin Contract, and Third Spin Contract are voidable [as criminally usurious] under New York Law, the Trustee seeks to void each of the agreements." FAC ¶¶ 226, 281. These Counts must be dismissed because under New York law, criminal usury is only an affirmative defense and cannot be the basis of a declaratory judgment cause of action, including seeking to declare void an MCA agreement. *Paycation Travel v. Glob. Merch. Cash*, 192 A.D.3d 1040, 1041 (2d Dept. 2021) ("General Obligations Law § 5-521 bars a corporation such as the plaintiff from asserting usury in any action, except in the case of criminal usury as defined in Penal Law § 190.40, *and then only as a defense to an action to recover repayment of a loan, and not as the basis for a cause of action asserted by the corporation for affirmative relief.*") (citations omitted; emphasis supplied); *AH Wines, Inc. v. C6 Capital Funding LLC*, 208 A.D.3d 1623, 1624 (4th Dept. 2022), *app. dismissed* 2023 N.Y. Slip Op. 68543 (N.Y. June 13, 2023); *LG Funding*, 181 A.D.3d at 667. "New York courts have

22

uniformly construed this statute as limited to the affirmative defense, and they have prohibited corporations from bringing affirmative claims or counterclaims alleging criminal usury and seeking to invalidate an agreement." *Streamlined I*, 2022 U.S. Dist. LEXIS 171085, at *11 (citation omitted) (dismissing claim for declaratory judgment that contract is usurious). Clearly, there is no basis for a declaratory judgment that the Spin Contracts are criminally usurious.

Furthermore, Count IX seeks a declaratory judgment that "[t]he First Spin Contract, Second Spin Contract and Third Spin Contract should be declared void under New York law as being unconscionable." FAC ¶ 280. Under New York law:

> A determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made -- i.e., some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.

*Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1, 10 (1988); *Command Components Corp. v. HWJ Eng'g & Surveying, PLLC*, 189 A.D.3d 990, 992 (2d Dept. 2020).[14] Here, the FAC claims the Spin Contracts are substantively unconscionable, but  contains no allegations the Debtor entered these contracts with "an absence of meaningful choice," subject to oppressive conduct, or without the commercial sophistication to understand what it agreed to. On that score alone, this count should be dismissed. *Dabriel, Inc. v. First Paradise Theaters Corp.*, 99 A.D.3d 517, 521 (1st Dept. 2012) ("All told, plaintiffs failed to plead anything regarding an alleged lack of meaningful choice … and it is noteworthy that plaintiffs were free to walk away from the lease negotiations at any time and rent space elsewhere.") (citation and quotation marks omitted).

But even if *arguendo* Plaintiff passed this hurdle, the FAC fails to allege that any term of the Spin Contracts was substantively unconscionable. Contrary to Plaintiff's allegations in FAC ¶¶289, an MCA agreement may properly provide "that in the event of its default under the agreement, the full uncollected purchased amount would become immediately due and payable in full to the plaintiff." *Principis*, 201 A.D.3d at 753 (granting summary judgment enforcing MCA agreement). There is nothing false or fraudulent in the Spin Contracts about not being loans, since as a matter of law they are purchases of future receivables. *Tender Loving Care Homes Inc. v.*

---

[14] "The doctrine of unconscionability *rarely applies in a commercial setting*, where the parties are presumed to have equal bargaining power." *Id.* A party to a financing agreement "is bound by the terms of his contract as made and cannot be relieved from his default, if one exists, in the absence of oppressive or unconscionable conduct on the latter's part." *FGH Contracting Co. v. Weiss*, 185 A.D.2d 969, 971 (2d Dept. 1992) (citation, quotation and alterations omitted).

*Reliable Fast Cash, LLC*, 76 Misc. 3d 314, 321 (Richmond Co. Sup. Ct. 2022) (dismissing fraud claim where "plaintiffs generally argue that the 'fraud' was the nature of the contract itself, claiming that the agreement was 'misrepresented' to them as an agreement to purchase receivables, while it was actually a usurious loan" because "this court has ruled, as a matter of law, that the contract at issue is not a loan, and therefore could not be usurious."). New York courts routinely grant MCA funders "an attorney's fee pursuant to the terms of the agreement" in such collections actions. *LG Funding, LLC v. Johnson & Son Locksmith, Inc.*, 170 A.D.3d 1153, 1154 (2d Dept. 2019) ("The plaintiff [MCA funder] commenced this action for the purpose of enforcing its rights to recover pursuant to the agreement and the personal guaranties after Absolute's default on its repayment obligations. As such, the plaintiff is entitled to recover reasonable attorney's fees from the defendants pursuant to Section three of the agreement."); *see Spin Capital v. Tex. Med. Ctr. Supply, LLC*, 2022 N.Y. Slip Op. 32914(U) (Ontario Co. Sup. Ct. Aug. 29, 2022) (granting attorneys' fees to Spin under similar agreement).

Similarly, Plaintiff's allegation that the Spin Contracts "are designed to fail" (FAC ¶ 278) does not establish substantive unconscionability under New York law. N.Y. Banking Law § 6-l is the only New York statute that requires a heightened degree of diligence by a lender to ensure a loan is not doomed to fail. *HSBC Bank USA, N.A. v. Campos*, 2017 N.Y. Slip Op. 50695(U), ¶¶ 4-6 (Queens Co. Sup. Ct. May 15, 2017) (dismissing claim for consumer fraud premised on borrower's doomed to fail theory because Banking Law § 6-l did not apply to the loan at issue as the court was "unaware of any other statute which requires a lender to take into account the borrower's ability to repay when making a loan, and provides a remedy to the borrower for the lender's failure to meet such requirement"). However, Banking Law § 6-l does not apply to the Spin Contracts because they were <u>not</u> (1) made to a "natural person" for (2) "primarily for personal, family, or household purposes[.]" Banking L. § 6-l(e); *John v. Whiteacre Funding, LLC*, 2016 N.Y. Slip Op. 31234(U), ¶ 15 (Kings Co. Sup. Ct. June 17, 2016); *2013 Funding LLC v. Park 91 LLC*, 2013 N.Y. Slip Op. 32941(U), ¶ 5 (N.Y. Co. Sup. Ct. Nov. 6, 2013). Where the contract is for business purposes, New York law does not impose an obligation on the funder to ensure it will not cause failure on the part of the business.

24

**VI.**    **Counts I and II Concerning the Franklin Assignment and Balance Transfer Agreement Should Be Dismissed**

Count I seeks a declaration that the Franklin Assignment is effective, and that (i) the total amount due from the Debtor to Spin as of October 21, 2021, was $1.00, which amount was satisfied," and (ii) "the First Spin Contract, Second Spin Contract, and Third Spin Contract and all other obligations owed by the Debtor or Claims against the Debtor or Third Parties arising from the Spin Contracts were assigned to Wing Lake."  FAC at pp. 35-45.

This count must be dismissed because it contradicts the clear and unambiguous language of the Franklin Assignment and principals of contract interpretation.  Under Michigan law (which governs the Franklin Assignment), interpretation of an assignments is governed by general principles of contract law. *Perkins v. Suburban Mobility Auth.*, 2022 Mich. App. LEXIS 5256, at *4-5 (Mich. App. Ct. Sept. 1, 2022). When an assignment contains broad/general language followed by more specific language, or a list of specific property/rights to be assigned, courts will generally interpret the assignment as limited to what is contained in the enumeration of property or rights.  *Price v. Haynes*, 37 Mich. 487, 489 (1877) ("The construction of [assignments] has been that they transferred only what was enumerated in the schedule if one was actually attached."). Only if there is no limiting language in an assignment will Michigan courts find broad assignments of *all* rights or property. *Coots v. Chamberlain*, 39 Mich. 565, 569 (1878).

Here, the Assignment—drafted by Franklin, a sophisticated lender with the means to perform due diligence—purports to sell:

> all outstanding obligations ("Obligations") of Excell Auto Group, Inc. and each of its affiliates (collectively, "Company") owing to Assignor under **each of (i) the Revenue Purchase Agreement, dated as of June 1, 2021, by and between Assignor and Company, and (ii) the Revenue Purchase Agreement, dated as of July 9, 2021, by and between Assignor and Company (collectively, the "Merchant Agreements")** and all rights of Assignor under **any similar or related documents (including without limitation, any guaranties, security agreements, forbearance agreements, settlement agreements and judgments)**, including with respect to all collateral securing the obligations of Company under the Merchant Agreements or securing any guaranties in respect thereof (the documents, including the Merchant Agreements, are defined collectively as the **"Merchant Documents")**, for a purchase price of $1.00 (the "Purchase Price").

FAC, Exh. L (emphases supplied). In other words, the broad definition of "Obligations" is specifically limited to the *enumerated First and Second Spin Contracts* (with *absolutely no mention of the Third Spin Contract* entered in August 2021). While Obligations is expanded to

include "similar or related agreements," that does not cover the Third Spin Contract, since the general description "similar or related agreement" is given specific definition to include "any guaranties, security agreements, forbearance agreements, settlement agreements and judgments." *Id.* There is no indication from the text or context that it was intended to include an entirely different species of document, the deal documents for an entirely separate transaction, the Third Spin Contract. If there are ambiguities, they must be construed against Franklin, as drafter.

Since the Franklin Assignment limited "Obligations" to those under the First and Second Spin Contract (the "Merchant Documents"), and excluded the Third Spin Contract, the representations under paragraph 4 concerning "Obligations, the Merchant Documents and the Third Party" referenced in FAC ¶¶ 190-191, cannot be construed to cover or contain any representations concerning the balance under the Third Spin Contract, let alone demonstrate any rights therein had been assigned over to Franklin.[15]

Consequently, Count II must also be dismissed, since that claim seeking to set aside the Balance Transfer Agreement dated October 27, 2023 (four days before the Franklin Assignment), is predicated upon Spin allegedly having sold its interests in, and balance of $2,114,312.50 under, the Third Spin Contract to Franklin. FAC ¶¶ 200-203, Exh. H. Specifically, Plaintiff wrongly alleges, "Spin sold and assigned all outstanding Obligations and Merchant Documents of the Debtor and any claims against the Debtor or Third-Parties *which included the Third Spin Contract*, prior to the Hi Bar Transfer Agreement." *Id.* ¶ 202. But the Franklin Assignment said nothing about the Third Spin Contract, let alone a representation that there was no balance thereunder. Nor did it need to, since by that point Spin already executed the Balance Transfer Agreement to Hi Bar, and Hi Bar entered the First Hi Bar Agreement with the Debtor Parties. *Id.* ¶¶ 113.

Finally, the Court should dismiss Count XXVIII for promissory estoppel, which Plaintiff alleges is made "under New York law" (rather than Michigan law, which governs the Franklin Assignment). FAC ¶ 481. "To prevail on such a cause of action, the party advancing it must demonstrate that the opposing party made a clear and unambiguous promise, upon which the former reasonably relied, to its detriment." *Wilson v. Dantas*, 29 N.Y.3d 1051, 1062 (2017). But any "promises" made by Spin under the Franklin Assignment were made to Franklin, *not to the Debtor* in whose shoes Plaintiff stands, which was not a party to the Franklin Assignment. *See*

---

[15] Notably missing from Plaintiff's allegations is any representation that the $1.00 sale price had been paid to Spin. If it was not paid, the claim fails on its face.

*MatlinPatterson ATA Holdings LLC v. Federal Express Corp.*, 87 A.D.3d 836 (1st Dept. 2011) (dismissing promissory estoppel claim where only alleged promise was contained in a letter agreement between two other parties). Nor is it alleged Spin ever sent the Franklin Assignment to the Debtor or communicated with the Debtor about it.  Furthermore, not only did the Debtor **not** "reasonably rel[y] on the representation that the balance of the Obligations owed by the Debtor to Wing Lake were zero and were all otherwise transferred to Wing Lake[,]" as falsely alleged by Plaintiff (FAC ¶ 491), but Plaintiff actually alleged the Debtor knew that such alleged "promise" was not correct at the time the Franklin Assignment:

> The Hi Bar Transfer Agreement was purportedly signed by Kristen Zankl on October 28, 2021, and signed by Scott Zankl on November 1, 2021. Despite the representations and warranties made by Spin and Josh Lubin to Wing Lake in the Wing Lake Assignment Document, the Debtor agreed that there was still a balance due and owing on the Third Spin Contract in the amount of $2,114,312.50.

*Id.* ¶ 109; *see Prospect St. Ventures I, LLC v. Eclipsys Sols. Corp.*, 23 A.D.3d 213, 214 (1st Dept. 2005) ("the deficiency [in the promissory estoppel claim] is not in the completeness of the allegations, but in their contradiction."). Moreover, and most critically, there is no "clear and unequivocal promise" in the Franklin Assignment concerning the Third Spin Contract since it is not mentioned at all, and the Court cannot imply promises into the promissory estoppel claim that fail under a contract theory. *See id.* ("The legal insufficiency of the contract cause of action requires the dismissal of the promissory estoppel claim as well …").[16]

## VII.   Counts X, XI, XII, XIII, XIV, XV, XVI Should Be Dismissed Because Plaintiff Admits that Spin Provided Adequate Consideration to the Debtor

Counts XI, XII, XIII, XV and XVI, assert various constructive fraudulent conveyance claims against Spin under federal bankruptcy and Florida state law, but all fail because Plaintiff admits that Spin provided actual net value to the Debtor, not merely "reasonably equivalent value," which alone warrants dismissal of such claims. 11 U.S.C. § 548(a)(1)(B)(i) & (ii)(I) (avoidance if the debtor "received less than a reasonably equivalent value in exchange for such transfer" and the debtor was insolvent at the time of transfer); Fla. Stat. §§ 726.105(1)(b) & 106(1) (avoidance where

---

[16] Even if there was an unequivocal promise relied on in the Franklin Assignment, it is barred as duplicative of the breach of contract claim admittedly covering the same subject matter. *Alrai Naked Opportunity, LLC v. Naked Brand Grp. Ltd.*, 2019 N.Y. Slip Op. 33241(U), ¶¶ 8-9 (N.Y. Co. Sup. Ct. Oct. 30, 2019) ("The existence of a valid and enforceable written contract governing a particular subject matter precludes recovery on a quasi-contract theory, such as promissory estoppel, on events arising out of the same subject matter. This bars a quasi-contract claim as against both the parties to a contract and non-parties.") (citations omitted).

debtor does not receive "a reasonably equivalent value in exchange for the transfer or obligation"). "Courts generally construe the term 'value' broadly for purposes of the Bankruptcy Code. … the test that courts have applied to determine 'reasonably equivalent value' is whether the transfer confers an economic benefit upon the debtor, either directly or indirectly[.]" *PSN Liquidating Tr. v. Intelsat Corp. (In re PSN USA, Inc.)*, 615 F. App'x 925, 930 (11th Cir. 2015) (citations and quotation marks omitted).  Furthermore:

> [T]he concept of reasonably equivalent value does not require a dollar-for-dollar transaction. The value received needs only be 'reasonably equivalent' in value to what was transferred. … [T]he fact the Debtor ultimately landed in bankruptcy does not preclude a finding that value was not given, even if the value increased the debtor's insolvency.  A determination of whether value was given … should focus on the value of the goods and services provided rather than on the impact that the goods and services had on the bankrupt enterprise.  And the question of whether reasonably equivalent value is given has to be analyzed from the perspective of whether and when value was created and exchanged.

*Id.* at 932 (citations, quotation marks and alterations omitted).

Plaintiff admitted in the original complaint that reasonably equivalent value was given by Spin:

> Between June 1, 2021 through October 27, 2021, *Spin actually loaned the Debtor $2,564,437.50 between the First Spin Contract, the Second Spin Contract and the Third Spin Contract.* During this time period, the Debtor actually paid Spin $2,421,625.00 towards these loans.

Dkt. No. 1 ¶ 28 (emphasis supplied). In the FAC, Plaintiff revised that amount *downward*: "Notably by December 20, 2021, the Debtor had paid Spin the sum of $2,381,625.00."  FAC ¶ 172 (crediting $40,000 for a duplicate payment). The schedule of payments annexed to the FAC indicates that *Debtor had received a net benefit of $142,812.50 from entering the Spin Contracts* (which must be $182,812.50, after applying the $40,000 credit). In short, the Debtor ultimately came out as the "net winner" and obtained a greater than dollar-for-dollar benefit from Spin. Therefore, Plaintiff cannot plausibly allege a lack of reasonably equivalent value against Spin.

Similarly, Counts X and XIV assert intentional fraudulent conveyance claims against Spin under federal bankruptcy law and Florida state law, claiming that Spin had "actual intent to hinder, delay or defraud any creditor" of the Debtor. 11 U.S.C. § 548(a)(1)(A)(i); Fla. Stat. § 726.105(1)(a). "In determining whether a transfer was made with actual intent to defraud a creditor, courts look to the statutory 'badges of fraud,' such as whether, for example, the transfer was to an insider, the debtor retained control of the property after the transfer, the transfer was of

28

substantially all the debtor's assets, or the debtor was insolvent or became insolvent shortly after the transfer was made." *Wiand v. Lee*, 753 F.3d 1194, 1200 (11th Cir. 2014) (citing Fla. Stat. § 726.105(2)(a)-(k)). However, "under FUFTA's actual fraud provision, proof that a transfer was made in furtherance of a Ponzi scheme establishes actual intent to defraud under § 726.105(1)(a) without the need to consider the badges of fraud." *Id.* at 1201.

Here, Plaintiff fails to allege any "badges of fraud" that might indicate an intent to defraud by Spin, instead alleging *without specificity concerning Spin* that MCA funders generally had *constructive knowledge* that Scott Zankl used the Debtor as a Ponzi scheme:

> The perfunctory due diligence of the MCA lenders is typically limited to a review of a debtor's bank records prior to consummating and funding a MCA loan. As described below, this was the full extent of the diligence of Spin before issuing an MCA Loan to the Debtor. For each of the MCA lenders a review of bank records, from May 2021 forward, evidences the existence of multiple Private Investor Loans and other MCA loans and no or minimal income being generated from the sale of vehicles. A review of the Debtor's bank records would prompt further inquiry which would reveal the Debtor had little to no accounts receivable to sell to an MCA lender.

FAC ¶¶ 303-304. However, by definition, this is not a "Ponzi scheme" because it involves alleged "loans" (per Plaintiff's self-defeating allegations) rather than investments.

"A Ponzi scheme uses the principal investments of newer investors, who are promised large returns, to pay older investors what appear to be high returns, but which are in reality a return of their own principal or that of other investors." *Wiand*, 753 F.3d at 1201. On the other hand, a loan scheme is not a "Ponzi scheme" for the purposes of the fraudulent conveyance law because "loans are by any definition *not* investments and [a lender] was not an investor. The trustee's insistence that these bank loans should be considered investments ignores the many real differences between the two concepts, most notably the contractual interest rate on loans versus the unknown risk premium of equity investments." *Kapila v. TD Bank, N.A. (In re Pearlman)*, 440 B.R. 900, 904 (Bankr. M.D. Fla. 2010). Moreover, "loan repayments are traditionally not considered fraudulent transfers because they extinguish an antecedent debt." *Id.* at 905.[17] Therefore, if Plaintiff's

---

[17] Indeed, "a preferred creditor can have knowledge that the debtor is insolvent, that there are other creditors, that the debtor is transferring the assets in an attempt to defraud his own creditors, and that the effect of the transfer of the asset will be to defeat his creditors claims. Despite this breadth of knowledge of the debtor's affairs, the preferred creditor's preferential transfer will not be voidable unless the preferred creditor (1) took the conveyance for the purpose of aiding in the fraud, or (2) actively participated in the debtor's fraudulent purpose to defeat the claims of other creditors." *Bakst v. Levenson (In re Goldberg)*, 229 B.R. 877, 886 (Bankr. S.D. Fla. 1998).

allegations that the Spin Contracts were loans are to be believed, she fails to state a claim for intentional fraudulent conveyance.

Even viewing the Spin Contracts in their proper characterization, as purchases of receivables, there is no basis for intentional fraudulent conveyance under the Ponzi scheme presumption *because Spin received back less than it invested*. As the Eleventh Circuit held:

> In the case of Ponzi schemes, the general rule is that a defrauded investor gives "value" to the Debtor in exchange for a return of the principal amount of the investment, but not as to any payments in excess of principal. Courts have recognized that defrauded investors have a claim for fraud against the debtor arising as of the time of the initial investment. Thus, any transfer up to the amount of the principal investment satisfies the investors' fraud claim (an antecedent debt) and is made for "value" in the form of the investor's surrender of his or her tort claim. Such payments are not subject to recovery by the debtor's trustee. Any transfers over and above the amount of the principal — *i.e.*, for fictitious profits — are not made for "value" because they exceed the scope of the investors' fraud claim and may be subject to recovery by a plan trustee.

*Perkins v. Haines*, 661 F.3d 623, 627 (11th Cir. 2011) (citations omitted). As set forth above, Plaintiff alleged that Debtor had received $2,564,437.50 under the Spin Contracts, and paid Spin approximately $2,381,625.00, giving the Debtor *a net benefit* of $182,812.50 (which Spin should actually be able to recover from the Debtor).[18]

---

[18] In any case, the Spin Defendants have affirmative defenses that will trump these conclusory intentional fraudulent conveyance claims. 11 U.S.C. §548(c) provides that a transferee of a fraudulent transfer "that takes for value and in good faith" may retain any interest transferred to the extent of the value given. Similarly, under Fla. Stat. § 726.109(1), "[a] transfer or obligation is not voidable under s. 726.105(1)(a) against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee." "Both of these statutes provide an affirmative defense to actual fraud for individuals to whom the debtor's property is transferred, to the extent the individuals provided the debtor value in exchange for the transfers, and if they took the property in good faith." *Soifer v. Bozarth (In re Lydia Cladek, Inc.)*, 494 B.R. 555, 561 (Bankr. M.D. Fla. 2013) (citations and quotation marks omitted). Thus, "[e]ven if a plaintiff can show that the Ponzi scheme presumption applies, courts must nevertheless assess the good or bad faith of the transferee to determine whether the payments are avoidable." *Id.* Plaintiff's generalized allegation of a "red flag" do not amount to a plausible claim that Spin knew of an actual Ponzi scheme, intended to participate in its fraud, or otherwise lacked good faith in entering the Spin Contracts with the Debtor.

## CONCLUSION

WHEREFORE, the Court should dismiss the FAC with prejudice.

Dated: October 16, 2023

Respectfully submitted,

EGOZI & BENNETT, P.A.

By: */s/ Bernard L. Egozi, Esq.*
Bernard L. Egozi, Esq. (Florida Bar No. 152544)
2999 NE 191st Street, Suite 407
Aventura, Florida 33180
Telephone: (305) 931-3000
Facsimile: (305) 931-9343
Email: begozi@egozilaw.com


CARTER LEDYARD & MILBURN LLP
Jacob H. Nemon (admitted *pro hac vice*)
28 Liberty Street, 41st Floor
New York, NY 10005
Telephone: (212) 732-3200
Email: nemon@clm.com

KAMINSKI LAW PLLC
Shanna M. Kaminski (admitted *pro hac vice*)
P.O. Box 247
Grass Lake, Michigan 49240
Telephone: (248) 462-7111
Email: skaminski@kaminskilawpllc.com

*Attorneys for Defendants Spin Capital LLC and Avrumi Lubin*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by e-mail through the CM/ECF system on this 16th day of October, 2023, on all counsel of record on the service list below.

s/ Bernard L. Egozi

31

**Service List**

Alan R Crane
2255 Glades Rd 419A
Boca Raton, FL 33431
(561) 395-0500
Fax : (561) 338-7532
Email: acrane@furrcohen.com

Nicole Testa Mehdipour
Law Office of Nicole Testa Mehdipour, PA
6278 North Federal Highway
Suite 408
Ft Lauderdale, FL 33308
(954) 858-5880
Email: nicolem@ntmlawfirm.com

Jason S Rigoli, Esq.
Furr Cohen
2255 Glades Road
Suite 419a
Boca Raton, FL 33431
561-395-0500
Email: jrigoli@furrcohen.com

Matthew P. Leto
201 S. Biscayne Blvd., Ste. 2700
Miami, FL 33133
305-341-3155
Fax : 305-397-1168
Email: mleto@letolawfirm.com

Franklin Capital Funding, LLC
Via first-class mail

# EXHIBIT "1"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

          Case No.: 22-12790-EPK

    EXCELL AUTO GROUP, INC.          Chapter 7

        Debtor.

-------------------------------------------------------------------- /
NICOLE TESTA MEHDIPOUR, as Chapter 7 Trustee for
Excell Auto Group, Inc.          Adv. Pro. No. 23-01132-EPK

        Plaintiff.

     -v-

HI BAR CAPITAL, LLC, SPIN CAPITAL LLC,
YISROEL HERBST, MORDECHAI DOV BER
HERBST a/k/a MORDI HERBST, AVRUMI LUBIN
a/k/a JOSH LUBIN, FRANKLIN CAPITAL FUNDING,
LLC and FRANKLIN CAPITAL GROUP, LLC d/b/a
WING LAKE CAPITAL,

        Defendants.

-------------------------------------------------------------------- /

## DECLARATION IN SUPPORT OF THE MOTION TO DISMISS BY DEFENDANTS SPIN CAPITAL LLC AND AVRUMI LUBIN A/K/A JOSH LUBIN

JACOB H. NEMON, declares that the following is true and correct:

1.     I am a Partner at Carter Ledyard & Milburn LLP, counsel for Defendants Spin Capital LLC ("Spin") and Avrumi Lubin a/k/a Josh Lubin ("Lubin"; and together, "Spin Defendants"), and admitted to appear *pro hac vice* in the above-referenced matter.

2.     I make this Declaration in support of the Spin Defendants' motion to dismiss the Corrected First Amended Complaint dated September 11, 2023 (D.E. 17) ("FAC"). A copy of the FAC with Exhibits is annexed as **Exhibit A**.

3.     A copy of the electronic docket in *Hi Bar Capital LLC v. Excell Auto Group et al.,* N.Y. Sup. Kings Co. Index No. 502846/2022 ("New York Action"), as of September 21, 2023, is annexed as **Exhibit B**.

1

11223609.2

4.      A copy of the Summons and Verified Complaint filed by Hi Bar Capital LLC ("Hi Bar") in the New York Action on January 28, 2022 against Excell Auto Group, Inc. ("Debtor") as well as Karma of Palm Beach, Inc., Automotive Service Systems, Inc., KZ Consultants, Inc., Miss Kriss, LLC, Excell Auto Leasing Inc., Excell Auto Wholesale Inc., Dealer Souq USA LLC, EAG Wholesale LLC, Karma of Broward, Inc., Lavish Hero Fund, Apple 3 Investments, Inc., KZ Consultants Inc., Excell Auto Sport and Services Inc., Kristen Zankl and Scott Thomas Zankl (together, the "Debtor Affiliates"), is annexed as **Exhibit C**.

5.      A copy of the Settlement Agreement dated December 19, 2021 between Hi Bar and the Debtor and Debtor Affiliates, filed in the New York Action on February 17, 2022, is annexed as **Exhibit D**.

6.      A copy of the Stipulation of Settlement Pursuant to CPLR 3215(i) dated February 1, 2022 between Hi Bar and the Debtor and Debtor Affiliates, filed in the New York Action on March 7, 2022, is annexed as **Exhibit E**.

7.      A copy of the Amended Answer and Counterclaims filed by the Debtor and Debtor Affiliates in the New York Action on March 18, 2022, is annexed as **Exhibit F**.

8.      A copy of the Third-Party Summons and Verified Third-Party Complaint filed by the Debtor and Debtor Affiliates against Spin in the New York Action on March 18, 2022, is annexed as **Exhibit G**.

9.      A copy of the Stipulation to Discontinue Action Without Prejudice between Hi Bar and the Trustee for the Debtor, filed in the New York Action on October 26, 2022, is annexed as **Exhibit H**.

10.      A copy of the Decision and Order entered in the New York Action on January 13, 2023 (granting Hi Bar's motion for summary judgment dismissing the Debtor Affiliates' counterclaims but denying Hi Bar's motion for affirmative summary judgment due to an issue of fact whether the settlement agreements were usurious), is annexed as **Exhibit I**.

11.      A copy of the Decision and Order entered in the New York Action on May 12, 2023 (granting reargument on the usury issue and granting affirmative summary judgment to Hi Bar, and denying the Debtor Affiliates' motion for reargument of the dismissal of the counterclaims), is annexed as **Exhibit J**. *See Hi Bar Capital, LLC v. Excell Auto Grp., Inc.*, 2023 N.Y. Slip Op. 31593(U) (Kings Co. Sup. Ct. 2023).

2

11223609.2

12.     A copy of the Decision and Order entered in the New York Action on August 10, 2023 (denying the Debtor Affiliate's motion for reargument of the May 12, 2023 decision that determined the agreements were not usurious), is annexed as **Exhibit K**.

13.     A copy of Judgment entered in the New York Action on September 14, 2023 in the amount of $3,136,071.44 against the Debtor Affiliates and Zankls, and dismissing the counterclaims, is annexed as **Exhibit L**.

14.     A copy of the Revenue Purchase Agreement dated June 1, 2021, between Spin and the Debtor, Debtor Affiliates and Zankls, is annexed as **Exhibit M**.

15.     A copy of the Revenue Purchase Agreement dated January 27, 2021 by Samson MCA LLC, that was at issue in *Samson MCA LLC v. Joseph A. Russo M.D. P.C.*, 2023 N.Y. Slip Op. 04271, ¶ 2 (4th Dept. 2023), *affirming* Index No. 129401/2021, 2022 N.Y. Misc. LEXIS 1127, at *7 (Ontario Co. Sup. Ct. Apr. 1, 2022), taken from the public New York State docket for that action, is annexed as **Exhibit N**.

*I declare under penalty of perjury that the foregoing is true and correct. Executed on October 16, 2023.*

 */s/ Jacob H. Nemon*_____
JACOB H. NEMON

3

11223609.2