UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

    EXCELL AUTO GROUP, INC.

        Debtor.

Case No.: 22-12790-EPK
Chapter 7

-------------------------------------------------------------------- /

NICOLE TESTA MEHDIPOUR, as Chapter 7 Trustee for
Excell Auto Group, Inc.

        Plaintiff.

     -v-

Adv. Pro. No. 22-01132-EPK

HI BAR CAPITAL, LLC, SPIN CAPITAL LLC,
YISROEL HERBST, MORDECHAI DOV BER
HERBST a/k/a MORDI HERBST, AVRUMI LUBIN
a/k/a JOSH LUBIN, FRANKLIN CAPITAL FUNDING,
LLC and FRANKLIN CAPITAL GROUP, LLC d/b/a
WING LAKE CAPITAL,

        Defendants.

-------------------------------------------------------------------- /

**REPLY IN FURTHER SUPPORT OF
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
<u>BY DEFENDANTS SPIN CAPITAL LLC AND AVRUMI LUBIN</u>**

EGOZI & BENNET, P.A.
Bernard L. Egozi, Esq. (Florida Bar No. 152544)
2999 NE 191st Street, Suite 407
Aventura, Florida 33180
Telephone: (305) 931-3000
Facsimile: (305) 931-9343
Email: begozi@egozilaw.com

CARTER LEDYARD & MILBURN LLP
Jacob H. Nemon (admitted *pro hac vice*)
28 Liberty Street, 41st Floor
New York, NY 10005
Telephone: (212) 732-3200
Email:  nemon@clm.com

KAMINSKI LAW PLLC
Shanna M. Kaminski (admitted *pro hac vice*)
P.O. Box 247
Grass Lake, Michigan 49240
Telephone: (248) 462-7111
Email:  skaminski@kaminskilawpllc.com

*Attorneys for Defendants Spin Capital LLC and
Avrumi Lubin*

11245814.5

## **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ............................................................................................................. ii

ARGUMENT ................................................................................................................................... 1

    I.    Res Judicata and Collateral Estoppel Bar Counts I, II, IV-VIII (Usury-Based Claims) and Counts I, II and XXVII (Franklin Assignment-Based Claims) ..................................... 1

    II.    Plaintiff Lacks Standing ...................................................................................................... 4

    III.    The Settlement Agreements Bar the FAC ........................................................................... 4

    IV.    The Spin Contracts Are Not Loans (Counts IV-VIII) ........................................................ 5

        A.    The Lawfulness of the Spin Contracts Is Amply Supported by New York Caselaw .................................................................................................................. 5

        B.    Plaintiffs' Opposition Arguments Do Not Change the Analysis ............................... 7

    V.    Plaintiff Is Not Entitled to a Declaratory Judgment (Counts IV and IX) ......................... 11

    VI.    The Franklin Assignment-Based Counts (Counts I, II and XVIII) .................................... 11

    VII.    Fraudulent Conveyance Claims (Counts X, XI, XII, XIII, XIV, XV and XVI) ............... 13

CONCLUSION .............................................................................................................................. 15

i

11245814.5

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*7 W. 57th St. Realty Co., LLC v. CitiGroup, Inc.*,
  2015 U.S. Dist. LEXIS 44031 (S.D.N.Y. Mar. 31, 2015) ..........................................................2

*U.S. ex rel. 84Partners, LLC v. Nuflo, Inc.*,
  79 F.4th 1353 (11th Cir. 2023) ...............................................................................................1

*AJ Equity Grp. LLC v. SPIG Indus., LLC*,
  2023 N.Y. Slip Op. 33393(U) (Kings Co. Sup. Ct. Oct. 2, 2023) ...........................................7

*Allen v. McCurry*,
  449 U.S. 90 (1980).....................................................................................................................1

*B.E.L.T., Inc. v. Wachovia Corp.*,
  403 F.3d 474 (7th Cir. 2005) .................................................................................................14

*In re Best Pack Seafoods, Inc.*,
  29 B.R. 23 (Bankr. D. Me. 1983)). .........................................................................................2

*Buechel v. Bain*,
  97 N.Y.2d 295 (2001) ...............................................................................................................3

*Calvary LLC v. EBF Holdings, LLC*,
  2021 N.Y. Misc. LEXIS 5833 (Orange Co. Sup. Ct. Oct. 5, 2021) .........................................9

*Chase Manhattan Bank, N.A. v. Celotex Corp.*,
  56 F.3d 343 (2d Cir. 1995)........................................................................................................3

*Corcel Corp. v. Ferguson Enters.*,
  551 F. App'x 571 (11th Cir. 2014) ..........................................................................................4

*Davis v. Richmond Capital Grp.*,
  194 A.D.3d 516 (1st Dept. 2021)..........................................................................................5, 7

*Dietz v. Phipps (In re Sunde)*,
  149 B.R. 552 (Bankr. D. Minn. 1992) .....................................................................................2

*Matter of DiLascio v. Tilden Glen Head, Inc.*,
  69 A.D.3d 1171 (3d Dept. 2010) .............................................................................................8

*Dionne v. Keating (in Re Xyz Options)*,
  154 F.3d 1262 (11th Cir. 1998) ...............................................................................................1

11245814.5

*Durkin v. Shea*,
   957 F. Supp. 1360 (S.D.N.Y. 1997).................................................................................2

*Edelman v. Cymberg*,
   261 A.D. 698 (3d Dept. 1941) .......................................................................................3

*Evans v. Ottimo*,
   469 F.3d 278 (2d Cir. 2006)............................................................................................1

*Fleetwood Servs., LLC v. Richmond Capital Grp. LLC*,
   2023 U.S. App. LEXIS 14241 (2d Cir. June 8, 2023) .......................................5, 7, 9

*Fox Capital Grp., Inc. v. Relik Realty, LLC*,
   2023 N.Y. Slip Op. 32444(U) (Nassau Co. Sup. Ct. July 14, 2023) ......................10

*Freeman v. JPMorgan Chase Bank N.A.*,
   675 F. App'x 926 (11th Cir. 2017) ...............................................................................3

*In re Giorgio*,
   862 F.2d 933 (1st Cir. 1988)..........................................................................................2

*Haymount Urgent Care PC v. GoFund Advance, LLC*,
   2023 U.S. Dist. LEXIS 6914 (S.D.N.Y. Jan. 13, 2023)...........................................6, 11

*Haymount Urgent Care PC v. GoFund Advance, LLC*,
   609 F. Supp. 3d 237 (S.D.N.Y. 2022)..........................................................................6, 7

*Hi Bar Capital LLC v. Parkway Dental Servs., LLC*,
   2022 N.Y. Slip Op. 32934(U) (Kings Co. Sup. Ct. Aug. 22, 2022) .........................7

*Hord v. Envtl. Research Inst.*,
   463 Mich. 399 (2000) ...................................................................................................11

*Kapila v. TD Bank, N.A. (In re Pearlman)*,
   440 B.R. 900 (Bankr. M.D. Fla. 2010) .......................................................................14

*Kapitus Servicing, Inc. v. Point Blank Constr., Inc.*,
   2023 N.Y. Slip Op. 06087 (1st Dept. Nov. 28, 2023) ...............................................6

*Kelleran v. Andrijevic*,
   825 F.2d 692 (2d Cir. 1987)...........................................................................................1

*LG Funding, LLC v. United Senior Props. of Olathe, LLC*,
   181 A.D.3d 664 (2d Dept. 2020) ...............................................................................5, 8

*Liberty Funding Sols., LLC v. Desalis Pretzels LLC*,
   2023 N.Y. Slip Op. 31672(U) (N.Y. Co. Sup. Ct. May 15, 2023) ..........................7

iii

11245814.5

*Mercurio v. Huntington Nat'l Bank*,
  2023 Mich. App. LEXIS 5522 (Mich. Ct. App. Aug. 3, 2023) ...............................................11

*New York v. Mt. Tobacco Co.*,
  942 F.3d 536 (2d Cir. 2019)........................................................................................................3

*Oraha v. Troy Motors, Inc.*,
  2022 Mich. App. LEXIS 4706 (Mich. Ct. App. Aug. 11, 2022) .............................................12

*Pearl Delta Funding, LLC v. Ill. Collection Serv., Inc.*,
  2023 U.S. Dist. LEXIS 206803 (E.D.N.Y. Nov. 17, 2023)...............................................4, 6, 8

*Perkins v. Haines*,
  661 F.3d 623 (11th Cir. 2011) ...................................................................................................13

*Principis Capital, LLC v. I Do, Inc.*,
  201 A.D.3d 752 (2d Dept. 2022) ......................................................................................8, 9, 10

*Samson MCA LLC v. Joseph A. Russo M.D. P.C.*,
  219 A.D.3d 1126 (4th Dept. 2023) ........................................................................................5, 8

*Schalamar Creek Mobile Homeowner's Ass'n v. Adler*,
  855 F. App'x 546 (11th Cir. 2021) .............................................................................................4

*Slate Advance v. Dr Gregory S Cartmell*,
  2023 N.Y. Slip Op. 33192(U) (N.Y. Co. Sup. Ct. Sep. 13, 2023)...........................................10

*Spin Capital, LLC v. Golden Foothill Ins. Servs., LLC*,
  2023 N.Y. Slip Op. 30594(U) (N.Y. Co. Sup. Ct. Feb. 28, 2023)..................................6, 9, 10

*Streamlined Consultants, Inc. v. EBF Holdings LLC*,
  2022 U.S. Dist. LEXIS 171085 (S.D.N.Y. Sep. 20, 2022).........................................................6

*U.S. Info. Grp. LLC v. EBF Holdings, LLC*,
  2023 U.S. Dist. LEXIS 169605 (S.D.N.Y. Sep. 22, 2023)................................................6, 8, 9

*Wiand v. Lee*,
  753 F.3d 1194 (11th Cir. 2014) .................................................................................................14

*Williams v. Tilt*,
  36 N.Y. 319 (1867) .....................................................................................................................2

**Statutes**

11 U.S.C. § 541(a) .............................................................................................................................2

11 U.S.C. § 544.................................................................................................................................2

11 U.S.C. § 548(a)(1)(B)(i) & (ii)(I)................................................................................................14

11 U.S.C. § 550(a)(2)................................................................................................14

18 U.S.C. § 1962(b) ...................................................................................................4

28 U.S.C. § 1738 ........................................................................................................1

Fla. Stat. Ann. § 726.109(1)......................................................................................14

Fla. Stat. § 726.105(1)(b) .........................................................................................14

Fla. Stat. § 726.106(1)..............................................................................................14

**Other Authorities**

FRCP Rule 9(b)..........................................................................................................12

https://www.nytimes.com/2023/11/26/us/politics/trump-pardon-braun.html ...............................7

v

11245814.5

**ARGUMENT**[1]

I.    **Res Judicata and Collateral Estoppel Bar Counts I, II, IV-VIII (Usury-Based Claims) and Counts I, II and XXVII (Franklin Assignment-Based Claims)**

The New York judgment is prelusive as to the Debtor, the Debtor Affiliates, Zankls, and the Trustee under New York law (which Plaintiff concedes controls). Exh. L. Federal bankruptcy courts are required to give preclusive "effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so[.]" *Kelleran v. Andrijevic*, 825 F.2d 692, 694 (2d Cir. 1987) (quoting *Allen v. McCurry*, 449 U.S. 90, 96 (1980), citing 28 U.S.C. § 1738); *see Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006) (collateral estoppel and other preclusion principles apply in bankruptcy proceedings). Since Plaintiff's Response (Dkt. No. 47) ("Opposition")[2] does not argue that the judgment—entered after the Debtor Affiliates and Zankls lost three separate substantive motions challenging the Spin Agreements as criminally usurious or fraudulent under New York law—was improperly procured, this Court is obligated to give it preclusive effect. Plaintiffs' remaining arguments fail. *Cf. Kelleran*, 825 F.2d at 694 ("Bankruptcy courts may look beyond a state court default judgment where the judgment was procured by collusion or fraud, or where the rendering court lacked jurisdiction."); *accord Dionne v. Keating (in Re Xyz Options)*, 154 F.3d 1262, 1268-69 (11th Cir. 1998).

First, Plaintiff argues that no final judgment was entered on the Debtor's third-party complaint against Spin because Spin's motion to dismiss was stayed by the January 13, 2023 decision. Opp. ¶6. This is irrelevant. A final judgment was entered favoring Hi Bar (with whom Plaintiff alleges the Spin Parties are in privity) against the Debtor Affiliates and Zankls (with whom the Debtor is in privity) concerning the same nucleus of operative facts. *See* Motion 8-9. Even if Spin had not been named in the New York action at all, preclusion would apply. *See, e.g.*,

---

[1] Capitalized terms not otherwise defined herein have the same definition as in the Motion to Dismiss (Dkt. No. 27) ("Motion"). No waiver should be implied from the failure to repeat herein any argument in the Motion.

[2] Opposition ¶1 requests leave to amend the FAC in the event the Motion is granted, but in order to obtain this relief, the Plaintiff "must either attach a copy of the proposed amendment … or set forth the substance thereof." *U.S. ex rel. 84Partners, LLC v. Nuflo, Inc.*, 79 F.4th 1353, 1363 (11th Cir. 2023). Plaintiff fails to attach a proposed amendment and, other than with respect to Counts IV and IX (for which the Spin Defendants demonstrate below that amendment would be futile), Plaintiff does not set forth the substance of any amendment. Therefore, the request should be denied.

1

11245814.5

*7 W. 57th St. Realty Co., LLC v. CitiGroup, Inc.*, 2015 U.S. Dist. LEXIS 44031, at *84-85 (S.D.N.Y. Mar. 31, 2015) ("The other Defendants were not named in the prior state court action, but may properly be considered in privity with Citibank for <u>res judicata</u> purposes.") (dismissing RICO claims).

Second, Plaintiff argues that she is not in privity with the Debtor Affiliates or Zankls because she, as Trustee, is asserting claims on behalf of the Debtor's creditors rather than the Debtor itself. Opp. ¶¶12-14. But that analysis is not correct. It only applies with respect to fraudulent transfer claims asserted on behalf of creditors pursuant to express authorization under 11 U.S.C. § 544, not to personal claims in which the trustee stands in the Debtor's shoes. *Durkin v. Shea*, 957 F. Supp. 1360, 1371-72 (S.D.N.Y. 1997) ("Since a malpractice action is clearly a personal action of the debtor, and the trustee stands in the debtor shoes, *plaintiff is barred by collateral estoppel if [the debtor] would have been barred by collateral estoppel*.") (emphasis supplied). *Durkin* pointed to cases that "distinguish a trustee's effort to avoid a fraudulent transfer from *a trustee's attempt to assert a personal action on behalf of the debtor; in the latter case, privity is present*." *Id.* (emphasis supplied). To explain that distinction, *Durkin* noted:

> When a trustee seeks to assert a debtor's cause of action against a third party the trustee stands in the debtor's shoes[.] When seeking to avoid a preferential transfer, however, the trustee is not asserting a cause of action belonging to the debtor[.]

*Id.* (quoting *In re Best Pack Seafoods, Inc.*, 29 B.R. 23, 24-25 (Bankr. D. Me. 1983)). While Plaintiff *might* have standing to assert the Debtor's personal claims under 11 U.S.C. § 541(a), she cannot avoid the preclusive effects that would prevent the Debtor itself from pursuing those personal claims in the same manner that she might for fraudulent conveyance claims.

Here, Counts IV-VIII are based on usury, which is a personal claim of the Debtor and subject to the same limitations as the Debtor. *In re Giorgio*, 862 F.2d 933, 936 (1st Cir. 1988) (with usury claims, in contrast to avoidance claims, trustee has no broader powers than the debtor and steps in its shoes subject to the same limitations); *Dietz v. Phipps (In re Sunde)*, 149 B.R. 552, 556-57 (Bankr. D. Minn. 1992) (citing additional cases). Similarly, Plaintiff's claims to set aside the Franklin Assignment (Counts I, II and XXVII) are not fraudulent transfer claims, but *at best* personal claims subject to the same limitations as the Debtor.[3] Since the Debtor, by virtue of privity

---

[3] If Plaintiff was truly not in privity with the Debtor, as she contends, she has no standing to bring usury claims at all. *See Williams v. Tilt*, 36 N.Y. 319, 325 (1867) ("a usurious agreement cannot

2

with the Debtor Affiliates and Zankls against whom the New York judgment was rendered, would be subject to *res judicata* and collateral estoppel defenses, Plaintiff is subject to the same limitations when she stands in the Debtor's shoes.

Third, Plaintiff argues there is no "identity of action" between the FAC and the New York Counterclaims, but only identifies the fraudulent transfer claims as being different. Opp. ¶15. Plaintiff *does not argue* that Counts IV-VIII (usury-based claims) and Counts I, II and XXVII (Franklin Assignment-based claims) are not precluded. Nor could she. They are clearly barred by *res judicata* as "other claims arising out of the same transaction or series of transactions … even if they are based on different legal theories or seek different remedies." *New York v. Mt. Tobacco Co.*, 942 F.3d 536, 543 (2d Cir. 2019). Similarly, they are barred by collateral estoppel since the "decisive issue was necessarily decided in the prior action against … one in privity with a party." *Buechel v. Bain*, 97 N.Y.2d 295, 304 (2001). The Motion demonstrated that allegations against the Spin Defendants of usury and fraudulent inducement pertaining to the Franklin Assignments were all asserted in the New York Counterclaims, which were dismissed on the merits.

Finally, Plaintiff argues that she personally (rather than her privies) did not have a "full and fair opportunity" to oppose the entry of the New York judgment. Opp. ¶16. But she cites no case on point for this assertion. That is because it is contrary to law, which does not require that the party against whom preclusion is asserted themselves be a party to the first action, only that they be in functional privity with such person. *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 346 (2d Cir. 1995) ("Whether there is privity between a party against whom claim preclusion is asserted and a party to prior litigation is a functional inquiry in which the formalities of legal relationships provide clues but not solutions. … the requisite privity must be found in the substantial identity of the incentives of the earlier party with those of the party against whom *res judicata* is asserted."); *cf. Buechel*, 97 N.Y.2d at 304 (collateral estoppel privity is "amorphous"). It is undisputed that the Debtor Affiliates and Zankls—who argued the Spin Contracts are usurious

---

be assailed by a stranger, that is, one not a party to it, nor claiming under the party injuriously affected by it."); *Edelman v. Cymberg*, 261 A.D. 698, 699 (3d Dept. 1941) ("Usury is a personal defense and may be asserted only by the borrower or those in privity with him."); *accord Freeman v. JPMorgan Chase Bank N.A.*, 675 F. App'x 926, 935 n.9 (11th Cir. 2017) ("as Florida courts have explained, usury is purely a personal defense that belongs to the borrower, …The Bank, which was not a party to the loan agreement, cannot raise the affirmative defense.") (citation and quotations marks omitted).

3

and the Franklin Assignment was part of a fraudulent scheme—had a full and fair opportunity to litigate and the same incentives as Plaintiff in seeking to invalidate those contracts.

Accordingly, the Court should dismiss Counts IV-VIII (usury-based claims) and Counts I, II and XXVII (Franklin Assignment-based claims) on *res judicata* and collateral estoppel grounds.

## II.   Plaintiff Lacks Standing

The Spin Defendants demonstrate that Plaintiffs' admissions that the Debtor received proceeds from Spin totaling $2,564,437.50, for which it had paid Spin only $2,381,625.00 (*i.e.*, a net gain *to the Debtor* of $182,812.50), conclusively established that the Debtor suffered no "injury in fact" which precludes Plaintiff's standing. Motion at 10-11 In Opposition, Plaintiff argues that Spin "*purportedly* received another $2,114,312.50 *from Hi Bar* on account of the Third Spin Contract," *i.e.*, to buy out Spin's balance. Opp. ¶ 19 (emphases supplied). However, even as argued, this amount was paid by Hi Bar *out of Hi Bar's funds* and therefore is not "an injury in fact that [] is fairly traceable to the challenged *action of the defendant*." *Schalamar Creek Mobile Homeowner's Ass'n v. Adler*, 855 F. App'x 546, 549 (11th Cir. 2021) (emphasis supplied). Nor does it allege "a sufficiently direct injury" to the Debtor "proximate[ly] caused" by the Spin Defendants' alleged RICO violations (*i.e.*, the *collection* of an unlawful debt). *Corcel Corp. v. Ferguson Enters.*, 551 F. App'x 571, 575 (11th Cir. 2014) ("Courts should scrutinize proximate causation at the pleading stage and carefully evaluate whether the injury pled was proximately caused by the claimed RICO violations."). The Debtor's later $2.2 million in payments *to Hi Bar* for the First Hi Bar Contract have nothing to do with whether the Spin Contracts were a "collection of an unlawful debt" from the Debtor under RICO (18 U.S.C. § 1962(b)), or whether those contracts were usurious or not, but were instead collections of receivables or settlement payments related to separate contracts. *See* FAC, Exh. B.

## III.   The Settlement Agreements Bar the FAC

The Opposition tacitly concedes the Spin Defendants' arguments that the releases in the two Settlement Agreements executed by the Debtor and Debtor Affiliates in favor of Hi Bar released Spin as well. Motion at 11-14. In Plaintiff's Response to Hi Bar's separate motion to dismiss (Dkt. No. 48) at ¶¶2-8, she argues these releases should be avoided because she is otherwise trying to set aside the underlying obligations that were settled.  However, while she argues that, "[t]he Debtor received less than reasonable equivalent value for entering into the Hi Bar Transfer Agreement and the First Hi Bar Contract" (*id.* ¶6), she makes no specific argument

4

11245814.5

that the First Settlement Agreement and Second Settlement Agreement—which were global settlement agreements that contained broad releases that covered the Spin Parties—were themselves fraudulent conveyances.

## IV.    The Spin Contracts Are Not Loans (Counts IV-VIII)

### A.    *The Lawfulness of the Spin Contracts Is Amply Supported by New York Caselaw*

Plaintiff's argument that the Spin Contracts are loans because "[t]here are several [New York] Appellate Division cases and numerous trial court cases on the issue, whose outcomes are decided based upon the facts in each case and results vary greatly, and the Appellate Divisions have yet to settle on any specific framework for classifying MCA agreements" blinks reality. *See* Opp. ¶23

The Motion (at 14-15), set forth a three-factor test, endorsed by multiple New York Appellate Division, for weighing whether or not MCA agreements are loans as a matter of law. *E.g., Samson MCA LLC v. Joseph A. Russo M.D. P.C.*, 219 A.D.3d 1126, 1128 (4th Dept. 2023) ("Usually, courts weigh three factors when determining whether repayment is absolute or contingent: (1) whether there is a reconciliation provision in the agreement; (2) whether the agreement has a finite term; and (3) whether there is any recourse should the merchant declare bankruptcy.").[4] Plaintiff's own cases fully endorse these factors as the applicable test. *Fleetwood Servs., LLC v. Richmond Capital Grp. LLC*, 2023 U.S. App. LEXIS 14241 (2d Cir. June 8, 2023); *LG Funding, LLC v. United Senior Props. of Olathe, LLC*, 181 A.D.3d 664, 666 (2d Dept. 2020).[5] Moreover, the Motion demonstrated that *Samson MCA*, and at least five New York trial courts, analyzed the factors and ruled with respect to *the identical form agreement used in the Spin Contracts*, that the form (including its reconciliation and default provisions) do not constitute a loan. Of course, the Court in the New York action, analyzing the identical Hi Bar Contract under the identical set of facts, already determined that there was no loan or criminally usurious conduct. Exhs. I, J, K.

While Plaintiff correctly notes that New York courts generally look at "substance over form," the plethora of MCA-favorable caselaw establishes that, barring extra-contractual

---

[4] In New York, MCA-favorable decisions that apply the factors and determine MCA form agreements are not loans come down so fast that it is hard to keep up with them all.

[5] Although *Davis v. Richmond Capital Grp.*, 194 A.D.3d 516, 517 (1st Dept. 2021), did not explicitly recite the three factors in the test, it cited *LG Funding* as binding authority.

allegations simply not present here, Court have also determined that substance of an MCA is not a loan as a matter of law. *See Streamlined Consultants, Inc. v. EBF Holdings LLC*, 2022 U.S. Dist. LEXIS 171085, at *19-20 (S.D.N.Y. Sep. 20, 2022) ("the Court joins an ever-growing group of courts that have held that nearly identical agreements … [are] not a usurious loan."). Those cases generally considered the express unambiguous language of the contracts in coming to their determinations.[6]

The Opposition primarily relies on an outlier district court case, *Haymount Urgent Care PC v. GoFund Advance, LLC*, 609 F. Supp. 3d 237, 247-48 (S.D.N.Y. 2022). But that case has almost no precedential value. That very court acknowledged in a subsequent decision, "the agreements themselves, in light of their provisions for both prospective and retrospective reconciliation of the initially estimated remittance amounts to a business's actual revenues as they come in, *do not on their face constitute unlawful loans, rather than bona fide purchases of future revenues*." *Haymount Urgent Care PC v. GoFund Advance, LLC*, 2023 U.S. Dist. LEXIS 6914, at *15 n.5 (S.D.N.Y. Jan. 13, 2023) (emphasis supplied). Indeed, New York district courts since then have applied the New York Appellate Division endorsed three-factor test to analyze MCA agreements. *E.g.*, *Pearl Delta Funding, LLC v. Ill. Collection Serv., Inc.*, 2023 U.S. Dist. LEXIS 206803, at *4-5 (E.D.N.Y. Nov. 17, 2023); *U.S. Info. Grp. LLC v. EBF Holdings, LLC*, 2023 U.S. Dist. LEXIS 169605, at *20-23 (S.D.N.Y. Sep. 22, 2023). That appellate caselaw controls with respect to interpretation of substantive New York law. Plaintiff also heavily relies upon the recent trial court decision in *People v. Richmond Capital Group LLC*, 2023 NYLJ LEXIS 2487, *19-20 (N.Y. Co. Sup. Ct. Sep. 15, 2023), but fails to note that Justice Borrok actually cited the three-factor test as being determinative. Even more damning for Plaintiff, Justice Borrok actually cited his own decision from earlier this year in *Spin Capital, LLC v. Golden Foothill Ins. Servs., LLC*,

---

[6] The Court should also reject Plaintiff's contention that if "if the MCA fails any one of those factors, then the MCA is a loan." Opp. ¶ 27. The these are factors that are weighed, and failing on one factor does not automatically render the agreement a loan. *See Kapitus Servicing, Inc. v. Point Blank Constr., Inc.*, 2023 N.Y. Slip Op. 06087, ¶¶ 1-2 (1st Dept. Nov. 28, 2023) (denying merchant's motion to dismiss based on usury where, although "the agreement provides for recourse should Point Blank declare bankruptcy," it also "provides that the term for repayment is indefinite" and was unclear whether it conferred a right of reconciliation).

11245814.5

2023 N.Y. Slip Op. 30594(U) (N.Y. Co. Sup. Ct. Feb. 28, 2023), where he determined that *an identical Spin contract was not usurious as a matter of law*.[7] The same result should follow here.

### B.    Plaintiffs' Opposition Arguments Do Not Change the Analysis

Plaintiff's additional arguments—most of which have been rejected by New York courts that have extensively considered every angle that merchants use to avoid their legitimate MCA agreements—do not change that the Spin Agreements are not loans.

First, Plaintiff argues the Debtor was always liable to pay the remittance amounts, based on a provision on the first page of the Spin Contracts that says it is "responsible for ensuring that the agreed Remittance to be debited by [Spin] remains in the account …" Opp. ¶ 29. But the Spin Contracts state in the prior paragraph, "[t]he Remittance is a good faith estimate of [Spin's] share of the future revenue stream," and that a "delay in collecting its receivables … does not constitute a breach." Exh. H at 1. Furthermore, the "Events of Default" section provide not having the daily remittance shall only be a default where the Debtor "fails to give [Spin] 24 hours advance notice that there will be insufficient funds in the account such that the ACH of the Remittance amount will not be honored." *Id.* §3.1(d). Read together, there is no default if the Debtor simply gives Spin advance notice that its remittances have slowed such that there will be insufficient funds to debit. New York courts have repeatedly held agreements with such provisions are not loans. *See, e.g.*, *AJ Equity Grp. LLC v. SPIG Indus., LLC*, 2023 N.Y. Slip Op. 33393(U) (Kings Co. Sup. Ct. Oct. 2, 2023); *Liberty Funding Sols., LLC v. Desalis Pretzels LLC*, 2023 N.Y. Slip Op. 31672(U), ¶ 2 (N.Y. Co. Sup. Ct. May 15, 2023). As one case cited by Plaintiff noted, such provisions ensure that a merchant bears responsibility for providing the funder notice of its diminished receivables. *Hi Bar Capital LLC v. Parkway Dental Servs., LLC*, 2022 N.Y. Slip Op. 32934(U), ¶ 9 (Kings Co. Sup. Ct. Aug. 22, 2022) ("the merchant, like all merchants, must bear the responsibility for making a timely reconciliation request gauging the trajectory of its daily revenue").

Second, Plaintiff argues that the Spin Contracts were for a definite time period because there was a fixed remittance amount. Opp. ¶30. Plaintiff acknowledges, as she must, that New York courts have generally held that the presence in the MCA contract of a mandatory

---

[7] The Court should also note that the supposedly adverse cases cited by Plaintiff, including without limitation *Haymount, Richmond Capital* and *Davis*, included egregious factual circumstances and traced back to a single MCA industry bad actor named Jonathan Braun. *See* https://www.nytimes.com/2023/11/26/us/politics/trump-pardon-braun.html.

7

reconciliation provision—which allows the merchant to enlarge the duration of the contract by obtaining reductions of fixed remittance amounts to reflect diminished receivables—generally meets the lack of finite term test. *See Principis Capital, LLC v. I Do, Inc.*, 201 A.D.3d 752, 754 (2d Dept. 2022) ("Concomitantly, as the amount of the monthly payments could change, the term of the agreement was not finite."); *U.S. Info. Grp.*, 2023 U.S. Dist. LEXIS 169605, at *23 (S.D.N.Y. Sep. 22, 2023) ("The existence of a valid reconciliation provision goes to another consideration under LG Funding, which looks to whether the agreement contains a finite term.").

Instead, Plaintiff makes the unsupported argument that the reconciliation provisions in the Spin Contracts are illusory, not mandatory. Plaintiff is wrong: reconciliation is not up to Spin's discretion, but is mandatory upon its receiving a request supported by documentation evidencing diminished receivables. *See, e.g.*, *Pearl Delta Funding*, 2023 U.S. Dist. LEXIS 206803, at *5 ("The RPA's Reconciliation Clause is not the type of illusory arrangement considered in *LG Funding*, where the withdrawing party could adjust the amount of payments 'at its sole discretion and as it deems appropriate.' This Reconciliation Clause grants the withdrawing party no such discretion and instead provides for a mandatory decrease in the withdrawal amount if certain other conditions are met.") (citation omitted). Indeed, the very reconciliation and adjustment provisions in the Spin Contracts have been held to be mandatory by multiple New York courts, including the Appellate Division. *See* Exh. M §§1.3 & 1.4 (provisions upheld by *Samson MCA*, 219 A.D.3d at 1128); Motion at 15 fn. 10 (citing cases). These cases gut Plaintiff's argument that "the actual structure of the provision makes it impossible to use and leaves Spin with substantial discretion to prevent adjustment," since it has the right to request "reasonable documentation" to verify the Debtor's receivables as part of the reconciliation process, or that "reconciliation can only happen retroactively provided that the Debtor is not in default." Opp. ¶¶31-32. Clearly, §§1.3 & 1.4 of the Spin Contracts suffice as mandatory reconciliation provisions under New York law.[8]

In any event, New York courts have repeatedly held that a merchant is barred from challenging whether a reconciliation provision is a sham, where, as here, there is no allegation that

---

[8] Plaintiff argues the reconciliation provision was unenforceable because the Debtor was allegedly already in default as of the date of its entry into the Spin Contracts since "[Spin] knew that the Debtor and non-debtor entities had other loans." Opp. ¶31. But, since Plaintiff alleges Spin knew of these other financings, Spin would be estopped from enforcing such provisions in which the Debtor represented it was not a party to prior funding agreements or asserting that as an event of default. *See Matter of DiLascio v. Tilden Glen Head, Inc.*, 69 A.D.3d 1171, 1172 (3d Dept. 2010).

the merchant ever followed the provision and was denied a reconciliation. *E.g.*, *Spin Capital*, 2023 N.Y. Slip Op. 30594(U), at \*9-10 (Justice Borrok noted, "it does not appear that there is any basis for the allegation that the reconciliation process was a sham and that the defendants would not have received an appropriate credit, because on the record before the Court, it does not appear that the Counterclaim Plaintiffs even allege that they requested a reconciliation or adjustment of the payments and that it was done improperly."); *U.S. Info. Grp.*, 2023 U.S. Dist. LEXIS 169605, at \*22-23 ("The reconciliation provision may have permitted plaintiffs to adjust their payments to Everest, but plaintiffs do not allege that they invoked it or considered doing so."). In contrast, in the attorney general enforcement action relied on by Plaintiff, Justice Borrok noted that although there was evidence that the funders required all of their hundreds of merchants to submit their monthly submissions of bank statements each month for reconciliation purposes, the defendants "conceded that the mandatory reconciliation never occurred" or "invoked their Fifth Amendment protection against self-incrimination." *Richmond Capital Grp.*, 2023 NY Slip Op 50975(U), at ¶ 10. Here, Plaintiff makes no allegation that any request for reconciliation was made, let alone denied.

Third, Plaintiff acknowledges that under §3.1(d), it is expressly *not an event of default* where a debit is rejected for "not sufficient funds" if the merchant provides Spin with 24 hours' notice. Nevertheless, she argues that the Spin Contracts' fee schedule converts the entire structure into a loan because it provides a "NSF" fee upon multiple bounces. Opp. ¶ 33.[9] But the FAC has never alleged that Spin actually charges the NSF fee where the merchant provides timely notice, let alone that the Debtor was ever charged that fee where it simply had no receivables.

Fourth, Plaintiff admits that the Spin Contracts expressly state bankruptcy is not an event of default (Opp. ¶35), which itself is sufficient to make them purchases of receivables. *Principis Capital*, 201 A.D.3d at 754. Nonetheless, Plaintiff argues—without factual support—that a bankruptcy filing would necessarily trigger nearly every other event of default provision. That

---

[9] Of course, generally speaking, nonpayment or not sufficient funds alone is not an event of default. Rather, Spin can call an event of default for intentional blocking of the account. *See* Spin Contracts §3.1(l) (making event of default where "Merchant's bank returns a code *other than NSF* …"); *see generally Calvary LLC v. EBF Holdings, LLC*, 2021 N.Y. Misc. LEXIS 5833, at \*15 (Orange Co. Sup. Ct. Oct. 5, 2021) ("This provision quite clearly does not insulate Everest from the assumed risk of Cavalry's slow down or failure due to adverse financial conditions, but only from bad faith efforts to defeat Everest's rights under the Agreement.").

11245814.5

argument is nonsensical and has been rejected. *See Fox Capital Grp., Inc. v. Relik Realty, LLC*, 2023 N.Y. Slip Op. 32444(U), ¶¶ 10-11 (Nassau Co. Sup. Ct. July 14, 2023) (not a loan where MCA agreement provides that funder cannot rely on its remedies in the event of bankruptcy filings where merchant otherwise complies with its obligations). Here, Spin Contracts §3.6 provides that Merchant is required to give "written notice" within 24 hours" of a bankruptcy filing. With timely notice of the filing, Spin would not be able to default the Debtor for any other events attendant to a bankruptcy filing.[10]

Fifth, Plaintiff argues the weekly remittances *agreed to by the Debtor* were allegedly not good faith estimates of the Debtor's receipts. Opp. ¶38. But Plaintiff does not attempt to distinguish the holding in *Spin Capital*, 2023 N.Y. Slip Op. 30594(U) at *9, which rejected a claim by merchant that the initial daily payment was not a good faith estimate of the receivables, since "even if there were misstatements [about the value of the receivables], which there were not, the misstatements were made by the seller-defendants of the accounts receivable not the purchasers-Counterclaim Defendants." Nor does Plaintiff address the arguments about why its allegations that these are not good faith estimates are simply wrong (since they do not account for receivables of the Debtor Affiliates). *See* Motion at 20.

Sixth, Plaintiff argues that the Spin Contracts' provision allowing Spin to accelerate the full balance of future receivables in the event of a merchant default converts the MCA agreement into a loan.  Opp. ¶39. There is not support under New York law for this argument. Under New York law, this is the lawful remedy in an event of default under a valid MCA agreement and does not convert the transaction into a loan. *E.g.*, *Principis Capital*, 201 A.D.3d at 753-754 (granting summary judgment enforcing default provision providing "the full uncollected purchased amount would become immediately due and payable in full …"). Similarly, each of the protections referenced in Opp. ¶¶40-42 simply ensure collectability of the purchased receivables or the amount in default if the merchant fails to abide by its covenants.

Because the Spin Contracts, as a matter of law, are not loans, there can be no criminal usury and all of Plaintiff's usury-based claims must be dismissed.

---

[10] "[T]he fact that the guarantor's obligations under the agreement would continue if the merchant was declared bankrupt is not a basis to find that the agreement is a loan." *Slate Advance v. Dr Gregory S Cartmell*, 2023 N.Y. Slip Op. 33192(U), ¶ 6 (N.Y. Co. Sup. Ct. Sep. 13, 2023) (alteration, quotation marks and citation omitted).

10

11245814.5

## V.    <u>Plaintiff Is Not Entitled to a Declaratory Judgment (Counts IV and IX)</u>

Plaintiff concedes the Spin Defendants' extensive arguments that Counts IV and IX, as pleaded, fail to state a claim against Plaintiff under New York usury law or as being unconscionable. Motion at 22-24. Instead, Plaintiff simply states that "the Trustee will amend seeking a determination that if the Court finds the First, Second and Third Spin Contracts void under New York law, that a determination be made that Florida law applies under New York's center of gravity test." Opp. ¶45. But this request is *pointless* and should be rejected as *futile*. The Spin Contracts are expressly governed by New York law, and neither party disputes that. Both parties make their contractual enforceability arguments by citation to New York law. Hence, if *arguendo* the Court determines that that Agreements are void under New York usury law, there is no need for an entire choice-of-law analysis to figure out if they are also void under Florida usury law.[11] Therefore, Counts IV and IX should be dismissed as unopposed without leave to amend.

## VI.    <u>The Franklin Assignment-Based Counts (Counts I, II and XVIII)</u>

None of Plaintiff's arguments overcome the critical defects in her two counts seeking to vindicate Franklin's rights by setting aside the Franklin Assignment. Spin, Franklin and the Debtor, all sophisticated commercial actors acting at arms' length, never discussed nor intended for the Franklin Assignment to cover the Third Spin Contract, and if Franklin or the Debtor wanted it to do so, they should have asked. *See* Motion at 25-27. Despite the term "Obligations" under the Franklin Assignment being expressly defined to include the First and Second Spin Contracts and their accompanying documentation *only*, Plaintiff says the Court should read the Third Spin Contract into the definition because Spin did not disclose the existence of the Third Spin Contract to Franklin when Franklin sent the Franklin Assignment to Spin to execute. Opp. ¶¶49-61.

But, under applicable Michigan law, "[i]n order for the suppression of information to constitute silent fraud there must be a legal or equitable duty of disclosure." *Hord v. Envtl. Research Inst.*, 463 Mich. 399, 412 (2000). There is only "a duty of disclosure in relation to a claim of silent fraud when there exists a fiduciary or fiduciary-like relationship or when a party has made a specific inquiry or expressed a particularized concern." *Mercurio v. Huntington Nat'l Bank*, 2023

---

[11] This case is not akin to *Haymount Urgent Care*, 2023 U.S. Dist. LEXIS 6914, at *9, where the defendants, in successfully defeating class certification, contended that the law of the state where each of their hundreds of merchants were located should apply such that there was no commonality of claims amongst the proposed class of all of the funders' merchants. Here, the applicable law is agreed by all parties.

11

11245814.5

Mich. App. LEXIS 5522, at *28 (Mich. Ct. App. Aug. 3, 2023). Here, Nothing in the FAC indicates the Spin Defendants had a duty to speak or disclose information to Plaintiff, let alone with the particularity required to state a fraud claim under FRCP Rule 9(b). Spin is not alleged to be a fiduciary of Franklin and the FAC contains no other specific allegations of any conversations between Franklin, the Debtor or Spin concerning the circumstances of the execution of the Franklin Assignment. To the contrary, the sum of the allegations is that the Spin Defendants simply executed the Franklin assignment drafted by Franklin (FAC ¶¶188, 197, 201, 482) and represented that "total Obligations as of October 21, 2021 is $1.00." *Id.* ¶189.

As explained in the Motion, there was nothing materially false about that representation because the First and Second Spin Contracts had no balance. *See also* Opp. ¶56 (admitting these contracts were refinanced). The only balance due Spin from the Debtor and Debtor Affiliates as of October 21, 2021 was under the Third Spin Contract, which Franklin never inquired about from Spin. Nor was there anything untrue about saying Spin had not transferred the "Obligations" after transferring the Third Spin Contract balance to Hi Bar, as argued by Plaintiff (*id.* ¶22), since the Third Spin Contract not part of the definition of "Obligations." Nor is there express language in the Franklin Assignment, or any other supporting allegations, stating "the intent of the parties was for Spin to sell, transfer, and assign all obligations owed to Spin by the Debtor including the Third Spin Contract." *Id.* ¶58. That interpretation is simply Plaintiff's gloss (as a stranger to the contract) on language that does not state what Plaintiff may wish Franklin had said.

If that was Franklin's intention, it was sophisticated enough to expressly state as much in drafting the Franklin Assignment, and in doing due diligence with respect to the Debtor to review its financial history to determine whether it had obligations to other creditors. Franklin cannot have been defrauded where it "has the means to determine that a representation is not true" or "had information available to [it] that [it] chose to ignore," as it did here. *Oraha v. Troy Motors, Inc.*, 2022 Mich. App. LEXIS 4706, at *8 (Mich. Ct. App. Aug. 11, 2022). "[I]t is insufficient simply to state that a [party's] conduct was fraudulent." *Id.* at *9 (citation omitted). For example, Franklin clearly knew the Debtor previously had a multimillion dollar balance under the Second Spin Contract (hence it sent the Franklin Assignment specifically mentioning this contract). Yet, the FAC is devoid of any allegation that Franklin reviewed the Debtor's or Debtor Affiliates' bank statements to ascertain if and when that balance was fully delivered to Spin. Franklin also must have known about the weekly debits from Debtor that continued through October 20, 2021

12

(identified in FAC Exh. A). Yet, there is no allegation Franklin requested a payoff letter prior to sending the Franklin Assignment to ascertain which contract that was paid under and what it would take to satisfy the balance. The FAC gives the distinct impression that Franklin did bad and incomplete underwriting, not that it was defrauded in any manner by Spin (let alone one pleaded with particularity).

Finally, Plaintiff's promissory estoppel arguments fail because the FAC simply alleges no promise made by the Spin Defendants to Franklin, nor do her allegations meet any other element of the claim. *See* Motion at 26-27. Even if the Debtor was a third-party beneficiary of the Franklin Assignment, as she argues (Opp. ¶63), she also fails to identify any alleged promise by Spin to the Debtor that it detrimentally relied upon, let alone that the Debtor or its principals could not have ascertained through their own financial records (evidencing continual weekly payments through October 20, 2021) that there remained a balance to Spin under the Third Spin Contract.

## VII.    <u>Fraudulent Conveyance Claims (Counts X, XI, XII, XIII, XIV, XV and XVI)</u>

Plaintiff's constructive fraudulent conveyance claims against the Spin Defendants (Counts XI, XII, XIII, XV and XVI) must be dismissed because Plaintiff fails to allege how the Debtor did not receive reasonably equivalent value for the Spin Contracts, under which the Debtor received $2,564,437.50 and paid Spin a total of $2,381,625.00 (*i.e., a net benefit to the Debtor* of $182,812.50). *See* Motion at 27-28. Indeed, Plaintiff seems to have mostly abandoned its constructive fraudulent conveyance counts based on its assertions that "[t]he Spin Defendants focus solely on constructive fraud statutes and case law," but that "[t]he Trustee has asserted facts to support actual fraud based upon a totality of the circumstances." Opp. ¶¶69-70. Plaintiffs intentional fraudulent conveyance claims (Counts X and XIV) fail as well.

First, Plaintiff does not dispute that even if the Debtor was operated as a "Ponzi scheme," Spin is not liable since "a defrauded investor gives 'value' to the Debtor in exchange for a return of the principal amount of the investment, but not as to any payments in excess of principal." *Perkins v. Haines*, 661 F.3d 623, 627 (11th Cir. 2011). The FAC's allegations clearly show Spin received no more than its principal investment from the Debtor.

Instead, Plaintiff argues that the Spin Defendants did not provide "reasonably equivalent value" to the Debtor because Spin was allegedly paid $2,114,312.50 *by Hi Bar* to sell its balance in the Third Spin Contract, and that the Debtor *subsequently* paid $2.2 million to Hi Bar. Opp. ¶68. However, the funds allegedly paid to Spin did not belong to the Debtor, but to Hi Bar. Therefore,

13

on its face this argument fails because this alleged amount is not a "transfer" or "obligation" of the Debtor under 11 U.S.C. § 548(a)(1)(B)(i) & (ii)(I) or Fla. Stat. §§ 726.105(1)(b) & 106(1). Moreover, the Debtor's payment of $2.2 million *to Hi Bar* (after Spin's sale of its rights to Hi Bar) cannot retroactively be deemed a transfer to Spin, since Spin is not alleged to be a *subsequent* transferee of those $2.2 million so as to be liable for their conveyance under 11 U.S.C. § 550(a)(2) or Fla. Stat. Ann. § 726.109(1).

Second, the Opposition makes only the conclusory argument that the FAC as a whole "detail[s] that the Debtor was being run as a Ponzi scheme," even if not specifically alleged in Counts X and XI. Opp. ¶66. But the provisions of the FAC referenced by Plaintiff do not allege a "Ponzi scheme," since they merely allege that the weekly remittances under the Spin Contracts did not accurately reflect fluctuating amounts of receivables to the Debtor or the debunked notion that the reconciliation provision is "illusory." FAC ¶¶52, 57, 61, 62, 63, 64, 65. Plaintiff does not demonstrate how these allegations, even if true, meet the legal definition of a Ponzi scheme. *See Wiand v. Lee*, 753 F.3d 1194, 1201 (11th Cir. 2014) ("A Ponzi scheme uses the principal investments of newer investors, who are promised large returns, to pay older investors what appear to be high returns, but which are in reality a return of their own principal or that of other investors."). Plaintiff does not identify other "investors" whose principal was allegedly wrongly paid to Spin. She just uses "Ponzi scheme" casually as a catch-all phrase for a payment structure she wants to undo.

Furthermore, Plaintiff fails to distinguish the holdings in *Kapila v. TD Bank, N.A. (In re Pearlman)*, 440 B.R. 900, 904 (Bankr. M.D. Fla. 2010), that payments of principal on a loan (i) *cannot* be the predicate for a "Ponzi scheme" since they are not investments and have a fixed rate of return rather that speculative equity investments, and (ii) are not considered fraudulent transfers because they extinguish an antecedent debt. Plaintiff argues that Charles Ponzi's original scheme involved "borrowing money on his promissory notes" where he borrowed money from lenders claiming he would use it for investment purposes and then paid each lender out of principal received from another lender. Opp. ¶67. But, once again, Plaintiff fails to identify any borrowers or lenders whose principal is being used in such a manner, let alone that Spin received any amount from the Debtor in excess of its principal investment. Lacking such specificity, Plaintiff's arguments fail. *See B.E.L.T., Inc. v. Wachovia Corp.*, 403 F.3d 474, 477 (7th Cir. 2005) ("Being paid for services rendered is a different thing entirely. Someone who sells a car at the market price

14

11245814.5

to Charles Ponzi is entitled to keep the money without becoming liable to Ponzi's victims for the loss created by his scheme. First Union loaned money to Lacrad at the market price, in the ordinary course of its business, and is presumptively entitled to keep the repayment."). Therefore, all fraudulent conveyance counts against the Spin Defendants should be dismissed.

## CONCLUSION

WHEREFORE, the Court should dismiss the FAC with prejudice.

Dated: December 11, 2023

Respectfully submitted,

EGOZI & BENNETT, P.A.

By: */s/ Bernard L. Egozi, Esq.*
Bernard L. Egozi, Esq. (Florida Bar No. 152544)
2999 NE 191st Street, Suite 407
Aventura, Florida 33180
Telephone: (305) 931-3000
Facsimile: (305) 931-9343
Email: begozi@egozilaw.com

CARTER LEDYARD & MILBURN LLP
Jacob H. Nemon (admitted *pro hac vice*)
28 Liberty Street, 41st Floor
New York, NY 10005
Telephone: (212) 732-3200
Email: nemon@clm.com

KAMINSKI LAW PLLC
Shanna M. Kaminski (admitted *pro hac vice*)
P.O. Box 247
Grass Lake, Michigan 49240
Telephone: (248) 462-7111
Email: skaminski@kaminskilawpllc.com

*Attorneys for Defendants Spin Capital LLC and Avrumi Lubin*

11245814.5

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served to all parties registered with CM/ECF to receive electronic notice on the 11th day of December, 2023.


By: */s/ Bernard L. Egozi*

16

11245814.5