**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

In re:

        EXCELL AUTO GROUP, INC.

            Debtor.

Case No.: 22-12790-EPK
Chapter 7

------------------------------------------------------------------ /

NICOLE TESTA MEHDIPOUR, as Chapter 7 Trustee for
Excell Auto Group, Inc.

            Plaintiff.

      -v-

HI BAR CAPITAL, LLC, SPIN CAPITAL LLC,
YISROEL HERBST, MORDECHAI DOV BER
HERBST a/k/a MORDI HERBST, AVRUMI LUBIN
a/k/a JOSH LUBIN, FRANKLIN CAPITAL FUNDING,
LLC and FRANKLIN CAPITAL GROUP, LLC d/b/a
WING LAKE CAPITAL,

            Defendants.

Adv. Pro. No. 23-01132-EPK

------------------------------------------------------------------ /

## HI-BAR CAPITAL, LLC, MORDECHAI HERBST, AND YISROEL HERBST'S REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS FIRST AMENDED COMPLAINT

Defendants, Hi-Bar Capital, LLC ("Hi-Bar"), Mordechai Herbst, and Yisroel Herbst, (collectively, "Hi-Bar Defendants"), file the following Reply to the Trustee's Opposition to their Motion to Dismiss Plaintiff's First Amended Complaint, and state the following in support thereof[1]:

---

[1] In her response, the Trustee incorporates the arguments made in response to Spin's Motion to Dismiss. [D.E. 48 at FN 2]. To the extent applicable, Hi Bar incorporates by reference Spin's position.

## ARGUMENT

**I.      The Claims Asserted Against the Hi-Bar Defendants are Barred by the Releases in the Debtor's Two Settlement Agreements**

The Hi-Bar Defendants moved to dismiss Counts III, VI, VII, VIII, XVII, XVIII, XIX, XX, XXI, XXII, XVIII, XXXIV, XXV, and XXVIII on the basis that each claim is barred by the release language contained in the First and Second Settlement Agreements. In opposition, the Trustee contends that the release language is irrelevant because she is claiming that Settlement Agreements themselves are fraudulent transfers. However, Counts III, VI, VIII, and XVII, which seek declaratory relief on the basis of usury and damages based on RICO and conspiracy, are debtor actions. "[I]n actions brought by the trustee as successor to the debtor's interest under section 541, the trustee stands in the shoes of the debtor and can only assert those causes of action possessed by the debtor." *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 885 F.2d 1149, 1154 (3d Cir. 1989). "Conversely, the trustee is, of course, subject to the same defenses as could have been asserted by the defendant had the action been instituted by the debtor." *Id. citing* Collier on Bankruptcy, ¶ 323.02[4]; *See also In re ICPW Liquidation Corp.,* 600 B.R. 640, 663 (Bankr. C.D. Cal. 2019)(enforcing prepetition release of state law causes of action, "such as the claims asserted in the Complaint for duress, breach of the covenant of good faith and fair dealing, and unjust enrichment claims" which did not waive protections under the Bankruptcy Code.); *Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1150 (11th Cir. 2006) ("A bankruptcy trustee stands in the shoes of the debtor and has standing to bring any suit that the debtor could have instituted when the debtor filed for bankruptcy, and there is no suggestion in the text of the Bankruptcy Code that the trustee acquires rights and interests greater than those of the debtor.") In light of the release language contained in the Settlement Agreements, these claims are barred.

As it relates to the fraudulent transfer claims, which are creditor-based claims, the Trustee argues that these causes of action were properly pled because "the Debtor was obligated to pay Spin $2,114,312.50 under the Third Spin Contract [and] as part of the Hi Bar Transfer Agreement, Spin sold the debt to Hi-Bar." *See* ¶ 6. The Trustee further states that "Hi Bar paid nothing to the Debtor in exchange for entering into the First Hi Bar Contract but became obligated to pay Hi-Bar $3,177,880.00 under more onerous terms." *Id.*  However, the Trustee's argument that "Hi Bar paid nothing" is belied by the documents attached to the FAC. First, the Balance Transfer Agreement

2

provides for the payment of the "remaining RTR" to Spin through funds received from Hi-Bar. *See* FAC, at Ex. H. And while the FAC states that "Hi-Bar did not transfer any funds to the Debtor on account of the First Hi-Bar Contract (FAC ¶ 116), that statement is incorrect because the Balance Transfer Agreement "authorized [Hi-Bar] to deduct $2,114,312,50 out of the New Merchant Agreement." *Id.* In other words, Hi-Bar paid the Debtor's obligation to Spin in consideration for the First Hi Bar Contract. Since the Debtor cannot plausibly allege a lack of reasonably equivalent value against Hi-Bar, the fraudulent transfer claims fail.

Finally, because fraudulent transfer claims are based on allegations of usury, even if she is standing in the shoes of the creditors, the Trustee cannot assert those claims. "Section 544 allows a trustee, **on behalf of all estate creditors**, to step into the shoes of any actual, unsecured creditor to avoid the debtor's fraudulent transfers if such creditor could reach the transferred property on the date of bankruptcy." *In re C.D. Jones & Co., Inc.*, 482 B.R. 449, 457 (Bankr. N.D. Fla. 2012)(emphasis added). But, because the trustee is acting on behalf of the creditors in these claims, she cannot raise usury since it is a "personal defense." *Adana Investing, Inc. v. Wells Fargo Bank, N.A.*, 2017 WL 3668553, at *14 (S.D. Fla. Apr. 10, 2017) (finding that bank, which was not party to agreement, was prohibited from raising usury because it is a "personal defense.") *See also Drill S., Inc. v. Int'l Fid. Ins. Co.,* 234 F.3d 1232, 1238 n.9 (11th Cir. 2000) (discussing that third party may not raise personal defenses). Furthermore, New York law [] [only] allows a corporation to assert criminal usury as a defense, but not as a claim for affirmative relief." *Colonial Funding Network, Inc. for TVT Capital, LLC v. Epazz, Inc.,* 252 F. Supp. 3d 274, 279 (S.D.N.Y. 2017). Accordingly, for the reasons set forth in Hi Bar's Motion to Dismiss and in this Reply, Counts III, VI, VII, VIII, XVII, XVIII, XIX, XX, XXI, XXII, XVIII, XXXIV, XXV, and XXVIII should be dismissed.

## II.    The Hi Bar Agreements are Not Loans or Criminally Usurious

### 1.    *The Lawfulness of the First Hi Bar Contract Is Supported by New York Law*

Even assuming the releases were ineffective, the core claim being presented by Plaintiff is that the Hi Bar Contract is a criminally usurious loan. As set forth in Hi Bar's Motion to Dismiss, a New York court has previously determined that the Hi Bar Contract, and First and Second Settlement Agreements at issue in this very case were not usurious as a matter of law since they have face values of $4,016,820.00 and $3,800,000.00 respectively. *See e.g. Hi Bar Capital, LLC v. Excell Auto Group, Inc.,* 2023 N.Y. Slip Op. 31593(U), 3, 2023 WL 3431299, at *4 (N.Y.Sup.)

3

("the Purchase Agreement, Settlement Agreement and Stipulation—concern amounts greater than $2.5 million. As such, defendants' defense of criminal usury fails as a matter of law."). This Court should reach the same conclusion.

Hi Bar's Motion to Dismiss identified the three-factor test, endorsed by multiple New York Appellate Division, for weighing whether or not MCA agreements are loans as a matter of law. *E.g., Samson MCA LLC v. Joseph A. Russo M.D. P.C.*, 219 A.D.3d 1126, 1128 (4th Dept. 2023) ("Usually, courts weigh three factors when determining whether repayment is absolute or contingent: (1) whether there is a reconciliation provision in the agreement; (2) whether the agreement has a finite term; and (3) whether there is any recourse should the merchant declare bankruptcy."). Indeed, the cases cited by the Trustee also state these factors as the applicable test. *Fleetwood Servs., LLC v. Richmond Capital Grp. LLC*, 2023 U.S. App. LEXIS 14241 (2d Cir. June 8, 2023); *LG Funding, LLC v. United Senior Props. of Olathe, LLC*, 181 A.D.3d 664, 666 (2d Dept. 2020).[2] Moreover, Hi Bar's Motion demonstrated that *Samson MCA*, and other New York trial courts, analyzed the factors and ruled with respect to that the form, which is consistent with that of Hi Bar (including its reconciliation and default provisions) does not constitute a loan.

Plaintiff correctly notes that New York courts generally look at "substance over form," but the MCA-favorable caselaw establishes that, barring extra-contractual allegations that do not exist here, Courts have also determined that substance of an MCA is not a loan as a matter of law. *See Streamlined Consultants, Inc. v. EBF Holdings LLC*, 2022 U.S. Dist. LEXIS 171085, at *19-20 (S.D.N.Y. Sep. 20, 2022) ("the Court joins an ever-growing group of courts that have held that nearly identical agreements … [are] not a usurious loan."). Those cases generally considered the express unambiguous language of the contracts in reaching their conclusions.

The Trustee primarily relies on an outlier district court case, *Haymount Urgent Care PC v. GoFund Advance, LLC*, 609 F. Supp. 3d 237, 247-48 (S.D.N.Y. 2022). But, that same court acknowledged in a subsequent decision, "the agreements themselves, in light of their provisions for both prospective and retrospective reconciliation of the initially estimated remittance amounts to a business's actual revenues as they come in, *do not on their face constitute unlawful loans, rather than bona fide purchases of future revenues.*" *Haymount Urgent Care PC v. GoFund Advance, LLC,* 650 F. Supp. 3d 204, FN 5 (S.D.N.Y. 2023) (emphasis supplied). Subsequently,

---

[2] Although *Davis v. Richmond Capital Grp.*, 194 A.D.3d 516, 517 (1st Dept. 2021), did not explicitly recite the three factors in the test, it cited *LG Funding* as binding authority.

New York district courts have applied the New York Appellate Division endorsed three-factor test to analyze MCA agreements. *E.g.*, *Pearl Delta Funding, LLC v. Ill. Collection Serv., Inc.*, 2023 WL 8003336, *2 (E.D.N.Y. Nov. 17, 2023); *U.S. Info. Grp. LLC v. EBF Holdings, LLC*, 2023 WL 6198803, *6 (S.D.N.Y. Sep. 22, 2023).

Plaintiff also relies upon the recent trial court decision in *People by James v. Richmond Capital Group LLC,* 195 N.Y.S.3d 637 (N.Y. Sup. Ct. 2023) but fails to note that the Court cited the three-factor test as being determinative. In addition, the Court cited its prior decision in *Spin Capital, LLC v. Golden Foothill Ins. Services, LLC*, 2023 N.Y. Slip Op. 30594(U), 2, 2023 WL 2265717, at *1 (N.Y.Sup.)¸where it was determined that *an identical Spin contract* (which is identical to the Hi Bar Contract) *was not usurious as a matter of law*. The same result should follow here.

### 2.    *Plaintiffs' Opposition Arguments Do Not Change the Analysis*

*First*, Plaintiff argues the Debtor was always liable to pay the remittance amounts, based on a provision on the first page of the contract that says it is "responsible for ensuring that the agreed Remittance to be debited by [Hi Bar] remains in the account …" Response at ¶ 31. But the Hi Bar Contract state in the prior paragraph, "[t]he Remittance is a good faith estimate of [Hi Bar's] share of the future revenue stream," and that a "delay in collecting its receivables … does not constitute a breach." Exh. I at pg. 1. Furthermore, the "Events of Default" section provide not having the daily remittance shall only be a default where the Debtor "fails to give [Hi Bar] 24 hours advance notice that there will be insufficient funds in the account such that the ACH of the Remittance amount will not be honored." *Id.* §3.1(d). Read together, there is no default if the Debtor gives Hi Bar advance notice that its remittances have slowed such that there will be insufficient funds to debit. New York courts have held agreements with such provisions are not loans. *See e.g, AJ Equity Group LLC v. Spig Industry, LLC*, 2023 N.Y. Slip Op. 33393(U), 2, 2023 WL 6392597, at *1 (N.Y.Sup.); *Liberty Funding Solutions, LLC v. Desalis Pretzels LLC,* 2023 N.Y. Slip Op. 31672(U), 3, 2023 WL 3480965 (N.Y.Sup.). As one case cited by Plaintiff noted, such provisions ensure that a merchant bears responsibility for providing the funder notice of its diminished receivables. *Hi Bar Capital LLC v. Parkway Dental Services, LLC,* 2022 N.Y. Slip Op. 32934(U), 9, 2022 WL 3757589, at *3 (N.Y.Sup.) ("the merchant, like all merchants, must bear the responsibility for making a timely reconciliation request gauging the trajectory of its daily revenue").

*Second*, Plaintiff argues that the Hi Bar Contracts were for a definite time period because there was a fixed remittance amount. Response at ¶ 32. However, Plaintiff New York courts have generally held that the presence in the MCA contract of a mandatory reconciliation provision— which allows the merchant to enlarge the duration of the contract by obtaining reductions of fixed remittance amounts to reflect diminished receivables—generally meets the lack of finite term test. *See Principis Capital, LLC v. I Do, Inc.*, 201 A.D.3d 752, 754 (2d Dept. 2022) ("Concomitantly, as the amount of the monthly payments could change, the term of the agreement was not finite."); *US Info. Group LLC v. EBF Holdings, LLC*, 2023 WL 6198803, at *8 (S.D.N.Y. Sept. 22, 2023) ("The existence of a valid reconciliation provision goes to another consideration under LG Funding, which looks to whether the agreement contains a finite term.").

Given the presence of a reconciliation provision in the Hi Bar Contract, Plaintiff makes the unsupported argument that the reconciliation provisions are illusory, not mandatory. Plaintiff is wrong: reconciliation is not at Hi Bar's discretion.  Instead, it is mandatory upon its receiving a request supported by documentation evidencing diminished receivables. *See, e.g.*, *Pearl Delta Funding, LLC v. Illinois Collection Serv., Inc.,* 2023 WL 8003336, at *2 (E.D.N.Y. Nov. 17, 2023) ("The RPA's Reconciliation Clause is not the type of illusory arrangement considered in *LG Funding*, where the withdrawing party could adjust the amount of payments 'at its sole discretion and as it deems appropriate.' This Reconciliation Clause grants the withdrawing party no such discretion and instead provides for a mandatory decrease in the withdrawal amount if certain other conditions are met.") (citation omitted). In fact, the very reconciliation and adjustment provision in the Hi Bar Contract has been held to be mandatory by the New York Appellate Division. *See* Exh. I §§1.3 & 1.4 (provisions upheld by *Samson MCA*, 219 A.D.3d at 1128). This language eviscerates the Trustee's argument that structure of the provision "vest[s] substantial discretion in Hi Bar to deny reconciliation" or that "reconciliation can only happen retroactively provided that the Debtor is not in default." Response at ¶¶ 36-37. Clearly, §§1.3 & 1.4 of the Hi Bar Contract constitutes a mandatory reconciliation provision under New York law.[3]

---

[3] Plaintiff argues the reconciliation provision was unenforceable because the Debtor was allegedly already in default as of the date of its entry.  Opp. ¶ 35. But, since Plaintiff alleges Hi Bar knew of these other financings, Hi Bar would be estopped from enforcing such provisions in which the Debtor represented it was not a party to prior funding agreements or asserting that as an event of default. *See Matter of DiLascio v. Tilden Glen Head, Inc.*, 69 A.D.3d 1171, 1172 (3d Dept. 2010).

In any event, under New York law, a merchant is prohibited from challenging whether a reconciliation provision is a sham, where, as here, there is no allegation that the merchant ever followed the provision and was denied a reconciliation. *E.g.*, *Spin Capital, LLC v. Golden Foothill Ins. Services, LLC,* 2023 N.Y. Slip Op. 30594(U), 8, 2023 WL 2265717, at *3 (N.Y.Sup.) ("[I]t does not appear that there is any basis for the allegation that the reconciliation process was a sham and that the defendants would not have received an appropriate credit, because on the record before the Court, it does not appear that the Counterclaim Plaintiffs even allege that they requested a reconciliation or adjustment of the payments and that it was done improperly."); *US Info. Group LLC v. EBF Holdings, LLC,* 2023 WL 6198803, at *8 (S.D.N.Y. Sept. 22, 2023) ("The reconciliation provision may have permitted plaintiffs to adjust their payments to Everest, but plaintiffs do not allege that they invoked it or considered doing so."). In contrast, in the attorney general enforcement action relied on by Plaintiff, the Court noted that although there was evidence that the funders required all of their hundreds of merchants to submit their monthly submissions of bank statements each month for reconciliation purposes, the defendants "conceded that the mandatory reconciliation never occurred" or "invoked their Fifth Amendment protection against self-incrimination." *People by James v. Richmond Capital Group LLC,* 195 N.Y.S.3d 637 (N.Y. Sup. Ct. 2023). Here, Plaintiff makes no allegation that any request for reconciliation was made, let alone denied.

*Third*, Plaintiff acknowledges that under §3.1(d), it is expressly *not an event of default* where a debit is rejected for "not sufficient funds" if the merchant provides Hi Bar with 24 hours' notice. Nevertheless, she argues that the fee schedule converts the entire structure into a loan because it provides a "NSF" fee upon multiple bounces. Response at ¶ 38.[4] But the FAC does not allege that Hi Bar actually charges the NSF fee where the merchant provides timely notice, let alone that the Debtor was ever charged that fee where it simply had no receivables.

---

[4] Of course, generally speaking, nonpayment or insufficient funds alone are not an event of default. Rather, Hi Bar can call an event of default for intentional blocking of the account. *See* FAC, Exhibit I at §3.1(l) (making event of default where "Merchant's bank returns a code *other than NSF* …"); *see generally Cavalry LLC v. EBF Holdings, LLC,* 2021 N.Y. Slip Op. 32526(U), 10, 2021 WL 5868324, at *6 (N.Y.Sup.)("This provision quite clearly does not insulate Everest from the assumed risk of Cavalry's slow down or failure due to adverse financial conditions, but only from bad faith efforts to defeat Everest's rights under the Agreement.").

*Fourth*, Plaintiff admits that the Hi Bar Contract expressly states bankruptcy is not an event of default (Response at ¶ 39), which itself is sufficient to make them purchases of receivables. *Principis Capital*, 201 A.D.3d at 754. Nonetheless, Plaintiff argues—without factual support— that a bankruptcy filing would necessarily trigger nearly every other event of default provision. That argument has been rejected by other Courts. *See Fox Capital Group, Inc. v. Relik Realty, LLC,* 2023 N.Y. Slip Op. 32444(U), 10, 2023 WL 4712421, at *7 (N.Y.Sup.) (not a loan where MCA agreement provides that funder cannot rely on its remedies in the event of bankruptcy filings where merchant otherwise complies with its obligations). Here, the Hi Bar Contract, at §3.6, provides that Merchant is required to give "written notice" within 24 hours" of a bankruptcy filing. With timely notice of the filing, Hi Bar would not be able to default the Debtor for any other events attendant to a bankruptcy filing.[5]

*Fifth*, the Trustee argues the weekly remittances *agreed to by the Debtor* were allegedly not good faith estimates of the Debtor's receipts. Response at ¶ 41. But Trustee does not attempt to distinguish the holding in *Spin Capital*, 2023 N.Y. Slip Op. 30594(U) at *9, which rejected a claim by merchant that the initial daily payment was not a good faith estimate of the receivables, since "even if there were misstatements [about the value of the receivables], which there were not, the misstatements were made by the seller-defendants of the accounts receivable not the purchasers-Counterclaim Defendants." Nor does Plaintiff address the arguments about why its allegations that these are not good faith estimates are simply wrong (since they do not account for receivables of the Debtor Affiliates).

*Sixth,* the Trustee argues that the Hi Bar Contract's provision allowing it to accelerate the full balance of future receivables in the event of a merchant default converts the MCA agreement into a loan.  Response at ¶44. There is no support under New York law for this argument. Under New York law, this is the lawful remedy in an event of default under a valid MCA agreement and does not convert the transaction into a loan. *E.g.*, *Principis Capital*, 201 A.D.3d at 753-754 (granting summary judgment enforcing default provision providing "the full uncollected purchased amount would become immediately due and payable in full …"). Similarly, each of the

---

[5] "[T]he fact that the guarantor's obligations under the agreement would continue if the merchant was declared bankrupt is not a basis to find that the agreement is a loan." *Slate Advance v. Dr Gregory S Cartmell*, 2023 N.Y. Slip Op. 33192(U), ¶ 6 (N.Y. Co. Sup. Ct. Sep. 13, 2023) (alteration, quotation marks and citation omitted).

protections referenced in. ¶¶ 43-45 simply ensure collectability of the purchased receivables or the amount in default if the merchant fails to abide by its covenants. Because the Hi Bar Contract, as a matter of law, is not a loan, there can be no criminal usury and all of Plaintiff's usury-based claims must be dismissed.

### III.     The Franklin Assignment-Based Counts (Counts I, II and XVIII)

Plaintiff's arguments do not overcome the defects in her two counts seeking to vindicate Franklin's rights by setting aside the Franklin Assignment. Spin, Franklin and the Debtor, all sophisticated commercial actors acting at arms' length, never discussed nor intended for the Franklin Assignment to cover the Third Spin Contract, and if Franklin or the Debtor wanted it to do so, they should have asked. Despite the term "Obligations" under the Franklin Assignment being expressly defined to include the First and Second Spin Contracts and their accompanying documentation *only*, Plaintiff says the Court should read the Third Spin Contract into the definition because Spin did not disclose the existence of the Third Spin Contract to Franklin when Franklin sent the Franklin Assignment to Spin to execute.

But, under applicable Michigan law, "[i]n order for the suppression of information to constitute silent fraud there must be a legal or equitable duty of disclosure." *Hord v. Envtl. Research Inst.*, 463 Mich. 399, 412 (2000). There is only "a duty of disclosure in relation to a claim of silent fraud when there exists a fiduciary or fiduciary-like relationship or when a party has made a specific inquiry or expressed a particularized concern." *Mercurio v. Huntington Nat'l Bank*, 2023 Mich. App. LEXIS 5522, at *28 (Mich. Ct. App. Aug. 3, 2023). Here, Nothing in the FAC indicates the Spin Defendants had a duty to speak or disclose information to Plaintiff, let alone with the particularity required to state a fraud claim under FRCP Rule 9(b). Spin is not alleged to be a fiduciary of Franklin and the FAC contains no other specific allegations of any conversations between Franklin, the Debtor or Spin concerning the circumstances of the execution of the Franklin Assignment. To the contrary, the sum of the allegations is that the Spin Defendants simply executed the Franklin assignment drafted by Franklin (FAC ¶¶188, 197, 201, 482) and represented that "total Obligations as of October 21, 2021 is $1.00." *Id.* ¶189.

As explained in Hi Bar and Spin's Motions to Dismiss, there was nothing materially false about that representation because the First and Second Spin Contracts had no balance. *See also* Response at ¶ 58 (admitting these contracts were refinanced). The only balance due Spin from the Debtor and Debtor Affiliates as of October 21, 2021 was under the Third Spin Contract, which

9

Franklin never inquired about from Spin. Nor was there anything untrue about saying Spin had not transferred the "Obligations" after transferring the Third Spin Contract balance to Hi Bar, as argued by Plaintiff, since the Third Spin Contract not part of the definition of "Obligations." Nor is there express language in the Franklin Assignment, or any other supporting allegations, stating "the intent of the parties was for Spin to sell, transfer, and assign all obligations owed to Spin by the Debtor including the Third Spin Contract." *Id.* ¶ 60.

If that was Franklin's intention, it was sophisticated enough to expressly state as much in drafting the Franklin Assignment, and in doing due diligence with respect to the Debtor to review its financial history to determine whether it had obligations to other creditors. Franklin cannot have been defrauded where it "has the means to determine that a representation is not true" or "had information available to [it] that [it] chose to ignore," as it did here. *Oraha v. Troy Motors, Inc.,* 358183, 2022 WL 3330152, at \*4 (Mich. Ct. App. Aug. 11, 2022)"[I]t is insufficient simply to state that a [party's] conduct was fraudulent." *citing Glasker-Davis v Auvenshine,* 333 Mich App 222, 232; 964 NW2d 809 (2020). For example, Franklin clearly knew the Debtor previously had a multimillion dollar balance under the Second Spin Contract (hence it sent the Franklin Assignment specifically mentioning this contract). Yet, the FAC is devoid of any allegation that Franklin reviewed the Debtor's or Debtor Affiliates' bank statements to ascertain if and when that balance was fully delivered to Spin. Franklin also must have known about the weekly debits from Debtor that continued through October 20, 2021 (identified in FAC Exh. A). Yet, there is no allegation Franklin requested a payoff letter prior to sending the Franklin Assignment to ascertain which contract that was paid under and what it would take to satisfy the balance. The FAC gives the distinct impression that Franklin undertook deficient underwriting, not that it was defrauded in any manner by Spin (let alone one pleaded with particularity).

Finally, Plaintiff's promissory estoppel arguments fail because the FAC simply alleges no promise made by the Spin Defendants to Franklin, nor do her allegations meet any other element of the claim. Even if the Debtor was a third-party beneficiary of the Franklin Assignment, as she argues, the Trustee fails to identify any alleged promise by Spin to the Debtor that it detrimentally relied upon, let alone that the Debtor or its principals could not have ascertained through their own financial records (evidencing continual weekly payments through October 20, 2021) that there remained a balance to Spin under the Third Spin Contract.

10

## CONCLUSION

Based on the forgoing and the argument in Hi Bar's Motion to Dismiss [D.E. 29], Hi-Bar respectfully requests this Court grant its Motion to Dismiss and award all other such relief deemed necessary and proper.

Respectfully submitted,

LETO LAW FIRM
201 S. Biscayne Blvd.
Suite 2700
Miami, Florida 33131
Tel.   305-341-3155
Fax:   305-397-1168

*/s/ Matthew P. Leto*
MATTHEW P. LETO
Florida Bar No.: 014504
mleto@letolawfirm.com
kzelaya@letolawfirm.com
pleadings@letolawfirm.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 11, 2023, we electronically filed the foregoing document with the Clerk of the Court and provided service to all counsel of record using CM/ECF.

*/s/ Matthew P. Leto*
MATTHEW P. LETO