Page 1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF FLORIDA

WEST PALM BEACH DIVISION

CASE NO. 22-12790-EPK

IN RE:

 EXCELL AUTO GROUP, INC.,

                Debtor.

_____/

NICOLE TESTA MEHDIPOUR,

CHAPTER 7 TRUSTEE,


                Plaintiff,


vs.                                   ADV. NO. 23-01132-EPK


HI BAR CAPITAL, LLC, ET AL.,


                Defendants.

 _____/


     ORAL RULING RE:  MOTIONS TO DISMISS (27) AND (29)

                    March 13, 2024

                The above-entitled cause came on for hearing before the Honorable ERIK P. KIMBALL, Chief Judge of the UNITED STATES BANKRUPTCY COURT, in and for the SOUTHERN DISTRICT OF FLORIDA, at 1515 North Flagler Drive, West Palm Beach, Palm Beach County, Florida, on March 13, 2024, commencing at or about 11:00 a.m., and the following proceedings were had:

                    Transcribed By:

                    Anna M. Meagher,

                  Shorthand Reporter

APPEARANCES:

Furr & Cohen, by
Alan R. Crane, Esquire
Jason Rigoli, Esquire
On behalf of Nicole Testa Mehdipour,
Chapter 7 Trustee
Email:  Acrane@furrcohen.com
Email:  Jrigoli@furrcohen.com


Law Office of Nicole Testa Mehdipour, P.A., by
Nicole Testa Mehdipour, Chapter 7 Trustee
Email:  Nicolem@ntmlawfirm.com


Shraiberg Page, P.A., by
Patrick R. Dorsey, Esquire
On behalf of Franklin Capital Funding, LLC
Email:  Pdorsey@slp.law


Leto Law Firm, by
Matthew P. Leto, Esquire
On behalf of Hi Bar Capital, LLC
Email:  Mleto@letolawfirm.com


Jacob Nemon, Esquire
On behalf of Spin Capital, LLC
and Joshua Lubin

- - - - - - -

Page 3

THE COURT:  All right.  Ms. Leonard, do we have anything else on the 10:30?

THE CLERK:  (Inaudible.)

THE COURT:  Great.  I will be in recess until 11 a.m.

THE CLERK:  (Inaudible.)

THE COURT:  Oh.  We're past 11?

THE CLERK:  Yeah.

THE COURT:  Oh, darn it.  Sorry, everybody. We're past it.

All right.  So we're here -- next is Mehdipour against Hi Bar Capital.  I thought I was getting a break.

MR. CRANE:  If you need to take a moment, we can --

THE COURT:  No, no, I'm fine.

MR. CRANE:  Okay.

THE COURT:  Good morning.

MR. CRANE:  Good morning.  Alan Crane, again, special counsel for Nicole Testa Mehdipour, the Chapter 7 trust.

THE COURT:  Who is with us.

Ms. Mehdipour.

MS. MEHDIPOUR:  Good morning, your Honor. Nicole Mehdipour, Chapter 7 trustee.

Page 4

THE COURT:  I know we used to have over there -- Ms. Leonard, didn't we have a clock that set itself --

THE CLERK:  Yeah.

THE COURT:  -- previously?  Yeah.  Well, that one apparently does not.

Yes.

MR. RIGOLI:  Good morning, your Honor. Jason Rigoli, also special counsel to the trustee, Nicole Testa Mehdipour.

THE COURT:  Very good.

Mr. Dorsey.

MR. DORSEY:  Good morning, Judge.  Patrick Dorsey on behalf of Franklin Capital Funding, LLC.

THE COURT:  Mr. Leto.

MR. LETO:  Good morning.  May it please the Court, your Honor, Matthew Leto on behalf of Hi Bar Capital.

THE COURT:  Mr. -- is it Nemon?  Mr. Nemon.

MR. NEMON:  Nemon is good, yeah.  Ah, on behalf of -- do I just -- I'm sorry, I don't know what happened there.

THE COURT:  You just went stealth, Mr. Nemon.

MR. NEMON:  I've gone stealth.

Page 5

Jacob Nemon on behalf of a defendant, Spin Capital and Josh Lubin.

THE COURT:  Okay.  So I did actually get your name correct, yes?

MR. NEMON:  Yes.

THE COURT:  You said it was "good."  Good is not good enough.  It should be exactly right.

MR. NEMON:  Perfect.

THE COURT:  If should be, in fact, perfect.

All right.  Very good.  Just a moment while I pull up my notes.  Forgive me, I'm having an allergy attack this morning.

All right.  This is the Adversary 23-1132, and I had two motions to dismiss.  I'm going to get to the oral rulings on those in a moment.  But before I get to my ruling on the pending motions to dismiss, I have some guidance on motions to dismiss and briefing.

And even before I get to that, I'd like to suggest that when you file a complaint that has 28 counts, please do not use Roman numerals.  There was confusion, even in these motions to dismiss.  Most of us don't think in Roman numerals.  It's okay to actually use Arabic numbers, 1, 2, 3, 4.  It is amazing how many times we have multiple Count 8's or no Count 12, and it's much easier to get it right if you simply number them the way we all

Page 6

think of numbers today.  This is no longer ancient Rome.

Let's start with incorporation by reference. Do not incorporate by reference ever.  Let me stress the word "ever."  In 15 years I've not seen an incorporation by reference that was helpful.  The presentation in the incorporated document is never exactly aligned with the document that references it.  This leads to confusion.

Footnote 2 in the trustee's response at ECF 47 is particularly troublesome, as it does not even point the Court to specific sections of the incorporated document.  It reads, quote, "Trustee/Plaintiff incorporates by reference all arguments made in trustee's response to motion to dismiss Corrected First Amended Complaint filed by Spin Capital, LLC and Avrumi Lubin, as many of the arguments are similar, but not identical to some parts, and some parts may be more thoroughly addressed therein," end quote.  It's not my job to try to figure out which of the arguments in the other response relate to similar arguments, and it "may be" helpful.

Finally, incorporation by reference would cause this response to exceed the page limit.  I could have stricken the entire response.  Instead I simply ignored the footnote.  I also ignored Hi Bar's similar footnote.

When filing a motion to dismiss, do not

present kitchen-sink arguments.  These motions to dismiss attempt to obtain dismissal of nearly every count in a 28-count complaint.  Is it possible to obtain dismissal of an entire complaint?  Sure, when there's some overarching issue, like a statute of limitations problem that's obvious from the face of the complaint.  Is it likely a 28-count complaint spanning more than 90 pages seeking a variety of relief will be completely dismissed as a result of a 20 or 30-page motion?  No, it is not.

Some of the arguments presented in the motions to dismiss were not addressed in sufficient detail to permit adequate analysis.  Several of the arguments had little or no merit.  A motion to dismiss should be focused.  Use it to try to eliminate those claims that obviously must fail.  In a complaint of this magnitude, there are usually only a few components that merit a motion to dismiss.  By limiting your motion to matters more likely to be successful, you would be able to flush them out more thoroughly.

When responding to a motion to dismiss, remember that I actually need to read the response and make sense of it.  Although it may be tempting to present your arguments in an order you find better represents the relative strength of your arguments, avoid that temptation.  Format the response so that it exactly

matches the order of presentation in the motion to dismiss.  Otherwise, I and my law clerk's spend an inordinate amount of time trying to figure out which components of the response go with which parts of the motion to dismiss.

Do not file a reply just to repeat what you said in the motion.  This is a waste of your time, a waste of our client's money, a waste of my time, and, in fact, a violation of the rules of ethics.  The reply, particularly if you raise new arguments in the reply, which happened in at least one instance in this matter, the reply is to respond to items raised in the response that were not addressed in your motion to begin with or that require clarification.  I'm impressed with the rare reply that does this.  The replies here are mostly unnecessary.

The presentation in these motions to dismiss did not merit an enlargement of the court's usual page limit, which I had granted.  If you file a motion for summary judgment in this adversary proceeding, do not ask to enlarge the page limit.  Any such motion will be denied.  Motions for summary judgment in this adversary proceeding, if presented, should be carefully tailored to just those matters that might be subject to summary judgment.  Remember that it is possible to seek summary judgment on just a component of a complaint.

Now we get to the reason we're here today, which is the ruling on the two motions.  This is the Court's ruling on the two motions to dismiss, one filed by Spin Capital, LLC and Avrumi Lubin at ECF No. 27 and the other filed by Hi Bar Capital, LLC, Mordechai Herbst and Yisroel Herbst at ECF No. 29.  I also carefully reviewed the briefs filed at ECF Nos. 47, 48, 50, 52, and 59.  In this ruling, in most instances, I will leave out the names of individual defendants and will refer to Spin in connection with ECF No. 27 and to Hi Bar in connection with ECF No. 29.

At issue today is the Corrected First Amended Complaint in the docket at ECF No. 17.  I will refer to the trustee as the plaintiff in this action.  In connection with these motions to dismiss, the Court accepts as true all allegations contained in the amended complaint.

In summary the Court will deny both motions to dismiss, but will permit the trustee to amend counts 4, 9 , 17, 18, 19, 22, 21 -- excuse me.  I'm going to repeat that.  This is the problem with Roman numerals.  I'm starting again, 4, 9, 17, 18, 19, 20, 21, 22, 23, 24, 25.

Spin argues that the doctrines of res judicata and collateral estoppel apply to bar a number of claims in this case.  Prior to this bankruptcy case, Hi

Bar filed suit in New York state court against the debtor, certain affiliates of the debtor, and Scott and Kristen Zankl, the principal manager and sole owner of the debtor. The defendants filed counterclaims against Hi Bar based on lack of consideration, fraudulent inducement, criminal usury, and unjust enrichment.  The defendants, including the debtor, also filed a third-party complaint against Spin.

When the debtor filed a petition commencing this bankruptcy case, the New York action was stayed as to the debtor under Section 362 of the Bankruptcy Code.  That Hi Bar entered into a stipulation with the Chapter 7 trustee with regard to estoppel concerns has no impact on the Court's analysis here.  The question is whether Spin may claim estoppel based on rulings in favor of Hi Bar in the New York action.

During this bankruptcy case, the New York court entered judgment in favor of Hi Bar against all of the defendants, other than the debtor, and dismissed the defendants' counterclaims, other than counterclaims presented by the debtor.  The New York judgment explicitly does not rule on any claim of Hi Bar against the debtor, nor does it rule on any claim held by the debtor against anyone, including Spin.  Spin argues based on estoppel that the debtor and this bankruptcy estate are bound by

the dismissal of the nondebtor defendants' counterclaims against Hi Bar on the basis that the Zankls and other nondebtor defendants are privies of the debtor and that Hi Bar is a privy of Spin for purposes of New York estoppel law.  Without any detailed analysis how the claims dismissed in the New York action and those presented here align, Spin argues that res judicata or collateral estoppel requires dismissal of the entire amended complaint as it relates to Spin and Mr. Lubin.

Spin's arguments based on estoppel fail for multiple reasons.  The New York action was stayed in all regards with respect to the debtor.  In light of the automatic stay, no ruling can be obtained against the debtor in the New York action.  Even if estoppel would otherwise apply to the debtor under New York law, to have it apply here would be a violation of the automatic stay, and the ruling would be void as to the debtor.  You can find an instructive analysis of this issue in the decision In Re:  Adler, A-D-L-E-R, issued by the Eastern District of New York in 2008, reported at 395 Bankruptcy Reporter 827.  Spin's motion to dismiss on the basis of estoppel is due to be denied based on this alone.

In addition, certain of the claims brought by the trustee here are claims that can only be brought by a trustee in this court and so could not be subject to

Page 12

estoppel as a result of any ruling in another court.  Put another way the New York court certainly did not rule on any claims that arise solely as a result of this bankruptcy case and can be pursued by this trustee alone in this court.  This is a separate reason to deny Spin's motion to dismiss claims under sections 544, 548 and 550 of the Bankruptcy Code.

Finally, the trustee's claims here that are claims of the debtor, and so part of the bankruptcy estate under Section 541, are similar to those presented in the third-party complaint against Spin in the New York action. The New York court has yet to rule on those claims, apparently because of the debtor's bankruptcy case.  It makes no sense to say that a ruling by the New York court in connection with other claims in the New York action is preclusive with regard to claims that the New York court itself has yet to address.  To put this in perspective, the New York court certainly would not rule that the claims presented in the third-party complaint against Spin are estopped because that court already ruled in favor of Hi Bar.  For all of these reasons Spin's motion to dismiss based on estoppel will be denied.

Spin argues that the entire amended complaint should be dismissed as to Spin and Mr. Lubin, as the trustee lacks standing because the estate has not

Page 13

suffered actual damage.  In making this argument Spin plucks out a couple allegations from the amended complaint but ignores the overall presentation, which clearly indicates that the debtor paid out more than it received, thus resulting in damage to the bankruptcy estate.  For this purpose, in light of the many allegations relating to how Spin and Hi Bar worked in concert with regard to the debtor, it does not matter that part of what Spin received came to it via Hi Bar, as all of the funds ultimately came from the debtor.  Spin's motion to dismiss based on lack of standing will be denied.

Both Spin and Hi Bar argue that they are protected by releases contained in two settlement agreements entered into by the debtor with Hi Bar.  In the amended complaint the trustee asks the Court to rule that the settlement agreements and the releases contained in them are void or voidable under multiple theories.  There are sufficient allegations in the amended complaint to support those claims.  If the trustee obtains any of that relief, the releases will be of no force or effect.  The motions to dismiss based on releases in the settlement agreements will be denied.

Spin and Hi Bar also argue that because the face amount of each of the first and second settlement agreements exceeds $2.5 million, the agreements are not

Page 14

subject to criminal usury under New York law.  Spin asks that all counts against it be dismissed, and Hi Bar identifies specific counts that it argues should be dismissed.  Spin and Hi Bar are correct that under New York law the settlement agreements are not subject to criminal usury, but this fact does not necessarily lead to the relief that they seek for two reasons.

First, the trustee argues that the settlement agreements violate usury under Florida as well. If this is the case, the fact that New York usury law would be apply to the settlement agreements is of no moment.  Second, as noted a few moment ago, the trustee seeks to invalidate or avoid the two settlement agreements and the releases therein under multiple other theories. Spin and Hi Bar fail to detail how the fact that the settlement agreements are not subject to usury under New York law will defeat each of those other methods of challenging the settlement agreements.  It is not up to the Court to analyze the entire amended complaint to come up with the arguments Spin and Hi Bar might have made in this context.

Both Spin and Hi Bar argue that all counts seeking relief based on the argument that their merchant cash advance agreements are loans rather than purchases of future receivables must be dismissed.  They argue that

Page 15

certain New York case law applied to their written agreements necessitates dismissal.  It appears undisputed that New York law applies to this issue.  Under the New York law, the question is how each transaction allocates risk between the parties.  In a true sale of receivables, the buyer obtains all the risk of nonperformance by account debtors who owe funds to the seller.  In contrast, if the facts indicates that the borrower remains liable for the advance and retains the risk that its account debtors will not pay, then there is no real sale and the transaction is a loan.  Unless usury appears on the face of the document, it is a question of fact.  This is the overall approach taken in New York in determining whether a transaction is a loan.  [Coughs], excuse me.

New York's highest court, the Court of Appeals has yet to apply its loan versus sale precedent in the context of merchant cash advance transactions.  The New York decisions cited by the parties here are all lower court decisions.  Spin and Hi Bar ask this Court to apply in a narrow way a three-factor analysis from a 2020 decision of the New York Second Department, LG Funding, LLC versus United Senior Properties of Olathe, O-L-A-T-H-E, which is reported at 181 A.D.3d 664.

I've reviewed many decisions by New York courts and by federal courts addressing New York law on

Page 16

whether merchant cash advance arrangements are true sales or loans.  I conclude that while the three LG Funding factors may be useful to the analysis, they are not dispositive.  For a good summary of the state of the law, I point you to a 2022 decision from the Southern District of New York, Haymount Urgent Care versus GoFund Advance, which is reported at 609 F.Supp.3d 237.

The allegations in the amended complaint here align with a number of factors courts have pointed to in determining that a merchant cash advance arrangement is actually a loan, rather than a purchase of future receivables.  The motions to dismiss based on the argument that Spin's and Hi Bar's merchant cash advance agreements represent purchases of future receivables as a matter of law will be denied.

Spin moved to dismiss Counts 4 and 9.  In response, the trustee sought to amend Counts 4 and 9 to more clearly allege that if Spin's contracts are loans that Florida applies to the question of usury, thus avoiding the argument that under New York law usury cannot be the basis of a request for affirmative relief.  Spin argues that such amendment will be futile.

Hi Bar moved to dismiss Count 17 for similar reasons.  Both Spin and Hi Bar also argue that the trustee's claims based on unconscionability do not allege

Page 17

procedural unconscionability.  In light of the sparseness of the parties' arguments on these issues, the Court finds it appropriate to permit the trustee to amend Counts 4, 9, and 17 to address the choice of law issue and procedural unconscionability.

Spin and Hi Bar seek dismissal of Counts 1, 2, and 28, arguing that the trustee's interpretation of the Franklin assignment document is incorrect and that the third Spin contract was not intended to be covered by that assignment.  The text of the assignment document and the allegations in the amended complaint are sufficient to support the trustee's interpretation that the assignment included the third Spin contract.  The motions to dismiss Counts 1, 2 and 28 on this ground will be denied.

Spin seeks dismissal of counts 10, 11, 12, 13, 14, 15, and 16.  Hi Bar seeks dismissal of counts 18, 19, 20, 21, 22, 23, 24, and 25.  These are the fraudulent transfer counts presenting claims under both actual fraud and constructive fraud theories.  In connection with the constructive fraud claims, Spin and Hi Bar argue that the amended complaint itself does not support allegations of lack of reasonably equivalent value.  But the amended complaint, including the specifically referenced incorporated paragraphs and counts, contain sufficient allegations of lack of reasonably equivalent value.

Page 18

Spin and Hi Bar challenge the trustee's presentation of the so-called Ponzi scheme presumption in support of the fraudulent transfer claims based on actual fraud.  It is not necessary to have a pure Ponzi scheme for that presumption to apply.  Any similar scheme involving revolving advances by third parties used by the debtor for improper purposes may support the presumption. In any case the allegations in the amended complaint would support such claims without reliance on the Ponzi scheme presumption.  That Spin and Hi Bar may have defenses to these claims, such as the good faith defense, is not relevant at the motion to dismiss stage.  The motions to dismiss based on these arguments will be denied.

However, the trustee seeks to amend Counts 18, 19, 20, 21, 22, 23, 24, and 25 to make clear that no actual cash was paid by Hi Bar to the debtor and this will be permitted.

Again, in summary the Court will deny both motions to dismiss, but will permit of trustee to amend Counts 4, 9, 17, 18, 19, 20, 21, 22, 23, 24, and 25 as outlined in this oral ruling.  I'll entered a brief order incorporating this oral ruling.  You should pay close to attention to how it is worded, certain of the amendments are permitted and certain are required.

Any questions?

Page 19

UNIDENTIFIED SPEAKER:  No.

THE COURT:  Very good.  Thank you, everyone.

MR. NEMON:  When the trustee does amend, can we get a redline?

THE COURT:  When the trustee does -- you may provide them independently a redline, I assume that's appropriate.

All right.  Anything else?

(No audible response.)

THE COURT:  Good.

Ms. Leonard, are we done with the morning?

Yes.  Court is in recess until 1:30.

Thank you.

(Whereupon, the hearing was concluded.)

Page 20

CERTIFICATION

STATE OF FLORIDA          :

COUNTY OF BREVARD          :

I, Anna M. Meagher, Stenographic Reporter and Notary Public in and for the State of Florida at Large, do hereby certify that the foregoing proceedings were transcribed by me from a digital recording held on the date and from the place as stated in the caption hereto on Page 1 to the best of my ability.

WITNESS my hand this 14th day of March, 2024.

_____

ANNA M. MEAGHER, Stenographic Reporter and

Notary Public in and for the

State of Florida at Large

Commission #HH 59960

January 9, 2025