**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

In re:

        EXCELL AUTO GROUP, INC.

Case No.: 22-12790-EPK
Chapter 7

        Debtor.

---------------------------------------------------------------------- /

NICOLE TESTA MEHDIPOUR, as Chapter 7 Trustee for
Excell Auto Group, Inc.

Adv. Pro. No. 23-01132-EPK

        Plaintiff.

        -v-

HI BAR CAPITAL, LLC, SPIN CAPITAL LLC,
YISROEL HERBST, MORDECHAI DOV BER
HERBST a/k/a MORDI HERBST, AVRUMI LUBIN
a/k/a JOSH LUBIN, FRANKLIN CAPITAL FUNDING,
LLC and FRANKLIN CAPITAL GROUP, LLC d/b/a
WING LAKE CAPITAL,

        Defendants.

---------------------------------------------------------------------- /

## HI BAR DEFENDANTS' STATEMENT OF MATERIAL FACTS

Defendants, Hi-Bar Capital, LLC ("Hi-Bar"), Mordechai Herbst, and Yisroel Herbst, (collectively, "Hi-Bar Defendants"), file this Statement of Undisputed Facts as follows:

1.      Yisroel Herbst is owner of Hi Bar Capital, LLC ("Hi Bar"). *See* Herbst Declaration, ¶ 1, attached as Exhibit "A."

2.      On October 27, 2021, Hi Bar entered into a Revenue Purchase Agreement with Excell Auto Group and a number of other related entities identified in that Agreement ("the Obligors"). *Id.* at ¶ 2.

3.      Pursuant to the Revenue Purchase Agreement, Hi Bar purchased $3,177,880.00 of Obligors future receivables for $2,120,000.00. *Id.* at ¶ 3.

4.      The Revenue Purchase Agreement included a Security Agreement that provided Hi Bar with a security interest in, and among other things, "all accounts, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those are defined in Article 9 of the Uniform Commercial Code… ."  *Id.* at ¶ 4.

5.      Further, the Revenue Purchase Agreement authorized Hi Bar "to file any and all notices or filings it deems necessary or appropriate to enforce its entitlements hereunder." *Id.*

6.      At the time the Revenue Purchase Agreement was executed, it was Hi Bar's understanding that the Obligors had previously executed a revenue purchase arrangement with an entity called Spin Capital. *Id.* at ¶ 5.

7.      Spin Capital is a separate entity from Hi Bar and the two do not share ownership or control. *Id.* at ¶ 6.

8.      Spin Capital's principal, Josh Lubin, does not have (and has not had) any ownership interest in Hi Bar since its formation. *Id.*

9.      Rather than sending the Purchase Amount under the Revenue Purchase Agreement directly to the Obligors, Hi Bar was instructed by the Obligors to send the funds directly to Spin Capital. *Id.* at ¶ 7.

10.      As such, on November 1, 2021, Hi Bar wired $2,114,312.50 to Spin Capital. *Id.* at ¶ 8.

11.      The Revenue Purchase Agreement includes a mandatory reconciliation provision, which if requested, would require an extension of the repayment terms. *Id.* at ¶ 9.

12.      At no time did the Obligors request an adjustment to their payments under that provision. *Id.*

13.      The Obligors defaulted on the Revenue Purchase Agreement. *Id.* at ¶ 10.

14.    As a result, on December 19, 2021, the Obligors and Hi Bar entered into a Settlement Agreement. *Id.* at ¶ 11.

15.    Pursuant to the Settlement Agreement, the Obligors once again agreed to provide security for payments due, which included all accounts, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those are defined in Article 9 of the Uniform Commercial Code… ."  *Id.* at ¶ 12.

16.    Further, the Obligors represented that "no other creditors [had] a security interest in the Collateral" and that Obligors would not "transfer of encumber the Collateral without prior written consent of [Hi Bar]." *Id.*

17.    On December 27, 2021, the Obligors defaulted under the Settlement Agreement, which caused Hi Bar to commence legal proceedings in New York. *Id.* at ¶ 13.

18.    On January 25, 2022, Hi Bar perfected its security interest by recording a UCC-1 Financing Statement with the State of Florida as it authorized to do under the Revenue Purchase Agreement and Settlement Agreement. *Id.* at ¶ 14.

19.    On February 1, 2022, Hi Bar and the Obligors entered into a Stipulation of Settlement Pursuant to CPLR 3215(i). *Id.* at ¶ 15. Under that Agreement, "within (5) business days" of the Obligors fulfilling all obligations, Hi Bar agreed to "terminate any/all UCC filings and liens ... ." *Id.*

20.    The Obligors have not satisfied their payment obligations under the Stipulation of Settlement and Hi Bar's UCC Financing Statement remains properly recorded. *Id.* at ¶ 16.

21.    On October 1, 2021, Spin Capital and Franklin Capital Group entered an Assignment of Obligations and Merchant Documents. [D.E. 75 at pgs. 86-95]

22.     Hi Bar is not a party to the Assignment of Obligations and Merchant Documents.

*Id.*

23.     Hi Bar did not speak to, or make any representations to, Franklin Capital regarding any debt owed to Hi Bar Capital by the Obligors. *See* Herbst Declaration, ¶ 17, attached as Exhibit "A."

Respectfully submitted,

LETO LAW FIRM
201 S. Biscayne Blvd.
Suite 2700
Miami, Florida 33131
Tel.    305-341-3155
Fax:    305-397-1168

*/s/ Matthew P. Leto*
MATTHEW P. LETO
Florida Bar No.: 014504
mleto@letolawfirm.com
kzelaya@letolawfirm.com
pleadings@letolawfirm.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 27, 2024, we electronically filed the foregoing document with the Clerk of the Court and provided service to all counsel of record using CM/ECF.

*/s/ Matthew P. Leto*
MATTHEW P. LETO

4