## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

In re:

                EXCELL AUTO GROUP, INC.

                    Debtor.

Case No.: 22-12790-EPK
Chapter 7

------------------------------------------------------------------ /

NICOLE TESTA MEHDIPOUR, as Chapter 7 Trustee for
Excell Auto Group, Inc.

                Plaintiff.

        -v-

Adv. Pro. No. 23-01132-EPK

HI BAR CAPITAL, LLC, SPIN CAPITAL LLC,
YISROEL HERBST, MORDECHAI DOV BER
HERBST a/k/a MORDI HERBST, AVRUMI LUBIN
a/k/a JOSH LUBIN, FRANKLIN CAPITAL FUNDING,
LLC and FRANKLIN CAPITAL GROUP, LLC d/b/a
WING LAKE CAPITAL,

                Defendants.

------------------------------------------------------------------ /

## HI-BAR CAPITAL, LLC, MORDECHAI HERBST, AND YISROEL HERBST'S MOTION FOR SUMMARY JUDGMENT

Defendants, Hi-Bar Capital, LLC ("Hi-Bar"), Mordechai Herbst, and Yisroel Herbst, (collectively, "Hi-Bar Defendants"), pursuant to Rule 7056, file the following Motion for Summary Judgment as to Counts 1-3, 6-8, 17-25 and 28 and state the following in support thereof:

## INTRODUCTION

In its Second Amended Complaint ("SAC"), Plaintiff seeks to avoid the Debtor's obligations under a voluntarily executed Revenue Purchase Agreement and subsequent settlement agreements with Hi-Bar. Plaintiff also seeks damages from Hi-Bar, its agents, and other entities based on allegations that they engaged in conduct violating Federal RICO statutes. Summary

1

Judgment is proper in this case as to Counts 3, 6, 7, and 8 of the SAC as Plaintiff's claims are all based on the erroneous assertion the Hi-Bar Agreements are usurious. However, under New York law (which controls), it is not.

Next, in Counts 1, 2 and 28, Plaintiff seeks to void Hi Bar's Revenue Purchase Agreement based on language contained in an alleged assignment between Spin Capital to Franklin Capital. However, as described below, not only does the plain language of that assignment contradict Plaintiff's claim, but perhaps more importantly, Hi Bar was not a party to that assignment and never spoke to anyone at Franklin about the assignment or its transactions with the Debtor. Therefore, the Franklin assignment has no bearing on the Debtor's obligation to Hi Bar.

Next, Hi Bar seeks summary judgment as to Count 17, which seeks to invalidate the Hi Bar Revenue Purchase Agreement and subsequent settlement agreements based on "procedural and substantive unconscionability" under New York law. But, as described below, those arguments fail as a matter of law and not a shred of evidence has been disclosed supporting any such claims. Instead, the Debtor was a sophisticated party who decided to enter into these settlement agreements after Hi Bar asserted its legal rights.

Finally, summary judgment should be granted as to the fraudulent transfer claims alleged in Counts 18, 19, 20, 21, 22, 23, 24, and 25 because Hi Bar was simply enforcing a security interest in compliance with Article 9 of the Uniform Commercial Code. § 726.109(5)(b).

## <u>MEMORANDUM OF LAW</u>

## I.     <u>Standard</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Raza v. All VIP Care, Inc*., No. 23-CV-81481, 2024 WL 4611664, at *1 (S.D. Fla. Oct. 29, 2024) *citing*

Fed. R. Civ. P. 56(a). "When a moving party has discharged its initial burden, the nonmoving party must 'go beyond the pleadings,' and, by its own affidavits or by 'depositions, answers to interrogatories, and admissions on file,' identify specific facts showing there is a genuine issue for trial." *Id. citing Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "The nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts' ". *Id. citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Under this standard, summary judgment is appropriate.

**II.     Summary Judgment Should be Entered as to Counts 3, 6, 7, and 8 Because the Hi Bar Contract are Not Loans or Subject to New York Usury Laws**

Counts 3, 6, 7, and 8 of SAC against the Hi-Bar Defendants are predicated on the erroneous assertion that the Hi Bar Contracts constitute loans that charge illegal interest rates. However, because the Hi Bar Contracts are not loans subject to New York usury laws, summary judgment is proper as to each of those counts.

As set forth in the Hi Bar Agreement, New York governs the analysis. [SMF at ¶ 2, § 4.5]. "A district court sitting in diversity applies the choice-of-law rules of the state in which it sits, in this case Florida." *Viridis Corp. v. TCA Glob. Credit Master Fund, LP,* 721 Fed. Appx. 865, 873 (11th Cir. 2018) *citing  Rando v. Gov't Employees Ins. Co.*, 556 F.3d 1173, 1176 (11th Cir. 2009). "Under Florida law, contractual choice-of-law provisions are presumptively enforceable." *Id.*  "[A] party may overcome this presumption by showing that a provision contravenes the strong public policy of Florida or is unjust or unreasonable." *Id.* However, deterring usury is not a "strong public policy" that would allow a Court to disregard an agreed upon choice of law. *Id.* Therefore, New York law applies to this analysis.

Two well-established principles of New York law preclude a finding of usury in this case. First, there is a strong presumption *against* usury, and second, a transaction cannot be usurious if

it is not a loan. Given the fact that a strong presumption exists against a finding of usury, a party claiming usury bears the heavy burden of proving it by clear and convincing evidence. *Giventer v. Arnow*, 37 N.Y.2d 305, 309 (1975); *Roopchand v. Mohammed*, 154 A.D.3d 986, 988 (2d Dept. 2017). Further, "[i]f the transaction is not a loan, there can be no usury, *however unconscionable the contract may be*." *LG Funding, LLC v. United Senior Props. of Olathe, LLC*, 181 A.D.3d 664, 665 (2d Dept. 2020) (emphasis supplied). Under New York law, "[t]o constitute a loan, the agreement must provide for repayment absolutely and at all events or that the principal in some way be secured as distinguished from being put in hazard." *Cash4Cases, Inc. v. Brunetti*, 167 A.D.3d 448, 449 (1st Dept. 2018). "Ordinarily, a loan consists of a face value, repayable (with interest) over a finite period DEFINED in the transaction documents." *Pirs Capital, LLC v. D & M Truck, Tire & Trailer Repair Inc.*, 69 Misc. 3d 457, 463 (N.Y. Sup. Ct. 2020)(emphasis in original). "If a transaction instead has a non-finite term, that suggests that the transaction is instead a purchase of future receivables." *Id.*

Further, under New York law, an MCA agreement, such as the Hi Bar Agreement in this case, is not considered a loan because it is a purchase of receivables. *Principis Capital, LLC v. I Do, Inc.*, 201 A.D.3d 752, 754-55 (2d Dept. 2022). In reviewing whether an MCA agreement is a true purchase of receivables, New York courts apply a three-factor test:

> The court must examine whether the plaintiff is absolutely entitled to repayment under all circumstances. Unless a principal sum advanced is repayable absolutely, the transaction is not a loan. Usually, courts weigh three factors when determining whether repayment is absolute or contingent: (1) whether there is a reconciliation provision in the agreement; (2) whether the agreement has a finite term; and (3) whether there is any recourse should the merchant declare bankruptcy.

*Principis Capital*, 201 A.D.3d at 754. Where all three factors are present, an agreement is an MCA agreement not subject to usury laws. *Principis Capital*, 201 A.D.3d at 754 (granting summary judgment to funder). The Southern District of New York, in a RICO action, has endorsed the

4

*Principis* test when determining whether an MCA agreement is a loan transaction or purchase of receivables. *US Info. Group LLC v. EBF Holdings, LLC,* 2023 WL 6198803, at *11 (S.D.N.Y. Sept. 22, 2023) (dismissing RICO action where agreement complied with three factors). Applying the *Principis* three-factor test, New York courts have rejected challenges to the type of agreement used in the Hi Bar contract. *See e.g. Samson MCA LLC v. Joseph A. Russo M.D. P.C./IV Therapeutics PLLC,* 219 A.D.3d 1126, 1128 (N.Y. App. Div. 2023); *Hi Bar Capital, LLC v. Excell Auto Group, Inc.*, 2023 N.Y. Slip Op. 31593(U), 3, 2023 WL 3431299, at *2 (N.Y.Sup.)(Trial Court Order in prior action between Hi Bar and the instant Debtor finding that the Hi Bar Agreement is "not void as a matter of criminal or civil usury, because the repayment terms, rather than being absolute, are contingent.").

    Here, the Hi-Bar contract provides that the parties intended the purchases of receivables as opposed to a loan:

> **Sale of Receipts.** Merchant and [Hi-Bar Capital] agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount, and that such Purchase Price is not intended to be, nor shall it be construed as a loan from HBC to Merchant. Merchant agrees the Purchase Price is in exchange for the Receipts pursuant to this Agreement and that it equals the fair market value of such Receipts… Payments made to HBC in respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services, and the payment therefore by Merchant's customers.

[SMF at ¶ 2, § 1.10]. On the first page of the contract, the parties also stipulated, "Merchant is selling a portion of a future revenue stream to HBC at a discount, *and is not borrowing money from HBC,* therefore there *is no interest rate or payment schedule and no time period during which the Purchase Amount must be collected by HBC*." . [SMF at ¶ 2] (emphasis supplied); *see Colonial Funding Network, Inc. v. Davincitek Corp.*, 2021 WL 39591 (N.Y. Co. Sup. Ct. 2021) (finding MCA was not loan, in part where the parties expressly agreed "that they are entering into a

purchase and sale of future receivables."). Plaintiff's claims ignore this clear and unambiguous language. In addition, the factors set forth in *Principis* are all easily satisfied.

> a.    **The Hi Bar Contract Contains Mandatory Reconciliation and Adjustment Provisions**

An MCA agreement is not a loan even if it contains a fixed remittance as an estimate of a specified percentage of receivables where "the Agreement provided no liability in the event that the seller's business failed because it could not generate sufficient revenue to continue operating." *IBIS Capital Group, LLC v. Four Paws Orlando LLC,* 2017 WL 1065071 (Sup.Ct. Nassau Co. March 10, 2017). Moreover, if the fixed payment amount is subject to a mandatory adjustment through a reconciliation provision, which allows the merchant to request a reduction of the remittance amounts to reflect diminutions of its receivables, that contractual mechanism further demonstrates that the transaction is not a loan. *Quicksilver Capital LLC v. Obioha*, 2020 WL 2332754, (N.Y. Co. Sup. Ct. May 11, 2020) ("[t]he agreement contains a reconciliation provision … provid[ing] that plaintiff is to collect future receivables based on amounts collected by defendant during a particular calendar month. If defendant is not in default, she may once each calendar month request that plaintiff reconcile the [monthly amount to be paid by defendant] to more closely reflect defendant's actual future receipts times the purchased percentage.").

The First Hi Bar Contract contains a mandatory reconciliation (*i.e.*, to true up total payments with receivables generated for the prior period) and adjustment (*i.e.,* to make the regular remittance more closely reflect the receivables) provisions:

> 1.3 <u>Reconciliation</u>. As long as an Event of Default, or breach of this agreement, has not occurred, Merchant may request a **retroactive reconciliation** of the total Remittance Amount. All requests hereunder must be in writing to reconciliations@hibarcapital.com. Said request must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable report outstanding if applicable, from the date of this Agreement through and including the date the request is made. … Such

reconciliation, if applicable, **shall be performed** by HBC within two (2) Business Days following its receipt of Merchant's request for reconciliation by either crediting or debiting the difference back to, or from, Merchants Bank Account so that the total amount debited by HBC shall equal the Specific Percentage of the Future Receipts that Merchant collected during the requested month. …

1.4 <u>Adjustments to the Remittance</u>. As long an Event of Default, or breach of this agreement, has not occurred, Merchant may give notice **to HBC to request a decrease in the Remittance, should they experience a decrease in its Future Receipts**. All requests hereunder must be in writing to reconciliations@hibarcapital.com and must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable report outstanding from the date of this Agreement through and including the date the request is made. … The Remittance **shall be modified** to more closely reflect the Merchant's actual receipts by multiplying the Merchant's actual receipts by the Purchased Percentage divided by the number of business days in the previous (2) calendar weeks. …

[SMF at ¶ 2, § § 1.3 and 1.4]. (emphases supplied). "A reconciliation and an adjustment provision help ensure that, on a retrospective basis, the merchant has not paid an amount that is disproportionate to the receivables that the funder has actually acquired, and going forward, where the merchant has experienced a steady decrease in its Daily Receipts, the merchant has the right to request a modification of the amount of the fixed daily payment." *Lateral Recovery, LLC v. Capital Merch. Services, LLC,* 632 F. Supp. 3d 402, 458 (S.D.N.Y. 2022*)* (determining form agreements that contain these provisions are "are agreements for the purchase of receivables when viewed in their totality").

The above referenced provisions are not an illusory reconciliation provisions, rather mandatory ones, since they use the term "shall." *Streamlined Consultants, Inc. v. EBF Holdings LLC,* 2022 WL 4368114, at *1 *(S.D.N.Y. Sept. 20, 2022)* ("*Streamlined I*") ("the Funding Agreement includes a reconciliation provision, which—contrary to Plaintiffs' baseless argument in opposition—provides that reconciliation is mandatory if requested by Streamlined Consultants[,]" since it provided … Within four business days … [funder] *shall* reconcile …");

7

*US Info. Group LLC v. EBF Holdings, LLC,* 2023 WL 6198803, at \*10 (S.D.N.Y. Sept. 22, 2023) ("shall" in reconciliation provision makes it mandatory).

In addition, while the Plaintiff has *alleged* that the reconciliation provision is illusory, under New York law, a merchant is prohibited from challenging whether a reconciliation provision is a sham, where, as here, the merchant never followed the provision and was denied a reconciliation. [SMF at ¶ 12] *See e.g.*, *Mazzoni Ctr. v. LCF Group, Inc.,* 2024 WL 4821475, at \*7 (E.D. Pa. Nov. 18, 2024)("The Center never requested a reconciliation, so there is nothing to suggest that LCF would refuse to honor these terms."); *Spin Capital, LLC v. Golden Foothill Ins. Services, LLC,* 2023 N.Y. Slip Op. 30594(U), 8, 2023 WL 2265717, at \*3 (N.Y.Sup.) ("[I]t does not appear that there is any basis for the allegation that the reconciliation process was a sham and that the defendants would not have received an appropriate credit, because on the record before the Court, it does not appear that the Counterclaim Plaintiffs even allege that they requested a reconciliation or adjustment of the payments and that it was done improperly."); *US Info. Group LLC v. EBF Holdings, LLC,* 2023 WL 6198803, at \*8 (S.D.N.Y. Sept. 22, 2023) ("The reconciliation provision may have permitted plaintiffs to adjust their payments to Everest, but plaintiffs do not allege that they invoked it or considered doing so."). As such, Hi-Bar satisfies this factor.

### b.    <u>The Hi-Bar Contract Has No Fixed Duration</u>

"Ordinarily, a loan consists of a face value, repayable (with interest) over a finite period DEFINED in the transaction documents." *Pirs Capital, LLC v. D & M Truck, Tire & Trailer Repair Inc.*, 69 Misc. 3d 457, 463 (N.Y. Sup. Ct. 2020)(emphasis in original). "If a transaction instead has a non-finite term, that suggests that the transaction is instead a purchase of future receivables." *Id.; see also Streamlined Consultants, Inc. v. EBF Holdings LLC*, 2022 WL 4368114, at \*5 (S.D.N.Y.

Sept. 20, 2022). Here, the Hi Bar Contract has indefinite terms since it expressly provides that it is "in full force an effect until the entire Purchased Amount and any other amounts due are received by HBC as per the terms of this Agreement." [SMF at ¶ 2, § 1.2]. It also explicitly provides on the first page for "no interest rate or payment schedule and no time period during which the Purchase Amount must be collected by HBC." [SMF at ¶ 2]. Moreover, the contract is subject to extension over an indefinite duration because it is subject to regular adjustments under the reconciliation provision. *Principis Capital*, 201 A.D.3d at 754 ("Concomitantly, as the amount of the monthly payments could change, the term of the agreement was not finite."). Thus, the duration is "contingent upon [the merchant's] actually generating sales and those sales actually resulting in the collection of revenue." *IBIS Capital Group, LLC v. Four Paws Orlando LLC,* 2017 WL 1065071, *2 (Sup.Ct. Nassau Co. March 10, 2017). "The existence of this uncertainty in the length of the Agreement is an express recognition by the parties of the wholly contingent nature of this Agreement." *Id.* at * 3. As such, Hi-Bar satisfies this factor.

### c.    <u>Bankruptcy Is Not an Event of Default</u>

An MCA is not a loan where, like here, there is "no contractual provision existed establishing that a declaration of bankruptcy would constitute an event of default." *Principis Capital, LLC v. I Do, Inc*., 201 A.D.3d 752, 754, (2022); *see also Streamlined Consultants, Inc. v. EBF Holdings LLC,* 2022 WL 4368114, at *5 (S.D.N.Y. Sept. 20, 2022). Not only is bankruptcy not listed as an "Event of Default" under ¶ 3.1 of the Hi Bar Contract, but it specifically provides on their front pages, "Merchant going bankrupt or going of business…in and of itself, does not constitute a breach of this Agreement." [SMF at ¶ 2] *See e.g. Mazzoni Ctr. v. LCF Group, Inc*., 2024 WL 4821475, at *8 (E.D. Pa. Nov. 18, 2024)(Finding provision that stating that bankruptcy was not event of default satisfied *Principis* factor). As such, Hi-Bar satisfies this final factor.

Since each of the *Principis* factors are satisfied, there is no legal basis for the Debtor's usury claims and each count predicated on the existence of usury (Counts 3, 6, 7, and 8) should be summarily dismissed.

**III.      Summary Judgment is Proper as to Counts 1, 2 and 28 Concerning the Franklin Assignment and Balance Transfer Agreement**

Count 1 seeks a declaration that the Franklin Assignment is effective, and that (i) the total amount due from the Debtor to Spin as of October 21, 2021, was $1.00, which amount was satisfied," and (ii) "the First Spin Contract, Second Spin Contract, and Third Spin Contract and all other obligations owed by the Debtor or Claims against the Debtor or Third Parties arising from the Spin Contracts were assigned to Wing Lake."  [D.E. 75 at pp. 37].

Summary judgment should be granted as to this count because it contradicts the clear and unambiguous language of the Franklin Assignment and principles of contract interpretation. Under Michigan law (which governs the Franklin Assignment), interpretation of assignments is governed by general principles of contract law. *Perkins v. Suburban Mobility Auth.*, 2022 Mich. App. LEXIS 5256, at *4-5 (Mich. App. Ct. Sept. 1, 2022). When an assignment contains broad/general language followed by more specific language, or a list of specific property/rights to be assigned, courts will generally interpret the assignment as limited to what is contained in the enumeration of property or rights.  *Price v. Haynes*, 37 Mich. 487, 489 (1877) ("The construction of [assignments] has been that they transferred only what was enumerated in the schedule if one was actually attached."). Only if there is no limiting language in an assignment will Michigan courts find broad assignments of *all* rights or property. *Coots v. Chamberlain*, 39 Mich. 565, 569 (1878).

Here, the Assignment between Spin and Franklin, purports to sell:

all outstanding obligations ("Obligations") of Excell Auto Group, Inc. and each of its affiliates (collectively, "Company") owing to Assignor under **each of (i) the Revenue Purchase Agreement, dated as of June 1, 2021, by and between**

**Assignor and Company, and (ii) the Revenue Purchase Agreement, dated as of July 9, 2021, by and between Assignor and Company (collectively, the "Merchant Agreements")** and all rights of Assignor under **any similar or related documents (including without limitation, any guaranties, security agreements, forbearance agreements, settlement agreements and judgments)**, including with respect to all collateral securing the obligations of Company under the Merchant Agreements or securing any guaranties in respect thereof (the documents, including the Merchant Agreements, are defined collectively as the **"Merchant Documents")**, for a purchase price of $1.00 (the "Purchase Price").

[D.E. 75 at pgs. 86-95] (emphases supplied). In other words, the broad definition of "Obligations" is specifically limited to the *enumerated First and Second Spin Contracts* (with *absolutely no mention of the Third Spin Contract* entered in August 2021). While Obligations is expanded to include "similar or related agreements," that does not cover the Third Spin Contract, since the general description "similar or related agreement" is given specific definition to include "any guaranties, security agreements, forbearance agreements, settlement agreements and judgments." *Id.* There is no indication from the text or context that it was intended to include an entirely different species of document, the deal documents for an entirely separate transaction, the Third Spin Contract.  .

Since the Franklin Assignment limited "Obligations" to those under the First and Second Spin Contract (the "Merchant Documents"), and excluded the Third Spin Contract, the representations under paragraph 4 concerning "Obligations, the Merchant Documents and the Third Party" referenced in SAC cannot be construed to cover or contain any representations concerning the balance under the Third Spin Contract, let alone demonstrate any rights therein had been assigned over to Franklin.

Consequently, Count 2 must also be dismissed, since that claim seeking to set aside the Balance Transfer Agreement dated October 27, 2023 (four days before the Franklin Assignment), is based upon the contention that Spin allegedly sold its interests in, and balance of $2,114,312.50 under, the Third Spin Contract to Franklin. [D.E. 75 at ¶ 208]. Specifically, Plaintiff alleges, "Spin

11

sold and assigned all outstanding Obligations and Merchant Documents of the Debtor and any claims against the Debtor or Third-Parties *which included the Third Spin Contract*, prior to the Hi Bar Transfer Agreement." *Id.* at ¶ 210. But the Franklin Assignment said nothing about the Third Spin Contract, let alone a representation that there was no balance thereunder.  Nor did it need to, since by that point Spin already executed the Balance Transfer Agreement to Hi Bar, and Hi Bar entered the First Hi Bar Agreement with the Debtor Parties.

Finally, the Court should dismiss Count 28 for promissory estoppel, which Plaintiff alleges is made "under New York law" (rather than Michigan law, which governs the Franklin Assignment). "To prevail on such a cause of action, the party advancing it must demonstrate that the opposing party made a clear and unambiguous promise, upon which the former reasonably relied, to its detriment." *Wilson v. Dantas*, 29 N.Y.3d 1051, 1062 (2017). But any "promises" made *by Spin* under the Franklin Assignment were made *to Franklin*, *not to the Debtor* in whose shoes Plaintiff stands, which was not a party to the Franklin Assignment. *See MatlinPatterson ATA Holdings LLC v. Federal Express Corp.*, 87 A.D.3d 836 (1st Dept. 2011) (dismissing promissory estoppel claim where only alleged promise was contained in a letter agreement between two other parties). Moreover, Spin does not own or control Hi Bar and Hi Bar never spoke to Franklin at all. [SMF at ¶ ¶ 8 and 21]. Accordingly, summary judgment should be granted.

## IV.    Summary Judgment is Proper as to Count 17

Count 17 seeks a declaration that the Hi-Bar Contract, the First Settlement Agreement, and Second Settlement Agreement are "void and unenforecable" because they are "unconsionable" under New York Law. Plaintiff alleges, once again, that the Hi-Bar Contract is a "criminally usurious loan" and "[t]o the extent that the First Hi-Bar Contract, the First Settlement Agreement and Second Settlement Agreement are voidable, Plaintiff seeks to have each of these agreements

declared void and unenforceable." SAC ¶ 398. First, this Count should be summarily dismissed because under New York law, criminal usury is only an affirmative defense and cannot be the basis of a declaratory judgment cause of action, including seeking to declare void an MCA agreement. *Paycation Travel v. Glob. Merch. Cash*, 192 A.D.3d 1040, 1041 (2d Dept. 2021) ("General Obligations Law § 5-521 bars a corporation such as the plaintiff from asserting usury in any action, except in the case of criminal usury as defined in Penal Law § 190.40, *and then only as a defense to an action to recover repayment of a loan, and not as the basis for a cause of action asserted by the corporation for affirmative relief.*") (citations omitted; emphasis supplied); *Colonial Funding Network, Inc. for TVT Capital, LLC v. Epazz, Inc.,* 252 F. Supp. 3d 274, 279 (S.D.N.Y. 2017)("New York law [] [only] allows a corporation to assert criminal usury as a defense, but not as a claim for affirmative relief.") As such, there is no basis for a declaratory judgment that the Hi-Bar Contract is criminally usurious. Moreover, even if a declaratory judgment action was proper, the Hi Bar MCA satisfies the *Principis* test.

Furthermore, as to the claim that the Settlement Agreements should be declared void as being "unconscionable," New York law provides:

> A determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made -- i.e., some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.

*Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1, 10 (1988); *Command Components Corp. v. HWJ Eng'g & Surveying, PLLC*, 189 A.D.3d 990, 992 (2d Dept. 2020).[1] Here, the SAC claims the Hi Bar Settlements Agreements are substantively unconscionable, but there is simply no evidence

---

[1] "The doctrine of unconscionability *rarely applies in a commercial setting*, where the parties are presumed to have equal bargaining power." *Id.* A party to a financing agreement "is bound by the terms of his contract as made and cannot be relieved from his default, if one exists, in the absence of oppressive or unconscionable conduct on the latter's part." *FGH Contracting Co. v. Weiss*, 185 A.D.2d 969, 971 (2d Dept. 1992) (citation, quotation and alterations omitted).

that the Debtor entered these contracts with "an absence of meaningful choice," subject to oppressive conduct, or without the commercial sophistication to understand what it agreed to. *Dabriel, Inc. v. First Paradise Theaters Corp.*, 99 A.D.3d 517, 521 (1st Dept. 2012) ("All told, plaintiffs failed to plead anything regarding an alleged lack of meaningful choice … and it is noteworthy that plaintiffs were free to walk away from the lease negotiations at any time and rent space elsewhere.") (citation and quotation marks omitted); *See also Cooper Dev. Co. v. Friedman*, 1994 WL 62846, at *4 (S.D.N.Y. Feb. 22, 1994), *aff'd sub nom. Cooper Dev. v. Friedman*, 43 F.3d 1458 (2d Cir. 1994)("Under New York law, threats to enforce a party's legal rights under a contract—or even that party's interpretation of its rights—cannot constitute a wrongful threat sufficient to establish a claim of economic duress."). Here, the Debtor was not required to sign these agreements. Instead, the Debtor chose to. Given the lack of any evidence to support this claim, summary judgment should be granted.

**V.      Summary Judgment Should be Granted as to the The Fraudulent Conveyance Counts Because Any Transfers Resulted from the Enforcement of Hi Bar's Security Interest**

Counts 18, 19, 20, 21, 22, 23, 24, and 25, assert various fraudulent conveyance claims against Hi-Bar under federal bankruptcy and Florida state law. However, the Hi Bar obligation is not subject to a fraudulent transfer attack because "[a] transfer is not voidable under s. 726.105(1)(b) or s. 726.106 if the transfer results from … [e]nforcement of a security interest in compliance with Article 9 of the Uniform Commercial Code." § 726.109(5)(b) [SMF at ¶ 20]. To be sure, "[a] debtor's payment to a secured creditor is not fraudulent even though its natural effect was to hinder or delay the non-preferred creditors." *Wiand v. Wells Fargo Bank, N.A.*, 86 F. Supp. 3d 1316, 1327 (M.D. Fla. 2015), *aff'd sub nom. Wiand v. Wells Fargo Bank, N.A., Inc.*, 677 Fed. Appx. 573 (11th Cir. 2017) *citing Sunshine Resources, Inc. v. Simpson*, 763 So.2d 1078, 1081 (Fla.

4th DCA 1999) (quoting *Jacksonville Bulls Football Ltd. v. Blatt*, 535 So.2d 626, 629 (Fla. 3d DCA 1988)).

**CONCLUSION**

Based on the forgoing, the Hi-Bar Defendants respectfully requests this Court grants its Motion for Summary Judgement and award all other such relief deemed necessary and proper.

Respectfully submitted,

LETO LAW FIRM
201 S. Biscayne Blvd.
Suite 2700
Miami, Florida 33131
Tel.    305-341-3155
Fax:    305-397-1168

*/s/ Matthew P. Leto*
MATTHEW P. LETO
Florida Bar No.: 014504
mleto@letolawfirm.com
kzelaya@letolawfirm.com
pleadings@letolawfirm.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on December 27, 2024, we electronically filed the foregoing document with the Clerk of the Court and provided service to all counsel of record using CM/ECF.

*/s/ Matthew P. Leto*
MATTHEW P. LETO