## **AGREEMENT**

This Agreement made and entered into by and between SCOTT ZANKL ("SCOTT"), KRISTEN ZANKL ("KRISTEN"), EXCELL AUTO GROUP, INC. ("EXCELL") and EDWARD M. BROWN ("BROWN") on this 12th day of February, 2021.

WHEREAS, EXCELL is in need of a Ten Million Dollar ($10,000,000.00) loan in connection with the operation of its dealership;

WHEREAS, there is a preexisting loan from EXCELL to BROWN in the sum of Three Million Dollars ($3,000,000.00);

WHEREAS, EXCELL is wholly owned by KRISTEN who is willing to transfer a portion of her interest in EXCELL in order to accommodate the BROWN in providing said loan.

NOW THEREFORE, in consideration of the foregoing premises, the sufficiency of which is hereby acknowledged, the parties agree as follows:

1.      Funding by BROWN.  BROWN shall deliver to EXCELL the sum of Ten Million Dollar ($10,000,000.00) (the "Loan") in accordance with terms and conditions of this agreement.

2.      Pledge of Collateral/Security Interest.  Contemporaneously with the transfer of funds set forth in Paragraph 1 herein, KRISTEN shall transfer, by way of assignment, 49% of her interest in EXCELL as collateral to the Loan, which shall remain vested in BROWN until the Loan is repaid. During the term BROWN holds a vested interest in EXCELL, he shall not receive distributions. See Exhibit "A" form assignment.  BROWN shall also file an UCC-1 with respect to EXCELL's assets.

3.      Vesting Interest in BROWN.  Upon the repayment of the Loan, BROWN shall be vested in a 20% interest in EXCELL.  At the time BROWN becomes vested in EXCELL, he will begin to receive distributions from EXCELL according to such interest.

4.      Repayment by EXCELL.  EXCELL shall repay the Loan within two (2) years. However, in the interim, EXCELL will pay to BROWN five percent (5%) interest, which is Forty-One Thousand Six Hundred Sixty-Six Dollars and 00/100 ($41,666.00) per month, due on the 10th day of each month.[1]  EXCELL shall execute a Note substantially in the form as Exhibit "B" evidencing this loan.

5.      Repayment of Preexisting Loan.  In connection with the prior loan made from BROWN to EXCELL in the sum of Three Million Dollars ($3,000,000.00), that loan shall be repaid with fifty (50) equal payments of principal only in the amount of Sixty Thousand Dollars ($60,000.00) per month.  Provided EXCELL is current on its obligations to BROWN at the time of funding the Ten Million Dollar loan provided for in Paragraph 1 herein, said payments shall commence ninety (90) days from the funding of the Ten Million Dollars ($10,000,000) and be due on the 20th day of each month thereafter.

---

[1] Said interest rate shall adjust with any changes to the Libor rate as of the date of closing.

6.   Personal Guaranty. Both KRISTEN and SCOTT shall personally guaranty both loans and shall execute a personal guaranty substantially in the form as Exhibit "C".

7.   Binding on Successors and Assigns. This Agreement shall be binding upon and inure to the benefit hereto and their respective successors and assigns.

8.   No Waiver. No waiver of any provision of this Agreement shall be effective unless specifically made in writing and duly signed by the Lender, and no modification or amendment of provision of this Agreement shall be effective unless specifically made in writing and duly signed by each party hereto.

9.   Integration. The Agreement constitutes the entire agreement and understanding between the parties hereto and supersedes any and all prior agreements and understandings, oral or written, relating to the subject matter hereof.

10.   Governing Law; Venue. This Agreement is governed by the laws of the State of Florida and the undersigned hereby consents to personal jurisdiction in any state or federal court in the State of Florida and to venue in any state of federal court in Palm Beach County, Florida, in connection with any claim, allegation, cause of action or legal proceeding relating in any way to this Agreement or any security or collateral related thereto. In the event of a dispute arising out of this Agreement or any term hereof, the prevailing party shall be entitled to be reimbursed by the non-prevailing party for its costs and expenses incurred in connection with such action, including without limitation, attorney's fees and costs.

11.   Counterparts. This Agreement may be executed in any number of counterparts. All such counterparts will be deemed to be originals and will together constitute but one and the same instrument.

_____
SCOTT ZANKL

_____
KRISTEN ZANKL


EXCELL AUTO GROUP, INC.

By: _____
Scott Zankl, Manager

_____
EDWARD M. BROWN

-2-

## ASSIGNMENT OF STOCK

This Assignment made by KRISTEN ZANKL (Assignor), and EDWARD M. BROWN (Assignee) on this __12th__ day of February, 2021.

WHEREAS, the Assignor owns all right, title and interest of one-hundred (100) shares of common stock of Excell Auto Group, Inc., a Florida corporation.

WHEREAS, Assignor wishes to transfer forty-nine (49) shares of said common stock to Assignee as provided for herein.

NOW, THEREFORE, for $10.00 and other good and valuable consideration by Assignee to Assignor, Assignor hereby sells, transfers, conveys, assigns, and sets over all of Assignor's right, title, and interest of forty-nine (49) shares of common stock of Excell Auto Group, Inc., to the Assignee.

Assignor warrants that she has not assigned, transferred, or conveyed his interest in the above referenced matter to any other person, firm or entity, and that he has full power and authority to make this assignment.

KRISTEN ZANKL, Assignor

By: _Kristen Zank_

STATE OF FLORIDA
COUNTY OF Palm Beach

The foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization, this 13th day of February, 2021, by KRISTEN ZANKL, who is personally known to me or who has produced a _____ as identification.

_Catalina Bolivar_
NOTARY PUBLIC:
State of Florida

My Commission Expires: June 3, 2023

CATALINA BOLIVAR
MY COMMISSION # GG 302439
EXPIRES: June 3, 2023
Bonded Thru Notary Public Underwriters

-3-

EXHIBIT "B"

THIS NOTE IS NOT ASSUMABLE.  IN THE EVENT OF A DEFAULT OF THIS NOTE, THIS NOTE SHALL BE DUE AND PAYABLE IN FULL IMMEDIATELY.

**INSTALLMENT PROMISSORY NOTE WITH BALLOON PAYMENT**

Boca Raton, Florida                                             Loan Amount: $10,000,000.00

February __12__, 2021

For value received, the undersigned, EXCELL AUTO GROUP, INC., a Florida corporation (hereinafter referred to as Borrowers) promises to pay to the order of EDWARD M. BROWN (hereinafter referred to as Lender), at its principal office at 1115 Hillsboro Mile, Hillsboro Beach, FL 33062, or at such other place as it may designate from time to time, the principal sum of TEN MILLION and 00/100 Dollars (U.S. $10,000,000.00), with an interest rate of five percent (5%) per annum[2], with the entire sum hereunder, due and payable on _____ or upon the sale or transfer of the real property located at _____, whichever occurs first.

(1)        Interest only on the outstanding principal balance of this Note shall be paid in monthly installments of Forty-One Thousand Six Hundred Sixty-Six and 00/100 ($41,666) Dollars, with the first such interest payment commencing on February 10, 2021, and thereafter on the tenth (10th) day of each consecutive, successive month thereafter, for twenty-four (24) consecutive months, with the last such interest only payment to be made on _____, together with a single final balloon payment in the amount of _____ and 00/100 ($_____.00).

(2)        This Note will be considered in default if a scheduled payment has not been received within ten (10) days of the due date.  While in default, this Note shall bear interest of eighteen percent (18%) per annum.  If this Note is in default for fifteen (15) days, the aggregate unpaid indebtedness shall at the option of Lender become immediately due and payable.  Both principal and interest on the Note are payable in lawful money of the United States of America, without deduction for or on account of any present or future taxes, duties or other charges levied or imposed on the Note or the proceeds thereof, or upon the maker or holder thereof by any government, or any instrumentality, authority, or political subdivision thereof.

(3)        The Borrowers and endorsers hereof severally waive demand, notice and protest, and any defense by reason of extension of time for payment or other indulgence granted by the Note holder, and further agree to pay all costs, charges and expenses of enforcement or collection, including reasonable attorneys' fees, and further, if this Note is in default and is placed in the hands of an attorney for collection or if it becomes necessary to protect the security hereof, whether or not a complaint is filed, including, but not limited to, such attorneys' fees incurred prior to the institution of litigation or in litigation, including trial and appellate review, and in arbitration, bankruptcy or other administrative or judicial proceedings.  This Note shall be the joint and several obligations of all Borrowers, sureties, guarantors and endorsers and shall be binding upon them, their heirs, personal representatives, successors and assigns.  Note holder has the right to apply to any obligations of the Borrowers to Note holder or against any liabilities of the Borrowers to Note holder: (a) any amounts

---

[2] Which shall be adjusted according to the Libor factor in Brown's Note to Wells Fargo relating to this transaction.

-4-

in any account maintained by the Borrowers with Note holder; and (b) any collateral held by Note holder for any indebtedness or obligation of the Borrowers to Note holder.

(4)     Nothing herein contained, nor in any instrument or transaction related hereto, shall be construed, or so operate as to require Borrowers, or any person liable for the payment of the sums due pursuant to this Note, to pay interest in an amount or at a rate greater than the highest rate permissible under applicable law as amended from time to time.  Should any interest or other charges made by Borrowers, or any party liable for the payment of the sums due pursuant to this Note, result in the computation or earning of interest in excess of the highest rate permissible under applicable law, then any and all such excess shall be and the same is hereby waived by Note holder, and all such excess shall be paid by Note holder to Borrowers or to any party liable for the payment of the sums due pursuant to this Note, it being the intent of the parties hereto that under no circumstances shall Borrowers or any party liable for the payment of the sums due hereunder, be required to pay interest in excess of the highest rate permissible under applicable law as amended from time to time.

(5)     This Note may be prepaid in part or in full at any time; provided, however, no partial prepayment shall relieve the Borrowers of paying the regular payment.  In the event of any prepayment of this Note, there is no additional fee for prepayment.

(6)     Any notice to the Borrowers provided for in this Note shall be given by mailing such notice by first class mail, addressed to the Borrowers at the address stated below, or to such other address as Borrowers may designate by notice in writing to the Note holder.  Any notice to the Note holder shall be given by mailing such notice by certified mail, return-receipt-requested, to the Note holder at the address stated in the first paragraph of this Note, or at such address as may have been designated by notice to Borrowers.

(7)     The indebtedness evidenced by this Note is secured by a Mortgage of even date, as described therein, and reference is made to the said instruments for additional rights as to acceleration of the indebtedness evidenced by this Note, and other covenants and conditions of default applying to this indebtedness.

(8)     The remedies of Note holder as provided herein, or in the Mortgage (or any other loan documents executed in conjunction with the Note) shall be cumulative and concurrent and may be pursued singularly, successively or together, at the sole discretion of Note holder, and may be exercised as often as the occasion thereof shall arise.

(9)     Whenever the context so requires, words used in the singular shall be construed to mean or include the plural and vice versa, and pronouns of any gender shall be construed to mean or include any other gender or genders.

(10)     Neither this Note nor any term or provision hereof may be altered or amended in any manner except by an instrument in writing signed by the Note holder and the Borrowers.

(11)     The terms and conditions of this Note and the rights, obligations and duties hereunder shall be construed and enforced in accordance with the laws of the State of Florida and venue with respect to any litigation concerning this Note shall be in Palm Beach County, Florida.

(12)    It is expressly understood and agreed that the Note holder shall never be construed for any purpose as a partner, joint venturer, co-principal or associate of the Borrowers or of any person or party claiming by, through or under the Borrowers in the conduct of their respective businesses.

(13)    In the event of a dispute arising out of this Note or any term hereof, the prevailing party shall be entitled to be reimbursed by the non-prevailing party for its costs and expenses incurred in connection with such action, including, without limitation, attorney's fees and costs.

(14)    BORROWERS HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WITH THE ADVICE OF COMPETENT COUNSEL, WAIVES, RELINQUISHES, AND FOREVER FORGIVES THE RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION BASED HEREON, ARISING OUT OF, OR IN ANY WAY RELATED TO THIS NOTE AND ANY DOCUMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, ACT OR OMISSION, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF BORROWERS OR NOTE HOLDER OR THE RESPECTIVE DIRECTORS, OFFICERS, PARTNERS, MEMBERS, EMPLOYEES, AGENTS, OR ATTORNEYS, OR ANY OTHER PERSONS AFFILIATED WITH BORROWERS OR THE NOTE HOLDER IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT, TORT, OR OTHERWISE. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE NOTE HOLDER ENTERING INTO THE LOAN EVIDENCED BY THIS NOTE.

ADDRESS OF BORROWERS:
1001 Clint Moore Road
Boca Raton, FL 33487

KRISTEN ZANKL, President

SCOTT ZANKL, Vice President

## UNLIMITED GUARANTY

February _12_ , 2021

## DEFINITIONS:

In this Guaranty the following terms shall have the following indicated meanings:

**1.** Borrower:     EXCELL AUTO GROUP, INC., a Florida corporation.

**2.** Lender:     EDWARD M. BROWN.

**3.** Guarantor:     KRISTEN ZANKL and SCOTT ZANKL.

**4.** Obligations:     All indebtedness, liabilities, covenants, promises, agreements, terms, conditions and other obligations of every nature whatsoever (whether secured or unsecured) of the Borrower (including all indebtedness, obligations and liabilities of partnerships and joint ventures, created or arising while the Borrower may have been or may be a member thereof) to the Lender and all renewals, modifications and extensions thereof howsoever, evidenced, whether now existing or hereafter created or arising, direct or indirect, absolute or contingent, joint or several, liquidated or unliquidated, matured or unmatured, and howsoever now or hereafter owned, held or acquired by Lender, whether through discount, overdraft, purchase, direct loan or as collateral, or otherwise, including without limitation: (i) any letter of credit issued by Lender for the account of Borrower, (ii) all principal and interest, (including, without limitation, all interest accruing after a petition is filed in bankruptcy or similar proceedings, notwithstanding that Borrower's obligation to pay such interest may have ceased to exist by operation of law), (iii) all costs of collection, including reasonable attorneys' fees, paralegals' fees and legal assistants' fees (whether incurred with collection, trial, appeal, bankruptcy proceedings or otherwise notwithstanding that Borrower's obligation to pay such fees may have ceased to exist by operation of law), (iv) all documentary stamp tax and intangible tax (including interest and penalties, if any) determined to be due in connection with any evidence of said indebtedness, obligations and liabilities, and (v) all other amounts which Borrower are obligated to pay Lender under any instruments evidencing, relating to or securing said indebtedness, obligations and liabilities or any part thereof.

## CONSIDERATION:

As a material inducement to the Lender to extend credit to the Borrower, the Guarantor makes this Guaranty.

## **TERMS, COVENANTS AND CONDITIONS:**

1.      Nature and Scope of Guaranty.

1.1      Guarantor irrevocably, absolutely and unconditionally guarantees to the Lender, the due and punctual payment and performance of the Obligations.

1.2      This Guaranty is an absolute and unconditional guaranty of payment and performance and not one of collection and all Obligations guaranteed hereby shall be conclusively presumed to have been created in reliance hereon.

1.3      Guarantor will make all payments hereunder in lawful money of the United States of America in immediately available funds without set-off or counterclaim.

1.4      Guarantor's liability hereunder shall remain unchanged irrespective of any invalidity, illegality or unenforceability of or any defense (whether arising by reason of disability, dissolution or liquidation of the Borrower, or lack of corporate or partnership power or authority of the Borrower, or otherwise) to the Obligations or any portion thereof, or of any security for the Obligations, or any portion thereof, it being understood and agreed that Guarantor shall be and remain fully bound hereunder regardless of whether Borrower shall be found not liable on the Obligations or any other guarantor be relieved or released from liability for any reason whatsoever.

1.5      In case of the death, incompetency, disability, dissolution, liquidation or insolvency (howsoever evidenced) of the Borrower, or in case any bankruptcy, reorganization, debt arrangement, adjustment, composition, or other proceeding under any bankruptcy or insolvency law, or any dissolution, liquidation or receivership proceeding is instituted by or against the Borrower, or any Borrower admits in writing its inability to pay its debts as they mature, all Obligations then existing shall at the option of the Lender, without notice to anyone, immediately become due and payable by the Guarantor.

1.6      Guarantor acknowledges that Lender has no obligations or duties to Guarantor under this Guaranty.

2.      Discharge of Guarantor.      Provided that there are not then any existing commitments on the part of the Lender with respect to any loans to the Borrower, Guarantor shall be discharged from liability hereunder only upon the full payment and performance of the Obligations; provided, however, that if any sums paid to and applied by Lender toward the Obligations are thereafter required to be repaid to the Borrower or to any affiliate of Borrower, or to any trustee, receiver or other person, by reason of the application of the Bankruptcy Code, the Uniform Fraudulent Transfer Act or any other law relating to creditors' rights generally, then this Guaranty shall be reinstated, ab initio, as if such portion of the Obligations had never been paid.

3.      Assent to Agreements made by Borrower.   Guarantor assents, without notice to Guarantor, to all terms and agreements heretofore or hereafter made by Borrower with Lender insofar as same may affect the Obligation.

4.      Consent to Lender's Actions or Inactions Regarding the Borrower, the Guarantor, and the Collateral. Guarantor consents that Lender may at any time and from time to time, (whether before or after termination of this Guaranty) before or after any default by the Borrower, with or without further notice to or assent from Guarantor:

4.1      Either with or without consideration to the Borrower, any guarantor, pledgor, or grantor of any collateral, exchange, release, surrender (in whole or in part), or fail to protect or to preserve the value of any collateral now or hereafter held as security for the Obligations, or waive, release, or subordinate any lien or security interest (in whole or in part) in or on any such collateral;

4.2      Waive or delay the exercise of any of its rights or remedies against the Borrower or any other person or entity, including, without limitation, any guarantor; notwithstanding any waiver or delay, the Lender shall not be precluded from further exercise of any of its rights, powers or privileges expressly provided for herein or otherwise available, it being understood that all such rights and remedies are cumulative;

4.3      Waive or extend the time of Borrower's performance of any and all terms, provisions and conditions set forth in any instrument or agreement evidencing or relating to the Obligations;

4.4      Release the Borrower or any other person or entity, including, without limitation, any guarantor, from all or any portion of the Obligations;

4.5      Proceed against the Guarantor without first proceeding against or joining the Borrower or any guarantor or any endorser of any note or other agreement evidencing the Obligations, or any property securing the payment or performance of the Obligations;

4.6      Renew, extend or modify the terms of the Obligations or any instrument or agreement evidencing or relating to the Obligations;

4.7      Following the occurrence of an Event of Default (as defined in the Mortgage) apply payments by the Borrower, the Guarantor, or any other person or entity to the reduction of the Obligations in such manner and in such amounts and at such time or times and in such order and priority as Lender may see fit; and

4.8      Generally deal with the Borrower or any of the security for the Obligations or other person or party as the Lender may see fit.

Guarantor shall remain bound under this Guaranty notwithstanding any such exchange, release, surrender, subordination, waiver (whether or not such waiver is oral or written), delay, proceeding, renewal, extension, modification, application, act or failure to act, or other dealing described in Subsections 4.1 through 4.8, inclusive, above even though done without notice to or consent from the Guarantor.

5.      Waiver of Notice. Guarantor waives all notices whatsoever with respect to this Guaranty and with respect to the Obligations, including, but not limited to, notice of:

5.1     The Lender's acceptance of this Guaranty or its intention to act, or its action, in reliance hereon;

5.2     The extension of credit by Lender to Borrower;

5.3     Presentment and demand for payment of the Obligations or any portion thereof;

5.4     Protest and notice of dishonor or non-payment with respect to the Obligations or any portion thereof;

5.5     Any default by Borrower or any pledgor, grantor of security, or any guarantor, including the Guarantor;

5.6     Any other notices to which the Guarantor may otherwise be entitled except to the extent expressly provided in the Loan Documents; and

5.7     Any demand for payment under this Guaranty.

6.      Waiver of Marshalling, Statute of Limitations and Wage Exemption. Guarantor waives (i) any right or claim of right to cause a marshalling of any of the Borrower's assets or the assets of any other party now or hereafter held as security for the Obligations and (ii) the benefit of any statute of limitations affecting the liability of Guarantor hereunder.

7.      Subordination.

7.1     All rights and claims of Guarantor (collectively the "Guarantor Claims") against any Borrower or any of Borrower's property now or hereafter existing shall be subordinate and subject in right of payment to the prior payment in full of and the performance of all of the Obligations.

7.2     Until the Obligations have been paid and performed in full and Guarantor shall have performed all of Guarantor's obligations hereunder, Guarantor shall not receive or collect, directly or indirectly, from Borrower or any other party any payment upon the Guarantor Claims, nor seek to realize upon any collateral securing such Guarantor Claims. Notwithstanding the foregoing, if Guarantor should receive any such payment, Guarantor agrees to hold same in trust for Lender and agree that Guarantor shall have absolutely no rights in or to or dominion over such payments except to pay them promptly to Lender, and Guarantor hereby covenant to do so.

8.      Grant of Security Interest. To secure the prompt payment and performance of the Obligations, the Guarantor grants to Lender a continuing first lien security interest in the Guarantor Claims and in all property of the Guarantor delivered concurrently herewith or now, or at any time hereafter in the possession of the Lender, and all proceeds of all such property. Guarantor agrees that the Lender shall have the rights and remedies of a secured party under the Uniform Commercial Code-Secured Transactions as adopted by the State of Florida with respect to all of the aforesaid

-10

property, including, without limitation, the right to sell or otherwise dispose of any or all of such property. Following a default by Borrower with respect to the Obligations, Lender may, without further notice to anyone, apply or set off any balances, credits, deposits, accounts, monies or other indebtedness at any time created by or due from the Lender to the Guarantor against the amounts due hereunder. Any notification of intended disposition of any property required by law shall be deemed reasonably and properly given if given at least five (5) calendar days before such disposition.

9.    Subrogation Rights. Until the Obligations have been paid and performed in full and the Guarantor shall have performed all of the Guarantor's obligations hereunder, Guarantor will not assert any right to which Guarantor may be or may become entitled, whether by subrogation, reimbursement, exoneration, contribution, indemnification or otherwise, against the Borrower or any other guarantor, or against any of their respective properties, by reason of the payment and performance by the Guarantor of its obligations under this Guaranty.

10.    Representations and Warranties.

10.1    Guarantor represents and warrants to Lender that:

(a)    The execution, delivery and performance by Guarantor of this Guaranty, (i) does not require the approval of any governmental authority, whether federal, state, county, or municipal (collectively the "Governmental Authority"), and (ii) will not violate any law, order, regulation, authorization or similar matters (collectively the "Governmental Requirements"), any indenture, agreement or other instrument to which Guarantors are a party or by which Guarantor or any of Guarantor's property is bound, or be in conflict with, result in a breach of or constitute (with due notice or the lapse of time, or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of Guarantor's properties or assets, except as contemplated by the provisions of this Guaranty.

(b)    This Guaranty when executed and delivered by Guarantor will constitute the legal, valid and binding obligations of Guarantor enforceable in accordance with the terms hereof.

(c)    There are no judgments outstanding against Guarantor and there is no action, suit, proceeding, or investigation now pending (or to the best of Guarantor's knowledge after diligent inquiry threatened) against, involving or affecting a Guarantor or any of Guarantor's properties or any part thereof, at law, in equity or before any Governmental Authority that if adversely determined as to Guarantor, would result in a material adverse change in the business or financial condition of Guarantor, or Guarantor's operation and ownership of any of its properties, nor is there any basis for such action, suit, proceeding, or investigation.

(d)    All balance sheets, statements of profit and loss and other financial data that have been given to Lender with respect to Guarantor, (i) are complete and correct in all material respects; (ii) do accurately present the financial condition of Guarantor as of the dates, and the results of Guarantor's operations, for the periods for which the same have been and will be furnished; and (iii) have been prepared in accordance with generally accepted accounting principles consistently followed throughout the periods covered and to be covered thereby; all balance sheets disclose all

-11-

known liabilities, direct and contingent, as of their respective dates; and there has been no change in the condition of the Guarantor, financial or otherwise, since the date of the most recent financial statements given to Lender with respect to Guarantor other than changes in the ordinary course of business, none of which changes have been materially adverse.

(e)    Guarantor is not insolvent and will not be rendered insolvent by the execution, delivery, payment and performance of this Guaranty.

10.2    Guarantor acknowledges that the Lender has relied upon the Guarantor's representations, has made no independent investigation of the truth thereof and is not charged with any knowledge contrary thereto that may have been received by any officer, director, employee, or shareholder of Lender. Guarantor further acknowledges that it has not been induced to execute and deliver this Guaranty as a result of, and is not relying upon, any representations, warranties, agreements, or conditions, whether express or implied, written or oral, by Lender or by any officer, director, employee, or shareholder of Lender.

11.    Financial Statements.    Guarantor will furnish to Lender no later than each anniversary of the date of the prior financial statement submitted to Lender and received by Lender no later than thirty (30) days after each anniversary date of the date of the prior financial statement, financial statements of Guarantor and liquidity verification prepared and certified in a manner satisfactory to Lender, all in such detail as Lender may reasonably require.

12.    Tax Returns.    Guarantor will furnish to Lender no later than thirty (30) days after filing, a copy of Guarantor's signed annual income tax return, including all K-1 schedules.

13.    Transfer of Assets.    Until the Obligations have been paid in full and Guarantor shall have performed all of Guarantor's obligations under this Guaranty, Guarantor shall not sell, transfer or otherwise dispose of any of Guarantor's assets or properties and not create or suffer to exist any lien, security interest or other charge or encumbrance, or any other type of preferential arrangement, upon or with respect to any of Guarantor's assets or properties, if the result in any such case would be to decrease the Guarantor's net worth in any materially adverse which would materially impair Guarantor's ability to perform his obligations under this Guarantee; provided, however, that in no event shall Guarantor be permitted or entitled to effectuate any sale, transfer or disposition if as a result thereof, Guarantor would be rendered insolvent.

14.    Modification.    No agreement unless in writing and signed by an authorized officer of Lender and no course of dealing between Guarantor and Lender shall be effective to change or modify or to discharge in whole or in part this Guaranty. No waiver of any rights or powers of Lender or consent by it shall be valid unless in writing signed by an authorized officer of Lender and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

15.    Cost of Enforcement.    Guarantor agrees that, whenever an attorney is used to obtain payment or performance under or otherwise enforce this Guaranty or to enforce, declare, or adjudicate any rights or obligations under this Guaranty, whether by suit or any other manner whatsoever, reasonable attorneys' fees, paralegals' fees, legal assistants' fees and costs (whether

incurred in collection, litigation, bankruptcy proceedings, appeals, or otherwise) shall be payable by Guarantor to Lender.

16.    Submission to Jurisdiction. Guarantor irrevocably and unconditionally (a) agrees that any suit, action, or other legal proceeding arising out of or relating to this Guaranty may be brought, at the option of the Lender, in a court of record of the State of Florida in «County» County or in the United States District Court for the Southern District of Florida; (b) consents to the jurisdiction of each such court in any such suit, action, or proceeding; (c) waives any objection which it may have to the laying of venue of any such suit, action, or proceeding in any of such courts; and (d) agrees that service of any court paper may be effected on Guarantor by mail, addressed and mailed as provided in Section 16 hereof or in such other manner as may be provided under applicable laws or court rules in said State.

17.    Notice. All notices, demands, requests and other communications, if any, required under this Guaranty shall be given in writing delivered by hand, telecopy, or mail and shall be conclusively deemed to have been received if delivered or attempted to be delivered by telecopy or United States first class mail, return receipt requested, postage prepaid, addressed to the party for whom it is intended at its address set forth below. Any party may designate a change of address by written notice to the other party, received by such other party at least ten (10) days before such change of address is to become effective. Guarantors' address for the purpose of this Section is:

Kristen Zankl
Scott Zankl
1001 Clint Moore Road
Boca Raton, FL 33487

Lender's address for the purpose of this Section is:

Edward M. Brown
1115 Hillsboro Mile
Hillsboro Beach, FL 33062

This Guaranty does not require that Lender give Guarantor any notice, demand, or request and this Section shall not be construed to create such a requirement.

18.    Choice of Law. This Guaranty shall be construed, interpreted, enforced and governed by and in accordance with the laws of the State of Florida (excluding the principles thereof governing conflicts of law), and federal law, in the event federal law permits a higher rate of interest than Florida law.

19.    Gender and Number. In this Guaranty, wherever the context so requires, the use of any gender shall include all other genders, and words in the singular shall include the plural and the plural shall include the singular.

20.    Successors and Assigns. This Guaranty shall inure to the benefit of the Lender, its successors and assigns, and shall be binding upon the Guarantor and its respective heirs, personal representatives, successors and assigns.

-13

21. Savings Clause. If any provision or portion of this Guaranty is declared or found by a court of competent jurisdiction to be unenforceable or null and void, such provision or portion thereof shall be deemed stricken and severed from this Guaranty, and the remaining provisions and portions thereof shall continue in full force and effect.

22. Headings. The captions of Sections of this Guaranty are for convenient reference only, and shall not affect the construction or interpretation of any of the terms and provisions set forth in this Guaranty.

23. Joint and Several Liability. The liability of the Guarantor hereunder shall be joint and several with the Borrower and all other guarantors of the Obligations.

24. Waiver of Trial by Jury. LENDER AND GUARANTOR HEREBY KNOWINGLY, IRREVOCABLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY ACTION, PROCEEDING OR COUNTERCLAIM BASED ON THIS GUARANTY, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS GUARANTY OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THIS GUARANTY, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY HERETO. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER ACCEPTING THIS GUARANTY FROM GUARANTOR AND FOR GUARANTOR GIVING THIS GUARANTY TO LENDER.

KRISTEN ZANKL, Individually

STATE OF FLORIDA
COUNTY OF Palm Beach

The foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization, this 12th day of February, 2021, by KRISTEN ZANKL, who is personally known to me or who has produced a _____ as identification.

NOTARY PUBLIC:
State of Florida

My Commission Expires: June 3, 2023

CATALINA BOLIVAR
MY COMMISSION # GG 302439
EXPIRES: June 3, 2023
Bonded Thru Notary Public Underwriters

-14

SCOTT ZANKL, Individually

STATE OF FLORIDA
COUNTY OF Palm Beach

The foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization, this 12th day of February, 2021, by SCOTT ZANKL, who is personally known to me or who has produced a _____ as identification.

NOTARY PUBLIC:
State of Florida

My Commission Expires: June 3, 2023

CATALINA BOLIVAR
MY COMMISSION # GG 302439
EXPIRES: June 3, 2023
Bonded Thru Notary Public Underwriters

-15