DocuSign Envelope ID: 65F7E0E...

# EXHIBIT A

## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT (this "SETTLEMENT AGREEMENT" or "Agreement") is entered into by and between **EXCELL AUTO GROUP, INC.; KARMA OF PALM BEACH INC; AUTOMOTIVE SERVICE SYSTEMS, INC.; KZ CONSULTANTS, INC.; MISS KRIS, LLC; EXCELL AUTO LEASING INC; EXCELL AUTO WHOLESALE INC.; DEALER SOUQ USA LLC; EAG WHOLESALE LLC; KARMA OF BROWARD, INC.; LAVISH HERO FUND; KARMA OF PALM BEACH, INC.; APPLE 3 INVESTMENTS, INC.; KZ CONSULTANTS INC.; EXCELL AUTO SPORT AND SERVICE, INC.** (collectively the "Seller" or "Sellers"), **KRISTIN ZANKL and SCOTT THOMAS ZANKL** (collectively the "Guarantors,"), and referred to herein together with Seller collectively and individually as (the "Sellers"), and **HI BAR CAPITAL, LLC** ("Purchaser,") and referred to herein collectively with the Sellers as (the "Parties") on this **December 19, 2021** (the "Effective Date").

WHEREAS, the Parties entered into a receivables purchase agreement on **October 27, 2021**; (collectively the "Purchase Agreement")

WHEREAS, on NOVEMBER 16, 2021, the Sellers defaulted on the Purchase Agreement. ("Default Date")

WHEREAS, the Sellers are indebted to Purchaser in the amount of **$2,677,880.00** plus fees and costs.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED BETWEEN THE PARTIES AS FOLLOWS:

Sellers shall pay to Purchaser the agreed amount of **$2,677,880.00** at a 1.50 factor rate for a total payback amount of $4,016,820 ("Settlement Amount") as follows:

1. Payments
   a. Seller shall make payments of **$200,000.00** per week until the balance plus factor rate is paid in full. See attached Payment Schedule attached hereto as **Exhibit "B"**.
   b. First payment shall be due on Monday, December 20, 2021 and shall continue each week until paid in full.
2. Early Payoff Discount.
   a. Within 30 days of execution of this Settlement Agreement, Seller may payoff the Settlement Amount at a discounted factor rate of **1.10** for a total payback amount of **$2,945,668.00.**
   b. If Seller does not exercise this early payoff option, payments shall continue at the agreed payment schedule as listed in Exhibit "B".
3. Payments shall be made by Wire or ACH each week on the scheduled payment dates.

I. **SECURITY AGREEMENT**:
   Sellers and Guarantor agree to provide security interest in the following collateral:

   a. Security Interest in Vehicle
      i. Sellers shall provide an unencumbered security interest in the **2017 Pagani (VIN #ZA9H12UA5HSF76013)**. (the "Vehicle") A copy of the Vehicle's Title is attached

Settlement Agreement and Release - Page 1 of 10

PLAINTIFF'S EXHIBIT

23

hereto as **Exhibit "A"**.

    ii. Sellers shall execute a security interest and any other documents necessary to effectuate this security interest and perfect the lien against the Vehicle.

    iii. Sellers shall deliver an original title to the Vehicle to be held in escrow until the Settlement Amount is paid in full.

b. <u>Additional Security</u>

    i. As additional security for the prompt and complete payment and performance of any and all liabilities, obligations, covenants or agreements of Seller under this Settlement Agreement (and any future amendments of this Agreement, if any) (hereinafter referred to collectively as the "Obligations"), Sellers hereby pledge, assign and hypothecate to Purchaser (collectively, "Pledge") and grants to Purchaser a continuing, perfected and first priority lien upon and security interest in, to and under all of Sellers' right, title and interest in and to the following (collectively, the "Collateral"), whether now existing or hereafter from time to time acquired:

        1. all accounts, including without limitation, all deposit accounts, accounts-receivable, and other receivables, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined by Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Sellers; and all of Sellers' proceeds, as such term is defined by Article 9 of the UCC.

c. REPRESENTATIONS AND WARRANTIES. Sellers warrant and covenant that:

    i. No other creditors has a security interest in the Collateral Sellers is the owner of the Collateral free from any adverse lien or encumbrance except this lien and the others described in this Agreement.

    ii. Sellers will defend the Collateral against all claims of other persons.

    iii. Sellers will immediately notify the Purchaser in writing of any change in name or address.

    iv. Sellers will do all such things as Purchaser at any time or from time to time may reasonably request to establish and maintain a perfected security interest in the Collateral.

    v. Sellers will pay the cost of filing this agreement in all public offices where recording is deemed by Purchaser to be necessary or desirable. A photographic or other reproduction of this agreement is sufficient as a financing statement.

    vi. Sellers will not transfer or encumber the Collateral without the prior written consent of Purchaser.

    vii. Sellers will keep the Collateral insured against risk of loss or damage upon such terms as Purchaser may reasonably require.

    viii. Sellers will keep the Collateral free from any adverse lien and in good repair, will not waste or destroy the Collateral, and will not use the Collateral in violation of any law or policy of insurance. Purchaser may examine and inspect the Collateral at any reasonable time.

    ix. Sellers will pay promptly when due all taxes and assessments upon the Collateral or for its use or operation or upon this Agreement or upon any note evidencing the Obligations.

d. <u>Representations with Respect to Collateral</u>. Sellers hereby represents and warrants to Purchaser that the execution, delivery and performance by Seller of this Pledge, and the remedies in respect of the Collateral under this Pledge (i) have been duly authorized; (ii) do not require the approval of any governmental authority or other third party or require any

DocuSign Envelope ID: ...

action of, or filing with, any governmental authority or other third party to authorize same (other than the filing of the UCC-1s); and (iii) do not and shall not (A) violate or result in the breach of any provision of law or regulation, any order or decree of any court or other governmental authority, and/or (B) violate, result in the breach of or constitute a default under or conflict with any indenture, mortgage, deed of trust, agreement or any other instrument to which Sellers are a party or by which any of Sellers' assets (including, without limitation, the Collateral) are bound.

e. _Further Assurances._ Upon the request of Purchaser, Sellers, at Sellers' sole cost and expense, shall execute and deliver all such further UCC-1s, continuation statements, assurances and assignments of the Collateral and consents with respect to the pledge of the Collateral and the execution of this Pledge, and shall execute and deliver such further instruments, agreements and other documents and do such further acts and things, as Purchaser may request in order to more fully effectuate the purposes of this Pledge and the assignment of the Collateral and obtain the full benefits of this Pledge and the rights and powers herein created.

f. _Attorney-in-Fact._ Sellers hereby authorize Purchaser at any time to take any action and to execute any instrument, including without limitation to file one or more financing statements and/or continuation statements, to evidence and perfect the security interest created hereby and irrevocably appoints Purchaser as its true and lawful attorney-in-fact, which power of attorney shall be coupled with an interest, with full authority in the place and stead of Sellers and in the name of Seller or otherwise, from time to time, in Purchaser's sole and absolute discretion, including without limitation (a) for the purpose of executing such statements in the name of and on behalf of Sellers, and thereafter filing any such financing and/or continuation statements, and

to receive, endorse and collect all instruments made payable to Sellers.

2. There shall be no cure period. If any payment is not received on the aforementioned dates, Purchaser shall have leave to enforce the full balance due less any payments made hereunder.

3. Purchaser hereby covenants not to sue and forever releases, acquits, and discharges Sellers and any of their guarantors, agents, employees, officers, partners, principals, insurers, representatives, successors, transferees or assigns, from any and all liability, claims, damages or demands Purchaser has now or may have in connection with said Purchase Agreement, unless there is a breach of this Settlement Agreement.

4. Upon Sellers' fulfillment of its obligations hereunder and the clearance of all payments in accordance with the terms of this Settlement Agreement, Sellers and any applicable guarantor of the sums due under the Receivables Purchase Agreement shall be relieved of any such further liability.

5. Within five (5) business days after Sellers' fulfillment of its obligations hereunder and the clearance of all payments in accordance with the terms of this Settlement Agreement, Purchaser terminate any/all UCC filings and liens previously filed by Purchaser against Sellers, and release any/all of Sellers' obligations to Purchaser pursuant to the Receivables Purchase Agreement, and Purchaser will so notify Sellers' attorney in writing.

6. _Waiver of Purchaser's Liability._ Upon the Effective Date, the Sellers for itself and on behalf of all parents, divisions, subsidiaries, affiliates, related entities, representatives, successors, directors, officers, owners, agents, employees, insurance carriers, attorneys and assigns, hereby releases and forever discharges Purchaser and its respective parents, divisions, subsidiaries, affiliates, related entities, representatives, successors, directors, officers, owners, agents, employees, insurance carriers, attorneys and assigns of and from any and all claims, counterclaims, demands, damages, debts, liabilities, accounts, actions, causes of action and suits, known or unknown, liquidated or contingent, arising from, which may arise in the future from, or which are related in any manner to the Action or the underlying Agreement, including any claims that were or could have been asserted,

Case 23-01132-EPK    Doc 172-23    Filed 12/27/24    Page 4 of 9

other than Purchaser's obligations under this Settlement Agreement.

7.    Withdraw Claims and Consent to Judgment. Seller and Guarantor hereby withdraw any defenses arising from the Purchase Agreement or any pending actions filed by the Purchaser. Sellers and Guarantors further agree to waive all defenses, claims, or counterclaims that may arise from this Agreement or the Purchase Agreement. In the event of default of this Agreement, Purchaser may, without further notice, file a claim for the total indebtedness plus accrued fees and costs less payments received.

8.    CONSENT TO JURISDICTION. This Agreement shall be governed by and construed exclusively in accordance with the laws of the State of New York, without regards to any applicable principles of conflicts of law. Sellers and Guarantors irrevocably submits to the exclusive jurisdiction of any New York county Supreme Court or any federal court sitting within the State of New York over any suit, action or proceeding arising out of or relating to this Agreement. Seller and Guarantor irrevocably waive, to the fullest extent permitted by law, any objection which it may now or hereafter have to the laying of venue of any such suit, action or proceeding brought in such a court and any claim that any such suit, action or proceeding has been brought in an inconvenient forum. Seller and Guarantor agree that final judgment in any such suit, action or proceeding brought in such a court shall be enforced in any court of proper jurisdiction by a suit upon such judgment, provided that service of process in such action, suit or proceeding shall have been effected upon the Seller and Guarantor in a manner permitted by law.

9.    WAIVER OF SERVICE OF PROCESS. The parties further agree to waive personal service of process and to accept mail by electronic mail or by mailing by certified or registered mail, of any process required by any such court will constitute valid and lawful service of process against them, without the necessity for service by any other means provided by statute or rule of court, but without invalidating service performed in accordance with such other provisions.

10.    Alter Egos. Seller may not own, operate, or affiliate with any entities in the same or similar industry without Purchaser's express consent.

11.    Personal Guaranty ("Guaranty"). as an inducement for Purchaser to enter into the Agreement, and for other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, Guarantors hereby agree as follows:

    a.  Defined Terms. All capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Agreement.

    b.  Guaranty of Obligations. Guarantors hereby irrevocably, absolutely and unconditionally guarantees to Purchaser prompt, full, faithful and complete performance and observance of all of Sellers' obligations in this Agreement; and Guarantors unconditionally covenants to Purchaser that if default or breach shall at any time be made by Sellers, Guarantors shall well and truly pay or perform (or cause to be paid or performed) the all obligations under this Agreement and pay all damages and other amounts stipulated in the Agreement with respect to the non-performance of the Obligations, or any of them.

    c.  Guarantors' Other Agreements. Guarantors will not dispose, convey, sell or otherwise transfer, or cause Sellers to dispose, convey, sell or otherwise transfer, any material business assets of Seller outside of the ordinary course of Sellers' business without the prior written consent of Purchaser, which consent may be withheld for any reason, until receipt of the entire Settlement Amount. Guarantors shall pay to Purchaser upon demand all expenses (including, without limitation, reasonable attorneys' fees and disbursements) of, or incidental to, or relating to the enforcement or protection of Purchaser's rights hereunder or Purchaser's rights under the Agreement. This Guaranty is binding upon Guarantors and Guarantors' heirs, legal representatives, successors and assigns and shall inure to the benefit of and may be enforced by the successors and assigns of Purchaser. If there is more than one

DocuSign Envelope ID:

Case 23-01132-EPK    Doc 172-23    Filed 12/27/24    Page 5 of 9

Guarantor, the obligations of the Guarantors hereunder shall be joint and several. The obligation of Guarantors shall be unconditional and absolute, regardless of the unenforceability of any provision of any agreement between Sellers and Purchaser, or the existence of any defense, setoff or counterclaim, which Seller may assert. Purchaser is hereby authorized, without notice or demand and without affecting the liability of Guarantors hereunder, to at any time renew or extend Sellers' obligations under the Agreement or otherwise modify, amend or change the terms of the Agreement.

12. **Seller's Obligations Upon Default**. Upon occurrence of an Event of Default due to Seller's breach of its obligations under this Agreement, Seller shall immediately deliver to Purchaser the entire unpaid portion of the Settlement Amount plus fees, penalties, and costs. In addition, Seller shall also pay to Purchaser, as additional damages, any reasonable expenses incurred by Purchaser in connection with recovering the monies due to Purchaser from Seller pursuant to this Agreement, including without limitation the costs of retaining collection firms and reasonable attorneys' fees in the amount 33% of the undelivered portion of the Settlement Amount (collectively, "Reasonable Damages"). The parties agree that Purchaser shall not be required to itemize or prove its Reasonable Damages and that the fair value of the Reasonable Damages, not including attorneys' fees or collections fees, shall be calculated as twenty-five percent (25%) of the undelivered portion of the Settlement Amount upon the occurrence of an event of default.

13. **Remedies Upon Default**. Upon Seller's default, Purchaser may immediately proceed to protect and enforce its rights under this Agreement and/or Guaranty by:
    a. Enforcing its rights as a secured creditor under the Uniform Commercial Code including, without limitation, notifying any account debtor(s) of Seller as the term is defined below, of Purchaser's security interest;
    b. Enforcing the provisions of the personal guaranty against the personal guarantors named herein without first seeking recourse from Seller for the full balance owed at the time of default plus applicable fees and costs;
    c. Commencing a suit in law and/or equity, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Seller's obligations hereunder (including the Personal Guarantee) or any other legal or equitable right or remedy including without limitation Purchaser's rights of a secured party under the UCC.

14. **Remedies are not Exclusive**. All rights, powers and remedies of Purchaser in connection with this Agreement set forth herein may be exercised at any time after the occurrence of any Event of Default, are cumulative and not exclusive and shall be in addition to any other rights, powers or remedies provided to Purchaser by law or equity.

15. Modifications; Agreements. No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by both parties.

16. Assignment. Purchaser may assign, transfer or sell its rights or delegate its duties hereunder, either in whole or in part without prior notice to the Sellers. Sellers shall not assign its rights or obligations under this Agreement without first obtaining Purchaser's written consent.

17. Notices. Unless different means of delivering notices are set forth elsewhere in this Agreement, all notices, requests, consent, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement and shall become effective as of the date of receipt or declined receipt.

18. Waiver Remedies. No failure on the part of Purchaser to exercise, and no delay in exercising, any right under this Agreement, shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

19. Binding Effect. This Agreement shall be binding upon and inure to the benefit of the parties and their

respective successors and permitted assigns.

20. JURY WAIVER. THE PARTIES WAIVE THE RIGHT TO A TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS GUARANTY IS A PART OR ITS ENFORCEMENT, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW OR DEEMED BY A COURT OF LAW TO BE AGAINST PUBLIC POLICY. THE PARTIES ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

21. Severability. In case any of the provisions in this Agreement are found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired. Any provision of this Agreement that may be found by a court having jurisdiction to be prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof.

22. Entire Agreement. This Agreement embodies the entire agreement between Seller and Purchaser and supersedes all prior agreements and understandings relating to the subject matter hereof. The Exhibit(s) and Riders to this Agreement are part of this Agreement.

THE UNDERSIGNED REPRESENT AND WARRANT THAT THEY HAVE READ THIS STIPULATED SETTLEMENT AGREEMENT IN ITS ENTIRETY AND HAVE THE FULL CAPACITY, POWER, AND AUTHORITY TO MAKE THIS AGREEMENT AS SET FORTH ABOVE, AND THAT NO OTHER REPRESENTATIONS OR INDUCEMENTS APART FROM THIS STIPULATED SETTLEMENT AGREEMENT, EITHER WRITTEN OR ORAL, HAVE BEEN MADE.

IN WITNESS WHEREOF, Sellers and Purchaser have hereunder set their hands and seals on **December 19, 2021**.

[SIGNATURES ON FOLLOWING PAGE]

**"SELLERS"**

**EXCELL AUTO GROUP, INC.;
KARMA OF PALM BEACH INC;
AUTOMOTIVE SERVICE SYSTEMS, INC.;
KZ CONSULTANTS, INC.; MISS KRIS, LLC;
EXCELL AUTO LEASING INC;
EXCELL AUTO WHOLESALE INC.;
DEALER SOUQ USA LLC;
EAG WHOLESALE LLC; KARMA OF
BROWARD, INC.;
LAVISH HERO FUND; KARMA OF PALM
BEACH, INC.;
APPLE 3 INVESTMENTS, INC.; KZ
CONSULTANTS INC.; EXCELL AUTO
SPORT AND SERVICE, INC.** (collectively the
"Sellers")

X _____ _kristin Zankl_____

Name: **KRISTIN ZANKL**, individually and as
authorized signor on behalf of the Sellers

**EXCELL AUTO GROUP, INC.;
KARMA OF PALM BEACH INC;
AUTOMOTIVE SERVICE SYSTEMS, INC.;
KZ CONSULTANTS, INC.; MISS KRIS, LLC;
EXCELL AUTO LEASING INC;
EXCELL AUTO WHOLESALE INC.;
DEALER SOUQ USA LLC;
EAG WHOLESALE LLC; KARMA OF
BROWARD, INC.;
LAVISH HERO FUND; KARMA OF PALM
BEACH, INC.;
APPLE 3 INVESTMENTS, INC.; KZ
CONSULTANTS INC.; EXCELL AUTO
SPORT AND SERVICE, INC.** (collectively the
"Sellers")

X _____ _Scott Thomas Zankl_____

Name: **SCOTT THOMAS ZANKL**, individually
and as authorized signor on behalf of the Sellers

**"GUARANTORS"**

**SCOTT THOMAS ZANKL**
**"GUARANTOR"**

X _____ _Scott Thomas Zankl_____
**SCOTT THOMAS ZANKL,**
Individually

**KRISTIN ZANKL**
**"GUARANTOR"**

X _____ _kristin Zankl_____
**KRISTIN ZANKL,**
Individually

**"PURCHASER"**
HI BAR CAPITAL, LLC

X _____ _Steven Zakharyayev_____
Name: Steven Zakharyayev
Title: Attorney for Purchaser, Hi Bar Capital

FILED: KINGS COUNTY CLERK 03/07/2022 04:19 PM
INDEX NO. 502846/2022
NYSCEF DOC. NO. 20
RECEIVED NYSCEF: 03/07/2022

DocuSign Envelope ID: ...
Case 23-01132-EPK    Doc 172-23    Filed 12/27/24    Page 8 of 9

# EXHIBIT A



Case 23-01132-EPK   Doc 172-23   Filed 12/27/24   Page 9 of 9

## **EXHIBIT B**

## **PAYMENT SCHEDULE**

| Weeks | Payment Due Date | Payments |
|---|---|---|
| 1 | 12/20/21 | $200,000.00 |
| 2 | 12/27/21 | $200,000.00 |
| 3 | 01/03/22 | $200,000.00 |
| 4 | 01/10/22 | $200,000.00 |
| 5 | 01/17/22 | $200,000.00 |
| 6 | 01/24/22 | $200,000.00 |
| 7 | 01/31/22 | $200,000.00 |
| 8 | 02/07/22 | $200,000.00 |
| 9 | 02/14/22 | $200,000.00 |
| 10 | 02/21/22 | $200,000.00 |
| 11 | 02/28/22 | $200,000.00 |
| 12 | 03/07/22 | $200,000.00 |
| 13 | 03/14/22 | $200,000.00 |
| 14 | 03/21/22 | $200,000.00 |
| 15 | 03/28/22 | $200,000.00 |
| 16 | 04/04/22 | $200,000.00 |
| 17 | 04/11/22 | $200,000.00 |
| 18 | 04/18/22 | $200,000.00 |
| 19 | 04/25/22 | $200,000.00 |
| 20 | 05/02/22 | $216,820.00 |