# New Account Checklist (Business)

Account Title Hi Bar Capital LLC

Account Number ████ 2968

Opened by ___GC___                     Date Opened 02/10/2021

Verified by _____                  Date Verified 2/22/2021

Cleartouch Input  Verified by _____   Date Verified 2/22/2021

GC          1) New Account Application (completed in its entirety)

GC          2) OnBoard Advisor/Watch List Inquiry for <u>Business/Each signer/All Officers</u> on
            State Filing (SunBiz) & <u>Registered Agent</u>

GC          3) Account Disclosure Acknowledgment Form

GC          4) Signature Card

GC          5) Corporate Resolution

GC          6) Certification of Beneficial Ownership

GC          7) Debit Card Form(s)

GC          8) Debit Card(s) Physically Ordered (Printout)

GC          9) Field 330 Updated (For Debit Card Fee Reimbursement)

PLAINTIFF'S
EXHIBIT

**33**

NA ___   _____ 10) NGO Form (Non Profit)

GC ___   _____ 11) SunBiz

GC ___   _____ 12) Articles of Incorporation/Articles of Organization /Operating Agreement /

Partnership Agreement / Fictitious Name Registration/Minutes

GC ___   _____ 13) NAICS Code Input

GC ___   _____ 14) Copy of Opening Deposit ($50K+ Watch List on Maker)

GC ___   _____ 15) Welcome Letter

GC ___   _____ 16) Completed Checklist

GC ___   _____ 17) Scanned to BSA Profile Folder

GC ___   _____ 18) Change Opt In/Opt out field to 02

**\*\*\*MUST BE COMPLETED WITHIN 5 BUSINESS DAYS FROM ACCOUNT OPENING\*\*\***

# OPTIMUMBANK

## IMPORTANT INFORMATION ABOUT PROCEDURES
## FOR OPENING A NEW ACCOUNT

To help the government fight the funding of terrorism and money laundering activities, Federal law requires all institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

## Business Account Application

Date __02/10/2021__          Account Number ___ ▮ 2968

Account Title __Hi Bar Capital LLC,__

D/B/A if Applicable _____

Address __2 1825 65th Street Suite 300 Brooklyn N.Y. 11204__

EIN # ___▮___ Onboard Verification __2/10/2021__

Business Telephone # __▮__ Contact Person __Yisroel M Herbst__

Fax # __N/A__ E-Mail __ymherbst@gmail.com__

Type of Business __Funding Business / Merchant Cash Advance__

Describe Business Activities __Funding other businesses on real estate transactions__

Purpose of Account __Operating for business__

Address of the Business location __1825 65th Street Suite 300 Brooklyn N.Y. 11204__

Amount of Opening Deposit: (Copy for file) $ __100__ NAICS Code __522220__

Describe Source of Funds (Deposits) __Generated from Business__

Describe Use of Funds (Withdrawals) __Operating Expenses and business funding__

Reason for choosing OptimumBank __Ref: Pink Bridge funding / BHF Capital__

## Account Authorized Signers

Name: _Yisroel M. Herbst_____ D/O/B: ▐███████████████▌_____

SS# ▐██████████████▌_____ Mother's Maiden Name: ____Hark_____

Address _2111 57th Street Brooklyn , N.Y. 11204_____

Primary ID# ▐█████████▌_____ Issue Date: ▐██████▌ Exp. Date: ▐██████▌ Issued By _New York State_

Secondary ID# ▐██████████▌_____ Issue Date: ____─── Exp. Date: _11/2025_ Issued By ▐████████████▌

Home # ▐████████████▌ Cell# ▐█████████████▌ Business# ▐█████████████████▌

Occupation _Leader_____ Employer _Self_____

If Retired, occupation prior to retirement_____Employer_____

Onboard Verification_ _2/10/2021_ E-Mail _ymherbst@gmail.com_____

### Are you a Politically Exposed Person (PEP) or are you related to a Politically Exposed Person (PEP)_____Yes ___✗__No

Name:_____ D/O/B: _____

SS#_____ Mother's Maiden Name: _____

Address_____

Primary ID#_____Issue Date:_____Exp. Date:_____Issued By _____

Secondary ID#_____Issue Date:_____Exp. Date:_____Issued By _____

Home #_____Cell#_____Business#_____

Occupation_____Employer_____

If Retired, occupation prior to retirement_____Employer_____

Onboard Verification__N/A_____ E-Mail_____

### Are you a Politically Exposed Person (PEP) or are you related to a Politically Exposed Person (PEP)_____Yes _____No

Name:_____ D/O/B: _____

SS#_____ Mother's Maiden Name: _____

Address_____

Primary ID#_____Issue Date:_____Exp. Date:_____Issued By _____

Secondary ID#_____Issue Date:_____Exp. Date:_____Issued By _____

Home #_____Cell#_____Business#_____

Occupation_____Employer_____

If Retired, occupation prior to retirement_____Employer_____

Onboard Verification__N/A_____ E-Mail_____

### Are you a Politically Exposed Person (PEP) or are you related to a Politically Exposed Person (PEP)_____Yes _____No

## Monthly Anticipated Activity

| Estimated Activity Ranges (Total Debits & Credits) |
| --- |
| **All Transactions** |
| o   $         1 - $ 100,000 |
| o   $ 100,001 - $ 500,000 |
| o   $500,001 - $1,000,000 |
| ⊗   $1,000,001 - $2,000,000 + |
| |
| **Cash (including ATM)** |
| $         1 - $ 10,000 |
| o   $ 10,001 - $ 25,000 |
| o   $ 25,001 - $ 50,000 |
| o   $ 50,001 - $ 100,000 + |
| |
| **ACH** |
| o   $         1 - $ 50,000 |
| o   $ 50,001 - $100,000 |
| o   $100,001 - $250,000 |
| ⊗   $250,001 - $500,000 + |
| |
| **Wires** |
| o   $         1 - $ 100,000 |
| o   $ 100,001 - $ 500,000 |
| o   $ 500,001 - $1,000,000 |
| ⊗   $1,000,001 - $2,000,000 + |
| |

Will you be originating ACH:  Yes  _X_    No _____

Will you be depositing via Remote Deposit Capture (RDC)/Mobile Banking:  Yes_____    No _X_

Main
Customers_____Anyone needing financing_____

Main
Suppliers_____N/A_____

Foreign Wires:  Yes _____    No _X_    Monthly Amount _____

Countries_____N/A_____    Reoccurring:  Yes _____    No _____

Purpose of Wire(s)_____Funding_____

Purpose of transfers to/from related accts    *Help fund business*

Describe Source of Wealth (SOW)    *Different business*

Additional Info

Account Opened By  Giovanni Cumberbatch

# Onboard Advisor

| | Applicant | Advice | Watch List | Identity Verification | Fraud & Risk |
|---|---|---|---|---|---|
| ► | HI BAR CAPITAL LLC | REVIEW | PASS | REVIEW | PASS |

## ▼ Request Summary

| Date | 02/10/2021 12:57 EST |
|---|---|
| Solution | Verification Fraud and Risk Bundle |
| Transaction ID | ██████████████████████████████████ |
| Financial Institution | OptimumBank |
| Region | |
| Branch | Fort Lauderdale |
| User | wpaisner |

## ▼ HI BAR CAPITAL LLC - REVIEW

### ▼ Submitted Request Details

| Business Name | HI BAR CAPITAL LLC |
|---|---|

| Request ID | ██████████████████████████████ |
|---|---|

| EIN | ███████████ |
|---|---|

| Address | 1825 65TH STREET SUITE 300<br>BROOKLYN<br>NY<br>11204 |
|---|---|

| Phone | ██████████████ |
|---|---|

### ▼ Watch List - PASS

| Component Result | NO MATCHES |
|---|---|

### ▼ Identity Verification - REVIEW

| Component Result | 0 |
|---|---|

*Registration attached*
*EIN attached*
*mailed thank you letter*

| Risk Indicators | |
|---|---|
| Code | Description |
| 37 | Unable to verify name |
| 25 | Unable to verify address |
| 26 | Unable to verify SSN/TIN |
| 08 | The input phone number is potentially invalid |

| 10 | The input phone number is a mobile number |
|----|--------------------------------------------|
| 64 | The input address returns a different phone number |
| A7 | No updates to business record in the past three years |

### Applicant Summary

| Field | Matched | Additional |
|-------|---------|------------|
| Company Name | | |
| Address | | |
| Street Line 1 | | |
| City | | |
| State | | |
| Zip | ██████ | |
| EIN | | |
| Phone | ████████ | |
| Date First Seen | | |

### Address History

No information found.

### Supplementary Data

| Address Type | ██████████ | |
|--------------|-----------|-----------|
| Phone Type | ██████████ | |
| Business Description | | |
| SOS Filing Name | | |
| SIC Code | | |
| Bankruptcy Count | 0 | Bankruptcy Recent Filing | |
| Unreleased Lien Count | | Unreleased Lien Recent Filing | |
| Released Lien Count | | |

▼ Fraud & Risk - PASS

| Component Result | 0 |
|------------------|---|

| Cumulative Loss | 0.00 |
|-----------------|------|
| FCRA Flag | |

### Match Records

No information found.

**Disclaimer:**
This consumer/business data is being furnished in connection with a transaction initiated by the consumer, and / or in accordance with the written instructions of the consumer, to whom the information relates as provided for under the federal Fair Credit Reporting Act (FCRA) or the Gramm Leach Bliley Act (GLBA); or is being used in connection with account review as provided for under the FCRA. The data contained in this report may be viewed or printed for no other purpose. Information returned in this report may not be viewed or printed in connection with making a pre-approved firm offer of credit (prescreen). The customer acknowledges and agrees that the report provided is compiled from third party data provided by fallible sources and the Customer further acknowledges and agrees that such reports are being provided solely for informational purposes and shall not be relied upon as a determining factor. Customer hereby certifies that it has the right to use or obtain the reports and that Customer has received prior written authorization

from the consumer if required by applicable law, acts, rules and regulations prior to ordering such reports. Fiserv makes no warranty regarding the accuracy, completeness or correctness of the reports or the data herein and nor are the reports provided or the data used to compile such reports error free.

# Onboard Advisor

| | Applicant | Advice | Watch List | Identity Verification | Fraud & Risk |
|---|---|---|---|---|---|
| ► | HERBST, YISROEL | REVIEW | PASS | PASS | FAIL |

## ▼ Request Summary

| | |
|---|---|
| Date | 02/10/2021 12:39 EST |
| Solution | Verification Fraud and Risk Bundle |
| Transaction ID | ███████████████████████ |
| Financial Institution | OptimumBank |
| Region | |
| Branch | Fort Lauderdale |
| User | wpaisner |

## ▼ HERBST, YISROEL - REVIEW



### ▼ Submitted Request Details

| Full Name | YISROEL M HERBST ' |
|---|---|

| Request ID | ████████████████████████ |
|---|---|

| SSN | ████████ |
|---|---|

| Address | |
|---|---|
| 2111 57TH STREET BROOKLYN NY 11204 | |

| DOB | ████████ |
|---|---|
| Home Phone | ████████ |
| Work Phone | |
| Email | |

| US Drivers License | |
|---|---|
| Number | ████████ |
| State | NY |
| Expiration Date | ████████ |

| Other ID | |
|---|---|
| Type | OT - Other |
| Number | ████████ |
| State | |
| Country | |
| Expiration Date | ████████ |

▼ Watch List - PASS

| Component Result | NO MATCHES |
|---|---|

▼ Identity Verification - PASS

| Component Result | 50 |
|---|---|

| Risk Indicators | |
|---|---|
| **Code** | **Description** |
| 10 | The input phone number is a mobile number |
| 82 | The input name and address return a different phone number |
| DF | The input driver's license number is valid and is not found in the public record |

| Red Flags | |
|---|---|
| **Code** | **Description** |
| **Suspicious Documents Codes** | |
| DF | The input driver's license number is valid and is not found in the public record |
| **Suspicious Phone Codes** | |
| 10 | The input phone number is a mobile number |

| Applicant Summary | | |
|---|---|---|
| **Field** | **Matched** | **Additional** |
| First Name | YISROEL | |
| Middle Name | M | |
| Last Name | HERBST | |
| DOB | ███████ | |
| Address | | |
| Street Line 1 | 2111 57TH ST | |
| City | BROOKLYN | |
| State | NY | |
| Zip | 11204 | |
| SSN | █████ | |
| Phone | | |
| Driver License Number | | |

| Address History | | | |
|---|---|---|---|
| **Address** | **Date First Seen** | **Date Last Seen** | **Best Address** |
| 2111 57TH ST BROOKLYN NY 11204 | | 01/2021 | ✓ |
| ████████████ | | | |

███████████████████████████████████████████

| Supplementary Data | |
|---|---|
| **DOB Verified** | Verified |
| **DOB Match Level** | 8 - Month, Day, and year match |
| **Passport Validated** | Not Validated |

| SSN Issued Information | | | |
|---|---|---|---|
| **Valid** | **Location** | **Start Date** | **End Date** |
| G - Good | New York | 01/1988 | 12/1990 |

| Decedent Info |
|---|
| No information found. |

| Follow Up Actions | |
|---|---|
| **Action** | **Description** |
| C | Verify name with Address (via DL, utility bill, Directory Assistance, paycheck stub, or other Government Issued ID) |

## ▼ Fraud & Risk - FAIL

| Component Result | 100 |
|---|---|

| Cumulative Loss | 0.00 |
|---|---|
| **FCRA Flag** | Y |

| Match Records | | |
|---|---|---|
| **Record #1** | | |
| **Severity** | 100 | |
| **Matches** | | |
| **Match Field** | **Match Type** | **Match Data** |
| Name | Exact | YISROEL HERBST |
| SSN | Exact | ██████████ |
| Address | Exact | 2111 57TH ST BROOKLYN, NY 112042081 USA |
| Birth Date | Exact | ██████████ |
| **Account Information** | | |
| **Source** | ████████████████ | |
| **Loss Type** | | |
| **Principal Loss** | | |
| **Fee Reversal** | | |

███████████████████████████████████████████



**Disclaimer:**
This consumer/business data is being furnished in connection with a transaction initiated by the consumer, and / or in accordance with the written instructions of the consumer, to whom the information relates as provided for under the federal Fair Credit Reporting Act (FCRA) or the Gramm Leach Bliley Act (GLBA); or is being used in connection with account review as provided for under the FCRA. The data contained in this report may be viewed or printed for no other purpose. Information returned in this report may not be viewed or printed in connection with making a pre-approved firm offer of credit (prescreen). The customer acknowledges and agrees that the report provided is compiled from third party data provided by fallible sources and the Customer further acknowledges and agrees that such reports are being provided solely for informational purposes and shall not be relied upon as a determining factor. Customer hereby certifies that it has the right to use or obtain the reports and that Customer has received prior written authorization from the consumer if required by applicable law, acts, rules and regulations prior to ordering such reports. Fiserv makes no warranty regarding the accuracy, completeness or correctness of the reports or the data herein and nor are the reports provided or the data used to compile such reports error free.

**Wanda Paisner**

| | |
|---|---|
| **From:** | Mary Franco |
| **Sent:** | Wednesday, February 10, 2021 1:54 PM |
| **To:** | Wanda Paisner |
| **Subject:** | RE: Please see page 3 for approval I will call you.- HI Bar Capital LLC New Account |

I approve opening due to charge off notation.

# OPTIMUMBANK

*Mary Franco*
*Vice President*
*Director of Retail Operations*
*& Human Resource Administrator*
*2929 E. Commercial Blvd Ste 303*
*Fort Lauderdale, FL 33308*
*(954)900-2805*
*mfranco@optimumbank.com*

**From:** Wanda Paisner <wpaisner@optimumbank.com>
**Sent:** Wednesday, February 10, 2021 1:52 PM
**To:** Mary Franco <mfranco@OptimumBank.com>
**Subject:** Please see page 3 for approval I will call you.- HI Bar Capital LLC New Account

Thank you,

Wanda

# OPTIMUMBANK ███████████

Wanda Paisner
Personal Banker
2929 East Commercial Blvd. Suite 101
Fort Lauderdale, FL  33308
Direct (954) 900-2811
wpaisner@optimumbank.com

NOTICE: This electronic mail message and any files transmitted with it are intended exclusively for the individual or entity to which it is addressed. The message, together with any attachment, may contain confidential and/or privileged information. Any unauthorized review, use, printing, saving, copying, disclosure or distribution is strictly prohibited. If you have received this message in error, please immediately advise the sender by reply email and delete all copies.
NOTICE: This electronic mail message and any files transmitted with it are intended exclusively for the individual or entity to which it is addressed. The message, together with any attachment, may contain confidential and/or privileged information. Any unauthorized review, use, printing, saving, copying, disclosure or distribution is strictly prohibited. If you have received this message in error, please immediately advise the sender by reply email and delete all copies.



. Purpose ?

Online Banking
Wires :
Credit Dr.  ACH :

- Funding Business - Sometimes hard money
- ON RLE transactions.
- Referred by _____ .

# OPTIMUMBANK

| Corporate Office | Plantation Branch |
|---|---|
| 2929 E. Commercial Blvd. | 10197 Cleary Blvd |
| Ft. Lauderdale, FL 33308 | Plantation, FL 33324 |
| Ph. (954) 900-2800 | Ph. (954) 900-2860 |
| **Ft. Lauderdale Branch** | **Deerfield Beach Branch** |
| 2929 E. Commercial Blvd. | 2215 W. Hillsboro Blvd. |
| Ft. Lauderdale, FL 33308 | Deerfield Beach, FL 33442 |
| Ph. (954) 900-2850 | Ph. (954) 900-2880 |

ATM Locations: PRESTO! Network ATM's including all Publix ATM's

## Account Disclosures

Account Number: ████2968

- ☒ Deposit Account Agreement
- ☒ Truth in Savings Disclosure
- ☒ Funds Availability Policy and Substitute Checks and Your Rights
- ☒ Electronic Funds Transfer Agreement
- ☒ Privacy Policy
- ☒ Schedule of Fees

### Unlawful Internet Gambling

Unlawful Internet Gambling transactions are not permitted; therefore, this account will not have transactions involving Internet Gambling.

Customer acknowledgement:

_____    Date: 2/10/21

_____    Date: _____

**Member**
**FDIC**

Disclosure Acknowledgement (05/2015)


EQUAL HOUSING LENDER

| NEW ACCOUNT INFORMATION | Financial Institution Name And Address |
|---|---|
| | OptimumBank |
| | 2929 E COMMERCIAL BLVD |
| | SUITE 101 |
| DATE  02/10/2021 | Fort Lauderdale, FL 33308-4041 |
| Check if applicable:  ☐ Temporary  ☐ Replacement | 954-900-2850 |

**ACCOUNT INFORMATION**

AMOUNT OF DEPOSIT $ 0.00     PLAN #

TITLE OF ACCOUNT

HI BAR CAPITAL LLC

ACCOUNT NUMBER ▓▓ 2968
ACCOUNT T.I.N. ▓▓▓▓

1825 65TH STREET SUITE 300
BROOKLYN, NY 11204-0000

OWNERSHIP TYPE  Bus/Cmpy/Org

PRODUCT NAME  Business Interest Checking

Words, numbers or phrases preceded by a ☐ are applicable only when marked, i.e., ☒ .  Opened By  Wanda Paisner

**BUSINESS ENTITY INFORMATION**

BUSINESS NAME AND ADDRESS

HI BAR CAPITAL LLC

1825 65TH STREET SUITE 300
BROOKLYN, NY 11204-0000

ASSUMED NAME IF D/B/A

CONTACT NAME  Yisroel M Herbst
CONTACT TITLE  Owner
CONTACT PHONE  (917)577-3882
OTHER

BUSINESS FILING STATE  NY
ENTITY DOCUMENT  AO
LAST FILING DATE  02/09/2021
FILING EXPIRATION
DATE ESTABLISHED  02/09/2021
NATURE OF BUSINESS  Lender
PRIMARY LOCATION  New York
RESOLUTION DATE  2/10/2021
E-MAIL ADDRESS  YMHERBST@GMAIL.COM
FACSIMILE AUTHORIZATION ON FILE  ☐ YES  ☒ NO
LIMITED LIABILITY COMPANY TAX CLASSIFICATION: ____
BUSINESS ENGAGES IN INTERNET GAMBLING* ☐

\* If box is checked you must provide evidence of authority to engage in Internet Gambling.

**TAXPAYER IDENTIFICATION NUMBER CERTIFICATION**

Under penalties of perjury, I certify that:

Exempt payee code, if any:
Exemption from FATCA reporting code, if any:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding (Notice: If you are subject to backup withholding, cross out this line), and
3. I am a U.S. citizen or other U.S. person (defined in the W-9 Instructions), and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

SIGNATURE  YISROEL M HERBST     02/10/2021     DATE

Taxpayer Identification Number: ▓▓▓▓

**ADDITIONAL TERMS**     Account Alternate Address:

**IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT.** To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account.
What this means for you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

**ACKNOWLEDGMENT.** By signing this document, the undersigned acknowledge that they have opened the type of account designated above, and have received, understand and agree to be bound by the terms of the Account Agreement for that account type. The undersigned certify that all information provided to the institution is true and accurate. If this is a consumer account, the undersigned acknowledge receipt of an Account Disclosure, and a copy of this institution's Privacy Policy. The undersigned also acknowledge receipt, where applicable, of this institution's Funds Availability Policy and/or Electronic Fund Transfer Agreement. If this account is opened in the name of the business entity, all signers are acting on behalf of the business entity. All signers authorize this institution to make inquiries from any consumer reporting agency, including a check protection service, in connection with this account.

NUMBER OF SIGNATURES REQUIRED:  1

☐ Authorized Signer Only    Title:  Authorized Signer
X _____ 02/10/2021
YISROEL M HERBST    Title: ▓▓▓▓

☐ Authorized Signer Only    Title:
X _____
ID#    DOB    Date

☐ Authorized Signer Only    Title:
X _____
ID#    DOB    Date

☒ FACSIMILE ALLOWED

☐ Authorized Signer Only    Title:
X _____
ID#    DOB    Date

ACCOUNT NUMBER ████2968

| OWNER/SIGNER #1 | NAME AND ADDRESS | | |
|---|---|---|---|
| YISROEL M HERBST<br>2111 57TH STREET<br>BROOKLYN, NY 11204 | | ID Type:<br>ID Number:<br>ID Issued By:<br>ID Issuing Location: | Driver's License<br>████<br>New York |
| Title/Capacity: Authorized Signer | | ID Issue Date:<br>ID Expiration: | ████ |
| EMPLOYER NAME AND ADDRESS | | ID Type:<br>ID Number: | ████ |
| SELF | | ID Issued By:<br>ID Issuing Location:<br>ID Issue Date: | |
| Tax ID Number: ████ | | ID Expiration: | ████ |
| Date of Birth: ████ | | Verification: | ████ |
| Primary Phone: ████ | | Unique Identifier: | |
| Secondary Phone: ████ | | E-Mail Address: | YMHERBST@GMAIL.COM |

| OWNER/SIGNER #2 | NAME AND ADDRESS | | |
|---|---|---|---|
| | | ID Type:<br>ID Number:<br>ID Issued By:<br>ID Issuing Location: | |
| Title/Capacity: | | ID Issue Date:<br>ID Expiration: | |
| EMPLOYER NAME AND ADDRESS | | ID Type:<br>ID Number:<br>ID Issued By:<br>ID Issuing Location:<br>ID Issue Date: | |
| Tax ID Number: | | ID Expiration: | |
| Date of Birth: | | Verification: | |
| Primary Phone: | | Unique Identifier: | |
| Secondary Phone: | | E-Mail Address: | |

| OWNER/SIGNER #3 | NAME AND ADDRESS | | |
|---|---|---|---|
| | | ID Type:<br>ID Number:<br>ID Issued By:<br>ID Issuing Location: | |
| Title/Capacity: | | ID Issue Date:<br>ID Expiration: | |
| EMPLOYER NAME AND ADDRESS | | ID Type:<br>ID Number:<br>ID Issued By:<br>ID Issuing Location:<br>ID Issue Date: | |
| Tax ID Number: | | ID Expiration: | |
| Date of Birth: | | Verification: | |
| Primary Phone: | | Unique Identifier: | |
| Secondary Phone: | | E-Mail Address: | |

| OWNER/SIGNER #4 | NAME AND ADDRESS | | |
|---|---|---|---|
| | | ID Type:<br>ID Number:<br>ID Issued By:<br>ID Issuing Location: | |
| Title/Capacity: | | ID Issue Date:<br>ID Expiration: | |
| EMPLOYER NAME AND ADDRESS | | ID Type:<br>ID Number:<br>ID Issued By:<br>ID Issuing Location:<br>ID Issue Date: | |
| Tax ID Number: | | ID Expiration: | |
| Date of Birth: | | Verification: | |
| Primary Phone: | | Unique Identifier: | |
| Secondary Phone: | | E-Mail Address: | |

**VERIFICATION / FOLLOW-UP**

**BENEFICIARY DESIGNATION.** THE FOLLOWING BENEFICIARY(IES) ARE DESIGNATED:

☐ See Addendum

1.
2.
3.
4.

© Compliance Systems, Inc. 2002 - 2013 ITEM 595FLL2 (11/2013) Page 2 of 3

www.compliancesystems.com

ACCOUNT NUMBER:  0210022968

**UNIFORM SINGLE-PARTY OR MULTIPLE-PARTY ACCOUNT FORM**
**OWNERSHIP. (Select One And Initial)**

☐　　SINGLE-PARTY ACCOUNT.

_____
Initials

☐　　MULTIPLE-PARTY ACCOUNT.

_____
Initials

☐　　MULTIPLE-PARTY ACCOUNT-TENANCY BY THE ENTIRETY. (The parties must be husband and wife.)

_____
Initials

☐　　Trust - Separate Agreement Account.

_____
Initials

☐　　Other:

_____
Initials

DISCLAIMER:　　If you have chosen any other type of ownership, it is your expressed intent not to create a Tenancy by the Entirety.

_____
Initials

**RIGHTS AT DEATH. (Select One And Initial)**

☐　　SINGLE-PARTY ACCOUNT. On the death of the party, ownership passes as part of the party's estate.

_____
Initials

☐　　SINGLE-PARTY ACCOUNT WITH POD (PAY ON DEATH) DESIGNATION. On the death of the party, ownership passes to the designated pay-on-death beneficiaries in equal shares and is not part of the party's estate.

_____
Initials

☐　　MULTIPLE-PARTY ACCOUNT WITH RIGHT OF SURVIVORSHIP. On the death of a party, ownership passes to the surviving party or parties.

_____
Initials

☐　　MULTIPLE-PARTY ACCOUNT WITH RIGHT OF SURVIVORSHIP AND POD (PAY ON DEATH) DESIGNATION. On the death of a party, ownership passes to the surviving party or parties. At the death of the last surviving party, ownership passes to the designated pay-on-death beneficiaries in equal shares and is not part of the last surviving party's estate.

_____
Initials

☐　　MULTIPLE-PARTY ACCOUNT WITHOUT RIGHT OF SURVIVORSHIP. On the death of a party, that party's ownership share in the account passes as part of the decedent party's estate.

_____
Initials

**AUTHORIZED SIGNER (AGENT) DESIGNATION.**　(Consumer Account) An agent may make account transactions for parties but have no ownership rights at death unless named as POD beneficiaries. If an agent(s) will be designated to transact business on this account, provide the information and collect the signature of the agent(s) below:

AGENT #1:　　　　　　　　　　　　　　　　AGENT #2:

Tax ID Number:　　　　　　Date of Birth:　　　　　Tax ID Number:　　　　　　Date of Birth:

X _____　　X _____
　　　　　　　　　　　Date　　　　　　　　　　　　　　　　　　　　　　　Date

Will agent(s) have power to transact business on this account after your disability or incapacity?　　☐ Yes　☐ No

**CONVENIENCE ACCOUNT - COSIGNER DESIGNATION.**　(Consumer Account) You have designated the following person(s) as the convenience/cosigner(s) on this account. If a convenience/cosigner will be designated to transact business on this account, provide the information and collect the signature of the person(s) below:

COSIGNER #1:　　　　　　　　　　　　　　　COSIGNER #2:

Tax ID Number:　　　　　　Date of Birth:　　　　　Tax ID Number:　　　　　　Date of Birth:

X _____　　X _____
　　　　　　　　　　　Date　　　　　　　　　　　　　　　　　　　　　　　Date

**DESIGNATION AUTHORIZATION.**　All parties must sign below to authorize this designation for either the Authorized Signer (Agent) Designation or the Convenience Account- Cosigner Designation, when appropriate for account.

X _____　　X _____
　　　　　　　　　　　Date　　　　　　　　　　　　　　　　　　　　　　　Date

X _____　　X _____
　　　　　　　　　　　Date　　　　　　　　　　　　　　　　　　　　　　　Date

**UNIFORM TRANSFERS TO MINORS ACT/UNIFORM GIFTS TO MINORS ACT DESIGNATION.**　Under the provision of the Uniform Transfers to Minors Act/Uniform Gift to Minor Act as adopted by this state, an account has been opened by _____, serving as Custodian under the Act for the following Minor:

Name:　　　　　　　　　　　　　　　　　　　Date of Birth:
Address:

© Compliance Systems, Inc. 2002 - 2013 ITEM 595FL13 (11/2013) Page 3 of 3

www.compliancesystems.com

## RESOLUTION OF CORPORATIONS, PARTNERSHIPS & LLCS

DATE:  02/10/2021

| TO: NAME AND ADDRESS OF FINANCIAL INSTITUTION | FROM: NAME AND ADDRESS OF ENTITY |
|---|---|
| OptimumBank<br>2929 E COMMERCIAL BLVD<br>SUITE 101<br>Fort Lauderdale, FL 33308-4041<br>(954)900-2850 | HI BAR CAPITAL LLC<br><br><br>1825 65TH STREET SUITE 300<br>BROOKLYN, NY 11204-0000 |

Use this *Resolution of Corporations, Partnerships and LLCs* to document the granting of Deposit authority by the governing body of the business entity to specified individuals. This form may be used by legal entities, such as corporations, professional corporations, general partnerships, limited partnerships, limited liability partnerships, and limited liability companies.

Words, numbers or phrases preceded by a ☐ are applicable only when marked, i.e., ☒ .

I certify that I am a duly and legally elected/appointed, qualified representative and keeper of the records ("Designated Representative") of/for the legal entity ("Entity") named above, that the following is a true and complete copy of a Resolution duly adopted at a meeting of the governing body of the Entity held on the ____10th____ day of __February 2021__ in accordance with law and the governing documents of the Entity, and that my delivery of this Resolution to Financial Institution/certifies to Financial Institution that such Resolution is still in full force and effect.

This is a ☒ For Profit   ☐ Nonprofit   Entity.

**IT IS RESOLVED THAT:**

The following described officers, members, managers, partners, employees, designated parties or agents of the Entity referred to below as "Authorized Signers", whose names and signatures appear below, are authorized for and on behalf of the Entity to have the following indicated powers as contained in this Resolution:

**Authorized Signers**

**DEPOSITORY ACCOUNT.** Perform the following for the account(s) indicated on Page 2, in the name of the Entity, subject to any terms and conditions governing the account(s), such as:

1. Open and maintain the account(s);

2. Make deposits to the account(s);

3. Endorse for negotiation, negotiate, and receive the proceeds of any negotiable instrument, check, draft, or order for the payment of money payable to or belonging to the Entity by writing, stamp, or other means permitted by this Resolution without the designation of the person endorsing;

4. Make withdrawals from the account(s) in any manner permitted by the account(s);

5. Transfer funds from the account(s) in Financial Institution to any account whether or not held at this Financial Institution and whether or not held by this Entity;

6. Transfer funds to the account(s) in Financial Institution from any account whether or not held at this Financial Institution and whether or not held by this Entity;

7. Approve, endorse, guarantee, and identify the endorsement of any payee or any endorser of any negotiable instrument, check, draft or order for the payment of money whether drawn by the Entity or anyone else and guarantee the payment of any negotiable instrument, check, draft, or order for the payment of money; and

8. Delegate to others the authority to approve, endorse, guarantee, and identify the endorsement of any payee or endorser on any negotiable instrument, check, draft, or order for the payment of money and to guarantee the payment of any such negotiable instrument, check, draft, or order for the payment of money.

9. All of the above.    All

**SAFE DEPOSIT BOX.** Lease a Safe Deposit Box(es) with Financial Institution, make inspections of, deposits to and removals from Box(es), and exercise all rights and be subject to all responsibilities under the Lease.

**NIGHT DEPOSITORY.** Enter into a Night Depository Agreement with Financial Institution and exercise all rights and be subject to all responsibilities under the Agreement.

**LOCK BOX.** Enter into a Lock Box Agreement with Financial Institution and exercise all rights and be subject to all responsibilities under the Agreement.

**DEBIT CARD/ATM CARD.** Apply for, receive and utilize debit cards, automated teller machine cards, or other access devices to exercise those powers authorized by this Resolution or other Resolutions then in effect.

**CASH MANAGEMENT.** Enter into a Cash Management Agreement with Financial Institution, and exercise all rights and be subject to all responsibilities under the Agreement.

**OTHER AUTHORITY-** describe:

Further, this Resolution continues on Page 2 of this document, and all of the power and authority granted are incorporated in this Resolution.

© Copyright Compliance Systems, Inc. 2006 - 2012 ITEM 5158AL1 (03/2012) Page 1 of 2

RESOLUTION APPLIES TO (check all that apply): ☒ ALL ACCOUNTS  ☐ SAFE DEPOSIT BOX NUMBER(S):
☒ ALL FUTURE ACCOUNTS  ☐ SPECIFIC ACCOUNTS - NUMBER(S):

| NAME AND TITLE | SIGNATURE | LIMITATIONS |
|---|---|---|
| 1. YISROEL M HERBST | X | COUNTERSIGNERS: |
| 2. | X | COUNTERSIGNERS: |
| 3. | X | COUNTERSIGNERS: |
| 4. | X | COUNTERSIGNERS: |
| 5. | X | COUNTERSIGNERS: |
| 6. | X | COUNTERSIGNERS: |
| 7. | X | COUNTERSIGNERS: |
| 8. | X | COUNTERSIGNERS: |

**SIGNATURE CERTIFICATION.**   I certify that the foregoing are names, titles, and genuine signatures of the current Authorized Signers of the Entity authorized by the above Resolution.

IN WITNESS WHEREOF, I have subscribed my name as Designated Representative of the Entity on the date shown below.

DESIGNATED REPRESENTATIVE:
Yisroel M Herbst

DATE  2/10/21

**IT IS FURTHER RESOLVED AS FOLLOWS, the Entity certifies to the Financial Institution that:**

- Unless specifically designated, each of the Authorized Signers whose signature appears above may sign without the other(s);

- (Select if applicable) ☐ **FACSIMILE SIGNATURES.** The Financial Institution shall be entitled to honor and charge the Entity for all such negotiable instruments, checks, drafts, or other orders for payment of money drawn in the name of the Entity, on the indicated account(s), including an order for electronic debit, whether by electronic tape or otherwise, regardless of by whom or by what means a facsimile signature or other non-manual signature (collectively, "Facsimile Signatures") may have been affixed, or electronically communicated, if such Facsimile Signatures resemble the specimens duly certified to or filed with the Financial Institution for any of the named Authorized Signers, regardless of whether any misuse is with or without the negligence of the Entity. The Specimen Facsimile Signature Exhibit, when attached, is incorporated into and is an integral part of this Resolution. The Entity agrees that the duty of maintaining the security of any such Facsimile Signatures or device by which they are affixed is solely that of the Entity. Your authorization notwithstanding, Financial Institution is not obligated to accept or pay any items bearing Facsimile Signatures;

- As used herein, any pronouns relative to the signers for the Entity shall include the masculine, feminine, and neutral gender, and the singular and plural number, wherever the context so admits or requires;

- All items deposited with prior endorsements are guaranteed by the Entity;

- All items not clearly endorsed by the Entity may be returned to the Entity by the Financial Institution or, alternatively, the Financial Institution is granted a power of attorney in relation to any such item to endorse any such item on behalf of the Entity in order to facilitate collection;

- Financial Institution shall have no liability for any delay in the presentment or return of any negotiable instrument or other order for the payment of money, that is not properly endorsed;

- Financial Institution is directed and authorized to act upon and honor any withdrawal or transfer instructions issued and to honor, pay and charge to any depository account or accounts of the Entity, all checks or orders for the payment of money so drawn when signed consistent with this Resolution without inquiring as to the disposition of the proceeds or the circumstances surrounding the issuance of the check or the order for the payment of the money involved, whether such checks or orders for the payment of money are payable to the order of, or endorsed or negotiated by any one or more of the Authorized Signers signing them or such party in their individual capacities or not, and whether they are deposited to the individual credit of or tendered in payment of the individual obligation of any one or more of the Authorized Signers signing them or of any other such party or not;

- Financial Institution shall be indemnified for any claims, expenses or losses resulting from the honoring of any signature certified or refusing to honor any signature not so certified; and

- Notwithstanding any modification or termination of the power of any Authorized Signer of the Entity, this Resolution shall remain in full force and bind the Entity and its legal representatives, successors, assignees, receivers, trustees or assigns until written notice to the contrary signed by, or on behalf of, the Entity shall have been received by the Financial Institution, and that receipt of such notice shall not affect any action taken by the Financial Institution prior to receipt of such notice in reliance on this Resolution.

Additional comments or instructions:

# OptimumBank

# BENEFICIAL OWNERSHIP CERTIFICATION FORM

## WHAT IS THIS FORM?

To help the government fight financial crime, Federal regulation requires certain financial institutions to obtain, verify and record information about the beneficial owners of legal entity customers. Legal entities can be abused to disguise involvement in terrorist financing, money laundering, tax evasion, corruption, fraud and other financial crimes. Requiring the disclosure of key individuals who own or control a legal entity (i.e. the beneficial owners) helps law enforcement investigate and prosecute these crimes.

## WHO HAS TO COMPLETE THIS FORM?

This form must be completed by the person opening a deposit or loan account on behalf of a legal entity with any of the following U.S. financial institutions: (i) a bank or credit union; (ii) a broker or dealer in securities; (iii) a mutual fund; (iv) a futures commission merchant; or (v) an introducing broker in commodities.

For the purposes of this form a **legal entity** includes a corporation, limited liability company, or other entity that is created by a filing of a public document with a Secretary of State or similar office, a general partnership, and any similar business entity formed in the United States or a Non-U.S. country. **Legal entity** does not include sole proprietorships, unincorporated associations or natural persons opening accounts on their own behalf.

## WHAT INFORMATION DO I HAVE TO PROVIDE?

This form requires you to provide the name, address, date of birth and Social Security Number (or passport number or other similar information, in the case of Non-U.S. persons) for the following individuals (i.e. the **beneficial owners**):

(i)     Each individual, if any, who owns, directly or indirectly, 25% or more of the equity interests of the legal entity customer (e.g. each natural person who owns 25% or more of the shares of the corporation; &

(ii)     An individual with significant responsibility for managing the legal entity customer (e.g. Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Managing Member, General Partner, President, Vice President or Treasurer)

The number of individuals that satisfy this definition of "beneficial owner" may vary. Under Section (i), depending on the factual circumstances, up to four individuals (but as few as zero) may need to be identified. Regardless of the number of individuals identified under Section (i), you must provide the identifying information of one individual under Section (ii). It is possible that in some circumstances the same individual may be identified in both sections (e.g. the President of Acme, Inc. who also holds a 30% equity interest). Thus, a completed form will contain the identifying information of at least one individual under Section (ii) and up to five individuals (i.e. one individual under Section (ii) and four 25% equity holders under Section (i)).

The financial institution may also ask to see a copy of a driver's license or other identifying document for each beneficial owner listed on this form.

10/2017

# OPTIMUMBANK

## BENEFICIAL OWNERSHIP CERTIFICATION FORM

Persons opening a deposit or loan account on behalf of a legal entity must provide the following information[1].

| Name of Person Opening Account | Yisorel M Herbst |
|---|---|
| Name, Type and Address of Legal Entity for which the Account is being Opened | Hi Bar Capital LLC<br>1825 65th Street Suite 300<br>Brooklyn, NY 11204 |

Please provide the following information[2] for **each** individual, if any, who directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, **owns 25% or more in** the equity interests of the legal entity listed above.

| Name | Date of Birth | Address | For U.S. Persons: Social Security Number | For Non-U.S. Persons: Passport Number and Country of Issuance, or other similar identification number[3] | Ownership % |
|---|---|---|---|---|---|
| Yisorel M Herbst | ██████ | 2111 57th Street Brooklyn, NY 11204 | ██████ | N/A | 100% |

*...Continued on the following page*

**IMPORTANT:**   If there is a legal entity that owns 25% or more of this legal entity customer, please complete the **Beneficial Ownership Addendum** located on Page 4.

---

[1] Modeled from FinCEN Appendix A, Certification Regarding Beneficial Owners of Legal Entity Customers.
[2] We may also ask to see a copy of a driver's license or other identifying document for each beneficial owner listed on this form.
[3] In lieu of a passport number, Non-U.S. persons may also provide an alien identification card number, or number and country of issuance of any other government-issued document evidencing nationality or residence and bearing a photograph or similar safeguard.

10/2017

# OPTIMUMBANK

# BENEFICIAL OWNERSHIP CERTIFICATION FORM

Please provide the following information[4] for **one** individual with **significant responsibility for managing the legal entity listed above**, such as:

☒ An executive officer or senior manager (e.g. Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Managing Member, General Partner, President, Vice President or Treasurer); OR

☐ Any other individual who regularly performs similar functions.

| Name | Date of Birth | Address | For U.S. Persons: Social Security Number | For Non-U.S. Persons: Passport Number and Country of Issuance, or other similar identification number[5] |
|------|---------------|---------|------------------------------------------|------------------------------------------------------------------------------------------------------|
| Yisorel M Herbst | ███ | 2111 57th Street Brooklyn, NY 11204 | ███ | N/A |

I, _Yisroel M. Herbst_, hereby certify, to the best of my knowledge, that the information provided above is complete and correct.

Signature _____    Date _2/10/21_

Legal Entity Identifier: _____ (Optional)

---

[4] We may also ask to see a copy of a driver's license or other identifying document for each beneficial owner listed on this form.

[5] In lieu of a passport number, Non-U.S. persons may also provide an alien identification card number, or number and country of issuance of any other government-issued document evidencing nationality or residence and bearing a photograph or similar safeguard.

10/2017

3 | Page

# OPTIMUMBANK

## BENEFICIAL OWNERSHIP ADDENDUM

This addendum should be used when there is legal entity or entities
that owns 25% or more of the legal entity customer opening this account.

| Legal Entity Name[6] | |
|---|---|
| % Ownership in Customer Opening the Account | |

Please provide the following information[7] for **each** individual, if any, who directly or indirectly, through any contract, arrangement, understanding, relationship or otherwise, **owns 25% or more in** the equity interests of the legal entity listed above.

| Name | Date of Birth | Address | For U.S. Persons: Social Security Number | For Non-U.S. Persons: Passport Number and Country of Issuance, or other similar identification number[8] | Ownership % |
|---|---|---|---|---|---|
| | | | | | |

Are any of the individuals listed above also owners in the legal entity opening the account?

YES ☐    NO ☐

If you answered "YES", please comment on whether any of the individuals listed above own, in the aggregate[9], 25% or more of the legal entity opening the account.

---

[6] Name of the legal entity that has ownership in the customer seeking to open the account.
[7] We may also ask to see a copy of a driver's license or other identifying document for each beneficial owner listed on this form.
[8] In lieu of a passport number, Non-U.S. persons may also provide an alien identification card number, or number and country of issuance of any other government-issued document evidencing nationality or residence and bearing a photograph or similar safeguard.
[9] Notate whether any individual listed on Page 4 is also a minority owner in the company listed on Page 2. If so, aggregate their ownership interests to determine whether any of those individuals own 25% or more of the entity listed on Page 2 (i.e. indirectly).

10/2017                                                                                     4 | P a g e

| For Automated Teller (ATM) and Debit Cards | Name and Address of Financial Institution |
|---|---|
| | OptimumBank |
| | 2929 E COMMERCIAL BLVD |
| | SUITE 101 |
| | Fort Lauderdale, FL 33308-4041 |
| | (954)900-2850 |

Words or phrases preceded by a ☐ are only applicable if the ☒ is checked.

**Request for:** ☐ New Card     ☐ Replacement Card     ☐ Change in Access     ☐ PIN Maintenance

**Account Title and Address**

HI BAR CAPITAL LLC

1825 65TH STREET SUITE 300
BROOKLYN, NY 11204-0000
(917)577-3882

---

**Cardholder Information**
YISROEL M HERBST
Address:

2111 57TH STREET
BROOKLYN, NY 11204          *Mail here*

☐ Check when address change within 60 days of application.
Title/Capacity: Authorized Signer
Residence Phone: ███████████
Work Phone: ███████████

D.O.B.: ███████    T.I.N.: ███████████
ID Verification: ███████
Employer: SELF

Authorization Limits:
☐
☐

**Card Information** ☒ Debit    ☐ ATM ███████
Card Number: ███████████████████████
Issue Date: 3/12/2021
Expiration Date:
Date Ordered: 2/21/2021
Date Mailed:

**Accessible Accounts**
Checking: ████ 2968

Savings:

Loan:

Credit Card:

☐ Make Deposits    ☐ Balance Inquiry
☐ Transfers Between Accounts

---

**Cardholder Information**

Address:

☐ Check when address change within 60 days of application.
Title/Capacity:
Residence Phone:
Work Phone:

D.O.B.:    T.I.N.:
ID Verification:
Employer:

Authorization Limits:
☐
☐

**Card Information** ☐ Debit    ☐ ATM
Card Number:
Issue Date:
Expiration Date:
Date Ordered:
Date Mailed:

**Accessible Accounts**
Checking: ████ 2968

Savings:

Loan:

Credit Card:

☐ Make Deposits    ☐ Balance Inquiry
☐ Transfers Between Accounts

---

© Compliance Systems, Inc. 2001 - 2013 ITEM 560BAL1 (11/2013) Page 1 of 2

**Additional Notes:**

---

**Definitions.**   The terms "I" and "my" refer to the Cardholder(s), and the terms "you" and "your" refer to the Financial Institution.

☐ **Access Authorization for Overdraft Protection.**   By checking this box, I authorize that my overdraft line of credit will be accessed through my checking account, #                            , card transactions.
**Truth in Lending Disclosure.**   I may be liable for the unauthorized use by Cardholder(s) to access my line of credit. I understand that I must refer to my Line of Credit Agreement for disclosures related to my liability for unauthorized use.

**Acknowledgment.**   I have applied for the card services noted above. I acknowledge receipt of a copy of the Electronic Fund Transfer Disclosure and this Application, and I agree to be bound by their terms. I further authorize you to make inquiries from any consumer reporting agency, including a check protection service, in connection with this request.

X _____ 02/10/2021     X _____
YISROEL M HERBST                              Date                                      Date

Authorized by:

X _____ 02/10/2021
Giovanni Cumberbatch                  Date

---

Inst:    Branch:    Window Machine:      Teller:      Time: Fri Feb 12 09:49:18 2021

## New Card

Card: ████████████      Name: YISROEL M HERBST      Officer:

**The card information was successfully submitted.**

### ⊟ General

| | |
|---|---|
| Card: | ████████████ |
| Service Charge Level: | No Service Charge Level ▾ |
| Card Stock: | 21 - Blue Marble ▾ |
| Reference Code: | |
| Customer Select PIN: | ○ Yes   ⦿ No |
| PIN Offset: | |
| Number of Cards: | ⦿ 1   ○ 2 |

### ⊟ Link Card to Available Accounts

Select one or more available accounts to link card to.

| ⊞ | Account | Product | Mail | Nickname |
|---|---------|---------|------|----------|
| **Checking / Money Market** | | | | |
| ⊞ ☑ | ████2968 | 04 - Commercial Checking (Lockout: 00-No Lockout) | 0 - Stmt-addr., forms-addr. | |

### ⊟ Assign Primary Accounts

Select the primary account that will be assigned to the card.

| | |
|---|---|
| Primary Checking: | ████2968 Commercial Checking ▾ |
| Primary Money Market: | ▾ |
| Primary Savings: | ▾ |

### ⊟ Card Detail

| | | |
|---|---|---|
| Use Address for Card | Primary Card Owner Address ▾ | |
| Card Owner: * | YISROEL M HERBST | Tax ID: ████████ |
| Business Name: | HI BAR CAPITAL LLC ▾ | Tax ID: ████████ |

Card 1

| |
|---|
| OptimumBank |
| 1111 2222 3333 4444 |
| YISROEL M HERBST |
| HI BAR CAPITAL LLC |

Names on the card may be truncated to 26 characters.
Update the names above if necessary.

[Edit] Select the Edit button to change address information

| | | |
|---|---|---|
| Address: * | 2111 57TH ST | Address of: YISROEL M HERBST |
| Address: | | |
| City: * | BROOKLYN | |
| State: * | New York ▾ | |
| Zip/Postal Code: * | 11204-2081 | |

Country: *                          [ United States                    ⌄ ]

⊟ Old Card Information

Indicate if creditors should automatically be notified of the new card.Then enter the old card information that is being replaced with this new card, if applicable.

Customer Participation:         ◯ Automatically notify creditors of new card

                                ◉ Do not notify creditors, customer will contact them individually

Old Card Number:                [                    ]

Old Card Expiration Date:       [ MM/YY        ]

# ACKNOWLEDGEMENT COPY

# ARTICLES OF ORGANIZATION
# OF
# Hi Bar Capital LLC

Under Section 203 of the Limited Liability Company Law

THE UNDERSIGNED, being a natural person of at least eighteen (18) years of age, and acting as the organizer of the limited liability company hereby being formed under Section 203 of the Limited Liability Company Law of the State of New York certifies that:

**FIRST:** The name of the limited liability company is:

**Hi Bar Capital LLC**

**SECOND:** To engage in any lawful act or activity within the purposes for which limited liability companies may be organized pursuant to Limited Liability Company Law provided that the limited liability company is not formed to engage in any act or activity requiring the consent or approval of any state official, department, board, agency, or other body without such consent or approval first being obtained.

**THIRD:** The county, within this state, in which the office of the limited liability company is to be located is ALBANY.

**FOURTH:** The Secretary of State is designated as agent of the limited liability company upon whom process against it may be served. The address within or without this state to which the Secretary of State shall mail a copy of any process against the limited liability company served upon him or her is:

REGISTERED AGENTS INC.
90 STATE STREET
SUITE 700, OFFICE 40
ALBANY, NY 12207

I certify that I have read the above statements, I am authorized to sign these Articles of Organization, that the above statements are true and correct to the best of my knowledge and belief and that my signature typed below constitutes my signature.

steven berkovitch  (signature)

steven berkovitch esq , ORGANIZER
80 Broad Street Suite 3303
New York, NY 10004

**ACKNOWLEDGEMENT COPY**

**Filed by:**
Berkovitch & Bouskila PLLC
80 Broad Street Suite 3303
New York, NY 10004

**ACKNOWLEDGEMENT COPY**

## ONLINE FILING RECEIPT

=================================================================================

ENTITY NAME: HI BAR CAPITAL LLC

DOCUMENT TYPE: ARTICLES OF ORGANIZATION (DOM. LLC)                COUNTY: ALBA
=================================================================================

FILED:02/09/2021 DURATION:********** CASH#:210209010359 FILE#:210209010359
DOS ID:5937653

FILER:                                                    EXIST DATE
------                                                    ----------

BERKOVITCH & BOUSKILA PLLC                                02/09/2021
80 BROAD STREET SUITE 3303
NEW YORK, NY 10004

ADDRESS FOR PROCESS:
--------------------

REGISTERED AGENTS INC.
90 STATE STREET
SUITE 700, OFFICE 40
ALBANY, NY 12207

REGISTERED AGENT:
-----------------



The limited liability company is required to file a Biennial Statement with the
Department of State every two years pursuant to Limited Liability Company Law
Section 301. Notification that the Biennial Statement is due will only be made via
email. Please go to www.email.ebiennial.dos.ny.gov to provide an email address to
receive an email notification when the Biennial Statement is due.
=================================================================================
SERVICE COMPANY: ** NO SERVICE COMPANY **
SERVICE CODE: 00

FEE:             200.00                    PAYMENTS        200.00
                 ------                                    ------
FILING:          200.00                    CHARGE          200.00
TAX:               0.00                    DRAWDOWN          0.00
PLAIN COPY:        0.00
CERT COPY:         0.00
CERT OF EXIST:     0.00
=================================================================================
                                            DOS-1025 (10/2020)

Authentication Number: 2102090489  To verify the authenticity of this document you
may access the Division of Corporation's Document Authentication Website at
http://ecorp.dos.ny.gov

 **IRS** DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
CINCINNATI  OH    45999-0023

Date of this notice:  02-09-2021

Employer Identification Number:

███████████

Form:  SS-4

Number of this notice:   CP 575 G

HI BAR CAPITAL LLC
YISROEL HERBST SOLE MBR
2111 57TH ST
BROOKLYN, NY  11204

For assistance you may call us at:
1-800-829-4933

IF YOU WRITE, ATTACH THE
STUB AT THE END OF THIS NOTICE.

WE ASSIGNED YOU AN EMPLOYER IDENTIFICATION NUMBER

        Thank you for applying for an Employer Identification Number (EIN).  We assigned you
EIN ███████████.    This EIN will identify you, your business accounts, tax returns, and
documents, even if you have no employees.  Please keep this notice in your permanent
records.

        When filing tax documents, payments, and related correspondence, it is very important
that you use your EIN and complete name and address exactly as shown above.  Any variation
may cause a delay in processing, result in incorrect information in your account, or even
cause you to be assigned more than one EIN.  If the information is not correct as shown
above, please make the correction using the attached tear off stub and return it to us.

        A limited liability company (LLC) may file Form 8832, *Entity Classification Election*,
and elect to be classified as an association taxable as a corporation.  If the LLC is
eligible to be treated as a corporation that meets certain tests and it will be electing S
corporation status, it must timely file Form 2553, *Election by a Small Business
Corporation*.  The LLC will be treated as a corporation as of the effective date of the S
corporation election and does not need to file Form 8832.

        To obtain tax forms and publications, including those referenced in this notice,
visit our Web site at www.irs.gov.  If you do not have access to the Internet, call
1-800-829-3676 (TTY/TDD 1-800-829-4059) or visit your local IRS office.

**IMPORTANT REMINDERS:**

        *  Keep a copy of this notice in your permanent records.  **This notice is issued only
           one time and the IRS will not be able to generate a duplicate copy for you.**  You
           may give a copy of this document to anyone asking for proof of your EIN.

        *  Use this EIN and your name exactly as they appear at the top of this notice on all
           your federal tax forms.

        *  Refer to this EIN on your tax-related correspondence and documents.

        If you have questions about your EIN, you can call us at the phone number or write to
us at the address shown at the top of this notice.  If you write, please tear off the stub
at the bottom of this notice and send it along with your letter.  If you do not need to
write us, do not complete and return the stub.

        Your name control associated with this EIN is HIBA.  You will need to provide this
information, along with your EIN, if you file your returns electronically.

        Thank you for your cooperation.

(IRS USE ONLY)     575G                    02-09-2021  HIBA  O  9999999999  SS-4

Keep this part for your records.          CP 575 G (Rev. 7-2007)

-----------------------------------------------------------------------------------------

Return this part with any correspondence                          CP 575 G
so we may identify your account.  Please
correct any errors in your name or address.                       9999999999

Your Telephone Number  Best Time to Call   DATE OF THIS NOTICE:  02-09-2021
(     )      -                             EMPLOYER IDENTIFICATION NUMBER: ▮▮▮▮▮
                                           FORM:  SS-4              NOBOD


INTERNAL REVENUE SERVICE                   HI BAR CAPITAL LLC
CINCINNATI  OH    45999-0023               YISROEL HERBST SOLE MBR
Iılıılılıldldlılılılılıllıılllıılılılıllılılılıl                2111 57TH ST
                                           BROOKLYN, NY  11204

# OPERATING AGREEMENT

# OF HI BAR CAPITAL LLC,

# A NEW YORK LIMITED LIABILITY

# COMPANY

Operating Agreement, dated as of January 18, 2021, by and between the Persons who have executed the signature page(s) hereof as Members.

## WITNESSETH:

WHEREAS, the parties have formed a limited liability company (together with any successor limited liability company, the "Company") under the New York Limited Liability Company Law (the "Act") and upon the terms and conditions of this Agreement; and

WHEREAS, the Members wish to set forth their agreement as to how the business and affairs of the Company shall be managed and their rights and obligations with respect to the Company;

NOW, THEREFORE, in consideration of the mutual promises contained in this Agreement, the parties hereby agree as follows:

## ARTICLE I

Formation and Business of the Company

1.1     Formation. The Company was organized on February 9, 2021 in accordance with and pursuant to the Act.

1.2     Name. The name of the Company is Hi Bar Capital LLC,. The Company may do business under that name and, as permitted by applicable law, under any other name determined from time to time by the Manager.

1.3     Purpose of the Company. The purpose of the Company is any legal purpose.

1.4     Principal Office. The Company's principal place of business shall be located at 2111 57ᵗʰ Street Brooklyn, NY 11204, or such other place determined from time to time by the Manager.

1.5     Term. The term of the Company shall commence on the date hereof and shall be of unlimited duration, unless the Company is earlier dissolved in accordance herewith and with the Act.

1.6        Members. The names, addresses, and Percentage Interests of the Members are set forth on Exhibit A attached hereto, as amended from time to time.

## ARTICLE II

### Definitions

The following terms, as used in this Agreement, shall have the following meanings (unless otherwise expressly provided herein):

2.1        "Act" shall have the meaning set forth in the preamble of this Agreement.

2.2        "Affiliate" of a Person shall mean any other Person that, directly or indirectly, controls, is controlled by or is under common control with such Person, or an officer, director, partner or trustee of such Person. For purposes of this definition, "control" shall mean the right or ability to elect the majority of the directors of a corporation, to exercise more than fifty percent (50%) of the voting rights in the controlled entity or otherwise to direct the management or policies of the controlled entity.

2.3        "Agreement" shall mean this Operating Agreement, as originally executed and as amended from time to time in accordance herewith and with the Act.

2.4        "Capital Contribution" of, or attributed to, an Member shall mean the total contributions to the capital of the Company, whether in cash, property (net of liabilities) or services, made, performed or to be performed by, or attributed to, such Member {, to the extent actually performed}, valued on the date of contribution or commitment to contribute as set forth {herein} {in the Company's books and records}.

2.5        "Cash Available for Distribution," as of any date, shall mean the excess of (a) all revenues received by the Company from its operations and investments over (b) total current operating expenses and reasonable reserves for future operating expenses, including payments in respect of indebtedness of the Company, capital improvements and contingencies, as determined from time to time by the Managers.

2.6        "Code" shall mean the Internal Revenue Code of 1986, as amended, in effect as of the date hereof and as amended from time to time hereafter.

2.7        "Company" shall have the meaning set forth in the preamble to this Agreement.

2.8        "Economic Interest" shall mean a Person's share of the Profits and Losses of, and the rights to receive Distributions from the Company

2.9        "Economic Member" shall mean any Person with an Economic Interest whether as a Member or as an assignee of the Member.

2.10        "Fiscal Year" shall mean the Company's accounting, tax and fiscal year, which shall be the calendar year.

2.11    "Initial Capital Contribution" of a Member shall mean its initial contribution to the capital of the Company pursuant to this Agreement.

2.12    "Interest" shall mean any of a Management Interest and/or Membership Interest.

2.13    "Majority in Interest" shall mean the Members holding more than fifty percent (50%) of the aggregate Percentage Interests held by all Members.

2.14    "Manager" or "Managers" shall mean those charged with the management of the Company as set forth in Article V. Specifically, "Manager" shall mean Yisroel Herbst.

2.15    "Management Interest" of a Member shall mean his or its right to participate in the management of the business and affairs of the Company, including the right to vote on, consent to, or otherwise participate in, any decision or action of or by the Members hereunder or under the Act.

2.16    "Member" shall mean each Person who (a) executes a counterpart of this Agreement as a Member as of the date hereof or (b) is admitted as a Member after the date hereof in accordance herewith, provided that, in each case, a Member shall always have a Management Interest

2.17    "Membership Interest" shall mean a Member's entire interest in the Company, including his or its Economic Interest (to the extent not Transferred) and Management Interest.

2.18    "Member-Manager" shall mean a Manager who is also a Member.

2.19    "Member Nonrecourse Debt" shall mean nonrecourse debt of the Company under Treas. Reg. Section 1.704-2(b)(4).

2.20    "Member Nonrecourse Deductions" shall mean the losses, deductions and expenditures attributable to Member Nonrecourse Debt under Treas. Reg. Section 1.704-2(i)(2).

2.21    "Negative Capital Account" shall mean a Capital Account with a balance less than zero.

2.22    "Net Profits" and "Net Losses" shall mean, for each Fiscal Year or other period for which they are determined, the income and gain, and the losses, deductions of the Company, respectively, in the aggregate or separately stated, as appropriate, determined in accordance with generally accepted accounting principles consistently applied.

2.23    "Percentage Interest" of a Member shall mean his or its percentage share of the Net Profits, Net Losses, other regularly allocable items and distributions of the Company, as set forth on Exhibit A attached hereto, as amended from time to time.

2.24    "Person" shall mean any individual, partnership, limited liability company, corporation, joint venture, trust, association or any other entity, domestic or foreign, and its respective heirs, executors, administrators, legal representatives, successors and assigns where the context of this Agreement so permits.

2.25 "Transfer" shall mean any sale, assignment, transfer, gift, exchange, bequest or other disposition of an Interest, in any manner, voluntary or involuntary, by operation of law or otherwise.

2.26 "Transferor" shall mean any Member which Transfers, or proposes to Transfer, an Interest.

2.27 "Treasury Regulations" or "Treas. Reg." shall mean regulations promulgated under the Code in effect as of the date hereof or hereafter amended or adopted.

2.28 "Voluntary Withdrawal" of a Member shall mean his or its withdrawal as a Member as a result of an event described in Section 2.30 (f), (g) or (h).

2.29 "Withdrawal Event," with respect to any Member, shall mean his or its (a) death, revocation of its certificate of incorporation, dissolution, expulsion as a Member or adjudication of incompetency, as applicable; (b) Bankruptcy; {(c) making a general assignment for the benefit of creditors; (d) failure to pay his or its debts as they become due, or admission of inability to pay his or its debts as they become due; (e) Interest becoming subject to the enforcement of rights of any of his or its creditors, unless such rights are released within {ninety (90)} days after he or it receives notice of the creditor's action;} (f) voluntary retirement or withdrawal from the Company; {(g) except as otherwise provided herein, breach of any of his or its material obligations under this Agreement} or (h) any other event that terminates a Member's membership in the Company or otherwise causes the dissolution of the Company under the Act.

# ARTICLE III

## Capital Contributions
## and Capital Accounts

3.1 Initial Capital Contributions. On the date hereof, each Member shall contribute to the Company as its Initial Capital Contribution cash in the amount set forth in Exhibit A attached hereto.

3.2 Additional Capital Contributions. No Member shall be required to contribute any additional capital to the Company, unless required by either the terms of this Agreement or by the Manager.

3.4 Capital Accounts. The Company shall establish and maintain a Capital Account for each Member. The initial Capital Accounts shall be in amounts equal to the Members' Initial Capital Contributions. Subject to Section 3.3(b), An Member's Capital Account shall be increased by the amount of any additional Capital Contributions made by, and the income and gain allocated to, such Member, and shall be decreased by any losses and deductions allocated, or distributions made, to such Member pursuant to the terms of this Agreement. It is the intention of the Members that Capital Accounts be maintained strictly in accordance with Treas. Reg. Section

1.704-1(b)(2)(iv).No Member shall be paid interest on the balance of its Capital Account from time to time

3.5    Return of Capital Contributions. Except as otherwise provided in this Agreement, no Member shall have any right to demand or receive (a) any cash or property of the Company in return of its Capital Contribution or in respect of its Membership Interest until the dissolution of the Company or (b) any distribution from the Company in any form other than cash.

3.6    Transfer of Interest. If an Interest is Transferred as permitted by this Agreement, the transferee shall succeed to the Capital Account of the Transferor to the extent the Capital Account relates to the Transferred Interest in accordance with Treas. Reg. Section 1.704-1(b)(2)(iv)(l).

# ARTICLE IV

## Distributions and Allocations

4.1    Distributions. Cash Available for Distribution shall be distributed periodocally to each Member in accordance with its Percentage Interest.

4.2    Limitation on Distributions. No distribution shall be declared and paid unless, after giving effect thereto, the assets of the Company exceed the Company's liabilities.

4.3    Allocations of Net Profits and Net Losses. Except as otherwise required by the Code or as provided in this Agreement, the Net Profits and Net Losses for each Fiscal Year shall be determined in accordance with the accounting methods followed by the Company for federal income tax purposes.

4.4    Qualified Income Offset. Notwithstanding anything in this Article IV to the contrary, in the event any Member unexpectedly receives any adjustments, allocations, or distributions described in Treas. Reg. Section 1.704-1(b)(2)(ii) (d)(4), (5) or (6) which cause a deficit or increase the deficit in the Member's Capital Account, items of Company gross income and gain shall be allocated to the Member in an amount and manner sufficient to eliminate the deficit in its Capital Account as quickly as possible; provided, however, that for this purpose, a Capital Account shall be increased by the Member's share of Company Minimum Gain as of the end of the Fiscal Year. It is the intention of the Members that this Section 4.4 be treated as a "qualified income offset" within the meaning of Treas. Reg. Section 1.704-1(b)(2)(ii)(d).

4.5    Minimum Gain.

(a)    Nonrecourse Deductions. Member Nonrecourse Deductions shall be allocated to the Member that bears the economic risk of loss with respect to the debt to which such Member Nonrecourse Deduction is attributable.

(b)    Distributions of Nonrecourse Financing Proceeds. If the Company makes a distribution to the Members that is allocable to the proceeds of any nonrecourse liability of the Company, or of any other entity in which the Company has an interest, such distribution shall be

allocable to an increase in Company Minimum Gain as provided in Treas. Reg. Sections 1.704-2(h) and (i)(6).

(c) Company Minimum Gain. Each Member's share of Company Minimum Gain shall be determined as provided in Treas. Reg. Sections 1.704-2(g) and (i)(5).

(d) Minimum Gain Chargeback. If there is a net decrease in Company Minimum Gain for a Fiscal Year, items of Company income and gain shall be allocated to the Capital Accounts as provided in Treas. Reg. Section 1.704-2(f). Notwithstanding the foregoing, to the extent such net decrease is attributable to a Member Nonrecourse Debt, then any Member with a share of the minimum gain attributable to such debt shall be allocated items of income and gain as provided in Treas. Reg. Section 1.704-2(i)(4).

4.5 Allocation of Nonrecourse Liabilities. For purposes of Treas. Reg. Section 1.752-3(a), the Members' interests in Net Profits shall be their respective Percentage Interests.

4.6 Tax Returns and Other Elections. The Managers shall cause the preparation and timely filing of all tax returns required to be filed by the Company pursuant to the Code and all applicable laws of each jurisdiction in which the Company does business. Copies of all such returns, or summaries thereof, shall be furnished to the Members within a reasonable time after the end of each Fiscal Year.

# ARTICLE V

## Managers

5.1 Management and Authority.

(a) The property, business and affairs of the Company shall be managed by its Managers. Except where the Members' approval is expressly required by this Agreement or by the Act, the Managers shall have full authority, power and discretion to make all decisions with respect to the Company's business and to perform such other services and activities as set forth in this Agreement. Every Manager shall be an agent of the Company for its business purposes and each Manager may bind the Company in the ordinary course, provided that the Managers have approved such action in accordance with this Agreement or the Act. Unless otherwise expressly authorized by this Agreement or the Members as set forth herein, the act of a Manager that is not apparently for carrying on the Company's business in the ordinary course shall not bind the Company.

(b) Except as otherwise expressly provided in this Agreement or the Act, the Members shall have no right to control or manage, nor shall they take any part in the control or management of, the property, business or affairs of the Company, but they may exercise the rights and powers of Members under this Agreement, including, without limitation, the right to approve certain matters as provided herein.

5.3 Certain Powers of Managers. Without limiting the generality of Section 5.1, the Managers shall have the power and authority, on behalf of the Company and any other entity controlled by the Company (a "Controlled Subsidiary"), to:

(a)     acquire property in the ordinary course of the Company's business from any Person

(b)     purchase life, liability and other insurance to protect the Company's property and business;

(c)     establish bank accounts in the name of the Company and establish the identity of all signatories entitled to draw against such accounts for the benefit of the Company;

(d)     employ, and fix the terms of employment and termination of employment of, employees of the Company, and accountants, legal counsel and consultants for the Company

(e)     invest Company funds in time deposits, short-term governmental obligations, commercial paper or other similar investments or in any other capital asset or investment in the ordinary course;

(f)     execute on behalf of the Company all instruments and documents, including, without limitation, checks, drafts, notes and other negotiable instruments, mortgages or deeds of trust, security agreements, financing statements, documents providing for the acquisition or disposition of the Company's property, assignments, bills of sale, leases, partnership agreements, and any other instruments or documents necessary, in the opinion of the Managers, to the business of the Company and relating to transactions that have been approved in accordance with this Agreement;

(g)     borrow money for the Company in the ordinary course, on a secured or unsecured basis, from banks or any other Person including Members, Managers or Affiliates of any thereof;

(h)     enter into any and all other agreements on behalf of the Company with any other Person including Members, Managers or Affiliates of any thereof, for any purpose in the ordinary course, in such forms as the Managers may approve;

(i)     institute, prosecute and defend legal, administrative or other suits or proceedings in the Company's name;

(j)     establish pension, benefit and incentive plans for any or all current or former Members, Managers, employees, and/or agents of the Company, on such terms and conditions as the Managers may approve, and make payments pursuant thereto; and

(k)     do and perform any and all other lawful acts as may be necessary or appropriate to conduct the Company's business.

5.9     Execution of Documents.

(a)     Except as otherwise determined by the Managers or the Members or as set forth herein or in the Act, any document or instrument may be executed and delivered on behalf of the Company by any Manager, including, without limitation, any deed, mortgage, note or other evidence of indebtedness, lease, security agreement, financing statement, contract of sale or other instrument purporting to convey or encumber, in whole or in part, any or all of the assets of the Company at any time held in its name, or any compromise or settlement with respect to accounts

receivable or claims of the Company; and, subject to the authorization requirements set forth herein or in the Act, no other signature shall be required for any such instrument to bind the Company.

# ARTICLE VI

## Rights and Obligations of Members;

6.1     Liability for Company Debt. No Member will be personally liable for any debts, losses or obligations of the Company by reason of its being a Member, except to the extent of its Capital.

6.2     Meetings of Members.

(a)     The Members will meet annually upon request by the Managers for the purpose of transacting such business as may come before the meeting at the principal office of the Company, or at such other time or place within or without the State of New York as shall be determined by the Managers.

# ARTICLE VII

## Transferability

If transfers, including transfers of financial rights only, are permitted only by consent:

7.1     General. Except as otherwise specifically provided in this Agreement, no Member shall have the right to Transfer any Interest to a non-Member without the consent of the remaining Members which may be withheld for any reason or no reason, in its or their sole discretion. Upon the Transfer of all of a Member's Economic Interest, the Transferor shall cease to be a Member.

# ARTICLE VIII

## WITHDRAWAL OF MEMBERS

8.1     No Voluntary Withdrawal. A Member shall have no right or power to surrender his or its Membership Interest voluntarily or otherwise take, or permit to be taken, any action that would constitute a Voluntary Withdrawal.

8.2     Involuntary Withdrawal. Immediately upon the occurrence of an event listed in 2.30 (a)(b)(c)(d)(e), the successor of the withdrawn Member shall thereupon become an Economic Member, but shall not become a Member.

## ARTICLE IX

### Dissolution and Termination

9.1     Events Causing Dissolution and Winding-up. The Company shall be dissolved and wound up upon the first to occur of the following events:

(a)     the written consent of the Managers

(b)     the sale or other disposition of all or substantially all of the business or assets of the Company;

9.2     Winding up of the Company.

(a)     If the Company is to be dissolved in accordance with Section 9.1, then the Managers shall wind up the affairs of the Company, including by selling or otherwise liquidating the Company assets in a bona fide sale or sales to third Persons at such prices and upon such terms as they may determine.

(b)     The proceeds of any liquidation of the Company shall be distributed in the following order of priority (to the extent that such order of priority is consistent with the laws of the State of New York):

(i)     first, to the payment of the debts and liabilities of the Company and the expenses of dissolution and liquidation;

(iii)     then, to the Members as set forth in this Agreement.

{9.4}     Articles of Dissolution. Within ninety (90) days following the dissolution and the commencement of winding up of the Company, Articles of Dissolution shall be prepared, executed and filed in accordance with the Act.

## ARTICLE X

### Indemnification

10.1     Indemnification. To the fullest extent permitted by applicable law from time to time in effect:

(a)     the Company shall indemnify and hold harmless the Manager, Members , officers, agents and employees of the Company and their respective directors, trustees, shareholders, partners, officers, employees, agents and other Affiliates, against all costs, liabilities, claims, expenses, including reasonable attorneys' fees and disbursements, and damages (collectively, "Losses") paid or incurred by any such Person in connection with the conduct of the Company's business; and

# ARTICLE XI

## Miscellaneous Provisions

11.1     Notices. Except as otherwise set forth herein, any notice, demand or communication required or permitted to be given under this Agreement shall be (a) in writing, (b) delivered by hand, nationally recognized overnight courier service or facsimile, addressed to a party at its mailing address , and (c) deemed to have been given on the date delivered by hand or sent by facsimile or one business day after deposit with such courier service.

11.2     Books of Accounts and Records.

(a)     At the expense of the Company, the Managers shall maintain at the Company's principal place of business, records and accounts of all operations and expenditures of the Company, including, without limitation, the following records:

(i)     a current list in alphabetical order of the name and mailing address of each Member and, with respect to the Members, their respective shares of Net Profits and Net Losses, or information from which such shares can be derived;

(ii)     a copy of the Articles of Organization and all amendments thereto, together with executed copies of any powers of attorney pursuant to which any such amendment was executed;

(iii)     copies of the Company's federal, state and local income tax returns and reports, if any, for the three most recent Fiscal Years;

(iv)     copies of this Agreement, as in effect from time to time;

(v)     any writings or other information with respect to each Member's obligation to contribute cash, property or services to the Company, including, without limitation, the amount of cash so contributed and a description and statement of the agreed-upon fair market value of property or services so contributed or to be contributed;

(vi)     any financial statements of the Company for the three most recent Fiscal Years;

(b)     Upon reasonable advance notice, during normal business hours, any Member or its representatives may, at its expense, inspect and copy the records described in Section {11.2(a)} for any purpose reasonably related to such Person's Interest.

11.3    Application of New York Law. This Agreement, and the application or interpretation hereof, shall be governed by and in accordance with the laws of the State of New York applicable to agreements made and fully to be performed therein, and specifically the Act.

11.4    Amendments.

(a)    Except as otherwise required by this Agreement or the Act, this Agreement may be amended by the affirmative vote of all of the Members.

(b)    Notwithstanding anything to the contrary contained in this Agreement, the Managers may modify the provisions of this Agreement without the consent of the Members if, upon advice of counsel to the Company, the modification is necessary to cause (i) the Company to be or to continue to be classified as a partnership for federal income tax purposes or (ii) the allocations under Article IV to have substantial economic effect or to be in accordance with the Members' interests under Section 704 of the Code and the Treasury Regulations thereunder. No modification hereunder may alter the limited liability of the Members or have a material effect on amounts distributable to any Member pursuant to this Agreement.

11.5    Amendment by Agreement of Merger. Notwithstanding anything to the contrary contained in this Agreement, in accordance with Section 1004(e) of the Act, an agreement of merger or consolidation approved by the Members as required by this Agreement may effect (a) amendments to this Agreement contained in the agreement of merger or consolidation or necessitated thereby or (b) the adoption of a new operating agreement for the Company if it is the surviving or resulting entity, in each case without further action by the Members.

11.6    Execution of Additional Instruments. Each Member hereby agrees to execute such other and further documents and instruments, including, without limitation, statements of their Interests and powers of attorney, as necessary to comply with applicable law or otherwise as reasonably requested by the Managers.

11.7    Construction. Whenever the singular number is used in this Agreement and when required by the context, the same shall include the plural and vice versa, and the neuter gender shall include the feminine and masculine genders and vice versa.

11.8    Headings. The headings in this Agreement are for convenience only and are in no way intended to describe, interpret, define or limit the scope, extent or intent of this Agreement or any of its provisions.

11.9    Waivers; Rights and Remedies Cumulative. The failure of any party to pursue any remedy for breach, or to insist upon the strict performance, of any covenant or condition contained in this Agreement shall not constitute a waiver of any such right with respect to any subsequent breach. Except as otherwise expressly set forth herein, rights and remedies under this Agreement are cumulative, and the pursuit of any one right or remedy by any party shall not preclude, or constitute a waiver of, the right to pursue any or all other remedies. All rights and remedies provided under this Agreement are in addition to any other rights the parties may have by law, in equity or otherwise.

11.10    Severability. If any provision, or portion thereof, of this Agreement, or its application to any Person or circumstance, shall be invalid, illegal or unenforceable to any extent, the remainder of this Agreement, such provision and their application shall not be affected thereby, but shall be interpreted without such unenforceable provision or portion thereof so as to give effect, insofar as is possible, to the original intent of the parties, and shall otherwise be enforceable to the fullest extent permitted by law.

11.11    Successors and Assigns. All of the covenants, terms, provisions and agreements contained in this Agreement shall be binding upon, and inure to the benefit of, the parties hereto and, to the extent permitted by this Agreement, their respective heirs, legal representatives, successors and permitted assigns.

11.12    Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

11.17    Entire Agreement. This Agreement, and the Articles of Organization, embody the entire understanding and agreement between the Members concerning the subject matter hereof and supersede any and all prior negotiations, understandings or agreements with respect thereto..}

IN WITNESS WHEREOF, the undersigned have executed this Operating Agreement as of the date first above written.

Yisroel Herbst

By:    _____

Name: Yisroel Herbst

Title: Member

## Exhibit A

| Member | Initial Capital Contribution | Percentage Interest |
|---|---|---|
| Yisroel Herbst | $1.00 | 100% |

**OptimumBank**    **COMMERCIAL CHECKING DEPOSIT**

DATE _03/10/2021_

NAME   HT BAR CAPITAL LLC

ADDRESS

ID                    APPROVAL

SIGNATURE

DEPOSITS MAY NOT BE AVAILABLE FOR IMMEDIATE WITHDRAWAL

CASH ▶

C
H
E
C
K
S
OR TOTAL FROM OTHER SIDE
SUB TOTAL ▶

LESS CASH ▶
RECEIVED

NET
DEPOSIT        10000

2968

⑆5300⑈1000⑆                    60

# OptimumBank

---

02/10/2021

Hi Bar Capital LLC
1825 65th Street Suite 300
Brooklyn NY 11204

Dear Yisroel,

Thank you for allowing OptimumBank to help you with your recent account opening. We are committed to providing our customers with the highest level of service and the most innovative banking products possible.

We are very glad you chose us as your financial institution and hope you will take advantage of our wide variety of checking, savings, and commercial products, all designed to meet your specific needs.

For more detailed information about any of our products or services, please refer to our website, www.OptimumBank.com, or visit any of our convenient locations. You may contact us by phone at 954-900-2800.

Please do not hesitate to contact me directly, should you have any questions. We will contact you in the very near future to ensure you are completely satisfied with the services you have received thus far.

Respectfully,

Giovanni Cumberbatch
Relationship Specialist
Phone 954-900-2846
gcumberbatch@optimumbank.com

---

Inst: 051        Branch: 003        Window Machine: 002        Teller: 00032        Time: Thu Feb 25 13:26:57 2021

**HI BAR CAPITAL**          Account Number    [redacted] 2968          Officer Code

| Field | Description | Value | I/D | Field | Description | Value | I/D |
|---|---|---|---|---|---|---|---|
| 714 | ATM/POS OD OPTION | 2 | ☐ ∨ | 000 | | | ☐ ∨ |
| 000 | | | ☐ ∨ | 000 | | | ☐ ∨ |
| 000 | | | ☐ ∨ | 000 | | | ☐ ∨ |
| 000 | | | ☐ ∨ | 000 | | | ☐ ∨ |
| 000 | | | ☐ ∨ | 000 | | | ☐ ∨ |
| 000 | | | ☐ ∨ | 000 | | | ☐ ∨ |
| 000 | | | ☐ ∨ | 000 | | | ☐ ∨ |
| 000 | | | ☐ ∨ | 000 | | | ☐ ∨ |
| 000 | | | ☐ ∨ | 000 | | | ☐ ∨ |
| 000 | | | ☐ ∨ | 000 | | | ☐ ∨ |
| 000 | | | ☐ ∨ | 000 | | | ☐ ∨ |
| 000 | | | ☐ ∨ | 000 | | | ☐ ∨ |
| 000 | | | ☐ ∨ | 000 | | | ☐ ∨ |
| 000 | | | ☐ ∨ | 000 | | | ☐ ∨ |
| 000 | | | ☐ ∨ | 000 | | | ☐ ∨ |

**Next Profile**    2 ∨    **Next Account Number**    [redacted] 2968

Inquire | Update | Reset