UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In re:

EXCELL AUTO GROUP, INC.

     Debtor.

_____/

NICOLE TESTA MEHDIPOUR,
as Chapter 7 Trustee for Excell Auto Group, Inc.

     Plaintiff,

v.

HI BAR CAPITAL, LLC, *et al.*,

     Defendant(s).

_____/

Case No.: 22-12790-EPK
Chapter 7

Adv. Pro. No. 22-01132-EPK

**PLAINTIFF'S RESPONSE TO HI BAR DEFENDANTS'
STATEMENT OF MATERIAL FACTS**

Nicole Testa Mehdipour, Trustee and Plaintiff in this adversary proceeding files this Response to *Hi Bar Defendants' Statement of Material Facts* [ECF No. 167] (the "**Hi Bar SMF**") and states:

1. Undisputed.

2. Disputed. The written document is titled as a "Revenue Purchase Agreement" and is dated October 27, 2021 (the "**First Hi Bar Contract**"). In the Hi Bar SMF, Hi Bar defines "Obligors" as "Excell Auto Group and a number of other related entities identified in that Agreement." Hi Bar SMF, p. 1, ¶ 2. The First Hi Bar Contract defines the singular noun "Merchant" collectively as "EXCELL AUTO GROUP, INC. **AND** ALL ENTITIES LISTED ON THE "EXHIBIT A" Ex. 1, p. 1 (emphasis added). The Plaintiff treats "Obligors" the same as

1

"Merchant."  However, neither Scott Zankl or Kristen Zank had authority to bind the following entities to the First Hi Bar Contract:

a.   At all times relevant, Excell Auto Sport and Service, Inc. was a Florida corporation, in which Scott Zankl held only 25% of the stock interest and was listed as vice president. Neither Scott nor Kristen Zankl had authority to enter into the First Hi Bar Contract on behalf of Excell Auto Sport & Service, Inc.

b.   Automotive Service, Inc. was a Florida corporation which was dissolved in March of 2017.  Neither Scott nor Kristen Zankl had authority to enter into the First Hi Bar Contract on behalf of Automotive Service, Inc.

c.   Miss Kris, LLC was a Florida limited liability company and was dissolved in June of 2009.

d.   KZ Consultants, Inc. was a Florida corporation which dissolved in September of 2020.

e.   Dealer Souq USA, LLC was a Florida limited liability company which was dissolved in June of 2017.

Furthermore, Kristen Zankl's electronic signature was not affixed to the First Hi Bar Contract until October 28, 2021. Ex. 1, p.15. There is a dispute about whether Kristen Zankl actually signed or authorized her signature to be affixed to the First Hi Bar Contract.  Scott Zankl did not sign the First Hi Bar Contract until November 1, 2021. *Id.*. No one from Hi Bar countersigned the First Hi Bar Contract. Ex. 1, generally.  On November 1, 2021, Spin first wired $2,114,312.50 to Hi Bar at 3:22 p.m. purportedly as a loan to Hi Bar. Ex. 2[1], pp. 1-2. Forty-four minutes later, at 4:06 p.m.,

---

[1] Ex. 2 is being filed under seal pursuant to a confidentiality agreement with TD Bank, N.A., and a separate Motion will be filed with the Court to determine whether the Ex. 2 and all documents produced by TD Bank, N.A. should have been marked confidential and to unseal Ex. 2.

Hi Bar wired back to Spin $2,114,312.50, purportedly as the funding of the First Hi Bar Contract. Ex. 2. "[A]cceptance and performance" of the First Hi Bar Contract by Hi Bar is conditioned on Hi Bar paying the "Purchase Price." Ex. 1, p. 1. Hi Bar did not have $2,114,312.50 to fund the First Hi Bar Contract without Spin providing the funds that were sent right back. Ex. 3.

3. Disputed as to the characterization of the First Hi Bar Contract. The First Hi Bar Contract purports to purchase $3,177,880.00 of Future Receipts for $2,120,00.00, however, the First Hi Bar Contract is a loan and nothing was purchased.

4. Disputed. The First Hi Bar Contract speaks for itself.

5. Disputed. The First Hi Bar Contract speaks for itself.

6. Disputed. The Plaintiff treats "Obligors" to mean "Merchants" in the First Hi Bar Contract, and as set forth in Paragraph 2 above, neither Scott Zankl nor Kristen Zankl had the authority to bind the certain of the non-Debtor entities included in the term "Merchants" in the First Hi Bar Contract.

7. Disputed. Spin Capital, LLC and Hi Bar Capital, LLC, appear to be two distinct legal entities. However, "control" is a legal conclusion over which this Court makes the determination. During his deposition Yisroel Herbst, the owner of Hi Bar Capital, ¶ 1, testified that Hi Bar was operated informally amongst a tight-knit group of individuals, including Lubin, who made decisions regarding funding deals and other matters in the operations of Hi Bar, and when questioned about how Hi Bar got involved with the Debtor, Y. Herbst stated, he had heard about Excell from Yoel Getter and Josh Lubin, and that "originally [Hi Bar] joined the deal on the outside and then eventually [Hi Bar] took over the deal, as far as I remember." Ex. 11 (Y. Herbst Dep. Tr., p. 70/Line 2 – p.85/Line 9, May 7, 2024). Although evasive, Y. Herbst also testified that Lubin had authority to collect on the Hi Bar Loan, short of physical harm. Ex. 11 (Y. Herbst Dep.

Tr., p. 205/Line 1- p.209/Line 9, May 7, 2024) and Ex. 12 (Y. Herbst Dep. Tr., p. 91/Line17 – p.94/Line 4, May, 28, 2024).

8.      Undisputed.

9.      Disputed.  "Obligors" is a defined by Hi Bar to have the same meaning as "Merchant" in the First Hi Bar Contract.  The Hi Bar Transfer Agreement is a document titled "Hi Bar Capital Balance Transfer Agreement," dated October 27, 2021, and is purported to be electronically signed by Kristen Zankl, individually and on behalf of Excell Auto Group, Inc. only, on October 28, 2021, and electronically signed by Scot Zankl on November 1, 2021. Ex. 1, p. 15. The Hi Bar Transfer Agreement does not reference any of the other non-debtor entities that purport to make up the "Merchant" in the First Hi Bar Contract or Third Spin Contract. Ex. 1 and Ex. 5, pp. 1-3.

10.     Disputed.  On November 1, 2021, Spin first wired $2,114,312.50 to Hi Bar at 3:22 p.m. Forty-four minutes later, at 4:06 p.m., Hi Bar wired back to Spin $2,114,312.50.  Hi Bar did not otherwise have the $2,114,312.50 in its account on November 1, 2021, to fund the First Hi Bar Contract. Ex. 3, p 4.

11.     Disputed and paragraph 11 is not a factual allegation but a legal conclusion.  The First Hi Bar Contract is a form contract Hi Bar requires to be used. Ex. 1, pp. 1- 8 and 13-14 ("Property of Hi Bar Capital"). The Reconciliation Provision and Remittance Adjustment Provision are specifically conditioned on there not being an "Event of Default." Ex. 1, p. 2 §§ 1.3 and 1.4.  Hi Bar knew the Debtor obtained a secured loan from Wing Lake encumbering all the assets of the Debtor, putting the Merchant in immediate default of the First Hi Bar Contract because Merchant represented it had free and clear title to the Receipts and that Merchant was not violating any other agreement by entering the First Hi Bar Contract. Ex. 1, p. 3, § 2.10, Ex. 13 (A. Lubin

4

Dep. Tr., p. 126/Line 4 – p.127/Line 9, Mar. 15, 2024).  Ex 3, pp. 75-76, ¶¶ 502-508, and pp. 79-99, ¶¶ 525-664, and Ex. 11 (Y. Herbst Dep. Tr., p. 70/Line 2 – p.85/Line 9, May 7, 2024).  Another default is if the Merchant goes out of business, Ex. 1, p. 2, § 1.12(d), and with "Merchant" defined to include Automotive Service, Inc., Miss Kris, LLC, KZ Consultants, Inc., and Dealer Souq USA, LLC, each of which was out of business prior to the First Hi Bar Contract, putting the collective "Merchant" in immediate default.  Furthermore, the Merchant, including the Debtor, had no enforcement mechanism to enforce any provision of the First Hi Bar Contract, which also conditioned reconciliation and adjustment on the Merchant delivering specific documents with the request for either and permitting Hi Bar to request "additional reasonable documents," which is not defined and left entirely to the sole and exclusive discretion of Hi Bar to determine. Ex. 1, p. 2 §§ 1.3 and 1.4.

12.     Undisputed.

13.     Disputed.  If the Court finds that the First Hi Bar Contract was void, with the principal and interest forfeited, then there could be no default.  Otherwise, as set forth in paragraph 11 above, several "Events of Default" are immediately triggered upon the First Hi Bar Contract becoming effective.

14.     Disputed. There is a document titled Settlement Agreement dated December 19, 2021, which is purported to be between Hi Bar and the Merchant, however, as set forth in paragraph 2, above, neither Scott nor Kristen Zankl had authority to sign on behalf of some of the "Merchant" entities, including those entities that had been dissolved prior to entering the First Settlement Agreement.

15.     Disputed.  The document speaks for itself.

16.     Disputed.  The documents speak for themselves.

17. Disputed. Again, the statement is a general statement which does not identify any purported default.

18. Disputed.

19. Disputed. There is a purported settlement agreement, dated February 1, 2022, between Hi Bar and a list of entities, including the Debtor and the non-Debtor entities. Kristen Zankl did not sign the Second Settlement Agreement nor did Kristen Zankl authorize Scott Zankl to sign on her behalf.

20. Disputed.

21. Undisputed, except the correct date is November 1, 2021.

22. Undisputed.

23. Undisputed.

**Additional Material Undisputed Material Facts**

**A. The Chronology of the First Hi Bar Contract and HI Bar Transfer Agreement**

24. The First Hi Bar Contract, Hi Bar Capital Prepayment Discount Addendum, and Hi Bar Transfer Agreement, were sent by Hi Bar to Scott and Kristen Zankl in a single, DocuSign Envelope, Envelope Id: CCF1032FABA743AEA1DBE74E050DF9DC (the "**Envelope**"). *See* Composite Ex. 1, pp. 1-14 (top left corner of page) and p. 15 (Certificate of Completion).

25. The applicable Time Zone for determining when each task was completed is "Pacific Time (US & Canada)." Ex. 1, p. 15. Pacific Time is three hours behind East Coast Time (U.S. & Canada).

26. An electronic signature for Kristen Zankl was added to each of the documents in the Envelope on 10/20/2021 at 4:11:12 AM (Pacific Time) or 7:11:12 AM (Eastern Time). Ex. 1, p. 15.

27.     An electronic signature for Scott Zankl was added to each of the documents in the Envelope on 11/1/2021 at 11:39:35 AM (Pacific Time) or 2:39:35 PM (Eastern Time). Ex. 1, p. 15.

28.     Approximately forty-two minutes after Scott Zankl signed the Envelope, at 3:22 p.m., Spin wired $2,114,312.50 to Hi Bar.  Ex. 2.

29.     Forty-four minutes later, at 4:06 p.m., Hi Bar wired back to Spin $2,114,312.50. Ex. 2

30.     On November 1, 2021, Hi Bar did not have the $2,114,312.50 to fund the First Hi Bar Contract in its account without Spin advancing the funds. Ex. 3.

31.     The First Hi Bar Contract reads: "[Hi Bar's] payment of the Purchase Price shall be deemed the acceptance and performance by [Hi Bar] of this Agreement." Ex. 1, p. 1.

32.     Seven minutes after Hi Bar wired back the $2,114,312.50 to fund the First Hi Bar Contract, at 1:13:20 PM (Pacific Time) or 4:13:20 PM (Eastern Time) Lubin executed the Wing Lake Assignment Document.  Ex. 4, p. 6.

33.     The Hi Bar Transfer Agreement is a document titled "Hi Bar Capital Balance Transfer Agreement," dated October 27, 2021, and is purported to be electronically signed by Kristen Zankl, individually and on behalf of Excell Auto Group, Inc. only, on October 28, 2021, and electronically signed by Scot Zankl on November 1, 2021. Ex. 1, p. 15.

34.     The Hi Bar Transfer Agreement does not reference any of the other non-debtor entities that purport to make up the "Merchant" in the First Hi Bar Contract or Third Spin Contract Ex. 1, pp. 1, 9-10, and 14 and Ex. 5, pp. 1-3.

Remainder of Page Intentionally Left Blank

7

Respectfully submitted this 6th day of February 2025.

FURR AND COHEN, P.A.
*Special Counsel for Trustee*
2255 Glades Road, Suite 419A
Boca Raton, FL 33431
Telephone: (561) 395-0500
Facsimile: (561) 338-7532

BY:    /s/ *Jason S. Rigoli*
     Alan R. Crane, Esq.
     Florida Bar No.: 0963836
     E-mail: acrane@furrcohen.com
     Jason S. Rigoli, Esq.
     Florida Bar No.: 91990
     E-mail: jrigoli@furrcohen.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via transmission of Notices of Electronic Filing generated by CM/ECF to those parties registered to receive electronic notices of filing in this adversary proceeding.

Dated: February 6, 2025.

By: */s/ Jason S. Rigoli*
    Jason S. Rigoli

8