**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

In re:

        Case No.: 22-12790-EPK

    EXCELL AUTO GROUP, INC.        Chapter 7

    Debtor.
------------------------------------------------------------------- /
NICOLE TESTA MEHDIPOUR, as Chapter 7 Trustee for
Excell Auto Group, Inc.        Adv. Pro. No. 23-01132-EPK

    Plaintiff.

    -v-

HI BAR CAPITAL, LLC, SPIN CAPITAL LLC,
YISROEL HERBST, MORDECHAI DOV BER
HERBST a/k/a MORDI HERBST, AVRUMI LUBIN
a/k/a JOSH LUBIN, FRANKLIN CAPITAL FUNDING,
LLC and FRANKLIN CAPITAL GROUP, LLC d/b/a
WING LAKE CAPITAL,

    Defendants.
------------------------------------------------------------------- /

### RESPONSE TO DEFENDANT AVRUMI LUBIN'S MOTION TO DISQUALIFY MATTHEW P. LETO, ESQ. AND LETO LAW FIRM AS COUNSEL FOR HI-BAR CAPITAL, LLC, MORDECHAI HERBST, AND YISROEL HERBST

Matthew P. Leto, Esq. and Leto Law Firm, counsel to Defendants, Hi-Bar Capital, LLC ("Hi-Bar"), Mordechai Herbst, and Yisroel Herbst, (collectively, "Hi-Bar Defendants"), file the following Response in Opposition to Defendant Avrumi Lubin's Motion to Disqualify [D.E. 231], and state:

### INTRODUCTION

Lubin's motion fails to establish any basis for disqualification in this case. Indeed, Lubin failed to address the majority of the factors set forth in *Prudential Ins. Co. of Am. v. Anodyne, Inc.*, 365 F. Supp. 2d 1232 (S.D. Fla. 2005). Furthermore, as Lubin admits in his motion, he signed an

express conflict waiver at the outset of the representation. In that waiver, Lubin specifically waived the right to seek disqualification of the undersigned counsel. For all of the reasons set forth herein, the motion to disqualify is both factually and legally frivolous and should be summarily denied.

## RELEVANT FACTS

1. On January 28, 2022, Spin Capital, LLC ("Spin") and Hi-Bar Capital, LLC ("Hi Bar") entered into a Common Interest and Joint Litigation Agreement (the "JDA"). The JDA required, among other things, Spin to pay Hi-Bar's legal fees in various legal proceedings. *See* [D.E. 231 at 21-35].

2. In August 2023, Leto Law Firm was retained to represent the Hi Bar Defendants in this lawsuit and a related lawsuit pending in Broward County. On August 1, 2023, Lubin, Spin, Hi-Bar, Mordechai Herbst, and Yisroel Herbst signed the Authority to Represent, by which undersigned counsel agreed to represent Hi-Bar, Mordechai Herbst, and Yisroel Herbst as counsel of record in various legal proceedings pursuant to their JDA. *See* [D.E. 231 at 13-19]. Since communications are privileged when there is a joint defense agreement and because Lubin agreed to pay the legal bills associated with the various lawsuits, Hi Bar, Herbst, Lubin and Spin were all identified as joint clients of the Leto Law Firm. However, the Authority to Represent was clear and unambiguous – Leto Law Firm was "not counsel of record in the case for Spin and Lubin," and would not be appearing on behalf of Spin or Lubin in any legal matter. Instead, Lubin and Spin would have (and have had) separate legal counsel protecting their interests and undertaking the responsibilities associated with the pending lawsuits.

3. Further, given the potential for competing interests that sometimes occur with any joint representation scenario, Hi-Bar, the Herbsts and Lubin expressly waived any conflict of

interest. That waiver, which is in strict compliance with Rule 4-1.7 of the Florida Bar Rules, provides, in full:

> As you know, the Firm represents more than one client in this matter. An undertaking by a lawyer to represent more than one client in the same matter is called a "joint representation." The applicable rules of professional responsibility permit the representation of more than one client in the same matter provided that, among other things, the lawyer reasonably believes that he or she can adequately represent each client's interests competently and diligently and each client provides informed consent in writing to the joint representation. Joint representation is, of course, not mandatory in this matter, and you have the right to retain an attorney other than the Firm as your counsel.
>
> We believe, based on the information furnished to us, that the Clients share a common interest with respect to the Engagement. Based upon the information provided to us about the facts of this matter, there does not appear to be an actual conflict among the Clients. It is possible that, however, that, in the future, your goals, objectives and interests in the Engagement might change and become different from that the other Clients. This creates a potential conflict of interest in the Firm's representation of the Clients now and may create an actual conflict of interest in the future. You are entitled to counsel who does not face either a potential or actual conflict of interest. **Should you wish to retain the Firm, each Client agrees to waive any potential and/or actual conflict of interest which arises from our Firm's joint representation of the other Clients.**
>
> Although we are not currently aware of any actual or reasonably foreseeable adverse effects of joint representation, it is possible that issues may arise in which our representation of you may be materially limited by our representation of the other Clients. And, you acknowledge that it is not possible to predict all of the conflicts which may arise in a matter where multiple clients are being jointly represented. If such circumstances arise, the Firm will evaluate whether continued joint representation is appropriate, as discussed below.
>
> We understand that no Client objects to the Firm representing the other Clients in this matter and that, to the extent that any potential conflict may exist or appear to exist, each Client waives any such conflict. Based on the information provided to us by you, and your expressed desire for joint representation, we have concluded that the Firm may appropriately represent the Clients in this matter at this time. If at any time you have any concerns about the appropriateness of continued joint representation, you should let us know immediately so that we can reevaluate the Firm's continuing joint representation of the Clients. If we become aware of any such circumstances, we will do the same.
>
> **In the event that joint representation is no longer appropriate in the Firm's determination, including because of any adversity, dispute, conflict, or**

**differing interests among the Clients, you agree that the Firm may in its sole discretion withdraw from representing any of the Clients and may in its sole discretion continue to represent the other Clients in the Engagement. In such scenario, each Client agrees not to move to disqualify the Firm from continuing to represent the other Clients in any action related to the Engagement, nor will the client authorize any counsel they retain to move for such disqualification**.

**You also understand that if the Firm were to represent any Client alone in this matter, it would not be able to share the information provided by the Client with anyone except as provided by law**. However, when a law firm jointly represents multiple clients in a single matter, there is no privilege which may be asserted as between the clients.  You understand, therefore, that the Firm may elect, as it deems appropriate, to share information provided by you with the other Clients; but you further understand that the Firm may not necessarily share with you all of the information it receives from any other Client. **You agree that, should the Firm be discharged by you or should the Firm withdraw from representing you under any of the circumstances described in this Engagement Letter, any information previously acquired by the Firm from you may be used by the Firm in furtherance of its continued representation of the other Clients in this matter.**

**Your signature below confirms that you have been given the option to consult with independent counsel concerning the conflict and joint representation issues discussed above and have had adequate time to do so, and further confirms that you waive any actual and/or potential conflicts of interest raised by the Firm's joint representation in this matter.**

*See* [D.E. 231 at 13-15].

4.      As the litigation progressed, Lubin's behavior became more unpredictable and somewhat erratic. Lubin would email and text at all hours of the night making illogical claims. Lubin would also directly email the opposing lawyers and parties.[1] By March 2024, not only was Lubin unilaterally writing emails to the opposing parties and their counsel at all hours of the night, Lubin also stated that he would no longer be paying any invoices for Hi Bar and instructed the

---

[1] To this day, Lubin has continued sending emails to his cast of former lawyers, the parties and their counsel, and various new agencies on almost a daily basis making various threats and other defamatory statements. Since January 6, 2025, Lubin has sent 179 emails that the undersigned has been copied on.

undersigned to deal directly with that entity going forward. Lubin's statements, and the mutual decision to sever any relationship between the undersigned and Lubin, were memorialized in various emails in March 2024. *See* **Exhibit A.**

5.      At that time, Lubin and Spin owed the undersigned more than $75,000.00. When the undersigned continued to demand payment given the amount owed, on March 29, 2024, Lubin finally responded that "Your [sic] not allowed to contact me directly."



6.      After being four months in arrears and after stating he would not pay undersigned counsel's invoices for his representation of Hi Bar, and owing approximately $78,000, on April 2, 2024, undersigned counsel filed suit against Lubin and Spin in state court in Miami-Dade County.[2] That action was assigned Case No. 2024-005793-CA-01.[3]

7.      Obviously, by that point, there was no attorney-client relationship between Lubin, Spin and the undersigned. Due to Lubin's failure to pay legal fees, by letter dated April 3, 2024, Hi Bar also made the decision to terminate the Joint Defense Agreement. A copy of the letter

---

[2] All parties to the state court action were aware of this lawsuit and the Complaint was filed in the record by FVP earlier this year when seeking to compel Lubin's deposition.

[3] On November 5, 2024, the case was jointly dismissed with prejudice pursuant to a written settlement agreement.

terminating the JDA is attached as **Exhibit B.**  Although not an issue in this case, the JDA expressly permits either party to terminate the JDA in their sole discretion. Should that occur (which it did), Hi Bar was entitled to continue pursuing its claims and defenses, which it has done, and Spin could pursue its claims and defenses (which it has).

8.       **Notably, neither party to this case (or any other action) has taken any merits-based or legal position that is adversarial to the other.**  Indeed, Spin has actually *joined* in a motion for summary judgment filed by Hi Bar in this case demonstrating the lack of any conflict in their respective positions.  [D.E. 174].

## MEMORANDUM OF LAW

### I.       Legal Standard

"There is a 'constitutionally based right to counsel of choice' in civil as well as criminal cases, but that right is not absolute." *In re Patrick Power Corp.,* 2007 WL 2883179, at \*1 (Bankr. S.D. Fla. Sept. 26, 2007) (quoting *In re BellSouth Corporation,* 334 F.3d 941, 955 (11th Cir. 2003)). Disqualification of counsel is a harsh and drastic remedy that should be granted only in rare circumstances because it often works a substantial hardship on an innocent third party – the client. *In re Patrick Power Corp.,* 2007 WL 2883179, at \*1; *Alters v. Villoldo*, 230 So. 3d 115, 117 (Fla. 3d DCA 2017); *Great Am. Ins. Co. v. Gen. Contractors & Const. Mgmt., Inc.*, No. 07-21489-CIV, 2008 WL 1994857, at \*2 (S.D. Fla. May 6, 2008).

The party moving to disqualify bears a "heavy" burden of proving the grounds for disqualification. *In re Evergreen Sec., Ltd.*, 363 B.R. 267, 301–02 (Bankr. M.D. Fla. 2007) (citing *Evans v. Artek Sys. Corp.,* 715 F.2d 788, 794 (2d Cir. 1983)). "Disqualification motions are subject to 'careful and exacting' review because of the potential for strategic abuse." *In re Evergreen*, 363 B.R. at 301–02 (quoting *In re American Airlines, Inc.,* 972 F.2d 605, 611 (5th Cir. 1992)). *See also*

*Alters*, 230 So. 3d at 117 ("Motions for disqualification are generally viewed with skepticism because disqualification of counsel impinges on a party's right to employ a lawyer of choice, and such motions are often interposed for tactical purposes."). Disqualification "is never automatic." *Prudential Ins. Co. of Am. v. Anodyne, Inc.*, 365 F. Supp. 2d 1232, 1236 (S.D. Fla. 2005) (quoting *SWS Financial Fund A v. Salomon Bros., Inc.,* 790 F.Supp. 1392, 1400 (N.D.Ill. 1992).

When considering whether to disqualify counsel, courts employ a balancing test. *Prudential Ins. Co. of Am. v. Anodyne, Inc.*, 365 F. Supp. 2d 1232, 1237 (S.D. Fla. 2005) (collecting cases). Courts consider a handful of factors, including the nature of the ethical violation; the prejudice to the parties; the effectiveness of counsel in light of the violations; the public's perception of the profession; and whether or not the attempt to disqualify an attorney is used as a tactical device or a means of harassment. *Id.*

Finally, a motion to disqualify "should be made with reasonable promptness after the party seeking the disqualification learns of the conflict of interest." *Great Am. Ins. Co. v. Gen. Contractors & Const. Mgmt., Inc.*, No. 07-21489-CIV, 2008 WL 1994857, at *2 (S.D. Fla. May 6, 2008) (collecting cases). "The rationale behind this rule is to prevent a litigant from using the motion as a tool to deprive his opponent of counsel of his choice after completing substantial preparation of the case." *Transmark, USA, Inc., v. State Dept. of Insur.,* 631 So.2d 1112, 1116 (Fla. 1st DCA 1994).

### II.     Lubin Failed to Show Why Disqualification is Required.

As the party bearing the "heavy burden" to show why undersigned counsel should be disqualified, Lubin totally failed to discharge his obligation. *In re Evergreen Sec., Ltd.*, 363 B.R. 267, 301–02 (Bankr. M.D. Fla. 2007).

Lubin failed to address four of the five factors in the balancing test articulated in *Prudential Ins. Co. of Am. v. Anodyne, Inc.*, 365 F. Supp. 2d 1232, 1237 (S.D. Fla. 2005). Lubin arguably addressed the first factor – the nature of the ethical violation – but his discussion of this factor is rambling and at times incoherent. Lubin relies largely on the *presumption* of harm to him. *E.g.*, motion at 6-9. In any event, Lubin failed to address the other four factors. Because Lubin failed to meet his burden, the motion should be summarily denied. *See In re Patrick Power Corp.*, No. 06-12423 BKCJKO, 2007 WL 2883179, at *4 (Bankr. S.D. Fla. Sept. 26, 2007) (denying motion to disqualify as legally and factually insufficient). As will be shown below, there is absolutely no basis in fact or in the law to disqualify counsel.

**III.**      **The Balancing Test Factors Demonstrate that there is No Factual or Legal Basis to Disqualify Hi Bar's Counsel.**

According to the balancing test articulated in *Prudential Ins. Co. of Am. v. Anodyne, Inc.*, 365 F. Supp. 2d 1232, 1237 (S.D. Fla. 2005), the relevant factors the court should consider are: the nature of the ethical violation; the prejudice to the parties; the effectiveness of counsel in light of the violations; the public's perception of the profession; and whether or not the attempt to disqualify an attorney is used as a tactical device or a means of harassment. As will be shown below, none of these factors weigh in favor of disqualification.

**1.**      **The nature of the ethical violation**

Here, there has not been any ethical violation, so this factor compels the denial of Lubin's motion.

As set forth above, Lubin is a former client of the undersigned. Therefore, Florida Rule of Professional Conduct 4-1.9 is implicated.[4] Rule 4-1.9 provides:

---

[4] Lubin's references to rule 4-1.7, which governs conflicts of interest vis-à-vis current clients, is puzzling since he and Spin are no longer joint clients pursuant to the JDA. Therefore, Rule 4-1.7

A lawyer who has formerly represented a client in a matter must not afterwards:

(a) represent another person in the same or a substantially related matter in which **that person's interests are materially adverse to the interests of the former client** unless the former client gives informed consent;

(**b**) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known; or

(**c**) reveal information relating to the representation except as these rules would permit or require with respect to a client.

"In order for an attorney to be disqualified under Rule 4–1.9, the moving party must show that '(1) an attorney-client relationship existed, thereby giving rise to an irrefutable presumption that confidences were disclosed during the relationship, and (2) the matter in which the law firm subsequently **represented the interest adverse to the former client** was the same or substantially related to the matter in which it represented the former client.'" *In re Skyway Communications Holding Corp.,* 415 B.R. 859, 865 (Bankr. M.D. Fla. 2009) (quoting *State Farm Mutual Automobile Insurance Company v. K.A.W.,* 575 So.2d 630, 633 (Fla. 1991)).

Lubin fails to coherently explain the "conflict" he claims requires disqualification. Presumably, it is the fact that the JDA was terminated, *see* Motion at 4-5, and Lubin's claim that "once the conflict arose," counsel was required "to seek a waiver of conflict and explain the conflict in detail in seeking the waiver[,]" which he claims counsel failed to do. *Id.* at 8. However, Lubin breached the Common Interest and Joint Litigation Agreement by failing to pay for the costs of litigation pursuant and by terminating the attorney-client relationship with undersigned counsel.

---

does not apply. *See Schulte v. Angus*, 14 So. 3d 1279, 1280-81 (Fla. 3d DCA 2009) (affirming denial of motion to disqualify counsel based on Rule 4-1.7 where petitioner failed to show he was a current client).

*See* [D.E. 231 at 23]. However, the fact that Lubin refuses to pay the legal fees (as he obligated himself in the Common Interest and Joint Litigation Agreement) does not create any conflict.

Furthermore, Rule 4-1.9 requires that Lubin show why the parties are **adverse**. He totally failed to do so, necessitating the denial of his motion. While Lubin and Spin were former joint clients pursuant to the JDA, the undersigned's representation of the Hi Bar Defendants in this case is not adverse to Lubin or Spin. To the contrary, the Hi Bar Defendants and Lubin and Spin have taken entirely consistent positions in this case, which is that their MCA agreements are not loans and are not violative of any applicable usury laws. In fact, the Hi Bar Defendants filed a motion for summary judgment asserting those very arguments. [D.E. 168]. Notably, both Lubin and Spin filed a joinder to that motion, reflecting their complete alignment with the Hi Bar Defendants' positions. [D.E. 174]. Furthermore, none of these parties has asserted any cross-claims against each other. Under these circumstances, the motion to disqualify should be denied. *Suchite v. Kleppin*, 784 F. Supp. 2d 1343, 1347 (S.D. Fla. 2011) (denying motion to disqualify based on Rule 4-1.7 where counsel obtained the informed written consent of clients and finding parties were not necessarily adverse); *In re Niroomand*, No. 09-12141-BKC-AJC, 2013 WL 414446, at *3 (Bankr. S.D. Fla. Jan. 31, 2013) (Cristol, J.) (denying motion to disqualify based on Rule 4-1.7 and finding the parties' positions were "clearly aligned and not adverse.").

Moreover, even if these parties took positions adverse to each other (they have not), Rule 4-1.9 does not require disqualification "if the former client gives informed consent," *which occurred here*.  The Authority to Represent provides:

> **In the event that joint representation is no longer appropriate in the Firm's determination, including because of any adversity, dispute, conflict, or differing interests among the Clients, <u>you agree that the Firm may in its sole discretion withdraw from representing any of the Clients and may in its sole discretion continue to represent the other Clients in the Engagement. In such scenario, each Client agrees not to move to disqualify the Firm from</u>**

**continuing to represent the other Clients in any action related to the Engagement, nor will the client authorize any counsel they retain to move for such disqualification.**

…

**Your signature below confirms** that you have been given the option to consult with independent counsel concerning the conflict and joint representation issues discussed above and have had adequate time to do so, and further confirms **that you waive any actual and/or potential conflicts of interest raised by the Firm's joint representation in this matter.**

[D.E. 231 at 14] (emphasis supplied).

Lubin conveniently ignores the fact that he and Spin each signed a conflict waiver before the representation began. [D.E. 231 at 13-19]. He also ignores the fact that he agreed not to seek disqualification. Thus, the conflict waiver demonstrates there is simply no merit to his argument that he did not give informed consent to counsel's continued representation of the Hi Bar Defendants. Disqualification based on Rule 4-1.9 should be denied.

Lubin's inclusion of authority applicable to current clients (thus implicating Rule 4-1.7) is nonsensical, *see* Motion at 6-8, since Lubin is a former client based on his refusal to pay the Hi Bar Defendants' attorneys' fees (as it was contractually obligated) and terminate the attorney-client relationship with undersigned counsel. Even if, *arguendo*, Rule 4-1.7 applied, a case Lubin cites is instructive. In *Great Am. Ins. Co. v. Gen. Contractors & Const. Mgmt., Inc.*, No. 07-21489-CIV, 2008 WL 1994857, at *1–2 (S.D. Fla. May 6, 2008), the law firm represented a defendant in the lawsuit and also represented the plaintiff in unelated litigation. At the outset, the court explained: "The two basic purposes of Rule 4-1.7 are (1) to protect confidences that a client may have shared with his attorney and (2) to safeguard loyalty as a feature of the attorney-client relationship." *Id*. at *1. In denying the motion to disqualify, the court highlighted the following factors: the law firm only represented the plaintiff because it was a surety to one of the law firm's

subcontractor clients; the law firm submitted affidavits averring the plaintiff never shared any confidences with the law firm in connection with the firm's representation of plaintiff; and the plaintiff had other counsel protecting its interests in the lawsuit. *Id.* at *2. Here, client confidences are protected by Paragraph Eight of the JDA, which governs the disclosure of "Common Interest Materials." *See* [D.E. 231 at 27]. Specifically, the parties agreed "that they will not disclose Common Interest Materials received from each other to anyone except, as applicable, their respective attorneys, representatives, employees, or agents involved in the Litigation Claims, without first obtaining the express consent of one or more of the parties who produced such Common Interest Materials." *Id.* at ¶ 8(a)[5]. And, even though Lubin breached the JDA, the parties must still keep the Common Interest materials confidential. *See* [D.E. 231 at 28 ("Withdrawal from this Agreement shall not terminate Parties' mutual obligation to hold confidential all Common Interest Materials previously exchanged among the same."). And, as in *Great Am. Ins.*, undersigned counsel was never counsel of record for Lubin or Spin in this or the state court action, and Lubin and Spin have always had their own counsel protecting their interests.[6]

## 2. **The prejudice to the parties**

The Hi Bar Defendants have been represented by undersigned counsel in this action as well as the state court lawsuit for the past eighteen months, since August 1, 2023. The pretrial conference in this action is scheduled for June 11, 2025. [D.E. 203 at 2]. The trial in state court action is anticipated to take place in September 2025. The Hi Bar Defendants would be severely

---

[5] It is important to note that Lubin has stated several times in this Court that it is his intention to waive his attorney-client privilege. Moreover, Lubin continuously copies all parties and their counsel on emails his own lawyers. Therefore, Lubin's position that the undersigned has "confidential information" that needs protection is baffling.

[6] During this lawsuit, Lubin and/or Spin have been represented by Jacob Nemon, Brian Dervishi, Oliver Griffin, Bernard Egozi, Hilda Piloto, and Marko Cerenko.

prejudiced if they had to obtain new counsel in two lawsuits after a year and a half of representation. *See, e.g.*, *Great Am. Ins. Co. v. Gen. Contractors & Const. Mgmt., Inc.*, No. 07-21489-CIV, 2008 WL 1994857, at *2 (S.D. Fla. May 6, 2008).

On the other hand, Lubin has not shown any prejudice he would suffer if undersigned counsel continued to represent the Hi Bar Defendants.

### 3. The effectiveness of counsel in light of the violations

This factor does not apply because undersigned counsel no longer represents Lubin. In any event, Lubin has not articulated any argument on this point.

### 4. The public's perception of the profession

This factor also weighs in favor of the undersigned. Here, counsel complied with the Florida Rules of Professional Conduct and obtained a conflict waiver in advance. Therefore, the public's perception of the legal profession will not be negatively affected by the denial of Lubin's motion.

### 5. Whether or not the attempt to disqualify an attorney is used as a tactical device or a means of harassment.

Lubin's conduct plainly appears designed to harass counsel and the Hi Bar Defendants. For nearly a full year, Lubin has sent hundreds of emails and text messages to counsel threatening to take action against him and committing defamation *per se* by calling him a "criminal" – which is absolutely false and defamatory. Unsurprisingly, none of Lubin's attorneys ever filed a motion to disqualify because the engagement letter provides that Lubin would not file such a motion and, moreover, no legal basis exists. [D.E. 231 at 14]. Thus, the motion Lubin has now filed *pro se* appears to be the latest salvo in a year-long attack on counsel.

Finally, Lubin waited nearly twelve months to file his motion to disqualify, which makes it untimely. Courts have found that a delay of nine months between learning of the basis to disqualify and the filing of the motion is unreasonable and constitutes a waiver. *Info. Sys. Associates, Inc. v. Phuture World, Inc.*, 106 So. 3d 982, 985 (Fla. 4th DCA 2013); *Great Am. Ins. Co. v. Gen. Contractors & Const. Mgmt., Inc.*, No. 07-21489-CIV, 2008 WL 1994857, at *2 (S.D. Fla. May 6, 2008). *See also Transmark, U.S.A., Inc. v. State, Dept. of Ins.*, 631 So. 2d 1112, 1116 (Fla. 1st DCA 1994) (ten month delay in filing motion constituted waiver). During the past year, the Hi Bar Defendants have engaged in substantial discovery and moved for summary judgment. [D.E. 168].  The Hi Bar Defendants have substantially prepared the case for trial and are in the process of finalizing all briefing related to the various summary judgment motions. Lubin's untimely motion to disqualify would deprive the Hi Bar Defendants of counsel of their choice after completing substantial preparation of the case. It is "an inescapable fact that granting this Motion would have the exact effect of which the *Transmark* court warned." *Great Am. Ins. Co. v. Gen. Contractors & Const. Mgmt., Inc.*, No. 07-21489-CIV, 2008 WL 1994857, at *2 (S.D. Fla. May 6, 2008); *Transmark*, 631 So. 2d at 1116 ("The rationale behind this rule is to prevent a litigant from using the motion as a tool to deprive his opponent of counsel of his choice after completing substantial preparation of the case."). This factor actively militates in favor of denying the motion to disqualify.

The undersigned takes his reputation and professional responsibility to his clients and this Court seriously. Leto Law Firm has complied with all of the applicable rules and no basis exists for disqualification.

**IV.**  **The Court Should Require Lubin and the Attorney Who Ghostwrote Lubin's Motion to Comply with Rule 4-1.2 and Rule 11 by Disclosing Their Participation.**

It is well-settled that where an attorney represents a client, that attorney must file a notice of appearance and must sign every document filed on behalf of the client. Fla. R. Gen Prac. & Jud. Adm. 2.515(a), (e); Fed. R. Civ. P. 11(a). The Rules Regulating The Florida Bar require that an attorney who is ghostwriting any document filed with a court ensure the document states: "Prepared with the assistance of counsel". Specifically, Rule 4-1.2 states:

> If the lawyer assists a pro se litigant by drafting any document to be submitted to a court, the lawyer is not obligated to sign the document. However, the lawyer must indicate "Prepared with the assistance of counsel" on the document to avoid misleading the court, which otherwise might be under the impression that the person, who appears to be proceeding pro se, has received no assistance from a lawyer.

*See also In re Hood*, 727 F.3d 1360, 1364 (11th Cir. 2013) (same).

Lubin, a non-lawyer, is ostensibly proceeding *pro se*. However, he has previously testified he suffers from dyslexia. Therefore, the six-page memorandum of law included in his motion suggests that Lubin has employed another attorney to ghostwrite the motion without disclosing his/her role, in violating of Rule Regulating The Florida Bar 4-1.2 and Fed. R. Civ. P. 11. Specifically, the motion does not state that it was "prepared with the assistance of counsel". It would be improper for Lubin to obtain the indulgence of the Court as a *pro se* litigant while actually having his motions drafted – but not signed – by an attorney. Fla. R. Gen Prac. & Jud. Adm. 2.515(a), (e); *Duran v. Carris*, 238 F.3d 1268, 1273 (10th Cir. 2001) ("We hold today, however, that any ghostwriting of an otherwise pro se brief must be acknowledged by the signature of the attorney involved."); *Hammett v. Sec'y, Dep't of Homeland Sec.*, No. 609CV397ORL31KRS, 2011 WL 13175525, at *1 n.1 (M.D. Fla. Apr. 28, 2011), *aff'd,* 488 Fed. Appx. 405 (11th Cir. 2012) ("An attorney who ghost-writes pleadings for a purportedly *pro se* litigant engages in unethical

behavior and violates Fed. R. Civ. P. 11."); *Deforest v. Johnny Chisholm Glob. Events, LLC*, No. 3:08CV498MCREMT, 2010 WL 1792094, at *5 n.9 (N.D. Fla. May 4, 2010), *report and recommendation adopted,* No. 3:08CV498/MCR/EMT, 2010 WL 2278356 (N.D. Fla. June 4, 2010) ("Any counsel hired by Chisholm in connection with proceedings before the court, whether to represent him on a 'piecemeal' basis or otherwise, should conduct him or herself appropriately, *i.e.,* by entering an appearance."). This arrangement would allow this unnamed attorney to "guide the course of the litigation with an unseen hand." *Duran v. Carris*, 238 F.3d 1268, 1271–72 (10th Cir. 2001) ("This court is concerned with attorneys who 'author[ ] pleadings and necessarily guide[ ] the course of the litigation with an unseen hand.'"). It would also shield this unnamed attorney "from responsibility and accountability for his actions and counsel." *Id. See also Ellis v. State of Me.*, 448 F.2d 1325, 1328 (1st Cir. 1971).

Lubin should be required to comply with the Federal Rules of Civil Procedure and the attorney ghostwriting his motions should comply with the Florida Bar Rules by either filing a notice of appearance and signing the motions s/he is drafting on Lubin's behalf. At a minimum, Lubin should be ordered to disclose that his legal submissions have been "prepared with the assistance of counsel." Fla. Bar Rule 4-1.2.

## CONCLUSION

Based on the foregoing, Matthew P. Leto and Leto Law Firm respectfully request this Court deny Defendant Avrumi Lubin's Motion to Disqualify [D.E. 231].

Respectfully submitted,

LETO LAW FIRM
201 S. Biscayne Blvd.
Suite 2700
Miami, Florida 33131
Tel.     305-341-3155
Fax:    305-397-1168

*/s/ Matthew P. Leto*
MATTHEW P. LETO
Florida Bar No.: 014504
mleto@letolawfirm.com
kzelaya@letolawfirm.com
pleadings@letolawfirm.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 5, 2025, we electronically filed the foregoing document with the Clerk of the Court and provided service to all counsel of record using CM/ECF.

*/s/ Matthew P. Leto*
MATTHEW P. LETO