**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

In re:

        EXCELL AUTO GROUP, INC.

           Debtor.

Case No.: 22-12790-EPK
Chapter 7

-------------------------------------------------------------------- /

NICOLE TESTA MEHDIPOUR, as Chapter 7 Trustee for
Excell Auto Group, Inc.

           Plaintiff.

      -v-

Adv. Pro. No. 23-01132-EPK

HI BAR CAPITAL, LLC, SPIN CAPITAL LLC, YISROEL
HERBST, MORDECHAI DOV BER HERBST a/k/a MORDI
HERBST, AVRUMI LUBIN a/k/a JOSH LUBIN, FRANKLIN
CAPITAL FUNDING, LLC and FRANKLIN CAPITAL
GROUP, LLC d/b/a WING LAKE CAPITAL,

           Defendants.

-------------------------------------------------------------------- /

### HI-BAR CAPITAL, LLC'S RESPONSE TO
### TRUSTEE'S STATEMENT OF MATERIAL FACTS

Defendants, Hi-Bar Capital, LLC ("Hi-Bar"), files the following Response to Trustee,

Nicole Testa Mehdipour's Material Facts [D.E. 184]:

1.     Undisputed.

2.     Undisputed.

3.     Undisputed.

4.     Undisputed.

5.     Undisputed.

6.     Undisputed.

7.     Undisputed.

8.     Undisputed.

1

9.      Undisputed.

10.     Undisputed.

11.     Disputed. While the July 8, 2021 discussion mentions the ability to proceed without financials, less than two months earlier, and on May 27, 20221, Zankl provided Lubin with financial records.  [D.E. 184-3 at pgs. 5-6].

12.     Undisputed.

13.     Disputed. The Second Spin Contract includes a mandatory reconciliation and adjustment provision wherein the Debtor is entitled to a return of money previously paid in excess of the specified percentage by way of the estimated remittances (under the reconciliation provision), and a prospective, downward adjustment of the estimated remittance to more closely reflect the specified percentage (under the adjustment provision).  [D.E. 184-7 at ¶ ¶ 1.3 and 1.4].

15.     Undisputed.

16.     Undisputed as to the terms. Disputed that that purchase price would be paid off in 19.8 weeks. The Third Spin Contract includes a mandatory reconciliation and adjustment provision wherein the Debtor is entitled to a return of money previously paid in excess of the specified percentage by way of the estimated remittances (under the reconciliation provision), and a prospective, downward adjustment of the estimated remittance to more closely reflect the specified percentage (under the adjustment provision).  [D.E. 184-10 at ¶ ¶ 1.3 and 1.4].

17.     Disputed. Exhibit 12 does not reference Balance Transfer Agreement dated 8/31/21.  Instead, it references a payoff letter.

18.     Undisputed.

19.     Objection.  This statement is not supported by any cited evidence.

2

20. Disputed. Pursuant to the attached text message exchange with Josh Lubin, Scott Zankl stated that the signature on this March 19, 2022 affidavit is not authentic. *See* Exhibit "1."

21. Undisputed.

22. Disputed. Pursuant to the attached text message exchange with Josh Lubin, Scott Zankl stated that the signature on this March 19, 2022 affidavit is not authentic. *See* Exhibit "1." Further, the Wing Lake refinance was only insufficient due to an apparent "cash collateral requirement of $1,800,000. [D.E. 184-14].

23. Disputed. Pursuant to the attached text message exchange with Josh Lubin, Scott Zankl stated that the signature on this March 19, 2022 affidavit is not authentic. *See* Exhibit "1." Moreover, the text message cited by Plaintiff does not mention the Third Hi Bar Contract. Instead, Zankl is asking to move a balance to another entity owned by Zankl. [D.E. 184-3 at pg. 79.] Finally, Hi Bar objects to the use of an "opinion" from a State Court Proceeding in Michigan as this constitutes hearsay. (Ex. 43).  "A court judgment is hearsay 'to the extent that it is offered to prove the truth of the matters asserted in the judgment.' " *BDO Seidman, LLP v. Banco Espirito Santo Intern.*, 38 So. 3d 874, 880 (Fla. 3d DCA 2010) *citing United States v. Sine,* 493 F.3d 1021, 1036 (9th Cir.2007). "[J]udicial findings of fact 'present a rare case where, by virtue of their having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice.' " *Id. citing Nipper v. Snipes,* 7 F.3d 415, 418 (4th Cir.1993). Moreover, the "findings" were based on the fact that Spin apparently failed to file a timely responsive brief.

24. Undisputed.

25. Disputed. The Wing Lake Assignment states that the "total amount of the outstanding Obligations as of October 21, 2021 is $1.00. Moreover, "Obligations" is a defined term and does not include the Third Spin Contract. [D.E. 184-16]. Further, the Evidence of

3

Assignment specifically defines the "Merchant Agreements" as the First and Second Spin Contract and warrants that Spin is assigning those Documents to Wing Lake. [D.E. 184-16].

26.    Disputed. The cited portion of D.E. 16 does not include that language. Furthermore, Hi Bar objects to the use of an "opinion" from a State Court Proceeding in Michigan as this constitutes hearsay. (Ex. 43). "A court judgment is hearsay 'to the extent that it is offered to prove the truth of the matters asserted in the judgment.' " *BDO Seidman, LLP v. Banco Espirito Santo Intern.*, 38 So. 3d 874, 880 (Fla. 3d DCA 2010) *citing United States v. Sine,* 493 F.3d 1021, 1036 (9th Cir.2007). "[J]udicial findings of fact 'present a rare case where, by virtue of their having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice.' " *Id. citing Nipper v. Snipes,* 7 F.3d 415, 418 (4th Cir.1993). Moreover, the "findings" were based on the fact that Spin apparently failed to file a timely responsive brief.

27.    Disputed. Pursuant to the attached text message exchange with Josh Lubin, Scott Zankl stated that the signature on this March 19, 2022 affidavit is not authentic. *See* Exhibit "1." Furthermore, by the time that Spin signed the Wing Lake Assignment, Hi Bar had paid off Spin and entered into a Revenue Purchase Agreement with the Debtor. [D.E. 184-21].

28.    Disputed. The cited exhibit does not support this fact.

29.    Undisputed.

30.    Disputed. The audit trail reflects that the Transfer Agreement and First Hi Bar Contract were sent on October 27, 2021. Kristen Zankl signed on October 28, 2021 and Scott Zankl signed on November 1, 2021 after it was reset to his email. [D.E. 221-1 at pg. 15]

31.    Disputed. The audit trail reflects that the Transfer Agreement and First Hi Bar Contract were sent on October 27, 2021. Scott Zankl viewed the documents on October 27, 2021, but signed on November 1, 2021 after it was reset to his email. [D.E. 221-1 at pg. 15]

32.     Undisputed. However, for clarification, the additional $5,687.00 is listed as the underwriting fee. [D.E. 184-21].

33.     Disputed. The funds were paid directly to Spin for the benefit of the Debtor. [D.E. 184-26].

34.     Undisputed.

35.     Disputed.  In the email Lubin states that "I never took ownership of Hi Bars obligation." [D.E. 184-23 at pg. 2.]

36.     Hi Bar objects to the use of an "opinion" from a State Court Proceeding in Michigan as this constitutes hearsay. (Ex. 43). "A court judgment is hearsay 'to the extent that it is offered to prove the truth of the matters asserted in the judgment.' " *BDO Seidman, LLP v. Banco Espirito Santo Intern.*, 38 So. 3d 874, 880 (Fla. 3d DCA 2010) *citing United States v. Sine*, 493 F.3d 1021, 1036 (9th Cir.2007). "[J]udicial findings of fact 'present a rare case where, by virtue of their having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice.' " *Id. citing Nipper v. Snipes*, 7 F.3d 415, 418 (4th Cir.1993). Moreover, the "findings" were based on the fact that Spin apparently failed to file a timely responsive brief.

37.     Undisputed.

38.     Undisputed.

39.     Undisputed.

40.     Disputed. Hi Bar's obligation is a separate obligation. [D.E. 221-1].  Hi Bar advanced $2,114,000 for the benefit of the Debtor. [D.E. 221-1 at pg.12]. Finally, Excell's bank records demonstrate that its funds were commingled with non-debtor parties and further, that the funds paid to Hi Bar simply passed through Excell's account, but were truly funds of Karma of

Palm Beach and/or Karma of Broward, both of which are identified as Merchants under the First Hi Bar Contract.

    a.    Payment 1 was made on November 15, 2021 in the amount of $300,000 from an Excell account ending in 6901. *See* Exhibit "2." However, on November 12, 2021, $300,000 was deposited into that account from an account ending in 8711, which is a Karma account. *See Id.* at Exhibit "3," which is a sworn declaration from Scott Zankl identifying 8711 as a Karma account.

    b.    Payment 2 was made on December 17, 2021 in the amount of $200,000 from an Excell account ending in 6901. *See* Exhibit "4." However, that same day, $200,000 was deposited into that account from an account ending in 6603, which is a Karma account. *See Id.* and Exhibit "3," which is a Declaration from Scott Zankl identifying 6603 as a Karma account.

    c.    Payment 3 was made on December 20, 2021 in the amount of $200,000 from an Excell account ending in 6901. *See* Exhibit "4." However, that same day, $200,000 was deposited into that account from an account ending in 6603, which is a Karma account. *See Id.* and Exhibit "3," which is an affidavit from Scott Zankl identifying 6603 as a Karma account.

    d.    Payment 4 was made on January 10, 2022 in the amount of $100,000 from an Excell account ending in 6901. *See* Exhibit "5." However, that same day, $100,000 was deposited into that account from an account ending in 6603, which is a Karma account. *See Id.* and Exhibit "3," which is an affidavit from Scott Zankl identifying 6603 as a Karma account.

    e.    Payment 5 was made on January 12, 2022 in the amount of $100,000 from an Excell account ending in 6901. *See* Exhibit "5." However, a day later, $100,000 was deposited into that account from an account ending in 3199, which received seven transfers between January 12 and January 14, 2022 totaling $138,775 from account ending in 8711, which is a Karma

account. *See* Exhibit "6" and Exhibit "3," which is an affidavit from Scott Zankl identifying 8711 as a Karma account.

      f.      Payment 6 was made on February 7, 2022 in the amount of $250,000 from an Excell account ending in 3181. *See* Exhibit "7." However, on January 20, 2022, $108,000 was deposited into that account from an account ending in 8711, which is a Karma account. *See* Exhibit "8" and Exhibit "3," which is an affidavit from Scott Zankl identifying 8711 as a Karma account. Thereafter, on February 3, 2023, $156,000 was deposited into from an account ending in 6603, which is a Karma account. *See* Exhibit "7" and Exhibit "3," which is an affidavit from Scott Zankl identifying 6603 as a Karma account.

      g.      Payment 7 was made on February 8, 2022 in the amount of $600,000 from an Excell account ending in 3199. *See* Exhibit "9." Subsequent to that date, and on February 16, 17, and 22, 2022, transfers from Karma related accounts (8711, 7995, and 5966) totaling more than $650,000 were deposited to this account. *Id.;* Exhibit "3," which is an affidavit from Scott Zankl identifying 8711 as a Karma account; Exhibit "10," which is the statement from account 7995; and Exhibit "11," which is the statement from 5966.

      h.      Payment 8 was made on February 9, 2022 in the amount of $450,000 from an Excell account ending in 3199. *See* Exhibit "9." However, that same day, $450,000 was deposited into that account from an account ending in 5966, which is a Karma account. *See Id. and* Exhibit "11."

41.     Undisputed.

42.     Undisputed.

43      Objection.  This statement is not supported by any cited evidence.

44.     Undisputed.

45.     Disputed. *See* Response to # 40.

46.     Undisputed.

47.     Undisputed.

48.     Undisputed.

## ADDITIONAL FACTS

49.     Yisroel Herbst is owner of Hi Bar Capital, LLC ("Hi Bar"). [D.E. 167-1 at ¶ 1 Herbst Declaration].

50.     On October 27, 2021, Hi Bar entered into a Revenue Purchase Agreement with Excell Auto Group and a number of other related entities identified in that Agreement ("the Obligors"). *Id.* at ¶ 2.

51.     Pursuant to the Revenue Purchase Agreement, Hi Bar purchased $3,177,880.00 of Obligors future receivables for $2,120,000.00. *Id.* at ¶ 3.

52.     The Revenue Purchase Agreement included a Security Agreement that provided Hi Bar with a security interest in, and among other things, "all accounts, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those are defined in Article 9 of the Uniform Commercial Code… ."  *Id.* at ¶ 4.

53.     Further, the Revenue Purchase Agreement authorized Hi Bar "to file any and all notices or filings it deems necessary or appropriate to enforce its entitlements hereunder." *Id.*

54.     At the time the Revenue Purchase Agreement was executed, it was Hi Bar's understanding that the Obligors had previously executed a revenue purchase arrangement with an entity called Spin Capital. *Id.* at ¶ 5.

55.     Spin Capital is a separate entity from Hi Bar and the two do not share ownership or control. *Id.* at ¶ 6.

56.     Spin Capital's principal, Josh Lubin, does not have (and has not had) any ownership interest in Hi Bar since its formation. *Id.*

57.     Rather than sending the Purchase Amount under the Revenue Purchase Agreement directly to the Obligors, Hi Bar was instructed by the Obligors to send the funds directly to Spin Capital. *Id.* at ¶ 7.

58.     As such, on November 1, 2021, Hi Bar wired $2,114,312.50 to Spin Capital. *Id.* at ¶ 8.

59.     The Revenue Purchase Agreement includes a mandatory reconciliation provision, which if requested, would require an extension of the repayment terms. *Id.* at ¶ 9.

60.     At no time did the Obligors request an adjustment to their payments under that provision. *Id.*

61.     The Obligors defaulted on the Revenue Purchase Agreement. *Id.* at ¶ 10.

62.     As a result, on December 19, 2021, the Obligors and Hi Bar entered into a Settlement Agreement. *Id.* at ¶ 11.

63.     Pursuant to the Settlement Agreement, the Obligors once again agreed to provide security for payments due, which included all accounts, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those are defined in Article 9 of the Uniform Commercial Code… ."  *Id.* at ¶ 12.

64.     Further, the Obligors represented that "no other creditors [had] a security interest in the Collateral" and that Obligors would not "transfer of encumber the Collateral without prior written consent of [Hi Bar]." *Id.*

65.     On December 27, 2021, the Obligors defaulted under the Settlement Agreement, which caused Hi Bar to commence legal proceedings in New York. *Id.* at ¶ 13.

66. On January 25, 2022, Hi Bar perfected its security interest by recording a UCC-1 Financing Statement with the State of Florida as it authorized to do under the Revenue Purchase Agreement and Settlement Agreement. *Id.* at ¶ 14.

67. On February 1, 2022, Hi Bar and the Obligors entered into a Stipulation of Settlement Pursuant to CPLR 3215(i). *Id.* at ¶ 15. Under that Agreement, "within (5) business days" of the Obligors fulfilling all obligations, Hi Bar agreed to "terminate any/all UCC filings and liens ... ." *Id.*

68. The Obligors have not satisfied their payment obligations under the Stipulation of Settlement and Hi Bar's UCC Financing Statement remains properly recorded. *Id.* at ¶ 16.

69. On November 1, 2021, Spin Capital and Franklin Capital Group entered an Assignment of Obligations and Merchant Documents. [D.E. 75 at pgs. 86-95]

70. Hi Bar is not a party to the Assignment of Obligations and Merchant Documents. *Id.*

71. Hi Bar did not speak to, or make any representations to, Franklin Capital regarding any debt owed to Hi Bar Capital by the Obligors. [D.E. 167-1 at ¶ 17; Herbst Declaration, ¶ 17].

Respectfully submitted,

LETO LAW FIRM
201 S. Biscayne Blvd.
Suite 2700
Miami, Florida 33131
Tel.    305-341-3155
Fax:    305-397-1168

*/s/ Matthew P. Leto*
MATTHEW P. LETO
Florida Bar No.: 014504
mleto@letolawfirm.com
kzelaya@letolawfirm.com
pleadings@letolawfirm.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 22, 2025, we electronically filed the foregoing document with the Clerk of the Court and provided service to all counsel of record using CM/ECF.

*/s/ Matthew P. Leto*
MATTHEW P. LETO