

**EXHIBIT**

**1**

FILED: KINGS COUNTY CLERK 11/10/2022 06:18 AM          INDEX NO. 518279/2022
NYSCEF DOC. NO. 24                                      RECEIVED NYSCEF: 11/10/2022

# EXHIBIT C

FILED: KINGS COUNTY CLERK 11/10/2022 06:18 AM    INDEX NO. 518279/2022

NYSCEF DOC. NO. 24                                                RECEIVED NYSCEF: 11/10/2022

## AFFIDAVIT OF SCOTT ZANKL

STATE OF FLORIDA          )
                          ) ss.
COUNTY OF PALM BEACH      )

Scott Zankl, being duly sworn, states as follows:

1. I am a Florida resident, am over the age of eighteen and am competent to testify. If called upon to testify, I will testify in accordance with this affidavit.

2. I have personal knowledge of the facts set forth in my affidavit.

3. I am the president and founder of Excell Auto Group, Inc., Karma of Palm Beach, Inc., and Karma of Broward, Inc.

4. On or about November 3, 2021, Excell Auto Group, Inc. obtained a loan from Franklin Capital Group, LLC (together with its related entities, "Franklin") in the original principal amount of $6,000,000.

5. As security for the loan, Excell Auto Group, Inc. and its related entities, Karma of Palm Beach, Inc. and Karma of Broward, Inc. granted Franklin a security interest in certain collateral, including but not limited to its present and future accounts, deposit accounts, and money, and the proceeds thereof ("Collateral").

6. It is my understanding that Franklin filed the necessary UCC financing statements to perfect its security interests.

7. It also is my understanding that, concurrently with the making of its loan to Excell Auto Group, Inc., Franklin purchased from Spin Capital, among other entities, and Spin Capital, among other entities, sold and assigned to Franklin the obligations of Excell Auto Group, Inc. and its affiliates and all rights relating to those obligations, including the security interests of Spin Capital, among other entities, in the Collateral under an assignment agreement ("Assignment Agreement").

8. Thus, it is my understanding that Franklin currently holds the most senior lien interest in the Collateral.

9. It further is my understanding that, in executing the Assignment Agreement, Spin Capital, among other entities, agreed that they would not purchase any portion of accounts, future accounts, contract rights, future sales, receipts or other obligations from Excell Auto Group, Inc. or its affiliates, would not extend credit to Excell Auto Group, Inc. or its affiliates, and would not take a security interest in the assets of Excell Auto Group, Inc. or its affiliates.

10. I understand that if Spin Capital, among other entities, were to receive any further payments from Excell Auto Group, Inc. or its affiliates, those payments would have to be paid promptly to Franklin under the Assignment Agreement.

11. Excell Auto Group, Inc. and its affiliates had entered into merchant cash advance agreements with Spin Capital, among other merchant cash advance companies, prior to obtaining the loan from Franklin.

12. Under the merchant cash advance agreements between Excell Auto Group, Inc. and its affiliates and Spin Capital, among other entities, Excell Auto Group, Inc. had received funding in exchange for authorizing Spin Capital and other entities to make periodic withdrawals from a designated bank account or otherwise making payments to the merchant cash advance companies.

13. I did not disclose those obligations to Franklin prior to closing on the loan because Spin Capital, among other entities, threatened me and advised me not to provide the information to Franklin.

14. Prior to closing on the loan with Franklin, I was concerned because I understood that I needed to show Franklin that the merchant cash advance from Spin Capital had been paid off as a condition of closing. I expressed my concerns to a representative of Spin Capital on the telephone. Upon information and belief, I spoke to Josh Lubin, who offered to transfer Excell Auto Group, Inc.'s balance on the merchant cash advance to Hi Bar Capital, another merchant cash advance company in which Lubin stated he also had an interest. Lubin said then Spin Capital could issue a payoff letter to represent to Franklin that the merchant cash advance had been paid off. Lubin made these statements on behalf of both Spin Capital and Hi Bar Capital in an effort to induce me to enter into a more onerous agreement with Hi Bar Capital and to deceive Franklin and avoid the obligations under the Assignment Agreement.

15. I also provided Franklin with incorrect bank information in order to obtain the loan from Franklin and to hide the merchant cash advances obtained by Excell Auto Group, Inc. and its affiliates.

16. After closing on the loan from Franklin, Excell Auto Group, Inc. and its affiliates

FILED: KINGS COUNTY CLERK 11/10/2022 06:18 AM
NYSCEF DOC. NO. 24
INDEX NO. 518279/2022
RECEIVED NYSCEF: 11/10/2022

entered into additional merchant cash advance agreements and made additional payments to Spin Capital, among other entities, because they threatened me and demanded additional payments.

17. In sum, after assigning their rights to Franklin, Spin Capital and other merchant cash advance companies controlled by it, including Hi Bar Capital, continued to pursue the purchase of the accounts, future accounts, contract rights, future sales, receipts or other obligations of Excell Auto Group, Inc. and its affiliates and the extension of credit to Excell Auto Group, Inc. and its affiliates. Spin Capital and other merchant cash advance companies, including Hi Bar Capital, sought to avoid the provision in the Assignment Agreement prohibiting such activity by funding through affiliated entities.

18. In addition, after obtaining the loan from Franklin and granting it a security interest in all accounts receivable, I, on behalf of my various entities, including Excell Auto Group, Inc., took additional cash advances from (1) Alpine Business Capital LLC, (2) Vertex, (3) TBF, (4) Go Fund, and (5) TVT 2.0 LLC.

19. Each of these merchant cash advance companies was aware that it could not provide me with a merchant cash advance after I had granted a security interest to Franklin, but they each told me to proceed with a new merchant cash advance agreement and to hide the payments from Franklin by funneling accounts receivable through other entities.

20. In other words, all of these merchant cash advance companies knowingly continued to take or to attempt to take additional payments from Excell Auto Group, Inc. and its affiliates or to enter into new funding agreements with Excell Auto Group, Inc. and its affiliates after Franklin had made its loan to Excell Auto Group, Inc. and obtained a security interest in the accounts receivable of Excell Auto Group, Inc. and its affiliates.

21. It is my understanding that none of this behavior was undertaken with Franklin's consent or approval.

Scott Zankl

Subscribed and sworn to before me
this 29 day of March, 2022

Alana Bailey  Notary Public
Boca Raton , FL
My Commission Expires: 5-30-25
Acting in Palm Beach

ALANA C. BAILEY
MY COMMISSION # HH 094110
EXPIRES: May 30, 2025
Bonded Thru Notary Public Underwriters

4888-5303-2984.v5