**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
www.flsb.uscourts.gov

In re:

EXCELL AUTO GROUP, INC.,                                    Case No. 22-12790-EPK
                                                            Chapter 7

        Debtor.

_____/

NICOLE TESTA MEHDIPOUR,
as Chapter 7 Trustee for Excell Auto Group, Inc.,

        Plaintiff,

v.                                                          Adv. Pro. No. 23-01132-EPK

HI BAR CAPITAL, LLC, a New York limited liability
company, SPIN CAPITAL LLC a/k/a Spin Capital,
a New Jersey limited liability company,
SPFL, an unknown entity, YISROEL HERBST, an
individual, MORDI HERBST, an individual, and
JOSHUA LUBIN, an individual,

        Defendants.

_____/

**SPIN CAPITAL LLC'S REPLY TO DE 220**
**IN FURTHER SUPPORT OF ITS JOINER OF**
**HI BAR CAPITAL LLC'S MOTION FOR SUMMARY JUDGMENT DE 174**

    Defendant Spin Capital LLC ("Spin") hereby files this reply to DE 220 in further support

of its joinder of the motion for summary judgment filed by Defendant Hi Bar Capital LLC ("Hi

Bar") DE 174, for the limited purpose of addressing the central legal issues presented in the

Trustee's opposition.

    Respectfully, the Trustee fundamentally miscomprehends the law.  The Trustee claims that,

in determining whether a transaction is a bona fide revenue purchase (versus a loan), the "very

first factor is…'market risk.'"  Opp. ¶ 4 (citing *Adar Bays, LLC v. GeneSYS ID, Inc.*, 37 N.Y.3d

320, 334 (2021)). That's simply incorrect. In *Adar Bays*, the court referenced "market risk" as a factor only to "help distinguish loans from **equity purchases and joint ventures**…." *Id*. at 334 (emphasis added). The issue in this case isn't whether the agreements are equity purchases or joint ventures; it's whether they are bona fide revenue purchases or loans. *Adar Bays* has nothing to do with this. It addresses question of "[w]hether a stock conversion option that permits a lender, in its sole discretion, to convert any outstanding balance to shares of stock at a fixed discount should be treated as interest…." *Id*. at 323.

In determining whether a transaction is a bona fide purchase or a loan, the question is whether repayment is absolute. *See LG Funding, LLC v. United Senior Properties of Olathe, LLC*, 122 N.Y.S.3d 309, 312 (N.Y. App Div. 2020) ("Unless a principal sum advanced is repayable absolutely, the transaction is not a loan"). The analysis is straightforward; when the agreement satisfies the three-factor test, repayment isn't absolute and the agreement isn't a loan. *See, e.g., Principis Cap., LLC v. I Do, Inc.*, 201 A.D.3d 752 (2d Dep't 2022).

This straightforward analysis serves important policy considerations. It provides parties with certainty in their business transactions; ensures equal, consistent application of the law; and avoids the disruptive effect of different courts reaching different conclusions on the same or similar agreements For instance, the New York Appellate Division has already found that the same form of agreement at issue in this case isn't a loan. *See Samson MCA LLC v. Joseph A. Russo M.D. P.C./IV Therapeutics PLLC*, 219 A.D.3d 1126 (4th Dep't 2023). The agreement at issue in *Samson* is publicly available on the New York State Courts Electronic Filing System (Index No. 23-00008, Doc. No. 5, R. 28-34).Such certainty, predictability, and consistency is especially important because the issue implicates potential violation of the criminal usury statute. *Cf. People v. Crespo*, 32 N.Y.3d 176, 192 (2018) (noting that *stare decisis* is "strongest in matters of criminal law"

because "any change in rule" might "violate due process").  Parties shouldn't be subject to potential criminal liability based on application of an amorphous, shifting analysis.

It's not just New York state courts that have recognized the importance of a straightforward, reliable analysis; the U.S. Court of Appeals for the Second Circuit has too.  In *Fleetwood Servs., LLC v. Richmond Cap. Grp. LLC*, 2023 WL 3882697 (2d Cir. June 8, 2023), the District Court engaged in an expansive, wide-ranging analysis to conclude that a revenue purchase agreement was a loan.  On appeal, the Second Circuit affirmed the District court's conclusion.  It did so, however, solely based on application of the three-factor test (the agreement failed every factor of the test), implicitly rejecting the District Court's expansive, wide-ranging analysis.

The Trustee cites *Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 37 N.Y.3d 591, 609 n.2 (2021), as providing "additional guidance" for how courts should distinguish between revenue purchase agreements and loans.  Opp. ¶ 6.  The cited portion of *Plymouth*, however, is dicta in a footnote in a dissent and has no precedential value.  Perhaps more importantly, it addresses agreements "described as 'factoring' agreements."  *Plymouth*, 37 N.Y.3d at 609 n.2.

This conflation of factoring agreements with revenue purchase agreement permeates the Trustee's opposition.  In a factoring agreement, the funder purchases specific receivables.  *See First Bank & Tr. v. Coventina Constr. Corp.*, 2019 WL 4120363, at *1 (E.D.N.Y. July 23, 2019) ("Under factoring agreements, a factor…purchases accounts receivable from a client at a discount").  In contrast, in a revenue purchase agreement, the funder purchases a specified percentage of ***all*** the merchant's future receivables (which the merchant agrees to deposit into a designated account).  *See Calvary LLC v. EBF Holdings, LLC*, 2021 N.Y. Misc. LEXIS 5833, at *26 (Sup Ct, Orange County 2021) ("[T]he Agreement involved not the purchase of "*specific* receivables*," but rather of 15% of *all* of Cavalry's receivables") (italics in original).  The risk,

therefore, isn't necessarily that a particular receivable won't be paid (although that might be a risk if the receivable is significant), it's that the business's overall revenue will decline.  If that occurs, the merchant is entitled to a return of money previously paid in excess of the specified percentage (under the reconciliation provision), and a prospective, downward adjustment of the remittance to more closely reflect the specified percentage (under the adjustment provision).

To suggest that a revenue purchase agreement is a loan unless it purchases specific receivables is to suggest that *all* revenue purchase agreements are loans because that's not how they work.  Plainly, that's not the case.  *See Streamlined Consultants, Inc. v. EBF Holdings LLC*, 2022 WL 4368114, at *5 (S.D.N.Y. Sept. 20, 2022) ("[T]he Court joins an ever-growing group of courts that have held that nearly identical agreements…[are] not [] usurious loan[s]").  Respectfully, whether a revenue purchase agreement purchases specific receivables isn't relevant to the analysis.

Another fundamental misconception of the Trustee is that a revenue purchase agreement might be a loan if the funder doesn't have the right to collect more than the "Purchased Amount" even if the merchant's business "quadruple[s]."  Opp. ¶ 29.  In a revenue purchase agreement, however, the variable isn't the amount of revenue that can be collected.  It's the period over which that amount can be collected.  If the merchant's business "quadruples," the period will be shorter and the funder will receive a greater return on its investment.  Conversely, if the merchant's business declines, the period will be greater and the funder will receive a lower (or no) return on its investment.  Thus, whether an agreement provides the funder with the right collect more than the "Purchased Amount" is never relevant because that's not how revenue purchase agreements work.

The Trustee attempts to circumvent the mandatory reconciliation and adjustment provisions by turning applicable law on its head. Opp. ¶¶ 14-22. For instance, the Trustee claims that reconciliation and adjustment could be "illusory" because Hi Bar was permitted to request "additional reasonable documentation" and (according to the Trustee) could theoretically use this provision as a pretext to delay or deny reconciliation. Opp. ¶ 20. This speculative and hypothetical argument ignores the fact that Hi Bar could only request "reasonable" documentation and that "reasonableness is one of the most commonly applied legal standards and indicates an objective test which does ***not*** give license to enforce the provision in an arbitrary or subjective manner." *New York State Land Title Ass'n, Inc. v. New York State Dep't of Fin. Servs.*, 117 N.Y.S.3d 16, 18 (1st Dep't 2019) (emphasis added). It also ignores the implied covenant of good faith and fair dealing, pursuant to which Spin Capital was precluded from "do[ing] anything…[to] destroy[]or injur[e] the right of the other party to receive the fruit of the contract…." *S. Nassau Med. Grp., P.C. v. 105 Rockaway Realty, LLC*, 174 N.Y.S.3d 426, 429 (2d Dep't 2022). The Trustee's suggestion that the Court should interpret "reasonableness" as a subjective standard (giving license to enforce provisions in an arbitrary manner) and to imply in the agreement a duty of bad faith and unfair dealing turns applicable law on its head and, respectfully, should be rejected.

Just as importantly, courts have rejected speculative and hypothetical arguments that reconciliation is "illusory" where the merchant doesn't allege that it requested reconciliation and was denied. *See, e.g., Streamlined Consultants, Inc. v. EBF Holdings LLC*, 2022 WL 4368114, at *4 (S.D.N.Y. Sept. 20, 2022) (rejecting the plaintiffs' speculative and hypothetical argument that reconciliation was illusory where the plaintiff didn't allege that "reconciliation did not in actuality function as agreed" or "that Plaintiffs ever even requested reconciliation"). See also, e.g., Amsterdam Capital Solutions LLC v Taylor Mgt. Servs. LLC, 2023 N.Y. Misc. LEXIS 2365, at

*4 (Sup Ct, Monroe County 2023) ("Defendants' arguments that the reconciliation provision is a sham are wholly speculative"); Spin Capital, LLC v Golden Foothill Ins. Servs., LLC, 2023 N.Y. Misc. LEXIS 747, *11 (Sup Ct, New York County 2023) ("[I]t does not appear that there is any basis for the allegation that the reconciliation process was a sham…because…the Counterclaim Plaintiffs [do not] allege that they requested a reconciliation or adjustment…and that it was done improperly"); Fox Capital Group, Inc. v Superior Caregivers, LLC, 2022 N.Y. Misc. LEXIS 3225, at *7 (Sup Ct, Nassau County 2022) ("Defendants never sought a reconciliation so they are not in a position to speculate what would happen if they did").Speculating that a counterparty would have breached a mandatory contractual provision doesn't make that provision "illusory."

## CONCLUSION

Respectfully, the Trustee miscomprehends applicable law and the nature of the parties' agreement and the Court should grant Hi Bar's motion for summary judgment and, pursuant to Spin's joinder, dismiss the relevant counts against Spin.

Dated this: 3/24/25
Respectfully
submitted,

Joel M. Aresty,Esq.
Joel M. Aresty P.A.
Board Certified Business
Bankruptcy Law
309 1st Ave S
Tierra Verde FL 33715
Phone: 305-904-1903
Fax: 1-800-559-1870
E-mailAresty@Mac.com
By: /s/: Joel M. Aresty
Fla. Bar No. 197483