**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
**www.flsb.uscourts.gov**

In re:

EXCELL AUTO GROUP, INC.,                                    Case No. 22-12790-EPK
                                                                            Chapter 7

      Debtor.

_____/

NICOLE TESTA MEHDIPOUR,
as Chapter 7 Trustee for Excell Auto Group, Inc.,

      Plaintiff,

v.                                                                          Adv. Pro. No. 23-01132-EPK

HI BAR CAPITAL, LLC, a New York limited liability
company, SPIN CAPITAL LLC a/k/a Spin Capital,
a New Jersey limited liability company,
SPFL, an unknown entity, YISROEL HERBST, an
individual, MORDI HERBST, an individual, and
JOSHUA LUBIN, an individual,

      Defendants.

_____/

**SPIN CAPITAL LLC'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DE 183] AND COUNTER MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant Spin Capital LLC ("Spin") hereby submits this opposition to the motion for partial summary judgment of Plaintiff Nicole Testa Mehdipour as Chapter 7 Trustee for Excell Auto Group, Inc. ("Excell") ("Plaintiff") and this counter motion for partial summary judgment and states as follows.

**INTRODUCTION**

Plaintiff seeks partial summary judgment on Counts 1 through 4 and 18 through 27 of the Second Amended Complaint (the "SAC").  Initially, Counts 3 and 18 through 27 don't related to

Spin (they related to Defendant Hi Bar Capital LLC ("Hi Bar"). As such, the only Counts that involve Spin are Counts 1, 2, and 4.

In Count 4, Plaintiff seeks a declaratory judgment that the Revenue Purchase Agreements between Spin and Excell (the "Spin Agreements") are void ab initio. This claim is governed by New York law because the Spin Agreements have a New York choice of law provision, New York law doesn't contravene a strong public policy of Florida, and New York has a "normal relation" to the transaction. Under New York law, it's well settled that a corporation (like Excell, on whose behalf Plaintiff is moving) can't obtain affirmative relief based on alleged usury. Indeed, New York courts have "uniformly" rejected declaratory judgment claims by corporations to declare alleged usurious loans void ab initio. As such, Plaintiff's motion for summary judgment as to Count 4 fails and, respectfully, that Count should be dismissed as a matter of law. In light of the foregoing, it's unnecessary for the Court to conduct any further analysis on Count 4. If the Court were to do so, however, Plaintiff has failed to establish the absence of genuine issues of material fact as to each element of usury under New York law. As such, even if Plaintiff could seek affirmative relief based on alleged usury (and, respectfully, she can't) Count 4 would still fail.

Plaintiff attempts to avoid the foregoing by arguing that Florida usury law applies. Applying Florida's choice of law rules, however, it doesn't. But even if it did, Plaintiff's motion as to Count 4 would still fail. That's because Excell waived usury and, as the Eleventh Circuit noted, "[e]ven though usury is a crime, the Florida courts have held that usury may be waived in a civil case." *Viridis Corp. v. TCA Glob. Credit Master Fund, LP*, 721 F. App'x 865, 873 (11th Cir. 2018). In any event, Plaintiff has failed to establish the absence of genuine issues of material fact as to each element of usury under Florida law. Thus, even if Florida law were to apply,

Plaintiff's motion as to the Count should be denied and County 4 should be dismissed as a matter of law.

In Counts 1 and 2, Plaintiff seeks a declaratory judgment that the Wing Lake Assignment Document (Count 1) and Hi Bar Transfer Agreement (Count 2) are invalid and unenforceable. Plaintiff, however, isn't a party to either of those agreements and, therefore, lacks standing to seek a declaratory judgment.  To the extent the Trustee addresses these Counts at all in her motion (and it doesn't appear that she does), she provides no authority to suggest that Excell was somehow a third-party beneficiary to the Wing Lake Assignment Document or the Hi Bar Transfer Agreement such that it could enforce those agreements as a non-party.  Plaintiff has failed to meet her initial summary judgment burden on Counts 1 and 2 and, in any event, those Counts fail as a matter of law.[1]

## **LEGAL STANDARD**

Summary judgment should not be granted unless the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also* Fed. R. Bankr. P. 7056.  "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  When the plaintiff moves for summary judgment on a claim, it "bears the burden of showing the absence of genuine issues of material fact on each element…." *Dania Live 1748 II,*

---

[1] Spin reserves for relief under Fed. R. Civ. P. Rule 56(a)applicable by Fed. R. Bankr. 7056 (e) Failing to Properly Support or Address a Fact, which says if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may give an opportunity to properly support or address the fact.  Spin reserves a request for such relief due to the fact that counsel has only been in this very complex case since February 18, 2025 [DE 238], while the motions at bar have been pending for some time.

*LLC v. Saito Dania, LLC*, 2024 WL 4333369, at *2 (S.D. Fla. Sept. 27, 2024).  Only when the moving party has met its burden "does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment.." *Clark v. Coats & Clark, Inc.*, 929 F.2d at 608.  The court is "required to view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-movant." *Carter v. City of Melbourne, Fla.*, 731 F.3d 1161, 1166 (11th Cir. 2013).  "The Court has discretion to deny a motion for summary judgment 'in a case where there is reason to believe that the better course would be to proceed to a full trial.'" *In re Vargas*, 2023 WL 2621245, at *1 (Bankr. S.D. Fla. Mar. 23, 2023) (Kimball, J.) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

## <u>ARGUMENT</u>

I. **Plaintiff's Motion as to Count 4 of the Second Amended Complaint Should be Denied.**

In Count 4, Plaintiff seeks a declaration that the Spin Agreements are void ab initio based on alleged usury.  Under New York law, however, a corporation (like Excell, on whose behalf the Plaintiff is moving) can't obtain affirmative relief based on alleged usury and, even if it could, Plaintiff has failed to establish the absence of genuine issues of disputed fact as to each element of usury.  Respectfully, Plaintiff's Motion as to Count 4 of the SAC should be denied.

**A. New York Law Applies.**

Federal courts apply the forum state's choice of law rules in bankruptcy cases.  *See Mukamal v. Bakes*, 378 Fed. App'x 890, 896 (11th Cir. 2010).  "Generally, Florida enforces choice-of-law provisions unless the law of the chosen forum contravenes strong public policy." *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306, 311 (Fla. 2000).  "The term 'strong public policy' means that the public policy must be sufficiently important that it outweighs the

policy protecting freedom of contract." *Walls v. Quick & Reilly, Inc.*, 824 So. 2d 1016, 1017 (Fla. Dist. Ct. App. 2002) (citations omitted).  A choice of law provision in a contract "is presumed valid until it is proved invalid; the party who seeks to prove such a provision invalid bears the burden of proof." *Acosta v. Campbell,* 2006 WL 146208 (M.D. Fla. Jan.18, 2006).  "Florida's usury statute prohibiting certain interest rates does not establish a strong public policy against two parties' contractually agreeing to apply another state's law, under which the agreement was valid." *Burroughs Corp. v. Suntogs of Miami, Inc.,* 472 So.2d 1166, 1167 (Fla. 1985).  The other state's law must simply have  "a normal relation to the transaction." *L'Arbalete*, 474 F. Supp. 2d at1322 (quoting *Cont'l Mortg. Invs. v. Sailboat Key, Inc.*, 395 So. 2d 507, 512 (Fla. 1981)).  Factors relevant to whether the transaction has a "normal relation" to a state include whether, if, at the time of the transaction, one of the parties' principals resided in the state, *OFS Equities, Inc. v. Conde*, 421 So. 2d 651, 653 (Fla. Dist. Ct. App. 1982); one of the parties' place of business was in the state, *Cont'l Mortg. Invs. v. Sailboat Key, Inc.*, 395 So. 2d 507, 513 (Fla. 1981); one of the parties had an office in the state, *Hopfenspirger v. West*, 949 So. 2d 1050, 1053 (Fla. Dist. Ct. App. 2006); and some or all of the transaction was conducted in the state, *OFS Equities*, 421 So. 2d at 653.

Here, the Spin Agreements have a New York choice of law provision.  *See* DE 184-5, 1st Spin Agrmt. § 4.5.  New York law, therefore, applies unless New York law contravenes a strong public policy.  As a matter of law, "Florida's usury statute…does not establish a strong public" against parties' selecting a different state's law under which the transaction would be valid.  *See Burroughs,* 472 So.2d 1167.  And even if it did, both Florida and New York law makes usury a crime.  *See* Fla. Stat. § 687.071(2), (3); N.Y. Penal Law § 190.40.  New York law, therefore, applies if, at the time of the transactions, the Spin Agreements had a "normal relation" to New York.

They did.  At the time of the transactions, Spin Capital's only member, Mr. Lubin, lived primarily in New York, Declaration of Avrumi Lubin ("Lubin Decl.") ¶ 6;[2] Spin was authorized to do business in New York, *id*. ¶ 4; Spin's only office and place of business was located at 1276 50th Street, Brooklyn New York 11219, *id*. ¶ 5; Mr. Lubin conducted Spin's business from this office, including with respect to the Excell transactions, *id*.; and one of the participants (*i.e.*, "investors") in the Spin Agreements was a New York limited liability company with its office in New York, *id*. ¶ 7.  At the time of the transactions, therefore, the Spin Agreements had a "normal relation" to New York and, as such,  their choice of law provision applies.

### 1.  Under New York Law, Corporations Can't Obtain Affirmative Relief Based Upon Alleged Usury.

It's well-settled under New York law that corporations can assert usury ***only*** as a defense, and ***never*** as a claim for affirmative relief.  *See, e.g. Paycation Travel, Inc. v. Glob. Merch. Cash, Inc.*, 141 N.Y.S.3d 319 (N.Y. App. Div. 2021).  Pursuant to the foregoing, New York courts routinely dismiss claims for declaratory judgment seeking to invalidate agreements based on alleged usury.  *See, e.g., Collins v. MCA Receivables, LLC*, 2024 WL 246111, at \*5 (S.D.N.Y. Jan. 23, 2024) (dismissing a claim for declaratory judgment based on alleged usury); *Streamlined Consultants, Inc. v. EBF Holdings LLC*, 2022 WL 4368114, at \*3 (S.D.N.Y. Sept. 20, 2022) ("Plaintiffs are barred from bringing affirmative claims for relief based on allegations of usury"); *Haymount Urgent Care PC v. GoFund Advance, LLC*, 609 F. Supp. 3d 237, 254 (S.D.N.Y. 2022)

---

[2] In his deposition, Mr. Lubin testified that he resides in New Jersey.  Lubin Depo. at 7:9-25.  That testimony, however, was in response to a question about Mr. Lubin's current address, not where he resided at the time of the Spin Agreements.  *See id*.

("New York courts have uniformly…prohibited corporations from bringing affirmative claims…alleging criminal usury and seeking to invalidate an agreement").[3]

For instance, in *Haymount* – a case Plaintiff cites – the plaintiffs "ask[ed] the Court to declare that the MCA agreements were void <u>ab initio</u>, because they function as criminally usurious loans." 609 F. Supp. 3d at 254 (underline in original). The court noted that, "[w]here the interest rate exceeds the criminal usury rate, a corporation may interpose an affirmative defense of usury and, if successful, obtain a declaration that invalidates the debt instrument <u>ab initio</u>." *Id*. (underline in original). The court further noted, however, that "New York courts have uniformly construed [the usury] statute as limited to the affirmative defense, and they have prohibited corporations from bringing affirmative claims…alleging criminal usury and seeking to invalidate an agreement." *Id*.

---

[3] *Global Merchant Cash Inc. v. Rome-Aire Services, Inc.*, 2024 WL 4515654, at *4 (E.D.N.Y. Oct. 17, 2024) (dismissing a corporation's declaratory judgment counterclaim seeking to void an agreement based on alleged usury); *Powercap Partners LLC v. Beaux Equities LLC*, 179 N.Y.S.3d 894 (N.Y. Sup. Ct. 2023) (holding that the corporate defendants could "not bring an action seeking a declaratory judgment that the subject loans violate [] criminal usury law"); *Tender Loving Care Homes, Inc v. Reliable Fast Cash, LLC*, 76 Misc. 3d 314, 320, 172 N.Y.S.3d 335, 341 (N.Y. Sup. Ct. 2022) ("Plaintiffs' cause of action seeking affirmative relief in the form of a declaratory judgment that the agreement is actually a disguised usurious loan must be dismissed as a matter of law…."); *OT Aspekt & Chiropractic PLLC v. Fox Cap. Grp., Inc.*, 154 N.Y.S.3d 217 (N.Y. Sup. Ct. 2021) ("[P]laintiffs' affirmative relief sought in their first four causes of action, on the basis of their allegation that this was a criminally usurious loan…all fail as a matter of law"); *LG Funding, LLC v. United Senior Properties of Olathe, LLC*, 122 N.Y.S.3d 309 (N.Y. App. Div. 2020) (internal citations omitted) ("Although the [corporate] defendants may assert criminal usury as an affirmative defense, they may not assert criminal usury as the basis for a counterclaim"); *K9 Bytes, Inc. v. Arch Cap. Funding, LLC,* 57 N.Y.S.3d 625, 631 (N.Y. Sup. Ct. 2017) ("[I]t has long been settled in this state that criminal usury may only be asserted as a defense by a corporation, and never as a means to seek affirmative relief"); *Scantek Med., Inc. v. Sabella*, 582 F. Supp. 2d 472 (S.D.N.Y. 2008) (dismissing a corporation's claim for declaratory judgment based on alleged usury); *Intima-Eighteen, Inc. v. A.H. Schreiber Co.*, 568 N.Y.S.2d 802 (N.Y. App. Div. 1991) (holding that criminal usury may not "be employed as a means to effect recovery by the corporate borrower").

Yet that's exactly what Plaintiff is trying to do. Plaintiff seeks to invalidate the Spin Agreements as "void and unenforceable" criminally usurious loans. DE 75, SAC ¶ 235(f). Plaintiff, however, is acting on behalf of a corporation (Excell). *See id*.[4] As such, Plaintiff is precluded as a matter of law from obtaining a declaratory judgment to invalidate the Spin Agreements based on alleged criminal usury. Count 4 of the SAC fails as a matter of law..

> **2. Plaintiff Hasn't Established the Absence of Genuine Issues of Material Fact as to Each Element of Usury Under New York Law.**

Even if Plaintiff could obtain affirmative relief based on alleged usury, her Motion would still fail because she hasn't established the absence of genuine issues of material fact as to each element of usury under New York law. The elements of usury are (1) a loan or forbearance of money, (2) requiring interest in violation of a usury statute, and (3) the intent to take interest in excess of the legal rate. *Blue Wolf Cap. Fund II, L.P. v. Am. Stevedoring Inc.*, 961 N.Y.S.2d 86, 89 (N.Y. App. Div. 2013). "[U]sury must be proved by clear and convincing evidence as to all its elements and usury will not be presumed." *Hochman v. LaRea*, 789 N.Y.S.2d 300, 301 (N.Y. App. Div. 2005). "There is a strong presumption against a finding of usury…." *Zanfini v. Chandler*, 153 N.Y.S.3d 77, 79 (N.Y. App. Div. 2021). "[W]hen the terms of [an] agreement are in issue, and the evidence is conflicting, the [alleged] lender is entitled to a presumption that he did not make a loan at a usurious rate." *Giventer v. Arnow*, 37 N.Y.2d 305, 309 (1975). "Usury is an affirmative defense and a heavy burden rests upon the party seeking to impeach a transaction for usury." *Gandy Mach., Inc. v. Pogue*, 483 N.Y.S.2d 744, 745 (N.Y. App. Div. 1984).

---

[4] To the extent Plaintiff claims that she's not acting on behalf of Excell (the alleged "borrower"), her usury argument fails because "[t]he defense of usury is personal to the borrower and is not available to [] defendants [who are] strangers to the allegedly usurious loan transaction." *Broad & Wall Corp. v. O'Connor*, 211 N.Y.S.2d 891, 891 (N.Y. App. Div. 1961).

### a. Plaintiff Hasn't Shown the Absence of Genuine Issues of Material Fact That the Agreements Are Loans.

Plaintiff's argument that the Spin Agreements are disguised, usurious loans has been rejected by literally dozens of New York courts, state and federal alike. *See, e.g., Samson MCA LLC v. Joseph A. Russo M.D. P.C./IV Therapeutics PLLC*, 196 N.Y.S.3d 256 (N.Y. App. Div. 2023); *US Information Group LLC v. EBF Holdings, LLC*, 2023 WL 6198803, at *10 (S.D.N.Y. Sept. 22, 2023); *Principis Cap., LLC v. I Do, Inc.*, 160 N.Y.S.3d 325 (N.Y. App. Div. 2022). Indeed, in *Samson*, the Appellate Division found that an agreement nearly identical to Spin's wasn't a loan.[5]

"If [a] transaction is not a loan, there can be no usury…." *Seidel v. 18 E. 17th St. Owners, Inc.*, 79 N.Y.2d 735, 744 (1992). An agreement isn't a loan unless it provides (1) a right of interest on principal, *see Donatelli v. Siskind*, 565 N.Y.S.2d 224, 226 (N.Y. App. Div. 1991); *Kelly, Grossman & Flanagan, LLP v. Quick Cash, Inc.*, 2012 WL 1087341, at *6 (N.Y. Sup. Ct. 2012) ("The concept of usury applies to loans, which are typically paid at a fixed or variable rate over a term"), and (2) an absolute right to repayment, *see, e.g.*, *Principis*, 160 N.Y.S.3d at 327 ("Unless a principal sum advanced is repayable absolutely, the transaction is not a loan"); *Colonial Funding Network, Inc. for TVT Cap., LLC v. Epazz, Inc.*, 252 F. Supp. 3d 274, 282-83 (S.D.N.Y. 2017) (distinguishing revenue-based financing agreements from loans because only loans have absolute and unconditional payment obligations). "Where payment or enforcement rests upon a contingency, the agreement is valid even though it provides for a return in excess of the legal rate of interest." *Yellowstone Cap. LLC v. Cent. USA Wireless LLC*, 110 N.Y.S.3d 485 (N.Y. Sup. Ct. 2018).

---

[5] The agreement at issue in *Samson* is publicly available on the New York State Courts Electronic Filing System at Case Number CA 23-00008 and is attached hereto as **Exhibit A**.

The great weight of authority in New York – including Appellate Division decisions from the First, Second, and Fourth Departments – has held that revenue-based financing transactions aren't loans. *See Champion Auto Sales, LLC v. Pearl Beta Funding, LLC*, 69 N.Y.S.3d 798 (N.Y. App. Div. 2018); *Principis*, 160 N.Y.S.3d at 325; *Samson*, 196 N.Y.S.3d at 256. These Appellate Division decisions are consistent with dozens of lower court and federal court rulings. *See Streamlined Consultants*, 2022 WL 4368114, at *5 ("[T]he Court joins an ever-growing group of courts that have held that nearly identical agreements…[are] not [] usurious loan[s]").

New York courts apply a three-factor test to determine whether a revenue purchase transaction should be considered a bona fide purchase (which isn't subject to usury) or a loan (which is). *Samson,* 196 N.Y.S.3d at 259. Under this test, courts evaluate: (1) whether there is a reconciliation provision in the agreement; (2) whether the agreement has a finite term; and (3) whether there is any recourse should the merchant declare bankruptcy. *Id*. If, as in this case, the contracts have mandatory reconciliation and adjustment provisions, an indefinite term, and provide for limited recourse in bankruptcy, they're not a loan.[6]

### i. The Spin Agreements Have Mandatory Reconciliation and Adjustment Provisions.

Reconciliation and adjustment provisions "allow[] the merchant to seek an adjustment of the amounts being debited from its account based on its cash flow (or lack thereof)." *K9 Bytes, Inc. v. Arch Cap. Funding, LLC*, 57 N.Y.S.3d 625, 632 (N.Y. Sup. Ct. 2017). If a merchant is doing

---

[6] The Second Circuit also recognized the three-factor test as being dispositive. In *Fleetwood Servs., LLC v. Richmond Cap. Grp. LLC*, 2023 WL 3882697 (2d Cir. June 8, 2023), the District Court engaged in an expansive, wide-ranging analysis to conclude that a revenue purchase agreement was a loan. On appeal, the Second Circuit affirmed the District court's conclusion. It did so, however, solely based on application of the three-factor test (the agreement failed each factor), implicitly rejecting the District Court's expansive, wide-ranging analysis.

poorly, the merchant will pay less. *Id*. If the merchant is doing well, it will pay more than the daily amount to reach the specified percentage. *Id*. at 633. "[A]n enforceable reconciliation provision, pursuant to which payment is to be adjusted according to the seller's actual receipts, is generally inconsistent with classification as a loan subject to the usury law." *US Info. Grp.*, 2023 WL 6198803, at *8.

Indeed, New York courts have repeatedly held that revenue-based financing agreements with mandatory reconciliation and adjustment provisions aren't loans. *See, e.g.*, *Samson*, 196 N.Y.S.3d at 259 (holding that the transaction wasn't a loan where "the agreements…contained reconciliation provisions requiring the adjustment of the remittance amount…based on changes to the [] defendants' revenues"); *Streamlined Consultants*, 2022 WL 4368114, at *4 (finding that the transaction wasn't a loan because it included a mandatory reconciliation provision); *Principis*, 160 N.Y.S.3d at 327 (holding that the parties' transaction wasn't a loan because the agreement provided for "adjustments to the monthly payments made by [the defendant] to the plaintiff based on changes in [the defendant's] monthly sales").

In this case, the Spin Agreements have two provisions to ensure that repayment was contingent upon Excell's revenue (or lack thereof). First, they have a mandatory, retroactive reconciliation (or "true up") provision. *E.g.*, DE 184-5, 1st Spin Agrmt. § 1.3. This provision states that, upon Excell's written request, Spin "shall" reconcile the amount collected to equal the specified percentage of Excell's actual revenue. *Id*. Under this provision, Excell would either get money back (if its revenue decreased) or pay more money (if its revenue increased). Second, the Spin Agreements have a mandatory, prospective adjustment provision. *See id*. § 1.4.[7] This

---

[7] Plaintiff cites *Haymount Urgent Care PC v. GoFund Advance, LLC*, 609 F. Supp. 3d 237, 247 (S.D.N.Y. 2022), for the proposition that the Spin Agreements are loans. In that decision, however – in which the court accepted all of the allegations in the complaint as true and simply determined

provision states that, upon Excell's written request, Spin "shall" modify the weekly remittance going forward to reflect the specified percentage of Excell's actual weekly revenue. *Id*. Under this provision, Excell's weekly remittance would increase or decrease based on its revenue. As a result of these provisions, Spin's right to repayment was contingent on Excell's revenue and, thus, a bona fide revenue purchase transaction. *See Principis*, 201 A.D.3d at 754.

### ii.    The Agreements Have an Indefinite Term.

A "quintessential" indicium of a revenue-based financing agreement is that it doesn't prescribe when payments must be completed. *K9 Bytes, Inc. v. Arch Cap. Funding*, 57 N.Y.S.3d 625, 633 (N.Y. Sup. Ct. 2017). In such an agreement, the payment term is indefinite because payments are "contingent upon [the merchant's] actually generating sales and those sales actually resulting in the collection of revenue." *IBIS Capital Group, LLC v. Four Paws Orlando LLC*, 2017 NY Slip Op 30477[U], at *5 (N.Y. Sup. Ct. 2017). "[E]very time [the merchant's] receipts change the amount of time it will take for [the funder] to be reimbursed will change" and, therefore, "there is no fixed end date by which [the funder] must be paid." *Power Up Lending Grp., Ltd. v. Cardinal Energy Grp., Inc.*, 2019 WL 1473090, at *5 (E.D.N.Y. Apr. 3, 2019). "The existence of this uncertainty in the length of the Agreement is an express recognition by the parties of the wholly contingent nature of this Agreement." *Four Paws,* 2017 NY Slip Op 30477[U], at *6. A

---

that factual issues precluded the funder's motion to dismiss – the court failed to consider the prospective adjustment provision (it considered only the retroactive reconciliation provision). When, in a subsequent decision, the court considered both provisions, it stated:

> Defendants make strong arguments that the agreements themselves, in light of their provisions for both prospective and retrospective reconciliation of the initially estimated remittance amounts to a business's actual revenues as they come in, do not on their face constitute unlawful loans, rather than bona fide purchases of future revenues.

*Haymount Urgent Care PC v. GoFund Advance, LLC*, 650 F. Supp. 3d 204, 211 (S.D.N.Y. 2023).

reconciliation provision precludes the existence of a finite term. *See, e.g., US Info. Grp.*, 2023 WL 6198803, at *8 ("The reconciliation provision, if invoked, would make the repayment period non-finite") (cleaned up); *Principis*, 201 A.D.3d at 754 ("[A]s the amount of the monthly payments could change, the term of the agreement was not finite."); *Calvary LLC v EBF Holdings, LLC*, 2021 N.Y. Misc. LEXIS 5833, at *17 (N.Y. Sup. Ct. 2021) (finding that the parties' reconciliation provision resulted in "the absence of a fixed or finite term for payment").

Here, the Spin Agreements state on their face that "there is no…payment schedule and no time period during which the Purchased Amount must be collected by [Plaintiff]." *E.g.*, DE 184-5, 1st Spin Agrmt. at p. 1. Numerous courts have cited this identical (or nearly identical) language in concluding that an agreement lacked a finite term and, thus, wasn't a loan. *See,. e.g., Samson*, 219 A.D.3d at 1128; *Pearl Delta Funding, LLC v. ABC Auto LLC*, 188 N.Y.S.3d 915 (N.Y. Sup. Ct. 2023); *Streamlined Consultants*, 2022 WL 4368114, at *5. Indeed, the Spin Agreements' term is necessarily indefinite because, under the reconciliation and adjustment provisions, the amount collected and the weekly remittance are subject to regular adjustment. *E.g.*, DE 184-5, 1st Spin Agrmt. §§ 1.3, 1.4 As a result, there could be no fixed date by which Excell was required to remit the purchased amount of revenue (if ever) and the Spin Agreements aren't loans.

### iii. The Agreement Don't Make Excell's Filing for Bankruptcy an Event of Default.

New York courts have repeatedly held that, where bankruptcy isn't an event of default, the funder is less likely to be entitled to absolute repayment and, therefore, the transaction isn't a loan. *See, e.g., Samson*, 196 N.Y.S.3d at 259 (finding that the parties' transaction wasn't a loan where, "for the most part, plaintiff did not have recourse in the event that the entity defendants declared bankruptcy"); *Byzfunder NY LLC v. Holy City Collision LLC*, 194 N.Y.S.3d 924 (N.Y. Sup. Ct. 2023) (rejecting defendants' usury argument where the agreement did "not provide that a

bankruptcy filing [was] an event of default"); *Principis*, 160 N.Y.S.3d at 327 (rejecting defendants' usury defense where "no contractual provision existed establishing that a declaration of bankruptcy would constitute an event of default").

Here, the Spin Agreements don't make Excell's filing for bankruptcy an event of default. *E.g.*, DE 184-5, 1st Spin Agrmt. § 3.1.  To the contrary, it states that "[Excell's] going bankrupt…does not constitute a breach of this Agreement."  *Id*. at p. 1  Importantly, Excell' bankruptcy didn't trigger the Guaranty.  That's because the guarantors' won't be "personally liable for any amount due under the Revenue Purchase Agreement unless [Excell] commits an Event of Default pursuant to Paragraph 3 .1," *id*. at p. 6, and bankruptcy isn't an Event of Default, *id*. § 3.1. The foregoing further evidences that the Spin Agreements aren't loans.

### iv.    Spin Bore Significant Risk that Excell's Business Would Slow Down or Fail.

The foregoing factors evidence that Spin's right to repayment under the Spin Agreements was contingent, not absolute.  In fact, Spin bore significant risk that Excell's business would slow down or fail because of adverse business conditions.  That's not only because of the reconciliation, adjustment, and bankruptcy provisions, but also because Excell was excused from performance if their business suffered adverse market conditions.

The Spin Agreements are clear.  They state that "Merchant going bankrupt or going out of business, or experiencing a slowdown in business, or a delay in collecting its receivables, in and of itself, does not constitute a breach of this Agreement." *E.g.*, DE 184-5, 1st Spin Agrmt. at p. 1. It also states that Plaintiff "is entering this Agreement knowing the risks that [Defendants'] business may not perform as expected or fail…." *Id*.  In addition, it acknowledges that Plaintiff "may never receive the Purchased Amount if [Defendants] do[] not generate sufficient revenue." *Id*.

These terms parallel the provision that the court found dispositive in *Lateral Recovery, LLC v. Cap. Merch. Servs., LLC*, 632 F. Supp. 3d 402 (S.D.N.Y. 2022), a case Defendants themselves rely on.  In *Lateral*, the court held that a certain "Form Three" agreement wasn't a loan because it excused the merchant's performance if the merchant filed for bankruptcy or if its business "ceased operations exclusively due to…adverse business conditions…outside [its] control and not due to [its] willful…mishandling of its business." *Id*. at 460.  The court reasoned that, because of this provision, the funder bore the risk that, "as a result of unforeseen circumstances, the merchant is no longer able to generate and collect receivables." *Id*.

That's exactly how the Spin Agreements work.  They provide that Excell won't be in breach if it files for bankruptcy, goes out of business, experiences a slowdown in business, or encounters a delay in collecting its receivables.  *E.g.*, DE 184-5, 1st Spin Agrmt. at p. 1.  They impose on Spin the risk that, due to adverse business conditions, "[Excell's] business may not perform as expected or fail."  (*Id*.)  Similar to the "Form Three Agreement" – which didn't excuse the merchant's "willful" closure of its business – the Spin Agreements don't excuse Excell's "intentional" interruption or cessation of its business.  *Id*. § 1.12(a).  Without this provision, Excell could take $1,000,000 from Spin, close its business the next day, and owe Spin nothing.  The Spin Agreements – just like the "Form Three" agreement in *Lateral* – involve a significant transfer of risk and, therefore, aren't loans.

> **v.    Plaintiff's Inapposite Arguments and Authority Are Insufficient to Transform the Spin Agreements Into Loans.**

Plaintiff cites *Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 37 N.Y.3d 591, 609 n.2 (2021), for the proposition that "factoring agreements appear more like high interest loans…." Motion ¶ 14.  Initially, the cited portion of *Plymouth* is dicta in a footnote in a dissent and has no

precedential value.  Perhaps more importantly, it addresses "factoring agreements," which are ***not*** the type of agreements at issue in this case.  *Plymouth*, 37 N.Y.3d at 609 n.2.

Indeed, Plaintiff's conflation of revenue purchase agreement with factoring agreements permeates her Motion.  In a factoring agreement, the funder purchases specific receivables.  *See First Bank & Tr. v. Coventina Constr. Corp.*, 2019 WL 4120363, at *1 (E.D.N.Y. July 23, 2019) ("Under factoring agreements, a factor…purchases accounts receivable from a client at a discount").  In contrast, in a revenue purchase agreement, the funder purchases a specified percentage of ***all*** the merchant's future receivables (which the merchant agrees to deposit into a designated account).  *See Calvary LLC v. EBF Holdings, LLC*, 2021 N.Y. Misc. LEXIS 5833, at *26 (Sup Ct, Orange County 2021) ("[T]he Agreement involved not the purchase of "*specific* receivables," but rather of 15% of *all* of Cavalry's receivables") (italics in original).  The risk, therefore, isn't necessarily that a particular receivable won't be paid (although that might be a risk if the receivable is significant), it's that the business's overall revenue will decline.  If that occurs, the merchant is entitled to a return of money previously paid in excess of the specified percentage (under the reconciliation provision), and a prospective, downward adjustment of the remittance to more closely reflect the specified percentage (under the adjustment provision).

To suggest that a revenue purchase agreement is a loan unless it purchases specific receivables is to suggest that ***all*** revenue purchase agreements are loans because that's not how they work.  Plainly, that's not the case.  *See Streamlined Consultants, Inc. v. EBF Holdings LLC*, 2022 WL 4368114, at *5 (S.D.N.Y. Sept. 20, 2022) ("[T]he Court joins an ever-growing group of courts that have held that nearly identical agreements…[are] not [] usurious loan[s]").  Respectfully, whether a revenue purchase agreement purchases specific receivables isn't relevant to the analysis.

Another fundamental misconception of Plaintiff is that a revenue purchase agreement might be a loan if the funder doesn't have the right to collect more than the "Purchased Amount" even if the merchant's business "quadruple[s]."  Motion ¶ 33.  In a revenue purchase agreement, however, the variable isn't the amount of revenue that can be collected.  It's the period over which that amount can be collected.  If the merchant's business "quadruples," the period will be shorter and the funder will receive a greater return on its investment.  Conversely, if the merchant's business declines, the period will be greater and the funder will receive a lower (or no) return on its investment.  Thus, whether an agreement provides the funder with the right collect more than the "Purchased Amount" is never relevant because that's not how revenue purchase agreements work.

Plaintiff speculates that the reconciliation and adjustment provisions are "illusory" because they include "technical requirements."  Motion ¶¶ 24, 31.  Courts routinely reject such speculative and hypothetical arguments where the merchant doesn't allege that it requested reconciliation and it was denied.  *See, e.g., Streamlined Consultants, Inc. v. EBF Holdings LLC*, 2022 WL 4368114, at *4 (S.D.N.Y. Sept. 20, 2022) (rejecting the plaintiffs' speculative and hypothetical argument that reconciliation was illusory where the plaintiff didn't allege that "reconciliation did not in actuality function as agreed" or "that Plaintiffs ever even requested reconciliation").[8]

---

[8] *See also, e.g., Amsterdam Capital Solutions LLC v Taylor Mgt. Servs. LLC*, 2023 N.Y. Misc. LEXIS 2365, at *4 (N.Y. Sup Ct. 2023) ("Defendants' arguments that the reconciliation provision is a sham are wholly speculative"); *Spin Capital, LLC v Golden Foothill Ins. Servs., LLC*, 2023 N.Y. Misc. LEXIS 747, *11 (N.Y. Sup Ct. 2023) ("[I]t does not appear that there is any basis for the allegation that the reconciliation process was a sham…because…the Counterclaim Plaintiffs [do not] allege that they requested a reconciliation or adjustment…and that it was done improperly"); *Fox Capital Group, Inc. v Superior Caregivers, LLC*, 2022 N.Y. Misc. LEXIS 3225, at *7 (N.Y. Sup Ct. 2022) ("Defendants never sought a reconciliation so they are not in a position to speculate what would happen if they did").

Plaintiff claims that the reconciliation and adjustment provisions are "illusory" because there's "no remedy." Motion ¶ 28. Of course there is. If Spin refused a valid reconciliation or adjustment request, it would constitute a material breach and Excell would be discharged from future performance.

Plaintiff notes that Spin's underwriting was "limited to bank statements, bank log-ins, and tax returns." Motion ¶ 38. Those are, however, the exact sources of information that would identify Excell's revenue and, therefore, the sources that should have been (and were) reviewed in underwriting.

***

Pursuant to the foregoing, the Spin Agreements aren't loans and, therefore, Plaintiff can't establish the first element of usury under New York Law.

### b. Plaintiff Hasn't Established the Absence of Genuine Issues of Material Fact That the Spin Agreements Bore Usurious Interest.

In the Agreements, Excell expressly acknowledged that the transactions had "no interest rate. *E.g.*, DE 184-5, 1st Spin Agrmt. at p. 1. Indeed, there could be no interest rate because there was no fixed term, an essential element to any calculation of interest. *See, e.g., Rsrv. Funding Grp. LLC v. California Organic Fertilizers, Inc.*, 2024 WL 1604195, at *5 ("Without knowing how long it might take defendants to pay the [purchased amount of receipts], it is impossible to know whether the Revenue Purchase Agreement…has a usurious interest rate"); *Womack v. Cap. Stack, LLC*, 2019 WL 4142740, at *12 (S.D.N.Y. Aug. 30, 2019) ("[T]he amount of time to pay the Purchased Amount can vary, thus rendering impossible any alleged calculation of an 'interest rate'"); *Four Paws*, 2017 NY Slip Op 30477[U], at *6 ("Since [the funding company's] right to

collect its portion of sales proceeds was variable, it is impossible for a party to have calculated the equivalent rate of interest"). Plaintiff, therefore, can't establish the second element of her usury claim under New York law.

### c. Plaintiff Hasn't Shown the Absence of Genuine Issues of Material Fact That Spin Had Usurious Intent.

"A usury defense requires evidence that the plaintiff 'knowingly' charged an interest in excess of the legal rate on a loan or forbearance." *Crown Bridge Partners, LLC v. Sunstock, Inc.*, 2019 WL 2498370, at \*5 (S.D.N.Y. June 3, 2019). "[W]here usury does not appear on the face of the note, usury is a question of fact." *Freitas v. Geddes Sav. & Loan Ass'n*, 63 N.Y.2d 254, 262 (1984). Usurious intent "will not be presumed where a note states a legal rate of interest." *Concord Fin. Corp. v. Wing Fook, Inc.*, 1997 WL 375679, at \*5 (S.D.N.Y. July 7, 1997). "[Q]uestions of usurious intent…are typically question[s] of fact." *Adar Bays*, 37 N.Y.3d at 339 (quotation marks omitted) (alteration in original). A usury savings clause "may be relevant to the issue of intent." *Hillair Cap. Invs., L.P. v. Integrated Freight Corp.*, 963 F. Supp. 2d 336, 338 (S.D.N.Y. 2013). "[T]he best evidence of what parties to a written agreement intend is what they say in their writing." *Piccirilli v. Yonaty*, 167 N.Y.S.3d 621, 622 (N.Y. App. Div. 2022).

Here, Plaintiff doesn't address the intent element of usury and, on that basis alone, her Motion should be denied. *See ConSeal Int'l Inc. v. Neogen Corp.*, 488 F. Supp. 3d 1257, 1272 n.6 (S.D. Fla. 2020) ("[B]ecause Plaintiff's breach of contract claim fails on the first required element, the Court need not address the remaining two elements"). But even if Plaintiff had addressed the intent element, her Motion should still be denied because there are disputed issues of material fact. Not only does usury not appear on the face of the Spin Agreements, but the agreements expressly state that they don't bear interest, which is the clearest expression of the parties' intent. *E.g.*, DE 184-5, 1st Spin Agrmt. at p. 1, § 1.10. Indeed, because usury doesn't appear on the face of the

Spin Agreements, usurious intent won't be presumed and is a question of fact.   Moreover, the Spin Agreements include a usury savings clause stating that, "[i]n the event that a court nonetheless determines that [Spin] has charged [] interest hereunder in excess of the highest applicable rate, the rate in effect hereunder shall automatically be reduced to the maximum rate permitted…." *Id*. § 1.10.  This further evidences that Spin didn't intend to charge interest in excess of the legal rate. *See id*.  To the extent Plaintiff as met her initial burden as to the intent element of usury – and Spin submits she hasn't – disputed issues of fact preclude summary judgment.  Plaintiff has failed to meet her burden on each element of usury under New York law and, thus, even if she could obtain affirmative relief like a declaratory judgment based on alleged usury (she can't), her motion would still fail.

### B.  Even if Florida Applied, Plaintiff's Motion Would Still Fail.

Plaintiff's motion would fail even if Florida law applied because (1) Excell waived usury, and (2) Plaintiff hasn't established the absence of genuine issues of material fact as to each element of usury under Florida law.

### 1.  Excell Waived Usury.

Even if Florida applied, Plaintiff's Motion would still fail because Excell waived usury. As the Florida Supreme Court has held, usury is "a purely personal defense which may be…waived, at the election of the party aggrieved, it has no especial claims upon the indulgence and favor of the court, but must be disposed of upon the same principles and in the same manner as other defenses."  *Mackey v. Thompson*, 153 Fla. 210, 214 (1943).  Thus, "[a]ny borrower may waive his right to claim the benefit of such statute."  *Gunn Plumbing, Inc. v. Dania Bank*, 252 So. 2d 1, 4 (Fla. 1971).  This rule applies to criminal usury.  *See Viridis*, 721 F. App'x at 873 ("Even though usury is a crime, the Florida courts have held that usury may be waived in a civil case").

Here, in the Spin Agreements, Excell "knowingly and willingly waive[d] the defense of Usury in any action or proceeding." *E.g.*, DE 184-5, 1st Spin Agrmt. § 1.10. This waiver applies even to alleged criminal usury in a civil case like this one. *See* 721 F. App'x at 873. As a matter of law, therefore, Plaintiff can't establish usury under Florida law and her Motion should be denied.

### 2. Plaintiff Hasn't Established the Absence of Genuine Issues of Material Fact as to Each Element of Usury Under Florida Law.

"The elements of usury are: (1) a loan express or implied; (2) an understanding between the parties that the money lent shall be returned; (3) a payment of or an agreement to pay a greater rate of interest than is allowed by law; and (4) a corrupt intent to take more than the legal rate for the use of the money loaned." *Singhal v. Unison Agreement Corp.*, 2023 WL 2734230, at *4 (S.D. Fla. Mar. 31, 2023); *see also* Fla. Stat. Ann. § 687.071. Again,

### a. The Spin Agreements Aren't Loans Under Florida Law.

Under Florida law, the ultimate question in determining whether a transaction is a loan subject to usury laws is whether repayment is absolute (a loan) or whether the funder bears substantial risk (not a loan). *See Saralegui v. Sacher, Zelman, Van Sant Paul, Beily, Hartman & Waldman, P.A.*, 19 So. 3d 1048, 1051 (Fla. Dist. Ct. App. 2009) (a transaction is subject to usury where the "repayment amount [is] absolute"). That's the same ultimate question as under New York law and, for the reasons set forth in Point I.A.2.a, *supra*, the Spin Agreements aren't loans.[9]

### b. There Was No Understanding Between the Parties That the Money "Lent" Would Be Returned.

As set forth in Point I.A.2.a, *supra*, Spin's entitlement to receive the purchased receipts was contingent on Excell's generating sufficient revenue and Spin bore the risk that Excell's

---

[9] The analysis in Point I.A.2.a, *supra*, also establishes that there was no "understanding between the parties that the money lent shall be returned" and, therefore, Plaintiff can't establish the second element of usury.

business would go bankrupt or fail.  As such, there was not understanding that the money "lent" would be returned; to the contrary, there was an understanding that it might ***not*** be returned. Plaintiff, therefore, can't establish the second element of usury.

### c. There Was No Agreement to Pay a Greater Rate of Interest Than Allowed by Law.

As set forth in Point I.A.2.b, *supra*, the Spin Agreements didn't bear any interest, much less usurious interest and, therefore, Plaintiff can't establish the third element of usury.

### d. Plaintiff Hasn't Established the Absence of Disputed Facts as to Corrupt Intent.

As set forth in Point I.A.2.c, *supra*, Plaintiff hasn't attempted to establish corrupt intent and, even if she had, disputed issues of fact would preclude summary judgment.[10]

## II.    Plaintiff's Motion as to Counts 1 and 2 of the Second Amended Complaint Should be Denied.

In Counts 1 and 2, Plaintiff seeks a declaratory judgment that the Wing Lake Assignment Document (Count 1) and Hi Bar Transfer Agreement (Count 2) are invalid and unenforceable. Plaintiff, however, isn't a party to either of those agreements and, therefore, lacks standing to seek a declaratory judgment.  *See, e.g., Sun Commodities, Inc. v. C.H. Robinson Worldwide, Inc.*, 2012 WL 602616, at *3 (S.D. Fla. Feb. 23, 2012) ("[T]he Court finds that dismissal is warranted because Plaintiff lacks standing to challenge the enforcement of…the Agreement between Defendant and Ms. Rodriguez"); *Serefex Corp. v. Hickman Holdings, LP*, 695 F. Supp. 2d 1331, 1344 (M.D. Fla. 2010) dismissing with prejudice a claim to invalidate a contract where plaintiff, a non-party to the agreement, lacked standing); *Bochese v. Town of Ponce Inlet,* 405 F.3d 964, 981 (11th Cir.2005)

---

[10] As in New York, in Florida "a usury savings clause is one factor to be considered in the overall determination of whether the lender intended to exact a usurious interest rate." *Jersey Palm-Gross, Inc. v. Paper*, 658 So. 2d 531, 535 (Fla. 1995).

(holding that a plaintiff lacked standing to challenge contract where he was not a party to nor an intended beneficiary of the contract).  To the extent Plaintiff addresses Counts 1 and 2 at all in her motion, she provides no authority to suggest that Excell was somehow a third-party beneficiary to the Wing Lake Assignment Document or the Hi Bar Transfer Agreement such that it could enforce those agreements as a non-party.  Respectfully, Plaintiff has failed to meet her initial summary judgment burden on Counts 1 and 2 and, in any event, those Counts fail as a matter of law.[11]

Dated this: 3/24/25

Respectfully

submitted,


Joel M. Aresty, Esq.
Joel M. Aresty P.A.
Board Certified Business
Bankruptcy Law
309 1st Ave S
Tierra Verde FL 33715
Phone: 305-904-1903
Fax: 1-800-559-1870
E-mail: Aresty@Mac.com
By: /s/: Joel M. Aresty Fla.
Bar No. 197483

---

[11] Spin reserves for relief under Fed. R. Civ. P. Rule 56(a)applicable by Fed. R. Bankr. 7056 (e) Failing to Properly Support or Address a Fact, which says if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may give an opportunity to properly support or address the fact.  Spin reserves a request for such relief due to the fact that counsel has only been in this very complex case since February 18, 2025 [DE 238], while the motions at bar have been pending for some time.