UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In re:

                                              Case No.: 22-12790-EPK

EXCELL AUTO GROUP, INC.                      Chapter 7

       Debtor.
_____/
NICOLE TESTA MEHDIPOUR,
as Chapter 7 Trustee for Excell Auto Group, Inc.

               Plaintiff,

                                   Adv. Pro. No. 22-01132-EPK

v.

HI BAR CAPITAL, LLC, *et al.*,

               Defendant(s).
_____/

**REPLY TO HI-BAR CAPITAL AND SPIN CAPITAL, LLC'S RESPONSE TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
<u>AGAINST HI BAR CAPITAL, LLC AND SPIN CAPITAL, LLC</u>**

Nicole Testa Mehdipour ("**Plaintiff**"), chapter 7 trustee of the estate of Excell Auto Group, Inc., by and through undersigned counsel, files this Reply to *Hi-Bar Capital, LLC's Response to Plaintiff's Motion for Summary Judgment* [ECF No. 268] and *Spin Capital LLC's Response in Opposition to Plaintiff's Motion for Partial Summary Judgment [DE 183] and Counter Motion* (sic) *for Partial Summary Judgment* [ECF No. 275], and respectfully states:

A. **Contrary to Defendant's Position the Remedies Under Florida Statute § 687.071 Are Applicable to this Adversary Proceeding**

1. Assuming *arguendo* that for both Spin and Hi Bar there is normal relations with New York, so that this Court begins its analysis of the MCA agreements applying New York law. Under New York law the MCA Agreements[1] are criminally usurious and entirely void *ab initio*, including the choice of law provision. *See* N.Y. Penal § 190.40, N.Y. Gen. Obl. Law § 5-511(1), *Adar Bays, LLC v. GeneSYS ID, Inc.*, 37 N.Y. 3d 320, 323-324 and 332-333 (N.Y. 2021). Once this Court determines that the choice of law provision is void, then this Court should apply an independent choice-of-law analysis. *Haymount Urgent Care PC v. GoFund Advance, LLC*, 690 F. Supp. 3d 167, 174 (S.D.N.Y. 2023). *Accord Viridis Corp. v. TCA Global Credit Master Fund, LP*, 721 Fed. Appx. 865, 873 n. 9 (11th Cir. 2018) (the Court must " 'make[] a separate choice of law determination with respect to each particular issue under consideration.'" (*citing Trumpet Vine Invs., N.V. v. Union Cap. Partners I*, 92 F.3d 1110, 1115 (11th Cir. 1996)).

2. Additionally, each of the MCA Agreements contains a narrow choice of law provision that **only** applies to actions "sounding in contract unless the 'express language of the choice-of-law provision is sufficiently broad as to encompass the entire relationship between the contracting parties.'" *EMA Fin., LLC v. NFusz, Inc.*, 444 F. Supp. 3d 530, 540 (S.D.N.Y. 2020)

---

[1] "MCA Agreements" means the Spin Contracts (as defined in the Third Amended Complaint) and First Hi Bar Contract (as defined in the Third Amended Complaint), collectively.

1

(citation omitted). *See* Exs. 5, 7, 10, and 21 § 4.5.  Statutory remedies and tort claims are not covered by the contractual choice-of-law provisions in the MCA Agreements.  *See Innovative BioDefense, Inc. v. VSP Techs., Inc.*, Case No. 12 Civ. 3710 (ER), 2013 U.S. Dist. LEXIS 95429 at *16-17, 2013 WL 3389008 (S.D.N.Y. July 3. 2013)("New York courts are reluctant to construe choice-of-law provisions broadly to encompass non-contractual claims[,]" unless "expansive language such as 'arising out of or relating to' the contract or 'arising directly or indirectly from the Agreement[,]'" are included.). *Accord Bausch & Lomb Inc. v. Mimetogen Pharms., Inc.*, 2016 U.S. Dist. LEXIS 59941 at *22, 2016 WL 2622013 (W.D.N.Y. May 5, 2016); *Mayagüez S.A. v. Citigroup, Inc.*, 2018 U.S. Dist. LEXIS 51931 at *21, 2018 WL 1587597 (S.D.N.Y Mar. 27, 2018).

3. In Florida, usury sounds in tort, *Brea 3-2, LLC v. Hagshama Fla. 8 Sarasota, LLC*, 327 So. 3d 926, 934-35 (Fla. 3d DCA 2021), and the "significant relationship test" governs the rights and liabilities of the parties with respect to an issue in tort. *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980) (rejecting *lex loci delicti* rule and adopting significant relationship test as set forth in Restatement (Second) of Conflicts of Law §§ 145-146 (1971)).

**(i)     The Injury and Conduct Causing the Injury Occurred in Florida and Florida is the Place Where the Relationship is Centered**

4. In this case, the injury and conduct took place in Florida, where the relationship was centered. *See Bishop*, 389 So. 2d. at 1001 (*quoting Restatement (Second) of Conflict of Laws § 145(2)(a), (b), and (d)*).

5. As to Hi Bar, the Hi Bar Transfer Agreement and First Hi Bar Contract were emailed to Scott and Kristen Zankl to be executed in Florida.  Exs. 18, 19, and 49 p. 15.  Hi Bar conducted all its banking at Optimum Bank, which is a Florida state-chartered bank and only has locations in Florida. See Ex. 34 and 51and Fed. R. Evid. 201.

6. As to Spin, Josh Lubin cold called/messaged Scott Zankl in Florida offering to provide financing by Spin to the Debtor. See Ex. 3. Each of the Spin Contracts were e-mailed to Scott Zankl and Kristen Zankl to be executed in Florida.  Exs. 18, 19, and 49 p. 15.

7. The third "contact" is divided. *Bishop*, 389 So. 2d. at 1001 (*quoting Restatement (Second) of Conflict of Laws* § 145(2)(c)).  Hi Bar is incorporated in New York with its principal place of business in New York.  Third Amended Complaint, ¶ 2.   Spin is a New Jersey limited liability company, registered to do business in New York, and conducted business in Florida with the Debtor.  Third Amended Complaint, ¶ 3 and [ECF No. 102, p. ¶ 3 (admitted for jurisdictional purposes)].  The Debtor is a Florida Corporation with its principal place of business in Florida. Third Amended Complaint, ¶ 17 and [ECF No. 102, p. 2, ¶ 17 (admitted by Spin)]. All purported co-obligors, guarantors, the Future Receipts, and collateral are in Florida.  [ECF No. 200, p. 35, ¶ 192] [Exs. 5, 7, 10, and 21].

8. Based upon the foregoing, applying Florida's "significant relationship test," Florida's criminal usury law applies to the claims against Spin and Hi Bar.

**(ii)   Fla. Stat. § 687.071 is Remedial and the Rule of *Lex Fori* Requires the <u>Application of Florida's Statutory Usury Penalties</u>**

9. Alternatively, damages sought by the Plaintiff pursuant to Fla. Stat. § 687.071(1) constitutes a remedy.  *Tel Service Co. v. General Capital Corp*., 227 So. 2d 667, 671 (Fla. 1969) ("…an action predicated on remedies provided by the usury statutes creates no vested substantive right but only an enforceable penalty."). In *Wingold v. Horowitz*, 292 So. 2d 585 (Fla. 1974), the Florida Supreme Court held that "[i]t is the well established rule in Florida that the affording of remedies in one state for enforcing a contract made in another state (or country) … the remedies and procedure are governed **exclusively** by the *lex fori* [the forum where the suit is brought]." *Id*. at 586 (emphasis added) (*citing Perry v. Lewis*, 6 Fla. 555 (Fla. 1856)). "In the consideration of

this choice of law question, apart from the principle of comity, **there does not exist the same reason for looking to the intent of the parties in the case of the remedy as in matters pertaining to substance**. The parties do not necessarily look to the remedy when they make the contract." *Id*. (emphasis added).  Accordingly, the Florida Statute § 687.701 applies to the claims against Spin and Hi Bar.

### B.  The Spin Contracts and First Hi Bar Contracts are Loans

10.     There are no material facts in dispute that prevent this Court from finding that the MCA Agreements are loans on which interest in excess of 25% per annum was being charged and collected by Spin and Hi Bar. Spin and Hi Bar admit that the annualized interest rate on the MCA Agreements exceeds 50%. Responsive SMF [ECF No. 267, p. 3, ¶ 9, pp. 3-4, ¶¶ 11-13, and p. 5, ¶ 32] and Spin's Joinder [ECF No. 276], Lubin's Declaration [ECF No. 281].

11.     Contrary Defendants' assertions, the Second Circuit in *Fleetwood Servs., LLC v. Richmond Cap. Grp. LLC*, 2023 U.S. App. LEXIS 14241, 2023 WL 3882697 (2d Cir. June 8, 2023), did not "implicitly reject[]" the totality of the circumstances test. [ECF No. 268, p. 5 and ECF No. 275, p. 10 n.6].   In fact, the Second Circuit affirmed summary judgment by Judge Liman on plaintiff's Civil RICO claims, because the MCA agreement was a loan based upon the totality of the circumstances, including the lack of a shift in market risk. *Id*. at *4-5.

12.     Hi Bar misstates the holding and significance in *Reserve Funding Grp. LLC v. Cal. Organic Fertilizers, Inc.*, 2024 U.S. Dist. LEXIS 67438, 2024 WL 1604195 (E.D.N.Y. April 12, 2024). *See* [ECF No. 268, p. 7].  In denying a motion to dismiss, the *Reserve* court looked only at the four corners of the complaint filed by the MCA and could dismiss based on the affirmative defense of usury, because the "elements of the defense are not plain from the face of the complaint." *Id*. at *4 and 6-7.  Glaringly, Hi Bar leaves out the sentence immediately following its block quote, which reads: "[i]t is therefore a stretch to say that it is apparent from the face of the

4

complaint that the Agreement gives Reserve recourse in bankruptcy." *Id*. at *13. *Compare* ECF No. 268, p. 7.

**C. Hi Bar Ignores the Plaintiff's Fraudulent Transfer Claims Seeking to Avoid the Obligations and Transfers, Including the Releases in the First and Second Settlement Agreements**

13.     Hi Bar opposes relief based upon the releases in the First and Second Settlement Agreements [ECF No. 268, pp. 10-11], completely ignoring the Trustee's claims to avoid the obligations and non-cash transfers including the releases contained in the First and Second Settlement Agreements. *See* [ECF No. 253, ¶¶ 192-193 and 399-493 and ECF No. 183, ¶¶ 42-45, 50-66 and p. 20 (prayer for relief)]. In fact, Hi Bar does not raise any legal or factual dispute with respect to the avoidability of the First and Second Settlement Agreement. *See* [ECF No. 268, pp. 10-19].

14.     Hi Bar's reliance on the New York State Court case is both misguided as the bankruptcy estate is distinct from the Debtor, the Zankls, and their non-debtor entities and inappropriate, because of Hi Bar's agreement that there is no preclusive effect in order for Hi Bar to obtain stay relief [Main ECF No. 291 and 298]. The Defendants provide no disputed material facts which would prohibit this Court from finding that the transfers and obligations contained in the First and Second Settlement Agreements, including the releases, are avoidable by the Plaintiff.

**D.  The First Hi Bar Contract is Less than $2,500,000.00**

15.     The First Hi Bar Contract has a "Purchase Price" of "$2,120,000" and Hi Bar admits at most it only "advanced $2,114,000 for the benefit of the Debtor." [ECF No. 267, p.5, ¶ 40]. There is no dispute that the First Hi Bar Contract is less than $2,500,000.00 and subject to the 25% criminal usury statute N.Y. Gen. Oblig. § 5-501(6)(b).

**E.  Fraudulent Transfer Claims**

16.     On March 12, 2025, the Circuit Court in Michigan entered Findings of Fact &
Conclusion of Law finding among other things that Lubin was acting on behalf of Spin and Hi
Bar; that Spin in fact assigned all three Spin Contracts to Franklin; and Spin, Hi Bar, and Zankl
conspired to defraud Franklin by concocting the transfer from Spin to Hi Bar. *See* Ex. 44.

**(i)     There is No Evidence of "Earmarking" and Control by the Debtor is Established Under Binding Eleventh Circuit Precedent**

17.     Hi Bar's "earmarking" argument for 8 payments the Debtor made to Hi Bar [ECF
No. 268, pp. 12-13] fails entirely. Most glaringly, Hi Bar's argument fails with respect to Payments
5 and 7, for which Hi Bar identifies monies received by the Debtor after the payments in question,
the funds could not have been "earmarked" solely for the purpose of making Payments 5 and 7.
*Id*. at pp.12-13, ¶¶ e and g.

18.     For payment 6, Hi Bar identifies the Debtor's receipt of funds from a Karma entity
18 days prior and 4-days prior to Payment 6, which total $264,000.00; $14,000.00 more than
Payment 6.

19.     Hi Bar points to *In re McMillin*, 482 Fed. Appx. 454 (11th Cir. 2012) as being
instructive [ECF No. 268, pp. 13-14].  It is. Just to Hi Bar's detriment.  There is a presumption that
" 'any funds under the control of the debtor, regardless of the source,' are the debtor's property,
and any transfers that diminish that property are subject to avoidance." *McMillin*, 482 Fed. Appx.
at 456 (*quoting Chase & Sanborn Corp.*, 813 F.2d 1177, 1181 (11th Cir. 1987)).  While the test is
"very flexible [and] pragmatic," the Eleventh Circuit identified the following "circumstance of the
transaction[]… the source of the funds, which party primarily benefits from the challenged
transactions, and whether the debtor has the power to designate which party will receive the funds
and power to actually disburse the funds." *Id*. at 457 (*citing In re Bankest Capital Corp.*, 374 BR
333, 338 (Bankr. S.D. Fla. 2007).  In cases such as this involving a Ponzi scheme or other revolving

6

advance fraud "funds transferred are under the custody and control of the debtor 'mere circuity of arrangement' will not save a transfer." *Smith v. Suarez (In re IFS Fin. Corp.)*, Case No. H-09-CV-3059, 2010 U.S. Dist. LEXIS 155577 at *20 (S.D. Tex.  Sept. 11, 2010) (*citing In re Rodriguez*, 204 B.R. 510, 515 (Bankr. S.D. Tex 1995) (*quoting Dean v. David*, 242 U.S. 438, 443, 37 S. Ct. 130, 61 Led. 419 (1917)).

20.      In this case, Hi Bar admitted the source of the funds came from the Debtor and it's Chase Accounts. TAC [ECF No. 253, ¶ 19] and Answer [ECF No. 90, ¶ 192].  The Debtor's same Chase accounts are where Karma transferred money which was commingled with multiple sources of funds from various MCA Lenders, private investors, and others.  Hi Bar simply identifies transfers into the Debtor's Chase account from a Karma entity, without any analysis of what the transfer was for, the timing of the transactions, or any other pertinent facts.

21.      *McMillin* and *Chase & Sanborn* are distinguishable in that both involved transfers to **non-creditors** and where the debtors received absolutely no benefit from the transfers, a primary factor in the ultimate decisions. *See McMillin,* 482 Fed. Appx. at 456-57 and *Chase & Sanborn,* 813 F.2d at 1181. This case involves transfers to Hi Bar, ostensibly a creditor of the Debtor, where the Debtor does receive a benefit in the form of avoiding legal action, *see* Ex. 3, pp. 99-121, ¶¶ 663-800 and Ex. 4, where Lubin constantly demanding payments and threatening legal action if payment is not received.

22.      Hi Bar does not identify a single fact that Karma placed any restrictions on the use of any funds it placed in the Debtor's Chase accounts. *See*, generally, ECF 267 and 268.

**F.  The Fraudulent Transfer Claims Do Not Arise from Hi Bar Enforcing Security Interests in any Property of the Debtor**

23.      Hi Bar raises a defense for the first time that it failed to plead [ECF No. 90, pp. 35-39] and to which the Plaintiff does not consent to litigate.

24.     Furthermore, the statute and case law on which Hi Bar relies are inapplicable to this adversary proceeding.   Fla. Stat. § 726.109(5) is an affirmative defense to the Plaintiff's constructive fraud claims under Fla. Stat. §§ 726.105(1)(b) and 726.106 for which Hi Bar carries the burden of proof. *Rauch v. AJP Pine Island Warehouses, Inc.*, 313 So. 3d 625, 629 (Fla. 4th DCA 2021) (*citing Custer Med. Ctr. V. United Auto. Ins. Co.*, 62 So. 3d 1086, 1096 (Fla. 2010)).

25.     Hi Bar ignores its burden, fails to allege or assert any "undisputed law or facts" to establish a valid underlying security interest or Hi Bar's enforcement and compliance with U.C.C. Article 9 and instead relies on a single, self-serving statement by Yisroel Herbst, including the legal conclusion that "Hi Bar's UCC Financing Statement remains properly recorded." ECF No. 268, p. 14, ¶ 68.).   Furthermore, Hi Bar did not have a properly perfected lien.   In each financing statement filed by Hi Bar, Ex. 55-57, Hi Bar left the comma out of the Debtor's name on its financing statement, Ex. 54, and prior to the Petition Date, Florida's did not employ "standard search logic" meaning a misnomer becomes "seriously misleading" and the zero-tolerance rule of Fla. Stat. § 679.5061(2) applied, leaving Hi Bar unperfected. *See 1944 Beach Blvd., LLC v. Live Oak Banking Co.*, 346 So. 3d 587 (Fla. 2022) and *1944 Beach Blvd., LLC v. Live Oak Banking Co. (In re NRP Lease Holdings, LLC)*, 50 F.4th 979, 981 (11th Cir. 2022).

26.     *Wiand v. Wells Fargo Bank, N.A.*, 86 F. Supp. 3d 1316 (M.D. Fla. 2015) is inapplicable, because unlike in this case, the receiver was unable to dispute the validity of the underlying security interest and that the loan payments were made at arms-length and in the ordinary course of business. *Id*. at 1327. The Plaintiff has alleged that the underlying obligations and the security agreement are void *ab initio* or, alternatively, subject to being avoided themselves under FUFTA or 11 U.S.C. §§ 548 and 550. See TAC [ECF No. 253] Counts 1, 2, 3, 6, 7, 8, 17, 18, 19, 20, 21, 22, 23, 24, and 25, MSJ [ECF No. 183], SMF [ECF No. 184] and Exs. 54-57.

8

27.    The Plaintiff's recovery is not limited because Hi Bar cannot carry its burden to establish "good faith" and "for value" under Fla. Stat. § 726.109(1) and 11 U.S.C. § 550(b)(1). *Kapila v. TD Bank, N.A. (In re Pearlman)*, 440 B.R. 900, 906 (Bankr. M.D. Fla. 2010) (citations omitted). Hi Bar simply states that it advanced the $2,114,312.50 and therefore is entitled to a dollar-for-dollar defense. But Hi Bar did not actually fund the "Purchase Price." Spin and Hi Bar sent reciprocal wires $2,114,312.50, for the appearance of funding [Rely SMF, ¶ 27 and Exs. 10, 16, 48, 49, 50, 51] and conspired to say that this was Spin giving Hi Bar a loan if it was "b[r]ought up in a deposition." [Ex. 23, p. 2]. It is also clear that the First Hi Bar Contract was part of scheme to defraud Wing Lake, Exs. 15, 23, 43, and 44, and Hi Bar admits that Excell was insolvent and not operating at the time it entered the First Hi Bar Contract. *See* [ECF 267, p. 8, ¶¶ 46-48] and could never satisfy the under objective tests for inquiry or diligent investigation to establish "good faith". *Welch v. Regions Bank (In re Mongelluzzi)*, 587 B.R. 392, 411-13 (Bankr. M.D. Fla. 2018).

**G. The Earmarking Doctrine Does Not Apply to the Preference Claims in This Adversary**

28.    Hi Bar's application of the "earmarking" doctrine misses the mark entirely. In addition to the argument set forth in Section D, even the case on which Hi Bar relies requires that the third party either pay the creditor directly or have a clear agreement the property cannot be used for any other purpose. *See Tolz v. Barnett Bank (In re Safe-T-Brake)*, 162 B.R. 359, 363 (Bankr. S.D. Fla. 1993). This is entirely consistent with *Chase & Sanborn*, 813 F.2d at 1181-82.

29.    Hi Bar admits that the preference payments at issue come from the Debtor's Chase accounts. TAC [ECF No. 253, ¶ 19], and Answer [ECF No. 90, ¶ 192]. Hi Bar admits that the Debtor owed it money. ECF Nos. 184 and 267, ¶¶ 41, 42, and 44. Hi Bar does not point to any "clear agreement" that Karma transferred any funds to Excell for the express purpose of paying Hi Bar. *See* ECF Nos. 267 and 268, pp. 17-18. Under no circumstances does the earmarking doctrine

apply to any of the $1,500,000 in preference payments made by the Debtor so that these payments should be avoided pursuant to 11 U.S.C. § 547(b) and the recovered pursuant to 11 U.S.C. § 550.

### H. Spin's "Waiver" Argument is Legally Incorrect

30.     Spin's argument that Florida law does not apply because each of the Spin Contracts contains a "waiver of usury as a defense," fails for two reasons.  First, New York law prohibits the contractual waiver of criminal usury, as is the case of the Spin Contracts.  *See Reserve Funding Grp. LLC*, 2024 U.S. Dist. LEXIS 67438 at *5 (*citing Hammelburger v. Foursome Inn Corp.*, 76 A.D.2d 646, 437 N.Y.S.2d 356, 359 (2d Dep't 1980)).  Second, the entirety of the Spin Contracts are void *ab inito* under New York law and Plaintiff is entitled to the remedies provided for under Fla. Stat. § 687.071. S*ee* TAC [ECF No. 253] and MSJ [ECF No. 183], and Section A, *supra*. Further, Florida law would not recognize such a preemptive "waiver" in an original contract as "[t]he very purpose of statutes prohibiting usury is to bind the power of creditors over necessitous debtors and prevent them from extorting harsh and undue terms in the making of the loans." *Dixon v. Sharp*, 276 So.2d 817, 820 (Fla. 1973) (internal citation and quotations omitted).  Accordingly, the relief sought by the Plaintiff under Fla. Stat. 687.071 can be granted.

WHEREFORE, the Plaintiff requests that this Court enter an order: (i) granting summary judgment in favor of the Plaintiff on all counts in the Plaintiff's Motion for Summary Judgment; (ii) granting summary judgment in favor of the Plaintiff on all facts not disputed by Hi Bar or Spin, including but not limited to, that the Debtor was insolvent and stopped operating in April 2021; (iii) granting summary judgment in favor of the Plaintiff on all other issues the Court determines are not subject to dispute; and (iv) granting such other and further relief as this Court  deems just and proper.

Respectfully submitted this 10th day of April 2025.

FURR AND COHEN, P.A.
*Special Counsel for Trustee*
2255 Glades Road, Suite 419A
Boca Raton, FL 33431
Telephone: (561) 395-0500
Facsimile: (561) 338-7532

BY:    /s/ *Jason S. Rigoli*
　　　　Alan R. Crane, Esq.
　　　　Florida Bar No.: 0963836
　　　　E-mail: acrane@furrcohen.com
　　　　Jason S. Rigoli, Esq.
　　　　Florida Bar No.: 91990
　　　　E-mail: jrigoli@furrcohen.com

11