UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In re:

EXCELL AUTO GROUP, INC.

      Debtor.

_____/

NICOLE TESTA MEHDIPOUR,
as Chapter 7 Trustee for Excell Auto Group, Inc.

      Plaintiff,

v.

HI BAR CAPITAL, LLC, et al.,

      Defendant(s).

_____/

Case No.: 22-12790-EPK
Chapter 7

Adv. Pro. No. 22-01132-EPK

**PLAINTIFF'S REPLY STATEMENT OF MATERIAL FACTS**

Plaintiff, Nicole Testa Mehdipour, chapter 7 trustee of the estate of Excell Auto Group, Inc., by and through undersigned counsel, files this reply to *Hi-Bar Capital, LLC's Response to Trustee's Statement of Material Facts* [ECF No. 267] and *Spin Capital's Response to Statement of Material Facts* [ECF No. 276] and *Declaration of Avrumi Lubin* [ECF No. 281], and respectfully states:

**A. Hi-Bar Capital, LLC's Response to Trustee's Statement of Material Facts [ECF No. 267] as Joined by Spin [ECF No. 276]**

11.     While Hi Bar marks this as disputed, Hi Bar does not provide any factual support to dispute the well supported allegations in the Plaintiff's SMF [ECF No. 184, ¶ 11]. Hi Bar directs the Court to ECF No. 184-3, pp. 5-6, however, there is no discussion of financial records being provided on those pages.

1

13. Objection. The document speaks for itself and Hi Bar's statement is an improper legal conclusion that may not be relied on by Hi Bar to defeat summary judgment. *See Reply Memo* [ECF No. 290, ¶¶ 2-4] Hi Bar provides no other factual support to dispute the Plaintiff's allegations in paragraph 13.

14. Not addressed by Hi Bar.

16. Objection. The document speaks for itself and Hi Bar's statement is an improper legal conclusion that may not be relied on by Hi Bar to defeat summary judgment. *See Reply Memo,* ¶¶ 2-4. Hi Bar does not set forth any other factual allegations to dispute the 19.98-week repayment term based upon the Purchased Amount and weekly remittance. Hi Bar does not dispute any other allegations in paragraph 16, including that the annualized interest rate exceeds 50%.

17. Hi Bar is correct that the allegation misidentifies the payoff letter as the balance transfer agreement with respect to Exhibit 12. However, Hi Bar does not dispute any of the material, factual allegations set forth in paragraph 17 of the SMF.

19. Hi Bar's objection is procedural in nature only. Further, Hi Bar does not dispute the allegations or exhibits in paragraph 21, that Lubin had knowledge of the Debtor's negotiations with Wing Lake no later than October 19, 2021, supporting Plaintiff's allegations in paragraph 19.

20. The text message between Josh Lubin and Scott Zankl is dated October 25, 2023, 11 months, 2 weeks and 1 day after the affidavit was filed in the case *Franklin Capital Funding, LLC v. Direct Equity, LLC, et al.*, Index No. 518279/2022 (Kings County, NY), to which Hi Bar Capital, LLC, and Spin Capital, LLC are defendants. Further, Exhibit 45 shows Scott Zankl emailing the Affidavit to Alan Bailey on March 29, 2021, for Alan Bailey to notarize Scott Zankl's signature and Exhibit 46 shows Alan Bailey Emailing the notarized version of the Affidavit back to Scott Zankl on March 30, 2022. This is consistent with Scott Zankl's deposition testimony in

the adversary proceeding *Mehdipour v. United States of America*, Adv. Pro. No. 24-01039-EPK. See Exhibit 47 (S. Zankl Dep., p. 171/Lines 2 - 17, Jan. 20, 2025). Scott Zankl also testified as to veracity of each statement set forth therein. Ex. 47 (S. Zankl Dep., p. 171/Line 18 – p.175/Line 5, Jan. 20, 2025).

22. Regarding the Affidavit*, see* reply to Paragraph 20 above and Exhibits 45, 46, and 47. It is indisputable that $1,800,000 is less than $2,114,312.50. Furthermore, the closing statement attached Exhibit 14 sets for the required disbursement amounts, which demonstrates that the Wing Lake refinance is insufficient to satisfy Spin at $2,114,312.50.

23. Regarding the Affidavit*, see* reply to Paragraph 20 above and Exhibits 45, 46, and 47. Plaintiff does not address which entity the "obligated" party would be, simply that Zankl began negotiations with Lubin to move the Third Spin Contract to the First Hi Bar Contract. Plaintiff addresses the obligated party in paragraph 24, which is undisputed. The 2024 Michigan Order [Ex. 43] is not hearsay, as Spin and Hi Bar are defendants and the Michigan Court found that Spin sold and assigned all its right, title, and interest under its agreements with the Debtor to Wing Lake. *See Reply Memo*, ¶¶ 8-12. Furthermore, on March 12, 2025, the Michigan Court entered its Finding of Facts & Conclusions of Law [Ex. 44] (the "**2025 Michigan Order**"), finding among other things that all three Spin Contracts were sold and assigned to Wing Lake, Lubin was a representative of both Spin and Hi Bar and advised Excell to transfer the balance and cause a false payoff letter to be issues allowing the Debtor to close on the Wing Lake loan. *See* Ex. 44. *See also Reply Memo*, ¶¶ 8-12.

25. The documents speak for themselves and Hi Bar's statement is an improper legal conclusion that may not be relied on by Hi Bar to defeat summary judgment. *See* Reply Memo, ¶¶ 2-4. Hi Bar does not set forth any factual allegations to dispute Plaintiff's allegations.

26. Plaintiff used a version of the assignment document produced by Spin in connection with this adversary proceeding as Ex. 16 which has consecutive bates numbering SPINSPIN000047-54 and the only copy provided with the DocuSign Certificate of Completion. It turns out however, this version is missing page 2, which was overlooked when preparing the exhibits. Notwithstanding, the complete Assignment Agreement was attached as Exhibit G to the *Second Amended Complaint* [ECF No. 75-1, pp. 47-58] and *Third Amended Complaint* [ECF No. 253-1, pp. 47-58]. The Defendants are not prejudiced. A complete copy of the Assignment Agreement is attached as Ex. 48. The 2024 Michigan Order [Ex. 43]and 2025 Michigan Order [Ex. 44] are not hearsay but afforded res judicata effect. *See Reply Memo*, ¶¶ 8-12 *and* Ex. 44.

27. Regarding the Affidavit*, see* reply to Paragraph 20 above and Exhibits 45, 46, and 47. Hi Bar's statement that it paid off Spin by the time Spin signed the Wing Lake Assignment is unsupported by Hi Bar's reliance on the First Hi Bar Contract itself, which does not actually identify the timing of events.

a. The First Hi Bar Contract, Hi Bar Capital Prepayment Discount Addendum, and Hi Bar Transfer Agreement, were sent by Hi Bar to Scott and Kristen Zankl in a single, DocuSign Envelope, Envelope Id: CCF1032FABA743AEA1DBE74E050DF9DC (the "**Envelope**"). *See* Composite Ex. 49, pp. 1-14 (top left corner of page) and p. 15 (Certificate of Completion).

b. The applicable Time Zone for determining when each task was completed is "Pacific Time (US & Canada)." Ex. 49, p. 15. Pacific Time is three hours behind East Coast Time (U.S. & Canada).

c. An electronic signature for Kristen Zankl was added to each of the documents in the Envelope on 10/20/2021 at 4:11:12 AM (Pacific Time) or 7:11:12 AM (Eastern Time). Ex. 49, p. 15.

d. An electronic signature for Scott Zankl was added to each of the documents in the Envelope on 11/1/2021 at 11:39:35 AM (Pacific Time) or 2:39:35 PM (Eastern Time). Ex. 49, p. 15.

e. Approximately forty-two minutes after Scott Zankl signed the Envelope, at 3:22 p.m., Spin wired $2,114,312.50 to Hi Bar. Ex. 50, p. 2.

4

f. Forty-four minutes later, at 4:06 p.m., Hi Bar wired back to Spin $2,114,312.50. Ex. 50, p. 2.

g. On November 1, 2021, Hi Bar did not have the $2,114,312.50 to fund the First Hi Bar Contract in its account without Spin advancing the funds. Ex. 51.

h. The First Hi Bar Contract reads: "[Hi Bar's] payment of the Purchase Price shall be deemed the acceptance and performance by [Hi Bar] of this Agreement." Ex. 21 [ECF No. 184-21, p. 1].

i. Seven minutes after Hi Bar wired back the $2,114,312.50 to fund the First Hi Bar Contract, at 1:13:20 PM (Pacific Time) or 4:13:20 PM (Eastern Time) Lubin executed the Wing Lake Assignment Document. Ex. 16, p. 6.

j. The Hi Bar Transfer Agreement is a document titled "Hi Bar Capital Balance Transfer Agreement," dated October 27, 2021, and is purported to be electronically signed by Kristen Zankl, individually and on behalf of Excell Auto Group, Inc. only, on October 28, 2021, and electronically signed by Scot Zankl on November 1, 2021. Ex. 49, p. 15.

k. The Hi Bar Transfer Agreement does not reference any of the other non-debtor entities that purport to make up the "Merchant" in the First Hi Bar Contract or Third Spin Contract Ex. 49, pp. 1, 9-10, and 14 and Ex. 10, pp. 1-3.

28. *See* reply in paragraph 26, regarding Ex. 16. *See also* Ex. G to Third Amended Complaint, and Ex. 48, attached hereto. Hi Bar does not cite any counter-fact to support its dispute of the allegations in paragraph 28.

30. Plaintiff agrees. Based upon the addition information gathered after the Motion for Summary Judgement was filed the chronology of events is detailed above in Paragraph 27(a)-(k) and Exhibits 10, 16, 48, 49, 50, and 51.

31. See response to Paragraph 30.

32. Hi Bar's characterization is a legal conclusion and this is not a material fact.

33. Disputed. Hi Bar did not actually advance the $2,114,312.50 to Spin. It was a scheme concocted by Spin and Hi Bar to make it appear that the First Hi Bar Contract was funded. Spin wired the funds to Hi Bar which sent the funds back to Spin 44-minutes later. Ex. 50 and Ex. 51. Hi Bar did not have the funds in its account to make the advance. Ex. 51, p. 4. As Lubin stated

in an email to his counsel "Spin & Hi Bar took the position in the event its b[r]ought up in a deposition, we['] re going to say I gave a loan to Hi Bar to pay off Spin[']s balance…" [ECF No. 184-23, p.2]. And, Lubin confirms his intent in a separate email to different counsel when he states, "Ill give my UCC to Franklin for free though would need to get another company to payoff Spin so theres (*sic*) no issues with Franklin owning the obligation (this was just me being cautious, and probably should've kept the balance on Spin)." [ECF No. 184-15, p. 1, ¶ 4].

35.    Hi Bar does not provide any factual support to dispute the Plaintiff's allegations. Hi Bar points to an incorrect legal conclusion which Lubin expresses to his counsel in an email. Plaintiff objects because Lubin's statement cannot be reduced to admissible testimony at trial and therefore cannot be considered in connection with summary judgment. *See Reply Memo*, 5-7.

36.    The 2024 Michigan Order is not hearsay but is afforded collateral estoppel effect. *See Reply Memo*, ¶¶ 8-12. *See also* Ex. 44.

40.    That the Debtor's obligation to Hi Bar is separate is irrelevant to the allegations. Plaintiff disputes that Hi Bar advanced the $2,114,312.50, *see* Paragraph 27(a)-(k) and Exhibits 10, 16, 48, 49, 50, and 51. Plaintiff does not dispute that funds in the Debtor's bank account were commingled. Hi Bar's statements that "the funds paid to Hi Bar simply passed through Excell's account" and "were truly funds of Karma of Palm Beach and/or Karma of Broward" are unsupported by any competent evidence and are mere "conclusory statements" or "legal conclusions." *See Reply Memo*, ¶¶ 2-4. Karma of Palm Beach and Karma of Broward are listed as Merchants in the First Hi Bar Contract.

43.    The same evidence that supports paragraph 42, which is undisputed supports the allegations in paragraph 43.

45.    Hi Bar's Response to Paragraph 40 is irrelevant to the allegations in Paragraph 45.

**B. Hi Bar's Additional Facts as Joined by Spin [ECF No. 276]**

49.     Undisputed.

50.     Disputed.  The written document is titled as a "Revenue Purchase Agreement" and is dated October 27, 2021 (the "**First Hi Bar Contract**").  However, as set forth in paragraph 27 above, the First Hi Bar Contract was never "entered" and to the extent it was, it was November 1, 2021.  Hi Bar defines "Obligors" as "Excell Auto Group and a number of other related entities identified in that Agreement." The First Hi Bar Contract defines the singular noun "Merchant" collectively as "EXCELL AUTO GROUP, INC. **AND** ALL ENTITIES LISTED ON THE "EXHIBIT A" [ECF No. 184-21, p. 1 (emphasis added)].  The Plaintiff treats "Obligors" the same as "Merchant."  However, neither Scott Zankl nor Kristen Zank had authority to bind the following entities to the First Hi Bar Contract:

   a.  At all times relevant, Excell Auto Sport and Service, Inc. was a Florida corporation, in which Scott Zankl held only 25% of the stock interest and was listed as vice president.

   b.  Automotive Service, Inc. was a Florida corporation which was dissolved in March of 2017.

   c.  Miss Kris, LLC was a Florida limited liability company and was dissolved in June of 2009.

   d.  KZ Consultants, Inc. was a Florida corporation which dissolved in September of 2020.

   e.  Dealer Souq USA, LLC was a Florida limited liability company which was dissolved in June of 2017.

51.     Disputed and objection this is a legal conclusion which is the subject of this adversary proceeding.  *See Reply Memo*, ¶¶ 2-4.  The First Hi Bar Contract speaks for itself.

52.     Disputed and objection this is a legal conclusion which is the subject of this adversary proceeding. The First Hi Bar Contract speaks for itself.  *See Reply Memo*, ¶¶ 2-4.

53.     Disputed and objection this is a legal conclusion which is the subject of this adversary proceeding.  The First Hi Bar Contract speaks for itself. *See Reply Memo*, ¶¶ 2-4.

7

54.     Disputed.  The Plaintiff treats "Obligors" to mean "Merchants" in the First Hi Bar Contract, and as set forth in Paragraph 50 above, neither Scott Zankl nor Kristen Zankl had the authority to bind the certain of the non-Debtor entities included in the term "Merchants" in the First Hi Bar Contract.

55.     Disputed and Objection. Hi Bar does not reference this paragraph as support for any of its positions in its *Response to the Motion for Summary Judgment* [ECF No. 268].  Nothing in this paragraph would prevent this Court from concluding that Lubin was an agent of Hi Bar. Spin Capital, LLC and Hi Bar Capital, LLC, appear to be two distinct legal entities. However, "control" is a legal conclusion over which this Court makes the determination.  Yisroel Herbst, the owner of Hi Bar Capital, ¶ 49, testified that Hi Bar was operated informally amongst a tight-knit group of individuals, including Lubin, who made decisions regarding funding deals and other matters in the operations of Hi Bar, and when questioned about how Hi Bar got involved with the Debtor, Y. Herbst stated, he had heard about Excell from Yoel Getter and Josh Lubin, and that "originally [Hi Bar] joined the deal on the outside and then eventually [Hi Bar] took over the deal, as far as I remember."  Ex. 52 (Y. Herbst Dep. Tr., p. 70/Line 2 – p.85/Line 9, May 7, 2024). Y. Herbst also testified that Lubin had authority to collect on the Hi Bar Loan, short of physical harm. Ex. 52 (Y. Herbst Dep. Tr., p. 205/Line 1- p.209/Line 9, May 7, 2024) and Ex. 53 (Y. Herbst Dep. Tr., p. 91/Line17 – p.94/Line 4, May, 28, 2024). Finally, in the 2025 Michigan Order, Lubin is found be a representative of both Spin and Hi Bar. [Ex. 44, p. 10].

56.     Undisputed.

57.     Disputed and objection.  Paragraph 57 is a legal conclusion, the Hi Bar Transfer Agreement speaks for itself.  "Obligors" is a defined by Hi Bar to have the same meaning as "Merchant" in the First Hi Bar Contract.  The Hi Bar Transfer Agreement is purported to be

electronically signed by Kristen Zankl, individually and on behalf of Excell Auto Group, Inc., on October 28, 2021, and electronically signed by Scot Zankl on November 1, 2021. Ex. 49, p. 15. The Hi Bar Transfer Agreement does not reference any of the other non-debtor entities that purport to make up the "Merchant" in the First Hi Bar Contract or Third Spin Contract. Ex. 49, pp. 1, 9-10, and 14 and Ex. 10, pp. 1-3.

58.    Disputed.  *See* Paragraph 27, *supra*, and Exhibits 10, 16, 48, 49, 50, and 51.

59.    Disputed and objection. Paragraph 59 contains no factual allegations.  Paragraph 59 contains improper legal conclusions and an improper hypothetical.  *See Reply Memo* ¶¶ 2-7.

60.    Undisputed.

61.    Disputed.  If the Court finds that the First Hi Bar Contract was void, with the principal and interest forfeited, then there could be no default.  Otherwise, as set forth in paragraph 11 above, several "Events of Default" are immediately triggered upon the First Hi Bar Contract becoming effective.

62.    Disputed. There is a document titled Settlement Agreement dated December 19, 2021, which is purported to be between Hi Bar and the Merchant, however, as set forth in paragraph 2, above, neither Scott nor Kristen Zankl had authority to sign on behalf of some of the "Merchant" entities, including those entities that had been dissolved prior to entering the First Settlement Agreement.

63.    Disputed and objection this is a legal conclusion which is the subject of this adversary proceeding.  The document speaks for itself. *See Reply Memo*, ¶¶ 2-4.

64.    Disputed and objection this is a legal conclusion which is the subject of this adversary proceeding.  The documents speak for themselves. *See Reply Memo*, ¶¶ 2-4.

9

65.     Disputed.  Again, the statement is a general statement which does not identify any purported default.

66.     Disputed.

67.     Objection, Hi Bar does not cite to this paragraph in its Response [ECF No. 268] and the document speaks for itself. Disputed.  There is a purported settlement agreement, dated February 1, 2022, between Hi Bar and a list of entities, including the Debtor.

68.     Disputed. Whether the Financing statement remains properly recorded is a legal conclusion.  Furthermore, to the extent paragraph 68 contains factual allegations, Hi Bar's allegations are unsupported because the "declaration" is unsworn and cannot be considered in connection with summary judgment, *see Reply Memo*, ¶¶ 5-7, and to the extent this Court determines *1944 Beach Blvd., LLC v. Live Oak Banking Co.*, 346 So. 3d 587 (Fla. 2022) and *1944 Beach Blvd., LLC v. Live Oak Banking Co. (In re NRP Lease Holdings, LLC)*, 50 F.4th 979, 981 (11th Cir. 2022) apply, the UCC-1 did not include the comma in the Debtor's name, which was how the Debtor spelled its name with the Florida Secretary of State. *See Reply* [ECF No. 291, ¶ 25] and Ex. 54, Ex. 55, Ex. 56, and Ex. 57.

69.     Undisputed.

70.     Undisputed.

71.     Undisputed.

## C. **Lubin Declaration**

1.     Undisputed.

2.     Undisputed.

3.     Undisputed.

4.     Undisputed.

5.      Disputed. Spin's address is identified as being in New Jersey only.  Lubin only began identifying the Brooklyn address after the hearing on the Motion for Leave to File the Third Amended Complaint.  During his deposition, Lubin could not identify when Spin was in the Brooklyn office, Spin did not have a lease with the landlord, and purportedly did not pay rent but instead made monthly "donations" to charitable organizations that Lubin could not identify. Ex. 58 (Spin 30(b)(6) Tr., p. 9/Line 9 - p.12/Line 16, Feb. 18, 2025).

6.      Disputed.  Lubin does not support this position.  All documents relating to Spin have a New Jersey address.  Lubin testified the New Jersey address was the address for Spin and that was where he lived. Ex. 58 (Spin 30(b)(6) Tr., p. 9/Line 9 - p.12/Line 16, Feb. 18, 2025).

7.      Undisputed that Hi Bar participated in the Spin Contracts.  Objection to statement regarding where Hi Bar maintained an office at the time.  The statement is unsupported by any other evidence and lacks foundation as to Lubin's personal knowledge and competence to make the statement.  Fed. R. Evid. 601 and 602.

8.      Paragraphs 8 through 15 do not contain any factual allegations relevant to the summary judgment issues.

Respectfully submitted this 10th day of April 2025.

FURR AND COHEN, P.A.
*Special Counsel for Trustee*
2255 Glades Road, Suite 419A
Boca Raton, FL 33431
Tel: (561) 395-0500/Fx: (561) 338-7532

BY:___ /s/ *Jason S. Rigoli*
       Alan R. Crane, Esq.
       Florida Bar No.: 0963836
       E-mail: acrane@furrcohen.com
       Jason S. Rigoli, Esq.
       Florida Bar No.: 91990
       E-mail: jrigoli@furrcohen.com

11