UNITED STATES BANKRUPTCY COURT.

SOUTHERN DISTRICT OF FLORIDA

WEST PALM BEACH DIVISION

CASE NO. 22-12790-EPK

IN RE:

 EXCELL AUTO GROUP, INC.,

                 Debtor.
_____/

NICOLE TESTA MEHDIPOUR,

CHAPTER 7 TRUSTEE,


                 Plaintiff,


vs.                                ADV. NO. 23-1132-EPK


HI BAR CAPITAL, LLC, ET AL.,


                 Defendants.

 _____/


                MOTION TO RECONSIDER (243) and

                MOTION TO DISMISS COUNT 29 (279)


                     April 23, 2025

          The above-entitled cause came on for hearing
before the Honorable ERIK P. KIMBALL, Chief Judge of the
UNITED STATES BANKRUPTCY COURT, in and for the SOUTHERN
DISTRICT OF FLORIDA, at 1515 North Flagler Drive, West
Palm Beach, Palm Beach County, Florida, on April 23, 2025,
commencing at or about 10:00 a.m., and the following
proceedings were had:
          Transcribe From a Digital Recording By:
              Anna M. Meagher, Shorthand Reporter

APPEARANCES:

Furr & Cohen, by

Alan R. Crane, Esquire

Jason Rigoli, Esquire

On behalf of Nicole Testa Mehdipour,

Chapter 7 Trustee

Email:  Acrane@furrcohen.com

Email:  Jrigoli@furrcohen.com


Leto Law Firm, by

Matthew P. Leto, Esquire

On behalf of Hi Bar Capital, LLC

Email:  Mleto@letolawfirm.com


Via Zoom Video Conference:


Joel M. Aresty, P.A., by

Joel M. Aresty, Esquire

On behalf of Spin Capital, LLC

Email:  Aresty@mac.com


Avrumi Lubin, Pro Se


- - - - - - -

Page 3

THE CLERK: All rise. This Honorable Court is back in session. Chief Judge Kimball presiding.

UNIDENTIFIED SPEAKER: Good morning, Judge.

THE COURT: Good morning, gentlemen.

(In Unison: Good morning, your Honor.)

THE COURT: All right. Thank you. Please have a seat.

Let's see, Ms. Leonard, whenever you're ready.

THE CLERK: Okay. We're here in the matter of Mehdipour v. Hi Bar Capital, LLC, et al., Case No. 23-1132.

Appearances in the courtroom.

MR. RIGOLI: Good morning, your Honor. Jason Rigoli special counsel to the plaintiff and trustee, Nicole Testa Mehdipour. In the courtroom with me is Alan Crane.

THE COURT: Gentlemen, good morning.

MR. CRANE: Good morning.

MR. LETO: Good morning, may it please the Court, your Honor. Matthew Leto on behalf of the Hi Bar defendants.

THE COURT: Good morning.

THE CLERK: And on Zoom, Mr. Lubin.

MR. LUBIN: Avrumi Lubin on behalf of

Page 4

myself.

THE CLERK:  Mr. Aresty, are you making an appearance in this case?

THE COURT:  Yes.

MR. ARESTY:  Yes, I'm sorry.  I was waiting to be called on.  Joel Aresty, representing Spin, of which Mr. Lubin is the corporate representative also.

THE COURT:  Understood.  All right.

Should we start with the motion to dismiss Count 29?

Mr. Aresty, I think that was yours.

MR. ARESTY:  Oh, I'm sorry, Judge, again. That's fine.

Judge, we filed a motion to dismiss.  It was a little hurried, but there was a reply, which I think frames some of the issues.  Obviously, Judge, we would like you to kick this Count 29 out.  You didn't allow it as to Hi Bar.  It was sort of an outlier to begin with. It's disruptive.  We don't think that it serves any purpose in the litigation itself.  But, more specifically, we don't think that it's appropriate to sue somebody under Florida law in a New York MCA.

We understand that there's been a lot of work that your Honor has done already on this issue, with this and some other parties, and we -- but in terms of --

Page 5

in terms of this count, there's just no reason for it.  It just should be dismissed.  And I think the reason for it is that there's no -- there's no loan, there's no Florida law that applies, and for the reasons stated in the filed motion at 273, we think that the count should be dismissed.

THE COURT:  Isn't it at 279?

MR. ARESTY:  I'm sorry, Judge.  My motion?

THE COURT:  Yes.

MR. ARESTY:  I'm looking at my copy.  It says "273."  There's -- 289 was the response.

THE COURT:  Hold on.

MR. ARESTY:  Maybe it was docketed twice.

THE CLERK:  It was re-docketed, 273 --

THE COURT:  It was re-docket?

THE CLERK:  Mm-hmm, 273 we re-docketed as 279.

THE COURT:  Okay.  So it is 279.  That's what I thought.

Just a moment.  I have no access right now.

MR. ARESTY:  Oh, wait a minute, I'm sorry.

THE COURT:  Yes.

MR. ARESTY:  You know what, I'm --
(distorted audio) Declaration of Josh Lubin, which is 278.

THE COURT:  Okay.  I don't think that has to

do with this either.  Mr. Lubin did file a joinder at 281.

And you're not representing Mr. Lubin individually, correct?

MR. ARESTY:  He's pro se, but I uploaded that declaration.

THE COURT:  So that means you signed it.

Let me make clear that when you file something with ECF, that is your signature.  Don't file things for people you do not represent.

MR. ARESTY:  Well, I -- okay.  It's not like he's a stranger.  I appreciate the Court's comment.  I believe that's --

THE COURT:  No, no, you should not "appreciate" the Court's comment.  This is a Rule 11 problem.

When you upload something with ECF, you have signed it.  That is you acting as a lawyer on behalf of somebody making an appearance on their behalf, under our local rules and under the CM/ECF agreement that you undertook when you became a user.

Do not file things for people who are not your client.  Is that clear?

MR. ARESTY:  Understood, your Honor.

THE COURT:  Yes.

Mr. Lubin, you joined in the motion to

dismiss Count 29.

Would you like to add anything?

MR. LUBIN:  No, I -- I -- I don't like to add anything.  I don't think so.  I don't know.

THE COURT:  All right.  Thank you.

Would you like to respond?

Of course I've read your response.

MR. RIGOLI:  Thank you, your Honor.  Jason Rigoli for the plaintiff.

Your Honor, we stand on the response to the motion to dismiss.  The motion to dismiss doesn't address anything with respect to the actual allegations in the complaint and that there's not cause of action that's plausibly set forth.  We think that it met the pleading standard of Rule 8(a), as modified by Iqbal and Twombly, and for all the other reasons that we set forth, we think the motion to dismiss Count 29 should be dismissed -- or denied, excuse me.

In addition to the fact that their attempt to argue that the application that the Court applied to Hi Bar and the two Mr. Herbsts applies to Spin and Lubin as well -- because the Court actually addressed that issue previously with respect to the motion for leave to file the third amended complaint in the first place, and said that the -- on the face of the complaint itself, it was

not clear that Spin and Lubin had the same normal relations with New York, that this issue was futile on its face.

For those reasons, Judge, we ask that you deny the motion to dismiss.

THE COURT:  Thank you.

I think I can rule on this one right now.

This is the Court's ruling on a motion to dismiss Count 29 of the third amended complaint in this action.  The motion filed by Spin Capital is in the docket at ECF No. 279.  Mr. Lubin joined in the motion at ECF No. 281.  The plaintiff responded at ECF No. 289.  The Court has carefully reviewed the third amended complaint in the docket at 253, as well as the motion and the response.

In Count 29 the plaintiff seeks judgments against Spin and Mr. Lubin solely under Florida statute 687.071.  In short the plaintiff alleges that these defendants made loans to the debtor at interest rates that exceed both the standard and criminal usury limits under Florida law and that the plaintiff is entitled to damages, at a minimum, all amounts paid to these defendants under their financial arrangements with the debtor, plus attorneys' fees and costs.

The motion to dismiss is exceedingly brief.

Page 9

The Court assumes it is a motion under Rule 12(b)(6), as the opening paragraph includes the phrase, "Failure to state a claim on which relief can be granted." Nevertheless, the motion to dismiss does not, in fact, analyze the allegations of the complaint in the manner typical required for such a motion.  The defendants baldly state that the transactions are not loans and so are not subject to the cited Florida statute.  This is, in effect, a response to the complaint, not a challenge to it sufficiency.

The defendants argue that Florida law does not apply and that this Court already so ruled.  The defendants cite transcripts during which the Court ruled on motions brought by other defendants, suggesting the Court's comments then apply to the moving defendants here. They do not.  This Court has not ruled that any particular law applies to the plaintiff's claims against Spin or Mr. Lubin in Count 29.  Indeed one hearing cited by the movants, the Court explicitly ruled that it was unclear what law applies to the moving defendants.

The movants cite New York law for the proposition that usury is only an affirmative defense and the plaintiff may not seek affirmative relief based on usury, and also for the proposition that the New York usury provision does not apply to loans exceeding

Page 10

$2.5 million.  But Count 29 is not based on New York law, and these arguments have nothing to do with the relief in Count 29.

Mr. Lubin raises no additional arguments in his joinder, which appears mostly aimed at a separate motion for summary judgment.  The plaintiff properly addresses the movants' arguments in their response.

Based on Spin's motion to dismiss, as joined in by Mr. Lubin, there is no basis to dismiss Count 29 as it relates to defendants Spin and Mr. Lubin.  The motion will be denied it.  Spin and Mr. Lubin must answer the third amended complaint as provided in the applicable rules.

The Court will enter a brief order incorporating this oral ruling denying the motion to dismiss and Mr. Lubin's joinder, as it relates to the motion to dismiss.

All right.  Let's hear about the motion to reconsider if I could.

MR. RIGOLI:  Thank you, your Honor.  Jason Rigoli for the plaintiff, Nicole Testa Mehdipour.

Judge, we're here on the trustee's motion to reconsider the order denying the motion for leave to amend -- or file the third amended complaint against Hi Bar Capital, LLC, Yisroel Herbst and Mordechai Herbst.

Page 11

Your Honor, I'll refer to these parties as the Hi Bar defendants for ease of reference.  The Hi Bar defendants did file a response at ECF No. 288.

And, Judge, first I want to thank you for allowing us to provide oral argument on this issue.  We appreciate that.

And with respect to Count 29, the pertinent issue in Count 29 for this argument is that the trustee was seeking damages against the Hi Bar defendants pursuant to Florida statute 687.071.  Now, Judge, there's been a lot of discussion about the choice of law provision in the contract and reliance on certain case law that's been provided to the Court so far.  And I want to point out that this particular adversary, there are two unique issues that are not present in the case law, such as the Eleventh Circuit's Viridis opinion, the Florida Supreme Court's Continental Mortgage versus Sailboat Key, or any of the other case law that's been cited by the Hi Bar defendants so far.

That issue is, Judge, is -- or the first issue, Judge, is the law that was selected in this case, New York law, in the first Hi Bar contract, renders on our position, as its been plead, renders that contract as a loan that violates New York's criminal usury statute and, therefore, is void ab initio and completely unenforceable.

Page 12

This same result would apply here in Florida.

And, Judge, the distinction is -- that distinction is very important, because in cases like Viridis and Sailboat Key, where they, in both cases, were dealing with usury, the selected law wasn't violated and the contracts were enforceable.  So the Court never gets to make the distinction between -- the decision on the next part, which is the scope of the actual language for the choice of law provision in the first Hi Bar contract, which is the same in all the contracts before the Court in this particular adversary proceeding.  And the scope of the choice of law provision is exceedingly narrow, and it only applies, Judge, to determining the creation, the construction, interpretation and validity of the underlying agreement itself.

Now, the Court -- or the Hi Bar defendants point to the Viridis case and they cite to the portion of the opinion where Florida law presumes that a contractual choice of law provision is going to be enforceable, and they follow with the very next paragraph -- and I'm going to quote -- "However a party may overcome this presumption by showing that a provision contravenes the strong public policy of Florida or is unjust or unreasonable," and they are relying on that position to say that the plaintiff's position is that we're violating public policy.  But that

Page 13

is not the case, Judge.  That does not set forth the exclusive means to challenge the enforceability of the underlying choice of law provision in and of itself.

And this goes back to the statement I made before, which is under New York law itself, when your Honor is considering the threshold question of whether this contract is, in fact, a loan that violated the New York criminal usury statutes and is otherwise void, then it also voids that choice of law provision.  And so it is not enforceable.  It's not --

THE COURT:  That's not circular.  Let me point out what you're saying.

MR. RIGOLI:  Yes.

THE COURT:  Substantive New York law applies because of the choice of law provision.  Substantive New York law is a New York statute, which by the way has its own remedies.  And so what you're saying is, even in New York, apparently, the remedies in the statute don't apply, because as soon as you avoid the statute as a result of its application, then the choice the law provision is no longer applicable.  And that means a New York court could use their own conflict of law determination to choose some other remedy, because the statute no longer applies because the choice of law no longer -- isn't it circular?

MR. RIGOLI:  Well, Judge, the issue is if

you were -- if your Honor's question is if we were in the New York court could --

THE COURT:  No.  I'm just pointing out to you that what you're saying is the substantive law to determine that a contract is not enforceable or void, this is not a common law analysis.  It's a statutory analysis.  The substantive law is a New York statute, which has its own remedies.  The remedies are there's a defense.  That's the only remedy.  You don't like that remedy.  You want to use a remedy from a Florida statute, where the substantive component that triggers the remedy under the Florida statute would not be applicable.

Your initial argument is circular.  You're saying, "We're going to apply a statute because New York law applies, but we're going to ignore its remedy and choose a remedy from someplace else."

MR. RIGOLI:  Well, your Honor, I guess the assumption is that -- in that is that the entirety of the New York statute is one cohesive --

THE COURT:  You've just made my argument.

MR. RIGOLI:  Well, that's an assumption that is being made, where each section has its own --

THE COURT:  So the remedy in the New York statute applies, even if the part that triggers it does not apply?  I'm trying to figure out how that is.

Page 15

MR. RIGOLI:  Well, Judge, you have a New York general obligation, 5-501 sets the bar for the substantive amount that parties in New York can charge in interest rate, and it adopts the Penal Code 190.40.  Okay.  And then the very next section is 5-511, and that just says, per se, a criminal usurious loan is void.

THE COURT:  Okay.  Great --

MR. RIGOLI:  And it's void.

THE COURT:  -- so what you're saying is the rest of the statute doesn't apply, and so if someone is sued on a criminal usurious loan in New York, they can say, "Well, you don't have the remedy of a defense, and so I can still sue you."  That doesn't make any sense.

MR. RIGOLI:  Judge, it depends on the parties to the case.  If it's two New York parties, then --

THE COURT:  No, that can't be.  I mean, if you are right, there would be already case law on this.  I mean, you can appeal this to the Eleventh Circuit.  I encourage you.  Go right ahead.  But I'm not going with this argument.  It cannot be the right argument.

What you are literally saying is that the choice of law provision is -- and by the way, it's probably severable in the same way that an arbitration clause is.  But the choice of law provision is enforceable

only to the extent of the substantive component of a New York statute.  And then, as soon as we read that substantive component, we ignore the remedies in the same statute and apply a statute from another state entirely.  There's no case to support that.

MR. RIGOLI:  Judge, then it also goes to the second part of our argument, which is that the scope of the choice of law provision also is narrow, and that also focuses on only the construct and the validity of the contract itself.

THE COURT:  Which is, in fact, the entire point of New York usury statute.  Is it not?  Because it doesn't permit affirmative recovery.  What you want is affirmative recovery in a context where you would agree that New York law applies.

I mean, really it's your -- it's your civil RICO claim that is the one that let's you recover.  Not this.  I mean, I -- I think I've told you what my view is, so -- and by the way, I did not rely solely on the cases cited by the parties in this component of this action or in any other component of this action.  I started researching this when you started filing things and parties started filing motions to dismiss at the end of last year.  We spent months reading this stuff.

If you're right, it would upend a lot of

case law in Florida.  I know you think it would not, because you're not focusing on the remedies, but I don't know how you can choose the substantive law of one state and the remedy for another, except in circumstances where statutory provisions are not applicable.  The law that you cite is not in the context of statutory rights.  Statutory rights have their own remedies built-in.  So you've chosen the substantive provision of one statute and the remedial provision of another in a different state.

MR. RIGOLI:  Well, Judge --

THE COURT:  I mean, I invite you to appeal it.  I mean, it wouldn't be until after the case is done though.

MR. RIGOLI:  Understood, understood.

THE COURT:  I mean, if you're right that will be very entertaining for me.  I mean that seriously, because I don't know how the Eleventh Circuit will jive that with all the other case law that I've read, not just in Florida, but all over the country.  It would be a real problem, so -- but I invite you to do it.  But it's not going win today.

MR. RIGOLI:  Understood, your Honor.

THE COURT:  Okay.  Anything else you wish to add?

MR. LETO:  Based upon your comments, your

Page 18

Honor, I have nothing.  I'll rest on my papers.

THE COURT:  Whenever I said something like that, Judge Brisman would make fun of me, "But do you still get paid?"  And the answer is, "Yes, Judge."

All right.  So I think I can rule on this.

This is the Court's ruling on a motion to reconsider, which is in the docket at ECF No. 243.  The Court has -- you can have a seat, you don't have to --

MR. RIGOLI:  Oh, your Honor, there was the second --

THE COURT:  Yeah, I'm going to rule on that too.  I don't need to hear about it.

This is the Court's ruling on a motion to reconsider, which is in the docket at ECF No. 243.  The Court has carefully reviewed the motion and the response filed at ECF No. 288.

In an order at ECF No. 242, the Court permitted the plaintiff to file a third amended complaint adding a new Count 29, but did not permit the plaintiff to include defendants Hi Bar Capital, LLC, Yisroel Herbst and Mordechai Herbst in that new count.  For ease of reference, these three defendants are referred to as the Hi Bar defendants.  In the motion to reconsider, the plaintiff asks the Court to reconsider the order at ECF No. 242 and to permit the plaintiff to add the Hi Bar

defendants to Count 29.

Count 29 is an action seeking damages under Florida statute Section 687.071.  This is Florida's usury statute.  The requested damages include all sums paid by the debtor to the defendants under allegedly usurious loan schemes, plus attorneys' fees and costs.

In the Court's original ruling made on the record at a hearing on February 12, 2025, the Court stated substantially as follows:  Under Florida law, a contractual choice of law provision is presumptively enforceable as Mr. Leto argued and can find a -- excuse me and you can find a good discussion of that in the Eleventh Circuit's 2018 decision Viridis Corp., V-I-R-I-D-I-S, against TCA Global Credit Master Fund, L.P.  That's reported at 721 Federal Appendix 865.  There's a discussion at page 873, and there are a number of decisions cited.

To overcome this presumption, a party must show that a choice of law provision contravenes the strong public policy of Florida.  The Florida Supreme Court addressed this analysis in its 2000 decision Mizzoni Farms against DuPont De Nemours and Company, which is reported at 761 So.2d 306 at page 311.  Florida, particularly in a commercial setting, does not have a strong public policy against choosing another jurisdiction's law sufficiently

Page 20

connected with the contract.  I point you to the Florida Supreme Court's 1981 decision, Continental Mortgage Investors against Sailboat Key, reported at 395 So.2d 507, and the discussion is at page 509.  "Florida courts will recognize a choice of law provision provided by the parties, so long as the jurisdiction chosen in the contract has a normal relationship with the transaction." That's a quote from page 508 of the same case.

Here the parties chose New York law in their agreement.  In the count sought to be added to the complaint, the plaintiff would rely on Florida statutory law, a substantive provision of Florida law with regard to criminal usury.  The plaintiff argues that the text of Florida's criminal usury statute, that's Section 687.071, subsection (2), requires the conclusion that Florida law applies in this instance or with regard to those defendants.  That provision begins with the language, quote, "Unless otherwise specifically allowed by law," end quote, and thereafter sets out the parameters for criminal usury under Florida law.

The plaintiff argues that the MCA transactions are criminally usurious loans under the only other potentially applicable law, meaning New York, and so these transactions are not otherwise specifically allowed by law as that phrase is used in the Florida criminal

Page 21

usury statute.  So the plaintiff concludes that by its terms, the Florida criminal usury statute applies.  But this is putting the cart before the horse.  Florida's criminal usury statute is a substantive provision of Florida law, not a choice of law provision.

This Court would look to Florida's criminal usury statute only if the Court first determines that Florida law applies, and it does not, at least with regard to Hi Bar and the two defendant named Herbst, consistent with the allegations in this particular complaint as it currently sits and as the plaintiff would seek to amend it.

As a federal court sitting in Florida, this Court applies Florida's choice of law rules.  Under Florida's choice of law rules, the provision of the MCA agreement with Hi Bar which elects New York law is presumptively valid.  No public policy in Florida prevents application of the contractual choice of law in this case. In light of Hi Bar's domicile in New York, New York has a normal relationship with the transaction involving Hi Bar and the two defendants named Herbst .

Although the Court can decline to enforce a choice of law provision where the selected law would result in the contract being void or unenforceable, and the contract would remain enforceable under other

Page 22

potentially applicable law, that's not the case here.  If the plaintiff is correct, the MCA transaction, particularly with Hi Bar, would be unenforceable under both Florida and New York law, and so the savings provision that the restatement of contracts addresses would not be applicable in this instance, because based on the allegations, the contract would be invalid in both places.

I don't think the words "Center of Gravity" were actually mentioned during today's hearing, although I thought that part of the argument was aimed at New York's choice of law analysis.  In case it is, the center of gravity test doesn't apply at all in this instance, has no bearing on this case in any regard.  This Court does not apply any choice of law analysis used in New York.  We use the Florida one, and so that analysis never comes into play.

Based on the allegations in the complaint, the parties selection of New York law is binding with regard to the objecting parties, Hi Bar, and the two defendant Herbst, so the Court will apply New York substantive law with regard to those defendants, and the plaintiff cannot add this last count to the complaint, the proposed amendment under Florida statutory law with regard to those entities.  That amendment would be futile.  I

think the argument is correct.

And so the motion is denied to the extent that it seeks to amend the complaint to add this last count with regard to Hi Bar and the two defendant named Herbst.  So with a few non sequiturs deleted, that was the entirety of the Court's ruling with regard to the Hi Bar defendants.

The plaintiff's motion for leave to file a third amended complaint in the docket at ECF No. 198 made no argument at all with regard to the choice of law issue. In contrast, almost all of the Court's ruling directly parallels the arguments presented in the response to the motion to amend, which is in the docket at ECF No. 216.

In making its ruling, the Court relied on the text of the plaintiff's own third amended complaint. In the proposed amended complaint, and in the now operative third amended complaint at ECF No. 253, the plaintiff admits that Hi Bar is domiciled in New York. There's no allegation that the transaction lacks a normal relation to New York.  The plaintiff's own complaint led to the Court's conclusion on applicable law.

The sole component of the Court's ruling that is not addressed in the original response consists of a few sentences addressing what happens when a contract may be void or unenforceable under both potentially

Page 24

applicable laws. In the motion to reconsider, the plaintiff suggests this argument was raised sua sponte. The Court mentioned it that day only because it had been raised in another motion in this same litigation and was in mind, but that component is not necessary to the Court's ruling. In the original response, the Hi Bar defendants raised the correct arguments. The Court agreed.

In the motion to reconsider, the plaintiff argues that because the agreement between the debtor and Hi Bar is a criminally usurious loan under New York law, the agreement is void ab initio under New York law and so the Court should consider remedies available to the plaintiff without regard to the contractual choice of law provision selecting New York law. The plaintiff argues that this Court, sitting in Florida, should rely on Florida's choice of law to determine available remedies, that Florida follows the Lexfori rule, L-E-X-F-O-R-I, to determine remedies, and so this Court should choose Florida law remedies. The plaintiff argues that Florida statutes section 687.071 provides the applicable remedy here with regard to the Hi Bar defendants.

To put this argument in perspective, the plaintiff asked the Court to rule that the agreement between the debtor and Hi Bar is invalid under a New York

Page 25

statute, which statute contains its own remedies, but that the Court must, nevertheless, apply remedies under a Florida statute in spite of the fact that Florida substantive law does not apply.

In an action on a contract where the validity of the contract is governed by the law of another state, the state courts of Florida are not bound by that same foreign law when determining appropriate remedies. This far the Court agrees with the plaintiff.  The problem is that the Florida statute relied on in Count 29 is not such a remedy.  The remedies provided in Florida statute Section 687.071 apply only when the substantive provisions of that statute apply.  The substantive provisions of the Florida usury statute apply only where the relationship between the parties is governed by the law of Florida in the first place.

In this case, as the Court explained in its original ruling, Florida's conflict of law rules lead the Court to enforce the parties' contractual choice of New York law with regard to the Hi Bar defendants.  Therefore, for those defendants, plaintiff must look to New York law to address all usury concerns, including remedies.

The plaintiff cites a single decision for the proposition that usury claims are in the nature of a tort and thus not covered by the contractual choice of New

York law.  The cited decision presents a complex analysis of whether a particular arbitration agreement required arbitration of usury claims.  It is not applicable here.  In any case there's ample case law addressing conflicts of law -- excuse me, conflict of law concerns in the usury context.  The Court is not aware of any conflict of law ruling in the usury context relying a theory that such claims arise in tort.

In the process of ruling on the plaintiff's original motion for authority to file the third amended complaint and in ruling on several dispositive motions in this same adversary proceeding, the Court reviewed numerous reported decision addressing conflicts of law concerns in the context of usury claims.  The Court is also mindful of the second restatement of conflicts of law, which has an independent section covering choice of law for usury claims.

The Court is not aware of a decision supporting the plaintiff's argument that when a contractual choice of law provision leads a federal court to apply the usury statute of a state, other than the forum state, the Court may nevertheless apply a remedy derived from the foreign states usury statute.  Put another way, in all the case law reviewed by the Court, when a state's usury statute applies, the entirety of that

law applies, including its remedies.

If the plaintiff is right, this would be quite a departure from current case law, not just in Florida, but in various other states.  As to Florida in particular, as the Court noted in its original ruling, the Florida Supreme Court has held that parties can contract in such a way that they avoid Florida's usury laws.  It makes little sense, then, to conclude that Florida's usury statute still provides potential remedies against those parties.  So when the motion for reconsideration -- so the motion for reconsideration is due to be denied solely because the plaintiff's argument is not supported by the law.

The plaintiff suggests that the motion to reconsider arises in part from the Court's comments during the oral ruling regarding contractual choice of law when the contract is unenforceable under either applicable states' law.  As noted a few moment ago, those few sentences are not necessary to the Court's original ruling.  In any case, the plaintiff's argument here is not a response to the Court's comments.

The plaintiff's argument is a completely new argument not presented, but that could have been presented prior to the Court's original ruling.  This is a motion under Rule 59(e) made applicable here by bankruptcy

Page 28

Rule 9023.  Case law makes clear that the plaintiff is not permitted to raise arguments now that the plaintiff could have raised when the Court considered the plaintiff's motion to further amend the complaint.  This is an independent reason to deny the motion for reconsideration.

Finally, the plaintiff asks the Court to extend the deadline for amendments to the complaint, so that it is 14 days prior to the scheduled pretrial conference in June 2025.  The Court entered its initial scheduling order pursuant to Rule 16, made applicable here by bankruptcy Rule 7016, on October 19, 2023, at ECF No. 30.

The Court's scheduling order includes a deadline to move to amend pleadings among a number of other common deadlines.  The Court has, multiple times, amended its scheduling order at ECF Nos. 113, 153, 203, and 240.  In its order at ECF No. 203, the Court reset the pretrial conference in this case, extended certain deadlines, but did not extend the deadline for the plaintiff to move to amend the complaint.

In this component of the motion before the Court, the plaintiff relies on Rule 60(b)(6).  That rule does not apply.  Rule 16(b)(4) governs the plaintiff's request.  A pretrial schedule may be modified only for good cause and with the Judge's consent.  The motion does

Page 29

not state good cause.  It is premature, as the plaintiff does not propose any particular amendment to the complaint.  The motion will be denied without prejudice.

However, the Court does not want to imply that the Court is likely to permit a fourth amendment to the complaint in this case.  This adversary proceeding has been pending for almost two years.  The plaintiff has had ample time to do discovery and uncover potential claims. It is unlikely the Court would grant a motion for further amendment.

For these reasons the motion will be denied in its entirety.  The Court will enter a brief order incorporating the oral ruling.

Any questions?

UNIDENTIFIED SPEAKER:  No, your Honor.

(In Unison:  No.  No, your Honor.)

THE COURT:  Great.  Thank you all.

Good morning, everyone.

(Whereupon, the hearing was concluded.)

Page 30

CERTIFICATION

STATE OF FLORIDA        :

COUNTY OF BREVARD       :


         I, Anna M. Meagher, Shorthand Reporter, do

hereby certify that the foregoing proceedings were

transcribed by me from a digital recording held on the

date and from the place as stated in the caption hereto on

Page 1 to the best of my ability.

         WITNESS my hand this 4th day of May, 2025.


_____

ANNA M. MEAGHER,

Shorthand Reporter