Page 1

UNITED STATES BANKRUPTCY COURT.

SOUTHERN DISTRICT OF FLORIDA

WEST PALM BEACH DIVISION

CASE NO. 22-12790-EPK

IN RE:

 EXCELL AUTO GROUP, INC.,

Debtor.

_____/

NICOLE TESTA MEHDIPOUR,

Chapter 7 Trustee,


Plaintiff,


vs.                                    ADV. NO. 23-1132-EPK


HI BAR CAPITAL, LLC, et al.,


Defendants.

 _____/


ORAL RULING ON MOTION FOR SUMMARY JUDGMENT (168)

May 28, 2025

The above-entitled cause came on for hearing before the Honorable ERIK P. KIMBALL, Chief Judge of the UNITED STATES BANKRUPTCY COURT, in and for the SOUTHERN DISTRICT OF FLORIDA, at 1515 North Flagler Drive, West Palm Beach, Palm Beach County, Florida, on May 28, 2025, commencing at or about 11:00 a.m., and the following proceedings were had:

Transcribe From a Digital Recording By:

Anna M. Meagher, Shorthand Reporter

APPEARANCES:
(Via Zoom Video Conference:)


Furr & Cohen, by
Jason Rigoli, Esquire
On behalf of Nicole Testa Mehdipour,
Chapter 7 Trustee
Email:  Jrigoli@furrcohen.com


Shraiberg Page, P.A., by
Patrick R. Dorsey, Esquire
On behalf of Franklin Capital Funding, LLC
Email:  Pdorsey@slp.law


Leto Law Firm, by
Matthew P. Leto, Esquire
On behalf of Hi Bar Capital, LLC,
Mordechai Herbst and Yisroel Herbst
Email:  Mleto@letolawfirm.com


Joel M. Aresty, P.A., by
Joel M. Aresty, Esquire
On behalf of Spin Capital, LLC
Email:  Aresty@mac.com


Avrumi Lubin, Pro Se

- - - - - - -

Page 3

THE CLERK:  Now we're on to the 11 o'clock matter, Medipore v. Hi Bar Capital, LLC, et al., Case No. 23-1132.

Mr. Rigoli.

MR. RIGOLI:  Good morning, Your Honor. Jason Rigoli, I'm special counsel to the trustee and plaintiff, Nicole Testa Mehdipour.

THE CLERK:  And let's see, let's go down to Mr. Dorsey.

MR. DORSEY:  Good morning, Judge.  Patrick Dorsey on behalf of defendant, Franklin Capital Funding, LLC.

THE CLERK:  Mr. Aresty.

MR. ARESTY:  Joel Aresty, representing Spin Capital, and I see Mr. Lubin is also monitoring the hearing.

THE CLERK:  Mr. Leto.

MR. LETO:  Good morning.  May it please the Court, Your Honor, Matthew Leto on behalf of Hi Bar Capital and the Herbsts.

THE CLERK:  And I don't know if Mr. Breslin wanted to make an appearance.

MR. BRESLIN:  No, I'm just observing.

Thank you very much.

THE COURT:  Very good.  Good morning,

Page 4

everyone.

I set a hearing today to make an oral ruling on ECF 168, which is a motion for summary judgment.

Is there anything I should know before I do that?

MR. LETO:  Nothing from Hi Bar, Your Honor.

THE COURT:  Good.  All right.  Then we will move ahead.

This is the Court's ruling on the motion for summary judgment filed by defendants Hi Bar Capital, LLC, Mordechai Herbst and Yisroel Herbst in the docket at ECF No. 168.  In this ruling, I will refer to these defendants together as the Hi Bar defendants.  The Hi Bar defendants seek summary judgment on counts 1, 2, 3, 6, 7, 8, 17, 18, 19, 20, 21, 22, 23, 24, 25, and 28 of the third amended complaint.  The third amended complaint is at ECF No. 253.

The Court notes that though the motion targets the second amended complaint, the Court directed that parties treat the Hi Bar defendants' answer and motion as though aimed at the third amended complaint.  I refer you to ECF No. 242.  This is because the third amended complaint is identical to the second amended complaint, but adds a Count 29 not aimed at the Hi Bar defendants.

The defendants Spin Capital, LLC and Avrumi

Lubin joined the motion with regard to counts 1, 2, 6, 7, 8, and 28.  That joinder is at ECF No. 174.  I will refer to the Hi Bar defendants, Spin Capital and Mr. Lubin as the movants. The plaintiff, Nicole Testa Mehdipour, as Chapter 7 trustee for EXCEL Auto Group Inc., filed a response at ECF No. 220.  In addition to responding to the motion, the plaintiff seeks summary judgment in its favor on all counts addressed in the motion pursuant to Rule 56(f)(1).  Defendants, Franklin Capital Funding, LLC and Franklin Capital Group, LLC, joined in the plaintiff's response at ECF No. 222, except to the extent the plaintiff alleges she is a third-party beneficiary of the Wing Lake assignment document.  In addition to these documents, the Court reviewed the statements of material fact at ECF Nos. 167, 221, and 265, and the briefs at ECF Nos. 266, 274, and 281.  The Court has considered all of these materials in light of the standards contained in Rule 56, made applicable here by Bankruptcy Rule 7056 and relevant case law.

To the extent the plaintiff seeks summary judgment in its response, that relief will be denied.  The plaintiff filed its own motion for partial summary judgment in this case at ECF No. 183, which seeks summary judgment on a number of the counts addressed in the present motions.  With regard to those counts, it is

appropriate for the Court to consider the plaintiff's request in light of its more fulsome presentation there. With regard to counts not addressed in the plaintiff's own motion for partial summary judgment, the plaintiff's presentation here is not adequate to support summary judgment in its favor.

For ease of reference and to avoid confusion, I will use the defined terms from the third amended complaint, unless otherwise noted.

Counts 3, 6, 7, and 8 of the third amended complaint seek relief based on allegations that the first Hi Bar contract for settlement agreement, second settlement agreement, and third Spin contract are loans on which the interest charged or sought to be charged exceeds the limit for criminal usury under New York or Florida law.

Count 3 seeks a declaratory judgment to this effect, among other things, against Hi Bar alone as to the first Hi Bar contract, first settlement agreement, and second settlement agreement.

Count 6 seeks similar relief under civil RICO with the unlawful debt alleged to be set forth in the first Hi Bar contract, the first settlement agreement, the second settlement agreement, and the third Spin contract.

Count 7 seeks relief under the related

conspiracy provision relying on allegations that the moants' transactions with the debtor constitute criminally usurious loans.

Count 8 seeks relief under civil RICO with the unlawful debt alleged to be set forth in the first Hi Bar contract, the first settlement agreement, and the second settlement agreement.

The Court notes that Count 3 seeks declaratory relief only as to Hi Bar. Count 5 -- Count 4, excuse me, which seeks the same relief as to Spin and the three Spin contracts is not the subject of this motion. Nevertheless, the arguments presented impact claims in counts 6, 7, and 8, which seek relief against Spin and or Mr. Lubin.

The movants argue that the plaintiff cannot succeed on counts 3, 6, 7, and 8 as the transactions in question are not loans and thus are not subject to usury. The movants argue that the subject agreements have choice of law provisions selecting New York law and that under case law construing New York law, their financial arrangements with the debtor are not loans.

The Court previously ruled in this adversary proceeding that the contractual choice of law provisions affecting Hi Bar are binding and that the Court must look to New York law for usury analysis with regard to Hi Bar.

The Court previously ruled that it is unclear whether the debtor's transactions with Spin have a normal relationship with the state of New York, such that the contractual choice of New York law is binding with regard to Spin.

These issues were addressed in an oral ruling delivered on February 12th, 2025, which is incorporated in an order at ECF No. 242.  The Court later denied the plaintiff's request that the Court reconsider the Court's choice of law determination with regard to the Hi Bar defendants in a detailed oral ruling delivered on April 23, 2025 and incorporated in an order at ECF No. 295.  Nothing in the briefing for the present motion would lead the Court to reach a different conclusion with regard to Hi Bar or Spin.

The movants argue that the debtor's agreements with Hi Bar and Spin satisfy the three-factor test set out in a 2022 New York trial court decision, Principis Capital, LLC versus I Do, Inc, which is reported at 160 NYS.3d 325.  The three factor analysis is at pages 326 and 327.  The Principis court ruled that when determining whether a transaction is a loan, courts consider whether the principal sum advanced is repayable absolutely.  And in doing so, they consider, one, whether there is a reconciliation provision in the agreement, two, whether the agreement has a finite term, and, three,

Page 9

whether there is any recourse should the merchant declare bankruptcy.

The movants cite several decisions they argue stand for the proposition that an MCA agreement satisfying these factors is not a loan and thus is not subject to usury analysis.  The movants then argue that the debtors agreements with Hi Bar and Spin have reconciliation provisions that purport to be mandatory, that they do not have a finite term because they are subject to reconciliation and adjustment and that there is no explicit bankruptcy default.  Having satisfied the Principis test, the movants posit that the plaintiff is not entitled to relief on counts 3, 6, 7, or 8.

The case law addressing whether MCA agreements are loans subject to usury has evolved significantly since decisions such as Principis.  Indeed, the Principis court itself states that while these factors are usually looked at, the court's goal is to determine whether the financier is entitled to repayment under all circumstances.  Courts applying New York law consider these three factors relevant, but they are certainly not dispositive.  You can find a useful discussion of this in Haymount Urgent Care, PC against GoFund Advance, reported at 609 F.Sup.3d 237, beginning at page 247.

Courts also consider other circumstances,

Page 10

including, quote, "Objective indicia of the party's intent to distinguish between intent to borrow and intent to engage in a joint transaction or exchange money for some other reason," end quote.  This is a quote from the Haymount decision with internal quotations omitted.  The Court must analyze the relevant agreement as a whole, and in many cases, the circumstances surrounding the agreement to determine whether a transaction is a loan.

As noted a few moments ago, the Hi Bar agreements must be analyzed under New York law.  At this point in the litigation, in the context of the present motion for summary judgment, it is unclear whether the Spin agreements are governed by New York or Florida law, but it does not appear that applicable New York and Florida law differ in any material way.  In both states courts examine the substance, rather than the form of a transaction.  For an example of a case from each jurisdiction that stands for this proposition, you can look to Growth Leasing Limited against Gulfview Advertiser, Inc., reported at 448 So.2d 1224, page 1225, a Florida case, and Blue Wolf Fund II, LP against American Stevedoring, Inc., reported at 961 NYS.2d 86, page 89, a New York case.

In determining whether an MCA transaction is a loan, a central question is how the transaction

allocates risk between the parties.  On this issue, much of the MCA case law cites other case law in the context of sales of existing accounts receivable.  For example, when analyzing an MCA transaction, the court in the Haymount decision, referenced a few moments ago, cites case law addressing sales of accounts receivable.  The question in those accounts receivable sales cases is whether the alleged purchaser of accounts receivable bore the risk that the account debtors would not make good on the accounts or whether the seller of the accounts receivable retained that risk and was obligated to pay the alleged purchaser in any case.

In our case Hi Bar and Spin do not claim to have purchased accounts receivable, existing or not. Their agreements purport to be sales of future receipts. But in spite of the movants' argument to the contrary, this analysis is instructive.  Here the question is which party takes the risk of the debtor's business not generating receipts.  If the debtor remains liable to Hi Bar and Spin, in spite of a downturn or failure of its enterprise, then the transaction most likely is a loan. If Hi Bar and Spin assume the risk of the debtor's inability to generate and collect receipts, then the transaction most likely is not a loan.

The plaintiff adequately rebuts the movants'

Page 12

argument that the Hi Bar and Spin agreements satisfy the Principis three-factor test.  In response, the plaintiff points to provisions of the agreements and circumstances under which the debtor arguably was immediately in default, leaving the debtor with no contractual right to reconciliation or adjustment.  As a result, the plaintiff argues persuasively that the Hi Bar and Spin agreements effectively have a fixed term.

On the issue of remedies, in the case of the debtor's bankruptcy, the plaintiff points to provisions in the agreements providing Hi Bar and Spin with significant rights in such a bankruptcy; that the debtor's bankruptcy is not explicitly a default appears belied by the fact that the debtor filing bankruptcy would almost necessarily result in defaults under the agreements.  But even if the movants were correct that their MCA agreements pass muster under the Principis test, they would not be entitled to summary judgment on counts 3, 6, 7, and 8.

While a transaction that fails the three-factor test likely will be considered a loan, a transaction that does not fail the three-factor test must be scrutinized more closely to determine whether or not it is a loan.  Passing the three-factor test does not mean that Hi Bar and Spin are off the hook.  At this stage of the litigation, the movants do not provide sufficiently

Page 13

detailed analyses of their agreements and other circumstances relating to the debtor and the transactions to show that their financing arrangements are not loans.

The Court does not agree with case law cited by the movants suggesting that the plaintiff cannot argue the reconciliation provisions are illusory if the debtor never sought reconciliation.  The Court's analysis of this issue begins with the text of the MCA agreement itself in light of the circumstances of the transaction.  If that text and other facts reveal that the debtor did not have an enforceable contractual right to reconciliation, it does not matter whether Hi Bar or Spin might have waived their rights under the agreement.  The question for the Court is whether the reconciliation and adjustment provisions are empty shells placed in the agreements merely to provide the appearance of flexibility for the debtor or whether they provided the debtor with actual legal rights.  To make this determination, the reconciliation and adjustment provisions must be weighed in light of the agreements as a whole and all relevant circumstances.

The movants argue that the Second Circuit confirmed that the Court's scope of review is limited to the three Principis factors and that no additional analysis is permitted.  The decision they cite is

Page 14

Fleetwood Services, LLC against Richmond Capital Group LLC, which you can find at 223 Westlaw 3882697. The decision does not stand for this proposition. The Second Circuit ruled only that having failed two of the three Principis factors, the transaction in question was a loan and the trial court need not look any further. Nothing in the Fleetwood decision would cause this Court to believe a transaction that facially satisfies the Principis factors is not subject to further scrutiny. In any case, the Fleetwood decision is not published, and it's not even binding in the Second Circuit.

In a string cite in their motion and in their reply, the Hi Bar defendants argue that a New York trial court in a suit between Hi Bar and the debtor already ruled that Hi Bar's MCA agreement with the debtor is not a loan. You can find this decision at 2023 Westlaw 3431299. While the trial court does refer to the MCA agreement between Hi Bar and the debtor, that text is followed by the court ruling that, quote, "Notwithstanding the foregoing, as asserted by the plaintiff, even if the subject transactions are viewed as loans, the usury statute does not apply to loans that are for amounts greater than $2.5 million," end quote. And then the court found that the amount at issue exceeded the cap. That is the ultimate basis for the ruling. The text quoted by the

Page 15

Hi Bar defendants relating to the MCA agreement is not necessary to the decision and is thus dicta.  In any case, it is unclear whether the New York trial court decision is a final order entitled to preclusive effect.

The Hi Bar defendants' relatively cursory argument on this issue is wanting.  In his joinder at ECF No. 281, Mr. Lubin argues that this same decision is entitled to collateral estoppel and res judicata for the benefit of Spin.  Mr. Lubin adds nothing to the arguments presented by the Hi Bar defendants.  In addition, even if the New York trial court statement regarding Hi Bar's MCA agreement had preclusive effect here, it would provide no benefit to Spin because Spin has its own separate agreements with the debtor, and the New York court did not make any ruling relating to Spin's agreements.

In summary, the movants are not entitled to summary judgment on counts 3, 6, 7, and 8 because, among other things, their presentation focuses only on the Principis three-factor test, which is not adequate in light of developing case law.  And even if it was, the plaintiff has adequately rebutted the movants' presentation by citation to the agreements and other evidence.

In Count 1, the plaintiff seeks a declaratory judgment effective against Spin, Hi Bar, and

Page 16

Wing Lake that the Wing Lake assignment document is enforceable as of November 3, 2021, that the total amount due from the debtor to Spin as of October 21, 2021, was one dollar, which was satisfied, and that all three of the Spin contracts with the debtor, including the third Spin contract, were assigned to Wing Lake.  In Count 2, the plaintiff seeks a declaratory judgment effective against Spin and Hi Bar, that the Hi Bar transfer agreement is invalid and unenforceable.

The relief requested in counts 1 and 2 depends on the interpretation of the Wing Lake assignment document.  To avoid confusion, I note that the movants refer to this agreement as the Franklin assignment and that Franklin and Wing Lake are one and the same for purposes of today's ruling.

Under this agreement, Spin assigned to Wing Lake, quote, "All outstanding obligations of EXCELL Auto Group, Inc. and each of its affiliates owing to assignor under each of, one, revenue purchase agreement dated as of June 1, 2021, by and between assignor and company and, two, the revenue purchase agreement dated as of July 9, 2021, by and between assignor and company, (collectively, the merchant agreements), and all rights of assignor under any similar or related documents (without limitation, any guarantees, security agreements, forbearance agreements,

settlement agreements, and judgments), including with respect to all collateral securing the obligation of company under the merchant agreements or securing any guarantees in respect thereof, (the documents, including the merchant agreements, are defined collectively as the merchant documents), for a purchase price of one dollar," end quote.

In reading this, I have left out certain defined terms not relevant here.  In the text just quoted, the two references to revenue purchase agreements are the first Spin contract and the second Spin contract.  The movants interpret this paragraph as not including the third Spin contract in the assignment from Spin to Wing Lake.  The plaintiff interprets this paragraph as including all three Spin contracts with the debtor.

This issue is important as the plaintiff argues that the debtor and Spin hid from Wing Lake the fact that the debtor owed Spin more than $2.1 million under the third Spin contract, because Wing Lake would not have financed the debtor if it knew of the third Spin contract and that outstanding balance.  The debtor refinanced the third Spin contract with Hi Bar via the Hi Bar transfer agreement and the first Hi Bar contract. Thus, Hi Bar incorporated the former Spin debt into its own revenue purchase agreement.  The timing of the Wing

Page 18

Lake assignment document in relation to the third Spin contract, the Hi Bar assignment, the first Hi Bar contract and the funding of the first Hi Bar contract is unclear.

As usual, to interpret the Wing Lake assignment document, the Court starts with the text of the agreement itself.  Only if the Court finds the text ambiguous may the Court rely on parol evidence.  The parties agree that Michigan law applies to this question, although Michigan law appears identical to Florida law on the issue.

The movants argue that the Wing Lake assignment document does not specifically name the third Spin contract and that the other language of the agreement does not encompass the third Spin contract within the assignment.  The movants argue that in light of explicit references to the first and second Spin contracts, it makes no sense to interpret the phrase "Similar or Related Documents" to include a separate revenue purchase agreement, that sophisticated parties would never have referenced the third Spin contract in this backhanded manner, and that the reference to similar or related documents must be read as referring only to ancillary documents relating to the first and second Spin contracts, as referenced in the parenthetical that follows that phrase.

Page 19

The plaintiff argues that the term "Merchant Documents," as used in the Wing Lake assignment document, includes not only the enumerated merchant agreements, meaning the first and second Spin contracts, but also the third Spin contract.  The plaintiff argues that the inclusion of any similar or related documents is broad enough to include the third Spin contract.

Looking solely at the text of the Wing Lake assignment document, it is not possible for the Court to determine whether the parties intended for the assignment to include any revenue purchase agreement, other than the specifically listed first and second Spin contracts.  On the one hand, the use of the phrase "Similar or Related Documents" could be interpreted to include both similar documents, meaning other revenue purchase agreements, such as the third Spin contract, and also related documents, meaning documents ancillary to the revenue purchase agreements.  The concept of similar documents could be read to relate back to the first and second Spin contracts specifically listed in that paragraph, thus including revenue purchase agreements similar to those listed contracts.  Under this interpretation, the concept of related documents could be read to reference the examples that follow in the parenthetical.

On the other hand, the phrase "Similar or

Page 20

Related Documents" could be read so that the words similar and related act together to modify the word "Documents," making the phrase a unitary descriptor aimed at the kinds of documents exemplified in the parenthetical that follows, each of which is an ancillary document and not a revenue purchase agreement at all.

While the parenthetical that follows the phrase "Similar or Related Documents" includes the words "Without Limitation," thus indicating no intent to reduce the inclusion to specifically listed documents, the Court could nonetheless limit the inclusion to comparable ancillary documents.  This narrower interpretation would not include the third Spin contract in the assignment.  A broader review of the Wing Lake assignment document, looking beyond the paragraph quoted earlier, does not assist in this analysis.

Taken as a whole, the Wing Lake assignment document appears to exhibit an intent that Spin transfer to Wing Lake, all obligations owing to it by the debtor. This would include this third Spin contract.  But a more granular reading of the agreement's entire text might lead one to conclude that the Wing Lake assignment document was carefully crafted, so that the defined term "Merchant Documents" includes only the listed merchant agreements, meaning the first and second Spin contracts, thus carving

out any other revenue purchase agreements, such as the third Spin contract.

Looking solely at the four corners of the Wing Lake assignment document and the related document titled Evidence of Assignment, the Court is unable to conclude whether the third Spin contract was also assigned to Wing Lake.  Parol evidence is required. The limited parol evidence presented in connection with the present motion for summary judgment is not sufficient to permit a ruling for either party.  Summary judgment will be denied as to counts 1 and 2.

In Count 28 the plaintiff states a claim based in promissory estoppel against Spin and Hi Bar.  In summary, the plaintiff asked the Court to find that the defendants are estopped from asserting that the debtor owed Spin anything after October 21, 2021, and -- excuse me, are estopped from asserting that any balance owing by the debtor was transferred by Spin to Hi Bar and are estopped from asserting that the debtor owes anything to Hi Bar.

The relief requested in Count 28 is closely related to the relief requested in counts 1 and 2 as it stems from the plaintiff's view that Spin and the debtor purposely hid the third Spin contract from Wing Lake to obtain financing from Wing Lake and that Spin represented

that the debtor did not have any remaining obligations to Spin.  The relief requested in Count 28 is based on representations made by Spin to Wing Lake in the Wing Lake assignment document.

In the third amended complaint, the plaintiff alleges that the debtor is a third-party beneficiary of that agreement and the debtor relied on Spin's representations that the debtor had no existing obligations to Spin.  In the present motion, the movants argue that to prevail on Count 28, the plaintiff must show that the defendants made a clear and unambiguous promise upon which the debtor relied to its detriment.  The movants argue that Spin made promises only to Wing Lake, not to the debtor, and that Hi Bar made no relevant promises at all.

At this stage of the litigation, the movants' presentation in opposition to Count 28 is woefully inadequate.  Among other things, the few cited sentences from Mr. Herbst's affidavit are narrowly drafted, are self-serving, and are not supported by other evidence.  And the movants failed to address the allegations in the third amended complaint that the debtor was a third-party beneficiary of the Wing Lake assignment document.  The Court will deny summary judgment on Count 28.

Page 23

In Count 17 the plaintiff seeks a ruling against Hi Bar that the first Hi Bar contract, the first settlement agreement, and the second settlement agreement are void and unenforceable because they are -- excuse me, are unconscionable under New York law.  Both the movants and the plaintiff cite New York law.  To be found unconscionable, the plaintiff must show that the subject agreements are both substantively unconscionable, meaning that they unreasonably favor the nondebtor party, and that they are procedurally unconscionable, meaning that the debtor had no meaningful choice but to enter into the agreements, was subject to oppressive conduct, or lacked the commercial sophistication to understand what it agreed to.  Though a fact-specific inquiry, there is a presumption of conscionability with unconscionability rarely found for contracts entered into by two businesses in a commercial setting.

On the issue of substantive unconscionability, the movants argue that the substantive component of plaintiff's claim relies on criminal usury and that under New York law, the debtor may not seek affirmative relief based on criminal usury, including a declaratory judgment.  From the third amended complaint, it does not appear that the principal allegation supporting substantive unconscionability is that, quote,

Page 24

"The underlying debt solely consisted of criminally usurious loans," end quote.  The plaintiff responds that she is not seeking declaratory relief or affirmative relief under New York's criminal usury statute itself. The plaintiff argues that Count 17 is based solely on the theory of unconscionability.

The movants are correct that New York law does not permit any form of affirmative relief based on criminal usury, but neither party points the Court to applicable law on the issue of whether the plaintiff can sidestep that limitation by presenting the claim as one under unconscionability.  It is not the Court's job to present the party's arguments.  The Court is unable to rule on whether the movants are entitled to summary judgment with regard to the substantive element of unconscionability.

On the issue of procedural unconscionability, the movants argue that the debtor was not required to sign the agreements, but chose to do so. It is not surprising that the movants offer no specific evidence that the debtor was not forced to sign the agreements as a result of pressure by Hi Bar, as it is generally impossible to provide evidence proving a negative.

In response the plaintiff cites numerous

messages between Mr. Lubin, allegedly acting on behalf of Hi Bar, and Scott Zankle regarding the subject agreements, the debtor's alleged defaults under those agreements, and related matters.  The Court has studied the extensive communications cited by the plaintiff in support of the argument that Hi Bar was strong-arming the debtor.  The plaintiff's own evidence offered in opposition to summary judgment on Count 17 indicates that the plaintiff cannot succeed on this claim.

The correspondence paints a very different picture from that alleged in Count 17.  Rather than the debtor being strong-armed in its dealings with Hi Bar, the plaintiff's own evidence shows that the debtor consistently and repeatedly stonewalled Hi Bar's efforts to obtain reasonable information from the debtor.  Over and over again, the debtor failed to respond to unsurprising inquiries from an increasingly frustrated Mr. Lubin.  Rather than acceding to Hi Bar's threats, the debtor strung them along with excuse after excuse and provided no substantive information.  Even if the plaintiff can satisfy the substantive component of unconscionability, the plaintiff's own evidence at this stage negates the plaintiff's allegations on the procedural component.

The Court notes that it does not appear the

Page 26

plaintiff's allegations overcome the presumption of conscionability between these two businesses in this commercial setting.  Indeed, by the plaintiff's own admission, the debtor had entered into numerous similar agreements by the time the debtor entered into the subject agreements.  The Court will grant summary judgment in favor of the defendants on Count 17 of the third amended complaint.

In counts 18 through 25, the plaintiff seeks relief against Hi Bar based on fraudulent transfer.  The plaintiff relies on both actual and constructive fraud theories and presents claims under Bankruptcy Code Section 544, relying on Florida Statutes Chapter 726 and under Bankruptcy Code Section 548.

In each avoidance count, the plaintiff seeks to avoid Hi Bar transfers and Hi Bar contract transfers. The defined term Hi Bar Transfers refers to the transactions involving the debtor's bank account at Chase Bank.  The defined term Hi Bar Contract Transfers refers to the Hi Bar transfer agreement, the first Hi Bar contract, the first settlement agreement, and the second settlement agreement, and the debtor's release of claims in the first settlement agreement and the second settlement agreement.

In the present motion, Hi Bar argues that

Page 27

the, quote, "Hi Bar obligation," unquote, is not avoidable because Hi Bar can avail itself of the statutory defense in Florida Statutes Section 726.105(b). That statute provides in relevant part that, quote, "A transfer is not avoidable under Section 726.105(1)(b) or Section 726.106 if the transfer results from enforcement of a security interest in compliance with Article IX of the Uniform Commercial Code," end quote.

Preliminarily, the parties dispute whether the Florida statutory defense is in the nature of an affirmative defense that should have been raised in Hi Bar's answer or else was waived. This issue is not part of the plaintiff's prima facie case and so is likely an affirmative defense that should be pled in Hi Bar's answer.

The Court notes that Hi Bar's answer may already put the plaintiff on notice that Hi Bar intends to defend this action, partly in reliance on Hi Bar's claimed perfected security interest. I point the parties to Hi Bar's 13th and 18th affirmative defenses. But more importantly, the plaintiff does not suggest she suffered any prejudice and is now on notice that Hi Bar intends to rely on this particular statutory defense. If Hi Bar feels it useful to amend its answer, it may file an appropriate motion.

Turning to substantive concerns, there are several issues with Hi Bar's presentation on counts 18 through 25.  These counts include some fraudulent transfer claims brought under Bankruptcy Code Section 544, relying on Florida law, and some brought under Bankruptcy Code Section 548.  The cited statutory defense applies only to fraudulent transfer claims that rely on Florida law.  Only a portion of the claims presented in these counts rely on Florida law.

Counts 18 through 25 include some claims based on actual fraud and some claims based on constructive fraud.  The statutory defense applies only to claims based in constructive fraud.  Hi Bar does not state which components of which of these counts may be subject to the statutory defense.  It is not the Court's job to make Hi Bar's argument.  Hi Bar provides almost nothing to support the suggestion that the statutory defense applies in this case.

With regard to any alleged security interest, Hi Bar cites only to a single sentence in the declaration of Yisroel Herbst to the effect that Hi Bar's UCC financing statement remains properly perfected.  This statement is self-serving, is not supported by the usual documentary evidence, and is disputed by the plaintiff.  Hi Bar provides no evidence with regard to the extent of

its claim to security interest.  The statutory defense applies only where the transfer sought to be avoided results from enforcement of a security interest covered by Article IX.  Hi Bar does not explain what enforcement mechanism was involved in this case and how that enforcement mechanism complied with Article IX.

The plaintiff's fraudulent transfer claims target transfers of cash, the incurrence of obligations, and the release of claims.  Hi Bar's motion references only a singular, apparently undefined, Hi Bar obligation. It is unclear which of the alleged fraudulent transfers this term is intended to encompass.

To the extent the defense under Florida Statute Section 726.105(b) is an affirmative defense that was not raised in Hi Bar's answer, Hi Bar is nonetheless not precluded from presenting the defense in this adversary proceeding.  However, at this time, the Court makes no determination whether Hi Bar is entitled to the defense as a matter of law.  Even if Hi Bar may rely on the defense, Hi Bar failed to present sufficient undisputed facts to establish its entitlement to the defense.  The Court will deny Hi Bar's request for summary judgment on counts 18 through 25.

A motion for summary judgment necessarily presents a limited record, devoid of the nuances of live

Page 30

testimony and without benefit of colloquy with counsel in the context of presentation of the evidence.  The Court has discretion to deny a motion for summary judgment, quote, "In a case where there is reason to believe that the better course would be to proceed to a full trial," end quote.  This is a quote from the Supreme Court's 1986 decision Anderson versus Liberty Lobby, Inc., which is reported at 477 U.S. 242, from page 255.  The 11th Circuit has similarly ruled that, quote, "A trial court is permitted, in its discretion, to deny even a well-supported motion for summary judgment if it believes the case would benefit from a full hearing," end quote.  This is a quote from United States versus Certain Real and Personal Property Belonging to Hayes, a 1991 decision reported at 943 F.2d 1292, from page 1297.  In addition to the analysis presented earlier, for those counts on which the Court will deny summary judgment, the Court would benefit from trial.

In summary the Court rules as follows:  The plaintiff sought summary judgment in its favor under Rule 56(f)(1).  That relief is denied without prejudice to the Court's consideration of the plaintiff's own pending motion for summary judgment; the Court will deny the defendant's motion for summary judgment with regard to counts 1, 2, 3, 6, 7, 8, 18, 19, 20, 21, 22, 23, 24, 25,

Page 31

and 28; the Court will grant the defendant's motion for summary judgment on Count 17.  In other words, the present motion for summary judgment is denied, except with regard to Count 17.

The Court will enter a brief order incorporating this oral ruling.

All right.  That is the end.

Any questions?

MR. LETO:  None from Hi Bar, Your Honor.  Thank you very much.

MR. RIGOLI:  No, Your Honor.  Thank you.

THE COURT:  Very good.

MR. ARESTY:  Judge, I have a question if the Court, please.

THE COURT:  Sure.

MR. ARESTY:  Count 29, having arisen after all of your scheduling orders, including those regarding dispositive motions, the question has arisen whether a motion for summary judgment on Count 29 could be brought before the Court at this time.

THE COURT:  Mr. Aresty, I may have already addressed that in an order, and I think it's ECF 242. However, I suggest to you that you wait until after I rule on the plaintiff's motion for partial summary judgment, and then ask me that question again.

Page 32

MR. ARESTY:  Thank you, Judge.

THE COURT:  Okay.  Thank you all.

Good morning, everyone.

MR. RIGOLI:  Thank you.

MR. LETO:  Your Honor, thank you.

THE COURT:  I believe court is in recess, Ms. Leonard, until 1:30?

THE CLERK:  Court is in recess until 1:30.

(Whereupon, the hearing was concluded.)

CERTIFICATION

STATE OF FLORIDA        :

COUNTY OF BREVARD        :


          I, Anna M. Meagher, Shorthand Reporter, do hereby certify that the foregoing proceedings were transcribed by me from a digital recording held on the date and from the place as stated in the caption hereto on Page 1 to the best of my ability.

          WITNESS my hand this 1st day of June, 2025.


_____

ANNA M. MEAGHER,

Shorthand Reporter