UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF FLORIDA

WEST PALM BEACH DIVISION

CASE NO. 22-12790-EPK

IN RE:

 EXCELL AUTO GROUP, INC.,

Debtor.

_____/

NICOLE TESTA MEHDIPOUR,

Chapter 7 Trustee,

Plaintiff,

vs.                                    ADV. NO. 23-1132-EPK

Hi Bar Capital, LLC, et al.,

Defendants.

 _____/


 ORAL RULING ON MOTION FOR PARTIAL SUMMARY JUDGMENT (183)

June 11, 2025

The above-entitled cause came on for hearing before the Honorable ERIK P. KIMBALL, Chief Judge of the UNITED STATES BANKRUPTCY COURT, in and for the SOUTHERN DISTRICT OF FLORIDA, at 1515 North Flagler Drive, West Palm Beach, Palm Beach County, Florida, on June 11 2025, commencing at or about 2:30 p.m., and the following proceedings were had:

Transcribe From a Digital Recording By:

Anna M. Meagher, Shorthand Reporter

Page 2

APPEARANCES:
(Via Zoom Video Conference:)


Furr & Cohen, by
Alan R. Crane, Esquire
Jason Rigoli, Esquire
On behalf of Nicole Testa Mehdipour,
Chapter 7 Trustee
Email:  Acrane@furrcohen.com
Email:  Jrigoli@furrcohen.com


Shraiberg Page, P.A., by
Patrick R. Dorsey, Esquire
On behalf of Franklin Capital Funding, LLC and
Franklin Capital Group, LLC
Email:  Pdorsey@slp.law


Leto Law Firm, by
Matthew P. Leto, Esquire
On behalf of Hi Bar Capital, LLC,
Mordechai Herbst and Yisroel Herbst
Email:  Mleto@letolawfirm.com


Joel M. Aresty, P.A., by
Joel M. Aresty, Esquire
On behalf of Spin Capital, LLC
Email:  Aresty@mac.com


Also Present:

Nicole Testa Mehdipour,
Chapter 7 Trustee

- - - - - - -

OUELLETTE & MAULDIN  COURT REPORTERS, INC.
(305) 358-8875

THE CLERK:  The last matter on the calendar is Mehdipour v. Hi Bar Capital, LLC, et al., Case No. 23-1132.  Mr. Rigoli.

MR. RIGOLI:  Good afternoon, your Honor. Jason Rigoli as special counsel to the plaintiff, Nicole Testa Mehdipour, Chapter 7 trustee.

THE CLERK:  Mr. Crane.

MR. CRANE:  Good afternoon, your Honor. Alan Crane, special counsel for Nicole Testa Mehdipour, the Chapter 7 trustee and the plaintiff in the case.

THE CLERK:  Ms. Testa Mehdipour.

MS. TESTA MEHDIPUR:  Good afternoon, your Honor.  Nicole Testa Mehdipour, Chapter 7 trustee and plaintiff.

THE CLERK:  Mr. Dorsey.

MR. DORSEY:  Good afternoon, Judge.  Patrick Dorsey on behalf of Franklin Capital Funding, LLC, and Franklin Capital Group, LLC.

THE CLERK:  Ms. Leto -- Mr. -- sorry -- Leto.

MR. LETO:  Good afternoon.  May it please the Court, your Honor, Matthew Leto on behalf of Hi Bar Capital, Yisroel Herbst, and Mordechai Herbst.

THE CLERK:  Mr. Aresty.

MR. ARESTY:  Yes, thank you.  Joel Aresty,

representing Spin Capital, LLC.

THE CLERK:  And I believe the rest are listen only.

THE COURT:  Very good.

Is there anything I need to hear before I announce the oral ruling on the motion for partial summary judgment?

MR. CRANE:  Your Honor, Alan Crane.  Not from our side.

THE COURT:  Anyone else?

UNIDENTIFIED SPEAKER:  No, your Honor.  Thank you.

THE COURT:  All right.  So, hopefully, we'll retain our Internet connection for the entire time that I am speaking.

All right.  This is the Court's ruling on a motion for summary judgment filed by the plaintiff at ECF No. 183.  The plaintiff is Nicola Testa Mehdipur in her capacity as Chapter 7 trustee for EXCELL Auto Group, Inc. The plaintiff moves for summary judgment on counts 1 through 4 and on counts 18 through 27.  These counts seek relief against defendants Hi Bar Capital, LLC and Spin Capital, LLC.

Although the motion targets the second amended complaint, the Court directed that the parties

treat the answers filed by Hi Bar and Spin as though aimed at the counts of the third amended complaint at issue here. I refer you to ECF No. 242. The third amended complaint is identical to the second amended complaint but adds a Count 29, not at issue in this motion for summary judgment. The third amended complaint is in the docket at ECF No. 253. In addition to the motion, the Court carefully reviewed the briefs and statements of material facts at ECF Nos. 184, 267, 268, 275, 276, 281, 290, 291, 292, and 303.

In addition to a reply at ECF 291, the plaintiff filed a reply memorandum of law at ECF No. 290. Although ECF No. 290 might be considered in part a reply to the defendants' statement of facts, much of it constitutes an additional brief, which would cause the plaintiff's reply to exceed the page limit. Likewise, Hi Bar's response at ECF 268 does not appear to be double-spaced, as required. The Court did not strike these documents. I caution the parties' counsel not to do this again. The Court considered all of these materials in light of the standards contained in Rule 56, made applicable here by Bankruptcy Rule 7056 and relevant case law.

In their briefs the parties sometimes used defined terms different from those used in the complaint.

Page 6

This made it unnecessarily difficult for the Court to consider the motion in light of the complaint. I strongly encourage counsel not to do this in the future. For ease of reference and to avoid confusion, I will use the defined terms from the Third Amendment complaint, unless otherwise noted.

In Count 1 the plaintiff seeks a declaratory judgment effective against Spin, Hi Bar, and Winglake; that the Winglake assignment document is enforceable as of November 3, 2021; that the total amount due from the debtor to Spin, as of October 21, 2021, was one dollar, which was satisfied, and that all three of the Spin contracts with the debtor, including the third Spin contract, were assigned to Winglake. In Count 2 the plaintiff seeks a declaratory judgment effective against Spin and Hi Bar; that the Hi Bar transfer agreement is invalid and unenforceable because Spin had transferred all of its rights against the debtor to Winglake, and so had nothing to transfer to Hi Bar.

In the motion before the Court, the plaintiff presents no argument at all in connection with counts 1 or 2. The plaintiff's motion for summary judgment on counts 1 and 2 must be denied for this reason alone.

The relief requested in counts 1 and 2

depends on the interpretation of the Winglake assignment document.  The plaintiff argues that the Winglake assignment document includes the third Spin contract.  The defendants disagree and argue that the third Spin contract was assigned to Hi Bar, via the Hi Bar transfer agreement.  In connection with the motion for summary judgment filed by Hi Bar and other defendants, and joined in by Spin, the Court made a thorough oral ruling on May 28, 2025.  The Court determined that looking solely at the four corners of the Winglake assignment document and the related document titled Evidence of Assignment, the Court is unable to conclude whether the third Spin contract was assigned to Winglake.  Parol evidence is required.

The limited parol evidence presented in connection with Hi Bar's motion for summary judgment was not sufficient to permit a ruling for either party.  The evidence offered in connection with the present motion for summary judgment is not helpful on this issue.  This is a separate reason to deny the plaintiff's motion for summary judgment on counts 1 and 2.

In her reply and in a statement of supplemental authority filed at ECF No. 303, the plaintiff argues that a recent decision of a Michigan trial court has preclusive effect on the issue whether Spin transferred the third Spin contract to Hi Bar or to

Winglake.  The relevant rulings are Exhibits 43 and 44 to the Plaintiff's Statement of Material Facts.  The plaintiff argues that Michigan law applies and that the Michigan trial court's findings are binding here.  But the plaintiff fails to explain how an order entered in litigation to which the debtor was not a party may be relied on by the trustee, as the debtor's stand-in in this action.  It is not the Court's job to do the plaintiff's research and make the plaintiff's arguments.

The defendants argue that the plaintiff lacks standing to challenge the Winglake assignment document and the Hi Bar transfer agreement, as the debtor was not a party to those agreements and is not a third-party beneficiary able to enforce those agreements. The plaintiff does not seek to enforce those agreements between the parties to those agreements.  The plaintiff seeks declaratory rulings to facilitate the estate's own claims against Hi Bar and Spin.

That the debtor was not a direct party to those agreements and may not be a third-party beneficiary has no impact on the plaintiff's standing in connection with counts 1 and 2.  The plaintiff, as trustee for the debtor's estate, has standing to seek declaratory relief with regard to those agreements because the validity and enforceability of those agreements has a direct impact on

the debtor's bankruptcy estate.

Counts 3 and 4 seek relief against Hi Bar and Spin based on allegations that all of the agreements between the debtor and these parties are loans on which the interest charged or sought to be charged exceeds the limit for criminal usury under New York or Florida law. That includes the first Hi Bar contract, first settlement agreement, second settlement agreement, and the first, second, and third Spin contracts. The plaintiff seeks declarations that these agreements are void under New York or Florida law or declarations that they are avoidable in orders voiding the agreements.

The first question is which law applies, New York or Florida. The Court previously ruled in this adversary proceeding that the contractual choice of law provisions affecting Hi Bar are binding and that the Court must look to New York law with regard to Hi Bar. The Court previously ruled that it was unclear whether the transactions with Spin had a normal relationship with New York, such that the contractual choice of New York law is binding with regard to Spin. These issues were addressed in an oral ruling delivered on February 12, 2025, which is incorporated in an order at ECF No. 242.

The Court later denied the plaintiff's request that the Court reconsider the Court's choice of

law determination with regard to Hi Bar in a detailed oral ruling delivered on April 23, 2025 and incorporated in an order at ECF No. 295. Nothing before the Court now leads the Court to reach a different conclusion with regard to Hi Bar.

However, based on undisputed evidence now offered by Spin, the Court concludes that New York law applies to Spin as well. While it is a New Jersey entity, during the relevant time Spin was authorized to do business in New York and its only office and place of business was in Brooklyn, New York. Spin conducted all of its business, including its business with the debtor, through its sole member, who at the time resided in New York.

The plaintiff asked the Court to use Florida's significant relationship test and to consider other aspects of the debtor and the debtor's transactions with Spin to determine that Florida law applies. The Court would use that broader test only in the absence of a contractual choice of law provision or if the Court determined that such a provision was not enforceable because the debtor's transactions with Spin did not have a normal relationship with Florida.

But the evidence offered by Spin is sufficient for the Court to conclude that the debtor's

transactions with Spin did have a normal relationship with New York, and so the party's contractual choice of New York law is binding.  Thus, New York law applies to the entirety of counts 3 and 4.

In the present motion for summary judgment, the plaintiff's argument on conflicts of law has evolved again.  The plaintiff agrees that the Court must apply Florida's conflicts of law rules and that under Florida law, the party's contractual choice of New York law is presumptively enforceable.  Assuming New York law applies, the plaintiff argues that under New York's usury statute, the relevant agreements are void as criminally usurious loans.  The plaintiff argues this means the contract provision choosing New York law is also void and the Court must undertake a completely new conflicts of law analysis using Florida's significant relationship test.  The plaintiff then argues that based on the circumstances of the transactions, the Court would determine Florida law applies and would rely on Florida's usury statute for remedies.

In an action on a contract, where the validity of the contract is governed by the law of another state, the state courts of Florida are not bound by that same foreign law when determining appropriate remedies. This far the Court agrees with the plaintiff, but that

analysis does not apply in the context of this case.  This is not a common law contract dispute.  The plaintiff is not asking the Court to determine that the debtor's agreements with Hi Bar and Spin were unenforceable from the start as a matter of contract law.  In fact, the plaintiff starts with the enforceability of the agreements for the proposition that New York's usury statutes apply because the parties agreed that it would.  Put another way, if the parties had not entered into a valid contract, there would be no choice of law provision, and we would not be starting with the presumption that New York law applies as the parties agreed.  The plaintiff is correct in part.

Assuming the debtor's agreements with Hi Bar and Spin constitute criminally usurious loans under New York law and that they do not exceed the $2.5 million cap, the debtor would be entitled to a ruling that the obligations are void.  But because the debtor is a corporate entity, that ruling would be available only as a defense, meaning the debtor would not be entitled to affirmative relief of any kind against Hi Bar or Spin based on a claim of criminal usury.  You can find these matters addressed in New York Penal Law, sections 190.40 and 190.42, and New York General Obligations Law, sections 5-501, 5-511, and 5-521.

The New York Court of Appeals traced the text, history, and purpose of New York's usury laws when answering questions certified from the Second Circuit Court of Appeals in Adar Bays, LLC versus GeneSYS ID, Inc. -- that's G-E-N-E-S-Y-S -- which you can find at 179 Northeast 3rd, 612, beginning on page 615.  Under New York statutes, the determination that a criminally usurious obligation is void is the remedy.  For a criminally usurious loan to a corporate entity, it is the only remedy and is only available as a defense.  If a court applies New York statutes to void a criminally usurious loan, the court is not ruling that the parties failed to form a contract to begin with.  The court is ruling that the contract, otherwise binding and enforceable, is deemed void as a remedy.

In the most recent iteration of her conflicts of law argument, the plaintiff asked the Court to layer a Florida statutory remedy on top of a New York statutory remedy.  Once the plaintiff has the benefit of the New York statutory remedy, meaning the voiding of the agreements, the plaintiff argues this means there are no enforceable contracts at all, thus erasing the very choice of law provision that was the basis for the plaintiffs relying on New York statutes to begin with.  The plaintiff then argues that this permits the Court to do a completely

Page 14

new conflicts of law analysis, which she says would result in the Court choosing Florida law and Florida statutory usury remedies.  The plaintiff's argument is hopelessly circular.

To be clear, the Court does not agree with the tortured logic of the decision in Haymount Urgent Care versus GoFund Advance, which you can find at 690 F.Supp.3d 167 at page 174, and the same court's prior decision in that case, which is quoted at length in the cited decision.

The plaintiff's argument makes no sense under Florida law either.  The remedies provided in Florida statutes Section 687.071 apply only where the substantive provisions of that statute apply.  The substantive provisions of the Florida usury statute apply only where the relationship between the parties is governed by the law of Florida in the first place.  In this case Florida's conflict of law rules lead the Court to enforce the party's contractual choice of New York law. The plaintiff must look to New York law to address all usury concerns, including remedies.

Ms. Leonard, is everything OK?

THE CLERK:  (Inaudible.)

THE COURT:  Okay.  In the process of ruling on motions in this case, the Court reviewed numerous

Page 15

reported decisions addressing conflicts of law concerns in the context of usury claims.  The Court is also mindful of the Second Restatement of Conflicts of Law, which has an independent section covering choice of law for usury claims.  The Court is not aware of a decision supporting the plaintiff's argument that when a contractual choice of law provision leads a federal court to apply the usury statute of a state other than the forum state, the court may nevertheless apply a remedy derived from the forum state's usury statute.  Nor does the language of Florida statutes section 687.071(2) magically cause that statute to apply when the substantive law of Florida does not otherwise govern.  In all the case law reviewed by the Court, when a state's usury statute applies, the entirety of that law applies, including its remedies.

If the plaintiff is right, this would be quite a departure from current case law, not just in Florida, but in various other states.  As to Florida in particular, the Florida Supreme Court has held that parties can contract in such a way that they avoid Florida's usury laws.  It makes little sense then to conclude that Florida's usury statute still provides potential remedies against those parties.

In the alternative, the plaintiff argues that usury claims are in the nature of tort and are not

Page 16

covered by the party's contractual choice of New York law. The plaintiff argues that the party's contractual choice of law provisions selecting New York law applies only to contract interpretation matters and is not sufficiently broad to encompass the plaintiff's claims relating to usury. The Court disagrees. You will find a useful analysis of this in Fleetwood Services, LLC versus Ram Capital Funding, which is available at 2022 U.S. District Lexis 100837. Judge Liman examined a number of cases in the context of New York law and concluded that usury matters sound in contract, and not in tort, and are covered even by narrower contractual choice of law provisions. The Court is not aware of any conflict of law ruling in the usury context relying on a theory that such claims arise in tort.

In response to the plaintiff's motion for summary judgment on counts 3 and 4, Hi Bar and Spin argued that under New York law the plaintiff may not seek declaratory relief -- excuse me, that the debtor's agreements with Hi Bar and Spin are void or avoidable on the basis of usury. In connection with state law claims, that relief is available only to the debtor -- excuse me, available to the debtor only as a defense. Hi Bar and Spin are correct.

Because New York law applies to counts 3 and

4, the plaintiff is precluded from seeking the requested relief. I refer the parties to the New York statutes and the New York Court of Appeals decision in Adar Bays cited a few moments ago. It is not necessary to address the party's other arguments relating to counts 3 and 4. Because the plaintiff cannot recover on counts 3 or 4, the plaintiff's motion for summary judgment must be denied.

This ruling does not impact other counts of the third amended complaint that rely on federal law, including counts 18 through 27 at issue today. In light of the Supremacy Clause, those claims are not subject to the limitation of New York law.

In counts 18 through 25, the plaintiff seeks relief against Hi Bar based on fraudulent transfer. The plaintiff relies on both actual and constructive fraud theories and presents claims under Bankruptcy Code Section 544, relying on Florida Statutes Chapter 726, and under Bankruptcy Code Section 548. The claims presented in these eight counts are complex.

The plaintiff relies on every possible theory for relief and seeks to avoid a number of payments and also the debtor's incurrence of obligations under and releases granted in multiple agreements. The plaintiff attempts to prove she is entitled to relief on all of these numerous claims in eight pages of text in the

Page 18

motion.  Some of the arguments are so terse as to read like allegations in a complaint.  It is unsurprising, then, that the Court will deny summary judgment on the fraudulent transfer claims.

In each avoidance count, the plaintiff seeks to avoid Hi Bar transfers and Hi Bar contract transfers. The defined term "Hi Bar Transfers" refers to transfers involving the debtor's bank account at Chase Bank.  The defined term "Hi Bar Contract Transfers" refers to the Hi Bar transfer agreement, the first Hi Bar contract, the first settlement agreement, and the second settlement agreement, and the debtor's release of claims in the first settlement agreement and the second settlement agreement.

The plaintiff's presentation on these counts includes argument relating to transfers by the debtor to Spin that are not covered by counts 18 through 25.  Among other things, the plaintiff appears to argue that the plaintiff may recover a payment made by Hi Bar to Spin on the grounds that it was, in effect, a transfer of the debtor's property.  But this payment is not listed among the Hi Bar transfers covered by counts 18 through 25.  In most instances, the inclusion of Spin in the plaintiff's argument on these counts was confusing.

With regard to constructive fraudulent transfers, the plaintiff argues she is entitled to relief

under Bankruptcy Code Section 548(a)(1)(B) and under Bankruptcy Code Section 544, relying on Florida Statutes sections 726.105(1)(b) and 726.106.  The only evidence of financial distress offered by the plaintiff is an expert opinion to the effect that the debtor was insolvent at all relevant times.  Florida Statutes Section 726.105(1)(b) requires proof based on measures of financial distress distinct from insolvency.  The evidence offered by the plaintiff does not satisfy that provision.  The plaintiff is not entitled to summary judgment on any constructive fraud claim relying on Section 726.105(1)(b).  This should have been obvious to the plaintiff.

On the remaining numerous constructive fraud claims under Bankruptcy Code Section 548 and under Section 544, incorporating Florida Statutes Section 726.106, the plaintiff argues that there is a lack of reasonably equivalent value based on two independent theories.  First the plaintiff argues that the debtor's obligations to Hi Bar were illegal as criminally usurious loans and so cannot form the basis for reasonably equivalent value. The Court has studied the question whether allegedly illegal contracts may constitute reasonably equivalent value.  I refer you to this Court's 2023 decision in Furr versus George in the Bankruptcy Case of Royalty Investments and Finance, LLC, which was reported at 655

Bankruptcy Reporter 393.  Only the most egregious agreements are illegal pro tanto such that related transfers cannot constitute reasonably equivalent value. That includes things like an agreement with a hit man to murder someone.

In this case, New York law applies on the issue of usury.  For a corporate entity such as the debtor, usury is an affirmative defense that may be waived.  A usurious contract is void only if the borrower raises the issue as a defense.  Under New York law, even if the debtor's obligations to Hi Bar arise solely under criminally usurious transactions, the agreements would not be automatically unenforceable.  The plaintiff cites no directly relevant case law to support her argument that a criminally usurious loan to a corporate entity under New York law cannot constitute reasonably equivalent value for purposes of fraudulent transfer analysis.  It is not the Court's job to do the plaintiff's research for her.

In addition, as the Court will address in a few minutes, the Court will not rule today on the question whether the debtor's transactions with Hi Bar were loans subject to usury analysis.  The plaintiff is not entitled to summary judgment on any constructive fraud claim based on the argument that the transfers were not supported by reasonably equivalent value because the debtor's

transactions with Hi Bar were criminally usurious.

Second, the plaintiff argues that because Spin had transferred the third Spin contract to Winglake, Spin had nothing to transfer to Hi Bar, and so the debtor's payments to Hi Bar on account of the refinancing of the third Spin contract, meaning as a result of the Hi Bar transfer agreement, the first Hi Bar contract, and ultimately the first and second settlement agreements, were not made on account of any actual obligation and the debtor received nothing in return.  As the Court ruled earlier, it is unclear whether Spin transferred the third Spin contract to Winglake or to Hi Bar, so the plaintiff is not entitled to summary judgment on any constructive fraud claim based on this argument.

In light of the Court's analysis on the plaintiff's two theories for lack of reasonably equivalent value, the plaintiff is not entitled to summary judgment on any fraudulent transfer claim based on constructive fraud.

With regard to fraudulent transfer claims based on actual fraud, the plaintiff relies on two approaches to proving actual fraud.  First the plaintiff argues that the evidence indicates the debtor was perpetrating a Ponzi scheme and that the so-called Ponzi scheme presumption applies.  Second the plaintiff points

Page 22

to evidence that she argues supports a conclusion of actual fraudulent intent consistent with the traditional badges of fraud.

In her briefs the plaintiff's presentation on these theories is very limited. In the motion itself, the plaintiff addresses these complex issues in four paragraphs. While the plaintiff cites some evidence to support the traditional badges of fraud, the evidence offered is sparse. It is rare that the Court will grant summary judgment on the issue of actual fraud based on the traditional badges of fraud, and this case is a good example of when such a ruling is not appropriate.

The plaintiff also cites some evidence to support the conclusion that the debtor was perpetrating a Ponzi scheme during the relevant period. But the plaintiff fails to connect the various transfers, which include payments, the incurring of obligations, and releases to the Ponzi scheme in the manner required by applicable law. Even if the evidence offered was sufficient to indicate the debtor was perpetrating a Ponzi scheme, the plaintiff must show that the transfers sought to be avoided were in furtherance of that scheme. The plaintiff is not entitled to summary judgment on any fraudulent transfer claim based on actual fraud.

It does not matter that Hi Bar did not make

Page 23

these specific arguments in its response.  Under Eleventh Circuit precedent, the Court must consider the merits of the claim and cannot grant summary judgment just because there is no opposition.  It is not necessary to rule on the party's other arguments in the context of the fraudulent transfer claims.

The plaintiff's motion for summary judgment on counts 18 through 25 will be denied.

In counts 26 and 27, the plaintiff seeks to avoid and recover preferential transfers from Hi Bar under Bankruptcy Code sections 547 and 550.  The plaintiff alleges that within 90 days prior to the debtor's bankruptcy filing, the debtor made payments totaling $1.3 million to Hi Bar via Hi Bar's counsel; that the funds transferred were property of the debtor, and that the debtor was insolvent at the time.  The plaintiff alleges that the payments were not made in the ordinary course of the debtor's business.

In paragraph 503 of the third amendment complaint, the plaintiff alleges, quote, "To the extent the Second Settlement Agreement is an enforceable debt, the Hi Bar preference payments were made on account of an antecedent debt," end quote.  That is the sole allegation of antecedent debt in support of the preference claims. In its response Hi Bar argues that the funds the debtor

Page 24

paid to Hi Bar's counsel were not property of the debtor, but rather were property of Karma entities affiliated with the debtor.

The plaintiff provides evidence that all of the funds transferred to Hi Bar's counsel during the relevant period came from the debtor's bank account at Chase Bank.  In this circuit it is presumed that funds in the debtor's bank account are property of the debtor.  I refer you to the Eleventh Circuit's 2005 decision in Westgate Vacation Villas Limited v. Tabas, reported at 443 F.3rd, 767, page 771.

Hi Bar responds with evidence that Karma entities, affiliated with the debtor, transferred funds to the debtor prior to, on the same day as, or in the days and weeks after payments made by the debtor to Hi Bar's counsel in amounts the same as or sufficient to support the debtor's payments.  Hi Bar notes that the Karma entities were also obligors to Hi Bar.  From this evidence alone, Hi Bar argues that the funds transferred by the debtor were not the debtor's property.  Hi Bar provides no evidence that the debtor lacked complete control over the funds paid to Hi Bar.

The Court has no reason to believe that any funds the debtor received from the Karma entities were in any way limited or restricted.  Hi Bar does not even offer

evidence of other activity in the debtor's Chase Bank account. The evidence offered by Hi Bar is not sufficient to overcome the presumption that the debtor owned the funds that it paid from its own bank account to Hi Bar's counsel.

The unreported Eleventh Circuit decision extensively relied on by Hi Bar is not helpful. In that case, the Bankruptcy Court was presented with evidence that the debtor had neither the power to designate who would receive the funds, nor the power to disperse the funds, as the funds were designated for a particular purpose. Hi Bar offers no comparable evidence here.

But that Hi Bar's response to the plaintiff's request for summary judgment on counts 26 and 27 is not sufficient does not mean the plaintiff is entitled to summary judgment. The problem is that based on the plaintiff's own allegations in the third amendment complaint and arguments on the motion here, it is not clear that the second settlement agreement was an enforceable debt and that Hi Bar received payments on account of an antecedent debt, a required element of the claim.

The plaintiff alleges that Spin transferred nothing to Hi Bar via the Hi Bar Transfer Agreement, so there was no debt to refinance through the first Hi Bar

Page 26

contract and the first and second settlement agreements are unenforceable.  If this is the case, then Hi Bar was not a creditor of the debtor on account of the second settlement agreement, as alleged in the third amendment complaint, and payments to Hi Bar would not be under Section 547.

Again, under Eleventh Circuit precedent, even absent a response to a motion for summary judgment, the Court must determine whether the movant met their burden on the claim.  The plaintiff may meet her burden on the preference claims at trial, but she is not entitled to summary judgment on counts 26 and 27 now.

In light of the Court's rulings today, it is not necessary for the Court to address the question whether the debtor's agreements with Hi Bar and Spin are loans subject to usury analysis.  Even if it was necessary for the Court to rule on this issue, the Court would not grant summary judgment.

The case law on whether MCA agreements are loans subject to usury has evolved significantly since early New York trial court decisions such as Principis, P-R-I-N-C-I-P-I-S.  That evolution appears to be accelerating, with more and more published opinions.  In the oral ruling on Hi Bar's motion for summary judgment, announced on the record on May 28, 2025, the Court

Page 27

discussed some recent developments in the law.  That ruling is incorporated here in its entirety.

Decisions released in the past year, and some in recent months, indicate that courts are looking well beyond the surface of the MCA agreements.  In addition to detailed analyses of those agreements, courts now closely examine the circumstances surrounding the transactions, including the business practices of both the financier and the obligor, the negotiations and activities leading to the financing arrangement, the parties' course of dealing during their relationship, and the financier's actions in other transactions, among other things.  This is not intended to be a comprehensive list of considerations that may be relevant to determine whether a particular MCA agreement is a loan.  The point is that under developing case law, courts are considering all relevant facts, and those facts differ from transaction to transaction.

In connection with the motion for summary judgment, the plaintiff points to various provisions of the agreements and other facts the plaintiff believes indicate that the debtor's transactions with Hi Bar and Spin are loans.  The plaintiff's presentation is helpful.  But in light of the breadth of circumstances recently considered by courts hearing similar matters, the

Page 28

allegations in the third amended complaint and the presentations in connection with dispositive motions in this case, including the present motion for summary judgment, the Court strongly believes this case should proceed to trial.

A motion for summary judgment necessarily presents a limited record, devoid of the nuances of live testimony and without benefit of colloquy with counsel in the context of presentation of the evidence.  The Court has discretion to deny a motion for summary judgment, quote, "In a case where there is reason to believe that the better course would be to proceed to a full trial," end quote.  This is a quote from the Supreme Court's 1986 decision in Anderson versus Liberty Lobby, Inc., reported at 477 U.S. 242 at page 255.  In a 1991 decision, the Eleventh Circuit stated that, quote, "A trial court is permitted, in its discretion, to deny even a well-supported motion for summary judgment if it believes the case would benefit from a full hearing," end quote. This is a quote from United States v. Certain Real and Personal Property Belonging to Hayes, reported at 943 F.2d 1292 at page 1297.

The issue whether the debtor's transactions with Spin and Hi Bar are loans permeates the third amended complaint.  It is relevant to the civil RICO and related

Page 29

claims and is relevant to most of the fraudulent transfer claims.  The Court would greatly benefit from observing live testimony from the parties involved in the context or presentation of the documentary evidence, along with the opportunity to converse with counsel in closing argument after presentation of all the relevant evidence.

For all of the foregoing reasons, the plaintiff's motion for summary judgment will be denied in its entirety.  The Court will enter a brief order incorporating this oral ruling.

Now that the Court has ruled on the motion, I'd like to comment on the motion and briefs.  We spent literally weeks in chambers studying this matter.  In addition, I personally spent all three days of Memorial Day weekend attempting to put together a ruling on this motion.  It was a frustrating endeavor.  There are several reasons this motion was particularly difficult to get one's arms around.

The first is that the plaintiff bit off more than they could chew.  Rather than focus on a single claim or a component common to several claims and seek summary judgment only on that aspect, the plaintiff sought complete relief on a broad swath of the third amended complaint.  This resulted in an unnecessary splintering of the presentation so that no one argument got the attention

Page 30

it deserved.

The second is that the motion was not organized around the elements of the counts for which summary judgment was sought and the other briefs, to a great extent, followed suit. I've spoken about this at conferences that I know counsel for the plaintiff attended, and I've written about it in the court's newsletter twice.

One would think facilitating the court's understanding of the arguments in the context of the complaint would be at the top of the party's priorities. Yet the plaintiff, in particular, and the defendants, to some extent, persist in presenting their arguments in such a manner that we spent hours in chambers deconstructing the brief to try to align them with the third amended complaint. This was further complicated by a number of throwaway arguments, sometimes in a single sentence.

The third is that the defendants, mostly, but the plaintiff as well, cited decisions they should realize are not useful to the analysis. Distractions such as these cause unnecessary research in chambers to conclude what we already know, that the cited decisions not only do not support the proposition stated, but are in conflict with the weight of authority. At times this bordered on failure of the duty of candor to the Court.

Page 31

You should know that when I see a citation that I find doubtful, I usually read it myself.  One would think the parties wish to avoid my personal consternation.

Finally, a good deal of the difficulty with this motion is that the plaintiff has contorted her arguments in an effort to claim Florida's usury statute applies to the debtor's transactions with Hi Bar and Spin. After extensive study the Court is unable to find a defensible basis for that argument.  There are colorable claims in the third amended complaint, but rather than pursue those claims with gusto, the plaintiff continues to tilt at windmills.

Are there any questions about the ruling? And then I have a couple issues I'd like to address for the parties.

UNIDENTIFIED SPEAKER:  I don't think so.

MR. CRANE:  Your Honor, for -- no.

THE COURT:  Anyone else?

MR. LETO:  No, Your Honor.  This is Matthew Leto for Hi Bar.

THE COURT:  Okay.  Mr. Aresty, at a recent ruling you asked me about Count 29.  Now you've just heard me rule that Count 29 can't be successful with regard to anyone and the only remaining defendant is Spin.

Does Spin wish to seek to address Count 29

Page 32

on the grounds that Florida law does not apply to its transactions with the debtor?

MR. ARESTY: Yes, sir. Please.

THE COURT: Okay. So, now, if that's the case, I asked the plaintiff's counsel, would the plaintiff make any argument on the conflicts of law issue that has not already been made previously in the case?

Because if not, all those arguments would be preserved for purposes of appeal, and we would simply say that they're preserved.

UNIDENTIFIED SPEAKER: That would be fine, Your Honor.

THE COURT: All right. So would either the plaintiff or counsel for Spin object to an order that says based on an ore tenus request, summary judgment is granted in favor of Spin on Count 29 and all of the arguments previously made by the plaintiff in connection with Spin or Hi Bar are preserved in connection with Spin to the extent applicable?

MR. CRANE: Alan Crane on behalf of the plaintiff. We have no problem with that.

THE COURT: Okay. Mr. Aresty?

MR. ARESTY: No problem with us, Judge.

THE COURT: Okay. I will take care of that.

Is there anything else that we need to

Page 33

address today?

I know pretrial was moved, correct?

UNIDENTIFIED SPEAKER:  Yes, it was, Your Honor.

THE COURT:  Okay.  So that's next month or -- next month, yes.  July is next month.

Anything else?

UNIDENTIFIED SPEAKER:  No, Your Honor.

THE COURT:  All right.  Great.

UNIDENTIFIED SPEAKER:  Nothing from Hi Bar, Your Honor.  Thank you.

THE COURT:  And I hope you were able to hear everything.  I'm a little worried about the connection.

Were there breaks.

UNIDENTIFIED SPEAKER:  No, it came in loud and clear, Your Honor.

THE COURT:  Okay.  Thank you.  I was worried.  Unfortunately, we were cut off completely earlier and many of you, I think, witnessed that.  And during my reading, my screen was flashing on and off.  So who knows?  But I'm glad you could hear me.

Good afternoon, everyone.

(Counsel in Unison:  Thank you.  Thank you very much.  Thank you, Your Honor.)

(Whereupon, the hearing was concluded.)

Page 34

CERTIFICATION

STATE OF FLORIDA          :

COUNTY OF BREVARD         :

I, Anna M. Meagher, Shorthand Reporter, do hereby certify that the foregoing proceedings were transcribed by me from a digital recording held on the date and from the place as stated in the caption hereto on Page 1 to the best of my ability.

WITNESS my hand this 13th day of June, 2025.

_____

ANNA M. MEAGHER,

Shorthand Reporter