# EXHIBIT 1



**ORDERED in the Southern District of Florida on August 12, 2025.**

Erik P. Kimball
Chief United States Bankruptcy Judge

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:                                            Case No. 22-15627-EPK
                                                  Chapter 7
AUTO WHOLESALE OF BOCA, LLC,

Debtor.
_____/

## ORDER DENYING EXPEDITED JOINT MOTION

This is the Court's ruling on the *Expedited Joint Motion (I) To Enforce Sale Order and (II) To Order Distribution of Auction Proceeds to Counsel for the FVP Parties* [Dkt. No. 931; the "Joint Motion"]. The Court also considered the limited objection filed by Avrumi Lubin [Dkt. No. 950] and the reply [Dkt. No. 951].

The debtor in this case, Auto Wholesale of Boca, LLC, filed a voluntary chapter 11 petition on July 22, 2022. Dkt. No. 1. The debtor claimed to be a wholesale dealer of exotic and luxury vehicles. It had a number of vehicles in its possession at the time.

Two days after the debtor filed this case, creditors filed an adversary proceeding against the debtor claiming that vehicles in the debtor's possession were not actually the

debtor's property and were subject to liens granted by another entity. Adv. Proc. No. 22-01218-EPK (the "Adversary Proceeding"). Other creditors made similar claims by adversary proceeding and by motion. *See, e.g.,* Adv. Proc. No. 22-01424-EPK; Dkt. Nos. 13, 72, 114, 127, 141, 252, 268, 356, 576, 578, 680. Eventually, the Adversary Proceeding came to include several parties claiming interests in vehicles held by the debtor. Dkt. No. 145, Adv. Proc. No. 22-01218 (Amended Complaint).

About 9 months after this case was filed, on May 1, 2023, the Court converted this case to chapter 7. Dkt. No. 584. By then it was clear that for at least a few years prior to this bankruptcy the debtor's business consisted almost entirely of lending money to another entity which is also a debtor before this Court. Tr. of Oral Ruling, Dkt. No. 610. When the Court converted this case, the debtor remained in possession of a number of vehicles, but the debtor had very weak and probably no claim to ownership of most of those vehicles. In its ruling, the Court stated: "It would not surprise me if the debtor in the end can claim no ownership at all." Tr. of Oral Ruling, Dkt. No. 610 at 20.

When the chapter 7 trustee took control of the debtor on May 2, 2023, he was mindful of the competing claims to the vehicles in his possession and the debtor's tenuous ownership of those vehicles. The trustee determined that the best approach would be to propose an auction sale of the vehicles, with the bankruptcy estate to obtain a small portion of the proceeds, and the lion's share of the net sale proceeds to be set aside so that parties claiming interests in the vehicles could address their disputes in another forum.

Within a week of his appointment, the trustee filed a motion to auction a number of vehicles in the estate's possession. Dkt. No. 618. The sale was to be free and clear of all liens and other interests under 11 U.S.C. § 363(f). The trustee asked the Court to approve a minimum amount to be retained by the estate for the benefit of unsecured creditors, in the form of a surcharge under 11 U.S.C. § 506(c).

Through the Adversary Proceeding and various motions for turnover, all parties claiming interests in the vehicles were before the Court. Several parties objected to the trustee's sale motion. *E.g.*, Dkt. Nos. 623, 630, 631, 632, 638, 639, 640, 641, 642, 644, 676, 678. After an initial hearing, the Court granted the sale motion in part, authorizing the trustee to retain the auctioneer, and set further hearings to consider how the net sale proceeds would be distributed and other concerns. Dkt. No. 634.

Over a period of several weeks, the trustee negotiated with all parties claiming liens on and interests in the vehicles. The trustee swiftly concluded terms acceptable to those parties and favorable to the bankruptcy estate. Only six weeks after his appointment, at the final hearing on the sale motion, the trustee presented an order approving the auction sale of the vehicles. Dkt. No. 694 (the "Sale Order").

Among other things, the Court authorized the trustee to sell certain vehicles free and clear of liens pursuant to 11 U.S.C. § 363(f). The trustee retained an agreed portion of the sale proceeds for the benefit of creditors. The remaining net proceeds from the sale were held pending adjudication by another court having competent jurisdiction or agreement of the parties claiming liens on or interests in the vehicles. The Sale Order included the following provision (the "Limiting Language"): "Only (i) parties to the Adversary Proceeding Complaint, or (ii) parties that have appeared in the main bankruptcy case and asserted an interest in the Vehicles, may make a claim against the Net Proceeds." The Sale Order was later clarified but its primary terms were not changed. Dkt. No. 738.

After the auction sale, the trustee sought direction on where to deposit the proceeds from the sale less expenses and less the funds to be retained by the trustee for the benefit of creditors (the "Net Proceeds"). Dkt. No. 727. The trustee asked the Court to permit the Net Proceeds to be deposited in the registry of the Court "pending adjudication by a court of competent jurisdiction as to the validity, priority and extent of property interests asserted in

the Net Proceeds or consensual resolution as to their disposition." The Court granted that request and the Net Proceeds were accepted into the Court's registry. Dkt. No. 749. The Court later clarified that the Net Proceeds were subject to the Court's jurisdiction "for purposes of any disputes that may arise out of the Auction or its conduct, the condition of the Vehicles, or out of any alleged actions or omissions by the Trustee's Court-approved Auctioneer." Dkt. No. 807. No such claims were presented. Other than for this limited purpose, the trustee waived any interest in the Net Proceeds and the Court approved that waiver. Dkt. Nos. 694 and 738.

The trustee filed a final account on May 15, 2025. Dkt. No. 909. This case is fully administered. The only reason this case has not been closed is that the Net Proceeds remain in the registry of the Court. Because of this, the Court *sua sponte* entered its *Order to Show Cause Why Certain Funds Held by the Clerk Should Not Escheat to the United States Treasury and Setting Hearing Thereon.* Dkt. No. 911 (the "Order to Show Cause"). In the Order to Show Cause, the Court paraphrased the Limiting Language, making it clear that only certain parties may seek release of the Net Proceeds. The Court set a hearing on more than two months' notice and directed such parties to attend the hearing and present an agreement with regard to release of the Net Proceeds. The Court is aware that the relevant parties are litigating their disputes in another forum. The Court intended to give those parties sufficient time to provide joint instructions for release of the Net Proceeds according to their agreement, or to arrange for the funds to be lodged with an escrow agent or placed in the registry of the court where their litigation is pending.

In the Order to Show Cause, the Court did not invite motions from parties claiming an interest in the Net Proceeds. The Court made it clear that it did not intend to rule on any issue relating to any party's right in the Net Proceeds. In spite of this, a flurry of motions were filed including the Joint Motion now before the Court. Dkt. Nos. 925, 931, 938. The

Court initially denied all of those motions. Dkt. No. 941. However, the Court later vacated the denial of the Joint Motion and reset the Joint Motion for hearing. Dkt. Nos. 944, 945.

The following parties filed the Joint Motion: Franklin Capital Funding, LLC, Franklin Capital Group, LLC, Franklin Capital Management, LLC, FVP Opportunity Fund III, LP, FVP Investments, LLC, FVP Servicing, LLC, and Hi Bar Capital, LLC (together, the "Movants"). They ask the Court to direct the Clerk to release the Net Proceeds from the registry of the Court and disburse them to counsel for the FVP entities, Schwartz Breslin PLLC, "there to be further disbursed in accordance with the agreement between the Movants." In other words, the Movants have reached an agreement regarding application of the Net Proceeds among themselves, which they intend to effectuate if the Net Proceeds are released.

No one disputes that the Movants are, in name, the sole remaining parties that may seek release of the Net Proceeds consistent with the Limiting Language in the Sale Order. However, in his response to the Joint Motion, Mr. Lubin argues that he is the assignee of all claims of Hi Bar to the Net Proceeds. Mr. Lubin objects to release of the Net Proceeds as requested in the Joint Motion as he believes the Movants will not honor the assignment of Hi Bar's claims to him. Mr. Lubin does not object to release of the Net Proceeds to the trust account of FVP's counsel, but only if the funds are held subject to entry of an order of another court having competent jurisdiction.

In support of his argument that he holds Hi Bar's claims, Mr. Lubin points to two documents: a Common Interest and Joint Litigation Agreement dated January 28, 2022 between Spin Capital, LLC and Hi Bar (the "Common Interest Agreement"); and an Absolute Assignment of Interests and Rights dated March 17, 2025 between Spin and Mr. Lubin (the

"Absolute Assignment"). Dkt. Nos. 950-1 and 950-5.[1] In the Common Interest Agreement, Hi Bar assigned a number of claims to Spin including, specifically, Hi Bar's claims in this bankruptcy case and in the Adversary Proceeding, subject to termination and re-assignment back to Hi Bar. In the Absolute Assignment, Spin assigned all of its rights obtained under the Common Interest Agreement to Mr. Lubin.

At all relevant times during this bankruptcy case Mr. Lubin controlled Spin. Indeed, Mr. Lubin signed the Absolute Assignment as "Manager and Managing Member" of Spin. In his response to the Joint Motion, Mr. Lubin acknowledges his virtual identity with Spin for purposes of this case. Mr. Lubin states that, consistent with the Common Interest Agreement, he hired, paid, and directed the attorneys for Hi Bar who participated in this bankruptcy case and in the Adversary Proceeding. Mr. Lubin had full knowledge of the Adversary Proceeding and this bankruptcy case, including the sale process, through counsel that he controlled. In a prior order, the Court found that Mr. Lubin had notice of the sale motion, the final hearing on the sale motion, and the Sale Order. Dkt. No. 944. Mr. Lubin's response here supports those findings.

The Court previously stated that because Mr. Lubin is bound by all terms of the Sale Order including the Limiting Language, which does not reference him personally, that Mr. Lubin is not permitted to seek any relief in connection with release of the Net Proceeds. Dkt. No. 944. Based on the information now before the Court, the Court's view was incorrect.

Mr. Lubin claims to hold the rights of Hi Bar with regard to the Net Proceeds. He points to the Common Interest Agreement as the basis for his position. Hi Bar argues that

---

[1] Mr. Lubin also references an Authority to Represent executed August 1, 2023 among Hi Bar, individuals associated with Hi Bar, Mr. Lubin, and Leto Law Firm. Dkt. No. 950-3. That document relates to litigation in another bankruptcy case pending before this Court and does not appear to have anything to do with this bankruptcy case or the Adversary Proceeding. In any case, it is not necessary for the Court to address the Authority to Represent in this Order.

the Common Interest Agreement was terminated by written notice on April 3, 2024[2] and, in addition, that Mr. Lubin's refusal to pay legal fees was a breach of the agreement supporting termination. *See* Dkt. 925-1 at 74. Hi Bar thus claims that Mr. Lubin has no right to object to the Joint Motion. Mr. Lubin argues that the written notice was not effective to terminate the Common Interest Agreement according to its terms, and that his refusal to pay legal fees did not result in a breach of the entire agreement. Mr. Lubin argues that Hi Bar has no right to join in the Joint Motion.

As the Court has previously ruled, at this time the Court has no subject matter jurisdiction over any substantive disputes relating to the Net Proceeds. The Court retained jurisdiction over the Net Proceeds only to the extent of any claims relating to or arising from the sale process. No such claims were presented. Beyond that, the bankruptcy estate waived any interest in the Net Proceeds. The Net Proceeds remain in the registry of this Court solely as an accommodation to parties who are litigating their relative rights in another forum. The outcome of the disputes among the Movants and Mr. Lubin will have no impact on administration of this fully administered chapter 7 case. Even under the most liberal component of this Court's subject matter jurisdiction, meaning "related to" jurisdiction under 28 U.S.C. § 1334(b), this Court lacks the power to rule on these disputes. *See British Am. Ins. Co. Ltd. v. Fullerton (In re British Am. Ins. Co. Ltd.)*, 600 B.R. 890, 893-897 (Bankr. S.D. Fla. 2019) (discussing federal bankruptcy jurisdiction generally). This Court cannot and will not decide whether the Common Interest Agreement was terminated and, ultimately, whether Mr. Lubin holds the rights of Hi Bar relating to the Net Proceeds.

This Court of course has jurisdiction to interpret and enforce its own Sale Order. But the question whether Mr. Lubin is the ultimate assignee of Hi Bar is not one that may be

---

[2] This date is well after the entry of the Sale Order. Even under Hi Bar's view, Spin held Hi Bar's rights to the Net Proceeds at the time the Court entered the Sale Order.

determined by the Court merely enforcing the Sale Order. If Mr. Lubin is correct, at the time the Court entered the Sale Order Spin controlled Hi Bar's claims in this matter and Mr. Lubin controlled Spin. In Mr. Lubin's view, immediately upon entry of the Sale Order, Spin could direct counsel for Hi Bar to join in asking this Court to release the Net Proceeds.[3] Mr. Lubin alleges that Spin later assigned its rights to him personally. If this is true, then Mr. Lubin is the correct party to join with FVP and Franklin in the Joint Motion, not Hi Bar. Hi Bar argues that Mr. Lubin has no such right. The Court cannot resolve this dispute merely by considering the history of this bankruptcy case and the Sale Order.

Even if this Court had subject matter jurisdiction over the present dispute between Hi Bar and Mr. Lubin, the Court would abstain from the matter under 28 U.S.C. § 1334(c). Particularly in light of the procedural context of this case, which is fully administered, comity requires that this Court give way to the state court where these questions are more appropriately addressed.

The Movants are engaged in litigation before the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida regarding their relative rights to the Net Proceeds. Case No. CACE-22-005125 (the "Broward Action"). Based on a transcript of a recent hearing, Mr. Lubin is now active in the Broward Action. Dkt. No. 950-2. It appears that the court in the Broward Action has jurisdiction over the relevant disputes and can

---

[3] Contrary to the argument presented in the reply [Dkt. No. 951], neither Spin nor Mr. Lubin were required to oppose the relief granted in the Sale Order. Hi Bar's rights in the Net Proceeds were preserved by the Sale Order and the Limiting Language. According to Mr. Lubin, Spin held an assignment of Hi Bar's claims and had the ability to direct Hi Bar's actions, so Spin did not waive any rights by not participating in the sale hearings. Spin did not assign its rights in Hi Bar's claims to Mr. Lubin until much later, so Mr. Lubin had no need to participate individually at the time of the sale. For the same reason, the limitation in paragraph D of the Sale Order regarding Mr. Lubin's ability to seek relief relating to the Net Proceeds cannot prevent Mr. Lubin from later acquiring the rights of Hi Bar via Spin. Mr. Lubin is not now seeking to modify the Sale Order. If Mr. Lubin is correct, then he has the benefit of the Sale Order and the Limiting Language, as he holds the rights of Hi Bar.

determine which of the Movants and Mr. Lubin have rights in the Net Proceeds. The Court encourages the parties to seek appropriate rulings in the Broward Action.

The Court will hold the hearing on the Order to Show Cause at 10:00 a.m. on August 27, 2025 as originally scheduled, and the Order to Show Cause remains in full force and effect. The parties are strongly discouraged from filing additional motions and responses.

In light of the foregoing, the Court **ORDERS and ADJUDGES** as follows:

1. The *Expedited Joint Motion (I) To Enforce Sale Order and (II) To Order Distribution of Auction Proceeds to Counsel for the FVP Parties* [Dkt. No. 931] is DENIED.

2. This Court cannot and will not rule on the dispute between Avrumi Lubin and Hi Bar Capital, LLC regarding their relative rights in the Net Proceeds held in the registry of this Court. The parties are encouraged to obtain a ruling from another court having competent jurisdiction or to present an agreement and a form of agreed order as directed in the Order to Show Cause.

3. The hearing on the *Expedited Joint Motion (I) To Enforce Sale Order and (II) To Order Distribution of Auction Proceeds to Counsel for the FVP Parties* [Dkt. No. 931] set for August 13, 2025 is CANCELED.

###

Copy Furnished To:

Jerrell Breslin, Esq.

*Jerrell Breslin, Esq. is directed to serve a conformed copy of this Order on all appropriate parties and file a certificate of service.*