# EXHIBIT 2

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF FLORIDA


IN RE:                          CASE NO. 22-15627-EPK

AUTO WHOLESALE OF BOCA, LLC,

                Debtor.

_____/


ECF #912

June 18, 2025

The above-entitled cause came on for hearing before the Honorable Erik P. Kimball, one of the Judges in the UNITED STATES BANKRUPTCY COURT, in and for the SOUTHERN DISTRICT OF FLORIDA, at 1515 North Flagler Dr., West Palm Beach, Palm Beach County, Florida, on June 18, 2025, commencing at or about 10:30 a.m., and the following proceedings were had.


Transcribed from a digital recording by:

Cheryl L. Jenkins, RPR, RMR

Page 2

APPEARANCES VIA ZOOM:

MICHAEL BAKST, Trustee

FURR & COHEN, by
ALAN R. CRANE, Esquire
JASON S. RIGOLI, Esquire
On behalf of Nicole Testa Mehdipour

SHRAIBERG PAGE, by
PATRICK DORSEY, Esquire (via Zoom)
On behalf of Franklin Capital Funding, LLC, Franklin
Capital Group, LLC, Wing Lake Capital

LETO LAW FIRM, by
MATTHEW LETO, Esquire (via Zoom)
On behalf of Hi Bar

JOEL ARESTY, P.A., by
JOEL ARESTY, Esquire
On behalf of Josh Lubin

JONATHAN SCHWARTZ, Esquire
On behalf of FVP, FVP Investments, LLC,
RVP Opportunity Fund, III, LP, RVP Servicing, LLC

ALSO PRESENT
Josh Lubin
ECRO - Electronic Court Reporting Operator   (in person)

- - - - - - -

Page 3

ECRO:  Okay, and the last matter on the 10:30 docket, Auto Wholesale of Boca, LLC, Case Number 22-15627.

Mr. Bakst.

MR. BAKST:  Good morning, your Honor. Michael Bakst, the new trustee.

I think that -- I don't know if I've been discharged as trustee yet.  The case hasn't fully administered.

THE COURT:  Thank you.

ECRO:  Mr. Dorsey.

MR. DORSEY:  Good morning, Judge. Patrick Dorsey on behalf of Franklin Capital Funding, LLC.

ECRO:  Mr. Leto.

MR. LETO:  Good morning.  May it please the Court.  Matthew Leto on behalf of Hi Bar.

ECRO:  Mr. Aresty.

MR. ARESTY:  And good morning, Judge. Joel Aresty representing Mr. Lubin, who I believe is also monitoring the hearing.

ECRO:  Mr. Schwartz.

MR. SCHWARTZ:  Good morning.  Jonathan Noah Schwartz on behalf of Schwartz, Breslin, PLLC for the FVP parties, just filling in for Mr. Breslin, who was in person in Broward County on this matter today.

Page 4

ECRO:   And does anyone else wish to make an appearance in this case?

(No verbal response.)

ECRO:   Okay.

THE COURT:   All right.   So there's one matter set for today, and who would like to present it?

MR. DORSEY:   I will, Judge.   Again, Mr. Dorsey on behalf of Franklin Capital Funding, LLC. Thank you for hearing it on an expedited basis, by the way.

As I hope you can imagine, when my client saw a writ of garnishment issued to the bankruptcy court, it caused some consternation, and we wanted to move quickly on that issue.

As a very brief background, Auto Wholesale Boca filed, originally filed for bankruptcy as a Subchapter 5 debtor in 2022.   At the time it filed, it had a fleet of about 20 luxury automobiles that it claimed it was the legitimate owner of.   Various parties, including my client, Mr. Breslin's client, and Mr. Leto's client disputed that claim.

The Court converted the case to Chapter 7 in 2023, and the secured creditors negotiated a deal with Mr. Bakst, as the trustee, whereby, in essence, Mr. Bakst sold the vehicles, obtained a carveout for the estate,

Page 5

deposited the net proceeds into the registry of the Court, and this Court directed the secured creditors and other parties and interests to go obtain a judgment from a Court of competent jurisdiction to find out who had the senior interest in the net proceeds.

That sale order is docketed at ECF Number 694, and I apologize, due to a scrivener's error I may have cited the sale motion as opposed to the order in my motion.

Two pertinent paragraphs of the sale order are, first of all, I believe Paragraph D, at the beginning of the order it says that Mr. Aresty's client, Mr. Lubin, was on notice of an AWB bankruptcy case at all relevant times, he was aware of the sale process, he was aware of the vehicles, and the net proceeds being deposited into the registry of the Court, and so Mr. Lubin was barred from collaterally attacking the sale order, or objecting to the sale at a later date.

Secondly, Paragraph 8 of the sale order essentially states that only parties who appeared in the AWB bankruptcy case that asserted an interest in the vehicles would have a claim to the net proceeds on a going-forward basis, and of course that would exclude Mr. Lubin.

Since the sale occurred, hot litigation has

Page 6

been going on in Broward County Circuit Court over the lien priority and the proceeds.

If your Honor is wondering, the reason that litigation is still going on, some two years later, is because it's not just an FVP versus Hi Bar versus Franklin dispute over lien priority. There are, frankly, dozens of other parties, and fraud and tort claims going back and forth, and so it's been a somewhat cumbersome process.

Mr. Lubin knows about this litigation because he is named, both him individually and the company he owns and controls, Spin Capital, are named defendants to that litigation.

Mr. Lubin, in his operative pleadings and the litigation, has never asserted an interest in the proceeds, sought to foreclose on the proceeds, filed a foreclosure count against my client or FVP or what-have-you. He is strictly playing defense in the Broward litigation.

From what I've been able to surmise, at some point in time Mr. Lubin was not happy with the idea he would not be getting a cut of the $2 million, and so he took a New York State Court judgment entered in favor of Hi Bar, filled out a fraudulent affidavit, where he said that Hi Bar has actually assigned this to me, without any documentary evidence or an assignment from Hi Bar

Page 7

evidencing that.   He domesticated that New York State judgment in Palm Beach Circuit Court, which again I regard as an act of fraud, and then he had the Palm Beach Circuit Court issue a writ of garnishment to this Court, and I think it's pretty apparent his aim in doing that was to somehow get his hands on the funds in the court registry.

So that brings us to the motion I filed today.   I think, frankly, Judge, a lot of these fraud claims may be better brought in the Palm Beach Circuit Court, because that is the judgment -- that is where the judgment was domesticated.   However, I do think at a minimum this Court can state, number one, that the funds in the registry are not subject to any purported garnishments or attachments arising from other courts.   I think the case law is clear on that; and, number two, I do think an order of show cause should be entered against Mr. Lubin because, in my view, he is collaterally attacking the sale order, and while the genesis of his fraud was in the Palm Beach Circuit Court, by causing a writ of garnishment to be issued against the clerk of this court, I do think he attempted to commit fraud on this Court as well.

THE COURT:   Hold on just a moment, please.  All right.   Thank you.

Who would like to respond?   Mr. Aresty, I

Page 8

assume?

MR. ARESTY:  Yes.  If the Court please.

Judge, this is an emergency that really isn't, and should have been resolved by conferral, which is required by the local rule before you file a motion for emergency hearing, or in the state court case.

As a practical matter, I don't believe there's a present controversy for the following reasons. First of all the -- there's been no service of a writ of garnishment on Mr. Falzone, as clerk.  There were some correspondence, and Mr. -- but as we are here, there's been no service, just some correspondence with a paralegal.

There's no garnishment on the clerk --

THE COURT:  Can you stop there for a moment? I don't know if there was service, and let me make it clear, the Court does not represent the clerk, but I understand there was a formal response saying that the court does not hold any funds for the parties who are named as judgment debtors in the judgment that was certified in the state of Florida.  Is that accurate?

MR. ARESTY:  That is accurate.  Whether or not that would serve in the state court as an answer of garnishee, I think is moot, and I'll explain why in a second.

So, in the state court, there's no service of the writ evident and, therefore, no responses yet due by the clerk.

In any event, my client has agreed, under the case law, which was filed in the supplemental response regarding custodia legis, that perhaps the procedure was improper, again, a state law matter which should have been settled by conferral, has agreed to stand down with regard to the garnishment.

So, really, the garnishment issue, not only is it not an emergency, but it's really going to be moot. My client would apologize for any inconvenience, but there's really, in this Court, no harm and no foul. The motion should be denied as moot.

Obviously, the real issue, whether or not it's the custodia legis law, which was argued for the first time in the supplemental response, is accurate, and I believe it probably is, that would make it impossible to do --

THE COURT: To garnish funds held in the registry of a federal court. It seems pretty clear, there's no 11th Circuit case, although I don't know why there would need to be, since there's a Supreme Court case, and we do still listen to the Supreme Court, and so it was improper to even try to serve it.

But you were the person who sent the writ of garnishment to the clerk, is that correct?

MR. ARESTY:  That is not correct, Judge.  A paralegal, with the great name of Paralegal Activity, sort of a play on words on behalf of Mr. Lubin, sent an email to the clerk.

I had corresponded with the clerk on behalf of the mutual client, Mr. Lubin, because apparently Mr. Lubin did send a sheriff to the Palm Beach clerk's office, which refused service, but again, this is all a matter in the state court, and my involvement was just as a courier, more or less, of information.

THE COURT:  Well, as soon as you got involved, you were representing Mr. Lubin.  Under the rules of ethics in Florida, the moment that you formally took a position by emailing the clerk, you became counsel for Mr. Lubin.

Yes, so I don't know why you're giving me a look.  You don't get to say, I don't represent somebody, but communicate on their behalf.  It doesn't work that way.

MR. ARESTY:  I think I --

THE COURT:  But what is your response to the argument that Mr. Lubin doesn't hold any rights under the judgment?

MR. ARESTY: He believes he holds rights as a participant and assignee, Judge, which is a separate matter, which is going to have to be litigated at some point, but he does believe that Spin, and he, as assignee, are participants in, and are the rightful owners of the Hi Bar UCC positions.

THE COURT: And I don't know what you mean by that. There's a judgment, and he's trying to collect on a judgment.

So is there a documentary basis for the argument that Mr. Lubin, through Spin, obtained whatever rights Hi Bar has under the judgment that is attached to today's motions?

MR. ARESTY: There probably -- there is, I believe, but I'm not prepared to present that evidence or argument. I think that there's -- it's certainly a question in the state court proceeding with regard to the proceeds, which you've heard is being vigorously litigated.

I know your Honor entered a second order to show cause with regard to why that money hasn't been distributed yet, which you said for August, but there's a number of parties contesting that, and I know, Judge, really, as to the matter that's before you this morning, Judge, I think that you would have to agree that this is a

state court matter.  The state court is where it lies, and that's where it should be finished.

There's no reason for some activity in that state court to be considered any kind of contempt as to your Court and, again, we not only apologize but stand down.  We don't think this motion should have ever been brought here.

THE COURT:  Before I go back to Mr. Dorsey, is there anybody else who wishes to be heard?  Mr. Lubin, I see your hand is raised.  You are represented by counsel.  You should text or otherwise communicate with Mr. Aresty.  He speaks on your behalf today.

Anybody else wish to be heard before I go back to Mr. Dorsey?

MR. LETO:  Yes, your Honor, if I may.  This is Matthew Leto on behalf of Hi Bar.

The only thing, I wanted to answer your Honor's question, which is there is no document that assigns that judgment from Hi Bar to Mr. Lubin or to Spin Capital.  It does not exist, especially not to Mr. Lubin in any individual capacity.

There is a joint defense agreement that was initially crafted between these parties.  However, under that document, it could be terminated at any time for any reason, and Hi Bar did, in fact, terminate that document

at the beginning of last year.

So if that was even the potential basis that Mr. Lubin was traveling under, in writing that was terminated long ago.  So there is no document that would ever allow for Mr. Lubin to enforce Hi Bar's rights in the state court.

THE COURT:  Well, that's very interesting news for you, Mr. Aresty.

So let me point out to all of you that if you look at Paragraph 2(a) of the joint defense agreement, you will say -- you will see that there is, in fact, an assignment of certain claims, and those claims are defined to include the litigation, with the case number, that resulted in the judgment, which was the subject of today's motion.

However, if you read all of Section 2(a), it specifically says that the assignment is subject to the termination rights that are later provided in the joint defense agreement, and I have no doubt, if Mr. Leto is saying it was terminated a year ago, that it was, in fact, terminated.

And so, Mr. Aresty, I expect it might be wise for you to study all of these matters, because seeking to have a judgment domesticated in Florida based on what I've seen might, in fact, subject Mr. Lubin to

some issues in the state court.

Let me go back to Mr. Dorsey.  So, Mr. Dorsey, is this really something that should be here?

Let me ask you a really important question. The order that you referenced, the first of the two sale orders, because there's a second one after Mr. Bakst asked me to do some clarification, it says that Mr. Lubin, individually and as a separate entity, a different entity entirely, and this is an order entered well after the joint defense agreement was signed, but apparently before it was terminated, it says that Mr. Lubin has no interest in the vehicles, which seems obvious since he never filed a claim in the case, relating to the vehicles.  Was that order ever served on him?

MR. DORSEY:  I wish Ms. Carnahan was here, because she was counsel for Mr. Bakst.

I can pull up the certificate of service.

THE COURT:  So, but why is --

MR. DORSEY:  I believe there was.

THE COURT:  Why is this an issue for me? Apparently the writ has not been formally served, although I do believe that the clerk told me that he responded and said that the clerk does not hold any funds for the judgment debtors, and so there is no reason for an emergency since we're not releasing the money to anyone,

and as soon as I realized that we still had the money in the registry, I entered an order, which you have all seen, and Mr. Aresty referenced, so let me let you know that this is very similar to earlier in the case when I told the trustee and everyone that if there wasn't an agreement with regard to certain vehicles, I was going to allow them to be parked on a public street with the keys in them, and that's the effect of this order. So I expect you to reach agreement as to where the money will go before the hearing, which I think is in August.

But in the meantime, the money is not going anywhere. So why am I going to be resolving any of this if the fraud is on the state court? Go to the state court and complain.

MR. DORSEY: Well, your Honor, like I said at the outset, I do think it would be helpful, if nothing else. I had never seen a writ of garnishment served on a federal court before with good reason, apparently, because I hadn't researched that case at the time I first saw the writ, and so I didn't know what the reaction of the clerk was going to be. I didn't know if money was going out the door, if there was any real threat of that, and that's why the motion was filed on an emergency basis, because $2 million that goes out the door is not coming back.

I think it would be helpful, if nothing

else, if your Honor granted the motion in part, and simply stated that so long as the Court holds the funds, they are not subject to foreign attachments or garnishments, so this doesn't happen again.

My view is that, yes, the genesis of the fraud was domesticating the judgment with the state court, but by communicating with the clerk about a writ of garnishment, I do think Mr. Lubin attempted to perpetrate that fraud on the Bankruptcy Court.

I do think Mr. Lubin brought the Bankruptcy Court into this dispute, not me, and so I do think that does open him to sanctions but, at a minimum, I would simply state that the Court make it clear that the money is not going anywhere until the August hearing.

THE COURT:  Mr. Aresty, would you object to an order that grants this motion only to the following extent, a statement that the writ of garnishment cannot be effectuated with regard to funds held in the registry of a federal court, including this Court, and that the funds held in the registry in this instance will not be released except pursuant to further order of this Court?

MR. ARESTY:  That would be perfectly logical and acceptable, your Honor.

THE COURT:  Okay.  I will tender -- I will prepare and enter an order to that effect, and granting

nothing else.

Anything else in this case?

MR. DORSEY:  No, your Honor.

MR. ARESTY:  Judge, if the Court please.

THE COURT:  Mr. Aresty.

MR. ARESTY:  You asked my client to text me.

THE COURT:  I --

MR. ARESTY:  And he's asked me repeatedly if he may say a few words to the Court.

THE COURT:  No.  You are representing him. When he has counsel, he needs to act through counsel.

Anything else in this case?

MR. ARESTY:  No, Judge, that's what I thought you would say.

THE COURT:  Thank you.  Have a good morning, everyone.

MR. ARESTY:  Good morning, your Honor.

THE COURT:  Are we in recess until this afternoon?  Yes.  Court's in recess until 1:30.

(Thereupon, the hearing was concluded.)

Page 18

CERTIFICATION

STATE OF FLORIDA          :

COUNTY OF MIAMI-DADE    :

I, Cheryl L. Jenkins, RPR, RMR, Shorthand Reporter and Notary Public in and for the State of Florida at Large, do hereby certify that the foregoing proceedings were transcribed by me from a digital recording held on the date and from the place as stated in the caption hereto on Page 1 to the best of my ability.

WITNESS my hand this 2nd day of July, 2025.

_____

CHERYL L. JENKINS, RPR, RMR

Court Reporter and Notary Public

in and for the State of Florida at Large

Commission #HH 170910

December 27, 2025