Page 1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF FLORIDA

WEST PALM BEACH DIVISION

CASE NO. 22-12790-EPK

IN RE:

 EXCELL AUTO GROUP, INC.,

Debtor.
_____/

NICOLE TESTA MEHDIPOUR,

CHAPTER 7 TRUSTEE,


Plaintiff,


vs.                                ADV. NO. 23-1132-EPK


HI BAR CAPITAL, LLC, et al.,


Defendants.
 _____/


DOCKET ENTRY 343

December 30, 2025

The above-entitled cause came on for hearing before the Honorable ERIK P. KIMBALL, Chief Judge of the UNITED STATES BANKRUPTCY COURT, in and for the SOUTHERN DISTRICT OF FLORIDA, at 1515 North Flagler Drive, West Palm Beach, Palm Beach County, Florida, on December 30, 2025, commencing at or about 10:00 a.m., and the following proceedings were had:

Transcribe From a Digital Recording By:

Anna M. Meagher, Shorthand Reporter

APPEARANCES:

Avrumi Lubin, Pro Se

VIA ZOOM VIDEO CONFERENCE:
Furr & Cohen, by
Alan R. Crane, Esquire
Jason Rigoli, Esquire
On behalf of Nicole Testa Mehdipour,
Chapter 7 Trustee
Email: Acrane@furrcohen.com
Email: Jrigoli@furrcohen.com

Leto Law Firm, by
Matthew P. Leto, Esquire
On behalf of Hi Bar Capital, LLC
Email: Mleto@letolawfirm.com

Shraiberg Page, P.A., by
Patrick R. Dorsey, Esquire
On behalf of Franklin Capital
Email: Pdorsey@slp.law

Joel M. Aresty, P.A., by
Joel M. Aresty, Esquire
On behalf of Spin Capital, LLC
Email: Aresty@mac.com

- - - - - - -

Page 3

THE CLERK:  All rise.  This court is now in session.  The Honorable Erik P. Kimball presiding.

THE COURT:  Good morning, everyone.

Thank you so much.  Please have a seat.

Ms. Leonard, before we start, my monitor is completely black.

Okay.  Let's see.  I don't have access to ECF, correct?

THE CLERK:  Correct.

THE COURT:  Okay.  That's fine.

All right.  Whenever you're ready.

THE CLERK:  Okay.  The first matter at the 10 o'clock docket is Mehdipour v. Hi Bar Capital, LLC, et al.  Case No. 23-1132.

In the courtroom?

THE COURT:  Mr. Lubin, come on up.

How are you?

MR. LUBIN:  Good.  And how are you?

THE COURT:  Very well.

Just say your name for the record, and Ms. Leonard will take the rest of the appearances.

MR. LUBIN:  Okay.  Josh Lubin.

THE COURT:  Very good.  Thank you.

You can sit at the counsel table if you like.

Ms. Leonard.

THE CLERK:  Mr. Crane.

MR. CRANE:  Good morning, Your Honor.  Alan Crane, special counsel for Nicole Testa-Mehdipour, the Chapter 7 trustee and the plaintiff in this adversary.

THE CLERK:  Mr. Rigoli.

MR. RIGOLI:  Good morning, Your Honor. Jason Rigoli, special counsel to the trustee and plaintiff in this adversary, Nicole Testa-Mehdipour.

THE CLERK:  Mr. Leto.

MR. LETO:  Good morning, may it please the Court, Your Honor, Matthew Leto on behalf of Hi Bar.

THE CLERK:  Mr. Dorsey.

MR. DORSEY:  Good morning, Judge.  Patrick Dorsey on behalf of Franklin Capital Funding, LLC.

THE CLERK:  Mr. Aresty.

MR. ARESTY:  Yes.  Good morning, Your Honor. Joel Aresty, movant, here on behalf of Syd and Josh Lubin.

THE COURT:  Very good.

The motion is yours, Mr. Aresty.

MR. ARESTY:  Yes, sir.

If the Court please, this is a motion to withdraw based on irreconcilable differences.  As the Court's aware, the trial is set in this adversary proceeding for January 29th through February 6th.

If you look at the docket, you'd see that at least five prior counsel have been involved in this case on behalf of Mr. Lubin and his corporation.  And in state court, there have been that many also.  The Court may be aware there was a trial recently in Broward Circuit Court.

Judge, I presume you see the seven papers filed by Mr. Lubin this morning.

THE COURT:  I have not, and I need to let everyone -- you're not handing them to me, Mr. Lubin.  I'm not reading them right now.  I have not.

And, unfortunately, I do not have access to ECF on the bench today because of some technical issues.  So I can't look at them, but -- and I'm not going to be ruling on any of those today, because they are not before the Court.  They're not set for hearing.  I will hear, of course, from Mr. Lubin with regard to the motion to withdraw.

So if you could finish your presentation, Mr. Aresty.

MR. ARESTY:  Yes, I'm very -- sorry, Judge.  Mr. Heidi -- excuse me, Ms. Heidi Feinman is also, I see, present.  Although she may not be for this case, she knows something about what Mr. Lubin has been doing behind the scenes, as do the other counsel in this case.  And which comprise a large part of the irreconcilable differences

alleged.

Judge, the motion before the Court says that the notice of this intention to withdraw has been before Mr. Lubin for several months. I went back and looked, and it's at least four months. And he talks about a -- the talk about other counsel refers to the counsel who was -- tried the case in Broward, who's familiar with the documents, the transactions, and the witnesses in the case at bar. That counsel is the -- the subject of any financial disputes. My issue here is not financial. But rather, as I stated, irreconcilable differences.

I did agree that if Mr. Lubin retained trial counsel -- which he has always intended to do, I was always promised reinforcements. Never. They never arrived. I waited till December 1st, and then another 20 days past my deadline. And the key to Mr. Lubin's counsel problem is in his own pocket, Judge. He can -- he has somebody who's ready to go, and who's just not here yet.

So if the Court, please, I seek leave to withdraw at this time.

THE COURT: Very good.

Mr. Lubin, could you come over to the podium. That way everybody can see you.

So you're here. Mr. Aresty has appeared both for you and for Spin Capital. I know you're the

Page 7

principal at Spin Capital.

So what is your view on the motion to withdraw?

MR. LUBIN:  First of all, I like to talk, so I'm going to try to keep this as short as possible.  I'm not here to argue any merits or dispute any facts.  It's a very complex situation.  I'm seeking clarity.  It took me four years -- three or four years to figure out what's going on over here.

There was an attorney that -- I only brought that folder, because it didn't -- I filed it yesterday.  It didn't hit the docket until ten minutes ago.  The motion --

THE COURT:  You came here physically yesterday?

MR. LUBIN:  No, I went -- yeah, to the clerk, the paper file.  I try to go Wednesday, but Trump's executive -- president's executive order closed the courthouse on Wednesday.

THE COURT:  Okay.  This has nothing to -- the president does not close courthouses.  We're a different branch of government, but let's go back.

The chief judge of this court --

MR. LUBIN:  Right.

THE COURT:  -- and the administrative office

of the United States courts are the ones that decide when the courthouses are open. But let's go back.

This is a motion for counsel to withdraw in the case. There's no substantive issue here at all. The allegation is irreconcilable differences, which generally means that there's tension -- that's a nice word to describe it -- between clients and lawyers that make it impossible for the lawyer to fulfill his duties and represent the client consistent with what he believes should be done. That's what the allegation is.

And he can't tell me specifically what those are, because, in general, it would require him to breach confidences between -- and you probably should not tell me anything. That's a breach of confidence, because if you do that on the record, then you have opened yourself and Spin up to inquiry about those topics.

Do you understand?

MR. LUBIN: Yes, Your Honor.

THE COURT: Okay.

MR. LUBIN: Okay. So, no, Joel Aresty is a very nice guy. I have not had any disputes. He has a dispute with an attorney that's not a bankruptcy attorney, but handles -- a trial attorney that's in the state case that --

THE COURT: I don't know anything about what

Page 9

happened in Broward County.

MR. LUBIN:  Who cares?  It's not about what happened in Broward County.

In my opposition motion, which I attempted to file on Wednesday --

THE COURT:  Is it an opposition to the motion to withdraw?

MR. LUBIN:  Yes.

THE COURT:  Okay.  And so what is your opposition to the motion to withdraw?

MR. LUBIN:  It has emails of Mr. Kay -- Joel is withdrawing on the fact that this other attorney that promised to notice in for a few months hasn't noticed in. And he's been -- put it in writing.  He told me on the phone, "Yeah, I'm preparing the draft."  He kept on saying the last few months he's noticing into the case, and he just hasn't noticed in.  And Joel has been putting a lot of pressure on him, "Why you're not noticing in."

And then he started threatening me that I past due on payments.  I paid him $88,000 --

THE COURT:  This is the other lawyer?

MR. LUBIN:  It's the other lawyer.

-- $88,000 in the last few months.  I said, "Can I get a reconciliation of what's going on?"

THE COURT:  Okay.  But this has nothing to

do with the other lawyer.

MR. LUBIN: It does, because Joel told -- has -- there's an email in my opposition from Joel Aresty that says if I get things sorted out with that other lawyer to get him to notice in, I'll withdraw my motion. So there's definitely no emergency here.

THE COURT: Well, there is an emergency, because I have the matter set for trial on January 29th, which is less than a month from now. And it's a long trial, and you and Spin are not the only parties. So it's a big deal that we have set aside a very significant amount of time to try this matter, and you have a lawyer who's withdrawing less than a month before trial, in something that's been pending for ages in the bankruptcy world. So it is a big deal.

But the motion to withdraw, I understand that if you had substitute counsel, he might not withdraw, and he might assist your trial counsel. But what Mr. Aresty just said is that he always expected there to be trial counsel, and there isn't right now. And that's your responsibility, not his. You're the client.

MR. LUBIN: Your Honor, if Joel Aresty withdraws from this case, there will potentially be a few hundred million dollars in irreparable damages, because due to Spin Capital's rights being disputed by the trustee

Page 11

of the EXCEL Auto case and a Michigan ruling that shows that another party owns Spin Capital's rights, I won't be able to get an attorney to substitute Joel.  That means Spin is going to be stuck without an attorney.

I currently don't have a special counsel or an examiner and will end up defaulting on the trial, which there's a few hundred million dollars in outstanding obligations that are all --

THE COURT:  Now, understand, what -- this is a very specific set of claims.

MR. LUBIN:  No, because it all relates to this case and a Michigan case, and it affected all my cases throughout the country.  My attorneys haven't been -- communicating with me, responding to me, because they don't know who the correct client is.

So having Joel Aresty withdraw from this case, no new attorney is going to be able to ethically substitute him in, because they don't want to -- they have an ethical obligation to -- there's ethic issues here, and it will cause material prejudice, and I won't be able to get a new attorney, which basically ends up putting me in a default ruling, putting Spin in a default ruling.

And I'm not coming -- as I mentioned earlier, I'm not coming here to argue.  I'm trying to stabilize this whole situation.  I hired a whole team in

Page 12

the last week of --

THE COURT: Of what?

MR. LUBIN: Paralegals that can help me. I filed an ADA motion, because I have difficulty reading, so I don't -- I have to get clarity of what's going on with all my cases, and why my lawyers throughout the country are not communicating with me.

But having him withdraw is -- without reading my opposition, which if you want, I can pass it to you right now --

THE COURT: Well, you can -- why don't you explain to me what the opposition is?

MR. LUBIN: The opposition is, basically, material prejudice, irreparable harm.

I also filed an order to show cause.

THE COURT: Against Mr. Aresty?

MR. LUBIN: Against Mr. Aresty and the state attorney.

THE COURT: Well, the state attorney has not appeared here, and I am not going to enter an order to show cause with regard to a lawyer who has not appeared here.

But what does Mr. Aresty have to show cause for?

MR. LUBIN: To show cause -- first of all,

Page 13

this is not an emergency.

THE COURT:  It is.  I'm telling you that it is an emergency, because the trial is in four weeks --

MR. LUBIN:  Yeah.

THE COURT:  -- so in a case of this --

MR. LUBIN:  (Inaudible.)

THE COURT:  -- magnitude -- right.  And it should be an emergency for you too, because what am I going to do?  Have this hearing the week before the trial?  No, that's not going to happen.

MR. LUBIN:  Okay.  So --

THE COURT:  So what else does Mr. Aresty have to show cause for?  I'm confused.

MR. LUBIN:  Mr. Aresty -- I haven't had any disputes with Mr. Aresty in months.  Mr. Aresty is a great guy.  I think he mentions in my opposition -- there's a email that shows it -- that he said I'll withdraw this motion --

THE COURT:  So long as he doesn't have to --

MR. LUBIN:  (Inaudible.)

THE COURT:  Hold on.  He says from the beginning that he was never gonna be trial counsel in this matter.  I assume that's true.

MR. LUBIN:  No, he never said that.

THE COURT:  Really?

Page 14

MR. LUBIN:  He said that recently, and he wanted this other person that claimed he was gonna be trial counsel.  Joel told me never to get any other attorneys.  And then recently this -- in the last few months, he said, "Stetson Stanley's aware of the the state case, let him come assist me with the trial."

Joel's a great guy.  He's a smart attorney. I haven't -- you're not gonna find one email in the last few months of any irreconcilable differences, and, Your Honor --

THE COURT:  Okay.  Thank you.

Mr. Aresty, what is the nature of the irreconcilable differences to the extent you can tell me without divulging any confidences?

MR. ARESTY:  I think that all of the counsel here are aware, Mr. Lubin has been writing nonstop emails to all of the attorneys in this case, basically representing himself, without counsel, and has gone so far off the reservation of normalcy and ethical practice that it's impossible to -- for counsel to represent him or his corporation effectively.

THE COURT:  Mr. Crane, can you comment on that, if you've been a recipient of email correspondence from Mr. Lubin?

MR. CRANE:  I've received many.

Page 15

THE COURT: Okay. And from your point of view, would Mr. Lubin be interfering with the representation of his own counsel?

MR. CRANE: I'll put it -- you know, let me give it to you this way, and then you can make your own conclusions. Certainly if I was representing the client, I would not be wanting a client to be sending correspondence between me and my client to opposing counsel, especially when part of that is demanding that he might -- you know, that counsel take certain action and counsel saying, "I'm not going to take that action because it's unethical."

THE COURT: All right. So Mr. Lubin has sent you -- forwarded to you communications between him and his counsel with regard to strategy in the case, where apparently Mr. Aresty has advised Mr. Lubin not to do certain things or that he, Mr. Aresty, would not do certain things. Yes?

MR. CRANE: Yes.

THE COURT: Okay. Do you wish to --

MR. LUBIN: Can I --

THE COURT: -- add anything, Mr. Rigoli? I'll come back to you.

MR. RIGOLI: No, Your Honor. I'm actually not copied on those emails. The rest of counsel are.

THE COURT:  Okay.  Mr. Dorsey, I see your microphone is on.

MR. DORSEY:  Yes, Judge.  I'll just sign quickly into my inbox.  In the month of December alone I've received about 39 emails from Mr. Lubin.  He's copied the UST.  He's threatened a DOJ investigation.  So, yes, he has been emailing counsel of record in the state court litigation and the bankruptcy case.

THE COURT:  Okay.  Mr. Leto, did you wish to weigh in?

MR. LETO:  The only thing I can add, Your Honor, is I've also been a recipient of probably the same number of emails that Mr. Dorsey has received over the last month saying those types of things.

THE COURT:  Okay.  So, Mr. Lubin, Mr. Aresty is a well-regarded bankruptcy lawyer who's been practicing here for decades at this point.

Why are you involved in sending emails to counsel in the case?

MR. LUBIN:  Um, I didn't -- I created -- preserved the record --

THE COURT:  You preserved the record?

MR. LUBIN:  -- they're very professional emails.  Um, they're not threats.  Um --

THE COURT:  That's not the point.

Why are you emailing them at all?  You have a lawyer.

MR. LUBIN:  As Heidi is aware, she told me that Joel Aresty is a great lawyer, and if he wants to file a motion to remove the trustee from the case, under the specific statute, to speak to Joel about it, and --

THE COURT:  I'm very confident that the United States trustee is not giving you any advice. I'm --

MR. LUBIN:  No.  Procedural advice.

THE COURT:  No, yeah, well --

MR. LUBIN:  She said in the hearing.  You can ask her.

THE COURT:  Yeah, I'm not gonna do that.

MR. LUBIN:  Okay.

THE COURT:  But why are you forwarding emails that involve communications with your lawyer to other lawyers in the case?

MR. LUBIN:  I didn't forward emails.

THE COURT:  Really?  Would you like me to have Mr. Crane send it to the Court so we can look at it?

MR. LUBIN:  I preserved the record.

THE COURT:  You don't preserve the record by sharing communications with counsel with other people in the litigation.

Page 18

MR. LUBIN:  They intentionally share communications --

THE COURT:  Okay.

MR. LUBIN:  -- with counsel.  I'm not sure if that's the case.  I think Mr. Crane might be misrepresenting my emails.  My emails put them --

THE COURT:  We've had many interactions in this case --

MR. LUBIN:  Yeah.

THE COURT:  -- okay, I am completely unsurprised that you've had as many lawyers as you have.  I think it -- I think, Mr. Aresty, you might be number six, but this is a problem, okay --

MR. LUBIN:  (Inaudible.)

THE COURT:  -- and just based on what I've heard irreconcilable differences is proven.  I mean, I'm gonna allow Mr. Aresty to withdraw in the case.

MR. LUBIN:  Your Honor, can you give me just one moment.

THE COURT:  Oh, yeah, you can say one more thing.  I'm still gonna grant the motion.

Go ahead.

MR. LUBIN:  Okay.  If you grant the motion, on behalf of me personally, that's another story.  I can represent myself pro se as an individual on a party of

Page 19

interest, which I already -- it's in the motion.

THE COURT:  I get it.

MR. LUBIN:  If you grant on behalf of Spin Capital, Spin Capital won't be able to retain an attorney. That's gonna be material prejudice, irreparable harm, and --

THE COURT:  You can appeal after the judgment is entered, if there is a judgment.

All right.

MR. LUBIN:  I can appeal what?

THE COURT:  Okay.  You said something -- you said something that troubled me earlier.  There has been a ruling in another state that says you are not in control of Spin Capital.

MR. LUBIN:  Correct.

THE COURT:  Okay.  Can you explain that to me.

MR. LUBIN:  There's a ruling by an assignment that Alan Crane's client is potentially -- is purportedly a third-party beneficiary of that assignment, that Franklin Capital owns Spin's litigation rights, to wit, any unknown or known claims at the time hereof.

THE COURT:  Okay.  So that isn't that you are not in control of Spin as a corporate matter.  These are litigation rights pursuant to assignment documents

Page 20

that I've seen.

MR. LUBIN:  But these are all -- yeah, but --

THE COURT:  I've seen them.  Okay.

MR. LUBIN:  Your ruling was different.  It judicially stops -- it contradicts the Michigan --

THE COURT:  Okay, whatever.  But it isn't -- it isn't corporate control.  It's control over certain claims.  Yes?

MR. LUBIN:  Over all claims.

THE COURT:  Claims that are owned by the entity.  Not claims against the --

MR. LUBIN:  Correct.

THE COURT:  -- entity.

MR. LUBIN:  And in all my cases throughout the country, my attorneys have not been responding.  That obviously needs to go to further civil investigation by -- I already have an order to show cause in New York County that we're --

THE COURT:  Okay --

MR. LUBIN:  That's something else.

THE COURT:  -- done with that.

MR. LUBIN:  All right.

THE COURT:  All right.  So I'm done with that.

Page 21

I have -- I have a motion to withdraw, which is appropriately an emergency, let me say, for at least the third time, given the fact that this is a matter that has been pending for an extended period, over which there has been a lot of motion practice, and I am extremely familiar with it.  And I'm pretty sure that it will be among the three longest trials I have ever had in a bankruptcy matter.  And it's been scheduled for months, and that will not deter me from granting this motion to withdraw, because based on -- solely what I've heard today -- there are appropriate mean -- or cause in the form of irreconcilable differences.

So the motion is going to be granted, Mr. Aresty.

I need a service address for both you and for the entity.

What is the service address?

MR. LUBIN:  Send it to my email.

THE COURT:  No.  We do not send it to your email.  They can send it also to your email, but they are not required to do so.  Although everybody should do that.

What is the mailing address for both you and Spin Capital.

MR. LUBIN:  1460 Arboretum Parkway, that's A-R-B, as in boy, O-R-E-T-U-M, Parkway, Lakewood, New

Page 22

Jersey 08701.

Your Honor, may I ask you one more thing?

THE COURT:  Sure.

MR. LUBIN:  Can you review my opposition.

THE COURT:  I am unable to look at it.  You have an opposition to this motion, which has been filed?

MR. LUBIN:  Yes.

THE COURT:  Yes.

Ms. Leonard, can you --

THE CLERK:  You want me to see if I can print it?

THE COURT:  Can you print it here?

Thank you.

Is there something in it that you haven't said today?

MR. LUBIN:  I --

MR. ARESTY:  Judge, can I get the address --

MR. LUBIN:  -- have dyslexia, Your Honor, and I'm sitting with the whole team that is helping me --

THE COURT:  Okay.

MR. LUBIN:  So, yeah, I --

THE COURT:  Thank you.  Hold on.

Would you please repeat the mailing address 1460 Arboretum Parkway, that's A-R-B --

MR. ARESTY:  I got that.

Page 23

MR. LUBIN:  -- as in boy, O-R-E-T-U-M, as in Mary, Parkway, Lakewood, New Jersey 08701.

MR. ARESTY:  08701.

THE COURT:  Is that correct, 08701?

MR. LUBIN:  Yeah.

THE COURT:  All right.  So I'm looking at Document 350.  It's entitled Notice of Nonconsent to Withdrawal of Counsel and Statement of Prejudice. "Defendant Josh Lubin" -- which, by the way, that's only you and not Spin Capital, which is accurate since you can't file things on behalf of Spin Capital -- "Defendant does not consent to the withdrawal of Joel Aresty.  It was communicated to Mr. Aresty on December 19.  The trial is scheduled to commence on January 29, approximately five weeks from the date of the motion.  It'll cause material and irreparable prejudice.  The corporate defendant cannot proceed pro se."  That's true.

MR. LUBIN:  There's also, Your Honor.

THE COURT:  Hold on, I'm looking at it.

MR. LUBIN:  I'm sorry.

THE COURT:  I mean, I'll come back to you.

"If Mr. Aresty is permitted to withdraw without substitute counsel in place, Spin will be unable to participate in trial or comply with court obligations and will face severe and irreparable prejudice."  You

already said that.

"Compounding this prejudice, the active and unresolved disputes over the ownership and control of Spin Capital, LLC's litigation rights materially impairs Spin Capital, LLC's ability to promptly retain substitute counsel on an emergency basis.  Prospective counsel cannot reasonably assess authority, standing, or scope of representation while these issues remain unresolved."

Wouldn't that mean that even -- if that is the case, I asked you earlier whether it was a corporate ability concern, meaning did somebody rule that a person, other than you, controls Spin Capital as a corporate matter?  That's a question.

What's the answer?

MR. LUBIN:  All litigation rights, yes.

THE COURT:  No, I didn't ask that.  Not litigation rights.

Can Spin Capital buy a car right now?

MR. LUBIN:  I believe so.

THE COURT:  Did anybody say that you, as the principal of Spin Capital, cannot sign the documents on behalf of Spin Capital to buy a car?  That's what I'm trying to figure out.

MR. LUBIN:  Nobody has told me that Spin Capital doesn't have a right to litigate until I had

Page 25

discovered the order myself.

THE COURT:  Okay --

MR. LUBIN:  Yeah.

THE COURT:  -- you're -- that's regarding specific claims, yes?

MR. LUBIN:  It's regarding all Spin Capital claims.

THE COURT:  If there's an issue with regard to Spin Capital's ability to even defend itself in this action -- is that what you're saying?

MR. LUBIN:  Correct.

THE COURT:  Okay.  Then why doesn't Mr. Aresty have the same problem as any other lawyer?

MR. LUBIN:  I may have to get a special order appointing him as a special counsel.

THE COURT:  I don't even know what you just said.

MR. LUBIN:  I may have to get the Court to order conflict-free counsel due to the situation.  It's inconsistent --

THE COURT:  And I won't be doing that.  Spin Capital can find its own counsel.  The Court does not order counsel to represent Spin Capital.  This is not a criminal matter.

MR. LUBIN:  Spin Capital cannot legally find

Page 26

its own counsel, no.  Not anymore.

THE COURT:  Not anymore.

MR. LUBIN:  No.  It never was able to.  I was just unaware of it, and I have --

THE COURT:  Okay.  Which means, if that's the case, then Mr. Aresty can't be Spin Capital -- for some reason can't be -- this makes no sense.

MR. LUBIN:  It's already -- it has to be clarified.  I'm just -- I'm not -- I have 40 motions prepared for your court and a bunch of other courts that didn't get filed yet.  I'm not here to -- I'm here to seek clarity, stabilize, and --

THE COURT:  Well, you're not stabilizing the situation, because I don't understand.  If you're saying any other lawyer cannot represent Spin Capital, then how can Mr. Aresty do it?

MR. LUBIN:  He's already engaged with Spin Capital.

THE COURT:  That doesn't matter.

If there's an issue, then he would not properly be engaged.

MR. LUBIN:  First of all, Your Honor's ruling --

THE COURT:  Which ruling?

MR. LUBIN:  That the trustee needs parol

evidence to show that I intended to assign more rights than just two enumerated contracts --

THE COURT:  Okay.  What does -- that's a substantive issue.

MR. LUBIN:  That -- Your Honor's ruling actually would allow me to have counsel.

THE COURT:  I have no idea what you just said.  You're always allowed to have counsel.

MR. LUBIN:  Your Honor's ruling basically states that Franklin does not own all Spin Capital's litigation rights, unless they can show that I intended to do that.  It's in here, if you read the --

THE COURT:  Is it?

Can I ask of any of the other lawyers in this case, is there anybody who believes that Spin Capital cannot have a lawyer and defend itself in this adversary proceeding?

MR. LUBIN:  Your Honor --

THE COURT:  No one is speaking up.

I don't understand how -- you're telling me that Spin Capital cannot hire a lawyer.

MR. LUBIN:  I'm gonna make a comment that I don't want to make right now, but there's a lot of lawyers in this hearing that have a lot of exposure.  I'm not talking about my lawyers.  I'm talking about opposition

Page 28

lawyers.

THE COURT:  Because they filed suit?

MR. LUBIN:  I have a disqualification motion against Mr. Leto that Your Honor is going to grant in two seconds.  I didn't file it yet, because I didn't want to put too much in front of your head.  But why don't you read the Defendant, Avrumi Lubin's opposition to emergency motion to withdraw as counsel.  That's the next document.

THE COURT:  There's another one?

Okay.  I haven't finished this one yet.  There's more than one opposition?

MR. LUBIN:  If you read --

THE COURT:  Hold on.  I haven't finished this one yet.

MR. LUBIN:  (Inaudible.)

THE COURT:  No, you can't.  I'm gonna finish reading 350.  Hold on.

MR. LUBIN:  What's 350?

THE COURT:  It's the one I was looking at, that's entitled Notice of Nonconsent --

MR. LUBIN:  No, that's not the one I want you to read.

THE COURT:  Well, I'll get to that one next.  But I'm going to finish reading this one.

MR. LUBIN:  Your Honor, if the Court can be

so --

THE COURT:  Yeah, if you speak, I can't read.  So just wait.

"No adequate time to retain substitute counsel" -- and he seeks a continuation of the trial for at least 90 days.  And require Mr. Aresty to assist in transition.  I'm paraphrasing.

All right.  What's the other document you want me to look at?

MR. LUBIN:  It's document Defendant Avrumi Lubin's Opposition to Emergency Motion to Withdraw As Counsel.  And I also want five seconds.  I am confident if Your Honor reads my seven motions, you would deny that emergency motion.  But I'll --

THE COURT:  I have to read all the others too?

MR. LUBIN:  If you read all seven motions, I am 100% confident you will deny Joel Aresty's emergency motion.

THE COURT:  All right.  I've heard enough about this.  I'm continuing it to the next motion calendar, which is when, Ms. Leonard?

MR. LUBIN:  Can you read them?

THE COURT:  No, I'm done.  I will read everything before the next motion calendar.

Page 30

When is our next motion calendar?

MR. LUBIN:  Thank you, Your --

THE COURT:  I'm not talking -- yeah.

THE CLERK:  It's the 14th of January.

THE COURT:  It'll be the 14th of January.
This motion to withdraw will be reset.  That's 343,
January 14th.

What time, Ms. Leonard?

THE CLERK:  At 10:30.

THE COURT:  Okay.  And pretty much
everything else Mr. Lubin filed will also be set that day
to the extent it seeks relief from the Court.

I'm done.  I'm done.  No, I'm not hearing
any other presentation today, because I'm not ruling on
anything.

MR. LUBIN:  I have a procedural issue.

The proposed orders, Dawn asked me --

THE COURT:  You do not tender any proposed
orders until after I hear a matter.

Do you understand?

MR. LUBIN:  Can I bring it with me next
hearing?

THE COURT:  Sure.

MR. LUBIN:  Okay.

THE COURT:  Okay.

Page 31

MR. LUBIN: Thank you.

THE COURT: You're not handing in any proposed orders on things I have not heard. All right?

It is extremely likely I will grant the motion. The problem is it will then be two weeks before the trial. The trial will not be happening on the scheduled dates. If I approve the withdrawal, we are not having the trial on the dates that are currently scheduled --

MR. LUBIN: (Inaudible.)

THE COURT: -- you will not get 90 days. I want to be clear to you. You will not get 90 days.

MR. LUBIN: For what? For the trial?

THE COURT: You will not get 90 days of delay.

MR. LUBIN: Can I ask --

THE COURT: If I grant the motion --

MR. LUBIN: I know what -- what's gonna happen.

THE COURT: -- you need to find new lawyers right now.

Do you understand?

If you come back without counsel, bad things will happen. Is that clear?

MR. LUBIN: Your Honor, you're very highly

Page 32

respected.

THE COURT:  I don't really -- I didn't ask you about me --

MR. LUBIN:  Yeah.

THE COURT:  -- I know who I am.

MR. LUBIN:  Yeah.

THE COURT:  Do you understand that Spin and you will need to have counsel by the time I hear this matter?

MR. LUBIN:  On January 14th?

THE COURT:  That is correct.

MR. LUBIN:  I --

THE COURT:  I don't care if you tell me that's impossible.  You can find your sixth or seventh lawyer, whatever it is.  If not, you can represent yourself, and Spin will not have counsel.

Is that clear?

I'm not giving you 90 days.  I am very likely to grant the motion, but I want to read everything that you filed.

Do you understand?

MR. LUBIN:  If you read --

THE COURT:  The answer is yes, I understand what you have said.

MR. LUBIN:  My brain didn't fully process

Page 33

it.

THE COURT:  Okay.  I am having a hearing on the 14th of January.

MR. LUBIN:  I'll be here in person.

THE COURT:  I'm going to be hearing from Mr. Aresty again on his motion to withdraw.

MR. LUBIN:  Thank you.

THE COURT:  I am setting all the things that you filed that are requests for relief.

MR. LUBIN:  Thank you.

THE COURT:  So far you understand what I've said?

MR. LUBIN:  I believe so, yes.

THE COURT:  Okay.  It is extremely likely that I will permit Mr. Aresty to withdraw on that date. It will only be two weeks before the scheduled trial.  I am going to, very likely, move the trial, but not 90 days, as you requested.

It's a very long trial.  All the lawyers are now going to try to figure out what other dates might be available.  It's not going to be 90 days --

MR. LUBIN:  Your Honor --

THE COURT:  -- Spin and Mr. Lubin need to have new lawyers by the 14th of January.  Do not delay.

If you come in and tell me it is impossible

for Spin to get counsel, that's unfortunate.  But it's not the Court's problem.  It's not the plaintiff's problem.  It's not the other defendant's problem.  It's not the witness's problem.  It's your problem.

MR. LUBIN:  I understand what Your Honor has mentioned today.  I will see you on January 14th.

THE COURT:  You will, yes.

Thank you, everyone, and good morning.

Next matter.

MR. ARESTY:  Thank you very much, Your Honor.

THE COURT:  Next matter, Ms. Leonard.

THE CLERK:  The next case is --

THE COURT:  Oh, Mr. Lubin, the next time you file matters on the day of or the day before a hearing, I will strike all of them.  We have a local rule.  You must file matters at least two business days in advance by 4 p.m.

Do you understand that?

MR. LUBIN:  Yes, Your Honor.

If you look at the documents, you'll see they are signed a week ago --

THE COURT:  I don't care when they were signed, Mr. Lubin.

MR. LUBIN:  Okay -- when Joel Aresty filed

Page 35

his emergency motion.  It was impossible to have --

THE COURT:  When was the emergency motion filed, Mr. Aresty?

MR. LUBIN:  I think the 21st or the 22nd.

MR. ARESTY:  The emergency motion was filed at December 19th.

THE COURT:  Okay.  Do not file anything else in opposition to the motion.

Is that clear?  You have filed all of your responses.  You said seven documents.

MR. LUBIN:  There's no more opposition.  Yes, Your Honor.

THE COURT:  Okay.  Do not file anything else.

Do you understand that?

MR. LUBIN:  In regards to opposition to Joel Aresty?

THE COURT:  Yeah.

What else are you going to file?

MR. LUBIN:  Let's not get into it at this moment.  We'll -- if they gonna get filed --

THE COURT:  Okay.  You are currently represented by counsel in this case.  If you file anything else before the 14th of January, it will be stricken.

MR. LUBIN:  I understand that.  That's why

Page 36

it's going to be filed on January 15th.

THE COURT:  I see.  And, in fact, I may go and look at certain of the things that you filed without counsel and strike them before the 14th.

Is that clear?

MR. LUBIN:  I understand that.

THE COURT:  Okay.  Very good.  Thank you.

Good morning.

MR. ARESTY:  Thank you, Judge.

(Whereupon, the hearing was concluded.)

Page 37

CERTIFICATION

STATE OF FLORIDA          :

COUNTY OF BREVARD          :


                    I, Anna M. Meagher, Shorthand Reporter, do

hereby certify that the foregoing proceedings were

transcribed by me from a digital recording held on the

date and from the place as stated in the caption hereto on

Page 1 to the best of my ability.

                    WITNESS my hand this 30th day of

December, 2025.


                    _____

                    ANNA M. MEAGHER,

                    Shorthand Reporter