UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:                                              Case No. 22-12790-EPK

EXCELL AUTO GROUP, INC.,                            Chapter 7

Debtor.

FILED-USBC, FLS-WPB
'26 JAN 15 PM3:54

_____/

NICOLE TESTA MEHDIPOUR,                             Adv. Pro. No. 23-01132-EPK

as Chapter 7 Trustee for

Excell Auto Group, Inc.,

Plaintiff,

v.

HI BAR CAPITAL, LLC, et al.,

Defendants.

_____/

**NOTICE OF FILING OF CORRECTED SUPPLEMENTAL EXHIBIT 17-A**

Movant Avrumi (Josh) Lubin, pro se (individual capacity only), hereby files this Notice to correct the record regarding Doc. No. 371, titled *"Notice of Filing of Supplemental Exhibit 17."*

1. Doc. No. 371 states that Supplemental Exhibit 17 includes Exhibit 17-A, Exhibit 17-B, and Exhibit 17-C.

2. Upon review of the docketed PDF for Doc. No. 371, Exhibit 17-A was inadvertently omitted from the publicly filed attachment.

3. Accordingly, Movant hereby files the following corrected supplemental exhibit(s):

   a. Exhibit 17-A — *Verified Emergency Motion to Vacate Order (Broward Circuit Court Filing No. 239422279)*

Exhibit 17-C was filed previously at Doc. No. 371 and is incorporated by reference.

4. This Notice is filed solely to ensure the docket accurately reflects the exhibits identified in Doc. No. 371. No additional relief is requested.

Dated: January 1̲5̲, 2026

Respectfully submitted,

/s/ Avrumi (Josh) Lubin

Avrumi (Josh) Lubin
Pro se (individual capacity only)
1460 Arboretum Parkway

Lakewood, NJ 08701
josh@spincapital.com

+1 (732) 608-4905

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 1̲5̲, 2026, a true and correct copy of the foregoing was filed via CM/ECF and served on all parties entitled to notice.

Avrumi (Josh) Lubin

# IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

## CASE NO. CACE-22-005125

FVP OPPORTUNITY FUND III, LP, a Delaware limited partnership;
et al.,

Plaintiffs,

v.

KARMA OF BROWARD, INC., a Florida corporation,
et al.,

Defendants.

_____/

HI BAR CAPITAL, LLC, a New York limited liability company,

Plaintiff,

v.                                          Consolidated Case no. CACE-22-006401

KARMA OF PALM BEACH, INC., a Florida corporation
et al.,

_____/

## JUDGE: HON. DAVID A. HAIMES

## VERIFIED EMERGENCY MOTION TO VACATE AUGUST 14, 2025 ORDER PROCURED BY FRAUD UPON THE COURT; MOTION TO CORRECT THE RECORD; MOTION FOR EVIDENTIARY HEARING AND SANCTIONS; AND INCORPORATED MEMORANDUM OF LAW

Movant, AVRUMI "JOSH" LUBIN ("Movant" or "Mr. Lubin"), respectfully moves this Court—invoking its inherent authority to protect the integrity of its proceedings and Florida Rule of Civil Procedure 1.540—to VACATE the "Order on Joint Motion to Endorse Settlement"

entered August 14, 2025 (the "August 14 Order"), because it was procured through an unconscionable, record-corrupting scheme that deprived Movant of due process, inserted non-rulings as "findings," and then weaponized this Court's signature to trigger the immediate federal disbursement of $2,107,548.61 from the U.S. Bankruptcy Court registry.

This motion does not seek reconsideration of any ruling actually made by the Court. Rather, it seeks correction of specific factual "findings" inserted into the written Order that the Court later questioned on the record and acknowledged were broader than what it intended to rule. It seeks correction of record language that was inserted into the August 14, 2025 Order and that goes materially beyond the Court's oral rulings, as the Court itself later acknowledged on the record. The challenged language has since been treated as a binding factual determination by a bankruptcy court and used to authorize the distribution of over $2.1 million, creating concrete and irreparable consequences based on findings the Court expressly questioned and did not intend to make.

This Motion is intentionally direct. Fraud upon the Court is not a "litigation tactic." It is an attack on the judicial function itself. When counsel submits a proposed order ex parte, packs it with brand-new "findings" that were not noticed, not litigated, and (as the transcript later confirms) not even intended as findings, the result is not "harmless error." It is a deliberate misuse of the Court's order-entry process to obtain relief that could not have been granted through an adversarial, noticed proceeding.

Movant requests (i) immediate vacatur (or, at minimum, striking and correction) of the August 14 Order; (ii) an evidentiary hearing on the fraud upon the Court; (iii) an order compelling production of the submission history, communications, and drafts used to procure the August 14 Order; (iv) interim injunctive relief preserving the Net Proceeds from dissipation; and (v) sanctions—including fees and appropriate referral—against the responsible parties and counsel.

## I. RELEVANT BACKGROUND AND THE INTERNAL CONTRADICTIONS IN THE COURT'S OWN RECORD

1. The U.S. Bankruptcy Court declined to adjudicate the competing claims to the Net Proceeds and directed the parties to obtain a ruling from a court of competent jurisdiction. (Ex. A; see also Ex. B).

2. The Settling Parties (Hi Bar and the FVP/Franklin parties) then presented an eleventh-hour "Joint Motion" to "Endorse Settlement," and obtained a short-noticed hearing on August 13, 2025. (Ex. C; Sealed Ex. F).

3. At that hearing, this Court stated it was granting the Joint Motion based on the common-interest agreement language and a termination letter, and because it did not see how Mr. Lubin had the right to stand in and contest the settlement—while expressly recognizing Mr.

Lubin may have separate claims against Hi Bar that were not being adjudicated. (Ex. C at 41:1-25).

4. The next day, August 14, 2025, this Court entered the August 14 Order. (Ex. D).

5. The August 14 Order, as entered, went materially further than the Court's oral ruling and did so in a way that created purported 'findings' and 'ORDERED' provisions engineered for downstream use. Specifically, it: (a) recites findings about termination and standing (paras. 8-9); (b) declares this Court to be the 'court of competent jurisdiction' (para. 10); (c) purports to determine that neither Mr. Lubin nor any affiliated entities have any rights to the Net Proceeds (para. 11); (d) directs distribution to the trust account of counsel for the FVP Parties (para. 13); (e) contemplates filing this Order in the U.S. Bankruptcy Court to trigger registry disbursement (para. 14); and (f) denies any stay and makes the Order immediately effective (para. 16). (Ex. D paras. 8-11, 13-14, 16; Ex. E). Critically, Paragraph 8 purports to make an express factual "finding" that the Common Interest Agreement was terminated—language the Court later confirmed was not intended as a finding at all.

6. The August 14 Order was, in fact, used for that purpose. On August 27, 2025, the Bankruptcy Court entered an order directing the Clerk to disburse $2,107,548.61 to Schwartz Breslin, PLLC trust account, expressly relying on this Court's August 14 Order and its statements that Mr. Lubin and his affiliates had "no rights to the Net Proceeds." (Ex. E).

7. Movant promptly sought reconsideration/clarification and a stay, explaining that the proposed order had been submitted to chambers without being furnished to Movant (in contravention of Fla. R. Jud. Admin. 2.516(h)(1) and Local Rule 8), and that the proposed order contained findings not reached, not briefed, and not noticed. (Ex. G at paras. 3-6).

8. On September 3, 2025, the transcript reflects this Court acknowledged that at least one of the core disputed statements in the August 14 Order—Paragraph 8's statement that the Court "finds" the Common Interest Agreement was terminated—was not intended as a finding at all, and the Court stated it would amend "finds" to "notes." (Ex. H at 22:9-20). Accordingly, Paragraph 8 of the August 14 Order is materially inaccurate on its face: it states that the Court "finds" termination where the Court later acknowledged on the record that no such finding was intended. That internal contradiction alone requires correction or vacatur to conform the written order to the Court's actual ruling.

9. On September 10, 2025, the Court further recognized that the termination letter referenced in the August 14 Order was directed to Spin, not to Mr. Lubin personally, and that the Court's intent on August 13 was not to adjudicate Mr. Lubin's separate claims against Hi Bar. (Ex. I at 40:17-41:2). This confirmation directly contradicts the August 14 Order's implicit premise that termination applied to Mr. Lubin personally, rather than to Spin, and underscores that the written order overstated the scope of what the Court intended to decide.

## II. GOVERNING LAW: FRAUD UPON THE COURT, DUE PROCESS, AND RULE 1.540

A. Fraud upon the Court is an extraordinary doctrine reserved for extraordinary misconduct. It applies where a party "has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense." Cox v. Burke, 706 So. 2d 43, 46 (Fla. 5th DCA 1998). Submitting a proposed order that materially expands an oral ruling, without notice to an affected party, and then using that order to obtain immediate financial relief in another court constitutes precisely the type of unconscionable scheme Cox condemns.

B. Florida Rule of Civil Procedure 1.540(b)(3) permits relief from an order for "fraud ... misrepresentation, or other misconduct of an adverse party" within one year; and the rule expressly preserves the Court's power to set aside an order for "fraud upon the court." Fla. R. Civ. P. 1.540(b); see also Pino v. Bank of New York, 121 So. 3d 23 (Fla. 2013).

Because this Motion alleges fraud upon the Court itself—conduct that corrupts the judicial process and results in an order that does not reflect the Court's actual rulings—it is not subject to the one-year limitation applicable to intrinsic fraud under Rule 1.540(b)(3). Instead, Movant invokes this Court's inherent authority and continuing obligation to vacate orders procured through fraud upon the Court in order to preserve the integrity of its proceedings.

C. Fraud upon the Court includes extrinsic fraud—conduct that prevents an unsuccessful party from fully presenting his case. DeClaire v. Yohanan, 453 So. 2d 375, 377 (Fla. 1984) (distinguishing extrinsic vs. intrinsic fraud).

D. Due process is violated where a court grants relief beyond what was noticed or litigated. Bluebone Dev., LLC v. Malibu Bay Cmty. Ass'n, Inc., 289 So. 3d 515, 516 (Fla. 3d DCA 2019) (reversing where trial court expanded scope and ruled on matters not noticed).

E. Orders procured through fraud upon the Court are voidable at any time, and trial courts possess both broad discretion and an affirmative duty to vacate orders that misstate the record, exceed the scope of the Court's actual rulings, or are entered without due process. Where the written order materially diverges from the oral ruling and is later acknowledged by the Court not to reflect its intent, corrective action is required to preserve the integrity of the judicial process.

## III. ARGUMENT

### A. The August 14 Order is infected with due-process defects and relief beyond the noticed issues.

Movant is not here arguing about "semantics." Movant is challenging the entry of an order that (i) was drafted and submitted in violation of the basic requirement that proposed orders be circulated to all parties; (ii) injected new adjudicative "findings" beyond the hearing notice and beyond the record; and (iii) was then used to strip Movant of $2.1 million in a different court before Movant could obtain a hearing on his timely record-correction motion.

Movant's contemporaneous Motion for Reconsideration/Clarification documented that the proposed order was submitted to chambers without first being furnished to counsel for Mr. Lubin, contrary to Fla. R. Jud. Admin. 2.516(h)(1) and Local Rule 8, and that it contained "several findings that were not reached, were not briefed, and were not noticed." (Ex. G at paras. 3-6).

That alone warrants vacatur or correction. Relief that was not noticed and not litigated is a due-process violation. Bluebone, 289 So. 3d at 516.

Movant does not suggest any improper judicial conduct; the issue is that the order-submission process failed in a way that allowed non-record findings to be entered without notice or opportunity to be heard.

This Motion does not allege judicial error. It alleges a corrupted order-entry process. Where a proposed order is submitted without service, embeds extra-record findings, and is later acknowledged by the Court not to reflect its intent, the integrity of the judicial process—not merely the correctness of the ruling—is implicated.

**B. The record confirms the August 14 Order contains "findings" the Court did not intend to make—and that mattered.**

Paragraph 8 of the August 14 Order states: "The Court finds that the Common Interest Agreement was terminated by Hi Bar on April 3, 2024." (Ex. D para. 8).

Yet on September 3, 2025, when Movant called out this record corruption, the Court expressly acknowledged that this statement was "not meant to be a finding" and stated it would amend "finds" to "notes." (Ex. H at 22:9-20).

If the Court did not intend to make a finding, then an order stating that the Court 'finds' that fact is materially inaccurate and does not reflect the Court's ruling. The error is not semantic; it converted a non-ruling into an adjudicative fact and supplied the factual predicate for the downstream "no rights to Net Proceeds" determination. And it is not harmless. Paragraphs 10 and 11 then escalate the mischief by purporting to determine—globally and conclusively—that Mr. Lubin and all of his affiliates have "no rights to the Net Proceeds." (Ex. D paras. 10-11). Those paragraphs are not independent rulings; they are derivative of Paragraph 8's termination language. Once the termination "finding" collapses—as the Court itself acknowledged—the downstream "no rights to Net Proceeds" determination has no factual foundation.

Nothing in the August 13, 2025 oral ruling adjudicated ownership, entitlement, or extinguishment of Mr. Lubin's or any affiliate's rights to the Net Proceeds. Paragraphs 10 and 11 of the August 14 Order therefore exceed a standing determination and purport to resolve substantive property rights that were neither noticed, litigated, nor argued. Such relief is void for lack of due process and cannot stand.

The oral ruling on August 13 confirms the narrow purpose: the Court granted the Joint Motion and stated it did not see how Mr. Lubin had any right to stand in and contest the settlement, while recognizing Mr. Lubin "may have claims against Hi Bar … but that has nothing to do with the settlement." (Ex. C at 41:1-25).

On September 10, 2025, the Court further acknowledged that the termination letter referenced in the August 14 Order was directed to Spin, not to Mr. Lubin personally. (Ex. I at 40:17-41:2). These transcript admissions matter because they confirm what Movant has said from day one: the August 14 Order, as drafted and entered, overstated and mischaracterized the Court's ruling.

## C. This was not an academic dispute; the August 14 Order was immediately relied upon by the Bankruptcy Court to authorize disbursement of $2.1 million from the registry.

The August 14 Order was not merely entered; it was immediately operationalized as an enforcement instrument. The Order expressly contemplated—and was drafted to enable—its filing in the Bankruptcy Court to trigger registry disbursement of the Net Proceeds. (Ex. D paras. 14, 16). The Bankruptcy Court did not independently adjudicate these issues; it relied on the August 14 Order as an authoritative state-court determination—demonstrating why accuracy of this Court's record is not optional.

That is exactly what occurred. The Bankruptcy Court's August 27, 2025 order directed the Clerk to disburse $2,107,548.61 to Schwartz Breslin, PLLC, relying on the August 14 Order's determinations regarding Mr. Lubin's alleged lack of rights. (Ex. E).

Thus, a short-noticed state-court order—procured through an ex parte proposed-order submission and containing non-record "findings"—became the mechanism for immediate transfer of $2.1 million. This is precisely the kind of extrinsic fraud and systemic interference that the fraud-upon-the-court doctrine exists to deter and remedy.

## D. The confidential settlement agreement itself underscores the scheme and why the Court must intervene.

The settlement agreement is stamped "HIGHLY CONFIDENTIAL," and it expressly disclaims any rights by Mr. Lubin or Spin, while containing factual representations about termination and alleged breaches of the Spin/Hi Bar Common Interest Agreement. (Sealed Ex. F §§ 7, 20-21).

Those representations were then echoed—verbatim in substance—in the August 14 Order as "findings." (Ex. D para. 8). The chain is unmistakable: confidential settlement terms and

one-sided assertions were converted into court "findings" through an ex parte proposed order process, then used to unlock and distribute registry funds. This Court should not permit its process to be used as a mechanism for effecting a non-adversarial transfer of registry funds through a materially inaccurate record.

### E. Relief and sanctions are warranted; at minimum, an evidentiary hearing is mandatory.

When fraud upon the Court is credibly alleged, the Court must protect its integrity. Because the submission history, communications with chambers, and timing of the Bankruptcy Court filing are outside the four corners of the docket, resolution on affidavits alone would be inadequate. Movant requests an evidentiary hearing at which the Court can determine, on a complete record, (i) who drafted the August 14 Order; (ii) when and how it was transmitted to chambers; (iii) whether it was furnished to Movant before submission; (iv) what communications occurred with the JA/judge regarding the content; (v) why the order contains findings the Court later acknowledged were not intended; and (vi) how quickly the order was deployed in the Bankruptcy Court to obtain disbursement.

Following an evidentiary hearing and factual findings, Movant respectfully requests that the Court consider whether sanctions are appropriate, including fees incurred to correct the record and protect the Court from being used as a conduit for relief that exceeded the Court's actual rulings

### IV. REQUEST FOR RELIEF

WHEREFORE, Movant respectfully requests that this Court enter an order:

1. VACATING the August 14, 2025 Order on Joint Motion to Endorse Settlement (Ex. D) in its entirety or alternatively striking and correcting Paragraphs 8–11 and any derivative 'no rights' determinations entered therefrom nunc pro tunc to conform the written order to the Court's actual rulings;

2. Setting an EXPEDITED, IN-PERSON evidentiary hearing (with live testimony and cross-examination) on fraud upon the Court and record corruption, with a court reporter present;

3. Ordering the Settling Parties and their counsel to PRODUCE (for in camera review if necessary) all drafts, redlines, submission emails, e-portal uploads, and communications with chambers relating to the proposed August 14 Order;

4. Entering interim injunctive relief requiring that the Net Proceeds be preserved (no disbursement, transfer, or dissipation), including requiring the recipients to maintain all funds in trust pending further order;

5. Directing the Settling Parties to promptly file any corrected/amended order in the Bankruptcy Court and to notify that court that the August 14 Order has been vacated or materially corrected;

6. Awarding Movant his attorneys' fees and costs (or, if pro se, taxable costs) incurred in bringing this motion and protecting the record;

7. Issuing an Order to Show Cause why sanctions should not be imposed for fraud upon the Court and violation of the proposed-order submission rules; and

8. Granting such other and further relief as this Court deems just and proper.

## VERIFICATION

I declare under penalty of perjury that I have read the foregoing Motion and that the factual statements contained in it are true and correct to the best of my knowledge, information, and belief, based on the record and the exhibits referenced herein.

Dated: January 13, 2026

__/s/ Avrumi Lubin____

**AVRUMI "JOSH" LUBIN, Movant**

1460 Arboretum Pkwy

Lakewood, NJ 08701

Email: josh@spincapital.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on all counsel of record and parties via the Florida Courts E-Filing Portal and/or electronic mail service pursuant to Fla. R. Jud. Admin. 2.516 on this 13 day of January, 2026.

/s/ Avrumi Lubin

AVRUMI "JOSH" LUBIN

**PROPOSED ORDER**

**IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT**

**IN AND FOR BROWARD COUNTY, FLORIDA**

**CASE NO.: CACE-22-005125**

**ORDER GRANTING VERIFIED EMERGENCY MOTION TO VACATE ORDER PROCURED BY FRAUD UPON THE COURT**

THIS CAUSE came before the Court on Movant Avrumi "Josh" Lubin's Verified Emergency Motion to Vacate August 14, 2025 Order Procured by Fraud Upon the Court; Motion to Correct the Record; Motion for Evidentiary Hearing and Sanctions (the "Motion"). The Court, having reviewed the Motion, the record, and being otherwise fully advised, hereby ORDERS and ADJUDGES as follows:

1. The Motion is GRANTED.

2. The Court's August 14, 2025 "Order on Joint Motion to Endorse Settlement" is VACATED in its entirety as procured by fraud upon the Court. Alternatively, and at minimum, Paragraphs 8-11 and 14 (and any related findings) are STRICKEN and deemed void.

3. An IN-PERSON evidentiary hearing on fraud upon the Court and record corruption is set for_____ at ____ a.m./p.m., to be held in open court (not telephonic), with a court reporter.

4. The Settling Parties and their counsel shall preserve all documents, communications, drafts, redlines, and submission materials relating to the August 14 Order and shall produce them to Movant and/or the Court as directed in a separate scheduling order.

5. Pending further order, all persons/entities in possession of any portion of the Net Proceeds shall maintain those funds in a segregated trust/escrow account and shall not disburse, transfer, encumber, or dissipate the funds.

6. Jurisdiction is reserved to award sanctions, fees, and costs and to enter any further relief necessary to protect the integrity of the Court.

DONE AND ORDERED in Chambers in Broward County, Florida on _____,
2026.


_____

**HON. DAVID A. HAIMES**

CIRCUIT COURT JUDGE