Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 1 of 976

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF NEW YORK

Index No. 650582/2022
Third-Party Index No. 595367/2022

Hon. Nancy M. Bannon, J.S.C. (Part 61M)

TETON LIFE LLC as Assignee of the Rights of Spin Capital, LLC,
Plaintiff,

-against-
GOLDEN FOOTHILL INSURANCE SERVICES, LLC et al.,
Defendants.

-------------------------------------------x

GOLDEN FOOTHILL INSURANCE SERVICES, LLC et al.,
Third-Party Plaintiffs,

-against-
SPIN CAPITAL, LLC, and AVRUMI LUBIN,
Third-Party Defendants.

-------------------------------------------x

### NOTICE OF FILING OF RELATED PROCEEDINGS MATERIALS

PLEASE TAKE NOTICE that Third-Party Defendant Avrumi Lubin (individual capacity only) respectfully files the materials attached as Exhibits A through I, which are filings from related proceedings, for the Court's convenience and to keep the record clear.

No relief is requested by this Notice of Filing. This Notice is not intended as a memorandum of law or supplemental briefing; it is limited to lodging the attached materials as part of the NYSCEF record.

The attached materials include filings from (i) the United States Bankruptcy Court, Southern District of Florida (In re Excell Auto Group, Inc., Case No. 22-12790-EPK, Adv. Proc. No. 23-01132-EPK) and (ii) the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida (Case No. CACE-22-005125, consolidated with CACE-22-006401).

**Exhibit List:**

Exhibit A — Notice of Filing Declaration Regarding Preservation Notice and Response (S.D. Fla. Bankr., Adv. Proc. No. 23-01132-EPK, Doc. 362, filed Jan. 7, 2026).

Exhibit B — Notice of Filing of Exhibits in Support of Emergency Motion for Entry of (I) Preservation Order, (II) Protective Order, and (III) Limited Continuance or, in the Alternative, Expedited Status Conference and Scheduling Guardrails (S.D. Fla. Bankr., Adv. Proc. No. 23-01132-EPK, Doc. 370, filed Jan. 13, 2026).

Exhibit C — Notice of Filing of Corrected Supplemental Exhibit 17-A (S.D. Fla. Bankr., Adv. Proc. No. 23-01132-EPK, Doc. 373, filed Jan. 15, 2026).

Exhibit D — Notice of Hearing (S.D. Fla. Bankr., Adv. Proc. No. 23-01132-EPK, Doc. 369, filed Jan. 13, 2026).

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

In re: EXCELL AUTO GROUP, INC., Debtor.
Case No. 22-12790-EPK (Chapter 7)

NICOLE-TESTA MEHDIPOUR, as Chapter 7 Trustee for Excell Auto Group, Inc., Plaintiff,

v.

HI BAR CAPITAL, LLC, et al., Defendants.
Adv. Proc. No. 23-01132-EPK

---

# EXHIBIT 18

NYSCEF "Notice of Filing of Related Proceedings Materials"

Supreme Court of the State of New York, County of New York — Index No. 650582/2022

Filed Jan. 19, 2026 (NYSCEF Doc. No. 1002) and attached Exhibits A–I (NYSCEF Doc. Nos. 1003–1011).

*(Filed as a supplemental exhibit for ease of reference.)*

Exhibit E — Exhibit Index (Broward Cty. Fla., Case No. CACE-22-005125, Filing No. 239422279, filed Jan. 13, 2026).

Exhibit F — Defendant Avrumi ("Josh") Lubin's Motion to Determine Confidentiality of Court Records and to File Exhibit F Under Seal (Broward Cty. Fla., Case No. CACE-22-005125, Filing No. 239422279, filed Jan. 13, 2026).

Exhibit G — Verified Emergency Motion to Vacate August 14, 2025 Order Procured by Fraud Upon the Court; Motion to Correct the Record; Motion for Evidentiary Hearing and Sanctions; and Incorporated Memorandum of Law (Broward Cty. Fla., Case No. CACE-22-005125, Filing No. 239422279, filed Jan. 13, 2026).

Exhibit H — Defendant Avrumi ("Josh") Lubin's Verified Emergency Motion for Order to Show Cause and for Civil Contempt (Enforcement of April 14, 2022 Oral Freeze Order), and for Accounting, Turnover/Escrow of Proceeds, Sanctions, and Other Ancillary Relief (Broward Cty. Fla., Case No. CACE-22-005125, Filing No. 239729527, filed Jan. 17, 2026).

Exhibit I — Emergency Motion for Entry of (I) Preservation Order, (II) Protective Order, and (III) Limited Continuance or, in the Alternative, Expedited Status Conference and Scheduling Guardrails (S.D. Fla. Bankr., Adv. Proc. No. 23-01132-EPK, Doc. 368, filed Jan. 13, 2026).

Dated: New York, New York
January 2  2026

Respectfully submitted,

/s/ Avrumi Lubin
Avrumi ("Josh") Lubin
Third-Party Defendant (Individual)
1460 Arboretum Parkway
Lakewood, New Jersey 08701
Email: josh@spincapital.com
Tel: (732) 608-4905

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

In re: EXCELL AUTO GROUP, INC., Debtor.
Case No. 22-12790-EPK (Chapter 7)

NICOLE-TESTA MEHDIPOUR, as Chapter 7 Trustee for Excell Auto Group, Inc., Plaintiff,
v.
HI BAR CAPITAL, LLC, et al., Defendants.
Adv. Proc. No. 23-01132-EPK

---

# SUB-EXHIBIT 18-A

Notice of Filing Declaration Regarding Preservation Notice and Response (S.D. Fla. Bankr., Adv. Proc. No. 23-01132-EPK, Doc. 362, filed Jan. 7, 2026).

Case 23-01132-EPK Doc 362 Filed 01/07/26 Page 1 of 8

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

In re:

EXCELL AUTO GROUP, INC.

     Debtor.

_____/

NICOLE TESTA MEHDIPOUR,
as Chapter 7 Trustee for
Excell Auto Group, Inc.,

     Plaintiff,

v.

HI BAR CAPITAL, LLC, et al.,

     Defendants.

_____/

Case No. 22-12790-EPK
Chapter 7

**FILED-USBC, FLS-MIA
'26 JAN 7 PM 1:28**

Adv. Pro. No. 23-01132-EPK

## NOTICE OF FILING DECLARATION REGARDING PRESERVATION NOTICE AND RESPONSE

     **PLEASE TAKE NOTICE** that Defendant Avrumi Lubin, individually and as principal of Spin Capital LLC, hereby files the Declaration of Avrumi Lubin Regarding Preservation Notice and Response, attached hereto as Exhibit A.

     This filing is made solely to memorialize notice provided, responses received, and positions taken regarding preservation of potentially relevant records. No relief is requested by this Notice.

     Dated: January 7 2026

     Respectfully submitted,

Josh (Avrumi) Lubin, Defendant, Pro Se
(Individual Capacity Only)
1460 Arboretum Pkwy
Lakewood, NJ 08701
Email: josh@spincapital.com
Phone: (732) 608-4905

1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Notice of Filing

and attached Declaration foregoing to be served via the Court's CM/ECF system upon all

counsel of record on January 7, 2026.

Josh (Avrumi) Lubin, Defendant, Pro Se
(Individual Capacity Only)
1460 Arboretum Pkwy
Lakewood, NJ 08701
Email: josh@spincapital.com
Phone: (732) 608-4905

# EXHIBIT A

## Josh Lubin

| | |
|---|---|
| **From:** | Josh Lubin |
| **Sent:** | Monday, January 5, 2026 4:01 PM |
| **To:** | Feinman, Heidi A. (USTP) |
| **Cc:** | oig.hotline@usdoj.gov |
| **Subject:** | Formal Escalation — Preservation Obligations and Record Integrity |
| **Importance:** | High |

Ms. Feinman,

Your latest response confirms that you are declining to implement or facilitate any preservation measures in response to my written notice, and that you are refusing to identify any appropriate DOJ or UST contact through whom such preservation should be addressed.

That position is untenable.

Preservation obligations are not triggered by whether an office subjectively views itself as "involved," nor by whether a party has yet retained counsel. They arise when there is reasonable anticipation of litigation, review, or judicial inquiry, and they attach to **records that may be relevant to matters already before the Court or reasonably foreseeable proceedings**—including inter-agency communications, oversight activity, referrals, analyses, and decisions taken or not taken.

You have now stated, repeatedly, that:
- no litigation hold exists,
- no action will be taken in response to written notice,
- and that no further response will be provided.

If it is your position that the United States Trustee Program—and specifically the Miami U.S. Trustee's Office—**possesses no records responsive to the scope of the preservation notice,** that should be stated clearly and unequivocally.
If that is not your position, then preservation is required, and refusing to implement it after notice raises serious record-integrity concerns.

I am not asking you to concede party status, adjudicate merits, or take any litigation position. I am seeking clarity as to whether potentially relevant government records are being preserved or allowed to be destroyed after notice.

Because your responses disclaim responsibility without addressing that core question, and because you have indicated you will not respond further, I am escalating this issue to ensure the record accurately reflects what has occurred.

This communication is intended to memorialize that:
1. formal written notice was provided;
2. preservation was requested;
3. the request was rejected without identification of an alternative mechanism; and

1

4.    no clarification was provided as to the existence or non-existence of responsive records.

That record will stand on its own.

Josh
Avrumi Lubin

Get Outlook for iOS

_____

**From:** Feinman, Heidi A. (USTP) <Heidi.A.Feinman@usdoj.gov>
**Sent:** Monday, January 5, 2026 3:30:33 PM
**To:** Josh Lubin <josh@spincapital.com>
**Subject:** RE: IMMEDIATE DOJ-WIDE LITIGATION HOLD & PRESERVATION DIRECTIVE — NO EXCEPTIONS

Mr. Lubin:

Again if you are making a request for a "litigation hold" or some other retention of information by the the United States Trustee Program or any other DOJ agency, then it needs to be done in an appropriate manner and and to the appropriate parties. An email to me is not sufficient and will not result in anything.
I encourage as I have in the past to please obtain counsel to assist you.

I will not respond further regarding this email.

*Heidi A. Feinman*
Assistant United States Trustee
Office of United States Trustee
Department of Justice
Email: *Heidi.A.Feinman@usdoj.gov*
Telephone (305) 536-7472

_____

**From:** Josh Lubin <josh@spincapital.com>
**Sent:** Monday, January 5, 2026 5:27 PM
**To:** Feinman, Heidi A. (USTP) <Heidi.A.Feinman@usdoj.gov>
**Subject:** [EXTERNAL] Re: IMMEDIATE DOJ-WIDE LITIGATION HOLD & PRESERVATION DIRECTIVE — NO EXCEPTIONS
**Importance:** High

Ms. Feinman,

Your response reflects a fundamental misunderstanding of the purpose and legal effect of a preservation notice.

The litigation hold and preservation directive was not predicated on the Miami U.S. Trustee's Office being a named litigant, nor on the existence of a currently pending action styled against that office.
Preservation obligations arise upon reasonable anticipation of litigation or review, and they extend to

2

records that may be relevant to matters before the Court, including inter-agency communications, oversight activity, referrals, analyses, and decisions taken or not taken.

Whether the Miami U.S. Trustee's Office views itself as "involved" is not determinative. The question is whether the office possesses, controls, or has access to information potentially relevant to ongoing or reasonably foreseeable proceedings involving Spin Capital, related estates, or issues already before Judge Kimball. If so, preservation duties attach as a matter of law.

To be clear:
- This notice was issued to ensure preservation of potentially relevant materials across DOJ and UST components;
- It does not require your office to concede party status;
- It does not require a determination on the merits;
- It does require that records not be destroyed, altered, or lost once notice is given.

Your statement that "no litigation hold exists" is concerning, as it suggests that preservation has not been implemented despite formal written notice. If your position is that the Miami U.S. Trustee's Office does not possess any records responsive to the scope described, that should be stated explicitly. Otherwise, the appropriate course is preservation, not dismissal.

Please clarify, in writing:
1. Whether the Miami U.S. Trustee's Office possesses or controls any records falling within the scope of the preservation notice previously sent; and
2. Whether steps have been taken to ensure that any such materials are preserved pending further direction.

This clarification is necessary to ensure the record is accurate and to avoid any misunderstanding regarding preservation obligations going forward.

Josh
Avrumi Lubin

Get Outlook for iOS

---

**From:** Feinman, Heidi A. (USTP) <Heidi.A.Feinman@usdoj.gov>
**Sent:** Monday, January 5, 2026 3:22:24 PM
**To:** Josh Lubin <josh@spincapital.com>
**Subject:** RE: IMMEDIATE DOJ-WIDE LITIGATION HOLD & PRESERVATION DIRECTIVE — NO EXCEPTIONS

Mr. Lubin:
The Miami United States Trustee's Office is not and has not been involved in any litigation with you or Spin Capital, LLC before any Court and no litigation hold exists.
To the extent you believe otherwise, you will need to contact the appropriate parties in the appropriate manner.
To the extent you have litigation with other agencies in the Department of Justice, you will need to contact them in the appropriate manner.
This email is insufficient.

3

FILED: NEW YORK COUNTY CLERK 01/19/2026 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1003    Case 23-01132-EPK    Doc 362    Filed 01/07/26    Page 7 of 8    RECEIVED NYSCEF: 01/19/2026

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 12 of 976

*Heidi A. Feinman*
Assistant United States Trustee
Office of United States Trustee
Department of Justice
Email: *Heidi.A.Feinman@usdoj.gov*
Telephone (305) 536-7472

**From:** Josh Lubin <josh@spincapital.com>
**Sent:** Friday, January 2, 2026 9:02 PM
**To:** Feinman, Heidi A. (USTP) <Heidi.A.Feinman@usdoj.gov>
**Cc:** Feedback, Civil <cfeedbac@CIV.USDOJ.GOV>; NSDFOIA (NSD) <NSDFOIA@usdoj.gov>; JMDFoia (JMD) <Ex_JMDFoia@jmd.usdoj.gov>; Jeffrey Chubak <jchubak@aminillc.com>; Avery Samet <asamet@aminillc.com>; JOEL ARESTY <aresty@mac.com>; Stanley Casey <scasey@sqcaseylaw.com>; Browndorf Eric A. <ebrowndorf@cooperlevenson.com>; Rubley William <wrubley@cooperlevenson.com>; Steve Wells <steve@wellspc.com>; Will Parsons <will@wellspc.com>; Ian Williamson <iwilliamson@manteselaw.com>; Sherri Sikorski <ssikorski@manteselaw.com>; Mack Wilson <mack@wilson-pllc.com>; Eric Lockridge <eric.lockridge@keanmiller.com>; Division, Criminal (CRM) <Criminal.Division@usdoj.gov>; antitrust@justice.gov
**Subject:** [EXTERNAL] RE: IMMEDIATE DOJ-WIDE LITIGATION HOLD & PRESERVATION DIRECTIVE — NO EXCEPTIONS
**Importance:** High

Heidi,

This email constitutes **a formal, immediate, and non-negotiable litigation hold and preservation directive**. You are hereby directed to **ensure this hold is issued, enforced, and confirmed across every DOJ department, component, office, task force, and subdivision nationwide**, without exception.

This preservation obligation applies **immediately** and covers **all records in any form**, whether maintained centrally or individually, including but not limited to: emails, texts, messaging apps (Slack, Teams, Signal, WhatsApp, iMessage), call logs, voicemails, notes, drafts, memoranda, internal communications, metadata, audit logs, databases, shared drives, cloud storage, backups, personal devices used for government business, and any third-party or contractor-maintained systems.

The scope expressly includes **any material referencing or relating to me, Spin Capital LLC, affiliated entities, related litigations, investigations, referrals, inter-agency communications, internal deliberations, analyses, instructions, preservation decisions, or decisions not to act**. This includes communications **between DOJ components**, with **U.S. Trustees, courts, outside counsel, regulators, law enforcement, or private parties**.

No deletion, overwriting, auto-purging, alteration, concealment, migration without retention, or "routine" records management is permitted. **Preservation overrides all ordinary retention schedules.** Failure to preserve—even inadvertently—will be treated as **spoliation** and addressed accordingly.

I expect you to:

1. **Distribute this hold DOJ-wide** (all divisions, districts, components, and offices nationwide);

4

2. **Confirm in writing** that distribution has occurred;

3. **Confirm the mechanism of enforcement** (who issued it, how it was implemented, and how compliance is monitored);

4. **Identify a point of contact** responsible for DOJ-wide compliance.

This notice is issued to create a clear and permanent record. Nothing in this directive waives any rights, remedies, or privileges. All rights are expressly reserved.

**This notice is re-sent solely to correct a non-routable Antitrust Division address; all other recipients received the original transmission.**

Please confirm compliance **promptly.**

Josh
Avrumi Lubin

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

In re: EXCELL AUTO GROUP, INC., Debtor.
Case No. 22-12790-EPK (Chapter 7)

NICOLE-TESTA MEHDIPOUR, as Chapter 7 Trustee for Excell Auto Group, Inc., Plaintiff,
v.
HI BAR CAPITAL, LLC, et al., Defendants.
Adv. Proc. No. 23-01132-EPK

---

# SUB-EXHIBIT 18-B

Notice of Filing of Exhibits in Support of Emergency Motion (S.D. Fla. Bankr., Adv. Proc. No. 23-01132-EPK, Doc. 370, filed Jan. 13, 2026).

**SUPREME COURT OF THE STATE OF NEW YORK** Index No. 650582/2022
**COUNTY OF NEW YORK**          Third-Party Index No. 595367/2022

Hon. Nancy M. Bannon, J.S.C. (Part 61M)

TETON LIFE LLC as Assignee of the Rights of Spin Capital, LLC,
Plaintiff,
-against-
GOLDEN FOOTHILL INSURANCE SERVICES, LLC et al.,
Defendants.
----------------------------------------------x
GOLDEN FOOTHILL INSURANCE SERVICES, LLC et al.,
Third-Party Plaintiffs,
-against-
SPIN CAPITAL, LLC, and AVRUMI LUBIN,
Third-Party Defendants.
----------------------------------------------x

# EXHIBIT B

**Notice of Filing of Exhibits in Support of Emergency Motion for Entry of (I) Preservation Order, (II) Protective Order, and (III) Limited Continuance or, in the Alternative, Expedited Status Conference and Scheduling Guardrails**

S.D. Fla. Bankr., Adv. Proc. No. 23-01132-EPK, Doc. 370, filed Jan. 13, 2026.

*Cover page for NYSCEF exhibit attachment (for ease of reference)*

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

In re:

Case No. 22-12790-EPK

EXCELL AUTO GROUP, INC.,

Chapter 7

Debtor.

**FILED-USBC, FLS-MIA**
**'26 JAN 13 AM10:01**

_____/

NICOLE TESTA MEHDIPOUR,

Adv. Pro. No. 23-01132-EPK

as Chapter 7 Trustee for

Excell Auto Group, Inc.,

Plaintiff,

v.

HI BAR CAPITAL, LLC, et al.,

Defendants.

_____/

## NOTICE OF FILING OF EXHIBITS IN SUPPORT OF EMERGENCY MOTION FOR ENTRY OF (I) PRESERVATION ORDER, (II) PROTECTIVE ORDER, AND (III) LIMITED CONTINUANCE OR, IN THE ALTERNATIVE, EXPEDITED STATUS CONFERENCE AND SCHEDULING GUARDRAILS

PLEASE TAKE NOTICE that Defendant Avrumi ("Josh") Lubin (the "Movant"), appearing pro se in his individual capacity only, hereby files the exhibits listed below in support of the Emergency Motion referenced above (the "Motion").

The exhibits are filed solely to provide record support for the Motion. No additional relief is requested by this Notice. To the extent any exhibit contains personal contact information, third-party email addresses, or other non-public identifiers, such information has been redacted from the publicly filed version consistent with Fed. R. Bankr. P. 9037.

## Exhibits:

Ex. 1 — Order Denying Expedited Joint Motion (Dkt./DE 952) (Aug. 12, 2025)

Ex. 2 — Transcript (June 18, 2025 hearing) (061825aw)

Ex. 3 — Broward transcript (Aug. 13, 2025 hearing)

Ex. 4 — Broward Order (Filing #229455396) (Aug. 14, 2025)

Ex. 5 — Broward transcript (Sept. 3, 2025 hearing)

Ex. 6 — Broward transcript (Sept. 10, 2025 hearing)

Ex. 7 — Trustee demand thread ("NOTICE OF INTENT TO SEEK REMOVAL")

Ex. 8 — Bankr. S.D. Fla. Case No. 22-15627-EPK, Dkt. 965 (Aug. 27, 2025)

Ex. 9 — Excell Auto Adv. 23-01132-EPK, Doc. 362 (Jan. 7, 2026) — Notice of Filing Declaration re preservation

Ex. 10 — NYSCEF Doc. 957 (OSC)

Ex. 11 — NYSCEF Doc. 958 (Affirmation)

Ex. 12 — SDNY Doc. 114 (Notice of Limited Pro Se Appearance)

Ex. 13 — SDNY Doc. 113 (Letter to Judge Subramanian)

Ex. 14 — Email chain re preservation/record-integrity issues (supplement)

Ex. 15 — OIG hotline submission email (preservation + record-integrity concerns)

Ex. 16 — Formal Hotline Submission And Request For Immediate Record Preservation

DATED: January 12, 2026

Respectfully submitted,

Avrumi (Josh) Lubin
Defendant, Pro Se (Individual Capacity Only)
1460 Arboretum Pkwy
Lakewood, NJ 08701
Email: josh@spincapital.com

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004    Case 23-01132-EPK    Doc 370    Filed 01/13/26    Page 3 of 3    RECEIVED NYSCEF: 01/19/2026

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 18 of 976

Phone: (732) 608-4905

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on all counsel of record and parties entitled to notice via the Court's CM/ECF system (and/or by such other means as required) on JANUARY 12, 2026.

Avrumi (Josh) Lubin

# EXHIBIT 1



ORDERED in the Southern District of Florida on August 12, 2025.

Erik P. Kimball
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

AUTO WHOLESALE OF BOCA, LLC,

Debtor.

_____/

Case No. 22-15627-EPK
Chapter 7

ORDER DENYING EXPEDITED JOINT MOTION

This is the Court's ruling on the *Expedited Joint Motion (I) To Enforce Sale Order and (II) To Order Distribution of Auction Proceeds to Counsel for the FVP Parties* [Dkt. No. 931; the "Joint Motion"]. The Court also considered the limited objection filed by Avrumi Lubin [Dkt. No. 950] and the reply [Dkt. No. 951].

The debtor in this case, Auto Wholesale of Boca, LLC, filed a voluntary chapter 11 petition on July 22, 2022. Dkt. No. 1. The debtor claimed to be a wholesale dealer of exotic and luxury vehicles. It had a number of vehicles in its possession at the time.

Two days after the debtor filed this case, creditors filed an adversary proceeding against the debtor claiming that vehicles in the debtor's possession were not actually the

FILED: NEW YORK COUNTY CLERK 01/19/2026 INDEX NO. 650582/2022

NYSCEF DOC. NO. 1004

RECEIVED NYSCEF: 01/19/2026

Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 21 of 976

Case 23-01132-EPK Doc 370-1 Filed 01/13/26 Page 3 of 10

Case 22-15627-EPK Doc 952 Filed 08/12/25 Page 2 of 9

debtor's property and were subject to liens granted by another entity. Adv. Proc. No. 22-01218-EPK (the "Adversary Proceeding"). Other creditors made similar claims by adversary proceeding and by motion. *See, e.g.,* Adv. Proc. No. 22-01424-EPK; Dkt. Nos. 13, 72, 114, 127, 141, 252, 268, 356, 576, 578, 680. Eventually, the Adversary Proceeding came to include several parties claiming interests in vehicles held by the debtor. Dkt. No. 145, Adv. Proc. No. 22-01218 (Amended Complaint).

About 9 months after this case was filed, on May 1, 2023, the Court converted this case to chapter 7. Dkt. No. 584. By then it was clear that for at least a few years prior to this bankruptcy the debtor's business consisted almost entirely of lending money to another entity which is also a debtor before this Court. Tr. of Oral Ruling, Dkt. No. 610. When the Court converted this case, the debtor remained in possession of a number of vehicles, but the debtor had very weak and probably no claim to ownership of most of those vehicles. In its ruling, the Court stated: "It would not surprise me if the debtor in the end can claim no ownership at all." Tr. of Oral Ruling, Dkt. No. 610 at 20.

When the chapter 7 trustee took control of the debtor on May 2, 2023, he was mindful of the competing claims to the vehicles in his possession and the debtor's tenuous ownership of those vehicles. The trustee determined that the best approach would be to propose an auction sale of the vehicles, with the bankruptcy estate to obtain a small portion of the proceeds, and the lion's share of the net sale proceeds to be set aside so that parties claiming interests in the vehicles could address their disputes in another forum.

Within a week of his appointment, the trustee filed a motion to auction a number of vehicles in the estate's possession. Dkt. No. 618. The sale was to be free and clear of all liens and other interests under 11 U.S.C. § 363(f). The trustee asked the Court to approve a minimum amount to be retained by the estate for the benefit of unsecured creditors, in the form of a surcharge under 11 U.S.C. § 506(c).

Through the Adversary Proceeding and various motions for turnover, all parties claiming interests in the vehicles were before the Court. Several parties objected to the trustee's sale motion. *E.g.*, Dkt. Nos. 623, 630, 631, 632, 638, 639, 640, 641, 642, 644, 676, 678. After an initial hearing, the Court granted the sale motion in part, authorizing the trustee to retain the auctioneer, and set further hearings to consider how the net sale proceeds would be distributed and other concerns. Dkt. No. 634.

Over a period of several weeks, the trustee negotiated with all parties claiming liens on and interests in the vehicles. The trustee swiftly concluded terms acceptable to those parties and favorable to the bankruptcy estate. Only six weeks after his appointment, at the final hearing on the sale motion, the trustee presented an order approving the auction sale of the vehicles. Dkt. No. 694 (the "Sale Order").

Among other things, the Court authorized the trustee to sell certain vehicles free and clear of liens pursuant to 11 U.S.C. § 363(f). The trustee retained an agreed portion of the sale proceeds for the benefit of creditors. The remaining net proceeds from the sale were held pending adjudication by another court having competent jurisdiction or agreement of the parties claiming liens on or interests in the vehicles. The Sale Order included the following provision (the "Limiting Language"): "Only (i) parties to the Adversary Proceeding Complaint, or (ii) parties that have appeared in the main bankruptcy case and asserted an interest in the Vehicles, may make a claim against the Net Proceeds." The Sale Order was later clarified but its primary terms were not changed. Dkt. No. 738.

After the auction sale, the trustee sought direction on where to deposit the proceeds from the sale less expenses and less the funds to be retained by the trustee for the benefit of creditors (the "Net Proceeds"). Dkt. No. 727. The trustee asked the Court to permit the Net Proceeds to be deposited in the registry of the Court "pending adjudication by a court of competent jurisdiction as to the validity, priority and extent of property interests asserted in

the Net Proceeds or consensual resolution as to their disposition." The Court granted that request and the Net Proceeds were accepted into the Court's registry. Dkt. No. 749. The Court later clarified that the Net Proceeds were subject to the Court's jurisdiction "for purposes of any disputes that may arise out of the Auction or its conduct, the condition of the Vehicles, or out of any alleged actions or omissions by the Trustee's Court-approved Auctioneer." Dkt. No. 807. No such claims were presented. Other than for this limited purpose, the trustee waived any interest in the Net Proceeds and the Court approved that waiver. Dkt. Nos. 694 and 738.

The trustee filed a final account on May 15, 2025. Dkt. No. 909. This case is fully administered. The only reason this case has not been closed is that the Net Proceeds remain in the registry of the Court. Because of this, the Court *sua sponte* entered its *Order to Show Cause Why Certain Funds Held by the Clerk Should Not Escheat to the United States Treasury and Setting Hearing Thereon*. Dkt. No. 911 (the "Order to Show Cause"). In the Order to Show Cause, the Court paraphrased the Limiting Language, making it clear that only certain parties may seek release of the Net Proceeds. The Court set a hearing on more than two months' notice and directed such parties to attend the hearing and present an agreement with regard to release of the Net Proceeds. The Court is aware that the relevant parties are litigating their disputes in another forum. The Court intended to give those parties sufficient time to provide joint instructions for release of the Net Proceeds according to their agreement, or to arrange for the funds to be lodged with an escrow agent or placed in the registry of the court where their litigation is pending.

In the Order to Show Cause, the Court did not invite motions from parties claiming an interest in the Net Proceeds. The Court made it clear that it did not intend to rule on any issue relating to any party's right in the Net Proceeds. In spite of this, a flurry of motions were filed including the Joint Motion now before the Court. Dkt. Nos. 925, 931, 938. The

FILED: NEW YORK COUNTY CLERK 01/19/2026 03:06 PM INDEX NO. 650582/2022

NYSCEF DOC. NO. 1004

RECEIVED NYSCEF: 01/19/2026

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 24 of 976

Case 23-01132-EPK    Doc 370-1    Filed 01/13/26    Page 6 of 10

Case 22-15627-EPK    Doc 952    Filed 08/12/25    Page 5 of 9

Court initially denied all of those motions. Dkt. No. 941. However, the Court later vacated the denial of the Joint Motion and reset the Joint Motion for hearing. Dkt. Nos. 944, 945.

The following parties filed the Joint Motion: Franklin Capital Funding, LLC, Franklin Capital Group, LLC, Franklin Capital Management, LLC, FVP Opportunity Fund III, LP, FVP Investments, LLC, FVP Servicing, LLC, and Hi Bar Capital, LLC (together, the "Movants"). They ask the Court to direct the Clerk to release the Net Proceeds from the registry of the Court and disburse them to counsel for the FVP entities, Schwartz Breslin PLLC, "there to be further disbursed in accordance with the agreement between the Movants." In other words, the Movants have reached an agreement regarding application of the Net Proceeds among themselves, which they intend to effectuate if the Net Proceeds are released.

No one disputes that the Movants are, in name, the sole remaining parties that may seek release of the Net Proceeds consistent with the Limiting Language in the Sale Order. However, in his response to the Joint Motion, Mr. Lubin argues that he is the assignee of all claims of Hi Bar to the Net Proceeds. Mr. Lubin objects to release of the Net Proceeds as requested in the Joint Motion as he believes the Movants will not honor the assignment of Hi Bar's claims to him. Mr. Lubin does not object to release of the Net Proceeds to the trust account of FVP's counsel, but only if the funds are held subject to entry of an order of another court having competent jurisdiction.

In support of his argument that he holds Hi Bar's claims, Mr. Lubin points to two documents: a Common Interest and Joint Litigation Agreement dated January 28, 2022 between Spin Capital, LLC and Hi Bar (the "Common Interest Agreement"); and an Absolute Assignment of Interests and Rights dated March 17, 2025 between Spin and Mr. Lubin (the

"Absolute Assignment"). Dkt. Nos. 950-1 and 950-5.[1] In the Common Interest Agreement, Hi Bar assigned a number of claims to Spin including, specifically, Hi Bar's claims in this bankruptcy case and in the Adversary Proceeding, subject to termination and re-assignment back to Hi Bar. In the Absolute Assignment, Spin assigned all of its rights obtained under the Common Interest Agreement to Mr. Lubin.

At all relevant times during this bankruptcy case Mr. Lubin controlled Spin. Indeed, Mr. Lubin signed the Absolute Assignment as "Manager and Managing Member" of Spin. In his response to the Joint Motion, Mr. Lubin acknowledges his virtual identity with Spin for purposes of this case. Mr. Lubin states that, consistent with the Common Interest Agreement, he hired, paid, and directed the attorneys for Hi Bar who participated in this bankruptcy case and in the Adversary Proceeding. Mr. Lubin had full knowledge of the Adversary Proceeding and this bankruptcy case, including the sale process, through counsel that he controlled. In a prior order, the Court found that Mr. Lubin had notice of the sale motion, the final hearing on the sale motion, and the Sale Order. Dkt. No. 944. Mr. Lubin's response here supports those findings.

The Court previously stated that because Mr. Lubin is bound by all terms of the Sale Order including the Limiting Language, which does not reference him personally, that Mr. Lubin is not permitted to seek any relief in connection with release of the Net Proceeds. Dkt. No. 944. Based on the information now before the Court, the Court's view was incorrect.

Mr. Lubin claims to hold the rights of Hi Bar with regard to the Net Proceeds. He points to the Common Interest Agreement as the basis for his position. Hi Bar argues that

---

[1] Mr. Lubin also references an Authority to Represent executed August 1, 2023 among Hi Bar, individuals associated with Hi Bar, Mr. Lubin, and Leto Law Firm. Dkt. No. 950-3. That document relates to litigation in another bankruptcy case pending before this Court and does not appear to have anything to do with this bankruptcy case or the Adversary Proceeding. In any case, it is not necessary for the Court to address the Authority to Represent in this Order.

the Common Interest Agreement was terminated by written notice on April 3, 2024[2] and, in addition, that Mr. Lubin's refusal to pay legal fees was a breach of the agreement supporting termination. *See* Dkt. 925-1 at 74. Hi Bar thus claims that Mr. Lubin has no right to object to the Joint Motion. Mr. Lubin argues that the written notice was not effective to terminate the Common Interest Agreement according to its terms, and that his refusal to pay legal fees did not result in a breach of the entire agreement. Mr. Lubin argues that Hi Bar has no right to join in the Joint Motion.

As the Court has previously ruled, at this time the Court has no subject matter jurisdiction over any substantive disputes relating to the Net Proceeds. The Court retained jurisdiction over the Net Proceeds only to the extent of any claims relating to or arising from the sale process. No such claims were presented. Beyond that, the bankruptcy estate waived any interest in the Net Proceeds. The Net Proceeds remain in the registry of this Court solely as an accommodation to parties who are litigating their relative rights in another forum. The outcome of the disputes among the Movants and Mr. Lubin will have no impact on administration of this fully administered chapter 7 case. Even under the most liberal component of this Court's subject matter jurisdiction, meaning "related to" jurisdiction under 28 U.S.C. § 1334(b), this Court lacks the power to rule on these disputes. *See British Am. Ins. Co. Ltd. v. Fullerton (In re British Am. Ins. Co. Ltd.)*, 600 B.R. 890, 893-897 (Bankr. S.D. Fla. 2019) (discussing federal bankruptcy jurisdiction generally). This Court cannot and will not decide whether the Common Interest Agreement was terminated and, ultimately, whether Mr. Lubin holds the rights of Hi Bar relating to the Net Proceeds.

This Court of course has jurisdiction to interpret and enforce its own Sale Order. But the question whether Mr. Lubin is the ultimate assignee of Hi Bar is not one that may be

---

[2] This date is well after the entry of the Sale Order. Even under Hi Bar's view, Spin held Hi Bar's rights to the Net Proceeds at the time the Court entered the Sale Order.

determined by the Court merely enforcing the Sale Order. If Mr. Lubin is correct, at the time the Court entered the Sale Order Spin controlled Hi Bar's claims in this matter and Mr. Lubin controlled Spin. In Mr. Lubin's view, immediately upon entry of the Sale Order, Spin could direct counsel for Hi Bar to join in asking this Court to release the Net Proceeds.[3] Mr. Lubin alleges that Spin later assigned its rights to him personally. If this is true, then Mr. Lubin is the correct party to join with FVP and Franklin in the Joint Motion, not Hi Bar. Hi Bar argues that Mr. Lubin has no such right. The Court cannot resolve this dispute merely by considering the history of this bankruptcy case and the Sale Order.

Even if this Court had subject matter jurisdiction over the present dispute between Hi Bar and Mr. Lubin, the Court would abstain from the matter under 28 U.S.C. § 1334(c). Particularly in light of the procedural context of this case, which is fully administered, comity requires that this Court give way to the state court where these questions are more appropriately addressed.

The Movants are engaged in litigation before the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida regarding their relative rights to the Net Proceeds. Case No. CACE-22-005125 (the "Broward Action"). Based on a transcript of a recent hearing, Mr. Lubin is now active in the Broward Action. Dkt. No. 950-2. It appears that the court in the Broward Action has jurisdiction over the relevant disputes and can

---

[3] Contrary to the argument presented in the reply [Dkt. No. 951], neither Spin nor Mr. Lubin were required to oppose the relief granted in the Sale Order. Hi Bar's rights in the Net Proceeds were preserved by the Sale Order and the Limiting Language. According to Mr. Lubin, Spin held an assignment of Hi Bar's claims and had the ability to direct Hi Bar's actions, so Spin did not waive any rights by not participating in the sale hearings. Spin did not assign its rights in Hi Bar's claims to Mr. Lubin until much later, so Mr. Lubin had no need to participate individually at the time of the sale. For the same reason, the limitation in paragraph D of the Sale Order regarding Mr. Lubin's ability to seek relief relating to the Net Proceeds cannot prevent Mr. Lubin from later acquiring the rights of Hi Bar via Spin. Mr. Lubin is not now seeking to modify the Sale Order. If Mr. Lubin is correct, then he has the benefit of the Sale Order and the Limiting Language, as he holds the rights of Hi Bar.

determine which of the Movants and Mr. Lubin have rights in the Net Proceeds. The Court encourages the parties to seek appropriate rulings in the Broward Action.

The Court will hold the hearing on the Order to Show Cause at 10:00 a.m. on August 27, 2025 as originally scheduled, and the Order to Show Cause remains in full force and effect. The parties are strongly discouraged from filing additional motions and responses.

In light of the foregoing, the Court **ORDERS and ADJUDGES** as follows:

1.      The *Expedited Joint Motion (I) To Enforce Sale Order and (II) To Order Distribution of Auction Proceeds to Counsel for the FVP Parties* [Dkt. No. 931] is DENIED.

2.      This Court cannot and will not rule on the dispute between Avrumi Lubin and Hi Bar Capital, LLC regarding their relative rights in the Net Proceeds held in the registry of this Court. The parties are encouraged to obtain a ruling from another court having competent jurisdiction or to present an agreement and a form of agreed order as directed in the Order to Show Cause.

3.      The hearing on the *Expedited Joint Motion (I) To Enforce Sale Order and (II) To Order Distribution of Auction Proceeds to Counsel for the FVP Parties* [Dkt. No. 931] set for August 13, 2025 is CANCELED;

###

Copy Furnished To:

Jerrell Breslin, Esq.

*Jerrell Breslin, Esq. is directed to serve a conformed copy of this Order on all appropriate parties and file a certificate of service.*

# EXHIBIT 2

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004 RECEIVED NYSCEF: 01/19/2026

Page 1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF FLORIDA

IN RE:                              CASE NO. 22-15627-EPK

AUTO WHOLESALE OF BOCA, LLC,

        Debtor.

_____/

ECF #912

June 18, 2025

        The above-entitled cause came on for hearing before the Honorable Erik P. Kimball, one of the Judges in the UNITED STATES BANKRUPTCY COURT, in and for the SOUTHERN DISTRICT OF FLORIDA, at 1515 North Flagler Dr., West Palm Beach, Palm Beach County, Florida, on June 18, 2025, commencing at or about 10:30 a.m., and the following proceedings were had.

Transcribed from a digital recording by:

Cheryl L. Jenkins, RPR, RMR

Page 2

APPEARANCES VIA ZOOM:


MICHAEL BAKST, Trustee


FURR & COHEN, by
ALAN R. CRANE, Esquire
JASON S. RIGOLI, Esquire
On behalf of Nicole Testa Mehdipour


SHRAIBERG PAGE, by
PATRICK DORSEY, Esquire (via Zoom)
On behalf of Franklin Capital Funding, LLC, Franklin
Capital Group, LLC, Wing Lake Capital


LETO LAW FIRM, by
MATTHEW LETO, Esquire (via Zoom)
On behalf of Hi Bar


JOEL ARESTY, P.A., by
JOEL ARESTY, Esquire
On behalf of Josh Lubin


JONATHAN SCHWARTZ, Esquire
On behalf of FVP, FVP Investments, LLC,
RVP Opportunity Fund, III, LP, RVP Servicing, LLC


ALSO PRESENT
Josh Lubin
ECRO - Electronic Court Reporting Operator    (in person)


- - - - - - -

Case 23-01132-EPK   Doc 383-1   Filed 01/22/26   Page 32 of 976
Case 23-01132-EPK   Doc 370-2   Filed 01/13/26   Page 4 of 19

Page 3

ECRO: Okay, and the last matter on the 10:30 docket, Auto Wholesale of Boca, LLC, Case Number 22-15627.

Mr. Bakst.

MR. BAKST: Good morning, your Honor. Michael Bakst, the new trustee.

I think that -- I don't know if I've been discharged as trustee yet. The case hasn't fully administered.

THE COURT: Thank you.

ECRO: Mr. Dorsey.

MR. DORSEY: Good morning, Judge. Patrick Dorsey on behalf of Franklin Capital Funding, LLC.

ECRO: Mr. Leto.

MR. LETO: Good morning. May it please the Court. Matthew Leto on behalf of Hi Bar.

ECRO: Mr. Aresty.

MR. ARESTY: And good morning, Judge. Joel Aresty representing Mr. Lubin, who I believe is also monitoring the hearing.

ECRO: Mr. Schwartz.

MR. SCHWARTZ: Good morning. Jonathan Noah Schwartz on behalf of Schwartz, Breslin, PLLC for the FVP parties, just filling in for Mr. Breslin, who was in person in Broward County on this matter today.

Page 4

ECRO: And does anyone else wish to make an appearance in this case?

(No verbal response.)

ECRO: Okay.

THE COURT: All right. So there's one matter set for today, and who would like to present it?

MR. DORSEY: I will, Judge. Again, Mr. Dorsey on behalf of Franklin Capital Funding, LLC. Thank you for hearing it on an expedited basis, by the way.

As I hope you can imagine, when my client saw a writ of garnishment issued to the bankruptcy court, it caused some consternation, and we wanted to move quickly on that issue.

As a very brief background, Auto Wholesale Boca filed, originally filed for bankruptcy as a Subchapter 5 debtor in 2022. At the time it filed, it had a fleet of about 20 luxury automobiles that it claimed it was the legitimate owner of. Various parties, including my client, Mr. Breslin's client, and Mr. Leto's client disputed that claim.

The Court converted the case to Chapter 7 in 2023, and the secured creditors negotiated a deal with Mr. Bakst, as the trustee, whereby, in essence, Mr. Bakst sold the vehicles, obtained a carveout for the estate,

Page 5

deposited the net proceeds into the registry of the Court, and this Court directed the secured creditors and other parties and interests to go obtain a judgment from a Court of competent jurisdiction to find out who had the senior interest in the net proceeds.

That sale order is docketed at ECF Number 694, and I apologize, due to a scrivener's error I may have cited the sale motion as opposed to the order in my motion.

Two pertinent paragraphs of the sale order are, first of all, I believe Paragraph D, at the beginning of the order it says that Mr. Aresty's client, Mr. Lubin, was on notice of an AWB bankruptcy case at all relevant times, he was aware of the sale process, he was aware of the vehicles, and the net proceeds being deposited into the registry of the Court, and so Mr. Lubin was barred from collaterally attacking the sale order, or objecting to the sale at a later date.

Secondly, Paragraph 8 of the sale order essentially states that only parties who appeared in the AWB bankruptcy case that asserted an interest in the vehicles would have a claim to the net proceeds on a going-forward basis, and of course that would exclude Mr. Lubin.

Since the sale occurred, hot litigation has

Page 6

been going on in Broward County Circuit Court over the lien priority and the proceeds.

If your Honor is wondering, the reason that litigation is still going on, some two years later, is because it's not just an FVP versus Hi Bar versus Franklin dispute over lien priority. There are, frankly, dozens of other parties, and fraud and tort claims going back and forth, and so it's been a somewhat cumbersome process.

Mr. Lubin knows about this litigation because he is named, both him individually and the company he owns and controls, Spin Capital, are named defendants to that litigation.

Mr. Lubin, in his operative pleadings and the litigation, has never asserted an interest in the proceeds, sought to foreclose on the proceeds, filed a foreclosure count against my client or FVP or what-have-you. He is strictly playing defense in the Broward litigation.

From what I've been able to surmise, at some point in time Mr. Lubin was not happy with the idea he would not be getting a cut of the $2 million, and so he took a New York State Court judgment entered in favor of Hi Bar, filled out a fraudulent affidavit, where he said that Hi Bar has actually assigned this to me, without any documentary evidence or an assignment from Hi Bar

FILED: NEW YORK COUNTY CLERK 12/19/2022 05:06 PM          INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004                                      RECEIVED NYSCEF: 01/19/2026

evidencing that.  He domesticated that New York State judgment in Palm Beach Circuit Court, which again I regard as an act of fraud, and then he had the Palm Beach Circuit Court issue a writ of garnishment to this Court, and I think it's pretty apparent his aim in doing that was to somehow get his hands on the funds in the court registry.

So that brings us to the motion I filed today.  I think, frankly, Judge, a lot of these fraud claims may be better brought in the Palm Beach Circuit Court, because that is the judgment -- that is where the judgment was domesticated.  However, I do think at a minimum this Court can state, number one, that the funds in the registry are not subject to any purported garnishments or attachments arising from other courts.  I think the case law is clear on that; and, number two, I do think an order of show cause should be entered against Mr. Lubin because, in my view, he is collaterally attacking the sale order, and while the genesis of his fraud was in the Palm Beach Circuit Court, by causing a writ of garnishment to be issued against the clerk of this court, I do think he attempted to commit fraud on this Court as well.

THE COURT:  Hold on just a moment, please.  All right.  Thank you.

Who would like to respond?  Mr. Aresty, I

Case 23-01132-EPK Doc 388-1 Filed 01/22/26 Page 37 of 976
Case 23-01132-EPK Doc 370-2 Filed 01/13/26 Page 9 of 19

Page 8

assume?

MR. ARESTY: Yes. If the Court please.

Judge, this is an emergency that really isn't, and should have been resolved by conferral, which is required by the local rule before you file a motion for emergency hearing, or in the state court case.

As a practical matter, I don't believe there's a present controversy for the following reasons. First of all the -- there's been no service of a writ of garnishment on Mr. Falzone, as clerk. There were some correspondence, and Mr. -- but as we are here, there's been no service, just some correspondence with a paralegal.

There's no garnishment on the clerk --

THE COURT: Can you stop there for a moment? I don't know if there was service, and let me make it clear, the Court does not represent the clerk, but I understand there was a formal response saying that the court does not hold any funds for the parties who are named as judgment debtors in the judgment that was certified in the state of Florida. Is that accurate?

MR. ARESTY: That is accurate. Whether or not that would serve in the state court as an answer of garnishee, I think is moot, and I'll explain why in a second.

Page 9

So, in the state court, there's no service of the writ evident and, therefore, no responses yet due by the clerk.

In any event, my client has agreed, under the case law, which was filed in the supplemental response regarding custodia legis, that perhaps the procedure was improper, again, a state law matter which should have been settled by conferral, has agreed to stand down with regard to the garnishment.

So, really, the garnishment issue, not only is it not an emergency, but it's really going to be moot. My client would apologize for any inconvenience, but there's really, in this Court, no harm and no foul. The motion should be denied as moot.

Obviously, the real issue, whether or not it's the custodia legis law, which was argued for the first time in the supplemental response, is accurate, and I believe it probably is, that would make it impossible to do --

THE COURT: To garnish funds held in the registry of a federal court. It seems pretty clear, there's no 11th Circuit case, although I don't know why there would need to be, since there's a Supreme Court case, and we do still listen to the Supreme Court, and so it was improper to even try to serve it.

OUELLETTE & MAULDIN COURT REPORTERS, INC.
(305) 358-8875

Page 10

But you were the person who sent the writ of garnishment to the clerk, is that correct?

MR. ARESTY: That is not correct, Judge. A paralegal, with the great name of Paralegal Activity, sort of a play on words on behalf of Mr. Lubin, sent an email to the clerk.

I had corresponded with the clerk on behalf of the mutual client, Mr. Lubin, because apparently Mr. Lubin did send a sheriff to the Palm Beach clerk's office, which refused service, but again, this is all a matter in the state court, and my involvement was just as a courier, more or less, of information.

THE COURT: Well, as soon as you got involved, you were representing Mr. Lubin. Under the rules of ethics in Florida, the moment that you formally took a position by emailing the clerk, you became counsel for Mr. Lubin.

Yes, so I don't know why you're giving me a look. You don't get to say, I don't represent somebody, but communicate on their behalf. It doesn't work that way.

MR. ARESTY: I think I --

THE COURT: But what is your response to the argument that Mr. Lubin doesn't hold any rights under the judgment?

Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 40 of 976
Case 23-01132-EPK Doc 370-2 Filed 01/13/26 Page 12 of 19

Page 11

MR. ARESTY: He believes he holds rights as a participant and assignee, Judge, which is a separate matter, which is going to have to be litigated at some point, but he does believe that Spin, and he, as assignee, are participants in, and are the rightful owners of the Hi Bar UCC positions.

THE COURT: And I don't know what you mean by that. There's a judgment, and he's trying to collect on a judgment.

So is there a documentary basis for the argument that Mr. Lubin, through Spin, obtained whatever rights Hi Bar has under the judgment that is attached to today's motions?

MR. ARESTY: There probably -- there is, I believe, but I'm not prepared to present that evidence or argument. I think that there's -- it's certainly a question in the state court proceeding with regard to the proceeds, which you've heard is being vigorously litigated.

I know your Honor entered a second order to show cause with regard to why that money hasn't been distributed yet, which you said for August, but there's a number of parties contesting that, and I know, Judge, really, as to the matter that's before you this morning, Judge, I think that you would have to agree that this is a

Page 12

state court matter. The state court is where it lies, and that's where it should be finished.

There's no reason for some activity in that state court to be considered any kind of contempt as to your Court and, again, we not only apologize but stand down. We don't think this motion should have ever been brought here.

THE COURT: Before I go back to Mr. Dorsey, is there anybody else who wishes to be heard? Mr. Lubin, I see your hand is raised. You are represented by counsel. You should text or otherwise communicate with Mr. Aresty. He speaks on your behalf today.

Anybody else wish to be heard before I go back to Mr. Dorsey?

MR. LETO: Yes, your Honor, if I may. This is Matthew Leto on behalf of Hi Bar.

The only thing, I wanted to answer your Honor's question, which is there is no document that assigns that judgment from Hi Bar to Mr. Lubin or to Spin Capital. It does not exist, especially not to Mr. Lubin in any individual capacity.

There is a joint defense agreement that was initially crafted between these parties. However, under that document, it could be terminated at any time for any reason, and Hi Bar did, in fact, terminate that document

Page 13

at the beginning of last year.

So if that was even the potential basis that Mr. Lubin was traveling under, in writing that was terminated long ago. So there is no document that would ever allow for Mr. Lubin to enforce Hi Bar's rights in the state court.

THE COURT: Well, that's very interesting news for you, Mr. Aresty.

So let me point out to all of you that if you look at Paragraph 2(a) of the joint defense agreement, you will say -- you will see that there is, in fact, an assignment of certain claims, and those claims are defined to include the litigation, with the case number, that resulted in the judgment, which was the subject of today's motion.

However, if you read all of Section 2(a), it specifically says that the assignment is subject to the termination rights that are later provided in the joint defense agreement, and I have no doubt, if Mr. Leto is saying it was terminated a year ago, that it was, in fact, terminated.

And so, Mr. Aresty, I expect it might be wise for you to study all of these matters, because seeking to have a judgment domesticated in Florida based on what I've seen might, in fact, subject Mr. Lubin to

Page 14

some issues in the state court.

Let me go back to Mr. Dorsey. So, Mr. Dorsey, is this really something that should be here?

Let me ask you a really important question. The order that you referenced, the first of the two sale orders, because there's a second one after Mr. Bakst asked me to do some clarification, it says that Mr. Lubin, individually and as a separate entity, a different entity entirely, and this is an order entered well after the joint defense agreement was signed, but apparently before it was terminated, it says that Mr. Lubin has no interest in the vehicles, which seems obvious since he never filed a claim in the case, relating to the vehicles. Was that order ever served on him?

MR. DORSEY: I wish Ms. Carnahan was here, because she was counsel for Mr. Bakst.

I can pull up the certificate of service.

THE COURT: So, but why is --

MR. DORSEY: I believe there was.

THE COURT: Why is this an issue for me? Apparently the writ has not been formally served, although I do believe that the clerk told me that he responded and said that the clerk does not hold any funds for the judgment debtors, and so there is no reason for an emergency since we're not releasing the money to anyone,

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:13 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004 RECEIVED NYSCEF: 01/19/2026

and as soon as I realized that we still had the money in the registry, I entered an order, which you have all seen, and Mr. Aresty referenced, so let me let you know that this is very similar to earlier in the case when I told the trustee and everyone that if there wasn't an agreement with regard to certain vehicles, I was going to allow them to be parked on a public street with the keys in them, and that's the effect of this order. So I expect you to reach agreement as to where the money will go before the hearing, which I think is in August.

But in the meantime, the money is not going anywhere. So why am I going to be resolving any of this if the fraud is on the state court? Go to the state court and complain.

MR. DORSEY: Well, your Honor, like I said at the outset, I do think it would be helpful, if nothing else. I had never seen a writ of garnishment served on a federal court before with good reason, apparently, because I hadn't researched that case at the time I first saw the writ, and so I didn't know what the reaction of the clerk was going to be. I didn't know if money was going out the door, if there was any real threat of that, and that's why the motion was filed on an emergency basis, because $2 million that goes out the door is not coming back.

I think it would be helpful, if nothing

Page 16

else, if your Honor granted the motion in part, and simply stated that so long as the Court holds the funds, they are not subject to foreign attachments or garnishments, so this doesn't happen again.

My view is that, yes, the genesis of the fraud was domesticating the judgment with the state court, but by communicating with the clerk about a writ of garnishment, I do think Mr. Lubin attempted to perpetrate that fraud on the Bankruptcy Court.

I do think Mr. Lubin brought the Bankruptcy Court into this dispute, not me, and so I do think that does open him to sanctions but, at a minimum, I would simply state that the Court make it clear that the money is not going anywhere until the August hearing.

THE COURT:  Mr. Aresty, would you object to an order that grants this motion only to the following extent, a statement that the writ of garnishment cannot be effectuated with regard to funds held in the registry of a federal court, including this Court, and that the funds held in the registry in this instance will not be released except pursuant to further order of this Court?

MR. ARESTY:  That would be perfectly logical and acceptable, your Honor.

THE COURT:  Okay.  I will tender -- I will prepare and enter an order to that effect, and granting

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004
RECEIVED NYSCEF: 01/19/2026

Page 17

nothing else.

Anything else in this case?

MR. DORSEY: No, your Honor.

MR. ARESTY: Judge, if the Court please.

THE COURT: Mr. Aresty.

MR. ARESTY: You asked my client to text me.

THE COURT: I --

MR. ARESTY: And he's asked me repeatedly if he may say a few words to the Court.

THE COURT: No. You are representing him. When he has counsel, he needs to act through counsel.

Anything else in this case?

MR. ARESTY: No, Judge, that's what I thought you would say.

THE COURT: Thank you. Have a good morning, everyone.

MR. ARESTY: Good morning, your Honor.

THE COURT: Are we in recess until this afternoon? Yes. Court's in recess until 1:30.

(Thereupon, the hearing was concluded.)

Page 18

CERTIFICATION

STATE OF FLORIDA        :

COUNTY OF MIAMI-DADE    :


I, Cheryl L. Jenkins, RPR, RMR, Shorthand Reporter and Notary Public in and for the State of Florida at Large, do hereby certify that the foregoing proceedings were transcribed by me from a digital recording held on the date and from the place as stated in the caption hereto on Page 1 to the best of my ability.

WITNESS my hand this 2nd day of July, 2025.


_____

CHERYL L. JENKINS, RPR, RMR

Court Reporter and Notary Public

in and for the State of Florida at Large

Commission #HH 170910

December 27, 2025

# EXHIBIT 3

Page 1

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND
FOR BROWARD COUNTY, FLORIDA

Case No. CACE-22-005125

FVP OPPORTUNITY FUND III, LP, A DELAWARE
LIMITED PARTNERSHIP; FVP INVESTMENTS, LLC,
A DELAWARE LIMITED LIABILITY COMPANY; AND
FVP SERVICING LLC, DELAWARE LIMITED
LIABILITY COMPANY,

                Plaintiffs,

vs.

KARMA OF BROWARD, INC.,
a Florida corporation, et al.,

                Defendants.
_____/

HI BAR CAPITAL, LLC, a New York
limited liability company, et al.,
                Plaintiff,
V                       Case No. CACE-22-06401
KARMA OF PALM BEACH, INC.,
a Florida corporation, et al.,
_____/

                Judge David Haimes
                Broward County Courthouse
                201 Southeast Sixth Street,
                17150
                Fort Lauderdale, Florida 33301
                August 13, 2025
                1:30 p.m. to 4:50 p.m.

                ALL PENDING MOTIONS and
                MOTION FOR SUMMARY JUDGMENT

                Reported By:
                Cheryl L. Jenkins, RPR, RMR

FILED: NEW YORK COUNTY CLERK Doc 383 12 Filed 05/22/26 PM Page 50 of 976

NYSCEF DOC. NO. 1004

Case 23-01132-EPK   Doc 370-3   Filed 01/13/26   Page 3 of 140

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

Case 23-01132-EPK   Doc 383 12 Filed 05/22/26 PM

Page 2

APPEARANCES:

SCHWARTZ BRESLIN, by
JERRELL "JERRY" BRESLIN, Esquire
and
BUSCHEL GIBBONS, by
ROBERT BUSCHEL, Esquire
and
COHEN & MCMULLEN, by
MICHAEL MCMULLEN, Esquire
BRADFORD COHEN, Esquire
and
JONATHAN SCHWARTZ, Esquire (via Zoom)
On behalf of the Plaintiffs, FVP Opportunity Fund III,
LP, a Delaware Limited Partnership; FVP Investments,
LLC, a Delaware Limited Liability Company; and FVP
Servicing LLC, Delaware Limited Liability Company

KATZMAN WASSERMAN BENNARDINI & RUBINSTEIN, by
CHARLES BENNARDINI, Esquire
and
SCOTT C. GHERMAN, P.A., by
SCOTT GHERMAN, Esquire (via Zoom)
On behalf of the Defendants,
Lisa Farache, Moshe Farache,
1001 Clint Moore, LLC/Auto Wholesale of Boca

LETO LAW FIRM, by
MATTHEW LETO, Esquire
On behalf of the Defendant, Hi Bar

SHRAIBERG PAGE, by
PATRICK DORSEY, Esquire
On behalf of Franklin Capital Funding
and Franklin Capital Group

Page 3

CONTINUED APPEARANCES


DAVID LANGLEY, Esquire
and
KASEN & KASEN, by
MICHAEL KASEN, Esquire (via Zoom)
On behalf of Avrumi Lubin and JL Special Investments


STEVEN MEYER, Esquire (via Zoom)
On behalf of MMS Ultimate Services, Incorporated


AKERMAN, by
BRETT MARKS, Esquire (via Zoom)
On behalf of Millco-Atwater


ALSO PRESENT


Katie Gleason, Esquire
Lisa Farache
Moshe Farache

Page 4

THE COURT: Okay. So, we are now on the record, all right? So, everything else had nothing to do with the case.

All right. So we're on the record in Case CACE-22-5125, FVP Opportunity Fund III, LP, et al. versus Scott Zankl, et al.

Let me start with the plaintiffs. Can I get appearances?

MR. BRESLIN: Good morning, Judge. Jerry Breslin for the FVP parties.

THE COURT: Good morning, Mr. Breslin, and who else is with you?

MR. BRESLIN: Michael McMullen, Brad Cohen, and Rob Buschel.

THE COURT: All right. Good afternoon.

MR. COHEN: Good afternoon, Judge.

THE COURT: All right. Everyone on Zoom, could you hear that? There's four attorneys for the plaintiff. Could you hear them all?

MR. GHERMAN: Yes.

THE COURT: Okay. Perfect.

And then now for the defense, let me start with Mr. Zankl.

(No verbal response.)

THE COURT: All right. Mr. Zankl is not

FILED: NEW YORK ... INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004 ... RECEIVED NYSCEF: 01/19/2026
Case 23-01132-EPK    Doc 370-3    Filed 01/13/26    Page 6 of 140

here.  He's not on Zoom.

All right.  So let me go for the rest of the co-defendants.  Who wants to go first?

MR. BENNARDINI:  Good afternoon, your Honor. Charles Bennardini on behalf of Lisa Farache, Moshe Farache, 1001 Clint Moore, and nominal defendant Auto Wholesale of Boca, and with me on Zoom is my co-counsel, Mr. Gherman.  Mr. and Mrs. Farache are also in the courtroom, along with another one of their lawyers, Katie Gleason.  Thank you, Judge.

THE COURT:  All right.  Good afternoon, Mr. Bennardini, Mr. Gherman, as well as the Faraches.

All right.  Can I get appearances for the remaining co-defendants?

MR. LETO:  Yes.  Good afternoon, your Honor. I'm Matthew Leto, on behalf of Hi Bar Capital, Mordecai Herbst, and Yisroel Herbst (phonetic).

THE COURT:  All right.  Good afternoon, Mr. Leto.

All right, and then we have next?

MR. DORSEY:  Good afternoon, Judge. Patrick Dorsey, D-O-R-S-E-Y, on behalf of the Franklin parties, Franklin Capital Funding and Franklin Capital Group.

THE COURT:  All right.  Good afternoon,

Page 6

Mr. Dorsey.

MR. DORSEY: Thank you, Judge.

THE COURT: And then next?

MR. LANGLEY: Yes, good afternoon, your Honor. David Langley here for Avrumi Lubin and JL Special Investments.

THE COURT: All right. Is Mr. Lubin -- Mr. Lubin is not here.

MR. LANGLEY: I think he's trying to get on Zoom, or maybe he's waiting until 2:30.

THE COURT: Okay. I do not see him on Zoom, and nobody's in the waiting room, so --

MR. LANGLEY: Okay.

THE COURT: All right, and then -- all right. Anybody else on Zoom that hasn't made an appearance that wants to make an appearance?

MR. KASEN: Good afternoon, your Honor. Michael Kasen, the law firm of Kasen & Kasen, representing Avrumi Lubin. I think that I have a pro hac vice motion pending, your Honor, that was filed earlier today.

THE COURT: So you're with Mr. Langley?

MR. KASEN: I am.

Okay. Any objection from anybody to the pro hac vice motion?

MR. BRESLIN: No, Judge.

THE COURT:  No.  All right, and I take it you're a member in good standing, et cetera?

MR. KASEN:  I am, your Honor.

THE COURT:  All right.  So that's granted.

MR. KASEN:  Thank you, Judge.

MR. MEYER:  Your Honor, I'm Steven Meyer here.  I represent Defendant MMS Ultimate Services, Incorporated.

THE COURT:  All right.  Good afternoon, Mr. Meyer.  I'm sorry, you represent MMS?

MR. MEYER:  Correct.

THE COURT:  Okay.  All right.  I think that's everybody, right?

Oh, wait, there's Mr. Schwartz?

MR. BRESLIN:  Yes.

MR. COHEN:  He's on our side, Judge.

MR. SCHWARTZ:  Yes, Judge, Jonathan Schwartz.  I'm just observing today.  I'm co-counsel with Mr. Breslin, Mr. McMullen, Mr. Cohen, and Mr. Buschel.

THE COURT:  All right.  Good afternoon, Mr. Schwartz.

MR. SCHWARTZ:  Good afternoon, Judge.

THE COURT:  Let me just see here.  How about Brett Marks?

Page 8

MR. MARKS:  Judge, good afternoon.  This is Brett Marks, with Akerman, LLP.  I represent one of the adversary defendants, Millco-Atwater.  We don't have any motions at issue today.  We're just observing the hearing.

THE COURT:  All right.  You are welcome to observe, it's a public courtroom.  All right.  Good afternoon, Mr. Marks.

All right, now I think I have everybody.

All right.  We're here, I've got the afternoon for you.  Let me start with what hopefully is the easier one, and will save me a lot of time going forward, and that is the joint motion to approve settlement.  Let me pull that up.

All right.  Is there an objection from anybody?  Just the Lubin parties --

MR. LANGLEY:  Yes, Judge.

THE COURT:  -- I take it, correct?

MR. LANGLEY:  Yes, Judge.  We filed an objection.  I don't see it showing up on the docket, but I would advise the Court that the same motion was filed in the bankruptcy case with Judge Kimball, and he denied it last night.

THE COURT:  Why did -- what was the basis for his denial?

MR. LANGLEY:  He read through our motion,

Page 9

which shows that Mr. Lubin actually has an interest in the funds. The three other parties are attempting to take the funds for themselves and to cut out Mr. Lubin, who's the assignee of Spin, and who is the assignee of Hi Bar.

THE COURT: Okay.

MR. LANGLEY: And based on just a letter from Mr. Leto saying the common interest agreement is invalid, they're claiming that we're not a part of it.

THE COURT: All right. That's the 2:30 motion for summary judgment, right?

MR. LANGLEY: Correct, yes, Judge.

THE COURT: So --

MR. LANGLEY: That hasn't been heard yet.

THE COURT: Well, it's part of it.

MR. DORSEY: I'm sorry, I just need to correct a misstatement. Judge Kimball denied the motion because he said he didn't have jurisdiction over the issue. He said, if there's a dispute, I want the state court to decide.

THE COURT: Okay.

MR. DORSEY: He didn't determine anything.

THE COURT: So if I grant the motion, then you go back -- I'm sorry, deny the motion, it's not going to go back, right?

MR. BRESLIN: Correct.

MR. LANGLEY: If I can add just one thing, Judge, and Mr. Dorsey is correct, but there's some very good language in that order that I think the Court should look at that we quoted in our response, which has been uploaded.

And, Judge, I would point out that the urgency of the motion is that Judge Kimball doesn't want to keep the money in the bankruptcy court registry.

We're fine with either moving it to the state court registry or to Mr. Breslin's trust account. We just don't want it dispersed from there until you make a decision on --

THE COURT: Let me ask you a question, though. Say --

MR. BRESLIN: Judge, it's our motion, if we could argue it?

THE COURT: No, I know.

Say Mr. Lubin was successful, and at the end of the day, he wins every one of his claims. He doesn't get the entire pot, right?

MR. LANGLEY: There's a waterfall provision back to Mr. Leto's client. Right, so he doesn't get it all, but he gets 70 percent, at least, for the first million.

THE COURT: So he gets 700,000 --

Page 11

MR. LANGLEY:  Well --

THE COURT:  -- is the most he can get out of anything?

MR. LANGLEY:  No, no, no.  I mean, there's over 2 million in the bankruptcy court.

THE COURT:  Right.

MR. LANGLEY:  Mr. Leto is holding some funds.  There may be other funds out there, but it's the Hi Bar's claims, as they're defined in the common interest agreement, were assigned to Spin.  They were subsequently assigned to Mr. Lubin.  There's a waterfall provision back to Hi Bar.  So it starts at 70 percent to Spin, 30 percent to Hi Bar, and then it goes down from there, depending on the amount, that's all spelled out in the common interest agreement, but the majority of the funds would go to Mr. Lubin.

THE COURT:  And so you're going to tie up everything just based on Mr. Lubin -- because it sounds as though --

MR. LANGLEY:  Well, Judge --

MR. BRESLIN:  If I could --

MR. LANGLEY:  -- you need to decide who the common interest is.

THE COURT:  I just had a quick question about that to begin with.  So let me start over then.

Page 12

So we're here for the joint motion to approve settlement. Who wants to take the lead on that?

MR. BRESLIN: Yes, thank you, Judge. I'd like to go first.

Judge, the joint motion was filed by me. It was filed on behalf of the FVP parties, the Franklin parties, and the Hi Bar parties.

Judge, if you take a look at the complaint, the FVP parties and the Franklin parties have sued Hi Bar Capital, as well as the members of Hi Bar Capital, Yisroel Herbst and Mr. Dorsey, through his cross-claim, the Franklin cross-claims, have sued his son, Mordecai.

Judge, the reason that we are here is because we initially went to the bankruptcy court, because this whole matter began when Mr. Farache took the vehicles off the lots at 101 Clint Moore, and then he declared bankruptcy, AWB declared bankruptcy, the cars went to the bankruptcy court. There were three parties fighting in the bankruptcy court over those vehicles, FVP, Hi Bar, Franklin.

So there were three companies.

THE COURT: I remember. That was going to be our first trial, was to see who had priority over that, but now you've settled it --

MR. BRESLIN: Right, so --

Page 13

THE COURT:  -- and so I don't have to have my first trial as long as I approve the settlement.

MR. LANGLEY:  Correct.

MR. BRESLIN:  Right, right.  So that priority issue got kicked back to this Court, and so the priority issue was scheduled to go to trial in September with trial number one, and trial number one are the Hi Bar parties, movement; trial number two, the Farache parties.

So FVP, Franklin, and Hi Bar, and Hi Bar is represented by Mr. Leto, entered into a settlement agreement.  So we've entered into a settlement agreement to resolve all the issues before your Honor.

And what we did was, we entered into the settlement agreement.  We then went over to the bankruptcy court.  We advised Judge Kimball that we entered into a settlement agreement.

Mr. Lubin filed an objection in the bankruptcy court saying, well, wait a second, I have rights there and, Judge Kimball, I don't want you to rule.

And so what Judge Kimball did was he then kicked it back to your Honor to make a determination as to whether or not we have an enforceable settlement agreement, and let me tell you why we do.

We've entered into a settlement agreement, Judge, but the three named parties to the settlement

Page 14

agreement are FVP, Franklin, and Hi Bar.

So what is Mr. Lubin's objection?

Hi Bar signed the settlement agreement. So we have a -- we've entered into an agreement with Hi Bar, it's signed, sealed, and it's in effect.

So Mr. Lubin objects because he says that, I entered into an agreement years ago with Hi Bar, where I agreed with Hi Bar that I would fund some of the litigation, and in return for that, I would be entitled to some of the proceeds. So they have what's called a common interest agreement. Their common interest agreement was more or less an assignment of claims in various lawsuits to which Spin would be entitled to some proceeds if there was a recovery.

So a year ago Mr. Leto notified Mr. Lubin that that agreement is breached, that's the common interest agreement. So he gave them a notice of breach. Since that time Hi Bar has been paying their own bills. So to the extent that there ever was an agreement, it has been terminated.

Let's assume for the moment that it was never terminated. If it was never terminated, Judge, Mr. Lubin does not have rights under that agreement to substitute in as a partner. Mr. Lubin -- the only rights Mr. Lubin has under that agreement is to sue Hi Bar, and

Page 15

that's our position, and that's the position that I made in the joint motion.

So we have an agreement. We have a settlement agreement. We want your Honor to endorse the settlement agreement so we can go back to Judge Kimball and say that this agreement has been endorsed, but Mr. Lubin objects to it because he says that our agreement breaches his agreement.

Well, the legal issue here is when Hi Bar signed that settlement agreement with FVP and Franklin, did they have the power to do so? And they did, of course they did. They had the power to sign that agreement. The only question is -- and even if it breached the prior agreement, they still have the power to enter into the agreement, and that gives Lubin a cause of action.

Why is that relevant? Because if you look at the common interest agreement, if Lubin, if there's a default under the common interest agreement, then Lubin would have to bring an action in New York, because the sole jurisdiction under that agreement is in New York. He would have had to have, a year ago, when he was noticed of the termination, brought an action in New York to try to somehow get an order from a New York court that would be honored by your Honor to give him some rights here.

But, Judge, the case is here, Hi Bar is the

FILED: NEW YORK COUNTY CLERK 01/19/2026 02:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004 RECEIVED NYSCEF: 01/19/2026

party. Josh Lubin is not the party. Josh Lubin is trying to say that I want to substitute in and become Hi Bar, but that's just an absurd ask, legally and factually, because what's he saying, I want to become Hi Bar? We're suing Hi Bar for 7.5 million. We've settled that. So what is it, is Mr. Lubin saying, well, I want to become Hi Bar, but if there's a judgment against me for 7.5 million, I'm going to personally pay it? He's not saying any of that. So what it is, it's just, it's obstructionism.

So he has no legal grounds to prevent your Honor from endorsing the settlement agreement, because Hi Bar is Hi Bar. They're their own company.

THE COURT: Well, I understand your argument. All right.

MR. BRESLIN: They're --

THE COURT: Let me do this, I take it everybody else is in agreement, correct, except for Mr. Lubin?

MR. LETO: Yes, your Honor. I also just want to add one more thing, if we can, Hi Bar.

THE COURT: Go ahead.

MR. LETO: If I can?

The only other thing I wanted to add is, Mr. Lubin also has literally no claim in this case. In his pleadings, there's not a single pleading that he filed

Page 17

that asks your Honor to deal with this cooperation agreement, make a declaratory judgment about it, nothing. He's simply a defendant right now, that's all he is. So there's nothing even before your Honor which would give him any rights to have a decision made that he has rights under this agreement.

THE COURT: Let me ask you, did he file a proof of claim in the bankruptcy case?

MR. LETO: No, he doesn't have a claim.

MR. DORSEY: He has not.

THE COURT: All right. So he's got no claim here, he's only a defendant, and no claim in the bankruptcy case?

MR. LETO: Right, and just to kind of tie it off, under this cooperation agreement, it is terminable at Hi Bar's absolute discretion.

THE COURT: No, I understand.

MR. LETO: So --

THE COURT: That goes to the merits, and part of what was argued by Mr. Breslin as well goes to the merits. I'm not going to get into the merits of whether Lubin has a claim against Hi Bar or not for purposes of determining whether to approve the settlement. I just need to see if he even has basically standing or whatnot even to contest it, and so that is now directed to you,

Page 18

Mr. Langley.

MR. LANGLEY: Yes, Judge.

THE COURT: Okay. So --

MR. LANGLEY: So first, no court has ruled on a common interest agreement. I think what would be very instructive for the Court would be to read the Kimball opinion that we filed. There's a notice of filing, it should show up. I think --

THE COURT: Okay. Before I would even look at the Kimball opinion, what are the facts? How would Mr. Lubin --

MR. LANGLEY: Well, the same motion --

THE COURT: -- have any basis --

MR. LANGLEY: -- was filed in -- or a similar joint motion was filed in the bankruptcy court. That was set for hearing today at 11 o'clock. Yesterday, Judge Kimball ruled on it and canceled the hearing.

In his order, you asked about a proof of claim in the bankruptcy case. In his sale order he says, three parties are entitled to the proceeds, FVP, Franklin, and Hi Bar.

In his ruling yesterday he says, I previously said the only parties entitled to this are FVP, Franklin, and Hi Bar. I now realize that was incorrect. Lubin, if the common interest agreement survives, has an

Page 19

interest.

He basically is kicking the ball back to you to decide whether or not the common interest agreement exists or is still in effect and, Judge, the common interest agreement, 2A says, Hi Bar hereby assigns to Spin Capital any and all Hi Bar claims.

MR. LETO:  Can you finish the sentence?

MR. LANGLEY:  Those are defined --

THE COURT:  All right.  Let me --

MR. LANGLEY:  -- subject to the terms --

THE COURT:  I'm looking at your objection, and that was filed, just so we're clear, at 11:40 this morning.

MR. LANGLEY:  Yes.

THE COURT:  So --

MR. LANGLEY:  The motion was filed yesterday, I don't know, after 5:00.

THE WITNESS:  Well, the objection --

MR. LANGLEY:  And I don't know how it got set for hearing today.  I wasn't noticed that --

THE COURT:  Well, but --

MR. LANGLEY:  -- a motion filed yesterday was being set for hearing today.

THE COURT:  What motion?

MR. LANGLEY:  The joint motion to approve

Page 20

the settlement.

THE COURT: No, that was filed July 27th.

MR. LANGLEY: July 27th?

THE COURT: Joint motion for settlement, urgent motion, expedited hearing requested.

MR. LANGLEY: Okay. Do --

THE COURT: That's the one that we're all discussing, correct?

MR. LETO: Yes.

MR. LANGLEY: Okay.

THE COURT: Okay. There is not --

MR. LANGLEY: I'm sorry, there was something filed yesterday. We filed a response, Judge. So, two --

THE COURT: There was a notice of filing yesterday.

MR. LANGLEY: The notice of filing is the Judge Kimball opinion, which addresses all these same issues.

MR. BRESLIN: Judge, to give you a little --

THE COURT: Let me look at this.

MR. BRESLIN: Or a bigger understanding, Judge Kimball originally scheduled a hearing for today on the motion to release the funds, the motion to approve the settlement, to release the funds in the bankruptcy court.

Mr. Lubin filed objections in the bankruptcy

FILED: NEW YORK COUNTY CLERK 01/19/2026 09:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004 RECEIVED NYSCEF: 01/19/2026

court. Judge Kimball canceled the hearing for today and sent the matter back for your Honor to determine whether or not Mr. Lubin had any legal grounds to interfere with our settlement agreement.

So the issue would have been moot --

THE COURT: No, I understand.

MR. BRESLIN: -- if we had a hearing before Judge Kimball, and so --

THE COURT: Let me look at this now.

MR. BRESLIN: -- he kicked it back to your Honor.

THE COURT: Hang on.

So at 3:48 yesterday there was a notice of filing of Judge Kimball's order. It's 11 pages. I haven't had a chance to see this or the objection, but I'm looking at it. It says, the Court orders and adjudges as follows, the expedited joint motion to enforce sale order and, two, to order the distribution of auction proceeds, the counsel for the FVP parties is denied. Two, the Court cannot and will not rule on the dispute between Avrumi Lubin and Hi Bar Capital, LLC regarding their relative rights to the net proceeds held in the registry of this Court.

The parties are encouraged to obtain a ruling from another Court, having competent jurisdiction,

Page 22

or to present an agreement in a form of agreed order as directed in the show cause -- order to show cause. Three, the hearing on the expedited joint motion, et cetera, was canceled.

All right. Well, I take it I am another court having competent jurisdiction.

MR. KASEN: Your Honor, if I may very briefly, just to clarify some of the procedure that has gone on here.

THE COURT: Just so the court reporter --

MR. KASEN: There was a --

THE COURT: Hang on, hang on, hang on. This is -- just so the court reporter knows, this is Mr. Marks speaking, and you're speaking on behalf of Mr. Lubin, correct?

MR. KASEN: It's Mr. Kasen speaking on behalf of Mr. Lubin, that's correct.

There was a joint motion --

THE COURT: Hang on a second.

MR. KASEN: -- by two --

THE COURT: Why is that not showing up?

Oh, who is Brett Marks then?

COURT REPORTER: I think you have something pinned.

THE COURT: I don't think it's -- did I pin

Page 23

it?  I don't think I did.

COURT REPORTER:  No?

THE COURT:  No.  Now it's pinned, now I'm going to remove the pin.

All right.  Mr. Kasen.

MR. KASEN:  There was a joint motion to approve this settlement filed some time ago, but no hearing was set on that particular motion, and then last night, sometime after 5 o'clock, I can give you the exact time, it was at 5:48 p.m., it's Filing Number 229282707, the three parties filed what they titled superseding urgent motion, expedited hearing required.  The FVP parties, Franklin parties, and Hi Bar parties' joint motion to enforce settlement, consensual resolution, and issue order to bankruptcy court.

And with that particular filing, that took place last night at about quarter of 6:00, that's when a hearing was set for today.  Previous to that filing, there had not been a hearing set on this matter.

MR. LANGLEY:  Yes, Judge, that's what I was attempting to argue.

THE COURT:  All right.  Well, I thought this was on for all pending motions, and then -- for a status and all pending motions, and then at 2:30 was the separate motion for summary judgment against Mr. Lubin.

Page 24

MR. LANGLEY: I didn't understand that all pending motions included something filed yesterday after 5:00, Judge, but --

THE COURT: No.

MR. LANGLEY: -- I can --

THE COURT: Again, you keep saying something after 5:00. I was looking at the joint motion, and that's what I read, was the joint motion filed July 27th.

MR. LANGLEY: That wasn't set for today, to my understanding but, Judge --

THE COURT: Why would it not be?

MR. LANGLEY: The simple resolution, we don't have an objection -- the urgency that they're claiming is Judge Kimball wants the money out of the bankruptcy court. We're fine with the money coming to the state court registry or to Mr. Breslin's trust account. We just don't want it dispersed from there until you decide on a common interest agreement.

Mr. Leto says --

THE COURT: Well, I may be deciding that in about 15 minutes, right?

MR. LANGLEY: Well, your Honor --

MR. KASEN: One more thing that I'd like to raise is that they're asking, the joint parties are asking for an endorsement of the settlement agreements, the terms

Page 25

of which haven't been disclosed to anybody.

I'm not exactly sure how your Honor can endorse a settlement agreement without knowing the terms of that --

THE COURT:  Wouldn't the bankruptcy -- you'd have to let the bankruptcy court know, right?  Unless it's not -- is it confidential?

MR. BRESLIN:  Judge, the agreement is not confidential.  The agreement has resolved the issue between Hi Bar and Franklin, and we've notified the bankruptcy court that the matter is resolved, and we're notifying your Honor that the matter is resolved.  I'm happy to supply a copy of the settlement agreement to your Honor, but that's never been an issue.

Mr. Lubin is saying, Mr. Lubin is not --

THE COURT:  Hang on.

So as far as the percentages of the 2 million plus that's in the bankruptcy, you're not willing to put that on the record as to what each has?

MR. BRESLIN:  Well, it's --

THE COURT:  Is it supposed to be confidential?

MR. BRESLIN:  Well, the settlement agreement is, 100 percent of the money in the bankruptcy court is going to the FVP parties.

Page 26

THE COURT:  Okay, and then what does Franklin and Hi Bar get out of it?

MR. BRESLIN:  Franklin, we have a separate agreement with Franklin, and they share the FVP proceeds, and what Hi Bar is getting is there's a release of claims against the individual members.

Don't forget, Judge, we're suing Yisroel Herbst for $7.5 million, just like we're suing Mr. Lubin for $7.5 million.

THE COURT:  Okay.

MR. BRESLIN:  So there's a release of Mr. Herbst, and there are other terms and conditions in there.

THE COURT:  All right, and as far as Franklin goes?

MR. BRESLIN:  Franklin gets its share of the bankruptcy proceeds pursuant to a separate agreement with FVP.

THE COURT:  Okay.

MR. KASEN:  Your Honor, what the parties are intending to do here is cut off any rights that Lubin may have to those funds, and (inaudible) them beyond his reach by cutting Hi Bar out of that --

THE COURT:  No, I understand that, but -- of course that's what they're trying to do, and the question

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004 RECEIVED NYSCEF: 01/19/2026

is whether it's legal, and so that's for the Court to decide that.

COURT REPORTER: Judge, and can you just tell me again who that was that was speaking?

MR. KASEN: And, your Honor --

THE COURT: It's Mr. Kasen. It looks like it's Michael Kasen, K-A-S-E-N. Is that who's speaking?

MR. LANGLEY: Yes.

MR. KASEN: That's right.

THE COURT: Yeah, for some reason, usually you pop up on the screen, but I'm not sure what's going on with the Zoom.

MR. KASEN: I'm not sure either. My camera seems to be frozen also.

THE COURT: Okay.

MR. KASEN: I have a funny face that hasn't moved since the first part of the hearing here, so I don't know if it's on my end or on your end, but I'm guessing it might be on my end, and I apologize, your Honor.

MR. BRESLIN: Judge, I left out one thing.

You asked me about the bankruptcy proceeds. A hundred percent of the bankruptcy proceeds go to the FVP parties, but there are funds outside of the bankruptcy court that go to the Hi Bar parties.

THE COURT: Okay.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004 RECEIVED NYSCEF: 01/19/2026

MR. BRESLIN: A smaller amount.

MR. LANGLEY: So, Judge, we don't have a problem with the funds going someplace other than the bankruptcy court registry. We just don't want that dispersed until you rule on the common interest agreement. The common interest agreement says Hi Bar hereby assigns to Spin Capital any and all Hi Bar claims subject to the terms and conditions of this agreement.

THE COURT: All right. Do you want to go into --

MR. LANGLEY: And part two is --

THE COURT: -- the motion for partial --

MR. LANGLEY: Part two is --

THE COURT: Hang on. Do you want to go into the motion for partial summary judgment then? Because --

MR. LANGLEY: I'd be happy to if you want to argue that today, yes.

MR. BRESLIN: You're Honor, the motion for partial summary judgment --

THE COURT: That's based on collateral estoppel. You're saying that all of these issues have already been resolved in a separate case in Michigan.

MR. LANGLEY: No, no, no, that's the Franklin issue.

MR. BRESLIN: Yes, that's the --

Page 29

MR. LANGLEY: That's the Franklin assignment issue. That's not the agreement between Hi Bar and --

THE COURT: But that was against Mr. Lubin also, wasn't it?

MR. LANGLEY: Yes, but that doesn't concern the common interest agreement.

THE COURT: Okay, so that's something different.

MR. BRESLIN: That is --

MR. KASEN: Your Honor, I think that it's important to note -- again, it's Michael Kasen speaking, that Mr. Leto continues to espouse the idea that Hi Bar has the authority, pursuant to the common interest agreement, to terminate the agreement for any reason whatsoever, but the agreement is really quite clear. In Paragraph 2 under the common interest agreement, it states that they have the authority to terminate the common interest agreement, and in their sole discretion if they're not satisfied with certain enumerated -- with the defense of certain enumerated counterclaims, all of which have been dismissed, the common interest agreement appears to only allow termination for that one particular reason, not for any reason at all, but only if there's a dissatisfaction with that particular, with the defense of particular counterclaims, and that has not been asserted

Page 30

by anybody, and I don't think that it could be asserted by anybody, that there's a dissatisfaction with the way the counterclaims were defended --

MR. LETO: Excuse me, excuse me, Mr. Kasen is new to this, so maybe he just doesn't understand what happened here. There are counterclaims, because we filed a lawsuit. FVP filed a separate action, which became their counterclaims, and the action we filed became this case.

MR. KASEN: No --

(Two people speaking.)

MR. LETO: Excuse me, excuse me, excuse me, I'm talking, Mr. Kasen.

THE COURT: Hang on, hang on, hang on, hang on, hang on. All right.

MR. KASEN: But the common interest agreement --

THE COURT: All right. Mr. Kasen, I'm not even sure how to mute you because I'm not even sure where your voice is coming through on the Zoom, but I need you to stop for one sec.

All right. So let me -- so right now, I think the only issue that I think I need to resolve is if Mr. Lubin or Spin has any right to, I guess, stand in in this case and contest the settlement, that's the issue.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004 RECEIVED NYSCEF: 01/19/2026

Page 31

Not whether there's any merits to a claim between Lubin and Spin and Hi Bar.

I mean, there might be a separate lawsuit there or whatnot down the road. I just need to know -- because right now, as far as I'm aware, the parties that have resolved the issue of the proceeds of the bankruptcy court were the three that were named, and the question is whether Mr. Lubin or Spin, I guess, had a right to be part of that conversation, and so that's the unique issue.

And so, Mr. Langley, the unique issue there, where in this common interest agreement does it say that your client would have a right to, I guess, be in the room where it happens, right?

MR. LANGLEY: Yes, Judge, 2A is the right to the Hi Bar claims, and 2B is the full authority to prosecute and settle the claims. I have a highlighted copy, if you'd like, Judge.

THE COURT: That's fine. I was about to print it out so I didn't have to keep looking at the screen.

MR. LANGLEY: It's right in here.

THE COURT: This is, it's the 11-page common interest agreement, right?

MR. LANGLEY: Yes.

And, Judge, if I could also point out --

Page 32

THE COURT:  Let me just read this into the record.  So Subsection 2, or Section 2 of the agreement says, prosecution and settlement of litigation claims and defenses -- and defensive counterclaims.  A, from and after the effective date, Hi Bar hereby assigns to Spin Capital any and all Hi Bar claims subject to the terms and conditions of this agreement, including but not limited to Spin Capital's obligation to assign all Hi Bar claims back to Hi Bar in the event it exercised its rights pursuant to Section 2F hereof.

So if I go down to 2F, that's titled termination provisions, and it says, small ii, or small double i, in the event Hi Bar, in its absolute discretion, is not satisfied with Spin Capital's management of defensive counterclaims against Hi Bar, then Hi Bar shall provide written notice of such decision, which shall result in a termination of this agreement as of the date of such notice, and that's --

MR. KASEN:  Your Honor, I think it's important to note that the counterclaims discussed in Paragraph 2F are defined in the agreement above.

THE COURT:  Okay.

MR. LANGLEY:  Yes, Judge, and --

THE COURT:  And so above --

MR. LANGLEY:  They were dismissed before --

Page 33

MR. LETO: That's not true.

MR. LANGLEY: They were dismissed before Mr. Leto ever got involved in the case, and they were dismissed without the required written notice saying we're unhappy with the defense of the counterclaims.

THE COURT: All right. So your argument is the only time they would have had the absolute discretion to terminate is before the counterclaims were dismissed?

MR. LANGLEY: Exactly, Judge, that's --

THE COURT: Because that's what the plain language --

MR. LANGLEY: And they were defined, and they were both dismissed before Mr. Leto ever got hired. So, that might be --

MR. LETO: You're -- he's misstating the contract.

MR. LANGLEY: -- why.

(Multiple people speaking.)

MR. LETO: He's misstating the contract, if we look at Part H --

THE COURT: Well, there's no misstating it, it doesn't say that in the contract, but --

MR. LETO: Well, the definition --

COURT REPORTER: Judge, I can only take one at a time.

Page 34

MR. LETO: On Subpart H, which is on Page 2, it talks about counterclaims, but it says at the end, when it defines the term counterclaims, it includes certain defendants and FSG have asserted, and may assert in the future.

THE COURT: All right. Let me --

MR. LETO: So it talks about --

THE COURT: -- read H.

MR. LETO: -- potential.

THE COURT: H, and this is on Page 2, this is actually under recitals.

MR. LETO: Correct.

THE COURT: H, in the New York litigation, on or about March 18th, 2022, Excell Auto Group, Inc. filed a verified third-party complaint against Spin Capital, asserting certain claims and causes of action against Spin Capital, and certain defendants filed counterclaims against Hi Bar.

On or about March 25th, 2022, Franklin Capital Group, LLC, initiated an action captioned Franklin Capital Group, LLC versus Spin Capital, LLC, and Hi Bar Capital, LLC in the United States District Court for the Eastern District of Michigan, the Michigan court. That's Case Number 2022-193300-CV, the Michigan litigation, and that's the subject of the motion for partial summary

Page 35

judgment.

MR. LANGLEY:  No, no, that's a different --

THE COURT:  That's a different Michigan case, okay.

Consequently, as part of -- and in conjunction with the New York litigation and the Michigan litigation, and potentially in the Florida litigation and the bankruptcy proceedings, certain defendants in FCG, LLC have asserted, and may assert in the future, claims, causes of actions, and counterclaims against one or both parties, collectively the counterclaims.  So all of that is collectively the counterclaims?

MR. LETO:  Yes, your Honor, which includes this case.

THE COURT:  All right, and so --

MR. KASEN:  Your Honor, no matter how you interpret it, there hasn't been an assertion by Hi Bar in an attempt to terminate this about their dissatisfaction with the defense of counterclaims.

The only basis for termination of the agreement that Hi Bar has espoused is that they -- that Mr. Leto wasn't paid his fee.

MR. LETO:  That's not true either.  In my termination letter it says, in addition to the nonpayment, which is required --

Page 36

THE COURT: Now, what's the date of your termination letter?

MR. LETO: April 3rd, 2024, on Paragraph 2, I can give your Honor a copy, it also says, finally, and for reasons unknown and without any factual basis, Mr. Lubin has taken litigation positions that are adversarial to Hi Bar. That is exactly -- that's not only nonpayment, it's also what he did in this actual case that led to the termination, meaning Hi Bar was more than dissatisfied with his actions.

THE COURT: And it says right there in that letter, April 3rd, 2024, that Hi Bar is exercising its absolute discretion.

MR. LETO: It doesn't use --

(Multiple people speaking.)

MR. BRESLIN: We should put that in the record, Matt.

MR. LANGLEY: It says, Lubin didn't pay Mr. Leto's attorney's fees, so the contract is terminated. That's basically what it says.

There was never the required written notice saying we're dissatisfied with the defense of the counterclaims, and the counterclaims that were contemplated when this agreement was written were the two that got dismissed.

Page 37

There are other claims pending here. I don't know that any would be considered counterclaims or direct claims by a plaintiff, and so there's never been any dissatisfaction with the defense of those claims.

It was Mr. Leto who was defending those claims. It was Mr. Leto who was hired.

The other document you have to see, Judge, is the authority to represent where my client --

THE COURT: Let me read this for a second.

So it says here, referring to -- those actions referring to failure to pay, as well as litigation positions that are adversarial to Hi Bar. Those actions, singularly and collectively, constitute a breach of the JDA, which is a reference to the common interest and joint litigation agreement, and so it says here, based upon Mr. Lubin and Spin's breach of the JDA and fee agreement, Hi Bar is no longer obligated to perform under any of the provisions set forth therein, including but not limited to the obligation to allow Spin and/or Mr. Lubin the right to engage in settlement discussions and case strategy, or Spin's right to receive payment under Section 3 of the JDA.

So I think that's pretty clear, and then it even goes on and say, to be clear, given Mr. Lubin and Spin's breach, in the event Hi Bar resolves any pending

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004 RECEIVED NYSCEF: 01/19/2026

Page 38

matters, Spin is not entitled to payment under the priority of distribution section, and all funds will be --

MR. KASEN: Judge, that letter --

THE COURT: -- given to Hi Bar.

MR. KASEN: -- that letter is a misinterpretation or a blatant ignoring of the language of the --

THE COURT: That's your argument, but that's for this Court to --

MR. LANGLEY: Judge --

THE COURT: -- make that determination.

MR. LANGLEY: -- Mr. Leto was hired under the joint representation agreement to represent Spin in the name of Hi Bar. It says in the common interest agreement, Hi Bar will remain as the plaintiff, but will do so on behalf of Spin.

MR. BRESLIN: Judge, may I be heard?

MR. LANGLEY: This is Mr. Leto saying Hi Bar is not happy with Mr. Leto's defense of the counterclaim. I mean, Mr. Leto was representing Spin's interest. There was no record -- there was no written notice, as required under 2F, from Hi Bar saying we're not satisfied with your defense of the counterclaims.

MR. BRESLIN: Judge --

MR. LANGLEY: Mr. Leto was the person that,

if there were new counterclaims, and I don't believe that's what was contemplated in the common interest agreement, certainly the prior counterclaims that were contemplated were dismissed successfully. Anything new that came up, it was up to Mr. Leto to defend those.

There was never anything from Hi Bar saying we're unhappy with Mr. Leto's defense of any counterclaims.

What you just read there is Mr. Leto is unhappy that he didn't get paid, so he alone is terminating the common interest agreement. That's ridiculous.

MR. BRESLIN: Judge, may I be heard?

MR. LANGLEY: And I have one more thing. This is a motion filed a year ago, Judge, and it states, as is seen in the authority to represent, and inconsistent with the representations to this Court from the inception of this case, this entire time Mr. Leto has been secretly representing Josh Lubin and Spin, in addition to other clients, Herbst and Hi Bar. This was written by Mr. Breslin.

MR. BRESLIN: Yes, Judge --

MR. LANGLEY: This is his motion from a year ago, recognizing exactly what I'm arguing, that Mr. Leto is representing the interests of Spin and Lubin.

Page 40

MR. BRESLIN:  Judge, very, very briefly.

THE COURT:  Hang on, hang on.

Mr. Langley, are you finished?

MR. LANGLEY:  Yes.

THE COURT:  All right.  Go ahead.

MR. BRESLIN:  Judge --

MR. LANGLEY:  Thank you.

MR. BRESLIN:  -- the FVP parties have been dealing with Mr. Leto for the past two years, since we filed this lawsuit.  Hi Bar has been represented by Mr. Leto.  We've dealt with him.  He's been litigating this case from the beginning.

Franklin has been dealing with Mr. Leto, who has represented Hi Bar from the beginning.  We have trial in one month.  We have come to a settlement agreement.  Now we have a settlement agreement.  All of a sudden, Mr. Lubin is saying, whoa, whoa, whoa, wait a second.

If he had a voice in this, he should have raised it a long time ago.  He's estopped from raising it now.  A, he doesn't have standing.

Assuming our settlement agreement breached that agreement between him and Mr. Herbst and Hi Bar and Spin, he can sue them, but that doesn't negate the validity of our settlement agreement.  Mr. Lubin doesn't have the power.

THE COURT: No, I understand.

All right. So I am going to grant the joint motion to approve the settlement, and based on just the plain language in the common interest and general litigation agreement, and based on the April 3rd, 2024 letter terminating that agreement, and the rights under Paragraph 3 of that agreement, which is the only basis that Mr. Lubin would have had to even raise any right to any of these proceeds, I am going to grant the joint motion. I do not see how Mr. Lubin has any right to stand in and contest the settlement.

Certainly he may have claims against Hi Bar and against Mr. Leto and whatnot, but that has nothing to do with the settlement for the proceeds in the bankruptcy court, and so based on all of that, I am granting the joint motion for settlement.

MR. LANGLEY: Judge, I would like --

THE COURT: And so the --

MR. LANGLEY: -- to request a brief stay of the order, giving us a chance to do an emergency --

MR. BRESLIN: Judge --

MR. LANGLEY: -- appeal.

You know, what Mr. Breslin is saying is we can go sue Hi Bar in New York. That's meaningless. Once the funds are gone, the funds are gone. So we'd like -- I

FILED: NEW YORK COUNTY CLERK 01/19/2026 01:22 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004 RECEIVED NYSCEF: 01/19/2026

Page 42

would respectfully request a stay of the order for 30 days to --

THE COURT: All right.

MR. LANGLEY: -- give us a chance --

MR. BRESLIN: Judge, Judge, then we have to try the case. You know, then we have --

MR. LETO: Is he posting a bond? I mean, it's --

MR. BRESLIN: Judge, I vigorously --

THE COURT: Hang on, hang on, hang on. All right.

MR. BRESLIN: If they want to take an appeal --

THE COURT: It's an ore tenus motion to stay, that's denied.

MR. BRESLIN: Thank you.

THE COURT: All right. If they want to take it on appeal, my guess is they're going to have to post a supersedeas bond.

MR. DORSEY: Judge, this is Mr. Dorsey for the Franklin parties. Just one point of clarification.

Judge Kimball has been very clear, he thinks he lacks subject matter jurisdiction to determine any facet of this dispute.

Can the order granting the motion instruct

Page 43

the bankruptcy court to release the funds to Mr. Breslin's escrow account?

THE COURT: I can't order the bankruptcy court to do that.

What I can order is that, I do make a ruling that Mr. Lubin does not have an interest for the reasons stated on the record, does not have an interest.

MR. BRESLIN: Thank you.

MR. DORSEY: Thank you, Judge.

MR. BRESLIN: That's plenty.

MR. KASEN: Your Honor, I would ask -- if that's your Honor's ruling, I respect that.

I would ask that the Court is of that ruling require the full text of this particular settlement agreement and any related settlement agreements be made public, or at least provided to Mr. Lubin.

MR. LANGLEY: Judge --

MR. LETO: Under what authority? Discovery closed, like, weeks ago.

MR. LANGLEY: We filed a notice to produce at the last hearing on behalf of Lubin. At the same hearing --

THE COURT: All right. Is there an objection to turning over the settlement agreement? I don't even know, is it titled confidential or not?

Page 44

MR. LETO:  There's no confidential --

MR. BRESLIN:  I have no objection.  I think he's entitled to see it.

THE COURT:  All right.  So Mr. Kasen, your client will get a copy of the settlement.

MR. KASEN:  And all related settlement agreements, because the (inaudible) --

THE COURT:  Well --

MR. KASEN:  -- one settlement agreement that puts all the money to FVP, then there are separate settlement agreements between the FVP parties and the Franklin parties, and separate settlement agreements then between the FVP parties and Hi Bar parties.

MR. LETO:  There's only one agreement with Hi Bar, your Honor.

THE COURT:  All right.  I guess the starting point will be the settlement agreement between the three parties, which includes Hi Bar.  If there's a separate settlement agreement, I have no -- first of all, is there an objection to turning that over?

MR. BRESLIN:  Judge, the Franklin parties and FVP have a common interest agreement, and in that common interest agreement is a blanket agreement.  So that would apply to any of these funds.

MR. LANGLEY:  But FVP --

Page 45

THE COURT:  And is that confidential?

MR. BRESLIN:  Well, it's stated as confidential.  No one has ever moved to produce it.

THE COURT:  All right.  I would defer that one for another day then.

MR. BRESLIN:  Right, thank you.

MR. LETO:  We'll provide the Hi Bar settlement.

THE COURT:  All right.

MR. BENNARDINI:  Can the Farache --

MR. LANGLEY:  Thank you, Judge.

MR. BENNARDINI:  Can the Farache defendants get a copy of that, too, please, Judge?

MR. LETO:  I will send it to you.

MR. BENNARDINI:  Thank you.

MR. BRESLIN:  I'm glad that was the easy one, Judge.

(Laughter.)

THE COURT:  Yeah, I jinxed myself.

MR. BRESLIN:  Let's move on to the tougher ones.

THE COURT:  All right.  So that takes care of the -- well, that takes care of the trial then as well, as long as --

MR. BRESLIN:  It takes care of --

Page 46

THE COURT: No, I'm sorry, the first trial.

MR. BRESLIN: -- a lot of it.

MR. DORSEY: Most of it.

THE COURT: There's still some issues though?

MR. BRESLIN: Right, there's still the remaining claims against Mr. Lubin. There is a default against Mr. Getter (phonetic). So, and there's cross-claims by Franklin against Mr. Lubin. So, the first trial is --

THE COURT: And so that would not --

MR. BRESLIN: -- trimmed down dramatically.

THE COURT: So that one could not be done at the same time as the Farache defendants?

MR. BRESLIN: There are -- it would be very difficult to try them at the same time. They're completely separate issues, Judge, and that's why they were separated in the first place, and the exhibits in reference to Mr. Lubin's liability has nothing to do with the Farache liability. It is just, it's apples and oranges, Judge.

And we have the --

THE COURT: So let me ask you, if you're releasing all claims to Hi Bar as part of the settlement --

Page 47

MR. BRESLIN:  We're releasing Yisroel Herbst as an individual defendant.

THE COURT:  Okay.

MR. BRESLIN:  The Franklin parties are releasing Yisroel Herbst and Mordecai Herbst, his son, as individual defendants.

Hi Bar remains a party for the purposes of piercing the corporate veil to achieve liability against Mr. Lubin, who has told everyone who will listen, that he is, in fact, Hi Bar.

So Hi Bar remains a party, but they will not be -- under the terms of the settlement agreement, they will not be appearing at the trial.  We will not be seeking a judgment against Hi Bar, and to the extent that any verdicts are submitted to the jury regarding Hi Bar, we'll only be seeking a judgment against Mr. Getter and Mr. Lubin.  So --

THE COURT:  All right.

MR. BRESLIN:  -- that's how the settlement agreement is laid out.

THE COURT:  All right.

MR. KASEN:  Your Honor, I have a -- this seems a little bit counterintuitive that we just spent the last 45 minutes arguing that Lubin has no right as standing in the shoes of Hi Bar, and now we're going to

Page 48

have a whole trial to determine if Lubin is, in fact, Hi Bar?

Judge --

MR. BRESLIN:  We're suing him for fraud. We're suing him for seven and a half million dollars that we loaned based on misrepresentations that he made to my client, and --

MR. KASEN:  Well --

MR. BRESLIN:  This other issue, this other issue, the priority issue, has been resolved.  So the priority issue is resolved.  The fraud issue needs to be tried to the jury.

THE COURT:  I understand.

MR. KASEN:  But the priority issue is resolved by you arguing that Mr. Lubin has no connection at all to Hi Bar, and now you're going to argue that actions that were taken by Hi Bar --

THE COURT:  All right.  We're not going to try the case right now.

So, all right, what would be next that you all need to resolve?

MR. DORSEY:  Franklin has a summary judgment motion that was set for 2.30.

THE COURT:  Okay.  That's against Mr. Lubin?

MR. DORSEY:  Mr. Lubin.

Page 49

MR. BENNARDINI:  We have three motions set for 1:30, Judge.

THE COURT:  All right.  What were those?

MR. COHEN:  I got an easy one, Judge.

MR. BENNARDINI:  Number one is, your Honor ruled back on June 23rd that the words usury, loan sharking, illegal, and criminal are out with respect to speaking about the Faraches, and typically, your Honor was real clear in your order, in fact your Honor at that very hearing, said --

THE COURT:  Are we getting into that motion?  That's what I want to know.

MR. BENNARDINI:  I don't know, but that's what it's about.

THE COURT:  Right.

MR. BENNARDINI:  It's just a motion to have the Court enter an order as to what you already ordered on June 23rd, that's our motion.

THE COURT:  All right.  I need to go get my notes from June 23rd.

MR. BENNARDINI:  I've got a transcript for you.

THE COURT:  All right, but I want to take a look at my notes as well.

MR. BENNARDINI:  Thank you, sir.

Page 50

THE COURT: So let me do that, let me take a quick break.

Just so I have a little bit of a heads-up, so what three motions, Mr. Bennardini, do you have?

MR. BENNARDINI: I just have one. The second one is --

MR. COHEN: It's our motion. Yeah, Judge, it's our motion for clarification, and also to get a more clear outlook on the ruling from the Court on the term, quote/unquote, usury.

So, it -- and we laid it out pretty clearly in the motion, in terms of what we have to prove, and the intent that we have to prove, and the motive that's involved. So that's kind of the revolving door here, is that in order to get to the motive, we have to use the term usury. The motive --

MR. BENNARDINI: We're arguing it, Judge.

MR. COHEN: No, I'm not arguing it. I'm just saying, that's what it's about.

THE COURT: It's a motion for clarification.

MR. COHEN: That's --

MR. BENNARDINI: It's actually, Judge --

(Multiple people speaking.)

MR. BRESLIN: The second one is on Mr. Gray, it's my motion, it's the scope of -- I have an issue to

Page 51

present to your Honor regarding data entry and expert testimony, and the third motion is Mr. Buschel is going to handle it, where we're seeking a jury instruction on the resolution of the ownership issues of AWB that your Honor has already ruled on, so those are the three, and then the Franklin summary judgment.

MR. BENNARDINI: Your Honor, the first motion is actually our motion --

THE COURT: Okay.

MR. BENNARDINI: -- to have the Court enter an order based upon what you ordered orally, which is what the Court instructed us to do when we could not get the other side to agree to the terms of an order.

THE COURT: All right. I'll have to take a look at that.

MR. BENNARDINI: Thank you.

THE COURT: And --

MR. BRESLIN: But it's our motion.

THE COURT: Okay. So those three motions.

MR. BRESLIN: Yes, sir.

THE COURT: And then we have the motion for summary judgment at 2.30.

All right. If I remember correctly, though, as far as the motion in limine regarding usurious, loan shark and things of that nature, I thought that was all

Page 52

agreed --

MR. BENNARDINI:  No.

THE COURT:  -- that you were not going to -- I thought they were not going to use certain terms, I thought that was agreed.

MR. BENNARDINI:  Well, no.  I can tell you what you said.

MR. BRESLIN:  Let him leave.

THE COURT:  I'm going to go grab my notes, and then we'll get into that.

MR. BENNARDINI:  I want to read what he said.

THE COURT:  All right.  I'm going to take a --

MR. BENNARDINI:  Thank you.

THE COURT:  We'll take a 10-minute break for the court reporter, and then we'll just continue on to finish everything else up.

MR. BENNARDINI:  Thank you.

THE COURT:  Okay.

MR. LETO:  And, your Honor, because Hi Bar has no other issues today, is it okay if I'm excused?

THE COURT:  No.

You are welcome to leave.

MR. LETO:  I may not want to leave, but if

Page 53

that's okay?

THE COURT:  All right.

MR. LETO:  Thank you, your Honor.

MR. COHEN:  It's been really exciting.

(A recess was taken, after which the following proceedings were had:)

THE COURT:  All right.  We are back on the record with Case CACE-22-5125, FVP Opportunity Fund III versus Scott Zankl, et al.  Let the record reflect the attorneys are all present.  The parties are not present. That being said, Mr. Leto, I guess, has left, right?

MR. LANGLEY:  Yes.

THE COURT:  Okay.  So it looks like most everybody is still on Zoom.

All right.  I am -- let me see, there is a motion for clarification.  I may have been remembering, there were various motions in limine that we did --

MR. BENNARDINI:  May 1st.

THE COURT:  May 1st, and then we did the ones June 23rd.  So I have my notes here, which is granted in part without prejudice, right --

MR. COHEN:  Correct, Judge.

MR. BENNARDINI:  Not correct.  Not correct, Judge, it was never --

THE COURT:  -- with respect to the term

Page 54

usurious.

MR. BENNARDINI:  May I?

THE COURT:  And you could not say that it was illegal --

MR. BENNARDINI:  Right.

THE COURT:  -- or loan sharking, that's what my notes indicated.  Maybe I -- I'm not sure --

MR. BENNARDINI:  Can I read the transcript?

THE COURT:  Okay.

MR. BRESLIN:  Judge, can we argue our motion?

MR. BENNARDINI:  No, this is our motion, this is our motion for order to enter -- motion to enter order granting in part Farache defendants a comprehensive motion in limine concerning -- then they get a response, Mr. Cohen.

MR. COHEN:  You got it.

MR. BENNARDINI:  Thank you, sir.

MR. COHEN:  All right.  You're doing great.

MR. BENNARDINI:  Thank you, sir, I appreciate it.

Your Honor, so we were before you on June the 23rd.  They want to tell this jury, in addition that Mr. Farache is going to go throw Mr. Zankl to the alligators, they want to tell the jury that Auto Wholesale

FILED: NEW YORK COUNTY CLERK 01/19/2026 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004
RECEIVED NYSCEF: 01/19/2026

Page 55

of Boca was in vehicle transactions with Mr. Zankl that added up to greater than 25 percent interest and, therefore, is usurious.

THE COURT: Okay.

MR. BENNARDINI: Your Honor gave them a bone, so to speak, you told Mr. Breslin, you can put in all the evidence you want, Mr. Breslin, about the number, it's 24 percent, 26 percent, all of that, you gave that to them, but the Court clearly said, so -- and this is -- would you like to copy of the transcript? I have it.

THE COURT: That would be great.

MR. BENNARDINI: May I approach?

THE COURT: Yes.

MR. BENNARDINI: Thank you.

And before we got to this part, we had discussions about usury is personal to a borrower, and with respect to FVP, and Mr. Zankl was the borrower in this matter, FVP shouldn't be raising usury at all because they're a lender, and there's case law that says lenders can't raise usury, but what your Honor boiled it down to is that it was unfairly prejudicial, that any probative effect was outweighed by "unfairly prejudicial", and at Page 65, Line 21, the Court, so for now we read the motion, but limit only, so it's granted in part, to using the term usurious, and saying it was illegal, or

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

In re: EXCELL AUTO GROUP, INC., Debtor.
Case No. 22-12790-EPK (Chapter 7)

NICOLE-TESTA MEHDIPOUR, as Chapter 7 Trustee for Excell Auto Group, Inc., Plaintiff,
v.
HI BAR CAPITAL, LLC, et al., Defendants.
Adv. Proc. No. 23-01132-EPK

---

# EXHIBIT 18

NYSCEF "Notice of Filing of Related Proceedings Materials"

Supreme Court of the State of New York, County of New York — Index No. 650582/2022

Filed Jan. 19, 2026 (NYSCEF Doc. No. 1002) and attached Exhibits A–I (NYSCEF Doc. Nos. 1003–1011).

*(Filed as a supplemental exhibit for ease of reference.)*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

In re: EXCELL AUTO GROUP, INC., Debtor.
Case No. 22-12790-EPK (Chapter 7)

NICOLE-TESTA MEHDIPOUR, as Chapter 7 Trustee for Excell Auto Group, Inc., Plaintiff,
v.
HI BAR CAPITAL, LLC, et al., Defendants.
Adv. Proc. No. 23-01132-EPK

# SUB-EXHIBIT 18-A

Notice of Filing Declaration Regarding Preservation Notice and Response (S.D. Fla. Bankr.,
Adv. Proc. No. 23-01132-EPK, Doc. 362, filed Jan. 7, 2026).

Case 23-01132-EPK   Doc 382-1   Filed 01/22/26   Page 106 of 976

**SUPREME COURT OF THE STATE OF NEW YORK** Index No. 650582/2022
**COUNTY OF NEW YORK**      Third-Party Index No. 595367/2022

Hon. Nancy M. Bannon, J.S.C. (Part 61M)

TETON LIFE LLC as Assignee of the Rights of Spin Capital, LLC,
Plaintiff,
-against-
GOLDEN FOOTHILL INSURANCE SERVICES, LLC et al.,
Defendants.
-----------------------------------------------x
GOLDEN FOOTHILL INSURANCE SERVICES, LLC et al.,
Third-Party Plaintiffs,
-against-
SPIN CAPITAL, LLC, and AVRUMI LUBIN,
Third-Party Defendants.
-----------------------------------------------x

# EXHIBIT A

**Notice of Filing Declaration Regarding Preservation Notice and Response**

S.D. Fla. Bankr., Adv. Proc. No. 23-01132-EPK, Doc. 362, filed Jan. 7, 2026.

*Cover page for NYSCEF exhibit attachment (for ease of reference)*

Case 23-01132-EPK   Doc 383-1   Filed 01/22/26   Page 107 of 976
Case 23-01132-EPK   Doc 370-3   Filed 01/13/26   Page 57 of 140

Page 56

illegal/loan sharking, all right?

And then I said, thank you, Judge.

Mr. Breslin started to speak, and then the Court said, Line 67 -- I'm sorry, Page 67, Line 2, that terminology is out.

So what the Court ruled is, no usury, no loan sharking, and then later on the Court said, you can do all that, you can put in the numbers, and you can do all that without saying it's usurious or -- usurious or loan sharking, and then later on, on Page 68, Line 19, as far as the underlying transaction, all of that comes in because the facts are what the facts are.  Whether you can get in front of the jury and say that it's illegal, and they're criminal, I'm going to -- at this point, you're going to keep that out, and you'd have to come up sidebar and show me why it's somehow probative.

And then finally, just highlighting the Court, the Court said later on, after Mr. Breslin was -- he's persistent, I've got to give him credit.  The Court said, the transactions are what the transactions are, they come in.  The actual rate comes in, but telling them that it's a crime is a matter of law, here's the statute, they committed a crime.  I think you run the risk of that, on balancing, there's a danger of unfair prejudice.

Does it substantially outweigh probative

Case 23-01132-EPK   Doc 383-1   Filed 01/22/26   Page 108 of 976

Case 23-01132-EPK   Doc 370-3   Filed 01/13/26   Page 58 of 140

Page 57

value?  I'd have to say at this point, I'm going to say without prejudice, keep it out, all right?

So with respect to loan sharking, usurious, usury, criminal --

THE COURT:  All right.

MR. BENNARDINI:  -- Judge, you said keep it out.

THE COURT:  Let me parse this out a little bit.

All right.  Coming in and saying it's illegal or it's loan sharking or it's criminal, you're not asking for a clarification on that, you agree?

MR. COHEN:  No, we don't agree, and I'm going to tell you why, Judge.

MR. BENNARDINI:  Judge --

THE COURT:  All right, and then usurious is a little bit different.

MR. COHEN:  Right.

THE COURT:  So just because it's usurious doesn't make it illegal.  Usurious is a rate, it's just a rate over a certain amount.

(Multiple people speaking.)

MR. BENNARDINI:  Your Honor, we're doing --

THE COURT:  As far as the balancing, and I'm just saying, it's one thing to get up there and say

Page 58

so-and-so is a criminal, they're doing illegal activities, that's -- on balancing, it becomes a lot more prejudicial.

MR. BENNARDINI:  Well, here we are -- here's what's happening again.

THE COURT:  If somebody says, hey, that rate is usurious, the jury is not -- usually people on the street or whatever aren't going to go, oh, my God.

MR. BENNARDINI:  That's not what the 4th District says.

THE COURT:  All right.

MR. BENNARDINI:  And we went over that, too, and what the 4th District says in Earl Lee Butler v. Target (phonetic), the term usury has a powerful effect on the person who hears it.  It is defined in terms of illegal, unconscionable, and corrupt, and the 4th District in that very case -- this was a lawyer's fee dispute, and the client brought up the lawyer's fee statements were usurious, and then what did the 4th say about that when the Court allowed it in?  The use of the term can so infect the trial that a new trial must be granted.

And you heard this last time, Judge, and one other thing you said last time is --

THE COURT:  I take it, though, if you go into that, the underlying facts, there were probably no facts to support that it was illegal or criminal or

Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 110 of 976
Case 23-01132-EPK Doc 370-3 Filed 01/13/26 Page 60 of 140

Page 59

whatnot, and that's why when I say, again, at the end of my ruling I say, here, as far as the transaction, the underlying -- as far as the underlying transactions, all of that comes in, because the facts are what the facts are.

MR. BENNARDINI: Right.

THE COURT: Whether you can get in front of the jury and say that it is illegal, and they're criminal, I'm going to -- at this point, you're going to keep that out, and you have to come up sidebar and show me why it's somehow probative.

MR. BENNARDINI: So that terminology is out, that's what you said at Page 67 --

THE COURT: No, but it's without prejudice.

MR. COHEN: Right.

THE COURT: What I don't -- what you don't want is people in the middle -- in the beginning of the trial saying, members of the jury, you're going to hear that these people are criminals, and then when the evidence doesn't come out to show that there was any criminal acts, now I've got to try the case all over again.

MR. COHEN: Correct.

THE COURT: And that's what I'm doing on balancing. So I'm going to keep out them coming up there

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1004
INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 60

and saying they're criminals.

MR. BENNARDINI:  Or loan sharks.

THE COURT:  Or loan sharks in opening, but if the evidence comes out, and they come sidebar and say, Judge, now there's a good faith basis -- you know, a good faith basis, and there's evidence to establish that these transactions are illegal, then you still have to do a little bit of balancing, what's the probative value in it? And they'll probably make the argument that it's probative or even highly probative and what not, but I have to wait and see what the evidence is.

And I'm pretty sure, I do this in almost every case when I talk about a motion in limine, you're asking the Court in a vacuum, without knowing much about the case, to make evidentiary rulings, and it's very hard to do that.

MR. BENNARDINI:  This is not --

THE COURT:  And so I always say, or I always, when I'm ruling, indicate that evidentiary rulings are always without prejudice to revisit as the evidence comes in --

MR. BENNARDINI:  Well --

THE COURT:  -- because then the Court has a better understanding of the context.

MR. BENNARDINI:  -- I think the 4th District

Page 61

was quite clear, that use of the term can so infect the trial, that a new trial must be granted.

THE COURT: You are absolutely correct, and if there's no evidence to support those terms and to use those terms, it would so infect the trial, and that's why I'm keeping them out until I have a chance to see the evidence.

And that being said, I guarantee you, if you look at those cases where there's a reversal, it's because there were no facts that back up --

MR. BENNARDINI: Well, that's true in that case, and it's going to be true in this case as well.

THE COURT: It might be, and that's why --

MR. BENNARDINI: But I'm --

THE COURT: -- I'm sustaining it, but it's without prejudice, all right?

MR. BENNARDINI: I need an order to that effect. I submitted one --

THE COURT: Okay.

MR. BENNARDINI: -- and if I do it again, they're just going to be back again.

MR. BRESLIN: No, we're not.

THE COURT: Let me hear a response.

So what would be the objection to the order saying that, again, the facts are what the facts are, they

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004   Case 23-01132-EPK   Doc 370-3   Filed 01/13/26   Page 63 of 140   RECEIVED NYSCEF: 01/19/2026

Page 62

come in, but to not get up in opening statements or before coming sidebar and saying, hey, you know, there's a jury, the defendants are criminals, or the defendants committed illegal acts or whatnot?

MR. COHEN: And, Judge, if I may address the Court? I don't know if Mr. Bennardini is --

MR. BENNARDINI: Yes, you can come, Mr. Cohen.

MR. COHEN: Thank you so much, I appreciate it.

MR. BENNARDINI: But what you also said at the last hearing is, you spend more time on the orders than you do on the rulings, and the hearings themselves, and this is deja vu all over again.

THE COURT: In this case that would be the case, but not like --

MR. COHEN: But not --

(Multiple people speaking.)

MR. COHEN: You did great.

Judge, what I wanted to address was, in the 4th DCA case that he's speaking about, that was in terms of attorney's fees, not tortious interference, and if you look at tortious interference, the claimant must prove, and this is in the actual jury instructions, the claimant must prove that the defendant acted unjustifiably because

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004    Case 23-01132-EPK    Doc 370-3    Filed 01/13/26    Page 64 of 140    RECEIVED NYSCEF: 01/19/2026

Page 63

the defendant violated a statute, committed a tort, or committed other improper acts.

You know, the fact is the facts, you know, they were buying and selling these cars, which weren't even being bought and sold, to avoid looking like it was usury, which it was.

So the long story short here is we have to put that evidence on in order to prove our case, but what you want to do is, and I understand about the criminal, and he's a criminal, and these are illegal acts, and all these different things in opening, but the fact that it's usurious, and the fact that, whether or not we can prove -- essentially the Court said, you can prove and you can say to the jury that it was over the legal amount of 25 percent, you can say that, but you're essentially saying, we can say -- we can show that it's Yahtzee, but we can't yell that it's Yahtzee.

So that's the issue that I have in the opening --

THE COURT: I haven't played Yahtzee in a long time.

MR. COHEN: I know, yeah.

Well, I'll give Mike credit, Mike McMullen for the Yahtzee referral.

MR. McMULLEN: I like to contribute where I

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1004
INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 64

can.

MR. COHEN:  But what I'm trying to say, Judge, is, I'm not going to sit there in opening and point to Mr. Farache and say he's a criminal at this point.

What I would like to do is, I would like to say that we're going to prove that the amount is over the legal amount, and to say that is considered usury.  I don't know how else to say it.  It is considered usury.

Now, I'm not going to sit there and jump up and down and say that he's a criminal and all these other things.  I mean, obviously, it is what it is when it comes out during trial about how these transactions were taking place, and why these cars weren't actually being sold, and why these amounts were being loaned and then paid back at 35 percent.  All these different things are going to come out, but I don't anticipate in opening, you know, yelling that he's a criminal.

Now, in closing, I don't know, but in opening probably not.

THE COURT:  What's the statute again for usurious --

MR. COHEN:  Here, Judge, here's my motion.

THE COURT:  Do you have it?

MR. COHEN:  Yeah, here's my motion.  It's in there.

Case 23-01132-EPK   Doc 383-1   Filed 01/22/26   Page 116 of 976
Case 23-01132-EPK   Doc 370-3   Filed 01/13/26   Page 66 of 140

Page 65

MR. McMULLEN:  I think it's 687.03.

MR. COHEN:  It is.

THE COURT:  All right.

MR. COHEN:  But I think the usurious statute is in the motion.

THE COURT:  687.03?

MR. COHEN:  And it's not -- yeah, 687.03.

And in that case for the 4th DCA, Judge --

THE COURT:  All right.  That statute is defined as unlawful rates of interest.

MR. COHEN:  Right, correct, and that's what it is.

MR. BRESLIN:  Judge, we vote for you to take judicial notice of this statute, you know, as a safety measure.

THE COURT:  I'm not even sure what the claims are here, but --

MR. COHEN:  It's tortious interference, and it goes on, and if you read the jury instruction, Judge, that's part of the tortious interference jury instruction.

MR. BENNARDINI:  It's not.

MR. COHEN:  But we have to -- it absolutely is.

THE COURT:  But in any event, the statute is pretty clear --

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1004
INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 66

MR. COHEN:  Yeah.

THE COURT:  -- Subsection 1, except as provided herein, it shall be usury and unlawful for any person or any agent, officer, or other representative --

MR. COHEN:  Mr. Bennardini, I'm not done with my argument, please, I didn't interrupt you.

MR. BENNARDINI:  My leg is hurting.  I'm going to stand up, if you please.

MR. COHEN:  You can stand up as much as you'd like --

MR. BENNARDINI:  I can.

THE COURT:  All right.  So, I mean, there's different layers as well --

MR. COHEN:  Yes.

THE COURT:  -- as to whether it's, you know, 18, or I think it's 25 is the other, right, or 24?

MR. COHEN:  What the argument would be is that we will provide evidence to prove, to show you today that the amounts that were involved were usury.  It's not that I'm saying, okay, you have to make a decision that it's usury.

An opening statement is a roadmap to where we're going to go.  I mean, that's first year law school.

THE COURT:  All right.

MR. COHEN:  The roadmap is, I'm going to

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004   RECEIVED NYSCEF: 01/19/2026

Page 67

show them --

THE COURT: I understand.

Let me just ask, Mr. Bennardini, what would be the issue with saying, hey, members of the jury, you're going to learn that a rate over x is a usurious rate, it's not lawful?

MR. BENNARDINI: That's because, number one --

THE COURT: And the evidence is going to show that the rate was above that rate.

MR. BENNARDINI: Number one, the word usury does not appear in the pleadings, it's outside the pleadings. Number two, it can't appear in the pleadings because usury is a personal defense, and I argued this last time, usury is a -- and we went over a case called --

THE COURT: Usury is a what?

MR. BENNARDINI: It's a defense.

MR. COHEN: Your Honor --

MR. BENNARDINI: It is something that can only be brought up personally to the borrower. It's not something -- and there's expressly a case, and let me tell you what it was, because you actually read it, in making your order, Adana Investing versus Wells Fargo, 2017, Westlaw, 3668553, which says lenders can't raise usury, it's to the borrower. There was no lender relationship

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 119 of 976
FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004    Case 23-01132-EPK    Doc 370-3    Filed 01/13/26    Page 69 of 140
RECEIVED NYSCEF: 01/19/2026

here between FVP and Mr. Farache.

THE COURT:  The facts are what the facts are, and I guess it's different to say, just like -- I mean, you can say certain things are illegal, but it's --

MR. BENNARDINI:  Well, here's what you said about that, you said, well, that's the problem, because then you're saying it's no different than all of a sudden we just say, Mr. Farache, we gave him some cocaine. Usury is the same thing as saying cocaine.  It's the same thing --

MR. COHEN:  Well, the facts were we gave him --

MR. BENNARDINI:  -- it's a crime.

MR. COHEN:  -- cocaine.

MR. BENNARDINI:  It's a crime, Judge.

THE COURT:  But it depends on the underlying facts.  That's why it's hard to rule in a vacuum.

But I have no problem -- I didn't realize my ruling was extending to not even be able to say that, look, there's laws out there that say that this rate is a usury rate --

MR. BENNARDINI:  Well, that's what you said. I mean, I'm only reading what your Honor said.

THE COURT:  -- as opposed to, I thought your motion in limine was to calling your own client a

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004 RECEIVED NYSCEF: 01/19/2026

criminal.

You know, so in other words they can, in jury selection, they're not allowed to say, members of the jury, does anyone -- well --

MR. COHEN:  I don't intend --

THE COURT:  -- if they're not even referring to your client, and they say is something a crime, and you jump up and you go, Judge, we have a motion in limine, and you're not allowed to mention that something's illegal, even though they're not even referring to your client.

So, in other words, it gets very difficult --

MR. BENNARDINI:  Mr. Farache --

THE COURT:  -- you're asking me to split hairs here.

MR. BENNARDINI:  Mr. Farache could not have engaged in usury as a matter of law, and neither could AWB, because they were not borrowers of FVP.

THE COURT:  And so they're not going to get up there and say that they're engaged in usury or illegal -- what they're allowed to do is say the facts are --

MR. BENNARDINI:  Right, you said that.

THE COURT:  -- the facts and --

MR. BENNARDINI:  What you said --

THE COURT:  -- and the usury rate is --

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1004

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 121 of 976
Case 23-01132-EPK    Doc 370-3    Filed 01/13/26    Page 71 of 140

Page 70

MR. BENNARDINI: What your Honor said, and correctly said was, and you repeated this over and over, you can say it's 24 percent, you can say it's 26 percent, you can't come to the conclusory term usury or loan sharking. That's what your Honor said after a full-blown hearing.

THE COURT: All right.

MR. COHEN: The problem that I have, Judge, is that I have to say what the evidence is going to show, and the evidence very clearly will show --

THE COURT: Let me cut to the chase. You can't say that the defendants are loan sharks. You can't say that the --

MR. COHEN: That he's a criminal.

THE COURT: Or a criminal.

MR. COHEN: Sure.

THE COURT: But you can, I will allow you to say, look, this is what the evidence is going to show, what a certain rate is, and the law says, I will allow you to put in what a usury rate is.

MR. BENNARDINI: Well, then he's instructing the jury, Judge.

MR. COHEN: No, I'm saying --

MR. BENNARDINI: That's for you to do later on if the facts show that 24 percent, 26 percent --

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004    Case 23-01132-EPK    Doc 370-3    Filed 01/13/26    Page 72 of 140    RECEIVED NYSCEF: 01/19/2026

Page 71

THE COURT: And if there's a request made and it's appropriate, and I have to instruct the jury on what is a usury rate, I can do that.

MR. COHEN: Thank you, Judge.

MR. BENNARDINI: Well, just so we don't have to come back again, I submitted an order that -- what you did the last time, your Honor, is you got it up on the screen, I emailed it to your assistant, and you put it in there so we don't have to come back again trying to figure out what the order is, please, sir.

THE COURT: No, I think we know what the order is.

MR. BENNARDINI: So did I -- I knew last time, too.

MR. COHEN: No, I can't call him a criminal, I can't call him a loan shark.

MR. BENNARDINI: I want it in writing, please, not from your mouth.

MR. COHEN: Well, I'm just, I'm asking the Judge to confirm it, I can't call him a criminal yet, in opening, I can't call him a loan shark in opening. I can address it as --

MR. BENNARDINI: You can't call him any of those until the evidence shows it.

MR. COHEN: Right. Yeah, I'll wait until

Page 72

the evidence shows it.

THE COURT: All right.

MR. BENNARDINI: You'll be waiting a while.

THE COURT: So --

MR. COHEN: I don't think so.

THE COURT: -- and I'll allow you to reference what is --

MR. COHEN: Thank you, Judge.

THE COURT: -- a usury rate or not.

MR. COHEN: Thank you, Judge.

THE COURT: All right. I guess what I was trying to stay clear of is name calling in opening statements, before coming sidebar to see whether the evidence is established or not.

MR. BENNARDINI: What are we going to do with the written order?

THE COURT: Do you have one here?

MR. BENNARDINI: I do, and then, again, I uploaded it.

THE COURT: Do you want me to read it in Word and I'll make --

MR. BENNARDINI: Let me get all my papers out of the way.

MR. COHEN: Is it in PDF or is it in Word?

MR. BENNARDINI: My assistant uploaded it in

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1004

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 73

whatever the judicial assistant told her to upload it in.

MR. BRESLIN:  Well, Judge, if you just want to state what your order is, we'll have the court reporter give us a transcript, and you can say, as stated on the record.

MR. BENNARDINI:  Well, that doesn't work. That's what we have here, I have it stated on the record from June 23rd, and now it's different.

Judge, I have a handwritten one in which I changed it to say, in opening.  May I approach?

THE COURT:  Yes.

MR. BENNARDINI:  And this is the order that was circulated.

THE COURT:  I might have to just type it in myself.

MR. COHEN:  I think that's the order I don't like.

THE COURT:  All right.  Motion is granted in part without prejudice.  The FVP plaintiffs are prohibited from using the terms -- all right, instead of using the terms, I'm going to say, from referring to the Farache defendants as being loan sharks --

MR. COHEN:  Or a criminal.

THE COURT:  -- criminals, or engaging in illegal activities.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM       INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004                                   RECEIVED NYSCEF: 01/19/2026

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 125 of 976
Case 23-01132-EPK    Doc 370-3    Filed 01/13/26    Page 75 of 140

MR. BENNARDINI: Thank you, your Honor.

MR. COHEN: But I can use scoundrel. No, just kidding.

MR. BENNARDINI: I was just ignoring you, Mr. Cohen.

MR. COHEN: That's all right.

MR. BRESLIN: Now, your Honor, just to clarify, the evidence -- we expect the evidence to show that they did, in fact, engage in illegal activity.

So, is that, is your order limited to during the course of the trial? We're certainly permitted to introduce evidence and then argue it after the fact, are we not?

THE COURT: Yes.

MR. BENNARDINI: I think I wrote on there in an opening, Judge, until the evidence -- I added that, Jerry.

MR. BRESLIN: So that's in opening. Okay. Thank you.

THE COURT: All right. So it says here, the FVP plaintiffs are prohibited from referring to the Faraches as being loan sharks, criminals, or engaging in illegal activity in opening to describe any loan and business transactions between Auto Wholesale of Boca, LLC and its owners, subject to revisiting after the evidence

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1004
INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 75

has been presented.

MR. BENNARDINI: Thank you, Judge.

MR. BRESLIN: Thank you, Judge.

THE COURT: All right.

MR. BENNARDINI: We did email that to your assistant yesterday, Judge, so she does have it.

THE COURT: Okay. All right.

MR. BRESLIN: Are you ready to take the next matter, your Honor?

THE COURT: All right. The next matter is --

MR. BRESLIN: That's the plaintiff's motion for ruling on basis and scope of expert testimony by plaintiff's expert, Richard Gray. We filed that on July 28th, 2025 and, Judge, just let me explain to you why I filed this motion.

The reason that I filed this motion is because at the last hearing, when we were arguing about the -- we were here on the motion for protective order about Brian Rohl.

Just to give you an understanding of what happened here, the FVP parties hired a company called Fiske & Company, and they're a forensic, they're forensic accountants out of Miami, and they have, I don't know, 10 or 15 different employees, and it's -- and Sheri Fiske is

Page 76

the lead forensic there, and so we retained Fiske to do a forensic analysis of the bank records of the Karma companies, Excell, to review the deal jackets that were supplied to us both by Mr. Farache, he supplied all his deal jackets, he supplied us with his QuickBooks, etc. So Fiske & Company was hired to do the forensic.

Fiske assigned several different employees to do the data entry. So, Judge, when I say data entry, what they did was they had these deal jackets that are thousands and thousands and thousands of pages. So what they did as far as the deal jackets went, is they went in there and they took out the date of the purchase, the purchase price, who it was bought from, and they created a database.

So Mr. Rohl did that. Another woman by the name of Anneliese Scherer did that at Fiske, and other employees at Fiske put together a database, and from that database, that database had, it had information about the cars, when they were bought. We had information from the trustee, because when the trustee came in, the trustee took all the records from Excell and the Karma companies. So we got the financial records from the trustee. So all of that information was put into a database.

At the time, Judge, this was during the bankruptcy court, Brian Rohl was our expert. So at the

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004 RECEIVED NYSCEF: 01/19/2026

Page 77

time that this information was entered into the database, Brian Rohl, who was a Fiske employee, was the expert that was going to testify about that in the bankruptcy court, and what Mr. Rohl did was, he created from that database, he created some charts and summaries, and those summaries were filed, and they were introduced in the bankruptcy court. They were litigated by, and reviewed by the AWB expert in the bankruptcy court, and so what happened was, right before the hearing in March, that Judge Kimball ruled, when he converted it to a Chapter 7, Mr. Rohl left the firm. So Mr. Rohl was no longer with Fiske.

Richard Gray was an employee at Fiske during that time period. So Mr. Gray then became our expert, and when he became our expert, he was with Fiske, but then he left Fiske shortly after we hired him, in March of '23, and then he's been on his own. So he's been our expert since that time.

So, your Honor made a comment at the last hearing which kind of concerned me, because you said that Mr. Gray could not adopt another expert's opinion as his own, and we certainly understand that.

So what Mr. Gray did was he went in and he analyzed the database, all the information that was put into this database, and he came to his own conclusions, and his conclusions mirrored, 99 percent, those

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004    RECEIVED NYSCEF: 01/19/2026

Page 78

conclusions as Mr. Rohl's.  So Mr. Gray has his own opinions.

So when you made a comment at the last hearing, you said that Mr. Gray cannot testify from hearsay, that concerned me, because what Mr. Gray did was he based his opinions on the database that was compiled and put together by other employees at Fiske while he was at Fiske, but now he's no longer at Fiske.  So from that database, he looked at that database and he formed his own conclusions.

So, my concern is, and based on what your Honor's comments were, and based on the response that's been filed by Mr. Bennardini, is that because he looked at that database that was entered by others, that his opinion, based on that database, would be based on hearsay and, therefore, he can't testify to that.  He's formed his own opinions, but he's formed opinions based on data that was entered by subordinates of Fiske.

So I need to know if -- and just for the record, Judge, I mean most of the records are, they're the QuickBooks records that we got from AWB, they're the QuickBooks records that we got, and dealer track records that we got from the trustee.  So most of them are financial records, but aside from the financial records are just, you know, thousands of pages of these deal

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1004

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 79

jackets.

So what I need to know is, experts -- and if you look at the memorandum that I've attached in my motion, experts can rely on hearsay, and they do all the time.

So the question is whether or not Mr. Gray can rely on that database, because experts typically and normally rely on those kind of things.

So I cited two cases which addressed it very specifically. So I need to know that now, because if I have to have Mr. Gray go back and supervise a reevaluation of all that data, that's exactly what we're going to do, and we will get the same people from Fiske, and we'll have them go over everything and check everything under, quote, Mr. Gray's supervision, so then he can issue an opinion based on the database that has been entered.

So, in other words, have the data confirmed under his supervision, because the case law says that subordinates of an expert can do data entry, and they can do any type of work, and an expert can rely on it, and then there's some cases that take it a little bit farther.

So I need to know that, Judge. So I need to know, because just for the record, so the record is absolutely clear, Mr. Gray has come to his own conclusions. He's not based his conclusions or his

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004 RECEIVED NYSCEF: 01/19/2026

Page 80

opinion on any of Mr. Rohl's work, but what he did is he based his opinions on the database that was formed and created by the Fiske employees, one of which was Mr. Rohl.

So what I need for your Honor to decide is whether or not Mr. Gray can opine from that database, and the reason is, is because, A, it's the type of information that experts normally rely on; B, we gave AWB and the Farache defendants all the underlying data, okay? We gave them everything that we put into our work product, and they've had that for years.

And so just to put a cherry on top, Judge, what I did was, last week was, I gave Mr. Bennardini all of the Fiske work product. So, in other words, we gave him all the spreadsheets that the Fiske employees actually put together so they could generate their own reports.

So I've done everything humanly possible to try to permit Mr. Gray to render the opinions that he's rendered, and again I repeat, he's already testified numerous times that he's come to his own conclusions and they're not Mr. Rohl's.

So I need your Honor to determine whether or not he can rely on the database that was created by a company, by other employees at a company he worked for, because it was created at the time he was an employee, but since he has left, he's relying on that database.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004    RECEIVED NYSCEF: 01/19/2026

Page 81

And I can call in Sheri Fiske, I can call in the people that actually did the data entry, and I can substantiate all the data entry, which will of course take time at trial, but this is not the type of thing that I believe should take up trial time, and I think if your Honor rules that we can rely on that data, and base an opinion on it, and particularly because Mr. Bennardini's clients have not only the underlying data, but all the work product data, you know, the actual spreadsheets that were made, then I know how I need to proceed.

But if I have to have it redone, I need to know now, Judge, because it's going to take a couple weeks to actually reevaluate all that data.

THE COURT:  You have summaries, I take it, as well, correct?

MR. BRESLIN:  Yeah, right, right.

So we filed in the bankruptcy court summaries to prove content.

THE COURT:  No, but there's a rule on summaries.

MR. BRESLIN:  Right.  For a summary --

THE COURT:  It says here, when it's not convenient to examine in Court the contents of voluminous writings, recordings, photographs, a party may present in

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004 RECEIVED NYSCEF: 01/19/2026

Page 82

the form of a chart summary or calculation by calling a qualified witness.

MR. BRESLIN:  Right.

THE COURT:  The party intending to use such a summary must give timely written notice of his or her intention to use the summary, proof of which shall be filed with the Court --

MR. BRESLIN:  Right.

THE COURT:  -- and shall make the summary and the originals, or duplicates of the data from which a summary is compiled, available for examination.

MR. BRESLIN:  Right.  We did that over a year ago.

THE COURT:  And so that's all been done?

MR. BRESLIN:  Yeah.

THE COURT:  All right, and then so from the summaries --

MR. BRESLIN:  But what we didn't give them --

THE COURT:  -- from that database, then is that what -- now Mr. Gray is going to be testifying based on those summaries, his opinions?

MR. BRESLIN:  Well, his opinion is based on the data.  The summary is just a visual, a visual view of the data.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004                                         RECEIVED NYSCEF: 01/19/2026

Page 83

THE COURT:  Okay.

MR. BRESLIN:  What the data shows, and that's where we get back to the whole usury argument, because what Mr. Zankl testified to repeatedly in deposition is that he had a deal with Mr. Farache where he was paying him 30 percent on his money, and he was doing that for years, and years, and years, and so Mr. Farache -- and it wasn't just Mr. Farache, it was numerous people. That was the deal.  Mr. Zankl was paying 30 percent, he was paying usurious interest rates to a lot of different lenders.

So what the analysis has shown is that, A, because Mr. Farache has testified that he was in the business of buying and selling cars.  The evidence is going to show that he didn't buy and sell any cars, but the evidence is going to show that he was getting paid a lot of money, but he was getting paid on his loan, he was getting paid the VIG, and the VIG was over 30 percent, and this went on for years.

So what the experts have done is they've looked at the books and records, the bank records, they've analyzed the different bank records, and they've looked at the deal jackets and, you know, as far as the deal jackets go, the deal jackets are just -- you know, on their face are just, you know, fraudulent, which is neither here nor

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004                             RECEIVED NYSCEF: 01/19/2026

Page 84

there, but the long and short of it is, Mr. Gray is going to opine that, A, that Mr. Farache was not in the business of buying and selling cars, the same opinion he gave in the bankruptcy court, and that, B, he's going to testify that he's calculated the interest rate and it was usurious, it was very high.  So that's our evidence, but -- and we don't need to go there.

I just need your Honor to narrowly tell me, can Richard Gray rely on the data that was entered by Fiske & Company, that has been supplied to the other side, not only the raw data, but the cumulative and work product data, and can he testify about that?

Because if he can't, then I'm going to have to have it redone.  So that's the legal question.

Thank you, Judge.

THE COURT:  All right.  Response?

MR. BENNARDINI:  Yes, sir.  Thank you.  Good afternoon again, your Honor.

Your Honor, an expert must have a formative role with respect to the formation of his or her expert opinion, otherwise it's not that expert's opinion.  The expert opinion that they want to present to this jury is of Mr. Brian Rohl.  It is not of Mr. Gray.

I have Fiske time entries that Mr. Breslin just told you about.  They're marked confidential, so I

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004    RECEIVED NYSCEF: 01/19/2026

Page 85

didn't file them in the Court record, but they're going to be in the Court record because these are the same -- the jury is going to see these because they're the same fees that they're trying to recover under the Wrongful Act Doctrine, which is the doctrine where if my clients cause them to go into bankruptcy court to protect their rights, then they get fees and costs.  It's an exception to the American rule.  So they're going to have to put these into evidence.

And, Judge, when you look, and I have copies, and I'm happy to give the Court one, there is not a single data entry, not a single time entry or billing entry in this document, and you heard him say Mr. Rohl did this, not a single entry by Mr. Gray, not a single one.

I also have Mr. Gray's billing records when he left -- do you have a question?

THE COURT:  I'm not sure where you're going with that.

MR. BENNARDINI:  Where I'm going with it is this, an expert cannot rely on the work -- this is what you said on --

THE COURT:  Experts are not allowed to come up on the stand and say, Mr. Rohl went out and did all this and it was Mr. Rohl's opinion --

MR. BENNARDINI:  Right.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1004    Case 23-01132-EPK    Doc 370-3    Filed 01/13/26    Page 87 of 140    RECEIVED NYSCEF: 01/19/2026

Page 86

THE COURT:  -- because that would be hearsay.

MR. BENNARDINI:  It's not just hearsay, it's called bolstering.

THE COURT:  Okay.  It would be -- but I don't think that -- he's not going to do that, that's not what he -- so what he's going to do is -- I agree.  So if that's the motion in limine --

MR. BENNARDINI:  No, it's not, it's not the --

THE COURT:  So Mr. Gray is not going to say what Mr. Rohl said, correct?

MR. BENNARDINI:  Correct.

Well, actually, this whole thing is premature anyway.  It should be a motion in limine, and they are due on Friday by the trial scheduling order. So that's really -- after I brief all that, that's really when this should be heard.  It's sort of a backdoor way to get around a motion in limine that's presently due, but if I may continue?

There is -- Mr. Rohl didn't do the work.

THE COURT:  I thought this was a motion in limine.

MR. BENNARDINI:  No, it's because your Honor said on June the -- on July the 22nd, so, Mr. Breslin, to

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004   RECEIVED NYSCEF: 01/19/2026

Page 87

the extent that you have this third individual now as your new expert, Mr. Gray, they cannot rely on any work whatsoever that Mr. Rohl did.  That's correct, what your Honor said.

THE COURT:  They can rely on it, they just can't repeat it.  They can't --

MR. BENNARDINI:  No, but what you said is right.  He can't rely on Mr. Rohl's work.  He has to -- here's what the law is, if I may.  The case law is this, when testifying at trial, experts may rely on documents and data collected and assembled by their subordinates, so long as the opinion is otherwise admissible under 90.704.

THE COURT:  Okay.

MR. BENNARDINI:  Mr. Gray was not the subordinate of Mr. Rohl.  It was Ms. Scherer who -- let me start that over.  Mr. Gray was not the supervisor of Mr. Rohl, that was Ms. Scherer.  There's not a single time entry here about Mr. Gray giving Mr. Rohl guidance as to what Mr. Gray needs to do his report.

Absent something like that, experts cannot rely on the investigation, review, an analysis of other experts.

As your Honor said --

THE COURT:  Let me just clarify. Mr. Breslin, you're not going to even reference Mr. Rohl,

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 139 of 976

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004    Case 23-01132-EPK    Doc 370-3    Filed 01/13/26    Page 89 of 140    RECEIVED NYSCEF: 01/19/2026

are you?

MR. BRESLIN:  No.

THE COURT:  Okay.  So the only --

MR. BENNARDINI:  It doesn't matter --

THE COURT:  -- way you would reference the subordinates underneath, is that they input all the data into the database.

MR. BRESLIN:  The only reason I would ever need --

THE COURT:  Well, let me just ask Mr. Bennardini, what would be the objection to --

MR. BENNARDINI:  Because Mr. -- and this is what the case law says, in addition, and I got Marks versus Marks, 576 So.2d 859, 3rd DCA, 1991, Linn versus Fossum, M.D., and these are med-mal cases, 946 So.2d 1032-1039, Florida Supreme Court, 2006, and Gutierrez, G-U-T-I-E-R-R-E-Z v Vargas --

THE COURT:  Sometimes people get caught up too much in just citing a case, or a case says something, but it doesn't matter what a case says.  What matters is the facts of this case.

MR. BENNARDINI:  Well, the facts of this case --

THE COURT:  Yeah, and then --

MR. BENNARDINI:  Agreed, agreed.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004    Case 23-01132-EPK    Doc 370-3    Filed 01/13/26    Page 90 of 140    RECEIVED NYSCEF: 01/19/2026

Page 89

THE COURT:    -- there's a case interpreting it, but (inaudible) --

MR. BENNARDINI:    I'm trying to tell you what the facts --

THE COURT:    -- what the facts of this case are, and then we'll look at what the rules are, and then you have the cases that interpret it.

MR. BENNARDINI:    Right.

THE COURT:    So what are the facts of this case?    What are you trying to keep out?    Because it sounds like what you're trying to keep out, they agree.    They're not going to mention --

MR. BENNARDINI:    No.

THE COURT:    Mr. Gray is not going to get on the stand and say that Mr. Rohl did this, and based on that -- they're not even going to reference Mr. Rohl, right?

MR. BENNARDINI:    Mr. Gray is Mr. Ipsodixit. He did not do any of his own work.    He did not -- he has to -- to do his opinion, to have an independent opinion, Mr. Gray has to -- it's okay for Mr. Rohl to gather, analyze, investigate, and come up with data, but Mr. Gray himself can't just buy off on Mr. Rohl's work.

Mr. Gray doesn't have to gather, he doesn't have to create the data, but he has to look at it, and

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004    Case 23-01132-EPK    Doc 370-3    Filed 01/13/26    Page 91 of 140    RECEIVED NYSCEF: 01/19/2026

Page 90

there's not a single entry in these billing records --

THE COURT:  It's not just the weight of the evidence.  If he didn't look at it, yeah, then he may be out, but they're representing he did.

MR. BENNARDINI:  Well, I read his transcript, all three of them, and there's not a single time where he said he analyzed Mr. Rohl's data.  He just simply did not do it.

THE COURT:  Not Mr. Rohl's data.  He just analyzed the data.

MR. BENNARDINI:  It's Mr. --

THE COURT:  This is the data, this is the --

MR. BENNARDINI:  Mr. Rohl was the expert in the bankruptcy proceedings, or he was going to be.  Mr. Rohl prepared the expert report on which Mr. Gray is relying, not Mr. Gray.  Mr. Rohl prepared those schedules that your Honor talked about.  In fact, those schedules are not, those are not summaries.  Those are demonstratives of what the conclusion by Mr. Rohl was as to what the --

THE COURT:  I'd have to see it.  Again, this is where I'm at a disadvantage.

MR. BENNARDINI:  Well, that's why we need to --

THE COURT:  I mean, you're asking me to rule

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004 RECEIVED NYSCEF: 01/19/2026

Page 91

in a vacuum here, but I think what was represented by Mr. Breslin is that there was -- there's all these jackets, the information was taken and put into a database, and then it was summarized, and then you have the underlying, and that Mr. Gray has now reviewed those summaries and the underlying data, and now is going to give an opinion.

MR. BENNARDINI: Respectfully, here's what the Court is missing --

MR. BRESLIN: Judge, no, almost.

MR. BENNARDINI: Here is what the Court is missing --

THE COURT: Okay. What am I missing?

MR. BENNARDINI: It would be okay with what your Honor just said if Mr. Gray was the supervisor of Mr. Rohl at Fiske at the time and said, Mr. Rohl, I'm going to be doing this opinion. Here is my direction and guidance as to what I want you to review, gather, and analyze so I can form my own independent opinion.

If you look at these billing records again, at Fiske, and Mr. Breslin just told you that's where all the work was, that never happened. Mr. Gray just happened to work there, and when --

THE COURT: All right. I understand your argument. All right. So --

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1004

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 92

MR. BRESLIN:  Judge, very briefly, please.

THE COURT:  So fill in the blanks, Mr. Breslin.

MR. BRESLIN:  Judge, just so you're not confused, the data was entered by Fiske, various and numerous employees at Fiske, It was Brian Rohl and Anneliese Scherer.

THE COURT:  So Rohl was not the data entry person?

MR. BRESLIN:  Pardon me?

THE COURT:  Mr. Rohl --

MR. BRESLIN:  He was one of them.

THE COURT:  One of the data entry people?

MR. BRESLIN:  He was one of the data entry people.

THE COURT:  Okay.

MR. BRESLIN:  But now there's a database. From that database, Mr. Rohl formed an opinion.  From that same database, Mr. Gray has now formed an opinion. Mr. Rohl created charts from that database.  Mr. Gray formed an opinion based on that database.

So the only issue before your Honor is, can Mr. Gray form his opinion based on the database that was put together by the Fiske employees, because he was an employee there at the time, but he didn't supervise.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1004

Page 93

THE COURT:  These other charts that Mr. Rohl prepared, he's not using those?

MR. BRESLIN:  Judge, we filed those, and Mr. Gray --

THE COURT:  Are they summaries or are they --

MR. BRESLIN:  Right, right.  Judge, the summaries are the summaries.  The summaries are nothing more -- the charts are nothing more than visual depictions of what's in the database.

So Mr. Gray has looked at the summaries, looked at the underlying data, and he says, yes, those summaries are accurate, and now this is my opinion.

He's not basing his opinion on the summaries.  He's basing his opinion on the underlying data, but he's also opining that the summaries are accurate.

THE COURT:  I'm not sure what -- all right.  The opinion is that the effective interest rate is X?

MR. BRESLIN:  Right, right, that's one of them.

What he did was he analyzed the income, the money in and money out from the Karma companies, the money in and money out from AWB, the money in and money out from Excell, and he's analyzed all of those, and he's compared

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004 RECEIVED NYSCEF: 01/19/2026

Page 94

those to the AWB records where they say they bought and sold cars.

So they said -- just to give you just a taste of it, AWB, in the year 2021, and that's going to be the focus year, they said that they bought and sold over $30 million worth of cars, and they didn't. They didn't -- you know, they didn't buy and sell any cars, much less $30 million worth of cars.

What it was is there was just a lot of paper transactions to explain the money back and forth, because what happened was there was this loan out there, and there was money going in, money coming out, money going in, money coming out, and at the end of the month, every month, and Scott Zankl has testified to it numerous times, is it had to be 30 percent, that was the thing.

So all of this, all the paperwork were fraudulently and falsely created to cover up this usurious lending scheme, and interestingly, Mr. Bennardini says there's no allegation of usury in the complaint. I think he needs to re-read the complaint. It's chock full of references to usury.

So, but, Judge, I just need a decision. Can Mr. Gray form his opinion on the database that was entered by Fiske employees while he was an employee there, even though he's no longer an employee at Fiske? That's the

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004    RECEIVED NYSCEF: 01/19/2026

Page 95

legal question, because if you say no, then I'm simply going to have it redone, because we've spent way too much money and wasted too much time for him not to be able to give his opinion, because he's already opined from the database. So I just have to reconfirm the database.

THE COURT: All right.

MR. BENNARDINI: Your Honor, I have the Fiske records here, and this is the entry, August 8th, 20 --

(Multiple people speaking.)

MR. BRESLIN: He doesn't have all the Fiske records there --

THE COURT: Okay.

MR. BRESLIN: -- because what he doesn't have is the retainer agreement with Mr. Gray, where he was paid 7,500, and it was to analyze the data. So the first 7,500 in his retainer agreement was to analyze the data.

THE COURT: He went and he actually analyzed the data?

MR. BRESLIN: Yes, yes.

MR. BENNARDINI: I have those billing records as well and it's the same thing.

MR. BRESLIN: And that's cross-examination.

THE COURT: Hang on, hang on. Okay.

MR. BENNARDINI: I have the Gray billing

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004 Case 23-01132-EPK Doc 370-3 Filed 01/13/26 Page 97 of 140 RECEIVED NYSCEF: 01/19/2026

Page 96

records as well. What happened was --

THE COURT: You don't want him looking at the work that Mr. Rohl did and saying it's my opinion that this --

MR. BENNARDINI: Well, let me make it clear. It's perfectly obvious under the law there cannot be any bolstering. In other words, it's not just Mr. Rohl. That's --

THE COURT: He's not even mentioned Mr. Rohl.

MR. MEYER: As Mr. Breslin told you earlier, there were four experts they had to do this, Mr. Glick, Mr. Barbee, Mr. Rohl, and Mr. Gray. None of those --

THE COURT: Wait a second. If he testifies, look, this -- the information from these jackets were put into this database, I analyzed the database, and this is my opinion.

MR. BENNARDINI: He needs to --

THE COURT: There are no issues, right?

MR. BENNARDINI: Yes issues.

THE COURT: What's the issues?

MR. BENNARDINI: He needs -- he can't -- because he was not Mr. Rohl's supervisor --

THE COURT: He's not even going to mention Mr. Rohl.

Page 97

MR. BENNARDINI:  You've got to let me finish, please, sir.

THE COURT:  Okay.

MR. BENNARDINI:  Because he was not Mr. Rohl's supervisor, Mr. Rohl did not have the direction from Mr. Gray to look for what Mr. Gray needed to render his opinions, that's what the case law says.  You can have a subordinate do it, but you've got to give them appropriate direction.  Mr. Gray, to this day, has not laid eyes on deal jackets, he's not laid eyes on dealer track records, there's no evidence.  I've looked at Mr. Gray's billing records, Gray evaluations --

MR. BRESLIN:  He's deposed him twice, he's never even asked him that.

THE COURT:  All right.  If all he's doing is looking at the database, I'm going to allow it.

MR. BRESLIN:  Thank you, Judge.

THE COURT:  But he has to establish that he's looked at the database and --

MR. BRESLIN:  Of course.

THE COURT:  Okay.

MR. BRESLIN:  Of course.

THE COURT:  All right, and he's not allowed to say that Mr. Rohl did this --

MR. BRESLIN:  No, no.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004
RECEIVED NYSCEF: 01/19/2026

THE COURT: -- and I agree with what Mr. Rohl said.

MR. BRESLIN: Judge, I understand the rules and the law.

MR. BENNARDINI: Also, if I would, Mr. Glick and Mr. Barbee, because they mentioned them in the motion.

THE COURT: Yes, he can't, he's not going to reference any other experts and what they've done.

MR. BRESLIN: No, no, of course not.

THE COURT: It's just that these people put together a database, and then I reviewed the database and --

MR. BRESLIN: Thank you, Judge.

THE COURT: All right. So, I don't know if I need to do a jury instruction on ownership interest today. That's what you're going to argue, right?

MR. BUSCHEL: Yes, Judge. I can give you the proposed jury instruction. I gave it to you, and I also -- I mean, I could quote the Court, give a 4th DCA case, and then give a special proposed jury instruction. I think it's -- I don't think we have to belabor the point, but I'll quote the Court from the last hearing on Page 99. I do think there has been a finding, though, that AWB does not have an ownership interest. The Court also said, all right, that's based on Judge Kimball's

Page 99

ruling on May 1st as well as the June order, so we are not going to have a separate trial on whether AWB had an ownership interest in those vehicles. That's already been determined by the bankruptcy court.

And so the proposed instruction, I'll spare the Court all the different res judicata and judicial estoppel, there was a settlement agreement with the Chapter 7 Trustee, but the special instruction would be this, members of the jury, you're instructed as a matter of law that Auto Wholesale of Boca, LLC, AWB, did not, and never had any ownership interest, lien, security interest, property interest, or any other legal claim of any kind in the vehicles that are the subject of this lawsuit.

AWB was never a good-faith purchaser or buyer in the ordinary course of business with respect to any of the vehicles at issue in this case.

That's all we're asking for. I think that would eliminate a lot of their worries about prejudice, and trying to put in orders from the bankruptcy court. I think once we have this finding, this instruction takes care of that issue.

THE COURT: All right. Is there an objection?

MR. BENNARDINI: Yes, your Honor.

That is --

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1004
INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 100

THE COURT:  How can I give --

MR. BENNARDINI:  Right.

THE COURT:  How can I comment on the facts? All I'm doing is setting myself up to be reversed.

MR. BUSCHEL:  You're not commenting on the facts.  You're making a conclusion of law that AWB does not have any ownership interest.

THE COURT:  I'd be commenting on the facts, so it is res judicata or --

MR. BUSCHEL:  So --

THE COURT:  -- judicial estoppel issue.

MR. BUSCHEL:  Right, and --

THE COURT:  -- I've already ruled on that.

MR. BENNARDINI:  Yes, you have.

THE COURT:  And the Faraches were not --

MR. BUSCHEL:  Not the Faraches, AWB.  I just quoted the court --

THE COURT:  Yes.

MR. BUSCHEL:  -- that A -- if the Faraches want to come in here and raise their hand and say, oh, we were the real owners of it --

THE COURT:  I thought they were going to get up and raise their right hand and say we thought we were the real owners.

MR. BENNARDINI:  They're going to raise

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004    RECEIVED NYSCEF: 01/19/2026

Page 101

their right hand and say AWB was the owners.

THE WITNESS:  Well --

MR. BUSCHEL:  But they can't --

(Multiple people speaking.)

MR. BENNARDINI:  Right, exactly, exactly.

MR. BUSCHEL:  But they can't say that.

MR. BENNARDINI:  Yes, they can.

MR. BUSCHEL:  No, because we -- there's a court order from the bankruptcy court, if I may, since I thought we had this ironed out, because the court said that is, and I'll read it from the -- it's Docket Entry 694 from the bankruptcy court, it says, the proceeds of the auction, net, buyer's premium, expenses, carve-outs of the net proceeds shall be held pending adjudication by a court of competent jurisdiction as to the validity, priority, and extent of property interests asserted in the net proceeds or consensual resolution between and among the parties whom have appeared in the main bankruptcy case or the adversary proceedings and assert an interest therein.  Only, one, parties to the adversary proceeding complaint.  Two, the parties have appeared in the main bankruptcy case and asserted an interest in the vehicles may make a claim in the net proceeds.

Well, the Faraches didn't do that, and AWB certainly can't do that based upon Paragraph 9 of the

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004
RECEIVED NYSCEF: 01/19/2026

Page 102

bankruptcy order.

THE COURT:  Okay.

MR. BUSCHEL:  The trustee --

THE COURT:  I'm going to take that -- I'm going defer on that.  You're going to have to give me case law that says that this Court, without a stipulation, that this court can tell the jury specific factual findings, because that's where courts always get in trouble by doing that, when a court comments on the evidence or things of that nature --

MR. BUSCHEL:  But they don't want us -- we shouldn't have to prove --

THE COURT:  If there is a summary judgment as to that or something --

MR. BUSCHEL:  Well, there was, and I think we're now at the point of that, but let me read --

THE COURT:  The summary judgment was against the Faraches.

MR. BENNARDINI:  Yes.

MR. BRESLIN:  Right, and, Judge, what you ruled was, you said as far as AWB goes, I'll grant summary judgment on that, but as far as the Faraches go --

THE COURT:  Okay.  So --

MR. BRESLIN:  -- they may come in and claim an ownership issue.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM          INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004                                       RECEIVED NYSCEF: 01/19/2026

Page 103

So you've already ruled, and you've already decided very clearly that they can't relitigate AWB ownership.

So we're simply saying, you've ruled that they can't come in and try to prove that AWB owned these cars, so we want a jury instruction to that effect.

THE COURT: All right. I mean, they're going to have to think about that. We'll do that --

MR. BUSCHEL: Judge, let me --

THE COURT: -- at the time --

MR. BUSCHEL: Let me give you one case, if you want that's on point from the 4th District Court of Appeal, it's Southeast Bank versus Equitec Leasing, 446 So.2d 1155, Florida, 4th DCA, I'll read one sentence from it.

THE COURT: Gosh, that has to be a long time ago.

MR. BUSCHEL: It was, but it says, we have thoroughly reviewed the matter and hold Southeast Bank collaterally estopped from relitigating the ownership in the state court herein, and it was an appeal from the -- I want to, before I -- it was a federal bankruptcy case.

THE COURT: I think they were the -- they were the parties, though?

MR. BUSCHEL: It was a federal bankruptcy

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004    Case 23-01132-EPK    Doc 370-3    Filed 01/13/26    Page 105 of 140    RECEIVED NYSCEF: 01/19/2026

Page 104

case, but it's saying, the summary judgment was granted on the grounds that the ownership of the property being foreclosed have been determined in a federal bankruptcy proceeding.

So, I think the Court -- it is still good law.  It cites to other law in the 4th District, and it says if something has been determined in the bankruptcy proceeding, this Court can -- this Court should accept it, and certainly, particularly when the court, a bankruptcy court in -- it said, they are not allowed to go to another court and relitigate it.  That's precisely what the Faraches are asking, and AWB is asking to do, is, well, you can't put in the court order -- I mean, you can't give a jury instruction, and we want to raise our hand and say we thought AWB --

THE COURT:  Let me look at that.  I'll look at it.

MR. BUSCHEL:  Okay.

MR. BENNARDINI:  Can I briefly respond?  You did rule on this already.  This was before the Court on May 1st, and I have a copy of your Honor's order if you would like it.

What it says is, genuine issues of material fact remain for determination by the trier of fact regarding these claims, that was conversion of tortious

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004    RECEIVED NYSCEF: 01/19/2026

Page 105

interference, and because Moshe and Lisa Farache were not parties to the bankruptcy proceeding, res judicata and collateral estoppel do not apply to them.

However, as to AWB, as a party to the bankruptcy proceeding, collateral estoppel bars AWB from claiming an ownership interest in the vehicles.

THE COURT: But they're not a party in this case.

MR. BENNARDINI: They're not a party in this case, that's right.

And just on July 28th --

MR. BUSCHEL: Who's not a party to this case?

MR. BENNARDINI: AWB.

MR. BRESLIN: AWB is --

MR. BUSCHEL: Yes, of course --

(Multiple people speaking.)

MR. BENNARDINI: There's no claim against them. I'm not defending AWB. They're not getting a judgment against AWB. There's no damages claim against AWB.

MR. BUSCHEL: Judge, I think --

MR. BRESLIN: We've already amended the complaint to clarify that issue, because he keeps talking about a nominal defendant.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004 RECEIVED NYSCEF: 01/19/2026

Page 106

THE COURT: They will be a defendant on the verdict form?

MR. BRESLIN: Absolutely.

MR. BENNARDINI: No, 100 percent, no. No, they won't, Judge. There's no damages claim against AWB.

MR. BUSCHEL: Judge, they are named as a party because we're piercing the --

THE COURT: It sounds like that's a different issue.

MR. BENNARDINI: It is.

THE COURT: So if they are a party, then I could instruct them.

MR. BENNARDINI: 100 percent.

MR. BUSCHEL: But, Judge, if I may --

MR. BRESLIN: Judge, just to clarify --

COURT REPORTER: Judge, Judge, I can only take one at a time.

THE COURT: All right.

MR. BRESLIN: Who would you like to hear from, your Honor?

THE COURT: Mr. Bennardini, go ahead and finish.

MR. BENNARDINI: Thank you, sir.

THE COURT: You've got five minutes --

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004   RECEIVED NYSCEF: 01/19/2026

Page 107

MR. BENNARDINI:  Thank you, sir.

THE COURT:  -- and then we're done.

MR. BENNARDINI:  Thank you, sir.

The stem of all this was this July -- June 16th, 2023 language in an order by Judge Kimball, and that is Paragraph 9 they rely on, where Judge Kimball says, the trustee, as the duly appointed Chapter 7 Trustee of the bankruptcy estate of Auto Wholesale of Boca hereby waives all liens and interest, including any lien and ownership interest in the vehicle -- vehicles, waives.  There was no adjudication.  We went through all this at prior hearings.

In fact, your Honor changed Judge --

THE COURT:  Gosh, every time I come up, we have the same arguments over and over again.  Enough. I'll address this at trial.  I'll have a much better understanding when we get to trial.

You all are, you're coming in here with these little tiny issues and splitting hairs, and asking me to rule on evidentiary issues without even understanding the context.

I mean, you know, we're having a charging conference on a jury instruction when we haven't even heard opening statements yet, and so -- on a fact that you want me to instruct the jury on, I'm not ready to do that.

MR. BENNARDINI:  Thank you, Judge.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1004

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

Page 108

THE COURT:  All right, and so in any event, I don't think there's anything in dispute.  There's a bankruptcy that addressed something for what I thought was a non-party, but I guess they are going to be added and they will be on the verdict form.  We'll address it, I guess, when we get to trial.

MR. BUSCHEL:  Yes, we will.

THE COURT:  All right.  Now let me handle the motion for summary judgment.  All right.  This is Franklin versus --

MR. COHEN:  Judge, may we be excused?

THE COURT:  You are excused.

MR. COHEN:  Thank you, Judge.

THE COURT:  Nobody's going to require you to be here.

MR. COHEN:  What?

THE COURT:  Nobody is requiring you to stay.

MR. COHEN:  All right.  All right.  Thanks, Judge.

THE COURT:  All right.

MR. BUSCHEL:  Nice to see you, Judge.

MR. LANGLEY:  Judge, before we begin, I noticed this morning that my response to Mr. Dorsey's motion didn't make it -- doesn't show up on the docket.  I wasn't sure if you had it.  I have an extra copy, if you

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004
RECEIVED NYSCEF: 01/19/2026

Case 23-01132-EPK   Doc 383-1   Filed 01/22/26   Page 160 of 976
Case 23-01132-EPK   Doc 370-3   Filed 01/13/26   Page 110 of 140

don't.

THE COURT:  All right, it was in the -- I've read your response.  You're saying that it's on appeal, and there's a motion for a new trial.

MR. LANGLEY:  Yes, and for some reason, I looked this morning, and it's not showing on the docket, even though it was filed a week ago.  If you have it, that's fine.

THE COURT:  Yeah.

MR. DORSEY:  Did your Honor want to take a break before we begin, or --

THE COURT:  No.

MR. DORSEY:  -- do you want to just soldier on?

THE COURT:  Actually, let me do this, let me take a five minute break.

MR. DORSEY:  Understood.

THE COURT:  Or a 10 minute, to give the court reporter a break.

MR. LANGLEY:  Okay.

MR. MEYER:  Your Honor, when you come back, it's Steven Meyer, I'm here, we have a 1:30 case, which I think is very short, or a 1:30 motion, Mr. Breslin, and I believe it's quite short.

THE COURT:  Which one was that?  I was

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1004

Page 110

not --

MR. MEYER: I represent MMS Ultimate Services. Mr. Breslin filed a motion for default.

THE COURT: All right. Mr. Breslin.

MR. BRESLIN: Yeah, I did, Judge. They never answered the complaint. They answered it the other day.

Prior to them answering it -- they answered it just the other day, well over a year late, after the court ordered an answer, after the motion to dismiss was denied. It was just ignored. They filed a motion for summary judgment a couple of weeks ago, and now -- and that was without any answer being filed. They made a motion for default, and to strike their motion for summary judgment. So they just filed an answer and numerous affirmative defenses that I'll be moving to strike.

So what I'd like your Honor to do, I know you can't enter a default because he, in fact, did answer, even though it's a year late under the case law, but I would like your Honor to strike the motion for summary judgment because it was premature, and he filed it before he answered, and he raised affirmative defenses and an answer that are relevant to the summary judgment.

THE COURT: My understanding is that the case law allows you to file a motion for summary judgment.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004 RECEIVED NYSCEF: 01/19/2026

Page 111

I think the case law allows you to file a motion for summary judgment, right, even instead of an answer?

MR. BRESLIN: Yeah, it does.

THE COURT: So I don't know if there's a basis to strike it.

MR. BRESLIN: Well, you know, it's just, you know, it's an equitable argument, Judge. It's just, you know -- you know, just ignoring court orders, we have a trial in a month, and he files an answer and affirmative defenses, you know, a month before the trial, while a motion for summary judgment is pending.

THE COURT: Well, I hate to say this --

MR. BRESLIN: It's just --

THE COURT: -- but you probably shouldn't have waited until now to file a motion for default either, right?

MR. BRESLIN: I'm sorry?

THE COURT: You probably shouldn't have waited until this late to file a motion for default and have it heard, I guess.

MR. BRESLIN: That's a very good point, Judge, because I assume that would have triggered it even earlier, but I just noticed it.

THE COURT: No, if you would have done it a year ago, then maybe you would have gotten an answer a

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004                                                RECEIVED NYSCEF: 01/19/2026

Page 112

year ago.

MR. BRESLIN: Yeah, you're right.

THE COURT: So, all right, the motion for default is denied.

MR. BRESLIN: Thank you.

THE COURT: And then the motion to strike is denied, but we need to get those things all heard right away, Mr. Meyer.

See, you've been just retained recently?

MR. MEYER: No, your Honor, I've been in the case for a while, but there's a very narrow, little limited issue as to this one defendant.

THE COURT: All right. Are you part of either of the trials? Which trial is MMS --

MR. BRESLIN: The Farache trial.

THE COURT: Which one, the Farache?

MR. BRESLIN: The Farache, trial two.

THE COURT: All right. I don't know if there's any way you can carve them out or resolve with them or anything.

MR. BRESLIN: No, Judge, there is not, I'm sorry.

THE COURT: All right. You've got to be ready to go, Mr. Meyer. I guess that --

MR. MEYER: We'll look forward to it,

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1004
INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 113

your Honor. I would say that probably the last person you want to see in the courtroom is my client with respect to these issues, but --

THE COURT: All right.

MR. MEYER: I'm the plaintiff, but --

THE COURT: All right. So motion for default, motion to strike is denied.

MR. BRESLIN: Judge, I don't understand what he meant by that comment.

THE COURT: I have no idea either. So I'm not going to ask any follow-up, because it doesn't matter. You know, why they would want to be there or not be there, unless there's a threat. I don't think there's a threat, right, Mr. Meyer?

MR. MEYER: It's not a threat. I'm saying --

MR. BRESLIN: Just making sure.

MR. MEYER: All right. I'm not here to argue with counsel. I mean, there are just no facts whatsoever that have anything to do with my client. I think that --

THE COURT: That's what the trial is for, so we're not going to do that today. All right, but the motion for default is denied.

MR. MEYER: Thank you. Have a good day,

Page 114

your Honor.   Thank you, Counsel.

THE COURT:  All right.  I'll be right back, and then we'll do the Franklin versus Lubin.

MR. DORSEY:  Thank you, Judge.

(A recess was taken, after which the following proceedings were had:)

THE COURT:  All right.  All set?

MR. DORSEY:  All set.  Everyone left, Judge, so we started thinking maybe you took off, too.

THE COURT:  I thought about it.  No, I'm just kidding.

(Laughter.)

THE COURT:  All right.  Whenever you take a break, you have all this stuff waiting for you in the office, and, yeah, I ended up getting sidetracked a little bit, but we're back on the record in CACE-22-5125, FVP versus Zankl, et al.  So all we have left are the Franklin parties and Lubin.

MR. DORSEY:  Correct.

THE COURT:  So this is Franklin's motion for some rejection, correct?

MR. DORSEY:  Yes, sir.

My personal promise to you is this presentation will be shorter than the motions in limine you heard, even though it's potentially case dispositive.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004    RECEIVED NYSCEF: 01/19/2026

Page 115

So I think it's --

THE COURT:  Be careful what you represent here.

MR. DORSEY:  Well, depending on what Mr. Langley has in mind, maybe not, but I'll try to keep my presentation brief.

THE COURT:  All right.

MR. DORSEY:  As a very, very brief kind of 10,000-foot background, because most of your experience in this case has been dealing with the Farache parties and the FVP parties, my clients, the Franklin parties, are commercial lenders.  Basically, their business model is they find companies in business who are suffocating under the weight of usurious loans, merchant cash advances. Franklin locates those companies and essentially flushes out the bad debt.  It buys off the bad debt, and it refinances it with legal debt, allows the company to survive.  Franklin makes a profit.  Everybody wins.

Franklin became involved in this case when it was approached by entities your Honor is familiar with, Excell and the Karma entities in the year 2021.  They were running automobile dealerships, they were drowning under millions of dollars of MCA debt, and so they approached Franklin, based on a common contact, and said, hey, what can you do about a refi?  So Franklin started, you know,

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004    RECEIVED NYSCEF: 01/19/2026

Page 116

talking to Scott Zankl, and otherwise investigating the situation.

At the time Franklin was investigating, Excell was indebted to an MCA entity named Spin Capital, LLC.  This is Mr. Lubin's entity you heard about earlier.

Franklin, as a condition precedent to closing on any kind of refinance to Excell, Franklin needed an assurance from Spin that it was acquiring all the Spin debt.  Franklin wouldn't want to refinance, have a borrower who's still being bled dry by an MCA out the back door.

So Spin, in November of 2021, executed an assignment to Franklin where it represented, we are -- here are our MCA contracts, the total indebtedness is, I think it was a nominal amount, either zero or a dollar, we hereby assign it to you, Franklin.  Enjoy your refinance.

That statement turned out not to be true. It later came out that despite Spin's representations to Franklin in the assignment, that it had secretly spun off some of its debt to another entity, Hi Bar Capital, who your Honor is also familiar with, and after Franklin refinanced the loan, to what it thought were, you know, healthy businesses, who it was going to pull through, these businesses paid, I believe the figures are either 1.2 or 1.8, it's in my papers, they paid seven figures to

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1004
INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 117

Hi Bar based off the debt that Spin assigned.

Franklin then sued Spin in Michigan State Court for breach of contract.  This lawsuit was commenced in 2022, Spin at all times was represented by counsel in that lawsuit, and in November of 2024, there was a two-day trial.  The principal witness for Franklin was Scott Zankl, and Mr. Lubin, who is the sole owner of Spin, also appeared at the trial and testified on behalf of Spin.

Following that extensive two-day trial in the spring of this year, the Michigan state court issued extensive findings of fact, which we'll get to in a minute, which basically said Lubin knowingly lied about the transaction.  Franklin relied on that false representation to its detriment, these are detailed in the findings of fact, which are attached to my motion, and about a month or two after the findings of fact were issued, a final judgment was issued closing the case.

So basically, Judge, I have a bunch of -- my clients, the Franklin parties, have numerous tort claims they're alleging against Mr. Lubin in this case, and we'll get to those in a minute, fraud in the inducement, tortious interference with business, what have you.

We're going to walk through it. Essentially, everything that we're alleging against

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1004

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 118

Mr. Lubin, and that potentially is up for trial in September, the Michigan state court has already dealt with.  The Michigan state court had a two-day trial, dealt with all these issues.

So basically the summary judgment motion, I don't have a binder of exhibits, I have a two-page judgment with some findings of fact we're going to walk through, I have a final order that adjudicates numerous facts.  It's -- I guess it's in a situation where both parties had ample opportunity to litigate these factual findings, and there's mutuality of estoppel.  The movant today is Franklin Capital Funding, LLC, that was the plaintiff in the state court, and I'm seeking to collaterally estop Josh Lubin, who is the sole owner and person who controls Spin, and both Michigan -- Michigan law applies, but I cite both Michigan and Florida cases. They state that if you're the sole owner --

THE COURT:  Why do you need a new case?  It would be different if it was Lubin or Spin suing Franklin, and then you say, hey, collateral estoppel, res judicata and all that.  What are you seeking to get here that you can't already get in Michigan?

MR. DORSEY:  The Michigan judgment was only against Spin.

THE COURT:  Okay.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022

NYSCEF DOC. NO. 1004   Case 23-01132-EPK   Doc 370-3   Filed 01/13/26   Page 120 of 140   RECEIVED NYSCEF: 01/19/2026

Page 119

MR. DORSEY:  They couldn't sue Lubin personally in his individual capacity.  Mr. Lubin personally is a defendant down here.

THE COURT:  All right.

MR. DORSEY:  So my client is seeking a judgment against him in his individual capacity.

THE COURT:  Why couldn't you sue Lubin there and have just -- you understand what I'm saying?

MR. DORSEY:  I understand, Judge.  I can tell you there was a forum selection clause in the assignment, such that Spin consented to jurisdiction in Michigan, and that's how they got Spin in Michigan.

They attempted to sue Hi Bar in Michigan, and that was dismissed for lack of personal jurisdiction. I assume if they had attempted to sue Mr. Lubin in Michigan as well, it would have been dismissed for lack of personal jurisdiction because he's not a Michigan resident.  The only reason they were able to sue Spin up there was because of a forum selection clause.

THE COURT:  So how is their collateral estoppel or res judicata on Lubin if Lubin was not a party there?

MR. DORSEY:  So, your Honor, you're peppering me with questions, and you're disrupting the flow of my presentation, but basically I can cite the

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004
RECEIVED NYSCEF: 01/19/2026

Page 120

cases to you, mutuality of estoppel applies when you have obviously the same parties, you know, or you have what are called parties in privity with each other, and a party is in privity with another party when its interests are so aligned that for all intents and purposes it is that party participating in the other litigation.

And again, I can go through it in a minute, there's Michigan case law, there's Florida case law that says if you are the sole owner of a company, if you are controlling the shots of that company, and there's a judgment against that company, collateral estoppel applies to you, and that's particularly true here because, as I said, Mr. Lubin testified personally at the trial over two days. The Michigan court judged his credibility extensively.

THE COURT: All right, and so response?

MR. DORSEY: No, Judge, can I just finish briefly?

THE COURT: Yeah.

MR. DORSEY: I want to keep going.

I made a little chart. I'll go through it quickly, I promise.

THE COURT: So you don't know why Lubin -- or do you even know if Lubin was sued in Michigan, individually?

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1004

Page 121

MR. DORSEY: No, he was not. There was no personal jurisdiction over him in Michigan.

THE COURT: But it's different than Hi Bar, he was not even sued?

MR. DORSEY: He was not even sued. They attempted to sue Hi Bar, and Hi Bar was dismissed for lack of personal jurisdiction.

THE COURT: Obviously you can waive that, so -- I mean, if you had sued Lubin, he might have waived it and so you could do it all at once. Instead, it seems piecemeal.

MR. DORSEY: I mean, Judge, at the end of the day, Lubin -- they were not required to sue Lubin in Michigan. I don't know -- you know, I doubt they would have had personal jurisdiction over him, but at the end of the day, the parties are now here before you, and essentially what I'm saying is we have a court that's issued binding findings. Why are we going to have the same trial that already occurred last year?

THE COURT: Because that was only against Spin, right?

MR. DORSEY: Well, your Honor --

THE COURT: No, I understand, you're saying that it was essentially one and the same. I just -- all right.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004 RECEIVED NYSCEF: 01/19/2026

Page 122

MR. DORSEY: Well, let me first, because I would like to address Mr. Langley's arguments at the end of my presentation.

THE COURT: Okay.

MR. DORSEY: So let me just first walk you through, like, why I think it's so clear-cut.

So you have a chart in front of you that says Count 7, fraud and fraud in the inducement, it states the elements of fraud under Florida law, pretty basic stuff.

So if you look at that chart, you see element, defendant made a false statement regarding the material fact. Do you see that?

THE COURT: Yes.

MR. DORSEY: Okay. Now look directly to the right of this. This is verbatim the Michigan court. On October 21st, 2021, approximately $2.1 million of debt was owed by Excell to Spin, which was concealed from Franklin. The assignment agreement signed by Josh Lubin falsely claimed that the amount of such debt was zero. This is matching the element exactly.

The next element, defendant knew the statement was false. Go to the right in the Michigan court, quote, Lubin purposefully lied about the amount in the assignment agreement.

Page 123

And I could go through the other elements, Judge, and you have the charts in front of you, but literally for each of my counts, element by element, the Michigan court is finding exactly what we would need to prove these claims. There's no reason to try them a second time.

THE COURT: Okay.

MR. DORSEY: Okay. Judge, I'll conclude by just going -- quickly going over Mr. Langley's arguments.

Number one, he says the Michigan judgment is not final because they still have appellate rights. That's just wrong. Under both Michigan law and Florida law, the pendency of an appeal doesn't affect the res judicata or collateral estoppel effect of a judgment. If you want to post a bond, you can post a bond, and I would cite In Re: Kramer, 543 BR, 541, that's a Bankruptcy, Eastern District of Michigan case, 2015, analyzing Florida law.

Mr. Langley argues, the issues were never fully litigated because the judgment was based on a default. Again, that's not true, there was a two-day trial, but even if the judgment was based on a default, collateral estoppel would still apply under Michigan law. The case site for that is Ursuy versus Yassin, 2021 Westlaw 4815289, that's a Michigan Court of Appeals case

Page 124

from 2021.

And here, Judge, here's what I think you're getting at, because you asked, well, why not -- Lubin wasn't up there, so can collateral estoppel apply if it was only Spin? And I would like to read this quote to you, Judge, verbatim, because it directly addresses this point. This is the Michigan Supreme Court, 1990, quote, collateral estoppel precludes re-litigation of an issue -- excuse me, I misread my outline, give me one second.

I'm sorry, Judge, I misread my outline, but I cite it in my brief, under Michigan law, Mr. Lubin is in privity with Spin. If Mr. Lubin attended a two-day trial on behalf of Spin, an entity he fully controls, he testified, and the Michigan court found him not credible. He's in privity with Spin, and there's no reason to litigate essentially the same issue today.

That's it, and I'll turn the podium over to Mr. Langley, unless your Honor has questions.

THE COURT: Nope.

All right. Mr. Langley.

MR. LANGLEY: Thank you, Judge.

I want to address a few of the things Mr. Dorsey said first before I get through my main argument, Judge.

Mr. Dorsey represented that the Michigan

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004    RECEIVED NYSCEF: 01/19/2026

Page 125

court found that Josh Lubin lied.  Well, the Michigan court ruling that you have, it says that the judge questioned Mr. Lubin's credibility.  There's also notices in there that Mr. Lubin was not aware that his attorney had defaulted, and he had some real issues during the case.  The point is, that's not -- there was no representation in the Michigan court ruling that Franklin relied on any false statements made by my client, by Josh, and in particular, Judge, in my --

THE COURT:  Can I ask you a question while I'm thinking about it?  What were the claims against Spin in Michigan?

MR. LANGLEY:  The ruling is on breach of contract and conversion only.  There was --

THE COURT:  It was a breach of contract --

MR. LANGLEY:  Yes, the Court found --

THE COURT:  And?

MR. DORSEY:  Conversion.

MR. LANGLEY:  Conversion.

THE COURT:  Conversion, so different claims.

MR. LANGLEY:  Yes, different from the claims down here.

THE COURT:  Conversion, I guess there could be some overlap.  A breach of contract, it's totally different between a breach of contract versus committing

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004    Case 23-01132-EPK    Doc 370-3    Filed 01/13/26    Page 127 of 140    RECEIVED NYSCEF: 01/19/2026

Page 126

fraud and --

MR. LANGLEY: Yes.

THE COURT: Tortuous interference. I mean, but --

MR. DORSEY: No.

MR. LANGLEY: So, different --

THE COURT: -- conversion is different.

MR. LANGLEY: Different parties, different issues, non-final order, and there's some facts that are directly in conflict between the motion for summary judgment and the Michigan ruling.

Okay. So, yes, Mr. Dorsey touched on it, there was a default entered on liability because the attorney representing Spin in Michigan missed the deadline to respond to a motion for summary judgment, or there it's a motion for summary disposition, and Mr. Lubin didn't even know about that until he appeared at trial. The trial was only on dollar amount, it was only on damages. It wasn't on any of the main issues, particularly not on any of the issues that we have here alleged.

So we have a non-final order attached to -- we filed a response to the motion for a stay back in July, Judge, and attached to that motion is a ruling by the Michigan court on alter ego. In the Michigan court they tried to argue that Hi Bar and Spin were alter egos of

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1004    RECEIVED NYSCEF: 01/19/2026

Page 127

each other, and the Court denied that and threw out those counts. So it only went to trial on breach of contract and conversion.

Now, Michigan law applies to the interpretation of the contract because that's what it says in the contract, but here, we're here today on a motion for a summary judgment under Florida law.

I cited to the Edwards case, Judge, Edwards versus Kings Point, in my motion, and I have a copy here, if you'd like, 351 So.2d, 1073.

THE COURT: Okay.

MR. LANGLEY: It's a 4th DCA case that says, essentially, summary judgment was entered on the basis of res judicata. In an earlier third-party complaint by Kings Point against Acousti (phonetic) involving the same issue, the trial (sic) entered an order granting summary judgment. However, this was not a final appealable order. Therefore, it cannot be the basis for res judicata. That's what we have here. We have a non-final order in Michigan that cannot be the basis for res judicata.

There's a motion for a new trial pending, which is attached to our response. If that's denied -- and that's been pending since April, I don't know why it's taken that judge so long to rule on it, if that is denied, there'll be an appeal.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004
RECEIVED NYSCEF: 01/19/2026

Page 128

The important point there, Judge is, that ruling is not going to be final for quite some time. We're supposed to be in trial --

THE COURT: There's no final judgment, it's only findings of fact and conclusions of law. The judge has not entered a final judgment?

MR. LANGLEY: There's a final judgment and there's a motion for a new trial pending.

THE COURT: Okay.

MR. LANGLEY: Because of the fact --

THE COURT: The final judgment is an appealable order, a final appealable order, correct?

MR. LANGLEY: Yes, it's going to be, yes, but the appeal can't be filed because --

THE COURT: Well, in the case that you cited in Edwards versus Kings Point, it was merely an order granting summary judgment, and so that was not a final appealable order. Whoever granted the summary judgment had to then enter a final summary judgment afterwards.

MR. LANGLEY: Okay. The order in Michigan is a -- there's a motion for a new trial pending, so it's not final, and if the motion for a new trial is denied, there'll be an appeal. So we're a long ways away from that ruling being a final order.

In addition, Judge, as you were touching on,

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004    Case 23-01132-EPK    Doc 370-3    Filed 01/13/26    Page 130 of 140    RECEIVED NYSCEF: 01/19/2026

Page 129

there are different parties here. The Michigan ruling does not include all the Franklin parties that are involved in this litigation. In this litigation, in the Franklin parties' counterclaim, there are two Franklin parties. There are also additional defendants, Franklin party counter-claimants they brought, and also different issues.

In this case, the Franklin parties sued not only Mr. Lubin and Spin, but also Hi Bar Capital and Mordecai Herbst and other parties.

In the second amended counterclaim in this case, they not only brought, excuse me, the claim for breach of contract, but also declaratory relief against Spin and Hi Bar, declaratory relief against Spin and Hi Bar as to the invalidity of the Hi Bar transfer agreement, declaratory relief against Spin, claiming usury and also claims for a civil RICO and conspiracy.

None of those were resolved by the ruling by the Michigan court. The Michigan judge only found a breach of contract and conversion, and it's not final, and there are also some contested facts.

In the motion for summary judgment, they claim that Mr. Lubin made false representations to Franklin, but they attach his transcript, it's Exhibit A to the motion for summary judgment. I copied in a portion

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004    RECEIVED NYSCEF: 01/19/2026

Page 130

of that transcript in my response, and Mr. Lubin says he never spoke with Franklin, and then so the question was, okay, so for Franklin sending you -- except for Franklin sending you direct DocuSigns of contracts, you never spoke to Franklin directly in this process?

Answer, correct.

Okay. So they're claiming false representations. The testimony of Mr. Lubin is that he never even spoke with them.

Also, in Paragraph 8 of the motion for summary judgment, Franklin alleges that Excell, the debtor, made payments to Hi Bar, but the ruling of the Michigan court says that the payments went to Spin. It says, quote, Spin took additional payments from Excell following the execution of the assignment agreement on November 1, 2021. So there's a direct conflict between the Michigan ruling and the motion for summary judgment here.

And as I mentioned before, they can't argue that Spin was the alter ego of Hi Bar, because the Michigan court denied that claim. That order denying that was attached to our motion for stay filed back on July 17th.

Judge, I also cited to the Oldsmar case, City of Oldsmar, collateral estoppel is a judicial

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004 RECEIVED NYSCEF: 01/19/2026

doctrine in which general terms prevent identical parties from re-litigating the same issues that have already been decided. Under Florida law, collateral estoppel, or issue preclusion applies when the identical issue has been litigated between the same parties or their privies, and then here's what's important, in addition, the particular matter must be fully litigated and determined in a contest that results in a final decision of a court of competent jurisdiction. We don't have that here. We have a motion for summary judgment that was -- a motion for summary disposition that was granted by default, that's the subject of a motion for new trial because Mr. Lubin and Spin did not have adequate representation. That alone should take it out of consideration for summary judgment. The parties are different. The matter's not final. The issues are different. So none of that supports a motion for summary judgment, Judge.

We have issues that need to be decided in the Franklin counterclaim that were not decided by the Michigan court. We're set for trial next month. We won't have a final ruling from the Michigan court for many months.

THE COURT: All right. Any reply?

MR. DORSEY: Yes, your Honor.

Your Honor, I can sense you're reluctant to

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

INDEX NO. 650582/2022

NYSCEF DOC. NO. 1004

RECEIVED NYSCEF: 01/19/2026

Page 132

grant the motion, or maybe it's just you're tired at the end of a long day.

THE COURT: No, it's -- so you throw that out there, it's different parties, different claims.

MR. DORSEY: Well, that's exactly the two things I was going to focus on --

THE COURT: All right.

MR. DORSEY: -- different parties --

THE COURT: I understand you might want to say that you have --

MR. DORSEY: Privity.

THE COURT: -- privity, but the issues are different.

What you have to prove in a breach of contract claim and a conversion claim is a lot different than a claim for fraud and tortious interference.

MR. DORSEY: Of course it is.

So I think Mr. Langley is confusing concepts. Res judicata is claim preclusion, I sue you for breach of contract, I can't sue you -- you know, I can's sue you for breach of contract in another case, that's claim preclusion.

Collateral estoppel does not decide, excuse me, legal issues. It decides factual issues. In fact, whenever people use collateral estoppel, almost by

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
Case 23-01132-EPK    Doc 370-3    Filed 01/13/26    Page 134 of 140
NYSCEF DOC. NO. 1004    RECEIVED NYSCEF: 01/19/2026

Page 133

definition, the claim alleged in the second lawsuit is going to be different.

I'm not seeking a finding as a legal matter that Josh Lubin is liable for breach of contract. I'm seeking as a factual determination, a court has already determined that factually he lied to Franklin through the assignment, he caused companies to siphon off millions of dollars from Franklin's borrowers, and he damaged Franklin. Those are factual findings. Of course they're going to be cast in different claims. I'm not suing Lubin for breach of contract, but that's what collateral estoppel is.

THE COURT: Yeah, I'm not sure.

MR. DORSEY: Well, I have to --

THE COURT: Res judicia is typically identity of parties and issues. Claim -- collateral estoppel, I think, is usually claim preclusion, but regardless, I don't see how you have the same issues in either case, and so it's a different context.

MR. DORSEY: Well, Judge, I --

THE COURT: And so even if -- I know there's findings in there, in Michigan where they indicate they just didn't find Mr. Lubin credible, but at the end of the day, they could still say breach of contract is a lower standard, he breached a contract, he didn't disclose it.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004    RECEIVED NYSCEF: 01/19/2026

Page 134

Fraud and tortious interference require more, it's a higher -- and I know you're saying the findings were the same, but he wasn't really defending against that in Michigan.

MR. DORSEY:  So what your Honor is saying is the factual findings were not necessary to the claims?

THE COURT:  Exactly, and so he was not defending against claims of fraud and --

MR. DORSEY:  Well, there was --

THE COURT:  I guess conversion is a little bit more, I guess you're keeping the money without any right to it.

MR. DORSEY:  There was conversion, Judge, yeah, right.

THE COURT:  But, I mean, the elements of fraud and the elements for tortious interference are much different than a breach of contract for sure, and even a conversion claim.

MR. DORSEY:  Well, the good news is, Judge, if you deny the motion, you're going to hear the full story in about 40 days, so be careful what you wish for.

THE COURT:  No, I understand.

MR. DORSEY:  But I do sense --

THE COURT:  I'm probably going to hear a lot of it anyway, because of select additional parties.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004    RECEIVED NYSCEF: 01/19/2026

Page 135

So I guess Mr. Lubin is behind, not just -- he's behind also Hi Bar, too, right?

MR. DORSEY: Well, he's definitely behind Spin. Whether he's behind Hi Bar, that's what your Honor adjudicated earlier in this hearing, whether that common interest agreement gives him an interest in Hi Bar.

THE COURT: All right, and then there's --

MR. KASEN: Your Honor, I just want to jump in and make sure that the record is clear, that I don't think that that's what your Honor ruled earlier --

THE COURT: No.

MR. KASEN: -- regarding Spin and Hi Bar.

I think that your Honor ruled that you weren't going to opine as to the advocacy of the common interest agreement, just that the settlement can be entered into, and if Mr. Lubin believes he has rights pursuant to the common interest agreement, he can pursue them elsewhere.

THE COURT: He can definitely sue Hi Bar, but what I was ruling is that, basically at a settlement by Hi Bar, who was the one who filed the claims in the bankruptcy court and here, that there was nothing that gave Mr. Lubin a right to those proceeds. I guess it --

MR. DORSEY: I was -- your Honor, just to avoid kind of more talking in circles, I was paraphrasing

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1004

Page 136

your Honor's opinion.

THE COURT: Okay.

MR. DORSEY: I was not attempting to attach another layer of gloss to it.

THE COURT: All right, but, in any event, I'm going to deny the motion for summary judgment. You do have different parties. I don't know why you didn't just sue Mr. Lubin. You're going through all that trouble to sue Slide, I'm not sure -- or Spin, I keep saying Slide, Spin, I don't know why they didn't try to sue Lubin there as well.

MR. DORSEY: I'm not barred in Michigan, but I will pass the question along.

THE COURT: It's just, and then they could have brought the fraud claims as well, but anyway, I'm going to deny it. I don't think you have a similarity of issues or parties.

MR. DORSEY: Your Honor, thank you for being very patient over the last three hours.

THE COURT: I had set the whole afternoon aside. I know there's a lot going on.

Yeah, I'm hopeful some of it gets -- more of it gets resolved, but I'm not sure if it will. I think we're going to trial on a lot of these issues.

MR. DORSEY: More likely than not.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004                                      RECEIVED NYSCEF: 01/19/2026

Page 137

THE COURT: We'll see.

MR. DORSEY: But hope springs eternal, so we'll see.

THE COURT: All right. You all have a great day, and thanks for sticking it out. I know you got pushed down. That took a lot longer, the 1:30, so --

MR. DORSEY: Yes.

MR. LANGLEY: Pat, you're going to do the order?

MR. DORSEY: I'll run it by Mr. Langley, it's just going to be very simple, for the reasons stated on the record.

THE COURT: Exactly, and put that we had a court reporter here.

MR. DORSEY: Yep.

THE COURT: All right.

MR. DORSEY: Thank you, Judge.

MR. KASEN: Your Honor, I want to thank you as well, and thank you for allowing me to appear pending my pro hac vice motion.

THE COURT: No worries, and you are showing up now, not your video. For some reason your video is not working, but before when you were speaking, it showed up as a different name. I don't know why that was, but in any event, you have a -- where are you located at,

FILED: NEW YORK COUNTY CLERK 01/19/2026 03:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004    Case 23-01132-EPK    Doc 370-3    Filed 01/13/26    Page 139 of 140    RECEIVED NYSCEF: 01/19/2026

Page 138

Mr. Kasen?

MR. KASEN:   New York.

THE COURT:   Okay.  All right.  Well, hopefully it's not too hot there.  It's probably hot everywhere.

MR. KASEN:   It's pretty hot today.

THE COURT:   All right.  Have a great day.

MR. KASEN:   Have a wonderful day.

THE COURT:   Yeah, you, too.

MR. DORSEY:   Thanks, Judge.

THE COURT:   All right.  Thank you.

MR. LANGLEY:   Thank you, Judge.

(Thereupon, the hearing was concluded.)

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004 RECEIVED NYSCEF: 01/19/2026

Page 139

CERTIFICATION

STATE OF FLORIDA        :

COUNTY OF MIAMI-DADE    :

I, Cheryl L. Jenkins, RPR, RMR, Shorthand Reporter and Notary Public in and for the State of Florida at Large, do hereby certify that the foregoing proceedings were taken before me at the date and place as stated in the caption hereto on page 1; that the foregoing computer-aided transcription is a true record of my stenographic notes taken at said proceedings.

WITNESS my hand this 18th day of August, 2025.

_____

CHERYL L. JENKINS, RPR, RMR
Court Reporter and Notary Public
in and for the State of Florida at Large
Commission #HH 170910
December 27, 2025

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1004    RECEIVED NYSCEF: 01/19/2026

# EXHIBIT 4

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004   Case 23-01132-EPK   Doc 370-4   Filed 01/13/26   Page 2 of 107   RECEIVED NYSCEF: 01/19/2026

Filing # 229455396 E-Filed 08/14/2025 03:31:21 PM

## IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
## IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO. **CACE22005125**   DIVISION: **07**   JUDGE: **Haimes, David A (07)**

FVP Opportunity Fund III, LP, et al

Plaintiff(s) / Petitioner(s)

v.

Scott Zankl, et al

Defendant(s) / Respondent(s)

_____/

## ORDER ON JOINT MOTION TO ENDORSE SETTLEMENT

THIS CAUSE came before the Court for hearing on August 13, 2025, on the *Joint Motion to Endorse Settlement Agreement* filed (the "Motion") jointly by: (1) Plaintiffs, FVP Opportunity Fund III, LP, FVP Investments, LLC, and FVP Servicing, LLC (jointly and severally, the "FVP Parties"); (2) Defendants/Cross-Plaintiffs, Franklin Capital Funding, LLC, Franklin Capital Group, LLC, and Franklin Capital Management, LLC (jointly and severally, the "Franklin Parties"); and (3) Defendants, Yisroel Herbst, Mordechai Herbst, and Hi Bar Capital, LLC (jointly and severally, the "Hi Bar Parties"). Present at the hearing were counsel for the FVP Parties, Franklin Parties, and Hi Bar Parties, together with: (1) David Langley, Esq., counsel for Defendant Avrumi "Josh" Lubin ("Avrumi Lubin") and (2) Micheal J. Kasen, Esq, who the Court admitted pro hac vice as co-counsel for Avrumi Lubin prior to the hearing and who participated via Zoom at the hearing in support of the objections filed and otherwise raised by Avrumi Lubin. Other attorneys listened to the hearing regarding the Motion on Zoom but did not participate therein.

After reviewing the Motion and other relevant documents, including the Common Interest and Joint Litigation Agreement ("Common Interest Agreement") between Hi Bar Capital, LLC ("Hi Bar") and Spin Capital, LLC ("Spin"), and the letter terminating that agreement dated April 3, 2024, and after hearing the arguments of counsel for all parties, the Court makes the following findings of fact and conclusions of law:

1. Beginning in the fall of 2022, the FVP Parties, Franklin Parties, and Hi Bar Parties were each parties in Adversary Proceeding No. 22-01218-EPK, which was pending in the United States

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004    Case 23-01132-EPK    Doc 370-4    Filed 01/13/26    Page 3 of 107    RECEIVED NYSCEF: 01/19/2026

Case Number: CACE22005125

Bankruptcy Court for the Southern District of Florida, West Palm Beach Division (the "Bankruptcy Court"). The parties in the adversary proceeding were litigating their respective claims to vehicles removed from the Karma of Palm Beach, Inc. lot by other Defendants in this action, and which were claimed as part of the bankruptcy estate *In re: Auto Wholesale of Boca, LLC*, Case No: 22-15627-EPK, a bankruptcy case which was also pending in the Bankruptcy Court. That bankruptcy case proceeded to a two-day evidentiary hearing in March 2023, after which the Bankruptcy Court converted the case to a Chapter 7. *See* Case No: 22-15627-EPK – [ECF No. 584].

2. On June 23, 2023, pursuant to an agreement between the FVP Parties, Franklin Parties, Hi Bar Parties and the Chapter 7 Trustee, and at the Chapter 7 Trustee's request, the Bankruptcy Court endorsed said agreement, ordered the vehicles sold, and directed that the Net Proceeds from the sale be held as and distributed as follows:

> 8. The proceeds of the Auction, net of the Buyer's Premium, Expenses and Carveout (such net proceeds shall be referred to herein as the "Net Proceeds"), shall be held pending adjudication by a court of competent jurisdiction as to the validity, priority and extent of property interests asserted in the Net Proceeds or consensual resolution between and among the parties whom have appeared in the main bankruptcy case or the Adversary Proceeding and asserted interests therein. Only (i) parties to the Adversary Proceeding Complaint, or (ii) parties that have appeared in the main bankruptcy case and asserted an interest in the Vehicles, may make a claim against the Net Proceeds.

> 9. The Trustee, as the duly appointed chapter 7 trustee of the bankruptcy estate of Auto Wholesale of Boca, LLC, hereby waives all Liens and Interests, including any lien, ownership interest, property interest, security interest, or any other claim (as such term is defined in 11 U.S.C. § 101(5)) or interest of any kind whatsoever in the Net Proceeds and Vehicles. For the avoidance of doubt, the waiver includes any allegation that Auto Wholesale of Boca, LLC was a good faith purchaser of the Vehicles in the ordinary course under Fla. Stat. §§ 671.201(9) and 679.320(1).

> 10. The waiver of the Liens and Interests by the Trustee, as set forth in the preceding paragraph, is binding on Auto Wholesale of Boca, LLC in any future controversy, litigation, or any other dispute arising from or concerning the Net Proceeds. Auto Wholesale of Boca, LLC does not possess any Liens or Interests in the Net Proceeds, including any lien, security interest, or ownership or property interest whatsoever.

[See *Order Granting in Part Expedited Motion to Authorize Sale* [ECF. 618] at [ECF. 694] at ¶ ¶ 6, 8 and 10]. (the "Bankruptcy Court Sale Order"). The terms "Adversary Proceeding" and "Net Proceeds" shall have the meanings ascribed to them in the Bankruptcy Court Sale Order.

Case Number: CACE22005125

3. Thus, per the Bankruptcy Court Sale Order, the Net Proceeds were to be held in the registry of the Bankruptcy Court pending the occurrence of either: (i) adjudication by a court of competent jurisdiction as to the validity, priority and extent of interests in the Net Proceeds, or (ii) "consensual resolution between and among the parties whom have appeared in the main bankruptcy case or the Adversary Proceeding and asserted interests therein."

4. On July 26, 2025, the FVP Parties, Franklin Parties, and Hi Bar Parties entered into the consensual resolution (the "Settlement Agreement") contemplated by Bankruptcy Court Sale Order and filed a motion for the Bankruptcy Court to release the Net Proceeds pursuant to the consensual resolution. In response, Avrumi Lubin filed objections in the Bankruptcy Court and argued that Avrumi Lubin was the assignee of Hi Bar's rights and that Hi Bar had no authority to enter into the Settlement Agreement. In support of Avrumi Lubin's argument, he filed of record the Common Interest Agreement and an assignment of Spin's rights to Avrumi Lubin.

5. The Bankruptcy Court initially denied the FVP Parties', Franklin Parties', and Hi Bar Parties' joint motion for release of the funds, and after reconsideration, ultimately denied such motion, on the basis that it lacked subject matter jurisdiction to consider the dispute raised by Lubin regarding the enforceability and termination of the Common Interest Agreement.

6. In doing so the Bankruptcy Court specifically referred the dispute between Avrumi Lubin and Hi Bar to this Court as the court with jurisdiction to "determine which of the Movants and Mr. Lubin have rights in the Net Proceeds. The Court encourages the parties to seek appropriate rulings in the Broward Action." See *Order Denying Expedited Joint Motion*, [ECF. 952] at p 9.

7. This Court reviewed the Common Interest Agreement as well as a termination letter issued by the attorney for Hi Bar on April 3, 2024 and heard detailed argument by counsel for Avrumi Lubin, the Hi Bar Parties, FVP Parties and Franklin Parties.

8. This Court finds that Avrumi Lubin has no rights or standing to interfere with the Hi Bar settlement based on the plain language of the Common Interest Agreement. The Court further finds that the Common Interest Agreement was terminated by Hi Bar on April 3, 2024. The Court further notes that Avrumi Lubin took no action to refute Hi Bar's contractually permitted termination until the FVP Parties, Franklin Parties, and Hi Bar Parties came to a Settlement Agreement.

9. The Court finds that Hi Bar had the power and authority to enter into the Settlement Agreement with the FVP Parties and Franklin Parties. Avrumi Lubin, on the other hand, has no right or standing to object to the Settlement Agreement.

Case Number: CACE22005125

Accordingly, and for the reasons stated on the record at the August 13, 2025 hearing (court reporter present), which are incorporated herein by reference, it is hereby:

**ORDERED AND ADJUDGED** as follows:

10. This Court is the court of competent jurisdiction to resolve the dispute between Hi Bar and Avrumi Lubin as contemplated by the *Order Denying Expedited Motion* [ECF. 952] issued by the Bankruptcy Court.

11. This Court has reviewed the Common Interest Agreement, the termination letter and applicable law and has determined that neither Avrumi Lubin, nor any of this affiliated entities, have any rights to the Net Proceeds as that term is defined in the *Bankruptcy Court Sale Order* [ECF. 694] and *Order Denying Expedited Joint Motion*, [ECF. 952].

12. The Joint Motion to Endorse Settlement Agreement filed by the FVP Parties, Franklin Parties, and Hi Bar Parties is hereby **GRANTED** in its entirety.

13. Pursuant to the Settlement Agreement between the FVP Parties, Franklin Parties, and Hi Bar Parties, as stated to this Court on the record, the Net Proceeds should be distributed to the trust account of counsel for the FVP Parties.

14. This Court contemplates that this Order shall be filed of record in the Bankruptcy Court to inform the Bankruptcy Court that the dispute between Avrumi Lubin and Hi Bar regarding their relative rights in the Net Proceeds in the court registry has been resolved by a court of competent jurisdiction.

15. The FVP Parties, Franklin Parties, and Hi Bar Parties shall serve a copy of the Settlement Agreement on counsel for Avrumi Lubin and the Farache Defendants within five (5) days of this order.

16. The *ore tenus* motion to stay the effect of this order made by counsel for Avrumi Lubin is **DENIED**. As time is of the essence, this order shall have immediate effect and is binding unless vacated by court order or stayed by an appropriate court of appellate jurisdiction.

17. This Court retains jurisdiction to enforce this order as required.

Case Number: CACE22005125

**DONE AND ORDERED** in Chambers at Broward County, Florida on 14th day of August, 2025.

CACE22005125 08-14-2025 3:31 PM

CACE22005125 08-14-2025 3:31 PM
Hon. David A Haimes
**CIRCUIT COURT JUDGE**
Electronically Signed by David A Haimes

**Copies Furnished To:**
Alan R Crane , E-mail : staff1@furrcohen.com
Alan R Crane , E-mail : yfernandez@furrcohen.com
Alan R Crane , E-mail : acrane@furrcohen.com
Amanda Klopp , E-mail : jeanette.martinezgoldberg@akerman.com
Amanda Klopp , E-mail : luke.bovat@akerman.com
Amanda Klopp , E-mail : amanda.klopp@akerman.com
Andrew R Herron , E-mail : gservice@homerbonner.com
Avrumi Lubin , E-mail : josh@spincapital.com
Bernard Egozi , E-mail : gale@egozilaw.com
Bernard Egozi , E-mail : begozi@egozilaw.com
Beth Anne Black , E-mail : alex.amburgy@gtlaw.com
Beth Anne Black , E-mail : blackb@gtlaw.com
Beth Anne Black , E-mail : WPBLitDock@gtlaw.com
Bradford M Cohen , E-mail : service@floridajusticefirm.com
Bradley S Shraiberg , E-mail : dwoodall@slp.law
Bradley S Shraiberg , E-mail : bss@slp.law
Bradley S Shraiberg , E-mail : pmouton@slp.law
Branden Stillman , E-mail : bstillman@egozilaw.com
Bridgette N. Thornton, Esq. , E-mail : freelancethornton@gmail.com
Charles Bennardini , E-mail : jam@kwblaw.com
Charles Bennardini , E-mail : cjb@kwblaw.com
Charles Gourlis , E-mail : cgourlis@letolawfirm.com
Charles Gourlis , E-mail : kzelaya@letolawfirm.com
Charles Gourlis , E-mail : pleadings@letolawfirm.com
David B Marks , E-mail : brett.marks@akerman.com
David B Marks , E-mail : charlene.cerda@akerman.com
David W Langley , E-mail : emily@flalawyer.com
David W Langley , E-mail : dave@flalawyer.com
David W Langley , E-mail : jessica@flalawyer.com
Dominique Brown , E-mail : BrownD@KleinPark.com
Dominique Brown , E-mail : orozcol@kleinpark.com
Dominique Brown , E-mail : mcmurrayj@kleinpark.com
Ellen L. Leesfield , E-mail : cristina@ellenleesfield.com
Ellen L. Leesfield , E-mail : ellen@ellenleesfield.com
Elliot B Kula , E-mail : eservice@kulalegal.com

Case Number: CACE22005125

Elliot B Kula , E-mail : elliot@kulalegal.com
Ethan J Strauss , E-mail : ethan@floridajusticefirm.com
Ethan J Strauss , E-mail : Ethan.HYRW@case.tinygnomes.com
Grant Sarbinoff , E-mail : gsarbino@gmail.com
Jerrell Andrew Breslin , E-mail : jerrellbreslin@gmail.com
Jerrell Andrew Breslin , E-mail : eservice@jsjb.law
Jerrell Andrew Breslin , E-mail : jb@jsjb.law
Joel L. Wiegert, Esq. , E-mail : Joel.Wiegert@KutakRock.com
Joel M Aresty , E-mail : aresty@icloud.com
Joel M Aresty , E-mail : Aresty@mac.com
Jonathan E Kanov , E-mail : jekanov@mdweg.com
Jonathan E Kanov , E-mail : kafriday@mdweg.com
Jonathan Noah Schwartz , E-mail : jv@jsjb.law
Jonathan Noah Schwartz , E-mail : js@jsjb.law
Jonathan Schwartz, Esq. , E-mail : jschwartz@jonschwartzlaw.com
Keith Lee , E-mail : klee@feenixpartners.com
Kristin Zankl , E-mail : kzankl@att.net
Legal Assistant , E-mail : receptionwlg300@gmail.com
Luke T Jacobs , E-mail : service@wdpalaw.com
Luke T Jacobs , E-mail : ljacobs@wdpalaw.com
Marc Evan Brandes , E-mail : lbevans@kfb-law.com
Marc Evan Brandes , E-mail : mbrandes@kfb-law.com
Marc Evan Brandes , E-mail : bvillalobos@kfb-law.com
Mark C Perry , E-mail : mark@markperrylaw.com
Mark C Perry , E-mail : maureen@markperrylaw.com
Matthew P Leto , E-mail : mleto@letolawfirm.com
Michael James McMullen , E-mail : Michael@FloridaJusticeFirm.com
Michael James McMullen , E-mail : McMullen.ZCKM@case.tinygnomes.com
Nelly Pena , E-mail : janet.mcmurray@fmglaw.com
Nelly Pena , E-mail : stinelly.pena@fmglaw.com
Patrick Dorsey , E-mail : pdorsey@slp.law
Richard M Jones , E-mail : myrna.montane@fmglaw.com
Richard M Jones , E-mail : richard.jones@fmglaw.com
Robert C Buschel , E-mail : Buschel@BGlaw-pa.com
Robert C Buschel , E-mail : BG.J6R6@case.tinygnomes.com
Robert M Klein , E-mail : robert.klein@fmglaw.com
Robert M Klein , E-mail : martica.carrillo@fmglaw.com
Robert M Klein , E-mail : janet.mcmurray@fmglaw.com
Rose Mahdavich , E-mail : rose.mahdavich@gtlaw.com
Salvatore Fazio , E-mail : salfaziolaw@gmail.com
Salvatore Fazio , E-mail : sfazio@500law.com
Salvatore Fazio , E-mail : docketing@500law.com
Scott C Gherman , E-mail : kgleason@scottghermanpa.com
Scott C Gherman , E-mail : sgherman@scottghermanpa.com
Scott Zankl , E-mail : zanklscott3@gmail.com
Steven Harry Meyer , E-mail : service.meyerlaw@gmail.com

Case Number: CACE22005125

Steven Harry Meyer , E-mail : ross@professionalparas.com
Steven Harry Meyer , E-mail : steven@thefirm.legal
Teresa E Williams , E-mail : twilliams@williamslitigationgroup.com

# EXHIBIT 5

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA
CASE NO. CACE-22-005125

FVP OPPORTUNITY FUND, III, LP, a
Delaware limited partnership, et
al.,

        Plaintiffs,

  -vs-

KARMA OF BROWARD, INC., A Florida     CONSOLIDATED CASE
corporation, et al.,                     NO.:
                                   CACE-22-006401

        Defendants.
_____/

HI BAR CAPITAL, LLC, a New York
Limited liability company,

        Plaintiff,

v.

KARMA OF PALM BEACH, INC.,
A Florida corporation, et al.,

        Defendants.
_____/

ZOOM HEARING BEFORE THE HONORABLE JUDGE HAIMES

Wednesday, September 3, 2025

8:45 AM - 9:45 AM

Reported By:
KIMBERLY SULLIVAN, CR
Notary Public, State of Florida
BAILEY ENTIN REPORTING, LLC
Fort Lauderdale Office
Phone - 954-745-9511

FILED: NEW YORK COUNTY CLERK 01/19/2026, 05:06 PM       INDEX NO. 650582/2022

NYSCEF DOC. NO. 1004       Case 23-01132-EPK   Doc 370-4   Filed 01/13/26   Page 11 of 107       RECEIVED NYSCEF: 01/19/2026

Hearing before Judge Haimes                    FVP OPPORTUNTY FUND III, L.P, a Delaware limited partnership v. HI BAR CAPITAL, LL

APPEARANCES:

On behalf of Plaintiff   FVP Opportunity Fund, III, LP, :
JERRELL BRESLIN, ESQUIRE
Baron Breslin & Sarmiento Attorney At Law
169 East Flagler Street
Suite 700
Miami, Florida 33132
           -and-
MICHAEL MCMULLEN, ESQUIRE,
COHEN & MCMULLEN, P.A
1132 SE 3rd Avenue
Fort Lauderdale, Florida 33316
           -and-
ROBERT BUSCHEL, ESQUIRE
BUSCHEL GIBBONS, P.A.
501 East Las Olas Boulevard, Suite 304
Fort Lauderdale, Florida 33301


On behalf of Defendant Moshe Farache:
Scott Gherman, Esquire
902 Clint Moore Road
Suite 120
Boca Raton, Florida 33487
           -and-
Charles Bennardini, Esquire
Boca Corp Plaza, Suite 140
7900 Glades Road
Boca Raton, Florida 33434


On behalf of Defendant Avrumi Lubin:
Avrumi Lubin, Pro Se

ALSO PRESENT:
David Langley, Esquire
Michael Kasen, Esquire
Joel Arestsy, Esquire
                    -   -   -

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004   Case 23-01132-EPK   Doc 370-4   Filed 01/13/26   Page 12 of 107   RECEIVED NYSCEF: 01/19/2026

Hearing before Judge Haimes                  FVP OPPORTUNTY FUND III, LP, a Delaware limited partnership v. HI BAR CAPITAL LL

**Page 3**

(The following proceedings were held:)

THE COURT: We're on record in Case CACE-22-51525, FVP Opportunity Fund III, LP, et al. v. Scott Zankl, et al.

Can I get appearances? We'll start with the plaintiff.

MR. BRESLIN: Yes. Good morning, Your Honor Jerry Breslin, for the FVP parties.

THE COURT: Good morning, Mr. Breslin.

MR. BRESLIN: Mr. McMullen also is present, and I'm not sure if Mr. Buschel is here -- all for the FVP parties.

MR. MCMULLEN: Good morning, Judge.

THE COURT: Good morning. It's Michael McMullen, and then -- I'm sorry -- the third one? Is the third one here?

MR. BRESLIN: I don't see him.

THE COURT: All right. And then is Mr. Zankl here?

MR. BRESLIN: I do not see him either, Judge.

THE COURT: He's a no-show. I know he does not have an attorney.

All right. Codefendants -- who wants to go first?

MR. BENNARDINI: Good morning, Your Honor.

**Page 4**

Charlie Bennardini, on behalf of Lisa Farache, Moche Farache, 1001 Clint Moore, and nominal defendant, Auto Wholesale of Boca Raton -- of Boca, and with me today is my cocounsel, Scott Gherman.

MR. GHERMAN: Good morning, Your Honor. Scott Gherman on behalf of Mr. Farache.

THE COURT: All right. Good morning, Mr. Bennardini and Mr. Gherman, on behalf of the Faraches.

Okay. And then anyone else?

MR. LANGLEY: Good morning, Your Honor. David Langley. I'm currently cocounsel for Mr. Lubin. I'm here on my motion to withdraw.

THE COURT: Good morning.

MR. BUSCHEL: Judge, Robert Buschel on behalf of the plaintiffs. I'm here.

THE COURT: Okay. Good morning, Mr. Buschel.

Mr. Langley, you're cocounsel. How about your other cocounsel?

MR. KASEN: Good morning, Your Honor. Michael Kasen, Kasen & Kasen & Kasen, also withdrawing attorney for Lubin.

THE COURT: All right. You're both Lubin withdrawals; correct?

MR. KASEN: That's right, Your Honor.

**Page 5**

MR. LANGLEY: Correct.

THE COURT: Yeah, there's two separate motions. That was also on for motion calendar this morning.

All right. Any other codefendants?

MR. BRESLIN: Your Honor, I see Mr. Lubin is here. He's muted.

MR. LUBIN: Josh Lubin on behalf of myself.

MR. ARESTY: Your Honor, my name is Joel Aresty, A-R-E-S-T-Y. I had appeared in the case some time ago for a corporate defendant. I have not been involved in the case since, but I'm here to observe and comment because of the motions to withdraw. Thank you.

THE COURT: All right. You can observe, but you're not an attorney of record. I don't know if you can comment.

MR. ARESTY: I believe I filed an appearance for Spin, Judge, some time ago, the corporation, which I don't believe is otherwise represented.

THE COURT: All right. Anyone else on the case?

Usually, Mr. Leto is here. They're out?

MR. BRESLIN: That matter is very close to being finalized, Judge. So we'll be filing some motions and dismissals very shortly.

**Page 6**

THE COURT: All right. So I think there was one other set of codefendants, too, that usually appear, but I think they're also in the same boat; right?

So, let me address the motion for a case management. That's Mr. Bennardini and Mr. Gherman?

MR. BENNARDINI: Yes, Your Honor. Good morning. We're specially set for trial the week of September 29th.

THE COURT: That's correct.

MR. BENNARDINI: Recently, Mr. Breslin and his cocounsel, Mr. Gherman and I, and all of our clients have agreed to go to mediation on Saturday, September 13th, with Mr. Harry Schaefer.

Now, we hope to be successful, but just in case we are not, there are -- we have four summary judgment motions pending. The trial court order required that such dispositive motions be filed by July 30th. We complied.

The new one -- not so new anymore -- but 1.510 says, "Hearings cannot be set until 50 days thereafter." So we're here asking the Court to set a case management conference the week of September 15 to have those four motions heard if the Court is available.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004                                              RECEIVED NYSCEF: 01/19/2026

Hearing before Judge Haimes                          FVP OPPORTUNITY FUND III, LP, a Delaware limited partnership v. HI BAR CAPITAL LL

Page 7

And then also, in my motion, I list eight motions in limine and Daubert motions for each side. And Your Honor's trial order -- and I know you like to hear motions in limine and Daubert right before trial. So the point of my motion is to specially set the summary judgment motions after September 13th, just in case we settle, and then we won't need them. Don't want to spend the time and expense. Your Honor has commented several times that this case has cost the clients a bunch of money.

So if we can save that money by settling at mediation, we will. But the bottom line is if you would please give us a special set for a case management conference the week of September 15th.

And we would like to be assured we're starting September 29th. There's some -- I don't know what's going on with the matters in front of us, but it would -- we would be better prepared and ready to go if we are sure we're starting September 29th, absent mediation settlement.

Thank you, Judge.

THE COURT: Everyone else is in agreement? Or I guess --

MR. BRESLIN: Judge, for the FVP parties, I

Page 8

think what we'd like, Judge, is for you to give us like three hours sometime, I guess, the week of the 15, just in case the matter does not resolve so you can hear all the motions for summary judgment and any other motions that you think the Court deems appropriate at that time.

THE COURT: Okay. How about this? It looks like you're other one is resolving; so that's not going to go to trial the week of the --

MR. BRESLIN: Judge, no. I want to make that clear. There are several defendants in the Trial Part 1. These are the New York defendants. There's the Hi Bar parties. There's Mr. Lubin, there's Mr. Getter and Spin. So the Hi Bar parties will be partially resolved.

THE COURT: Let me ask you -- let me cut to the chase on this. All right. The week of the 22nd -- the 23rd, the courthouse is closed for Rosh Hashanah.

MR. BRESLIN: Right.

THE COURT: My suggestion is to start on the 24th. All right?

MR. BRESLIN: That's fine, Judge. That's the Lubin trial. That's the Spin trial.

THE COURT: Yes. That should be shorter now;

Page 9

right? It should only be --

MR. BRESLIN: Yes.

THE COURT: Okay.

MR. BRESLIN: Three or four days.

THE COURT: So then what I'm going to do is put the motions for summary judgment for the Farache dispute, I guess, put those on for Monday the 22nd.

MR. BRESLIN: That would be perfect, Judge.

MR. LUBIN: That is perfect, Judge.

THE COURT: All right. And I'll put those on. Okay. We'll put them on at 9:00 in the morning.

MR. LUBIN: Yes, sir.

MR. BRESLIN: Could we make it 10:00, Judge?

THE COURT: That's fine. Not a problem.

MR. BRESLIN: Thank you. Because I will need to be there in person. It's just a different world getting there at 10:00 as opposed to 9:00.

THE COURT: Okay.

MR. LUBIN: So, Your Honor, if they start Trial 1 on the 24th, they'll go four days, and we'll start immediately thereafter?

THE COURT: Yeah, three days; right?

MR. BRESLIN: It will be -- it will be the -- yes, Judge. I don't -- it's not going to take nearly as long as the Farache trial. You know how

Page 10

trials go, Judge? There are a lot of exhibits. It just really depends on how things turn out with the pretrial stipulation, which I will discuss with Mr. Lubin shortly after today's hearing.

So I anticipate it will go quickly, three or four days.

THE COURT: And then right after. But hopefully, you will be able to get things worked out, at least more of it anyway.

MR. BRESLIN: Yes, sir.

THE COURT: All right. So right now, I have you down for September 22nd, at 10:00 a.m., all pending motions, so set all your motions for summary judgment.

MR. LUBIN: What do you want to do with the motions in limine, Your Honor?

THE COURT: I'll take those up at the time unless if something where -- if it's a Daubert motion and you want me to take testimony, I will do it on that day as well.

MR. LUBIN: Thank you, Judge.

MR. BRESLIN: All right.

THE COURT: Good luck at mediation.

MR. BRESLIN: We hope so, Judge. Thank you. And then next is the motions to withdraw for

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004        Case 23-01132-EPK   Doc 370-4   Filed 01/13/26   Page 14 of 107   RECEIVED NYSCEF: 01/19/2026

Hearing before Judge Haimes                                                  FVP OPPORTUNITY FUND III, LP, a Delaware limited partnership v. HI BAR CAPITAL LL.

**Page 11**

Mr. Lubin. I take it Mr. Lubin is here. You have no objection to --

MR. LUBIN: I have no objection.

THE COURT: Okay.

MR. LUBIN: I just need 45 seconds of your time, Your Honor.

Your Honor, on August 13th, made it very clear that you're not going to rule on whether the comment interest agreement was terminated or not, and Mr. Breslin snuck in three sentences into Your Honor's order that was signed and says the common interest agreement was terminated. Mr. Lubin has no rights to the common interest agreement, and it was terminated per the April 14th -- April 2020 form letter sent by Leto, which Your Honor said multiple times on the transcript, which I have in front of me, that you're not going to rule on that, and that's an issue that may have to get resolved in New York.

That's an issue that basically Mr. Langley and Mr. Kasen filed an emergency clarification motion, or something like that, for Your Honor to correct the order and filed a motion to withdraw a few hours later. And that was never set for a hearing.

My only objection is -- I don't mind if the

**Page 12**

attorneys go out. I'm going to have to get new counsel. I'm going to need some time, but that's the only thing that I need today. It needs to get corrected because it contradicts Your Honor's own words, and Mr. Breslin should have never snuck in language like that into an order which -- yeah, it completely contradicts what went on in the hearing.

I have no objection to the settlement. Your Honor made it very clear whether Mr. Lubin can object to the parties settling, but you said you were not going to -- you made it clear a few times that you're not going to determine whether this agreement was terminated or not. That's an issue for a separate day.

I'm just asking Your Honor if that's an emergency issue that needs to get corrected before the attorneys get let out. Like that's -- yeah, that's priority.

THE COURT: Mr. Breslin?

MR. BRESLIN: Judge, that matter was not set for hearing today. I'm not at all sure what Mr. Lubin is referring to. We're here today on motions to withdraw. And I'm not prepared today --

(Simultaneous speakers.)

THE COURT: -- motion for clarification is

**Page 13**

resolved.

MR. BRESLIN: I'm sorry, Judge?

THE COURT: He didn't want the motions to withdraw ruled on until the motion for clarification is resolved.

MR. BRESLIN: Well, that's entirely -- that's entirely up to Your Honor and counsel that are seeking to withdraw. I don't know if I have a voice in that, but Your Honor issued an order that was very clearly supported by the transcript. That matter has already gone to the bankruptcy court. The bankruptcy court has already issued its order. That matter is concluded.

I'm not sure what Mr. Lubin is getting at here, but, you know, that matter is not before Your Honor this morning; so I'm not prepared to address any requests to change any prior orders.

So that said, Judge, I'm prepared to address the motions to withdraw. I mean, we're starting the trial on Mr. Lubin's case on the 24th, as Your Honor just indicated.

Mr. Langley and Mr. Kasen are -- just so the record is clear, Judge: Mr. Lubin has had seven attorneys in the past year. And Mr. Lubin has filed a notice of appearance for himself pro se. Mr.

**Page 14**

Langley and Mr. Kasen both appeared as his cocounsel. So Mr. Lubin is pro se. He's filed a notice of appearance.

MR. LUBIN: Mr. Breslin, you're distracting the Judge.

MR. BRESLIN: Please don't interrupt me. Mr. Lubin, please don't interrupt me.

THE COURT: Hang on. We're here on a five-minute hearing.

Let me do this. Mr. Lubin, this is what the order had said, "The Court has reviewed the common interest agreement and the termination letter and applicable law and has determined that neither Avrumi Lubin nor any of the affiliated entities have any rights to the net proceeds as that term is defined in the bankruptcy court sale order, and order denying expedited joint motion. That was what the order was. I think you're worried about some language that was --

MR. LUBIN: The order did not say that, Your Honor. The order said the exact opposite.

THE COURT: That's what -- I'm reading right from the order. I guess, part of the --

MR. LUBIN: Are you talking about the bankruptcy order or your order?

BAILEY ENTIN REPORTING, LLC                                                        Page: 5 (11 - 14)

Case 23-01132-EPK   Doc 383-1   Filed 01/22/26   Page 205 of 976

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
Case 23-01132-EPK   Doc 370-4   Filed 01/13/26   Page 15 of 107
NYSCEF DOC. NO. 1004                                   RECEIVED NYSCEF: 01/19/2026

Hearing before Judge Haimes

FVP OPPORTUNITY FUND III, L.P., a Delaware limited partnership v. HI BAR CAPITAL LL.

Page 15

THE COURT: Yeah, my order.

MR. LUBIN: Right. The bankruptcy order said the exact opposite of your order.

THE COURT: No. The bankruptcy said it's up to another jurisdiction to determine --

MR. LUBIN: And the --

(Simultaneous speakers.)

THE COURT: -- and I determined that you did not.

Now, if there's other issues with respect to that, that don't affect the bankruptcy case, you can still litigate those.

MR. LUBIN: I know, but it completely contradicts Your Honor's own words. It says I have no right to the proceeds. Your Honor never said I have no rights to the proceeds. You said --

THE COURT: You had no right to contest in the bankruptcy court that it was -- and that was -- I will make it a ruling that, based on what was presented to me, that the proper parties to be able to negotiate that settlement were the proper parties. And so --

MR. LUBIN: With all due respect, I'm bringing up one issue. First of all, Judge Kimball mentioned the exact opposite. He said that it appears that

Page 16

the validity of the common interest agreement has to be determined, and if the agreement is valid, Lubin is the movant, not Hi Bar.

THE COURT: All right. So your motion for clarification is denied. All right.

So in light of that, I take it there's no reason --

MR. LUBIN: Can you correct --

THE COURT: -- for Mr. Langley or Mr. Kasen to still be on the case; correct?

MR. LUBIN: Your Honor, can you correct it where it says the agreement was terminated? You said you weren't going to rule on that.

THE COURT: I don't think it says the agreement was terminated.

MR. LUBIN: It does. It says the agreement was terminated -- read the order -- per the April 14th letter.

THE COURT: Where does it say that in the order?

MR. LUBIN: It says that -- here, I'll pull it up right now. It says Mr. Lubin has no rights to the proceeds.

THE COURT: Yep.

MR. LUBIN: And it says that the agreement was

Page 17

termination per the April 14th Leto letter.

THE COURT: Where does it say that? Where are you reading from?

MR. LUBIN: I'm pulling it up right now. If you scroll all the way down -- hold on.

The Court finds Mr. Lubin has no rights -- on paragraph 8 -- to interfere with the Hi Bar settlement. Language of the common interest agreement: The Court further finds that the common interest agreement was termination by Hi Bar on April 3rd, 2024. The Court further notes that Mr. Lubin took no action to refute Hi Bar's purported termination until the FVP parties -- Franklin parties and Hi Bar -- came to a settlement agreement.

That completely contradicts the record on a motion for summary judgment that was filed like six months ago, and it contradicts Your Honor's own words. I'm not trying to make any --

MR. BRESLIN: Judge --

(Simultaneous speakers.)

MR. LUBIN: -- over here. I'm just bringing up --

MR. BRESLIN: Judge --

MR. LUBIN: -- something that's very clear.

Page 18

MR. BRESLIN: Judge, I think this is highly inappropriate. Mr. Leto is not here. Mr. Leto testified. He submitted the termination letter to Your Honor.

THE COURT: Yeah, and the ruling was that with respect to the settlement that was in the bankruptcy court --

MR. LUBIN: I don't object to that. I don't object to the settlement. Just take the correct order for the agreement was terminated.

THE COURT: I won't say the Court finds that. I'm just going to say that the Court notes.

MR. LUBIN: Yes.

THE COURT: It was not meant to be a finding, but it was the background. So the only thing that I'm going to correct is on paragraph 8 instead of "the Court finds that" -- "the Court notes that." All right? It's not a finding. I didn't have to make that finding to do that because what I did find was that you had no rights or standing to interfere --

(Simultaneous speakers.)

MR. LUBIN: -- the settlement.

THE COURT: All right.

MR. LUBIN: So I can basically have a new

Hearing before Judge Haimes                    FVP OPPORTUNITY FUND III, LP, a Delaware limited partnership v. HI BAR CAPITAL LL

Page 19

attorney? I can get the transcript for this hearing? And Your Honor is correcting it; that the Court notes that information? It's not a finding?

THE COURT: Yes.

MR. LUBIN: Yes.

THE COURT: The bottom line is that I'm not sure how it would affect anything else because --

(Simultaneous speakers.)

MR. LUBIN: -- litigating it.

THE COURT: What was presented before me is who was the proper party to be able to enter into that settlement, and I found that.

MR. LUBIN: Right. I don't object. No problem.

THE COURT: If you look at the order and the judge. All right? The order and the judge.

MR. LUBIN: It would prevent me from suing Hi Bar if Your Honor already made a finding that --

THE COURT: Yeah.

MR. LUBIN: -- the agreement was termination.

THE COURT: I had no issues with you suing Hi Bar or whatnot. That was separate.

But as far as for the purposes of the bankruptcy proceedings and the Court making a determination, the Court's determination -- and I

Page 20

think it's clear in paragraph 11.

MR. LUBIN: That I don't have any right to object to a settlement. No problem.

But you're correcting paragraph 8 that the Court notes?

MR. KASEN: Your Honor, if I may, Michael Kasen, withdrawing attorney for Mr. Lubin.

Attached to the motion for clarification and also previously emailed to Your Honor's judicial assistant was a draft of the suggested order that corrected this particular language and other language that was similarly inserted into the order that we felt wasn't part of the record and may create future problems for Mr. Lubin related to his ultimate rights.

Not necessarily related to the funds that were held by the bankruptcy court and Mr. Lubin's ability to object to the settlement, but specifically towards to -- that may bar Mr. Lubin from taking other actions at other times.

So if Your Honor wants to take a look at the motion for clarification, there should be attached to that motion a draft order.

And the issue really arises because Mr. Breslin submitted the order to Your Honor without running it

Page 21

by opposing counsel, which, as noted in both the letter to your judicial assistant and in the motion for clarification, it is contrary to Florida rules.

Had that not happened, we wouldn't be here because we would have been able to work out the language that actually reflected Your Honor's ruling rather than the language that Mr. Breslin single-handedly decided to insert into the order.

MR. BRESLIN: Judge, number one, that's --

MR. LUBIN: Jerry, it's not --

MR. BRESLIN: -- wholly inappropriate. Mr. Lubin, do not interrupt me.

THE COURT: Stop. I am cutting you all off. So I'm going to do a separate order. I'm just going to do a quick motion.

The order on the motion for clarification, it's denied, except I want to clarify paragraph 8, all right? But the Court's ruling -- order and adjudged remains the same.

MR. LUBIN: Your Honor, can you tell me how it's going to --

THE COURT: I will look at it again. I'm going to look at your motion, and I'm just going to address it then, but the motion for clarification is otherwise denied.

Page 22

So in light of that, Mr. Langley and Mr. Kasen --

MR. LUBIN: Can I ask one thing? I need time to get an attorney.

THE COURT: You'll have time. So I'm going to grant the motions to withdraw. You do have a trial coming up in three weeks; so how much time do you need?

MR. LUBIN: I need 30 days to get an attorney.

MR. BRESLIN: Your Honor --

THE COURT: 30 days.

MR. BRESLIN: Your Honor, Mr. Lubin -- if I may, Judge, Mr. Lubin has had seven years in the past year.

THE COURT: I know. You've already brought that up.

MR. BRESLIN: And Judge Tuter entered an order back in January, saying that Mr. Lubin had 30 days to get a new attorney or he needs to file an appearance pro se.

Judge, Mr. Lubin filed a notice of appearance pro se twice -- one in January, another one in April. Mr. Lubin has filed a motion, too, last week as the pro se attorney.

Judge, this case has been specially set for at

Hearing before Judge Haimes    FVP OPPORTUNITY FUND III, LP, a Delaware limited partnership v. III BAR CAPITAL, LL.

Page 23

least a year, and the trial is going to start shortly. And this is just another tactic. There have been seven attorneys in the past year. Seven. And they got hired, and then they withdraw, and then they want to get more time.

But Mr. Lubin, just so the record is clear -- Mr. Langley is not Mr. Lubin's attorney. He's Mr. Lubin's cocounsel, if you look at his notice of appearance, the same as Mr. Kasen. They're withdrawing as his cocounsel. They can withdraw as his cocounsel, but that means Mr. Lubin is pro se.

If he wants to hire an attorney to come in and help him litigate this case, he can certainly do that, Judge.

But, Judge -- Judge, I couldn't more vigorously object to this trial being --

THE COURT: You've already done that. Mr. Lubin, so you have no objection to your attorneys withdrawing; correct?

MR. LUBIN: I have no objection. I just need time for an attorney.

And for Mr. Breslin's --

THE COURT: Your trial is set for September 24th. Have at it. You don't get 30 days. All right? So --

Page 24

MR. LUBIN: How many days do I get?

THE COURT: -- today is September 3rd; so it looks like you have 21 days.

MR. LUBIN: I'm going to go to trial with an attorney having no preparation for it or?

THE COURT: You can represent yourself as well. All right?

MR. LUBIN: I'm not a lawyer.

THE COURT: Or you can talk to Mr. Langley or Mr. Kasen and see if they want to stay on. All right. But your trial is --

MR. LUBIN: Can Your Honor just make it clear how you're clarifying? Is that something that you have to review separate?

THE COURT: I'm just going to look at the order. I'm going to look at it.

MR. LUBIN: And you're going to upload an order --

THE COURT: I understand your issues with that. I will resolve that. So if you want to let Mr. Langley off and Mr. Kasen off, that's up to you. If you want to keep them on so you have an attorney for trial, but your trial is September 24th.

MR. LUBIN: If I tell you to keep them on, they have to stay on? How does that work?

Page 25

THE COURT: Well, you've got to pay them. So I don't know what your issue is between -- I don't know what the irreconcilable differences are.

Let me ask Mr. Langley and Mr. Kasen, are you both still moving to withdraw?

MR. KASEN: I am, Your Honor.

MR. LANGLEY: Judge, yes.

Judge, as I mentioned in my motion -- and I can articulate it further if you require -- in my case, it's mandatory withdrawal.

THE COURT: All right.

And Mr. Kasen?

MR. LANGLEY: Under the Florida Rules of Professional Conduct 4-1.16. And I can tell you that I spent a good bit of time yesterday with the Florida Bar Ethics Hotline confirming that, and I would be happy to get into that if you wish, but I need to withdraw.

MR. KASEN: Your Honor, I'm of the same opinion.

THE COURT: And you have the same issue?

MR. LUBIN: Your Honor, just to make something clear: There's an issue with Spin Capital's rights over here, the way they're assigned to one of the Franklin Capital, which is why I had to go

Page 26

through so many attorneys, and I didn't discover this issue until a few months ago.

Spin Capital doesn't have a right to defend these actions because the plaintiff bringing the actions claims the rights to defend those actions from an assignment that's listed in the case. That's the reason why I went through so many attorneys.

And Judge Tuter mentioned that I have to report -- which I didn't, he told me I have to report my attorneys to the Bar because they didn't show up to hearings and they were ignoring me because they got stuck in a position -- I think it's malpractice -- where they didn't have a right to defend Spin Capital, and the engagement letter was with me.

So this is not -- like, Mr. Breslin is trying to make me look like a bad guy. This is a very complicated situation, where I have to get a malpractice attorney to deal with it. And it's very hard to be represented if I don't have the right to defend -- if Spin doesn't have the right to defend itself because the party bringing the lawsuit owns those rights.

THE COURT: So 4-1.16 --

MR. LANGLEY: Yes, Judge. And I uploaded that

BAILEY ENTIN REPORTING, LLC

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
Case 23-01132-EPK  Doc 370-4  Filed 01/13/26  Page 18 of 107
INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004
RECEIVED NYSCEF: 01/19/2026

Hearing before Judge Haimes

FYP OPPORTUNTY FUND III, LP, a Delaware limited partnership v. III BAR CAPITAL LL

**Page 27**

to your inbox yesterday. And Bar counsel --

THE COURT: Which cell?

MR. LANGLEY: I'm sorry?

THE COURT: Which cell? (a)(1) through (5).

MR. LANGLEY: There's a section on mandatory withdrawal. And where Bar counsel referred me to where the comment section under mandatory withdrawal, the last couple of sentences.

"The Court may request an explanation for the withdrawal, while the lawyer may be bound to keep confidential the facts that would constitute such an explanation. The lawyer's statement that professional considerations require termination of the representation ordinarily should be accepted as sufficient."

I can't get into the conversations that I've had one-on-one with Mr. Lubin. I can tell you, Judge, that in emails that he sent to the Department of Justice, he's accused me of all kind of things, including malpractice and criminal activity and various things like that. I ethically can no longer represent Mr. Lubin.

THE COURT: Okay.

MR. LANGLEY: Yes.

THE COURT: And the same applies to Mr. Kasen?

**Page 28**

MR. LANGLEY: I believe it does.

THE COURT: Mr. Kasen?

MR. KASEN: I believe it does as well, Your Honor.

Further, as Your Honor knows, I have been admitted into this case pro hoc vice, as Mr. Langley, as my local counsel. So if Mr. Langley were to be removed, I would no longer have a sponsoring local counselor, even if I were willing to remain and continue to represent Mr. Lubin.

THE COURT: All right. I'm going to grant the motion to withdraw. You have 15 days, Mr. Lubin, but either way, whether you have counsel or not, you're more than welcome to show up and represent yourself.

It sounds like you're incredibly bright.

MR. LUBIN: I unfortunately have been going through this for three years. I know a little bit about law, but yeah.

THE COURT: Sometimes pro ses do better than the attorneys because they know the case the best. So anyway, we will see you --

MR. LUBIN: What? Represent myself without exhibits or anything? Just say my story?

THE COURT: Well, I can't be your attorney,

**Page 29**

though.

MR. LUBIN: Obviously but --

THE COURT: You're going to have to roll up your sleeves and figure it out yourself. All right. Good luck to you.

MR. LUBIN: Has it been done before, or no?

THE COURT: I need to move on.

So I'm granting both motions to withdraw. All right. You have the summary judgment dates for the 22nd for the Farache matter and --

MR. LUBIN: How long would I expect for Your Honor to upload a corrected order? Like, a few days? How long?

THE COURT: All right. I will take care of that. All right. Good luck to you all.

All right.

MR. BRESLIN: Thank you, Your Honor.

THE COURT: You all have a great day.

MR. LUBIN: Thank you.

THE COURT: Actually, I do need Mr. Kasen. Let Mr. Kasen know and Mr. Langley know they need to upload their order granting the motion.

MR. BRESLIN: I will do that, Judge.

THE COURT: Of course.

(The hearing was concluded at 9:45 AM.)

**Page 30**

- - -

BAILEY ENTIN REPORTING, LLC

Hearing before Judge Haimes

FVP OPPORTUNTY FUND III, LP, a Delaware limited partnership v. III BAR CAPITAL LL

Page 31

CERTIFICATE

- - -

I, KIMBERLY SULLIVAN, Court Reporter, State of Florida at Large, certify that I was authorized to and did report the foregoing proceedings and that the transcript is a true and complete record of my notes.

Dated this 3rd day of September, 2025.

_____
KIMBERLY SULLIVAN, CR

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004    RECEIVED NYSCEF: 01/19/2026

# EXHIBIT 6

Page 1

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND
FOR BROWARD COUNTY, FLORIDA

Case No. CACE-22-005125

FVP OPPORTUNITY FUND III, LP, A DELAWARE
LIMITED PARTNERSHIP; FVP INVESTMENTS, LLC,
A DELAWARE LIMITED LIABILITY COMPANY; AND
FVP SERVICING LLC, DELAWARE LIMITED
LIABILITY COMPANY,

                    Plaintiffs,

vs.

KARMA OF BROWARD, INC.,
a Florida corporation, et al.,

                    Defendants.
_____/

HI BAR CAPITAL, LLC, a New York
limited liability company, et al.,
                    Plaintiff,
V                              Case No. CACE-22-06401
KARMA OF PALM BEACH, INC.,
a Florida corporation, et al.,
_____/

                    Judge David Haimes
                    Via Zoom
                    September 10, 2025
                    8:45 a.m. to 9:35 a.m.

          MOTION TO VOLUNTARILY DISMISS CASE

                    Reported By:
              Cheryl L. Jenkins, RPR, RMR

Page 2

APPEARANCES:

SCHWARTZ BRESLIN, by
JERRELL "JERRY" BRESLIN, Esquire
On behalf of the Plaintiffs, FVP Opportunity Fund III,
LP, a Delaware Limited Partnership; FVP Investments,
LLC, a Delaware Limited Liability Company; and FVP
Servicing LLC, Delaware Limited Liability Company

LETO LAW FIRM, by
MATTHEW LETO, Esquire
On behalf of the Defendant, Hi Bar

SHRAIBERG PAGE, by
PATRICK DORSEY, Esquire
On behalf of Franklin Capital Funding
and Franklin Capital Group

STANLEY CASEY, Esquire
On behalf of Avrumi Lubin
ALSO PRESENT
JOSH LUBIN

THE COURT: All right. FVP Opportunity Fund, et al., versus Scott Zankl.

Do we have a court reporter?

COURT REPORTER: Yes, Judge.

THE COURT: Cheryl Jenkins.

COURT REPORTER: Cheryl Jenkins, yes, from Ouellette & Mauldin.

THE COURT: Ouellette & Mauldin.

COURT REPORTER: Thank you.

THE COURT: All right. Good morning.

All right. We're on the record on CACE-22-5125, FVP Opportunity Fund, III, LP, et al., versus Scott Zankl, et al.

Can I get appearances? Let me start with the plaintiffs.

MR. BRESLIN: Yes. Good morning, Judge. Jerry Breslin for the FVP parties.

THE COURT: Good morning, Mr. Breslin, and then for -- anyone else with you today?

MR. BRESLIN: No, your Honor.

THE COURT: All right. You have minimal involvement today.

All right. How about, is Scott Zankl here?

(No verbal response.)

THE COURT: Nope, it doesn't look like it.

Case 23-01132-EPK   Doc 383-1   Filed 01/22/26   Page 214 of 976
Case 23-01132-EPK   Doc 370-4   Filed 01/13/26   Page 24 of 107

Page 4

All right.  How about for the co-defendants?

MR. DORSEY:  Good morning, Judge. Patrick Dorsey on behalf of the movants this morning, the Franklin parties.

THE COURT:  Good morning, Mr. Dorsey.

MR. LETO:  Good morning, your Honor. May it please the Court.  Matthew Leto on behalf of the Hi Bar defendants.

THE COURT:  Good morning, Mr. Leto.

MR. CASEY:  Good morning, your Honor. Stanley Casey on behalf of Mr. Lubin.

THE COURT:  All right.  Good morning, Mr. Casey.

Is Mr. Lubin also here?  Yep, there he is.

MR. LUBIN:  Yeah, Mr. Lubin here on behalf of myself.

THE COURT:  All right.  Well, you have an attorney now, I think.  Mr. Casey, are you here on behalf of Mr. Lubin?

MR. CASEY:  Yes, your Honor.

THE COURT:  All right.  Anyone else?

(No verbal response.)

THE COURT:  All right.  We're here, it's a motion for voluntary dismissal of claims by Franklin

Page 5

against everybody but Mr. Lubin, correct?

MR. DORSEY: Yes, Judge.

Just as a bit of background, Mr. Lubin filed a response to my motion yesterday. I wanted to review the response and talk it over with my client, and I was actually going to file a notice of cancellation of this hearing last night. The reason I didn't was that I saw the Court had made a notation to the notice of hearing, and added a motion to clarify.

So I don't intend to proceed with my motion this morning, I'll re-notice it if I can't come to an agreement with Mr. Lubin's counsel, but I'm here this morning because, again, the Court did make a notation to the notice of hearing. So to any extent the Court wants to address the motion to clarify this morning, I didn't want to cancel it.

THE COURT: It wasn't set at the last case management, but I addressed it, and then there was some objection afterwards, and there was an issue that did come up that I wasn't sure about.

The agreement, the common interest agreement is between Hi Bar and Spin, is that correct?

MR. DORSEY: That's what was discussed at the last hearing, yes.

THE COURT: All right.

Page 6

MR. DORSEY:  And Mr. Lubin's prior counsel moved to withdraw.

THE COURT:  But it's Mr. Lubin that filed the motion for clarification, not Spin, is that correct?

MR. LETO:  That's my understanding, your Honor.  Mr. Lubin --

THE COURT:  And so Mr. Lubin -- I know you represent Mr. Lubin, Mr. Casey, but he's not the party to the common interest agreement between Hi Bar and Spin.  He has a separate agreement with Spin.

MR. CASEY:  Yes, your Honor.

THE COURT:  And Spin has filed nothing, as far as I can tell.

MR. CASEY:  Correct.

THE COURT:  And you don't represent Spin, correct?

MR. CASEY:  Correct, your Honor, but I believe if there was a finding in Spin's favor, as to the common interest agreement, then his assignment from Spin to himself would be valid, as I understand it.  It's a complicated series of events.  However, he does believe that he has an interest in the proceeds.

In fact, if there is litigation on the common interest agreement, and I believe your Honor opined

Page 7

-- I'm still getting caught up to speed, but I believe your Honor opined that you would not be making findings as to the common interest agreement, and that does appear in an order, the order from about a month ago, nearly.  I have it here, Paragraph 8, the August 14th order that your Honor entered to endorse the settlement agreement, Paragraph 8 does make a finding as to determination of the common interest agreement, which would preclude Mr. Lubin from litigating that matter separately in New York, as I understand it.

THE COURT:  Right.

Now you were not here last time, Mr. Leto, so I'll give you the first opportunity to respond.

MR. LETO:  Yes, your Honor.  I think that the order that your Honor entered is expressly in line with what your Honor stated at the hearing.  Your Honor reviewed the common interest agreement, the terms, and the termination notice, and I believe the phrase that your Honor used was it couldn't be any more clear that it's being terminated as a matter of right by Hi Bar based upon the letter from April of 2024.

So I believe that the order is, again, in line with precisely what the Court ruled at the initial motion, and should not be clar -- does not need any further clarification of fact at this point.

OUELLETTE & MAULDIN COURT REPORTERS, INC.
(305) 358-8875

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004    Case 23-01132-EPK    Doc 370-4    Filed 01/13/26    Page 28 of 107    RECEIVED NYSCEF: 01/19/2026

Page 8

THE COURT: All right. So the order at issue is August 14th. It's the order on the joint motion to endorse settlement, and this is what I was trying to figure out, it's not part of the ordered and adjudged, all right, because the ordered and adjudged is -- and that's clear, that I granted the joint motion to endorse the settlement agreement, and that the Court contemplates that this order shall be filed of record in the Bankruptcy Court to inform the Bankruptcy Court that the dispute between Avrumi Lubin and Hi Bar regarding the relative rights and the net proceeds in the Court registry has been resolved by a court of competent jurisdiction, and that would be here.

And so in order to get there -- and then you put -- and I put in there that the Court finds that Avrumi Lubin has no rights or standing to interfere with the Hi Bar settlement based on the plain language of the common interest agreement.

The Court further finds that the common interest agreement was terminated by Hi Bar on April 3rd, 2024, and the Court further notes that Avrumi Lubin took no action to refute Hi Bar's contractually permitted termination until the FVP parties, Franklin parties, and Hi Bar parties came to a settlement agreement.

And then when I went back and looked at

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004    RECEIVED NYSCEF: 01/19/2026

Page 9

that, I mean, the termination wasn't even as to Mr. Lubin. The termination was as to Spin, correct?

MR. LETO: That's right, because Mr. Lubin is not a party to the common interest agreement.

THE COURT: All right, and so I'm not sure -- and I know, Mr. Casey, you're saying that because he had a separate assignment from Spin, he had the right to -- but any objection would have to be standing in the shoes of Spin, that's to be asserted in Spin's rights.

MR. CASEY: Perhaps as to the ability to endorse that settlement, your Honor, but the process with which a determination as to the termination of the common interest agreement, which has a forum selection clause of New York, it was not noticed, there was no evidentiary hearing.

It'd be very difficult for Mr. Lubin to bring in a declaratory action regarding the validity of the common interest agreement with this order, and we would certainly take issue with the process if we were -- I wasn't present, but counsel was just there to -- as to the endorsement of the settlement. So that would be the issue that Mr. Lubin has with the order, coupled with Paragraph 11, where your Honor reviews the common interest agreement, the termination letter, and applicable law, and then determines that Avrumi Lubin does not have any

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004                                          RECEIVED NYSCEF: 01/19/2026

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 220 of 976
Case 23-01132-EPK    Doc 370-4    Filed 01/13/26    Page 30 of 107

interest in the net proceeds.

I understand your Honor is just making a finding as to the ability to endorse the settlement, but there are -- when you couple that with the prior paragraphs, making a finding on the termination, it'd be very difficult for Mr. Lubin to have his day in Court with respect to the common interest agreement.

THE COURT: I mean, if you look at the plain language of the common interest agreement and everything that was presented -- but I can clarify, is there any objection that the Court's findings are limited to the issues raised for purposes of granting the joint motion to endorse settlement?

MR. BRESLIN: Well, Judge, if I may be heard?

We had a hearing on this, your Honor, and Mr. Lubin's attorney was there, and evidence was presented, Judge, and I sent a transcript to your Honor, and your Honor very clearly examined the termination notice that Mr. Leto sent to Spin, and your Honor made a finding regarding that.

And your Honor went on to say in the transcript, and I said that to you in the letter, I could read it to you, it said -- I'll just read it, I'll just read what you said, it said, I'm going to grant the joint

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004
RECEIVED NYSCEF: 01/19/2026

Page 11

motion to approve settlement, and based on just the plain language in the common interest and general litigation agreement, based on the April 3rd, 2024 letter terminating that agreement, and the rights under Paragraph 3 of that agreement, which is the only basis that Mr. Lubin could have to even raise any right to any of these proceeds, I do not see how Mr. Lubin has any right to stand in and contest the settlement.

Certainly, he may have claims against Hi Bar, and against Mr. Leto and whatnot, but that has nothing to do with the settlement for the proceeds of the Bankruptcy Court. So based on all that, I'm granting the joint motion for settlement, and you went on to state that the order should include your comments made at the hearing.

So what I did, Judge, is I put in the order exactly, precisely what your Honor ruled. Your Honor reviewed the termination notice and made a ruling. It was put in the order, and then, of course, I'm personally attacked for somehow trying to sneak something into an order when your Honor precisely ruled on that exact issue, and you took evidence on it.

So I understand that Mr. Lubin is not happy with the ruling. Your Honor made very clear that he could bring any actions he wants against Hi Bar or anybody else,

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004    Case 23-01132-EPK    Doc 370-4    Filed 01/13/26    Page 32 of 107    RECEIVED NYSCEF: 01/19/2026

Page 12

anywhere else he wants, but what your Honor, I would hope, would confine yourself to is the pleadings in this case.

So in this case there was never any issues raised. It was Mr. Lubin that tried to interfere with the parties' settlement, that has already gone over to the Bankruptcy Court. The Bankruptcy Court has already ruled, and the matter is concluded.

So this is, we're trying to -- they're asking you to revisit issues that have been ruled upon, and have been acted upon by the federal court.

So I would absolutely object, Judge. The record is clear. If Mr. Lubin wants to sue Hi Bar in New York, they could argue in New York that it wasn't properly framed here, but they're asking you to litigate it. They're asking you to make a declaratory judgment, and I just think it's inappropriate, Judge, and we object.

THE COURT: All right.

MR. DORSEY: Judge, this is Mr. Dorsey for the Franklin parties.

I'd just add that the order explicitly says, for the reasons stated on the record, which are incorporated by reference. The transcript is incorporated into the order.

So to the extent Mr. Lubin is arguing, well,

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004    Case 23-01132-EPK    Doc 370-4    Filed 01/13/26    Page 33 of 107    RECEIVED NYSCEF: 01/19/2026

Page 13

we want the order to reflect what your Honor ruled at the hearing, the transcript is part of the order, and so if Mr. Lubin wants to file an action in another forum, he can introduce the transcript and say this is what I think it means, but there's no need to move for clarification here.

MR. CASEY: Your Honor, if I may, I don't believe the transcript makes a finding as to the termination of the common interest agreement. It's simply saying that Mr. Lubin does not -- is not the named party to be endorsing the settlement, as I understand it. So he will not be able to litigate the common interest agreement when there's a finding from your Honor that the termination letter was valid and he has no interest.

THE COURT: Well, the common interest agreement is between Hi Bar and Spin.

So, in any event, I think you all are fighting over nothing, except I think we're trying to split hairs here.

I don't know what the claims are in New York, and I in no way was trying to -- trying to resolve a separate claim that Mr. Lubin may have against Hi Bar or Spin or whatnot elsewhere. It was strictly for purposes of determining who has standing, who has the right to enter into a settlement for the proceeds

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004                                 RECEIVED NYSCEF: 01/19/2026

Page 14

in the Bankruptcy Court, and that's the determination I made.

So you have the transcript. I don't think I need to clarify that. To the extent it is, it's clarified in the transcripts we've had that this Court was not trying to say that Mr. Lubin has no claims against Hi Bar. I have no idea what his issues are there.

That being said, I was just saying that he had no right to stand in and contest the settlement or the funds that were in the Bankruptcy Court.

MR. BRESLIN: Thank you, Judge.

THE COURT: That's just the easiest thing to do, the motion for clarification is denied, but you have a record, Mr. Lubin. Good luck, I guess in New York.

MR. CASEY: All right. Thank you.

MR. LETO: Thank you, your Honor.

MR. DORSEY: Thank you.

(Thereupon, the hearing was concluded.)

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004 RECEIVED NYSCEF: 01/19/2026

CERTIFICATION

STATE OF FLORIDA          :

COUNTY OF MIAMI-DADE      :


          I, Cheryl L. Jenkins, RPR, RMR, Shorthand Reporter and Notary Public in and for the State of Florida at Large, do hereby certify that the foregoing proceedings were taken before me at the date and place as stated in the caption hereto on page 1; that the foregoing computer-aided transcription is a true record of my stenographic notes taken at said proceedings.

          WITNESS my hand this 11th day of September, 2025.



          _____

          CHERYL L. JENKINS, RPR, RMR
          Court Reporter and Notary Public
          in and for the State of Florida at Large
          Commission #HH 170910
          December 27, 2025

# EXHIBIT 7

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM     INDEX NO. 650582/2022

NYSCEF DOC. NO. 1004     RECEIVED NYSCEF: 01/19/2026

## Josh Lubin

| | |
|---|---|
| **From:** | Josh Lubin |
| **Sent:** | Sunday, December 28, 2025 5:42 AM |
| **To:** | Alan Crane |
| **Cc:** | |

; Heidi.A.Feinman@usdoj.gov;

**Subject:**     RE: FORMAL TRUSTEE DEMAND -- NOTICE OF INTENT TO SEEK REMOVAL

**Importance:**     High

Alan,

This correspondence is sent to make the record unmistakably clear.

**Failure to respond promptly and substantively to this demand will result in my filing a motion seeking removal of the Chapter 7 Trustee in the Excell Auto estate,** pursuant to **11 U.S.C. § 324,** together with such additional relief as may be warranted under **11 U.S.C. §§ 105(a), 704, and 1104,** based on failure to investigate material facts, abdication of fiduciary duties, and impairment of estate administration.

Silence will be treated as a knowing refusal to act and preserved accordingly.

All rights are expressly reserved.

Avrumi (Josh) Lubin
Pro Se (Individual Capacity Only)
Party in Interest

Heidi A. Feinman, Office of the United States Trustee

Get Outlook for iOS

From: Josh Lubin <josh@spincapital.com>
Sent: Saturday, December 27, 2025 9:02:50 PM
To: Alan Crane <acrane@furrcohen.com>

1

Heidi.A.Feinman@usdoj.gov

<Heidi.A.Feinman@usdoj.gov>;

Subject: Re: FORMAL TRUSTEE DEMAND — DEPOSITION OF SHAYA BAUM (Adv. Pro. No. 23-01132-EPK)

Alan,

This brief reply is sent to **supplement the prior correspondence for notice and preservation only.**

Because the issues identified concern **overlapping assertions of rights, coordination, and litigation positions across related matters,** the scope of the requested deposition of **Shaya Baum** necessarily includes any **communications or coordination involving FVP Opportunity Fund, its CEO, and its counsel,** to the extent such communications relate in any way to:

• asserted or disputed control, ownership, or influence over **Spin Capital LLC and/or Avrumi Lubin** claims
• litigation strategy, funding, or coordination across jurisdictions
• positions taken in reliance on, or in coordination with, Franklin- or Hi Bar-related parties

In addition, to the extent it is contended that ordinary discovery deadlines have closed, the issues raised go directly to **standing, ownership, disclosure, and credibility,** and therefore support **limited post-deadline discovery,** including through trustee-initiated investigation, Rule 2004 examination, or other relief for good cause.

If necessary, I am prepared to **coordinate promptly on an emergency or expedited motion** seeking narrowly tailored discovery limited to these issues, so the record can be developed in an orderly and court-supervised manner.

This clarification does not expand or alter any deadlines or requests previously stated.

Josh
Avrumi (Josh) Lubin
Pro Se (Individual Capacity Only)
Party in Interest

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM                    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1004                                                 RECEIVED NYSCEF: 01/19/2026

From: Josh Lubin <josh@spincapital.com>
Sent: Saturday, December 27, 2025 8:38:57 PM
To: Alan Crane <acrane@furrcohen.com>

; Heidi.A.Feinman@usdoj.gov

<Heidi.A.Feinman@usdoj.gov>;
Subject: Re: FORMAL TRUSTEE DEMAND – DEPOSITION OF SHAYA BAUM (Adv. Pro. No. 23-01132-EPK)

Alan,

This reply is sent to **supplement and clarify** the scope of the prior demand and to ensure the record is complete. It does not withdraw or narrow any aspect of the original request.

In addition to the topics already identified, the deposition of **Shaya Baum** must also encompass **any and all communications, representations, or agreements of any kind—whether written, oral, electronic, informal, or implied**—involving any of the following persons or entities, to the extent they relate in any way to asserted or disputed rights, control, authority, influence, or decision-making over **Spin Capital LLC and/or Avrumi Lubin claims, defenses, or litigation positions:**

• **Franklin Capital Funding, LLC**
• **Shaya Baum**, individually or in any representative capacity
• **Eli Tabak**, identified as an owner of Franklin Capital Funding, LLC
• **Yisroel Herbst**, identified as an owner of Hi Bar Capital
• **Mordy (Mordechai) Herbst**, including in his role assisting with or participating in operations or decision-making for Hi Bar Capital

For the avoidance of doubt and to ensure full disclosure, **Eli Tabak and Yisroel Herbst are blood-related cousins.** That familial relationship is relevant to the scope of discovery and the need to identify any coordination, communications, or understandings—formal or informal—between Franklin-related and Hi Bar-related parties concerning Spin/Lubin rights or litigation positions.

In addition, Mr. Baum's testimony must address **Franklin's prior and ongoing litigation positions** in which Franklin asserted that **Spin Capital LLC and/or Avrumi Lubin were alter egos of Hi Bar Capital.** That inquiry necessarily includes:

• What Franklin, Mr. Baum, or Franklin's representatives **knew or understood** at the time those alter-ego allegations were asserted, including knowledge of the **familial relationship between Franklin's ownership and Hi Bar's ownership**
• Any **internal or external communications** (written or oral) evaluating, discussing, or approving the assertion that Spin/Lubin were alter egos of Hi Bar
• Whether, and to what extent, Franklin **disclosed or did not disclose** the familial relationship between **Eli Tabak and Yisroel Herbst** in courts or proceedings in which those alter-ego allegations were made, including proceedings in **multiple jurisdictions and states**
• Any communications regarding how that relationship was characterized, omitted, or addressed in pleadings, declarations, or litigation strategy

3

This expressly includes, without limitation:

- Any verbal communications, oral discussions, or conversations
- Any written communications, including emails, texts, messaging applications, letters, drafts, or notes
- Any formal or informal agreements, understandings, side agreements, or arrangements
- Any communications through intermediaries, agents, family members, employees, or affiliates
- Any communications or coordination across jurisdictions, proceedings, or courts
- Any communications relating to strategy, funding, direction, control, or influence over litigation involving Spin/Lubin

The purpose of this clarification is to eliminate any ambiguity and to ensure a complete factual record. The Trustee's investigation and any reliance on Franklin-related positions cannot be reasonable or complete without sworn testimony addressing these communications, relationships, and disclosures.

All prior deadlines, reservations of rights, and requests for deposition scheduling remain unchanged.

Josh
Avrumi (Josh) Lubin
Pro Se (Individual Capacity Only)
Party in Interest

Get Outlook for iOS

---

From: Josh Lubin
Sent: Saturday, December 27, 2025 8:03:26 PM
To: Alan Crane <acrane@furrcohen.com>

Heidi.A.Feinman@usdoj.gov

<Heidi.A.Feinman@usdoj.gov>;
Subject: FORMAL TRUSTEE DEMAND — DEPOSITION OF SHAYA BAUM (Adv. Pro. No. 23-01132-EPK)

Alan,

You represent the Chapter 7 Trustee in Adv. Pro. No. 23-01132-EPK, in which Franklin Capital Funding, LLC is a named defendant. Franklin is an active litigant in that proceeding, not a peripheral third party.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004    Case 23-01132-EPK    Doc 370-4    Filed 01/13/26    Page 41 of 107    RECEIVED NYSCEF: 01/19/2026

Further, Franklin and the Trustee are parties to a **formal Common Interest Agreement**, pursuant to which they have aligned interests and have coordinated in the prosecution and litigation of claims arising from the same operative facts and transactions.

This correspondence is sent by me **solely in my individual capacity**, but it concerns and seeks discovery regarding **asserted and disputed rights and control claims relating to Spin Capital LLC and Avrumi Lubin** that are being invoked across multiple proceedings. **Nothing herein should be construed as an appearance for, or representation of, Spin Capital LLC; rather, it is directed to the Trustee's and Franklin's assertions concerning Spin-related rights, authority, and control.**

Accordingly, this email constitutes a **formal demand** that the Trustee promptly coordinate and facilitate the deposition of **Shaya Baum**, CEO of Franklin Capital Funding, LLC.

Mr. Baum is a central and indispensable witness. His sworn testimony is required on issues that directly affect standing, authority, discovery obligations, and the Trustee's ability to administer the estate in good faith. At minimum, his deposition must include full disclosure and testimony concerning:

• **All purported third-party beneficiaries** of the Franklin–Spin assignment, whether disclosed or undisclosed
• Any person or entity that Mr. Baum, Franklin, or any representative has **asserted, claimed, suggested, or implied — formally or informally, verbally or in writing —** to have obtained rights, control, influence, or decision-making authority over **Spin Capital LLC rights and/or Avrumi Lubin claims**
• **Any verbal assertions, oral representations, informal communications, or implied claims of ownership, control, or authority** over Spin/Lubin rights, defenses, or litigation positions, **in any jurisdiction nationwide and in any context whatsoever**
• The identity of any parties coordinating, directing, funding, influencing, or benefiting from litigation positions adverse to Spin/Lubin
• Communications, agreements, understandings, side arrangements, or courses of dealing — formal or informal — relating to any such claims or assertions of control or benefit

These issues are not collateral. Franklin is a party to the adversary proceeding, and the Trustee is in a common-interest posture with Franklin. The Trustee therefore cannot reasonably rely on Franklin's positions, advance estate claims, or oppose defenses without developing a sworn factual record from Franklin's chief executive.

Failure to respond promptly and substantively to this demand will not be treated as benign delay. **Silence or refusal will be preserved as record evidence** of a knowing failure to investigate material facts and may subject the Trustee and involved parties to motions to compel, expedited relief, sanctions, ethical and fiduciary-duty scrutiny, contempt, or other appropriate remedies as determined by the Court.

Please provide **specific deposition dates within the next seven (7) days**, or state unequivocally whether the Trustee is refusing to pursue or facilitate this testimony so the record is clear and appropriate relief may be sought without further notice.

For the avoidance of doubt and to preserve the record, a copy of the **Common Interest Agreement** between the Trustee and Franklin is attached.

All rights are expressly reserved.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1004    RECEIVED NYSCEF: 01/19/2026

Josh
Avrumi (Josh) Lubin
Pro Se (Individual Capacity Only)
Party In Interest

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022

NYSCEF DOC. NO. 1004 RECEIVED NYSCEF: 01/19/2026

# EXHIBIT 8



ORDERED in the Southern District of Florida on August 27, 2025.

Erik P. Kimball
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

AUTO WHOLESALE OF BOCA, LLC,                    Case No. 22-15627-EPK

Debtor.                                         Chapter 7

_____/

### ORDER (I) GRANTING EXPEDITED JOINT MOTION TO ORDER DISTRIBUTION OF AUCTION PROCEEDS TO COUNSEL FOR THE FVP PARTIES PURSUANT TO STATE COURT ORDER, AND (II) DISCHARGING ORDER TO SHOW CAUSE

THIS MATTER came before the Court for hearing on August 27, 2025 on the *Expedited Joint Motion to Order Distribution of Auction Proceeds to Counsel for the FVP Parties Pursuant to State Court Order* (Dkt. No. 954, the "Motion"), and the *Order to Show Cause Why Certain Funds Held by the Clerk Should Not Escheat to the United States Treasury* (Dkt. No. 911). In the Motion, Franklin Capital Funding, LLC; Franklin Capital

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004 RECEIVED NYSCEF: 01/19/2026

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 235 of 976
Case 23-01132-EPK    Doc 370-4    Filed 01/13/26    Page 45 of 107
Case 22-15627-EPK    Doc 965    Filed 08/27/25    Page 2 of 3

Group, LLC; Franklin Capital Management, LLC; FVP Opportunity Fund III, LP; FVP Investments, LLC; FVP Servicing, LLC; and Hi Bar Capital, LLC (together, the "Movants") ask the Court to direct, pursuant to a settlement among the Movants, the release of certain funds held in the registry of the Court.

The history of this matter is set forth in detail in the Court's *Order Denying Expedited Joint Motion* (Dkt. No. 952), which is incorporated here in full. Capitalized terms have the meanings given in that order. The Court ruled that it could not and would not rule on the dispute between Avrumi Lubin and Hi Bar Capital, LLC regarding their relative rights in the Net Proceeds held in the registry of this Court. The Court encouraged the parties to obtain a ruling from another court having competent jurisdiction. They have done so.

In its *Order on Joint Motion to Endorse Settlement* entered on August 14, 2025 in Case No. CACE-22-005125 (Dkt. No. 954 Ex. A, the "State Court Order"), the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida ruled, among other things, that neither Avrumi Lubin nor any of his affiliated entities have any rights to the Net Proceeds and that the Net Proceeds should be distributed to the trust account of counsel for certain of the Movants consistent with the settlement approved by that court. Following the State Court Order, the Movants are the only parties who may seek release of the Net Proceeds consistent with the Sale Order.

In light of the foregoing, it is ORDERED AND ADJUDGED as follows:

1.      The *Expedited Joint Motion to Order Distribution of Auction Proceeds to Counsel for the FVP Parties Pursuant to State Court Order* (Dkt. No. 954) is GRANTED as provided herein.

2.      The Clerk is DIRECTED to disburse the Net Proceeds currently held in the registry of the Court, in the amount of $2,107,548.61 plus accrued interest (if any), to the

order of the law firm Schwartz Breslin PLLC, to be further disbursed according to the settlement approved by the State Court Order.

3. Schwartz Breslin PLLC must contact the Financial Section to obtain the AO 213P form required for disbursement.

4. Any and all objections are OVERRULED.

5. The *Order to Show Cause Why Certain Funds Held by the Clerk Should Not Escheat to the United States Treasury* (Dkt. No. 911) is DISCHARGED.

###

Copy to:

Patrick Dorsey, Esq.

*Attorney Patrick Dorsey is directed to serve a conformed copy of this Order on all appropriate parties and file a certificate of service with the Clerk.*

# EXHIBIT 9

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004 RECEIVED NYSCEF: 01/19/2026

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

FILED-USBC, FLS-MIA
'26 JAN 7 PM1:28

In re:

EXCELL AUTO GROUP, INC.

      Debtor.

Case No. 22-12790-EPK
Chapter 7

_____/

NICOLE TESTA MEHDIPOUR,
as Chapter 7 Trustee for
Excell Auto Group, Inc.,

      Plaintiff,

v.

Adv. Pro. No. 23-01132-EPK

HI BAR CAPITAL, LLC, et al.,

      Defendants.

_____/

## NOTICE OF FILING DECLARATIONREGARDING PRESERVATION NOTICE AND RESPONSE

**PLEASE TAKE NOTICE** that Defendant Avrumi Lubin, individually and as principal of Spin Capital LLC, hereby files the Declaration of Avrumi Lubin Regarding Preservation Notice and Response, attached hereto as Exhibit A.

This filing is made solely to memorialize notice provided, responses received, and positions taken regarding preservation of potentially relevant records. No relief is requested by this Notice.

Dated: January 7 2026

Respectfully submitted,

Josh (Avrumi) Lubin, Defendant, Pro Se
(Individual Capacity Only)
1460 Arboretum Pkwy
Lakewood, NJ 08701
Email: josh@spincapital.com
Phone: (732) 608-4905

1

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022

NYSCEF DOC. NO. 1004

RECEIVED NYSCEF: 01/19/2026

Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 239 of 976

Case 23-01132-EPK Doc 370-4 Filed 01/13/26 Page 49 of 107

Case 23-01132-EPK Doc 362 Filed 01/07/26 Page 2 of 8

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Notice of Filing

and attached Declaration foregoing to be served via the Court's CM/ECF system upon all

counsel of record on January 7, 2026.

Josh (Avrumi) Lubin, Defendant, Pro Se
(Individual Capacity Only)
1460 Arboretum Pkwy
Lakewood, NJ 08701
Email: josh@spincapital.com
Phone: (732) 608-4905

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1004    RECEIVED NYSCEF: 01/19/2026

# EXHIBIT A

**Josh Lubin**

| | |
|---|---|
| **From:** | Josh Lubin |
| **Sent:** | Monday, January 5, 2026 4:01 PM |
| **To:** | Feinman, Heidi A. (USTP) |
| **Cc:** | oig.hotline@usdoj.gov |
| **Subject:** | Formal Escalation — Preservation Obligations and Record Integrity |

**Importance:** High

Ms. Feinman,

Your latest response confirms that you are declining to implement or facilitate any preservation measures in response to my written notice, and that you are refusing to identify any appropriate DOJ or UST contact through whom such preservation should be addressed.

That position is untenable.

Preservation obligations are not triggered by whether an office subjectively views itself as "involved," nor by whether a party has yet retained counsel. They arise when there is reasonable anticipation of litigation, review, or judicial inquiry, and they attach to **records that may be relevant to matters already before the Court or reasonably foreseeable proceedings**—including inter-agency communications, oversight activity, referrals, analyses, and decisions taken or not taken.

You have now stated, repeatedly, that:
- no litigation hold exists,
- no action will be taken in response to written notice,
- and that no further response will be provided.

If it is your position that the United States Trustee Program—and specifically the Miami U.S. Trustee's Office—**possesses no records responsive to the scope of the preservation notice**, that should be stated clearly and unequivocally.
If that is not your position, then preservation is required, and refusing to implement it after notice raises serious record-integrity concerns.

I am not asking you to concede party status, adjudicate merits, or take any litigation position. I am seeking clarity as to whether potentially relevant government records are being preserved or allowed to be destroyed after notice.

Because your responses disclaim responsibility without addressing that core question, and because you have indicated you will not respond further, I am escalating this issue to ensure the record accurately reflects what has occurred.

This communication is intended to memorialize that:
1. formal written notice was provided;
2. preservation was requested;
3. the request was rejected without identification of an alternative mechanism; and

1

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1004    RECEIVED NYSCEF: 01/19/2026

4.    no clarification was provided as to the existence or non-existence of responsive records.

That record will stand on its own.

Josh
Avruml Lubin

Get Outlook for IOS

___

**From:** Feinman, Heidi A. (USTP) <Heidi.A.Feinman@usdoj.gov>
**Sent:** Monday, January 5, 2026 3:30:33 PM
**To:** Josh Lubin <Josh@spincapital.com>
**Subject:** RE: IMMEDIATE DOJ-WIDE LITIGATION HOLD & PRESERVATION DIRECTIVE — NO EXCEPTIONS

Mr. Lubin:

Again if you are making a request for a "litigation hold" or some other retention of information by the the United States Trustee Program or any other DOJ agency, then it needs to be done in an appropriate manner and and to the appropriate parties. An email to me is not sufficient and will not result in anything.
I encourage as I have in the past to please obtain counsel to assist you.

I will not respond further regarding this email.

*Heidi A. Feinman*
Assistant United States Trustee
Office of United States Trustee
Department of Justice
Email: *Heidi.A.Feinman@usdoj.gov*
Telephone (305) 536-7472

___

**From:** Josh Lubin <Josh@spincapital.com>
**Sent:** Monday, January 5, 2026 5:27 PM
**To:** Feinman, Heidi A. (USTP) <Heidi.A.Feinman@usdoj.gov>
**Subject:** (EXTERNAL) Re: IMMEDIATE DOJ-WIDE LITIGATION HOLD & PRESERVATION DIRECTIVE — NO EXCEPTIONS
**Importance:** High

Ms. Feinman,

Your response reflects a fundamental misunderstanding of the purpose and legal effect of a preservation notice.

The litigation hold and preservation directive was not predicated on the Miami U.S. Trustee's Office being a named litigant, nor on the existence of a currently pending action styled against that office.
Preservation obligations arise upon reasonable anticipation of litigation or review, and they extend to

2

records that may be relevant to matters before the Court, including inter-agency communications, oversight activity, referrals, analyses, and decisions taken or not taken.

Whether the Miami U.S. Trustee's Office views itself as "involved" is not determinative. The question is whether the office possesses, controls, or has access to information potentially relevant to ongoing or reasonably foreseeable proceedings involving Spin Capital, related estates, or issues already before Judge Kimball. If so, preservation duties attach as a matter of law.

To be clear:
- This notice was issued to ensure preservation of potentially relevant materials across DOJ and UST components;
- It does not require your office to concede party status;
- It does not require a determination on the merits;
- It does require that records not be destroyed, altered, or lost once notice is given.

Your statement that "no litigation hold exists" is concerning, as it suggests that preservation has not been implemented despite formal written notice. If your position is that the Miami U.S. Trustee's Office does not possess any records responsive to the scope described, that should be stated explicitly. Otherwise, the appropriate course is preservation, not dismissal.

Please clarify, in writing:
1. Whether the Miami U.S. Trustee's Office possesses or controls any records falling within the scope of the preservation notice previously sent; and
2. Whether steps have been taken to ensure that any such materials are preserved pending further direction.

This clarification is necessary to ensure the record is accurate and to avoid any misunderstanding regarding preservation obligations going forward.

Josh
Avrumi Lubin

Get Outlook for iOS

---

From: Feinman, Heidi A. (USTP) <Heidi.A.Feinman@usdoj.gov>
Sent: Monday, January 5, 2026 3:22:24 PM
To: Josh Lubin <josh@spincapital.com>
Subject: RE: IMMEDIATE DOJ-WIDE LITIGATION HOLD & PRESERVATION DIRECTIVE — NO EXCEPTIONS

Mr. Lubin:
The Miami United States Trustee's Office is not and has not been involved in any litigation with you or Spin Capital, LLC before any Court and no litigation hold exists.
To the extent you believe otherwise, you will need to contact the appropriate parties in the appropriate manner.
To the extent you have litigation with other agencies in the Department of Justice, you will need to contact them in the appropriate manner.
This email is insufficient.

3

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004    RECEIVED NYSCEF: 01/19/2026

*Heidi A. Feinman*
Assistant United States Trustee
Office of United States Trustee
Department of Justice
Email: *Heidi.A.Feinman@usdoj.gov*
Telephone (305) 536-7472

---

From: Josh Lubin <josh@spincapital.com>
Sent: Friday, January 2, 2026 9:02 PM
To: Feinman, Heidi A. (USTP) <Heidi.A.Feinman@usdoj.gov>
Cc: Feedback, Civil <cfeedbac@CIV.USDOJ.GOV>; NSDFOIA (NSD) <NSDFOIA@usdoj.gov>; JMDFoia (JMD) <Ex_JMDFola@jmd.usdoj.gov>; Jeffrey Chubak <jchubak@aminllc.com>; Avery Samet <asamet@aminllc.com>; JOEL ARESTY <aresty@mac.com>; Stanley Casey <scasey@sqcaseylaw.com>; Browndorf Eric A. <ebrowndorf@cooperlevenson.com>; Rubley William <wrubley@cooperlevenson.com>; Steve Wells <steve@wellspc.com>; Will Parsons <will@wellspc.com>; Ian Williamson <iwilliamson@manteselaw.com>; Sherri Sikorski <ssikorski@manteselaw.com>; Mack Wilson <mack@wilson-pllc.com>; Eric Lockridge <eric.lockridge@keanmiller.com>; Division, Criminal (CRM) <Criminal.Division@usdoj.gov>; antitrust@justice.gov
Subject: [EXTERNAL] RE: IMMEDIATE DOJ-WIDE LITIGATION HOLD & PRESERVATION DIRECTIVE — NO EXCEPTIONS
Importance: High

Heidi,

This email constitutes a **formal, immediate, and non-negotiable litigation hold and preservation directive.** You are hereby directed to **ensure this hold is issued, enforced, and confirmed across every DOJ department, component, office, task force, and subdivision nationwide,** without exception.

This preservation obligation applies **immediately** and covers **all records in any form,** whether maintained centrally or individually, including but not limited to: emails, texts, messaging apps (Slack, Teams, Signal, WhatsApp, iMessage), call logs, voicemails, notes, drafts, memoranda, internal communications, metadata, audit logs, databases, shared drives, cloud storage, backups, personal devices used for government business, and any third-party or contractor-maintained systems.

The scope expressly includes **any material referencing or relating to me, Spin Capital LLC, affiliated entities, related litigations, investigations, referrals, inter-agency communications, internal deliberations, analyses, instructions, preservation decisions, or decisions not to act.** This includes communications between DOJ components, with **U.S. Trustees, courts, outside counsel, regulators, law enforcement, or private parties.**

No deletion, overwriting, auto-purging, alteration, concealment, migration without retention, or "routine" records management is permitted. **Preservation overrides all ordinary retention schedules.** Failure to preserve—even inadvertently—will be treated as spoliation and addressed accordingly.

I expect you to:

1. **Distribute this hold DOJ-wide** (all divisions, districts, components, and offices nationwide);

4

2. **Confirm in writing** that distribution has occurred;

3. **Confirm the mechanism of enforcement** (who issued it, how it was implemented, and how compliance is monitored);

4. **Identify a point of contact** responsible for DOJ-wide compliance.

This notice is issued to create a clear and permanent record. Nothing in this directive waives any rights, remedies, or privileges. All rights are expressly reserved.

**This notice is re-sent solely to correct a non-routable Antitrust Division address; all other recipients received the original transmission.**

Please confirm compliance **promptly.**

Josh
Avruml Lubin

# EXHIBIT 10

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF NEW YORK

TETON LIFE LLC as Assignee of the Rights of
Spin Capital, LLC,

Plaintiff,

V

GOLDEN FOOTHILL INSURANCE SERVICES LLC,
LIFE FACTOR II LLC, LIFE SHARES II LLC, EL DORADO
HILLS INSURANCE SOLUTIONS, INC., LONE WOLF
INSURANCE SERVICES, INC., ELDO INVESTMENTS, LLC,
THE GENESIS LS FUND, LLC, KTL HOLDINGS, INC.,
ZURICH AMERICAN LIFE INSURANCE CO., ACCORDIA
LIFE AND ANNUITY COMPANY, JOHN HANCOCK LIFE
INSURANCE COMPANY, BRIGHTHOUSE LIFE INSURANCE
CO., CAP FACTOR, LLC, STEFAN LEER, TATANISHA LEER,
LIFE SHARES 1019, LLC, DRVN HOLDINGS, LLC,

Defendants,

and

STEPHEN MARK BROCKMAN, AARON DAVISON,
NEILESH DESAI, JENNIFER PURSLEY, MICHAEL
SCHWARTZ, SHEILA SCHWARTZ, THE CHARISSA &
TONEY TRUST, THE CHARISSA TONEY LIVING TRUST,
MATTHEW TROY, and AMERICAN RIVER AG, INC.

Intervenor- Defendants

---

**Index No. 650582/2022**

## ORDER TO SHOW CAUSE
## FOR EXPANDED RECEIVER AUTHORITY

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022

NYSCEF DOC. NO. 1004   Case 23-01132-EPK   Doc 370-4   Filed 01/13/26   Page 58 of 107   RECEIVED NYSCEF: 01/19/2026

Upon the Affirmation of Josh (Avrumi) Lubin, affirmed on January 4, 2026, and the exhibits attached thereto; upon the Memorandum of Law in Support of Plaintiff's Motion for an Order to Show Cause for Expanded Receiver Authority; and upon all prior proceedings had herein;

WHEREAS, this application seeks limited, administrative, and preservation-focused relief to assist the Court in supervising its appointed Temporary Receiver and maintaining a complete and accurate record concerning the administration of the Receivership Policies, without adjudicating any merits issues;

NOW, let the defendants and all other interested parties show cause before this Court, at the Courthouse located at 60 Centre Street, New York, New York, in Part ___, on the ___ day of _____, 2026, at ____ _.m., or as soon thereafter as counsel may be heard, why an Order should not be entered as follows:

1. **Preliminary Identification and Reporting of Life Insurance Policies.**

Authorizing the Temporary Receiver, Fred Stevens, Esq., on a preliminary and non-adjudicative basis, to identify and report to the Court regarding the life insurance policies currently within the Receivership Policies (as defined in the Order Appointing Temporary Receiver dated January 4, 2023), as well as any additional policies reasonably connected to defendants or their affiliates that appear relevant to the administration or preservation of estate assets, with reference to Schedule A (Exhibit F to the Lubin Affirmation) and the LS-Summary spreadsheet (Exhibit G), solely for purposes of Court supervision, including, without making any findings, the reporting of:

(a) the apparent current status of each policy (e.g., in force, lapsed, surrendered, matured, transferred, or terminated);

(b) the date and any known circumstances of any lapse, surrender, or transfer;

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004                                          RECEIVED NYSCEF: 01/19/2026

(c) whether any policies appear to have been transferred, assigned, or encumbered, and whether such actions were subject to prior Court approval; and

(d) available carrier correspondence or notices concerning policy status.

## 2. Authorizing Preliminary Tracking and Reporting of Funding Advances.

Authorizing the Receiver to maintain and periodically report to the Court a factual summary of funding advances made by Spin Capital, LLC and/or Teton Life LLC to the receivership estate, as reflected in the Receiver's Accounting (Exhibit C), solely for purposes of transparency and Court oversight, without ordering repayment, determining priority, or adjudicating the validity or enforceability of any such advances, all of which are expressly reserved.

## 3. Clarifying Entity and Counsel Roles.

Authorizing the Receiver, on a preliminary and non-adjudicative basis, to identify and report to the Court the roles, if any, of the following entities or individuals with respect to the origination, servicing, transfer, or enforcement of the Receivership Policies, solely for purposes of Court supervision, and to seek non-privileged factual clarification or non-duplicative existing documents reasonably necessary to carry out the Court's prior orders:

(a) Golden Foothill Insurance Services LLC, Life Factor II LLC, Life Shares II LLC, Stefan S. Leer, and CapFactor, Inc.;

(b) Franklin Capital Group, LLC and related entities;

(c) Hi Bar Capital, LLC;

(d) FVP Servicing, LLC and related entities;

(e) the Chapter 7 trustee for Excell Auto Group, Inc.; and

(f) counsel, including Matt Leto, solely to the extent their non-privileged factual involvement bears on the Receivership Policies.

**4. Preliminary Review and Reporting Regarding Carrier-Related Issues.**

Authorizing the Receiver, on a preliminary and non-adjudicative basis, to review and report to the Court regarding carrier-related matters affecting estate administration, including:

(a) the John Hancock "Utsick" policy, including the procedural status of enforcement mechanisms relating to the outstanding contempt judgment; and

(b) the Brighthouse interpleader proceeding and any related carrier-initiated proceedings, including whether Court authorization may be required for participation or intervention; provided, however, that nothing herein authorizes the commencement of new litigation or enforcement activity absent further order of this Court.

**5. Policy Map and Status Reporting.**

ORDERED that the Receiver shall file an initial Policy Map Report within thirty (30) days of entry of this Order identifying policies reviewed, apparent status, and any material information gaps, and shall thereafter file status reports every thirty (30) days for a period of ninety (90) days, unless otherwise ordered.

**6. Authorizing Continued Tracking and Oversight of Cross-Forum Coordination Costs.**

Authorizing the Receiver to continue tracking and submitting for Court review fees and expenses associated with investigative or coordination work involving related federal proceedings, subject

to this Court's quarterly fee review, to avoid fragmented or duplicative billing and ensure continued Court oversight of costs.

**7. Reaffirmation of Existing Cooperation Obligations.**

Reaffirming that all parties, including defendants, intervenor-defendants, and their counsel, agents, and representatives, shall comply with the cooperation obligations set forth in paragraph 13 of the January 4, 2023 Receivership Order, including responding to reasonable, non-duplicative requests for information or documents. Absent agreement or further order, responses shall be provided within ten (10) business days.

**8. Limited Subpoena Authority.**

ORDERED that the Receiver is authorized to issue subpoenas duces tecum, limited to insurance carriers and policy servicers only, for documents reasonably necessary to determine policy status, ownership or beneficiary designations, assignment history, premium payment history, lapse or termination history, and carrier correspondence, solely for reporting and preservation purposes.

**9. Reserving All Merits Issues.**

Confirming that nothing in this Order constitutes any determination of liability, ownership, standing, litigation authority, veil-piercing, fraud, sanctions, lien priority, or the validity or effect of any assignment, nor interprets or disturbs any ruling of another court, all of which are expressly reserved.

Upon the papers submitted and sufficient cause appearing therefor, it is **ORDERED** that service of a copy of this Order to Show Cause and the supporting papers upon which it is based shall be made upon defendants and all interested parties by [SERVICE METHOD] on or before [DATE], and that such service shall be deemed good and sufficient service; and it is further

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004   RECEIVED NYSCEF: 01/19/2026

ORDERED that any opposition papers shall be served and filed on or before [DATE]; and it is further ORDERED that any reply papers shall be served and filed on or before [DATE]; and it is further ORDERED that, pending the hearing on this Order to Show Cause, all parties subject hereto shall preserve documents and communications relating to the Receivership Policies and their administration, consistent with the limited, preservation-focused scope of this Order.

Dated: _____, 2026
New York, New York


_____
HON. JOEL M. BANNON
Justice, Supreme Court


Respectfully submitted,

Josh (Avrumi) Lubin


*/s/ Josh (Avrumi) Lubin*
Josh (Avrumi) Lubin
Pro Se
Party of Interest
1460 Arboretum Parkway
Lakewood, NJ 08701
Tel: (718) 570-3796
Email: josh@spincapital.com

FILED: NEW YORK COUNTY CLERK 01/19/2026, 05:06 PM

NYSCEF DOC. NO. 1004

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

# EXHIBIT 11

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1002    Case 23-01132-EPK    Doc 370-4    Filed 01/13/26    Page 64 of 107    RECEIVED NYSCEF: 01/19/2026

FILED: NEW YORK COUNTY CLERK 01/06/2026 01:05 AM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 958    RECEIVED NYSCEF: 01/07/2026

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF NEW YORK

TETON LIFE LLC as Assignee of the Rights of
Spin Capital, LLC,

Plaintiff,

v

GOLDEN FOOTHILL INSURANCE SERVICES LLC,
LIFE FACTOR II LLC, LIFE SHARES II LLC, EL DORADO
HILLS INSURANCE SOLUTIONS, INC., LONE WOLF
INSURANCE SERVICES, INC., ELDO INVESTMENTS, LLC,
THE GENESIS LS FUND, LLC, KTL HOLDINGS, INC.,
ZURICH AMERICAN LIFE INSURANCE CO., ACCORDIA
LIFE AND ANNUITY COMPANY, JOHN HANCOCK LIFE
INSURANCE COMPANY, BRIGHTHOUSE LIFE INSURANCE
CO., CAP FACTOR, LLC, STEFAN LEER, TATANISHA LEER,
LIFE SHARES 1019, LLC, DRVN HOLDINGS, LLC,

Defendants.

and

STEPHEN MARIK BROCKMAN, AARON DAVISON,
NEILESH DESAI, JENNIFER PURSLEY, MICHAEL
SCHWARTZ, SHEILA SCHWARTZ, THE CHARISSA &
TONEY TRUST, THE CHARISSA TONEY LIVING TRUST,
MATTHEW TROY, and AMERICAN RIVER AG, INC.

Intervenor- Defendants

Index No. 650582/2022

AFFIRMATION OF JOSH (AVRUMI) LUBIN IN SUPPORT OF
MOTION FOR EXPANDED RECEIVER AUTHORITY

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004    Case 23-01132-EPK    Doc 370-4    Filed 01/13/26    Page 65 of 107    RECEIVED NYSCEF: 01/18/2026

FILED: NEW YORK COUNTY CLERK 01/06/2026 01:05 AM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 958    RECEIVED NYSCEF: 01/07/2026

Josh (Avrumi) Lubin, pursuant to CPLR 2106, affirms the following under penalty of perjury:

## BACKGROUND AND PERSONAL KNOWLEDGE

1. I am the principal of Spin Capital, LLC ("Spin Capital"), which originally filed this action. In 2025, Teton Life LLC was substituted as plaintiff as assignee of Spin Capital's rights. I have personal knowledge of the facts set forth herein and am familiar with the history of this litigation, the receivership, and the matters described below.

2. I submit this affirmation in support of Plaintiff's motion for an Order to Show Cause.

## CPLR 2217(b) – BASIS FOR ORDER TO SHOW CAUSE

2A. This application is properly brought by Order to Show Cause pursuant to CPLR 2217(b) because immediate and expedited relief is necessary to preserve receivership assets and permit the Court's Temporary Receiver to timely identify, assess, and report on the status of life insurance policies that are the subject of existing Court orders.

2B. Proceeding by ordinary notice of motion would result in delay that risks further lapse, transfer, dissipation, or loss of control over policies and related proceeds, frustrates compliance with prior Court directives, and impairs the Receiver's ability to report accurate information to the Court.

2C. The relief requested is limited, preservation-focused, and seeks Court supervision and reporting only. No adjudication of liability or merits is requested at this time.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022

FILED: NEW YORK COUNTY CLERK 01/06/2026 01:05 AM INDEX NO. 650582/2022

NYSCEF DOC. NO. 958

RECEIVED NYSCEF: 01/07/2026

2D. For these reasons, an Order to Show Cause is necessary and appropriate to maintain the status quo and protect the receivership estate pending further proceedings.

3. This motion seeks targeted, preservation-focused relief to authorize the Court-appointed Temporary Receiver to complete a policy-by-policy identification and reporting process and report to the Court regarding the status of policies and compliance with prior Court orders. It does not seek adjudication of ultimate liability, fraud, ownership, veil-piercing, sanctions, or lien priority, all of which are expressly reserved for future motion practice and/or trial.

## THE LOAN AND RECEIVER APPOINTMENT

4. Spin Capital made loans to defendants Stefan Leer and his affiliated entities, including Golden Foothill Insurance Services LLC, Life Factor II LLC, and Life Shares II LLC, secured by life insurance policies. Following the loans, disputes arose concerning defendants' performance under the loan agreements and the status, control, and maintenance of the pledged life insurance policies, including questions regarding transfers to third parties and lapses associated with nonpayment of premiums. Attached hereto as Exhibit A is a true and correct copy of the John Hancock Collateral Assignment evidencing the pledged collateral.

5. On October 29, 2022, this Court granted Spin Capital's motion for appointment of a temporary receiver. By Order Appointing Temporary Receiver entered January 4, 2023, Fred Stevens, Esq. of Klestadt Winters Jureller Southard & Stevens, LLP was appointed as Temporary Receiver over the specified life insurance policies (the "Receivership Policies"). Attached hereto as Exhibit B is a true and correct copy of the Order Appointing Temporary Receiver.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1001
RECEIVED NYSCEF: 01/19/2026

FILED: NEW YORK COUNTY CLERK 01/06/2026 01:05 AM INDEX NO. 650582/2022
NYSCEF DOC. NO. 958
RECEIVED NYSCEF: 01/07/2026

## SPIN/TETON FUNDING OF THE RECEIVERSHIP

6. Since the Receiver's appointment, Spin Capital (now Teton) has funded the receivership operations at the Receiver's request. Attached hereto as Exhibit C is a true and correct copy of the Receiver's Accounting to February 28, 2025, which reflects aggregate Spin/Teton advances and the estate's current cash position.

7. The Receiver's accounting reports that Spin Capital advanced a total of $1,536,406.93 in principal to fund the receivership. According to the Accounting, such funds were applied toward insurance premiums, carrier payments, receiver fees, and other costs associated with the administration and maintenance of the Receivership Policies.

## THE RECEIVER'S REPORTS AND WORK

8. The Receiver has provided regular reports to the Court regarding the administration of the Receivership Policies and related matters. Attached hereto as Exhibit D is a true and correct copy of a comprehensive Affidavit of Fred Stevens. This affidavit reflects the Receiver's reporting to the Court regarding his activities and observations in connection with the receivership.

## THE HANCOCK/UTSICK CONTEMPT

9. In or about August 2023, Life Shares II LLC received approximately $1.985 million in death benefit proceeds from the John Hancock "Utsick" policy. Those proceeds were not remitted to the Receiver following their receipt, notwithstanding prior Court orders addressing turnover obligations, as determined in subsequent Court rulings.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1000
Case 23-01132-EPK  Doc 370-4  Filed 01/13/26  Page 68 of 107  RECEIVED NYSCEF: 01/18/2026
FILED: NEW YORK COUNTY CLERK 01/06/2026 01:05 AM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 958                                  RECEIVED NYSCEF: 01/07/2026

10. Attached hereto as Exhibit E is a true and correct copy of the Order imposing turnover obligations.

11. To date, the Hancock policy proceeds have not been remitted to the Receiver, and issues concerning compliance with the Court's turnover directives remain outstanding.

## CAPFACTOR AND ADDITIONAL POLICIES

12. Attached hereto as Exhibit F is a true and correct copy of Schedule A, which identifies life insurance policies connected to defendants and their affiliates. Schedule A categorizes policies as: (A) nine policies previously pledged in connection with the Spin loan; and (B) additional policies identified in Leer portfolios, carrier records, and related transactions, including policies issued by Zurich, AXA, John Hancock, United of Omaha, Hartford, VOYA, New York Life, Allianz, Nassau, and Royal Neighbors.

13. Attached hereto as Exhibit G is a true and correct copy of the LS-Summary case data extract, which reflects a broader set of policies, insureds, and carriers associated with the Receivership Policies. The LS-Summary reflects aggregate face amounts of approximately $108 million across this broader set of policies. As reflected in the record, this policy universe has not previously been fully mapped within the New York receivership.

14. Based on my review of the foregoing materials, including the exhibits referenced above, there appear to be additional life insurance policies originated or serviced by defendants or their affiliates that have not been fully identified in the receivership record. The status of certain such policies, including whether they remain in force, have lapsed, been surrendered, or been transferred, is not fully reflected in the materials currently before the Receiver.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1004
INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

FILED: NEW YORK COUNTY CLERK 01/06/2026 01:05 AM
NYSCEF DOC. NO. 958
INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/07/2026

## THE BRIGHTHOUSE MATTER

15. In addition to the John Hancock matter, the Receiver has reported on a pending Brighthouse matter involving approximately $9 million in disputed proceeds. As reflected in the Receiver's reports, Brighthouse has commenced an interpleader proceeding and/or taken the position that competing claims to the proceeds require court direction.

16. The Receiver has coordinated with federal courts and insurance carriers in connection with related interpleader proceedings and has billed those coordination efforts to the receivership estate in this action. As reflected in the Receiver's accountings, approximately $300,000 from the Brighthouse and/or Utsick-related funds held at Wilmington Trust has been transferred to the receivership account.

## DECEMBER 2025 CONFERENCE

17. I was present at the December 15, 2025 status conference before Justice Bannon. At that conference, the Court addressed, among other matters, the Receiver's ability to obtain complete policy information, the continued non-payment of the John Hancock proceeds, and questions concerning additional policies and entities potentially connected to the receivership.

18. By Order dated December 16, 2025, the Court directed counsel to address these issues. Attached hereto as Exhibit H is a true and correct copy of the December 16, 2025 Order.

## RECENT SETTLEMENT DISPUTES AND CREDIBILITY ISSUES

19. On December 18, 2025, the Court granted the motion to intervene filed by the 1019 Investor Group and added Life Shares 1019, LLC and DRVN Holdings, LLC as defendants. Attached hereto as Exhibit I is a true and correct copy of that Decision and Order.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 260 of 976

Case 23-01132-EPK    Doc 370-4    Filed 01/13/26    Page 70 of 107    RECEIVED NYSCEF: 01/19/2026

FILED: NEW YORK COUNTY CLERK 01/06/2026 01:05 AM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 958    RECEIVED NYSCEF: 01/07/2026

## NEED FOR EXPANDED RECEIVER AUTHORITY

20. This application does not seek to adjudicate, revisit, or challenge any rulings issued by courts in other jurisdictions. Any references to proceedings in other forums, including bankruptcy or out-of-state litigation, are included solely to permit the Receiver, as a neutral officer of this Court, to identify and report asserted interests, claimed authority, and positions taken by parties or fiduciaries, without making any determination as to ownership, standing, or litigation rights, all of which are expressly reserved.

21. Based on my involvement in this litigation and my review of the record, I believe that limited, preservation-focused expansion of the Receiver's authority is necessary to permit the Receiver to report to the Court regarding the following matters, without making any findings or adjudicating any rights:

(a) identification and preliminary mapping of life insurance policies connected to defendants and their affiliates, including cross-referencing Schedule A and the LS-Summary with available carrier information;

(b) identification of policies that appear to have lapsed, been transferred, or been surrendered without prior Court approval;

(c) clarification, on a factual and non-adjudicative basis, of the roles of third-party entities including Franklin Capital Group, Hi Bar Capital, FVP Servicing, and the Chapter 7 trustee for Excell Auto Group, Inc., insofar as those roles relate to the administration of the Receivership Policies;

(d) reporting to the Court regarding the procedural status of enforcement-related matters, including the John Hancock contempt and the Brighthouse interpleader proceeding;

(e) maintenance and reporting of records concerning funding advances made by Spin Capital and/or Teton Life LLC to the receivership estate, for purposes of transparency and later adjudication; and

(f) obtaining non-privileged factual clarification and non-duplicative documents from counsel and servicers, as necessary to carry out the reporting and preservation functions described herein.

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 261 of 976
Case 23-01132-EPK    Doc 370-4    Filed 01/13/26    Page 71 of 107

22. Plaintiff consents to the disclosure of non-privileged factual information by its counsel to the Receiver to the extent necessary to permit the Receiver to carry out the reporting and preservation functions described herein.

23. Since his appointment, the Receiver has submitted periodic reports to the Court concerning the administration of the Receivership Policies, including interactions with insurance carriers, preservation efforts, and related matters. The relief requested herein would permit the Receiver to continue reporting to the Court on these issues within a defined and supervised scope.

24. This motion seeks preservation- and administration-related relief only. It does not seek any adjudication of liability, ownership, fraud, sanctions, or lien priority. All such issues are expressly reserved for future motion practice and/or trial. The requested relief is intended solely to assist the Court in maintaining oversight of the receivership and developing a complete factual record prior to any merits determinations.

## CONCLUSION

25. For the foregoing reasons, I respectfully request that the Court grant the relief requested in the accompanying Memorandum of Law and sign the proposed Order to Show Cause.

I affirm under penalty of perjury that the foregoing is true and correct.

Dated: _____, 2026
New York, New York

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1004    Case 23-01132-EPK    Doc 370-4    Filed 01/13/26    Page 72 of 107    RECEIVED NYSCEF: 01/19/2026

FILED: NEW YORK COUNTY CLERK 01/06/2026 01:05 AM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 958    RECEIVED NYSCEF: 01/07/2026

HON. JOEL M. BANNON
Justice, Supreme Court
Submitted by:

Respectfully submitted,

Josh (Avrumi) Lubin

/s/ Josh (Avrumi) Lubin
Josh (Avrumi) Lubin
Pro Se
Party of Interest
1460 Arboretum Parkway
Lakewood, NJ 08701
Tel: (718) 570-3796
Email: josh@spincapital.com

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1004    Case 23-01132-EPK    Doc 370-4    Filed 01/13/26    Page 73 of 107    RECEIVED NYSCEF: 01/19/2026

# EXHIBIT 12

Case 23-01132-EPK   Doc 383-1   Filed 01/22/26   Page 264 of 976

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004   Case 23-01132-EPK   Doc 370-4   Filed 01/13/26   Page 74 of 107   RECEIVED NYSCEF: 01/19/2026

Case 1:24-cv-08515-AS   Document 114   Filed 01/08/26   Page 1 of 2

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

GOLDEN FOOTHILL INSURANCE SERVICES, LLC,
LIFE FACTOR II, LLC, LIFE SHARES II, LLC,
EL DORADO HILLS INSURANCE SOLUTIONS, INC.,          Case No. 1:24-cv-08515-AS
LONE WOLF INSURANCE SERVICES, INC.,
ELDO INVESTMENTS, LLC, THE GENESIS LS FUND, LLC,
KTL HOLDINGS, INC., and TATANISHA LEER,

        Plaintiffs,

v.

SPIN CAPITAL, LLC, AVRUMI (a/k/a JOSH) LUBIN,
BMF ADVANCE LLC, GAVRIEL YITZCHAKOV
a/k/a GABE ISAACOV, HI BAR CAPITAL, LLC,
YOEL GETTER a/k/a JOEL GETA, and
YISROEL HERBST,

        Defendants.

**NOTICE OF LIMITED PRO SE APPEARANCE**
*(Individual Capacity Only; Limited Purpose)*

Defendant Josh (Avrumi) Lubin respectfully submits this Notice to clarify his status for a limited and specific purpose.

Mr. Lubin is presently represented by counsel of record in this action. However, counsel has declined to pursue a contemplated motion to disqualify opposing counsel based on an asserted conflict of interest.

Accordingly, Mr. Lubin hereby provides notice that he is appearing on his own behalf, in his **individual capacity only, and for the limited purpose of requesting a pre-motion conference** pursuant to the Court's Individual Rules concerning a contemplated motion to disqualify counsel.

This limited pro se appearance is not intended to, and does not, terminate or substitute existing counsel of record for any other purpose, nor does it apply to any entity defendant.

Dated: January 8, 2026

Respectfully submitted,

/s/ *Josh Lubin*
Josh (Avrumi) Lubin
Defendant (Individual Capacity Only)
1460 Arboretum Parkway

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022

NYSCEF DOC. NO. 1004

Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 265 of 976

Case 23-01132-EPK Doc 370-4 Filed 01/13/26 Page 75 of 107

RECEIVED NYSCEF: 01/19/2026

Case 1:24-cv-08515-AS Document 114 Filed 01/08/26 Page 2 of 2

Lakewood, NJ 08701
Tel: (718) 570-3796
Email: josh@spincapital.com

# EXHIBIT 13

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004   RECEIVED NYSCEF: 01/19/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**Golden Foothill Insurance Services, LLC, et al.**
**v.**
**Spin Capital, LLC, et al.**

Case No. 1:24-cv-08515-AS

Josh (Avrumi) Lubin
Pro Se Defendant
1460 Arboretum Parkway
Lakewood, NJ 08701
Tel: (718) 570-3796
Email: josh@spincapital.com

January 8, 2026

Honorable Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Dear Judge Subramanian:

I respectfully request a pre-motion conference pursuant to Your Honor's Individual Rules in advance of a contemplated motion to disqualify Matthew Leto and the Leto Law Firm from representing Hi Bar Capital, LLC, or any party adverse to me or Spin Capital, LLC, in this action.

The contemplated motion is based on an alleged non-waivable conflict of interest arising from Mr. Leto's prior joint representation of me and Spin Capital, LLC pursuant to a written engagement agreement, followed by his current representation of an adverse party in this action concerning the same transactions and nucleus of operative facts. I believe the contemplated motion raises issues appropriate for Court guidance under the Second Circuit's standards governing attorney disqualification.

Prior to submitting this request, I provided written notice to counsel of record identifying the asserted conflict and seeking to resolve the issue without Court intervention. Those efforts were unsuccessful, and I therefore submit this request in accordance with the Court's pre-motion conference requirement.

I respectfully request a telephonic or in-person conference at the Court's convenience and will promptly coordinate with opposing counsel as directed by the Court.

Thank you for the Court's consideration.

Respectfully submitted,

/s/ Josh Lubin
Josh (Avrumi) Lubin
Defendant (Individual Capacity Only)

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM          INDEX NO. 650582/2022

NYSCEF DOC. NO. 1004                                      RECEIVED NYSCEF: 01/19/2026

# EXHIBIT 14

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004   Case 23-01132-EPK   Doc 370-4   Filed 01/13/26   Page 80 of 107   RECEIVED NYSCEF: 01/19/2026

## Josh Lubin

| | |
|---|---|
| **From:** | Josh Lubin |
| **Sent:** | Monday, January 12, 2026 1:01 PM |
| **To:** | 'Heidi.A.Feinman@usdoj.gov'; 'oig.hotline@usdoj.gov'; 'ustp.region21@usdoj.gov'; |
| **Cc:** | 'Bradford Cohen Law';"Michael McMullen'; 'Patrick Dorsey'; 'Stanley Casey'; 'JOEL ARESTY'; 'klee@feenixpartners.com'; 'alankartenlaw@gmail.com'; 'Moore, Melissa'; 'Avery Samet'; 'Jeffrey Chubak'; 'Fred Stevens'; 'Shaya Baum'; 'Ian Williamson'; 'Sherri Sikorski'; 'Alan Crane'; 'Feinman, Heidi A. (USTP)'; 'michael@blfmiami.com'; 'jordan@blfmiami.com'; 'ustp.region21@usdoj.gov'; 'Adam Behrendt'; 'Brad S. Shraiberg'; 'david@softnesslaw.com'; 'Wiegert, Joel L.'; 'Jerry Breslin'; 'Reilly, Thomas'; 'Vicchairelli, James'; 'RikshpunA@dany.nyc.gov'; 'PayneC@dany.nyc.gov'; 'Matthew Leto'; 'Brian S. Dervishi'; 'Documents Service of Court'; 'Luke T. Jacobs'; 'Browndorf Eric A.'; 'William Rubley'; 'criminal.division@usdoj.gov'; 'USAFLS-CitizenComplaints (USAFLS)'; 'USAFLS-CitizenCompla@usa.doj.gov'; 'David W. Langley'; 'Kasen Michael'; 'Juracek, Chelsea Marie'; George.Brandley@usdoj.gov; Diggins Adrienne L; Gardocki, Mary E. (NK) (FBI); Panfil, Todd W. (CG) (FBI); Vajzovic, Jasmina (USAILN); aczajkowski@fbi.gov |
| **Subject:** | RE: RE: Fraud-Upon-the-Court / Registry Integrity — S.D. Fla. Bankruptcy Case No. 22-15627-EPK (Division 21) — SUPPLEMENT re Excell Auto Conflicts (Leto / Crane) — SDNY Filings Attached |
| **Importance:** | High |

Ms. Feinman —
Replying all to keep the record consolidated.

**For avoidance of doubt, I am also copying federal contacts who have previously communicated with me in related matters (USANJ; FBI Newark; FBI Chicago) solely to keep routing and the record consistent. No action is requested by email from any recipient.**

This is a **formal notice regarding communications protocol.**

**Effective immediately,** no DOJ component—including but not limited to USTP Region 21, OIG, and FBI personnel—is authorized to communicate directly with any member of my litigation/support team (including paralegals, consultants, contractors, vendors, or assistants) regarding me, Spin Capital, or any related matter **outside of formal channels.** All communications must be routed **in writing** through counsel of record (where applicable and copied here) and/or **directly to me**—not to third parties on my side.

To remove any ambiguity, please provide a written response **within 24 hours** addressing each of the following:

**A. Direct contacts to my team (past or pending):**
Confirm whether any DOJ component has sent (or attempted to send) any letter, inquiry, request, subpoena, preservation notice, or other communication to any member of my team relating to me or Spin Capital. If yes, identify: **(i)** component; **(ii)** date; **(iii)** method; **(iv)** recipient; and **(v)** general subject matter.

1

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004   Case 23-01132-EPK   Doc 370-4   Filed 01/13/26   Page 81 of 107   RECEIVED NYSCEF: 01/19/2026

**B. Designated point of contact:**
Identify the **assigned point of contact** for USTP Region 21 intake/handling of these communications (name + title) and the correct routing channel going forward.

**C. Forward routing instruction:**
Confirm that Region 21 will **instruct relevant components** to refrain from direct outreach to my team and to route any communications **formally and on the record** through counsel/me.

**Preservation:** Please preserve all records relating to any such communications and routing (including drafts, internal referrals, call logs, emails, texts, messaging app communications, attachments, and metadata).

Nothing in this email is intended to impede any lawful process. This is a demand for **proper routing and documentation** to prevent confusion and protect record integrity. If Region 21 declines to provide the confirmations above, state that plainly and identify the **supervisor/component responsible** for communications protocol.

Regards,
Avrumi ("Josh") Lubin
Spin Capital
Without waiver of any rights or remedies

From: Josh Lubin
Sent: Friday, January 9, 2026 1:51 PM
To: Heidi.A.Feinman@usdoj.gov; olg.hotline@usdoj.gov; ustp.region21@usdoj.gov;

Cc: Bradford Cohen Law <service@floridajusticefirm.com>; Michael McMullen <michael@floridajusticefirm.com>; Patrick Dorsey <pdorsey@slp.law>; Stanley Casey <scasey@sqcaseylaw.com>; JOEL ARESTY <aresty@mac.com>; klee@feenixpartners.com; alankartenlaw@gmail.com; Moore, Melissa <mmoore@bodmanlaw.com>; Avery Samet <asamet@aminlllc.com>; Jeffrey Chubak <jchubak@aminlllc.com>; Fred Stevens <fstevens@klestadt.com>; Shaya Baum <sbaum@winglakecp.com>; Ian Williamson <iwilliamson@manteselaw.com>; Sherri Sikorski <ssikorski@manteselaw.com>; Alan Crane <acrane@furrcohen.com>; Feinman, Heidi A. (USTP) <Heidi.A.Feinman@usdoj.gov>; michael@blfmiami.com; jordan@blfmiami.com; ustp.region21@usdoj.gov; Adam Behrendt <jbehrendt@bodmanlaw.com>; Brad S. Shralberg <bss@slp.law>; david@softnesslaw.com; Wiegert, Joel L. <joel.wiegert@kutakrock.com>; Jerry Breslin <jb@jsjb.law>; Reilly, Thomas <reillyt@dany.nyc.gov>; Vicchairelli, James <vicchairellij@dany.nyc.gov>; RikshpunA@dany.nyc.gov; PayneC@dany.nyc.gov; Matthew Leto <mleto@letolawfirm.com>; Brian S. Dervishi <brian@wdpalaw.com>; Documents Service of Court <service@wdpalaw.com>; Luke T. Jacobs <ljacobs@wdpalaw.com>; Browndorf Eric A. <ebrowndorf@cooperlevenson.com>; William Rubley <wrubley@cooperlevenson.com>; criminal.division@usdoj.gov; USAFLS-CitizenComplaints (USAFLS) <usafls.citizencomplaints@usdoj.gov>; USAFLS-CitizenCompla@usa.doj.gov; David W. Langley <dave@flalawyer.com>; Kasen Michael <mkasen@kasenlaw.com>;

Subject: RE: Fraud-Upon-the-Court / Registry Integrity — S.D. Fla. Bankruptcy Case No. 22-15627-EPK (Division 21) — SUPPLEMENT re Excell Auto Conflicts (Leto / Crane) — SDNY Filings Attached
Importance: High

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM  INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004  Case 23-01132-EPK  Doc 370-4  Filed 01/13/26  Page 82 of 107  RECEIVED NYSCEF: 01/19/2026

**Ms. Feinman (U.S. Trustee, Region 21 / Division 21 — Southern District of Florida) —**

Replying all again to keep the record consolidated.

This is a supplemental notice because the counsel-conflict issues involving (i) Matthew Leto and (ii) Alan Crane are not "external" or "collateral" issues — they are squarely within your oversight responsibilities in the Excell Auto matters being administered in this **District (Division 21)**, including the Excell Auto adversary where Hi Bar is a party.

    1.  **Matthew Leto conflict — now formally docketed (SDNY)**
Attached are two filings I made on January 8, 2026 in the Southern District of New York in Golden Foothill Insurance Services, LLC, et al. v. Spin Capital, LLC, et al., Case No. 1:24-cv-08515-AS:

- A Notice of Limited Pro Se Appearance (limited purpose) explaining that counsel has declined to pursue a contemplated motion to disqualify opposing counsel based on an asserted conflict of interest; and

- A letter to **Judge Arun Subramanian** requesting a pre-motion conference for a contemplated motion to disqualify **Matthew Leto and the Leto Law Firm** from representing **Hi Bar Capital, LLC** (or any party adverse to me / Spin Capital) based on an alleged non-waivable conflict arising from Mr. Leto's prior joint representation of me and Spin Capital, followed by his current adverse representation concerning the same transactions / nucleus of operative facts.

That conflict issue is now "in black and white" in a federal docket.

    2.  **2) Excell Auto overlap (Division 21) — your jurisdiction / remit**
Mr. Leto is also counsel for Hi Bar in the Excell Auto adversary (S.D. Fla. Bankruptcy / Division 21). Mr. Alan Crane is also participating in the Excell Auto proceedings on behalf of the Excell trustee (and is copied on this chain). Any counsel-conflict / disclosure / integrity issue involving counsel appearing in the Excell Auto case and adversary is plainly within Region 21's oversight remit in this District.

This is not a "private fee dispute." These are case-administration integrity issues that can affect estate administration, litigation conduct, and the reliability of the record across proceedings.

**Requested action (Region 21 / Division 21)**
Please confirm in writing, promptly, which of the following will occur (or state clearly if Region 21 is taking no action):

A.  That Region 21 has opened/assigned this issue for review (identify point of contact); and
B.  What specific steps will be taken regarding the Leto conflict issue as it relates to Hi Bar's participation in Excell Auto (including whether Region 21 will raise conflict/disclosure concerns with the Court); and
C.  What steps will be taken regarding any conflict/disclosure issues involving Alan Crane's role in the Excell Auto case/adversary.

Silence is not a solution here. If Region 21 is declining to act, I am requesting an explicit written statement of that position so the record is clear.

**Exhibit Index (UPDATED)**
All prior exhibits remain the same. This email adds the following:

- **NEW Exhibit 13** — SDNY Case No. 1:24-cv-08515-AS, Doc. 114 (filed 01/08/2026): "Notice of Limited Pro Se Appearance" (Individual Capacity Only; Limited Purpose).

- **NEW Exhibit 14** — SDNY Case No. 1:24-cv-08515-AS, Doc. 113 (filed 01/08/2026): Letter to Judge Arun Subramanian requesting pre-motion conference re contemplated motion to disqualify Matthew Leto / Leto Law Firm (conflict of interest).

Regards,

Avrumi ("Josh") Lubin
Spin Capital
Communicating in my personal capacity only.
Without waiver of any rights or remedies.
I understand this distribution may waive privilege, and I am sending it intentionally.

copied for transparency purposes only (no request for comment).
* Manhattan D.A. copied for transparency purposes due to related proceedings in New York.

From: Josh Lubin <josh@spincapital.com>
Sent: Thursday, January 8, 2026 7:01 AM
To: Heidi.A.Feinman@usdoj.gov; oig.hotline@usdoj.gov; ustp.region21@usdoj.gov
Cc: Bradford Cohen Law <service@floridajusticefirm.com>; Michael McMullen <michael@floridajusticefirm.com>; Patrick Dorsey <pdorsey@slp.law>; Stanley Casey <scasey@sqcaseylaw.com>; JOEL ARESTY <aresty@mac.com>; klee@feenixpartners.com; alankartenlaw@gmail.com; Moore, Melissa <mmoore@bodmanlaw.com>; Avery Samet <asamet@aminllc.com>; Jeffrey Chubak <jchubak@aminllc.com>; Fred Stevens <fstevens@klestadt.com>; Shaya Baum <sbaum@winglakecp.com>; Ian Williamson <iwilliamson@manteselaw.com>; Sherri Sikorski <ssikorski@manteselaw.com>; Alan Crane <acrane@furrcohen.com>; Feinman, Heidi A. (USTP) <Heidi.A.Feinman@usdoj.gov>; michael@blfmiami.com; jordan@blfmiami.com; ustp.region21@usdoj.gov; Adam Behrendt <jbehrendt@bodmanlaw.com>; Brad S. Shraiberg <bss@slp.law>; david@softnesslaw.com; Wiegert, Joel L. <joel.wiegert@kutakrock.com>; Jerry Breslin <jb@jsjb.law>;
Reilly, Thomas <reillyt@dany.nyc.gov>;
Vicchairelli, James <vicchairellij@dany.nyc.gov>; RikshpunA@dany.nyc.gov; PayneC@dany.nyc.gov; Matthew Leto <mleto@letolawfirm.com>; Brian S. Dervishi <brian@wdpalaw.com>; Documents Service of Court <service@wdpalaw.com>; Luke T. Jacobs <ljacobs@wdpalaw.com>; Browndorf Eric A. <ebrowndorf@cooperlevenson.com>; William Rubley <wrubley@cooperlevenson.com>; criminal.division@usdoj.gov; USAFLS-CitizenComplaints (USAFLS) <usafls.citizencomplaints@usdoj.gov>; USAFLS-CitizenCompla@usa.doj.gov; David W. Langley <dave@flalawyer.com>; Kasen Michael <mkasen@kasenlaw.com>
Subject: RE: Fraud-Upon-the-Court / Registry Integrity — S.D. Fla. Bankruptcy Case No. 22-15627-EPK (Division 21) — SUPPLEMENT (NYSCEF OSC Papers Attached: Exs. 11–12)
Importance: High

**Ms. Feinman (U.S. Trustee, Region 21 / Division 21 — Southern District of Florida) —**

Replying all to keep the record consolidated.

Supplemental attachments (related New York County / NYSCEF proceeding):

Attached are two newly-filed NYSCEF papers in **Supreme Court of the State of New York, County of New York, Index No. 650582/2022** (Teton Life LLC as Assignee of the Rights of Spin Capital, LLC v. Golden Foothill Insurance Services LLC, et al.):

- **NEW Ex. 11** — NYSCEF Doc. No. 957: Order to Show Cause for Expanded Receiver Authority

4

- **NEW Ex. 12** — NYSCEF Doc. No. 958: Affirmation of Josh (Avrumi) Lubin in Support of Motion for Expanded Receiver Authority (filed 01/06/2026; received 01/07/2026)

These two exhibits are provided to keep the multi-court record consolidated and to document the existence of related proceedings in New York.

My prior request/demand for a written response from **USTP Region 21 / Division 21 regarding the S.D. Fla. bankruptcy registry disbursement** remains unchanged, including: (1) confirmation of receipt and identification of the responsible point of contact; (2) confirmation of what actions are being taken immediately on preservation/registry-processing issues; and (3) if your office will not take action or will not route this to an appropriate component, identification of the supervisor/component/referral path responsible.

**No action is requested from any court by email.** Any relief will be pursued through proper motion practice. This email is sent to ensure the record is consolidated and that there is a clear written account of notice, preservation, and response posture.

For transparency, I am copying the **Manhattan District Attorney's Office** due to related New York proceedings, along with the Inspector General and          I understand this distribution may waive privilege, and I am doing so intentionally.

**Exhibit index (UPDATED):**

- **Ex. 1** — Bankr. S.D. Fla., Case No. 22-15627-EPK: Order Denying Expedited Joint Motion (Dkt./DE 952)

- **Ex. 2** — Bankr. S.D. Fla. transcript (June 18, 2025 hearing) (061825aw)

- **Ex. 3** — Broward Circuit Court transcript (Aug. 13, 2025 hearing)

- **Ex. 4** — Broward Circuit Court Order (Filing #229455396) (entered Aug. 14, 2025)

- **Ex. 5** — Broward transcript (Sept. 3, 2025 hearing)

- **Ex. 6** — Broward transcript (Sept. 10, 2025 hearing)

- **Ex. 7** — Outlook.pdf (email chain / submission history)

- **Ex. 8** — Demand Draft (record-correction / fraud-upon-the-court demand chain)

- **Ex. 9** — Bankr. S.D. Fla., Case No. 22-15627-EPK: Doc. 965 (Aug. 27, 2025) — Order directing registry disbursement of $2,107,548.61 (+ interest) to Schwartz Breslin PLLC

- **Ex. 10** — Excell Auto Group, Inc., Case No. 22-12790-EPK; Adv. Pro. No. 23-01132-EPK: Doc. 362 (Jan. 7, 2026) — Notice of Filing Declaration Regarding Preservation Notice and Response (with Ex. A)

- **NEW Ex. 11** — NYSCEF Doc. No. 957: Order to Show Cause for Expanded Receiver Authority, NY Supreme Court, New York County, Index No. 650582/2022 (Teton Life LLC as Assignee of Spin Capital, LLC v. Golden Foothill Insurance Services LLC, et al.)

- *NEW Ex. 12* — NYSCEF Doc. No. 958: Affirmation of Josh (Avrumi) Lubin in Support of Motion for Expanded Receiver Authority, filed 01/06/2026 (received 01/07/2026), Index No. 650582/2022

Regards,

Avrumi ("Josh") Lubin

Spin Capital

Communicating in my personal capacity only

Without waiver of any rights or remedies

copied for transparency purposes only (no request for comment).

From: Josh Lubin
Sent: Thursday, January 8, 2026 2:01:37 AM
To: Heidi.A.Feinman@usdoj.gov <Heidi.A.Feinman@usdoj.gov>; olg.hotline@usdoj.gov <olg.hotline@usdoj.gov>; ustp.region21@usdoj.gov <ustp.region21@usdoj.gov>
Cc: Bradford Cohen Law <service@floridajusticefirm.com>; Michael McMullen <michael@floridajusticefirm.com>; Patrick Dorsey <pdorsey@slp.law>; Stanley Casey <scasey@sqcaseylaw.com>; JOEL ARESTY <aresty@mac.com>; klee@feenixpartners.com <klee@feenixpartners.com>; alankartenlaw@gmail.com <alankartenlaw@gmail.com>; Moore, Melissa <mmoore@bodmanlaw.com>; Avery Samet <asamet@aminllc.com>; Jeffrey Chubak <jchubak@aminllc.com>; Fred Stevens <fstevens@klestadt.com>; Shaya Baum <sbaum@winglakecp.com>; Ian Williamson <iwilliamson@manteselaw.com>; Sherri Sikorski <ssikorski@manteselaw.com>; Alan Crane <acrane@furrcohen.com>; Feinman, Heidi A. (USTP) <heidi.a.feinman@usdoj.gov>; michael@blfmiami.com <michael@blfmiami.com>; jordan@blfmiami.com <jordan@blfmiami.com>; USTP.Region21@usdoj.gov <USTP.Region21@usdoj.gov>; Adam Behrendt <jbehrendt@bodmanlaw.com>; Brad S. Shraiberg <bss@slp.law>; david@softnesslaw.com <david@softnesslaw.com>; Wiegert, Joel L. <joel.wiegert@kutakrock.com>; Jerry Breslin <jb@jslb.law>;

<tips@propublica.org>; Reilly, Thomas <reillyt@dany.nyc.gov>; Vicchairelli, James <vicchairelli@dany.nyc.gov>; RikshpunA@dany.nyc.gov <RikshpunA@dany.nyc.gov>; PayneC@dany.nyc.gov <PayneC@dany.nyc.gov>; Matthew Leto <mleto@letolawfirm.com>; Brian S. Dervishi <brian@wdpalaw.com>; Documents Service of Court <service@wdpalaw.com>; Luke T. Jacobs <ljacobs@wdpalaw.com>; Browndorf Eric A.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004                                          RECEIVED NYSCEF: 01/19/2026

<ebrowndorf@cooperlevenson.com>; William Rubley <wrubley@cooperlevenson.com>; criminal.division@usdoj.gov <criminal.division@usdoj.gov>; USAFLS-CitizenComplaints (USAFLS) <usafls.citizencomplaints@usdoj.gov>; USAFLS-CitizenCompla@usa.doj.gov <usafls-citizencompla@usa.doj.gov>; David W. Langley <dave@flalawyer.com>; Kasen Michael <mkasen@kasenlaw.com>

**Subject:** RE: Fraud-Upon-the-Court / Registry Integrity — S.D. Fla. Bankruptcy Case No. 22-15627-EPK (Division 21) — SUPPLEMENTAL NOTICE OF FILING ATTACHED

Ms. Feinman (U.S. Trustee, Region 21 / **Division 21** — Southern District of Florida) —

Replying all to keep the record consolidated.

**Supplemental attachment (related S.D. Fla. bankruptcy proceeding):** Attached is a newly-filed **Notice of Filing Declaration Regarding Preservation Notice and Response in In re Excell Auto Group, Inc., Case No. 22-12790-EPK; Adv. Pro. No. 23-01132-EPK (Doc. 362, filed Jan. 7, 2026).** The Notice states it is filed **solely to memorialize notice provided, responses received, and positions taken** regarding preservation, and that **no relief is requested** by that Notice.

This supplemental filing is directly relevant here because the underlying issue in this thread is bankruptcy-process integrity and registry integrity in **In re Auto Wholesale of Boca, LLC, Case No. 22-15627-EPK (Division 21).**

**Core point (still the same, now with the "theft/disbursement" exhibit in the record):**
The mechanism by which the Bankruptcy Court registry funds were removed is **Case 22-15627-EPK, Doc. 965 (entered Aug. 27, 2025).** That order expressly:

- incorporates the prior denial order by reference and notes the Court "could not and would not" decide the Lubin/Hi Bar dispute, and that the parties were encouraged to obtain a ruling elsewhere;
- relies on the Broward "Order on Joint Motion to Endorse Settlement" **(Filing #229455396, entered Aug. 14, 2025); and**
- directs the Clerk to disburse **$2,107,548.61** plus accrued interest from the registry to the order of Schwartz Breslin PLLC, to be further disbursed according to the settlement.

I continue to contend that this registry disbursement was **wrongful/illegal,** and that it was procured through disputed record language and cross-court reliance issues reflected in the attached transcripts/orders.

**What I am demanding from USTP Region 21 / Division 21 (in writing):**
Within **24 hours,** please provide a written response that does all of the following:

1. **Confirm receipt** of this supplemental attachment and identify the **assigned point of contact** (name + title) responsible for Region 21 intake and handling of this matter.
2. **Confirm what actions are being taken immediately** regarding the registry-integrity issue, including (at minimum):
   - what steps your office is taking to ensure **preservation** of potentially relevant records (including communications with the Clerk/Financial Section re registry disbursement processing);

7

- o whether Region 21 will **review how Doc. 965 was obtained and processed**, including what representations were made to support release; and
- o whether Region 21 will evaluate **traceability / recovery options** for the disbursed funds, given that the registry disbursement routed funds to a private law firm trust account.

3. If you contend your office will **not** take action (or will not even route this to an appropriate DOJ/UST component), then state that **plainly** and identify **who will** take responsibility (supervisor / component / referral path).

4. If you will not confirm in writing what actions are being taken immediately (items 1–3 above), then I am requesting that you **step aside** so this matter can be handled by someone who will — including, if that is your position, confirming whether you intend to **resign or otherwise have this matter reassigned** to an official who will take prompt, documented action.

**No action is requested from any court by email.** Any relief will be pursued through proper motion practice. This email is sent to ensure the record is consolidated and that there is a clear written account of notice, preservation, and response posture.

For transparency, I am copying the **Manhattan District Attorney's Office** due to related New York proceedings, along with the **Inspector General** and          I understand this distribution may waive privilege, and I am doing so intentionally.

**Exhibit Index (UPDATED):**

- **Ex. 1** — Bankr. S.D. Fla., Case No. 22-15627-EPK: Order Denying Expedited Joint Motion (Dkt./DE 952)
- **Ex. 2** — Bankr. S.D. Fla. transcript (June 18, 2025 hearing) (061825aw)
- **Ex. 3** — Broward Circuit Court transcript (Aug. 13, 2025 hearing)
- **Ex. 4** — Broward Circuit Court Order (Filing #229455396) (entered Aug. 14, 2025)
- **Ex. 5** — Broward transcript (Sept. 3, 2025 hearing)
- **Ex. 6** — Broward transcript (Sept. 10, 2025 hearing)
- **Ex. 7** — Outlook.pdf (email chain / submission history)
- **Ex. 8** — Demand Draft (record-correction / fraud-upon-the-court demand chain)
- **Ex. 9** — Bankr. S.D. Fla., Case No. 22-15627-EPK: **Doc. 965 (Aug. 27, 2025)** — Order directing registry disbursement of **$2,107,548.61 (+ interest)** to Schwartz Breslin PLLC
- **NEW Ex. 10** — **Excell Auto Group, Inc., Case No. 22-12790-EPK; Adv. Pro. No. 23-01132-EPK: Doc. 362 (Jan. 7, 2026)** — Notice of Filing Declaration Regarding Preservation Notice and Response (with Ex. A)

Regards,
Avrumi ("Josh") Lubin
Spin Capital
Communicating in my personal capacity only
Without waiver of any rights or remedies

*copied for transparency purposes only (no request for comment).*

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004    RECEIVED NYSCEF: 01/19/2026

From: Josh Lubin
Sent: Thursday, January 8, 2026 12:26 AM
To: 'Heidi.A.Feinman@usdoj.gov' <Heidi.A.Feinman@usdoj.gov>; 'oig.hotline@usdoj.gov' <oig.hotline@usdoj.gov>;
'ustp.region21@usdoj.gov' <ustp.region21@usdoj.gov>
Cc: 'Bradford Cohen Law' <service@floridajusticefirm.com>; 'Michael McMullen' <michael@floridajusticefirm.com>;
'Patrick Dorsey' <pdorsey@slp.law>; 'Stanley Casey' <scasey@sqcaseylaw.com>; 'JOEL ARESTY' <aresty@mac.com>;
'klee@feenixpartners.com' <klee@feenixpartners.com>; 'alankartenlaw@gmail.com' <alankartenlaw@gmail.com>;
'Moore, Melissa' <mmoore@bodmanlaw.com>; 'Avery Samet' <asamet@aminllc.com>; 'Jeffrey Chubak'
<jchubak@aminllc.com>; 'Fred Stevens' <fstevens@klestadt.com>; 'Shaya Baum' <sbaum@winglakecp.com>; 'Ian
Williamson' <iwilliamson@manteselaw.com>; 'Sherri Sikorski' <ssikorski@manteselaw.com>; 'Alan Crane'
<acrane@furrcohen.com>; 'Feinman, Heidi A. (USTP)' <heidi.a.feinman@usdoj.gov>; 'michael@blfmiami.com'
<michael@blfmiami.com>; 'Jordan@blfmiami.com' <jordan@blfmiami.com>;
                        'USTP.Region21@usdoj.gov' <USTP.Region21@usdoj.gov>; 'Adam Behrendt'
<jbehrendt@bodmanlaw.com>; 'Brad S. Shraiberg' <bss@slp.law>; 'david@softnesslaw.com' <david@softnesslaw.com>;
'Wiegert, Joel L.' <joel.wiegert@kutakrock.com>; 'Jerry Breslin' <jb@jsjb.law>;

                        'Reilly, Thomas' <reillyt@dany.nyc.gov>; 'Vicchairelli, James' <vicchairellij@dany.nyc.gov>;
'RikshpunA@dany.nyc.gov' <RikshpunA@dany.nyc.gov>; 'PayneC@dany.nyc.gov' <PayneC@dany.nyc.gov>; 'Matthew
Leto' <mleto@letolawfirm.com>; 'Brian S. Dervishi' <brian@wdpalaw.com>; 'Documents Service of Court'
<service@wdpalaw.com>; 'Luke T. Jacobs' <ljacobs@wdpalaw.com>; 'Browndorf Eric A.'
<ebrowndorf@cooperlevenson.com>; 'William Rubley' <wrubley@cooperlevenson.com>; criminal.division@usdoj.gov;
USAFLS-CitizenComplaints (USAFLS) <usafls.citizencomplaints@usdoj.gov>; USAFLS-CitizenCompla@usa.doj.gov; David
W. Langley <dave@flalawyer.com>; Kasen Michael <mkasen@kasenlaw.com>
Subject: RE: Fraud-Upon-the-Court / Registry Integrity — S.D. Fla. Bankruptcy Case No. 22-15627-EPK (Division 21) —
Record Attached (UPDATED: Exhibit Showing Registry Disbursement)
Importance: High

Ms. Feinman (U.S. Trustee, Region 21 / Division 21 — Southern District of Florida) —
I'm replying all to keep the record consolidated.
Apologies — my prior email inadvertently omitted the single most important exhibit showing the
actual removal of the funds from the S.D. Fla. Bankruptcy Court registry. That exhibit is attached to
this email.
Fraud-Upon-the-Court Registry ...

**The omitted exhibit (now attached)**
Bankr. S.D. Fla., Case No. 22-15627-EPK — Dkt. 965 (entered Aug. 27, 2025)
Titled: **"ORDER (I) GRANTING EXPEDITED JOINT MOTION TO ORDER DISTRIBUTION OF AUCTION
PROCEEDS TO COUNSEL FOR THE FVP PARTIES PURSUANT TO STATE COURT ORDER, AND (II)
DISCHARGING ORDER TO SHOW CAUSE."**
Case 22-15627-EPK Doc 965
This order is the documented mechanism by which the registry funds were taken:

- The Court states it previously "could not and would not" decide the Lubin/Hi Bar dispute and
  encouraged the parties to obtain a ruling elsewhere — and that **"[t]hey have done so."**
  Case 22-15627-EPK Doc 965
- The Court then relies on the Broward **"Order on Joint Motion to Endorse Settlement" entered
  Aug. 14, 2025 (Filing #229455396)** as the basis to treat the Movants as the only parties who may
  seek release of the Net Proceeds.
  Case 22-15627-EPK Doc 965
  229455396 Order (Non-Dispositio...

9

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1004
INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

- Critically, Dkt. 965 directs the Clerk to disburse the Net Proceeds held in the registry — $2,107,548.61 plus accrued interest — to the order of the law firm Schwartz Breslin PLLC, "to be further disbursed according to the settlement."
  Case 22-15627-EPK Doc 965

This is the "theft exhibit" I referenced — i.e., the paper showing the actual registry disbursement event. To be clear, I contend this disbursement was wrongful/illegal and was procured through the cross-court record issues described in my prior email and attachments.

Fraud-Upon-the-Court Registry ...

## Requested action (Region 21 / Division 21)

Given that the registry funds were disbursed by court order and routed to a private law firm trust account, I request that Region 21:

1. **Confirm receipt** of this supplemental exhibit and identify the assigned point of contact.
2. **Review how the registry disbursement was obtained and processed,** including what representations were made to support release and whether the predicate state-court "competent jurisdiction" ruling was procedurally and substantively reliable given the transcript disputes already in the record.
   Case 22-15627-EPK Doc 965
   229455396 Order (Non-Dispositio...
3. Confirm what steps (if any) are appropriate to **preserve traceability and recovery options** for the disbursed funds pending proper adjudication of the underlying rights.

## Exhibit index (UPDATED)

My prior exhibit list remains the same, and I am **adding the missing disbursement order** as the next exhibit:

- **NEW Exhibit 9 — Bankr. S.D. Fla. Case No. 22-15627-EPK, Dkt. 965 (Aug. 27, 2025): Order directing disbursement of $2,107,548.61 (+ interest) from the Court registry to Schwartz Breslin PLLC pursuant to the state court order.**
  Case 22-15627-EPK Doc 965

Regards,
Avrumi ("Josh") Lubin
Spin Capital
Communicating in my personal capacity only
Without waiver of any rights or remedies
            copied for transparency purposes only (no request for comment).

From: Josh Lubin
Sent: Wednesday, January 7, 2026 11:45 PM
To: Heidi.A.Feinman@usdoj.gov; 'olg.hotline@usdoj.gov' <olg.hotline@usdoj.gov>; ustp.region21@usdoj.gov
Cc: 'Bradford Cohen Law' <service@floridajusticefirm.com>; 'Michael McMullen' <michael@floridajusticefirm.com>; 'Patrick Dorsey' <pdorsey@slp.law>; 'Stanley Casey' <scasey@sqcaseylaw.com>; 'JOEL ARESTY' <aresty@mac.com>; 'klee@feenixpartners.com' <klee@feenixpartners.com>; 'alankartenlaw@gmail.com' <alankartenlaw@gmail.com>; 'Moore, Melissa' <mmoore@bodmanlaw.com>; 'Avery Samet' <asamet@aminllc.com>; 'Jeffrey Chubak' <jchubak@aminllc.com>; 'Fred Stevens' <fstevens@klestadt.com>; 'Shaya Baum' <sbaum@winglakecp.com>; 'Ian Williamson' <iwilliamson@manteselaw.com>; 'Sherri Sikorski' <ssikorski@manteselaw.com>; 'Alan Crane' <acrane@furrcohen.com>; 'Feinman, Heidi A. (USTP)' <heidi.a.feinman@usdoj.gov>; 'michael@blfmiami.com' <michael@blfmiami.com>; 'jordan@blfmiami.com' <jordan@blfmiami.com>;
            'USTP.Region21@usdoj.gov' <USTP.Region21@usdoj.gov>; 'Adam Behrendt' <jbehrendt@bodmanlaw.com>; 'Brad S. Shraiberg' <bss@slp.law>; 'david@softnesslaw.com' <david@softnesslaw.com>; 'Wiegert, Joel L.' <joel.wiegert@kutakrock.com>; 'Jerry Breslin' <jb@jslb.law>;

10

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004                                  RECEIVED NYSCEF: 01/19/2026

Reilly, Thomas <reillyt@dany.nyc.gov>; Vicchairelli, James <vicchairelli@dany.nyc.gov>; 'RikshpunA@dany.nyc.gov' <RikshpunA@dany.nyc.gov>; 'PayneC@dany.nyc.gov' <PayneC@dany.nyc.gov>; Matthew Leto <mleto@letolawfirm.com>; Brian S. Dervishi <brian@wdpalaw.com>; Documents Service of Court <service@wdpalaw.com>; Luke T. Jacobs <ljacobs@wdpalaw.com>; Browndorf Eric A. <ebrowndorf@cooperlevenson.com>; William Rubley <wrubley@cooperlevenson.com>
Subject: Fraud-Upon-the-Court / Registry Integrity — S.D. Fla. Bankruptcy Case No. 22-15627-EPK (Division 21) — Record Attached
Importance: High

**Ms. Feinman (U.S. Trustee, Region 21 – Southern District of Florida) —**

I am writing directly to you in your capacity as **United States Trustee for Region 21** because the attached record reflects a registry-integrity / process-integrity issue arising from the **S.D. Fla. bankruptcy system.**

This concerns funds held in the registry of the **U.S. Bankruptcy Court in In re Auto Wholesale of Boca, LLC, Case No. 22-15627-EPK,** and the use of state-court order language to remove ("release") those federal registry funds.

Core point:
**FVP used the Broward Circuit Court "Order on Joint Motion to Endorse Settlement"** (Filing #229455396, entered Aug. 14, 2025) to procure release and transfer of the Bankruptcy Court registry funds to FVP's counsel trust account. In my view, that was an **illegal / unlawful diversion of federal registry funds** based on materially disputed and record-contested order language and downstream reliance.

The Broward Order itself directs the transfer:
- Paragraph 13 states "the Net Proceeds should be distributed to the trust account of counsel for the FVP Parties."
- Paragraph 14 contemplates filing that order in the Bankruptcy Court to "inform" the Bankruptcy Court that the dispute has been resolved.

The S.D. Fla. bankruptcy record emphasizes the opposite principle:
On June 18, 2025, Judge Kimball made clear that funds held in the registry of a federal court are not subject to garnishment/attachment and will not be released except pursuant to further order of the Bankruptcy Court.

Accordingly, the use of the Broward Order as the mechanism to obtain release of registry funds—especially where the validity and scope of the underlying "rights" determination has been contested on the transcript record—creates a serious bankruptcy-process integrity issue and a fraud-upon-the-court / record-integrity issue across tribunals.

**Preservation notice:**
Please preserve (and instruct all parties/vendors to preserve) all drafts, redlines, transmittal emails, and metadata relating to:
- the drafting/submission/entry of the Broward Order (and any proposed orders);
- any communications referencing Bankruptcy Dkt. 952 / "court of competent jurisdiction" language;
- any request(s) to the Bankruptcy Court Clerk/Registry to release funds; and
- the actual release/disbursement path and recipients (including wiring instructions, trust account details, confirmations, and correspondence).

**Request to USTP Region 21:**
1. Please confirm receipt of this submission and identify the correct intake path / point of contact in your office.

11

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004                                    RECEIVED NYSCEF: 01/19/2026

2. Please confirm whether Region 21 will review the attached record as a bankruptcy-process / registry-integrity matter, including how the registry funds were released and on what asserted authority.
3. If the funds have not been fully disbursed or remain traceable, I request that the USTP consider whether immediate steps are appropriate to preserve and/or recover the funds pending proper adjudication.

For transparency, I am copying the **Manhattan District Attorney's Office** due to related **New York proceedings**, along with the **Inspector General**                I understand this distribution may waive privilege, and I am doing so intentionally.

## Exhibit index (attached PDFs)

- **Exhibit 1** — Bankr. S.D. Fla. **Order Denying Expedited Joint Motion (Dkt. 952)** (entered Aug. 12, 2025)
- **Exhibit 2** — Bankr. S.D. Fla. **Transcript (June 18, 2025 hearing)** re registry funds / garnishment posture (061825aw)
- **Exhibit 3** — Broward Circuit Court **Transcript (Aug. 13, 2025 hearing)** (CACE22-005125)
- **Exhibit 4** — Broward Circuit Court **Order (Filing #229455396)** (entered Aug. 14, 2025)
- **Exhibit 5** — Broward Circuit Court **Transcript (Sept. 3, 2025 hearing)** (Judge Haimes)
- **Exhibit 6** — Broward Circuit Court **Transcript (Sept. 10, 2025 hearing)** (Judge Haimes)
- **Exhibit 7** — **Outlook.pdf** (email chain / submission history)
- **Exhibit 8** — **Demand Draft** (record-correction / fraud-upon-the-court demand chain)

Regards,

Avrumi ("Josh") Lubin
Spin Capital
Communicating in my personal capacity only
Without waiver of any rights or remedies

copied for transparency purposes only (no request for comment).*

From: Josh Lubin
Sent: Wednesday, January 7, 2026 10:09 PM
To: JOEL ARESTY <aresty@mac.com>; Stanley Casey <scasey@sqcaseylaw.com>; oig.hotline@usdoj.gov
Cc: Bradford Cohen Law <service@floridajusticefirm.com>; Michael McMullen <michael@floridajusticefirm.com>; Patrick Dorsey <pdorsey@slp.law>; Stanley Casey <scasey@sqcaseylaw.com>; JOEL ARESTY <aresty@mac.com>; klee@feenixpartners.com; alankartenlaw@gmail.com; Moore, Melissa <mmoore@bodmanlaw.com>; Avery Samet <asamet@aminllc.com>; Jeffrey Chubak <jchubak@aminllc.com>; Fred Stevens <fstevens@klestadt.com>; Shaya Baum <sbaum@winglakecp.com>; Ian Williamson <iwilliamson@manteselaw.com>; Sherri Sikorski <ssikorski@manteselaw.com>; Alan Crane <acrane@furrcohen.com>; Feinman, Heidi A. (USTP) <heidi.a.feinman@usdoj.gov>; michael@blfmiami.com; jordan@blfmiami.com; USTP.Region21@usdoj.gov; Adam Behrendt <jbehrendt@bodmanlaw.com>; Brad S. Shralberg <bss@slp.law>; david@softnesslaw.com; Wiegert, Joel L. <joel.wiegert@kutakrock.com>; Jerry Breslin <jb@jsjb.law>;

Subject: RE: Fraud-Upon-the-Court / Record-Correction — Multi-Court Exhibits Attached (Broward + S.D. Fla. Bankruptcy)
Importance: High

All —

I'm replying all and copying                and the Inspector General for transparency. See footnote.*

12

FILED: NEW YORK COUNTY CLERK 01/19/2026, 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004    Case 23-01132-EPK    Doc 370-4    Filed 01/13/26    Page 92 of 107    RECEIVED NYSCEF: 01/19/2026

I understand that copying /IG may waive attorney-client privilege and I am doing so intentionally.

**Stanley / Joel** — this is a FINAL follow-up. The attached transcripts/orders reflect material record discrepancies and record representations across multiple tribunals, including:

• U.S. Bankruptcy Court (S.D. Fla.) — In re Auto Wholesale of Boca, LLC, Case No. 22-15627-EPK (June 18 transcript + Aug. 12, 2025 Order Denying Expedited Joint Motion, Dkt. 952)
• Broward Circuit Court (CACE22-005125; Aug. 13/14 and Sept. 3/10)
• Related domestication / garnishment proceedings referenced on the bankruptcy record (Palm Beach / NY)

This is not an "advocacy dispute." It is a record-integrity issue that requires immediate corrective action and (at minimum) an evidentiary hearing.

What I need from Stanley Casey and Joel Aresty (by Friday, January 9, 2026):

1. **Confirm (in writing) that you will prepare and file the appropriate Broward record-correction / Rule 1.540 / fraud-upon-the-court relief (and any companion relief needed to preserve the status quo in the related proceedings).**

2. **Circulate a court-ready draft motion(s) + proposed order(s) with the attached exhibits no later than EOD Friday, January 9, 2026.**

3. **If you will not do this, say so plainly (and explain why) so I can take immediate steps to protect my interests.**

Record-based issues (high level; see exhibits for the full record):

A) Bankruptcy (S.D. Fla., Aug. 12, 2025) — Dkt. 952 jurisdiction ruling and referral back to Broward
• The Bankruptcy Court held it lacks subject matter jurisdiction over the substantive dispute regarding the Net Proceeds and stated it "cannot and will not" decide whether the Common Interest Agreement was terminated and whether I hold Hi Bar's rights to the Net Proceeds.
• The Bankruptcy Court encouraged the parties to "seek appropriate rulings in the Broward Action."

B) Bankruptcy (S.D. Fla., June 18, 2025) — garnishment / assignment representations
• On the record, counsel represented that I "filled out a fraudulent affidavit" claiming an assignment of the Hi Bar judgment, domesticated it in Palm Beach, and served a writ of garnishment on the Bankruptcy Court registry.
• The Court stated the federal registry is not subject to garnishment and that funds will not be released except pursuant to further order; Hi Bar's counsel stated "there is no assignment."

C) Broward (Aug. 13, 2025 hearing / Aug. 14, 2025 entered order) — settlement endorsement and scope
• At the Aug. 13 hearing, the settlement proponent represented the settlement provides that "**100% of the money**" in the bankruptcy registry would go to FVP and asked for endorsement to "go back to Judge Kimball."
• **The Court stated it could not order the Bankruptcy Court to release funds,** but could decide whether I had an interest in the Net Proceeds; the Court ordered the settlement agreement be served.
• **The entered order then contains language that purports to make findings beyond what was articulated on the record.**

D) Broward (Sept. 3 & Sept. 10, 2025 hearings) — order language vs. oral rulings; "inserted" language
• On Sept. 3, Judge Haimes stated the only correction needed was to change paragraph 8 from "Court finds" to "Court notes" because "it's not a finding," and counsel noted additional language had been "inserted" and could create future problems unrelated to the settlement.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004   Case 23-01132-EPK   Doc 370-4   Filed 01/13/26   Page 93 of 107   RECEIVED NYSCEF: 01/19/2026

• On Sept. 10, Judge Haimes reiterated he was not resolving separate claims elsewhere; he was only determining who had standing/right to enter a settlement for the bankruptcy proceeds.

Preservation notice:
Please preserve (and instruct all vendors/assistants to preserve) all drafts, redlines, transmittal emails, and metadata relating to any proposed order(s), settlement-endorsement filings, and any communications referencing Bankruptcy Dkt. 952 / the "Broward Action" referral language.

Regards,

Josh Lubin
Spin Capital

EXHIBIT LIST (ATTACHED)

Exhibit 1 — DE 952 Order Denying Expedited Joint Motion (Bankr. S.D. Fla., Case No. 22-15627-EPK; entered Aug. 12, 2025)
Exhibit 2 — 061825aw: Transcript of June 18, 2025 hearing (Bankr. S.D. Fla., Case No. 22-15627-EPK)
Exhibit 3 — State Court Transcript: Aug. 13, 2025 hearing (Broward Circuit Court, CACE22005125)
Exhibit 4 — Broward Order: 229455396 Order (Non-Disposition) entered Aug. 14, 2025 (Broward Circuit Court, CACE22005125)
Exhibit 5 — State Court Transcript: Sept. 3, 2025 hearing (Judge Haimes)
Exhibit 6 — State Court Transcript: Sept. 10, 2025 hearing (Judge Haimes)
Exhibit 7 — Outlook.pdf: email chain / submission history (PDF printout)
Exhibit 8 — Demand Draft: Fraud-Upon-the-Court / Record-Correction demand email chain (PDF printout)


From: Josh Lubin <josh@spincapital.com>
Sent: Wednesday, December 17, 2025 7:11 PM
To: Jerry Breslin <jb@jsjb.law>; Brad S. Shraiberg <bss@slp.law>; david@softnesslaw.com; Wiegert, Joel L. <joel.wiegert@kutakrock.com>; Adam Behrendt <jbehrendt@bodmanlaw.com>
Cc: Bradford Cohen Law <service@floridajusticefirm.com>; Michael McMullen <michael@floridajusticefirm.com>; Patrick Dorsey <pdorsey@slp.law>; Stanley Casey <scasey@sqcaseylaw.com>; JOEL ARESTY <aresty@mac.com>; klee@feenixpartners.com; alankartenlaw@gmail.com; Moore, Melissa <mmoore@bodmanlaw.com>; Avery Samet <asamet@aminllc.com>; Jeffrey Chubak <jchubak@aminllc.com>; Fred Stevens <fstevens@klestadt.com>; Shaya Baum <sbaum@winglakecp.com>; Ian Williamson <iwilliamson@manteselaw.com>; Sherri Sikorski <ssikorski@manteselaw.com>; Alan Crane <acrane@furrcohen.com>; Feinman, Heidi A. (USTP) <heidi.a.feinman@usdoj.gov>; michael@blfmiami.com; jordan@blfmiami.com; USTP.Region21@usdoj.gov
Subject: Demand: Draft Fraud-Upon-the-Court / Record-Correction Motion Due Tomorrow — File by Friday
Importance: High

Joel, Stanley —

This is a formal demand that you prepare and file a motion seeking relief based on fraud upon the court / material record discrepancies involving the Broward docket and related proceedings, including the conduct and submissions of Jerry Breslin, by this Friday.

To be clear: this is not a request for commentary or delay. The record contains material discrepancies between oral rulings and later submitted/entered orders and representations, with downstream

consequences. This is exactly the category of issue that warrants immediate corrective relief and an evidentiary hearing.

Deadlines:

1.    By tomorrow (end of day): I expect a first draft of the motion and proposed order that is actively being worked on (with placeholders if needed for transcript cites/exhibits).

2.    By Friday: the motion is filed.

Minimum contents of the draft:

• A concise statement of relief sought (vacatur/correction/clarification; evidentiary hearing; sanctions if appropriate).

• Side-by-side identification of the oral ruling(s) vs. the entered language/representation(s).

• A short materiality section: how the discrepancy was relied upon and what prejudice resulted.

• Exhibit list (entered order(s), transcript excerpts, email chain / submission history if available).

Client control / review:

Nothing is to be filed without my prior review and written approval. I expect to be copied on all drafts and supporting materials.

If either of you contends you will not file such a motion, then state that position in writing by tomorrow, with the legal basis and the specific record you contend defeats the motion. "Not my kind of work" or "not an emergency" is not an answer to a record-based discrepancy that affects my rights and ongoing enforcement posture.

Josh
communicating in my personal capacity only
without waiver of any rights or remedies

Get Outlook for iOS

From: Josh Lubin <josh@spincapital.com>
Sent: Wednesday, December 17, 2025 3:46:52 PM
To: Jerry Breslin <jb@jsjb.law>; Brad S. Shraiberg <bss@slp.law>; david@softnesslaw.com <david@softnesslaw.com>; Wiegert, Joel L. <joel.wiegert@kutakrock.com>; Adam Behrendt <jbehrendt@bodmanlaw.com>
Cc: Bradford Cohen Law <service@floridajusticefirm.com>; Michael McMullen <michael@floridajusticefirm.com>; Patrick Dorsey <pdorsey@slp.law>; Stanley Casey <scasey@sqcaseylaw.com>; JOEL ARESTY <aresty@mac.com>; klee@feenixpartners.com <klee@feenixpartners.com>; alankartenlaw@gmail.com <alankartenlaw@gmail.com>; Moore, Melissa <mmoore@bodmanlaw.com>; Avery Samet <asamet@aminillc.com>; Jeffrey Chubak <jchubak@aminillc.com>; Fred Stevens <fstevens@klestadt.com>; Shaya Baum <sbaum@winglakecp.com>; Ian Williamson <iwilliamson@manteselaw.com>; Sherri Sikorski <ssikorski@manteselaw.com>; Alan Crane <acrane@furrcohen.com>; Feinman, Heidi A. (USTP) <heidi.a.feinman@usdoj.gov>; michael@blfmiami.com <michael@blfmiami.com>; jordan@blfmiami.com <jordan@blfmiami.com>;
USTP.Region21@usdoj.gov <USTP.Region21@usdoj.gov>
Subject: Immediate Action Required — Evidence of Fraud Upon the Court in Broward and Related Dockets

Joel, Stanley —

15

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004                                 RECEIVED NYSCEF: 01/19/2026

This is not a drill, and it is not a joke.

There is clear, record-based evidence across the Broward docket—and related proceedings—that supports a claim of fraud upon the court involving Jerry Breslin. I am not talking about advocacy disputes or sharp practice. I am talking about material discrepancies between what the court ruled on the record and what was later submitted, entered, and relied upon, with concrete downstream consequences.

You both know the standard. You also know that when evidence rises to this level, counsel's duties change.

As my counsel, you have a fiduciary duty to protect my interests, which includes:
- Investigating and evaluating evidence of fraud upon the court when it appears on the face of the docket and transcripts;
- Advising me promptly and candidly about available remedies (including Rule 1.540 relief, sanctions, and corrective orders); and
- Disclosing material misconduct to the court when required, rather than ignoring it or minimizing it as "process issues."

The Broward record contains:
- Court rulings on the transcript that do not authorize language later inserted into orders;
- Entered orders that materially deviate from the oral rulings; and
- Reliance on those deviations to justify enforcement actions and impair rights.

That combination is exactly what courts mean by fraud upon the court. Treating this as noise, delay, or a distraction—rather than as an emergency requiring immediate, coordinated advice—is not acceptable.

I expect, immediately:
1. A coordinated assessment from both of you addressing the fraud-upon-the-court issue head-on;
2. Clear advice on corrective action and disclosure obligations; and
3. Confirmation of how and when this will be presented to the court to protect my interests.

If either of you believes this does not rise to fraud upon the court, then say so plainly and explain why in writing, with reference to the transcripts and orders. Silence, deflection, or delay is not an option here.

For clarity, I am copying the Regional Office solely to preserve the record regarding unresolved issues involving missing assets, lack of accounting, and discrepancies between oral rulings and entered orders in the Broward matter.

I am not seeking advocacy by email. I am seeking appropriate review and guidance given the seriousness of the record

Josh
communicating in my personal capacity only
without waiver of any rights or remedies

Get Outlook for iOS

16

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM          INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004                                            RECEIVED NYSCEF: 01/19/2026

From: Josh Lubin <josh@splncapital.com>
Sent: Wednesday, December 17, 2025 1:28:53 PM
To: Jerry Breslin <jb@jsjb.law>; Brad S. Shralberg <bss@slp.law>; david@softnesslaw.com <david@softnesslaw.com>;
Wiegert, Joel L. <joel.wiegert@kutakrock.com>; Adam Behrendt <jbehrendt@bodmanlaw.com>
Cc: Bradford Cohen Law <service@floridajusticefirm.com>; Michael McMullen <michael@floridajusticefirm.com>;
Patrick Dorsey <pdorsey@slp.law>; Stanley Casey <scasey@sqcaseylaw.com>; JOEL ARESTY <aresty@mac.com>;
klee@feenixpartners.com <klee@feenixpartners.com>; alankartenlaw@gmail.com <alankartenlaw@gmail.com>;
Moore, Melissa <mmoore@bodmanlaw.com>; Avery Samet <asamet@aminillc.com>; Jeffrey Chubak
<jchubak@aminillc.com>; Fred Stevens <fstevens@klestadt.com>; Shaya Baum <sbaum@winglakecp.com>; Ian
Williamson <iwilliamson@manteselaw.com>; Sherri Sikorski <ssikorski@manteselaw.com>; Alan Crane
<acrane@furrcohen.com>; Feinman, Heidi A. (USTP) <heidi.a.feinman@usdoj.gov>; michael@blfmiami.com
<michael@blfmiami.com>; jordan@blfmiami.com <jordan@blfmiami.com>
Subject: Broward Motion to Stay Enforcement (Rule 1.540) — Please tighten + add exhibits (email chain)

Stanley, Joel —

I just prepared a Broward emergency motion to stay enforcement of the final judgment pending Rule
1.540 relief. I'm sending it to you to clean up and make court-ready and to add a few items that will
materially strengthen it.

What I need you to do (please):

1.      Replace the placeholder caption with the exact Broward case caption and confirm the
correct division/judge/case number.

2.      Add Florida authority for:
•       trial court's inherent power to stay enforcement pending post-judgment (Rule 1.540)
relief, and
•       the Court's discretion to waive/reduce bond (or allow alternative/nominal security) here
because this is not a stay pending appeal and because the creditor claims to be secured.

3.      Tighten the bond section to minimize bond exposure:
•       emphasize creditor's claimed ~$14MM collateral as security if true,
•       argue that a full bond would effectively deny meaningful Rule 1.540 review,
•       propose nominal/alternative security only if the Court insists.

4.      Add the supporting materials we discussed:
•       a short Affidavit/Declaration from me re: the repeated collateral claims and the fact that
they have refused to identify/trace/substantiate any collateral;
•       an Exhibit list with the key documents; and
•       attach the email chain showing the requests for collateral info / their non-response (or
evasive response).

5.      Add a clean Certificate of Service for Florida e-filing.

Attachments:
•       Draft Motion (Word)
•       Email chain re: collateral disclosure requests / non-disclosure (to be marked as exhibits)

Goal / timing:
I'd like a polished version I can file ASAP as an emergency stay, coordinated with the Rule 1.540 motion
so the Court sees this as a narrow "preserve the status quo" request—not a merits re-argument.

17

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1004    Case 23-01132-EPK    Doc 370-4    Filed 01/13/26    Page 97 of 107    RECEIVED NYSCEF: 01/19/2026

If either of you sees any landmines (captioning, posture, bond issues, or how best to frame the collateral non-disclosure), flag them and propose the cleanest fix.

Thank you,
Avrumi ("Josh") Lubin

Get Outlook for iOS

From: Josh Lubin <josh@spincapital.com>
Sent: Wednesday, December 17, 2025 11:20:36 AM
To: Jerry Breslin <jb@jsjb.law>; Brad S. Shraiberg <bss@slp.law>; david@softnesslaw.com <david@softnesslaw.com>; Wiegert, Joel L. <joel.wiegert@kutakrock.com>; Adam Behrendt <jbehrendt@bodmanlaw.com>
Cc: Bradford Cohen Law <service@floridajusticefirm.com>; Michael McMullen <michael@floridajusticefirm.com>; Patrick Dorsey <pdorsey@slp.law>; Stanley Casey <scasey@sqcaseylaw.com>; JOEL ARESTY <aresty@mac.com>; klee@feenixpartners.com <klee@feenixpartners.com>; alankartenlaw@gmail.com <alankartenlaw@gmail.com>; Moore, Melissa <mmoore@bodmanlaw.com>; Avery Samet <asamet@aminllc.com>; Jeffrey Chubak <jchubak@aminllc.com>; Fred Stevens <fstevens@klestadt.com>; Shaya Baum <sbaum@winglakecp.com>; Ian Williamson <iwilliamson@manteselaw.com>; Sherri Sikorski <ssikorski@manteselaw.com>; Alan Crane <acrane@furrcohen.com>; Feinman, Heidi A. (USTP) <heidi.a.feinman@usdoj.gov>; michael@blfmiami.com <michael@blfmiami.com>; jordan@blfmiami.com <jordan@blfmiami.com>
Subject: Immediate Action Required — Emergency Motion Before Chief Judge Kimball (Deadline: 5:00 PM Tomorrow)

Stanley, Joel Aresty,

I need you to prepare and be ready to file an emergency motion before Chief Judge Eric Kimball in the Excell Auto bankruptcy by 5:00 PM tomorrow if FVP and Franklin do not agree to a standstill and immediate production.

This is no longer discretionary. The record is now clear, and continued inaction risks irreversible harm.

What has happened (and is now documented):
- FVP represented to the Broward court in April 2022 that approximately $14MM in vehicles/collateral existed.
- Those vehicles (and/or their proceeds) remain unaccounted for.
- In or around May 2025, I served discovery requests seeking information concerning these vehicles and their disposition. FVP and Franklin did not comply with those discovery requests.
- I separately served discovery requests seeking the same vehicle-related information from the Excell Auto trustee, and those requests were likewise not complied with.
- I have now again formally demanded production of deal jackets, bills of sale, transfer records, and a certified accounting covering all vehicles in the Excell/Karma (Palm Beach & Broward) universe, not just the $14MM figure.
- FVP and Franklin have not agreed to a standstill, despite the obvious bankruptcy nexus.
- FVP has noticed criminal defense counsel in the Broward action.
- The U.S. Trustee is copied and on notice that estate-related vehicle assets and proceeds remain unresolved.

This establishes a clear pattern: repeated requests for basic vehicle and collateral information have gone unanswered while enforcement activity continues outside the bankruptcy court.

The motion I am directing you to prepare:

An EMERGENCY MOTION TO STAY ALL ENFORCEMENT AND RELATED PROCEEDINGS AND TO PRESERVE ESTATE-RELATED VEHICLE ASSETS AND PROCEEDS, to be filed in the Excell Auto bankruptcy before Chief Judge Eric Kimball.

The motion must seek the following relief:

1.    An immediate stay of:
- Enforcement of judgments;
- Receivership actions;
- Collection activity; and
- Any further disposition of vehicles or proceeds

to the extent related to Excell Auto, Karma of Palm Beach, and Karma of Broward vehicle collateral.

2.    A finding that:
- There are serious, unresolved questions concerning missing vehicles and proceeds represented to exist;
- Those vehicles and proceeds bear directly on the Excell Auto bankruptcy estate;
- Prior discovery efforts seeking this information were not complied with; and
- Allowing enforcement to continue while these issues remain unresolved risks irreparable harm and dissipation of potential estate assets.

3.    An order requiring:
- Immediate production of deal jackets, bills of sale, transfer records, title documents, and a certified accounting identifying:
- What vehicles existed;
- Where they went;
- How much was received;
- Whether proceeds are held in escrow or otherwise.

4.    Alternatively, at minimum:
- A temporary status-quo stay and an expedited evidentiary or status hearing before Judge Kimball.

Critical issues the motion must emphasize (without over-arguing):
- Contradictory positions taken by FVP and Franklin across courts regarding ownership, control, and disposition of vehicle collateral;
- The fact that vehicles alleged to exist cannot be traced;
- That multiple discovery requests over an extended period have gone unanswered;
- That these vehicles and proceeds implicate bankruptcy estate property, creditor rights, and court supervision; and
- Due process and rights issues created by continued enforcement while ownership and disposition of collateral remain unresolved.

Exhibits:
- My initial standstill request;
- My follow-up;
- The clarification expanding scope to all Excell/Karma vehicles;
- Any prior discovery requests relating to vehicle collateral;
- Relevant excerpts of the April 2022 receiver motion referencing the ~$14MM in vehicles.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004                                                RECEIVED NYSCEF: 01/19/2026

Timing:

• If FVP/Franklin do not expressly agree to a standstill by tomorrow afternoon, file the emergency motion by 5:00 PM.

• I do not want further delay, informal outreach, or partial measures. This issue must be put squarely before Judge Kimball immediately.

This motion should be tight, forceful, and jurisdictionally focused. We are not asking Judge Kimball to decide ultimate ownership today — we are asking him to preserve the status quo, prevent further harm, and assert bankruptcy court control over estate-related vehicle assets and proceeds.

Please confirm today that you are preparing this filing and that it will be ready to go if the parties do not comply.

Josh Lubin
Spin Capital

Get Outlook for iOS

From: Josh Lubin <josh@spincapital.com>
Sent: Wednesday, December 17, 2025 11:02:55 AM
To: Jerry Breslin <jb@jsjb.law>; Brad S. Shraiberg <bss@slp.law>; david@softnesslaw.com <david@softnesslaw.com>; Wiegert, Joel L. <joel.wiegert@kutakrock.com>; Adam Behrendt <jbehrendt@bodmanlaw.com>
Cc: Bradford Cohen Law <service@floridajusticefirm.com>; Michael McMullen <michael@floridajusticefirm.com>; Patrick Dorsey <pdorsey@slp.law>; Stanley Casey <scasey@sqcaseylaw.com>; JOEL ARESTY <aresty@mac.com>; klee@feenixpartners.com <klee@feenixpartners.com>; alankartenlaw@gmail.com <alankartenlaw@gmail.com>; Moore, Melissa <mmoore@bodmanlaw.com>; Avery Samet <asamet@aminllc.com>; Jeffrey Chubak <jchubak@aminllc.com>; Fred Stevens <fstevens@klestadt.com>; Shaya Baum <sbaum@winglakecp.com>; Ian Williamson <iwilliamson@manteselaw.com>; Sherri Sikorski <ssikorski@manteselaw.com>; Alan Crane <acrane@furrcohen.com>; Feinman, Heidi A. (USTP) <heidi.a.feinman@usdoj.gov>; michael@blfmiami.com <michael@blfmiami.com>; jordan@blfmiami.com <jordan@blfmiami.com>
Subject: Clarification re scope of collateral records and vehicle disposition

Jerry, David, Joel, Brad, and Adam,

I want to clarify the scope of my prior request so there is no misunderstanding.

The request for a standstill and production is not limited to the approximately $14 million in vehicles/collateral referenced in FVP's April 2022 receiver motion. It applies to all vehicles that were potentially owned, controlled, pledged, or claimed as collateral by Excell Auto and its affiliated entities, including Karma of Palm Beach and Karma of Broward.

This includes, without limitation:

• Any vehicles held in the name of Excell Auto, Karma of Palm Beach, Karma of Broward, or any affiliated or related entity;

• Any vehicles claimed as collateral, inventory, or proceeds in any financing, receivership, or enforcement action;

• Any vehicles that were transferred, sold, reassigned, or otherwise disposed of, including transfers to insiders, affiliates, third parties, or related entities; and

• Any vehicles that may have been improperly or fraudulently transferred, together with the proceeds of any such transfers and their current location or disposition.

Accordingly, the requested production encompasses all deal jackets, bills of sale, transfer documents, title records, disposition records, and certified explanations/accountings sufficient to identify what vehicles existed within the Excell/Karma (Palm Beach and Broward) universe and where those vehicles, or their proceeds, ultimately went.

As noted previously, these issues bear directly on matters arising in the Excell Auto bankruptcy proceeding and the administration of estate assets, and a temporary standstill pending this production remains the appropriate and efficient course.

Please confirm whether FVP and Franklin will agree to a standstill on that basis, or advise if you intend to oppose and have the issue addressed by motion.

Regards,
Josh Lubin
Spin Capital

Get Outlook for iOS

From: Josh Lubin <josh@spincapital.com>
Sent: Wednesday, December 17, 2025 10:52:05 AM
To: Jerry Breslin <jb@jsjb.law>; Brad S. Shralberg <bss@slp.law>; david@softnesslaw.com <david@softnesslaw.com>; Wiegert, Joel L. <joel.wiegert@kutakrock.com>; Adam Behrendt <jbehrendt@bodmanlaw.com>
Cc: Bradford Cohen Law <service@floridajusticefirm.com>; Michael McMullen <michael@floridajusticefirm.com>; Patrick Dorsey <pdorsey@slp.law>; Stanley Casey <scasey@sqcaseylaw.com>; JOEL ARESTY <aresty@mac.com>; klee@feenixpartners.com <klee@feenixpartners.com>; alankartenlaw@gmail.com <alankartenlaw@gmail.com>; Moore, Melissa <mmoore@bodmanlaw.com>; Avery Samet <asamet@aminillc.com>; Jeffrey Chubak <jchubak@aminillc.com>; Fred Stevens <fstevens@klestadt.com>; Shaya Baum <sbaum@winglakecp.com>; Ian Williamson <iwilliamson@manteselaw.com>; Sherri Sikorski <ssikorski@manteselaw.com>; Alan Crane <acrane@furrcohen.com>; Feinman, Heidi A. (USTP) <heidi.a.feinman@usdoj.gov>; michael@blfmiami.com <michael@blfmiami.com>; jordan@blfmiami.com <jordan@blfmiami.com>
Subject: Re: Follow-up: standstill pending collateral production

Added Michael & Jordan here (who do not represent me). Upon information and belief, they're looking for the same information.

Get Outlook for iOS

From: Josh Lubin <josh@spincapital.com>
Sent: Wednesday, December 17, 2025 10:43:03 AM
To: Jerry Breslin <jb@jsjb.law>; Brad S. Shralberg <bss@slp.law>; david@softnesslaw.com <david@softnesslaw.com>; Wiegert, Joel L. <joel.wiegert@kutakrock.com>; Adam Behrendt <jbehrendt@bodmanlaw.com>
Cc: Bradford Cohen Law <service@floridajusticefirm.com>; Michael McMullen <michael@floridajusticefirm.com>; Patrick Dorsey <pdorsey@slp.law>; Stanley Casey <scasey@sqcaseylaw.com>; JOEL ARESTY <aresty@mac.com>; klee@feenixpartners.com <klee@feenixpartners.com>; alankartenlaw@gmail.com <alankartenlaw@gmail.com>; Moore, Melissa <mmoore@bodmanlaw.com>; Avery Samet <asamet@aminillc.com>; Jeffrey Chubak <jchubak@aminillc.com>; Fred Stevens <fstevens@klestadt.com>; Shaya Baum <sbaum@winglakecp.com>; Ian Williamson <iwilliamson@manteselaw.com>; Sherri Sikorski <ssikorski@manteselaw.com>; Alan Crane

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004 Case 23-01132-EPK Doc 370-4 Filed 01/13/26 Page 101 of 107 RECEIVED NYSCEF: 01/19/2026

<acrane@furrcohen.com>; Feinman, Heidi A. (USTP) <heidi.a.feinman@usdoj.gov>
Subject: Follow-up: standstill pending collateral production·

Jerry, David, Joel, Brad, and Adam,

Following up on my email below. Please confirm by [tomorrow / Friday at 5:00 p.m. ET] whether FVP and Franklin will agree to a temporary standstill on enforcement pending production of the collateral records and certified explanation/accounting referenced below.

**These vehicles and any related proceeds bear directly on issues arising in the Excell Auto bankruptcy proceeding and the administration of estate assets.**

If you will not agree, please state that clearly so the issue can be addressed promptly by motion in the related proceedings.

Regards,
Josh Lubin
Spin Capital


Get Outlook for iOS

From: Josh Lubin
Sent: Wednesday, December 17, 2025 10:39:16 AM
To: Jerry Breslin <jb@jsjb.law>; Brad S. Shraiberg <bss@slp.law>; david@softnesslaw.com <david@softnesslaw.com>; Wiegert, Joel L. <joel.wiegert@kutakrock.com>; Adam Behrendt <jbehrendt@bodmanlaw.com>
Cc: Bradford Cohen Law <service@floridajusticefirm.com>; Michael McMullen <michael@floridajusticefirm.com>; Patrick Dorsey <pdorsey@slp.law>; Stanley Casey <scasey@sqcaseylaw.com>; JOEL ARESTY <aresty@mac.com>; klee@feenixpartners.com <klee@feenixpartners.com>; alankartenlaw@gmail.com <alankartenlaw@gmail.com>; Moore, Melissa <mmoore@bodmanlaw.com>; Avery Samet <asamet@aminllc.com>; Jeffrey Chubak <jchubak@aminllc.com>; Fred Stevens <fstevens@klestadt.com>; Shaya Baum <sbaum@winglakecp.com>; Ian Williamson <iwilliamson@manteselaw.com>; Sherri Sikorski <ssikorski@manteselaw.com>; Alan Crane <acrane@furrcohen.com>; Feinman, Heidi A. (USTP) <heidi.a.feinman@usdoj.gov>
Subject: Request for Standstill Pending Production of Collateral Records

Jerry, David, Joel, Brad, and Adam,

I'm writing to formally request that FVP and Franklin agree to maintain a temporary standstill on enforcement of the judgment while core factual issues—already implicated across related proceedings—are addressed on a documented record.

Specifically, any further enforcement should be stayed until FVP and Franklin produce:
1. The complete deal jackets, together with all bills of sale and transfer records for the missing vehicles, and a certified explanation detailing where those vehicles went, how they were disposed of, the amounts received (if any), whether any proceeds are held in escrow, and any other records or details relating to the disposition of that collateral; and
2. A certified accounting identifying what occurred to the approximately $14 million in vehicles/collateral that FVP represented to the Broward court in its April 2022 receiver motion.

22

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004    RECEIVED NYSCEF: 01/19/2026

These materials are foundational. Proceeding with enforcement while the record remains incomplete invites unnecessary motion practice and further complications, particularly where the disposition and control of collateral remain unexplained.

In addition, FVP has noticed criminal defense counsel in the Broward action. In light of that development, it is both reasonable and prudent to ensure that enforcement activity does not continue while these collateral and transactional issues remain outstanding.

This request is not made to delay. It is to preserve the status quo, avoid needless expense, and ensure the issues are addressed in an orderly way. If FVP and Franklin are confident in their record, production should resolve this quickly.

Please let me know by return email whether you will agree to a temporary standstill on that basis (or, alternatively, a defined standstill period such as 60–90 days or until the next material ruling/hearing), or whether you prefer this be addressed formally by motion.

I am copying the U.S. Trustee to ensure there is a clear record that the existence, disposition, and proceeds of the approximately $14 million in vehicle collateral represented to the Broward court remain unaccounted for and unresolved.

Regards,
Josh Lubin
Spin Capital

Get Outlook for iOS

23

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004    RECEIVED NYSCEF: 01/19/2026

# EXHIBIT 15

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004   Case 23-01132-EPK   Doc 370-4   Filed 01/13/26   Page 104 of 107   RECEIVED NYSCEF: 01/19/2026

## Josh Lubin

| | |
|---|---|
| **From:** | Josh Lubin |
| **Sent:** | Friday, January 9, 2026 8:53 AM |
| **To:** | oig.hotline@usdoj.gov |
| **Cc:** | Heidi.A.Feinman@usdoj.gov; Alan Crane; |
| **Subject:** | FORMAL OIG HOTLINE SUBMISSION – Immediate preservation request + record-integrity concerns – S.D. Fla. BK Case No. 22-12790-EPK / Adv. 23-01132-EPK (Kimball) |
| **Attachments:** | OIG_Submission_Packet_Lubin_ExcellAuto_2026-01-09.pdf |
| **Importance:** | High |

OIG Hotline,

I am submitting this as a **formal hotline complaint** and an **urgent request for immediate record preservation** relating to proceedings in the U.S. Bankruptcy Court for the Southern District of Florida: **Excell Auto Group, Inc., Case No. 22-12790-EPK**, and **Adv. Proc. No. 23-01132-EPK** (before Chief Judge Erik P. Kimball).

**Time sensitivity:** Trial in the adversary proceeding is scheduled to begin **January 29, 2026** (seven court days). As of the Court's **January 5, 2026** order granting counsel's emergency withdrawal, **Spin Capital LLC is currently without counsel,** and as an artificial entity it cannot appear pro se.

**Attached is a single consolidated PDF packet** (with exhibit index) provided as a "notice of filing" for the OIG record and to make preservation and review straightforward. The packet includes the underlying email correspondence, the relevant transcript, and the Court's order.

**What I am reporting**

1. **Preservation / record-integrity refusal after notice**
   Assistant U.S. Trustee **Heidi A. Feinman** has not engaged on preservation in any meaningful way and has stated, in substance, that the Miami U.S. Trustee's Office is "not involved," that "no litigation hold exists," and that email notice is "insufficient," while declining to implement or confirm any preservation steps or identify an appropriate DOJ/UST point of contact for preservation.

1

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004    Case 23-01132-EPK   Doc 370-4   Filed 01/13/26   Page 105 of 107    RECEIVED NYSCEF: 01/19/2026

2. **Non-responsiveness by trustee's special counsel**
   Alan Crane (special counsel for the Chapter 7 trustee for Excell Auto) has been copied on multiple written communications seeking coordination, preservation, and action, yet **has not provided a substantive response** reflected in the attached record.

3. **Abrupt procedural reversal impacting notice, preservation, and trial readiness**
   The **December 30, 2025** hearing transcript reflects the Court stating the withdrawal motion would be reset for **January 14, 2026**, and indicating the trial dates would likely be moved if withdrawal were granted. The Court then entered an order on **January 5, 2026** granting withdrawal, **canceling the January hearing,** and denying any continuance, leaving the **January 29, 2026** trial date in place while Spin Capital LLC is unrepresented.

To be clear: I am **not** asking OIG to review judicial decision-making. I am providing the transcript/order because the sequence is directly relevant to preservation, notice, and the integrity of the record, and because DOJ/UST personnel have been involved in (and copied on) communications tied to these developments.

**What I am requesting OIG do now**

A. **Open a hotline matter,** provide a complaint number, and identify a point of contact.

B. **Issue (or cause to be issued) an immediate DOJ preservation directive** covering all DOJ components implicated by the record, including USTP components, for records relating to:

- Avrumi (Josh) Lubin and Spin Capital LLC;
- Excell Auto Group, Inc. (Case No. 22-12790-EPK) and Adv. Proc. 23-01132-EPK; and
- communications, referrals, analyses, oversight activity, and decisions taken or not taken relating to the above.

C. **Determine whether applicable DOJ/USTP retention and litigation-hold protocols were followed** after written notice, and whether any responsive records have been deleted, altered, or placed at risk.

2

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM      INDEX NO. 650582/2022
NYSCEF DOC. NO. 1004                                        RECEIVED NYSCEF: 01/19/2026

D. If OIG believes another oversight body has primary jurisdiction, **please refer the submission while preserving all records pending transfer,** and confirm the referral in writing.

Please confirm receipt. Given the imminent trial schedule, I request acknowledgement and a point of contact as soon as practicable.

Respectfully,

Avrumi (Josh) Lubin

1460 Arboretum Pkwy

Lakewood, NJ 08701

josh@spincapital.com

(732) 608-4905

**Attachment:** OIG Submission Packet (single PDF; includes exhibit index and exhibits)

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022

NYSCEF DOC. NO. 1004 RECEIVED NYSCEF: 01/19/2026

# EXHIBIT 16

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

In re: EXCELL AUTO GROUP, INC., Debtor.
Case No. 22-12790-EPK (Chapter 7)

NICOLE-TESTA MEHDIPOUR, as Chapter 7 Trustee for Excell Auto Group, Inc., Plaintiff,
v.
HI BAR CAPITAL, LLC, et al., Defendants.
Adv. Proc. No. 23-01132-EPK

---

# SUB-EXHIBIT 18-C

Notice of Filing of Corrected Supplemental Exhibit 17-A (S.D. Fla. Bankr., Adv. Proc. No. 23-01132-EPK, Doc. 373, filed Jan. 15, 2026).

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1005                                    RECEIVED NYSCEF: 01/19/2026

**SUPREME COURT OF THE STATE OF NEW YORK** Index No. 650582/2022
**COUNTY OF NEW YORK**    Third-Party Index No. 595367/2022

Hon. Nancy M. Bannon, J.S.C. (Part 61M)

TETON LIFE LLC as Assignee of the Rights of Spin Capital, LLC,
Plaintiff,
-against-
GOLDEN FOOTHILL INSURANCE SERVICES, LLC et al.,
Defendants.

-------------------------------------------------x

GOLDEN FOOTHILL INSURANCE SERVICES, LLC et al.,
Third-Party Plaintiffs,
-against-
SPIN CAPITAL, LLC, and AVRUMI LUBIN,
Third-Party Defendants.

-------------------------------------------------x

# EXHIBIT C

## Notice of Filing of Corrected Supplemental Exhibit 17-A

S.D. Fla. Bankr., Adv. Proc. No. 23-01132-EPK, Doc. 373, filed Jan. 15, 2026.

*Cover page for NYSCEF exhibit attachment (for ease of reference)*

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1005    Case 23-01132-EPK    Doc 373    Filed 01/15/26    Page 1 of 13    RECEIVED NYSCEF: 01/19/2026

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

In re:    Case No. 22-12790-EPK

EXCELL AUTO GROUP, INC.,    Chapter 7

FILED-USBC, FLS-WPB
'26 JAN 15 PM3:54

Debtor.

_____

/

NICOLE TESTA MEHDIPOUR,    Adv. Pro. No. 23-01132-EPK

as Chapter 7 Trustee for

Excell Auto Group, Inc.,

Plaintiff,

v.

HI BAR CAPITAL, LLC, et al.,

Defendants.

_____

/

## NOTICE OF FILING OF CORRECTED SUPPLEMENTAL EXHIBIT 17-A

Movant Avrumi (Josh) Lubin, pro se (individual capacity only), hereby files this Notice to correct the record regarding Doc. No. 371, titled *"Notice of Filing of Supplemental Exhibit 17."*

1. Doc. No. 371 states that Supplemental Exhibit 17 includes Exhibit 17-A, Exhibit 17-B, and Exhibit 17-C.

2. Upon review of the docketed PDF for Doc. No. 371, Exhibit 17-A was inadvertently omitted from the publicly filed attachment.

3. Accordingly, Movant hereby files the following corrected supplemental exhibit(s):

   a. Exhibit 17-A — *Verified Emergency Motion to Vacate Order (Broward Circuit Court Filing No. 239422279)*

Exhibit 17-C was filed previously at Doc. No. 371 and is incorporated by reference.

4. This Notice is filed solely to ensure the docket accurately reflects the exhibits identified in Doc. No. 371. No additional relief is requested.

Dated: January 15, 2026

Respectfully submitted,

/s/ Avrumi (Josh) Lubin

Avrumi (Josh) Lubin
Pro se (individual capacity only)
1460 Arboretum Parkway

Lakewood, NJ 08701
josh@spincapital.com

+1 (732) 608-4905

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 15, 2026, a true and correct copy of the foregoing was filed via CM/ECF and served on all parties entitled to notice.

_____
Avrumi (Josh) Lubin

Case 23-01132-EPK   Doc 383-1   Filed 01/22/26   Page 302 of 976

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 2042225 9 E-Filed 01/13/2026 04:46:45 PM Filed 01/15/26   Page 3 of 13
RECEIVED NYSCEF: 01/19/2026

# IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

## CASE NO. CACE-22-005125

FVP OPPORTUNITY FUND III, LP, a Delaware limited partnership; et al.,

Plaintiffs,

v.

KARMA OF BROWARD, INC., a Florida corporation, et al.,

Defendants.

_____/

HI BAR CAPITAL, LLC, a New York limited liability company,

Plaintiff,

v.                                                    Consolidated Case no. CACE-22-006401

KARMA OF PALM BEACH, INC., a Florida corporation et al.,

_____/

## JUDGE: HON. DAVID A. HAIMES

## VERIFIED EMERGENCY MOTION TO VACATE AUGUST 14, 2025 ORDER PROCURED BY FRAUD UPON THE COURT; MOTION TO CORRECT THE RECORD; MOTION FOR EVIDENTIARY HEARING AND SANCTIONS; AND INCORPORATED MEMORANDUM OF LAW

Movant, AVRUMI "JOSH" LUBIN ("Movant" or "Mr. Lubin"), respectfully moves this Court—invoking its inherent authority to protect the integrity of its proceedings and Florida Rule of Civil Procedure 1.540—to VACATE the "Order on Joint Motion to Endorse Settlement"

entered August 14, 2025 (the "August 14 Order"), because it was procured through an unconscionable, record-corrupting scheme that deprived Movant of due process, inserted non-rulings as "findings," and then weaponized this Court's signature to trigger the immediate federal disbursement of $2,107,548.61 from the U.S. Bankruptcy Court registry.

This motion does not seek reconsideration of any ruling actually made by the Court. Rather, it seeks correction of specific factual "findings" inserted into the written Order that the Court later questioned on the record and acknowledged were broader than what it intended to rule. It seeks correction of record language that was inserted into the August 14, 2025 Order and that goes materially beyond the Court's oral rulings, as the Court itself later acknowledged on the record. The challenged language has since been treated as a binding factual determination by a bankruptcy court and used to authorize the distribution of over $2.1 million, creating concrete and irreparable consequences based on findings the Court expressly questioned and did not intend to make.

This Motion is intentionally direct. Fraud upon the Court is not a "litigation tactic." It is an attack on the judicial function itself. When counsel submits a proposed order ex parte, packs it with brand-new "findings" that were not noticed, not litigated, and (as the transcript later confirms) not even intended as findings, the result is not "harmless error." It is a deliberate misuse of the Court's order-entry process to obtain relief that could not have been granted through an adversarial, noticed proceeding.

Movant requests (i) immediate vacatur (or, at minimum, striking and correction) of the August 14 Order; (ii) an evidentiary hearing on the fraud upon the Court; (iii) an order compelling production of the submission history, communications, and drafts used to procure the August 14 Order; (iv) interim injunctive relief preserving the Net Proceeds from dissipation; and (v) sanctions—including fees and appropriate referral—against the responsible parties and counsel.

## I. RELEVANT BACKGROUND AND THE INTERNAL CONTRADICTIONS IN THE COURT'S OWN RECORD

1. The U.S. Bankruptcy Court declined to adjudicate the competing claims to the Net Proceeds and directed the parties to obtain a ruling from a court of competent jurisdiction. (Ex. A; see also Ex. B).

2. The Settling Parties (Hi Bar and the FVP/Franklin parties) then presented an eleventh-hour "Joint Motion" to "Endorse Settlement," and obtained a short-noticed hearing on August 13, 2025. (Ex. C; Sealed Ex. F).

3. At that hearing, this Court stated it was granting the Joint Motion based on the common-interest agreement language and a termination letter, and because it did not see how Mr. Lubin had the right to stand in and contest the settlement—while expressly recognizing Mr.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1005                                          RECEIVED NYSCEF: 01/19/2026

Lubin may have separate claims against Hi Bar that were not being adjudicated. (Ex. C at 41:1-25).

4. The next day, August 14, 2025, this Court entered the August 14 Order. (Ex. D).

5. The August 14 Order, as entered, went materially further than the Court's oral ruling and did so in a way that created purported 'findings' and 'ORDERED' provisions engineered for downstream use. Specifically, it: (a) recites findings about termination and standing (paras. 8-9); (b) declares this Court to be the 'court of competent jurisdiction' (para. 10); (c) purports to determine that neither Mr. Lubin nor any affiliated entities have any rights to the Net Proceeds (para. 11); (d) directs distribution to the trust account of counsel for the FVP Parties (para. 13); (e) contemplates filing this Order in the U.S. Bankruptcy Court to trigger registry disbursement (para. 14); and (f) denies any stay and makes the Order immediately effective (para. 16). (Ex. D paras. 8-11, 13-14, 16; Ex. E). Critically, Paragraph 8 purports to make an express factual "finding" that the Common Interest Agreement was terminated—language the Court later confirmed was not intended as a finding at all.

6. The August 14 Order was, in fact, used for that purpose. On August 27, 2025, the Bankruptcy Court entered an order directing the Clerk to disburse $2,107,548.61 to Schwartz Breslin, PLLC trust account, expressly relying on this Court's August 14 Order and its statements that Mr. Lubin and his affiliates had "no rights to the Net Proceeds." (Ex. E).

7. Movant promptly sought reconsideration/clarification and a stay, explaining that the proposed order had been submitted to chambers without being furnished to Movant (in contravention of Fla. R. Jud. Admin. 2.516(h)(1) and Local Rule 8), and that the proposed order contained findings not reached, not briefed, and not noticed. (Ex. G at paras. 3-6).

8. On September 3, 2025, the transcript reflects this Court acknowledged that at least one of the core disputed statements in the August 14 Order—Paragraph 8's statement that the Court "finds" the Common Interest Agreement was terminated—was not intended as a finding at all, and the Court stated it would amend "finds" to "notes." (Ex. H at 22:9-20). Accordingly, Paragraph 8 of the August 14 Order is materially inaccurate on its face: it states that the Court "finds" termination where the Court later acknowledged on the record that no such finding was intended. That internal contradiction alone requires correction or vacatur to conform the written order to the Court's actual ruling.

9. On September 10, 2025, the Court further recognized that the termination letter referenced in the August 14 Order was directed to Spin, not to Mr. Lubin personally, and that the Court's intent on August 13 was not to adjudicate Mr. Lubin's separate claims against Hi Bar. (Ex. I at 40:17-41:2). This confirmation directly contradicts the August 14 Order's implicit premise that termination applied to Mr. Lubin personally, rather than to Spin, and underscores that the written order overstated the scope of what the Court intended to decide.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1005    Case 23-01132-EPK    Doc 373    Filed 01/15/26    Page 6 of 13    RECEIVED NYSCEF: 01/19/2026

## II. GOVERNING LAW: FRAUD UPON THE COURT, DUE PROCESS, AND RULE 1.540

A. Fraud upon the Court is an extraordinary doctrine reserved for extraordinary misconduct. It applies where a party "has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense." Cox v. Burke, 706 So. 2d 43, 46 (Fla. 5th DCA 1998). Submitting a proposed order that materially expands an oral ruling, without notice to an affected party, and then using that order to obtain immediate financial relief in another court constitutes precisely the type of unconscionable scheme Cox condemns.

B. Florida Rule of Civil Procedure 1.540(b)(3) permits relief from an order for "fraud ... misrepresentation, or other misconduct of an adverse party" within one year; and the rule expressly preserves the Court's power to set aside an order for "fraud upon the court." Fla. R. Civ. P. 1.540(b); see also Pino v. Bank of New York, 121 So. 3d 23 (Fla. 2013).

Because this Motion alleges fraud upon the Court itself—conduct that corrupts the judicial process and results in an order that does not reflect the Court's actual rulings—it is not subject to the one-year limitation applicable to intrinsic fraud under Rule 1.540(b)(3). Instead, Movant invokes this Court's inherent authority and continuing obligation to vacate orders procured through fraud upon the Court in order to preserve the integrity of its proceedings.

C. Fraud upon the Court includes extrinsic fraud—conduct that prevents an unsuccessful party from fully presenting his case. DeClaire v. Yohanan, 453 So. 2d 375, 377 (Fla. 1984) (distinguishing extrinsic vs. intrinsic fraud).

D. Due process is violated where a court grants relief beyond what was noticed or litigated. Bluebone Dev., LLC v. Malibu Bay Cmty. Ass'n, Inc., 289 So. 3d 515, 516 (Fla. 3d DCA 2019) (reversing where trial court expanded scope and ruled on matters not noticed).

E. Orders procured through fraud upon the Court are voidable at any time, and trial courts possess both broad discretion and an affirmative duty to vacate orders that misstate the record, exceed the scope of the Court's actual rulings, or are entered without due process. Where the written order materially diverges from the oral ruling and is later acknowledged by the Court not to reflect its intent, corrective action is required to preserve the integrity of the judicial process.

## III. ARGUMENT

### A. The August 14 Order is infected with due-process defects and relief beyond the noticed issues.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1005                                     RECEIVED NYSCEF: 01/19/2026

Movant is not here arguing about "semantics." Movant is challenging the entry of an order that (i) was drafted and submitted in violation of the basic requirement that proposed orders be circulated to all parties; (ii) injected new adjudicative "findings" beyond the hearing notice and beyond the record; and (iii) was then used to strip Movant of $2.1 million in a different court before Movant could obtain a hearing on his timely record-correction motion.

Movant's contemporaneous Motion for Reconsideration/Clarification documented that the proposed order was submitted to chambers without first being furnished to counsel for Mr. Lubin, contrary to Fla. R. Jud. Admin. 2.516(h)(1) and Local Rule 8, and that it contained "several findings that were not reached, were not briefed, and were not noticed." (Ex. G at paras. 3-6).

That alone warrants vacatur or correction. Relief that was not noticed and not litigated is a due-process violation. Bluebone, 289 So. 3d at 516.

Movant does not suggest any improper judicial conduct; the issue is that the order-submission process failed in a way that allowed non-record findings to be entered without notice or opportunity to be heard.

This Motion does not allege judicial error. It alleges a corrupted order-entry process. Where a proposed order is submitted without service, embeds extra-record findings, and is later acknowledged by the Court not to reflect its intent, the integrity of the judicial process—not merely the correctness of the ruling—is implicated.

## B. The record confirms the August 14 Order contains "findings" the Court did not intend to make—and that mattered.

Paragraph 8 of the August 14 Order states: "The Court finds that the Common Interest Agreement was terminated by Hi Bar on April 3, 2024." (Ex. D para. 8).

Yet on September 3, 2025, when Movant called out this record corruption, the Court expressly acknowledged that this statement was "not meant to be a finding" and stated it would amend "finds" to "notes." (Ex. H at 22:9-20).

If the Court did not intend to make a finding, then an order stating that the Court 'finds' that fact is materially inaccurate and does not reflect the Court's ruling. The error is not semantic; it converted a non-ruling into an adjudicative fact and supplied the factual predicate for the downstream "no rights to Net Proceeds" determination. And it is not harmless. Paragraphs 10 and 11 then escalate the mischief by purporting to determine—globally and conclusively—that Mr. Lubin and all of his affiliates have "no rights to the Net Proceeds." (Ex. D paras. 10-11). Those paragraphs are not independent rulings; they are derivative of Paragraph 8's termination language. Once the termination "finding" collapses—as the Court itself acknowledged—the downstream "no rights to Net Proceeds" determination has no factual foundation.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1005    Case 23-01132-EPK    Doc 373    Filed 01/15/26    Page 8 of 13    RECEIVED NYSCEF: 01/19/2026

Nothing in the August 13, 2025 oral ruling adjudicated ownership, entitlement, or extinguishment of Mr. Lubin's or any affiliate's rights to the Net Proceeds. Paragraphs 10 and 11 of the August 14 Order therefore exceed a standing determination and purport to resolve substantive property rights that were neither noticed, litigated, nor argued. Such relief is void for lack of due process and cannot stand.

The oral ruling on August 13 confirms the narrow purpose: the Court granted the Joint Motion and stated it did not see how Mr. Lubin had any right to stand in and contest the settlement, while recognizing Mr. Lubin "may have claims against Hi Bar … but that has nothing to do with the settlement." (Ex. C at 41:1-25).

On September 10, 2025, the Court further acknowledged that the termination letter referenced in the August 14 Order was directed to Spin, not to Mr. Lubin personally. (Ex. I at 40:17-41:2). These transcript admissions matter because they confirm what Movant has said from day one: the August 14 Order, as drafted and entered, overstated and mischaracterized the Court's ruling.

**C. This was not an academic dispute; the August 14 Order was immediately relied upon by the Bankruptcy Court to authorize disbursement of $2.1 million from the registry.**

The August 14 Order was not merely entered; it was immediately operationalized as an enforcement instrument. The Order expressly contemplated—and was drafted to enable—its filing in the Bankruptcy Court to trigger registry disbursement of the Net Proceeds. (Ex. D paras. 14, 16). The Bankruptcy Court did not independently adjudicate these issues; it relied on the August 14 Order as an authoritative state-court determination—demonstrating why accuracy of this Court's record is not optional.

That is exactly what occurred. The Bankruptcy Court's August 27, 2025 order directed the Clerk to disburse $2,107,548.61 to Schwartz Breslin, PLLC, relying on the August 14 Order's determinations regarding Mr. Lubin's alleged lack of rights. (Ex. E).

Thus, a short-noticed state-court order—procured through an ex parte proposed-order submission and containing non-record "findings"—became the mechanism for immediate transfer of $2.1 million. This is precisely the kind of extrinsic fraud and systemic interference that the fraud-upon-the-court doctrine exists to deter and remedy.

**D. The confidential settlement agreement itself underscores the scheme and why the Court must intervene.**

The settlement agreement is stamped "HIGHLY CONFIDENTIAL," and it expressly disclaims any rights by Mr. Lubin or Spin, while containing factual representations about termination and alleged breaches of the Spin/Hi Bar Common Interest Agreement. (Sealed Ex. F §§ 7, 20-21).

Those representations were then echoed—verbatim in substance—in the August 14 Order as "findings." (Ex. D para. 8). The chain is unmistakable: confidential settlement terms and

one-sided assertions were converted into court "findings" through an ex parte proposed order process, then used to unlock and distribute registry funds. This Court should not permit its process to be used as a mechanism for effecting a non-adversarial transfer of registry funds through a materially inaccurate record.

### E. Relief and sanctions are warranted; at minimum, an evidentiary hearing is mandatory.

When fraud upon the Court is credibly alleged, the Court must protect its integrity. Because the submission history, communications with chambers, and timing of the Bankruptcy Court filing are outside the four corners of the docket, resolution on affidavits alone would be inadequate. Movant requests an evidentiary hearing at which the Court can determine, on a complete record, (i) who drafted the August 14 Order; (ii) when and how it was transmitted to chambers; (iii) whether it was furnished to Movant before submission; (iv) what communications occurred with the JA/judge regarding the content; (v) why the order contains findings the Court later acknowledged were not intended; and (vi) how quickly the order was deployed in the Bankruptcy Court to obtain disbursement.

Following an evidentiary hearing and factual findings, Movant respectfully requests that the Court consider whether sanctions are appropriate, including fees incurred to correct the record and protect the Court from being used as a conduit for relief that exceeded the Court's actual rulings

### IV. REQUEST FOR RELIEF

WHEREFORE, Movant respectfully requests that this Court enter an order:

1. VACATING the August 14, 2025 Order on Joint Motion to Endorse Settlement (Ex. D) in its entirety or alternatively striking and correcting Paragraphs 8–11 and any derivative 'no rights' determinations entered therefrom nunc pro tunc to conform the written order to the Court's actual rulings;

2. Setting an EXPEDITED, IN-PERSON evidentiary hearing (with live testimony and cross-examination) on fraud upon the Court and record corruption, with a court reporter present;

3. Ordering the Settling Parties and their counsel to PRODUCE (for in camera review if necessary) all drafts, redlines, submission emails, e-portal uploads, and communications with chambers relating to the proposed August 14 Order;

4. Entering interim injunctive relief requiring that the Net Proceeds be preserved (no disbursement, transfer, or dissipation), including requiring the recipients to maintain all funds in trust pending further order;

Case 23-01132-EPK   Doc 373   Filed 01/15/26   Page 10 of 13

5. Directing the Settling Parties to promptly file any corrected/amended order in the Bankruptcy Court and to notify that court that the August 14 Order has been vacated or materially corrected;

6. Awarding Movant his attorneys' fees and costs (or, if pro se, taxable costs) incurred in bringing this motion and protecting the record;

7. Issuing an Order to Show Cause why sanctions should not be imposed for fraud upon the Court and violation of the proposed-order submission rules; and

8. Granting such other and further relief as this Court deems just and proper.

## VERIFICATION

I declare under penalty of perjury that I have read the foregoing Motion and that the factual statements contained in it are true and correct to the best of my knowledge, information, and belief, based on the record and the exhibits referenced herein.

Dated: January 13, 2026

___/s/ Avrumi Lubin___

**AVRUMI "JOSH" LUBIN, Movant**

1460 Arboretum Pkwy

Lakewood, NJ 08701

Email: josh@spincapital.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on all counsel of record and parties via the Florida Courts E-Filing Portal and/or electronic mail service pursuant to Fla. R. Jud. Admin. 2.516 on this 13 day of January, 2026.

/s/ Avrumi Lubin

AVRUMI "JOSH" LUBIN

## PROPOSED ORDER

### IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT

### IN AND FOR BROWARD COUNTY, FLORIDA

### CASE NO.: CACE-22-005125

### ORDER GRANTING VERIFIED EMERGENCY MOTION TO VACATE ORDER PROCURED BY FRAUD UPON THE COURT

THIS CAUSE came before the Court on Movant Avrumi "Josh" Lubin's Verified Emergency Motion to Vacate August 14, 2025 Order Procured by Fraud Upon the Court; Motion to Correct the Record; Motion for Evidentiary Hearing and Sanctions (the "Motion"). The Court, having reviewed the Motion, the record, and being otherwise fully advised, hereby ORDERS and ADJUDGES as follows:

1. The Motion is GRANTED.

2. The Court's August 14, 2025 "Order on Joint Motion to Endorse Settlement" is VACATED in its entirety as procured by fraud upon the Court. Alternatively, and at minimum, Paragraphs 8-11 and 14 (and any related findings) are STRICKEN and deemed void.

3. An IN-PERSON evidentiary hearing on fraud upon the Court and record corruption is set for_____ at _____ a.m./p.m., to be held in open court (not telephonic), with a court reporter.

4. The Settling Parties and their counsel shall preserve all documents, communications, drafts, redlines, and submission materials relating to the August 14 Order and shall produce them to Movant and/or the Court as directed in a separate scheduling order.

5. Pending further order, all persons/entities in possession of any portion of the Net Proceeds shall maintain those funds in a segregated trust/escrow account and shall not disburse, transfer, encumber, or dissipate the funds.

6. Jurisdiction is reserved to award sanctions, fees, and costs and to enter any further relief necessary to protect the integrity of the Court.

DONE AND ORDERED in Chambers in Broward County, Florida on _____ ,
2026.


_____

**HON. DAVID A. HAIMES**

CIRCUIT COURT JUDGE

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re: EXCELL AUTO GROUP, INC., Debtor.
Case No. 22-12790-EPK (Chapter 7)

NICOLE-TESTA MEHDIPOUR, as Chapter 7 Trustee for Excell Auto Group, Inc., Plaintiff,

v.

HI BAR CAPITAL, LLC, et al., Defendants.
Adv. Proc. No. 23-01132-EPK

---

# SUB-EXHIBIT 18-D

Notice of Hearing (S.D. Fla. Bankr., Adv. Proc. No. 23-01132-EPK, Doc. 369, filed Jan. 13, 2026).

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM         INDEX NO. 650582/2022

NYSCEF DOC. NO. 1006                                     RECEIVED NYSCEF: 01/19/2026

**SUPREME COURT OF THE STATE OF NEW YORK** Index No. 650582/2022
**COUNTY OF NEW YORK**         Third-Party Index No. 595367/2022

Hon. Nancy M. Bannon, J.S.C. (Part 61M)

TETON LIFE LLC as Assignee of the Rights of Spin Capital, LLC,
Plaintiff,
-against-
GOLDEN FOOTHILL INSURANCE SERVICES, LLC et al.,
Defendants.

--------------------------------------------------x

GOLDEN FOOTHILL INSURANCE SERVICES, LLC et al.,
Third-Party Plaintiffs,
-against-
SPIN CAPITAL, LLC, and AVRUMI LUBIN,
Third-Party Defendants.

--------------------------------------------------x

# EXHIBIT D

## Notice of Hearing

S.D. Fla. Bankr., Adv. Proc. No. 23-01132-EPK, Doc. 369, filed Jan. 13, 2026.

*Cover page for NYSCEF exhibit attachment (for ease of reference)*

\

Form CGFCRD3H (10/16/2025)

# United States Bankruptcy Court
## Southern District of Florida
### www.flsb.uscourts.gov

Case Number: 22-12790-EPK                                  Adversary Number: 23-01132-EPK

In re:
**Name of Debtor(s):** EXCELL Auto Group, Inc.
————————————————————————————————————/
**Nicole Mehdipour**
Plaintiff(s)

**VS.**

**Hi Bar Capital, LLC, Spin Capital LLC a/k/a Spin Capital, Yisroel
Herbst, Mordechai Dov Ber Herbst aka Mordi Herbst, Joshua Lubin,
Franklin Capital Group, LLC, dba Wing Lake Capital, Avrumi Lubin
a/k/a Josh Lubin and Franklin Capital Funding, LLC**
Defendant(s)
————————————————————————————————————/

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that a hearing will be held before the Honorable Erik P. Kimball to consider the
following:

**Emergency Motion for Entry of (I) Preservation Order, (II)Protective Order, And (III) Limited
Continuance Or, In The Alternative, Expedited Status Conference and Scheduling Guardrails(253
Amended Complaint (Third) by Nicole Mehdipour against all defendants. Complaint Amended to
Add Additional Count for Relief. (RE: 1 Adversary case 23-01132. Complaint by Nicole Mehdipour
against Hi Bar Capital, LLC, Spin Capital LLC a/k/a Spin Capital, SPFL, Yisroel Herbst, Mordi
Herbst, Joshua Lubin. Filing Fee Paid. Nature of Suit:,(02 (Other (e.g. other actions that would have
been brought in state court if unrelated to bankruptcy))),(12 (Recovery of money/property – 547
preference)),(13 (Recovery of money/property – 548 fraudulent transfer)),(14 (Recovery of
money/property – other)),(91 (Declaratory judgment)) (Crane, Alan) (Attachments: # 1 Exhibit A–G #
2 Exhibit H–M)) Filed by Defendant Avrumi Lubin a/k/a Josh Lubin (368)**

1. This matter has been set on the Court's motion calendar for a non-evidentiary hearing. The allotted
   time for this matter is ten minutes. The hearing will be held:

   **Date:**        **January 16, 2026**
   **Time:**        **01:30 PM**
   **Location:**    **Flagler Waterview Building, 1515 N Flagler Dr Room 801 Courtroom B, West Palm
                    Beach, FL 33401**

2. Although the Court will conduct the hearing in person, any interested party may choose to attend the
   hearing remotely using the services of Zoom Video Communications, Inc. ("Zoom"), which permits
   remote participation by video or by telephone, if the judge's procedures allow. To participate in the
   hearing remotely via Zoom (whether by video or by telephone), you must register in advance no later
   than 3:00 p.m., one business day before the date of the hearing. To register, click on or manually enter
   the following registration link in a browser:

   https://www.zoomgov.com/meeting/register/vJIsduGsrTouGn7Udkhqe_ZF90qPJ3uM95E

   All participants (whether attending in person or remotely) must observe the formalities of the
   courtroom, exercise civility, and otherwise conduct themselves in a manner consistent with the dignity
   of the Court. This includes appropriate courtroom attire for those participants appearing in person or
   by video.

3. The movant, or movant's counsel if represented by an attorney, must:

   (a)  serve a copy of this notice of hearing and, unless previously served, the above-described

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1006                                          RECEIVED NYSCEF: 01/19/2026

document(s) on all required parties within the time frame required by the Federal Rules of Bankruptcy Procedure, the local rules of this Court, and orders of the Court, and

(b)  file a certificate of service as required under Local Rules 2002-1(F) and 9073-1(B).

Any party who fails to properly serve any pleading or other paper may be denied the opportunity to be heard thereon.

4.  The audio recording maintained by the Court will be the sole basis for creation of a transcript that constitutes the official record of the hearing.

5.  PLEASE NOTE: Photo identification is required to gain entrance to all federal courthouse facilities. Electronic devices, including but not limited to cameras, cellular phones (including those with cameras), iPads, tablets, pagers, personal data assistants (PDA), laptop computers, radios, tape-recorders, etc., are not permitted in the courtroom, chambers or other environs of this Court. These restrictions (except for cameras not integrated into a cell phone device) do not apply to attorneys with a valid Florida Bar identification card, attorneys who have been authorized to appear by pro hac vice order and witnesses subpoenaed to appear in a specific case. No one is permitted to bring a camera or other prohibited electronic device into a federal courthouse facility except with a written order signed by a judge and verified by the United States Marshals Service. See Local Rule 5072-2.

Dated: 1/13/26

**CLERK OF COURT**
By: Dawn Leonard
Courtroom Deputy

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

In re: EXCELL AUTO GROUP, INC., Debtor.
Case No. 22-12790-EPK (Chapter 7)

NICOLE-TESTA MEHDIPOUR, as Chapter 7 Trustee for Excell Auto Group, Inc., Plaintiff,
v.
HI BAR CAPITAL, LLC, et al., Defendants.
Adv. Proc. No. 23-01132-EPK

---

# SUB-EXHIBIT 18-E

Exhibit Index (Broward Cty., Fla., Case No. CACE-22-005125, Filing No. 239422279, filed Jan. 13, 2026).

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                      RECEIVED NYSCEF: 01/19/2026

**SUPREME COURT OF THE STATE OF NEW YORK** Index No. 650582/2022
**COUNTY OF NEW YORK**        Third-Party Index No. 595367/2022

Hon. Nancy M. Bannon, J.S.C. (Part 61M)

TETON LIFE LLC as Assignee of the Rights of Spin Capital, LLC,
Plaintiff,
-against-
GOLDEN FOOTHILL INSURANCE SERVICES, LLC et al.,
Defendants.
-----------------------------------------------x
GOLDEN FOOTHILL INSURANCE SERVICES, LLC et al.,
Third-Party Plaintiffs,
-against-
SPIN CAPITAL, LLC, and AVRUMI LUBIN,
Third-Party Defendants.
-----------------------------------------------x

# EXHIBIT E

## Exhibit Index

Broward Cty. Fla., Case No. CACE-22-005125, Filing No. 239422279, filed Jan. 13, 2026.

*Cover page for NYSCEF exhibit attachment (for ease of reference)*

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022

NYSCEF DOC. NO. 2394222797 E-Filed 01/13/2026 04:46:45 PM
RECEIVED NYSCEF: 01/19/2026

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA
CASE NO. CACE-22-005125

EXHIBIT INDEX

Exhibit A: U.S. Bankruptcy Court Order Denying Expedited Joint Motion (Bankr. S.D. Fla. Case No. 22-15627-EPK, Dkt. 952).
Exhibit B: U.S. Bankruptcy Court transcript (June 18, 2025 hearing re registry / custodia legis) (061825aw).
Exhibit C: Broward Circuit Court transcript (Aug. 13, 2025 hearing on Joint Motion to Endorse Settlement).
Exhibit D: Broward Circuit Court "Order on Joint Motion to Endorse Settlement" (entered Aug. 14, 2025) (Filing #229455396).
Exhibit E: U.S. Bankruptcy Court Order Directing Disbursement of $2,107,548.61 (+ interest) (Bankr. S.D. Fla. Case No. 22-15627-EPK, Dkt. 965).
Sealed Exhibit F: Executed Settlement Agreement — filed under seal pursuant to Fla. R. Jud. Admin. 2.420.
Exhibit G: Movant's Motion for Reconsideration and/or Clarification of the Aug. 14, 2025 Order (Filing #230162252), with attachments.
Exhibit H: Broward Circuit Court transcript (Sept. 3, 2025 hearing — record correction / withdrawal hearing).
Exhibit I: Broward Circuit Court transcript (Sept. 10, 2025 hearing — motion to clarify / scope of findings).
Exhibit J: Email chain / correspondence regarding proposed order submission and record correction.
Exhibit K: Demand Draft Fraud-Upon-the-Court Record-Correction Motion
Exhibit L: Notice of Filing Declaration re preservation notice (Excell Bankr. Adv. Proc.)
Exhibit M: Common Interest & Joint Litigation Agreement (Jan 28, 2022
Exhibit N: April 3, 2024 termination letter

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007    RECEIVED NYSCEF: 01/19/2026

# Exhibit A

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                    RECEIVED NYSCEF: 01/19/2026



**ORDERED in the Southern District of Florida on August 12, 2025.**

**Erik P. Kimball**
**Chief United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:                                                Case No. 22-15627-EPK
                                                       Chapter 7
AUTO WHOLESALE OF BOCA, LLC,

     Debtor.

_____/

## ORDER DENYING EXPEDITED JOINT MOTION

This is the Court's ruling on the *Expedited Joint Motion (I) To Enforce Sale Order and*

*(II) To Order Distribution of Auction Proceeds to Counsel for the FVP Parties* [Dkt. No. 931;

the "Joint Motion"]. The Court also considered the limited objection filed by Avrumi Lubin

[Dkt. No. 950] and the reply [Dkt. No. 951].

The debtor in this case, Auto Wholesale of Boca, LLC, filed a voluntary chapter 11

petition on July 22, 2022. Dkt. No. 1. The debtor claimed to be a wholesale dealer of exotic

and luxury vehicles. It had a number of vehicles in its possession at the time.

Two days after the debtor filed this case, creditors filed an adversary proceeding

against the debtor claiming that vehicles in the debtor's possession were not actually the

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 322 of 976

debtor's property and were subject to liens granted by another entity. Adv. Proc. No. 22-01218-EPK (the "Adversary Proceeding"). Other creditors made similar claims by adversary proceeding and by motion. *See, e.g.,* Adv. Proc. No. 22-01424-EPK; Dkt. Nos. 13, 72, 114, 127, 141, 252, 268, 356, 576, 578, 680. Eventually, the Adversary Proceeding came to include several parties claiming interests in vehicles held by the debtor. Dkt. No. 145, Adv. Proc. No. 22-01218 (Amended Complaint).

About 9 months after this case was filed, on May 1, 2023, the Court converted this case to chapter 7. Dkt. No. 584. By then it was clear that for at least a few years prior to this bankruptcy the debtor's business consisted almost entirely of lending money to another entity which is also a debtor before this Court. Tr. of Oral Ruling, Dkt. No. 610. When the Court converted this case, the debtor remained in possession of a number of vehicles, but the debtor had very weak and probably no claim to ownership of most of those vehicles. In its ruling, the Court stated: "It would not surprise me if the debtor in the end can claim no ownership at all." Tr. of Oral Ruling, Dkt. No. 610 at 20.

When the chapter 7 trustee took control of the debtor on May 2, 2023, he was mindful of the competing claims to the vehicles in his possession and the debtor's tenuous ownership of those vehicles. The trustee determined that the best approach would be to propose an auction sale of the vehicles, with the bankruptcy estate to obtain a small portion of the proceeds, and the lion's share of the net sale proceeds to be set aside so that parties claiming interests in the vehicles could address their disputes in another forum.

Within a week of his appointment, the trustee filed a motion to auction a number of vehicles in the estate's possession. Dkt. No. 618. The sale was to be free and clear of all liens and other interests under 11 U.S.C. § 363(f). The trustee asked the Court to approve a minimum amount to be retained by the estate for the benefit of unsecured creditors, in the form of a surcharge under 11 U.S.C. § 506(c).

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007
RECEIVED NYSCEF: 01/19/2026

Through the Adversary Proceeding and various motions for turnover, all parties claiming interests in the vehicles were before the Court. Several parties objected to the trustee's sale motion. *E.g.*, Dkt. Nos. 623, 630, 631, 632, 638, 639, 640, 641, 642, 644, 676, 678. After an initial hearing, the Court granted the sale motion in part, authorizing the trustee to retain the auctioneer, and set further hearings to consider how the net sale proceeds would be distributed and other concerns. Dkt. No. 634.

Over a period of several weeks, the trustee negotiated with all parties claiming liens on and interests in the vehicles. The trustee swiftly concluded terms acceptable to those parties and favorable to the bankruptcy estate. Only six weeks after his appointment, at the final hearing on the sale motion, the trustee presented an order approving the auction sale of the vehicles. Dkt. No. 694 (the "Sale Order").

Among other things, the Court authorized the trustee to sell certain vehicles free and clear of liens pursuant to 11 U.S.C. § 363(f). The trustee retained an agreed portion of the sale proceeds for the benefit of creditors. The remaining net proceeds from the sale were held pending adjudication by another court having competent jurisdiction or agreement of the parties claiming liens on or interests in the vehicles. The Sale Order included the following provision (the "Limiting Language"): "Only (i) parties to the Adversary Proceeding Complaint, or (ii) parties that have appeared in the main bankruptcy case and asserted an interest in the Vehicles, may make a claim against the Net Proceeds." The Sale Order was later clarified but its primary terms were not changed. Dkt. No. 738.

After the auction sale, the trustee sought direction on where to deposit the proceeds from the sale less expenses and less the funds to be retained by the trustee for the benefit of creditors (the "Net Proceeds"). Dkt. No. 727. The trustee asked the Court to permit the Net Proceeds to be deposited in the registry of the Court "pending adjudication by a court of competent jurisdiction as to the validity, priority and extent of property interests asserted in

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 324 of 976

the Net Proceeds or consensual resolution as to their disposition." The Court granted that request and the Net Proceeds were accepted into the Court's registry. Dkt. No. 749. The Court later clarified that the Net Proceeds were subject to the Court's jurisdiction "for purposes of any disputes that may arise out of the Auction or its conduct, the condition of the Vehicles, or out of any alleged actions or omissions by the Trustee's Court-approved Auctioneer." Dkt. No. 807. No such claims were presented. Other than for this limited purpose, the trustee waived any interest in the Net Proceeds and the Court approved that waiver. Dkt. Nos. 694 and 738.

The trustee filed a final account on May 15, 2025. Dkt. No. 909. This case is fully administered. The only reason this case has not been closed is that the Net Proceeds remain in the registry of the Court. Because of this, the Court *sua sponte* entered its *Order to Show Cause Why Certain Funds Held by the Clerk Should Not Escheat to the United States Treasury and Setting Hearing Thereon.* Dkt. No. 911 (the "Order to Show Cause"). In the Order to Show Cause, the Court paraphrased the Limiting Language, making it clear that only certain parties may seek release of the Net Proceeds. The Court set a hearing on more than two months' notice and directed such parties to attend the hearing and present an agreement with regard to release of the Net Proceeds. The Court is aware that the relevant parties are litigating their disputes in another forum. The Court intended to give those parties sufficient time to provide joint instructions for release of the Net Proceeds according to their agreement, or to arrange for the funds to be lodged with an escrow agent or placed in the registry of the court where their litigation is pending.

In the Order to Show Cause, the Court did not invite motions from parties claiming an interest in the Net Proceeds. The Court made it clear that it did not intend to rule on any issue relating to any party's right in the Net Proceeds. In spite of this, a flurry of motions were filed including the Joint Motion now before the Court. Dkt. Nos. 925, 931, 938. The

Court initially denied all of those motions. Dkt. No. 941. However, the Court later vacated the denial of the Joint Motion and reset the Joint Motion for hearing. Dkt. Nos. 944, 945.

The following parties filed the Joint Motion: Franklin Capital Funding, LLC, Franklin Capital Group, LLC, Franklin Capital Management, LLC, FVP Opportunity Fund III, LP, FVP Investments, LLC, FVP Servicing, LLC, and Hi Bar Capital, LLC (together, the "Movants"). They ask the Court to direct the Clerk to release the Net Proceeds from the registry of the Court and disburse them to counsel for the FVP entities, Schwartz Breslin PLLC, "there to be further disbursed in accordance with the agreement between the Movants." In other words, the Movants have reached an agreement regarding application of the Net Proceeds among themselves, which they intend to effectuate if the Net Proceeds are released.

No one disputes that the Movants are, in name, the sole remaining parties that may seek release of the Net Proceeds consistent with the Limiting Language in the Sale Order. However, in his response to the Joint Motion, Mr. Lubin argues that he is the assignee of all claims of Hi Bar to the Net Proceeds. Mr. Lubin objects to release of the Net Proceeds as requested in the Joint Motion as he believes the Movants will not honor the assignment of Hi Bar's claims to him. Mr. Lubin does not object to release of the Net Proceeds to the trust account of FVP's counsel, but only if the funds are held subject to entry of an order of another court having competent jurisdiction.

In support of his argument that he holds Hi Bar's claims, Mr. Lubin points to two documents: a Common Interest and Joint Litigation Agreement dated January 28, 2022 between Spin Capital, LLC and Hi Bar (the "Common Interest Agreement"); and an Absolute Assignment of Interests and Rights dated March 17, 2025 between Spin and Mr. Lubin (the

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                               RECEIVED NYSCEF: 01/19/2026

"Absolute Assignment"). Dkt. Nos. 950-1 and 950-5.[1] In the Common Interest Agreement, Hi Bar assigned a number of claims to Spin including, specifically, Hi Bar's claims in this bankruptcy case and in the Adversary Proceeding, subject to termination and re-assignment back to Hi Bar. In the Absolute Assignment, Spin assigned all of its rights obtained under the Common Interest Agreement to Mr. Lubin.

At all relevant times during this bankruptcy case Mr. Lubin controlled Spin. Indeed, Mr. Lubin signed the Absolute Assignment as "Manager and Managing Member" of Spin. In his response to the Joint Motion, Mr. Lubin acknowledges his virtual identity with Spin for purposes of this case. Mr. Lubin states that, consistent with the Common Interest Agreement, he hired, paid, and directed the attorneys for Hi Bar who participated in this bankruptcy case and in the Adversary Proceeding. Mr. Lubin had full knowledge of the Adversary Proceeding and this bankruptcy case, including the sale process, through counsel that he controlled. In a prior order, the Court found that Mr. Lubin had notice of the sale motion, the final hearing on the sale motion, and the Sale Order. Dkt. No. 944. Mr. Lubin's response here supports those findings.

The Court previously stated that because Mr. Lubin is bound by all terms of the Sale Order including the Limiting Language, which does not reference him personally, that Mr. Lubin is not permitted to seek any relief in connection with release of the Net Proceeds. Dkt. No. 944. Based on the information now before the Court, the Court's view was incorrect.

Mr. Lubin claims to hold the rights of Hi Bar with regard to the Net Proceeds. He points to the Common Interest Agreement as the basis for his position. Hi Bar argues that

---

[1] Mr. Lubin also references an Authority to Represent executed August 1, 2023 among Hi Bar, individuals associated with Hi Bar, Mr. Lubin, and Leto Law Firm. Dkt. No. 950-3. That document relates to litigation in another bankruptcy case pending before this Court and does not appear to have anything to do with this bankruptcy case or the Adversary Proceeding. In any case, it is not necessary for the Court to address the Authority to Represent in this Order.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

the Common Interest Agreement was terminated by written notice on April 3, 2024[2] and, in addition, that Mr. Lubin's refusal to pay legal fees was a breach of the agreement supporting termination. *See* Dkt. 925-1 at 74. Hi Bar thus claims that Mr. Lubin has no right to object to the Joint Motion. Mr. Lubin argues that the written notice was not effective to terminate the Common Interest Agreement according to its terms, and that his refusal to pay legal fees did not result in a breach of the entire agreement. Mr. Lubin argues that Hi Bar has no right to join in the Joint Motion.

As the Court has previously ruled, at this time the Court has no subject matter jurisdiction over any substantive disputes relating to the Net Proceeds. The Court retained jurisdiction over the Net Proceeds only to the extent of any claims relating to or arising from the sale process. No such claims were presented. Beyond that, the bankruptcy estate waived any interest in the Net Proceeds. The Net Proceeds remain in the registry of this Court solely as an accommodation to parties who are litigating their relative rights in another forum. The outcome of the disputes among the Movants and Mr. Lubin will have no impact on administration of this fully administered chapter 7 case. Even under the most liberal component of this Court's subject matter jurisdiction, meaning "related to" jurisdiction under 28 U.S.C. § 1334(b), this Court lacks the power to rule on these disputes. *See British Am. Ins. Co. Ltd. v. Fullerton (In re British Am. Ins. Co. Ltd.)*, 600 B.R. 890, 893-897 (Bankr. S.D. Fla. 2019) (discussing federal bankruptcy jurisdiction generally). This Court cannot and will not decide whether the Common Interest Agreement was terminated and, ultimately, whether Mr. Lubin holds the rights of Hi Bar relating to the Net Proceeds.

This Court of course has jurisdiction to interpret and enforce its own Sale Order. But the question whether Mr. Lubin is the ultimate assignee of Hi Bar is not one that may be

---

[2] This date is well after the entry of the Sale Order. Even under Hi Bar's view, Spin held Hi Bar's rights to the Net Proceeds at the time the Court entered the Sale Order.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007
RECEIVED NYSCEF: 01/19/2026

determined by the Court merely enforcing the Sale Order. If Mr. Lubin is correct, at the time the Court entered the Sale Order Spin controlled Hi Bar's claims in this matter and Mr. Lubin controlled Spin. In Mr. Lubin's view, immediately upon entry of the Sale Order, Spin could direct counsel for Hi Bar to join in asking this Court to release the Net Proceeds.[3] Mr. Lubin alleges that Spin later assigned its rights to him personally. If this is true, then Mr. Lubin is the correct party to join with FVP and Franklin in the Joint Motion, not Hi Bar. Hi Bar argues that Mr. Lubin has no such right. The Court cannot resolve this dispute merely by considering the history of this bankruptcy case and the Sale Order.

Even if this Court had subject matter jurisdiction over the present dispute between Hi Bar and Mr. Lubin, the Court would abstain from the matter under 28 U.S.C. § 1334(c). Particularly in light of the procedural context of this case, which is fully administered, comity requires that this Court give way to the state court where these questions are more appropriately addressed.

The Movants are engaged in litigation before the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida regarding their relative rights to the Net Proceeds. Case No. CACE-22-005125 (the "Broward Action"). Based on a transcript of a recent hearing, Mr. Lubin is now active in the Broward Action. Dkt. No. 950-2. It appears that the court in the Broward Action has jurisdiction over the relevant disputes and can

---

[3] Contrary to the argument presented in the reply [Dkt. No. 951], neither Spin nor Mr. Lubin were required to oppose the relief granted in the Sale Order. Hi Bar's rights in the Net Proceeds were preserved by the Sale Order and the Limiting Language. According to Mr. Lubin, Spin held an assignment of Hi Bar's claims and had the ability to direct Hi Bar's actions, so Spin did not waive any rights by not participating in the sale hearings. Spin did not assign its rights in Hi Bar's claims to Mr. Lubin until much later, so Mr. Lubin had no need to participate individually at the time of the sale. For the same reason, the limitation in paragraph D of the Sale Order regarding Mr. Lubin's ability to seek relief relating to the Net Proceeds cannot prevent Mr. Lubin from later acquiring the rights of Hi Bar via Spin. Mr. Lubin is not now seeking to modify the Sale Order. If Mr. Lubin is correct, then he has the benefit of the Sale Order and the Limiting Language, as he holds the rights of Hi Bar.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM          INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                        RECEIVED NYSCEF: 01/19/2026

determine which of the Movants and Mr. Lubin have rights in the Net Proceeds. The Court encourages the parties to seek appropriate rulings in the Broward Action.

The Court will hold the hearing on the Order to Show Cause at 10:00 a.m. on August 27, 2025 as originally scheduled, and the Order to Show Cause remains in full force and effect. The parties are strongly discouraged from filing additional motions and responses.

In light of the foregoing, the Court **ORDERS and ADJUDGES** as follows:

1.      The *Expedited Joint Motion (I) To Enforce Sale Order and (II) To Order Distribution of Auction Proceeds to Counsel for the FVP Parties* [Dkt. No. 931] is DENIED.

2.      This Court cannot and will not rule on the dispute between Avrumi Lubin and Hi Bar Capital, LLC regarding their relative rights in the Net Proceeds held in the registry of this Court. The parties are encouraged to obtain a ruling from another court having competent jurisdiction or to present an agreement and a form of agreed order as directed in the Order to Show Cause.

3.      The hearing on the *Expedited Joint Motion (I) To Enforce Sale Order and (II) To Order Distribution of Auction Proceeds to Counsel for the FVP Parties* [Dkt. No. 931] set for August 13, 2025 is CANCELED.

###

Copy Furnished To:

Jerrell Breslin, Esq.

*Jerrell Breslin, Esq. is directed to serve a conformed copy of this Order on all appropriate parties and file a certificate of service.*

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                               RECEIVED NYSCEF: 01/19/2026

# Exhibit B

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                    RECEIVED NYSCEF: 01/19/2026

Page 1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF FLORIDA

IN RE:                          CASE NO. 22-15627-EPK

AUTO WHOLESALE OF BOCA, LLC,

Debtor.

_____/

ECF #912

June 18, 2025

The above-entitled cause came on for hearing before the Honorable Erik P. Kimball, one of the Judges in the UNITED STATES BANKRUPTCY COURT, in and for the SOUTHERN DISTRICT OF FLORIDA, at 1515 North Flagler Dr., West Palm Beach, Palm Beach County, Florida, on June 18, 2025, commencing at or about 10:30 a.m., and the following proceedings were had.

Transcribed from a digital recording by:

Cheryl L. Jenkins, RPR, RMR

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                      RECEIVED NYSCEF: 01/19/2026

Page 2

APPEARANCES VIA ZOOM:

MICHAEL BAKST, Trustee

FURR & COHEN, by
ALAN R. CRANE, Esquire
JASON S. RIGOLI, Esquire
On behalf of Nicole Testa Mehdipour

SHRAIBERG PAGE, by
PATRICK DORSEY, Esquire (via Zoom)
On behalf of Franklin Capital Funding, LLC, Franklin
Capital Group, LLC, Wing Lake Capital

LETO LAW FIRM, by
MATTHEW LETO, Esquire (via Zoom)
On behalf of Hi Bar

JOEL ARESTY, P.A., by
JOEL ARESTY, Esquire
On behalf of Josh Lubin

JONATHAN SCHWARTZ, Esquire
On behalf of FVP, FVP Investments, LLC,
RVP Opportunity Fund, III, LP, RVP Servicing, LLC

ALSO PRESENT
Josh Lubin
ECRO - Electronic Court Reporting Operator   (in person)

- - - - - - -

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007    RECEIVED NYSCEF: 01/19/2026

Page 3

ECRO:  Okay, and the last matter on the 10:30 docket, Auto Wholesale of Boca, LLC, Case Number 22-15627.

Mr. Bakst.

MR. BAKST:  Good morning, your Honor. Michael Bakst, the new trustee.

I think that -- I don't know if I've been discharged as trustee yet.  The case hasn't fully administered.

THE COURT:  Thank you.

ECRO:  Mr. Dorsey.

MR. DORSEY:  Good morning, Judge. Patrick Dorsey on behalf of Franklin Capital Funding, LLC.

ECRO:  Mr. Leto.

MR. LETO:  Good morning.  May it please the Court.  Matthew Leto on behalf of Hi Bar.

ECRO:  Mr. Aresty.

MR. ARESTY:  And good morning, Judge. Joel Aresty representing Mr. Lubin, who I believe is also monitoring the hearing.

ECRO:  Mr. Schwartz.

MR. SCHWARTZ:  Good morning.  Jonathan Noah Schwartz on behalf of Schwartz, Breslin, PLLC for the FVP parties, just filling in for Mr. Breslin, who was in person in Broward County on this matter today.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                RECEIVED NYSCEF: 01/19/2026

Page 4

ECRO:  And does anyone else wish to make an appearance in this case?

(No verbal response.)

ECRO:  Okay.

THE COURT:  All right.  So there's one matter set for today, and who would like to present it?

MR. DORSEY:  I will, Judge.  Again, Mr. Dorsey on behalf of Franklin Capital Funding, LLC. Thank you for hearing it on an expedited basis, by the way.

As I hope you can imagine, when my client saw a writ of garnishment issued to the bankruptcy court, it caused some consternation, and we wanted to move quickly on that issue.

As a very brief background, Auto Wholesale Boca filed, originally filed for bankruptcy as a Subchapter 5 debtor in 2022.  At the time it filed, it had a fleet of about 20 luxury automobiles that it claimed it was the legitimate owner of.  Various parties, including my client, Mr. Breslin's client, and Mr. Leto's client disputed that claim.

The Court converted the case to Chapter 7 in 2023, and the secured creditors negotiated a deal with Mr. Bakst, as the trustee, whereby, in essence, Mr. Bakst sold the vehicles, obtained a carveout for the estate,

OUELLETTE & MAULDIN COURT REPORTERS, INC.
(305) 358-8875

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 335 of 976

Page 5

deposited the net proceeds into the registry of the Court, and this Court directed the secured creditors and other parties and interests to go obtain a judgment from a Court of competent jurisdiction to find out who had the senior interest in the net proceeds.

That sale order is docketed at ECF Number 694, and I apologize, due to a scrivener's error I may have cited the sale motion as opposed to the order in my motion.

Two pertinent paragraphs of the sale order are, first of all, I believe Paragraph D, at the beginning of the order it says that Mr. Aresty's client, Mr. Lubin, was on notice of an AWB bankruptcy case at all relevant times, he was aware of the sale process, he was aware of the vehicles, and the net proceeds being deposited into the registry of the Court, and so Mr. Lubin was barred from collaterally attacking the sale order, or objecting to the sale at a later date.

Secondly, Paragraph 8 of the sale order essentially states that only parties who appeared in the AWB bankruptcy case that asserted an interest in the vehicles would have a claim to the net proceeds on a going-forward basis, and of course that would exclude Mr. Lubin.

Since the sale occurred, hot litigation has

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM          INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                     RECEIVED NYSCEF: 01/19/2026

Page 6

been going on in Broward County Circuit Court over the lien priority and the proceeds.

If your Honor is wondering, the reason that litigation is still going on, some two years later, is because it's not just an FVP versus Hi Bar versus Franklin dispute over lien priority.  There are, frankly, dozens of other parties, and fraud and tort claims going back and forth, and so it's been a somewhat cumbersome process.

Mr. Lubin knows about this litigation because he is named, both him individually and the company he owns and controls, Spin Capital, are named defendants to that litigation.

Mr. Lubin, in his operative pleadings and the litigation, has never asserted an interest in the proceeds, sought to foreclose on the proceeds, filed a foreclosure count against my client or FVP or what-have-you.  He is strictly playing defense in the Broward litigation.

From what I've been able to surmise, at some point in time Mr. Lubin was not happy with the idea he would not be getting a cut of the $2 million, and so he took a New York State Court judgment entered in favor of Hi Bar, filled out a fraudulent affidavit, where he said that Hi Bar has actually assigned this to me, without any documentary evidence or an assignment from Hi Bar

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007
RECEIVED NYSCEF: 01/19/2026

Page 7

evidencing that.  He domesticated that New York State judgment in Palm Beach Circuit Court, which again I regard as an act of fraud, and then he had the Palm Beach Circuit Court issue a writ of garnishment to this Court, and I think it's pretty apparent his aim in doing that was to somehow get his hands on the funds in the court registry.

So that brings us to the motion I filed today.  I think, frankly, Judge, a lot of these fraud claims may be better brought in the Palm Beach Circuit Court, because that is the judgment -- that is where the judgment was domesticated.  However, I do think at a minimum this Court can state, number one, that the funds in the registry are not subject to any purported garnishments or attachments arising from other courts.  I think the case law is clear on that; and, number two, I do think an order of show cause should be entered against Mr. Lubin because, in my view, he is collaterally attacking the sale order, and while the genesis of his fraud was in the Palm Beach Circuit Court, by causing a writ of garnishment to be issued against the clerk of this court, I do think he attempted to commit fraud on this Court as well.

THE COURT:  Hold on just a moment, please. All right.  Thank you.

Who would like to respond?  Mr. Aresty, I

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                    RECEIVED NYSCEF: 01/19/2026

Page 8

assume?

MR. ARESTY:  Yes.  If the Court please.

Judge, this is an emergency that really isn't, and should have been resolved by conferral, which is required by the local rule before you file a motion for emergency hearing, or in the state court case.

As a practical matter, I don't believe there's a present controversy for the following reasons. First of all the -- there's been no service of a writ of garnishment on Mr. Falzone, as clerk.  There were some correspondence, and Mr. -- but as we are here, there's been no service, just some correspondence with a paralegal.

There's no garnishment on the clerk --

THE COURT:  Can you stop there for a moment? I don't know if there was service, and let me make it clear, the Court does not represent the clerk, but I understand there was a formal response saying that the court does not hold any funds for the parties who are named as judgment debtors in the judgment that was certified in the state of Florida.  Is that accurate?

MR. ARESTY:  That is accurate.  Whether or not that would serve in the state court as an answer of garnishee, I think is moot, and I'll explain why in a second.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

So, in the state court, there's no service of the writ evident and, therefore, no responses yet due by the clerk.

In any event, my client has agreed, under the case law, which was filed in the supplemental response regarding custodia legis, that perhaps the procedure was improper, again, a state law matter which should have been settled by conferral, has agreed to stand down with regard to the garnishment.

So, really, the garnishment issue, not only is it not an emergency, but it's really going to be moot. My client would apologize for any inconvenience, but there's really, in this Court, no harm and no foul. The motion should be denied as moot.

Obviously, the real issue, whether or not it's the custodia legis law, which was argued for the first time in the supplemental response, is accurate, and I believe it probably is, that would make it impossible to do --

THE COURT:  To garnish funds held in the registry of a federal court.  It seems pretty clear, there's no 11th Circuit case, although I don't know why there would need to be, since there's a Supreme Court case, and we do still listen to the Supreme Court, and so it was improper to even try to serve it.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007
INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 10

But you were the person who sent the writ of garnishment to the clerk, is that correct?

MR. ARESTY:  That is not correct, Judge.  A paralegal, with the great name of Paralegal Activity, sort of a play on words on behalf of Mr. Lubin, sent an email to the clerk.

I had corresponded with the clerk on behalf of the mutual client, Mr. Lubin, because apparently Mr. Lubin did send a sheriff to the Palm Beach clerk's office, which refused service, but again, this is all a matter in the state court, and my involvement was just as a courier, more or less, of information.

THE COURT:  Well, as soon as you got involved, you were representing Mr. Lubin.  Under the rules of ethics in Florida, the moment that you formally took a position by emailing the clerk, you became counsel for Mr. Lubin.

Yes, so I don't know why you're giving me a look.  You don't get to say, I don't represent somebody, but communicate on their behalf.  It doesn't work that way.

MR. ARESTY:  I think I --

THE COURT:  But what is your response to the argument that Mr. Lubin doesn't hold any rights under the judgment?

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007 RECEIVED NYSCEF: 01/19/2026

Page 11

MR. ARESTY: He believes he holds rights as a participant and assignee, Judge, which is a separate matter, which is going to have to be litigated at some point, but he does believe that Spin, and he, as assignee, are participants in, and are the rightful owners of the Hi Bar UCC positions.

THE COURT: And I don't know what you mean by that. There's a judgment, and he's trying to collect on a judgment.

So is there a documentary basis for the argument that Mr. Lubin, through Spin, obtained whatever rights Hi Bar has under the judgment that is attached to today's motions?

MR. ARESTY: There probably -- there is, I believe, but I'm not prepared to present that evidence or argument. I think that there's -- it's certainly a question in the state court proceeding with regard to the proceeds, which you've heard is being vigorously litigated.

I know your Honor entered a second order to show cause with regard to why that money hasn't been distributed yet, which you said for August, but there's a number of parties contesting that, and I know, Judge, really, as to the matter that's before you this morning, Judge, I think that you would have to agree that this is a

NYSCEF DOC. NO. 1007

RECEIVED NYSCEF: 01/19/2026

Page 12

state court matter.  The state court is where it lies, and that's where it should be finished.

There's no reason for some activity in that state court to be considered any kind of contempt as to your Court and, again, we not only apologize but stand down.  We don't think this motion should have ever been brought here.

THE COURT:  Before I go back to Mr. Dorsey, is there anybody else who wishes to be heard?  Mr. Lubin, I see your hand is raised.  You are represented by counsel.  You should text or otherwise communicate with Mr. Aresty.  He speaks on your behalf today.

Anybody else wish to be heard before I go back to Mr. Dorsey?

MR. LETO:  Yes, your Honor, if I may.  This is Matthew Leto on behalf of Hi Bar.

The only thing, I wanted to answer your Honor's question, which is there is no document that assigns that judgment from Hi Bar to Mr. Lubin or to Spin Capital.  It does not exist, especially not to Mr. Lubin in any individual capacity.

There is a joint defense agreement that was initially crafted between these parties.  However, under that document, it could be terminated at any time for any reason, and Hi Bar did, in fact, terminate that document

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                    RECEIVED NYSCEF: 01/19/2026

Page 13

at the beginning of last year.

So if that was even the potential basis that Mr. Lubin was traveling under, in writing that was terminated long ago. So there is no document that would ever allow for Mr. Lubin to enforce Hi Bar's rights in the state court.

THE COURT: Well, that's very interesting news for you, Mr. Aresty.

So let me point out to all of you that if you look at Paragraph 2(a) of the joint defense agreement, you will say -- you will see that there is, in fact, an assignment of certain claims, and those claims are defined to include the litigation, with the case number, that resulted in the judgment, which was the subject of today's motion.

However, if you read all of Section 2(a), it specifically says that the assignment is subject to the termination rights that are later provided in the joint defense agreement, and I have no doubt, if Mr. Leto is saying it was terminated a year ago, that it was, in fact, terminated.

And so, Mr. Aresty, I expect it might be wise for you to study all of these matters, because seeking to have a judgment domesticated in Florida based on what I've seen might, in fact, subject Mr. Lubin to

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                                RECEIVED NYSCEF: 01/19/2026

Page 14

some issues in the state court.

Let me go back to Mr. Dorsey.  So, Mr. Dorsey, is this really something that should be here?

Let me ask you a really important question. The order that you referenced, the first of the two sale orders, because there's a second one after Mr. Bakst asked me to do some clarification, it says that Mr. Lubin, individually and as a separate entity, a different entity entirely, and this is an order entered well after the joint defense agreement was signed, but apparently before it was terminated, it says that Mr. Lubin has no interest in the vehicles, which seems obvious since he never filed a claim in the case, relating to the vehicles.  Was that order ever served on him?

MR. DORSEY:  I wish Ms. Carnahan was here, because she was counsel for Mr. Bakst.

I can pull up the certificate of service.

THE COURT:  So, but why is --

MR. DORSEY:  I believe there was.

THE COURT:  Why is this an issue for me? Apparently the writ has not been formally served, although I do believe that the clerk told me that he responded and said that the clerk does not hold any funds for the judgment debtors, and so there is no reason for an emergency since we're not releasing the money to anyone,

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                 RECEIVED NYSCEF: 01/19/2026

Page 15

and as soon as I realized that we still had the money in the registry, I entered an order, which you have all seen, and Mr. Aresty referenced, so let me let you know that this is very similar to earlier in the case when I told the trustee and everyone that if there wasn't an agreement with regard to certain vehicles, I was going to allow them to be parked on a public street with the keys in them, and that's the effect of this order.  So I expect you to reach agreement as to where the money will go before the hearing, which I think is in August.

But in the meantime, the money is not going anywhere.  So why am I going to be resolving any of this if the fraud is on the state court?  Go to the state court and complain.

MR. DORSEY:  Well, your Honor, like I said at the outset, I do think it would be helpful, if nothing else.  I had never seen a writ of garnishment served on a federal court before with good reason, apparently, because I hadn't researched that case at the time I first saw the writ, and so I didn't know what the reaction of the clerk was going to be.  I didn't know if money was going out the door, if there was any real threat of that, and that's why the motion was filed on an emergency basis, because $2 million that goes out the door is not coming back.

I think it would be helpful, if nothing

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 16

else, if your Honor granted the motion in part, and simply stated that so long as the Court holds the funds, they are not subject to foreign attachments or garnishments, so this doesn't happen again.

My view is that, yes, the genesis of the fraud was domesticating the judgment with the state court, but by communicating with the clerk about a writ of garnishment, I do think Mr. Lubin attempted to perpetrate that fraud on the Bankruptcy Court.

I do think Mr. Lubin brought the Bankruptcy Court into this dispute, not me, and so I do think that does open him to sanctions but, at a minimum, I would simply state that the Court make it clear that the money is not going anywhere until the August hearing.

THE COURT: Mr. Aresty, would you object to an order that grants this motion only to the following extent, a statement that the writ of garnishment cannot be effectuated with regard to funds held in the registry of a federal court, including this Court, and that the funds held in the registry in this instance will not be released except pursuant to further order of this Court?

MR. ARESTY: That would be perfectly logical and acceptable, your Honor.

THE COURT: Okay. I will tender -- I will prepare and enter an order to that effect, and granting

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007

RECEIVED NYSCEF: 01/19/2026

Page 17

nothing else.

     Anything else in this case?

     MR. DORSEY:  No, your Honor.

     MR. ARESTY:  Judge, if the Court please.

     THE COURT:  Mr. Aresty.

     MR. ARESTY:  You asked my client to text me.

     THE COURT:  I --

     MR. ARESTY:  And he's asked me repeatedly if he may say a few words to the Court.

     THE COURT:  No.  You are representing him. When he has counsel, he needs to act through counsel.

     Anything else in this case?

     MR. ARESTY:  No, Judge, that's what I thought you would say.

     THE COURT:  Thank you.  Have a good morning, everyone.

     MR. ARESTY:  Good morning, your Honor.

     THE COURT:  Are we in recess until this afternoon?  Yes.  Court's in recess until 1:30.

     (Thereupon, the hearing was concluded.)

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM          INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                      RECEIVED NYSCEF: 01/19/2026

Page 18

CERTIFICATION

STATE OF FLORIDA        :

COUNTY OF MIAMI-DADE    :

            I, Cheryl L. Jenkins, RPR, RMR, Shorthand
Reporter and Notary Public in and for the State of Florida
at Large, do hereby certify that the foregoing proceedings
were transcribed by me from a digital recording held on
the date and from the place as stated in the caption
hereto on Page 1 to the best of my ability.

            WITNESS my hand this 2nd day of July, 2025.

_____

CHERYL L. JENKINS, RPR, RMR
Court Reporter and Notary Public
in and for the State of Florida at Large
Commission #HH 170910
December 27, 2025

OUELLETTE & MAULDIN COURT REPORTERS, INC.
(305) 358-8875

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

# Exhibit C

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                    RECEIVED NYSCEF: 01/19/2026

Page 1

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND
FOR BROWARD COUNTY, FLORIDA

Case No. CACE-22-005125

FVP OPPORTUNITY FUND III, LP, A DELAWARE
LIMITED PARTNERSHIP; FVP INVESTMENTS, LLC,
A DELAWARE LIMITED LIABILITY COMPANY; AND
FVP SERVICING LLC, DELAWARE LIMITED
LIABILITY COMPANY,

         Plaintiffs,

vs.

KARMA OF BROWARD, INC.,
a Florida corporation, et al.,

         Defendants.
_____/
HI BAR CAPITAL, LLC, a New York
limited liability company, et al.,
         Plaintiff,
V                          Case No. CACE-22-06401
KARMA OF PALM BEACH, INC.,
a Florida corporation, et al.,
_____/

Judge David Haimes
Broward County Courthouse
201 Southeast Sixth Street,
17150
Fort Lauderdale, Florida 33301
August 13, 2025
1:30 p.m. to 4:50 p.m.

ALL PENDING MOTIONS and
MOTION FOR SUMMARY JUDGMENT

Reported By:
Cheryl L. Jenkins, RPR, RMR

Page 2

APPEARANCES:

SCHWARTZ BRESLIN, by
JERRELL "JERRY" BRESLIN, Esquire
and
BUSCHEL GIBBONS, by
ROBERT BUSCHEL, Esquire
and
COHEN & MCMULLEN, by
MICHAEL MCMULLEN, Esquire
BRADFORD COHEN, Esquire
and
JONATHAN SCHWARTZ, Esquire (via Zoom)
On behalf of the Plaintiffs, FVP Opportunity Fund III,
LP, a Delaware Limited Partnership; FVP Investments,
LLC, a Delaware Limited Liability Company; and FVP
Servicing LLC, Delaware Limited Liability Company

KATZMAN WASSERMAN BENNARDINI & RUBINSTEIN, by
CHARLES BENNARDINI, Esquire
and
SCOTT C. GHERMAN, P.A., by
SCOTT GHERMAN, Esquire (via Zoom)
On behalf of the Defendants,
Lisa Farache, Moshe Farache,
1001 Clint Moore, LLC/Auto Wholesale of Boca

LETO LAW FIRM, by
MATTHEW LETO, Esquire
On behalf of the Defendant, Hi Bar

SHRAIBERG PAGE, by
PATRICK DORSEY, Esquire
On behalf of Franklin Capital Funding
and Franklin Capital Group

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 3

CONTINUED APPEARANCES


DAVID LANGLEY, Esquire
and
KASEN & KASEN, by
MICHAEL KASEN, Esquire (via Zoom)
On behalf of Avrumi Lubin and JL Special Investments


STEVEN MEYER, Esquire (via Zoom)
On behalf of MMS Ultimate Services, Incorporated


AKERMAN, by
BRETT MARKS, Esquire (via Zoom)
On behalf of Millco-Atwater

ALSO PRESENT

Katie Gleason, Esquire
Lisa Farache
Moshe Farache

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                      RECEIVED NYSCEF: 01/19/2026

Page 4

THE COURT: Okay. So, we are now on the record, all right? So, everything else had nothing to do with the case.

All right. So we're on the record in Case CACE-22-5125, FVP Opportunity Fund III, LP, et al. versus Scott Zankl, et al.

Let me start with the plaintiffs. Can I get appearances?

MR. BRESLIN: Good morning, Judge. Jerry Breslin for the FVP parties.

THE COURT: Good morning, Mr. Breslin, and who else is with you?

MR. BRESLIN: Michael McMullen, Brad Cohen, and Rob Buschel.

THE COURT: All right. Good afternoon.

MR. COHEN: Good afternoon, Judge.

THE COURT: All right. Everyone on Zoom, could you hear that? There's four attorneys for the plaintiff. Could you hear them all?

MR. GHERMAN: Yes.

THE COURT: Okay. Perfect.

And then now for the defense, let me start with Mr. Zankl.

(No verbal response.)

THE COURT: All right. Mr. Zankl is not

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007 RECEIVED NYSCEF: 01/19/2026

here.  He's not on Zoom.

All right.  So let me go for the rest of the co-defendants.  Who wants to go first?

MR. BENNARDINI:  Good afternoon, your Honor. Charles Bennardini on behalf of Lisa Farache, Moshe Farache, 1001 Clint Moore, and nominal defendant Auto Wholesale of Boca, and with me on Zoom is my co-counsel, Mr. Gherman.  Mr. and Mrs. Farache are also in the courtroom, along with another one of their lawyers, Katie Gleason.  Thank you, Judge.

THE COURT:  All right.  Good afternoon, Mr. Bennardini, Mr. Gherman, as well as the Faraches.

All right.  Can I get appearances for the remaining co-defendants?

MR. LETO:  Yes.  Good afternoon, your Honor. I'm Matthew Leto, on behalf of Hi Bar Capital, Mordecai Herbst, and Yisroel Herbst (phonetic).

THE COURT:  All right.  Good afternoon, Mr. Leto.

All right, and then we have next?

MR. DORSEY:  Good afternoon, Judge. Patrick Dorsey, D-O-R-S-E-Y, on behalf of the Franklin parties, Franklin Capital Funding and Franklin Capital Group.

THE COURT:  All right.  Good afternoon,

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007    RECEIVED NYSCEF: 01/19/2026

Page 6

Mr. Dorsey.

MR. DORSEY:  Thank you, Judge.

THE COURT:  And then next?

MR. LANGLEY:  Yes, good afternoon, your Honor.  David Langley here for Avrumi Lubin and JL Special Investments.

THE COURT:  All right.  Is Mr. Lubin -- Mr. Lubin is not here.

MR. LANGLEY:  I think he's trying to get on Zoom, or maybe he's waiting until 2:30.

THE COURT:  Okay.  I do not see him on Zoom, and nobody's in the waiting room, so --

MR. LANGLEY:  Okay.

THE COURT:  All right, and then -- all right.  Anybody else on Zoom that hasn't made an appearance that wants to make an appearance?

MR. KASEN:  Good afternoon, your Honor.  Michael Kasen, the law firm of Kasen & Kasen, representing Avrumi Lubin.  I think that I have a pro hac vice motion pending, your Honor, that was filed earlier today.

THE COURT:  So you're with Mr. Langley?

MR. KASEN:  I am.

Okay.  Any objection from anybody to the pro hac vice motion?

MR. BRESLIN:  No, Judge.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                    RECEIVED NYSCEF: 01/19/2026

Page 7

THE COURT:  No.  All right, and I take it you're a member in good standing, et cetera?

MR. KASEN:  I am, your Honor.

THE COURT:  All right.  So that's granted.

MR. KASEN:  Thank you, Judge.

MR. MEYER:  Your Honor, I'm Steven Meyer here.  I represent Defendant MMS Ultimate Services, Incorporated.

THE COURT:  All right.  Good afternoon, Mr. Meyer.  I'm sorry, you represent MMS?

MR. MEYER:  Correct.

THE COURT:  Okay.  All right.  I think that's everybody, right?

Oh, wait, there's Mr. Schwartz?

MR. BRESLIN:  Yes.

MR. COHEN:  He's on our side, Judge.

MR. SCHWARTZ:  Yes, Judge, Jonathan Schwartz.  I'm just observing today.  I'm co-counsel with Mr. Breslin, Mr. McMullen, Mr. Cohen, and Mr. Buschel.

THE COURT:  All right.  Good afternoon, Mr. Schwartz.

MR. SCHWARTZ:  Good afternoon, Judge.

THE COURT:  Let me just see here.  How about Brett Marks?

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                          RECEIVED NYSCEF: 01/19/2026

Page 8

MR. MARKS: Judge, good afternoon. This is Brett Marks, with Akerman, LLP. I represent one of the adversary defendants, Millco-Atwater. We don't have any motions at issue today. We're just observing the hearing.

THE COURT: All right. You are welcome to observe, it's a public courtroom. All right. Good afternoon, Mr. Marks.

All right, now I think I have everybody.

All right. We're here, I've got the afternoon for you. Let me start with what hopefully is the easier one, and will save me a lot of time going forward, and that is the joint motion to approve settlement. Let me pull that up.

All right. Is there an objection from anybody? Just the Lubin parties --

MR. LANGLEY: Yes, Judge.

THE COURT: -- I take it, correct?

MR. LANGLEY: Yes, Judge. We filed an objection. I don't see it showing up on the docket, but I would advise the Court that the same motion was filed in the bankruptcy case with Judge Kimball, and he denied it last night.

THE COURT: Why did -- what was the basis for his denial?

MR. LANGLEY: He read through our motion,

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM          INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                        RECEIVED NYSCEF: 01/19/2026

which shows that Mr. Lubin actually has an interest in the funds. The three other parties are attempting to take the funds for themselves and to cut out Mr. Lubin, who's the assignee of Spin, and who is the assignee of Hi Bar.

THE COURT: Okay.

MR. LANGLEY: And based on just a letter from Mr. Leto saying the common interest agreement is invalid, they're claiming that we're not a part of it.

THE COURT: All right. That's the 2:30 motion for summary judgment, right?

MR. LANGLEY: Correct, yes, Judge.

THE COURT: So --

MR. LANGLEY: That hasn't been heard yet.

THE COURT: Well, it's part of it.

MR. DORSEY: I'm sorry, I just need to correct a misstatement. Judge Kimball denied the motion because he said he didn't have jurisdiction over the issue. He said, if there's a dispute, I want the state court to decide.

THE COURT: Okay.

MR. DORSEY: He didn't determine anything.

THE COURT: So if I grant the motion, then you go back -- I'm sorry, deny the motion, it's not going to go back, right?

MR. BRESLIN: Correct.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                                    RECEIVED NYSCEF: 01/19/2026

Page 10

MR. LANGLEY:  If I can add just one thing, Judge, and Mr. Dorsey is correct, but there's some very good language in that order that I think the Court should look at that we quoted in our response, which has been uploaded.

And, Judge, I would point out that the urgency of the motion is that Judge Kimball doesn't want to keep the money in the bankruptcy court registry.

We're fine with either moving it to the state court registry or to Mr. Breslin's trust account. We just don't want it dispersed from there until you make a decision on --

THE COURT:  Let me ask you a question, though.  Say --

MR. BRESLIN:  Judge, it's our motion, if we could argue it?

THE COURT:  No, I know.

Say Mr. Lubin was successful, and at the end of the day, he wins every one of his claims.  He doesn't get the entire pot, right?

MR. LANGLEY:  There's a waterfall provision back to Mr. Leto's client.  Right, so he doesn't get it all, but he gets 70 percent, at least, for the first million.

THE COURT:  So he gets 700,000 --

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 11

MR. LANGLEY: Well --

THE COURT: -- is the most he can get out of anything?

MR. LANGLEY: No, no, no. I mean, there's over 2 million in the bankruptcy court.

THE COURT: Right.

MR. LANGLEY: Mr. Leto is holding some funds. There may be other funds out there, but it's the Hi Bar's claims, as they're defined in the common interest agreement, were assigned to Spin. They were subsequently assigned to Mr. Lubin. There's a waterfall provision back to Hi Bar. So it starts at 70 percent to Spin, 30 percent to Hi Bar, and then it goes down from there, depending on the amount, that's all spelled out in the common interest agreement, but the majority of the funds would go to Mr. Lubin.

THE COURT: And so you're going to tie up everything just based on Mr. Lubin -- because it sounds as though --

MR. LANGLEY: Well, Judge --

MR. BRESLIN: If I could --

MR. LANGLEY: -- you need to decide who the common interest is.

THE COURT: I just had a quick question about that to begin with. So let me start over then.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                    RECEIVED NYSCEF: 01/19/2026

Page 12

So we're here for the joint motion to approve settlement. Who wants to take the lead on that?

MR. BRESLIN: Yes, thank you, Judge. I'd like to go first.

Judge, the joint motion was filed by me. It was filed on behalf of the FVP parties, the Franklin parties, and the Hi Bar parties.

Judge, if you take a look at the complaint, the FVP parties and the Franklin parties have sued Hi Bar Capital, as well as the members of Hi Bar Capital, Yisroel Herbst and Mr. Dorsey, through his cross-claim, the Franklin cross-claims, have sued his son, Mordecai.

Judge, the reason that we are here is because we initially went to the bankruptcy court, because this whole matter began when Mr. Farache took the vehicles off the lots at 101 Clint Moore, and then he declared bankruptcy, AWB declared bankruptcy, the cars went to the bankruptcy court. There were three parties fighting in the bankruptcy court over those vehicles, FVP, Hi Bar, Franklin.

So there were three companies.

THE COURT: I remember. That was going to be our first trial, was to see who had priority over that, but now you've settled it --

MR. BRESLIN: Right, so --

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

Page 13

THE COURT:  -- and so I don't have to have my first trial as long as I approve the settlement.

MR. LANGLEY:  Correct.

MR. BRESLIN:  Right, right.  So that priority issue got kicked back to this Court, and so the priority issue was scheduled to go to trial in September with trial number one, and trial number one are the Hi Bar parties, movement; trial number two, the Farache parties.

So FVP, Franklin, and Hi Bar, and Hi Bar is represented by Mr. Leto, entered into a settlement agreement.  So we've entered into a settlement agreement to resolve all the issues before your Honor.

And what we did was, we entered into the settlement agreement.  We then went over to the bankruptcy court.  We advised Judge Kimball that we entered into a settlement agreement.

Mr. Lubin filed an objection in the bankruptcy court saying, well, wait a second, I have rights there and, Judge Kimball, I don't want you to rule.

And so what Judge Kimball did was he then kicked it back to your Honor to make a determination as to whether or not we have an enforceable settlement agreement, and let me tell you why we do.

We've entered into a settlement agreement, Judge, but the three named parties to the settlement

OUELLETTE & MAULDIN  COURT REPORTERS, INC.
(305) 358-8875

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007
INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 14

agreement are FVP, Franklin, and Hi Bar.

So what is Mr. Lubin's objection?

Hi Bar signed the settlement agreement. So we have a -- we've entered into an agreement with Hi Bar, it's signed, sealed, and it's in effect.

So Mr. Lubin objects because he says that, I entered into an agreement years ago with Hi Bar, where I agreed with Hi Bar that I would fund some of the litigation, and in return for that, I would be entitled to some of the proceeds. So they have what's called a common interest agreement. Their common interest agreement was more or less an assignment of claims in various lawsuits to which Spin would be entitled to some proceeds if there was a recovery.

So a year ago Mr. Leto notified Mr. Lubin that that agreement is breached, that's the common interest agreement. So he gave them a notice of breach. Since that time Hi Bar has been paying their own bills. So to the extent that there ever was an agreement, it has been terminated.

Let's assume for the moment that it was never terminated. If it was never terminated, Judge, Mr. Lubin does not have rights under that agreement to substitute in as a partner. Mr. Lubin -- the only rights Mr. Lubin has under that agreement is to sue Hi Bar, and

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007
INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 15

that's our position, and that's the position that I made in the joint motion.

So we have an agreement. We have a settlement agreement. We want your Honor to endorse the settlement agreement so we can go back to Judge Kimball and say that this agreement has been endorsed, but Mr. Lubin objects to it because he says that our agreement breaches his agreement.

Well, the legal issue here is when Hi Bar signed that settlement agreement with FVP and Franklin, did they have the power to do so? And they did, of course they did. They had the power to sign that agreement. The only question is -- and even if it breached the prior agreement, they still have the power to enter into the agreement, and that gives Lubin a cause of action.

Why is that relevant? Because if you look at the common interest agreement, if Lubin, if there's a default under the common interest agreement, then Lubin would have to bring an action in New York, because the sole jurisdiction under that agreement is in New York. He would have had to have, a year ago, when he was noticed of the termination, brought an action in New York to try to somehow get an order from a New York court that would be honored by your Honor to give him some rights here.

But, Judge, the case is here, Hi Bar is the

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 16

party.  Josh Lubin is not the party.  Josh Lubin is trying to say that I want to substitute in and become Hi Bar, but that's just an absurd ask, legally and factually, because what's he saying, I want to become Hi Bar?  We're suing Hi Bar for 7.5 million.  We've settled that.  So what is it, is Mr. Lubin saying, well, I want to become Hi Bar, but if there's a judgment against me for 7.5 million, I'm going to personally pay it?  He's not saying any of that.  So what it is, it's just, it's obstructionism.

So he has no legal grounds to prevent your Honor from endorsing the settlement agreement, because Hi Bar is Hi Bar.  They're their own company.

THE COURT:  Well, I understand your argument.  All right.

MR. BRESLIN:  They're --

THE COURT:  Let me do this, I take it everybody else is in agreement, correct, except for Mr. Lubin?

MR. LETO:  Yes, your Honor.  I also just want to add one more thing, if we can, Hi Bar.

THE COURT:  Go ahead.

MR. LETO:  If I can?

The only other thing I wanted to add is, Mr. Lubin also has literally no claim in this case.  In his pleadings, there's not a single pleading that he filed

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                    RECEIVED NYSCEF: 01/19/2026

Page 17

that asks your Honor to deal with this cooperation agreement, make a declaratory judgment about it, nothing. He's simply a defendant right now, that's all he is. So there's nothing even before your Honor which would give him any rights to have a decision made that he has rights under this agreement.

THE COURT:  Let me ask you, did he file a proof of claim in the bankruptcy case?

MR. LETO:  No, he doesn't have a claim.

MR. DORSEY:  He has not.

THE COURT:  All right.  So he's got no claim here, he's only a defendant, and no claim in the bankruptcy case?

MR. LETO:  Right, and just to kind of tie it off, under this cooperation agreement, it is terminable at Hi Bar's absolute discretion.

THE COURT:  No, I understand.

MR. LETO:  So --

THE COURT:  That goes to the merits, and part of what was argued by Mr. Breslin as well goes to the merits.  I'm not going to get into the merits of whether Lubin has a claim against Hi Bar or not for purposes of determining whether to approve the settlement.  I just need to see if he even has basically standing or whatnot even to contest it, and so that is now directed to you,

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                       RECEIVED NYSCEF: 01/19/2026

Mr. Langley.

MR. LANGLEY: Yes, Judge.

THE COURT: Okay. So --

MR. LANGLEY: So first, no court has ruled on a common interest agreement. I think what would be very instructive for the Court would be to read the Kimball opinion that we filed. There's a notice of filing, it should show up. I think --

THE COURT: Okay. Before I would even look at the Kimball opinion, what are the facts? How would Mr. Lubin --

MR. LANGLEY: Well, the same motion --

THE COURT: -- have any basis --

MR. LANGLEY: -- was filed in -- or a similar joint motion was filed in the bankruptcy court. That was set for hearing today at 11 o'clock. Yesterday, Judge Kimball ruled on it and canceled the hearing.

In his order, you asked about a proof of claim in the bankruptcy case. In his sale order he says, three parties are entitled to the proceeds, FVP, Franklin, and Hi Bar.

In his ruling yesterday he says, I previously said the only parties entitled to this are FVP, Franklin, and Hi Bar. I now realize that was incorrect. Lubin, if the common interest agreement survives, has an

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007

RECEIVED NYSCEF: 01/19/2026

Page 19

interest.

He basically is kicking the ball back to you to decide whether or not the common interest agreement exists or is still in effect and, Judge, the common interest agreement, 2A says, Hi Bar hereby assigns to Spin Capital any and all Hi Bar claims.

MR. LETO:  Can you finish the sentence?

MR. LANGLEY:  Those are defined --

THE COURT:  All right.  Let me --

MR. LANGLEY:  -- subject to the terms --

THE COURT:  I'm looking at your objection, and that was filed, just so we're clear, at 11:40 this morning.

MR. LANGLEY:  Yes.

THE COURT:  So --

MR. LANGLEY:  The motion was filed yesterday, I don't know, after 5:00.

THE WITNESS:  Well, the objection --

MR. LANGLEY:  And I don't know how it got set for hearing today.  I wasn't noticed that --

THE COURT:  Well, but --

MR. LANGLEY:  -- a motion filed yesterday was being set for hearing today.

THE COURT:  What motion?

MR. LANGLEY:  The joint motion to approve

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                    RECEIVED NYSCEF: 01/19/2026

Page 20

the settlement.

THE COURT:  No, that was filed July 27th.

MR. LANGLEY:  July 27th?

THE COURT:  Joint motion for settlement, urgent motion, expedited hearing requested.

MR. LANGLEY:  Okay.  Do --

THE COURT:  That's the one that we're all discussing, correct?

MR. LETO:  Yes.

MR. LANGLEY:  Okay.

THE COURT:  Okay.  There is not --

MR. LANGLEY:  I'm sorry, there was something filed yesterday.  We filed a response, Judge.  So, two --

THE COURT:  There was a notice of filing yesterday.

MR. LANGLEY:  The notice of filing is the Judge Kimball opinion, which addresses all these same issues.

MR. BRESLIN:  Judge, to give you a little --

THE COURT:  Let me look at this.

MR. BRESLIN:  Or a bigger understanding, Judge Kimball originally scheduled a hearing for today on the motion to release the funds, the motion to approve the settlement, to release the funds in the bankruptcy court.

Mr. Lubin filed objections in the bankruptcy

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 370 of 976

Page 21

court.  Judge Kimball canceled the hearing for today and sent the matter back for your Honor to determine whether or not Mr. Lubin had any legal grounds to interfere with our settlement agreement.

So the issue would have been moot --

THE COURT:  No, I understand.

MR. BRESLIN:  -- if we had a hearing before Judge Kimball, and so --

THE COURT:  Let me look at this now.

MR. BRESLIN:  -- he kicked it back to your Honor.

THE COURT:  Hang on.

So at 3:48 yesterday there was a notice of filing of Judge Kimball's order.  It's 11 pages.  I haven't had a chance to see this or the objection, but I'm looking at it.  It says, the Court orders and adjudges as follows, the expedited joint motion to enforce sale order and, two, to order the distribution of auction proceeds, the counsel for the FVP parties is denied.  Two, the Court cannot and will not rule on the dispute between Avrumi Lubin and Hi Bar Capital, LLC regarding their relative rights to the net proceeds held in the registry of this Court.

The parties are encouraged to obtain a ruling from another Court, having competent jurisdiction,

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

Page 22

or to present an agreement in a form of agreed order as directed in the show cause -- order to show cause. Three, the hearing on the expedited joint motion, et cetera, was canceled.

All right. Well, I take it I am another court having competent jurisdiction.

MR. KASEN: Your Honor, if I may very briefly, just to clarify some of the procedure that has gone on here.

THE COURT: Just so the court reporter --

MR. KASEN: There was a --

THE COURT: Hang on, hang on, hang on. This is -- just so the court reporter knows, this is Mr. Marks speaking, and you're speaking on behalf of Mr. Lubin, correct?

MR. KASEN: It's Mr. Kasen speaking on behalf of Mr. Lubin, that's correct.

There was a joint motion --

THE COURT: Hang on a second.

MR. KASEN: -- by two --

THE COURT: Why is that not showing up?

Oh, who is Brett Marks then?

COURT REPORTER: I think you have something pinned.

THE COURT: I don't think it's -- did I pin

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                    RECEIVED NYSCEF: 01/19/2026

Page 23

it?  I don't think I did.

COURT REPORTER:  No?

THE COURT:  No.  Now it's pinned, now I'm going to remove the pin.

All right.  Mr. Kasen.

MR. KASEN:  There was a joint motion to approve this settlement filed some time ago, but no hearing was set on that particular motion, and then last night, sometime after 5 o'clock, I can give you the exact time, it was at 5:48 p.m., it's Filing Number 229282707, the three parties filed what they titled superseding urgent motion, expedited hearing required.  The FVP parties, Franklin parties, and Hi Bar parties' joint motion to enforce settlement, consensual resolution, and issue order to bankruptcy court.

And with that particular filing, that took place last night at about quarter of 6:00, that's when a hearing was set for today.  Previous to that filing, there had not been a hearing set on this matter.

MR. LANGLEY:  Yes, Judge, that's what I was attempting to argue.

THE COURT:  All right.  Well, I thought this was on for all pending motions, and then -- for a status and all pending motions, and then at 2:30 was the separate motion for summary judgment against Mr. Lubin.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                RECEIVED NYSCEF: 01/19/2026

Page 24

MR. LANGLEY: I didn't understand that all pending motions included something filed yesterday after 5:00, Judge, but --

THE COURT: No.

MR. LANGLEY: -- I can --

THE COURT: Again, you keep saying something after 5:00. I was looking at the joint motion, and that's what I read, was the joint motion filed July 27th.

MR. LANGLEY: That wasn't set for today, to my understanding but, Judge --

THE COURT: Why would it not be?

MR. LANGLEY: The simple resolution, we don't have an objection -- the urgency that they're claiming is Judge Kimball wants the money out of the bankruptcy court. We're fine with the money coming to the state court registry or to Mr. Breslin's trust account. We just don't want it dispersed from there until you decide on a common interest agreement.

Mr. Leto says --

THE COURT: Well, I may be deciding that in about 15 minutes, right?

MR. LANGLEY: Well, your Honor --

MR. KASEN: One more thing that I'd like to raise is that they're asking, the joint parties are asking for an endorsement of the settlement agreements, the terms

OUELLETTE & MAULDIN COURT REPORTERS, INC.
(305) 358-8875

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007
RECEIVED NYSCEF: 01/19/2026

Page 25

of which haven't been disclosed to anybody.

I'm not exactly sure how your Honor can endorse a settlement agreement without knowing the terms of that --

THE COURT: Wouldn't the bankruptcy -- you'd have to let the bankruptcy court know, right? Unless it's not -- is it confidential?

MR. BRESLIN: Judge, the agreement is not confidential. The agreement has resolved the issue between Hi Bar and Franklin, and we've notified the bankruptcy court that the matter is resolved, and we're notifying your Honor that the matter is resolved. I'm happy to supply a copy of the settlement agreement to your Honor, but that's never been an issue.

Mr. Lubin is saying, Mr. Lubin is not --

THE COURT: Hang on.

So as far as the percentages of the 2 million plus that's in the bankruptcy, you're not willing to put that on the record as to what each has?

MR. BRESLIN: Well, it's --

THE COURT: Is it supposed to be confidential?

MR. BRESLIN: Well, the settlement agreement is, 100 percent of the money in the bankruptcy court is going to the FVP parties.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007
RECEIVED NYSCEF: 01/19/2026

Page 26

THE COURT:  Okay, and then what does Franklin and Hi Bar get out of it?

MR. BRESLIN:  Franklin, we have a separate agreement with Franklin, and they share the FVP proceeds, and what Hi Bar is getting is there's a release of claims against the individual members.

Don't forget, Judge, we're suing Yisroel Herbst for $7.5 million, just like we're suing Mr. Lubin for $7.5 million.

THE COURT:  Okay.

MR. BRESLIN:  So there's a release of Mr. Herbst, and there are other terms and conditions in there.

THE COURT:  All right, and as far as Franklin goes?

MR. BRESLIN:  Franklin gets its share of the bankruptcy proceeds pursuant to a separate agreement with FVP.

THE COURT:  Okay.

MR. KASEN:  Your Honor, what the parties are intending to do here is cut off any rights that Lubin may have to those funds, and (inaudible) them beyond his reach by cutting Hi Bar out of that --

THE COURT:  No, I understand that, but -- of course that's what they're trying to do, and the question

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007
INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 27

is whether it's legal, and so that's for the Court to decide that.

COURT REPORTER:  Judge, and can you just tell me again who that was that was speaking?

MR. KASEN:  And, your Honor --

THE COURT:  It's Mr. Kasen.  It looks like it's Michael Kasen, K-A-S-E-N.  Is that who's speaking?

MR. LANGLEY:  Yes.

MR. KASEN:  That's right.

THE COURT:  Yeah, for some reason, usually you pop up on the screen, but I'm not sure what's going on with the Zoom.

MR. KASEN:  I'm not sure either.  My camera seems to be frozen also.

THE COURT:  Okay.

MR. KASEN:  I have a funny face that hasn't moved since the first part of the hearing here, so I don't know if it's on my end or on your end, but I'm guessing it might be on my end, and I apologize, your Honor.

MR. BRESLIN:  Judge, I left out one thing.

You asked me about the bankruptcy proceeds. A hundred percent of the bankruptcy proceeds go to the FVP parties, but there are funds outside of the bankruptcy court that go to the Hi Bar parties.

THE COURT:  Okay.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                                      RECEIVED NYSCEF: 01/19/2026

MR. BRESLIN: A smaller amount.

MR. LANGLEY: So, Judge, we don't have a problem with the funds going someplace other than the bankruptcy court registry. We just don't want that dispersed until you rule on the common interest agreement. The common interest agreement says Hi Bar hereby assigns to Spin Capital any and all Hi Bar claims subject to the terms and conditions of this agreement.

THE COURT: All right. Do you want to go into --

MR. LANGLEY: And part two is --

THE COURT: -- the motion for partial --

MR. LANGLEY: Part two is --

THE COURT: Hang on. Do you want to go into the motion for partial summary judgment then? Because --

MR. LANGLEY: I'd be happy to if you want to argue that today, yes.

MR. BRESLIN: You're Honor, the motion for partial summary judgment --

THE COURT: That's based on collateral estoppel. You're saying that all of these issues have already been resolved in a separate case in Michigan.

MR. LANGLEY: No, no, no, that's the Franklin issue.

MR. BRESLIN: Yes, that's the --

Page 29

MR. LANGLEY:  That's the Franklin assignment issue.  That's not the agreement between Hi Bar and --

THE COURT:  But that was against Mr. Lubin also, wasn't it?

MR. LANGLEY:  Yes, but that doesn't concern the common interest agreement.

THE COURT:  Okay, so that's something different.

MR. BRESLIN:  That is --

MR. KASEN:  Your Honor, I think that it's important to note -- again, it's Michael Kasen speaking, that Mr. Leto continues to espouse the idea that Hi Bar has the authority, pursuant to the common interest agreement, to terminate the agreement for any reason whatsoever, but the agreement is really quite clear.  In Paragraph 2 under the common interest agreement, it states that they have the authority to terminate the common interest agreement, and in their sole discretion if they're not satisfied with certain enumerated -- with the defense of certain enumerated counterclaims, all of which have been dismissed, the common interest agreement appears to only allow termination for that one particular reason, not for any reason at all, but only if there's a dissatisfaction with that particular, with the defense of particular counterclaims, and that has not been asserted

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007
RECEIVED NYSCEF: 01/19/2026

by anybody, and I don't think that it could be asserted by anybody, that there's a dissatisfaction with the way the counterclaims were defended --

MR. LETO:  Excuse me, excuse me, Mr. Kasen is new to this, so maybe he just doesn't understand what happened here.  There are counterclaims, because we filed a lawsuit.  FVP filed a separate action, which became their counterclaims, and the action we filed became this case.

MR. KASEN:  No --

(Two people speaking.)

MR. LETO:  Excuse me, excuse me, excuse me, I'm talking, Mr. Kasen.

THE COURT:  Hang on, hang on, hang on, hang on, hang on.  All right.

MR. KASEN:  But the common interest agreement --

THE COURT:  All right.  Mr. Kasen, I'm not even sure how to mute you because I'm not even sure where your voice is coming through on the Zoom, but I need you to stop for one sec.

All right.  So let me -- so right now, I think the only issue that I think I need to resolve is if Mr. Lubin or Spin has any right to, I guess, stand in in this case and contest the settlement, that's the issue.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                              RECEIVED NYSCEF: 01/19/2026

Page 31

Not whether there's any merits to a claim between Lubin and Spin and Hi Bar.

I mean, there might be a separate lawsuit there or whatnot down the road. I just need to know -- because right now, as far as I'm aware, the parties that have resolved the issue of the proceeds of the bankruptcy court were the three that were named, and the question is whether Mr. Lubin or Spin, I guess, had a right to be part of that conversation, and so that's the unique issue.

And so, Mr. Langley, the unique issue there, where in this common interest agreement does it say that your client would have a right to, I guess, be in the room where it happens, right?

MR. LANGLEY: Yes, Judge, 2A is the right to the Hi Bar claims, and 2B is the full authority to prosecute and settle the claims. I have a highlighted copy, if you'd like, Judge.

THE COURT: That's fine. I was about to print it out so I didn't have to keep looking at the screen.

MR. LANGLEY: It's right in here.

THE COURT: This is, it's the 11-page common interest agreement, right?

MR. LANGLEY: Yes.

And, Judge, if I could also point out --

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                    RECEIVED NYSCEF: 01/19/2026

Page 32

THE COURT:  Let me just read this into the record.  So Subsection 2, or Section 2 of the agreement says, prosecution and settlement of litigation claims and defenses -- and defensive counterclaims.  A, from and after the effective date, Hi Bar hereby assigns to Spin Capital any and all Hi Bar claims subject to the terms and conditions of this agreement, including but not limited to Spin Capital's obligation to assign all Hi Bar claims back to Hi Bar in the event it exercised its rights pursuant to Section 2F hereof.

So if I go down to 2F, that's titled termination provisions, and it says, small ii, or small double i, in the event Hi Bar, in its absolute discretion, is not satisfied with Spin Capital's management of defensive counterclaims against Hi Bar, then Hi Bar shall provide written notice of such decision, which shall result in a termination of this agreement as of the date of such notice, and that's --

MR. KASEN:  Your Honor, I think it's important to note that the counterclaims discussed in Paragraph 2F are defined in the agreement above.

THE COURT:  Okay.

MR. LANGLEY:  Yes, Judge, and --

THE COURT:  And so above --

MR. LANGLEY:  They were dismissed before --

Page 33

MR. LETO:  That's not true.

MR. LANGLEY:  They were dismissed before Mr. Leto ever got involved in the case, and they were dismissed without the required written notice saying we're unhappy with the defense of the counterclaims.

THE COURT:  All right.  So your argument is the only time they would have had the absolute discretion to terminate is before the counterclaims were dismissed?

MR. LANGLEY:  Exactly, Judge, that's --

THE COURT:  Because that's what the plain language --

MR. LANGLEY:  And they were defined, and they were both dismissed before Mr. Leto ever got hired. So, that might be --

MR. LETO:  You're -- he's misstating the contract.

MR. LANGLEY:  -- why.

(Multiple people speaking.)

MR. LETO:  He's misstating the contract, if we look at Part H --

THE COURT:  Well, there's no misstating it, it doesn't say that in the contract, but --

MR. LETO:  Well, the definition --

COURT REPORTER:  Judge, I can only take one at a time.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                 RECEIVED NYSCEF: 01/19/2026

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 383 of 976

MR. LETO:  On Subpart H, which is on Page 2, it talks about counterclaims, but it says at the end, when it defines the term counterclaims, it includes certain defendants and FSG have asserted, and may assert in the future.

THE COURT:  All right.  Let me --

MR. LETO:  So it talks about --

THE COURT:  -- read H.

MR. LETO:  -- potential.

THE COURT:  H, and this is on Page 2, this is actually under recitals.

MR. LETO:  Correct.

THE COURT:  H, in the New York litigation, on or about March 18th, 2022, Excell Auto Group, Inc. filed a verified third-party complaint against Spin Capital, asserting certain claims and causes of action against Spin Capital, and certain defendants filed counterclaims against Hi Bar.

On or about March 25th, 2022, Franklin Capital Group, LLC, initiated an action captioned Franklin Capital Group, LLC versus Spin Capital, LLC, and Hi Bar Capital, LLC in the United States District Court for the Eastern District of Michigan, the Michigan court.  That's Case Number 2022-193300-CV, the Michigan litigation, and that's the subject of the motion for partial summary

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                     RECEIVED NYSCEF: 01/19/2026

judgment.

MR. LANGLEY: No, no, that's a different --

THE COURT: That's a different Michigan case, okay.

Consequently, as part of -- and in conjunction with the New York litigation and the Michigan litigation, and potentially in the Florida litigation and the bankruptcy proceedings, certain defendants in FCG, LLC have asserted, and may assert in the future, claims, causes of actions, and counterclaims against one or both parties, collectively the counterclaims. So all of that is collectively the counterclaims?

MR. LETO: Yes, your Honor, which includes this case.

THE COURT: All right, and so --

MR. KASEN: Your Honor, no matter how you interpret it, there hasn't been an assertion by Hi Bar in an attempt to terminate this about their dissatisfaction with the defense of counterclaims.

The only basis for termination of the agreement that Hi Bar has espoused is that they -- that Mr. Leto wasn't paid his fee.

MR. LETO: That's not true either. In my termination letter it says, in addition to the nonpayment, which is required --

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

THE COURT:  Now, what's the date of your termination letter?

MR. LETO:  April 3rd, 2024, on Paragraph 2, I can give your Honor a copy, it also says, finally, and for reasons unknown and without any factual basis, Mr. Lubin has taken litigation positions that are adversarial to Hi Bar.  That is exactly -- that's not only nonpayment, it's also what he did in this actual case that led to the termination, meaning Hi Bar was more than dissatisfied with his actions.

THE COURT:  And it says right there in that letter, April 3rd, 2024, that Hi Bar is exercising its absolute discretion.

MR. LETO:  It doesn't use --

(Multiple people speaking.)

MR. BRESLIN:  We should put that in the record, Matt.

MR. LANGLEY:  It says, Lubin didn't pay Mr. Leto's attorney's fees, so the contract is terminated. That's basically what it says.

There was never the required written notice saying we're dissatisfied with the defense of the counterclaims, and the counterclaims that were contemplated when this agreement was written were the two that got dismissed.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 37

There are other claims pending here. I don't know that any would be considered counterclaims or direct claims by a plaintiff, and so there's never been any dissatisfaction with the defense of those claims.

It was Mr. Leto who was defending those claims. It was Mr. Leto who was hired.

The other document you have to see, Judge, is the authority to represent where my client --

THE COURT: Let me read this for a second.

So it says here, referring to -- those actions referring to failure to pay, as well as litigation positions that are adversarial to Hi Bar. Those actions, singularly and collectively, constitute a breach of the JDA, which is a reference to the common interest and joint litigation agreement, and so it says here, based upon Mr. Lubin and Spin's breach of the JDA and fee agreement, Hi Bar is no longer obligated to perform under any of the provisions set forth therein, including but not limited to the obligation to allow Spin and/or Mr. Lubin the right to engage in settlement discussions and case strategy, or Spin's right to receive payment under Section 3 of the JDA.

So I think that's pretty clear, and then it even goes on and say, to be clear, given Mr. Lubin and Spin's breach, in the event Hi Bar resolves any pending

Case 23-01132-EPK   Doc 383-1   Filed 01/22/26   Page 387 of 976

Page 38

matters, Spin is not entitled to payment under the priority of distribution section, and all funds will be --

MR. KASEN: Judge, that letter --

THE COURT: -- given to Hi Bar.

MR. KASEN: -- that letter is a misinterpretation or a blatant ignoring of the language of the --

THE COURT: That's your argument, but that's for this Court to --

MR. LANGLEY: Judge --

THE COURT: -- make that determination.

MR. LANGLEY: -- Mr. Leto was hired under the joint representation agreement to represent Spin in the name of Hi Bar. It says in the common interest agreement, Hi Bar will remain as the plaintiff, but will do so on behalf of Spin.

MR. BRESLIN: Judge, may I be heard?

MR. LANGLEY: This is Mr. Leto saying Hi Bar is not happy with Mr. Leto's defense of the counterclaim. I mean, Mr. Leto was representing Spin's interest. There was no record -- there was no written notice, as required under 2F, from Hi Bar saying we're not satisfied with your defense of the counterclaims.

MR. BRESLIN: Judge --

MR. LANGLEY: Mr. Leto was the person that,

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007
RECEIVED NYSCEF: 01/19/2026

Page 39

if there were new counterclaims, and I don't believe that's what was contemplated in the common interest agreement, certainly the prior counterclaims that were contemplated were dismissed successfully. Anything new that came up, it was up to Mr. Leto to defend those.

There was never anything from Hi Bar saying we're unhappy with Mr. Leto's defense of any counterclaims.

What you just read there is Mr. Leto is unhappy that he didn't get paid, so he alone is terminating the common interest agreement. That's ridiculous.

MR. BRESLIN: Judge, may I be heard?

MR. LANGLEY: And I have one more thing. This is a motion filed a year ago, Judge, and it states, as is seen in the authority to represent, and inconsistent with the representations to this Court from the inception of this case, this entire time Mr. Leto has been secretly representing Josh Lubin and Spin, in addition to other clients, Herbst and Hi Bar. This was written by Mr. Breslin.

MR. BRESLIN: Yes, Judge --

MR. LANGLEY: This is his motion from a year ago, recognizing exactly what I'm arguing, that Mr. Leto is representing the interests of Spin and Lubin.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 40

MR. BRESLIN:  Judge, very, very briefly.

THE COURT:  Hang on, hang on.

Mr. Langley, are you finished?

MR. LANGLEY:  Yes.

THE COURT:  All right.  Go ahead.

MR. BRESLIN:  Judge --

MR. LANGLEY:  Thank you.

MR. BRESLIN:  -- the FVP parties have been dealing with Mr. Leto for the past two years, since we filed this lawsuit.  Hi Bar has been represented by Mr. Leto.  We've dealt with him.  He's been litigating this case from the beginning.

Franklin has been dealing with Mr. Leto, who has represented Hi Bar from the beginning.  We have trial in one month.  We have come to a settlement agreement.  Now we have a settlement agreement.  All of a sudden, Mr. Lubin is saying, whoa, whoa, whoa, wait a second.

If he had a voice in this, he should have raised it a long time ago.  He's estopped from raising it now.  A, he doesn't have standing.

Assuming our settlement agreement breached that agreement between him and Mr. Herbst and Hi Bar and Spin, he can sue them, but that doesn't negate the validity of our settlement agreement.  Mr. Lubin doesn't have the power.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                              RECEIVED NYSCEF: 01/19/2026

Page 41

THE COURT:  No, I understand.

All right.  So I am going to grant the joint motion to approve the settlement, and based on just the plain language in the common interest and general litigation agreement, and based on the April 3rd, 2024 letter terminating that agreement, and the rights under Paragraph 3 of that agreement, which is the only basis that Mr. Lubin would have had to even raise any right to any of these proceeds, I am going to grant the joint motion.  I do not see how Mr. Lubin has any right to stand in and contest the settlement.

Certainly he may have claims against Hi Bar and against Mr. Leto and whatnot, but that has nothing to do with the settlement for the proceeds in the bankruptcy court, and so based on all of that, I am granting the joint motion for settlement.

MR. LANGLEY:  Judge, I would like --

THE COURT:  And so the --

MR. LANGLEY:  -- to request a brief stay of the order, giving us a chance to do an emergency --

MR. BRESLIN:  Judge --

MR. LANGLEY:  -- appeal.

You know, what Mr. Breslin is saying is we can go sue Hi Bar in New York.  That's meaningless.  Once the funds are gone, the funds are gone.  So we'd like -- I

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                         RECEIVED NYSCEF: 01/19/2026

Page 42

would respectfully request a stay of the order for 30 days to --

THE COURT:  All right.

MR. LANGLEY:  -- give us a chance --

MR. BRESLIN:  Judge, Judge, then we have to try the case.  You know, then we have --

MR. LETO:  Is he posting a bond?  I mean, it's --

MR. BRESLIN:  Judge, I vigorously --

THE COURT:  Hang on, hang on, hang on.  All right.

MR. BRESLIN:  If they want to take an appeal --

THE COURT:  It's an ore tenus motion to stay, that's denied.

MR. BRESLIN:  Thank you.

THE COURT:  All right.  If they want to take it on appeal, my guess is they're going to have to post a supersedeas bond.

MR. DORSEY:  Judge, this is Mr. Dorsey for the Franklin parties.  Just one point of clarification.

Judge Kimball has been very clear, he thinks he lacks subject matter jurisdiction to determine any facet of this dispute.

Can the order granting the motion instruct

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007
RECEIVED NYSCEF: 01/19/2026

the bankruptcy court to release the funds to Mr. Breslin's escrow account?

THE COURT:  I can't order the bankruptcy court to do that.

What I can order is that, I do make a ruling that Mr. Lubin does not have an interest for the reasons stated on the record, does not have an interest.

MR. BRESLIN:  Thank you.

MR. DORSEY:  Thank you, Judge.

MR. BRESLIN:  That's plenty.

MR. KASEN:  Your Honor, I would ask -- if that's your Honor's ruling, I respect that.

I would ask that the Court is of that ruling require the full text of this particular settlement agreement and any related settlement agreements be made public, or at least provided to Mr. Lubin.

MR. LANGLEY:  Judge --

MR. LETO:  Under what authority?  Discovery closed, like, weeks ago.

MR. LANGLEY:  We filed a notice to produce at the last hearing on behalf of Lubin.  At the same hearing --

THE COURT:  All right.  Is there an objection to turning over the settlement agreement?  I don't even know, is it titled confidential or not?

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007    RECEIVED NYSCEF: 01/19/2026

Page 44

MR. LETO:  There's no confidential --

MR. BRESLIN:  I have no objection.  I think he's entitled to see it.

THE COURT:  All right.  So Mr. Kasen, your client will get a copy of the settlement.

MR. KASEN:  And all related settlement agreements, because the (inaudible) --

THE COURT:  Well --

MR. KASEN:  -- one settlement agreement that puts all the money to FVP, then there are separate settlement agreements between the FVP parties and the Franklin parties, and separate settlement agreements then between the FVP parties and Hi Bar parties.

MR. LETO:  There's only one agreement with Hi Bar, your Honor.

THE COURT:  All right.  I guess the starting point will be the settlement agreement between the three parties, which includes Hi Bar.  If there's a separate settlement agreement, I have no -- first of all, is there an objection to turning that over?

MR. BRESLIN:  Judge, the Franklin parties and FVP have a common interest agreement, and in that common interest agreement is a blanket agreement.  So that would apply to any of these funds.

MR. LANGLEY:  But FVP --

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007   RECEIVED NYSCEF: 01/19/2026

Page 45

THE COURT:  And is that confidential?

MR. BRESLIN:  Well, it's stated as confidential.  No one has ever moved to produce it.

THE COURT:  All right.  I would defer that one for another day then.

MR. BRESLIN:  Right, thank you.

MR. LETO:  We'll provide the Hi Bar settlement.

THE COURT:  All right.

MR. BENNARDINI:  Can the Farache --

MR. LANGLEY:  Thank you, Judge.

MR. BENNARDINI:  Can the Farache defendants get a copy of that, too, please, Judge?

MR. LETO:  I will send it to you.

MR. BENNARDINI:  Thank you.

MR. BRESLIN:  I'm glad that was the easy one, Judge.

(Laughter.)

THE COURT:  Yeah, I jinxed myself.

MR. BRESLIN:  Let's move on to the tougher ones.

THE COURT:  All right.  So that takes care of the -- well, that takes care of the trial then as well, as long as --

MR. BRESLIN:  It takes care of --

Case 23-01132-EPK   Doc 383-1   Filed 01/22/26   Page 395 of 976

Page 46

THE COURT:  No, I'm sorry, the first trial.

MR. BRESLIN:  -- a lot of it.

MR. DORSEY:  Most of it.

THE COURT:  There's still some issues though?

MR. BRESLIN:  Right, there's still the remaining claims against Mr. Lubin.  There is a default against Mr. Getter (phonetic).  So, and there's cross-claims by Franklin against Mr. Lubin.  So, the first trial is --

THE COURT:  And so that would not --

MR. BRESLIN:  -- trimmed down dramatically.

THE COURT:  So that one could not be done at the same time as the Farache defendants?

MR. BRESLIN:  There are -- it would be very difficult to try them at the same time.  They're completely separate issues, Judge, and that's why they were separated in the first place, and the exhibits in reference to Mr. Lubin's liability has nothing to do with the Farache liability.  It is just, it's apples and oranges, Judge.

And we have the --

THE COURT:  So let me ask you, if you're releasing all claims to Hi Bar as part of the settlement --

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                    RECEIVED NYSCEF: 01/19/2026

Page 47

MR. BRESLIN:  We're releasing Yisroel Herbst as an individual defendant.

THE COURT:  Okay.

MR. BRESLIN:  The Franklin parties are releasing Yisroel Herbst and Mordecai Herbst, his son, as individual defendants.

Hi Bar remains a party for the purposes of piercing the corporate veil to achieve liability against Mr. Lubin, who has told everyone who will listen, that he is, in fact, Hi Bar.

So Hi Bar remains a party, but they will not be -- under the terms of the settlement agreement, they will not be appearing at the trial.  We will not be seeking a judgment against Hi Bar, and to the extent that any verdicts are submitted to the jury regarding Hi Bar, we'll only be seeking a judgment against Mr. Getter and Mr. Lubin.  So --

THE COURT:  All right.

MR. BRESLIN:  -- that's how the settlement agreement is laid out.

THE COURT:  All right.

MR. KASEN:  Your Honor, I have a -- this seems a little bit counterintuitive that we just spent the last 45 minutes arguing that Lubin has no right as standing in the shoes of Hi Bar, and now we're going to

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007
INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

Page 48

have a whole trial to determine if Lubin is, in fact, Hi Bar?

Judge --

MR. BRESLIN: We're suing him for fraud. We're suing him for seven and a half million dollars that we loaned based on misrepresentations that he made to my client, and --

MR. KASEN: Well --

MR. BRESLIN: This other issue, this other issue, the priority issue, has been resolved. So the priority issue is resolved. The fraud issue needs to be tried to the jury.

THE COURT: I understand.

MR. KASEN: But the priority issue is resolved by you arguing that Mr. Lubin has no connection at all to Hi Bar, and now you're going to argue that actions that were taken by Hi Bar --

THE COURT: All right. We're not going to try the case right now.

So, all right, what would be next that you all need to resolve?

MR. DORSEY: Franklin has a summary judgment motion that was set for 2.30.

THE COURT: Okay. That's against Mr. Lubin?

MR. DORSEY: Mr. Lubin.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                              RECEIVED NYSCEF: 01/19/2026

Page 49

MR. BENNARDINI:  We have three motions set for 1:30, Judge.

THE COURT:  All right.  What were those?

MR. COHEN:  I got an easy one, Judge.

MR. BENNARDINI:  Number one is, your Honor ruled back on June 23rd that the words usury, loan sharking, illegal, and criminal are out with respect to speaking about the Faraches, and typically, your Honor was real clear in your order, in fact your Honor at that very hearing, said --

THE COURT:  Are we getting into that motion? That's what I want to know.

MR. BENNARDINI:  I don't know, but that's what it's about.

THE COURT:  Right.

MR. BENNARDINI:  It's just a motion to have the Court enter an order as to what you already ordered on June 23rd, that's our motion.

THE COURT:  All right.  I need to go get my notes from June 23rd.

MR. BENNARDINI:  I've got a transcript for you.

THE COURT:  All right, but I want to take a look at my notes as well.

MR. BENNARDINI:  Thank you, sir.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007 RECEIVED NYSCEF: 01/19/2026

Page 50

THE COURT: So let me do that, let me take a quick break.

Just so I have a little bit of a heads-up, so what three motions, Mr. Bennardini, do you have?

MR. BENNARDINI: I just have one. The second one is --

MR. COHEN: It's our motion. Yeah, Judge, it's our motion for clarification, and also to get a more clear outlook on the ruling from the Court on the term, quote/unquote, usury.

So, it -- and we laid it out pretty clearly in the motion, in terms of what we have to prove, and the intent that we have to prove, and the motive that's involved. So that's kind of the revolving door here, is that in order to get to the motive, we have to use the term usury. The motive --

MR. BENNARDINI: We're arguing it, Judge.

MR. COHEN: No, I'm not arguing it. I'm just saying, that's what it's about.

THE COURT: It's a motion for clarification.

MR. COHEN: That's --

MR. BENNARDINI: It's actually, Judge --

(Multiple people speaking.)

MR. BRESLIN: The second one is on Mr. Gray, it's my motion, it's the scope of -- I have an issue to

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007
RECEIVED NYSCEF: 01/19/2026

Page 51

present to your Honor regarding data entry and expert testimony, and the third motion is Mr. Buschel is going to handle it, where we're seeking a jury instruction on the resolution of the ownership issues of AWB that your Honor has already ruled on, so those are the three, and then the Franklin summary judgment.

MR. BENNARDINI:  Your Honor, the first motion is actually our motion --

THE COURT:  Okay.

MR. BENNARDINI:  -- to have the Court enter an order based upon what you ordered orally, which is what the Court instructed us to do when we could not get the other side to agree to the terms of an order.

THE COURT:  All right.  I'll have to take a look at that.

MR. BENNARDINI:  Thank you.

THE COURT:  And --

MR. BRESLIN:  But it's our motion.

THE COURT:  Okay.  So those three motions.

MR. BRESLIN:  Yes, sir.

THE COURT:  And then we have the motion for summary judgment at 2.30.

All right.  If I remember correctly, though, as far as the motion in limine regarding usurious, loan shark and things of that nature, I thought that was all

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                    RECEIVED NYSCEF: 01/19/2026

Page 52

agreed --

MR. BENNARDINI:  No.

THE COURT:  -- that you were not going to -- I thought they were not going to use certain terms, I thought that was agreed.

MR. BENNARDINI:  Well, no.  I can tell you what you said.

MR. BRESLIN:  Let him leave.

THE COURT:  I'm going to go grab my notes, and then we'll get into that.

MR. BENNARDINI:  I want to read what he said.

THE COURT:  All right.  I'm going to take a --

MR. BENNARDINI:  Thank you.

THE COURT:  We'll take a 10-minute break for the court reporter, and then we'll just continue on to finish everything else up.

MR. BENNARDINI:  Thank you.

THE COURT:  Okay.

MR. LETO:  And, your Honor, because Hi Bar has no other issues today, is it okay if I'm excused?

THE COURT:  No.

You are welcome to leave.

MR. LETO:  I may not want to leave, but if

OUELLETTE & MAULDIN  COURT REPORTERS, INC.
(305) 358-8875

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007

RECEIVED NYSCEF: 01/19/2026

Page 53

that's okay?

THE COURT:  All right.

MR. LETO:  Thank you, your Honor.

MR. COHEN:  It's been really exciting.

(A recess was taken, after which the following proceedings were had:)

THE COURT:  All right.  We are back on the record with Case CACE-22-5125, FVP Opportunity Fund III versus Scott Zankl, et al.  Let the record reflect the attorneys are all present.  The parties are not present. That being said, Mr. Leto, I guess, has left, right?

MR. LANGLEY:  Yes.

THE COURT:  Okay.  So it looks like most everybody is still on Zoom.

All right.  I am -- let me see, there is a motion for clarification.  I may have been remembering, there were various motions in limine that we did --

MR. BENNARDINI:  May 1st.

THE COURT:  May 1st, and then we did the ones June 23rd.  So I have my notes here, which is granted in part without prejudice, right --

MR. COHEN:  Correct, Judge.

MR. BENNARDINI:  Not correct.  Not correct, Judge, it was never --

THE COURT:  -- with respect to the term

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                                    RECEIVED NYSCEF: 01/19/2026

Page 54

usurious.

MR. BENNARDINI:  May I?

THE COURT:  And you could not say that it was illegal --

MR. BENNARDINI:  Right.

THE COURT:  -- or loan sharking, that's what my notes indicated.  Maybe I -- I'm not sure --

MR. BENNARDINI:  Can I read the transcript?

THE COURT:  Okay.

MR. BRESLIN:  Judge, can we argue our motion?

MR. BENNARDINI:  No, this is our motion, this is our motion for order to enter -- motion to enter order granting in part Farache defendants a comprehensive motion in limine concerning -- then they get a response, Mr. Cohen.

MR. COHEN:  You got it.

MR. BENNARDINI:  Thank you, sir.

MR. COHEN:  All right.  You're doing great.

MR. BENNARDINI:  Thank you, sir, I appreciate it.

Your Honor, so we were before you on June the 23rd.  They want to tell this jury, in addition that Mr. Farache is going to go throw Mr. Zankl to the alligators, they want to tell the jury that Auto Wholesale

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007
RECEIVED NYSCEF: 01/19/2026

Page 55

of Boca was in vehicle transactions with Mr. Zankl that added up to greater than 25 percent interest and, therefore, is usurious.

THE COURT: Okay.

MR. BENNARDINI: Your Honor gave them a bone, so to speak, you told Mr. Breslin, you can put in all the evidence you want, Mr. Breslin, about the number, it's 24 percent, 26 percent, all of that, you gave that to them, but the Court clearly said, so -- and this is -- would you like to copy of the transcript? I have it.

THE COURT: That would be great.

MR. BENNARDINI: May I approach?

THE COURT: Yes.

MR. BENNARDINI: Thank you.

And before we got to this part, we had discussions about usury is personal to a borrower, and with respect to FVP, and Mr. Zankl was the borrower in this matter, FVP shouldn't be raising usury at all because they're a lender, and there's case law that says lenders can't raise usury, but what your Honor boiled it down to is that it was unfairly prejudicial, that any probative effect was outweighed by "unfairly prejudicial", and at Page 65, Line 21, the Court, so for now we read the motion, but limit only, so it's granted in part, to using the term usurious, and saying it was illegal, or

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                                   RECEIVED NYSCEF: 01/19/2026

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 405 of 976

illegal/loan sharking, all right?

And then I said, thank you, Judge.

Mr. Breslin started to speak, and then the Court said, Line 67 -- I'm sorry, Page 67, Line 2, that terminology is out.

So what the Court ruled is, no usury, no loan sharking, and then later on the Court said, you can do all that, you can put in the numbers, and you can do all that without saying it's usurious or -- usurious or loan sharking, and then later on, on Page 68, Line 19, as far as the underlying transaction, all of that comes in because the facts are what the facts are. Whether you can get in front of the jury and say that it's illegal, and they're criminal, I'm going to -- at this point, you're going to keep that out, and you'd have to come up sidebar and show me why it's somehow probative.

And then finally, just highlighting the Court, the Court said later on, after Mr. Breslin was -- he's persistent, I've got to give him credit. The Court said, the transactions are what the transactions are, they come in. The actual rate comes in, but telling them that it's a crime is a matter of law, here's the statute, they committed a crime. I think you run the risk of that, on balancing, there's a danger of unfair prejudice.

Does it substantially outweigh probative

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 57

value?  I'd have to say at this point, I'm going to say without prejudice, keep it out, all right?

So with respect to loan sharking, usurious, usury, criminal --

THE COURT:  All right.

MR. BENNARDINI:  -- Judge, you said keep it out.

THE COURT:  Let me parse this out a little bit.

All right.  Coming in and saying it's illegal or it's loan sharking or it's criminal, you're not asking for a clarification on that, you agree?

MR. COHEN:  No, we don't agree, and I'm going to tell you why, Judge.

MR. BENNARDINI:  Judge --

THE COURT:  All right, and then usurious is a little bit different.

MR. COHEN:  Right.

THE COURT:  So just because it's usurious doesn't make it illegal.  Usurious is a rate, it's just a rate over a certain amount.

(Multiple people speaking.)

MR. BENNARDINI:  Your Honor, we're doing --

THE COURT:  As far as the balancing, and I'm just saying, it's one thing to get up there and say

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007 RECEIVED NYSCEF: 01/19/2026

Page 58

so-and-so is a criminal, they're doing illegal activities, that's -- on balancing, it becomes a lot more prejudicial.

MR. BENNARDINI: Well, here we are -- here's what's happening again.

THE COURT: If somebody says, hey, that rate is usurious, the jury is not -- usually people on the street or whatever aren't going to go, oh, my God.

MR. BENNARDINI: That's not what the 4th District says.

THE COURT: All right.

MR. BENNARDINI: And we went over that, too, and what the 4th District says in Earl Lee Butler v. Target (phonetic), the term usury has a powerful effect on the person who hears it. It is defined in terms of illegal, unconscionable, and corrupt, and the 4th District in that very case -- this was a lawyer's fee dispute, and the client brought up the lawyer's fee statements were usurious, and then what did the 4th say about that when the Court allowed it in? The use of the term can so infect the trial that a new trial must be granted.

And you heard this last time, Judge, and one other thing you said last time is --

THE COURT: I take it, though, if you go into that, the underlying facts, there were probably no facts to support that it was illegal or criminal or

Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 408 of 976
NYSCEF DOC. NO. 1007 RECEIVED NYSCEF: 01/19/2026

Page 59

whatnot, and that's why when I say, again, at the end of my ruling I say, here, as far as the transaction, the underlying -- as far as the underlying transactions, all of that comes in, because the facts are what the facts are.

MR. BENNARDINI:  Right.

THE COURT:  Whether you can get in front of the jury and say that it is illegal, and they're criminal, I'm going to -- at this point, you're going to keep that out, and you have to come up sidebar and show me why it's somehow probative.

MR. BENNARDINI:  So that terminology is out, that's what you said at Page 67 --

THE COURT:  No, but it's without prejudice.

MR. COHEN:  Right.

THE COURT:  What I don't -- what you don't want is people in the middle -- in the beginning of the trial saying, members of the jury, you're going to hear that these people are criminals, and then when the evidence doesn't come out to show that there was any criminal acts, now I've got to try the case all over again.

MR. COHEN:  Correct.

THE COURT:  And that's what I'm doing on balancing.  So I'm going to keep out them coming up there

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 409 of 976

Page 60

and saying they're criminals.

MR. BENNARDINI: Or loan sharks.

THE COURT: Or loan sharks in opening, but if the evidence comes out, and they come sidebar and say, Judge, now there's a good faith basis -- you know, a good faith basis, and there's evidence to establish that these transactions are illegal, then you still have to do a little bit of balancing, what's the probative value in it? And they'll probably make the argument that it's probative or even highly probative and what not, but I have to wait and see what the evidence is.

And I'm pretty sure, I do this in almost every case when I talk about a motion in limine, you're asking the Court in a vacuum, without knowing much about the case, to make evidentiary rulings, and it's very hard to do that.

MR. BENNARDINI: This is not --

THE COURT: And so I always say, or I always, when I'm ruling, indicate that evidentiary rulings are always without prejudice to revisit as the evidence comes in --

MR. BENNARDINI: Well --

THE COURT: -- because then the Court has a better understanding of the context.

MR. BENNARDINI: -- I think the 4th District

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007
INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

was quite clear, that use of the term can so infect the trial, that a new trial must be granted.

THE COURT: You are absolutely correct, and if there's no evidence to support those terms and to use those terms, it would so infect the trial, and that's why I'm keeping them out until I have a chance to see the evidence.

And that being said, I guarantee you, if you look at those cases where there's a reversal, it's because there were no facts that back up --

MR. BENNARDINI: Well, that's true in that case, and it's going to be true in this case as well.

THE COURT: It might be, and that's why --

MR. BENNARDINI: But I'm --

THE COURT: -- I'm sustaining it, but it's without prejudice, all right?

MR. BENNARDINI: I need an order to that effect. I submitted one --

THE COURT: Okay.

MR. BENNARDINI: -- and if I do it again, they're just going to be back again.

MR. BRESLIN: No, we're not.

THE COURT: Let me hear a response.

So what would be the objection to the order saying that, again, the facts are what the facts are, they

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007
RECEIVED NYSCEF: 01/19/2026

come in, but to not get up in opening statements or before coming sidebar and saying, hey, you know, there's a jury, the defendants are criminals, or the defendants committed illegal acts or whatnot?

MR. COHEN:  And, Judge, if I may address the Court?  I don't know if Mr. Bennardini is --

MR. BENNARDINI:  Yes, you can come, Mr. Cohen.

MR. COHEN:  Thank you so much, I appreciate it.

MR. BENNARDINI:  But what you also said at the last hearing is, you spend more time on the orders than you do on the rulings, and the hearings themselves, and this is deja vu all over again.

THE COURT:  In this case that would be the case, but not like --

MR. COHEN:  But not --

(Multiple people speaking.)

MR. COHEN:  You did great.

Judge, what I wanted to address was, in the 4th DCA case that he's speaking about, that was in terms of attorney's fees, not tortious interference, and if you look at tortious interference, the claimant must prove, and this is in the actual jury instructions, the claimant must prove that the defendant acted unjustifiably because

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                      RECEIVED NYSCEF: 01/19/2026

Page 63

the defendant violated a statute, committed a tort, or committed other improper acts.

You know, the fact is the facts, you know, they were buying and selling these cars, which weren't even being bought and sold, to avoid looking like it was usury, which it was.

So the long story short here is we have to put that evidence on in order to prove our case, but what you want to do is, and I understand about the criminal, and he's a criminal, and these are illegal acts, and all these different things in opening, but the fact that it's usurious, and the fact that, whether or not we can prove -- essentially the Court said, you can prove and you can say to the jury that it was over the legal amount of 25 percent, you can say that, but you're essentially saying, we can say -- we can show that it's Yahtzee, but we can't yell that it's Yahtzee.

So that's the issue that I have in the opening --

THE COURT: I haven't played Yahtzee in a long time.

MR. COHEN: I know, yeah.

Well, I'll give Mike credit, Mike McMullen for the Yahtzee referral.

MR. McMULLEN: I like to contribute where I

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

can.

MR. COHEN: But what I'm trying to say, Judge, is, I'm not going to sit there in opening and point to Mr. Farache and say he's a criminal at this point.

What I would like to do is, I would like to say that we're going to prove that the amount is over the legal amount, and to say that is considered usury. I don't know how else to say it. It is considered usury.

Now, I'm not going to sit there and jump up and down and say that he's a criminal and all these other things. I mean, obviously, it is what it is when it comes out during trial about how these transactions were taking place, and why these cars weren't actually being sold, and why these amounts were being loaned and then paid back at 35 percent. All these different things are going to come out, but I don't anticipate in opening, you know, yelling that he's a criminal.

Now, in closing, I don't know, but in opening probably not.

THE COURT: What's the statute again for usurious --

MR. COHEN: Here, Judge, here's my motion.

THE COURT: Do you have it?

MR. COHEN: Yeah, here's my motion. It's in there.

Page 65

MR. McMULLEN:  I think it's 687.03.

MR. COHEN:  It is.

THE COURT:  All right.

MR. COHEN:  But I think the usurious statute is in the motion.

THE COURT:  687.03?

MR. COHEN:  And it's not -- yeah, 687.03.

And in that case for the 4th DCA, Judge --

THE COURT:  All right.  That statute is defined as unlawful rates of interest.

MR. COHEN:  Right, correct, and that's what it is.

MR. BRESLIN:  Judge, we vote for you to take judicial notice of this statute, you know, as a safety measure.

THE COURT:  I'm not even sure what the claims are here, but --

MR. COHEN:  It's tortious interference, and it goes on, and if you read the jury instruction, Judge, that's part of the tortious interference jury instruction.

MR. BENNARDINI:  It's not.

MR. COHEN:  But we have to -- it absolutely is.

THE COURT:  But in any event, the statute is pretty clear --

NYSCEF DOC. NO. 1007

RECEIVED NYSCEF: 01/19/2026

MR. COHEN:  Yeah.

THE COURT:  -- Subsection 1, except as provided herein, it shall be usury and unlawful for any person or any agent, officer, or other representative --

MR. COHEN:  Mr. Bennardini, I'm not done with my argument, please, I didn't interrupt you.

MR. BENNARDINI:  My leg is hurting.  I'm going to stand up, if you please.

MR. COHEN:  You can stand up as much as you'd like --

MR. BENNARDINI:  I can.

THE COURT:  All right.  So, I mean, there's different layers as well --

MR. COHEN:  Yes.

THE COURT:  -- as to whether it's, you know, 18, or I think it's 25 is the other, right, or 24?

MR. COHEN:  What the argument would be is that we will provide evidence to prove, to show you today that the amounts that were involved were usury.  It's not that I'm saying, okay, you have to make a decision that it's usury.

An opening statement is a roadmap to where we're going to go.  I mean, that's first year law school.

THE COURT:  All right.

MR. COHEN:  The roadmap is, I'm going to

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 416 of 976

Page 67

show them --

THE COURT:  I understand.

Let me just ask, Mr. Bennardini, what would be the issue with saying, hey, members of the jury, you're going to learn that a rate over x is a usurious rate, it's not lawful?

MR. BENNARDINI:  That's because, number one --

THE COURT:  And the evidence is going to show that the rate was above that rate.

MR. BENNARDINI:  Number one, the word usury does not appear in the pleadings, it's outside the pleadings.  Number two, it can't appear in the pleadings because usury is a personal defense, and I argued this last time, usury is a -- and we went over a case called --

THE COURT:  Usury is a what?

MR. BENNARDINI:  It's a defense.

MR. COHEN:  Your Honor --

MR. BENNARDINI:  It is something that can only be brought up personally to the borrower.  It's not something -- and there's expressly a case, and let me tell you what it was, because you actually read it, in making your order, Adana Investing versus Wells Fargo, 2017, Westlaw, 3668553, which says lenders can't raise usury, it's to the borrower.  There was no lender relationship

here between FVP and Mr. Farache.

THE COURT: The facts are what the facts are, and I guess it's different to say, just like -- I mean, you can say certain things are illegal, but it's --

MR. BENNARDINI: Well, here's what you said about that, you said, well, that's the problem, because then you're saying it's no different than all of a sudden we just say, Mr. Farache, we gave him some cocaine. Usury is the same thing as saying cocaine. It's the same thing --

MR. COHEN: Well, the facts were we gave him --

MR. BENNARDINI: -- it's a crime.

MR. COHEN: -- cocaine.

MR. BENNARDINI: It's a crime, Judge.

THE COURT: But it depends on the underlying facts. That's why it's hard to rule in a vacuum.

But I have no problem -- I didn't realize my ruling was extending to not even be able to say that, look, there's laws out there that say that this rate is a usury rate --

MR. BENNARDINI: Well, that's what you said. I mean, I'm only reading what your Honor said.

THE COURT: -- as opposed to, I thought your motion in limine was to calling your own client a

criminal.

You know, so in other words they can, in jury selection, they're not allowed to say, members of the jury, does anyone -- well --

MR. COHEN: I don't intend --

THE COURT: -- if they're not even referring to your client, and they say is something a crime, and you jump up and you go, Judge, we have a motion in limine, and you're not allowed to mention that something's illegal, even though they're not even referring to your client.

So, in other words, it gets very difficult --

MR. BENNARDINI: Mr. Farache --

THE COURT: -- you're asking me to split hairs here.

MR. BENNARDINI: Mr. Farache could not have engaged in usury as a matter of law, and neither could AWB, because they were not borrowers of FVP.

THE COURT: And so they're not going to get up there and say that they're engaged in usury or illegal -- what they're allowed to do is say the facts are --

MR. BENNARDINI: Right, you said that.

THE COURT: -- the facts and --

MR. BENNARDINI: What you said --

THE COURT: -- and the usury rate is --

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 419 of 976

Page 70

MR. BENNARDINI:  What your Honor said, and correctly said was, and you repeated this over and over, you can say it's 24 percent, you can say it's 26 percent, you can't come to the conclusory term usury or loan sharking.  That's what your Honor said after a full-blown hearing.

THE COURT:  All right.

MR. COHEN:  The problem that I have, Judge, is that I have to say what the evidence is going to show, and the evidence very clearly will show --

THE COURT:  Let me cut to the chase.  You can't say that the defendants are loan sharks.  You can't say that the --

MR. COHEN:  That he's a criminal.

THE COURT:  Or a criminal.

MR. COHEN:  Sure.

THE COURT:  But you can, I will allow you to say, look, this is what the evidence is going to show, what a certain rate is, and the law says, I will allow you to put in what a usury rate is.

MR. BENNARDINI:  Well, then he's instructing the jury, Judge.

MR. COHEN:  No, I'm saying --

MR. BENNARDINI:  That's for you to do later on if the facts show that 24 percent, 26 percent --

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007 RECEIVED NYSCEF: 01/19/2026

Page 71

THE COURT: And if there's a request made and it's appropriate, and I have to instruct the jury on what is a usury rate, I can do that.

MR. COHEN: Thank you, Judge.

MR. BENNARDINI: Well, just so we don't have to come back again, I submitted an order that -- what you did the last time, your Honor, is you got it up on the screen, I emailed it to your assistant, and you put it in there so we don't have to come back again trying to figure out what the order is, please, sir.

THE COURT: No, I think we know what the order is.

MR. BENNARDINI: So did I -- I knew last time, too.

MR. COHEN: No, I can't call him a criminal, I can't call him a loan shark.

MR. BENNARDINI: I want it in writing, please, not from your mouth.

MR. COHEN: Well, I'm just, I'm asking the Judge to confirm it, I can't call him a criminal yet, in opening, I can't call him a loan shark in opening. I can address it as --

MR. BENNARDINI: You can't call him any of those until the evidence shows it.

MR. COHEN: Right. Yeah, I'll wait until

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 421 of 976

Page 72

the evidence shows it.

THE COURT:  All right.

MR. BENNARDINI:  You'll be waiting a while.

THE COURT:  So --

MR. COHEN:  I don't think so.

THE COURT:  -- and I'll allow you to reference what is --

MR. COHEN:  Thank you, Judge.

THE COURT:  -- a usury rate or not.

MR. COHEN:  Thank you, Judge.

THE COURT:  All right.  I guess what I was trying to stay clear of is name calling in opening statements, before coming sidebar to see whether the evidence is established or not.

MR. BENNARDINI:  What are we going to do with the written order?

THE COURT:  Do you have one here?

MR. BENNARDINI:  I do, and then, again, I uploaded it.

THE COURT:  Do you want me to read it in Word and I'll make --

MR. BENNARDINI:  Let me get all my papers out of the way.

MR. COHEN:  Is it in PDF or is it in Word?

MR. BENNARDINI:  My assistant uploaded it in

Page 73

whatever the judicial assistant told her to upload it in.

MR. BRESLIN:  Well, Judge, if you just want to state what your order is, we'll have the court reporter give us a transcript, and you can say, as stated on the record.

MR. BENNARDINI:  Well, that doesn't work. That's what we have here, I have it stated on the record from June 23rd, and now it's different.

Judge, I have a handwritten one in which I changed it to say, in opening.  May I approach?

THE COURT:  Yes.

MR. BENNARDINI:  And this is the order that was circulated.

THE COURT:  I might have to just type it in myself.

MR. COHEN:  I think that's the order I don't like.

THE COURT:  All right.  Motion is granted in part without prejudice.  The FVP plaintiffs are prohibited from using the terms -- all right, instead of using the terms, I'm going to say, from referring to the Farache defendants as being loan sharks --

MR. COHEN:  Or a criminal.

THE COURT:  -- criminals, or engaging in illegal activities.

OUELLETTE & MAULDIN  COURT REPORTERS, INC.
(305) 358-8875

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM          INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                       RECEIVED NYSCEF: 01/19/2026

Page 74

MR. BENNARDINI:  Thank you, your Honor.

MR. COHEN:  But I can use scoundrel.  No, just kidding.

MR. BENNARDINI:  I was just ignoring you, Mr. Cohen.

MR. COHEN:  That's all right.

MR. BRESLIN:  Now, your Honor, just to clarify, the evidence -- we expect the evidence to show that they did, in fact, engage in illegal activity.

So, is that, is your order limited to during the course of the trial?  We're certainly permitted to introduce evidence and then argue it after the fact, are we not?

THE COURT:  Yes.

MR. BENNARDINI:  I think I wrote on there in an opening, Judge, until the evidence -- I added that, Jerry.

MR. BRESLIN:  So that's in opening.  Okay. Thank you.

THE COURT:  All right.  So it says here, the FVP plaintiffs are prohibited from referring to the Faraches as being loan sharks, criminals, or engaging in illegal activity in opening to describe any loan and business transactions between Auto Wholesale of Boca, LLC and its owners, subject to revisiting after the evidence

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007 RECEIVED NYSCEF: 01/19/2026

has been presented.

MR. BENNARDINI:  Thank you, Judge.

MR. BRESLIN:  Thank you, Judge.

THE COURT:  All right.

MR. BENNARDINI:  We did email that to your assistant yesterday, Judge, so she does have it.

THE COURT:  Okay.  All right.

MR. BRESLIN:  Are you ready to take the next matter, your Honor?

THE COURT:  All right.  The next matter is --

MR. BRESLIN:  That's the plaintiff's motion for ruling on basis and scope of expert testimony by plaintiff's expert, Richard Gray.  We filed that on July 28th, 2025 and, Judge, just let me explain to you why I filed this motion.

The reason that I filed this motion is because at the last hearing, when we were arguing about the -- we were here on the motion for protective order about Brian Rohl.

Just to give you an understanding of what happened here, the FVP parties hired a company called Fiske & Company, and they're a forensic, they're forensic accountants out of Miami, and they have, I don't know, 10 or 15 different employees, and it's -- and Sheri Fiske is

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007

RECEIVED NYSCEF: 01/19/2026

Page 76

the lead forensic there, and so we retained Fiske to do a forensic analysis of the bank records of the Karma companies, Excell, to review the deal jackets that were supplied to us both by Mr. Farache, he supplied all his deal jackets, he supplied us with his QuickBooks, etc. So Fiske & Company was hired to do the forensic.

Fiske assigned several different employees to do the data entry. So, Judge, when I say data entry, what they did was they had these deal jackets that are thousands and thousands and thousands of pages. So what they did as far as the deal jackets went, is they went in there and they took out the date of the purchase, the purchase price, who it was bought from, and they created a database.

So Mr. Rohl did that. Another woman by the name of Anneliese Scherer did that at Fiske, and other employees at Fiske put together a database, and from that database, that database had, it had information about the cars, when they were bought. We had information from the trustee, because when the trustee came in, the trustee took all the records from Excell and the Karma companies. So we got the financial records from the trustee. So all of that information was put into a database.

At the time, Judge, this was during the bankruptcy court, Brian Rohl was our expert. So at the

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                  RECEIVED NYSCEF: 01/19/2026

Page 77

time that this information was entered into the database, Brian Rohl, who was a Fiske employee, was the expert that was going to testify about that in the bankruptcy court, and what Mr. Rohl did was, he created from that database, he created some charts and summaries, and those summaries were filed, and they were introduced in the bankruptcy court. They were litigated by, and reviewed by the AWB expert in the bankruptcy court, and so what happened was, right before the hearing in March, that Judge Kimball ruled, when he converted it to a Chapter 7, Mr. Rohl left the firm. So Mr. Rohl was no longer with Fiske.

Richard Gray was an employee at Fiske during that time period. So Mr. Gray then became our expert, and when he became our expert, he was with Fiske, but then he left Fiske shortly after we hired him, in March of '23, and then he's been on his own. So he's been our expert since that time.

So, your Honor made a comment at the last hearing which kind of concerned me, because you said that Mr. Gray could not adopt another expert's opinion as his own, and we certainly understand that.

So what Mr. Gray did was he went in and he analyzed the database, all the information that was put into this database, and he came to his own conclusions, and his conclusions mirrored, 99 percent, those

Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 427 of 976

Page 78

conclusions as Mr. Rohl's.  So Mr. Gray has his own opinions.

So when you made a comment at the last hearing, you said that Mr. Gray cannot testify from hearsay, that concerned me, because what Mr. Gray did was he based his opinions on the database that was compiled and put together by other employees at Fiske while he was at Fiske, but now he's no longer at Fiske.  So from that database, he looked at that database and he formed his own conclusions.

So, my concern is, and based on what your Honor's comments were, and based on the response that's been filed by Mr. Bennardini, is that because he looked at that database that was entered by others, that his opinion, based on that database, would be based on hearsay and, therefore, he can't testify to that.  He's formed his own opinions, but he's formed opinions based on data that was entered by subordinates of Fiske.

So I need to know if -- and just for the record, Judge, I mean most of the records are, they're the QuickBooks records that we got from AWB, they're the QuickBooks records that we got, and dealer track records that we got from the trustee.  So most of them are financial records, but aside from the financial records are just, you know, thousands of pages of these deal

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                RECEIVED NYSCEF: 01/19/2026

Page 79

jackets.

So what I need to know is, experts -- and if you look at the memorandum that I've attached in my motion, experts can rely on hearsay, and they do all the time.

So the question is whether or not Mr. Gray can rely on that database, because experts typically and normally rely on those kind of things.

So I cited two cases which addressed it very specifically.  So I need to know that now, because if I have to have Mr. Gray go back and supervise a reevaluation of all that data, that's exactly what we're going to do, and we will get the same people from Fiske, and we'll have them go over everything and check everything under, quote, Mr. Gray's supervision, so then he can issue an opinion based on the database that has been entered.

So, in other words, have the data confirmed under his supervision, because the case law says that subordinates of an expert can do data entry, and they can do any type of work, and an expert can rely on it, and then there's some cases that take it a little bit farther.

So I need to know that, Judge.  So I need to know, because just for the record, so the record is absolutely clear, Mr. Gray has come to his own conclusions.  He's not based his conclusions or his

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 429 of 976

Page 80

opinion on any of Mr. Rohl's work, but what he did is he based his opinions on the database that was formed and created by the Fiske employees, one of which was Mr. Rohl.

So what I need for your Honor to decide is whether or not Mr. Gray can opine from that database, and the reason is, is because, A, it's the type of information that experts normally rely on; B, we gave AWB and the Farache defendants all the underlying data, okay? We gave them everything that we put into our work product, and they've had that for years.

And so just to put a cherry on top, Judge, what I did was, last week was, I gave Mr. Bennardini all of the Fiske work product. So, in other words, we gave him all the spreadsheets that the Fiske employees actually put together so they could generate their own reports.

So I've done everything humanly possible to try to permit Mr. Gray to render the opinions that he's rendered, and again I repeat, he's already testified numerous times that he's come to his own conclusions and they're not Mr. Rohl's.

So I need your Honor to determine whether or not he can rely on the database that was created by a company, by other employees at a company he worked for, because it was created at the time he was an employee, but since he has left, he's relying on that database.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM     INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                    RECEIVED NYSCEF: 01/19/2026

Page 81

And I can call in Sheri Fiske, I can call in the people that actually did the data entry, and I can substantiate all the data entry, which will of course take time at trial, but this is not the type of thing that I believe should take up trial time, and I think if your Honor rules that we can rely on that data, and base an opinion on it, and particularly because Mr. Bennardini's clients have not only the underlying data, but all the work product data, you know, the actual spreadsheets that were made, then I know how I need to proceed.

But if I have to have it redone, I need to know now, Judge, because it's going to take a couple weeks to actually reevaluate all that data.

THE COURT:  You have summaries, I take it, as well, correct?

MR. BRESLIN:  Yeah, right, right.

So we filed in the bankruptcy court summaries to prove content.

THE COURT:  No, but there's a rule on summaries.

MR. BRESLIN:  Right.  For a summary --

THE COURT:  It says here, when it's not convenient to examine in Court the contents of voluminous writings, recordings, photographs, a party may present in

NYSCEF DOC. NO. 1007

Case 23-01132-EPK   Doc 383-1   Filed 01/22/26   Page 431 of 976

Page 82

the form of a chart summary or calculation by calling a qualified witness.

MR. BRESLIN:  Right.

THE COURT:  The party intending to use such a summary must give timely written notice of his or her intention to use the summary, proof of which shall be filed with the Court --

MR. BRESLIN:  Right.

THE COURT:  -- and shall make the summary and the originals, or duplicates of the data from which a summary is compiled, available for examination.

MR. BRESLIN:  Right.  We did that over a year ago.

THE COURT:  And so that's all been done?

MR. BRESLIN:  Yeah.

THE COURT:  All right, and then so from the summaries --

MR. BRESLIN:  But what we didn't give them --

THE COURT:  -- from that database, then is that what -- now Mr. Gray is going to be testifying based on those summaries, his opinions?

MR. BRESLIN:  Well, his opinion is based on the data.  The summary is just a visual, a visual view of the data.

Page 83

THE COURT:  Okay.

MR. BRESLIN:  What the data shows, and that's where we get back to the whole usury argument, because what Mr. Zankl testified to repeatedly in deposition is that he had a deal with Mr. Farache where he was paying him 30 percent on his money, and he was doing that for years, and years, and years, and so Mr. Farache -- and it wasn't just Mr. Farache, it was numerous people. That was the deal.  Mr. Zankl was paying 30 percent, he was paying usurious interest rates to a lot of different lenders.

So what the analysis has shown is that, A, because Mr. Farache has testified that he was in the business of buying and selling cars.  The evidence is going to show that he didn't buy and sell any cars, but the evidence is going to show that he was getting paid a lot of money, but he was getting paid on his loan, he was getting paid the VIG, and the VIG was over 30 percent, and this went on for years.

So what the experts have done is they've looked at the books and records, the bank records, they've analyzed the different bank records, and they've looked at the deal jackets and, you know, as far as the deal jackets go, the deal jackets are just -- you know, on their face are just, you know, fraudulent, which is neither here nor

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                          RECEIVED NYSCEF: 01/19/2026

there, but the long and short of it is, Mr. Gray is going to opine that, A, that Mr. Farache was not in the business of buying and selling cars, the same opinion he gave in the bankruptcy court, and that, B, he's going to testify that he's calculated the interest rate and it was usurious, it was very high.  So that's our evidence, but -- and we don't need to go there.

I just need your Honor to narrowly tell me, can Richard Gray rely on the data that was entered by Fiske & Company, that has been supplied to the other side, not only the raw data, but the cumulative and work product data, and can he testify about that?

Because if he can't, then I'm going to have to have it redone.  So that's the legal question.

Thank you, Judge.

THE COURT:  All right.  Response?

MR. BENNARDINI:  Yes, sir.  Thank you.  Good afternoon again, your Honor.

Your Honor, an expert must have a formative role with respect to the formation of his or her expert opinion, otherwise it's not that expert's opinion.  The expert opinion that they want to present to this jury is of Mr. Brian Rohl.  It is not of Mr. Gray.

I have Fiske time entries that Mr. Breslin just told you about.  They're marked confidential, so I

Page 85

didn't file them in the Court record, but they're going to be in the Court record because these are the same -- the jury is going to see these because they're the same fees that they're trying to recover under the Wrongful Act Doctrine, which is the doctrine where if my clients cause them to go into bankruptcy court to protect their rights, then they get fees and costs. It's an exception to the American rule. So they're going to have to put these into evidence.

And, Judge, when you look, and I have copies, and I'm happy to give the Court one, there is not a single data entry, not a single time entry or billing entry in this document, and you heard him say Mr. Rohl did this, not a single entry by Mr. Gray, not a single one.

I also have Mr. Gray's billing records when he left -- do you have a question?

THE COURT: I'm not sure where you're going with that.

MR. BENNARDINI: Where I'm going with it is this, an expert cannot rely on the work -- this is what you said on --

THE COURT: Experts are not allowed to come up on the stand and say, Mr. Rohl went out and did all this and it was Mr. Rohl's opinion --

MR. BENNARDINI: Right.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

THE COURT:  -- because that would be hearsay.

MR. BENNARDINI:  It's not just hearsay, it's called bolstering.

THE COURT:  Okay.  It would be -- but I don't think that -- he's not going to do that, that's not what he -- so what he's going to do is -- I agree.  So if that's the motion in limine --

MR. BENNARDINI:  No, it's not, it's not the --

THE COURT:  So Mr. Gray is not going to say what Mr. Rohl said, correct?

MR. BENNARDINI:  Correct.

Well, actually, this whole thing is premature anyway.  It should be a motion in limine, and they are due on Friday by the trial scheduling order. So that's really -- after I brief all that, that's really when this should be heard.  It's sort of a backdoor way to get around a motion in limine that's presently due, but if I may continue?

There is -- Mr. Rohl didn't do the work.

THE COURT:  I thought this was a motion in limine.

MR. BENNARDINI:  No, it's because your Honor said on June the -- on July the 22nd, so, Mr. Breslin, to

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                                RECEIVED NYSCEF: 01/19/2026

Page 87

the extent that you have this third individual now as your new expert, Mr. Gray, they cannot rely on any work whatsoever that Mr. Rohl did.  That's correct, what your Honor said.

THE COURT:  They can rely on it, they just can't repeat it.  They can't --

MR. BENNARDINI:  No, but what you said is right.  He can't rely on Mr. Rohl's work.  He has to -- here's what the law is, if I may.  The case law is this, when testifying at trial, experts may rely on documents and data collected and assembled by their subordinates, so long as the opinion is otherwise admissible under 90.704.

THE COURT:  Okay.

MR. BENNARDINI:  Mr. Gray was not the subordinate of Mr. Rohl.  It was Ms. Scherer who -- let me start that over.  Mr. Gray was not the supervisor of Mr. Rohl, that was Ms. Scherer.  There's not a single time entry here about Mr. Gray giving Mr. Rohl guidance as to what Mr. Gray needs to do his report.

Absent something like that, experts cannot rely on the investigation, review, an analysis of other experts.

As your Honor said --

THE COURT:  Let me just clarify.  Mr. Breslin, you're not going to even reference Mr. Rohl,

Page 88

are you?

MR. BRESLIN:  No.

THE COURT:  Okay.  So the only --

MR. BENNARDINI:  It doesn't matter --

THE COURT:  -- way you would reference the subordinates underneath, is that they input all the data into the database.

MR. BRESLIN:  The only reason I would ever need --

THE COURT:  Well, let me just ask Mr. Bennardini, what would be the objection to --

MR. BENNARDINI:  Because Mr. -- and this is what the case law says, in addition, and I got Marks versus Marks, 576 So.2d 859, 3rd DCA, 1991, Linn versus Fossum, M.D., and these are med-mal cases, 946 So.2d 1032-1039, Florida Supreme Court, 2006, and Gutierrez, G-U-T-I-E-R-R-E-Z v Vargas --

THE COURT:  Sometimes people get caught up too much in just citing a case, or a case says something, but it doesn't matter what a case says.  What matters is the facts of this case.

MR. BENNARDINI:  Well, the facts of this case --

THE COURT:  Yeah, and then --

MR. BENNARDINI:  Agreed, agreed.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                         RECEIVED NYSCEF: 01/19/2026

Page 89

THE COURT: -- there's a case interpreting it, but (inaudible) --

MR. BENNARDINI: I'm trying to tell you what the facts --

THE COURT: -- what the facts of this case are, and then we'll look at what the rules are, and then you have the cases that interpret it.

MR. BENNARDINI: Right.

THE COURT: So what are the facts of this case? What are you trying to keep out? Because it sounds like what you're trying to keep out, they agree. They're not going to mention --

MR. BENNARDINI: No.

THE COURT: Mr. Gray is not going to get on the stand and say that Mr. Rohl did this, and based on that -- they're not even going to reference Mr. Rohl, right?

MR. BENNARDINI: Mr. Gray is Mr. Ipsodixit. He did not do any of his own work. He did not -- he has to -- to do his opinion, to have an independent opinion, Mr. Gray has to -- it's okay for Mr. Rohl to gather, analyze, investigate, and come up with data, but Mr. Gray himself can't just buy off on Mr. Rohl's work.

Mr. Gray doesn't have to gather, he doesn't have to create the data, but he has to look at it, and

NYSCEF DOC. NO. 1007 RECEIVED NYSCEF: 01/19/2026

Page 90

there's not a single entry in these billing records --

THE COURT: It's not just the weight of the evidence. If he didn't look at it, yeah, then he may be out, but they're representing he did.

MR. BENNARDINI: Well, I read his transcript, all three of them, and there's not a single time where he said he analyzed Mr. Rohl's data. He just simply did not do it.

THE COURT: Not Mr. Rohl's data. He just analyzed the data.

MR. BENNARDINI: It's Mr. --

THE COURT: This is the data, this is the --

MR. BENNARDINI: Mr. Rohl was the expert in the bankruptcy proceedings, or he was going to be. Mr. Rohl prepared the expert report on which Mr. Gray is relying, not Mr. Gray. Mr. Rohl prepared those schedules that your Honor talked about. In fact, those schedules are not, those are not summaries. Those are demonstratives of what the conclusion by Mr. Rohl was as to what the --

THE COURT: I'd have to see it. Again, this is where I'm at a disadvantage.

MR. BENNARDINI: Well, that's why we need to --

THE COURT: I mean, you're asking me to rule

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                    RECEIVED NYSCEF: 01/19/2026

Page 91

in a vacuum here, but I think what was represented by Mr. Breslin is that there was -- there's all these jackets, the information was taken and put into a database, and then it was summarized, and then you have the underlying, and that Mr. Gray has now reviewed those summaries and the underlying data, and now is going to give an opinion.

MR. BENNARDINI:  Respectfully, here's what the Court is missing --

MR. BRESLIN:  Judge, no, almost.

MR. BENNARDINI:  Here is what the Court is missing --

THE COURT:  Okay.  What am I missing?

MR. BENNARDINI:  It would be okay with what your Honor just said if Mr. Gray was the supervisor of Mr. Rohl at Fiske at the time and said, Mr. Rohl, I'm going to be doing this opinion.  Here is my direction and guidance as to what I want you to review, gather, and analyze so I can form my own independent opinion.

If you look at these billing records again, at Fiske, and Mr. Breslin just told you that's where all the work was, that never happened.  Mr. Gray just happened to work there, and when --

THE COURT:  All right.  I understand your argument.  All right.  So --

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 441 of 976

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

Page 92

MR. BRESLIN:  Judge, very briefly, please.

THE COURT:  So fill in the blanks, Mr. Breslin.

MR. BRESLIN:  Judge, just so you're not confused, the data was entered by Fiske, various and numerous employees at Fiske, It was Brian Rohl and Anneliese Scherer.

THE COURT:  So Rohl was not the data entry person?

MR. BRESLIN:  Pardon me?

THE COURT:  Mr. Rohl --

MR. BRESLIN:  He was one of them.

THE COURT:  One of the data entry people?

MR. BRESLIN:  He was one of the data entry people.

THE COURT:  Okay.

MR. BRESLIN:  But now there's a database. From that database, Mr. Rohl formed an opinion.  From that same database, Mr. Gray has now formed an opinion. Mr. Rohl created charts from that database.  Mr. Gray formed an opinion based on that database.

So the only issue before your Honor is, can Mr. Gray form his opinion based on the database that was put together by the Fiske employees, because he was an employee there at the time, but he didn't supervise.

Page 93

THE COURT:  These other charts that Mr. Rohl prepared, he's not using those?

MR. BRESLIN:  Judge, we filed those, and Mr. Gray --

THE COURT:  Are they summaries or are they --

MR. BRESLIN:  Right, right.  Judge, the summaries are the summaries.  The summaries are nothing more -- the charts are nothing more than visual depictions of what's in the database.

So Mr. Gray has looked at the summaries, looked at the underlying data, and he says, yes, those summaries are accurate, and now this is my opinion.

He's not basing his opinion on the summaries.  He's basing his opinion on the underlying data, but he's also opining that the summaries are accurate.

THE COURT:  I'm not sure what -- all right. The opinion is that the effective interest rate is X?

MR. BRESLIN:  Right, right, that's one of them.

What he did was he analyzed the income, the money in and money out from the Karma companies, the money in and money out from AWB, the money in and money out from Excell, and he's analyzed all of those, and he's compared

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 94

those to the AWB records where they say they bought and sold cars.

So they said -- just to give you just a taste of it, AWB, in the year 2021, and that's going to be the focus year, they said that they bought and sold over $30 million worth of cars, and they didn't. They didn't -- you know, they didn't buy and sell any cars, much less $30 million worth of cars.

What it was is there was just a lot of paper transactions to explain the money back and forth, because what happened was there was this loan out there, and there was money going in, money coming out, money going in, money coming out, and at the end of the month, every month, and Scott Zankl has testified to it numerous times, is it had to be 30 percent, that was the thing.

So all of this, all the paperwork were fraudulently and falsely created to cover up this usurious lending scheme, and interestingly, Mr. Bennardini says there's no allegation of usury in the complaint. I think he needs to re-read the complaint. It's chock full of references to usury.

So, but, Judge, I just need a decision. Can Mr. Gray form his opinion on the database that was entered by Fiske employees while he was an employee there, even though he's no longer an employee at Fiske? That's the

Page 95

legal question, because if you say no, then I'm simply going to have it redone, because we've spent way too much money and wasted too much time for him not to be able to give his opinion, because he's already opined from the database.  So I just have to reconfirm the database.

THE COURT:  All right.

MR. BENNARDINI:  Your Honor, I have the Fiske records here, and this is the entry, August 8th, 20 --

(Multiple people speaking.)

MR. BRESLIN:  He doesn't have all the Fiske records there --

THE COURT:  Okay.

MR. BRESLIN:  -- because what he doesn't have is the retainer agreement with Mr. Gray, where he was paid 7,500, and it was to analyze the data.  So the first 7,500 in his retainer agreement was to analyze the data.

THE COURT:  He went and he actually analyzed the data?

MR. BRESLIN:  Yes, yes.

MR. BENNARDINI:  I have those billing records as well and it's the same thing.

MR. BRESLIN:  And that's cross-examination.

THE COURT:  Hang on, hang on.  Okay.

MR. BENNARDINI:  I have the Gray billing

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 445 of 976

Page 96

records as well.  What happened was --

THE COURT:  You don't want him looking at the work that Mr. Rohl did and saying it's my opinion that this --

MR. BENNARDINI:  Well, let me make it clear. It's perfectly obvious under the law there cannot be any bolstering.  In other words, it's not just Mr. Rohl. That's --

THE COURT:  He's not even mentioned Mr. Rohl.

MR. MEYER:  As Mr. Breslin told you earlier, there were four experts they had to do this, Mr. Glick, Mr. Barbee, Mr. Rohl, and Mr. Gray.  None of those --

THE COURT:  Wait a second.  If he testifies, look, this -- the information from these jackets were put into this database, I analyzed the database, and this is my opinion.

MR. BENNARDINI:  He needs to --

THE COURT:  There are no issues, right?

MR. BENNARDINI:  Yes issues.

THE COURT:  What's the issues?

MR. BENNARDINI:  He needs -- he can't -- because he was not Mr. Rohl's supervisor --

THE COURT:  He's not even going to mention Mr. Rohl.

Page 97

MR. BENNARDINI:  You've got to let me finish, please, sir.

THE COURT:  Okay.

MR. BENNARDINI:  Because he was not Mr. Rohl's supervisor, Mr. Rohl did not have the direction from Mr. Gray to look for what Mr. Gray needed to render his opinions, that's what the case law says.  You can have a subordinate do it, but you've got to give them appropriate direction.  Mr. Gray, to this day, has not laid eyes on deal jackets, he's not laid eyes on dealer track records, there's no evidence.  I've looked at Mr. Gray's billing records, Gray evaluations --

MR. BRESLIN:  He's deposed him twice, he's never even asked him that.

THE COURT:  All right.  If all he's doing is looking at the database, I'm going to allow it.

MR. BRESLIN:  Thank you, Judge.

THE COURT:  But he has to establish that he's looked at the database and --

MR. BRESLIN:  Of course.

THE COURT:  Okay.

MR. BRESLIN:  Of course.

THE COURT:  All right, and he's not allowed to say that Mr. Rohl did this --

MR. BRESLIN:  No, no.

Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 447 of 976

Page 98

THE COURT: -- and I agree with what Mr. Rohl said.

MR. BRESLIN: Judge, I understand the rules and the law.

MR. BENNARDINI: Also, if I would, Mr. Glick and Mr. Barbee, because they mentioned them in the motion.

THE COURT: Yes, he can't, he's not going to reference any other experts and what they've done.

MR. BRESLIN: No, no, of course not.

THE COURT: It's just that these people put together a database, and then I reviewed the database and --

MR. BRESLIN: Thank you, Judge.

THE COURT: All right. So, I don't know if I need to do a jury instruction on ownership interest today. That's what you're going to argue, right?

MR. BUSCHEL: Yes, Judge. I can give you the proposed jury instruction. I gave it to you, and I also -- I mean, I could quote the Court, give a 4th DCA case, and then give a special proposed jury instruction. I think it's -- I don't think we have to belabor the point, but I'll quote the Court from the last hearing on Page 99. I do think there has been a finding, though, that AWB does not have an ownership interest. The Court also said, all right, that's based on Judge Kimball's

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                    RECEIVED NYSCEF: 01/19/2026

Page 99

ruling on May 1st as well as the June order, so we are not going to have a separate trial on whether AWB had an ownership interest in those vehicles.  That's already been determined by the bankruptcy court.

And so the proposed instruction, I'll spare the Court all the different res judicata and judicial estoppel, there was a settlement agreement with the Chapter 7 Trustee, but the special instruction would be this, members of the jury, you're instructed as a matter of law that Auto Wholesale of Boca, LLC, AWB, did not, and never had any ownership interest, lien, security interest, property interest, or any other legal claim of any kind in the vehicles that are the subject of this lawsuit.

AWB was never a good-faith purchaser or buyer in the ordinary course of business with respect to any of the vehicles at issue in this case.

That's all we're asking for.  I think that would eliminate a lot of their worries about prejudice, and trying to put in orders from the bankruptcy court. I think once we have this finding, this instruction takes care of that issue.

THE COURT:  All right.  Is there an objection?

MR. BENNARDINI:  Yes, your Honor.

That is --

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                          RECEIVED NYSCEF: 01/19/2026

Page 100

THE COURT:  How can I give --

MR. BENNARDINI:  Right.

THE COURT:  How can I comment on the facts? All I'm doing is setting myself up to be reversed.

MR. BUSCHEL:  You're not commenting on the facts.  You're making a conclusion of law that AWB does not have any ownership interest.

THE COURT:  I'd be commenting on the facts, so it is res judicata or --

MR. BUSCHEL:  So --

THE COURT:  -- judicial estoppel issue.

MR. BUSCHEL:  Right, and --

THE COURT:  -- I've already ruled on that.

MR. BENNARDINI:  Yes, you have.

THE COURT:  And the Faraches were not --

MR. BUSCHEL:  Not the Faraches, AWB.  I just quoted the court --

THE COURT:  Yes.

MR. BUSCHEL:  -- that A -- if the Faraches want to come in here and raise their hand and say, oh, we were the real owners of it --

THE COURT:  I thought they were going to get up and raise their right hand and say we thought we were the real owners.

MR. BENNARDINI:  They're going to raise

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                                    RECEIVED NYSCEF: 01/19/2026

their right hand and say AWB was the owners.

THE WITNESS:  Well --

MR. BUSCHEL:  But they can't --

(Multiple people speaking.)

MR. BENNARDINI:  Right, exactly, exactly.

MR. BUSCHEL:  But they can't say that.

MR. BENNARDINI:  Yes, they can.

MR. BUSCHEL:  No, because we -- there's a court order from the bankruptcy court, if I may, since I thought we had this ironed out, because the court said that is, and I'll read it from the -- it's Docket Entry 694 from the bankruptcy court, it says, the proceeds of the auction, net, buyer's premium, expenses, carve-outs of the net proceeds shall be held pending adjudication by a court of competent jurisdiction as to the validity, priority, and extent of property interests asserted in the net proceeds or consensual resolution between and among the parties whom have appeared in the main bankruptcy case or the adversary proceedings and assert an interest therein.  Only, one, parties to the adversary proceeding complaint.  Two, the parties have appeared in the main bankruptcy case and asserted an interest in the vehicles may make a claim in the net proceeds.

Well, the Faraches didn't do that, and AWB certainly can't do that based upon Paragraph 9 of the

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007    RECEIVED NYSCEF: 01/19/2026

Page 102

bankruptcy order.

THE COURT:  Okay.

MR. BUSCHEL:  The trustee --

THE COURT:  I'm going to take that -- I'm going defer on that.  You're going to have to give me case law that says that this Court, without a stipulation, that this court can tell the jury specific factual findings, because that's where courts always get in trouble by doing that, when a court comments on the evidence or things of that nature --

MR. BUSCHEL:  But they don't want us -- we shouldn't have to prove --

THE COURT:  If there is a summary judgment as to that or something --

MR. BUSCHEL:  Well, there was, and I think we're now at the point of that, but let me read --

THE COURT:  The summary judgment was against the Faraches.

MR. BENNARDINI:  Yes.

MR. BRESLIN:  Right, and, Judge, what you ruled was, you said as far as AWB goes, I'll grant summary judgment on that, but as far as the Faraches go --

THE COURT:  Okay.  So --

MR. BRESLIN:  -- they may come in and claim an ownership issue.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007 RECEIVED NYSCEF: 01/19/2026

So you've already ruled, and you've already decided very clearly that they can't relitigate AWB ownership.

So we're simply saying, you've ruled that they can't come in and try to prove that AWB owned these cars, so we want a jury instruction to that effect.

THE COURT: All right. I mean, they're going to have to think about that. We'll do that --

MR. BUSCHEL: Judge, let me --

THE COURT: -- at the time --

MR. BUSCHEL: Let me give you one case, if you want that's on point from the 4th District Court of Appeal, it's Southeast Bank versus Equitec Leasing, 446 So.2d 1155, Florida, 4th DCA, I'll read one sentence from it.

THE COURT: Gosh, that has to be a long time ago.

MR. BUSCHEL: It was, but it says, we have thoroughly reviewed the matter and hold Southeast Bank collaterally estopped from relitigating the ownership in the state court herein, and it was an appeal from the -- I want to, before I -- it was a federal bankruptcy case.

THE COURT: I think they were the -- they were the parties, though?

MR. BUSCHEL: It was a federal bankruptcy

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 104

case, but it's saying, the summary judgment was granted on the grounds that the ownership of the property being foreclosed have been determined in a federal bankruptcy proceeding.

So, I think the Court -- it is still good law. It cites to other law in the 4th District, and it says if something has been determined in the bankruptcy proceeding, this Court can -- this Court should accept it, and certainly, particularly when the court, a bankruptcy court in -- it said, they are not allowed to go to another court and relitigate it. That's precisely what the Faraches are asking, and AWB is asking to do, is, well, you can't put in the court order -- I mean, you can't give a jury instruction, and we want to raise our hand and say we thought AWB --

THE COURT: Let me look at that. I'll look at it.

MR. BUSCHEL: Okay.

MR. BENNARDINI: Can I briefly respond? You did rule on this already. This was before the Court on May 1st, and I have a copy of your Honor's order if you would like it.

What it says is, genuine issues of material fact remain for determination by the trier of fact regarding these claims, that was conversion of tortious

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 105

interference, and because Moshe and Lisa Farache were not parties to the bankruptcy proceeding, res judicata and collateral estoppel do not apply to them.

However, as to AWB, as a party to the bankruptcy proceeding, collateral estoppel bars AWB from claiming an ownership interest in the vehicles.

THE COURT: But they're not a party in this case.

MR. BENNARDINI: They're not a party in this case, that's right.

And just on July 28th --

MR. BUSCHEL: Who's not a party to this case?

MR. BENNARDINI: AWB.

MR. BRESLIN: AWB is --

MR. BUSCHEL: Yes, of course --

(Multiple people speaking.)

MR. BENNARDINI: There's no claim against them. I'm not defending AWB. They're not getting a judgment against AWB. There's no damages claim against AWB.

MR. BUSCHEL: Judge, I think --

MR. BRESLIN: We've already amended the complaint to clarify that issue, because he keeps talking about a nominal defendant.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

Page 106

THE COURT:  They will be a defendant on the verdict form?

MR. BRESLIN:  Absolutely.

MR. BENNARDINI:  No, 100 percent, no. No, they won't, Judge.  There's no damages claim against AWB.

MR. BUSCHEL:  Judge, they are named as a party because we're piercing the --

THE COURT:  It sounds like that's a different issue.

MR. BENNARDINI:  It is.

THE COURT:  So if they are a party, then I could instruct them.

MR. BENNARDINI:  100 percent.

MR. BUSCHEL:  But, Judge, if I may --

MR. BRESLIN:  Judge, just to clarify --

COURT REPORTER:  Judge, Judge, I can only take one at a time.

THE COURT:  All right.

MR. BRESLIN:  Who would you like to hear from, your Honor?

THE COURT:  Mr. Bennardini, go ahead and finish.

MR. BENNARDINI:  Thank you, sir.

THE COURT:  You've got five minutes --

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 456 of 976

Page 107

MR. BENNARDINI:  Thank you, sir.

THE COURT:  -- and then we're done.

MR. BENNARDINI:  Thank you, sir.

The stem of all this was this July -- June 16th, 2023 language in an order by Judge Kimball, and that is Paragraph 9 they rely on, where Judge Kimball says, the trustee, as the duly appointed Chapter 7 Trustee of the bankruptcy estate of Auto Wholesale of Boca hereby waives all liens and interest, including any lien and ownership interest in the vehicle -- vehicles, waives.  There was no adjudication.  We went through all this at prior hearings.

In fact, your Honor changed Judge --

THE COURT:  Gosh, every time I come up, we have the same arguments over and over again.  Enough. I'll address this at trial.  I'll have a much better understanding when we get to trial.

You all are, you're coming in here with these little tiny issues and splitting hairs, and asking me to rule on evidentiary issues without even understanding the context.

I mean, you know, we're having a charging conference on a jury instruction when we haven't even heard opening statements yet, and so -- on a fact that you want me to instruct the jury on, I'm not ready to do that.

MR. BENNARDINI:  Thank you, Judge.

Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 457 of 976

Page 108

THE COURT: All right, and so in any event, I don't think there's anything in dispute. There's a bankruptcy that addressed something for what I thought was a non-party, but I guess they are going to be added and they will be on the verdict form. We'll address it, I guess, when we get to trial.

MR. BUSCHEL: Yes, we will.

THE COURT: All right. Now let me handle the motion for summary judgment. All right. This is Franklin versus --

MR. COHEN: Judge, may we be excused?

THE COURT: You are excused.

MR. COHEN: Thank you, Judge.

THE COURT: Nobody's going to require you to be here.

MR. COHEN: What?

THE COURT: Nobody is requiring you to stay.

MR. COHEN: All right. All right. Thanks, Judge.

THE COURT: All right.

MR. BUSCHEL: Nice to see you, Judge.

MR. LANGLEY: Judge, before we begin, I noticed this morning that my response to Mr. Dorsey's motion didn't make it -- doesn't show up on the docket. I wasn't sure if you had it. I have an extra copy, if you

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 109

don't.

THE COURT: All right, it was in the -- I've read your response. You're saying that it's on appeal, and there's a motion for a new trial.

MR. LANGLEY: Yes, and for some reason, I looked this morning, and it's not showing on the docket, even though it was filed a week ago. If you have it, that's fine.

THE COURT: Yeah.

MR. DORSEY: Did your Honor want to take a break before we begin, or --

THE COURT: No.

MR. DORSEY: -- do you want to just soldier on?

THE COURT: Actually, let me do this, let me take a five minute break.

MR. DORSEY: Understood.

THE COURT: Or a 10 minute, to give the court reporter a break.

MR. LANGLEY: Okay.

MR. MEYER: Your Honor, when you come back, it's Steven Meyer, I'm here, we have a 1:30 case, which I think is very short, or a 1:30 motion, Mr. Breslin, and I believe it's quite short.

THE COURT: Which one was that? I was

Page 110

not --

MR. MEYER:  I represent MMS Ultimate Services.  Mr. Breslin filed a motion for default.

THE COURT:  All right.  Mr. Breslin.

MR. BRESLIN:  Yeah, I did, Judge.  They never answered the complaint.  They answered it the other day.

Prior to them answering it -- they answered it just the other day, well over a year late, after the court ordered an answer, after the motion to dismiss was denied.  It was just ignored.  They filed a motion for summary judgment a couple of weeks ago, and now -- and that was without any answer being filed.  They made a motion for default, and to strike their motion for summary judgment.  So they just filed an answer and numerous affirmative defenses that I'll be moving to strike.

So what I'd like your Honor to do, I know you can't enter a default because he, in fact, did answer, even though it's a year late under the case law, but I would like your Honor to strike the motion for summary judgment because it was premature, and he filed it before he answered, and he raised affirmative defenses and an answer that are relevant to the summary judgment.

THE COURT:  My understanding is that the case law allows you to file a motion for summary judgment.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                    RECEIVED NYSCEF: 01/19/2026

Page 111

I think the case law allows you to file a motion for summary judgment, right, even instead of an answer?

MR. BRESLIN: Yeah, it does.

THE COURT: So I don't know if there's a basis to strike it.

MR. BRESLIN: Well, you know, it's just, you know, it's an equitable argument, Judge. It's just, you know -- you know, just ignoring court orders, we have a trial in a month, and he files an answer and affirmative defenses, you know, a month before the trial, while a motion for summary judgment is pending.

THE COURT: Well, I hate to say this --

MR. BRESLIN: It's just --

THE COURT: -- but you probably shouldn't have waited until now to file a motion for default either, right?

MR. BRESLIN: I'm sorry?

THE COURT: You probably shouldn't have waited until this late to file a motion for default and have it heard, I guess.

MR. BRESLIN: That's a very good point, Judge, because I assume that would have triggered it even earlier, but I just noticed it.

THE COURT: No, if you would have done it a year ago, then maybe you would have gotten an answer a

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 461 of 976

Page 112

year ago.

MR. BRESLIN:  Yeah, you're right.

THE COURT:  So, all right, the motion for default is denied.

MR. BRESLIN:  Thank you.

THE COURT:  And then the motion to strike is denied, but we need to get those things all heard right away, Mr. Meyer.

See, you've been just retained recently?

MR. MEYER:  No, your Honor, I've been in the case for a while, but there's a very narrow, little limited issue as to this one defendant.

THE COURT:  All right.  Are you part of either of the trials?  Which trial is MMS --

MR. BRESLIN:  The Farache trial.

THE COURT:  Which one, the Farache?

MR. BRESLIN:  The Farache, trial two.

THE COURT:  All right.  I don't know if there's any way you can carve them out or resolve with them or anything.

MR. BRESLIN:  No, Judge, there is not, I'm sorry.

THE COURT:  All right.  You've got to be ready to go, Mr. Meyer.  I guess that --

MR. MEYER:  We'll look forward to it,

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 462 of 976

NYSCEF DOC. NO. 1007                                          RECEIVED NYSCEF: 01/19/2026

Page 113

your Honor.  I would say that probably the last person you want to see in the courtroom is my client with respect to these issues, but --

THE COURT:  All right.

MR. MEYER:  I'm the plaintiff, but --

THE COURT:  All right.  So motion for default, motion to strike is denied.

MR. BRESLIN:  Judge, I don't understand what he meant by that comment.

THE COURT:  I have no idea either.  So I'm not going to ask any follow-up, because it doesn't matter. You know, why they would want to be there or not be there, unless there's a threat.  I don't think there's a threat, right, Mr. Meyer?

MR. MEYER:  It's not a threat.  I'm saying --

MR. BRESLIN:  Just making sure.

MR. MEYER:  All right.  I'm not here to argue with counsel.  I mean, there are just no facts whatsoever that have anything to do with my client.  I think that --

THE COURT:  That's what the trial is for, so we're not going to do that today.  All right, but the motion for default is denied.

MR. MEYER:  Thank you.  Have a good day,

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

Case 23-01132-EPK   Doc 383-1   Filed 01/22/26   Page 463 of 976

Page 114

your Honor.  Thank you, Counsel.

THE COURT:  All right.  I'll be right back, and then we'll do the Franklin versus Lubin.

MR. DORSEY:  Thank you, Judge.

(A recess was taken, after which the following proceedings were had:)

THE COURT:  All right.  All set?

MR. DORSEY:  All set.  Everyone left, Judge, so we started thinking maybe you took off, too.

THE COURT:  I thought about it.  No, I'm just kidding.

(Laughter.)

THE COURT:  All right.  Whenever you take a break, you have all this stuff waiting for you in the office, and, yeah, I ended up getting sidetracked a little bit, but we're back on the record in CACE-22-5125, FVP versus Zankl, et al.  So all we have left are the Franklin parties and Lubin.

MR. DORSEY:  Correct.

THE COURT:  So this is Franklin's motion for some rejection, correct?

MR. DORSEY:  Yes, sir.

My personal promise to you is this presentation will be shorter than the motions in limine you heard, even though it's potentially case dispositive.

Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 464 of 976

Page 115

So I think it's --

THE COURT: Be careful what you represent here.

MR. DORSEY: Well, depending on what Mr. Langley has in mind, maybe not, but I'll try to keep my presentation brief.

THE COURT: All right.

MR. DORSEY: As a very, very brief kind of 10,000-foot background, because most of your experience in this case has been dealing with the Farache parties and the FVP parties, my clients, the Franklin parties, are commercial lenders. Basically, their business model is they find companies in business who are suffocating under the weight of usurious loans, merchant cash advances. Franklin locates those companies and essentially flushes out the bad debt. It buys off the bad debt, and it refinances it with legal debt, allows the company to survive. Franklin makes a profit. Everybody wins.

Franklin became involved in this case when it was approached by entities your Honor is familiar with, Excell and the Karma entities in the year 2021. They were running automobile dealerships, they were drowning under millions of dollars of MCA debt, and so they approached Franklin, based on a common contact, and said, hey, what can you do about a refi? So Franklin started, you know,

INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                              RECEIVED NYSCEF: 01/19/2026

Page 116

talking to Scott Zankl, and otherwise investigating the situation.

At the time Franklin was investigating, Excell was indebted to an MCA entity named Spin Capital, LLC. This is Mr. Lubin's entity you heard about earlier.

Franklin, as a condition precedent to closing on any kind of refinance to Excell, Franklin needed an assurance from Spin that it was acquiring all the Spin debt. Franklin wouldn't want to refinance, have a borrower who's still being bled dry by an MCA out the back door.

So Spin, in November of 2021, executed an assignment to Franklin where it represented, we are -- here are our MCA contracts, the total indebtedness is, I think it was a nominal amount, either zero or a dollar, we hereby assign it to you, Franklin. Enjoy your refinance.

That statement turned out not to be true. It later came out that despite Spin's representations to Franklin in the assignment, that it had secretly spun off some of its debt to another entity, Hi Bar Capital, who your Honor is also familiar with, and after Franklin refinanced the loan, to what it thought were, you know, healthy businesses, who it was going to pull through, these businesses paid, I believe the figures are either 1.2 or 1.8, it's in my papers, they paid seven figures to

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM          INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                      RECEIVED NYSCEF: 01/19/2026

Page 117

Hi Bar based off the debt that Spin assigned.

Franklin then sued Spin in Michigan State Court for breach of contract.  This lawsuit was commenced in 2022, Spin at all times was represented by counsel in that lawsuit, and in November of 2024, there was a two-day trial.  The principal witness for Franklin was Scott Zankl, and Mr. Lubin, who is the sole owner of Spin, also appeared at the trial and testified on behalf of Spin.

Following that extensive two-day trial in the spring of this year, the Michigan state court issued extensive findings of fact, which we'll get to in a minute, which basically said Lubin knowingly lied about the transaction.  Franklin relied on that false representation to its detriment, these are detailed in the findings of fact, which are attached to my motion, and about a month or two after the findings of fact were issued, a final judgment was issued closing the case.

So basically, Judge, I have a bunch of -- my clients, the Franklin parties, have numerous tort claims they're alleging against Mr. Lubin in this case, and we'll get to those in a minute, fraud in the inducement, tortious interference with business, what have you.

We're going to walk through it. Essentially, everything that we're alleging against

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 467 of 976

Page 118

Mr. Lubin, and that potentially is up for trial in September, the Michigan state court has already dealt with. The Michigan state court had a two-day trial, dealt with all these issues.

So basically the summary judgment motion, I don't have a binder of exhibits, I have a two-page judgment with some findings of fact we're going to walk through, I have a final order that adjudicates numerous facts. It's -- I guess it's in a situation where both parties had ample opportunity to litigate these factual findings, and there's mutuality of estoppel. The movant today is Franklin Capital Funding, LLC, that was the plaintiff in the state court, and I'm seeking to collaterally estop Josh Lubin, who is the sole owner and person who controls Spin, and both Michigan -- Michigan law applies, but I cite both Michigan and Florida cases. They state that if you're the sole owner --

THE COURT: Why do you need a new case? It would be different if it was Lubin or Spin suing Franklin, and then you say, hey, collateral estoppel, res judicata and all that. What are you seeking to get here that you can't already get in Michigan?

MR. DORSEY: The Michigan judgment was only against Spin.

THE COURT: Okay.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                                    RECEIVED NYSCEF: 01/19/2026

MR. DORSEY:  They couldn't sue Lubin personally in his individual capacity.  Mr. Lubin personally is a defendant down here.

THE COURT:  All right.

MR. DORSEY:  So my client is seeking a judgment against him in his individual capacity.

THE COURT:  Why couldn't you sue Lubin there and have just -- you understand what I'm saying?

MR. DORSEY:  I understand, Judge.  I can tell you there was a forum selection clause in the assignment, such that Spin consented to jurisdiction in Michigan, and that's how they got Spin in Michigan.

They attempted to sue Hi Bar in Michigan, and that was dismissed for lack of personal jurisdiction. I assume if they had attempted to sue Mr. Lubin in Michigan as well, it would have been dismissed for lack of personal jurisdiction because he's not a Michigan resident.  The only reason they were able to sue Spin up there was because of a forum selection clause.

THE COURT:  So how is their collateral estoppel or res judicata on Lubin if Lubin was not a party there?

MR. DORSEY:  So, your Honor, you're peppering me with questions, and you're disrupting the flow of my presentation, but basically I can cite the

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 469 of 976
NYSCEF DOC. NO. 1007                                                    RECEIVED NYSCEF: 01/19/2026

Page 120

cases to you, mutuality of estoppel applies when you have obviously the same parties, you know, or you have what are called parties in privity with each other, and a party is in privity with another party when its interests are so aligned that for all intents and purposes it is that party participating in the other litigation.

And again, I can go through it in a minute, there's Michigan case law, there's Florida case law that says if you are the sole owner of a company, if you are controlling the shots of that company, and there's a judgment against that company, collateral estoppel applies to you, and that's particularly true here because, as I said, Mr. Lubin testified personally at the trial over two days. The Michigan court judged his credibility extensively.

THE COURT: All right, and so response?

MR. DORSEY: No, Judge, can I just finish briefly?

THE COURT: Yeah.

MR. DORSEY: I want to keep going.

I made a little chart. I'll go through it quickly, I promise.

THE COURT: So you don't know why Lubin -- or do you even know if Lubin was sued in Michigan, individually?

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 470 of 976

Page 121

MR. DORSEY:  No, he was not.  There was no personal jurisdiction over him in Michigan.

THE COURT:  But it's different than Hi Bar, he was not even sued?

MR. DORSEY:  He was not even sued.  They attempted to sue Hi Bar, and Hi Bar was dismissed for lack of personal jurisdiction.

THE COURT:  Obviously you can waive that, so -- I mean, if you had sued Lubin, he might have waived it and so you could do it all at once.  Instead, it seems piecemeal.

MR. DORSEY:  I mean, Judge, at the end of the day, Lubin -- they were not required to sue Lubin in Michigan.  I don't know -- you know, I doubt they would have had personal jurisdiction over him, but at the end of the day, the parties are now here before you, and essentially what I'm saying is we have a court that's issued binding findings.  Why are we going to have the same trial that already occurred last year?

THE COURT:  Because that was only against Spin, right?

MR. DORSEY:  Well, your Honor --

THE COURT:  No, I understand, you're saying that it was essentially one and the same.  I just -- all right.

Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 471 of 976

Page 122

MR. DORSEY: Well, let me first, because I would like to address Mr. Langley's arguments at the end of my presentation.

THE COURT: Okay.

MR. DORSEY: So let me just first walk you through, like, why I think it's so clear-cut.

So you have a chart in front of you that says Count 7, fraud and fraud in the inducement, it states the elements of fraud under Florida law, pretty basic stuff.

So if you look at that chart, you see element, defendant made a false statement regarding the material fact. Do you see that?

THE COURT: Yes.

MR. DORSEY: Okay. Now look directly to the right of this. This is verbatim the Michigan court. On October 21st, 2021, approximately $2.1 million of debt was owed by Excell to Spin, which was concealed from Franklin. The assignment agreement signed by Josh Lubin falsely claimed that the amount of such debt was zero. This is matching the element exactly.

The next element, defendant knew the statement was false. Go to the right in the Michigan court, quote, Lubin purposefully lied about the amount in the assignment agreement.

Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 472 of 976

Page 123

And I could go through the other elements, Judge, and you have the charts in front of you, but literally for each of my counts, element by element, the Michigan court is finding exactly what we would need to prove these claims. There's no reason to try them a second time.

THE COURT: Okay.

MR. DORSEY: Okay. Judge, I'll conclude by just going -- quickly going over Mr. Langley's arguments.

Number one, he says the Michigan judgment is not final because they still have appellate rights. That's just wrong. Under both Michigan law and Florida law, the pendency of an appeal doesn't affect the res judicata or collateral estoppel effect of a judgment. If you want to post a bond, you can post a bond, and I would cite In Re: Kramer, 543 BR, 541, that's a Bankruptcy, Eastern District of Michigan case, 2015, analyzing Florida law.

Mr. Langley argues, the issues were never fully litigated because the judgment was based on a default. Again, that's not true, there was a two-day trial, but even if the judgment was based on a default, collateral estoppel would still apply under Michigan law. The case site for that is Ursuy versus Yassin, 2021 Westlaw 4815289, that's a Michigan Court of Appeals case

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007 RECEIVED NYSCEF: 01/19/2026

Page 124

from 2021.

And here, Judge, here's what I think you're getting at, because you asked, well, why not -- Lubin wasn't up there, so can collateral estoppel apply if it was only Spin? And I would like to read this quote to you, Judge, verbatim, because it directly addresses this point. This is the Michigan Supreme Court, 1990, quote, collateral estoppel precludes re-litigation of an issue -- excuse me, I misread my outline, give me one second.

I'm sorry, Judge, I misread my outline, but I cite it in my brief, under Michigan law, Mr. Lubin is in privity with Spin. If Mr. Lubin attended a two-day trial on behalf of Spin, an entity he fully controls, he testified, and the Michigan court found him not credible. He's in privity with Spin, and there's no reason to litigate essentially the same issue today.

That's it, and I'll turn the podium over to Mr. Langley, unless your Honor has questions.

THE COURT: Nope.

All right. Mr. Langley.

MR. LANGLEY: Thank you, Judge.

I want to address a few of the things Mr. Dorsey said first before I get through my main argument, Judge.

Mr. Dorsey represented that the Michigan

OUELLETTE & MAULDIN COURT REPORTERS, INC.
(305) 358-8875

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                          RECEIVED NYSCEF: 01/19/2026

court found that Josh Lubin lied.  Well, the Michigan court ruling that you have, it says that the judge questioned Mr. Lubin's credibility.  There's also notices in there that Mr. Lubin was not aware that his attorney had defaulted, and he had some real issues during the case.  The point is, that's not -- there was no representation in the Michigan court ruling that Franklin relied on any false statements made by my client, by Josh, and in particular, Judge, in my --

THE COURT:  Can I ask you a question while I'm thinking about it?  What were the claims against Spin in Michigan?

MR. LANGLEY:  The ruling is on breach of contract and conversion only.  There was --

THE COURT:  It was a breach of contract --

MR. LANGLEY:  Yes, the Court found --

THE COURT:  And?

MR. DORSEY:  Conversion.

MR. LANGLEY:  Conversion.

THE COURT:  Conversion, so different claims.

MR. LANGLEY:  Yes, different from the claims down here.

THE COURT:  Conversion, I guess there could be some overlap.  A breach of contract, it's totally different between a breach of contract versus committing

NYSCEF DOC. NO. 1007 RECEIVED NYSCEF: 01/19/2026

Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 475 of 976

Page 126

fraud and --

MR. LANGLEY: Yes.

THE COURT: Tortuous interference. I mean, but --

MR. DORSEY: No.

MR. LANGLEY: So, different --

THE COURT: -- conversion is different.

MR. LANGLEY: Different parties, different issues, non-final order, and there's some facts that are directly in conflict between the motion for summary judgment and the Michigan ruling.

Okay. So, yes, Mr. Dorsey touched on it, there was a default entered on liability because the attorney representing Spin in Michigan missed the deadline to respond to a motion for summary judgment, or there it's a motion for summary disposition, and Mr. Lubin didn't even know about that until he appeared at trial. The trial was only on dollar amount, it was only on damages. It wasn't on any of the main issues, particularly not on any of the issues that we have here alleged.

So we have a non-final order attached to -- we filed a response to the motion for a stay back in July, Judge, and attached to that motion is a ruling by the Michigan court on alter ego. In the Michigan court they tried to argue that Hi Bar and Spin were alter egos of

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 476 of 976

Page 127

each other, and the Court denied that and threw out those counts.  So it only went to trial on breach of contract and conversion.

Now, Michigan law applies to the interpretation of the contract because that's what it says in the contract, but here, we're here today on a motion for a summary judgment under Florida law.

I cited to the Edwards case, Judge, Edwards versus Kings Point, in my motion, and I have a copy here, if you'd like, 351 So.2d, 1073.

THE COURT:  Okay.

MR. LANGLEY:  It's a 4th DCA case that says, essentially, summary judgment was entered on the basis of res judicata.  In an earlier third-party complaint by Kings Point against Acousti (phonetic) involving the same issue, the trial (sic) entered an order granting summary judgment.  However, this was not a final appealable order. Therefore, it cannot be the basis for res judicata. That's what we have here.  We have a non-final order in Michigan that cannot be the basis for res judicata.

There's a motion for a new trial pending, which is attached to our response.  If that's denied -- and that's been pending since April, I don't know why it's taken that judge so long to rule on it, if that is denied, there'll be an appeal.

Page 128

The important point there, Judge is, that ruling is not going to be final for quite some time. We're supposed to be in trial --

THE COURT: There's no final judgment, it's only findings of fact and conclusions of law. The judge has not entered a final judgment?

MR. LANGLEY: There's a final judgment and there's a motion for a new trial pending.

THE COURT: Okay.

MR. LANGLEY: Because of the fact --

THE COURT: The final judgment is an appealable order, a final appealable order, correct?

MR. LANGLEY: Yes, it's going to be, yes, but the appeal can't be filed because --

THE COURT: Well, in the case that you cited in Edwards versus Kings Point, it was merely an order granting summary judgment, and so that was not a final appealable order. Whoever granted the summary judgment had to then enter a final summary judgment afterwards.

MR. LANGLEY: Okay. The order in Michigan is a -- there's a motion for a new trial pending, so it's not final, and if the motion for a new trial is denied, there'll be an appeal. So we're a long ways away from that ruling being a final order.

In addition, Judge, as you were touching on,

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                     RECEIVED NYSCEF: 01/19/2026

there are different parties here.  The Michigan ruling does not include all the Franklin parties that are involved in this litigation.  In this litigation, in the Franklin parties' counterclaim, there are two Franklin parties.  There are also additional defendants, Franklin party counter-claimants they brought, and also different issues.

In this case, the Franklin parties sued not only Mr. Lubin and Spin, but also Hi Bar Capital and Mordecai Herbst and other parties.

In the second amended counterclaim in this case, they not only brought, excuse me, the claim for breach of contract, but also declaratory relief against Spin and Hi Bar, declaratory relief against Spin and Hi Bar as to the invalidity of the Hi Bar transfer agreement, declaratory relief against Spin, claiming usury and also claims for a civil RICO and conspiracy.

None of those were resolved by the ruling by the Michigan court.  The Michigan judge only found a breach of contract and conversion, and it's not final, and there are also some contested facts.

In the motion for summary judgment, they claim that Mr. Lubin made false representations to Franklin, but they attach his transcript, it's Exhibit A to the motion for summary judgment.  I copied in a portion

Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 479 of 976

Page 130

of that transcript in my response, and Mr. Lubin says he never spoke with Franklin, and then so the question was, okay, so for Franklin sending you -- except for Franklin sending you direct DocuSigns of contracts, you never spoke to Franklin directly in this process?

Answer, correct.

Okay. So they're claiming false representations. The testimony of Mr. Lubin is that he never even spoke with them.

Also, in Paragraph 8 of the motion for summary judgment, Franklin alleges that Excell, the debtor, made payments to Hi Bar, but the ruling of the Michigan court says that the payments went to Spin. It says, quote, Spin took additional payments from Excell following the execution of the assignment agreement on November 1, 2021. So there's a direct conflict between the Michigan ruling and the motion for summary judgment here.

And as I mentioned before, they can't argue that Spin was the alter ego of Hi Bar, because the Michigan court denied that claim. That order denying that was attached to our motion for stay filed back on July 17th.

Judge, I also cited to the Oldsmar case, City of Oldsmar, collateral estoppel is a judicial

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                 RECEIVED NYSCEF: 01/19/2026

Page 131

doctrine in which general terms prevent identical parties from re-litigating the same issues that have already been decided.  Under Florida law, collateral estoppel, or issue preclusion applies when the identical issue has been litigated between the same parties or their privies, and then here's what's important, in addition, the particular matter must be fully litigated and determined in a contest that results in a final decision of a court of competent jurisdiction.  We don't have that here.  We have a motion for summary judgment that was -- a motion for summary disposition that was granted by default, that's the subject of a motion for new trial because Mr. Lubin and Spin did not have adequate representation.  That alone should take it out of consideration for summary judgment.  The parties are different.  The matter's not final.  The issues are different.  So none of that supports a motion for summary judgment, Judge.

We have issues that need to be decided in the Franklin counterclaim that were not decided by the Michigan court.  We're set for trial next month.  We won't have a final ruling from the Michigan court for many months.

THE COURT:  All right.  Any reply?

MR. DORSEY:  Yes, your Honor.

Your Honor, I can sense you're reluctant to

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

Page 132

grant the motion, or maybe it's just you're tired at the end of a long day.

THE COURT:  No, it's -- so you throw that out there, it's different parties, different claims.

MR. DORSEY:  Well, that's exactly the two things I was going to focus on --

THE COURT:  All right.

MR. DORSEY:  -- different parties --

THE COURT:  I understand you might want to say that you have --

MR. DORSEY:  Privity.

THE COURT:  -- privity, but the issues are different.

What you have to prove in a breach of contract claim and a conversion claim is a lot different than a claim for fraud and tortious interference.

MR. DORSEY:  Of course it is.

So I think Mr. Langley is confusing concepts.  Res judicata is claim preclusion, I sue you for breach of contract, I can't sue you -- you know, I can's sue you for breach of contract in another case, that's claim preclusion.

Collateral estoppel does not decide, excuse me, legal issues.  It decides factual issues.  In fact, whenever people use collateral estoppel, almost by

NYSCEF DOC. NO. 1007                                 RECEIVED NYSCEF: 01/19/2026

Page 118

Mr. Lubin, and that potentially is up for trial in September, the Michigan state court has already dealt with. The Michigan state court had a two-day trial, dealt with all these issues.

So basically the summary judgment motion, I don't have a binder of exhibits, I have a two-page judgment with some findings of fact we're going to walk through, I have a final order that adjudicates numerous facts. It's -- I guess it's in a situation where both parties had ample opportunity to litigate these factual findings, and there's mutuality of estoppel. The movant today is Franklin Capital Funding, LLC, that was the plaintiff in the state court, and I'm seeking to collaterally estop Josh Lubin, who is the sole owner and person who controls Spin, and both Michigan -- Michigan law applies, but I cite both Michigan and Florida cases. They state that if you're the sole owner --

THE COURT: Why do you need a new case? It would be different if it was Lubin or Spin suing Franklin, and then you say, hey, collateral estoppel, res judicata and all that. What are you seeking to get here that you can't already get in Michigan?

MR. DORSEY: The Michigan judgment was only against Spin.

THE COURT: Okay.

Page 119

MR. DORSEY: They couldn't sue Lubin personally in his individual capacity. Mr. Lubin personally is a defendant down here.

THE COURT: All right.

MR. DORSEY: So my client is seeking a judgment against him in his individual capacity.

THE COURT: Why couldn't you sue Lubin there and have just -- you understand what I'm saying?

MR. DORSEY: I understand, Judge. I can tell you there was a forum selection clause in the assignment, such that Spin consented to jurisdiction in Michigan, and that's how they got Spin in Michigan.

They attempted to sue Hi Bar in Michigan, and that was dismissed for lack of personal jurisdiction. I assume if they had attempted to sue Mr. Lubin in Michigan as well, it would have been dismissed for lack of personal jurisdiction because he's not a Michigan resident. The only reason they were able to sue Spin up there was because of a forum selection clause.

THE COURT: So how is their collateral estoppel or res judicata on Lubin if Lubin was not a party there?

MR. DORSEY: So, your Honor, you're peppering me with questions, and you're disrupting the flow of my presentation, but basically I can cite the

NYSCEF DOC. NO. 1007

RECEIVED NYSCEF: 01/19/2026

Page 120

cases to you, mutuality of estoppel applies when you have obviously the same parties, you know, or you have what are called parties in privity with each other, and a party is in privity with another party when its interests are so aligned that for all intents and purposes it is that party participating in the other litigation.

And again, I can go through it in a minute, there's Michigan case law, there's Florida case law that says if you are the sole owner of a company, if you are controlling the shots of that company, and there's a judgment against that company, collateral estoppel applies to you, and that's particularly true here because, as I said, Mr. Lubin testified personally at the trial over two days. The Michigan court judged his credibility extensively.

THE COURT: All right, and so response?

MR. DORSEY: No, Judge, can I just finish briefly?

THE COURT: Yeah.

MR. DORSEY: I want to keep going.

I made a little chart. I'll go through it quickly, I promise.

THE COURT: So you don't know why Lubin -- or do you even know if Lubin was sued in Michigan, individually?

NYSCEF DOC. NO. 1007

RECEIVED NYSCEF: 01/19/2026

Page 121

MR. DORSEY:  No, he was not.  There was no personal jurisdiction over him in Michigan.

THE COURT:  But it's different than Hi Bar, he was not even sued?

MR. DORSEY:  He was not even sued.  They attempted to sue Hi Bar, and Hi Bar was dismissed for lack of personal jurisdiction.

THE COURT:  Obviously you can waive that, so -- I mean, if you had sued Lubin, he might have waived it and so you could do it all at once.  Instead, it seems piecemeal.

MR. DORSEY:  I mean, Judge, at the end of the day, Lubin -- they were not required to sue Lubin in Michigan.  I don't know -- you know, I doubt they would have had personal jurisdiction over him, but at the end of the day, the parties are now here before you, and essentially what I'm saying is we have a court that's issued binding findings.  Why are we going to have the same trial that already occurred last year?

THE COURT:  Because that was only against Spin, right?

MR. DORSEY:  Well, your Honor --

THE COURT:  No, I understand, you're saying that it was essentially one and the same.  I just -- all right.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                          RECEIVED NYSCEF: 01/19/2026

Page 122

MR. DORSEY: Well, let me first, because I would like to address Mr. Langley's arguments at the end of my presentation.

THE COURT: Okay.

MR. DORSEY: So let me just first walk you through, like, why I think it's so clear-cut.

So you have a chart in front of you that says Count 7, fraud and fraud in the inducement, it states the elements of fraud under Florida law, pretty basic stuff.

So if you look at that chart, you see element, defendant made a false statement regarding the material fact. Do you see that?

THE COURT: Yes.

MR. DORSEY: Okay. Now look directly to the right of this. This is verbatim the Michigan court. On October 21st, 2021, approximately $2.1 million of debt was owed by Excell to Spin, which was concealed from Franklin. The assignment agreement signed by Josh Lubin falsely claimed that the amount of such debt was zero. This is matching the element exactly.

The next element, defendant knew the statement was false. Go to the right in the Michigan court, quote, Lubin purposefully lied about the amount in the assignment agreement.

OUELLETTE & MAULDIN COURT REPORTERS, INC.
(305) 358-8875

Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 487 of 976

Page 123

And I could go through the other elements, Judge, and you have the charts in front of you, but literally for each of my counts, element by element, the Michigan court is finding exactly what we would need to prove these claims. There's no reason to try them a second time.

THE COURT: Okay.

MR. DORSEY: Okay. Judge, I'll conclude by just going -- quickly going over Mr. Langley's arguments.

Number one, he says the Michigan judgment is not final because they still have appellate rights. That's just wrong. Under both Michigan law and Florida law, the pendency of an appeal doesn't affect the res judicata or collateral estoppel effect of a judgment. If you want to post a bond, you can post a bond, and I would cite In Re: Kramer, 543 BR, 541, that's a Bankruptcy, Eastern District of Michigan case, 2015, analyzing Florida law.

Mr. Langley argues, the issues were never fully litigated because the judgment was based on a default. Again, that's not true, there was a two-day trial, but even if the judgment was based on a default, collateral estoppel would still apply under Michigan law. The case site for that is Ursuy versus Yassin, 2021 Westlaw 4815289, that's a Michigan Court of Appeals case

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

Page 124

from 2021.

And here, Judge, here's what I think you're getting at, because you asked, well, why not -- Lubin wasn't up there, so can collateral estoppel apply if it was only Spin?  And I would like to read this quote to you, Judge, verbatim, because it directly addresses this point.  This is the Michigan Supreme Court, 1990, quote, collateral estoppel precludes re-litigation of an issue -- excuse me, I misread my outline, give me one second.

I'm sorry, Judge, I misread my outline, but I cite it in my brief, under Michigan law, Mr. Lubin is in privity with Spin.  If Mr. Lubin attended a two-day trial on behalf of Spin, an entity he fully controls, he testified, and the Michigan court found him not credible. He's in privity with Spin, and there's no reason to litigate essentially the same issue today.

That's it, and I'll turn the podium over to Mr. Langley, unless your Honor has questions.

THE COURT:  Nope.

All right.  Mr. Langley.

MR. LANGLEY:  Thank you, Judge.

I want to address a few of the things Mr. Dorsey said first before I get through my main argument, Judge.

Mr. Dorsey represented that the Michigan

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

Page 125

court found that Josh Lubin lied.  Well, the Michigan court ruling that you have, it says that the judge questioned Mr. Lubin's credibility.  There's also notices in there that Mr. Lubin was not aware that his attorney had defaulted, and he had some real issues during the case.  The point is, that's not -- there was no representation in the Michigan court ruling that Franklin relied on any false statements made by my client, by Josh, and in particular, Judge, in my --

THE COURT:  Can I ask you a question while I'm thinking about it?  What were the claims against Spin in Michigan?

MR. LANGLEY:  The ruling is on breach of contract and conversion only.  There was --

THE COURT:  It was a breach of contract --

MR. LANGLEY:  Yes, the Court found --

THE COURT:  And?

MR. DORSEY:  Conversion.

MR. LANGLEY:  Conversion.

THE COURT:  Conversion, so different claims.

MR. LANGLEY:  Yes, different from the claims down here.

THE COURT:  Conversion, I guess there could be some overlap.  A breach of contract, it's totally different between a breach of contract versus committing

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                    RECEIVED NYSCEF: 01/19/2026

Page 126

fraud and --

MR. LANGLEY:  Yes.

THE COURT:  Tortuous interference.  I mean, but --

MR. DORSEY:  No.

MR. LANGLEY:  So, different --

THE COURT:  -- conversion is different.

MR. LANGLEY:  Different parties, different issues, non-final order, and there's some facts that are directly in conflict between the motion for summary judgment and the Michigan ruling.

Okay.  So, yes, Mr. Dorsey touched on it, there was a default entered on liability because the attorney representing Spin in Michigan missed the deadline to respond to a motion for summary judgment, or there it's a motion for summary disposition, and Mr. Lubin didn't even know about that until he appeared at trial.  The trial was only on dollar amount, it was only on damages. It wasn't on any of the main issues, particularly not on any of the issues that we have here alleged.

So we have a non-final order attached to -- we filed a response to the motion for a stay back in July, Judge, and attached to that motion is a ruling by the Michigan court on alter ego.  In the Michigan court they tried to argue that Hi Bar and Spin were alter egos of

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                              RECEIVED NYSCEF: 01/19/2026

Page 127

each other, and the Court denied that and threw out those counts.  So it only went to trial on breach of contract and conversion.

Now, Michigan law applies to the interpretation of the contract because that's what it says in the contract, but here, we're here today on a motion for a summary judgment under Florida law.

I cited to the Edwards case, Judge Edwards versus Kings Point, in my motion, and I have a copy here, if you'd like, 351 So.2d, 1073.

THE COURT:  Okay.

MR. LANGLEY:  It's a 4th DCA case that says, essentially, summary judgment was entered on the basis of res judicata.  In an earlier third-party complaint by Kings Point against Acousti (phonetic) involving the same issue, the trial (sic) entered an order granting summary judgment.  However, this was not a final appealable order. Therefore, it cannot be the basis for res judicata. That's what we have here.  We have a non-final order in Michigan that cannot be the basis for res judicata.

There's a motion for a new trial pending, which is attached to our response.  If that's denied -- and that's been pending since April, I don't know why it's taken that judge so long to rule on it, if that is denied, there'll be an appeal.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

Page 128

The important point there, Judge is, that ruling is not going to be final for quite some time. We're supposed to be in trial --

THE COURT: There's no final judgment, it's only findings of fact and conclusions of law. The judge has not entered a final judgment?

MR. LANGLEY: There's a final judgment and there's a motion for a new trial pending.

THE COURT: Okay.

MR. LANGLEY: Because of the fact --

THE COURT: The final judgment is an appealable order, a final appealable order, correct?

MR. LANGLEY: Yes, it's going to be, yes, but the appeal can't be filed because --

THE COURT: Well, in the case that you cited in Edwards versus Kings Point, it was merely an order granting summary judgment, and so that was not a final appealable order. Whoever granted the summary judgment had to then enter a final summary judgment afterwards.

MR. LANGLEY: Okay. The order in Michigan is a -- there's a motion for a new trial pending, so it's not final, and if the motion for a new trial is denied, there'll be an appeal. So we're a long ways away from that ruling being a final order.

In addition, Judge, as you were touching on,

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                          RECEIVED NYSCEF: 01/19/2026

Page 129

there are different parties here.  The Michigan ruling does not include all the Franklin parties that are involved in this litigation.  In this litigation, in the Franklin parties' counterclaim, there are two Franklin parties.  There are also additional defendants, Franklin party counter-claimants they brought, and also different issues.

In this case, the Franklin parties sued not only Mr. Lubin and Spin, but also Hi Bar Capital and Mordecai Herbst and other parties.

In the second amended counterclaim in this case, they not only brought, excuse me, the claim for breach of contract, but also declaratory relief against Spin and Hi Bar, declaratory relief against Spin and Hi Bar as to the invalidity of the Hi Bar transfer agreement, declaratory relief against Spin, claiming usury and also claims for a civil RICO and conspiracy.

None of those were resolved by the ruling by the Michigan court.  The Michigan judge only found a breach of contract and conversion, and it's not final, and there are also some contested facts.

In the motion for summary judgment, they claim that Mr. Lubin made false representations to Franklin, but they attach his transcript, it's Exhibit A to the motion for summary judgment.  I copied in a portion

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

Page 130

of that transcript in my response, and Mr. Lubin says he never spoke with Franklin, and then so the question was, okay, so for Franklin sending you -- except for Franklin sending you direct DocuSigns of contracts, you never spoke to Franklin directly in this process?

Answer, correct.

Okay. So they're claiming false representations. The testimony of Mr. Lubin is that he never even spoke with them.

Also, in Paragraph 8 of the motion for summary judgment, Franklin alleges that Excell, the debtor, made payments to Hi Bar, but the ruling of the Michigan court says that the payments went to Spin. It says, quote, Spin took additional payments from Excell following the execution of the assignment agreement on November 1, 2021. So there's a direct conflict between the Michigan ruling and the motion for summary judgment here.

And as I mentioned before, they can't argue that Spin was the alter ego of Hi Bar, because the Michigan court denied that claim. That order denying that was attached to our motion for stay filed back on July 17th.

Judge, I also cited to the Oldsmar case, City of Oldsmar, collateral estoppel is a judicial

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007    RECEIVED NYSCEF: 01/19/2026

Page 131

doctrine in which general terms prevent identical parties from re-litigating the same issues that have already been decided. Under Florida law, collateral estoppel, or issue preclusion applies when the identical issue has been litigated between the same parties or their privies, and then here's what's important, in addition, the particular matter must be fully litigated and determined in a contest that results in a final decision of a court of competent jurisdiction. We don't have that here. We have a motion for summary judgment that was -- a motion for summary disposition that was granted by default, that's the subject of a motion for new trial because Mr. Lubin and Spin did not have adequate representation. That alone should take it out of consideration for summary judgment. The parties are different. The matter's not final. The issues are different. So none of that supports a motion for summary judgment, Judge.

We have issues that need to be decided in the Franklin counterclaim that were not decided by the Michigan court. We're set for trial next month. We won't have a final ruling from the Michigan court for many months.

THE COURT: All right. Any reply?

MR. DORSEY: Yes, your Honor.

Your Honor, I can sense you're reluctant to

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007
RECEIVED NYSCEF: 01/19/2026

Page 132

grant the motion, or maybe it's just you're tired at the end of a long day.

THE COURT: No, it's -- so you throw that out there, it's different parties, different claims.

MR. DORSEY: Well, that's exactly the two things I was going to focus on --

THE COURT: All right.

MR. DORSEY: -- different parties --

THE COURT: I understand you might want to say that you have --

MR. DORSEY: Privity.

THE COURT: -- privity, but the issues are different.

What you have to prove in a breach of contract claim and a conversion claim is a lot different than a claim for fraud and tortious interference.

MR. DORSEY: Of course it is.

So I think Mr. Langley is confusing concepts. Res judicata is claim preclusion, I sue you for breach of contract, I can't sue you -- you know, I can's sue you for breach of contract in another case, that's claim preclusion.

Collateral estoppel does not decide, excuse me, legal issues. It decides factual issues. In fact, whenever people use collateral estoppel, almost by

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                    RECEIVED NYSCEF: 01/19/2026

Page 133

definition, the claim alleged in the second lawsuit is going to be different.

I'm not seeking a finding as a legal matter that Josh Lubin is liable for breach of contract. I'm seeking as a factual determination, a court has already determined that factually he lied to Franklin through the assignment, he caused companies to siphon off millions of dollars from Franklin's borrowers, and he damaged Franklin. Those are factual findings. Of course they're going to be cast in different claims. I'm not suing Lubin for breach of contract, but that's what collateral estoppel is.

THE COURT: Yeah, I'm not sure.

MR. DORSEY: Well, I have to --

THE COURT: Res judicia is typically identity of parties and issues. Claim -- collateral estoppel, I think, is usually claim preclusion, but regardless, I don't see how you have the same issues in either case, and so it's a different context.

MR. DORSEY: Well, Judge, I --

THE COURT: And so even if -- I know there's findings in there, in Michigan where they indicate they just didn't find Mr. Lubin credible, but at the end of the day, they could still say breach of contract is a lower standard, he breached a contract, he didn't disclose it.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

Page 134

Fraud and tortious interference require more, it's a higher -- and I know you're saying the findings were the same, but he wasn't really defending against that in Michigan.

MR. DORSEY:  So what your Honor is saying is the factual findings were not necessary to the claims?

THE COURT:  Exactly, and so he was not defending against claims of fraud and --

MR. DORSEY:  Well, there was --

THE COURT:  I guess conversion is a little bit more, I guess you're keeping the money without any right to it.

MR. DORSEY:  There was conversion, Judge, yeah, right.

THE COURT:  But, I mean, the elements of fraud and the elements for tortious interference are much different than a breach of contract for sure, and even a conversion claim.

MR. DORSEY:  Well, the good news is, Judge, if you deny the motion, you're going to hear the full story in about 40 days, so be careful what you wish for.

THE COURT:  No, I understand.

MR. DORSEY:  But I do sense --

THE COURT:  I'm probably going to hear a lot of it anyway, because of select additional parties.

OUELLETTE & MAULDIN COURT REPORTERS, INC.
(305) 358-8875

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 135

So I guess Mr. Lubin is behind, not just -- he's behind also Hi Bar, too, right?

MR. DORSEY:  Well, he's definitely behind Spin.  Whether he's behind Hi Bar, that's what your Honor adjudicated earlier in this hearing, whether that common interest agreement gives him an interest in Hi Bar.

THE COURT:  All right, and then there's --

MR. KASEN:  Your Honor, I just want to jump in and make sure that the record is clear, that I don't think that that's what your Honor ruled earlier --

THE COURT:  No.

MR. KASEN:  -- regarding Spin and Hi Bar.

I think that your Honor ruled that you weren't going to opine as to the advocacy of the common interest agreement, just that the settlement can be entered into, and if Mr. Lubin believes he has rights pursuant to the common interest agreement, he can pursue them elsewhere.

THE COURT:  He can definitely sue Hi Bar, but what I was ruling is that, basically at a settlement by Hi Bar, who was the one who filed the claims in the bankruptcy court and here, that there was nothing that gave Mr. Lubin a right to those proceeds.  I guess it --

MR. DORSEY:  I was -- your Honor, just to avoid kind of more talking in circles, I was paraphrasing

OUELLETTE & MAULDIN COURT REPORTERS, INC.
(305) 358-8875

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007
RECEIVED NYSCEF: 01/19/2026

Page 136

your Honor's opinion.

THE COURT:  Okay.

MR. DORSEY:  I was not attempting to attach another layer of gloss to it.

THE COURT:  All right, but, in any event, I'm going to deny the motion for summary judgment.  You do have different parties.  I don't know why you didn't just sue Mr. Lubin.  You're going through all that trouble to sue Slide, I'm not sure -- or Spin, I keep saying Slide, Spin, I don't know why they didn't try to sue Lubin there as well.

MR. DORSEY:  I'm not barred in Michigan, but I will pass the question along.

THE COURT:  It's just, and then they could have brought the fraud claims as well, but anyway, I'm going to deny it.  I don't think you have a similarity of issues or parties.

MR. DORSEY:  Your Honor, thank you for being very patient over the last three hours.

THE COURT:  I had set the whole afternoon aside.  I know there's a lot going on.

Yeah, I'm hopeful some of it gets -- more of it gets resolved, but I'm not sure if it will.  I think we're going to trial on a lot of these issues.

MR. DORSEY:  More likely than not.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

Page 137

THE COURT: We'll see.

MR. DORSEY: But hope springs eternal, so we'll see.

THE COURT: All right. You all have a great day, and thanks for sticking it out. I know you got pushed down. That took a lot longer, the 1:30, so --

MR. DORSEY: Yes.

MR. LANGLEY: Pat, you're going to do the order?

MR. DORSEY: I'll run it by Mr. Langley, it's just going to be very simple, for the reasons stated on the record.

THE COURT: Exactly, and put that we had a court reporter here.

MR. DORSEY: Yep.

THE COURT: All right.

MR. DORSEY: Thank you, Judge.

MR. KASEN: Your Honor, I want to thank you as well, and thank you for allowing me to appear pending my pro hac vice motion.

THE COURT: No worries, and you are showing up now, not your video. For some reason your video is not working, but before when you were speaking, it showed up as a different name. I don't know why that was, but in any event, you have a -- where are you located at,

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

Page 138

Mr. Kasen?

MR. KASEN: New York.

THE COURT: Okay. All right. Well, hopefully it's not too hot there. It's probably hot everywhere.

MR. KASEN: It's pretty hot today.

THE COURT: All right. Have a great day.

MR. KASEN: Have a wonderful day.

THE COURT: Yeah, you, too.

MR. DORSEY: Thanks, Judge.

THE COURT: All right. Thank you.

MR. LANGLEY: Thank you, Judge.

(Thereupon, the hearing was concluded.)

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007
INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 139

CERTIFICATION

STATE OF FLORIDA          :

COUNTY OF MIAMI-DADE    :


                I, Cheryl L. Jenkins, RPR, RMR, Shorthand

Reporter and Notary Public in and for the State of Florida

at Large, do hereby certify that the foregoing proceedings

were taken before me at the date and place as stated in

the caption hereto on page 1; that the foregoing

computer-aided transcription is a true record of my

stenographic notes taken at said proceedings.

                WITNESS my hand this 18th day of

August, 2025.


                _____

                CHERYL L. JENKINS, RPR, RMR

                Court Reporter and Notary Public
                in and for the State of Florida at Large
                Commission #HH 170910
                December 27, 2025

EXHIBIT "C"

## IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
## IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO. <u>CACE22005125</u>   DIVISION: <u>07</u>   JUDGE: <u>Haimes, David A (07)</u>

**FVP Opportunity Fund III, LP, et al**

Plaintiff(s) / Petitioner(s)

v.

**Scott Zankl, et al**

Defendant(s) / Respondent(s)

_____/

## ORDER ON JOINT MOTION TO ENDORSE SETTLEMENT

THIS CAUSE came before the Court for hearing on August 13, 2025, on the *Joint Motion to Endorse Settlement Agreement* filed (the "Motion") jointly by: (1) Plaintiffs, FVP Opportunity Fund III, LP, FVP Investments, LLC, and FVP Servicing, LLC (jointly and severally, the "FVP Parties"); (2) Defendants/Cross-Plaintiffs, Franklin Capital Funding, LLC, Franklin Capital Group, LLC, and Franklin Capital Management, LLC (jointly and severally, the "Franklin Parties"); and (3) Defendants, Yisroel Herbst, Mordechai Herbst, and Hi Bar Capital, LLC (jointly and severally, the "Hi Bar Parties"). Present at the hearing were counsel for the FVP Parties, Franklin Parties, and Hi Bar Parties, together with: (1) David Langley, Esq., counsel for Defendant Avrumi "Josh" Lubin ("Avrumi Lubin") and (2) Micheal J. Kasen, Esq, who the Court admitted pro hac vice as co–counsel for Avrumi Lubin prior to the hearing and who participated via Zoom at the hearing in support of the objections filed and otherwise raised by Avrumi Lubin. Other attorneys listened to the hearing regarding the Motion on Zoom but did not participate therein.

After reviewing the Motion and other relevant documents, including the Common Interest and Joint Litigation Agreement ("Common Interest Agreement") between Hi Bar Capital, LLC ("Hi Bar") and Spin Capital, LLC ("Spin"), and the letter purporting to terminate that agreement dated April 3, 2024, and after hearing the arguments of counsel for all parties, the Court makes the following findings of fact and conclusions of law:

1. Beginning in the fall of 2022, the FVP Parties, Franklin Parties, and Hi Bar Parties were each parties in Adversary Proceeding No. 22-01218-EPK, which was pending in the United States

Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 505 of 976

Case Number: CACE22005125

Bankruptcy Court for the Southern District of Florida, West Palm Beach Division (the "Bankruptcy Court"). The parties in the adversary proceeding were litigating their respective claims to vehicles removed from the Karma of Palm Beach, Inc. lot by other Defendants in this action, and which were claimed as part of the bankruptcy estate *In re: Auto Wholesale of Boca, LLC,* Case No: 22-15627-EPK, a bankruptcy case which was also pending in the Bankruptcy Court. That bankruptcy case proceeded to a two-day evidentiary hearing in March 2023, after which the Bankruptcy Court converted the case to a Chapter 7. *See* Case No: 22-15627-EPK – [ECF No. 584].

2. On June 23, 2023, pursuant to an agreement between the FVP Parties, Franklin Parties, Hi Bar Parties and the Chapter 7 Trustee, and at the Chapter 7 Trustee's request, the Bankruptcy Court endorsed said agreement, ordered the vehicles sold, and directed that the Net Proceeds from the sale be held as and distributed as follows:

> 8. The proceeds of the Auction, net of the Buyer's Premium, Expenses and Carveout (such net proceeds shall be referred to herein as the "Net Proceeds"), shall be held pending adjudication by a court of competent jurisdiction as to the validity, priority and extent of property interests asserted in the Net Proceeds or consensual resolution between and among the parties whom have appeared in the main bankruptcy case or the Adversary Proceeding and asserted interests therein. Only (i) parties to the Adversary Proceeding Complaint, or (ii) parties that have appeared in the main bankruptcy case and asserted an interest in the Vehicles, may make a claim against the Net Proceeds.
>
> 9. The Trustee, as the duly appointed chapter 7 trustee of the bankruptcy estate of Auto Wholesale of Boca, LLC, hereby waives all Liens and Interests, including any lien, ownership interest, property interest, security interest, or any other claim (as such term is defined in 11 U.S.C. § 101(5)) or interest of any kind whatsoever in the Net Proceeds and Vehicles. For the avoidance of doubt, the waiver includes any allegation that Auto Wholesale of Boca, LLC was a good faith purchaser of the Vehicles in the ordinary course under Fla. Stat. §§ 671.201(9) and 679.320(1).
>
> 10. The waiver of the Liens and Interests by the Trustee, as set forth in the preceding paragraph, is binding on Auto Wholesale of Boca, LLC in any future controversy, litigation, or any other dispute arising from or concerning the Net Proceeds. Auto Wholesale of Boca, LLC does not possess any Liens or Interests in the Net Proceeds, including any lien, security interest, or ownership or property interest whatsoever.

[See *Order Granting in Part Expedited Motion to Authorize Sale* [ECF. 618] at [ECF. 694] at ¶ ¶ 6, 8 and 10]. (the "Bankruptcy Court Sale Order"). The terms "Adversary Proceeding" and "Net Proceeds" shall have the meanings ascribed to them in the Bankruptcy Court Sale Order.

Case Number: CACE22005125

3. Thus, per the Bankruptcy Court Sale Order, the Net Proceeds were to be held in the registry of the Bankruptcy Court pending the occurrence of either: (i) adjudication by a court of competent jurisdiction as to the validity, priority and extent of interests in the Net Proceeds, or (ii) "consensual resolution between and among the parties whom have appeared in the main bankruptcy case or the Adversary Proceeding and asserted interests therein."

4. On July 26, 2025, the FVP Parties, Franklin Parties, and Hi Bar Parties entered into the consensual resolution (the "Settlement Agreement") contemplated by Bankruptcy Court Sale Order and filed a motion for the Bankruptcy Court to release the Net Proceeds pursuant to the consensual resolution. In response, Avrumi Lubin filed objections in the Bankruptcy Court and argued that Avrumi Lubin was the assignee of Hi Bar's rights and that Hi Bar had no authority to enter into the Settlement Agreement. In support of Avrumi Lubin's argument, he filed of record the Common Interest Agreement and an assignment of Spin's rights to Avrumi Lubin.

5. The Bankruptcy Court initially denied the FVP Parties', Franklin Parties', and Hi Bar Parties' joint motion for release of the funds, and after reconsideration, ultimately denied such motion, on the basis that it lacked subject matter jurisdiction to consider the dispute raised by Lubin regarding the enforceability and termination of the Common Interest Agreement.

6. In doing so the Bankruptcy Court specifically referred the dispute between Avrumi Lubin and Hi Bar to this Court as the court with jurisdiction to "determine which of the Movants and Mr. Lubin have rights in the Net Proceeds. The Court encourages the parties to seek appropriate rulings in the Broward Action." See *Order Denying Expedited Joint Motion*, [ECF. 952] at p 9.

7. This Court reviewed the Common Interest Agreement as well as a letter issued by the attorney for Hi Bar on April 3, 2024 which purported to terminate the Common Interest Agreement and heard detailed argument by counsel for Avrumi Lubin, the Hi Bar Parties, FVP Parties and Franklin Parties.

8. This Court finds that Avrumi Lubin has no rights or standing to interfere with the Hi Bar settlement.

9. The Court finds that Hi Bar had the power and authority to enter into the Settlement Agreement with the FVP Parties and Franklin Parties. Avrumi Lubin, on the other hand, has no right or standing to object to the Settlement Agreement.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                                RECEIVED NYSCEF: 01/19/2026

Case Number: CACE22005125

Accordingly, and for the reasons stated on the record (court reporter present), which are incorporated herein by reference, it is hereby:

**ORDERED AND ADJUDGED** as follows:

10. This Court is the court of competent jurisdiction to resolve the dispute between Hi Bar and Avrumi Lubin as contemplated by the *Order Denying Expedited Motion* [ECF. 952] issued by the Bankruptcy Court.

11. This Court has reviewed the Common Interest Agreement, the purported termination letter and applicable law and has determined that Hi Bar has the necessary authority to enter into the settlement agreement.

12. The Joint Motion to Endorse Settlement Agreement filed by the FVP Parties, Franklin Parties, and Hi Bar Parties is hereby **GRANTED** in its entirety.

13. Pursuant to the Settlement Agreement between the FVP Parties, Franklin Parties, and Hi Bar Parties, as stated to this Court on the record, the Net Proceeds should be distributed to the trust account of counsel for the FVP Parties.

14. This Court contemplates that this Order shall be filed of record in the Bankruptcy Court.

15. All terms of the Settlement Agreement and any other agreements concerning or related to the distribution of the Net Proceeds shall be furnished to counsel for Mr. Lubin.

16. The FVP Parties, Franklin Parties, and Hi Bar Parties shall serve a copy of the Settlement Agreement on counsel for Avrumi Lubin and the Farache Defendants within five (5) days of this order.

17. The *ore tenus* motion to stay the effect of this order made by counsel for Avrumi Lubin is **DENIED**. As time is of the essence, this order shall have immediate effect and is binding unless vacated by court order or stayed by an appropriate court of appellate jurisdiction.

18. This Court retains jurisdiction to enforce this order as required.

**DONE AND ORDERED** in Chambers at Broward County, Florida on .

Judge Name
**CIRCUIT COURT JUDGE**
DRAFT DRAFT DRAFT DRAFT

Case 22-15627-EPK   Doc 952   Filed 08/12/25   Page 1 of 9   **EXHIBIT "D"**



**ORDERED in the Southern District of Florida on August 12, 2025.**

Erik P. Kimball
Chief United States Bankruptcy Judge

---

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

In re:                                              Case No. 22-15627-EPK
                                                    Chapter 7
AUTO WHOLESALE OF BOCA, LLC,

Debtor.
_____/

## ORDER DENYING EXPEDITED JOINT MOTION

This is the Court's ruling on the *Expedited Joint Motion (I) To Enforce Sale Order and (II) To Order Distribution of Auction Proceeds to Counsel for the FVP Parties* [Dkt. No. 931; the "Joint Motion"]. The Court also considered the limited objection filed by Avrumi Lubin [Dkt. No. 950] and the reply [Dkt. No. 951].

The debtor in this case, Auto Wholesale of Boca, LLC, filed a voluntary chapter 11 petition on July 22, 2022. Dkt. No. 1. The debtor claimed to be a wholesale dealer of exotic and luxury vehicles. It had a number of vehicles in its possession at the time.

Two days after the debtor filed this case, creditors filed an adversary proceeding against the debtor claiming that vehicles in the debtor's possession were not actually the

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                                                    RECEIVED NYSCEF: 01/19/2026

debtor's property and were subject to liens granted by another entity. Adv. Proc. No. 22-01218-EPK (the "Adversary Proceeding"). Other creditors made similar claims by adversary proceeding and by motion. *See, e.g.*, Adv. Proc. No. 22-01424-EPK; Dkt. Nos. 13, 72, 114, 127, 141, 252, 268, 356, 576, 578, 680. Eventually, the Adversary Proceeding came to include several parties claiming interests in vehicles held by the debtor. Dkt. No. 145, Adv. Proc. No. 22-01218 (Amended Complaint).

About 9 months after this case was filed, on May 1, 2023, the Court converted this case to chapter 7. Dkt. No. 584. By then it was clear that for at least a few years prior to this bankruptcy the debtor's business consisted almost entirely of lending money to another entity which is also a debtor before this Court. Tr. of Oral Ruling, Dkt. No. 610. When the Court converted this case, the debtor remained in possession of a number of vehicles, but the debtor had very weak and probably no claim to ownership of most of those vehicles. In its ruling, the Court stated: "It would not surprise me if the debtor in the end can claim no ownership at all." Tr. of Oral Ruling, Dkt. No. 610 at 20.

When the chapter 7 trustee took control of the debtor on May 2, 2023, he was mindful of the competing claims to the vehicles in his possession and the debtor's tenuous ownership of those vehicles. The trustee determined that the best approach would be to propose an auction sale of the vehicles, with the bankruptcy estate to obtain a small portion of the proceeds, and the lion's share of the net sale proceeds to be set aside so that parties claiming interests in the vehicles could address their disputes in another forum.

Within a week of his appointment, the trustee filed a motion to auction a number of vehicles in the estate's possession. Dkt. No. 618. The sale was to be free and clear of all liens and other interests under 11 U.S.C. § 363(f). The trustee asked the Court to approve a minimum amount to be retained by the estate for the benefit of unsecured creditors, in the form of a surcharge under 11 U.S.C. § 506(c).

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

Case 23-01132-EPK   Doc 383-1   Filed 01/22/26   Page 510 of 976

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

Case 22-15627-EPK   Doc 952   Filed 08/12/25   Page 3 of 9

Through the Adversary Proceeding and various motions for turnover, all parties claiming interests in the vehicles were before the Court. Several parties objected to the trustee's sale motion. *E.g.*, Dkt. Nos. 623, 630, 631, 632, 638, 639, 640, 641, 642, 644, 676, 678. After an initial hearing, the Court granted the sale motion in part, authorizing the trustee to retain the auctioneer, and set further hearings to consider how the net sale proceeds would be distributed and other concerns. Dkt. No. 634.

Over a period of several weeks, the trustee negotiated with all parties claiming liens on and interests in the vehicles. The trustee swiftly concluded terms acceptable to those parties and favorable to the bankruptcy estate. Only six weeks after his appointment, at the final hearing on the sale motion, the trustee presented an order approving the auction sale of the vehicles. Dkt. No. 694 (the "Sale Order").

Among other things, the Court authorized the trustee to sell certain vehicles free and clear of liens pursuant to 11 U.S.C. § 363(f). The trustee retained an agreed portion of the sale proceeds for the benefit of creditors. The remaining net proceeds from the sale were held pending adjudication by another court having competent jurisdiction or agreement of the parties claiming liens on or interests in the vehicles. The Sale Order included the following provision (the "Limiting Language"): "Only (i) parties to the Adversary Proceeding Complaint, or (ii) parties that have appeared in the main bankruptcy case and asserted an interest in the Vehicles, may make a claim against the Net Proceeds." The Sale Order was later clarified but its primary terms were not changed. Dkt. No. 738.

After the auction sale, the trustee sought direction on where to deposit the proceeds from the sale less expenses and less the funds to be retained by the trustee for the benefit of creditors (the "Net Proceeds"). Dkt. No. 727. The trustee asked the Court to permit the Net Proceeds to be deposited in the registry of the Court "pending adjudication by a court of competent jurisdiction as to the validity, priority and extent of property interests asserted in

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

the Net Proceeds or consensual resolution as to their disposition." The Court granted that request and the Net Proceeds were accepted into the Court's registry. Dkt. No. 749. The Court later clarified that the Net Proceeds were subject to the Court's jurisdiction "for purposes of any disputes that may arise out of the Auction or its conduct, the condition of the Vehicles, or out of any alleged actions or omissions by the Trustee's Court-approved Auctioneer." Dkt. No. 807. No such claims were presented. Other than for this limited purpose, the trustee waived any interest in the Net Proceeds and the Court approved that waiver. Dkt. Nos. 694 and 738.

The trustee filed a final account on May 15, 2025. Dkt. No. 909. This case is fully administered. The only reason this case has not been closed is that the Net Proceeds remain in the registry of the Court. Because of this, the Court *sua sponte* entered its *Order to Show Cause Why Certain Funds Held by the Clerk Should Not Escheat to the United States Treasury and Setting Hearing Thereon*, Dkt. No. 911 (the "Order to Show Cause"). In the Order to Show Cause, the Court paraphrased the Limiting Language, making it clear that only certain parties may seek release of the Net Proceeds. The Court set a hearing on more than two months' notice and directed such parties to attend the hearing and present an agreement with regard to release of the Net Proceeds. The Court is aware that the relevant parties are litigating their disputes in another forum. The Court intended to give those parties sufficient time to provide joint instructions for release of the Net Proceeds according to their agreement, or to arrange for the funds to be lodged with an escrow agent or placed in the registry of the court where their litigation is pending.

In the Order to Show Cause, the Court did not invite motions from parties claiming an interest in the Net Proceeds. The Court made it clear that it did not intend to rule on any issue relating to any party's right in the Net Proceeds. In spite of this, a flurry of motions were filed including the Joint Motion now before the Court. Dkt. Nos. 925, 931, 938. The

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

Court initially denied all of those motions. Dkt. No. 941. However, the Court later vacated the denial of the Joint Motion and reset the Joint Motion for hearing. Dkt. Nos. 944, 945.

The following parties filed the Joint Motion: Franklin Capital Funding, LLC, Franklin Capital Group, LLC, Franklin Capital Management, LLC, FVP Opportunity Fund III, LP, FVP Investments, LLC, FVP Servicing, LLC, and Hi Bar Capital, LLC (together, the "Movants"). They ask the Court to direct the Clerk to release the Net Proceeds from the registry of the Court and disburse them to counsel for the FVP entities, Schwartz Breslin PLLC, "there to be further disbursed in accordance with the agreement between the Movants." In other words, the Movants have reached an agreement regarding application of the Net Proceeds among themselves, which they intend to effectuate if the Net Proceeds are released.

No one disputes that the Movants are, in name, the sole remaining parties that may seek release of the Net Proceeds consistent with the Limiting Language in the Sale Order. However, in his response to the Joint Motion, Mr. Lubin argues that he is the assignee of all claims of Hi Bar to the Net Proceeds. Mr. Lubin objects to release of the Net Proceeds as requested in the Joint Motion as he believes the Movants will not honor the assignment of Hi Bar's claims to him. Mr. Lubin does not object to release of the Net Proceeds to the trust account of FVP's counsel, but only if the funds are held subject to entry of an order of another court having competent jurisdiction.

In support of his argument that he holds Hi Bar's claims, Mr. Lubin points to two documents: a Common Interest and Joint Litigation Agreement dated January 28, 2022 between Spin Capital, LLC and Hi Bar (the "Common Interest Agreement"); and an Absolute Assignment of Interests and Rights dated March 17, 2025 between Spin and Mr. Lubin (the

Case 23-01132-EPK   Doc 383-1   Filed 01/22/26   Page 513 of 976

"Absolute Assignment"). Dkt. Nos. 950-1 and 950-5.[1] In the Common Interest Agreement, Hi Bar assigned a number of claims to Spin including, specifically, Hi Bar's claims in this bankruptcy case and in the Adversary Proceeding, subject to termination and re-assignment back to Hi Bar. In the Absolute Assignment, Spin assigned all of its rights obtained under the Common Interest Agreement to Mr. Lubin.

At all relevant times during this bankruptcy case Mr. Lubin controlled Spin. Indeed, Mr. Lubin signed the Absolute Assignment as "Manager and Managing Member" of Spin. In his response to the Joint Motion, Mr. Lubin acknowledges his virtual identity with Spin for purposes of this case. Mr. Lubin states that, consistent with the Common Interest Agreement, he hired, paid, and directed the attorneys for Hi Bar who participated in this bankruptcy case and in the Adversary Proceeding. Mr. Lubin had full knowledge of the Adversary Proceeding and this bankruptcy case, including the sale process, through counsel that he controlled. In a prior order, the Court found that Mr. Lubin had notice of the sale motion, the final hearing on the sale motion, and the Sale Order. Dkt. No. 944. Mr. Lubin's response here supports those findings.

The Court previously stated that because Mr. Lubin is bound by all terms of the Sale Order including the Limiting Language, which does not reference him personally, that Mr. Lubin is not permitted to seek any relief in connection with release of the Net Proceeds. Dkt. No. 944. Based on the information now before the Court, the Court's view was incorrect.

Mr. Lubin claims to hold the rights of Hi Bar with regard to the Net Proceeds. He points to the Common Interest Agreement as the basis for his position. Hi Bar argues that

---

[1] Mr. Lubin also references an Authority to Represent executed August 1, 2023 among Hi Bar, individuals associated with Hi Bar, Mr. Lubin, and Leto Law Firm. Dkt. No. 950-3. That document relates to litigation in another bankruptcy case pending before this Court and does not appear to have anything to do with this bankruptcy case or the Adversary Proceeding. In any case, it is not necessary for the Court to address the Authority to Represent in this Order.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007    RECEIVED NYSCEF: 01/19/2026

the Common Interest Agreement was terminated by written notice on April 3, 2024[2] and, in addition, that Mr. Lubin's refusal to pay legal fees was a breach of the agreement supporting termination. *See* Dkt. 925-1 at 74. Hi Bar thus claims that Mr. Lubin has no right to object to the Joint Motion. Mr. Lubin argues that the written notice was not effective to terminate the Common Interest Agreement according to its terms, and that his refusal to pay legal fees did not result in a breach of the entire agreement. Mr. Lubin argues that Hi Bar has no right to join in the Joint Motion.

As the Court has previously ruled, at this time the Court has no subject matter jurisdiction over any substantive disputes relating to the Net Proceeds. The Court retained jurisdiction over the Net Proceeds only to the extent of any claims relating to or arising from the sale process. No such claims were presented. Beyond that, the bankruptcy estate waived any interest in the Net Proceeds. The Net Proceeds remain in the registry of this Court solely as an accommodation to parties who are litigating their relative rights in another forum. The outcome of the disputes among the Movants and Mr. Lubin will have no impact on administration of this fully administered chapter 7 case. Even under the most liberal component of this Court's subject matter jurisdiction, meaning "related to" jurisdiction under 28 U.S.C. § 1334(b), this Court lacks the power to rule on these disputes. *See British Am. Ins. Co. Ltd. v. Fullerton (In re British Am. Ins. Co. Ltd.)*, 600 B.R. 890, 893-897 (Bankr. S.D. Fla. 2019) (discussing federal bankruptcy jurisdiction generally). This Court cannot and will not decide whether the Common Interest Agreement was terminated and, ultimately, whether Mr. Lubin holds the rights of Hi Bar relating to the Net Proceeds.

This Court of course has jurisdiction to interpret and enforce its own Sale Order. But the question whether Mr. Lubin is the ultimate assignee of Hi Bar is not one that may be

---

[2] This date is well after the entry of the Sale Order. Even under Hi Bar's view, Spin held Hi Bar's rights to the Net Proceeds at the time the Court entered the Sale Order.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007
RECEIVED NYSCEF: 01/19/2026

determined by the Court merely enforcing the Sale Order. If Mr. Lubin is correct, at the time the Court entered the Sale Order Spin controlled Hi Bar's claims in this matter and Mr. Lubin controlled Spin. In Mr. Lubin's view, immediately upon entry of the Sale Order, Spin could direct counsel for Hi Bar to join in asking this Court to release the Net Proceeds.[3] Mr. Lubin alleges that Spin later assigned its rights to him personally. If this is true, then Mr. Lubin is the correct party to join with FVP and Franklin in the Joint Motion, not Hi Bar. Hi Bar argues that Mr. Lubin has no such right. The Court cannot resolve this dispute merely by considering the history of this bankruptcy case and the Sale Order.

Even if this Court had subject matter jurisdiction over the present dispute between Hi Bar and Mr. Lubin, the Court would abstain from the matter under 28 U.S.C. § 1334(c). Particularly in light of the procedural context of this case, which is fully administered, comity requires that this Court give way to the state court where these questions are more appropriately addressed.

The Movants are engaged in litigation before the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida regarding their relative rights to the Net Proceeds. Case No. CACE-22-005125 (the "Broward Action"). Based on a transcript of a recent hearing, Mr. Lubin is now active in the Broward Action. Dkt. No. 950-2. It appears that the court in the Broward Action has jurisdiction over the relevant disputes and can

---

[3] Contrary to the argument presented in the reply [Dkt. No. 951], neither Spin nor Mr. Lubin were required to oppose the relief granted in the Sale Order. Hi Bar's rights in the Net Proceeds were preserved by the Sale Order and the Limiting Language. According to Mr. Lubin, Spin held an assignment of Hi Bar's claims and had the ability to direct Hi Bar's actions, so Spin did not waive any rights by not participating in the sale hearings. Spin did not assign its rights in Hi Bar's claims to Mr. Lubin until much later, so Mr. Lubin had no need to participate individually at the time of the sale. For the same reason, the limitation in paragraph D of the Sale Order regarding Mr. Lubin's ability to seek relief relating to the Net Proceeds cannot prevent Mr. Lubin from later acquiring the rights of Hi Bar via Spin. Mr. Lubin is not now seeking to modify the Sale Order. If Mr. Lubin is correct, then he has the benefit of the Sale Order and the Limiting Language, as he holds the rights of Hi Bar.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM          INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                        RECEIVED NYSCEF: 01/19/2026

determine which of the Movants and Mr. Lubin have rights in the Net Proceeds. The Court encourages the parties to seek appropriate rulings in the Broward Action.

The Court will hold the hearing on the Order to Show Cause at 10:00 a.m. on August 27, 2025 as originally scheduled, and the Order to Show Cause remains in full force and effect. The parties are strongly discouraged from filing additional motions and responses.

In light of the foregoing, the Court **ORDERS and ADJUDGES** as follows:

1.      The *Expedited Joint Motion (I) To Enforce Sale Order and (II) To Order Distribution of Auction Proceeds to Counsel for the FVP Parties* [Dkt. No. 931] is DENIED.

2.      This Court cannot and will not rule on the dispute between Avrumi Lubin and Hi Bar Capital, LLC regarding their relative rights in the Net Proceeds held in the registry of this Court. The parties are encouraged to obtain a ruling from another court having competent jurisdiction or to present an agreement and a form of agreed order as directed in the Order to Show Cause.

3.      The hearing on the *Expedited Joint Motion (I) To Enforce Sale Order and (II) To Order Distribution of Auction Proceeds to Counsel for the FVP Parties* [Dkt. No. 931] set for August 13, 2025 is CANCELED.

###

Copy Furnished To:

Jerrell Breslin, Esq.

*Jerrell Breslin, Esq. is directed to serve a conformed copy of this Order on all appropriate parties and file a certificate of service.*

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM          INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                        RECEIVED NYSCEF: 01/19/2026

Case Number: CACE-22-005125 Division: 21

Filing # 147395011 E-Filed 04/10/2022 10:53:18 PM

**EXHIBIT "E"**

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO.: _____

FVP OPPORTUNITY FUND III, LP, a Delaware limited partnership; FVP INVESTMENTS, LLC, a Delaware limited liability company; and FVP SERVICING, LLC, a Delaware limited liability company,

    Plaintiffs,

vs.

KARMA OF BROWARD, INC., a Florida corporation; KARMA OF PALM BEACH, INC., a Florida corporation; SCOTT ZANKL, an individual; KRISTEN ZANKL, an individual; MOSHE FARACHE, an individual; AUTO WHOLESALE OF BOCA, LLC, a Florida limited liability company; MMS ULTIMATE SERVICES, INC., a Florida corporation; EXCELL AUTO SPORT AND SERVICE, INC., a Florida corporation; and EXCELL AUTO FINANCE, LLC, a Florida limited liability company,

    Defendants.

_____/

***EMERGENCY EX-PARTE MOTION
AND INCORPORATED MEMORANDUM OF LAW***

**VERIFIED MOTION FOR APPOINTMENT OF RECEIVER, TEMPORARY
RESTRAINING ORDER AND INJUNCTION SUPPORTED BY VERIFIED PLEADING
(F.S. § 726.108)**

COME NOW the Plaintiffs, FVP Opportunity Fund III, LP, a Delaware limited partnership (the "FVP Fund"), FVP Investments LLC, a Delaware limited liability company ("FVP Investments"), and FVP Servicing, LLC, a Delaware limited liability company ("FVP Servicing") (collectively, the "Plaintiffs"), by and through their undersigned counsel, and hereby move for the appointment of a receiver and for the issuance of a temporary injunction against the Defendants,

Page 1 of 20

*** FILED: BROWARD COUNTY, FL BRENDA D. FORMAN, CLERK 04/10/2022 10:53:15 PM.****

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007 RECEIVED NYSCEF: 01/19/2026

Karma of Broward, Inc., a Florida corporation ("Karma of Broward"); Karma of Palm Beach, Inc., a Florida corporation ("Karma of Palm Beach"); Scott Zankl, an individual ("Scott Zankl"); Kristen Zankl, an individual ("Kristen Zankl") (collectively, Scott Zankl and Kristen Zankl are the "Zankl's"); Moshe Farache, an individual ("Farache"); Auto Wholesale of Boca, LLC, a Florida limited liability company ("AWB"); MMS Ultimate Services, Inc., a Florida corporation ("MMS"); Excell Auto Sport and Service, Inc., a Florida corporation ("Excell Auto"); and Excell Auto Finance, LLC, a Florida limited liability company ("Excell Finance") (collectively, the "Defendants"), and would state as follows:

## VERIFIED STATEMENT OF FACTS

### INCORPORATION AND ADOPTION OF EXHIBITS BY REFERENCE

Pursuant to Fla. R. Civ. P. 1.130(b), the Plaintiffs adopt and incorporate **Exhibits A through P** (collectively, the "Exhibits") filed of record by the Plaintiffs in this action contemporaneously with and as part of the operative Complaint in and to this Motion as if attached hereto for all purposes. All references to the Exhibits shall be the same as those made in the Plaintiffs' Complaint.

### Introduction

1. This Motion is made relative to the underlying action for injunctive and monetary relief brought on behalf of the Plaintiffs against the Defendants, who have engaged in illegal acts, including, *inter alia*, fraud, civil conspiracy, and fraudulent transfer, and who induced the Plaintiffs to loan $7,500,000.00 to the Zankl's companies – Karma of Broward and Karma of Palm Beach (collectively, the "Zankl's Companies"). The Plaintiffs made the loan because it was fully secured by the inventory and assets of the companies and any inventory purchased by the loan proceeds, as represented by the Zankl's and as acknowledged by Farache's company as landlord and personally guaranteed by the Zankl's.

2. The Plaintiffs loaned the Zankl's companies $7,500,000.00 pursuant to those certain Loan Documents on January 26, 2022, which was fully funded by February 18, 2022 and, incredibly, by April 1, 2022, the money and all the Plaintiffs' collateral that was intended to secure it was gone. It is now objectively apparent that the Zankl's and their co-conspirator, Farache, engaged in an outright and bold scheme to defraud the Plaintiffs and attempt to convert the funds

Page 2 of 20

received from the Plaintiffs into high priced automobiles – which at all times remained the collateral of the Plaintiffs – only to transfer the Plaintiffs' collateral automobiles outright to Farache and his companies in satisfaction of alleged obligations arising from a fabricated or otherwise hidden antecedent debt.

3. To attempt to explain why, on April 1, 2022, the Zankl's would hand over in excess of $7 million in automobiles to Farache in exchange for no money, the Zankl's have now claimed that they gave the collateral automobiles to Farache because he threatened to kill Scott Zankl (specifically, to make him "disappear"). To support this version of the events, the Zankl's then, on April 8, 2022, a full week after Farache took the Plaintiffs' collateral automobiles, filed a police report and reported that the Plaintiffs' collateral automobiles taken by Farache on April 1, 2022 were, in fact, *stolen* by Farache. *Boca Raton Police Department Report Case No.: 22-4685.*

4. Farache, on the other hand, through a ham handed and patently false lawsuit filed on April 8, 2022 in the Circuit Court of Palm Beach County, styled *Moshe Farache and Auto Wholesale of Boca, Inc., v Scott Zankl, et al.*, Case No. *Not Yet Assigned* (attached to the Complaint as **Exhibit N** and incorporated herein), has asserted in that lawsuit that Scott Zankl and Kristen Zankl owed him millions of dollars and that he is entitled to foreclose on the Plaintiffs' collateral automobiles – which he already took on April 1, 2022 – as collateral for his long overdue debt.

5. Interestingly, and perjuriously, the lawsuit states *under oath* that the "remaining Financed Inventory (collateral automobiles) are presently located at EAG's principal place of business: 1001 Clint Moore Road, Suite 101, Boca Raton, FL 33487." *See* Compl., **Exhibit N** at ¶ 107. Farache, as stated, already took all of those collateral automobiles (which are the Plaintiffs' collateral and not Farache's) on April 1, 2022, and they were already in his possession when that lawsuit was sworn to and filed, and remain in his possession. Therefore, the heart of the Farache "Verified Complaint" is false and a fraud upon the Court.

6. The underlying lawsuit and this Motion are brought by the Plaintiffs, seeking to restore lawful order and common sense, and to call a halt to the patent illegality and outrageous fraud of the past 30 days and have this Honorable Court appoint a receiver to collect and safeguard the assets which were purchased with the Plaintiffs' $7.5 million dollars that they loaned to the Zankl's Companies only to then be *de facto* stolen by the Zankl's and Farache.

7. The breach of the loan documents affixed hereto by the Zankl's and their

Page 3 of 20

Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 520 of 976

Companies is self-evident, and the Plaintiffs are indisputably entitled to the remedies sought in this Motion. More critically, this is an extraordinary case of patent fraud and illegal conduct that requires the intervention of the judicial system on an emergency temporary basis and further on a permanent basis.

A.  THE LOAN AND LOAN DOCUMENTS.

8.  The Zankl's have been engaged in the automobile sale industry for many years and are the beneficial owners of Karma of Broward and Karma of Palm Beach.

9.  Under the guise of seeking to grow these businesses, associated with a promising new car brand in Karma, a Chinese producer of luxury electric vehicles, the Zankl's sought from the Plaintiffs a substantial loan in the amount of Seven Million Five Hundred Thousand and No/100 Dollars ($7,500,000.00) (the "Loan") "for purposes of purchasing exotic car inventory for Palm Beach and Broward." Compl., **Exhibit B** at 1.

10.  As and part of the due diligence subsequent to this loan application, the Plaintiffs were provided with Scott Zankl and Kristen Zankl's tax returns and signed personal financial statements, Compl., **Exhibit O**, and the Plaintiffs made sure and confirmed that no security interests hypothecated any of the Plaintiffs' anticipated collateral, which would be comprised of all of the assets of Karma of Broward and Karma of Palm Beach. *See* Compl., **Exhibit A** (providing a UCC report dated January 11, 2022).

11.  Relying on the financial representations of the Zankl's as true, the Plaintiffs entered into, *inter alia* Loan Documents, a Loan Agreement with Karma of Broward and Karma of Palm Beach through its owners, the Zankl's. *See* Compl., **Exhibit B** (affixing the Loan Agreement) [hereinafter, the "Loan Agreement"].

12.  Contemporaneous with the Loan Agreement, Karma of Broward and Karma of Palm Beach executed a Note with FVP Investments and FVP Servicing in the principal amount of Three Million and No/100 Dollars ($3,000,000.00). *See* Compl., **Exhibit C** (attaching the FVP Investments Note) [hereinafter, the "FVP Investments Note"].

13.  Contemporaneous with the Loan Agreement, Karma of Broward and Karma of Palm Beach also executed a Note with the FVP Fund and FVP Servicing in the principal amount of Four Million Five Hundred Thousand and No/100 Dollars ($4,500,000.00). *See* Compl., **Exhibit**

Page 4 of 20

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM          INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                                                                RECEIVED NYSCEF: 01/19/2026

**D** (providing the FVP Fund Note) [hereinafter, the "FVP Fund Note," and, along with the FVP Investments Note, collectively, the "Notes"].

14.     Contemporaneous with the Loan Agreement, Scott Zankl and Kristen Zankl entered into a Personal Guaranty Agreement personally guaranteeing all sums due under the Loan Agreement. *See* Compl., **Exhibit E** (supplying the Guaranty Agreement) [hereinafter, the "Guaranty Agreement"].

15.     Contemporaneous with the Loan Agreement, Karma of Broward and Karma of Palm Beach entered into a Security Agreement with FVP Servicing, as administrative agent for FVP Investments and the FVP Fund, granting a continuing security interest in certain Collateral, as the term Collateral is defined therein. *See* Compl., **Exhibit F** (attaching the Security Agreement) [hereinafter, the "Security Agreement"].

16.     Scott Zankl, on behalf of both Karma of Broward and Karma of Palm Beach, at Section 2.2 of the Security Agreement, represented that Karma of Broward and Karma of Palm Beach "own or have the right to possess and use the Collateral and [have] full . . . authority, as applicable, to grant a security interest in the Collateral." *Id.* at § 2.2.

17.     The Security Agreement makes clear, at Schedule 2.1, that the Collateral is located at Karma of Broward and at Karma of Palm Beach. *See id.* at Schedule 2.1. Indeed, Scott Zankl, on behalf of his companies, asserted that "[t]he Collateral is free and clear of all Liens[,]" *id.* at § 2.12, and that "[n]o authorization, approval or other action by . . . any Official Body or other Person is required[,]" *id.* at § 2.8; and thus the "Security Agreement create[d] a valid security interest in the Collateral and the proceeds thereof securing the payment and performance in full of the Secured Obligations." *Id.* at § 2.7.

18.     Contemporaneous with the Loan Agreement, Scott Zankl and Kristen Zankl also entered into a Pledge and Security Agreement with the Plaintiffs. *See* Compl., **Exhibit G** (attaching the Pledge and Security Agreement) [hereinafter, the "Pledge Agreement"]. In the Pledge Agreement, the Zankl's pledged as collateral their stock and membership interests in the following entities:

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007
RECEIVED NYSCEF: 01/19/2026

| Pledgor | Pledged Entity | Description of Equity Interests Owned | Percentage of Issued Equity Interests Owned |
|---|---|---|---|
| Scott Zankl | Karma of Broward, Inc. | Stock | 50% |
| | Karma of Palm Beach, Inc. | Stock | 50% |
| | Excell Auto Sport and Service, Inc. | Stock | 23% |
| | Excell Auto Finance, LLC | Membership Interests | 25% |
| Kristen Zankl | Karma of Broward, Inc. | Stock | 50% |
| | Karma of Palm Beach, Inc. | Stock | 50% |
| | Excell Auto Sport and Service, Inc. | Stock | 0% |
| | Excell Auto Finance, LLC | Membership Interests | 0% |

19.    Contemporaneous with the Loan Agreement, the Plaintiffs filed a UCC financing statement recording their security interests in the Karma of Broward and Karma of Palm Beach collateral under the Loan Documents. *See* Compl., **Exhibit H**. This Financing Statement secured as collateral: "ALL ASSETS OF DEBTORS NOW OWNED OR HEREAFTER ACQUIRED AND WHEREVER LOCATED."

20.    Contemporaneous with the Loan Agreement, the Plaintiffs filed a UCC financing statement recording their security interests in the Zankl's pledged collateral under the Loan Documents. *See* Compl., **Exhibit I**. This Financing Statement secured as collateral:

ALL OF EACH DEBTOR'S RIGHT, TITLE AND INTEREST IN AND TO THE FOLLOWING, WHETHER NOW OWNED OR HEREAFTER ACQUIRED AND WHEREVER LOCATED: (A) ALL OF THE MEMBERSHIP INTERESTS, STOCK, PARTNERSHIP INTEREST OR OTHER OWNERSHIP INTERESTS OF ANY TYPE OR NATURE ("EQUITY INTERESTS") OF EITHER DEBTOR IN EACH OF KARMA OF BROWARD, INC., KARMA OF PALM BEACH, INC., EXCELL AUTO SPORT AND SERVICE, INC., AND EXCELL AUTO FINANCE, LLC (EACH, A "PLEDGED ENTITY" AND, COLLECTIVELY, THE "PLEDGED ENTITIES") AND ALL OTHER ADDITIONAL EQUITY INTERESTS IN THE PLEDGED ENTITIES AND OTHER RIGHTS SUBSEQUENTLY ACQUIRED BY EITHER DEBTOR IN RESPECT OF SUCH EQUITY INTERESTS (WHETHER IN CONNECTION WITH ANY CAPITAL INCREASE, RECAPITALIZATION, RECLASSIFICATION OR REORGANIZATION OF THE PLEDGED ENTITY OR OTHERWISE); (B) ALL CERTIFICATES, INSTRUMENTS OR OTHER WRITINGS REPRESENTING OR EVIDENCING SUCH INTEREST AND ALL ACCOUNTS ARISING OUT

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

OF, OR IN CONNECTION WITH, SUCH INTERESTS; (C) ALL RIGHTS, PRIVILEGES, GENERAL INTANGIBLES, PAYMENT INTANGIBLES, VOTING RIGHTS, AUTHORITY AND POWER ARISING FROM SUCH INTERESTS; (D) ANY AND ALL MONEYS OR PROPERTY DUE AND TO BECOME DUE TO EITHER DEBTOR NOW OR IN THE FUTURE IN RESPECT OF SUCH EQUITY INTERESTS, OR TO WHICH EITHER DEBTOR MAY NOW OR IN THE FUTURE BE ENTITLED IN ITS CAPACITY AS A MEMBER OR OWNER OF ANY PLEDGED ENTITY, WHETHER BY WAY OF A DIVIDEND, DISTRIBUTION, RETURN OF CAPITAL OR OTHERWISE; (E) TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH DEBTOR'S RIGHT, IF ANY, IN EACH PLEDGED ENTITY PURSUANT TO ANY ORGANIZATIONAL DOCUMENT, INCLUDING ANY OPERATING AGREEMENT; (F) ALL OTHER CLAIMS WHICH DEBTOR HAS OR MAY IN THE FUTURE ACQUIRE IN ITS CAPACITY AS A MEMBER OR OWNER OF ANY PLEDGED ENTITY AND ITS PROPERTY; AND (G) TO THE EXTENT NOT OTHERWISE INCLUDED, ALL PRODUCTS AND PROCEEDS OF, AND SUBSTITUTIONS OR REPLACEMENTS FOR, ANY OR ALL OF THE FOREGOING.

21.    Contemporaneous with the Loan Agreement, the Plaintiffs entered into an Intercreditor Agreement with an existing lender. *See* Compl., **Exhibit J**.

22.    All of the aforementioned various documents (collectively, the "Loan Documents") were executed and came into full force and effect on or about January 26, 2022 upon their execution and the full funding of the Loan on February 18, 2022 and receipt by Karma of Broward and Karma of Palm Beach of the Loan proceeds in the aggregate principal amount of Seven Million Five Hundred Thousand and No/100 Dollars ($7,500,000.00).

B.    FARACHE'S PARTICIPATION IN THE DUE DILIGENCE ASSURANCES WHICH INDUCED THE PLAINTIFFS' APPROVAL OF THE LOAN AND THE KNOWLEDGE OF FARACHE OF THE PLAINTIFFS' SECURITY INTERESTS IN THE COLLATERAL AUTOMOBILES.

23.    Defendant Farache has a long relationship with the Zankl's. Defendant Farache is the President of Excell Auto and Defendant Scott Zankl is the Vice President of Defendant Excell Auto. Defendants Farache and Scott Zankl have been co-owners of Defendant Excell Auto since its formation in 2016. *See* **Exhibit P**. Further, Farache and his wife, Lisa Farache, are the owners of 1001 Clint Moore, LLC (the "Landlord"), which company serves as the landlord of Karma of Palm Beach.

24.    Farache and Lisa Farache were fully aware of the Plaintiffs' due diligence inquiries

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

and security interest requirements, and participated in, and agreed to, the Plaintiffs' requirements of the Landlord entity as a condition of the Plaintiffs agreeing to enter into the loan transaction. *See* Compl., **Exhibit K** (affixing a letter from Lisa Farache, as manager of 1001 Clint Moore, LLC, which directs further communication regarding the matter to, *inter alia*, Farache) [hereinafter, the "Landlord's Waiver and Consent"].

25.     Specifically, Lisa Farache, as the Landlord's manager, with the knowledge of Defendant Farache, was requested by the Plaintiffs to, and did, execute a landlord's waiver and consent expressly regarding the loan and entitled: "Re: Loan to Karma of Palm Beach, Inc./Karma of Broward, Inc.[,]" Compl., **Exhibit K** [hereinafter, the "Landlord's Waiver and Consent"], in which:

a.   Farache's Landlord company declares its understanding that Karma of Broward and Karma of Palm Beach are attempting to obtain funding from the Plaintiffs, and that, as a condition of the Loan, the Plaintiffs require Farache's Landlord company's agreement that Farache's Landlord company will allow FVP Servicing access to Karma of Palm Beach in the event of a default of the subject lease for the purposes of allowing the Plaintiffs to retrieve their collateral, thereby establishing Farache's understanding that the Plaintiffs, not Farache, had a first right to their collateral;

b.   Farache's Landlord company agreed to allow the Plaintiffs access to the premises to retrieve their collateral under circumstances separate and apart from a default of the subject lease; and, finally,

c.   Farache's Landlord company declares that neither it, nor any of its members, *"will in any way either directly, or indirectly, receive any consideration by virtue of the [L]oan . . . ." Id.* (emphasis added).

C.   THE ZANKL'S AND FARACHE CONSPIRE TO DEFRAUD, AND DEFRAUD, THE PLAINTIFFS.

26.     Frank O'Donnell of Biltmore Consultants ("O'Donnell") is an agent of the Defendant Karma of Broward and Karma of Palm Beach and assumed the obligation to the Plaintiffs to confirm inventory, who, together with his colleagues, monitored the inventory of Karma of Broward and Karma of Palm Beach.

27.     On April 7, 2022, at or around 11:39 A.M., O'Donnell was advised by a telephone

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                                      RECEIVED NYSCEF: 01/19/2026

call that, earlier that morning, Farache and his brothers removed thirty-five (35) automobiles off of the lot of Karma of Palm Beach, all of which represented the Plaintiffs' collateral for the Loan and all of which Farache was fully aware were the Plaintiffs' collateral for the Loan. It was only on April 10, 2022 that the Plaintiffs learned through the investigation of their private investigator that the vehicles were removed on April 1, 2022.

28.    O'Donnell was further advised on the call that Karma of Broward's show room was closed, and its doors chained up.

29.    O'Donnell, at this juncture, was unable to reach Scott Zankl despite his numerous attempts, but Scott Zankl finally texted O'Donnell: "Bunch of fucking rumors we will sit and talk when you get in" and "not true."

30.    Aside from communicating to the Plaintiffs that there was "a lot of stuff" going on and that he would call the Plaintiffs as soon as he was finished meeting with his attorneys, Scott Zankl has refused all of the Plaintiffs' inquiries and requests concerning their collateral.

31.    After repeated attempts to communicate went unanswered, and with the Plaintiffs' representatives having observed numerous of their collateral automobiles missing from the lots of both Karma of Broward and Karma of Palm Beach, the Plaintiffs notified Scott Zankl, Kristen Zankl, Karma of Broward and Karma of Palm Beach of their default, Compl., **Exhibit M,** and immediately retained a private investigator with federal law enforcement experience to attempt to determine what happened to Karma of Broward, Karma of Palm Beach, Scott Zankl and Kristen Zankl, and what happened to the Plaintiffs' collateral automobiles.

32.    The private investigator hired by the Plaintiffs, coincidentally, was personally known to the Zankl's. After contacting Scott Zankl and gaining his trust, Scott Zankl gave several statements to the investigator regarding the events that occurred with Defendant Farache and the Plaintiffs' collateral automobiles. Scott Zankl told the investigator:

a.  That the Zankl's were indebted to Farache from past loans which were years old.

b.  That Farache had threatened the life of Scott Zankl.

c.  That Farache had threatened to make Scott Zankl "disappear" if he did not turn over to him the Plaintiffs' collateral.

d.  That both Scott Zankl and Kristen Zankl were petrified of Farache.

Page 9 of 20

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

e.   That Farache had told them that he was associated with Israeli intelligence and criminal underworld figures, and that he was a very dangerous person.

f.   That Scott Zankl and Kristen Zankl believed the threats.

g.   That Farache sent thugs to the business location to intimidate the Zankl's.

h.   That Farache appeared at the Karma of Palm Beach location on April 1, 2022 and told the Zankl's that Scott Zankl would "disappear" if they did not give Farache every car and their titles and keys.

i.   That in extreme fear for their lives, the Zankl's turned over all of the collateral automobiles, keys and titles on the lot to Farache, and that Kristen Zankl signed a document produced by Farache, Compl., **Exhibit L**, which on its face indicates that it is "collateral" for the money owed to Farache by the Zankl's.

j.   That **Exhibit L** of the Complaint was signed under direct threat to the life of Scott Zankl.

k.   That the Zankl's considered that Farache stole the collateral automobiles by threat.

l.   That the Zankl's were afraid to report the matter to the police because they feared that Farache would get revenge and that the police could not protect them.

m.   That neither Scott Zankl or Kristen Zankl had any of the $7.5 million loaned to them by the Plaintiffs eight (8) weeks prior, and that Farache now had all of the vehicles which were purchased with the Plaintiffs' loaned funds.

n.   That on April 8, 2022, the Zankl's reported to the police that Farache had, in fact, stolen the vehicles the week prior. *Boca Raton Police Department – Report Case No.: 22-4685.*

33.   On April 9, 2022 at 3:00 P.M., undersigned counsel emailed counsel for Defendant Farache and demanded the return of the Plaintiffs' collateral, an accounting and the location of the vehicles.

34.   On April 9, 2022, at 7:30 pm, undersigned counsel was advised by the Plaintiffs' investigator that Defendant Farache appeared at the location of Karma of Broward and attempted to take possession of even more vehicles illegally and without court process. The police were called

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

and Defendant Farache left the facility.

35.    The facts, by logical deduction, establish that either: (a) due to the long history of the relationship between Scott Zankl, Kristen Zankl and Farache, and co-ownership of at least one company – Defendant Excell Auto, **Exhibit P**, they jointly conspired and committed a fraud by inducing the Plaintiffs into making the Loan when their intention was to use its proceeds to satisfy the Zankl's obligations to Farache and his companies, as is alleged in this Complaint; or, alternatively, (b) Farache actually threatened Scott Zankl and Kristen Zankl with physical harm and death, directly resulting in them giving Farache title to the Plaintiffs' collateral by extortion.

36.    Under any view of the facts, there is rampant lawlessness afoot with civil fraud at a minimum and felonious extortion at a maximum, and the immediate intervention of this Honorable Court is required to protect the very substantial collateral assets of the Plaintiffs.

37.    All conditions precedent have occurred or have been waived

38.    Should this court not act, the Plaintiffs will suffer immediate and irreparable harm.

39.    The Plaintiffs have a clear legal right to the possession and safeguarding of their collateral assets.

40.    The Plaintiffs have no adequate remedy at law as the collateral assets and collateral are unique and the Defendants have no ability to pay money damages, and the collateral assets are the only assets which will allow the Plaintiffs to recoup some or all of their losses.

41.    The public interest will not be disserved by the issuance of a temporary injunction and it will be served since the injunction will restore law and order in the face of fraud and lawlessness.

42.    The injunction will prejudice no party and will simply preserve the *status quo* prior to the Plaintiffs' collateral either being defrauded by Scott Zankl, Kristen Zankl and Farache jointly; or outright stolen by Farache.

43.    The Plaintiffs are prepared to post a reasonable bond.

44.    This matter must be dealt with on an ex-parte emergency basis as Defendant Farache has already secreted away many of the Plaintiffs' collateral vehicles and has attempted to take even more vehicles after undersigned counsel demanded return of the vehicles already in the

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

possession of Farache from Farache's attorney.

WHEREFORE, it is requested that this Honorable Court order the following on an *Ex-Parte* Emergency basis:

A. Appoint a Receiver to collect and safeguard the Plaintiffs' collateral.

B. Enter a temporary injunction ordering the Plaintiffs into sole control of their collateral.

C. Enter a temporary injunction ordering Scott Zankl, Kristen Zankl and Farache, and the corporate Defendants, to turn over possession and control of the Plaintiffs' collateral to a receiver, including, without limitation, the titles, keys or other papers or things of any description;

D. Enter a temporary injunction ordering Scott Zankl, Kristen Zankl and Farache, and the corporate Defendants, to turn over to a receiver any and all funds received from selling, assigning, leasing, hypothecating or otherwise transferring an interest, in whole or in part, in the Plaintiffs' collateral;

E. Enter a temporary injunction ordering Scott Zankl, Kristen Zankl and Farache, and the corporate Defendants, to cease and desist from taking all direct or indirect further actions regarding or relating to the Plaintiffs' collateral.

F. Restrain Scott Zankl, Kristen Zankl and Farache, and the corporate Defendants, from destroying, altering, secreting, transferring, selling, assigning, leasing, hypothecating or otherwise transferring an interest, in whole or in part, in the Plaintiffs' collateral.

G. Enter a temporary injunction ordering Scott Zankl, Kristen Zankl and Farache, and the corporate Defendants, to account for all of the Plaintiffs' collateral automobiles and to immediately notify the Plaintiffs and their counsel of any person or entity that has been the recipient of any interest in any of the Plaintiffs' collateral since January 26, 2022.

H. Order the Plaintiffs to post a reasonable bond.

I. Enter such other orders as may be needed to do equity and justice.

INTENTIONALLY LEFT BLANK; VERIFICATION PAGE TO FOLLOW

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

## VERIFICATION OF MOTION

I, Keith Lee, as an authorized officer of all of the Plaintiffs, hereby swear and affirm that the statements and representations made herein are true and correct.

*Keith Y Lee*

Keith Lee

STATE OF   Florida      )

COUNTY OF  Broward    )

The foregoing instrument was acknowledged before me on April 10th., 2022 by Keith Lee, in his authorized capacity for the FVP Fund, FVP Investments and FVP Servicing, who is personally known to me ( ) or (✓) who produced a New York driver's license as identification, and who did  take an oath and having acknowledged that each has executed this document for the purposes stated therein.

Notary Public  *Peta-Gaye Anderson*

Peta-Gaye Anderson

My commission expires   03/09/2025

PETA-GAYE ANDERSON
Notary Public  State of Florida
Commission # HH 102153
Expires on March 9, 2025

Type of ID produced: NY DRIVER LICENSE/MFA

Notarized online using audio-video communication

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

## INCORPORATED MEMORANDUM OF LAW

A.  **INJUNCTIVE RELIEF AND THE APPOINTMENT OF A RECEIVER UNDER FLORIDA'S UNIFORM FRAUDULENT TRANSFER ACT IS NECESSARY TO PREVENT FURTHER FRAUD AND PRESERVE THE PLAINTIFFS' LIENED COLLATERAL.**

    a.  **THERE IS A PRIMA FACIA CASE OF A FRAUDULENT TRANSFER.**

Florida courts have held that to find a prima facie case of fraud, a plaintiff must prove (1) there was a creditor to be defrauded; (2) there was a transfer of property that could have been applied to payment of the debt due; and (3) there was a debtor intending fraud. *See Branch Banking & Tr. Co. v. Hamilton Greens, LLC*, No. 11-80507-CIV, 2016 U.S. Dist. LEXIS 77087 (S.D. Fla. 2016).

Primarily, the Court should determine whether there was a creditor to be defrauded. A "creditor" is defined as "a person who has a claim." § 726.102, Fla. Stat. This definition is general, as a "claim" is defined as simply "a right to payment," irrespective of that right's liquidity, maturity, securitization, or contingency. *Id.* Additionally, the Court need not determine when the claim was started, as there is no obligation that the claim arise before the transfer was made.

Then, the Court must conclude whether there was a transfer of property that could have been applied to payment of the debt. Similar to the definition of "claim," the term "transfer" is given a very broad definition, as it includes every mode of getting rid of an asset, and it is not limited to direct transactions made by the debtor. *See Nationsbank, N.A. v. Coastal Utils., Inc.*, 814 So. 2d 1227, 1230 (Fla. 4th DCA 2002).

    b.  **THE APPOINTMENT OF A RECEIVER AND INJUNCTION IS APPROPRIATE UNDER FLORIDA'S UNIFORM FRAUDULENT TRANSFER ACT AND COMMON LAW.**

The ultimate purpose of a receivership is to enable the Court to accomplish, as far as practicable, complete justice between the parties before it, which includes the preservation and proper disposition of the subject of litigation. A receiver's primary purpose is to preserve the property's value for those to whom it is ultimately determined that the property belongs or has a legal right to it through a lien. *Warrington v. First Valley Bank*, 531 So. 2d 986 (Fla. 4th DCA 1988); *Decumbe v. Smith*, 143 Fla. 5, 196 So. 595 (1940).

In proceedings involving corporations, receiverships are intended primarily to protect the interests of the corporation's creditors rather than its officers or stockholders. *Christian*

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

*Broadcasting Network, Inc. v. Starr*, 401 So. 2d 1152 (Fla. 5th DCA 1981).

Here, the Plaintiffs seek a receiver to safeguard their collateral from further fraudulent transfers.

Under Section 726.108 of the Florida Statutes, this Court is expressly authorized to appoint a receiver and enjoin the Defendants to protect the Plaintiff under the FUTA.

**726.108 Remedies of creditors.—**

(1) In an action for relief against a transfer or obligation under ss. 726.101-726.112, a creditor, subject to the limitations in s. 726.109 may obtain:

(a) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;

(b) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with applicable law;

(c) **Subject to applicable principles of equity and in accordance with applicable rules of civil procedure:**

**1. An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;**

**2. Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or**

**3. Any other relief the circumstances may require.**

§ 726.108, Fla. Stat. (emphasis added).

The appointment of a receiver is required under the fraud pled in this case. *See, e.g., Fleming v. Otis Elevator Co.*, 107 Fla. 557, 145 So. 201 (1933) (Appointment of receiver for property fraudulently conveyed by debtor was properly granted as incidental to relief of vacating conveyance.); *Sallah ex rel. MRT LLC v. Worldwide Clearing LLC*, 860 F.Supp.2d 1329 (S.D. Fla. 2011) (Receiver appointed to take control of corporate entity had standing to pursue claims on behalf of entity's creditors under Florida's Uniform Fraudulent Transfer Act, against defendants alleged to have received excess payments in fraudulent scheme; receiver was not pursuing claims owned directly by the creditors, but claims that were owned by the corporate entity.); *Wiand v. Morgan*, 919 F.Supp.2d 1342, 1354-55 (M.D.Fla.2013) (Under Florida's Uniform Fraudulent Transfer Act, like other UFTA schemes, a receiver may proceed under two theories, actual fraud or constructive fraud).

An injunction is required under the fraud pled in this case. *See, e.g., Varveris v. Alberto M.*

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

*Carbonell, P.A.*, 773 So.2d 1275 (Fla. 3d DCA 2000) (A court may afford creditors a remedy such as an injunction before personal service has been effected.); *Lawhon v. Mason*, App. 2 Dist., 611 So.2d 1367 (1993) (Plaintiffs were required to file suit under the Uniform Fraudulent Transfer Act to be entitled to enjoin defendant from fraudulently transferring assets.); *Martinez v. Balbin*, 76 So.2d 488 (1954) (Under complaint which charged in effect that debtor had fraudulently conveyed his undivided share of a decedent's estate and, as a legal representative of such estate, was withdrawing portion of it without authority, complainant creditor would be entitled to injunction.); *Logan v. Slade*, 28 Fla. 699, 10 So. 25 (1891) (When a merchant, on the day after the execution of a mortgage of his goods in favor of some of his creditors, disposes of a large amount of them to other creditors, a court of equity is justified in enjoining him from selling said goods otherwise than for cash).

c.  JURISDICTION AND AUTHORITY - INJUNCTION.

The authority of this Court to issue a preliminary injunction is embodied in Fla. R. Civ. P. 1.610, Florida's Uniform Fraudulent Transfer Act and Florida common law as follows:

**Rule 1.610. - Injunctions**

**(a) Temporary Injunction.**

(1) A temporary injunction may be granted without written or oral notice to the adverse party only if:

(A) it appears from the specific facts shown by affidavit or verified pleading that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts that have been made to give notice and the reasons why notice should not be required.

(2) No evidence other than the affidavit or verified pleading shall be used to support the application for a temporary injunction unless the adverse party appears at the hearing or has received reasonable notice of the hearing. Every temporary injunction granted without notice shall be endorsed with the date and hour of entry and shall be filed forthwith in the clerk's office and shall define the injury, state findings by the court why the injury may be irreparable, and give the reasons why the order was granted without notice if notice was not given. The temporary injunction shall remain in effect until the further order of the court.

**(b) Bond.** No temporary injunction shall be entered unless a bond is given by

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

the movant in an amount the court deems proper, conditioned for the payment of costs and damages sustained by the adverse party if the adverse party is wrongfully enjoined. When any injunction is issued on the pleading of a municipality or the state or any officer, agency, or political subdivision thereof, the court may require or dispense with a bond, with or without surety, and conditioned in the same manner, having due regard for the public interest. No bond shall be required for issuance of a temporary injunction issued solely to prevent physical injury or abuse of a natural person.

The decision to grant or deny injunctive relief rests largely in the sound judicial discretion of the trial court. *See, e.g., Davis v. Joyner*, 409 So.2d 1193 (1982); *Groff G.M.C. Trucks v. Driggers*, 101 So.2d 58 (1958); *Willis v. Hathaway*, 95 Fla. 608, 117 So. 89 (1928) (When equity powers of court have been invoked it has power in its discretion to give such incidental relief by way of injunction as will make its determination the effective means of avoiding risk of loss to any of the parties); *Wise v. Schmidek*, App. 3 Dist., 649 So.2d 336 (1995) (Trial court may generally exercise broad discretion in granting, denying, dissolving or modifying injunctions.).

### d. Injunction Legal Standard Under the Common Law Outside of the FUTA.

A party seeking the entry of a preliminary injunction must demonstrate: i) irreparable harm; ii) a substantial likelihood of success stemming from a demonstrably clear legal right; iii) an inadequate remedy at law; and, in some situations, iv) consideration of the public interest. *See Wilson v. Sandstrom*, 317 So.2d 732, 736 (Fla. 1975), *cert. denied*, 423 U.S. 1053, 96 S.Ct. 782, 46 L.Ed.2d 642 (1976); *City of Oviedo v. Alafaya Utilities, Inc.*, 704 So.2d 206 (Fla. 5th DCA 1998); *Miami-Dade County v. Church & Tower, Inc.*, 715 So.2d 1084, 1087 (Fla. 3d DCA 1998); *St. Lucie County v. St. Lucie Village*, 603 So.2d 1289, 1292 (Fla. 4th DCA), *rev. denied*, 613 So.2d 12 (Fla. 1992).

### e. A Preliminary Injunction is Appropriate to Preserve the *Status Quo Ante* — The Status Prior to the Removal of Any of the Plaintiffs' Collateral.

The purpose of a temporary injunction is to preserve the *status quo* until a final hearing may be held and the dispute resolved. *See City of Miami Springs v. Steffen*, 423 So.2d 930 (Fla. 3d DCA 1983). The *status quo* to be preserved by a temporary injunction **is the last peaceable non-contested condition that preceded the controversy.** *See Bowling v. National Convoy & Trucking Co.*, 135 So. 541 (Fla. 1931). In this matter, that would be March 31, 2022, the last date on which the Plaintiffs' collateral was on site with its borrowers, the corporate Karma Defendants.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

One critical purpose of temporary injunctions is to prevent injury so that a party will not be forced to seek redress for damages after they have occurred. *Lewis v. Peters*, 66 So.2d 489 (Fla.1953). The granting of a temporary injunction rests in the trial court's sound judicial discretion, guided by established rules and principles of equity jurisprudence in view of the facts of the particular case. *Decumbe v. Smith*, 143 Fla. 5, 196 So. 595 (Fla.1940).

A temporary mandatory injunction pending final hearing is appropriate if the totality of the circumstances warrant it. *Zetrouer v. Zetrouer*, 89 Fla. 253, 103 So. 625 (Fla. 1925) (Trial court did not abuse its discretion in issuing injunctive order requiring that certain percentages of gross revenues of nightclub be paid each month to alleged co-owner predicated entirely upon operating owner's testimony regarding anticipated profits and upon court's recognition of alleged co-owner's dependency on operation of the club as his primary source of income; order preserved status quo during litigation.); *see also Bailey v. Christo*, 453 So.2d 1134 (Fla. 1st DCA 1984), petition for review denied, 461 So.2d 113.

f. **DENYING THE INJUNCTION WILL CAUSE IRREPARABLE HARM TO THE PLAINTIFFS, WHO HAVE NO ADEQUATE REMEDY AT LAW.**

Irreparable harm is often defined as an injury where money damages are not available as a sufficient remedy. *See, e.g., South Florida Limousines. Inc. v. Broward County Aviation Department*, 512 So. 2d 1059, 1062 (Fla. 4th DCA 1987); *Liza Danielle v. Jamko, Inc.*, 408 So. 2d 735, 739 (Fla. 3d DCA 1982). A court should grant a mandatory temporary injunction where "irreparable harm will otherwise result, the party has a clear legal right thereto, and such party has no adequate remedy at law." *Wilson v. Sandstrom*, 317 So.2d 732, 736 (Fla. 1975); *see also Harvey v. Wittenberg*, 384 So. 2d 940, 941 (Fla. 3d DCA 1980).

The Plaintiffs have a clear legal right to the issuance of a temporary injunction preserving and safeguarding their collateral as the Plaintiffs will be irreparably harmed without it. Here, Defendants Scott Zankl, Kristen Zankl and their companies have no way to pay the Plaintiffs the sums owed, and the collateral is the only way that the Plaintiffs can recoup some or all of their losses. As such, a money judgment is not an "adequate remedy" as a judgment for $7.5 million entered against Defendants Scott Zankl, Kristen Zankl and their companies would be meaningless. Therefore, the irreparable harm requirement is met considering that the collateral was intended to secure the obligation.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

g. **THE PLAINTIFFS HAVE A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS.**

The Defendants cannot seriously argue that the Plaintiffs will not prevail on the merits. The illegality of the conduct of Defendants Scott Zankl, Kristen Zankl and their companies, and Farache and his companies, is self evident and the evidence overwhelming. As to the Loan Documents, the Plaintiffs are clearly and obviously entitled to relief. As such, the substantial likelihood of success requirement is met.

h. **CONSIDERATIONS OF PUBLIC INTEREST ARE IN FAVOR OF GRANTING THE INJUNCTION.**

If the Court grants this Motion for Temporary Injunctive Relief, it would promote to the public the idea that persons and companies cannot engage in fraudulent and illegal conduct. As persons and companies cannot make misrepresentations to get loans and then unlawfully hypothecate pledged collateral, it is critical that the public know that acts like these of the Defendants will not trump clear legal rights.

i. **POSTING BOND.**

Pursuant to Rule 1.610(b) of the Florida Rules of Civil Procedure, the Plaintiffs are prepared to and willing to post a bond in an amount deemed appropriate by the Court. Given the minimal harm that can befall the Defendants by the issuance of a temporary injunction considering that the *status quo* would be maintained, such bond amount should be reasonable under the circumstances.

j. **TEMPORARY INJUNCTION WITHOUT NOTICE.**

Rule 1.610(a)(1) of the Florida Rules of Civil Procedure allows this Court to issue a temporary injunction "without written or oral notice to the adverse party[.]"

Here, it is clear from the specific sworn facts herein, and in the Plaintiffs' Complaint, that immediate and irreparable injury, loss or damage will result to the Plaintiffs before the Defendants can be heard in opposition. *See* Fla. R. Civ. P. 1.6.10(a)(1)(A).

Further, this Motion and the Complaint will be provided by e-mail to the known attorneys of all Defendants, one of whom has agreed to accept service, and notice should not be required considering the ongoing efforts to further unlawfully hypothecate the Plaintiffs' collateral. *See* Fla. R. Civ. P. 1.6.10(a)(1)(B).

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007   RECEIVED NYSCEF: 01/19/2026

## CONCLUSION

WHEREFORE, it is respectfully requested that this Honorable Court act on an emergency basis and issue its *Ex Parte* Order Appointing a Receiver and Enjoining the Defendants as requested herein until this matter can be heard at a full evidentiary hearing.

Respectfully submitted,

**Baron, Breslin & Sarmiento**
**Fl. Rule of Jud. Admin. 2.516 Notice**
Primary email: EService@RichardBaronLaw.com
Secondary Email: JB@RichardBaronLaw.com

**s/ Jerry Breslin**
*Filed of Record via Eportal*

Jerry Breslin Esq.
Fla. Bar # 269573
Email: JB@RichardBaronLaw.com
Baron, Breslin & Sarmiento, Attorneys at Law
The DuPont Building
169 East Flagler Street
Suite 700
Miami, Fl 33131
Tel.: 305-577-4626
Fax.: 305-577-4630

**/s/ Jonathan Noah Schwartz, Esq.**

Jonathan Noah Schwartz, Esq.
Florida Bar No. 1014596
Jonathan Schwartz Law PLLC
10200 NW 25th Street, Suite 111
Doral, FL 33172
Tel.: (973) 936-2176
Fax: (786) 338-7435
E-mails: jschwartz@jonschwartzlaw.com
         JNSEsquire@gmail.com

NOT AN OFFICIAL COPY - PUBLIC

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

# Exhibit H

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA
CASE NO. CACE-22-005125

FVP OPPORTUNITY FUND, III, LP, a
Delaware limited partnership, et
al.,

        Plaintiffs,

    -vs-

KARMA OF BROWARD, INC., A Florida
corporation, et al.,

        Defendants.
_____/

CONSOLIDATED CASE
NO.:
CACE-22-006401

HI BAR CAPITAL, LLC, a New York
Limited liability company,

        Plaintiff,

v.

KARMA OF PALM BEACH, INC.,
A Florida corporation, et al.,

        Defendants.
_____/

ZOOM HEARING BEFORE THE HONORABLE JUDGE HAIMES

Wednesday, September 3, 2025

8:45 AM - 9:45 AM

Reported By:
KIMBERLY SULLIVAN, CR
Notary Public, State of Florida
BAILEY ENTIN REPORTING, LLC
Fort Lauderdale Office
Phone - 954-745-9511

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

Hearing before Judge Haimes

FVP OPPORTUNTY FUND III, LP, a Delaware limited partnership v. Hi BAR CAPITAL LL

APPEARANCES:

On behalf of Plaintiff   FVP Opportunity Fund, III, LP,:
    JERRELL BRESLIN, ESQUIRE
    Baron Breslin & Sarmiento Attorney At Law
    169 East Flagler Street
    Suite 700
    Miami, Florida 33132
            -and-
    MICHAEL MCMULLEN, ESQUIRE,
    COHEN & MCMULLEN, P.A
    1132 SE 3rd Avenue
    Fort Lauderdale, Florida 33316
            -and-
    ROBERT BUSCHEL, ESQUIRE
    BUSCHEL GIBBONS, P.A.
    501 East Las Olas Boulevard, Suite 304
    Fort Lauderdale, Florida 33301


On behalf of Defendant Moshe Farache:
Scott Gherman, Esquire
902 Clint Moore Road
Suite 120
Boca Raton, Florida 33487
            -and-
Charles Bennardini, Esquire
Boca Corp Plaza, Suite 140
7900 Glades Road
Boca Raton, Florida 33434


On behalf of Defendant Avrumi Lubin:
Avrumi Lubin, Pro Se

ALSO PRESENT:
David Langley, Esquire
Michael Kasen, Esquire
Joel Arestsy, Esquire

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

Hearing before Judge Haimes

FVP OPPORTUNTY FUND III, LP, a Delaware limited partnership v. HI BAR CAPITAL LL

**Page 3**

(The following proceedings were held:)

THE COURT: We're on record in Case CACE-22-51525, FVP Opportunity Fund III, LP, et al. v. Scott Zankl, et al.

Can I get appearances? We'll start with the plaintiff.

MR. BRESLIN: Yes. Good morning, Your Honor. Jerry Breslin, for the FVP parties.

THE COURT: Good morning, Mr. Breslin.

MR. BRESLIN: Mr. McMullen also is present, and I'm not sure if Mr. Buschel is here -- all for the FVP parties.

MR. MCMULLEN: Good morning, Judge.

THE COURT: Good morning. It's Michael McMullen, and then -- I'm sorry -- the third one? Is the third one here?

MR. BRESLIN: I don't see him.

THE COURT: All right. And then is Mr. Zankl here?

MR. BRESLIN: I do not see him either, Judge.

THE COURT: He's a no-show. I know he does not have an attorney.

All right. Codefendants -- who wants to go first?

MR. BENNARDINI: Good morning, Your Honor.

**Page 4**

Charlie Bennardini, on behalf of Lisa Farache, Moche Farache, 1001 Clint Moore, and nominal defendant, Auto Wholesale of Boca Raton -- of Boca, and with me today is my cocounsel, Scott Gherman.

MR. GHERMAN: Good morning, Your Honor. Scott Gherman on behalf of Mr. Farache.

THE COURT: All right. Good morning, Mr. Bennardini and Mr. Gherman, on behalf of the Faraches.

Okay. And then anyone else?

MR. LANGLEY: Good morning, Your Honor. David Langley. I'm currently cocounsel for Mr. Lubin. I'm here on my motion to withdraw.

THE COURT: Good morning.

MR. BUSCHEL: Judge, Robert Buschel on behalf of the plaintiffs. I'm here.

THE COURT: Okay. Good morning, Mr. Buschel. Mr. Langley, you're cocounsel. How about your other cocounsel?

MR. KASEN: Good morning, Your Honor. Michael Kasen, Kasen & Kasen & Kasen & Kasen, also withdrawing attorney for Lubin.

THE COURT: All right. You're both Lubin withdrawals; correct?

MR. KASEN: That's right, Your Honor.

**Page 5**

MR. LANGLEY: Correct.

THE COURT: Yeah, there's two separate motions. That was also on for motion calendar this morning.

All right. Any other codefendants?

MR. BRESLIN: Your Honor, I see Mr. Lubin is here. He's muted.

MR. LUBIN: Josh Lubin on behalf of myself.

MR. ARESTY: Your Honor, my name is Joel Aresty, A-R-E-S-T-Y. I had appeared in the case some time ago for a corporate defendant. I have not been involved in the case since, but I'm here to observe and comment because of the motions to withdraw. Thank you.

THE COURT: All right. You can observe, but you're not an attorney of record. I don't know if you can comment.

MR. ARESTY: I believe I filed an appearance for Spin, Judge, some time ago, the corporation, which I don't believe is otherwise represented.

THE COURT: All right. Anyone else on the case?

Usually, Mr. Leto is here. They're out?

MR. BRESLIN: That matter is very close to being finalized, Judge. So we'll be filing some motions and dismissals very shortly.

**Page 6**

THE COURT: All right. So I think there was one other set of codefendants, too, that usually appear, but I think they're also in the same boat; right?

So, let me address the motion for a case management. That's Mr. Bennardini and Mr. Gherman?

MR. BENNARDINI: Yes, Your Honor. Good morning. We're specially set for trial the week of September 29th.

THE COURT: That's correct.

MR. BENNARDINI: Recently, Mr. Breslin and his cocounsel, Mr. Gherman and I, and all of our clients have agreed to go to mediation on Saturday, September 13th, with Mr. Harry Schaefer.

Now, we hope to be successful, but just in case we are not, there are -- we have four summary judgment motions pending. The trial court order required that such dispositive motions be filed by July 30th. We complied.

The new one -- not so new anymore -- but 1.510 says, "Hearings cannot be set until 50 days thereafter." So we're here asking the Court to set a case management conference the week of September 15 to have those four motions heard if the Court is available.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Hearing before Judge Haimes

FVP OPPORTUNTY FUND III, LP, a Delaware limited partnership v. HI BAR CAPITAL LL

**Page 7**

And then also, in my motion, I list eight motions in limine and Daubert motions for each side. And Your Honor's trial order -- and I know you like to hear motions in limine and Daubert right before trial. So the point of my motion is to specially set the summary judgment motions after September 13th, just in case we settle, and then we won't need them. Don't want to spend the time and expense. Your Honor has commented several times that this case has cost the clients a bunch of money.

So if we can save that money by settling at mediation, we will. But the bottom line is if you would please give us a special set for a case management conference the week of September 15th.

And we would like to be assured we're starting September 29th. There's some -- I don't know what's going on with the matters in front of us, but it would -- we would be better prepared and ready to go if we are sure we're starting September 29th, absent mediation settlement.

Thank you, Judge.

THE COURT: Everyone else is in agreement? Or I guess --

MR. BRESLIN: Judge, for the FVP parties, I

**Page 8**

think what we'd like, Judge, is for you to give us like three hours sometime, I guess, the week of the 15, just in case the matter does not resolve so you can hear all the motions for summary judgment and any other motions that you think the Court deems appropriate at that time.

THE COURT: Okay. How about this? It looks like you're other one is resolving; so that's not going to go to trial the week of the --

MR. BRESLIN: Judge, no. I want to make that clear. There are several defendants in the Trial Part 1. These are the New York defendants. There's the Hi Bar parties. There's Mr. Lubin, there's Mr. Getter and Spin. So the Hi Bar parties will be partially resolved.

THE COURT: Let me ask you -- let me cut to the chase on this. All right. The week of the 22nd -- the 23rd, the courthouse is closed for Rosh Hashanah.

MR. BRESLIN: Right.

THE COURT: My suggestion is to start on the 24th. All right?

MR. BRESLIN: That's fine, Judge. That's the Lubin trial. That's the Spin trial.

THE COURT: Yes. That should be shorter now;

**Page 9**

right? It should only be --

MR. BRESLIN: Yes.

THE COURT: Okay.

MR. BRESLIN: Three or four days.

THE COURT: So then what I'm going to do is put the motions for summary judgment for the Farache dispute, I guess, put those on for Monday the 22nd.

MR. BRESLIN: That would be perfect, Judge.

MR. LUBIN: That is perfect, Judge.

THE COURT: All right. And I'll put those on. Okay. We'll put them on at 9:00 in the morning.

MR. LUBIN: Yes, sir.

MR. BRESLIN: Could we make it 10:00, Judge?

THE COURT: That's fine. Not a problem.

MR. BRESLIN: Thank you. Because I will need to be there in person. It's just a different world getting there at 10:00 as opposed to 9:00.

THE COURT: Okay.

MR. LUBIN: So, Your Honor, if they start Trial 1 on the 24th, they'll go four days, and we'll start immediately thereafter?

THE COURT: Yeah, three days; right?

MR. BRESLIN: It will be -- it will be the -- yes, Judge. I don't -- it's not going to take nearly as long as the Farache trial. You know how

**Page 10**

trials go, Judge? There are a lot of exhibits. It just really depends on how things turn out with the pretrial stipulation, which I will discuss with Mr. Lubin shortly after today's hearing.

So I anticipate it will go quickly, three or four days.

THE COURT: And then right after. But hopefully, you will be able to get things worked out, at least more of it anyway.

MR. BRESLIN: Yes, sir.

THE COURT: All right. So right now, I have you down for September 22nd, at 10:00 a.m., all pending motions, so set all your motions for summary judgment.

MR. LUBIN: What do you want to do with the motions in limine, Your Honor?

THE COURT: I'll take those up at the time unless if something where -- if it's a Daubert motion and you want me to take testimony, I will do it on that day as well.

MR. LUBIN: Thank you, Judge.

MR. BRESLIN: All right.

THE COURT: Good luck at mediation.

MR. BRESLIN: We hope so, Judge. Thank you. And then next is the motions to withdraw for

BAILEY ENTIN REPORTING, LLC

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

Hearing before Judge Haimes

FVP OPPORTUNTY FUND III, LP, a Delaware limited partnership v. HI BAR CAPITAL LL

**Page 11**

Mr. Lubin. I take it Mr. Lubin is here. You have no objection to --

MR. LUBIN: I have no objection.

THE COURT: Okay.

MR. LUBIN: I just need 45 seconds of your time, Your Honor.

Your Honor, on August 13th, made it very clear that you're not going to rule on whether the comment interest agreement was terminated or not, and Mr. Breslin snuck in three sentences into Your Honor's order that was signed and says the common interest agreement was terminated. Mr. Lubin has no rights to the common interest agreement, and it was terminated per the April 14th -- April 2020 form letter sent by Leto, which Your Honor said multiple times on the transcript, which I have in front of me, that you're not going to rule on that, and that's an issue that may have to get resolved in New York.

That's an issue that basically Mr. Langley and Mr. Kasen filed an emergency clarification motion, or something like that, for Your Honor to correct the order and filed a motion to withdraw a few hours later. And that was never set for a hearing.

My only objection is -- I don't mind if the

**Page 12**

attorneys go out. I'm going to have to get new counsel. I'm going to need some time, but that's the only thing that I need today. It needs to get corrected because it contradicts Your Honor's own words, and Mr. Breslin should have never snuck in language like that into an order which -- yeah, it completely contradicts what went on in the hearing.

I have no objection to the settlement. Your Honor made it very clear whether Mr. Lubin can object to the parties settling, but you said you were not going to -- you made it clear a few times that you're not going to determine whether this agreement was terminated or not. That's an issue for a separate day.

I'm just asking Your Honor if that's an emergency issue that needs to get corrected before the attorneys get let out. Like that's -- yeah, that's priority.

THE COURT: Mr. Breslin?

MR. BRESLIN: Judge, that matter was not set for hearing today. I'm not at all sure what Mr. Lubin is referring to. We're here today on motions to withdraw. And I'm not prepared today --

(Simultaneous speakers.)

THE COURT: -- motion for clarification is

**Page 13**

resolved.

MR. BRESLIN: I'm sorry, Judge?

THE COURT: He didn't want the motions to withdraw ruled on until the motion for clarification is resolved.

MR. BRESLIN: Well, that's entirely -- that's entirely up to Your Honor and counsel that are seeking to withdraw. I don't know if I have a voice in that, but Your Honor issued an order that was very clearly supported by the transcript. That matter has already gone to the bankruptcy court. The bankruptcy court has already issued its order. That matter is concluded.

I'm not sure what Mr. Lubin is getting at here, but, you know, that matter is not before Your Honor this morning; so I'm not prepared to address any requests to change any prior orders.

So that said, Judge, I'm prepared to address the motions to withdraw. I mean, we're starting the trial on Mr. Lubin's case on the 24th, as Your Honor just indicated.

Mr. Langley and Mr. Kasen are -- just so the record is clear, Judge: Mr. Lubin has had seven attorneys in the past year. And Mr. Lubin has filed a notice of appearance for himself pro se. Mr.

**Page 14**

Langley and Mr. Kasen both appeared as his cocounsel. So Mr. Lubin is pro se. He's filed a notice of appearance.

MR. LUBIN: Mr. Breslin, you're distracting the Judge.

MR. BRESLIN: Please don't interrupt me. Mr. Lubin, please don't interrupt me.

THE COURT: Hang on. We're here on a five-minute hearing.

Let me do this. Mr. Lubin, this is what the order had said, "The Court has reviewed the common interest agreement and the termination letter and applicable law and has determined that neither Avrumi Lubin nor any of the affiliated entities have any rights to the net proceeds as that term is defined in the bankruptcy court sale order, and order denying expedited joint motion. That was what the order was. I think you're worried about some language that was --

MR. LUBIN: The order did not say that, Your Honor. The order said the exact opposite.

THE COURT: That's what -- I'm reading right from the order. I guess, part of the --

MR. LUBIN: Are you talking about the bankruptcy order or your order?

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007    RECEIVED NYSCEF: 01/19/2026

Hearing before Judge Haimes    FVP OPPORTUNITY FUND III, LP, a Delaware limited partnership v. HI BAR CAPITAL LL

**Page 15**

THE COURT: Yeah, my order.

MR. LUBIN: Right. The bankruptcy order said the exact opposite of your order.

THE COURT: No. The bankruptcy said it's up to another jurisdiction to determine --

MR. LUBIN: And the --

(Simultaneous speakers.)

THE COURT: -- and I determined that you did not.

Now, if there's other issues with respect to that, that don't affect the bankruptcy case, you can still litigate those.

MR. LUBIN: I know, but it completely contradicts Your Honor's own words. It says I have no right to the proceeds. Your Honor never said I have no rights to the proceeds. You said --

THE COURT: You had no right to contest in the bankruptcy court that it was -- and that was -- I will make it a ruling that, based on what was presented to me, that the proper parties to be able to negotiate that settlement were the proper parties. And so --

MR. LUBIN: With all due respect, I'm bringing up one issue. First of all, Judge Kimball mentioned the exact opposite. He said that it appears that

**Page 16**

the validity of the common interest agreement has to be determined, and if the agreement is valid, Lubin is the movant, not Hi Bar.

THE COURT: All right. So your motion for clarification is denied. All right.

So in light of that, I take it there's no reason --

MR. LUBIN: Can you correct --

THE COURT: -- for Mr. Langley or Mr. Kasen to still be on the case; correct?

MR. LUBIN: Your Honor, can you correct it where it says the agreement was terminated? You said you weren't going to rule on that.

THE COURT: I don't think it says the agreement was terminated.

MR. LUBIN: It does. It says the agreement was terminated -- read the order -- per the April 14th letter.

THE COURT: Where does it say that in the order?

MR. LUBIN: It says that -- here, I'll pull it up right now. It says Mr. Lubin has no rights to the proceeds.

THE COURT: Yep.

MR. LUBIN: And it says that the agreement was

**Page 17**

termination per the April 14th Leto letter.

THE COURT: Where does it say that? Where are you reading from?

MR. LUBIN: I'm pulling it up right now. If you scroll all the way down -- hold on.

The Court finds Mr. Lubin has no rights -- on paragraph 8 -- to interfere with the Hi Bar settlement. Language of the common interest agreement: The Court further finds that the common interest agreement was termination by Hi Bar on April 3rd, 2024. The Court further notes that Mr. Lubin took no action to refute Hi Bar's purported termination until the FVP parties -- Franklin parties and Hi Bar -- came to a settlement agreement.

That completely contradicts the record on a motion for summary judgment that was filed like six months ago, and it contradicts Your Honor's own words. I'm not trying to make any --

MR. BRESLIN: Judge --

(Simultaneous speakers.)

MR. LUBIN: -- over here. I'm just bringing up --

MR. BRESLIN: Judge --

MR. LUBIN: -- something that's very clear.

**Page 18**

MR. BRESLIN: Judge, I think this is highly inappropriate. Mr. Leto is not here. Mr. Leto testified. He submitted the termination letter to Your Honor.

THE COURT: Yeah, and the ruling was that with respect to the settlement that was in the bankruptcy court --

MR. LUBIN: I don't object to that. I don't object to the settlement. Just take the correct order for the agreement was terminated.

THE COURT: I won't say the Court finds that. I'm just going to say that the Court notes.

MR. LUBIN: Yes.

THE COURT: It was not meant to be a finding, but it was the background. So the only thing that I'm going to correct is on paragraph 8 instead, of "the Court finds that" -- "the Court notes that." All right? It's not a finding. I didn't have to make that finding to do that because what I did find was that you had no rights or standing to interfere --

(Simultaneous speakers.)

MR. LUBIN: -- the settlement.

THE COURT: All right.

MR. LUBIN: So I can basically have a new

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007    RECEIVED NYSCEF: 01/19/2026

Hearing before Judge Haimes

FVP OPPORTUNTY FUND III, LP, a Delaware limited partnership v. HI BAR CAPITAL LL

**Page 19**

attorney? I can get the transcript for this hearing? And Your Honor is correcting it; that the Court notes that information? It's not a finding?

THE COURT: Yes.

MR. LUBIN: Yes.

THE COURT: The bottom line is that I'm not sure how it would affect anything else because --

(Simultaneous speakers.)

MR. LUBIN: -- litigating it.

THE COURT: What was presented before me is who was the proper party to be able to enter into that settlement, and I found that.

MR. LUBIN: Right. I don't object. No problem.

THE COURT: If you look at the order and the judge. All right? The order and the judge.

MR. LUBIN: It would prevent me from suing Hi Bar if Your Honor already made a finding that --

THE COURT: Yeah.

MR. LUBIN: -- the agreement was termination.

THE COURT: I had no issues with you suing Hi Bar or whatnot. That was separate.

But as far as for the purposes of the bankruptcy proceedings and the Court making a determination, the Court's determination -- and I

**Page 20**

think it's clear in paragraph 11.

MR. LUBIN: That I don't have any right to object to a settlement. No problem.

But you're correcting paragraph 8 that the Court notes?

MR. KASEN: Your Honor, if I may, Michael Kasen, withdrawing attorney for Mr. Lubin.

Attached to the motion for clarification and also previously emailed to Your Honor's judicial assistant was a draft of the suggested order that corrected this particular language and other language that was similarly inserted into the order that we felt wasn't part of the record and may create future problems for Mr. Lubin related to his ultimate rights.

Not necessarily related to the funds that were held by the bankruptcy court and Mr. Lubin's ability to object to the settlement, but specifically towards to -- that may bar Mr. Lubin from taking other actions at other times.

So if Your Honor wants to take a look at the motion for clarification, there should be attached to that motion a draft order.

And the issue really arises because Mr. Breslin submitted the order to Your Honor without running it

**Page 21**

by opposing counsel, which, as noted in both the letter to your judicial assistant and in the motion for clarification, it is contrary to Florida rules.

Had that not happened, we wouldn't be here because we would have been able to work out the language that actually reflected Your Honor's ruling rather than the language that Mr. Breslin single-handedly decided to insert into the order.

MR. BRESLIN: Judge, number one, that's --

MR. LUBIN: Jerry, it's not --

MR. BRESLIN: -- wholly inappropriate.

Mr. Lubin, do not interrupt me.

THE COURT: Stop. I am cutting you all off. So I'm going to do a separate order. I'm just going to do a quick motion.

The order on the motion for clarification, it's denied, except I want to clarify paragraph 8, all right? But the Court's ruling -- order and adjudged remains the same.

MR. LUBIN: Your Honor, can you tell me how it's going to --

THE COURT: I will look at it again. I'm going to look at your motion, and I'm just going to address it then, but the motion for clarification is otherwise denied.

**Page 22**

So in light of that, Mr. Langley and Mr. Kasen --

MR. LUBIN: Can I ask one thing? I need time to get an attorney.

THE COURT: You'll have time. So I'm going to grant the motions to withdraw. You do have a trial coming up in three weeks; so how much time do you need?

MR. LUBIN: I need 30 days to get an attorney.

MR. BRESLIN: Your Honor --

THE COURT: 30 days.

MR. BRESLIN: Your Honor, Mr. Lubin -- if I may, Judge, Mr. Lubin has had seven years in the past year.

THE COURT: I know. You've already brought that up.

MR. BRESLIN: And Judge Tuter entered an order back in January, saying that Mr. Lubin had 30 days to get a new attorney or he needs to file an appearance pro se.

Judge, Mr. Lubin filed a notice of appearance pro se twice -- one in January, another one in April. Mr. Lubin has filed a motion, too, last week as the pro se attorney.

Judge, this case has been specially set for at

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

Hearing before Judge Haimes

FVP OPPORTUNTY FUND III, LP, a Delaware limited partnership v. HI BAR CAPITAL LL

**Page 23**

least a year, and the trial is going to start shortly. And this is just another tactic. There have been seven attorneys in the past year. Seven. And they get hired, and then they withdraw, and then they want to get more time.

But Mr. Lubin, just so the record is clear -- Mr. Langley is not Mr. Lubin's attorney. He's Mr. Lubin's cocounsel, if you look at his notice of appearance, the same as Mr. Kasen. They're withdrawing as his cocounsel. They can withdraw as his cocounsel, but that means Mr. Lubin is pro se.

If he wants to hire an attorney to come in and help him litigate this case, he can certainly do that, Judge.

But, Judge -- Judge, I couldn't more vigorously object to this trial being --

THE COURT: You've already done that.

Mr. Lubin, so you have no objection to your attorneys withdrawing; correct?

MR. LUBIN: I have no objection. I just need time for an attorney.

And for Mr. Breslin's --

THE COURT: Your trial is set for September 24th. Have at it. You don't get 30 days. All right? So --

**Page 24**

MR. LUBIN: How many days do I get?

THE COURT: -- today is September 3rd; so it looks like you have 21 days.

MR. LUBIN: I'm going to go to trial with an attorney having no preparation for it or?

THE COURT: You can represent yourself as well. All right?

MR. LUBIN: I'm not a lawyer.

THE COURT: Or you can talk to Mr. Langley or Mr. Kasen and see if they want to stay on. All right. But your trial is --

MR. LUBIN: Can Your Honor just make it clear how you're clarifying? Is that something that you have to review separate?

THE COURT: I'm just going to look at the order. I'm going to look at it.

MR. LUBIN: And you're going to upload an order --

THE COURT: I understand your issues with that. I will resolve that. So if you want to let Mr. Langley off and Mr. Kasen off, that's up to you. If you want to keep them on so you have an attorney for trial, but your trial is September 24th.

MR. LUBIN: If I tell you to keep them on, they have to stay on? How does that work?

**Page 25**

THE COURT: Well, you've got to pay them. So I don't know what your issue is between -- I don't know what the irreconcilable differences are.

Let me ask Mr. Langley and Mr. Kasen, are you both still moving to withdraw?

MR. KASEN: I am, Your Honor.

MR. LANGLEY: Judge, yes.

Judge, as I mentioned in my motion -- and I can articulate it further if you require -- in my case, it's mandatory withdrawal.

THE COURT: All right.

And Mr. Kasen?

MR. LANGLEY: Under the Florida Rules of Professional Conduct 4-1.16. And I can tell you that I spent a good bit of time yesterday with the Florida Bar Ethics Hotline confirming that, and I would be happy to get into that if you wish, but I need to withdraw.

MR. KASEN: Your Honor, I'm of the same opinion.

THE COURT: And you have the same issue?

MR. LUBIN: Your Honor, just to make something clear: There's an issue with Spin Capital's rights over here, the way they're assigned to one of the Franklin Capital, which is why I had to go

**Page 26**

through so many attorneys, and I didn't discover this issue until a few months ago.

Spin Capital doesn't have a right to defend these actions because the plaintiff bringing the actions claims the rights to defend those actions from an assignment that's listed in the case. That's the reason why I went through so many attorneys.

And Judge Tuter mentioned that I have to report -- which I didn't, he told me I have to report my attorneys to the Bar because they didn't show up to hearings and they were ignoring me because they got stuck in a position -- I think it's malpractice -- where they didn't have a right to defend Spin Capital, and the engagement letter was with me.

So this is not -- like, Mr. Breslin is trying to make me look like a bad guy. This is a very complicated situation, where I have to get a malpractice attorney to deal with it. And it's very hard to be represented if I don't have the right to defend -- if Spin doesn't have the right to defend itself because the party bringing the lawsuit owns those rights.

THE COURT: So 4-1.16 --

MR. LANGLEY: Yes, Judge. And I uploaded that

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Hearing before Judge Haimes

FVP OPPORTUNTY FUND III, LP, a Delaware limited partnership v. HI BAR CAPITAL LL

**Page 27**

to your inbox yesterday. And Bar counsel --

THE COURT: Which cell?

MR. LANGLEY: I'm sorry?

THE COURT: Which cell? (a)(1) through (5).

MR. LANGLEY: There's a section on mandatory withdrawal. And where Bar counsel referred me to where the comment section under mandatory withdrawal, the last couple of sentences.

"The Court may request an explanation for the withdrawal, while the lawyer may be bound to keep confidential the facts that would constitute such an explanation. The lawyer's statement that professional considerations require termination of the representation ordinarily should be accepted as sufficient."

I can't get into the conversations that I've had one-on-one with Mr. Lubin. I can tell you, Judge, that in emails that he sent to the Department of Justice, he's accused me of all kind of things, including malpractice and criminal activity and various things like that. I ethically can no longer represent Mr. Lubin.

THE COURT: Okay.

MR. LANGLEY: Yes.

THE COURT: And the same applies to Mr. Kasen?

**Page 28**

MR. LANGLEY: I believe it does.

THE COURT: Mr. Kasen?

MR. KASEN: I believe it does as well, Your Honor.

Further, as Your Honor knows, I have been admitted into this case pro hoc vice, as Mr. Langley, as my local counsel. So if Mr. Langley were to be removed, I would no longer have a sponsoring local counselor, even if I were willing to remain and continue to represent Mr. Lubin.

THE COURT: All right. I'm going to grant the motion to withdraw. You have 15 days, Mr. Lubin, but either way, whether you have counsel or not, you're more than welcome to show up and represent yourself.

It sounds like you're incredibly bright.

MR. LUBIN: I unfortunately have been going through this for three years. I know a little bit about law, but yeah.

THE COURT: Sometimes pro ses do better than the attorneys because they know the case the best. So anyway, we will see you --

MR. LUBIN: What? Represent myself without exhibits or anything? Just say my story?

THE COURT: Well, I can't be your attorney,

**Page 29**

though.

MR. LUBIN: Obviously but --

THE COURT: You're going to have to roll up your sleeves and figure it out yourself. All right. Good luck to you.

MR. LUBIN: Has it been done before, or no?

THE COURT: I need to move on.

So I'm granting both motions to withdraw. All right. You have the summary judgment dates for the 22nd for the Farache matter and --

MR. LUBIN: How long would I expect for Your Honor to upload a corrected order? Like, a few days? How long?

THE COURT: All right. I will take care of that. All right. Good luck to you all.

All right.

MR. BRESLIN: Thank you, Your Honor.

THE COURT: You all have a great day.

MR. LUBIN: Thank you.

THE COURT: Actually, I do need Mr. Kasen.

Let Mr. Kasen know and Mr. Langley know they need to upload their order granting the motion.

MR. BRESLIN: I will do that, Judge.

THE COURT: Of course.

(The hearing was concluded at 9:45 AM.)

**Page 30**

- - -

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

Hearing before Judge Haimes

FVP OPPORTUNTY FUND III, LP, a Delaware limited partnership v. HI BAR CAPITAL LL

Page 31

CERTIFICATE

- - -

I, KIMBERLY SULLIVAN, Court Reporter, State of Florida at Large, certify that I was authorized to and did report the foregoing proceedings and that the transcript is a true and complete record of my notes.

Dated this 3rd day of September, 2025.

_____

KIMBERLY SULLIVAN, CR

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                              RECEIVED NYSCEF: 01/19/2026

# Exhibit I

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                    RECEIVED NYSCEF: 01/19/2026

Page 1

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND
FOR BROWARD COUNTY, FLORIDA

Case No. CACE-22-005125


FVP OPPORTUNITY FUND III, LP, A DELAWARE
LIMITED PARTNERSHIP; FVP INVESTMENTS, LLC,
A DELAWARE LIMITED LIABILITY COMPANY; AND
FVP SERVICING LLC, DELAWARE LIMITED
LIABILITY COMPANY,

              Plaintiffs,

vs.

KARMA OF BROWARD, INC.,
a Florida corporation, et al.,

              Defendants.
_____/

HI BAR CAPITAL, LLC, a New York
limited liability company, et al.,
              Plaintiff,
V                          Case No. CACE-22-06401
KARMA OF PALM BEACH, INC.,
a Florida corporation, et al.,
_____/


                    Judge David Haimes
                    Via Zoom
                    September 10, 2025
                    8:45 a.m. to 9:35 a.m.

          MOTION TO VOLUNTARILY DISMISS CASE


                    Reported By:
             Cheryl L. Jenkins, RPR, RMR

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007    RECEIVED NYSCEF: 01/19/2026

Page 2

APPEARANCES:


SCHWARTZ BRESLIN, by

JERRELL "JERRY" BRESLIN, Esquire

On behalf of the Plaintiffs, FVP Opportunity Fund III,

LP, a Delaware Limited Partnership; FVP Investments,

LLC, a Delaware Limited Liability Company; and FVP

Servicing LLC, Delaware Limited Liability Company


LETO LAW FIRM, by

MATTHEW LETO, Esquire

On behalf of the Defendant, Hi Bar


SHRAIBERG PAGE, by

PATRICK DORSEY, Esquire

On behalf of Franklin Capital Funding

and Franklin Capital Group


STANLEY CASEY, Esquire

On behalf of Avrumi Lubin

ALSO PRESENT

JOSH LUBIN

OUELLETTE & MAULDIN COURT REPORTERS, INC.
(305) 358-8875

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

Page 3

THE COURT: All right. FVP Opportunity Fund, et al., versus Scott Zankl.

Do we have a court reporter?

COURT REPORTER: Yes, Judge.

THE COURT: Cheryl Jenkins.

COURT REPORTER: Cheryl Jenkins, yes, from Ouellette & Mauldin.

THE COURT: Ouellette & Mauldin.

COURT REPORTER: Thank you.

THE COURT: All right. Good morning.

All right. We're on the record on CACE-22-5125, FVP Opportunity Fund, III, LP, et al., versus Scott Zankl, et al.

Can I get appearances? Let me start with the plaintiffs.

MR. BRESLIN: Yes. Good morning, Judge. Jerry Breslin for the FVP parties.

THE COURT: Good morning, Mr. Breslin, and then for -- anyone else with you today?

MR. BRESLIN: No, your Honor.

THE COURT: All right. You have minimal involvement today.

All right. How about, is Scott Zankl here?

(No verbal response.)

THE COURT: Nope, it doesn't look like it.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

Page 4

All right.  How about for the co-defendants?

MR. DORSEY:  Good morning, Judge. Patrick Dorsey on behalf of the movants this morning, the Franklin parties.

THE COURT:  Good morning, Mr. Dorsey.

MR. LETO:  Good morning, your Honor. May it please the Court.  Matthew Leto on behalf of the Hi Bar defendants.

THE COURT:  Good morning, Mr. Leto.

MR. CASEY:  Good morning, your Honor. Stanley Casey on behalf of Mr. Lubin.

THE COURT:  All right.  Good morning, Mr. Casey.

Is Mr. Lubin also here?  Yep, there he is.

MR. LUBIN:  Yeah, Mr. Lubin here on behalf of myself.

THE COURT:  All right.  Well, you have an attorney now, I think.  Mr. Casey, are you here on behalf of Mr. Lubin?

MR. CASEY:  Yes, your Honor.

THE COURT:  All right.  Anyone else?

(No verbal response.)

THE COURT:  All right.  We're here, it's a motion for voluntary dismissal of claims by Franklin

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

Page 5

against everybody but Mr. Lubin, correct?

MR. DORSEY: Yes, Judge.

Just as a bit of background, Mr. Lubin filed a response to my motion yesterday. I wanted to review the response and talk it over with my client, and I was actually going to file a notice of cancellation of this hearing last night. The reason I didn't was that I saw the Court had made a notation to the notice of hearing, and added a motion to clarify.

So I don't intend to proceed with my motion this morning, I'll re-notice it if I can't come to an agreement with Mr. Lubin's counsel, but I'm here this morning because, again, the Court did make a notation to the notice of hearing. So to any extent the Court wants to address the motion to clarify this morning, I didn't want to cancel it.

THE COURT: It wasn't set at the last case management, but I addressed it, and then there was some objection afterwards, and there was an issue that did come up that I wasn't sure about.

The agreement, the common interest agreement is between Hi Bar and Spin, is that correct?

MR. DORSEY: That's what was discussed at the last hearing, yes.

THE COURT: All right.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007
INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 6

MR. DORSEY:  And Mr. Lubin's prior counsel moved to withdraw.

THE COURT:  But it's Mr. Lubin that filed the motion for clarification, not Spin, is that correct?

MR. LETO:  That's my understanding, your Honor.  Mr. Lubin --

THE COURT:  And so Mr. Lubin -- I know you represent Mr. Lubin, Mr. Casey, but he's not the party to the common interest agreement between Hi Bar and Spin.  He has a separate agreement with Spin.

MR. CASEY:  Yes, your Honor.

THE COURT:  And Spin has filed nothing, as far as I can tell.

MR. CASEY:  Correct.

THE COURT:  And you don't represent Spin, correct?

MR. CASEY:  Correct, your Honor, but I believe if there was a finding in Spin's favor, as to the common interest agreement, then his assignment from Spin to himself would be valid, as I understand it.  It's a complicated series of events.  However, he does believe that he has an interest in the proceeds.

In fact, if there is litigation on the common interest agreement, and I believe your Honor opined

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 7

-- I'm still getting caught up to speed, but I believe your Honor opined that you would not be making findings as to the common interest agreement, and that does appear in an order, the order from about a month ago, nearly. I have it here, Paragraph 8, the August 14th order that your Honor entered to endorse the settlement agreement, Paragraph 8 does make a finding as to determination of the common interest agreement, which would preclude Mr. Lubin from litigating that matter separately in New York, as I understand it.

THE COURT: Right.

Now you were not here last time, Mr. Leto, so I'll give you the first opportunity to respond.

MR. LETO: Yes, your Honor. I think that the order that your Honor entered is expressly in line with what your Honor stated at the hearing. Your Honor reviewed the common interest agreement, the terms, and the termination notice, and I believe the phrase that your Honor used was it couldn't be any more clear that it's being terminated as a matter of right by Hi Bar based upon the letter from April of 2024.

So I believe that the order is, again, in line with precisely what the Court ruled at the initial motion, and should not be clar -- does not need any further clarification of fact at this point.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

Page 8

THE COURT: All right. So the order at issue is August 14th. It's the order on the joint motion to endorse settlement, and this is what I was trying to figure out, it's not part of the ordered and adjudged, all right, because the ordered and adjudged is -- and that's clear, that I granted the joint motion to endorse the settlement agreement, and that the Court contemplates that this order shall be filed of record in the Bankruptcy Court to inform the Bankruptcy Court that the dispute between Avrumi Lubin and Hi Bar regarding the relative rights and the net proceeds in the Court registry has been resolved by a court of competent jurisdiction, and that would be here.

And so in order to get there -- and then you put -- and I put in there that the Court finds that Avrumi Lubin has no rights or standing to interfere with the Hi Bar settlement based on the plain language of the common interest agreement.

The Court further finds that the common interest agreement was terminated by Hi Bar on April 3rd, 2024, and the Court further notes that Avrumi Lubin took no action to refute Hi Bar's contractually permitted termination until the FVP parties, Franklin parties, and Hi Bar parties came to a settlement agreement.

And then when I went back and looked at

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007

RECEIVED NYSCEF: 01/19/2026

Page 9

that, I mean, the termination wasn't even as to Mr. Lubin. The termination was as to Spin, correct?

MR. LETO:  That's right, because Mr. Lubin is not a party to the common interest agreement.

THE COURT:  All right, and so I'm not sure -- and I know, Mr. Casey, you're saying that because he had a separate assignment from Spin, he had the right to -- but any objection would have to be standing in the shoes of Spin, that's to be asserted in Spin's rights.

MR. CASEY:  Perhaps as to the ability to endorse that settlement, your Honor, but the process with which a determination as to the termination of the common interest agreement, which has a forum selection clause of New York, it was not noticed, there was no evidentiary hearing.

It'd be very difficult for Mr. Lubin to bring in a declaratory action regarding the validity of the common interest agreement with this order, and we would certainly take issue with the process if we were -- I wasn't present, but counsel was just there to -- as to the endorsement of the settlement.  So that would be the issue that Mr. Lubin has with the order, coupled with Paragraph 11, where your Honor reviews the common interest agreement, the termination letter, and applicable law, and then determines that Avrumi Lubin does not have any

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 10

interest in the net proceeds.

I understand your Honor is just making a finding as to the ability to endorse the settlement, but there are -- when you couple that with the prior paragraphs, making a finding on the termination, it'd be very difficult for Mr. Lubin to have his day in Court with respect to the common interest agreement.

THE COURT:  I mean, if you look at the plain language of the common interest agreement and everything that was presented -- but I can clarify, is there any objection that the Court's findings are limited to the issues raised for purposes of granting the joint motion to endorse settlement?

MR. BRESLIN:  Well, Judge, if I may be heard?

We had a hearing on this, your Honor, and Mr. Lubin's attorney was there, and evidence was presented, Judge, and I sent a transcript to your Honor, and your Honor very clearly examined the termination notice that Mr. Leto sent to Spin, and your Honor made a finding regarding that.

And your Honor went on to say in the transcript, and I said that to you in the letter, I could read it to you, it said -- I'll just read it, I'll just read what you said, it said, I'm going to grant the joint

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

Page 11

motion to approve settlement, and based on just the plain language in the common interest and general litigation agreement, based on the April 3rd, 2024 letter terminating that agreement, and the rights under Paragraph 3 of that agreement, which is the only basis that Mr. Lubin could have to even raise any right to any of these proceeds, I do not see how Mr. Lubin has any right to stand in and contest the settlement.

Certainly, he may have claims against Hi Bar, and against Mr. Leto and whatnot, but that has nothing to do with the settlement for the proceeds of the Bankruptcy Court. So based on all that, I'm granting the joint motion for settlement, and you went on to state that the order should include your comments made at the hearing.

So what I did, Judge, is I put in the order exactly, precisely what your Honor ruled. Your Honor reviewed the termination notice and made a ruling. It was put in the order, and then, of course, I'm personally attacked for somehow trying to sneak something into an order when your Honor precisely ruled on that exact issue, and you took evidence on it.

So I understand that Mr. Lubin is not happy with the ruling. Your Honor made very clear that he could bring any actions he wants against Hi Bar or anybody else,

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007

RECEIVED NYSCEF: 01/19/2026

Page 12

anywhere else he wants, but what your Honor, I would hope, would confine yourself to is the pleadings in this case.

So in this case there was never any issues raised. It was Mr. Lubin that tried to interfere with the parties' settlement, that has already gone over to the Bankruptcy Court. The Bankruptcy Court has already ruled, and the matter is concluded.

So this is, we're trying to -- they're asking you to revisit issues that have been ruled upon, and have been acted upon by the federal court.

So I would absolutely object, Judge. The record is clear. If Mr. Lubin wants to sue Hi Bar in New York, they could argue in New York that it wasn't properly framed here, but they're asking you to litigate it. They're asking you to make a declaratory judgment, and I just think it's inappropriate, Judge, and we object.

THE COURT: All right.

MR. DORSEY: Judge, this is Mr. Dorsey for the Franklin parties.

I'd just add that the order explicitly says, for the reasons stated on the record, which are incorporated by reference. The transcript is incorporated into the order.

So to the extent Mr. Lubin is arguing, well,

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                    RECEIVED NYSCEF: 01/19/2026

Page 13

we want the order to reflect what your Honor ruled at the hearing, the transcript is part of the order, and so if Mr. Lubin wants to file an action in another forum, he can introduce the transcript and say this is what I think it means, but there's no need to move for clarification here.

MR. CASEY: Your Honor, if I may, I don't believe the transcript makes a finding as to the termination of the common interest agreement. It's simply saying that Mr. Lubin does not -- is not the named party to be endorsing the settlement, as I understand it. So he will not be able to litigate the common interest agreement when there's a finding from your Honor that the termination letter was valid and he has no interest.

THE COURT: Well, the common interest agreement is between Hi Bar and Spin.

So, in any event, I think you all are fighting over nothing, except I think we're trying to split hairs here.

I don't know what the claims are in New York, and I in no way was trying to -- trying to resolve a separate claim that Mr. Lubin may have against Hi Bar or Spin or whatnot elsewhere. It was strictly for purposes of determining who has standing, who has the right to enter into a settlement for the proceeds

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 14

in the Bankruptcy Court, and that's the determination I made.

So you have the transcript. I don't think I need to clarify that. To the extent it is, it's clarified in the transcripts we've had that this Court was not trying to say that Mr. Lubin has no claims against Hi Bar. I have no idea what his issues are there.

That being said, I was just saying that he had no right to stand in and contest the settlement or the funds that were in the Bankruptcy Court.

MR. BRESLIN: Thank you, Judge.

THE COURT: That's just the easiest thing to do, the motion for clarification is denied, but you have a record, Mr. Lubin. Good luck, I guess in New York.

MR. CASEY: All right. Thank you.

MR. LETO: Thank you, your Honor.

MR. DORSEY: Thank you.

(Thereupon, the hearing was concluded.)

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM        INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                    RECEIVED NYSCEF: 01/19/2026

Page 15

CERTIFICATION

STATE OF FLORIDA        :

COUNTY OF MIAMI-DADE   :


                    I, Cheryl L. Jenkins, RPR, RMR, Shorthand Reporter and Notary Public in and for the State of Florida at Large, do hereby certify that the foregoing proceedings were taken before me at the date and place as stated in the caption hereto on page 1; that the foregoing computer-aided transcription is a true record of my stenographic notes taken at said proceedings.

                    WITNESS my hand this 11th day of September, 2025.


                    _____

                    CHERYL L. JENKINS, RPR, RMR

                    Court Reporter and Notary Public

                    in and for the State of Florida at Large

                    Commission #HH 170910

                    December 27, 2025

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

# EXHIBIT J

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                      RECEIVED NYSCEF: 01/19/2026

Gmail - Fw: Langley Email to JA with proposed order                                13/01/2026, 16:48

Ms. Kortabani:

I am writing to advise Judge Haimes that an order on the Joint Motion to Endorse Settlement, one of yesterday's matters, was submitted without counsel first circulating the order for comments.  Please accept this email as an objection to the language contained in the proposed order.

In contravention of Florida Rule of Judicial Administration 2.516(h)(1) and Local Rule No. 8, counsel for Mr. Lubin was not furnished a copy of this proposed order prior to submission to the court. Florida Rule of Judicial Administration 2.516(h)(1) states in relevant part:

"The Court may require that orders or judgments be prepared by a party, [. . .] and may require that proposed orders and judgments be furnished to all parties before entry by the court of the order or judgment."

Local Rule 8 states in relevant part:

"Proposed Orders or Judgments must be furnished opposing counsel prior to submission to the court."

Had opposing counsel complied with these rules, Mr. Lubin would have objected to certain language, as set forth below, as being beyond the scope of your honor's ruling on the record.

Specifically, the language in the preamble, and the language in paragraphs 7, 8, 11 and 14 of the proposed order espouse an expansionist and inappropriate view of your honor's ruling.  I have attached hereto a proposed order in clean form and in redline, showing the changes to the proposed order submitted by counsel for the movants, that would be acceptable to Mr. Lubin and accurately reflects your honor's ruling.

Please feel free to have staff contact me to discuss this matter further if you see fit.

*David W. Langley, Attorney at Law*

*Pine Island Commons*

*8551 W. Sunrise Boulevard, Suite 303*

*Plantation, Florida 33322*

*Tel: 954-356-0450*

*Fax: 954-356-0451*

This communication is attorney privileged and confidential information intended only for the use of the individual or entity named above.  If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone at 954-356-0450 and return the original message to us at the e-mail address of dave@flalawyer.com.  Thank you.

Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 566 of 976

Page 133

definition, the claim alleged in the second lawsuit is going to be different.

I'm not seeking a finding as a legal matter that Josh Lubin is liable for breach of contract. I'm seeking as a factual determination, a court has already determined that factually he lied to Franklin through the assignment, he caused companies to siphon off millions of dollars from Franklin's borrowers, and he damaged Franklin. Those are factual findings. Of course they're going to be cast in different claims. I'm not suing Lubin for breach of contract, but that's what collateral estoppel is.

THE COURT: Yeah, I'm not sure.

MR. DORSEY: Well, I have to --

THE COURT: Res judicia is typically identity of parties and issues. Claim -- collateral estoppel, I think, is usually claim preclusion, but regardless, I don't see how you have the same issues in either case, and so it's a different context.

MR. DORSEY: Well, Judge, I --

THE COURT: And so even if -- I know there's findings in there, in Michigan where they indicate they just didn't find Mr. Lubin credible, but at the end of the day, they could still say breach of contract is a lower standard, he breached a contract, he didn't disclose it.

Page 134

Fraud and tortious interference require more, it's a higher -- and I know you're saying the findings were the same, but he wasn't really defending against that in Michigan.

MR. DORSEY: So what your Honor is saying is the factual findings were not necessary to the claims?

THE COURT: Exactly, and so he was not defending against claims of fraud and --

MR. DORSEY: Well, there was --

THE COURT: I guess conversion is a little bit more, I guess you're keeping the money without any right to it.

MR. DORSEY: There was conversion, Judge, yeah, right.

THE COURT: But, I mean, the elements of fraud and the elements for tortious interference are much different than a breach of contract for sure, and even a conversion claim.

MR. DORSEY: Well, the good news is, Judge, if you deny the motion, you're going to hear the full story in about 40 days, so be careful what you wish for.

THE COURT: No, I understand.

MR. DORSEY: But I do sense --

THE COURT: I'm probably going to hear a lot of it anyway, because of select additional parties.

Page 135

So I guess Mr. Lubin is behind, not just -- he's behind also Hi Bar, too, right?

MR. DORSEY: Well, he's definitely behind Spin. Whether he's behind Hi Bar, that's what your Honor adjudicated earlier in this hearing, whether that common interest agreement gives him an interest in Hi Bar.

THE COURT: All right, and then there's --

MR. KASEN: Your Honor, I just want to jump in and make sure that the record is clear, that I don't think that that's what your Honor ruled earlier --

THE COURT: No.

MR. KASEN: -- regarding Spin and Hi Bar.

I think that your Honor ruled that you weren't going to opine as to the advocacy of the common interest agreement, just that the settlement can be entered into, and if Mr. Lubin believes he has rights pursuant to the common interest agreement, he can pursue them elsewhere.

THE COURT: He can definitely sue Hi Bar, but what I was ruling is that, basically at a settlement by Hi Bar, who was the one who filed the claims in the bankruptcy court and here, that there was nothing that gave Mr. Lubin a right to those proceeds. I guess it --

MR. DORSEY: I was -- your Honor, just to avoid kind of more talking in circles, I was paraphrasing

NYSCEF DOC. NO. 1007

RECEIVED NYSCEF: 01/19/2026

Page 136

your Honor's opinion.

THE COURT: Okay.

MR. DORSEY: I was not attempting to attach another layer of gloss to it.

THE COURT: All right, but, in any event, I'm going to deny the motion for summary judgment. You do have different parties. I don't know why you didn't just sue Mr. Lubin. You're going through all that trouble to sue Slide, I'm not sure -- or Spin, I keep saying Slide, Spin, I don't know why they didn't try to sue Lubin there as well.

MR. DORSEY: I'm not barred in Michigan, but I will pass the question along.

THE COURT: It's just, and then they could have brought the fraud claims as well, but anyway, I'm going to deny it. I don't think you have a similarity of issues or parties.

MR. DORSEY: Your Honor, thank you for being very patient over the last three hours.

THE COURT: I had set the whole afternoon aside. I know there's a lot going on.

Yeah, I'm hopeful some of it gets -- more of it gets resolved, but I'm not sure if it will. I think we're going to trial on a lot of these issues.

MR. DORSEY: More likely than not.

Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 570 of 976

Page 137

THE COURT: We'll see.

MR. DORSEY: But hope springs eternal, so we'll see.

THE COURT: All right. You all have a great day, and thanks for sticking it out. I know you got pushed down. That took a lot longer, the 1:30, so --

MR. DORSEY: Yes.

MR. LANGLEY: Pat, you're going to do the order?

MR. DORSEY: I'll run it by Mr. Langley, it's just going to be very simple, for the reasons stated on the record.

THE COURT: Exactly, and put that we had a court reporter here.

MR. DORSEY: Yep.

THE COURT: All right.

MR. DORSEY: Thank you, Judge.

MR. KASEN: Your Honor, I want to thank you as well, and thank you for allowing me to appear pending my pro hac vice motion.

THE COURT: No worries, and you are showing up now, not your video. For some reason your video is not working, but before when you were speaking, it showed up as a different name. I don't know why that was, but in any event, you have a -- where are you located at,

Case 23-01132-EPK Doc 3831-2 Filed 01/22/26 Page 571 of 976

Page 138

Mr. Kasen?

MR. KASEN:  New York.

THE COURT:  Okay.  All right.  Well, hopefully it's not too hot there.  It's probably hot everywhere.

MR. KASEN:  It's pretty hot today.

THE COURT:  All right.  Have a great day.

MR. KASEN:  Have a wonderful day.

THE COURT:  Yeah, you, too.

MR. DORSEY:  Thanks, Judge.

THE COURT:  All right.  Thank you.

MR. LANGLEY:  Thank you, Judge.

(Thereupon, the hearing was concluded.)

Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 572 of 976

Page 139

CERTIFICATION

STATE OF FLORIDA          :

COUNTY OF MIAMI-DADE   :


              I, Cheryl L. Jenkins, RPR, RMR, Shorthand

Reporter and Notary Public in and for the State of Florida

at Large, do hereby certify that the foregoing proceedings

were taken before me at the date and place as stated in

the caption hereto on page 1; that the foregoing

computer-aided transcription is a true record of my

stenographic notes taken at said proceedings.

              WITNESS my hand this 18th day of

August, 2025.


_____

CHERYL L. JENKINS, RPR, RMR

Court Reporter and Notary Public
in and for the State of Florida at Large
Commission #HH 170910
December 27, 2025

OUELLETTE & MAULDIN COURT REPORTERS, INC.
(305) 358-8875

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007
RECEIVED NYSCEF: 01/19/2026

# Exhibit D

Filing # 229455396 E-Filed 08/14/2025 03:31:21 PM

## IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
## IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO. **CACE22005125**   DIVISION: **07**   JUDGE: **Haimes, David A (07)**

**FVP Opportunity Fund III, LP, et al**

Plaintiff(s) / Petitioner(s)

v.

**Scott Zankl, et al**

Defendant(s) / Respondent(s)

_____ /

## ORDER ON JOINT MOTION TO ENDORSE SETTLEMENT

THIS CAUSE came before the Court for hearing on August 13, 2025, on the *Joint Motion to Endorse Settlement Agreement* filed (the "Motion") jointly by: (1) Plaintiffs, FVP Opportunity Fund III, LP, FVP Investments, LLC, and FVP Servicing, LLC (jointly and severally, the "FVP Parties"); (2) Defendants/Cross-Plaintiffs, Franklin Capital Funding, LLC, Franklin Capital Group, LLC, and Franklin Capital Management, LLC (jointly and severally, the "Franklin Parties"); and (3) Defendants, Yisroel Herbst, Mordechai Herbst, and Hi Bar Capital, LLC (jointly and severally, the "Hi Bar Parties"). Present at the hearing were counsel for the FVP Parties, Franklin Parties, and Hi Bar Parties, together with: (1) David Langley, Esq., counsel for Defendant Avrumi "Josh" Lubin ("Avrumi Lubin") and (2) Micheal J. Kasen, Esq, who the Court admitted pro hac vice as co–counsel for Avrumi Lubin prior to the hearing and who participated via Zoom at the hearing in support of the objections filed and otherwise raised by Avrumi Lubin. Other attorneys listened to the hearing regarding the Motion on Zoom but did not participate therein.

After reviewing the Motion and other relevant documents, including the Common Interest and Joint Litigation Agreement ("Common Interest Agreement") between Hi Bar Capital, LLC ("Hi Bar") and Spin Capital, LLC ("Spin"), and the letter terminating that agreement dated April 3, 2024, and after hearing the arguments of counsel for all parties, the Court makes the following findings of fact and conclusions of law:

1. Beginning in the fall of 2022, the FVP Parties, Franklin Parties, and Hi Bar Parties were each parties in Adversary Proceeding No. 22-01218-EPK, which was pending in the United States

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 575 of 976

Case Number: CACE22005125

Bankruptcy Court for the Southern District of Florida, West Palm Beach Division (the "Bankruptcy Court"). The parties in the adversary proceeding were litigating their respective claims to vehicles removed from the Karma of Palm Beach, Inc. lot by other Defendants in this action, and which were claimed as part of the bankruptcy estate *In re: Auto Wholesale of Boca, LLC,* Case No: 22-15627-EPK, a bankruptcy case which was also pending in the Bankruptcy Court. That bankruptcy case proceeded to a two-day evidentiary hearing in March 2023, after which the Bankruptcy Court converted the case to a Chapter 7. *See* Case No: 22-15627-EPK – [ECF No. 584].

2. On June 23, 2023, pursuant to an agreement between the FVP Parties, Franklin Parties, Hi Bar Parties and the Chapter 7 Trustee, and at the Chapter 7 Trustee's request, the Bankruptcy Court endorsed said agreement, ordered the vehicles sold, and directed that the Net Proceeds from the sale be held as and distributed as follows:

> 8. The proceeds of the Auction, net of the Buyer's Premium, Expenses and Carveout (such net proceeds shall be referred to herein as the "Net Proceeds"), shall be held pending adjudication by a court of competent jurisdiction as to the validity, priority and extent of property interests asserted in the Net Proceeds or consensual resolution between and among the parties whom have appeared in the main bankruptcy case or the Adversary Proceeding and asserted interests therein. Only (i) parties to the Adversary Proceeding Complaint, or (ii) parties that have appeared in the main bankruptcy case and asserted an interest in the Vehicles, may make a claim against the Net Proceeds.

> 9. The Trustee, as the duly appointed chapter 7 trustee of the bankruptcy estate of Auto Wholesale of Boca, LLC, hereby waives all Liens and Interests, including any lien, ownership interest, property interest, security interest, or any other claim (as such term is defined in 11 U.S.C. § 101(5)) or interest of any kind whatsoever in the Net Proceeds and Vehicles. For the avoidance of doubt, the waiver includes any allegation that Auto Wholesale of Boca, LLC was a good faith purchaser of the Vehicles in the ordinary course under Fla. Stat. §§ 671.201(9) and 679.320(1).

> 10. The waiver of the Liens and Interests by the Trustee, as set forth in the preceding paragraph, is binding on Auto Wholesale of Boca, LLC in any future controversy, litigation, or any other dispute arising from or concerning the Net Proceeds. Auto Wholesale of Boca, LLC does not possess any Liens or Interests in the Net Proceeds, including any lien, security interest, or ownership or property interest whatsoever.

[See *Order Granting in Part Expedited Motion to Authorize Sale* [ECF. 618] at [ECF. 694] at ¶¶ 6, 8 and 10]. (the "Bankruptcy Court Sale Order"). The terms "Adversary Proceeding" and "Net Proceeds" shall have the meanings ascribed to them in the Bankruptcy Court Sale Order.

Case Number: CACE22005125

3. Thus, per the Bankruptcy Court Sale Order, the Net Proceeds were to be held in the registry of the Bankruptcy Court pending the occurrence of either: (i) adjudication by a court of competent jurisdiction as to the validity, priority and extent of interests in the Net Proceeds, or (ii) "consensual resolution between and among the parties whom have appeared in the main bankruptcy case or the Adversary Proceeding and asserted interests therein."

4. On July 26, 2025, the FVP Parties, Franklin Parties, and Hi Bar Parties entered into the consensual resolution (the "Settlement Agreement") contemplated by Bankruptcy Court Sale Order and filed a motion for the Bankruptcy Court to release the Net Proceeds pursuant to the consensual resolution. In response, Avrumi Lubin filed objections in the Bankruptcy Court and argued that Avrumi Lubin was the assignee of Hi Bar's rights and that Hi Bar had no authority to enter into the Settlement Agreement. In support of Avrumi Lubin's argument, he filed of record the Common Interest Agreement and an assignment of Spin's rights to Avrumi Lubin.

5. The Bankruptcy Court initially denied the FVP Parties', Franklin Parties', and Hi Bar Parties' joint motion for release of the funds, and after reconsideration, ultimately denied such motion, on the basis that it lacked subject matter jurisdiction to consider the dispute raised by Lubin regarding the enforceability and termination of the Common Interest Agreement.

6. In doing so the Bankruptcy Court specifically referred the dispute between Avrumi Lubin and Hi Bar to this Court as the court with jurisdiction to "determine which of the Movants and Mr. Lubin have rights in the Net Proceeds. The Court encourages the parties to seek appropriate rulings in the Broward Action." See *Order Denying Expedited Joint Motion*, [ECF. 952] at p 9.

7. This Court reviewed the Common Interest Agreement as well as a termination letter issued by the attorney for Hi Bar on April 3, 2024 and heard detailed argument by counsel for Avrumi Lubin, the Hi Bar Parties, FVP Parties and Franklin Parties.

8. This Court finds that Avrumi Lubin has no rights or standing to interfere with the Hi Bar settlement based on the plain language of the Common Interest Agreement. The Court further finds that the Common Interest Agreement was terminated by Hi Bar on April 3, 2024. The Court further notes that Avrumi Lubin took no action to refute Hi Bar's contractually permitted termination until the FVP Parties, Franklin Parties, and Hi Bar Parties came to a Settlement Agreement.

9. The Court finds that Hi Bar had the power and authority to enter into the Settlement Agreement with the FVP Parties and Franklin Parties. Avrumi Lubin, on the other hand, has no right or standing to object to the Settlement Agreement.

Case Number: CACE22005125

Accordingly, and for the reasons stated on the record at the August 13, 2025 hearing (court reporter present), which are incorporated herein by reference, it is hereby:

**ORDERED AND ADJUDGED** as follows:

10. This Court is the court of competent jurisdiction to resolve the dispute between Hi Bar and Avrumi Lubin as contemplated by the *Order Denying Expedited Motion* [ECF. 952] issued by the Bankruptcy Court.

11. This Court has reviewed the Common Interest Agreement, the termination letter and applicable law and has determined that neither Avrumi Lubin, nor any of this affiliated entities, have any rights to the Net Proceeds as that term is defined in the *Bankruptcy Court Sale Order* [ECF. 694] and *Order Denying Expedited Joint Motion*, [ECF. 952].

12. The Joint Motion to Endorse Settlement Agreement filed by the FVP Parties, Franklin Parties, and Hi Bar Parties is hereby **GRANTED** in its entirety.

13. Pursuant to the Settlement Agreement between the FVP Parties, Franklin Parties, and Hi Bar Parties, as stated to this Court on the record, the Net Proceeds should be distributed to the trust account of counsel for the FVP Parties.

14. This Court contemplates that this Order shall be filed of record in the Bankruptcy Court to inform the Bankruptcy Court that the dispute between Avrumi Lubin and Hi Bar regarding their relative rights in the Net Proceeds in the court registry has been resolved by a court of competent jurisdiction.

15. The FVP Parties, Franklin Parties, and Hi Bar Parties shall serve a copy of the Settlement Agreement on counsel for Avrumi Lubin and the Farache Defendants within five (5) days of this order.

16. The *ore tenus* motion to stay the effect of this order made by counsel for Avrumi Lubin is **DENIED**. As time is of the essence, this order shall have immediate effect and is binding unless vacated by court order or stayed by an appropriate court of appellate jurisdiction.

17. This Court retains jurisdiction to enforce this order as required.

Case Number: CACE22005125

**DONE AND ORDERED** in Chambers at Broward County, Florida on <u>14th day of August, 2025</u>.

CACE22005125 08-14-2025 3:31 PM
Hon. David A Haimes
**CIRCUIT COURT JUDGE**
Electronically Signed by David A Haimes

**Copies Furnished To:**
Alan R Crane , E-mail : staff1@furrcohen.com
Alan R Crane , E-mail : yfernandez@furrcohen.com
Alan R Crane , E-mail : acrane@furrcohen.com
Amanda Klopp , E-mail : jeanette.martinezgoldberg@akerman.com
Amanda Klopp , E-mail : luke.bovat@akerman.com
Amanda Klopp , E-mail : amanda.klopp@akerman.com
Andrew R Herron , E-mail : gservice@homerbonner.com
Avrumi Lubin , E-mail : josh@spincapital.com
Bernard Egozi , E-mail : gale@egozilaw.com
Bernard Egozi , E-mail : begozi@egozilaw.com
Beth Anne Black , E-mail : alex.amburgy@gtlaw.com
Beth Anne Black , E-mail : blackb@gtlaw.com
Beth Anne Black , E-mail : WPBLitDock@gtlaw.com
Bradford M Cohen , E-mail : service@floridajusticefirm.com
Bradley S Shraiberg , E-mail : dwoodall@slp.law
Bradley S Shraiberg , E-mail : bss@slp.law
Bradley S Shraiberg , E-mail : pmouton@slp.law
Branden Stillman , E-mail : bstillman@egozilaw.com
Bridgette N. Thornton, Esq. , E-mail : freelancethornton@gmail.com
Charles Bennardini , E-mail : jam@kwblaw.com
Charles Bennardini , E-mail : cjb@kwblaw.com
Charles Gourlis , E-mail : cgourlis@letolawfirm.com
Charles Gourlis , E-mail : kzelaya@letolawfirm.com
Charles Gourlis , E-mail : pleadings@letolawfirm.com
David B Marks , E-mail : brett.marks@akerman.com
David B Marks , E-mail : charlene.cerda@akerman.com
David W Langley , E-mail : emily@flalawyer.com
David W Langley , E-mail : dave@flalawyer.com
David W Langley , E-mail : jessica@flalawyer.com
Dominique Brown , E-mail : BrownD@KleinPark.com
Dominique Brown , E-mail : orozcoI@kleinpark.com
Dominique Brown , E-mail : mcmurrayj@kleinpark.com
Ellen L. Leesfield , E-mail : cristina@ellenleesfield.com
Ellen L. Leesfield , E-mail : ellen@ellenleesfield.com
Elliot B Kula , E-mail : eservice@kulalegal.com

Case 23-01132 EPK Doc 383-1 Filed 01/22/26 Page 579 of 976

Case Number: CACE22005125

Elliot B Kula , E-mail : elliot@kulalegal.com
Ethan J Strauss , E-mail : ethan@floridajusticefirm.com
Ethan J Strauss , E-mail : Ethan.HYRW@case.tinygnomes.com
Grant Sarbinoff , E-mail : gsarbino@gmail.com
Jerrell Andrew Breslin , E-mail : jerrellbreslin@gmail.com
Jerrell Andrew Breslin , E-mail : eservice@jsjb.law
Jerrell Andrew Breslin , E-mail : jb@jsjb.law
Joel L. Wiegert, Esq. , E-mail : Joel.Wiegert@KutakRock.com
Joel M Aresty , E-mail : aresty@icloud.com
Joel M Aresty , E-mail : Aresty@mac.com
Jonathan E Kanov , E-mail : jekanov@mdwcg.com
Jonathan E Kanov , E-mail : kafriday@mdwcg.com
Jonathan Noah Schwartz , E-mail : jv@jsjb.law
Jonathan Noah Schwartz , E-mail : js@jsjb.law
Jonathan Schwartz, Esq. , E-mail : jschwartz@jonschwartzlaw.com
Keith Lee , E-mail : klee@feenixpartners.com
Kristin Zankl , E-mail : kzankl@att.net
Legal Assistant , E-mail : receptionwlg300@gmail.com
Luke T Jacobs , E-mail : service@wdpalaw.com
Luke T Jacobs , E-mail : ljacobs@wdpalaw.com
Marc Evan Brandes , E-mail : lbevans@kfb-law.com
Marc Evan Brandes , E-mail : mbrandes@kfb-law.com
Marc Evan Brandes , E-mail : bvillalobos@kfb-law.com
Mark C Perry , E-mail : mark@markperrylaw.com
Mark C Perry , E-mail : maureen@markperrylaw.com
Matthew P Leto , E-mail : mleto@letolawfirm.com
Michael James McMullen , E-mail : Michael@FloridaJusticeFirm.com
Michael James McMullen , E-mail : McMullen.ZCKM@case.tinygnomes.com
Nelly Pena , E-mail : janet.mcmurray@fmglaw.com
Nelly Pena , E-mail : stinelly.pena@fmglaw.com
Patrick Dorsey , E-mail : pdorsey@slp.law
Richard M Jones , E-mail : myrna.montane@fmglaw.com
Richard M Jones , E-mail : richard.jones@fmglaw.com
Robert C Buschel , E-mail : Buschel@BGlaw-pa.com
Robert C Buschel , E-mail : BG.J6R6@case.tinygnomes.com
Robert M Klein , E-mail : robert.klein@fmglaw.com
Robert M Klein , E-mail : martica.carrillo@fmglaw.com
Robert M Klein , E-mail : janet.mcmurray@fmglaw.com
Rose Mahdavieh , E-mail : rose.mahdavieh@gtlaw.com
Salvatore Fazio , E-mail : salfaziolaw@gmail.com
Salvatore Fazio , E-mail : sfazio@500law.com
Salvatore Fazio , E-mail : docketing@500law.com
Scott C Gherman , E-mail : kgleason@scottghermanpa.com
Scott C Gherman , E-mail : sgherman@scottghermanpa.com
Scott Zankl , E-mail : zanklscott3@gmail.com
Steven Harry Meyer , E-mail : service.meyerlaw@gmail.com

Case 23-01132-EPK   Doc 383-1   Filed 01/22/26   Page 580 of 976

Case Number: CACE22005125

Steven Harry Meyer , E-mail : ross@professionalparas.com
Steven Harry Meyer , E-mail : steven@thefirm.legal
Teresa E Williams , E-mail : twilliams@williamslitigationgroup.com

Case 23-01132-EPK Doc 3831 Filed 01/22/26 Page 581 of 976

# Exhibit E

Case 22-15627-EPK    Doc 965    Filed 08/27/25    Page 1 of 3



**ORDERED in the Southern District of Florida on August 27, 2025.**

**Erik P. Kimball**
**Chief United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

AUTO WHOLESALE OF BOCA, LLC,

Debtor.

_____/

Case No. 22-15627-EPK

Chapter 7

**ORDER (I) GRANTING EXPEDITED JOINT MOTION TO ORDER
DISTRIBUTION OF AUCTION PROCEEDS TO COUNSEL
FOR THE FVP PARTIES PURSUANT TO STATE COURT ORDER,
AND (II) DISCHARGING ORDER TO SHOW CAUSE**

THIS MATTER came before the Court for hearing on August 27, 2025 on the

*Expedited Joint Motion to Order Distribution of Auction Proceeds to Counsel for the FVP*

*Parties Pursuant to State Court Order* (Dkt. No. 954, the "Motion"), and the *Order to Show*

*Cause Why Certain Funds Held by the Clerk Should Not Escheat to the United States*

*Treasury* (Dkt. No. 911). In the Motion, Franklin Capital Funding, LLC; Franklin Capital

Group, LLC; Franklin Capital Management, LLC; FVP Opportunity Fund III, LP; FVP

Investments, LLC; FVP Servicing, LLC; and Hi Bar Capital, LLC (together, the "Movants")

ask the Court to direct, pursuant to a settlement among the Movants, the release of certain

funds held in the registry of the Court.

The history of this matter is set forth in detail in the Court's *Order Denying*

*Expedited Joint Motion* (Dkt. No. 952), which is incorporated here in full. Capitalized

terms have the meanings given in that order. The Court ruled that it could not and would

not rule on the dispute between Avrumi Lubin and Hi Bar Capital, LLC regarding their

relative rights in the Net Proceeds held in the registry of this Court. The Court encouraged

the parties to obtain a ruling from another court having competent jurisdiction. They have

done so.

In its *Order on Joint Motion to Endorse Settlement* entered on August 14, 2025 in

Case No. CACE-22-005125 (Dkt. No. 954 Ex. A, the "State Court Order"), the Circuit Court

of the 17th Judicial Circuit in and for Broward County, Florida ruled, among other things,

that neither Avrumi Lubin nor any of his affiliated entities have any rights to the Net

Proceeds and that the Net Proceeds should be distributed to the trust account of counsel for

certain of the Movants consistent with the settlement approved by that court. Following

the State Court Order, the Movants are the only parties who may seek release of the Net

Proceeds consistent with the Sale Order.

In light of the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1.      The *Expedited Joint Motion to Order Distribution of Auction Proceeds to*

*Counsel for the FVP Parties Pursuant to State Court Order* (Dkt. No. 954) is GRANTED as

provided herein.

2.      The Clerk is DIRECTED to disburse the Net Proceeds currently held in the

registry of the Court, in the amount of $2,107,548.61 plus accrued interest (if any), to the

order of the law firm Schwartz Breslin PLLC, to be further disbursed according to the settlement approved by the State Court Order.

3.     Schwartz Breslin PLLC must contact the Financial Section to obtain the AO 213P form required for disbursement.

4.     Any and all objections are OVERRULED.

5.     The *Order to Show Cause Why Certain Funds Held by the Clerk Should Not Escheat to the United States Treasury* (Dkt. No. 911) is DISCHARGED.

###

Copy to:

Patrick Dorsey, Esq.

*Attorney Patrick Dorsey is directed to serve a conformed copy of this Order on all appropriate parties and file a certificate of service with the Clerk.*

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 585 of 976

# EXHIBIT G

Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 586 of 976

Filing # 230162252 E-Filed 08/25/2025 03:01:49 PM

## IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
## IN AND FOR BROWARD COUNTY FLORIDA

|  |  |
|---|---|
| FVP OPPORTUNITY FUND III, LP, a Delaware Limited Partnership *et al.*, | X X X X X X X |
| Plaintiffs, | X X |
| v. | X **Case No. CACE-22-005125** |
| HI BAR CAPITAL, LLC, a New York Limited Liability Company, *et al.*, | X X X |
| Defendants. | X X |
| HI BAR CAPITAL, LLC, a New York Limited Liability Company, | X X X |
| Plaintiff, | X **Case No. CACE-22-006401** X **Consolidated Case** |
| v. | X X |
| KARMA OF PALM BEACH, INC., a Florida Corporation, *et al.* | X X X |
| Defendants. | X |

## AVRUMI LUBIN'S MOTION FOR
## RECONSIDERATION AND/OR CLARIFICATION
## OF ORDER ENTERED AUGUST 14, 2025

COMES NOW, Avrumi "Josh" Lubin (hereinafter, "Lubin"), by and through his

undersigned counsel, and pursuant to the Florida Rules of Civil Procedure and this Court's

inherent authority, respectfully moves for reconsideration and/or clarification of this Court's

Order on Joint Motion to Endorse Settlement entered on August 14, 2025 (hereinafter, the

"Order"), and in support thereof states:

## I. INTRODUCTION

1. On July 27, 2025, a Joint Motion to Endorse Settlement, Consensual Resolution and Issue Order to Bankruptcy Court (hereinafter, the "Motion") was filed by FVP Opportunity Fund III, LP, FVP Investments, LLC, and FVP Servicing, LLC (hereinafter, the "FVP Parties"), Franklin Capital Funding, LLC, Franklin Capital Group, LLC, Franklin Capital Management, LLC (hereinafter, the "Franklin Parties"), Yisroel Herbst, Mordechi Herbst and Hi Bar Capital, LLC (hereinafter, the "Hi Bar Parties" and together with the FVP Parties and the Franklin Parties, the "Movants"). **The Motion was Never Noticed for Hearing.**

2. Thereafter, on August 12, 2025 at 5:48 p.m., the Movants filed a Superseding Motion to Endorse Settlement, Consensual Resolution and Issue Order to Bankruptcy Court (hereinafter, the "Superseding Motion"). The Superseding Motion was noticed for hearing on August 13, 2025 at 2:30 p.m., less than 24 hours notice.

3. Lubin responded to the Superseding Motion on August 13, 2025 (hereinafter, "Lubin's Objection"). A copy of Lubin's Objection to the Superseding Motion is attached hereto as Exhibit "A".

4. On August 13, 2025 the Court heard argument on the Motion from the Movants and Lubin at the 1:30 p.m. hearing (hereinafter, the "Hearing"). A copy of the transcript of the Hearing is attached hereto as Exhibit "B". The Court was apparently unaware of the Superseding Motion or Lubin's Objection (*see Transc.Page 23, line 6, through Page 24 line 10*).

5. On August 14, 2025 the Moving Parties submitted a proposed order to chambers without first furnishing the proposed order (hereinafter, the "Proposed Order") to counsel for Lubin. This action was in contravention of Florida Rule of Judicial Administration 2.516(h)(1) and Local Rule 8.

Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 588 of 976

6. The Proposed Order contained findings that were beyond those reached by this Court at the Hearing, were beyond the issues contained in the Motion or Superseding Motion, were not briefed and were not noticed for hearing and as such are a clear violation of due process.

7. Counsel for Lubin, promptly upon receipt of the Proposed Order, notified the Court of this impropriety and provided both a redlined copy of the Proposed Order and a clean copy incorporating such revisions. A copy of the email notifying the Court is attached hereto as Exhibit "C".

8. Despite bringing these improprieties to the Courts attention, the Proposed Order was entered as drafted by the Moving Parties.

9. Respectfully, reconsideration and/or clarification is warranted because the Order misapprehends the scope of the record, overlooks relevant facts, and creates ambiguity as to whether the Court has made a final adjudication of Lubin's assignment claims or simply ruled on the Motion.

## II. BASIS FOR RECONSIDERATION

4. "It is well settled in this state that a trial court has inherent authority to reconsider [. . .] any of its interlocutory rulings prior to the entry of a final judgment or final order in the cause." *Bettez v. City of Miami*, 510 So 2d. 1242, 1243 (Fla. 3d DCA 1987).

5. Motions for reconsideration in Florida, while not authorized by the Rules, can be traced to at least 1924 when the Florida Supreme Court indicated it "well settled that interlocutory judgments or decrees made in the progress of a cause are always under the control of the court until final disposition of the suit, and they may be modified or rescinded upon

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                RECEIVED NYSCEF: 01/19/2026

sufficient grounds, shown any time before final judgment." *Alabama Hotel Co. v. J.L. Mott Iron Works*, 98 So. 825, 826 (1924).

6.     The Order appears to have overlooked or misapprehended (i) the assignment rights pursuant to the Common Interest Agreement; (ii) the scope of the referral from the Bankruptcy Court; (iii) the lack of effect of the purported termination letter; (iv) the effect of an existing restraining order; and (v) the fact that Lubin has taken actions to enforce the Common Interest Agreement and isn't now estopped from making such arguments.

**The Order Overlooked or Misapprehended the Assignment of Rights Pursuant to Common Interest Agreement.**

7.     The record is clear that pursuant to the Common Interest Agreement, "Hi Bar hereby assigns to Spin Capital any and all Hi Bar Claims".[1] (*See Common Interest Agreement*, ¶ 2(a)). The claims asserted against the funds subject to the Motion fit squarely within the claims that were undoubtedly assigned by Hi Bar to Spin.

8.     In fact, the Movants do not argue that the claim to the funds asserted in the Motion and the Superseding Motion fall outside of the claims that were assigned by Hi Bar to Spin, rather, they argue that the Common Interest Agreement was terminated and therefore the assignment is no longer valid.

---

[1] Hi Bar Claims is defined in the Common Interest Agreement in paragraph F, as "Hi Bar possesses or may possess claims, causes of action, and can seek certain relief against Defendants, and any entities affiliated with or owned by Defendants (collectively, "Litigation Parties") resulting or related to the Hi Bar MCA/Obligation, the Hi Bar Secured Claims, and the Vehicle Collateral, including, inter alia, claims, causes of action, and motion practice seeking relief for foreclosure, replevin, fraudulent transfer and avoidance claims arising under the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and applicable state and federal law. The foregoing claims, causes of action, and motion practice seeking relief against Litigation Parties that Hi Bar may have or may be able to assert against Litigation Parties in the NY Litigation, the FL Litigation, the Bankruptcy Proceedings, shall collectively be referred to as the "Hi Bar Claims."

9.      This is a red hearing that must be addressed. The Common Interest Agreement is clear that termination can **only** occur "In the event Hi Bar in its absolute discretion **is not satisfied with Spin Capital's management of defense of Counterclaims against Hi Bar"[2]** (*See Common Interest Agreement,* ¶ 2(f)(ii)). There can be no termination of the Common Interest Agreement for any other reason.

10.     Each of the enumerated counterclaims have been dismissed with prejudice and at no time has Hi Bar asserted any dissatisfaction with Spin's management of any of the enumerated counterclaims.

11.     At the Hearing, the Movants argued that the Common Interest Agreement was effectively terminated by letter from Matthew Leto dated April 3, 2024. That is simply not the case and will be addressed below.

12.     The Court did not consider the real issue presented in the Motion and Superseding Motion as it pertains to the Common Interest Agreement – Can Hi Bar enter into a settlement agreement with the FVP Parties and the Franklin Parties after assigning those rights to Spin.

**The Order Overlooked or Misapprehended the Scope of the Bankruptcy Court Referral.**

13.     The Bankruptcy Court expressly referred to this Court the question of "which of the Movants and Mr. Lubin have rights in the Net Proceeds." (*In re Auto Wholesale of Boca,*

---

[2] Counterclaims is also a defined term in the Common Interest Agreement. Paragraph H states, "In the NY Litigation, on or about March 18, 2022: (x) Excell Auto Group, Inc. filed a verified third-party complaint against Spin Capital asserting certain claims and causes of action against Spin Capital; and (y) certain Defendants filed counterclaims against Hi Bar. On or about March 25, 2022, Franklin Capital Group, LLC ("FCG LLC") initiated an action captioned Franklin Capital Group, LLC v. Spin capital, LLC and Hi Bar Capital, LLC, in the United States District Court for the Eastern District of Michigan (the "MI Court"), as Case No. 2022-193300-CB (the "Michigan Litigation").1 Consequently, as part of and in conjunction with the NY Litigation and the Michigan Litigation (and potentially in the FL Litigation and Bankruptcy Proceedings ), certain Defendants
and FCG LLC have asserted, and may assert in the future, claims, causes of action, and counterclaims against one or both Parties (collectively, the "Counterclaims").

Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 591 of 976

LLC, Bankr. S.D.Fla. Case No. 22-15627-EPK, Order Denying Expedited Joint Motion, [ECF 952], p. 9)[3]. The issue referred to this Court has not been brought before this Court. The Motion and the Superseding Motion seek endorsement of a settlement agreement prior to such analysis. By finding that Lubin has "no rights". without analysis of the assignment itself, the Order does not address the specific referral issue.

14. The Movants also argued that they were the only parties with an interest in the funds held in the Bankruptcy Court Registry. **That argument was rejected by the Bankruptcy Court.** In the Order Denying Expedited Joint Motion, [ECF 952], attached Exhibit D. Judge Kimball stated:

> The Court previously stated that because Mr. Lubin is bound by all terms of the Sale Order including the Limiting Language, which does not reference him personally, that Mr. Lubin is not permitted to seek any relief in connection with release of the Net Proceeds. Dkt. No. 944. **Based on the information now before the Court, the Court's view was incorrect.**

**The Order Overlooks or Misapprehends the Characterization of Termination Letter.**

15. The Order treats the April 3, 2024 letter as conclusively terminating the Common Interest Agreement, although Lubin disputes its effectiveness.

16. This is an issue that was not properly before the Court and to rule on the effectiveness of the April 3, 2024 letter was improper.

17. The April 3, 2024 letter was not an effective termination of the Common Interest Agreement. As stated above, termination of the Common Interest Agreement by Hi Bar could only be accomplished if Hi Bar was dissatisfied with the defense of counterclaims. All

---

[3] A copy of the Order Denying Expedited Joint Motion was filed to the docket in this case on August 13, 2025 and is attached hereto as Exhibit "D" for convenience.

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 592 of 976

enumerated counterclaims had been dismissed at the time of the April 3, 2024 letter. In fact, the Counterclaims were dismissed before Mr. Leto was ever hired.

18. At the Hearing, the Hi Bar Parties argued that, the termination provision accounted for dissatisfaction of additional counterclaims, beyond those enumerated, to be considered cause for termination and that the April 3, 2024 letter indicated such dissatisfaction.

19. This is another red hearing. What wasn't made clear at the hearing is that Hi Bar's own attorney, Mr. Leto, who, up until at least the time of the April 3, 2024 letter, was acting at the behest of Spin, pursuant to the terms of the Common Interest Agreement, is the attorney that was handling the defense of the additional case that Mr. Leto now claims Hi Bar had been dissatisfied with.

20. In essence, Mr. Leto argued before this Court that he wrote the April 3, 2024 letter to express to Spin that he (Mr. Leto) was dissatisfied with the job he (Mr. Leto) was doing, defending the claims brought against Hi Bar in this action. This interpretation of the April 3, 2024 letter is so ridiculous, it is no wonder the Court didn't consider it – yet it is exactly what was argued.

21. At the hearing Mr. Leto argued, for the first time, that the Common Interest Agreement was not terminated because of lack of payment, but because Hi Bar was not satisfied with Spin Capital LLC's handing of "Counterclaims", as that term is defined in the Common Interest Agreement, Paragraph H.

22. He based that claim on the statement in his letter that "Lubin has taken litigation positions that are adversarial to Hi Bar", with no explanation as to what "adversarial positions" Lubin had taken, or how or why they caused Hi Bar to be dissatisfied with the handling of counterclaims.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

23. It was Mr. Leto who was handling those claims as counsel for both Spin Capital LLC and Hi Bar. (*See, i.e.* Hi Bar Capital's Counterclaim and Third-Party Complaint filed by attorney Leto March 21, 2024; Hi Bar's Second Motion for Extension of Time filed by Mr. Leto February 15, 2024)

24. The Franklin Parties subsequently filed counterclaims against Hi Bar, but not until April 23, 2024, after Leto's letter.

25. It is, therefore, an impossibility that the April 3, 2024 letter served as notice of dissatisfaction of the Counter Claims as that term is defined in the Common Interest Agreement.

## The Order Overlooked That The Settlement Agreement is Violative of a Temporary Restraining Order.

26. This Court entered a temporary restraining order preventing the transfer of any collateral, of which the Net Proceeds held by the Bankruptcy Court's Register would be included, as a result of a Verified Motion for Appointment of Receiver, Temporary Restraining Order and Injunction Supported by Verified Pleading filed on April 11, 2022. A copy of that motion is attached hereto as Exhibit "E"[4].

27. The Temporary Restraining Order has never been vacated and the Motion and Superseding Motion did not seek to vacate the existing restraint.

## The Order Misapprehended or Overlooked the Argument that Lubin is not Estopped From Asserting His Rights.

28. At the hearing, the FVP Parties argued Lubin is estopped from raising an objection to the settlement agreement and doesn't have standing. Specifically, Mr. Breslin, counsel for the FVP parties stated:

---

[4] Lubin is attempting to locate the transcript from the hearing in which this motion was granted and, if successful in locating that transcript will supplement this filing.

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 594 of 976

the FVP parties have been dealing with Mr. Leto for the past two years, since we0 filed this lawsuit. Hi Bar has been represented by Mr. Leto. We've dealt with him. He's been litigating this case from the beginning. Franklin has been dealing with Mr. Leto, who has represented Hi Bar from the beginning. We have trial in one month. We have come to a settlement agreement. Now we have a settlement agreement. All of a sudden, Mr. Lubin is saying, whoa, whoa, whoa, wait a second. If he had a voice in this, he should have raised it a long time ago. He's estopped from raising it now. A[sic], he doesn't have standing.

29. This is simply not true. In fact, Mr. Breslin himself has filed papers in this case arguing that Spin is the real party in interest.

30. The FVP Parties acknowledged Spin's right to control the litigation in the FVP Parties Urgent Ex Parte Motion filed August 25, 2024. In that Motion Mr. Breslin represents to the Court:

> As is seen in the "Authority to Represent", and completely inconsistent with the representations to this Court from the inception of this case, this entire time Mr. Leto has been secretly representing Josh Lubin and Spin in addition to his other clients Herbst and Hi Bar. The "Authority to Represent" identifies Josh Lubin and Spin as a client and further states: "Finally, counsel understands that Spin Capital and Josh Lubin have an interest in the outcome of this case, and while not counsel of record in the case for Spin and Lubin, understands they are a joint client for purposes of this case". (emphasis supplied)

31. The FVP Parties initially acknowledged that Spin owned and controlled the Hi Bar Claims pursuant to the Common Interest Agreement, and that the Hi Bar Claims would be pursued under the name of Hi Bar. They have now colluded with Mr. Leto, purportedly representing Hi Bar, to attempt to eliminate Spin and Lubin's entitlement to those claims.

**The Order Also Deprives Lubin of Due Process**

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007 RECEIVED NYSCEF: 01/19/2026

32. "[T]he granting of relief, which is not sought by the notice of hearing or which expends the scope of a hearing and decides matters not noticed for hearing, violates due process." *Bluebone Dev., LLC v. Malibu Bay Cmty. Ass'n*, 289 So. 3d 515 (Fla. 3d DCA 2019).

**The Motion was never set for hearing.**

33. The Joint Motion for Settlement was filed July 27, 2025. No notice of hearing on that motion appears in the docket.

**The Order includes findings that are beyond the relief sought, were never briefed and were not noticed.**

34. The order seems to include findings that (i) the Common Interest Agreement was Terminated; (ii) that Lubin and his affiliated entities have no interest in the Net Proceeds; and (iii) that Lubin took no action to refute Hi Bar's purported termination.

35. None of these issues were presented in either the Motion or the Superseding Motion. It is black letter law that to include such comments as an order of the Court is a due process violation. *Id.*

36. Lubin is prepared to argue each of these issues at an evidentiary hearing once they have been noticed but to rule on these issues without proper notice is improper.

37. In fact, these very issues are the subject of Lubin's Motion for Summary Judgment which was filed on May 14, 2025, and has not been heard. Hi Bar has not responded to the Motion for Summary Judgment other than to file a Motion to Strike and to threaten sanctions pursuant to Florida Statute 57.105

## III. BASIS FOR CLARIFICATION

38.     In the alternative, clarification is necessary because the Order is ambiguous in several respects, including:

a. Whether the finding that Lubin has "no rights" applies narrowly to objections to the Settlement Agreement, or whether it constitutes a final adjudication of Lubin's asserted assignment rights.

b. Whether the Court intended to resolve, as a matter of law, the enforceability and effect of the assignment from Spin to Lubin.

## IV. PROPOSED RELIEF

39.     Lubin respectfully submits that reconsideration and/or clarification should result in entry of an amended order substantially in the form attached hereto as Exhibit "C" (Proposed Amended Order on Joint Motion to Endorse Settlement).

40.     The proposed amended order clarifies that: (a) Hi Bar had authority to enter into the Settlement Agreement; (b) Lubin did not establish a right to block the Settlement; but (c) the Court's ruling does not constitute a final adjudication of the validity or enforceability of the Spin assignment beyond the scope of the Settlement objections.

41.     The proposed amended order also requires the Settling Parties to provide Lubin with a copy of the Settlement Agreement and any related agreements concerning distribution of the Net Proceeds.

## V. CONCLUSION

WHEREFORE, Defendant Avrumi "Josh" Lubin respectfully requests that this Court:

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007    RECEIVED NYSCEF: 01/19/2026

(a) Reconsider its August 13, 2025 Order and adopt the clarifications set forth in the Proposed

Amended Order attached as Exhibit C;

(b) Alternatively, clarify the scope of its ruling, including whether it adjudicates Lubin's

assignment rights; and

(c) Grant such other and further relief as this Court deems just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was forwarded via e-mail through the Florida Court Efiling Portal to all parties and counsel of record on August 25, 2025.

KASEN & KASEN, P.C.

115 Broadway, 5th Floor

New York, New York 10006

Tel.: 646-397-6226

Email: mkasen@kasenlaw.com

Attorneys for Avrumi Lubin

Admitted Pro Hac Vice

By: s/ Michael J Kasen

and

DAVID W. LANGLEY, P.A.

Attorney for Party in Interest, JL Special Investments, LLC and Avrumi Lubin

8551 W. Sunrise Boulevard

Suite 303

Plantation, Florida 33322

Telephone:    954-356-0450

Facsimile:    954-356-0451

E-mail: dave@flalawyer.com

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007    RECEIVED NYSCEF: 01/19/2026

By: ___*s/ David W. Langley*___

David W. Langley, Esq.

Florida Bar Number 348279

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 599 of 976

Filing # 229324643 E-Filed 08/13/2025 11:40:58 AM

## EXHIBIT "A"

### IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY FLORIDA

|  |  |
|---|---|
| FVP OPPORTUNITY FUND III, LP, a Delaware Limited Partnership *et al.*, | |
| Plaintiffs, | |
| v. | Case No. CACE-22-005125 |
| HI BAR CAPITAL, LLC, a New York Limited Liability Company, *et al.*, | |
| Defendants. | |
| HI BAR CAPITAL, LLC, a New York Limited Liability Company, | |
| Plaintiff, | Case No. CACE-22-006401 Consolidated Case |
| v. | |
| KARMA OF PALM BEACH, INC., a Florida Corporation, *et al.* | |
| Defendants. | |

### AVRUMI LUBIN'S OBJECTION TO THE SUPERSEDING URGENT JOINT MOTION TO ENDORSE SETTLEMENT

COMES NOW, Avrumi Lubin (hereinafter, "Lubin"), by and through his undersigned counsel, and objects to the Superseding Urgent Joint Motion to Endorse Settlement, and in support thereof states:

### SUMMARY OF RELIEF REQUESTED

Lubin, as assignee of Spin Capital, LLC, which in turn is the assignee of all rights of Hi Bar Capital, LLC , is merely asking the Court to recognize that Lubin has a valid claim to the Proceeds of Sale, and to prevent any further distribution of said funds to the FVP Parties, Franklin Parties or Hi Bar absent a finding, by a court of competent jurisdiction, as to the rights of the

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007 RECEIVED NYSCEF: 01/19/2026

various parties to the funds that are purportedly the subject of a settlement agreement between the FVP Parties, the Franklin Parties and Hi Bar. Lubin does not object to the funds being held in the Schwartz Breslin Trust Account provided there is no further disbursement of funds until authorized by an appropriate order from this Court as to the proper disposition of said funds.

Lubin would also note that the same parties sought the same relief before Judge Kimball in the Auto Wholesale of Boca LLC Bankruptcy case, Case No. 22-15627-EPK, and that relief was denied. See Order Denying Expedited Joint Motion attached as Exhibit A.

## INTRODUCTION

1. Spin Capital, LLC (hereinafter, "Spin") and Hi Bar Capital, LLC (hereinafter, "Hi Bar") entered into a Common Interest and Joint Litigation Agreement with an effective date of January 28, 2022 (hereinafter, the "Common Interest Agreement"), more fully described below, pursuant to which Hi Bar assigned the "Hi Bar Claims", which include all claims to the funds in question, to Spin, with a waterfall provision back to Hi Bar. The Common Interest Agreement is attached as Exhibit "B".

2. Spin subsequently assigned its rights to the Proceeds of Sale and other claims to Lubin. See Exhibit "C".

3. FVP Opportunity Fund III, LP, FVP Investments, LLC, and FVP Servicing, LLC (hereinafter, the "FVP Parties"), Franklin Capital Funding LLC and Franklin Capital Group LLC (hereinafter, the "Franklin Parties") and Hi Bar, by way of their recent motion, seek to disenfranchise Spin, and its assignee Lubin, of any participation in the funds by misrepresenting to this Court that Spin and Lubin's claims have been resolved. They have not.

4. The Common Interest Agreement provides:

> Spin Capital and Hi Bar Agree that, with respect to the Litigation Claims, Hi Bar will continue to be the plaintiff or claimant for purpose of pursuing recoveries against Litigation Parties. Hi Bar Shall execute all pleadings and affidavits/declarations as requested by Spin Capital with respect to either the Litigation Claims or the Counterclaims.

Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 601 of 976

5.    Mr. Lubin now appears before this Court as the assignee of the Hi Bar/Spin claims based on an assignment dated March 17, 2025, from Spin to Lubin. The Bankruptcy Court, in In re Auto Wholesale of Boca, LLC, (Bankr. S.D.Fla. Case No. 22-15627-EPK (hereinafter, the "Bankruptcy Case") has ordered that "The proceeds of the Auction, net of the Buyer's Premium, Expenses and Carveout (such proceeds shall be referred to herein as the "Net Proceeds"), shall be held pending adjudication by a court of competent jurisdiction, as to the validity, priority and extent of property interests asserted in the Net Proceeds or consensual resolution between and among the parties whom have appeared in the main bankruptcy case or the Adversary Proceeding and asserted interests therein".

6.    There has been no adjudication by any court as to the rights of the various parties claiming an interest in the Net Proceeds. The FVP Partes, Franklin Parties and Hi Bar are now claiming that all parties in interest have resolved their claims, but that representation is false. The FVP Parties and the Franklin Parties have collaborated with Hi Bar to represent to Judge Kimball that these claims had been resolved in this Court while simultaneously representing to this Court that the claims have been resolved in the Bankruptcy Court.

7.    Judge Kimball issued an Order dated August 12, 2025, attached as Exhibit A, clearly dispelling this notion. The Order states, in part:

The Court previously stated that because Mr. Lubin is bound by all terms of the Sale Order including the Limiting Language, which does not reference him personally, that Mr. Lubin is not permitted to seek any relief in connection with release of the Net Proceeds. Dkt. No. 944. Based on the information now before the Court, the Court's view was incorrect.
...
The Movants are engaged in litigation before the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida regarding their relative rights to the Net Proceeds. Case No. CACE-22-005125 (the "Broward Action"). Based on a transcript of a recent hearing, Mr. Lubin is now active in the Broward Action. Dkt. No. 950-2. It appears that the court in the Broward Action has jurisdiction over the relevant disputes and can determine which of the Movants and Mr. Lubin have rights in the Net Proceeds. The Court encourages the parties to seek appropriate rulings in the Broward Action.
...
This Court cannot and will not rule on the dispute between Avrumi Lubin and Hi Bar Capital, LLC regarding their relative rights" in the funds subject to the purported settlement agreement between the FVP Parties, the Franklin Parties and Hi Bar.
A copy of Judge Kimball's Order is attached hereto as Exhibit A.

8. In this Court the FVP Parties, Franklin Parties and Hi Bar have asked that the funds should be placed in counsel's trust account and have further indicated that the funds "will be further disbursed in accordance with the agreement between the Movants" without any disclosure to Lubin or this Court of what that agreement is and how it will affect the rights of Lubin as assignee of the rights Spin acquired pursuant to the Common Interest Agreement. The FVP Parties, Franklin Parties and Hi bar have conspired not only to take possession of the Proceeds, but to disburse those funds between themselves at the expense of Lubin and render the funds beyond Lubin's reach once this Court or another with proper authority rules that Lubin rightfully owns those claims.

9. In this case Lubin and JL have filed a Motion for Summary Judgment against Hi Bar seeking a determination that the Common Interest Agreement between them is still in effect. That has not been heard.

10. In this case, contemporaneously to the filing of this Objection, Lubin filed a Motion to Substitute, requesting that "that this Court enter an order (i) substituting Avrumi Lubin in place of Hi Bar Capital, LLC as the real party in interest with respect to all claims, defenses, rights, and causes of action previously held or asserted by Hi Bar Capital, LLC".

11. The FVP Parties, Franklin Parties and Hi Bar are essentially representing to this Court that the ultimate disposition of the funds in question has been resolved, while in fact no Court has ruled on the effectiveness of the Common Interest Agreement[1].

### The Common Interest Agreement and Subsequent Assignments

12. Spin entered into a Common Interest and Joint Litigation Agreement (The Common Interest Agreement) with Hi Bar with an effective date of January 28, 2022.

---

[1] The only basis for any of those parties to claim that the Common Interest Agreement has been terminated is a letter from attorney Matthew Leto, originally hired by Lubin, who claimed that Lubin's failure to pay all of Mr. Leto's fee billings constituted a termination of the Common Interest Agreement. That analysis is flawed for at least two reasons: (1) The Authority to Represent that forms Mr. Leto's claim for payment was specifically related to other matters, not this bankruptcy and (2) the Common Interest Agreement specifies events that could lead to termination of the Common Interest Agreement, specifically Paragraph 2(f), and failure to pay attorney's fees is not one of those events

13.     The Common Interest Agreement (Exhibit A), Par. 2(a), states:

(a) From and after the Effective Date, Hi Bar hereby assigns to Spin Capital any

and all Hi Bar Claims, subject to the terms and conditions of this Agreement,

including but not limited to, Spin Capital's obligation to assign all Hi Bar

Claims back to Hi Bar in the event it exercises its rights pursuant to Section 2(f)

hereof.[2]

14.     Spin and Lubin also entered into a representation agreement with attorney Matthew

Leto on August 1, 2023 (hereinafter, the "Authority to Represent Agreement"). See Exhibit D.

That Authority to Represent Agreement defines Spin and Lubin as "Clients" for purposes of this

lawsuit[3]. It further states that the Common Interest and Joint Litigation Agreement provides Mr.

Lubin with "the authority to prosecute and settle" the matters and unless terminated pursuant to

Section 2(f). The Authority to Represent is attached hereto as Exhibit D.

15.     The Authority to Represent further provides:

As you know, the Firm represents more than one client in this matter. An
undertaking by a lawyer to represent more than one client in the same matter
is called a "joint representation." The applicable rules of professional
responsibility permit the representation of more than one client in the same
matter provided that, among other things, the lawyer reasonably believes
that he or she can adequately represent each client's interests competently
and diligently and each client provides informed consent in writing to the
joint representation. Joint representation is, of course, not mandatory in this
matter, and you have the right to retain an attorney other than the Firm as
your counsel.

16.     Notably, the FVP Parties acknowledged Spin's right to control the litigation in a

previous filing in this Court. See the FVP Parties Urgent *Ex Parte* Motion filed August 25, 2024.

In that Motion Mr. Breslin represents to the Court:

---

[2] Section 2(f) is a termination provision. Hi Bar is entitled to terminate only if it is unsatisfied
with Spin's defense of several counterclaims, all of which were dismissed before Matthew Leto
was hired as counsel for Hi Bar and Spin. No written notice of termination, as required by
Section 2(f), was ever sent by Hi Bar pursuant to the termination provision.
[3] Although the Common Interest Agreement states that Leto will not file an appearance for Lubin
or Spin, that reference does not absolve Leto from representing the interests of Lubin and Spin,
or from withdrawing as counsel if he could not.

As is seen in the "Authority to Represent", and completely inconsistent with the representations to this Court from the inception of this case, this entire time Mr. Leto has been secretly representing Josh Lubin and Spin in addition to his other clients Herbst and Hi Bar. The "Authority to Represent" identifies Josh Lubin and Spin as a client and further states: **"Finally, counsel understands that Spin Capital and Josh Lubin have an interest in the outcome of this case,** and while not counsel of record in the case for Spin and Lubin, understands they are a joint client for purposes of this case". (emphasis supplied)

17.     The FVP Parties initially acknowledged that Spin owned and controlled the Hi Bar Claims pursuant to the Common Interest Agreement, and that the Hi Bar Claims would be pursued under the name of Hi Bar. They have now colluded with Mr. Leto, purportedly representing Hi Bar, to attempt to eliminate Spin and Lubin's entitlement to those claims and marshal funds beyond the reach of Lubin and Spin.

18.     The FVP Parties, Franklin Parties and Hi Bar have further misled the Court by stating that Avrumi Lubin (Lubin) has no interest in the Proceeds, which is false, and by failing to advise the Court:

    a.     There is an agreement between Hi Bar and Spin pursuant to which Hi Bar "assigns to Spin Capital any and all Hi Bar claims" and "Spin Capital will have full authority to prosecute and settle the Litigation Claims"; and

    b.     Spin later assigned those claims to Lubin. See Exhibit E.

    c.     Neither this Court nor the Bankruptcy Court has determined that the Common Interest Agreement has been terminated.

19.     Lubin, as assignee of Spin, holds a first position lien on the Proceeds of Sale. To date no court has ruled on the conflicting claims between Hi Bar and Spin / Lubin. The FVP Parties, Franklin Parties and Hi Bar are falsely claiming that Lubin's claims have been resolved. The distribution of funds to and among the FVP Parties, Franklin Parties and Hi Bar would result in manifest injustice to Lubin.

**Spin and Lubin did not Breach the Common Interest Agreement**

Case 23-01133-EPK Doc 382-1 Filed 01/22/26 Page 605 of 976

20. The FVP Parties, Franklin Parties and Hi Bar's claims that all parties with an interest in the funds have reached an agreement for the distribution of those funds is based on the false premise that Spin and Lubin's rights to the proceeds under the Common Interest Agreement have been terminated. Spin and Lubin did not breach the Authority to Represent or the Common Interest Agreement and it remains in full force and effect.

21. Spin, through Lubin, advised Leto that they were no longer satisfied with Leto's representation, as Leto consistently advised Lubin that he did not represent Lubin or Spin, despite Leto's obligations pursuant to the Authority to Represent. Further, Leto took actions that were not in Spin or Lubin's interests. See Declaration of Avrumi Lubin, Exhibit E.

22. Lubin advised Leto by email that he would not pay Leto's fees for any work done by Leto from that point onward. He did not terminate in any way the Common Interest Agreement nor did he relieve Leto of his fiduciary obligations to Lubin and Spin.

A Claimed Breach of an Independent Covenant does not Represent a Breach of the Agreement

23. If this Court were to ultimately find that Spin and Lubin breached the Authority to Represent agreement, that would not justify a finding that Spin and Lubin breached the Common Interest Agreement.

24. Conditions or covenants in a contract are classed as dependent or independent from a consideration of the intention and understanding of the parties as shown by the whole contract. *Southern Colonization Co. v. Derfler*, 73 Fla. 924, 75 So. 790, L.R.A.1917F, 744. However, only the breach of a dependent covenant, one which goes to the whole consideration of the contract, excuses performance. *Steak House, Inc. v. Barnett*, 65 So.2d 736 (Fla. 1953).

25. A covenant is independent where it does not go to the whole consideration of the contract but is only subordinate and incidental to its main purpose, and the breach of such a covenant will not ordinarily constitute a sufficient reason for rescission. 17 C.J.S., Contracts, § 425, pages 910-911, *Steak House, Inc. v. Barnett*, at 736, 737–38.

26.     A covenant is dependent where it goes to the whole consideration of the contract; where it is such an essential part of the bargain that the failure of it must be considered as destroying the entire contract; or where it is such an indispensable part of what both parties intended that the contract would not have been made with the covenant omitted. Black on Rescission and Cancellation, 2nd ed., Vol. I, pp. 555, 601. A breach of such a covenant amounts to a breach of the entire contract; it gives to the injured party the right to sue at law for damages, or courts of equity may grant rescission in such instances if the remedy at law will not be full and adequate. *Savage v. Horne*, 159 Fla. 301, 31 So.2d 477; 6 Pomeroy, Eq. Juris., Sec. 685; *Steak House, Inc. v. Barnett* at 736, 737 (Fla. 1953).

27.     Here, Leto claimed in his attempted termination letter, that Lubin's failure to pay Leto's legal bill of $75,000.00 terminates Spin's right to collect on it's multi-million dollar claims under the Common Interest Agreement.

28.     The Common Interest Agreement, in Section 2(f), Termination Provisions, provides that on termination by either party (which has not been done according to the termination provision requirements), the terminating party or the Escrow Agent "shall provide payments ... as provided in Section 3(a) hereof".

29.     Hi Bar's entitlement to terminate the Common Interest Agreement could only be asserted if Hi Bar was unsatisfied with Spin's defense of certain counterclaims. Those counterclaims were dismissed with prejudice before Mr. Leto ever appeared as counsel for Hi Bar, without Hi Bar ever seeking to terminate the Common Interest Agreement. Hi Bar no longer has any basis to terminate the agreement.

30.     The Common Interest Agreement remains in full force and effect and Spin, and by assignment, Lubin and JL Special Investments, have the sole right to pursue the affirmative claims and to conduct the litigation, other than to defend the claims against Hi Bar and Herbst.

**The FVP Parties, the Franklin Parties and Hi Bar have manufactured a false sense of urgency**

Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 607 of 976

31. The FVP Parties, the Franklin Parties and Hi Bar have indicated in their Joint Motion:

> This motion supersedes the parties prior motion and requires urgent action of this Honorable Court. There are strict time limitations that require a ruling by this Honorable Court. If an order is not issued and delivered to the Bankruptcy Court prior to August 27, 2025, the Movant Parties may lose the right to claim the funds currently held in the Bankruptcy Court registry.

31. This is a false urgency designed simply to eschew the rights of Lubin without proper process and marshal the funds beyond Lubin's reach.

32. As the FVP Parties, the Franklin Parties, and Hi Bar are well aware, Lubin has indicated a willingness to have the funds deposited into the trust account of Schwartz Bresslin, PLLC while awaiting a proper determination as to the rights of Lubin relative to Hi Bar, the FVP parties and the Franklin Parties.

33. Such a resolution would preserve all parties' rights and no urgency would be necessary.

## CONCLUSION

Lubin does not object to the funds being held in the Schwartz Breslin Trust Account provided there is no further disbursement of funds until authorized by an appropriate order from this Court as to the proper disposition of said funds and the relative rights of the parties. Respectfully submitted,

Dated: New York, New York
August 13, 2025

KASEN & KASEN, P.C.

By:        /s/ Michael J. Kasen
Michael J. Kasen, Esq.
115 Broadway, 5th Floor
New York, New York 10006
Tel:    (646) 397-6226
Fax:    (646)786-3611
mkasen@kasenlaw.com

Attorneys for Josh Lubin
Pro Hac Vice Application Pending

Dated: Plantation, Florida
       August 13, 2025

LAW OFFICES OF DAVID W. LANGLEY

By:      /s/ David W. Langley
     David W. Langley, Esq.
     8551 W. Sunrise Blvd., Suite 303
     Plantation, Florida 33322
     Tel:     (954) 356-0450
     Fax:     (954) 356-0451
     dave@flalawyer.com

     Attorney for Josh Lubin

Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 609 of 976

# EXHIBIT A



ORDERED in the Southern District of Florida on August 12, 2025.

Erik P. Kimball
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

AUTO WHOLESALE OF BOCA, LLC,

    Debtor.

Case No. 22-15627-EPK
Chapter 7

_____/

## ORDER DENYING EXPEDITED JOINT MOTION

This is the Court's ruling on the *Expedited Joint Motion (I) To Enforce Sale Order and (II) To Order Distribution of Auction Proceeds to Counsel for the FVP Parties* [Dkt. No. 931; the "Joint Motion"]. The Court also considered the limited objection filed by Avrumi Lubin [Dkt. No. 950] and the reply [Dkt. No. 951].

The debtor in this case, Auto Wholesale of Boca, LLC, filed a voluntary chapter 11 petition on July 22, 2022. Dkt. No. 1. The debtor claimed to be a wholesale dealer of exotic and luxury vehicles. It had a number of vehicles in its possession at the time.

Two days after the debtor filed this case, creditors filed an adversary proceeding against the debtor claiming that vehicles in the debtor's possession were not actually the

debtor's property and were subject to liens granted by another entity. Adv. Proc. No. 22-01218-EPK (the "Adversary Proceeding"). Other creditors made similar claims by adversary proceeding and by motion. *See, e.g.,* Adv. Proc. No. 22-01424-EPK; Dkt. Nos. 13, 72, 114, 127, 141, 252, 268, 356, 576, 578, 680. Eventually, the Adversary Proceeding came to include several parties claiming interests in vehicles held by the debtor. Dkt. No. 145, Adv. Proc. No. 22-01218 (Amended Complaint).

About 9 months after this case was filed, on May 1, 2023, the Court converted this case to chapter 7. Dkt. No. 584. By then it was clear that for at least a few years prior to this bankruptcy the debtor's business consisted almost entirely of lending money to another entity which is also a debtor before this Court. Tr. of Oral Ruling, Dkt. No. 610. When the Court converted this case, the debtor remained in possession of a number of vehicles, but the debtor had very weak and probably no claim to ownership of most of those vehicles. In its ruling, the Court stated: "It would not surprise me if the debtor in the end can claim no ownership at all." Tr. of Oral Ruling, Dkt. No. 610 at 20.

When the chapter 7 trustee took control of the debtor on May 2, 2023, he was mindful of the competing claims to the vehicles in his possession and the debtor's tenuous ownership of those vehicles. The trustee determined that the best approach would be to propose an auction sale of the vehicles, with the bankruptcy estate to obtain a small portion of the proceeds, and the lion's share of the net sale proceeds to be set aside so that parties claiming interests in the vehicles could address their disputes in another forum.

Within a week of his appointment, the trustee filed a motion to auction a number of vehicles in the estate's possession. Dkt. No. 618. The sale was to be free and clear of all liens and other interests under 11 U.S.C. § 363(f). The trustee asked the Court to approve a minimum amount to be retained by the estate for the benefit of unsecured creditors, in the form of a surcharge under 11 U.S.C. § 506(c).

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007 RECEIVED NYSCEF: 01/19/2026

Through the Adversary Proceeding and various motions for turnover, all parties claiming interests in the vehicles were before the Court. Several parties objected to the trustee's sale motion. *E.g.,* Dkt. Nos. 623, 630, 631, 632, 638, 639, 640, 641, 642, 644, 676, 678. After an initial hearing, the Court granted the sale motion in part, authorizing the trustee to retain the auctioneer, and set further hearings to consider how the net sale proceeds would be distributed and other concerns. Dkt. No. 634.

Over a period of several weeks, the trustee negotiated with all parties claiming liens on and interests in the vehicles. The trustee swiftly concluded terms acceptable to those parties and favorable to the bankruptcy estate. Only six weeks after his appointment, at the final hearing on the sale motion, the trustee presented an order approving the auction sale of the vehicles. Dkt. No. 694 (the "Sale Order").

Among other things, the Court authorized the trustee to sell certain vehicles free and clear of liens pursuant to 11 U.S.C. § 363(f). The trustee retained an agreed portion of the sale proceeds for the benefit of creditors. The remaining net proceeds from the sale were held pending adjudication by another court having competent jurisdiction or agreement of the parties claiming liens on or interests in the vehicles. The Sale Order included the following provision (the "Limiting Language"): "Only (i) parties to the Adversary Proceeding Complaint, or (ii) parties that have appeared in the main bankruptcy case and asserted an interest in the Vehicles, may make a claim against the Net Proceeds." The Sale Order was later clarified but its primary terms were not changed. Dkt. No. 738.

After the auction sale, the trustee sought direction on where to deposit the proceeds from the sale less expenses and less the funds to be retained by the trustee for the benefit of creditors (the "Net Proceeds"). Dkt. No. 727. The trustee asked the Court to permit the Net Proceeds to be deposited in the registry of the Court "pending adjudication by a court of competent jurisdiction as to the validity, priority and extent of property interests asserted in

the Net Proceeds or consensual resolution as to their disposition." The Court granted that request and the Net Proceeds were accepted into the Court's registry. Dkt. No. 749. The Court later clarified that the Net Proceeds were subject to the Court's jurisdiction "for purposes of any disputes that may arise out of the Auction or its conduct, the condition of the Vehicles, or out of any alleged actions or omissions by the Trustee's Court-approved Auctioneer." Dkt. No. 807. No such claims were presented. Other than for this limited purpose, the trustee waived any interest in the Net Proceeds and the Court approved that waiver. Dkt. Nos. 694 and 738.

The trustee filed a final account on May 15, 2025. Dkt. No. 909. This case is fully administered. The only reason this case has not been closed is that the Net Proceeds remain in the registry of the Court. Because of this, the Court *sua sponte* entered its *Order to Show Cause Why Certain Funds Held by the Clerk Should Not Escheat to the United States Treasury and Setting Hearing Thereon,* Dkt. No. 911 (the "Order to Show Cause"). In the Order to Show Cause, the Court paraphrased the Limiting Language, making it clear that only certain parties may seek release of the Net Proceeds. The Court set a hearing on more than two months' notice and directed such parties to attend the hearing and present an agreement with regard to release of the Net Proceeds. The Court is aware that the relevant parties are litigating their disputes in another forum. The Court intended to give those parties sufficient time to provide joint instructions for release of the Net Proceeds according to their agreement, or to arrange for the funds to be lodged with an escrow agent or placed in the registry of the court where their litigation is pending.

In the Order to Show Cause, the Court did not invite motions from parties claiming an interest in the Net Proceeds. The Court made it clear that it did not intend to rule on any issue relating to any party's right in the Net Proceeds. In spite of this, a flurry of motions were filed including the Joint Motion now before the Court. Dkt. Nos. 925, 931, 938. The

Court initially denied all of those motions. Dkt. No. 941. However, the Court later vacated the denial of the Joint Motion and reset the Joint Motion for hearing. Dkt. Nos. 944, 945.

The following parties filed the Joint Motion: Franklin Capital Funding, LLC, Franklin Capital Group, LLC, Franklin Capital Management, LLC, FVP Opportunity Fund III, LP, FVP Investments, LLC, FVP Servicing, LLC, and Hi Bar Capital, LLC (together, the "Movants"). They ask the Court to direct the Clerk to release the Net Proceeds from the registry of the Court and disburse them to counsel for the FVP entities, Schwartz Breslin PLLC, "there to be further disbursed in accordance with the agreement between the Movants." In other words, the Movants have reached an agreement regarding application of the Net Proceeds among themselves, which they intend to effectuate if the Net Proceeds are released.

No one disputes that the Movants are, in name, the sole remaining parties that may seek release of the Net Proceeds consistent with the Limiting Language in the Sale Order. However, in his response to the Joint Motion, Mr. Lubin argues that he is the assignee of all claims of Hi Bar to the Net Proceeds. Mr. Lubin objects to release of the Net Proceeds as requested in the Joint Motion as he believes the Movants will not honor the assignment of Hi Bar's claims to him. Mr. Lubin does not object to release of the Net Proceeds to the trust account of FVP's counsel, but only if the funds are held subject to entry of an order of another court having competent jurisdiction.

In support of his argument that he holds Hi Bar's claims, Mr. Lubin points to two documents: a Common Interest and Joint Litigation Agreement dated January 28, 2022 between Spin Capital, LLC and Hi Bar (the "Common Interest Agreement"); and an Absolute Assignment of Interests and Rights dated March 17, 2025 between Spin and Mr. Lubin (the

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 615 of 976

Case 22-15627-EPK    Doc 952    Filed 08/12/25    Page 6 of 9

"Absolute Assignment"). Dkt. Nos. 950-1 and 950-5.[1] In the Common Interest Agreement, Hi Bar assigned a number of claims to Spin including, specifically, Hi Bar's claims in this bankruptcy case and in the Adversary Proceeding, subject to termination and re-assignment back to Hi Bar. In the Absolute Assignment, Spin assigned all of its rights obtained under the Common Interest Agreement to Mr. Lubin.

At all relevant times during this bankruptcy case Mr. Lubin controlled Spin. Indeed, Mr. Lubin signed the Absolute Assignment as "Manager and Managing Member" of Spin. In his response to the Joint Motion, Mr. Lubin acknowledges his virtual identity with Spin for purposes of this case. Mr. Lubin states that, consistent with the Common Interest Agreement, he hired, paid, and directed the attorneys for Hi Bar who participated in this bankruptcy case and in the Adversary Proceeding. Mr. Lubin had full knowledge of the Adversary Proceeding and this bankruptcy case including the sale process, through counsel that he controlled. In a prior order, the Court found that Mr. Lubin had notice of the sale motion, the final hearing on the sale motion, and the Sale Order. Dkt. No. 944. Mr. Lubin's response here supports those findings.

The Court previously stated that because Mr. Lubin is bound by all terms of the Sale Order including the Limiting Language, which does not reference him personally, that Mr. Lubin is not permitted to seek any relief in connection with release of the Net Proceeds. Dkt. No. 944. Based on the information now before the Court, the Court's view was incorrect.

Mr. Lubin claims to hold the rights of Hi Bar with regard to the Net Proceeds. He points to the Common Interest Agreement as the basis for his position. Hi Bar argues that

---

[1] Mr. Lubin also references an Authority to Represent executed August 1, 2023 among Hi Bar, individuals associated with Hi Bar, Mr. Lubin, and Leto Law Firm. Dkt. No. 950-3. That document relates to litigation in another bankruptcy case pending before this Court and does not appear to have anything to do with this bankruptcy case or the Adversary Proceeding. In any case, it is not necessary for the Court to address the Authority to Represent in this Order.

the Common Interest Agreement was terminated by written notice on April 3, 2024[2] and, in

addition, that Mr. Lubin's refusal to pay legal fees was a breach of the agreement supporting

termination. *See* Dkt. 925-1 at 74. Hi Bar thus claims that Mr. Lubin has no right to object

to the Joint Motion. Mr. Lubin argues that the written notice was not effective to terminate

the Common Interest Agreement according to its terms, and that his refusal to pay legal fees

did not result in a breach of the entire agreement. Mr. Lubin argues that Hi Bar has no right

to join in the Joint Motion.

As the Court has previously ruled, at this time the Court has no subject matter

jurisdiction over any substantive disputes relating to the Net Proceeds. The Court retained

jurisdiction over the Net Proceeds only to the extent of any claims relating to or arising from

the sale process. No such claims were presented. Beyond that, the bankruptcy estate waived

any interest in the Net Proceeds. The Net Proceeds remain in the registry of this Court solely

as an accommodation to parties who are litigating their relative rights in another forum. The

outcome of the disputes among the Movants and Mr. Lubin will have no impact on

administration of this fully administered chapter 7 case. Even under the most liberal

component of this Court's subject matter jurisdiction, meaning "related to" jurisdiction under

28 U.S.C. § 1334(b), this Court lacks the power to rule on these disputes. *See British Am.

Ins. Co. Ltd. v. Fullerton (In re British Am. Ins. Co. Ltd.)*, 600 B.R. 890, 893-897 (Bankr. S.D.

Fla. 2019) (discussing federal bankruptcy jurisdiction generally). This Court cannot and will

not decide whether the Common Interest Agreement was terminated and, ultimately,

whether Mr. Lubin holds the rights of Hi Bar relating to the Net Proceeds.

This Court of course has jurisdiction to interpret and enforce its own Sale Order. But

the question whether Mr. Lubin is the ultimate assignee of Hi Bar is not one that may be

---

[2] This date is well after the entry of the Sale Order. Even under Hi Bar's view, Spin held Hi Bar's
rights to the Net Proceeds at the time the Court entered the Sale Order.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                          RECEIVED NYSCEF: 01/19/2026

determined by the Court merely enforcing the Sale Order. If Mr. Lubin is correct, at the time the Court entered the Sale Order Spin controlled Hi Bar's claims in this matter and Mr. Lubin controlled Spin. In Mr. Lubin's view, immediately upon entry of the Sale Order, Spin could direct counsel for Hi Bar to join in asking this Court to release the Net Proceeds.[3] Mr. Lubin alleges that Spin later assigned its rights to him personally. If this is true, then Mr. Lubin is the correct party to join with FVP and Franklin in the Joint Motion, not Hi Bar. Hi Bar argues that Mr. Lubin has no such right. The Court cannot resolve this dispute merely by considering the history of this bankruptcy case and the Sale Order.

Even if this Court had subject matter jurisdiction over the present dispute between Hi Bar and Mr. Lubin, the Court would abstain from the matter under 28 U.S.C. § 1334(c). Particularly in light of the procedural context of this case, which is fully administered, comity requires that this Court give way to the state court where these questions are more appropriately addressed.

The Movants are engaged in litigation before the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida regarding their relative rights to the Net Proceeds. Case No. CACE-22-005125 (the "Broward Action"). Based on a transcript of a recent hearing, Mr. Lubin is now active in the Broward Action. Dkt. No. 950-2. It appears that the court in the Broward Action has jurisdiction over the relevant disputes and can

---

[3] Contrary to the argument presented in the reply [Dkt. No. 951], neither Spin nor Mr. Lubin were required to oppose the relief granted in the Sale Order. Hi Bar's rights in the Net Proceeds were preserved by the Sale Order and the Limiting Language. According to Mr. Lubin, Spin held an assignment of Hi Bar's claims and had the ability to direct Hi Bar's actions, so Spin did not waive any rights by not participating in the sale hearings. Spin did not assign its rights in Hi Bar's claims to Mr. Lubin until much later, so Mr. Lubin had no need to participate individually at the time of the sale. For the same reason, the limitation in paragraph D of the Sale Order regarding Mr. Lubin's ability to seek relief relating to the Net Proceeds cannot prevent Mr. Lubin from later acquiring the rights of Hi Bar via Spin. Mr. Lubin is not now seeking to modify the Sale Order. If Mr. Lubin is correct, then he has the benefit of the Sale Order and the Limiting Language, as he holds the rights of Hi Bar.

determine which of the Movants and Mr. Lubin have rights in the Net Proceeds. The Court encourages the parties to seek appropriate rulings in the Broward Action.

The Court will hold the hearing on the Order to Show Cause at 10:00 a.m. on August 27, 2025 as originally scheduled, and the Order to Show Cause remains in full force and effect. The parties are strongly discouraged from filing additional motions and responses.

In light of the foregoing, the Court **ORDERS and ADJUDGES** as follows:

1. The *Expedited Joint Motion (I) To Enforce Sale Order and (II) To Order Distribution of Auction Proceeds to Counsel for the FVP Parties* [Dkt. No. 931] is DENIED.

2. This Court cannot and will not rule on the dispute between Avrumi Lubin and Hi Bar Capital, LLC regarding their relative rights in the Net Proceeds held in the registry of this Court. The parties are encouraged to obtain a ruling from another court having competent jurisdiction or to present an agreement and a form of agreed order as directed in the Order to Show Cause.

3. The hearing on the *Expedited Joint Motion (I) To Enforce Sale Order and (II) To Order Distribution of Auction Proceeds to Counsel for the FVP Parties* [Dkt. No. 931] set for August 13, 2025 is CANCELED.

###

Copy Furnished To:

Jerrell Breslin, Esq.

*Jerrell Breslin, Esq. is directed to serve a conformed copy of this Order on all appropriate parties and file a certificate of service.*

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007    RECEIVED NYSCEF: 01/19/2026

# EXHIBIT B

INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                                    RECEIVED NYSCEF: 01/19/2026

DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

EXECUTION COPY

## COMMON INTEREST AND JOINT LITIGATION AGREEMENT

This COMMON INTEREST AND JOINT LITIGATION AGREEMENT (this "Agreement") is effective as of January 28, 2022 (the "Effective Date"), by and among SPIN CAPITAL, LLC, a New Jersey limited liability company ("Spin Capital"), and HI BAR CAPITAL, LLC, a New York limited liability company ("Hi Bar"). Spin Capital and Hi Bar shall be referred to each as a "Party" and collectively as "Parties."

## RECITALS

A.      On January 28, 2022, Hi Bar initiated an action captioned *Hi Bar Capital, LLC v. Excell Auto Group, Inc., et al.*, in the Supreme Court of the State of New York, County of Kings (the "NY Court"), as Index No. 502846/2022 (the "NY Litigation").

B.      On May 2, 2022, Hi Bar initiated an action captioned *Hi Bar Capital, LLC v. Karma of Palm Beach Inc., et al.*, in The Circuit Court of The Seventeenth Judicial Circuit, Broward County, Florida (the "Florida Court"), as Case No. 22-006401 (the "FL Litigation").

C.      In addition to Excell Auto Group, Inc. and Karma of Palm Beach Inc., the defendants in the FL Litigation include each of the following (collectively with Excell Auto Group, Inc. and Karma of Palm Beach Inc., "Defendants"): Automotive Service Systems, Inc.; Kz Consultants, Inc.; Miss Kris, LLC; Excell Auto Leasing Inc.; Excell Auto Wholesale Inc.; Dealer Souq USA LLC; Eag Wholesale LLC; Karma of Broward, Inc.; Lavish Hero Fund Inc.; Apple 3 Investments, Inc.; KZ Consultants Inc.; Excell Auto Sport And Service, Inc.; FVP Opportunity Fund III, LP; FVP Investments, LLC; FVP Servicing, LLC; Franklin Capital Group, LLC; Franklin Capital Management, LLC; Auto Wholesale of Boca, LLC; MMS Ultimate Services, Inc.; and Moshe Farache.

D.      In addition to the NY Litigation and the FL Litigation, one of the initial Defendants in the FL Litigation, Auto Wholesale of Boca, LLC ("AWB Debtor"), has filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida, Case No. 22-15627-EPK (the "Bankruptcy Case"). In connection with the Bankruptcy Case, Hi Bar, along with FVP Opportunity Fund III, LP, FVP Investments, LLC, and FVP Servicing, LLC (collectively, "FVP Entities"), initiated an adversary proceeding against AWB Debtor in the Bankruptcy Case, Adversary Case No. 22-01218-EPK (the "Adversary Proceeding," collectively with the Bankruptcy Case, the "Bankruptcy Proceedings").

E.      In conjunction with the NY Litigation, FL Litigation and the Bankruptcy Proceedings, (1) some or all of Defendants were indebted and liable to Hi Bar in the aggregate amount of $3,227,739.73 (the "Hi Bar MCA/Obligation") as of April 28, 2022, and (2) certain Defendants granted to Hi Bar a lien and security interest in certain vehicles, including those described on Schedule 1 hereto (the "Vehicle Collateral"), which secured the Hi Bar MCA/Obligation (the "Hi Bar Secured Claim").

F.      Hi Bar possesses or may possess claims, causes of action, and can seek certain relief against Defendants, and any entities affiliated with or owned by Defendants (collectively, "Litigation Parties") resulting or related to the Hi Bar MCA/Obligation, the Hi Bar Secured Claims, and the Vehicle Collateral, including, *inter alia*, claims, causes of action, and motion practice seeking relief for foreclosure, replevin, fraudulent transfer and avoidance claims arising under the

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                          RECEIVED NYSCEF: 01/19/2026

DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and applicable state and federal law. The foregoing claims, causes of action, and motion practice seeking relief against Litigation Parties that Hi Bar may have or may be able to assert against Litigation Parties in the NY Litigation, the FL Litigation, the Bankruptcy Proceedings, shall collectively be referred to as the "Hi Bar Claims."

G.      In addition, as the holder of a portion of the Hi Bar MCA/Obligation and the Hi Bar Secured Claim, Spin Capital possesses or may possess certain claims and causes of action against certain of Litigation Parties resulting or related to the Hi Bar MCA/Obligation and the Hi Bar Secured Claims, including, *inter alia*, claims, causes of action, and motion practice seeking relief for foreclosure, replevin, fraudulent transfer and avoidance claims arising under the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and applicable state and federal law (collectively, the "Spin Capital Claims," with Hi Bar Claims, the "Litigation Claims").

H.      In the NY Litigation, on or about March 18, 2022: (x) Excell Auto Group, Inc. filed a verified third-party complaint against Spin Capital asserting certain claims and causes of action against Spin Capital; and (y) certain Defendants filed counterclaims against Hi Bar. On or about March 25, 2022, Franklin Capital Group, LLC ("FCG LLC") initiated an action captioned *Franklin Capital Group, LLC v. Spin Capital, LLC and Hi Bar Capital, LLC,* in the United States District Court for the Eastern District of Michigan (the "MI Court"), as Case No. 2022-193300-CB (the "Michigan Litigation").[1] Consequently, as part of and in conjunction with the NY Litigation and the Michigan Litigation (and potentially in the FL Litigation and Bankruptcy Proceedings ), certain Defendants and FCG LLC have asserted, and may assert in the future,  claims, causes of action, and counterclaims against one or both Parties (collectively, the "Counterclaims").

I.      Parties have had discussions and negotiations regarding an agreement providing for the collective pursuit of the Litigation Claims and the defense of the Counterclaims for the benefit of both Parties. In light of Spin Capital's interest in the Hi Bar MCA/Obligation and the Hi Bar Secured Claim and its willingness to fund the litigation to recover against Litigation Parties (and to defend Parties against Counterclaims), Parties have determined that (x) the collective pursuit of the Litigation Claims by Hi Bar with the assistance and participation of Spin Capital and (y) the collective defense by Parties against the Counterclaims is in Parties' best interests. Parties have now reached an agreement regarding the pursuit of the Litigation Claims and the defense of the Counterclaims, subject to the terms and conditions set forth herein.

J.      Each Party has concluded that the execution of this Agreement is in its respective best interest, and acknowledges that the terms and provisions hereof are fair and reasonable, that each has had the opportunity to consult with legal counsel, and that each is receiving a substantial and valuable benefit if the transactions contemplated herein are consummated.

NOW, THEREFORE, in consideration of the mutual covenants and conditions contained in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.      **Recitals.** The recitals hereinbefore set forth constitute an integral part of this Agreement, evidencing the intent of the parties in executing this Agreement, and describing the

---

[1]      FGC LLC initially filed the Michigan Litigation in the Sixth Judicial Circuit Court of Oakland County, Michigan. Thereafter, Parties removed the Michigan Litigation to the MI Court.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM          INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                      RECEIVED NYSCEF: 01/19/2026

DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

circumstances surrounding its execution.  Accordingly, said recitals are, by express reference, made a part of this Agreement, and this Agreement shall be construed in the light thereof. Nothing contained in the recitals shall limit the scope of or damages sought with respect to the Bankruptcy Proceedings Hi Bar Claims.

2.    **Prosecution and Settlement of Litigation Claims and Defense of Counterclaims**.

(a)    From and after the Effective Date, Hi Bar hereby assigns to Spin Capital any and all Hi Bar Claims, subject to the terms and conditions of this Agreement, including but not limited to, Spin Capital's obligation to assign all Hi Bar Claims back to Hi Bar in the event it exercises its rights pursuant to Section 2(f) hereof.

(b)    From and after the Effective Date, Spin Capital will have full authority to prosecute and settle the Litigation Claims, and may settle such Litigation Claims in whole or in part against some or all of Litigation Parties, in its discretion.  Nothing contained in this Agreement is intended or shall be deemed in any manner whatsoever to govern the manner in which Spin Capital pursues (or elects not to pursue) the Litigation Claims related to Litigation Parties. Notwithstanding the foregoing, Spin Capital will cooperate with Hi Bar and keep Hi Bar abreast of the status of its pursuit of Litigation Claims and potential recoveries therefrom.  Any settlement of the Litigation Claims will be subject to Hi Bar's written consent (which consent it shall not unreasonably withhold).

(c)    From and after the Effective Date, Spin Capital will have full authority to defend the Counterclaims and will use commercially reasonable efforts to defend the Counterclaims on advice of counsel for the benefit of Parties.  Notwithstanding the foregoing, Spin Capital will cooperate with Hi Bar and keep Hi Bar abreast of the status of its defense of the Counterclaims.  Spin Capital may settle Counterclaims in conjunction with a global settlement of the Litigation Claims, but any eventual settlement may not result in Hi Bar being required to make any out of pocket payments to any Defendants, and any settlement of any Counterclaim must be paid from recoveries collected in the Litigation Claims.  Any settlement of the Counterclaims will be subject to Hi Bar's written consent (which consent it shall not unreasonably withhold).

(d)    Until termination of this Agreement (as provided in Section 2(f) hereof), Spin Capital shall pay all past, present, and future Professional Fee Claims (as defined below) as they become due.  For purposes hereof, "<u>Professional Fee Claims</u>" shall mean all legal and professional fees owed to counsel (and any expert witnesses and consultants retained by counsel), which professionals are retained to represent Hi Bar and the interests of Spin Capital in the prosecuting the Litigation Claims and defense of the Counterclaims.  For purposes hereof, Professional Fee Claims shall include fees owed to those counsel identified on **Schedule 2** hereof, with all such retained professionals referred to hereinafter as "<u>Retained Professionals</u>".

(e)    Spin Capital and Hi Bar agree that, with respect to the Litigation Claims, Hi Bar will continue to be the plaintiff or claimant for purposes of pursuing recoveries against Litigation Parties.  Hi Bar shall execute all pleadings and affidavits/declarations as requested by Spin Capital with respect to either the Litigation Claims or the Counterclaims.

(f)    **Termination Provisions**:

3

DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

(i)    In the event that Spin Capital in its absolute discretion determines that it no longer wishes to actively pursue the recovery of any Litigation Claims, it will inform Hi Bar in writing of such decision, whereupon (and thereafter), Hi Bar shall be entitled to take the lead in pursuing the Hi Bar Claims and shall be entitled to make any decisions as to any matter relating to such pursuit (or non-pursuit) of such Hi Bar Claims. Spin Capital shall provide written notice of such decision, which shall result in a termination of this Agreement as of the date of such notice ("SC Termination Date"). If, on or before the one (1) year anniversary of the SC Termination Date (and provided Hi Bar has not theretofore breached the terms of this Agreement), Spin Capital settles or obtains recovers on any Litigation Claims, then either Spin Capital or escrow agent (if applicable) shall provide payments to Hi Bar as provided in Section 3(a) hereof.

(ii)    In the event Hi Bar in its absolute discretion is not satisfied with Spin Capital's management of defense of Counterclaims against Hi Bar, then Hi Bar shall provide written notice of such decision, which shall result in a termination of this Agreement as of the date of such notice ("HB Termination Date"), and Hi Bar shall be entitled to continue pursuing its Hi Bar Claims and Spin Capital shall be entitled to continue pursuing Spin Capital Claims. If, on or before the one (1) year anniversary of the HB Termination Date (and provided Spin Capital has not theretofore breached the terms of this Agreement), Hi Bar settles or obtains recovers on any of its Litigation Claims, then either Hi Bar or escrow agent (if applicable) shall provide payments to Spin Capital as provided in Section 3(a) hereof.

(g)    To the extent that Counterclaims continue to be asserted against Parties after either SC Termination Date or the HB Termination Date, then each Party shall be required to defend itself against such Counterclaims, and no Party shall have an obligation to other Party to defend such Counterclaims after the termination of this Agreement.

3.    **Agreement of Priority of Distribution.**

(a)    Parties shall direct Litigation Parties to pay any cash or other recoveries obtained from Litigation Parties (including any judgment recoveries from or settlements of any claims against Litigation Parties and the liquidation of any Vehicle Collateral) as a result of any Litigation Claims (collectively, "Litigation Proceeds") to an escrow account designated by Parties, which shall be subject to an escrow agreement between Parties. Escrow agent of such escrow account shall pay and distribute Litigation Proceeds as provided below:

(i)    First, all funds necessary to reimburse Spin Capital for all Professional Fee Claims;

(ii)    Second, subject to Section 3(d) hereof, all funds (if any) necessary to resolve or settle all Counterclaims;

(iii)    Third, the balance if any, after payment of the Professional Fee Claims and the Counterclaims ("Net Litigation Proceeds"), shall be paid as follows: (x) thirty percent (30%) shall be paid to Hi Bar; and (y) seventy percent (70%) shall be paid to Spin Capital of the first $1,100,000 in net Litigation Proceeds (i.e., up to $330,000 to be paid to Hi Bar and up to $770,000 to be paid to Spin Capital from the first $1,100,000 in net Litigation Proceeds);

4

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007
RECEIVED NYSCEF: 01/19/2026

DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

      (iv)    Fourth, fifteen percent (15%) shall be paid to Hi Bar and eighty-five percent (85%) shall be paid to Spin Capital of the next $900,000 in net Litigation Proceeds (*i.e.*, up to $135,000 to be paid to Hi Bar and up to $765,000 to be paid to Spin Capital from the next $900,000 in net Litigation Proceeds); and

      (v)    Fifth, ten percent (10%) shall be paid to Hi Bar and ninety percent (90%) shall be paid to Spin Capital of all net Litigation Proceeds after the recovery by Parties of the first $2,000,000 in total net Litigation Proceeds.

By way of example only, payouts from total Net Litigation Proceeds would be as follows (assuming net Litigation Proceeds (after payment of Professional Fee Claims and Counterclaims) in the amounts set forth below):

| Total net Litigation Proceeds | Aggregate Amount to Hi Bar | Aggregate Amount to Spin Capital |
|---|---|---|
| $500,000 | $150,000 | $350,000 |
| $1,000,000 | $300,000 | $700,000 |
| $1,500,000 | $390,000 | $1,110,000 |
| $2,000,000 | $465,000 | $1,535,000 |
| $2,500,000 | $515,000 | $1,985,000 |
| $3,000,000 | $565,000 | $2,435,000 |
| $3,500,000 | $615,000 | $2,885,000 |
| $4,000,000 | $665,000 | $3,335,000 |

      (b)    Notwithstanding the provisions of Section 3(a) hereof, to the extent any Party breaches this Agreement before the recovery of any Litigation Proceeds by the other Party, then breaching Party shall not be entitled to recoveries as provided in Section 3(a) to the extent of damages incurred by non-breaching Party relating to the breach, and non-breaching Party shall be entitled to direct any Litigation Parties to transfer so much of the recoveries as required to cover damages relating to the breach, directly to non-breaching Party for its own account.

      (c)    Nothing contained herein is intended or shall be deemed to obligate or otherwise compel either Party to accept any non-cash payment or other non-cash distribution of any Litigation Proceeds in partial or full satisfaction of any of Litigation Claims.

      (d)    To the extent all Counterclaims are not resolved at the time of the receipt of Litigation Proceeds, then the escrow agent shall hold all Litigation Proceeds until all such Counterclaims are either (x) resolved in favor of Parties or (y) liquidated or settled to an amount certain owed by Parties. Notwithstanding the foregoing, Parties may order escrow agent to release Litigation Proceeds in advance of resolution of all Counterclaims subject to a further written agreement between them.

      (e)    To the extent insufficient Litigation Proceeds are recovered to pay any damages awarded with respect to all Counterclaims, then Parties agree that such damages in excess of the Litigation Proceeds shall be paid seventy percent (70%) by Spin Capital and thirty percent (30%) by Hi Bar.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                      RECEIVED NYSCEF: 01/19/2026

DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

(f)     For all Professional Fees Claims incurred through the earlier of (x) the SC Termination Date, (y) the HB Termination Date, and/or (z) the resolution and settlement of all Litigation Claims and Counterclaims, and to the extent sufficient Litigation Proceeds are not recovered to pay Spin Capital in full for all Professional Fee Claims paid through such date, then Parties agree that: (i)

(i)     Hi Bar paid or must pay thirty (30%) of such amounts;

(ii)     Spin Capital paid or must pay seventy (70%) of such amounts; and

(iii)     Hi Bar shall pay Spin Capital for its proportion of these legal fees on submission of a written request by Spin Capital, provided that Spin Capital may only make such a written request on the termination of this Agreement or resolution in full of all Litigation Claims and Counterclaims (and the receipt by Parties of insufficient Litigation Proceeds to pay all Professional Fee Claims in full after resolution of all Counterclaims).

On or before the one (1) year anniversary of the date of such written request, Hi Bar shall make payment in full to Spin Capital. To the extent Hi Bar fails to pay Spin Capital for any amounts owed pursuant to this Section 3(f), Spin Capital may initiate litigation to recover such amounts, but may not pursue litigation until the one (1) year anniversary of the date in which Spin Capital provides written notice to Hi Bar as provided in Section 3(f)(iii).

4.     **Further Assurances and Clawbacks.** Parties shall reasonably cooperate with each other and shall coordinate their activities in respect of all actions reasonably necessary to consummate or obtain orders approving this Agreement. Hi Bar shall deliver such other documents, instruments or agreements as Spin Capital may reasonably request in order to effect fully the grant of authority to prosecute the Hi Bar Claims. Spin Capital, in its sole discretion, shall advance monies and funds for payment of fees and expenses of Retained Professionals, as incurred by Hi Bar in conjunction with the prosecution of the Litigation Claims and defense of Counterclaims against Litigation Parties. In the event that any of the Litigation Proceeds paid out to any of the parties hereto are subsequently disgorged by any Party, or in the event that after Parties are paid Net Litigation Proceeds, either Party incurs further liability relating to a Counterclaim, then each Party shall fund any clawback/disgorgement or Counterclaim liability in the same proportions as their receipt of the Net Litigation Proceeds as set forth in Section 3. Parties' obligations to pay back Net Litigation Proceeds to fund any clawback/disgorgement or liability relating to counterclaims shall survive termination of this Agreement.

5.     **Relationship of Parties.** Nothing contained herein shall be construed to impose any fiduciary duty on either Party in favor of the other Party or any other person or entity. Except as expressly set forth herein, neither Party shall have any duty or obligation to the other Party by virtue of this Agreement, and without limiting the generality of the foregoing, there are no implicit duties or obligations imposed on either Party in favor of the other Party or any other person or entity by virtue of this Agreement.

6.     **Representations and Warranties.** Each Party hereby represents and warrants to the other Party that its execution, delivery, and performance of this Agreement are within its respective powers, have been duly authorized by all necessary corporate action, and that this Agreement, when so executed and delivered shall constitute its legal, valid, and binding obligations, enforceable against it in accordance with its terms, subject to applicable bankruptcy,

6

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM          INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                    RECEIVED NYSCEF: 01/19/2026

DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

insolvency and similar laws and general equitable principles.    Neither Party makes any representations or warranties to the other party regarding the recoverability, existence, or value of the Litigation Claims. Except as expressly set forth in this Section 6, neither Party makes any representations or warranties, express or implied, to the other Party by virtue of this Agreement.

7.     **Effectiveness of This Agreement.** This Agreement shall be effective as of the date hereof conditioned only upon the execution and delivery of this Agreement by all Parties.

8.     **Common Interest**.

(a)     In order to pursue the Litigation Claims and defend the Counterclaims effectively, Parties have determined that their common interests may be best served by sharing documents, factual material, mental impressions, memoranda, interview reports, and other information, including the confidences of each of them, pursuant to this Agreement (collectively, the "Common Interest Materials") *provided, however,* that no Party shall be obligated to share or disclose any Common Interest Materials with or to any other Party solely by virtue of entering into this Agreement. Any document produced as Common Interest Materials shall be stamped or otherwise labeled as "privileged" or "confidential." Parties agree that Common Interest Materials obtained from any of them shall remain confidential and shall be protected from disclosure to any third party except as provided herein. Parties further agree that they will not disclose Common Interest Materials received from each other to anyone except, as applicable, their respective attorneys, representatives, employees, or agents involved in the Litigation Claims, without first obtaining the express consent of one or more of the parties who produced such Common Interest Materials. It is understood that all work performed and to be performed has been and shall be accomplished by the law firms, their attorneys, employees and agents with regard to their representations shall be accomplished pursuant to the work product and the attorney client privileges and to the "common interest doctrine" and all other applicable rights and privileges, including those recognized in *United States v. Evans,* 113 F.3d 1457 (7th Cir. 1997); *United States v. McPartlin,* 595 F.2d 1321 (7th Cir. 1979); *Hunydee v. United States,* 355 F.2d 183 (9th Cir. 1965); and *Continental Oil Co. v. United States,* 330 F.2d 347 (9th Cir. 1964).

(b)     No Waiver. The joint interest and defense effort undertaken by Parties, by virtue of its purpose, operation and use, is attorney work product and has required, and may in the future require, the exchange of Common Interest Materials subject to work product protection, attorney-client, joint defense and/or other privileges. Parties do not, by virtue of entering into this Agreement, waive any privilege as to any communication or as to any sharing of work product.

(c)     Permissive, Not Mandatory. This Agreement is intended to allow, but not require, each party to this Agreement, in its sole and exclusive discretion, to exchange with the other Parties Common Interest Materials, which are subject to work product protection, attorney-client, joint defense and/or other privileges. Parties are not required to agree to any particular litigation strategy or position taken before any court by virtue of having entered into this Agreement.

(d)     Use. It is further agreed that any Common Interest Materials exchanged among Parties shall be used solely in connection with the Litigation Claims and the defense of the Counterclaims. Each Party specifically agrees that, in any subsequent litigation or action that

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM          INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                      RECEIVED NYSCEF: 01/19/2026

DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

may be brought, they will not attempt to discover or offer as evidence any Common Interest Materials exchanged between them relating to the foregoing absent court order or written consent by one or more of Parties producing such Common Interest Materials.

(e)     Joint Experts.  Parties may jointly retain one or more experts in furtherance of the Litigation Claims and in the defense of the Counterclaims.  All Common Interest Materials transmitted to the joint experts, as well as any work product generated by the joint experts in any form whatsoever shall be subject to this Agreement.  No joint expert shall publish or disseminate any information, theories, opinions, or conclusions based upon Common Interest Materials in any way other than in furtherance of the Litigation Claims and in the defense of the Counterclaims without advance written approval by all of Parties by whom the expert is retained.

(f)     Individual Experts.  Nothing herein shall preclude any of Parties from individually retaining an expert.  Any Common Interest Materials or work product related to or generated by the individually retained expert shall be subject to this Agreement.

(g)     Joinder of Experts to Agreement.  No Common Interest Materials exchanged pursuant to this Agreement shall be disclosed or distributed in any way to any joint or individually retained expert until (i) such person shall have read a copy of this Agreement and shall have signed a Confidentiality Agreement agreeing to be bound by the terms of this Agreement, and (ii) advance written approval is obtained from the party whose information is to be given, shown, made available or communicated to the expert in furtherance of the Litigation Claims.

(h)     Discovery of Common Interest Materials.  If any person or entity requests or demands, by subpoena or otherwise, any Common Interest Materials received by any Party pursuant to this Agreement, the recipient of the demand shall immediately notify all other Parties. Each Party against whom the request or demand of said Common Interest Materials is directed shall take all steps necessary to permit the assertion of all applicable rights and privileges with respect to said Common Interest Materials, and shall cooperate fully with Parties in any judicial or other proceeding relating to the disclosure of said Common Interest Materials.

(i)     Withdrawal from Agreement.  Parties also agree that, if any Party to this Agreement no longer has interests in common with the other Parties, such party shall immediately notify, in writing, attorneys for the other Parties and promptly withdraw from this Agreement. Withdrawal from this Agreement shall not terminate Parties' mutual obligation to hold confidential all Common Interest Materials previously exchanged among the same.  At the request of a withdrawing party, documents furnished by such withdrawing party shall be returned to the same; *provided, however,* that such withdrawing party also returns all Common Interest Materials disclosed to it pursuant to this Agreement, and, further, destroys any internal notes, memoranda, analyses or other work product based upon or relating to Common Interest Materials produced by another party; *provided, however,* if a withdrawing party has received a subpoena or similar legal demand that would require production of any Common Interest Materials, the obligations imposed by this sentence shall be deferred until the discovery demand is resolved in accordance with the procedures outlined in this Agreement.

(j)     Electronic Communications.     Parties further agree that electronic communication (via the Internet or other network) among themselves may involve the

8

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007
RECEIVED NYSCEF: 01/19/2026

DocuSign Envelope ID: 62C6B345-12AC-4E6A-A100-EED467629F92

communication of Common Interest Materials. By engaging in electronic communications during the course of the Litigation Claims, Parties do not intend to waive or in any way weaken any statutory, common law or other privileges or protections to which the Common Interest Materials would otherwise be entitled.

(k)    Continuation of Agreement. This Agreement is not terminated by the conclusion through trial (including appeals) or settlement or other resolution of the Litigation Claims, and Parties shall keep all Common Interest Materials confidential as directed by the terms of this Agreement, unless all Parties consent in writing to the disclosure of said Common Interest Materials. Nothing in this Agreement, however, shall preclude any Party from disclosing their own privileged or work product materials at any time.

9.    **Provisions Solely to Define Relative Rights**.

(a)    The provisions of this Agreement are intended solely for the purpose of defining the rights of Parties. Without limiting the generality of the provisions hereof, there are no third party beneficiaries of this Agreement. Without limiting the generality of the foregoing, no other person or entity, including any Litigation Party or any affiliate or creditor thereof, shall have any rights or benefits hereunder or shall otherwise be entitled in any manner whatsoever to rely on any of the provisions hereof. Nothing contained herein is intended to or shall impair the rights of either Party against any non-party, including any Litigation Party.

(b)    This Agreement, including, *inter alia*, Section 3(f) hereof, shall not waive, release, or impair the rights of either Party against any other Party with respect to separate business relationships or other claims or causes of action any Party may have against other Party unrelated to the Litigation Claims, Counterclaims, Defendants, or any of the proceedings described in the Recitals hereto. Any and all current or future claims or causes of actions of one Party against other Party are expressly preserved, and Parties do not intend to effect or impair such claims or causes of action as part of their Agreement hereunder.

10.    **General Terms**.

(a)    Time is of the Essence. Parties agree that time is of the essence with respect to each of the terms and conditions of this Agreement.

(b)    Waivers, Amendments, Etc. The provisions of this Agreement may from time to time be amended, modified or waived, if such amendment, modification or waiver is in writing and consented to by each Party. No waiver or approval by any Party under this Agreement shall, except as may be otherwise stated in such waiver or approval, be applicable to subsequent transactions. No waiver or approval hereunder shall require any similar or dissimilar waiver or approval thereafter to be granted hereunder.

(c)    Notices. All notices and other communications provided to any Party hereto under this Agreement shall be in writing (except as otherwise specifically provided in this Agreement) and sent by first class mail, by overnight delivery service, or by facsimile and addressed, delivered or transmitted to such Party at its address or facsimile number set forth below its signature hereto or at such other address or facsimile number as may be designated by such Party in a notice to the other Parties. Any notice, if mailed and properly addressed with

9

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM          INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                      RECEIVED NYSCEF: 01/19/2026

DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

postage prepaid or if properly addressed and sent by pre-paid courier service, shall be deemed given when received; any notice, if transmitted by facsimile, shall be deemed given when transmitted and the Party giving such notice shall have received (including either through telephonic communication initiated by it or telephonic communication received by it) telephonic, machine, or other confirmation that such notice has been received by the intended recipient.

(d)     No Implied Right to Notice; Nonwaiver; Cumulative Remedies.  No notice to or demand on any of the parties hereto in any case shall entitle them to any notice or demand in similar or other circumstances. No failure to exercise, no delay in exercising, and no single or partial exercising, on the part of either Party, of any right, power or privilege hereunder shall operate as a waiver thereof or otherwise preclude any other or further exercise thereof or the exercise of any other right, power or privilege.  The rights and remedies of Parties herein provided are cumulative and not exclusive of any rights or remedies provided by law.

(e)     Successors; Survival of Agreements.  All agreements, representations, warranties, and covenants made herein shall survive the consummation of this Agreement.

(f)     No Third Party Beneficiaries. This Agreement shall be binding upon, inure to the benefit of, and be enforceable by, Parties and their respective successors and assigns. No other person or entity shall be entitled to claim or assert (including as a defense to any liability) any right or benefit hereunder, including the status of being an express or implied third party beneficiary of this Agreement.

(g)     Captions.  Captions in this Agreement are for convenience of reference only and shall not define or limit any of the terms or provisions hereof. References herein to Sections or provisions without reference to the document in which they are contained are references to this Agreement.

(h)     Counterparts; Signatures.  This Agreement may be executed by Parties on any number of separate counterparts, and by each Party on separate counterparts; each counterpart shall be deemed an original instrument; and all of the counterparts taken together shall be deemed to constitute one and the same instrument. To facilitate execution of this Agreement, Parties may execute and exchange facsimile or electronic mail (e-mail) executed counterparts of this Agreement. Facsimile signatures and signatures exchanged by electronic mail (e-mail) shall be deemed valid and binding to the same extent as the original.

(i)     Expenses.  Without limiting the right of any Party to apply any Litigation Proceeds received by it in accordance with the provisions of this Agreement in satisfaction of any such expenses, each Party hereto shall be responsible for the payment of its own fees and expenses, unless otherwise set forth herein.

(j)     Entire Agreement.  This Agreement, together with the exhibits and schedules hereto, contains the entire agreement between Parties with respect to the matters addressed herein. There are no agreements, restrictions, promises, representations, warranties, covenants or undertakings, written or oral, other than those expressly set forth herein.  This Agreement supersedes all prior agreements and understandings between Parties (if any) with respect to the matters addressed herein.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                   RECEIVED NYSCEF: 01/19/2026

DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

(k)    Interpretation. The use of the masculine, feminine or neuter gender or the singular or plural form of words herein shall not limit any provision of this Agreement. The use of the terms "including" or "include" shall in all cases herein mean "including, without limitation" or "include, without limitation," respectively. Reference to any person or entity includes such person's or entity's successors and assigns to the extent such successors and assigns are permitted by the terms of this Agreement, and reference to a person or entity in a particular capacity excludes such person or entity in any other capacity or individually. Reference to any agreement (including this Agreement), document or instrument means such agreement, document or instrument as amended or modified and in effect from time to time in accordance with the terms thereof and, if applicable, the terms hereof. Reference to any law means such law as amended, modified, codified, replaced or re-enacted, in whole or in part, and in effect on the date hereof, including rules, regulations, enforcement procedures and any interpretations promulgated thereunder. Underscored references to Sections, clauses, Exhibits or Schedules shall refer to those portions of this Agreement, and any underscored references to a clause shall, unless otherwise identified, refer to the appropriate clause within the same Section in which such reference occurs. The use of the terms "hereunder", "hereof", "hereto" and words of similar import shall refer to this Agreement as a whole and not to any particular Section or clause of or Exhibit or Schedule to this Agreement. All terms defined in this Agreement shall have the above-defined meanings when used in any certificate, report or other document made or delivered pursuant to this Agreement, unless the context therein shall clearly otherwise require. In the computation of periods of time in this Agreement from a specified date to a later specified date, the word "from" means "from and including" and the words "to" and "until" each means "to, but not through." This Agreement and the other documents relating to this Agreement are the result of negotiations among and have been reviewed by counsel to Parties, and are the products of all Parties. Accordingly, they shall not be construed against (or in favor of) either Party merely because of such Party's involvement (or non-involvement, as the case may be) in their preparation.

(l)    APPLICABLE LAW. THIS AGREEMENT AND ANY OTHER WRITING EXECUTED IN CONNECTION HEREWITH SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED THEREIN WITHOUT GIVING EFFECT TO PRINCIPLES OF CONFLICTS OF LAW. COURTS SITTING IN NEW YORK STATE SHALL HAVE EXCLUSIVE JURISDICTION OVER ANY AND ALL ACTIONS BROUGHT BY THE PARTIES RELATING IN ANY WAY TO THIS AGREEMENT.

(m)    WAIVER OF RIGHT TO JURY TRIAL. EACH OF THE PARTIES IRREVOCABLY HEREBY WAIVES ANY RIGHT IT MAY HAVE TO TRIAL BY JURY IN ANY AND ALL SUITS, ACTIONS OR OTHER PROCEEDINGS THAT ARISE FROM, OR CONSIST OF, A CLAIM FOR DAMAGES UNDER, A CLAIM OF A BREACH OF, OR A DECLARATORY JUDGMENT ACTION FOR THE INTERPRETATION OF, THIS AGREEMENT.

**[Signature Pages Follows]**

DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

IN WITNESS WHEREOF, the parties hereto have caused this Common Interest and Joint Litigation Agreement to be executed by their respective officers thereunto duly authorized as of the day and year first above written.

HI BAR CAPITAL, LLC

By: _____
DocuSigned by: *Yisroel Herbst*
4313A54F467840D...
Name: Yisroel Herbst
Its: Owner

Contact Address:
HI Bar Capital, LLC
1825 65th Street
Brooklyn, NY 11204
ATTN: Yisroel Herbst
      Mordi Herbst
Email: ymherbst@gmail.com
       mordi@hibarcapital.com

*With a copy to:*
Law Office of Michael Ehrenreich PLLC
555 Willow Avenue, Suite 105
Cedarhurst, NY 11516
Attention: Michael Ehrenreich
Email: me@ehrenreichlaw.com

[Signature Page to Common Interest and Joint Litigation Agreement]

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM      INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                    RECEIVED NYSCEF: 01/19/2026

DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

SPIN CAPITAL, LLC

┌─ DocuSigned by:
By: _____
   Josh Lubin
   └─ 8C1F4DC20A904D9...
Name: Arvumi Lubin
Its: President


Contact Address:
Spin Capital, LLC
1460 Arboretum Parkway
Lakewood, NJ  08701
ATTN: Josh Lubin
Email: josh@spincapital.com

*With a copy to:*
Bryan Cave Leighton Paisner LLP
161 North Clark Street, Suite 4300
Chicago, Illinois 60601
ATTN: Jason J. DeJonker
Email: Jason.DeJonker@bclplaw.com

NOT AN OFFICIAL COPY – PUBLIC ACCESS – NOT AN OFFICIAL COPY

[Signature Page to Common Interest and Joint Litigation Agreement]

DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

# Schedule 1

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                   RECEIVED NYSCEF: 01/19/2026

DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

## Schedule 2

- Bryan Cave Leighton Paisner LLP

- Feldman Law Group, P.A.

- Wells Law P.C.

- Foley & Lardner LLP

- Proskauer Rose LLP

- Law Office of Michael Ehrenreich

- Law Offices of Steven Zakharyayev

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007
RECEIVED NYSCEF: 01/19/2026

# EXHIBIT C

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                      RECEIVED NYSCEF: 01/19/2026

## ABSOLUTE ASSIGNMENT OF INTERESTS AND RIGHTS

This ABSOLUTE ASSIGNMENT is entered into this _17_ day of _MARCH_, 20 _25_, is between SPIN CAPITAL, LLC, a New Jersey limited liability company (hereinafter "SPIN") and AVRUMI LUBIN a/k/a JOSH LUBIN, an individual, and/or his assigns (hereinafter "LUBIN"), together, hereinafter called the "Parties".

### RECITALS

WHEREAS, SPIN is the current and sole owner of that certain rights, title and interest under that certain Common Interest And Joint Litigation Agreement dated January 28, 2022 between SPIN and Hi-Bar Capital, LLC (hereinafter "JLA"), including any and all claims, rights or actions SPIN may have (whether known or unknown, contingent, collateral or otherwise) to SPIN as of the date hereof) against any third party arising in connection with, or otherwise related to the JLA and the underlying claims contemplated under the JLA (altogether "Rights");

WHEREAS, Lubin is a person desirous of acquiring the Rights from SPIN and asserting such rights in an action captioned *Hi Bar Capital, LLC v. Karma of Palm Beach Inc., et al.,* in The Circuit Court of The Seventeenth Judicial Circuit, Broward County, Florida (the "Florida Court"), as Case No. 22-006401 (the "FL Litigation") and in the United States Bankruptcy Court for the Southern District of Florida, Case No. 22-15627-EPK (the "Bankruptcy Case") and in the Bankruptcy Case, Adversary Case No. 22-01218-EPK (the "Adversary Proceeding," collectively with the Bankruptcy Case, the "Bankruptcy Proceedings") or any other action or court proceeding anywhere deemed necessary by Lubin to assert such rights.

NOW THEREFORE, that SPIN, for and in consideration of TEN DOLLARS ($10.00) and other good and valuable consideration to SPIN, in hand and paid for by Lubin, the receipt and sufficiency whereof is hereby acknowledged and bestows upon SPIN a benefit which is material and acknowledged as such by SPIN, has GRANTED to, bargained, transferred, sold, conveyed, and assigned over exclusively to Lubin any and all rights, title, interest, possession, privileges or any other interests of any kind, whatsoever, SPIN may possess in the JLA, or any derivative thereof, along with any rights or privileges SPIN may have under, in law or equity.

SPIN has agreed and contemplated the contents of this Assignment and has given up his rights in a bargained for exchange as contained herein and has done so willfully, freely without duress or coercion and has acted with a reasonable understanding of the consequences of surrendering said rights and interests.

SPIN GRANTS any and all rights, powers, interests, privileges, whether executory or not, available or not, and conveys such ability to Lubin to use, deploy, exercise, commence, or otherwise perform as if SPIN was executing it itself, in the complete and sole discretion of Lubin, without reserve.

SPIN represents and warrants that it owns or otherwise is seized of all ownership interests, in law or equity, of any and all interests, or any derivative thereof, in the JLA and has full right and privilege to dispose of such in any manner it deems appropriate and proper, in its sole discretion. Further, SPIN represents and warrants that no other person, party or parties have, possess, maintain or otherwise maintains a valid claim or interest, recorded or unrecorded, in the JLA or any and all rights, privileges or claims which SPIN may personally have by virtue of said ownership thereof, other than such claims, interests or rights which have already been previously disclosed to Lubin or are a matter of public record.

SPIN has entered into this Assignment voluntarily and in good faith with the full intent that this Assignment be binding between the Parties. SPIN has been advised to seek review of this Assignment with competent legal counsel and has either pursued or waived such right. This Assignment shall be governed by New York law and subject thereto. Any portion hereof not compliant is to be severed without effect on any remainder.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

In any and all events, interpretation should be given to this instrument to accomplish the intent to perform a complete assignment from SPIN to Lubin of any and all rights, title, interest, possession, privileges or any other interests of any kind, whatsoever, SPIN may possess in the JLA, and no other.

It is the intention of the Parties that this arrangement is to be confidential and does not require recordation in any public record to be binding, obligatory and effective between the Parties as to the Parties themselves, to the fullest extent permitted under law and SPIN waives any challenge or contest as to the intent of this instrument. No third-party witness or official is necessary to witness or otherwise authenticate this instrument for it to be binding upon and between the Parties.

**EXECUTED AS OF THE DATE LISTED ABOVE**

FOR SPIN CAPITAL, LLC, a New Jersey limited liability company:

/s/_____
By: Arvumi Lubin,
Its Manager and Managing Member

EFFECT IS TO BE GIVEN TO THIS INSTRUMENT TO ACCOMPLISH THE INTENT OF THE PARTIES AND ANY OMISSION, DEFECT, ERROR, MISAPPLICATION OR LEGAL DEFICIENCY OF ANY KIND SHOULD BE INTERPRETED TO GIVE LEGAL EFFECT TO THE INTENTION OF THE PARTIES UNDER THIS INSTRUMENT WHICH IS TO GRANT TO, TRANSFER, SALE, CONVEY, OR OTHERWISE ASSIGN OVER EXCLUSIVELY TO LUBIN ANY AND ALL RIGHTS, TITLE, INTEREST, POSSESSION, PRIVILEGES OR ANY OTHER INTERESTS OF ANY KIND, WHATSOEVER, SPIN MAY POSSESS IN THE JLA, OR ANY DERIVATIVE THEREOF, ALONG WITH ANY RIGHTS OR PRIVILEGES SPIN MAY HAVE UNDER, IN LAW OR EQUITY.

**NOTORIAL ACKNOWLEDGEMENT**

State/Country of _NEW YORK_ }
County/Province of _NEW YORK_ }
City/Municipality of _____ }

The foregoing instrument is acknowledged before me on this _17_ day of _MARCH_, 20_25_ by Arvumi Lubin, the duly authorized person for SPIN CAPITAL, LLC, who is [ ] personally known to me or [ ] who has/have produced a valid [ ] drivers license or [ ] state issued identification card as identification and had physically appeared before me.

Witness my signature and official seal in the aforesaid state and county.

/s/ _____
Notary Public

[SEAL]

My Comm. Expires:_____

BRET SABLOSKY
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01SA6362623
Qualified in New York County
Commission Expires August 7, 2025

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007
RECEIVED NYSCEF: 01/19/2026

# EXHIBIT D

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                    RECEIVED NYSCEF: 01/19/2026

## AUTHORITY TO REPRESENT

Hi Bar Capital, LLC, Mordi Herbst, Yisroel Herbst, Spin Capital, and Josh Lubin (referred to herein as "Clients") hereby retain and authorize the Leto Law Firm to represent them in the following lawsuits:

- Nicole Testa Mehdipour v. Hi Bar Capital, et. al., Southern District of Florida Case No.: 22-12790-EPK;
- Hi Bar Capital, LLC v. Karma of Palm Beach, Inc., et. al., Broward County Case No.: 22-006401

1.      For services rendered, it is understood that Joshua Lubin has agreed to pay all fees and costs associated with this representation pursuant to the terms of the *Common Interest and Joint Litigation Agreement* dated January 28, 2022, which is incorporated herein by reference. Furthermore, it is understood by Clients that the *Common Interest and Joint Litigation Agreement* provides Mr. Lubin with "the authority to prosecute and settle" the matters and unless terminated pursuant to Section 2(f). Finally, counsel understands that Spin Capital and Josh Lubin have an interest in the outcome of this case, and while not counsel of record in the case for Spin and Lubin, understands they are a joint client for purposes of this case.

2.      For the representation described above, it agreed that Leto Law Firm shall receive an initial $20,000 non-refundable retainer. Although the retainer is non-refundable and deemed earned upon receipt, Clients will not be billed until services rendered on an hourly basis exceed the amount of the non-refundable retainer. Matthew Leto will bill at an hourly rate of $525 per hour and Charlie Gourlis will bill at an hourly rate of $450 per hour. Any paralegal time will be billed at $125 per hour. In addition to the forgoing, a refundable trial retainer in the amount of $50,000 will be required no later than 30 days prior to any scheduled trial date. Any unused portion of that trial retainer (after application to pending fees) shall be returned at the conclusion of the trial.

3.      In addition to the fees described above, Mr. Lubin also agrees to pay all necessary costs incurred in this matter and out-of-pocket expenses incurred related to this representation. These costs include, but are not limited to, items such as filing fees, costs of serving summonses and subpoenas, witness fees, court reporting fees, expert witness fees, postage, photocopying, parking, certified copies, courier services, travel expenses, photographs, graphics, and records.

4.      As you know, the Firm represents more than one client in this matter. An undertaking by a lawyer to represent more than one client in the same matter is called a "joint representation." The applicable rules of professional responsibility permit the representation of more than one client in the same matter provided that, among other things, the lawyer reasonably believes that he or she can adequately represent each client's interests competently and diligently and each client provides informed consent in writing to the joint representation. Joint representation is, of course, not mandatory in this matter, and you have the right to retain an attorney other than the Firm as your counsel.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                      RECEIVED NYSCEF: 01/19/2026

We believe, based on the information furnished to us, that the Clients share a common interest with respect to the Engagement. Based upon the information provided to us about the facts of this matter, there does not appear to be an actual conflict among the Clients. It is possible that, however, that, in the future, your goals, objectives and interests in the Engagement might change and become different from that the other Clients. This creates a potential conflict of interest in the Firm's representation of the Clients now and may create an actual conflict of interest in the future. You are entitled to counsel who does not face either a potential or actual conflict of interest. Should you wish to retain the Firm, each Client agrees to waive any potential and/or actual conflict of interest which arises from our Firm's joint representation of the other Clients.

Although we are not currently aware of any actual or reasonably foreseeable adverse effects of joint representation, it is possible that issues may arise in which our representation of you may be materially limited by our representation of the other Clients. And, you acknowledge that it is not possible to predict all of the conflicts which may arise in a matter where multiple clients are being jointly represented. If such circumstances arise, the Firm will evaluate whether continued joint representation is appropriate, as discussed below.

We understand that no Client objects to the Firm representing the other Clients in this matter and that, to the extent that any potential conflict may exist or appear to exist, each Client waives any such conflict. Based on the information provided to us by you, and your expressed desire for joint representation, we have concluded that the Firm may appropriately represent the Clients in this matter at this time. If at any time you have any concerns about the appropriateness of continued joint representation, you should let us know immediately so that we can reevaluate the Firm's continuing joint representation of the Clients. If we become aware of any such circumstances, we will do the same.

In the event that joint representation is no longer appropriate in the Firm's determination, including because of any adversity, dispute, conflict, or differing interests among the Clients, you agree that the Firm may in its sole discretion withdraw from representing any of the Clients and may in its sole discretion continue to represent the other Clients in the Engagement. In such scenario, each Client agrees not to move to disqualify the Firm from continuing to represent the other Clients in any action related to the Engagement, nor will the client authorize any counsel they retain to move for such disqualification.

You also understand that if the Firm were to represent any Client alone in this matter, it would not be able to share the information provided by the Client with anyone except as provided by law. However, when a law firm jointly represents multiple clients in a single matter, there is no privilege which may be asserted as between the clients. You understand, therefore, that the Firm may elect, as it deems appropriate, to share information provided by you with the other Clients; but you further understand that the Firm may not necessarily share with you all of the information it receives from any other Client. You agree that, should the Firm be discharged by you or should the Firm withdraw from representing you under any of the circumstances described in this Engagement Letter, any information previously acquired by the Firm from you may be used by the Firm in furtherance of its continued representation of the other Clients in this matter.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                          RECEIVED NYSCEF: 01/19/2026

Your signature below confirms that you have been given the option to consult with independent counsel concerning the conflict and joint representation issues discussed above and have had adequate time to do so, and further confirms that you waive any actual and/or potential conflicts of interest raised by the Firm's joint representation in this matter.

5.      Clients understand that there have been no guarantees made regarding the disposition of any phase of this case. All expressions which relate to the possible results in the case are based strictly on opinion. Likewise, it is impossible to determine in advance the amount of time or expenses needed to complete your case and no assurances of what those costs will ultimately be can be given to you.

6.      All bills for costs incurred shall be payable upon receipt. In addition, Clients and Mr. Lubin agree to carefully review all statements and to promptly notify this firm in writing of any errors or discrepancies in billing within twenty (20) days of the date of the statement.

7.      As permitted by law, an award of legal fees and/or costs may be sought from the opposing party. The payment of such fees shall not be determinative of the amount owed by Clients. Clients understands that the pursuit of an award of attorney's fees is an additional service and any time required to collect the amount due from the opposing party will also be chargeable to Clients.

8.      Representation in this matter will be withdrawn if Clients misrepresent or fail to disclose material facts, or if Clients fails to cooperate or follow advice as given, or if Clients do not make the payments required by this agreement. If suit must be filed for the collection of any sums due under this agreement, then Clients shall pay reasonable attorney's fees together with court costs for collection of such unpaid amounts. In addition, should Clients fail to timely pay for services rendered, Clients acknowledge that an attorney's charging lien and/or retaining lien may be placed against any proceeds or assets you receive or retain pursuant to this matter.

9.      Clients understand that this representation is limited to the matter described above. Should any appeal proceedings be required, a new fee agreement for that appeal will have to be signed.

10.      The provisions of this agreement may be disclosed to the Court in connection with any application for fees and services which may be rendered on Clients' behalf and the Court may be advised by the undersigned of any amounts that have been received on account of fees and costs.

9      This agreement contains the entire understanding between us and may not be varied or modified unless in writing.

11.      FLORIDA LAW GOVERNS THIS FEE AGREEMENT AND ITS TERMS AND CONDITIONS (EXCLUDING FLORIDA'S CONFLICT OF LAW RULES) AND YOU CONSENT TO EXCLUSIVE JURISDICTION AND VENUE IN A COURT IN MIAMI DADE COUNTY, FLORIDA FOR RESOLUTION OF ANY DISPUTE ARISING FROM OR RELATED TO THIS FEE AGREEMENT.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007    RECEIVED NYSCEF: 01/19/2026

12.    If the above correctly and fully sets forth our agreement, please sign a copy hereof where indicated below and return it with the initial retainer fee.

13.    YOU UNDERSTAND THAT LETO LAW FIRM DOES NOT HAVE THE AUTHORITY PROCEED UNTIL SUCH TIME AS THIS DOCUMENT IS SIGNED BY ALL PARTIES.

THIS IS A LEGALLY BINDING CONTRACT. BEFORE SIGNING, PLEASE READ IT CAREFULLY AND BE SURE YOU UNDERSTAND ALL OF ITS CONTENTS. IF THERE IS ANYTHING YOU DO NOT UNDERSTAND, PLEASE ASK. DO NOT HESITATE TO HAVE THIS AGREEMENT REVIEWED BY ANOTHER ATTORNEY OF YOUR CHOICE.

READ, APPROVED AND ACCEPTED THIS __ DAY OF_____, 2023

By: _____
     Hi Bar Captial, LLC

Address: 2250 59th street Brooklyn NY
Business Telephone:    929-491-9130
Cellular Telephone:    929-491-9130
E-Mail: Mordi@hibarcapital.com

By: _____
     Mordi Herbst

Address: 2250 59th street Brooklyn NY
Business Telephone:    929-491-9130
Cellular Telephone:    929-491-9130
E-Mail: Mordi@hibarcapital.com

By: _____
     Yisroel Herbst

Address: 2250 59th Street Brooklyn NY 11204
Business Telephone:    91757738882
Cellular Telephone:    9175773882
E-Mail: Ymherbst@gmail.com

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 643 of 976

By: _____
    Joshua Lubin

Address: 1460 arboretum pkwy lakewood NJ 08701
Business Telephone: 732-608-4905
Cellular Telephone: 732-608-4905
E-Mail: Josh@spincapital.com


The above employment is hereby accepted upon the terms stated above.


Dated: _____        _____
                                  Matthew Leto
                                  LETO LAW FIRM

NOT AN OFFICIAL COPY — PUBLIC ACCESS — NOT AN OFFICIAL COPY

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007    RECEIVED NYSCEF: 01/19/2026

# Authority to Represent - Hi-Bar Matters

Final Audit Report                                                     2023-08-01

| | |
|---|---|
| Created: | 2023-08-01 |
| By: | Matthew Leto (mleto@letolawfirm.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAX2MzRrj-KnxuofdWUFMwj9Lj5tx_WLA5 |

## "Authority to Represent - Hi-Bar Matters" History

📄 Document created by Matthew Leto (mleto@letolawfirm.com)
2023-08-01 - 2:47:45 PM GMT- IP address: 38.132.160.173

📧 Document emailed to josh@spincapital.com for signature
2023-08-01 - 2:50:34 PM GMT

📄 Email viewed by josh@spincapital.com
2023-08-01 - 4:39:45 PM GMT- IP address: 174.208.226.102

✍ Signer josh@spincapital.com entered name at signing as Josh lubin
2023-08-01 - 4:42:05 PM GMT- IP address: 174.208.226.102

✍ Document e-signed by Josh lubin (josh@spincapital.com)
Signature Date: 2023-08-01 - 4:42:07 PM GMT - Time Source: server- IP address: 174.208.226.102

📧 Document emailed to mordi@hibarcapital.com for signature
2023-08-01 - 4:42:08 PM GMT

📄 Email viewed by mordi@hibarcapital.com
2023-08-01 - 4:44:16 PM GMT- IP address: 104.47.66.126

✍ Signer mordi@hibarcapital.com entered name at signing as Mordechai Herbst
2023-08-01 - 4:46:35 PM GMT- IP address: 69.118.107.4

✍ Document e-signed by Mordechai Herbst (mordi@hibarcapital.com)
Signature Date: 2023-08-01 - 4:46:37 PM GMT - Time Source: server- IP address: 69.118.107.4

📧 Document emailed to ymherbst@gmail.com for signature
2023-08-01 - 4:46:38 PM GMT

📄 Email viewed by ymherbst@gmail.com
2023-08-01 - 4:47:32 PM GMT- IP address: 86.8.175.20

📄 **Adobe Acrobat Sign**

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM          INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                       RECEIVED NYSCEF: 01/19/2026

Signer ymherbst@gmail.com entered name at signing as Yisroel M Herbst
2023-08-01 - 4:49:59 PM GMT- IP address: 86.8.175.20

Document e-signed by Yisroel M Herbst (ymherbst@gmail.com)
Signature Date: 2023-08-01 - 4:50:01 PM GMT - Time Source: server- IP address: 86.8.175.20

Agreement completed.
2023-08-01 - 4:50:01 PM GMT

**Adobe Acrobat Sign**

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007 RECEIVED NYSCEF: 01/19/2026

# EXHIBIT E

Case 23-01132-EPK Doc 3831 Filed 01/22/26 Page 647 of 976

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

FVP OPPORTUNITY FUND, III, LP,                    CASE NO.: CACE-22-005125
A Delaware limited partnership, *et al.*,

       Plaintiffs,

v.

KARMA OF BROWARD, INC.,
A Florida corporation, *et. al.*,

       Defendants.

_____/

HI BAR CAPITAL, LLC, a New York             CONSOLIDATED CASE NO.:
Limited liability company,                  CACE-22-006401

       Plaintiff,

v.

KARMA OF PALM BEACH, INC.,
A Florida corporation, *et al.*,

       Defendants.

_____/

### DECLARATION OF AVRUMI LUBIN
### IN SUPPORT OF AVRUMI LUBIN AND JL SPECIAL INVESTMENTS
### MOTION FOR SUMMARY JUDGMENT

I, Avrumi Lubin, under penalty of perjury under the laws of the Florida, state:

1.     I am over the age of 18, and am familiar with this matter and the facts stated herein from personal knowledge.

2.     I am the sole Member of Spin Capital LLC and of JL Special Investments LLC.

3.     Spin, by way of its Common Interest Agreement with Hi Bar, claims an interest in numerous vehicles and the proceeds of sale of those vehicles. JL and Lubin are the assignees of Spin's rights to the proceeds of sale of those vehicles.

4.       Spin entered into a Common Interest and Joint Litigation Agreement (The Common Interest Agreement) with Hi Bar with an effective date of January 28, 2022.  The Common Interest Agreement was previously filed by Hi Bar as an attachment to its April 29, 2025 Motion for Sanctions.

5.       Spin and I also entered into a representation agreement with attorney Matthew Leto on August 1, 2023, the Authority to Represent agreement.  That Authority to Represent agreement defines Spin and me as "Clients "for purposes of this lawsuit[1]. It further states that the Common Interest and Joint Litigation Agreement provides "Mr. Lubin with the authority to prosecute and settle" the matters and unless terminated pursuant to Section 2(f).

6.       Attorney Leto, despite listing me and my company, Spin Capital, as Clients in his retainer agreement, filed a Motion for Sanctions against me on April 29, 2025.

7.       In that Motion Hi Bar claims that Spin and I breached the Common Interest Agreement by failing to pay Attorney Leto's fees.  While it is correct that I challenged Leto's fees for time he billed for taking actions adverse to my and Spin's interests, I offered to pay his fees for work done as of that date and to seek new counsel to represent the interest of Spin, Hi Bar, Herbst and me. At no time did I breach or disavow the Common Interest Agreement.

8.       Further, the Motion for Sanctions also incorrectly states that all affirmative claims belong to Hi Bar, with a waterfall provision to Spin.  The opposite is true. The Common Interest Agreement provides that "Hi Bar hereby assigns to Spin Capital any and all Hi Bar Claims". It provides for a waterfall provision for payments by Spin to Hi Bar.

---

[1] Although the Common Interest Agreement states that Leto will not file an appearance for Lubin or Spin, that reference does not absolve Leto from representing the interests of Lubin and Spin, or from withdrawing as counsel if he could not.

9.      The fees in question amount to $75,000.00.  Spin is owed millions of dollars and has a claim against $2,100,000.00 held by the Bankruptcy Court.  Leto is attempting to cancel a multi-million-dollar agreement because he was not paid his fees of $75,000.00.

Under penalties of perjury, I declare that I have read the foregoing document and that the facts stated in it are true.

Dated: 12/05/25 _____

_Avrumi Lubin_

Avrumi Lubin

Case 23-01132-EPK   Doc 383-1   Filed 01/22/26   Page 650 of 976

# Law Offices of David W. Langley

Final Audit Report                                                           2025-05-12

| | |
|---|---|
| Created: | 2025-05-12 |
| By: | Paralegal Activity (paralegalactivityllc@gmail.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAgsgu63svKGux76jQliLMpbxN8l-5RziM |

## "Law Offices of David W. Langley" History

Document created by Paralegal Activity (paralegalactivityllc@gmail.com)
2025-05-12 - 8:35:34 PM GMT

Document emailed to Avrumi Lubin (aylubin@gmail.com) for signature
2025-05-12 - 8:35:37 PM GMT

Email viewed by Avrumi Lubin (aylubin@gmail.com)
2025-05-12 - 8:35:43 PM GMT

Document e-signed by Avrumi Lubin (aylubin@gmail.com)
Signature Date: 2025-05-12 - 11:41:36 PM GMT - Time Source: server

Agreement completed.
2025-05-12 - 11:41:36 PM GMT

Powered by
Adobe
Acrobat Sign

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

**EXHIBIT "B"**

Page 1

IN THE CIRCUIT COURT OF THE
17TH JUDICIAL CIRCUIT IN AND
FOR BROWARD COUNTY, FLORIDA

Case No. CACE-22-005125

FVP OPPORTUNITY FUND III, LP, A DELAWARE
LIMITED PARTNERSHIP; FVP INVESTMENTS, LLC,
A DELAWARE LIMITED LIABILITY COMPANY; AND
FVP SERVICING LLC, DELAWARE LIMITED
LIABILITY COMPANY,

Plaintiffs,

vs.

KARMA OF BROWARD, INC.,
a Florida corporation, et al.,

Defendants.
_____/

HI BAR CAPITAL, LLC, a New York
limited liability company, et al.,
Plaintiff,

V                          Case No. CACE-22-06401

KARMA OF PALM BEACH, INC.,
a Florida corporation, et al.,
_____/

Judge David Haimes
Broward County Courthouse
201 Southeast Sixth Street,
17150
Fort Lauderdale, Florida 33301
August 13, 2025
1:30 p.m. to 4:50 p.m.

ALL PENDING MOTIONS and
MOTION FOR SUMMARY JUDGMENT

Reported By:
Cheryl L. Jenkins, RPR, RMR

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 652 of 976

Page 2

APPEARANCES:

SCHWARTZ BRESLIN, by
JERRELL "JERRY" BRESLIN, Esquire
and
BUSCHEL GIBBONS, by
ROBERT BUSCHEL, Esquire
and
COHEN & MCMULLEN, by
MICHAEL MCMULLEN, Esquire
BRADFORD COHEN, Esquire
and
JONATHAN SCHWARTZ, Esquire (via Zoom)
On behalf of the Plaintiffs, FVP Opportunity Fund III,
LP, a Delaware Limited Partnership; FVP Investments,
LLC, a Delaware Limited Liability Company; and FVP
Servicing LLC, Delaware Limited Liability Company

KATZMAN WASSERMAN BENNARDINI & RUBINSTEIN, by
CHARLES BENNARDINI, Esquire
and
SCOTT C. GHERMAN, P.A., by
SCOTT GHERMAN, Esquire (via Zoom)
On behalf of the Defendants,
Lisa Farache, Moshe Farache,
1001 Clint Moore, LLC/Auto Wholesale of Boca

LETO LAW FIRM, by
MATTHEW LETO, Esquire
On behalf of the Defendant, Hi Bar

SHRAIBERG PAGE, by
PATRICK DORSEY, Esquire
On behalf of Franklin Capital Funding
and Franklin Capital Group

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 653 of 976

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

Page 3

CONTINUED APPEARANCES

DAVID LANGLEY, Esquire
and
KASEN & KASEN, by
MICHAEL KASEN, Esquire (via Zoom)
On behalf of Avrumi Lubin and JL Special Investments

STEVEN MEYER, Esquire (via Zoom)
On behalf of MMS Ultimate Services, Incorporated

AKERMAN, by
BRETT MARKS, Esquire (via Zoom)
On behalf of Millco-Atwater

ALSO PRESENT

Katie Gleason, Esquire
Lisa Farache
Moshe Farache

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                          RECEIVED NYSCEF: 01/19/2026

Page 4

THE COURT:  Okay.  So, we are now on the record, all right?  So, everything else had nothing to do with the case.

All right.  So we're on the record in Case CACE-22-5125, FVP Opportunity Fund III, LP, et al. versus Scott Zankl, et al.

Let me start with the plaintiffs.  Can I get appearances?

MR. BRESLIN:  Good morning, Judge. Jerry Breslin for the FVP parties.

THE COURT:  Good morning, Mr. Breslin, and who else is with you?

MR. BRESLIN:  Michael McMullen, Brad Cohen, and Rob Buschel.

THE COURT:  All right.  Good afternoon.

MR. COHEN:  Good afternoon, Judge.

THE COURT:  All right.  Everyone on Zoom, could you hear that?  There's four attorneys for the plaintiff.  Could you hear them all?

MR. GHERMAN:  Yes.

THE COURT:  Okay.  Perfect.

And then now for the defense, let me start with Mr. Zankl.

(No verbal response.)

THE COURT:  All right.  Mr. Zankl is not

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                 RECEIVED NYSCEF: 01/19/2026

Page 5

here.  He's not on Zoom.

All right.  So let me go for the rest of the co-defendants.  Who wants to go first?

MR. BENNARDINI:  Good afternoon, your Honor.  Charles Bennardini on behalf of Lisa Farache, Moshe Farache, 1001 Clint Moore, and nominal defendant Auto Wholesale of Boca, and with me on Zoom is my co-counsel, Mr. Gherman.  Mr. and Mrs. Farache are also in the courtroom, along with another one of their lawyers, Katie Gleason.  Thank you, Judge.

THE COURT:  All right.  Good afternoon, Mr. Bennardini, Mr. Gherman, as well as the Faraches.

All right.  Can I get appearances for the remaining co-defendants?

MR. LETO:  Yes.  Good afternoon, your Honor.  I'm Matthew Leto, on behalf of Hi Bar Capital, Mordecai Herbst, and Yisroel Herbst (phonetic).

THE COURT:  All right.  Good afternoon, Mr. Leto.

All right, and then we have next?

MR. DORSEY:  Good afternoon, Judge.  Patrick Dorsey, D-O-R-S-E-Y, on behalf of the Franklin parties, Franklin Capital Funding and Franklin Capital Group.

THE COURT:  All right.  Good afternoon,

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007    RECEIVED NYSCEF: 01/19/2026

Page 6

Mr. Dorsey.

MR. DORSEY:  Thank you, Judge.

THE COURT:  And then next?

MR. LANGLEY:  Yes, good afternoon, your Honor.  David Langley here for Avrumi Lubin and JL Special Investments.

THE COURT:  All right.  Is Mr. Lubin -- Mr. Lubin is not here.

MR. LANGLEY:  I think he's trying to get on Zoom, or maybe he's waiting until 2:30.

THE COURT:  Okay.  I do not see him on Zoom, and nobody's in the waiting room, so --

MR. LANGLEY:  Okay.

THE COURT:  All right, and then -- all right.  Anybody else on Zoom that hasn't made an appearance that wants to make an appearance?

MR. KASEN:  Good afternoon, your Honor.  Michael Kasen, the law firm of Kasen & Kasen, representing Avrumi Lubin.  I think that I have a pro hac vice motion pending, your Honor, that was filed earlier today.

THE COURT:  So you're with Mr. Langley?

MR. KASEN:  I am.

Okay.  Any objection from anybody to the pro hac vice motion?

MR. BRESLIN:  No, Judge.

Page 7

THE COURT: No. All right, and I take it you're a member in good standing, et cetera?

MR. KASEN: I am, your Honor.

THE COURT: All right. So that's granted.

MR. KASEN: Thank you, Judge.

MR. MEYER: Your Honor, I'm Steven Meyer here. I represent Defendant MMS Ultimate Services, Incorporated.

THE COURT: All right. Good afternoon, Mr. Meyer. I'm sorry, you represent MMS?

MR. MEYER: Correct.

THE COURT: Okay. All right. I think that's everybody, right?

Oh, wait, there's Mr. Schwartz?

MR. BRESLIN: Yes.

MR. COHEN: He's on our side, Judge.

MR. SCHWARTZ: Yes, Judge, Jonathan Schwartz. I'm just observing today. I'm co-counsel with Mr. Breslin, Mr. McMullen, Mr. Cohen, and Mr. Buschel.

THE COURT: All right. Good afternoon, Mr. Schwartz.

MR. SCHWARTZ: Good afternoon, Judge.

THE COURT: Let me just see here. How about Brett Marks?

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                RECEIVED NYSCEF: 01/19/2026

Page 8

MR. MARKS:  Judge, good afternoon.  This is Brett Marks, with Akerman, LLP.  I represent one of the adversary defendants, Millco-Atwater.  We don't have any motions at issue today.  We're just observing the hearing.

THE COURT:  All right.  You are welcome to observe, it's a public courtroom.  All right.  Good afternoon, Mr. Marks.

All right, now I think I have everybody.

All right.  We're here, I've got the afternoon for you.  Let me start with what hopefully is the easier one, and will save me a lot of time going forward, and that is the joint motion to approve settlement.  Let me pull that up.

All right.  Is there an objection from anybody?  Just the Lubin parties --

MR. LANGLEY:  Yes, Judge.

THE COURT:  -- I take it, correct?

MR. LANGLEY:  Yes, Judge.  We filed an objection.  I don't see it showing up on the docket, but I would advise the Court that the same motion was filed in the bankruptcy case with Judge Kimball, and he denied it last night.

THE COURT:  Why did -- what was the basis for his denial?

MR. LANGLEY:  He read through our motion,

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

which shows that Mr. Lubin actually has an interest in the funds. The three other parties are attempting to take the funds for themselves and to cut out Mr. Lubin, who's the assignee of Spin, and who is the assignee of Hi Bar.

THE COURT: Okay.

MR. LANGLEY: And based on just a letter from Mr. Leto saying the common interest agreement is invalid, they're claiming that we're not a part of it.

THE COURT: All right. That's the 2:30 motion for summary judgment, right?

MR. LANGLEY: Correct, yes, Judge.

THE COURT: So --

MR. LANGLEY: That hasn't been heard yet.

THE COURT: Well, it's part of it.

MR. DORSEY: I'm sorry, I just need to correct a misstatement. Judge Kimball denied the motion because he said he didn't have jurisdiction over the issue. He said, if there's a dispute, I want the state court to decide.

THE COURT: Okay.

MR. DORSEY: He didn't determine anything.

THE COURT: So if I grant the motion, then you go back -- I'm sorry, deny the motion, it's not going to go back, right?

MR. BRESLIN: Correct.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                              RECEIVED NYSCEF: 01/19/2026

Page 10

MR. LANGLEY: If I can add just one thing, Judge, and Mr. Dorsey is correct, but there's some very good language in that order that I think the Court should look at that we quoted in our response, which has been uploaded.

And, Judge, I would point out that the urgency of the motion is that Judge Kimball doesn't want to keep the money in the bankruptcy court registry.

We're fine with either moving it to the state court registry or to Mr. Breslin's trust account. We just don't want it dispersed from there until you make a decision on --

THE COURT: Let me ask you a question, though. Say --

MR. BRESLIN: Judge, it's our motion, if we could argue it?

THE COURT: No, I know.

Say Mr. Lubin was successful, and at the end of the day, he wins every one of his claims. He doesn't get the entire pot, right?

MR. LANGLEY: There's a waterfall provision back to Mr. Leto's client. Right, so he doesn't get it all, but he gets 70 percent, at least, for the first million.

THE COURT: So he gets 700,000 --

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                          RECEIVED NYSCEF: 01/19/2026

Page 11

MR. LANGLEY:  Well --

THE COURT:  -- is the most he can get out of anything?

MR. LANGLEY:  No, no, no.  I mean, there's over 2 million in the bankruptcy court.

THE COURT:  Right.

MR. LANGLEY:  Mr. Leto is holding some funds.  There may be other funds out there, but it's the Hi Bar's claims, as they're defined in the common interest agreement, were assigned to Spin.  They were subsequently assigned to Mr. Lubin.  There's a waterfall provision back to Hi Bar.  So it starts at 70 percent to Spin, 30 percent to Hi Bar, and then it goes down from there, depending on the amount, that's all spelled out in the common interest agreement, but the majority of the funds would go to Mr. Lubin.

THE COURT:  And so you're going to tie up everything just based on Mr. Lubin -- because it sounds as though --

MR. LANGLEY:  Well, Judge --

MR. BRESLIN:  If I could --

MR. LANGLEY:  -- you need to decide who the common interest is.

THE COURT:  I just had a quick question about that to begin with.  So let me start over then.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                                 RECEIVED NYSCEF: 01/19/2026

Page 12

So we're here for the joint motion to approve settlement. Who wants to take the lead on that?

MR. BRESLIN: Yes, thank you, Judge. I'd like to go first.

Judge, the joint motion was filed by me. It was filed on behalf of the FVP parties, the Franklin parties, and the Hi Bar parties.

Judge, if you take a look at the complaint, the FVP parties and the Franklin parties have sued Hi Bar Capital, as well as the members of Hi Bar Capital, Yisroel Herbst and Mr. Dorsey, through his cross-claim, the Franklin cross-claims, have sued his son, Mordecai.

Judge, the reason that we are here is because we initially went to the bankruptcy court, because this whole matter began when Mr. Farache took the vehicles off the lots at 101 Clint Moore, and then he declared bankruptcy, AWB declared bankruptcy, the cars went to the bankruptcy court. There were three parties fighting in the bankruptcy court over those vehicles, FVP, Hi Bar, Franklin.

So there were three companies.

THE COURT: I remember. That was going to be our first trial, was to see who had priority over that, but now you've settled it --

MR. BRESLIN: Right, so --

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007
INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 13

THE COURT: -- and so I don't have to have my first trial as long as I approve the settlement.

MR. LANGLEY: Correct.

MR. BRESLIN: Right, right. So that priority issue got kicked back to this Court, and so the priority issue was scheduled to go to trial in September with trial number one, and trial number one are the Hi Bar parties, movement; trial number two, the Farache parties.

So FVP, Franklin, and Hi Bar, and Hi Bar is represented by Mr. Leto, entered into a settlement agreement. So we've entered into a settlement agreement to resolve all the issues before your Honor.

And what we did was, we entered into the settlement agreement. We then went over to the bankruptcy court. We advised Judge Kimball that we entered into a settlement agreement.

Mr. Lubin filed an objection in the bankruptcy court saying, well, wait a second, I have rights there and, Judge Kimball, I don't want you to rule.

And so what Judge Kimball did was he then kicked it back to your Honor to make a determination as to whether or not we have an enforceable settlement agreement, and let me tell you why we do.

We've entered into a settlement agreement, Judge, but the three named parties to the settlement

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007
RECEIVED NYSCEF: 01/19/2026

Page 14

agreement are FVP, Franklin, and Hi Bar.

So what is Mr. Lubin's objection?

Hi Bar signed the settlement agreement. So we have a -- we've entered into an agreement with Hi Bar, it's signed, sealed, and it's in effect.

So Mr. Lubin objects because he says that, I entered into an agreement years ago with Hi Bar, where I agreed with Hi Bar that I would fund some of the litigation, and in return for that, I would be entitled to some of the proceeds. So they have what's called a common interest agreement. Their common interest agreement was more or less an assignment of claims in various lawsuits to which Spin would be entitled to some proceeds if there was a recovery.

So a year ago Mr. Leto notified Mr. Lubin that that agreement is breached, that's the common interest agreement. So he gave them a notice of breach. Since that time Hi Bar has been paying their own bills. So to the extent that there ever was an agreement, it has been terminated.

Let's assume for the moment that it was never terminated. If it was never terminated, Judge, Mr. Lubin does not have rights under that agreement to substitute in as a partner. Mr. Lubin -- the only rights Mr. Lubin has under that agreement is to sue Hi Bar, and

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 665 of 976

Page 15

that's our position, and that's the position that I made in the joint motion.

So we have an agreement. We have a settlement agreement. We want your Honor to endorse the settlement agreement so we can go back to Judge Kimball and say that this agreement has been endorsed, but Mr. Lubin objects to it because he says that our agreement breaches his agreement.

Well, the legal issue here is when Hi Bar signed that settlement agreement with FVP and Franklin, did they have the power to do so? And they did, of course they did. They had the power to sign that agreement. The only question is -- and even if it breached the prior agreement, they still have the power to enter into the agreement, and that gives Lubin a cause of action.

Why is that relevant? Because if you look at the common interest agreement, if Lubin, if there's a default under the common interest agreement, then Lubin would have to bring an action in New York, because the sole jurisdiction under that agreement is in New York. He would have had to have, a year ago, when he was noticed of the termination, brought an action in New York to try to somehow get an order from a New York court that would be honored by your Honor to give him some rights here.

But, Judge, the case is here, Hi Bar is the

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                 RECEIVED NYSCEF: 01/19/2026

Page 16

party.  Josh Lubin is not the party.  Josh Lubin is trying to say that I want to substitute in and become Hi Bar, but that's just an absurd ask, legally and factually, because what's he saying, I want to become Hi Bar?  We're suing Hi Bar for 7.5 million.  We've settled that.  So what is it, is Mr. Lubin saying, well, I want to become Hi Bar, but if there's a judgment against me for 7.5 million, I'm going to personally pay it?  He's not saying any of that.  So what it is, it's just, it's obstructionism.

So he has no legal grounds to prevent your Honor from endorsing the settlement agreement, because Hi Bar is Hi Bar.  They're their own company.

THE COURT:  Well, I understand your argument.  All right.

MR. BRESLIN:  They're --

THE COURT:  Let me do this, I take it everybody else is in agreement, correct, except for Mr. Lubin?

MR. LETO:  Yes, your Honor.  I also just want to add one more thing, if we can, Hi Bar.

THE COURT:  Go ahead.

MR. LETO:  If I can?

The only other thing I wanted to add is, Mr. Lubin also has literally no claim in this case.  In his pleadings, there's not a single pleading that he filed

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007
INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

Page 17

that asks your Honor to deal with this cooperation agreement, make a declaratory judgment about it, nothing. He's simply a defendant right now, that's all he is. So there's nothing even before your Honor which would give him any rights to have a decision made that he has rights under this agreement.

THE COURT: Let me ask you, did he file a proof of claim in the bankruptcy case?

MR. LETO: No, he doesn't have a claim.

MR. DORSEY: He has not.

THE COURT: All right. So he's got no claim here, he's only a defendant, and no claim in the bankruptcy case?

MR. LETO: Right, and just to kind of tie it off, under this cooperation agreement, it is terminable at Hi Bar's absolute discretion.

THE COURT: No, I understand.

MR. LETO: So --

THE COURT: That goes to the merits, and part of what was argued by Mr. Breslin as well goes to the merits. I'm not going to get into the merits of whether Lubin has a claim against Hi Bar or not for purposes of determining whether to approve the settlement. I just need to see if he even has basically standing or whatnot even to contest it, and so that is now directed to you,

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                              RECEIVED NYSCEF: 01/19/2026

Page 18

Mr. Langley.

MR. LANGLEY: Yes, Judge.

THE COURT: Okay. So --

MR. LANGLEY: So first, no court has ruled on a common interest agreement. I think what would be very instructive for the Court would be to read the Kimball opinion that we filed. There's a notice of filing, it should show up. I think --

THE COURT: Okay. Before I would even look at the Kimball opinion, what are the facts? How would Mr. Lubin --

MR. LANGLEY: Well, the same motion --

THE COURT: -- have any basis --

MR. LANGLEY: -- was filed in -- or a similar joint motion was filed in the bankruptcy court. That was set for hearing today at 11 o'clock. Yesterday, Judge Kimball ruled on it and canceled the hearing.

In his order, you asked about a proof of claim in the bankruptcy case. In his sale order he says, three parties are entitled to the proceeds, FVP, Franklin, and Hi Bar.

In his ruling yesterday he says, I previously said the only parties entitled to this are FVP, Franklin, and Hi Bar. I now realize that was incorrect. Lubin, if the common interest agreement survives, has an

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 669 of 976
INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 19

interest.

He basically is kicking the ball back to you to decide whether or not the common interest agreement exists or is still in effect and, Judge, the common interest agreement, 2A says, Hi Bar hereby assigns to Spin Capital any and all Hi Bar claims.

MR. LETO:  Can you finish the sentence?

MR. LANGLEY:  Those are defined --

THE COURT:  All right.  Let me --

MR. LANGLEY:  -- subject to the terms --

THE COURT:  I'm looking at your objection, and that was filed, just so we're clear, at 11:40 this morning.

MR. LANGLEY:  Yes.

THE COURT:  So --

MR. LANGLEY:  The motion was filed yesterday, I don't know, after 5:00.

THE WITNESS:  Well, the objection --

MR. LANGLEY:  And I don't know how it got set for hearing today.  I wasn't noticed that --

THE COURT:  Well, but --

MR. LANGLEY:  -- a motion filed yesterday was being set for hearing today.

THE COURT:  What motion?

MR. LANGLEY:  The joint motion to approve

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                        RECEIVED NYSCEF: 01/19/2026

Page 20

the settlement.

THE COURT:  No, that was filed July 27th.

MR. LANGLEY:  July 27th?

THE COURT:  Joint motion for settlement, urgent motion, expedited hearing requested.

MR. LANGLEY:  Okay.  Do --

THE COURT:  That's the one that we're all discussing, correct?

MR. LETO:  Yes.

MR. LANGLEY:  Okay.

THE COURT:  Okay.  There is not --

MR. LANGLEY:  I'm sorry, there was something filed yesterday.  We filed a response, Judge.  So, two --

THE COURT:  There was a notice of filing yesterday.

MR. LANGLEY:  The notice of filing is the Judge Kimball opinion, which addresses all these same issues.

MR. BRESLIN:  Judge, to give you a little --

THE COURT:  Let me look at this.

MR. BRESLIN:  Or a bigger understanding, Judge Kimball originally scheduled a hearing for today on the motion to release the funds, the motion to approve the settlement, to release the funds in the bankruptcy court.

Mr. Lubin filed objections in the bankruptcy

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                RECEIVED NYSCEF: 01/19/2026

court.  Judge Kimball canceled the hearing for today and sent the matter back for your Honor to determine whether or not Mr. Lubin had any legal grounds to interfere with our settlement agreement.

So the issue would have been moot --

THE COURT:  No, I understand.

MR. BRESLIN:  -- if we had a hearing before Judge Kimball, and so --

THE COURT:  Let me look at this now.

MR. BRESLIN:  -- he kicked it back to your Honor.

THE COURT:  Hang on.

So at 3:48 yesterday there was a notice of filing of Judge Kimball's order.  It's 11 pages.  I haven't had a chance to see this or the objection, but I'm looking at it.  It says, the Court orders and adjudges as follows, the expedited joint motion to enforce sale order and, two, to order the distribution of auction proceeds, the counsel for the FVP parties is denied.  Two, the Court cannot and will not rule on the dispute between Avrumi Lubin and Hi Bar Capital, LLC regarding their relative rights to the net proceeds held in the registry of this Court.

The parties are encouraged to obtain a ruling from another Court, having competent jurisdiction,

or to present an agreement in a form of agreed order as directed in the show cause -- order to show cause. Three, the hearing on the expedited joint motion, et cetera, was canceled.

All right. Well, I take it I am another court having competent jurisdiction.

MR. KASEN: Your Honor, if I may very briefly, just to clarify some of the procedure that has gone on here.

THE COURT: Just so the court reporter --

MR. KASEN: There was a --

THE COURT: Hang on, hang on, hang on. This is -- just so the court reporter knows, this is Mr. Marks speaking, and you're speaking on behalf of Mr. Lubin, correct?

MR. KASEN: It's Mr. Kasen speaking on behalf of Mr. Lubin, that's correct.

There was a joint motion --

THE COURT: Hang on a second.

MR. KASEN: -- by two --

THE COURT: Why is that not showing up?

Oh, who is Brett Marks then?

COURT REPORTER: I think you have something pinned.

THE COURT: I don't think it's -- did I pin

NYSCEF DOC. NO. 1007
RECEIVED NYSCEF: 01/19/2026

Page 23

it?  I don't think I did.

COURT REPORTER:  No?

THE COURT:  No.  Now it's pinned, now I'm going to remove the pin.

All right.  Mr. Kasen.

MR. KASEN:  There was a joint motion to approve this settlement filed some time ago, but no hearing was set on that particular motion, and then last night, sometime after 5 o'clock, I can give you the exact time, it was at 5:48 p.m., it's Filing Number 229282707, the three parties filed what they titled superseding urgent motion, expedited hearing required.  The FVP parties, Franklin parties, and Hi Bar parties' joint motion to enforce settlement, consensual resolution, and issue order to bankruptcy court.

And with that particular filing, that took place last night at about quarter of 6:00, that's when a hearing was set for today.  Previous to that filing, there had not been a hearing set on this matter.

MR. LANGLEY:  Yes, Judge, that's what I was attempting to argue.

THE COURT:  All right.  Well, I thought this was on for all pending motions, and then -- for a status and all pending motions, and then at 2:30 was the separate motion for summary judgment against Mr. Lubin.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                 RECEIVED NYSCEF: 01/19/2026

Page 24

MR. LANGLEY:  I didn't understand that all pending motions included something filed yesterday after 5:00, Judge, but --

THE COURT:  No.

MR. LANGLEY:  -- I can --

THE COURT:  Again, you keep saying something after 5:00.  I was looking at the joint motion, and that's what I read, was the joint motion filed July 27th.

MR. LANGLEY:  That wasn't set for today, to my understanding but, Judge --

THE COURT:  Why would it not be?

MR. LANGLEY:  The simple resolution, we don't have an objection -- the urgency that they're claiming is Judge Kimball wants the money out of the bankruptcy court.  We're fine with the money coming to the state court registry or to Mr. Breslin's trust account. We just don't want it dispersed from there until you decide on a common interest agreement.

Mr. Leto says --

THE COURT:  Well, I may be deciding that in about 15 minutes, right?

MR. LANGLEY:  Well, your Honor --

MR. KASEN:  One more thing that I'd like to raise is that they're asking, the joint parties are asking for an endorsement of the settlement agreements, the terms

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 25

of which haven't been disclosed to anybody.

I'm not exactly sure how your Honor can endorse a settlement agreement without knowing the terms of that --

THE COURT:  Wouldn't the bankruptcy -- you'd have to let the bankruptcy court know, right?  Unless it's not -- is it confidential?

MR. BRESLIN:  Judge, the agreement is not confidential.  The agreement has resolved the issue between Hi Bar and Franklin, and we've notified the bankruptcy court that the matter is resolved, and we're notifying your Honor that the matter is resolved.  I'm happy to supply a copy of the settlement agreement to your Honor, but that's never been an issue.

Mr. Lubin is saying, Mr. Lubin is not --

THE COURT:  Hang on.

So as far as the percentages of the 2 million plus that's in the bankruptcy, you're not willing to put that on the record as to what each has?

MR. BRESLIN:  Well, it's --

THE COURT:  Is it supposed to be confidential?

MR. BRESLIN:  Well, the settlement agreement is, 100 percent of the money in the bankruptcy court is going to the FVP parties.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007    RECEIVED NYSCEF: 01/19/2026

Page 26

THE COURT: Okay, and then what does Franklin and Hi Bar get out of it?

MR. BRESLIN: Franklin, we have a separate agreement with Franklin, and they share the FVP proceeds, and what Hi Bar is getting is there's a release of claims against the individual members.

Don't forget, Judge, we're suing Yisroel Herbst for $7.5 million, just like we're suing Mr. Lubin for $7.5 million.

THE COURT: Okay.

MR. BRESLIN: So there's a release of Mr. Herbst, and there are other terms and conditions in there.

THE COURT: All right, and as far as Franklin goes?

MR. BRESLIN: Franklin gets its share of the bankruptcy proceeds pursuant to a separate agreement with FVP.

THE COURT: Okay.

MR. KASEN: Your Honor, what the parties are intending to do here is cut off any rights that Lubin may have to those funds, and (inaudible) them beyond his reach by cutting Hi Bar out of that --

THE COURT: No, I understand that, but -- of course that's what they're trying to do, and the question

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                RECEIVED NYSCEF: 01/19/2026

Page 27

is whether it's legal, and so that's for the Court to decide that.

COURT REPORTER:  Judge, and can you just tell me again who that was that was speaking?

MR. KASEN:  And, your Honor --

THE COURT:  It's Mr. Kasen.  It looks like it's Michael Kasen, K-A-S-E-N.  Is that who's speaking?

MR. LANGLEY:  Yes.

MR. KASEN:  That's right.

THE COURT:  Yeah, for some reason, usually you pop up on the screen, but I'm not sure what's going on with the Zoom.

MR. KASEN:  I'm not sure either.  My camera seems to be frozen also.

THE COURT:  Okay.

MR. KASEN:  I have a funny face that hasn't moved since the first part of the hearing here, so I don't know if it's on my end or on your end, but I'm guessing it might be on my end, and I apologize, your Honor.

MR. BRESLIN:  Judge, I left out one thing.

You asked me about the bankruptcy proceeds. A hundred percent of the bankruptcy proceeds go to the FVP parties, but there are funds outside of the bankruptcy court that go to the Hi Bar parties.

THE COURT:  Okay.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

Page 28

MR. BRESLIN:  A smaller amount.

MR. LANGLEY:  So, Judge, we don't have a problem with the funds going someplace other than the bankruptcy court registry.  We just don't want that dispersed until you rule on the common interest agreement.  The common interest agreement says Hi Bar hereby assigns to Spin Capital any and all Hi Bar claims subject to the terms and conditions of this agreement.

THE COURT:  All right.  Do you want to go into --

MR. LANGLEY:  And part two is --

THE COURT:  -- the motion for partial --

MR. LANGLEY:  Part two is --

THE COURT:  Hang on.  Do you want to go into the motion for partial summary judgment then?  Because --

MR. LANGLEY:  I'd be happy to if you want to argue that today, yes.

MR. BRESLIN:  You're Honor, the motion for partial summary judgment --

THE COURT:  That's based on collateral estoppel.  You're saying that all of these issues have already been resolved in a separate case in Michigan.

MR. LANGLEY:  No, no, no, that's the Franklin issue.

MR. BRESLIN:  Yes, that's the --

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 29

MR. LANGLEY: That's the Franklin assignment issue. That's not the agreement between Hi Bar and --

THE COURT: But that was against Mr. Lubin also, wasn't it?

MR. LANGLEY: Yes, but that doesn't concern the common interest agreement.

THE COURT: Okay, so that's something different.

MR. BRESLIN: That is --

MR. KASEN: Your Honor, I think that it's important to note -- again, it's Michael Kasen speaking, that Mr. Leto continues to espouse the idea that Hi Bar has the authority, pursuant to the common interest agreement, to terminate the agreement for any reason whatsoever, but the agreement is really quite clear. In Paragraph 2 under the common interest agreement, it states that they have the authority to terminate the common interest agreement, and in their sole discretion if they're not satisfied with certain enumerated -- with the defense of certain enumerated counterclaims, all of which have been dismissed, the common interest agreement appears to only allow termination for that one particular reason, not for any reason at all, but only if there's a dissatisfaction with that particular, with the defense of particular counterclaims, and that has not been asserted

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007 RECEIVED NYSCEF: 01/19/2026

Page 30

by anybody, and I don't think that it could be asserted by anybody, that there's a dissatisfaction with the way the counterclaims were defended --

MR. LETO: Excuse me, excuse me, Mr. Kasen is new to this, so maybe he just doesn't understand what happened here. There are counterclaims, because we filed a lawsuit. FVP filed a separate action, which became their counterclaims, and the action we filed became this case.

MR. KASEN: No --

(Two people speaking.)

MR. LETO: Excuse me, excuse me, excuse me, I'm talking, Mr. Kasen.

THE COURT: Hang on, hang on, hang on, hang on, hang on. All right.

MR. KASEN: But the common interest agreement --

THE COURT: All right. Mr. Kasen, I'm not even sure how to mute you because I'm not even sure where your voice is coming through on the Zoom, but I need you to stop for one sec.

All right. So let me -- so right now, I think the only issue that I think I need to resolve is if Mr. Lubin or Spin has any right to, I guess, stand in in this case and contest the settlement, that's the issue.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                                    RECEIVED NYSCEF: 01/19/2026

Page 31

Not whether there's any merits to a claim between Lubin and Spin and Hi Bar.

I mean, there might be a separate lawsuit there or whatnot down the road. I just need to know -- because right now, as far as I'm aware, the parties that have resolved the issue of the proceeds of the bankruptcy court were the three that were named, and the question is whether Mr. Lubin or Spin, I guess, had a right to be part of that conversation, and so that's the unique issue.

And so, Mr. Langley, the unique issue there, where in this common interest agreement does it say that your client would have a right to, I guess, be in the room where it happens, right?

MR. LANGLEY: Yes, Judge, 2A is the right to the Hi Bar claims, and 2B is the full authority to prosecute and settle the claims. I have a highlighted copy, if you'd like, Judge.

THE COURT: That's fine. I was about to print it out so I didn't have to keep looking at the screen.

MR. LANGLEY: It's right in here.

THE COURT: This is, it's the 11-page common interest agreement, right?

MR. LANGLEY: Yes.

And, Judge, if I could also point out --

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 32

THE COURT:  Let me just read this into the record.  So Subsection 2, or Section 2 of the agreement says, prosecution and settlement of litigation claims and defenses -- and defensive counterclaims.  A, from and after the effective date, Hi Bar hereby assigns to Spin Capital any and all Hi Bar claims subject to the terms and conditions of this agreement, including but not limited to Spin Capital's obligation to assign all Hi Bar claims back to Hi Bar in the event it exercised its rights pursuant to Section 2F hereof.

So if I go down to 2F, that's titled termination provisions, and it says, small ii, or small double i, in the event Hi Bar, in its absolute discretion, is not satisfied with Spin Capital's management of defensive counterclaims against Hi Bar, then Hi Bar shall provide written notice of such decision, which shall result in a termination of this agreement as of the date of such notice, and that's --

MR. KASEN:  Your Honor, I think it's important to note that the counterclaims discussed in Paragraph 2F are defined in the agreement above.

THE COURT:  Okay.

MR. LANGLEY:  Yes, Judge, and --

THE COURT:  And so above --

MR. LANGLEY:  They were dismissed before --

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007

RECEIVED NYSCEF: 01/19/2026

Page 33

MR. LETO:  That's not true.

MR. LANGLEY:  They were dismissed before Mr. Leto ever got involved in the case, and they were dismissed without the required written notice saying we're unhappy with the defense of the counterclaims.

THE COURT:  All right.  So your argument is the only time they would have had the absolute discretion to terminate is before the counterclaims were dismissed?

MR. LANGLEY:  Exactly, Judge, that's --

THE COURT:  Because that's what the plain language --

MR. LANGLEY:  And they were defined, and they were both dismissed before Mr. Leto ever got hired. So, that might be --

MR. LETO:  You're -- he's misstating the contract.

MR. LANGLEY:  -- why.

(Multiple people speaking.)

MR. LETO:  He's misstating the contract, if we look at Part H --

THE COURT:  Well, there's no misstating it, it doesn't say that in the contract, but --

MR. LETO:  Well, the definition --

COURT REPORTER:  Judge, I can only take one at a time.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007 RECEIVED NYSCEF: 01/19/2026

Page 34

MR. LETO: On Subpart H, which is on Page 2, it talks about counterclaims, but it says at the end, when it defines the term counterclaims, it includes certain defendants and FSG have asserted, and may assert in the future.

THE COURT: All right. Let me --

MR. LETO: So it talks about --

THE COURT: -- read H.

MR. LETO: -- potential.

THE COURT: H, and this is on Page 2, this is actually under recitals.

MR. LETO: Correct.

THE COURT: H, in the New York litigation, on or about March 18th, 2022, Excell Auto Group, Inc. filed a verified third-party complaint against Spin Capital, asserting certain claims and causes of action against Spin Capital, and certain defendants filed counterclaims against Hi Bar.

On or about March 25th, 2022, Franklin Capital Group, LLC, initiated an action captioned Franklin Capital Group, LLC versus Spin Capital, LLC, and Hi Bar Capital, LLC in the United States District Court for the Eastern District of Michigan, the Michigan court. That's Case Number 2022-193300-CV, the Michigan litigation, and that's the subject of the motion for partial summary

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 35

judgment.

MR. LANGLEY: No, no, that's a different --

THE COURT: That's a different Michigan case, okay.

Consequently, as part of -- and in conjunction with the New York litigation and the Michigan litigation, and potentially in the Florida litigation and the bankruptcy proceedings, certain defendants in FCG, LLC have asserted, and may assert in the future, claims, causes of actions, and counterclaims against one or both parties, collectively the counterclaims. So all of that is collectively the counterclaims?

MR. LETO: Yes, your Honor, which includes this case.

THE COURT: All right, and so --

MR. KASEN: Your Honor, no matter how you interpret it, there hasn't been an assertion by Hi Bar in an attempt to terminate this about their dissatisfaction with the defense of counterclaims.

The only basis for termination of the agreement that Hi Bar has espoused is that they -- that Mr. Leto wasn't paid his fee.

MR. LETO: That's not true either. In my termination letter it says, in addition to the nonpayment, which is required --

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                    RECEIVED NYSCEF: 01/19/2026

Page 36

THE COURT:  Now, what's the date of your termination letter?

MR. LETO:  April 3rd, 2024, on Paragraph 2, I can give your Honor a copy, it also says, finally, and for reasons unknown and without any factual basis, Mr. Lubin has taken litigation positions that are adversarial to Hi Bar.  That is exactly -- that's not only nonpayment, it's also what he did in this actual case that led to the termination, meaning Hi Bar was more than dissatisfied with his actions.

THE COURT:  And it says right there in that letter, April 3rd, 2024, that Hi Bar is exercising its absolute discretion.

MR. LETO:  It doesn't use --

(Multiple people speaking.)

MR. BRESLIN:  We should put that in the record, Matt.

MR. LANGLEY:  It says, Lubin didn't pay Mr. Leto's attorney's fees, so the contract is terminated.  That's basically what it says.

There was never the required written notice saying we're dissatisfied with the defense of the counterclaims, and the counterclaims that were contemplated when this agreement was written were the two that got dismissed.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM          INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                      RECEIVED NYSCEF: 01/19/2026

Page 37

There are other claims pending here.  I don't know that any would be considered counterclaims or direct claims by a plaintiff, and so there's never been any dissatisfaction with the defense of those claims.

It was Mr. Leto who was defending those claims.  It was Mr. Leto who was hired.

The other document you have to see, Judge, is the authority to represent where my client --

THE COURT:  Let me read this for a second.

So it says here, referring to -- those actions referring to failure to pay, as well as litigation positions that are adversarial to Hi Bar.  Those actions, singularly and collectively, constitute a breach of the JDA, which is a reference to the common interest and joint litigation agreement, and so it says here, based upon Mr. Lubin and Spin's breach of the JDA and fee agreement, Hi Bar is no longer obligated to perform under any of the provisions set forth therein, including but not limited to the obligation to allow Spin and/or Mr. Lubin the right to engage in settlement discussions and case strategy, or Spin's right to receive payment under Section 3 of the JDA.

So I think that's pretty clear, and then it even goes on and say, to be clear, given Mr. Lubin and Spin's breach, in the event Hi Bar resolves any pending

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                              RECEIVED NYSCEF: 01/19/2026

Page 38

matters, Spin is not entitled to payment under the priority of distribution section, and all funds will be --

MR. KASEN:  Judge, that letter --

THE COURT:  -- given to Hi Bar.

MR. KASEN:  -- that letter is a misinterpretation or a blatant ignoring of the language of the --

THE COURT:  That's your argument, but that's for this Court to --

MR. LANGLEY:  Judge --

THE COURT:  -- make that determination.

MR. LANGLEY:  -- Mr. Leto was hired under the joint representation agreement to represent Spin in the name of Hi Bar.  It says in the common interest agreement, Hi Bar will remain as the plaintiff, but will do so on behalf of Spin.

MR. BRESLIN:  Judge, may I be heard?

MR. LANGLEY:  This is Mr. Leto saying Hi Bar is not happy with Mr. Leto's defense of the counterclaim. I mean, Mr. Leto was representing Spin's interest.  There was no record -- there was no written notice, as required under 2F, from Hi Bar saying we're not satisfied with your defense of the counterclaims.

MR. BRESLIN:  Judge --

MR. LANGLEY:  Mr. Leto was the person that,

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007
RECEIVED NYSCEF: 01/19/2026

Page 39

if there were new counterclaims, and I don't believe that's what was contemplated in the common interest agreement, certainly the prior counterclaims that were contemplated were dismissed successfully.  Anything new that came up, it was up to Mr. Leto to defend those.

There was never anything from Hi Bar saying we're unhappy with Mr. Leto's defense of any counterclaims.

What you just read there is Mr. Leto is unhappy that he didn't get paid, so he alone is terminating the common interest agreement.  That's ridiculous.

MR. BRESLIN:  Judge, may I be heard?

MR. LANGLEY:  And I have one more thing. This is a motion filed a year ago, Judge, and it states, as is seen in the authority to represent, and inconsistent with the representations to this Court from the inception of this case, this entire time Mr. Leto has been secretly representing Josh Lubin and Spin, in addition to other clients, Herbst and Hi Bar.  This was written by Mr. Breslin.

MR. BRESLIN:  Yes, Judge --

MR. LANGLEY:  This is his motion from a year ago, recognizing exactly what I'm arguing, that Mr. Leto is representing the interests of Spin and Lubin.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 40

MR. BRESLIN:  Judge, very, very briefly.

THE COURT:  Hang on, hang on.

Mr. Langley, are you finished?

MR. LANGLEY:  Yes.

THE COURT:  All right.  Go ahead.

MR. BRESLIN:  Judge --

MR. LANGLEY:  Thank you.

MR. BRESLIN:  -- the FVP parties have been dealing with Mr. Leto for the past two years, since we filed this lawsuit.  Hi Bar has been represented by Mr. Leto.  We've dealt with him.  He's been litigating this case from the beginning.

Franklin has been dealing with Mr. Leto, who has represented Hi Bar from the beginning.  We have trial in one month.  We have come to a settlement agreement.  Now we have a settlement agreement.  All of a sudden, Mr. Lubin is saying, whoa, whoa, whoa, wait a second.

If he had a voice in this, he should have raised it a long time ago.  He's estopped from raising it now.  A, he doesn't have standing.

Assuming our settlement agreement breached that agreement between him and Mr. Herbst and Hi Bar and Spin, he can sue them, but that doesn't negate the validity of our settlement agreement.  Mr. Lubin doesn't have the power.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                      RECEIVED NYSCEF: 01/19/2026

Page 41

THE COURT:  No, I understand.

All right.  So I am going to grant the joint motion to approve the settlement, and based on just the plain language in the common interest and general litigation agreement, and based on the April 3rd, 2024 letter terminating that agreement, and the rights under Paragraph 3 of that agreement, which is the only basis that Mr. Lubin would have had to even raise any right to any of these proceeds, I am going to grant the joint motion.  I do not see how Mr. Lubin has any right to stand in and contest the settlement.

Certainly he may have claims against Hi Bar and against Mr. Leto and whatnot, but that has nothing to do with the settlement for the proceeds in the bankruptcy court, and so based on all of that, I am granting the joint motion for settlement.

MR. LANGLEY:  Judge, I would like --

THE COURT:  And so the --

MR. LANGLEY:  -- to request a brief stay of the order, giving us a chance to do an emergency --

MR. BRESLIN:  Judge --

MR. LANGLEY:  -- appeal.

You know, what Mr. Breslin is saying is we can go sue Hi Bar in New York.  That's meaningless.  Once the funds are gone, the funds are gone.  So we'd like -- I

Case 23-01132-EPK   Doc 383-1   Filed 01/22/26   Page 692 of 976

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007
RECEIVED NYSCEF: 01/19/2026

Page 42

would respectfully request a stay of the order for 30 days to --

THE COURT: All right.

MR. LANGLEY: -- give us a chance --

MR. BRESLIN: Judge, Judge, then we have to try the case. You know, then we have --

MR. LETO: Is he posting a bond? I mean, it's --

MR. BRESLIN: Judge, I vigorously --

THE COURT: Hang on, hang on, hang on. All right.

MR. BRESLIN: If they want to take an appeal --

THE COURT: It's an ore tenus motion to stay, that's denied.

MR. BRESLIN: Thank you.

THE COURT: All right. If they want to take it on appeal, my guess is they're going to have to post a supersedeas bond.

MR. DORSEY: Judge, this is Mr. Dorsey for the Franklin parties. Just one point of clarification.

Judge Kimball has been very clear, he thinks he lacks subject matter jurisdiction to determine any facet of this dispute.

Can the order granting the motion instruct

OUELLETTE & MAULDIN COURT REPORTERS, INC.
(305) 358-8875

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007
RECEIVED NYSCEF: 01/19/2026

Page 43

the bankruptcy court to release the funds to Mr. Breslin's escrow account?

THE COURT:  I can't order the bankruptcy court to do that.

What I can order is that, I do make a ruling that Mr. Lubin does not have an interest for the reasons stated on the record, does not have an interest.

MR. BRESLIN:  Thank you.

MR. DORSEY:  Thank you, Judge.

MR. BRESLIN:  That's plenty.

MR. KASEN:  Your Honor, I would ask -- if that's your Honor's ruling, I respect that.

I would ask that the Court is of that ruling require the full text of this particular settlement agreement and any related settlement agreements be made public, or at least provided to Mr. Lubin.

MR. LANGLEY:  Judge --

MR. LETO:  Under what authority?  Discovery closed, like, weeks ago.

MR. LANGLEY:  We filed a notice to produce at the last hearing on behalf of Lubin.  At the same hearing --

THE COURT:  All right.  Is there an objection to turning over the settlement agreement?  I don't even know, is it titled confidential or not?

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                          RECEIVED NYSCEF: 01/19/2026

MR. LETO:  There's no confidential --

MR. BRESLIN:  I have no objection.  I think he's entitled to see it.

THE COURT:  All right.  So Mr. Kasen, your client will get a copy of the settlement.

MR. KASEN:  And all related settlement agreements, because the (inaudible) --

THE COURT:  Well --

MR. KASEN:  -- one settlement agreement that puts all the money to FVP, then there are separate settlement agreements between the FVP parties and the Franklin parties, and separate settlement agreements then between the FVP parties and Hi Bar parties.

MR. LETO:  There's only one agreement with Hi Bar, your Honor.

THE COURT:  All right.  I guess the starting point will be the settlement agreement between the three parties, which includes Hi Bar.  If there's a separate settlement agreement, I have no -- first of all, is there an objection to turning that over?

MR. BRESLIN:  Judge, the Franklin parties and FVP have a common interest agreement, and in that common interest agreement is a blanket agreement.  So that would apply to any of these funds.

MR. LANGLEY:  But FVP --

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

Page 45

THE COURT: And is that confidential?

MR. BRESLIN: Well, it's stated as confidential. No one has ever moved to produce it.

THE COURT: All right. I would defer that one for another day then.

MR. BRESLIN: Right, thank you.

MR. LETO: We'll provide the Hi Bar settlement.

THE COURT: All right.

MR. BENNARDINI: Can the Farache --

MR. LANGLEY: Thank you, Judge.

MR. BENNARDINI: Can the Farache defendants get a copy of that, too, please, Judge?

MR. LETO: I will send it to you.

MR. BENNARDINI: Thank you.

MR. BRESLIN: I'm glad that was the easy one, Judge.

(Laughter.)

THE COURT: Yeah, I jinxed myself.

MR. BRESLIN: Let's move on to the tougher ones.

THE COURT: All right. So that takes care of the -- well, that takes care of the trial then as well, as long as --

MR. BRESLIN: It takes care of --

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                    RECEIVED NYSCEF: 01/19/2026

Page 46

THE COURT:  No, I'm sorry, the first trial.

MR. BRESLIN:  -- a lot of it.

MR. DORSEY:  Most of it.

THE COURT:  There's still some issues though?

MR. BRESLIN:  Right, there's still the remaining claims against Mr. Lubin.  There is a default against Mr. Getter (phonetic).  So, and there's cross-claims by Franklin against Mr. Lubin.  So, the first trial is --

THE COURT:  And so that would not --

MR. BRESLIN:  -- trimmed down dramatically.

THE COURT:  So that one could not be done at the same time as the Farache defendants?

MR. BRESLIN:  There are -- it would be very difficult to try them at the same time.  They're completely separate issues, Judge, and that's why they were separated in the first place, and the exhibits in reference to Mr. Lubin's liability has nothing to do with the Farache liability.  It is just, it's apples and oranges, Judge.

And we have the --

THE COURT:  So let me ask you, if you're releasing all claims to Hi Bar as part of the settlement --

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                RECEIVED NYSCEF: 01/19/2026

Page 47

MR. BRESLIN: We're releasing Yisroel Herbst as an individual defendant.

THE COURT: Okay.

MR. BRESLIN: The Franklin parties are releasing Yisroel Herbst and Mordecai Herbst, his son, as individual defendants.

Hi Bar remains a party for the purposes of piercing the corporate veil to achieve liability against Mr. Lubin, who has told everyone who will listen, that he is, in fact, Hi Bar.

So Hi Bar remains a party, but they will not be -- under the terms of the settlement agreement, they will not be appearing at the trial. We will not be seeking a judgment against Hi Bar, and to the extent that any verdicts are submitted to the jury regarding Hi Bar, we'll only be seeking a judgment against Mr. Getter and Mr. Lubin. So --

THE COURT: All right.

MR. BRESLIN: -- that's how the settlement agreement is laid out.

THE COURT: All right.

MR. KASEN: Your Honor, I have a -- this seems a little bit counterintuitive that we just spent the last 45 minutes arguing that Lubin has no right as standing in the shoes of Hi Bar, and now we're going to

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007 RECEIVED NYSCEF: 01/19/2026

Page 48

have a whole trial to determine if Lubin is, in fact, Hi Bar?

Judge --

MR. BRESLIN: We're suing him for fraud. We're suing him for seven and a half million dollars that we loaned based on misrepresentations that he made to my client, and --

MR. KASEN: Well --

MR. BRESLIN: This other issue, this other issue, the priority issue, has been resolved. So the priority issue is resolved. The fraud issue needs to be tried to the jury.

THE COURT: I understand.

MR. KASEN: But the priority issue is resolved by you arguing that Mr. Lubin has no connection at all to Hi Bar, and now you're going to argue that actions that were taken by Hi Bar --

THE COURT: All right. We're not going to try the case right now.

So, all right, what would be next that you all need to resolve?

MR. DORSEY: Franklin has a summary judgment motion that was set for 2.30.

THE COURT: Okay. That's against Mr. Lubin?

MR. DORSEY: Mr. Lubin.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007

RECEIVED NYSCEF: 01/19/2026

Page 49

MR. BENNARDINI: We have three motions set for 1:30, Judge.

THE COURT: All right. What were those?

MR. COHEN: I got an easy one, Judge.

MR. BENNARDINI: Number one is, your Honor ruled back on June 23rd that the words usury, loan sharking, illegal, and criminal are out with respect to speaking about the Faraches, and typically, your Honor was real clear in your order, in fact your Honor at that very hearing, said --

THE COURT: Are we getting into that motion? That's what I want to know.

MR. BENNARDINI: I don't know, but that's what it's about.

THE COURT: Right.

MR. BENNARDINI: It's just a motion to have the Court enter an order as to what you already ordered on June 23rd, that's our motion.

THE COURT: All right. I need to go get my notes from June 23rd.

MR. BENNARDINI: I've got a transcript for you.

THE COURT: All right, but I want to take a look at my notes as well.

MR. BENNARDINI: Thank you, sir.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007    RECEIVED NYSCEF: 01/19/2026

Page 50

THE COURT: So let me do that, let me take a quick break.

Just so I have a little bit of a heads-up, so what three motions, Mr. Bennardini, do you have?

MR. BENNARDINI: I just have one. The second one is --

MR. COHEN: It's our motion. Yeah, Judge, it's our motion for clarification, and also to get a more clear outlook on the ruling from the Court on the term, quote/unquote, usury.

So, it -- and we laid it out pretty clearly in the motion, in terms of what we have to prove, and the intent that we have to prove, and the motive that's involved. So that's kind of the revolving door here, is that in order to get to the motive, we have to use the term usury. The motive --

MR. BENNARDINI: We're arguing it, Judge.

MR. COHEN: No, I'm not arguing it. I'm just saying, that's what it's about.

THE COURT: It's a motion for clarification.

MR. COHEN: That's --

MR. BENNARDINI: It's actually, Judge --

(Multiple people speaking.)

MR. BRESLIN: The second one is on Mr. Gray, it's my motion, it's the scope of -- I have an issue to

Case 23-01133-EBK   Doc 383-1   Filed 01/22/26   Page 701 of 976
NYSCEF DOC. NO. 1007

Page 51

present to your Honor regarding data entry and expert testimony, and the third motion is Mr. Buschel is going to handle it, where we're seeking a jury instruction on the resolution of the ownership issues of AWB that your Honor has already ruled on, so those are the three, and then the Franklin summary judgment.

MR. BENNARDINI:  Your Honor, the first motion is actually our motion --

THE COURT:  Okay.

MR. BENNARDINI:  -- to have the Court enter an order based upon what you ordered orally, which is what the Court instructed us to do when we could not get the other side to agree to the terms of an order.

THE COURT:  All right.  I'll have to take a look at that.

MR. BENNARDINI:  Thank you.

THE COURT:  And --

MR. BRESLIN:  But it's our motion.

THE COURT:  Okay.  So those three motions.

MR. BRESLIN:  Yes, sir.

THE COURT:  And then we have the motion for summary judgment at 2.30.

All right.  If I remember correctly, though, as far as the motion in limine regarding usurious, loan shark and things of that nature, I thought that was all

Page 52

agreed --

MR. BENNARDINI: No.

THE COURT: -- that you were not going to -- I thought they were not going to use certain terms, I thought that was agreed.

MR. BENNARDINI: Well, no. I can tell you what you said.

MR. BRESLIN: Let him leave.

THE COURT: I'm going to go grab my notes, and then we'll get into that.

MR. BENNARDINI: I want to read what he said.

THE COURT: All right. I'm going to take a --

MR. BENNARDINI: Thank you.

THE COURT: We'll take a 10-minute break for the court reporter, and then we'll just continue on to finish everything else up.

MR. BENNARDINI: Thank you.

THE COURT: Okay.

MR. LETO: And, your Honor, because Hi Bar has no other issues today, is it okay if I'm excused?

THE COURT: No.

You are welcome to leave.

MR. LETO: I may not want to leave, but if

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 703 of 976

Page 53

that's okay?

THE COURT:  All right.

MR. LETO:  Thank you, your Honor.

MR. COHEN:  It's been really exciting.

(A recess was taken, after which the following proceedings were had:)

THE COURT:  All right.  We are back on the record with Case CACE-22-5125, FVP Opportunity Fund III versus Scott Zankl, et al.  Let the record reflect the attorneys are all present.  The parties are not present.  That being said, Mr. Leto, I guess, has left, right?

MR. LANGLEY:  Yes.

THE COURT:  Okay.  So it looks like most everybody is still on Zoom.

All right.  I am -- let me see, there is a motion for clarification.  I may have been remembering, there were various motions in limine that we did --

MR. BENNARDINI:  May 1st.

THE COURT:  May 1st, and then we did the ones June 23rd.  So I have my notes here, which is granted in part without prejudice, right --

MR. COHEN:  Correct, Judge.

MR. BENNARDINI:  Not correct.  Not correct, Judge, it was never --

THE COURT:  -- with respect to the term

Page 54

usurious.

MR. BENNARDINI:  May I?

THE COURT:  And you could not say that it was illegal --

MR. BENNARDINI:  Right.

THE COURT:  -- or loan sharking, that's what my notes indicated.  Maybe I -- I'm not sure --

MR. BENNARDINI:  Can I read the transcript?

THE COURT:  Okay.

MR. BRESLIN:  Judge, can we argue our motion?

MR. BENNARDINI:  No, this is our motion, this is our motion for order to enter -- motion to enter order granting in part Farache defendants a comprehensive motion in limine concerning -- then they get a response, Mr. Cohen.

MR. COHEN:  You got it.

MR. BENNARDINI:  Thank you, sir.

MR. COHEN:  All right.  You're doing great.

MR. BENNARDINI:  Thank you, sir, I appreciate it.

Your Honor, so we were before you on June the 23rd.  They want to tell this jury, in addition that Mr. Farache is going to go throw Mr. Zankl to the alligators, they want to tell the jury that Auto Wholesale

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007
INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 55

of Boca was in vehicle transactions with Mr. Zankl that added up to greater than 25 percent interest and, therefore, is usurious.

THE COURT: Okay.

MR. BENNARDINI: Your Honor gave them a bone, so to speak, you told Mr. Breslin, you can put in all the evidence you want, Mr. Breslin, about the number, it's 24 percent, 26 percent, all of that, you gave that to them, but the Court clearly said, so -- and this is -- would you like to copy of the transcript? I have it.

THE COURT: That would be great.

MR. BENNARDINI: May I approach?

THE COURT: Yes.

MR. BENNARDINI: Thank you.

And before we got to this part, we had discussions about usury is personal to a borrower, and with respect to FVP, and Mr. Zankl was the borrower in this matter, FVP shouldn't be raising usury at all because they're a lender, and there's case law that says lenders can't raise usury, but what your Honor boiled it down to is that it was unfairly prejudicial, that any probative effect was outweighed by "unfairly prejudicial", and at Page 65, Line 21, the Court, so for now we read the motion, but limit only, so it's granted in part, to using the term usurious, and saying it was illegal, or

OUELLETTE & MAULDIN COURT REPORTERS, INC.
(305) 358-8875

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

Page 56

illegal/loan sharking, all right?

And then I said, thank you, Judge.

Mr. Breslin started to speak, and then the Court said, Line 67 -- I'm sorry, Page 67, Line 2, that terminology is out.

So what the Court ruled is, no usury, no loan sharking, and then later on the Court said, you can do all that, you can put in the numbers, and you can do all that without saying it's usurious or -- usurious or loan sharking, and then later on, on Page 68, Line 19, as far as the underlying transaction, all of that comes in because the facts are what the facts are.  Whether you can get in front of the jury and say that it's illegal, and they're criminal, I'm going to -- at this point, you're going to keep that out, and you'd have to come up sidebar and show me why it's somehow probative.

And then finally, just highlighting the Court, the Court said later on, after Mr. Breslin was -- he's persistent, I've got to give him credit.  The Court said, the transactions are what the transactions are, they come in.  The actual rate comes in, but telling them that it's a crime is a matter of law, here's the statute, they committed a crime.  I think you run the risk of that, on balancing, there's a danger of unfair prejudice.

Does it substantially outweigh probative

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007

RECEIVED NYSCEF: 01/19/2026

Page 57

value?  I'd have to say at this point, I'm going to say without prejudice, keep it out, all right?

So with respect to loan sharking, usurious, usury, criminal --

THE COURT:  All right.

MR. BENNARDINI:  -- Judge, you said keep it out.

THE COURT:  Let me parse this out a little bit.

All right.  Coming in and saying it's illegal or it's loan sharking or it's criminal, you're not asking for a clarification on that, you agree?

MR. COHEN:  No, we don't agree, and I'm going to tell you why, Judge.

MR. BENNARDINI:  Judge --

THE COURT:  All right, and then usurious is a little bit different.

MR. COHEN:  Right.

THE COURT:  So just because it's usurious doesn't make it illegal.  Usurious is a rate, it's just a rate over a certain amount.

(Multiple people speaking.)

MR. BENNARDINI:  Your Honor, we're doing --

THE COURT:  As far as the balancing, and I'm just saying, it's one thing to get up there and say

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                    RECEIVED NYSCEF: 01/19/2026

Page 58

so-and-so is a criminal, they're doing illegal activities, that's -- on balancing, it becomes a lot more prejudicial.

MR. BENNARDINI:  Well, here we are -- here's what's happening again.

THE COURT:  If somebody says, hey, that rate is usurious, the jury is not -- usually people on the street or whatever aren't going to go, oh, my God.

MR. BENNARDINI:  That's not what the 4th District says.

THE COURT:  All right.

MR. BENNARDINI:  And we went over that, too, and what the 4th District says in Earl Lee Butler v. Target (phonetic), the term usury has a powerful effect on the person who hears it.  It is defined in terms of illegal, unconscionable, and corrupt, and the 4th District in that very case -- this was a lawyer's fee dispute, and the client brought up the lawyer's fee statements were usurious, and then what did the 4th say about that when the Court allowed it in?  The use of the term can so infect the trial that a new trial must be granted.

And you heard this last time, Judge, and one other thing you said last time is --

THE COURT:  I take it, though, if you go into that, the underlying facts, there were probably no facts to support that it was illegal or criminal or

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007
RECEIVED NYSCEF: 01/19/2026

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 709 of 976

whatnot, and that's why when I say, again, at the end of my ruling I say, here, as far as the transaction, the underlying -- as far as the underlying transactions, all of that comes in, because the facts are what the facts are.

MR. BENNARDINI:  Right.

THE COURT:  Whether you can get in front of the jury and say that it is illegal, and they're criminal, I'm going to -- at this point, you're going to keep that out, and you have to come up sidebar and show me why it's somehow probative.

MR. BENNARDINI:  So that terminology is out, that's what you said at Page 67 --

THE COURT:  No, but it's without prejudice.

MR. COHEN:  Right.

THE COURT:  What I don't -- what you don't want is people in the middle -- in the beginning of the trial saying, members of the jury, you're going to hear that these people are criminals, and then when the evidence doesn't come out to show that there was any criminal acts, now I've got to try the case all over again.

MR. COHEN:  Correct.

THE COURT:  And that's what I'm doing on balancing.  So I'm going to keep out them coming up there

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                      RECEIVED NYSCEF: 01/19/2026

Page 60

and saying they're criminals.

MR. BENNARDINI: Or loan sharks.

THE COURT: Or loan sharks in opening, but if the evidence comes out, and they come sidebar and say, Judge, now there's a good faith basis -- you know, a good faith basis, and there's evidence to establish that these transactions are illegal, then you still have to do a little bit of balancing, what's the probative value in it? And they'll probably make the argument that it's probative or even highly probative and what not, but I have to wait and see what the evidence is.

And I'm pretty sure, I do this in almost every case when I talk about a motion in limine, you're asking the Court in a vacuum, without knowing much about the case, to make evidentiary rulings, and it's very hard to do that.

MR. BENNARDINI: This is not --

THE COURT: And so I always say, or I always, when I'm ruling, indicate that evidentiary rulings are always without prejudice to revisit as the evidence comes in --

MR. BENNARDINI: Well --

THE COURT: -- because then the Court has a better understanding of the context.

MR. BENNARDINI: -- I think the 4th District

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007
INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

was quite clear, that use of the term can so infect the trial, that a new trial must be granted.

THE COURT:  You are absolutely correct, and if there's no evidence to support those terms and to use those terms, it would so infect the trial, and that's why I'm keeping them out until I have a chance to see the evidence.

And that being said, I guarantee you, if you look at those cases where there's a reversal, it's because there were no facts that back up --

MR. BENNARDINI:  Well, that's true in that case, and it's going to be true in this case as well.

THE COURT:  It might be, and that's why --

MR. BENNARDINI:  But I'm --

THE COURT:  -- I'm sustaining it, but it's without prejudice, all right?

MR. BENNARDINI:  I need an order to that effect.  I submitted one --

THE COURT:  Okay.

MR. BENNARDINI:  -- and if I do it again, they're just going to be back again.

MR. BRESLIN:  No, we're not.

THE COURT:  Let me hear a response.

So what would be the objection to the order saying that, again, the facts are what the facts are, they

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                  RECEIVED NYSCEF: 01/19/2026

Page 62

come in, but to not get up in opening statements or before coming sidebar and saying, hey, you know, there's a jury, the defendants are criminals, or the defendants committed illegal acts or whatnot?

MR. COHEN:  And, Judge, if I may address the Court?  I don't know if Mr. Bennardini is --

MR. BENNARDINI:  Yes, you can come, Mr. Cohen.

MR. COHEN:  Thank you so much, I appreciate it.

MR. BENNARDINI:  But what you also said at the last hearing is, you spend more time on the orders than you do on the rulings, and the hearings themselves, and this is deja vu all over again.

THE COURT:  In this case that would be the case, but not like --

MR. COHEN:  But not --

(Multiple people speaking.)

MR. COHEN:  You did great.

Judge, what I wanted to address was, in the 4th DCA case that he's speaking about, that was in terms of attorney's fees, not tortious interference, and if you look at tortious interference, the claimant must prove, and this is in the actual jury instructions, the claimant must prove that the defendant acted unjustifiably because

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                    RECEIVED NYSCEF: 01/19/2026

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 713 of 976

the defendant violated a statute, committed a tort, or committed other improper acts.

You know, the fact is the facts, you know, they were buying and selling these cars, which weren't even being bought and sold, to avoid looking like it was usury, which it was.

So the long story short here is we have to put that evidence on in order to prove our case, but what you want to do is, and I understand about the criminal, and he's a criminal, and these are illegal acts, and all these different things in opening, but the fact that it's usurious, and the fact that, whether or not we can prove -- essentially the Court said, you can prove and you can say to the jury that it was over the legal amount of 25 percent, you can say that, but you're essentially saying, we can say -- we can show that it's Yahtzee, but we can't yell that it's Yahtzee.

So that's the issue that I have in the opening --

THE COURT:  I haven't played Yahtzee in a long time.

MR. COHEN:  I know, yeah.

Well, I'll give Mike credit, Mike McMullen for the Yahtzee referral.

MR. McMULLEN:  I like to contribute where I

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                    RECEIVED NYSCEF: 01/19/2026

Page 64

can.

MR. COHEN:  But what I'm trying to say, Judge, is, I'm not going to sit there in opening and point to Mr. Farache and say he's a criminal at this point.

What I would like to do is, I would like to say that we're going to prove that the amount is over the legal amount, and to say that is considered usury.  I don't know how else to say it.  It is considered usury.

Now, I'm not going to sit there and jump up and down and say that he's a criminal and all these other things.  I mean, obviously, it is what it is when it comes out during trial about how these transactions were taking place, and why these cars weren't actually being sold, and why these amounts were being loaned and then paid back at 35 percent.  All these different things are going to come out, but I don't anticipate in opening, you know, yelling that he's a criminal.

Now, in closing, I don't know, but in opening probably not.

THE COURT:  What's the statute again for usurious --

MR. COHEN:  Here, Judge, here's my motion.

THE COURT:  Do you have it?

MR. COHEN:  Yeah, here's my motion.  It's in there.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                          RECEIVED NYSCEF: 01/19/2026

Page 65

MR. McMULLEN:  I think it's 687.03.

MR. COHEN:  It is.

THE COURT:  All right.

MR. COHEN:  But I think the usurious statute is in the motion.

THE COURT:  687.03?

MR. COHEN:  And it's not -- yeah, 687.03. And in that case for the 4th DCA, Judge --

THE COURT:  All right.  That statute is defined as unlawful rates of interest.

MR. COHEN:  Right, correct, and that's what it is.

MR. BRESLIN:  Judge, we vote for you to take judicial notice of this statute, you know, as a safety measure.

THE COURT:  I'm not even sure what the claims are here, but --

MR. COHEN:  It's tortious interference, and it goes on, and if you read the jury instruction, Judge, that's part of the tortious interference jury instruction.

MR. BENNARDINI:  It's not.

MR. COHEN:  But we have to -- it absolutely is.

THE COURT:  But in any event, the statute is pretty clear --

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM        INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                    RECEIVED NYSCEF: 01/19/2026

Page 66

MR. COHEN:  Yeah.

THE COURT:  -- Subsection 1, except as provided herein, it shall be usury and unlawful for any person or any agent, officer, or other representative --

MR. COHEN:  Mr. Bennardini, I'm not done with my argument, please, I didn't interrupt you.

MR. BENNARDINI:  My leg is hurting.  I'm going to stand up, if you please.

MR. COHEN:  You can stand up as much as you'd like --

MR. BENNARDINI:  I can.

THE COURT:  All right.  So, I mean, there's different layers as well --

MR. COHEN:  Yes.

THE COURT:  -- as to whether it's, you know, 18, or I think it's 25 is the other, right, or 24?

MR. COHEN:  What the argument would be is that we will provide evidence to prove, to show you today that the amounts that were involved were usury.  It's not that I'm saying, okay, you have to make a decision that it's usury.

An opening statement is a roadmap to where we're going to go.  I mean, that's first year law school.

THE COURT:  All right.

MR. COHEN:  The roadmap is, I'm going to

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007 RECEIVED NYSCEF: 01/19/2026

Page 67

show them --

THE COURT: I understand.

Let me just ask, Mr. Bennardini, what would be the issue with saying, hey, members of the jury, you're going to learn that a rate over x is a usurious rate, it's not lawful?

MR. BENNARDINI: That's because, number one --

THE COURT: And the evidence is going to show that the rate was above that rate.

MR. BENNARDINI: Number one, the word usury does not appear in the pleadings, it's outside the pleadings. Number two, it can't appear in the pleadings because usury is a personal defense, and I argued this last time, usury is a -- and we went over a case called --

THE COURT: Usury is a what?

MR. BENNARDINI: It's a defense.

MR. COHEN: Your Honor --

MR. BENNARDINI: It is something that can only be brought up personally to the borrower. It's not something -- and there's expressly a case, and let me tell you what it was, because you actually read it, in making your order, Adana Investing versus Wells Fargo, 2017, Westlaw, 3668553, which says lenders can't raise usury, it's to the borrower. There was no lender relationship

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                              RECEIVED NYSCEF: 01/19/2026

Page 68

here between FVP and Mr. Farache.

THE COURT:  The facts are what the facts are, and I guess it's different to say, just like -- I mean, you can say certain things are illegal, but it's --

MR. BENNARDINI:  Well, here's what you said about that, you said, well, that's the problem, because then you're saying it's no different than all of a sudden we just say, Mr. Farache, we gave him some cocaine. Usury is the same thing as saying cocaine. It's the same thing --

MR. COHEN:  Well, the facts were we gave him --

MR. BENNARDINI:  -- it's a crime.

MR. COHEN:  -- cocaine.

MR. BENNARDINI:  It's a crime, Judge.

THE COURT:  But it depends on the underlying facts. That's why it's hard to rule in a vacuum.

But I have no problem -- I didn't realize my ruling was extending to not even be able to say that, look, there's laws out there that say that this rate is a usury rate --

MR. BENNARDINI:  Well, that's what you said. I mean, I'm only reading what your Honor said.

THE COURT:  -- as opposed to, I thought your motion in limine was to calling your own client a

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007
INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026
Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 719 of 976

criminal.

You know, so in other words they can, in jury selection, they're not allowed to say, members of the jury, does anyone -- well --

MR. COHEN: I don't intend --

THE COURT: -- if they're not even referring to your client, and they say is something a crime, and you jump up and you go, Judge, we have a motion in limine, and you're not allowed to mention that something's illegal, even though they're not even referring to your client.

So, in other words, it gets very difficult --

MR. BENNARDINI: Mr. Farache --

THE COURT: -- you're asking me to split hairs here.

MR. BENNARDINI: Mr. Farache could not have engaged in usury as a matter of law, and neither could AWB, because they were not borrowers of FVP.

THE COURT: And so they're not going to get up there and say that they're engaged in usury or illegal -- what they're allowed to do is say the facts are --

MR. BENNARDINI: Right, you said that.

THE COURT: -- the facts and --

MR. BENNARDINI: What you said --

THE COURT: -- and the usury rate is --

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                    RECEIVED NYSCEF: 01/19/2026

Page 70

MR. BENNARDINI:  What your Honor said, and correctly said was, and you repeated this over and over, you can say it's 24 percent, you can say it's 26 percent, you can't come to the conclusory term usury or loan sharking.  That's what your Honor said after a full-blown hearing.

THE COURT:  All right.

MR. COHEN:  The problem that I have, Judge, is that I have to say what the evidence is going to show, and the evidence very clearly will show --

THE COURT:  Let me cut to the chase.  You can't say that the defendants are loan sharks.  You can't say that the --

MR. COHEN:  That he's a criminal.

THE COURT:  Or a criminal.

MR. COHEN:  Sure.

THE COURT:  But you can, I will allow you to say, look, this is what the evidence is going to show, what a certain rate is, and the law says, I will allow you to put in what a usury rate is.

MR. BENNARDINI:  Well, then he's instructing the jury, Judge.

MR. COHEN:  No, I'm saying --

MR. BENNARDINI:  That's for you to do later on if the facts show that 24 percent, 26 percent --

NYSCEF DOC. NO. 1007

RECEIVED NYSCEF: 01/19/2026

Page 71

THE COURT:  And if there's a request made and it's appropriate, and I have to instruct the jury on what is a usury rate, I can do that.

MR. COHEN:  Thank you, Judge.

MR. BENNARDINI:  Well, just so we don't have to come back again, I submitted an order that -- what you did the last time, your Honor, is you got it up on the screen, I emailed it to your assistant, and you put it in there so we don't have to come back again trying to figure out what the order is, please, sir.

THE COURT:  No, I think we know what the order is.

MR. BENNARDINI:  So did I -- I knew last time, too.

MR. COHEN:  No, I can't call him a criminal, I can't call him a loan shark.

MR. BENNARDINI:  I want it in writing, please, not from your mouth.

MR. COHEN:  Well, I'm just, I'm asking the Judge to confirm it, I can't call him a criminal yet, in opening, I can't call him a loan shark in opening.  I can address it as --

MR. BENNARDINI:  You can't call him any of those until the evidence shows it.

MR. COHEN:  Right.  Yeah, I'll wait until

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 72

the evidence shows it.

THE COURT: All right.

MR. BENNARDINI: You'll be waiting a while.

THE COURT: So --

MR. COHEN: I don't think so.

THE COURT: -- and I'll allow you to reference what is --

MR. COHEN: Thank you, Judge.

THE COURT: -- a usury rate or not.

MR. COHEN: Thank you, Judge.

THE COURT: All right. I guess what I was trying to stay clear of is name calling in opening statements, before coming sidebar to see whether the evidence is established or not.

MR. BENNARDINI: What are we going to do with the written order?

THE COURT: Do you have one here?

MR. BENNARDINI: I do, and then, again, I uploaded it.

THE COURT: Do you want me to read it in Word and I'll make --

MR. BENNARDINI: Let me get all my papers out of the way.

MR. COHEN: Is it in PDF or is it in Word?

MR. BENNARDINI: My assistant uploaded it in

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007
RECEIVED NYSCEF: 01/19/2026

Page 73

whatever the judicial assistant told her to upload it in.

MR. BRESLIN:  Well, Judge, if you just want to state what your order is, we'll have the court reporter give us a transcript, and you can say, as stated on the record.

MR. BENNARDINI:  Well, that doesn't work. That's what we have here, I have it stated on the record from June 23rd, and now it's different.

Judge, I have a handwritten one in which I changed it to say, in opening.  May I approach?

THE COURT:  Yes.

MR. BENNARDINI:  And this is the order that was circulated.

THE COURT:  I might have to just type it in myself.

MR. COHEN:  I think that's the order I don't like.

THE COURT:  All right.  Motion is granted in part without prejudice.  The FVP plaintiffs are prohibited from using the terms -- all right, instead of using the terms, I'm going to say, from referring to the Farache defendants as being loan sharks --

MR. COHEN:  Or a criminal.

THE COURT:  -- criminals, or engaging in illegal activities.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

Page 74

MR. BENNARDINI: Thank you, your Honor.

MR. COHEN: But I can use scoundrel. No, just kidding.

MR. BENNARDINI: I was just ignoring you, Mr. Cohen.

MR. COHEN: That's all right.

MR. BRESLIN: Now, your Honor, just to clarify, the evidence -- we expect the evidence to show that they did, in fact, engage in illegal activity.

So, is that, is your order limited to during the course of the trial? We're certainly permitted to introduce evidence and then argue it after the fact, are we not?

THE COURT: Yes.

MR. BENNARDINI: I think I wrote on there in an opening, Judge, until the evidence -- I added that, Jerry.

MR. BRESLIN: So that's in opening. Okay. Thank you.

THE COURT: All right. So it says here, the FVP plaintiffs are prohibited from referring to the Faraches as being loan sharks, criminals, or engaging in illegal activity in opening to describe any loan and business transactions between Auto Wholesale of Boca, LLC and its owners, subject to revisiting after the evidence

OUELLETTE & MAULDIN COURT REPORTERS, INC.
(305) 358-8875

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

Page 75

has been presented.

MR. BENNARDINI: Thank you, Judge.

MR. BRESLIN: Thank you, Judge.

THE COURT: All right.

MR. BENNARDINI: We did email that to your assistant yesterday, Judge, so she does have it.

THE COURT: Okay. All right.

MR. BRESLIN: Are you ready to take the next matter, your Honor?

THE COURT: All right. The next matter is --

MR. BRESLIN: That's the plaintiff's motion for ruling on basis and scope of expert testimony by plaintiff's expert, Richard Gray. We filed that on July 28th, 2025 and, Judge, just let me explain to you why I filed this motion.

The reason that I filed this motion is because at the last hearing, when we were arguing about the -- we were here on the motion for protective order about Brian Rohl.

Just to give you an understanding of what happened here, the FVP parties hired a company called Fiske & Company, and they're a forensic, they're forensic accountants out of Miami, and they have, I don't know, 10 or 15 different employees, and it's -- and Sheri Fiske is

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 726 of 976

Page 76

the lead forensic there, and so we retained Fiske to do a forensic analysis of the bank records of the Karma companies, Excell, to review the deal jackets that were supplied to us both by Mr. Farache, he supplied all his deal jackets, he supplied us with his QuickBooks, etc. So Fiske & Company was hired to do the forensic.

Fiske assigned several different employees to do the data entry. So, Judge, when I say data entry, what they did was they had these deal jackets that are thousands and thousands and thousands of pages. So what they did as far as the deal jackets went, is they went in there and they took out the date of the purchase, the purchase price, who it was bought from, and they created a database.

So Mr. Rohl did that. Another woman by the name of Anneliese Scherer did that at Fiske, and other employees at Fiske put together a database, and from that database, that database had, it had information about the cars, when they were bought. We had information from the trustee, because when the trustee came in, the trustee took all the records from Excell and the Karma companies. So we got the financial records from the trustee. So all of that information was put into a database.

At the time, Judge, this was during the bankruptcy court, Brian Rohl was our expert. So at the

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                          RECEIVED NYSCEF: 01/19/2026

Page 77

time that this information was entered into the database, Brian Rohl, who was a Fiske employee, was the expert that was going to testify about that in the bankruptcy court, and what Mr. Rohl did was, he created from that database, he created some charts and summaries, and those summaries were filed, and they were introduced in the bankruptcy court. They were litigated by, and reviewed by the AWB expert in the bankruptcy court, and so what happened was, right before the hearing in March, that Judge Kimball ruled, when he converted it to a Chapter 7, Mr. Rohl left the firm. So Mr. Rohl was no longer with Fiske.

Richard Gray was an employee at Fiske during that time period. So Mr. Gray then became our expert, and when he became our expert, he was with Fiske, but then he left Fiske shortly after we hired him, in March of '23, and then he's been on his own. So he's been our expert since that time.

So, your Honor made a comment at the last hearing which kind of concerned me, because you said that Mr. Gray could not adopt another expert's opinion as his own, and we certainly understand that.

So what Mr. Gray did was he went in and he analyzed the database, all the information that was put into this database, and he came to his own conclusions, and his conclusions mirrored, 99 percent, those

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007 RECEIVED NYSCEF: 01/19/2026

conclusions as Mr. Rohl's. So Mr. Gray has his own opinions.

So when you made a comment at the last hearing, you said that Mr. Gray cannot testify from hearsay, that concerned me, because what Mr. Gray did was he based his opinions on the database that was compiled and put together by other employees at Fiske while he was at Fiske, but now he's no longer at Fiske. So from that database, he looked at that database and he formed his own conclusions.

So, my concern is, and based on what your Honor's comments were, and based on the response that's been filed by Mr. Bennardini, is that because he looked at that database that was entered by others, that his opinion, based on that database, would be based on hearsay and, therefore, he can't testify to that. He's formed his own opinions, but he's formed opinions based on data that was entered by subordinates of Fiske.

So I need to know if -- and just for the record, Judge, I mean most of the records are, they're the QuickBooks records that we got from AWB, they're the QuickBooks records that we got, and dealer track records that we got from the trustee. So most of them are financial records, but aside from the financial records are just, you know, thousands of pages of these deal

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 729 of 976

Page 79

jackets.

So what I need to know is, experts -- and if you look at the memorandum that I've attached in my motion, experts can rely on hearsay, and they do all the time.

So the question is whether or not Mr. Gray can rely on that database, because experts typically and normally rely on those kind of things.

So I cited two cases which addressed it very specifically. So I need to know that now, because if I have to have Mr. Gray go back and supervise a reevaluation of all that data, that's exactly what we're going to do, and we will get the same people from Fiske, and we'll have them go over everything and check everything under, quote, Mr. Gray's supervision, so then he can issue an opinion based on the database that has been entered.

So, in other words, have the data confirmed under his supervision, because the case law says that subordinates of an expert can do data entry, and they can do any type of work, and an expert can rely on it, and then there's some cases that take it a little bit farther.

So I need to know that, Judge. So I need to know, because just for the record, so the record is absolutely clear, Mr. Gray has come to his own conclusions. He's not based his conclusions or his

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007 RECEIVED NYSCEF: 01/19/2026

Page 80

opinion on any of Mr. Rohl's work, but what he did is he based his opinions on the database that was formed and created by the Fiske employees, one of which was Mr. Rohl.

So what I need for your Honor to decide is whether or not Mr. Gray can opine from that database, and the reason is, is because, A, it's the type of information that experts normally rely on; B, we gave AWB and the Farache defendants all the underlying data, okay? We gave them everything that we put into our work product, and they've had that for years.

And so just to put a cherry on top, Judge, what I did was, last week was, I gave Mr. Bennardini all of the Fiske work product. So, in other words, we gave him all the spreadsheets that the Fiske employees actually put together so they could generate their own reports.

So I've done everything humanly possible to try to permit Mr. Gray to render the opinions that he's rendered, and again I repeat, he's already testified numerous times that he's come to his own conclusions and they're not Mr. Rohl's.

So I need your Honor to determine whether or not he can rely on the database that was created by a company, by other employees at a company he worked for, because it was created at the time he was an employee, but since he has left, he's relying on that database.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                RECEIVED NYSCEF: 01/19/2026

And I can call in Sheri Fiske, I can call in the people that actually did the data entry, and I can substantiate all the data entry, which will of course take time at trial, but this is not the type of thing that I believe should take up trial time, and I think if your Honor rules that we can rely on that data, and base an opinion on it, and particularly because Mr. Bennardini's clients have not only the underlying data, but all the work product data, you know, the actual spreadsheets that were made, then I know how I need to proceed.

But if I have to have it redone, I need to know now, Judge, because it's going to take a couple weeks to actually reevaluate all that data.

THE COURT: You have summaries, I take it, as well, correct?

MR. BRESLIN: Yeah, right, right.

So we filed in the bankruptcy court summaries to prove content.

THE COURT: No, but there's a rule on summaries.

MR. BRESLIN: Right. For a summary --

THE COURT: It says here, when it's not convenient to examine in Court the contents of voluminous writings, recordings, photographs, a party may present in

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007
RECEIVED NYSCEF: 01/19/2026

Page 82

the form of a chart summary or calculation by calling a qualified witness.

MR. BRESLIN: Right.

THE COURT: The party intending to use such a summary must give timely written notice of his or her intention to use the summary, proof of which shall be filed with the Court --

MR. BRESLIN: Right.

THE COURT: -- and shall make the summary and the originals, or duplicates of the data from which a summary is compiled, available for examination.

MR. BRESLIN: Right. We did that over a year ago.

THE COURT: And so that's all been done?

MR. BRESLIN: Yeah.

THE COURT: All right, and then so from the summaries --

MR. BRESLIN: But what we didn't give them --

THE COURT: -- from that database, then is that what -- now Mr. Gray is going to be testifying based on those summaries, his opinions?

MR. BRESLIN: Well, his opinion is based on the data. The summary is just a visual, a visual view of the data.

Case 23-01133-EPK   Doc 383-1   Filed 01/23/26   Page 733 of 976

Page 83

THE COURT:  Okay.

MR. BRESLIN:  What the data shows, and that's where we get back to the whole usury argument, because what Mr. Zankl testified to repeatedly in deposition is that he had a deal with Mr. Farache where he was paying him 30 percent on his money, and he was doing that for years, and years, and years, and so Mr. Farache -- and it wasn't just Mr. Farache, it was numerous people. That was the deal.  Mr. Zankl was paying 30 percent, he was paying usurious interest rates to a lot of different lenders.

So what the analysis has shown is that, A, because Mr. Farache has testified that he was in the business of buying and selling cars.  The evidence is going to show that he didn't buy and sell any cars, but the evidence is going to show that he was getting paid a lot of money, but he was getting paid on his loan, he was getting paid the VIG, and the VIG was over 30 percent, and this went on for years.

So what the experts have done is they've looked at the books and records, the bank records, they've analyzed the different bank records, and they've looked at the deal jackets and, you know, as far as the deal jackets go, the deal jackets are just -- you know, on their face are just, you know, fraudulent, which is neither here nor

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                      RECEIVED NYSCEF: 01/19/2026

there, but the long and short of it is, Mr. Gray is going to opine that, A, that Mr. Farache was not in the business of buying and selling cars, the same opinion he gave in the bankruptcy court, and that, B, he's going to testify that he's calculated the interest rate and it was usurious, it was very high. So that's our evidence, but -- and we don't need to go there.

I just need your Honor to narrowly tell me, can Richard Gray rely on the data that was entered by Fiske & Company, that has been supplied to the other side, not only the raw data, but the cumulative and work product data, and can he testify about that?

Because if he can't, then I'm going to have to have it redone. So that's the legal question.

Thank you, Judge.

THE COURT: All right. Response?

MR. BENNARDINI: Yes, sir. Thank you. Good afternoon again, your Honor.

Your Honor, an expert must have a formative role with respect to the formation of his or her expert opinion, otherwise it's not that expert's opinion. The expert opinion that they want to present to this jury is of Mr. Brian Rohl. It is not of Mr. Gray.

I have Fiske time entries that Mr. Breslin just told you about. They're marked confidential, so I

Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 735 of 976

Page 85

didn't file them in the Court record, but they're going to be in the Court record because these are the same -- the jury is going to see these because they're the same fees that they're trying to recover under the Wrongful Act Doctrine, which is the doctrine where if my clients cause them to go into bankruptcy court to protect their rights, then they get fees and costs. It's an exception to the American rule. So they're going to have to put these into evidence.

And, Judge, when you look, and I have copies, and I'm happy to give the Court one, there is not a single data entry, not a single time entry or billing entry in this document, and you heard him say Mr. Rohl did this, not a single entry by Mr. Gray, not a single one.

I also have Mr. Gray's billing records when he left -- do you have a question?

THE COURT: I'm not sure where you're going with that.

MR. BENNARDINI: Where I'm going with it is this, an expert cannot rely on the work -- this is what you said on --

THE COURT: Experts are not allowed to come up on the stand and say, Mr. Rohl went out and did all this and it was Mr. Rohl's opinion --

MR. BENNARDINI: Right.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                RECEIVED NYSCEF: 01/19/2026

Page 86

THE COURT:  -- because that would be hearsay.

MR. BENNARDINI:  It's not just hearsay, it's called bolstering.

THE COURT:  Okay.  It would be -- but I don't think that -- he's not going to do that, that's not what he -- so what he's going to do is -- I agree.  So if that's the motion in limine --

MR. BENNARDINI:  No, it's not, it's not the --

THE COURT:  So Mr. Gray is not going to say what Mr. Rohl said, correct?

MR. BENNARDINI:  Correct.

Well, actually, this whole thing is premature anyway.  It should be a motion in limine, and they are due on Friday by the trial scheduling order.  So that's really -- after I brief all that, that's really when this should be heard.  It's sort of a backdoor way to get around a motion in limine that's presently due, but if I may continue?

There is -- Mr. Rohl didn't do the work.

THE COURT:  I thought this was a motion in limine.

MR. BENNARDINI:  No, it's because your Honor said on June the -- on July the 22nd, so, Mr. Breslin, to

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 737 of 976

Page 87

the extent that you have this third individual now as your new expert, Mr. Gray, they cannot rely on any work whatsoever that Mr. Rohl did. That's correct, what your Honor said.

THE COURT: They can rely on it, they just can't repeat it. They can't --

MR. BENNARDINI: No, but what you said is right. He can't rely on Mr. Rohl's work. He has to -- here's what the law is, if I may. The case law is this, when testifying at trial, experts may rely on documents and data collected and assembled by their subordinates, so long as the opinion is otherwise admissible under 90.704.

THE COURT: Okay.

MR. BENNARDINI: Mr. Gray was not the subordinate of Mr. Rohl. It was Ms. Scherer who -- let me start that over. Mr. Gray was not the supervisor of Mr. Rohl, that was Ms. Scherer. There's not a single time entry here about Mr. Gray giving Mr. Rohl guidance as to what Mr. Gray needs to do his report.

Absent something like that, experts cannot rely on the investigation, review, an analysis of other experts.

As your Honor said --

THE COURT: Let me just clarify. Mr. Breslin, you're not going to even reference Mr. Rohl,

OUELLETTE & MAULDIN COURT REPORTERS, INC.
(305) 358-8875

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007 RECEIVED NYSCEF: 01/19/2026

Page 88

are you?

MR. BRESLIN: No.

THE COURT: Okay. So the only --

MR. BENNARDINI: It doesn't matter --

THE COURT: -- way you would reference the subordinates underneath, is that they input all the data into the database.

MR. BRESLIN: The only reason I would ever need --

THE COURT: Well, let me just ask Mr. Bennardini, what would be the objection to --

MR. BENNARDINI: Because Mr. -- and this is what the case law says, in addition, and I got Marks versus Marks, 576 So.2d 859, 3rd DCA, 1991, Linn versus Fossum, M.D., and these are med-mal cases, 946 So.2d 1032-1039, Florida Supreme Court, 2006, and Gutierrez, G-U-T-I-E-R-R-E-Z v Vargas --

THE COURT: Sometimes people get caught up too much in just citing a case, or a case says something, but it doesn't matter what a case says. What matters is the facts of this case.

MR. BENNARDINI: Well, the facts of this case --

THE COURT: Yeah, and then --

MR. BENNARDINI: Agreed, agreed.

Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 739 of 976

Page 89

THE COURT: -- there's a case interpreting it, but (inaudible) --

MR. BENNARDINI: I'm trying to tell you what the facts --

THE COURT: -- what the facts of this case are, and then we'll look at what the rules are, and then you have the cases that interpret it.

MR. BENNARDINI: Right.

THE COURT: So what are the facts of this case? What are you trying to keep out? Because it sounds like what you're trying to keep out, they agree. They're not going to mention --

MR. BENNARDINI: No.

THE COURT: Mr. Gray is not going to get on the stand and say that Mr. Rohl did this, and based on that -- they're not even going to reference Mr. Rohl, right?

MR. BENNARDINI: Mr. Gray is Mr. Ipsodixit. He did not do any of his own work. He did not -- he has to -- to do his opinion, to have an independent opinion, Mr. Gray has to -- it's okay for Mr. Rohl to gather, analyze, investigate, and come up with data, but Mr. Gray himself can't just buy off on Mr. Rohl's work.

Mr. Gray doesn't have to gather, he doesn't have to create the data, but he has to look at it, and

Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 740 of 976

Page 90

there's not a single entry in these billing records --

THE COURT: It's not just the weight of the evidence. If he didn't look at it, yeah, then he may be out, but they're representing he did.

MR. BENNARDINI: Well, I read his transcript, all three of them, and there's not a single time where he said he analyzed Mr. Rohl's data. He just simply did not do it.

THE COURT: Not Mr. Rohl's data. He just analyzed the data.

MR. BENNARDINI: It's Mr. --

THE COURT: This is the data, this is the --

MR. BENNARDINI: Mr. Rohl was the expert in the bankruptcy proceedings, or he was going to be. Mr. Rohl prepared the expert report on which Mr. Gray is relying, not Mr. Gray. Mr. Rohl prepared those schedules that your Honor talked about. In fact, those schedules are not, those are not summaries. Those are demonstratives of what the conclusion by Mr. Rohl was as to what the --

THE COURT: I'd have to see it. Again, this is where I'm at a disadvantage.

MR. BENNARDINI: Well, that's why we need to --

THE COURT: I mean, you're asking me to rule

NYSCEF DOC. NO. 1007 RECEIVED NYSCEF: 01/19/2026

Page 91

in a vacuum here, but I think what was represented by Mr. Breslin is that there was -- there's all these jackets, the information was taken and put into a database, and then it was summarized, and then you have the underlying, and that Mr. Gray has now reviewed those summaries and the underlying data, and now is going to give an opinion.

MR. BENNARDINI: Respectfully, here's what the Court is missing --

MR. BRESLIN: Judge, no, almost.

MR. BENNARDINI: Here is what the Court is missing --

THE COURT: Okay. What am I missing?

MR. BENNARDINI: It would be okay with what your Honor just said if Mr. Gray was the supervisor of Mr. Rohl at Fiske at the time and said, Mr. Rohl, I'm going to be doing this opinion. Here is my direction and guidance as to what I want you to review, gather, and analyze so I can form my own independent opinion.

If you look at these billing records again, at Fiske, and Mr. Breslin just told you that's where all the work was, that never happened. Mr. Gray just happened to work there, and when --

THE COURT: All right. I understand your argument. All right. So --

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 92

MR. BRESLIN:  Judge, very briefly, please.

THE COURT:  So fill in the blanks, Mr. Breslin.

MR. BRESLIN:  Judge, just so you're not confused, the data was entered by Fiske, various and numerous employees at Fiske, It was Brian Rohl and Anneliese Scherer.

THE COURT:  So Rohl was not the data entry person?

MR. BRESLIN:  Pardon me?

THE COURT:  Mr. Rohl --

MR. BRESLIN:  He was one of them.

THE COURT:  One of the data entry people?

MR. BRESLIN:  He was one of the data entry people.

THE COURT:  Okay.

MR. BRESLIN:  But now there's a database. From that database, Mr. Rohl formed an opinion.  From that same database, Mr. Gray has now formed an opinion. Mr. Rohl created charts from that database.  Mr. Gray formed an opinion based on that database.

So the only issue before your Honor is, can Mr. Gray form his opinion based on the database that was put together by the Fiske employees, because he was an employee there at the time, but he didn't supervise.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007 RECEIVED NYSCEF: 01/19/2026

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 743 of 976

THE COURT: These other charts that Mr. Rohl prepared, he's not using those?

MR. BRESLIN: Judge, we filed those, and Mr. Gray --

THE COURT: Are they summaries or are they --

MR. BRESLIN: Right, right. Judge, the summaries are the summaries. The summaries are nothing more -- the charts are nothing more than visual depictions of what's in the database.

So Mr. Gray has looked at the summaries, looked at the underlying data, and he says, yes, those summaries are accurate, and now this is my opinion.

He's not basing his opinion on the summaries. He's basing his opinion on the underlying data, but he's also opining that the summaries are accurate.

THE COURT: I'm not sure what -- all right. The opinion is that the effective interest rate is X?

MR. BRESLIN: Right, right, that's one of them.

What he did was he analyzed the income, the money in and money out from the Karma companies, the money in and money out from AWB, the money in and money out from Excell, and he's analyzed all of those, and he's compared

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007 RECEIVED NYSCEF: 01/19/2026

Page 94

those to the AWB records where they say they bought and sold cars.

So they said -- just to give you just a taste of it, AWB, in the year 2021, and that's going to be the focus year, they said that they bought and sold over $30 million worth of cars, and they didn't. They didn't -- you know, they didn't buy and sell any cars, much less $30 million worth of cars.

What it was is there was just a lot of paper transactions to explain the money back and forth, because what happened was there was this loan out there, and there was money going in, money coming out, money going in, money coming out, and at the end of the month, every month, and Scott Zankl has testified to it numerous times, is it had to be 30 percent, that was the thing.

So all of this, all the paperwork were fraudulently and falsely created to cover up this usurious lending scheme, and interestingly, Mr. Bennardini says there's no allegation of usury in the complaint. I think he needs to re-read the complaint. It's chock full of references to usury.

So, but, Judge, I just need a decision. Can Mr. Gray form his opinion on the database that was entered by Fiske employees while he was an employee there, even though he's no longer an employee at Fiske? That's the

NYSCEF DOC. NO. 1007                                    RECEIVED NYSCEF: 01/19/2026

Page 95

legal question, because if you say no, then I'm simply going to have it redone, because we've spent way too much money and wasted too much time for him not to be able to give his opinion, because he's already opined from the database. So I just have to reconfirm the database.

THE COURT: All right.

MR. BENNARDINI: Your Honor, I have the Fiske records here, and this is the entry, August 8th, 20 --

(Multiple people speaking.)

MR. BRESLIN: He doesn't have all the Fiske records there --

THE COURT: Okay.

MR. BRESLIN: -- because what he doesn't have is the retainer agreement with Mr. Gray, where he was paid 7,500, and it was to analyze the data. So the first 7,500 in his retainer agreement was to analyze the data.

THE COURT: He went and he actually analyzed the data?

MR. BRESLIN: Yes, yes.

MR. BENNARDINI: I have those billing records as well and it's the same thing.

MR. BRESLIN: And that's cross-examination.

THE COURT: Hang on, hang on. Okay.

MR. BENNARDINI: I have the Gray billing

Page 96

records as well.  What happened was --

THE COURT:  You don't want him looking at the work that Mr. Rohl did and saying it's my opinion that this --

MR. BENNARDINI:  Well, let me make it clear. It's perfectly obvious under the law there cannot be any bolstering.  In other words, it's not just Mr. Rohl. That's --

THE COURT:  He's not even mentioned Mr. Rohl.

MR. MEYER:  As Mr. Breslin told you earlier, there were four experts they had to do this, Mr. Glick, Mr. Barbee, Mr. Rohl, and Mr. Gray.  None of those --

THE COURT:  Wait a second.  If he testifies, look, this -- the information from these jackets were put into this database, I analyzed the database, and this is my opinion.

MR. BENNARDINI:  He needs to --

THE COURT:  There are no issues, right?

MR. BENNARDINI:  Yes issues.

THE COURT:  What's the issues?

MR. BENNARDINI:  He needs -- he can't -- because he was not Mr. Rohl's supervisor --

THE COURT:  He's not even going to mention Mr. Rohl.

Page 97

MR. BENNARDINI: You've got to let me finish, please, sir.

THE COURT: Okay.

MR. BENNARDINI: Because he was not Mr. Rohl's supervisor, Mr. Rohl did not have the direction from Mr. Gray to look for what Mr. Gray needed to render his opinions, that's what the case law says. You can have a subordinate do it, but you've got to give them appropriate direction. Mr. Gray, to this day, has not laid eyes on deal jackets, he's not laid eyes on dealer track records, there's no evidence. I've looked at Mr. Gray's billing records, Gray evaluations --

MR. BRESLIN: He's deposed him twice, he's never even asked him that.

THE COURT: All right. If all he's doing is looking at the database, I'm going to allow it.

MR. BRESLIN: Thank you, Judge.

THE COURT: But he has to establish that he's looked at the database and --

MR. BRESLIN: Of course.

THE COURT: Okay.

MR. BRESLIN: Of course.

THE COURT: All right, and he's not allowed to say that Mr. Rohl did this --

MR. BRESLIN: No, no.

OUELLETTE & MAULDIN COURT REPORTERS, INC.
(305) 358-8875

Page 98

THE COURT: -- and I agree with what Mr. Rohl said.

MR. BRESLIN: Judge, I understand the rules and the law.

MR. BENNARDINI: Also, if I would, Mr. Glick and Mr. Barbee, because they mentioned them in the motion.

THE COURT: Yes, he can't, he's not going to reference any other experts and what they've done.

MR. BRESLIN: No, no, of course not.

THE COURT: It's just that these people put together a database, and then I reviewed the database and --

MR. BRESLIN: Thank you, Judge.

THE COURT: All right. So, I don't know if I need to do a jury instruction on ownership interest today. That's what you're going to argue, right?

MR. BUSCHEL: Yes, Judge. I can give you the proposed jury instruction. I gave it to you, and I also -- I mean, I could quote the Court, give a 4th DCA case, and then give a special proposed jury instruction. I think it's -- I don't think we have to belabor the point, but I'll quote the Court from the last hearing on Page 99. I do think there has been a finding, though, that AWB does not have an ownership interest. The Court also said, all right, that's based on Judge Kimball's

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 99

ruling on May 1st as well as the June order, so we are not going to have a separate trial on whether AWB had an ownership interest in those vehicles.  That's already been determined by the bankruptcy court.

And so the proposed instruction, I'll spare the Court all the different res judicata and judicial estoppel, there was a settlement agreement with the Chapter 7 Trustee, but the special instruction would be this, members of the jury, you're instructed as a matter of law that Auto Wholesale of Boca, LLC, AWB, did not, and never had any ownership interest, lien, security interest, property interest, or any other legal claim of any kind in the vehicles that are the subject of this lawsuit.

AWB was never a good-faith purchaser or buyer in the ordinary course of business with respect to any of the vehicles at issue in this case.

That's all we're asking for.  I think that would eliminate a lot of their worries about prejudice, and trying to put in orders from the bankruptcy court. I think once we have this finding, this instruction takes care of that issue.

THE COURT:  All right.  Is there an objection?

MR. BENNARDINI:  Yes, your Honor.

That is --

Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 750 of 976

Page 100

THE COURT: How can I give --

MR. BENNARDINI: Right.

THE COURT: How can I comment on the facts? All I'm doing is setting myself up to be reversed.

MR. BUSCHEL: You're not commenting on the facts. You're making a conclusion of law that AWB does not have any ownership interest.

THE COURT: I'd be commenting on the facts, so it is res judicata or --

MR. BUSCHEL: So --

THE COURT: -- judicial estoppel issue.

MR. BUSCHEL: Right, and --

THE COURT: -- I've already ruled on that.

MR. BENNARDINI: Yes, you have.

THE COURT: And the Faraches were not --

MR. BUSCHEL: Not the Faraches, AWB. I just quoted the court --

THE COURT: Yes.

MR. BUSCHEL: -- that A -- if the Faraches want to come in here and raise their hand and say, oh, we were the real owners of it --

THE COURT: I thought they were going to get up and raise their right hand and say we thought we were the real owners.

MR. BENNARDINI: They're going to raise

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007 RECEIVED NYSCEF: 01/19/2026

their right hand and say AWB was the owners.

THE WITNESS: Well --

MR. BUSCHEL: But they can't --

(Multiple people speaking.)

MR. BENNARDINI: Right, exactly, exactly.

MR. BUSCHEL: But they can't say that.

MR. BENNARDINI: Yes, they can.

MR. BUSCHEL: No, because we -- there's a court order from the bankruptcy court, if I may, since I thought we had this ironed out, because the court said that is, and I'll read it from the -- it's Docket Entry 694 from the bankruptcy court, it says, the proceeds of the auction, net, buyer's premium, expenses, carve-outs of the net proceeds shall be held pending adjudication by a court of competent jurisdiction as to the validity, priority, and extent of property interests asserted in the net proceeds or consensual resolution between and among the parties whom have appeared in the main bankruptcy case or the adversary proceedings and assert an interest therein. Only, one, parties to the adversary proceeding complaint. Two, the parties have appeared in the main bankruptcy case and asserted an interest in the vehicles may make a claim in the net proceeds.

Well, the Faraches didn't do that, and AWB certainly can't do that based upon Paragraph 9 of the

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

Page 102

bankruptcy order.

THE COURT: Okay.

MR. BUSCHEL: The trustee --

THE COURT: I'm going to take that -- I'm going defer on that. You're going to have to give me case law that says that this Court, without a stipulation, that this court can tell the jury specific factual findings, because that's where courts always get in trouble by doing that, when a court comments on the evidence or things of that nature --

MR. BUSCHEL: But they don't want us -- we shouldn't have to prove --

THE COURT: If there is a summary judgment as to that or something --

MR. BUSCHEL: Well, there was, and I think we're now at the point of that, but let me read --

THE COURT: The summary judgment was against the Faraches.

MR. BENNARDINI: Yes.

MR. BRESLIN: Right, and, Judge, what you ruled was, you said as far as AWB goes, I'll grant summary judgment on that, but as far as the Faraches go --

THE COURT: Okay. So --

MR. BRESLIN: -- they may come in and claim an ownership issue.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007

RECEIVED NYSCEF: 01/19/2026

Page 103

So you've already ruled, and you've already decided very clearly that they can't relitigate AWB ownership.

So we're simply saying, you've ruled that they can't come in and try to prove that AWB owned these cars, so we want a jury instruction to that effect.

THE COURT: All right. I mean, they're going to have to think about that. We'll do that --

MR. BUSCHEL: Judge, let me --

THE COURT: -- at the time --

MR. BUSCHEL: Let me give you one case, if you want that's on point from the 4th District Court of Appeal, it's Southeast Bank versus Equitec Leasing, 446 So.2d 1155, Florida, 4th DCA, I'll read one sentence from it.

THE COURT: Gosh, that has to be a long time ago.

MR. BUSCHEL: It was, but it says, we have thoroughly reviewed the matter and hold Southeast Bank collaterally estopped from relitigating the ownership in the state court herein, and it was an appeal from the -- I want to, before I -- it was a federal bankruptcy case.

THE COURT: I think they were the -- they were the parties, though?

MR. BUSCHEL: It was a federal bankruptcy

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

case, but it's saying, the summary judgment was granted on the grounds that the ownership of the property being foreclosed have been determined in a federal bankruptcy proceeding.

So, I think the Court -- it is still good law.  It cites to other law in the 4th District, and it says if something has been determined in the bankruptcy proceeding, this Court can -- this Court should accept it, and certainly, particularly when the court, a bankruptcy court in -- it said, they are not allowed to go to another court and relitigate it.  That's precisely what the Faraches are asking, and AWB is asking to do, is, well, you can't put in the court order -- I mean, you can't give a jury instruction, and we want to raise our hand and say we thought AWB --

THE COURT:  Let me look at that.  I'll look at it.

MR. BUSCHEL:  Okay.

MR. BENNARDINI:  Can I briefly respond?  You did rule on this already.  This was before the Court on May 1st, and I have a copy of your Honor's order if you would like it.

What it says is, genuine issues of material fact remain for determination by the trier of fact regarding these claims, that was conversion of tortious

Page 105

interference, and because Moshe and Lisa Farache were not parties to the bankruptcy proceeding, res judicata and collateral estoppel do not apply to them.

However, as to AWB, as a party to the bankruptcy proceeding, collateral estoppel bars AWB from claiming an ownership interest in the vehicles.

THE COURT: But they're not a party in this case.

MR. BENNARDINI: They're not a party in this case, that's right.

And just on July 28th --

MR. BUSCHEL: Who's not a party to this case?

MR. BENNARDINI: AWB.

MR. BRESLIN: AWB is --

MR. BUSCHEL: Yes, of course --

(Multiple people speaking.)

MR. BENNARDINI: There's no claim against them. I'm not defending AWB. They're not getting a judgment against AWB. There's no damages claim against AWB.

MR. BUSCHEL: Judge, I think --

MR. BRESLIN: We've already amended the complaint to clarify that issue, because he keeps talking about a nominal defendant.

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 756 of 976

Page 106

THE COURT: They will be a defendant on the verdict form?

MR. BRESLIN: Absolutely.

MR. BENNARDINI: No, 100 percent, no. No, they won't, Judge. There's no damages claim against AWB.

MR. BUSCHEL: Judge, they are named as a party because we're piercing the --

THE COURT: It sounds like that's a different issue.

MR. BENNARDINI: It is.

THE COURT: So if they are a party, then I could instruct them.

MR. BENNARDINI: 100 percent.

MR. BUSCHEL: But, Judge, if I may --

MR. BRESLIN: Judge, just to clarify --

COURT REPORTER: Judge, Judge, I can only take one at a time.

THE COURT: All right.

MR. BRESLIN: Who would you like to hear from, your Honor?

THE COURT: Mr. Bennardini, go ahead and finish.

MR. BENNARDINI: Thank you, sir.

THE COURT: You've got five minutes --

Page 107

MR. BENNARDINI:  Thank you, sir.

THE COURT:  -- and then we're done.

MR. BENNARDINI:  Thank you, sir.

The stem of all this was this July -- June 16th, 2023 language in an order by Judge Kimball, and that is Paragraph 9 they rely on, where Judge Kimball says, the trustee, as the duly appointed Chapter 7 Trustee of the bankruptcy estate of Auto Wholesale of Boca hereby waives all liens and interest, including any lien and ownership interest in the vehicle -- vehicles, waives.  There was no adjudication.  We went through all this at prior hearings.

In fact, your Honor changed Judge --

THE COURT:  Gosh, every time I come up, we have the same arguments over and over again.  Enough. I'll address this at trial.  I'll have a much better understanding when we get to trial.

You all are, you're coming in here with these little tiny issues and splitting hairs, and asking me to rule on evidentiary issues without even understanding the context.

I mean, you know, we're having a charging conference on a jury instruction when we haven't even heard opening statements yet, and so -- on a fact that you want me to instruct the jury on, I'm not ready to do that.

MR. BENNARDINI:  Thank you, Judge.

Page 108

THE COURT: All right, and so in any event, I don't think there's anything in dispute. There's a bankruptcy that addressed something for what I thought was a non-party, but I guess they are going to be added and they will be on the verdict form. We'll address it, I guess, when we get to trial.

MR. BUSCHEL: Yes, we will.

THE COURT: All right. Now let me handle the motion for summary judgment. All right. This is Franklin versus --

MR. COHEN: Judge, may we be excused?

THE COURT: You are excused.

MR. COHEN: Thank you, Judge.

THE COURT: Nobody's going to require you to be here.

MR. COHEN: What?

THE COURT: Nobody is requiring you to stay.

MR. COHEN: All right. All right. Thanks, Judge.

THE COURT: All right.

MR. BUSCHEL: Nice to see you, Judge.

MR. LANGLEY: Judge, before we begin, I noticed this morning that my response to Mr. Dorsey's motion didn't make it -- doesn't show up on the docket. I wasn't sure if you had it. I have an extra copy, if you

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 109

don't.

THE COURT:  All right, it was in the -- I've read your response.  You're saying that it's on appeal, and there's a motion for a new trial.

MR. LANGLEY:  Yes, and for some reason, I looked this morning, and it's not showing on the docket, even though it was filed a week ago.  If you have it, that's fine.

THE COURT:  Yeah.

MR. DORSEY:  Did your Honor want to take a break before we begin, or --

THE COURT:  No.

MR. DORSEY:  -- do you want to just soldier on?

THE COURT:  Actually, let me do this, let me take a five minute break.

MR. DORSEY:  Understood.

THE COURT:  Or a 10 minute, to give the court reporter a break.

MR. LANGLEY:  Okay.

MR. MEYER:  Your Honor, when you come back, it's Steven Meyer, I'm here, we have a 1:30 case, which I think is very short, or a 1:30 motion, Mr. Breslin, and I believe it's quite short.

THE COURT:  Which one was that?  I was

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Page 110

not --

MR. MEYER:  I represent MMS Ultimate Services.  Mr. Breslin filed a motion for default.

THE COURT:  All right.  Mr. Breslin.

MR. BRESLIN:  Yeah, I did, Judge.  They never answered the complaint.  They answered it the other day.

Prior to them answering it -- they answered it just the other day, well over a year late, after the court ordered an answer, after the motion to dismiss was denied.  It was just ignored.  They filed a motion for summary judgment a couple of weeks ago, and now -- and that was without any answer being filed.  They made a motion for default, and to strike their motion for summary judgment.  So they just filed an answer and numerous affirmative defenses that I'll be moving to strike.

So what I'd like your Honor to do, I know you can't enter a default because he, in fact, did answer, even though it's a year late under the case law, but I would like your Honor to strike the motion for summary judgment because it was premature, and he filed it before he answered, and he raised affirmative defenses and an answer that are relevant to the summary judgment.

THE COURT:  My understanding is that the case law allows you to file a motion for summary judgment.

NYSCEF DOC. NO. 1007                                    RECEIVED NYSCEF: 01/19/2026
Case 23-01132-EPK   Doc 383-1   Filed 01/22/26   Page 761 of 976

Page 111

I think the case law allows you to file a motion for summary judgment, right, even instead of an answer?

MR. BRESLIN:  Yeah, it does.

THE COURT:  So I don't know if there's a basis to strike it.

MR. BRESLIN:  Well, you know, it's just, you know, it's an equitable argument, Judge.  It's just, you know -- you know, just ignoring court orders, we have a trial in a month, and he files an answer and affirmative defenses, you know, a month before the trial, while a motion for summary judgment is pending.

THE COURT:  Well, I hate to say this --

MR. BRESLIN:  It's just --

THE COURT:  -- but you probably shouldn't have waited until now to file a motion for default either, right?

MR. BRESLIN:  I'm sorry?

THE COURT:  You probably shouldn't have waited until this late to file a motion for default and have it heard, I guess.

MR. BRESLIN:  That's a very good point, Judge, because I assume that would have triggered it even earlier, but I just noticed it.

THE COURT:  No, if you would have done it a year ago, then maybe you would have gotten an answer a

Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 762 of 976

Page 112

year ago.

MR. BRESLIN: Yeah, you're right.

THE COURT: So, all right, the motion for default is denied.

MR. BRESLIN: Thank you.

THE COURT: And then the motion to strike is denied, but we need to get those things all heard right away, Mr. Meyer.

See, you've been just retained recently?

MR. MEYER: No, your Honor, I've been in the case for a while, but there's a very narrow, little limited issue as to this one defendant.

THE COURT: All right. Are you part of either of the trials? Which trial is MMS --

MR. BRESLIN: The Farache trial.

THE COURT: Which one, the Farache?

MR. BRESLIN: The Farache, trial two.

THE COURT: All right. I don't know if there's any way you can carve them out or resolve with them or anything.

MR. BRESLIN: No, Judge, there is not, I'm sorry.

THE COURT: All right. You've got to be ready to go, Mr. Meyer. I guess that --

MR. MEYER: We'll look forward to it,

Page 113

your Honor.  I would say that probably the last person you want to see in the courtroom is my client with respect to these issues, but --

THE COURT:  All right.

MR. MEYER:  I'm the plaintiff, but --

THE COURT:  All right.  So motion for default, motion to strike is denied.

MR. BRESLIN:  Judge, I don't understand what he meant by that comment.

THE COURT:  I have no idea either.  So I'm not going to ask any follow-up, because it doesn't matter.  You know, why they would want to be there or not be there, unless there's a threat.  I don't think there's a threat, right, Mr. Meyer?

MR. MEYER:  It's not a threat.  I'm saying --

MR. BRESLIN:  Just making sure.

MR. MEYER:  All right.  I'm not here to argue with counsel.  I mean, there are just no facts whatsoever that have anything to do with my client.  I think that --

THE COURT:  That's what the trial is for, so we're not going to do that today.  All right, but the motion for default is denied.

MR. MEYER:  Thank you.  Have a good day,

Page 114

your Honor.   Thank you, Counsel.

THE COURT:   All right.   I'll be right back, and then we'll do the Franklin versus Lubin.

MR. DORSEY:   Thank you, Judge.

(A recess was taken, after which the following proceedings were had:)

THE COURT:   All right.   All set?

MR. DORSEY:   All set.   Everyone left, Judge, so we started thinking maybe you took off, too.

THE COURT:   I thought about it.   No, I'm just kidding.

(Laughter.)

THE COURT:   All right.   Whenever you take a break, you have all this stuff waiting for you in the office, and, yeah, I ended up getting sidetracked a little bit, but we're back on the record in CACE-22-5125, FVP versus Zankl, et al.   So all we have left are the Franklin parties and Lubin.

MR. DORSEY:   Correct.

THE COURT:   So this is Franklin's motion for some rejection, correct?

MR. DORSEY:   Yes, sir.

My personal promise to you is this presentation will be shorter than the motions in limine you heard, even though it's potentially case dispositive.

NYSCEF DOC. NO. 1007

RECEIVED NYSCEF: 01/19/2026

Page 115

So I think it's --

THE COURT:  Be careful what you represent here.

MR. DORSEY:  Well, depending on what Mr. Langley has in mind, maybe not, but I'll try to keep my presentation brief.

THE COURT:  All right.

MR. DORSEY:  As a very, very brief kind of 10,000-foot background, because most of your experience in this case has been dealing with the Farache parties and the FVP parties, my clients, the Franklin parties, are commercial lenders.  Basically, their business model is they find companies in business who are suffocating under the weight of usurious loans, merchant cash advances.  Franklin locates those companies and essentially flushes out the bad debt.  It buys off the bad debt, and it refinances it with legal debt, allows the company to survive.  Franklin makes a profit.  Everybody wins.

Franklin became involved in this case when it was approached by entities your Honor is familiar with, Excell and the Karma entities in the year 2021.  They were running automobile dealerships, they were drowning under millions of dollars of MCA debt, and so they approached Franklin, based on a common contact, and said, hey, what can you do about a refi?  So Franklin started, you know,

Case 23-01132-EPK   Doc 383-1   Filed 01/22/26   Page 766 of 976
NYSCEF DOC. NO. 1007
RECEIVED NYSCEF: 01/19/2026

Page 116

talking to Scott Zankl, and otherwise investigating the situation.

At the time Franklin was investigating, Excell was indebted to an MCA entity named Spin Capital, LLC. This is Mr. Lubin's entity you heard about earlier.

Franklin, as a condition precedent to closing on any kind of refinance to Excell, Franklin needed an assurance from Spin that it was acquiring all the Spin debt. Franklin wouldn't want to refinance, have a borrower who's still being bled dry by an MCA out the back door.

So Spin, in November of 2021, executed an assignment to Franklin where it represented, we are -- here are our MCA contracts, the total indebtedness is, I think it was a nominal amount, either zero or a dollar, we hereby assign it to you, Franklin. Enjoy your refinance.

That statement turned out not to be true. It later came out that despite Spin's representations to Franklin in the assignment, that it had secretly spun off some of its debt to another entity, Hi Bar Capital, who your Honor is also familiar with, and after Franklin refinanced the loan, to what it thought were, you know, healthy businesses, who it was going to pull through, these businesses paid, I believe the figures are either 1.2 or 1.8, it's in my papers, they paid seven figures to

Page 117

Hi Bar based off the debt that Spin assigned.

Franklin then sued Spin in Michigan State Court for breach of contract. This lawsuit was commenced in 2022, Spin at all times was represented by counsel in that lawsuit, and in November of 2024, there was a two-day trial. The principal witness for Franklin was Scott Zankl, and Mr. Lubin, who is the sole owner of Spin, also appeared at the trial and testified on behalf of Spin.

Following that extensive two-day trial in the spring of this year, the Michigan state court issued extensive findings of fact, which we'll get to in a minute, which basically said Lubin knowingly lied about the transaction. Franklin relied on that false representation to its detriment, these are detailed in the findings of fact, which are attached to my motion, and about a month or two after the findings of fact were issued, a final judgment was issued closing the case.

So basically, Judge, I have a bunch of -- my clients, the Franklin parties, have numerous tort claims they're alleging against Mr. Lubin in this case, and we'll get to those in a minute, fraud in the inducement, tortious interference with business, what have you.

We're going to walk through it. Essentially, everything that we're alleging against

Gmail - Fw: Langley Email to JA with proposed order                                    13/01/2026, 16:48

**From:** noreply@17th.flcourts.org [mailto:noreply@17th.flcourts.org]
**Sent:** Thursday, August 14, 2025 11:22 AM
**To:** begozi@egozilaw.com; yfernandez@furrcohen.com; pdorsey@slp.law; dwoodall@slp.law; Ethan.HYRW@case.tinygnomes.com; jeanette.martinezgoldberg@akerman.com; myrna.montane@fmglaw.com; kafriday@mdwcg.com; ross@professionalparas.com; WPBLitDock@gtlaw.com; eservice@kulalegal.com; jb@jsjb.law; service@wdpalaw.com; receptionwlg300@gmail.com; josh@spincapital.com; sfazio@500law.com; docketing@500law.com; charlene.cerda@akerman.com; mark@markperrylaw.com; mleto@letolawfirm.com; JV@RichardBaronlaw.com; richard.jones@fmglaw.com; amanda.klopp@akerman.com; klee@feenixpartners.com; janet.mcmurray@fmglaw.com; acrane@furrcohen.com; BrownD@KleinPark.com; emily@flalawyer.com; jschwartz@jonschwartzlaw.com; sgherman@scottghermanpa.com; salfaziolaw@gmail.com; jam@kwblaw.com; gale@egozilaw.com; rose.mahdavieh@gtlaw.com; eservice@jsjb.law; kgleason@scottghermanpa.com; pleadings@letolawfirm.com; elliot@kulalegal.com; bstillman@egozilaw.com; cristina@ellenleesfield.com; martica.carrillo@fmglaw.com; cjb@kwblaw.com; steven@thefirm.legal; gsarbino@gmail.com; alex.amburgy@gtlaw.com; jv@jsjb.law; bvillalobos@kfb-law.com; maureen@markperrylaw.com; twilliams@williamslitigationgroup.com; blackb@gtlaw.com; jerrellbreslin@gmail.com; stinelly.pena@fmglaw.com; orozcol@kleinpark.com; BG.J6R6@case.tinygnomes.com; jekanov@mdwcg.com; zanklscott3@gmail.com; luke.bovat@akerman.com; ethan@floridajusticefirm.com; kzelaya@letolawfirm.com; ellen@ellenleesfield.com; brett.marks@akerman.com; dave@flalawyer.com; Aresty@mac.com; js@jsjb.law; bss@slp.law; freelancethornton@gmail.com; mcmurrayj@kleinpark.com; McMullen.ZCKM@case.tinygnomes.com; Buschel@BGlaw-pa.com; jessica@flalawyer.com; service.meyerlaw@gmail.com; staff1@furrcohen.com; service@floridajusticefirm.com; Joel.Wiegert@KutakRock.com; pmouton@slp.law; Michael@FloridaJusticeFirm.com; cgourlis@letolawfirm.com; kzankl@att.net; robert.klein@fmglaw.com; gservice@homerbonner.com; lbevans@kfb-law.com; aresty@icloud.com; ljacobs@wdpalaw.com; mbrandes@kfb-law.com
**Subject:** SERVICE OF DRAFT COURT DOCUMENT: CACE22005125

This is a system generated email. Please do not reply to this message.

Division: 07
Case No: CACE22005125
Style:FVP Opportunity Fund III, LP, et al Plaintiff vs.Scott Zankl, et al Defendant
Court Order: Order (Non-disposition)
Status: Pending

The 17th Judicial Circuit serves the citizens of Broward County Florida. It is the second largest jurisdiction in the State of Florida. The information transmitted is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from any computer.

**3 attachments**

📄 **Alternative.Proposed Order.pdf**
203K

📄 **Proposed Order.Redline.pdf**
206K

📄 **Langley email to the JA with attachements.pdf**
647K

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                          RECEIVED NYSCEF: 01/19/2026

Gmail - Fw: Langley Email to JA with proposed order                    13/01/2026, 16:48

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO. <u>CACE22005125</u>  DIVISION: <u>07</u>   JUDGE: <u>Haimes, David A (07)</u>

**FVP Opportunity Fund III, LP, et al**

Plaintiff(s) / Petitioner(s)

v.

**Scott Zankl, et al**

Defendant(s) / Respondent(s)

_____/

## ORDER ON JOINT MOTION TO ENDORSE SETTLEMENT

THIS CAUSE came before the Court for hearing on August 13, 2025, on the *Joint Motion to Endorse Settlement Agreement* filed (the "Motion") jointly by: (1) Plaintiffs, FVP Opportunity Fund III, LP, FVP Investments, LLC, and FVP Servicing, LLC (jointly and severally, the "FVP Parties"); (2) Defendants/Cross-Plaintiffs, Franklin Capital Funding, LLC, Franklin Capital Group, LLC, and Franklin Capital Management, LLC (jointly and severally, the "Franklin Parties"); and (3) Defendants, Yisroel Herbst, Mordechai Herbst, and Hi Bar Capital, LLC (jointly and severally, the "Hi Bar Parties"). Present at the hearing were counsel for the FVP Parties, Franklin Parties, and Hi Bar Parties, together with: (1) David Langley, Esq., counsel for Defendant Avrumi "Josh" Lubin ("Avrumi Lubin") and (2) Micheal J. Kasen, Esq, who the Court admitted pro hac vice as co–counsel for Avrumi Lubin prior to the hearing and who participated via Zoom at the hearing in support of the objections filed and otherwise raised by Avrumi Lubin. Other attorneys listened to the hearing regarding the Motion on Zoom but did not participate therein.

After reviewing the Motion and other relevant documents, including the Common Interest and Joint Litigation Agreement ("Common Interest Agreement") between Hi Bar Capital, LLC ("Hi Bar") and Spin Capital, LLC ("Spin"), and the letter purporting to terminateing that agreement dated April 3, 2024, and after hearing the arguments of counsel for all parties, the Court makes the following findings of fact and conclusions of law:

1. Beginning in the fall of 2022, the FVP Parties, Franklin Parties, and Hi Bar Parties were each parties in Adversary Proceeding No. 22-01218-EPK, which was pending in the United States

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                    RECEIVED NYSCEF: 01/19/2026

Case Number: CACE22005125

Bankruptcy Court for the Southern District of Florida, West Palm Beach Division (the "Bankruptcy Court"). The parties in the adversary proceeding were litigating their respective claims to vehicles removed from the Karma of Palm Beach, Inc. lot by other Defendants in this action, and which were claimed as part of the bankruptcy estate *In re: Auto Wholesale of Boca, LLC,* Case No: 22-15627-EPK, a bankruptcy case which was also pending in the Bankruptcy Court. That bankruptcy case proceeded to a two-day evidentiary hearing in March 2023, after which the Bankruptcy Court converted the case to a Chapter 7. *See* Case No: 22-15627-EPK — [ECF No. 584].

2. On June 23, 2023, pursuant to an agreement between the FVP Parties, Franklin Parties, Hi Bar Parties and the Chapter 7 Trustee, and at the Chapter 7 Trustee's request, the Bankruptcy Court endorsed said agreement, ordered the vehicles sold, and directed that the Net Proceeds from the sale be held as and distributed as follows:

> 8. The proceeds of the Auction, net of the Buyer's Premium, Expenses and Carveout (such net proceeds shall be referred to herein as the "Net Proceeds"), shall be held pending adjudication by a court of competent jurisdiction as to the validity, priority and extent of property interests asserted in the Net Proceeds or consensual resolution between and among the parties whom have appeared in the main bankruptcy case or the Adversary Proceeding and asserted interests therein. Only (i) parties to the Adversary Proceeding Complaint, or (ii) parties that have appeared in the main bankruptcy case and asserted an interest in the Vehicles, may make a claim against the Net Proceeds.

> 9. The Trustee, as the duly appointed chapter 7 trustee of the bankruptcy estate of Auto Wholesale of Boca, LLC, hereby waives all Liens and Interests, including any lien, ownership interest, property interest, security interest, or any other claim (as such term is defined in 11 U.S.C. § 101(5)) or interest of any kind whatsoever in the Net Proceeds and Vehicles. For the avoidance of doubt, the waiver includes any allegation that Auto Wholesale of Boca, LLC was a good faith purchaser of the Vehicles in the ordinary course under Fla. Stat. §§ 671.201(9) and 679.320(1).

> 10. The waiver of the Liens and Interests by the Trustee, as set forth in the preceding paragraph, is binding on Auto Wholesale of Boca, LLC in any future controversy, litigation, or any other dispute arising from or concerning the Net Proceeds. Auto Wholesale of Boca, LLC does not possess any Liens or Interests in the Net Proceeds, including any lien, security interest, or ownership or property interest whatsoever.

[See *Order Granting in Part Expedited Motion to Authorize Sale* [ECF. 618] at [ECF. 694] at ¶ ¶ 6, 8 and 10]. (the "Bankruptcy Court Sale Order"). The terms "Adversary Proceeding" and "Net Proceeds" shall have the meanings ascribed to them in the Bankruptcy Court Sale Order.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                    RECEIVED NYSCEF: 01/19/2026

Case Number: CACE22005125

3. Thus, per the Bankruptcy Court Sale Order, the Net Proceeds were to be held in the registry of the Bankruptcy Court pending the occurrence of either: (i) adjudication by a court of competent jurisdiction as to the validity, priority and extent of interests in the Net Proceeds, or (ii) "consensual resolution between and among the parties whom have appeared in the main bankruptcy case or the Adversary Proceeding and asserted interests therein."

4. On July 26, 2025, the FVP Parties, Franklin Parties, and Hi Bar Parties entered into the consensual resolution (the "Settlement Agreement") contemplated by Bankruptcy Court Sale Order and filed a motion for the Bankruptcy Court to release the Net Proceeds pursuant to the consensual resolution. In response, Avrumi Lubin filed objections in the Bankruptcy Court and argued that Avrumi Lubin was the assignee of Hi Bar's rights and that Hi Bar had no authority to enter into the Settlement Agreement. In support of Avrumi Lubin's argument, he filed of record the Common Interest Agreement and an assignment of Spin's rights to Avrumi Lubin.

5. The Bankruptcy Court initially denied the FVP Parties', Franklin Parties', and Hi Bar Parties' joint motion for release of the funds, and after reconsideration, ultimately denied such motion, on the basis that it lacked subject matter jurisdiction to consider the dispute raised by Lubin regarding the enforceability and termination of the Common Interest Agreement.

6. In doing so the Bankruptcy Court specifically referred the dispute between Avrumi Lubin and Hi Bar to this Court as the court with jurisdiction to "determine which of the Movants and Mr. Lubin have rights in the Net Proceeds. The Court encourages the parties to seek appropriate rulings in the Broward Action." See *Order Denying Expedited Joint Motion*, [ECF. 952] at p 9.

7. This Court reviewed the Common Interest Agreement as well as a ~~termination~~ letter issued by the attorney for Hi Bar on April 3, 2024 <u>which purported to terminate the Common Interest Agreement</u> and heard detailed argument by counsel for Avrumi Lubin, the Hi Bar Parties, FVP Parties and Franklin Parties.

8. This Court finds that Avrumi Lubin has no rights or standing to interfere with the Hi Bar settlement. ~~based on the plain language of the Common Interest Agreement. The Court further finds that the Common Interest Agreement was terminated by Hi Bar on April 3, 2024. The Court further notes that Avrumi Lubin took no action to refute Hi Bar's contractually-permitted termination until the FVP Parties, Franklin Parties, and Hi Bar Parties came to a Settlement Agreement.~~

9. The Court finds that Hi Bar had the power and authority to enter into the Settlement Agreement with the FVP Parties and Franklin Parties. Avrumi Lubin, on the other hand, has no right or standing to object to the Settlement Agreement.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Case Number: CACE22005125

Accordingly, and for the reasons stated on the record (court reporter present), which are incorporated herein by reference, it is hereby:

**ORDERED AND ADJUDGED** as follows:

10. This Court is the court of competent jurisdiction to resolve the dispute between Hi Bar and Avrumi Lubin as contemplated by the *Order Denying Expedited Motion* [ECF. 952] issued by the Bankruptcy Court.

11. This Court has reviewed the Common Interest Agreement, the purported termination letter and applicable law and has determined ~~that neither Avrumi Lubin, nor any of this affiliated entities, have any rights to the Net Proceeds as that term is defined in the Bankruptcy Court Sale Order [ECF. 694] and Order Denying Expedited Joint Motion, [ECF. 952].~~ that Hi Bar has the necessary authority to enter into the settlement agreement.

12. The Joint Motion to Endorse Settlement Agreement filed by the FVP Parties, Franklin Parties, and Hi Bar Parties is hereby **GRANTED** in its entirety.

13. Pursuant to the Settlement Agreement between the FVP Parties, Franklin Parties, and Hi Bar Parties, as stated to this Court on the record, the Net Proceeds should be distributed to the trust account of counsel for the FVP Parties.

14. This Court contemplates that this Order shall be filed of record in the Bankruptcy Court. ~~to inform the Bankruptcy Court that the dispute between Avrumi Lubin and Hi Bar regarding their relative rights in the Net Proceeds in the court registry has been resolved by a court of competent jurisdiction.~~

~~14.~~15. All terms of the Settlement Agreement and any other agreements concerning or related to the distribution of the Net Proceeds shall be furnished to counsel for Mr. Lubin.

~~15.~~16. The FVP Parties, Franklin Parties, and Hi Bar Parties shall serve a copy of the Settlement Agreement on counsel for Avrumi Lubin and the Farache Defendants within five (5) days of this order.

~~16.~~17. The *ore tenus* motion to stay the effect of this order made by counsel for Avrumi Lubin is **DENIED**. As time is of the essence, this order shall have immediate effect and is binding unless vacated by court order or stayed by an appropriate court of appellate jurisdiction.

~~17.~~18. This Court retains jurisdiction to enforce this order as required.

**DONE AND ORDERED** in Chambers at Broward County, Florida on .

Judge Name

Page 4 of 5

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 774 of 976

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

Case Number: CACE22005125

**CIRCUIT COURT JUDGE**
DRAFT DRAFT DRAFT DRAFT

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                          RECEIVED NYSCEF: 01/19/2026

# IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
## IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO. **CACE22005125**   DIVISION: **07**   JUDGE: **Haimes, David A (07)**

**FVP Opportunity Fund III, LP, et al**

Plaintiff(s) / Petitioner(s)

v.

**Scott Zankl, et al**

Defendant(s) / Respondent(s)

_____/

## ORDER ON JOINT MOTION TO ENDORSE SETTLEMENT

THIS CAUSE came before the Court for hearing on August 13, 2025, on the *Joint Motion to Endorse Settlement Agreement* filed (the "Motion") jointly by: (1) Plaintiffs, FVP Opportunity Fund III, LP, FVP Investments, LLC, and FVP Servicing, LLC (jointly and severally, the "FVP Parties"); (2) Defendants/Cross-Plaintiffs, Franklin Capital Funding, LLC, Franklin Capital Group, LLC, and Franklin Capital Management, LLC (jointly and severally, the "Franklin Parties"); and (3) Defendants, Yisroel Herbst, Mordechai Herbst, and Hi Bar Capital, LLC (jointly and severally, the "Hi Bar Parties"). Present at the hearing were counsel for the FVP Parties, Franklin Parties, and Hi Bar Parties, together with: (1) David Langley, Esq., counsel for Defendant Avrumi "Josh" Lubin ("Avrumi Lubin") and (2) Micheal J. Kasen, Esq, who the Court admitted pro hac vice as co–counsel for Avrumi Lubin prior to the hearing and who participated via Zoom at the hearing in support of the objections filed and otherwise raised by Avrumi Lubin. Other attorneys listened to the hearing regarding the Motion on Zoom but did not participate therein.

After reviewing the Motion and other relevant documents, including the Common Interest and Joint Litigation Agreement ("Common Interest Agreement") between Hi Bar Capital, LLC ("Hi Bar") and Spin Capital, LLC ("Spin"), and the letter purporting to terminate that agreement dated April 3, 2024, and after hearing the arguments of counsel for all parties, the Court makes the following findings of fact and conclusions of law:

1. Beginning in the fall of 2022, the FVP Parties, Franklin Parties, and Hi Bar Parties were each parties in Adversary Proceeding No. 22-01218-EPK, which was pending in the United States

Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 776 of 976

Case Number: CACE22005125

Bankruptcy Court for the Southern District of Florida, West Palm Beach Division (the "Bankruptcy Court"). The parties in the adversary proceeding were litigating their respective claims to vehicles removed from the Karma of Palm Beach, Inc. lot by other Defendants in this action, and which were claimed as part of the bankruptcy estate *In re: Auto Wholesale of Boca, LLC,* Case No: 22-15627-EPK, a bankruptcy case which was also pending in the Bankruptcy Court. That bankruptcy case proceeded to a two-day evidentiary hearing in March 2023, after which the Bankruptcy Court converted the case to a Chapter 7. *See* Case No: 22-15627-EPK – [ECF No. 584].

2. On June 23, 2023, pursuant to an agreement between the FVP Parties, Franklin Parties, Hi Bar Parties and the Chapter 7 Trustee, and at the Chapter 7 Trustee's request, the Bankruptcy Court endorsed said agreement, ordered the vehicles sold, and directed that the Net Proceeds from the sale be held as and distributed as follows:

> 8. The proceeds of the Auction, net of the Buyer's Premium, Expenses and Carveout (such net proceeds shall be referred to herein as the "Net Proceeds"), shall be held pending adjudication by a court of competent jurisdiction as to the validity, priority and extent of property interests asserted in the Net Proceeds or consensual resolution between and among the parties whom have appeared in the main bankruptcy case or the Adversary Proceeding and asserted interests therein. Only (i) parties to the Adversary Proceeding Complaint, or (ii) parties that have appeared in the main bankruptcy case and asserted an interest in the Vehicles, may make a claim against the Net Proceeds.

> 9. The Trustee, as the duly appointed chapter 7 trustee of the bankruptcy estate of Auto Wholesale of Boca, LLC, hereby waives all Liens and Interests, including any lien, ownership interest, property interest, security interest, or any other claim (as such term is defined in 11 U.S.C. § 101(5)) or interest of any kind whatsoever in the Net Proceeds and Vehicles. For the avoidance of doubt, the waiver includes any allegation that Auto Wholesale of Boca, LLC was a good faith purchaser of the Vehicles in the ordinary course under Fla. Stat. §§ 671.201(9) and 679.320(1).

> 10. The waiver of the Liens and Interests by the Trustee, as set forth in the preceding paragraph, is binding on Auto Wholesale of Boca, LLC in any future controversy, litigation, or any other dispute arising from or concerning the Net Proceeds. Auto Wholesale of Boca, LLC does not possess any Liens or Interests in the Net Proceeds, including any lien, security interest, or ownership or property interest whatsoever.

[See *Order Granting in Part Expedited Motion to Authorize Sale* [ECF. 618] at [ECF. 694] at ¶¶ 6, 8 and 10]. (the "Bankruptcy Court Sale Order"). The terms "Adversary Proceeding" and "Net Proceeds" shall have the meanings ascribed to them in the Bankruptcy Court Sale Order.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

Case Number: CACE22005125

3. Thus, per the Bankruptcy Court Sale Order, the Net Proceeds were to be held in the registry of the Bankruptcy Court pending the occurrence of either: (i) adjudication by a court of competent jurisdiction as to the validity, priority and extent of interests in the Net Proceeds, or (ii) "consensual resolution between and among the parties whom have appeared in the main bankruptcy case or the Adversary Proceeding and asserted interests therein."

4. On July 26, 2025, the FVP Parties, Franklin Parties, and Hi Bar Parties entered into the consensual resolution (the "Settlement Agreement") contemplated by Bankruptcy Court Sale Order and filed a motion for the Bankruptcy Court to release the Net Proceeds pursuant to the consensual resolution. In response, Avrumi Lubin filed objections in the Bankruptcy Court and argued that Avrumi Lubin was the assignee of Hi Bar's rights and that Hi Bar had no authority to enter into the Settlement Agreement. In support of Avrumi Lubin's argument, he filed of record the Common Interest Agreement and an assignment of Spin's rights to Avrumi Lubin.

5. The Bankruptcy Court initially denied the FVP Parties', Franklin Parties', and Hi Bar Parties' joint motion for release of the funds, and after reconsideration, ultimately denied such motion, on the basis that it lacked subject matter jurisdiction to consider the dispute raised by Lubin regarding the enforceability and termination of the Common Interest Agreement.

6. In doing so the Bankruptcy Court specifically referred the dispute between Avrumi Lubin and Hi Bar to this Court as the court with jurisdiction to "determine which of the Movants and Mr. Lubin have rights in the Net Proceeds. The Court encourages the parties to seek appropriate rulings in the Broward Action." See *Order Denying Expedited Joint Motion*, [ECF. 952] at p 9.

7. This Court reviewed the Common Interest Agreement as well as a letter issued by the attorney for Hi Bar on April 3, 2024 which purported to terminate the Common Interest Agreement and heard detailed argument by counsel for Avrumi Lubin, the Hi Bar Parties, FVP Parties and Franklin Parties.

8. This Court finds that Avrumi Lubin has no rights or standing to interfere with the Hi Bar settlement.

9. The Court finds that Hi Bar had the power and authority to enter into the Settlement Agreement with the FVP Parties and Franklin Parties. Avrumi Lubin, on the other hand, has no right or standing to object to the Settlement Agreement.

Case Number: CACE22005125

Accordingly, and for the reasons stated on the record (court reporter present), which are incorporated herein by reference, it is hereby:

**ORDERED AND ADJUDGED** as follows:

10. This Court is the court of competent jurisdiction to resolve the dispute between Hi Bar and Avrumi Lubin as contemplated by the *Order Denying Expedited Motion* [ECF. 952] issued by the Bankruptcy Court.

11. This Court has reviewed the Common Interest Agreement, the purported termination letter and applicable law and has determined that Hi Bar has the necessary authority to enter into the settlement agreement.

12. The Joint Motion to Endorse Settlement Agreement filed by the FVP Parties, Franklin Parties, and Hi Bar Parties is hereby **GRANTED** in its entirety.

13. Pursuant to the Settlement Agreement between the FVP Parties, Franklin Parties, and Hi Bar Parties, as stated to this Court on the record, the Net Proceeds should be distributed to the trust account of counsel for the FVP Parties.

14. This Court contemplates that this Order shall be filed of record in the Bankruptcy Court.

15. All terms of the Settlement Agreement and any other agreements concerning or related to the distribution of the Net Proceeds shall be furnished to counsel for Mr. Lubin.

16. The FVP Parties, Franklin Parties, and Hi Bar Parties shall serve a copy of the Settlement Agreement on counsel for Avrumi Lubin and the Farache Defendants within five (5) days of this order.

17. The *ore tenus* motion to stay the effect of this order made by counsel for Avrumi Lubin is **DENIED**. As time is of the essence, this order shall have immediate effect and is binding unless vacated by court order or stayed by an appropriate court of appellate jurisdiction.

18. This Court retains jurisdiction to enforce this order as required.

**DONE AND ORDERED** in Chambers at Broward County, Florida on .

Judge Name
**CIRCUIT COURT JUDGE**
DRAFT DRAFT DRAFT DRAFT

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                      RECEIVED NYSCEF: 01/19/2026

# Exhibit K

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                                    RECEIVED NYSCEF: 01/19/2026

## Josh Lubin

| | |
|---|---|
| **From:** | Josh Lubin |
| **Sent:** | Wednesday, December 17, 2025 7:11 PM |
| **To:** | Jerry Breslin; Brad S. Shraiberg; david@softnesslaw.com; Wiegert, Joel L.; Adam Behrendt |
| **Cc:** | Bradford Cohen Law; Michael McMullen; Patrick Dorsey; Stanley Casey; JOEL ARESTY; klee@feenixpartners.com; alankartenlaw@gmail.com; Moore, Melissa; Avery Samet; Jeffrey Chubak; Fred Stevens; Shaya Baum; Ian Williamson; Sherri Sikorski; Alan Crane; Feinman, Heidi A. (USTP); michael@blfmiami.com; jordan@blfmiami.com; jhenry@bloombergindustry.com; USTP.Region21 @usdoj.gov |
| **Subject:** | Demand: Draft Fraud-Upon-the-Court / Record-Correction Motion Due Tomorrow — File by Friday |
| **Importance:** | High |

Joel, Stanley —

This is a formal demand that you prepare and file a motion seeking relief based on fraud upon the court / material record discrepancies involving the Broward docket and related proceedings, including the conduct and submissions of Jerry Breslin, by this Friday.

To be clear: this is not a request for commentary or delay. The record contains material discrepancies between oral rulings and later submitted/entered orders and representations, with downstream consequences. This is exactly the category of issue that warrants immediate corrective relief and an evidentiary hearing.

Deadlines:
    1.    By tomorrow (end of day): I expect a first draft of the motion and proposed order that is actively being worked on (with placeholders if needed for transcript cites/exhibits).
    2.    By Friday: the motion is filed.

Minimum contents of the draft:
- A concise statement of relief sought (vacatur/correction/clarification; evidentiary hearing; sanctions if appropriate).
- Side-by-side identification of the oral ruling(s) vs. the entered language/representation(s).
- A short materiality section: how the discrepancy was relied upon and what prejudice resulted.
- Exhibit list (entered order(s), transcript excerpts, email chain / submission history if available).

Client control / review:
Nothing is to be filed without my prior review and written approval. I expect to be copied on all drafts and supporting materials.

If either of you contends you will not file such a motion, then state that position in writing by tomorrow, with the legal basis and the specific record you contend defeats the motion. "Not my kind of work" or "not an emergency" is not an answer to a record-based discrepancy that affects my rights and ongoing enforcement posture.

1

Josh
communicating in my personal capacity only
without waiver of any rights or remedies

Get Outlook for iOS

---

**From:** Josh Lubin <josh@spincapital.com>
**Sent:** Wednesday, December 17, 2025 3:46:52 PM
**To:** Jerry Breslin <jb@jsjb.law>; Brad S. Shraiberg <bss@slp.law>; david@softnesslaw.com <david@softnesslaw.com>; Wiegert, Joel L. <joel.wiegert@kutakrock.com>; Adam Behrendt <jbehrendt@bodmanlaw.com>
**Cc:** Bradford Cohen Law <service@floridajusticefirm.com>; Michael McMullen <michael@floridajusticefirm.com>; Patrick Dorsey <pdorsey@slp.law>; Stanley Casey <scasey@sqcaseylaw.com>; JOEL ARESTY <aresty@mac.com>; klee@feenixpartners.com <klee@feenixpartners.com>; alankartenlaw@gmail.com <alankartenlaw@gmail.com>; Moore, Melissa <mmoore@bodmanlaw.com>; Avery Samet <asamet@aminillc.com>; Jeffrey Chubak <jchubak@aminillc.com>; Fred Stevens <fstevens@klestadt.com>; Shaya Baum <sbaum@winglakecp.com>; Ian Williamson <iwilliamson@manteselaw.com>; Sherri Sikorski <ssikorski@manteselaw.com>; Alan Crane <acrane@furrcohen.com>; Feinman, Heidi A. (USTP) <heidi.a.feinman@usdoj.gov>; michael@blfmiami.com <michael@blfmiami.com>; jordan@blfmiami.com <jordan@blfmiami.com>; jhenry@bloombergindustry.com <jhenry@bloombergindustry.com>; USTP.Region21@usdoj.gov <USTP.Region21@usdoj.gov>
**Subject:** Immediate Action Required — Evidence of Fraud Upon the Court in Broward and Related Dockets

Joel, Stanley —

This is not a drill, and it is not a joke.

There is clear, record-based evidence across the Broward docket—and related proceedings—that supports a claim of fraud upon the court involving Jerry Breslin. I am not talking about advocacy disputes or sharp practice. I am talking about material discrepancies between what the court ruled on the record and what was later submitted, entered, and relied upon, with concrete downstream consequences.

You both know the standard. You also know that when evidence rises to this level, counsel's duties change.

As my counsel, you have a fiduciary duty to protect my interests, which includes:
•        Investigating and evaluating evidence of fraud upon the court when it appears on the face of the docket and transcripts;
•        Advising me promptly and candidly about available remedies (including Rule 1.540 relief, sanctions, and corrective orders); and
•        Disclosing material misconduct to the court when required, rather than ignoring it or minimizing it as "process issues."

The Broward record contains:
•        Court rulings on the transcript that do not authorize language later inserted into orders;
•        Entered orders that materially deviate from the oral rulings; and
•        Reliance on those deviations to justify enforcement actions and impair rights.

That combination is exactly what courts mean by fraud upon the court. Treating this as noise, delay, or a distraction—rather than as an emergency requiring immediate, coordinated advice—is not acceptable.

2

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007
RECEIVED NYSCEF: 01/19/2026

I expect, immediately:

1. A coordinated assessment from both of you addressing the fraud-upon-the-court issue head-on;

2. Clear advice on corrective action and disclosure obligations; and

3. Confirmation of how and when this will be presented to the court to protect my interests.

If either of you believes this does not rise to fraud upon the court, then say so plainly and explain why in writing, with reference to the transcripts and orders. Silence, deflection, or delay is not an option here.

For clarity, I am copying the Regional Office solely to preserve the record regarding unresolved issues involving missing assets, lack of accounting, and discrepancies between oral rulings and entered orders in the Broward matter.

I am not seeking advocacy by email. I am seeking appropriate review and guidance given the seriousness of the record

Josh
communicating in my personal capacity only
without waiver of any rights or remedies

Get Outlook for iOS

---

**From:** Josh Lubin <josh@spincapital.com>
**Sent:** Wednesday, December 17, 2025 1:28:53 PM
**To:** Jerry Breslin <jb@jsjb.law>; Brad S. Shraiberg <bss@slp.law>; david@softnesslaw.com <david@softnesslaw.com>; Wiegert, Joel L. <joel.wiegert@kutakrock.com>; Adam Behrendt <jbehrendt@bodmanlaw.com>
**Cc:** Bradford Cohen Law <service@floridajusticefirm.com>; Michael McMullen <michael@floridajusticefirm.com>; Patrick Dorsey <pdorsey@slp.law>; Stanley Casey <scasey@sqcaseylaw.com>; JOEL ARESTY <aresty@mac.com>; klee@feenixpartners.com <klee@feenixpartners.com>; alankartenlaw@gmail.com <alankartenlaw@gmail.com>; Moore, Melissa <mmoore@bodmanlaw.com>; Avery Samet <asamet@aminllc.com>; Jeffrey Chubak <jchubak@aminllc.com>; Fred Stevens <fstevens@klestadt.com>; Shaya Baum <sbaum@winglakecp.com>; Ian Williamson <iwilliamson@manteselaw.com>; Sherri Sikorski <ssikorski@manteselaw.com>; Alan Crane <acrane@furrcohen.com>; Feinman, Heidi A. (USTP) <heidi.a.feinman@usdoj.gov>; michael@blfmiami.com <michael@blfmiami.com>; jordan@blfmiami.com <jordan@blfmiami.com>
**Subject:** Broward Motion to Stay Enforcement (Rule 1.540) — Please tighten + add exhibits (email chain)

Stanley, Joel —

I just prepared a Broward emergency motion to stay enforcement of the final judgment pending Rule 1.540 relief. I'm sending it to you to clean up and make court-ready and to add a few items that will materially strengthen it.

What I need you to do (please):

1. Replace the placeholder caption with the exact Broward case caption and confirm the correct division/judge/case number.

2. Add Florida authority for:

• trial court's inherent power to stay enforcement pending post-judgment (Rule 1.540) relief, and

- the Court's discretion to waive/reduce bond (or allow alternative/nominal security) here because this is not a stay pending appeal and because the creditor claims to be secured.

3. Tighten the bond section to minimize bond exposure:
   - emphasize creditor's claimed ~$14MM collateral as security if true,
   - argue that a full bond would effectively deny meaningful Rule 1.540 review,
   - propose nominal/alternative security only if the Court insists.

4. Add the supporting materials we discussed:
   - a short Affidavit/Declaration from me re: the repeated collateral claims and the fact that they have refused to identify/trace/substantiate any collateral;
   - an Exhibit list with the key documents; and
   - attach the email chain showing the requests for collateral info / their non-response (or evasive response).

5. Add a clean Certificate of Service for Florida e-filing.

Attachments:
   - Draft Motion (Word)
   - Email chain re: collateral disclosure requests / non-disclosure (to be marked as exhibits)

Goal / timing:
I'd like a polished version I can file ASAP as an emergency stay, coordinated with the Rule 1.540 motion so the Court sees this as a narrow "preserve the status quo" request—not a merits re-argument.

If either of you sees any landmines (captioning, posture, bond issues, or how best to frame the collateral non-disclosure), flag them and propose the cleanest fix.

Thank you,
Avrumi ("Josh") Lubin

Get Outlook for iOS

From: Josh Lubin <josh@spincapital.com>
Sent: Wednesday, December 17, 2025 11:20:36 AM
To: Jerry Breslin <jb@jsjb.law>; Brad S. Shraiberg <bss@slp.law>; david@softnesslaw.com <david@softnesslaw.com>; Wiegert, Joel L. <joel.wiegert@kutakrock.com>; Adam Behrendt <jbehrendt@bodmanlaw.com>
Cc: Bradford Cohen Law <service@floridajusticefirm.com>; Michael McMullen <michael@floridajusticefirm.com>; Patrick Dorsey <pdorsey@slp.law>; Stanley Casey <scasey@sqcaseylaw.com>; JOEL ARESTY <aresty@mac.com>; klee@feenixpartners.com <klee@feenixpartners.com>; alankartenlaw@gmail.com <alankartenlaw@gmail.com>; Moore, Melissa <mmoore@bodmanlaw.com>; Avery Samet <asamet@aminillc.com>; Jeffrey Chubak <jchubak@aminillc.com>; Fred Stevens <fstevens@klestadt.com>; Shaya Baum <sbaum@winglakecp.com>; Ian Williamson <iwilliamson@manteselaw.com>; Sherri Sikorski <ssikorski@manteselaw.com>; Alan Crane <acrane@furrcohen.com>; Feinman, Heidi A. (USTP) <heidi.a.feinman@usdoj.gov>; michael@blfmiami.com <michael@blfmiami.com>; jordan@blfmiami.com <jordan@blfmiami.com>
Subject: Immediate Action Required — Emergency Motion Before Chief Judge Kimball (Deadline: 5:00 PM Tomorrow)

Stanley, Joel Aresty,

I need you to prepare and be ready to file an emergency motion before Chief Judge Eric Kimball in the Excell Auto bankruptcy by 5:00 PM tomorrow if FVP and Franklin do not agree to a standstill and immediate production.

4

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                      RECEIVED NYSCEF: 01/19/2026

This is no longer discretionary. The record is now clear, and continued inaction risks irreversible harm.

What has happened (and is now documented):

- FVP represented to the Broward court in April 2022 that approximately $14MM in vehicles/collateral existed.
- Those vehicles (and/or their proceeds) remain unaccounted for.
- In or around May 2025, I served discovery requests seeking information concerning these vehicles and their disposition. FVP and Franklin did not comply with those discovery requests.
- I separately served discovery requests seeking the same vehicle-related information from the Excell Auto trustee, and those requests were likewise not complied with.
- I have now again formally demanded production of deal jackets, bills of sale, transfer records, and a certified accounting covering all vehicles in the Excell/Karma (Palm Beach & Broward) universe, not just the $14MM figure.
- FVP and Franklin have not agreed to a standstill, despite the obvious bankruptcy nexus.
- FVP has noticed criminal defense counsel in the Broward action.
- The U.S. Trustee is copied and on notice that estate-related vehicle assets and proceeds remain unresolved.

This establishes a clear pattern: repeated requests for basic vehicle and collateral information have gone unanswered while enforcement activity continues outside the bankruptcy court.

The motion I am directing you to prepare:

An EMERGENCY MOTION TO STAY ALL ENFORCEMENT AND RELATED PROCEEDINGS AND TO PRESERVE ESTATE-RELATED VEHICLE ASSETS AND PROCEEDS, to be filed in the Excell Auto bankruptcy before Chief Judge Eric Kimball.

The motion must seek the following relief:

1. An immediate stay of:
   - Enforcement of judgments;
   - Receivership actions;
   - Collection activity; and
   - Any further disposition of vehicles or proceeds

to the extent related to Excell Auto, Karma of Palm Beach, and Karma of Broward vehicle collateral.

2. A finding that:
   - There are serious, unresolved questions concerning missing vehicles and proceeds represented to exist;
   - Those vehicles and proceeds bear directly on the Excell Auto bankruptcy estate;
   - Prior discovery efforts seeking this information were not complied with; and
   - Allowing enforcement to continue while these issues remain unresolved risks irreparable harm and dissipation of potential estate assets.

3. An order requiring:
   - Immediate production of deal jackets, bills of sale, transfer records, title documents, and a certified accounting identifying:
      - What vehicles existed;
      - Where they went;
      - How much was received;

- Whether proceeds are held in escrow or otherwise.
4. Alternatively, at minimum:
- A temporary status-quo stay and an expedited evidentiary or status hearing before Judge Kimball.

Critical issues the motion must emphasize (without over-arguing):
- Contradictory positions taken by FVP and Franklin across courts regarding ownership, control, and disposition of vehicle collateral;
- The fact that vehicles alleged to exist cannot be traced;
- That multiple discovery requests over an extended period have gone unanswered;
- That these vehicles and proceeds implicate bankruptcy estate property, creditor rights, and court supervision; and
- Due process and rights issues created by continued enforcement while ownership and disposition of collateral remain unresolved.

Exhibits:
- My initial standstill request;
- My follow-up;
- The clarification expanding scope to all Excell/Karma vehicles;
- Any prior discovery requests relating to vehicle collateral;
- Relevant excerpts of the April 2022 receiver motion referencing the ~$14MM in vehicles.

Timing:
- If FVP/Franklin do not expressly agree to a standstill by tomorrow afternoon, file the emergency motion by 5:00 PM.
- I do not want further delay, informal outreach, or partial measures. This issue must be put squarely before Judge Kimball immediately.

This motion should be tight, forceful, and jurisdictionally focused. We are not asking Judge Kimball to decide ultimate ownership today — we are asking him to preserve the status quo, prevent further harm, and assert bankruptcy court control over estate-related vehicle assets and proceeds.

Please confirm today that you are preparing this filing and that it will be ready to go if the parties do not comply.

Josh Lubin
Spin Capital

Get Outlook for iOS

---

From: Josh Lubin <josh@spincapital.com>
Sent: Wednesday, December 17, 2025 11:02:55 AM
To: Jerry Breslin <jb@jsjb.law>; Brad S. Shraiberg <bss@slp.law>; david@softnesslaw.com <david@softnesslaw.com>; Wiegert, Joel L. <joel.wiegert@kutakrock.com>; Adam Behrendt <jbehrendt@bodmanlaw.com>
Cc: Bradford Cohen Law <service@floridajusticefirm.com>; Michael McMullen <michael@floridajusticefirm.com>; Patrick Dorsey <pdorsey@slp.law>; Stanley Casey <scasey@sqcaseylaw.com>; JOEL ARESTY <aresty@mac.com>; klee@feenixpartners.com <klee@feenixpartners.com>; alankartenlaw@gmail.com <alankartenlaw@gmail.com>; Moore, Melissa <mmoore@bodmanlaw.com>; Avery Samet <asamet@aminillc.com>; Jeffrey Chubak <jchubak@aminillc.com>; Fred Stevens <fstevens@klestadt.com>; Shaya Baum <sbaum@winglakecp.com>; Ian

6

Williamson <iwilliamson@manteselaw.com>; Sherri Sikorski <ssikorski@manteselaw.com>; Alan Crane <acrane@furrcohen.com>; Feinman, Heidi A. (USTP) <heidi.a.feinman@usdoj.gov>; michael@blfmiami.com <michael@blfmiami.com>; jordan@blfmiami.com <jordan@blfmiami.com>
**Subject:** Clarification re scope of collateral records and vehicle disposition

Jerry, David, Joel, Brad, and Adam,

I want to clarify the scope of my prior request so there is no misunderstanding.

The request for a standstill and production is not limited to the approximately $14 million in vehicles/collateral referenced in FVP's April 2022 receiver motion. It applies to all vehicles that were potentially owned, controlled, pledged, or claimed as collateral by Excell Auto and its affiliated entities, including Karma of Palm Beach and Karma of Broward.

This includes, without limitation:
- Any vehicles held in the name of Excell Auto, Karma of Palm Beach, Karma of Broward, or any affiliated or related entity;
- Any vehicles claimed as collateral, inventory, or proceeds in any financing, receivership, or enforcement action;
- Any vehicles that were transferred, sold, reassigned, or otherwise disposed of, including transfers to insiders, affiliates, third parties, or related entities; and
- Any vehicles that may have been improperly or fraudulently transferred, together with the proceeds of any such transfers and their current location or disposition.

Accordingly, the requested production encompasses all deal jackets, bills of sale, transfer documents, title records, disposition records, and certified explanations/accountings sufficient to identify what vehicles existed within the Excell/Karma (Palm Beach and Broward) universe and where those vehicles, or their proceeds, ultimately went.

As noted previously, these issues bear directly on matters arising in the Excell Auto bankruptcy proceeding and the administration of estate assets, and a temporary standstill pending this production remains the appropriate and efficient course.

Please confirm whether FVP and Franklin will agree to a standstill on that basis, or advise if you intend to oppose and have the issue addressed by motion.

Regards,
Josh Lubin
Spin Capital

Get Outlook for iOS

---

**From:** Josh Lubin <josh@spincapital.com>
**Sent:** Wednesday, December 17, 2025 10:52:05 AM
**To:** Jerry Breslin <jb@jsjb.law>; Brad S. Shraiberg <bss@slp.law>; david@softnesslaw.com <david@softnesslaw.com>; Wiegert, Joel L. <joel.wiegert@kutakrock.com>; Adam Behrendt <jbehrendt@bodmanlaw.com>
**Cc:** Bradford Cohen Law <service@floridajusticefirm.com>; Michael McMullen <michael@floridajusticefirm.com>; Patrick Dorsey <pdorsey@slp.law>; Stanley Casey <scasey@sqcaseylaw.com>; JOEL ARESTY <aresty@mac.com>; klee@feenixpartners.com <klee@feenixpartners.com>; alankartenlaw@gmail.com <alankartenlaw@gmail.com>;

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                    RECEIVED NYSCEF: 01/19/2026

Moore, Melissa <mmoore@bodmanlaw.com>; Avery Samet <asamet@aminillc.com>; Jeffrey Chubak <jchubak@aminillc.com>; Fred Stevens <fstevens@klestadt.com>; Shaya Baum <sbaum@winglakecp.com>; Ian Williamson <iwilliamson@manteselaw.com>; Sherri Sikorski <ssikorski@manteselaw.com>; Alan Crane <acrane@furrcohen.com>; Feinman, Heidi A. (USTP) <heidi.a.feinman@usdoj.gov>; michael@blfmiami.com <michael@blfmiami.com>; jordan@blfmiami.com <jordan@blfmiami.com>
Subject: Re: Follow-up: standstill pending collateral production

Added Michael & Jordan here (who do not represent me). Upon information and belief, they're looking for the same information.

Get Outlook for iOS

From: Josh Lubin <josh@spincapital.com>
Sent: Wednesday, December 17, 2025 10:43:03 AM
To: Jerry Breslin <jb@jsjb.law>; Brad S. Shraiberg <bss@slp.law>; david@softnesslaw.com <david@softnesslaw.com>; Wiegert, Joel L. <joel.wiegert@kutakrock.com>; Adam Behrendt <jbehrendt@bodmanlaw.com>
Cc: Bradford Cohen Law <service@floridajusticefirm.com>; Michael McMullen <michael@floridajusticefirm.com>; Patrick Dorsey <pdorsey@slp.law>; Stanley Casey <scasey@sqcaseylaw.com>; JOEL ARESTY <aresty@mac.com>; klee@feenixpartners.com <klee@feenixpartners.com>; alankartenlaw@gmail.com <alankartenlaw@gmail.com>; Moore, Melissa <mmoore@bodmanlaw.com>; Avery Samet <asamet@aminillc.com>; Jeffrey Chubak <jchubak@aminillc.com>; Fred Stevens <fstevens@klestadt.com>; Shaya Baum <sbaum@winglakecp.com>; Ian Williamson <iwilliamson@manteselaw.com>; Sherri Sikorski <ssikorski@manteselaw.com>; Alan Crane <acrane@furrcohen.com>; Feinman, Heidi A. (USTP) <heidi.a.feinman@usdoj.gov>
Subject: Follow-up: standstill pending collateral production

Jerry, David, Joel, Brad, and Adam,

Following up on my email below. Please confirm by [tomorrow / Friday at 5:00 p.m. ET] whether FVP and Franklin will agree to a temporary standstill on enforcement pending production of the collateral records and certified explanation/accounting referenced below.

**These vehicles and any related proceeds bear directly on issues arising in the Excell Auto bankruptcy proceeding and the administration of estate assets.**

If you will not agree, please state that clearly so the issue can be addressed promptly by motion in the related proceedings.

Regards,
Josh Lubin
Spin Capital

Get Outlook for iOS

From: Josh Lubin
Sent: Wednesday, December 17, 2025 10:39:16 AM
To: Jerry Breslin <jb@jsjb.law>; Brad S. Shraiberg <bss@slp.law>; david@softnesslaw.com <david@softnesslaw.com>; Wiegert, Joel L. <joel.wiegert@kutakrock.com>; Adam Behrendt <jbehrendt@bodmanlaw.com>
Cc: Bradford Cohen Law <service@floridajusticefirm.com>; Michael McMullen <michael@floridajusticefirm.com>;

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 788 of 976

Patrick Dorsey <pdorsey@slp.law>; Stanley Casey <scasey@sqcaseylaw.com>; JOEL ARESTY <aresty@mac.com>; klee@feenixpartners.com <klee@feenixpartners.com>; alankartenlaw@gmail.com <alankartenlaw@gmail.com>; Moore, Melissa <mmoore@bodmanlaw.com>; Avery Samet <asamet@aminillc.com>; Jeffrey Chubak <jchubak@aminillc.com>; Fred Stevens <fstevens@klestadt.com>; Shaya Baum <sbaum@winglakecp.com>; Ian Williamson <iwilliamson@manteselaw.com>; Sherri Sikorski <ssikorski@manteselaw.com>; Alan Crane <acrane@furrcohen.com>; Feinman, Heidi A. (USTP) <heidi.a.feinman@usdoj.gov>
**Subject:** Request for Standstill Pending Production of Collateral Records

Jerry, David, Joel, Brad, and Adam,

I'm writing to formally request that FVP and Franklin agree to maintain a temporary standstill on enforcement of the judgment while core factual issues—already implicated across related proceedings—are addressed on a documented record.

Specifically, any further enforcement should be stayed until FVP and Franklin produce:

1.      The complete deal jackets, together with all bills of sale and transfer records for the missing vehicles, and a certified explanation detailing where those vehicles went, how they were disposed of, the amounts received (if any), whether any proceeds are held in escrow, and any other records or details relating to the disposition of that collateral; and

2.      A certified accounting identifying what occurred to the approximately $14 million in vehicles/collateral that FVP represented to the Broward court in its April 2022 receiver motion.

These materials are foundational. Proceeding with enforcement while the record remains incomplete invites unnecessary motion practice and further complications, particularly where the disposition and control of collateral remain unexplained.

In addition, FVP has noticed criminal defense counsel in the Broward action. In light of that development, it is both reasonable and prudent to ensure that enforcement activity does not continue while these collateral and transactional issues remain outstanding.

This request is not made to delay. It is to preserve the status quo, avoid needless expense, and ensure the issues are addressed in an orderly way. If FVP and Franklin are confident in their record, production should resolve this quickly.

Please let me know by return email whether you will agree to a temporary standstill on that basis (or, alternatively, a defined standstill period such as 60–90 days or until the next material ruling/hearing), or whether you prefer this be addressed formally by motion.

I am copying the U.S. Trustee to ensure there is a clear record that the existence, disposition, and proceeds of the approximately $14 million in vehicle collateral represented to the Broward court remain unaccounted for and unresolved.

Regards,
Josh Lubin
Spin Capital

Get Outlook for iOS

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007    RECEIVED NYSCEF: 01/19/2026

# Exhibit L

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

In re:

EXCELL AUTO GROUP, INC.

    Debtor.

FILED-USBC, FLS-MIA
'26 JAN 7 PM 1:28

Case No. 22-12790-EPK
Chapter 7

_____/

NICOLE TESTA MEHDIPOUR,
as Chapter 7 Trustee for
Excell Auto Group, Inc.,

    Plaintiff,

v.

Adv. Pro. No. 23-01132-EPK

HI BAR CAPITAL, LLC, et al.,

    Defendants.

_____/

### NOTICE OF FILING DECLARATIONREGARDING PRESERVATION NOTICE
### AND RESPONSE

**PLEASE TAKE NOTICE** that Defendant Avrumi Lubin, individually and as

principal of Spin Capital LLC, hereby files the Declaration of Avrumi Lubin Regarding

Preservation Notice and Response, attached hereto as Exhibit A.

This filing is made solely to memorialize notice provided, responses received, and

positions taken regarding preservation of potentially relevant records. No relief is requested by

this Notice.

Dated: January 7 2026

Respectfully submitted,

Josh (Avrumi) Lubin, Defendant, Pro Se
(Individual Capacity Only)
1460 Arboretum Pkwy
Lakewood, NJ 08701
Email: josh@spincapital.com
Phone: (732) 608-4905

1

Case 23-01132-EPK   Doc 362   Filed 01/07/26   Page 2 of 8

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Notice of Filing

and attached Declaration foregoing to be served via the Court's CM/ECF system upon all

counsel of record on January 7, 2026.

Josh (Avrumi) Lubin, Defendant, Pro Se
(Individual Capacity Only)
1460 Arboretum Pkwy
Lakewood, NJ 08701
Email: josh@spincapital.com
Phone: (732) 608-4905

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007    RECEIVED NYSCEF: 01/19/2026

# EXHIBIT A

**Josh Lubin**

| | |
|---|---|
| **From:** | Josh Lubin |
| **Sent:** | Monday, January 5, 2026 4:01 PM |
| **To:** | Feinman, Heidi A. (USTP) |
| **Cc:** | oig.hotline@usdoj.gov |
| **Subject:** | Formal Escalation — Preservation Obligations and Record Integrity |

**Importance:** High

Ms. Feinman,

Your latest response confirms that you are declining to implement or facilitate any preservation measures in response to my written notice, and that you are refusing to identify any appropriate DOJ or UST contact through whom such preservation should be addressed.

That position is untenable.

Preservation obligations are not triggered by whether an office subjectively views itself as "involved," nor by whether a party has yet retained counsel. They arise when there is reasonable anticipation of litigation, review, or judicial inquiry, and they attach to **records that may be relevant to matters already before the Court or reasonably foreseeable proceedings**—including inter-agency communications, oversight activity, referrals, analyses, and decisions taken or not taken.

You have now stated, repeatedly, that:
- no litigation hold exists,
- no action will be taken in response to written notice,
- and that no further response will be provided.

If it is your position that the United States Trustee Program—and specifically the Miami U.S. Trustee's Office—**possesses no records responsive to the scope of the preservation notice,** that should be stated clearly and unequivocally.
If that is not your position, then preservation is required, and refusing to implement it after notice raises serious record-integrity concerns.

I am not asking you to concede party status, adjudicate merits, or take any litigation position. I am seeking clarity as to whether potentially relevant government records are being preserved or allowed to be destroyed after notice.

Because your responses disclaim responsibility without addressing that core question, and because you have indicated you will not respond further, I am escalating this issue to ensure the record accurately reflects what has occurred.

This communication is intended to memorialize that:
1. formal written notice was provided;
2. preservation was requested;
3. the request was rejected without identification of an alternative mechanism; and

1

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                           RECEIVED NYSCEF: 01/19/2026

Case 23-01132-EPK   Doc 362   Filed 01/07/26   Page 5 of 8

4.      no clarification was provided as to the existence or non-existence of responsive records.

That record will stand on its own.

Josh
Avruml Lubin

Get Outlook for iOS

---

From: Feinman, Heidi A. (USTP) <Heidi.A.Feinman@usdoj.gov>
Sent: Monday, January 5, 2026 3:30:33 PM
To: Josh Lubin <josh@spincapital.com>
Subject: RE: IMMEDIATE DOJ-WIDE LITIGATION HOLD & PRESERVATION DIRECTIVE — NO EXCEPTIONS

Mr. Lubin:

Again if you are making a request for a "litigation hold" or some other retention of information by the the United States Trustee Program or any other DOJ agency, then it needs to be done in an appropriate manner and and to the appropriate parties. An email to me is not sufficient and will not result in anything.
I encourage as I have in the past to please obtain counsel to assist you.

I will not respond further regarding this email.

*Heidi A. Feinman*
Assistant United States Trustee
Office of United States Trustee
Department of Justice
Email: *Heidi.A.Feinman@usdoj.gov*
Telephone (305) 536-7472

---

From: Josh Lubin <josh@spincapital.com>
Sent: Monday, January 5, 2026 5:27 PM
To: Feinman, Heidi A. (USTP) <Heidi.A.Feinman@usdoj.gov>
Subject: [EXTERNAL] Re: IMMEDIATE DOJ-WIDE LITIGATION HOLD & PRESERVATION DIRECTIVE — NO EXCEPTIONS
Importance: High

Ms. Feinman,

Your response reflects a fundamental misunderstanding of the purpose and legal effect of a preservation notice.

The litigation hold and preservation directive was not predicated on the Miami U.S. Trustee's Office being a named litigant, nor on the existence of a currently pending action styled against that office.
Preservation obligations arise upon reasonable anticipation of litigation or review, and they extend to

2

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007 RECEIVED NYSCEF: 01/19/2026

Case 23-01132-EPK   Doc 362   Filed 01/07/26   Page 6 of 8

records that may be relevant to matters before the Court, including inter-agency communications, oversight activity, referrals, analyses, and decisions taken or not taken.

Whether the Miami U.S. Trustee's Office views itself as "involved" is not determinative. The question is whether the office possesses, controls, or has access to information potentially relevant to ongoing or reasonably foreseeable proceedings involving Spin Capital, related estates, or issues already before Judge Kimball. If so, preservation duties attach as a matter of law.

To be clear:
- This notice was issued to ensure preservation of potentially relevant materials across DOJ and UST components;
- It does not require your office to concede party status;
- It does not require a determination on the merits;
- It does require that records not be destroyed, altered, or lost once notice is given.

Your statement that "no litigation hold exists" is concerning, as it suggests that preservation has not been implemented despite formal written notice. If your position is that the Miami U.S. Trustee's Office does not possess any records responsive to the scope described, that should be stated explicitly. Otherwise, the appropriate course is preservation, not dismissal.

Please clarify, in writing:
1. Whether the Miami U.S. Trustee's Office possesses or controls any records falling within the scope of the preservation notice previously sent; and
2. Whether steps have been taken to ensure that any such materials are preserved pending further direction.

This clarification is necessary to ensure the record is accurate and to avoid any misunderstanding regarding preservation obligations going forward.

Josh
Avrumi Lubin

Get Outlook for iOS

---

From: Feinman, Heidi A. (USTP) <Heidi.A.Feinman@usdoj.gov>
Sent: Monday, January 5, 2026 3:22:24 PM
To: Josh Lubin <josh@spincapital.com>
Subject: RE: IMMEDIATE DOJ-WIDE LITIGATION HOLD & PRESERVATION DIRECTIVE — NO EXCEPTIONS

Mr. Lubin:
The Miami United States Trustee's Office is not and has not been involved in any litigation with you or Spin Capital, LLC before any Court and no litigation hold exists.
To the extent you believe otherwise, you will need to contact the appropriate parties in the appropriate manner.
To the extent you have litigation with other agencies in the Department of Justice, you will need to contact them in the appropriate manner.
This email is insufficient.

3

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                                      RECEIVED NYSCEF: 01/19/2026

*Heidi A. Feinman*
Assistant United States Trustee
Office of United States Trustee
Department of Justice
Email: *Heidi.A.Feinman@usdoj.gov*
Telephone (305) 536-7472

---

**From:** Josh Lubin <josh@spincapital.com>
**Sent:** Friday, January 2, 2026 9:02 PM
**To:** Feinman, Heidi A. (USTP) <Heidi.A.Feinman@usdoj.gov>
**Cc:** Feedback, Civil <cfeedbac@CIV.USDOJ.GOV>; NSDFOIA (NSD) <NSDFOIA@usdoj.gov>; JMDFoia (JMD) <Ex_JMDFoia@jmd.usdoj.gov>; Jeffrey Chubak <jchubak@aminllc.com>; Avery Samet <asamet@aminllc.com>; JOEL ARESTY <aresty@mac.com>; Stanley Casey <scasey@sqcaseylaw.com>; Browndorf Eric A. <ebrowndorf@cooperlevenson.com>; Rubley William <wrubley@cooperlevenson.com>; Steve Wells <steve@wellspc.com>; Will Parsons <will@wellspc.com>; Ian Williamson <iwilliamson@manteselaw.com>; Sherri Sikorski <ssikorski@manteselaw.com>; Mack Wilson <mack@wilson-pllc.com>; Eric Lockridge <eric.lockridge@keanmiller.com>; Division, Criminal (CRM) <Criminal.Division@usdoj.gov>; antitrust@justice.gov
**Subject:** [EXTERNAL] RE: IMMEDIATE DOJ-WIDE LITIGATION HOLD & PRESERVATION DIRECTIVE — NO EXCEPTIONS
**Importance:** High

Heidi,

This email constitutes **a formal, immediate, and non-negotiable litigation hold and preservation directive.** You are hereby directed to **ensure this hold is issued, enforced, and confirmed across every DOJ department, component, office, task force, and subdivision nationwide,** without exception.

This preservation obligation applies **immediately** and covers all **records in any form,** whether maintained centrally or individually, including but not limited to: emails, texts, messaging apps (Slack, Teams, Signal, WhatsApp, iMessage), call logs, voicemails, notes, drafts, memoranda, internal communications, metadata, audit logs, databases, shared drives, cloud storage, backups, personal devices used for government business, and any third-party or contractor-maintained systems.

The scope expressly includes **any material referencing or relating to me, Spin Capital LLC, affiliated entities, related litigations, investigations, referrals, inter-agency communications, internal deliberations, analyses, instructions, preservation decisions, or decisions not to act.** This includes communications **between DOJ components,** with **U.S. Trustees, courts, outside counsel, regulators, law enforcement, or private parties.**

No deletion, overwriting, auto-purging, alteration, concealment, migration without retention, or "routine" records management is permitted. **Preservation overrides all ordinary retention schedules.** Failure to preserve—even inadvertently—will be treated as **spoliation** and addressed accordingly.

I expect you to:

1. **Distribute this hold DOJ-wide** (all divisions, districts, components, and offices nationwide);

4

2. **Confirm in writing** that distribution has occurred;

3. **Confirm the mechanism of enforcement** (who issued it, how it was implemented, and how compliance is monitored);

4. **Identify a point of contact** responsible for DOJ-wide compliance.

This notice is issued to create a clear and permanent record. Nothing in this directive waives any rights, remedies, or privileges. All rights are expressly reserved.

**This notice is re-sent solely to correct a non-routable Antitrust Division address; all other recipients received the original transmission.**

Please confirm compliance **promptly.**

Josh
Avrumi Lubin

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007    RECEIVED NYSCEF: 01/19/2026

# Exhibit M

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

EXECUTION COPY

## COMMON INTEREST AND JOINT LITIGATION AGREEMENT

This COMMON INTEREST AND JOINT LITIGATION AGREEMENT (this "Agreement") is effective as of January 28, 2022 (the "Effective Date"), by and among SPIN CAPITAL, LLC, a New Jersey limited liability company ("Spin Capital"), and HI BAR CAPITAL, LLC, a New York limited liability company ("Hi Bar"). Spin Capital and Hi Bar shall be referred to each as a "Party" and collectively as "Parties."

## RECITALS

A.    On January 28, 2022, Hi Bar initiated an action captioned Hi Bar Capital, LLC v. Excell Auto Group, Inc., et al., in the Supreme Court of the State of New York, County of Kings (the "NY Court"), as Index No. 502846/2022 (the "NY Litigation").

B.    On May 2, 2022, Hi Bar initiated an action captioned Hi Bar Capital, LLC v. Karma of Palm Beach Inc., et al., in The Circuit Court of The Seventeenth Judicial Circuit, Broward County, Florida (the "Florida Court"), as Case No. 22-006401 (the "FL Litigation").

C.    In addition to Excell Auto Group, Inc. and Karma of Palm Beach Inc., the defendants in the FL Litigation include each of the following (collectively with Excell Auto Group, Inc. and Karma of Palm Beach Inc., "Defendants"): Automotive Service Systems, Inc.; Kz Consultants, Inc.; Miss Kris, LLC; Excell Auto Leasing Inc.; Excell Auto Wholesale Inc.; Dealer Souq USA LLC; Eag Wholesale LLC; Karma of Broward, Inc.; Lavish Hero Fund Inc.; Apple 3 Investments, Inc.; KZ Consultants Inc.; Excell Auto Sport And Service, Inc.; FVP Opportunity Fund III, LP; FVP Investments, LLC; FVP Servicing, LLC; Franklin Capital Group, LLC; Franklin Capital Management, LLC; Auto Wholesale of Boca, LLC; MMS Ultimate Services, Inc.; and Moshe Farache.

D.    In addition to the NY Litigation and the FL Litigation, one of the initial Defendants in the FL Litigation, Auto Wholesale of Boca, LLC ("AWB Debtor"), has filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida, Case No. 22-15627-EPK (the "Bankruptcy Case"). In connection with the Bankruptcy Case, Hi Bar, along with FVP Opportunity Fund III, LP, FVP Investments, LLC, and FVP Servicing, LLC (collectively, "FVP Entities"), initiated an adversary proceeding against AWB Debtor in the Bankruptcy Case, Adversary Case No. 22-01218-EPK (the "Adversary Proceeding," collectively with the Bankruptcy Case, the "Bankruptcy Proceedings").

E.    In conjunction with the NY Litigation, FL Litigation and the Bankruptcy Proceedings, (1) some or all of Defendants were indebted and liable to Hi Bar in the aggregate amount of $3,227,739.73 (the "Hi Bar MCA/Obligation") as of April 28, 2022, and (2) certain Defendants granted to Hi Bar a lien and security interest in certain vehicles, including those described on Schedule 1 hereto (the "Vehicle Collateral"), which secured the Hi Bar MCA/Obligation (the "Hi Bar Secured Claim").

F.    Hi Bar possesses or may possess claims, causes of action, and can seek certain relief against Defendants, and any entities affiliated with or owned by Defendants (collectively, "Litigation Parties") resulting or related to the Hi Bar MCA/Obligation, the Hi Bar Secured Claims, and the Vehicle Collateral, including, inter alia, claims, causes of action, and motion practice seeking relief for foreclosure, replevin, fraudulent transfer and avoidance claims arising under the

Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 800 of 976

DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and applicable state and federal law. The foregoing claims, causes of action, and motion practice seeking relief against Litigation Parties that Hi Bar may have or may be able to assert against Litigation Parties in the NY Litigation, the FL Litigation, the Bankruptcy Proceedings, shall collectively be referred to as the "Hi Bar Claims."

G.      In addition, as the holder of a portion of the Hi Bar MCA/Obligation and the Hi Bar Secured Claim, Spin Capital possesses or may possess certain claims and causes of action against certain of Litigation Parties resulting or related to the Hi Bar MCA/Obligation and the Hi Bar Secured Claims, including, inter alia, claims, causes of action, and motion practice seeking relief for foreclosure, replevin, fraudulent transfer and avoidance claims arising under the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and applicable state and federal law (collectively, the "Spin Capital Claims," with Hi Bar Claims, the "Litigation Claims").

H.      In the NY Litigation, on or about March 18, 2022: (x) Excell Auto Group, Inc. filed a verified third-party complaint against Spin Capital asserting certain claims and causes of action against Spin Capital; and (y) certain Defendants filed counterclaims against Hi Bar. On or about March 25, 2022, Franklin Capital Group, LLC ("FCG LLC") initiated an action captioned Franklin Capital Group, LLC v. Spin Capital, LLC and Hi Bar Capital, LLC, in the United States District Court for the Eastern District of Michigan (the "MI Court"), as Case No. 2022-193300-CB (the "Michigan Litigation").[1] Consequently, as part of and in conjunction with the NY Litigation and the Michigan Litigation (and potentially in the FL Litigation and Bankruptcy Proceedings ), certain Defendants and FCG LLC have asserted, and may assert in the future, claims, causes of action, and counterclaims against one or both Parties (collectively, the "Counterclaims").

I.      Parties have had discussions and negotiations regarding an agreement providing for the collective pursuit of the Litigation Claims and the defense of the Counterclaims for the benefit of both Parties. In light of Spin Capital's interest in the Hi Bar MCA/Obligation and the Hi Bar Secured Claim and its willingness to fund the litigation to recover against Litigation Parties (and to defend Parties against Counterclaims), Parties have determined that (x) the collective pursuit of the Litigation Claims by Hi Bar with the assistance and participation of Spin Capital and (y) the collective defense by Parties against the Counterclaims is in Parties' best interests. Parties have now reached an agreement regarding the pursuit of the Litigation Claims and the defense of the Counterclaims, subject to the terms and conditions set forth herein.

J.      Each Party has concluded that the execution of this Agreement is in its respective best interest, and acknowledges that the terms and provisions hereof are fair and reasonable, that each has had the opportunity to consult with legal counsel, and that each is receiving a substantial and valuable benefit if the transactions contemplated herein are consummated.

NOW, THEREFORE, in consideration of the mutual covenants and conditions contained in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.      **Recitals**. The recitals hereinbefore set forth constitute an integral part of this Agreement, evidencing the intent of the parties in executing this Agreement, and describing the

---

[1]      FGC LLC initially filed the Michigan Litigation in the Sixth Judicial Circuit Court of Oakland County, Michigan. Thereafter, Parties removed the Michigan Litigation to the MI Court.

2

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007    RECEIVED NYSCEF: 01/19/2026

DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

circumstances surrounding its execution. Accordingly, said recitals are, by express reference, made a part of this Agreement, and this Agreement shall be construed in the light thereof. Nothing contained in the recitals shall limit the scope of or damages sought with respect to the Bankruptcy Proceedings Hi Bar Claims.

2. **Prosecution and Settlement of Litigation Claims and Defense of Counterclaims**.

(a)    From and after the Effective Date, Hi Bar hereby assigns to Spin Capital any and all Hi Bar Claims, subject to the terms and conditions of this Agreement, including but not limited to, Spin Capital's obligation to assign all Hi Bar Claims back to Hi Bar in the event it exercises its rights pursuant to Section 2(f) hereof.

(b)    From and after the Effective Date, Spin Capital will have full authority to prosecute and settle the Litigation Claims, and may settle such Litigation Claims in whole or in part against some or all of Litigation Parties, in its discretion. Nothing contained in this Agreement is intended or shall be deemed in any manner whatsoever to govern the manner in which Spin Capital pursues (or elects not to pursue) the Litigation Claims related to Litigation Parties. Notwithstanding the foregoing, Spin Capital will cooperate with Hi Bar and keep Hi Bar abreast of the status of its pursuit of Litigation Claims and potential recoveries therefrom. Any settlement of the Litigation Claims will be subject to Hi Bar's written consent (which consent it shall not unreasonably withhold).

(c)    From and after the Effective Date, Spin Capital will have full authority to defend the Counterclaims and will use commercially reasonable efforts to defend the Counterclaims on advice of counsel for the benefit of Parties. Notwithstanding the foregoing, Spin Capital will cooperate with Hi Bar and keep Hi Bar abreast of the status of its defense of the Counterclaims. Spin Capital may settle Counterclaims in conjunction with a global settlement of the Litigation Claims, but any eventual settlement may not result in Hi Bar being required to make any out of pocket payments to any Defendants, and any settlement of any Counterclaim must be paid from recoveries collected in the Litigation Claims. Any settlement of the Counterclaims will be subject to Hi Bar's written consent (which consent it shall not unreasonably withhold).

(d)    Until termination of this Agreement (as provided in Section 2(f) hereof), Spin Capital shall pay all past, present, and future Professional Fee Claims (as defined below) as they become due. For purposes hereof, "Professional Fee Claims" shall mean all legal and professional fees owed to counsel (and any expert witnesses and consultants retained by counsel), which professionals are retained to represent Hi Bar and the interests of Spin Capital in the prosecuting the Litigation Claims and defense of the Counterclaims. For purposes hereof, Professional Fee Claims shall include fees owed to those counsel identified on **Schedule 2** hereof, with all such retained professionals referred to hereinafter as "Retained Professionals".

(e)    Spin Capital and Hi Bar agree that, with respect to the Litigation Claims, Hi Bar will continue to be the plaintiff or claimant for purposes of pursuing recoveries against Litigation Parties. Hi Bar shall execute all pleadings and affidavits/declarations as requested by Spin Capital with respect to either the Litigation Claims or the Counterclaims.

(f)    **Termination Provisions:**

3

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM        INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                    RECEIVED NYSCEF: 01/19/2026

DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

      (i)    In the event that Spin Capital in its absolute discretion determines that it no longer wishes to actively pursue the recovery of any Litigation Claims, it will inform Hi Bar in writing of such decision, whereupon (and thereafter), Hi Bar shall be entitled to take the lead in pursuing the Hi Bar Claims and shall be entitled to make any decisions as to any matter relating to such pursuit (or non-pursuit) of such Hi Bar Claims. Spin Capital shall provide written notice of such decision, which shall result in a termination of this Agreement as of the date of such notice ("SC Termination Date"). If, on or before the one (1) year anniversary of the SC Termination Date (and provided Hi Bar has not theretofore breached the terms of this Agreement), Spin Capital settles or obtains recovers on any Litigation Claims, then either Spin Capital or escrow agent (if applicable) shall provide payments to Hi Bar as provided in Section 3(a) hereof.

      (ii)    In the event Hi Bar in its absolute discretion is not satisfied with Spin Capital's management of defense of Counterclaims against Hi Bar, then Hi Bar shall provide written notice of such decision, which shall result in a termination of this Agreement as of the date of such notice ("HB Termination Date"), and Hi Bar shall be entitled to continue pursuing its Hi Bar Claims and Spin Capital shall be entitled to continue pursuing Spin Capital Claims. If, on or before the one (1) year anniversary of the HB Termination Date (and provided Spin Capital has not theretofore breached the terms of this Agreement), Hi Bar settles or obtains recovers on any of its Litigation Claims, then either Hi Bar or escrow agent (if applicable) shall provide payments to Spin Capital as provided in Section 3(a) hereof.

      (g)    To the extent that Counterclaims continue to be asserted against Parties after either SC Termination Date or the HB Termination Date, then each Party shall be required to defend itself against such Counterclaims, and no Party shall have an obligation to other Party to defend such Counterclaims after the termination of this Agreement.

3.    **Agreement of Priority of Distribution**.

      (a)    Parties shall direct Litigation Parties to pay any cash or other recoveries obtained from Litigation Parties (including any judgment recoveries from or settlements of any claims against Litigation Parties and the liquidation of any Vehicle Collateral) as a result of any Litigation Claims (collectively, "Litigation Proceeds") to an escrow account designated by Parties, which shall be subject to an escrow agreement between Parties. Escrow agent of such escrow account shall pay and distribute Litigation Proceeds as provided below:

      (i)    First, all funds necessary to reimburse Spin Capital for all Professional Fee Claims;

      (ii)    Second, subject to Section 3(d) hereof, all funds (if any) necessary to resolve or settle all Counterclaims;

      (iii)    Third, the balance if any, after payment of the Professional Fee Claims and the Counterclaims ("Net Litigation Proceeds"), shall be paid as follows: (x) thirty percent (30%) shall be paid to Hi Bar; and (y) seventy percent (70%) shall be paid to Spin Capital of the first $1,100,000 in net Litigation Proceeds (i.e., up to $330,000 to be paid to Hi Bar and up to $770,000 to be paid to Spin Capital from the first $1,100,000 in net Litigation Proceeds);

4

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1007

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

(iv)     Fourth, fifteen percent (15%) shall be paid to Hi Bar and eighty-five percent (85%) shall be paid to Spin Capital of the next $900,000 in net Litigation Proceeds (i.e., up to $135,000 to be paid to Hi Bar and up to $765,000 to be paid to Spin Capital from the next $900,000 in net Litigation Proceeds); and

(v)     Fifth, ten percent (10%) shall be paid to Hi Bar and ninety percent (90%) shall be paid to Spin Capital of all net Litigation Proceeds after the recovery by Parties of the first $2,000,000 in total net Litigation Proceeds.

By way of example only, payouts from total Net Litigation Proceeds would be as follows (assuming net Litigation Proceeds (after payment of Professional Fee Claims and Counterclaims) in the amounts set forth below):

| Total net Litigation Proceeds | Aggregate Amount to Hi Bar | Aggregate Amount to Spin Capital |
|---|---|---|
| $500,000 | $150,000 | $350,000 |
| $1,000,000 | $300,000 | $700,000 |
| $1,500,000 | $390,000 | $1,110,000 |
| $2,000,000 | $465,000 | $1,535,000 |
| $2,500,000 | $515,000 | $1,985,000 |
| $3,000,000 | $565,000 | $2,435,000 |
| $3,500,000 | $615,000 | $2,885,000 |
| $4,000,000 | $665,000 | $3,335,000 |

(b)     Notwithstanding the provisions of Section 3(a) hereof, to the extent any Party breaches this Agreement before the recovery of any Litigation Proceeds by the other Party, then breaching Party shall not be entitled to recoveries as provided in Section 3(a) to the extent of damages incurred by non-breaching Party relating to the breach, and non-breaching Party shall be entitled to direct any Litigation Parties to transfer so much of the recoveries as required to cover damages relating to the breach, directly to non-breaching Party for its own account.

(c)     Nothing contained herein is intended or shall be deemed to obligate or otherwise compel either Party to accept any non-cash payment or other non-cash distribution of any Litigation Proceeds in partial or full satisfaction of any of Litigation Claims.

(d)     To the extent all Counterclaims are not resolved at the time of the receipt of Litigation Proceeds, then the escrow agent shall hold all Litigation Proceeds until all such Counterclaims are either (x) resolved in favor of Parties or (y) liquidated or settled to an amount certain owed by Parties. Notwithstanding the foregoing, Parties may order escrow agent to release Litigation Proceeds in advance of resolution of all Counterclaims subject to a further written agreement between them.

(e)     To the extent insufficient Litigation Proceeds are recovered to pay any damages awarded with respect to all Counterclaims, then Parties agree that such damages in excess of the Litigation Proceeds shall be paid seventy percent (70%) by Spin Capital and thirty percent (30%) by Hi Bar.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007

RECEIVED NYSCEF: 01/19/2026

DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

(f)     For all Professional Fees Claims incurred through the earlier of (x) the SC Termination Date, (y) the HB Termination Date, and/or (z) the resolution and settlement of all Litigation Claims and Counterclaims, and to the extent sufficient Litigation Proceeds are not recovered to pay Spin Capital in full for all Professional Fee Claims paid through such date, then Parties agree that: (i)

(i)     Hi Bar paid or must pay thirty (30%) of such amounts;

(ii)    Spin Capital paid or must pay seventy (70%) of such amounts; and

(iii)   Hi Bar shall pay Spin Capital for its proportion of these legal fees on submission of a written request by Spin Capital, provided that Spin Capital may only make such a written request on the termination of this Agreement or resolution in full of all Litigation Claims and Counterclaims (and the receipt by Parties of insufficient Litigation Proceeds to pay all Professional Fee Claims in full after resolution of all Counterclaims).

On or before the one (1) year anniversary of the date of such written request, Hi Bar shall make payment in full to Spin Capital. To the extent Hi Bar fails to pay Spin Capital for any amounts owed pursuant to this Section 3(f), Spin Capital may initiate litigation to recover such amounts, but may not pursue litigation until the one (1) year anniversary of the date in which Spin Capital provides written notice to Hi Bar as provided in Section 3(f)(iii).

4.    **Further Assurances and Clawbacks**. Parties shall reasonably cooperate with each other and shall coordinate their activities in respect of all actions reasonably necessary to consummate or obtain orders approving this Agreement. Hi Bar shall deliver such other documents, instruments or agreements as Spin Capital may reasonably request in order to effect fully the grant of authority to prosecute the Hi Bar Claims. Spin Capital, in its sole discretion, shall advance monies and funds for payment of fees and expenses of Retained Professionals, as incurred by Hi Bar in conjunction with the prosecution of the Litigation Claims and defense of Counterclaims against Litigation Parties. In the event that any of the Litigation Proceeds paid out to any of the parties hereto are subsequently disgorged by any Party, or in the event that after Parties are paid Net Litigation Proceeds, either Party incurs further liability relating to a Counterclaim, then each Party shall fund any clawback/disgorgement or Counterclaim liability in the same proportions as their receipt of the Net Litigation Proceeds as set forth in Section 3. Parties' obligations to pay back Net Litigation Proceeds to fund any clawback/disgorgement or liability relating to counterclaims shall survive termination of this Agreement.

5.    **Relationship of Parties**. Nothing contained herein shall be construed to impose any fiduciary duty on either Party in favor of the other Party or any other person or entity. Except as expressly set forth herein, neither Party shall have any duty or obligation to the other Party by virtue of this Agreement, and without limiting the generality of the foregoing, there are no implicit duties or obligations imposed on either Party in favor of the other Party or any other person or entity by virtue of this Agreement.

6.    **Representations and Warranties**. Each Party hereby represents and warrants to the other Party that its execution, delivery, and performance of this Agreement are within its respective powers, have been duly authorized by all necessary corporate action, and that this Agreement, when so executed and delivered shall constitute its legal, valid, and binding obligations, enforceable against it in accordance with its terms, subject to applicable bankruptcy,

6

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                      RECEIVED NYSCEF: 01/19/2026

DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

insolvency and similar laws and general equitable principles. Neither Party makes any representations or warranties to the other party regarding the recoverability, existence, or value of the Litigation Claims. Except as expressly set forth in this Section 6, neither Party makes any representations or warranties, express or implied, to the other Party by virtue of this Agreement.

7.   **Effectiveness of This Agreement**. This Agreement shall be effective as of the date hereof conditioned only upon the execution and delivery of this Agreement by all Parties.

8.   **Common Interest**.

(a)   In order to pursue the Litigation Claims and defend the Counterclaims effectively, Parties have determined that their common interests may be best served by sharing documents, factual material, mental impressions, memoranda, interview reports, and other information, including the confidences of each of them, pursuant to this Agreement (collectively, the "Common Interest Materials") provided, however, that no Party shall be obligated to share or disclose any Common Interest Materials with or to any other Party solely by virtue of entering into this Agreement. Any document produced as Common Interest Materials shall be stamped or otherwise labeled as "privileged" or "confidential." Parties agree that Common Interest Materials obtained from any of them shall remain confidential and shall be protected from disclosure to any third party except as provided herein. Parties further agree that they will not disclose Common Interest Materials received from each other to anyone except, as applicable, their respective attorneys, representatives, employees, or agents involved in the Litigation Claims, without first obtaining the express consent of one or more of the parties who produced such Common Interest Materials. It is understood that all work performed and to be performed has been and shall be accomplished by the law firms, their attorneys, employees and agents with regard to their representations shall be accomplished pursuant to the work product and the attorney client privileges and to the "common interest doctrine" and all other applicable rights and privileges, including those recognized in United States v. Evans, 113 F.3d 1457 (7th Cir. 1997); United States v. McPartlin, 595 F.2d 1321 (7th Cir. 1979); Hunydee v. United States, 355 F.2d 183 (9th Cir. 1965); and Continental Oil Co. v. United States, 330 F.2d 347 (9th Cir. 1964).

(b)   No Waiver. The joint interest and defense effort undertaken by Parties, by virtue of its purpose, operation and use, is attorney work product and has required, and may in the future require, the exchange of Common Interest Materials subject to work product protection, attorney-client, joint defense and/or other privileges. Parties do not, by virtue of entering into this Agreement, waive any privilege as to any communication or as to any sharing of work product.

(c)   Permissive, Not Mandatory. This Agreement is intended to allow, but not require, each party to this Agreement, in its sole and exclusive discretion, to exchange with the other Parties Common Interest Materials, which are subject to work product protection, attorney-client, joint defense and/or other privileges. Parties are not required to agree to any particular litigation strategy or position taken before any court by virtue of having entered into this Agreement.

(d)   Use. It is further agreed that any Common Interest Materials exchanged among Parties shall be used solely in connection with the Litigation Claims and the defense of the Counterclaims. Each Party specifically agrees that, in any subsequent litigation or action that

7

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                           RECEIVED NYSCEF: 01/19/2026

DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

may be brought, they will not attempt to discover or offer as evidence any Common Interest Materials exchanged between them relating to the foregoing absent court order or written consent by one or more of Parties producing such Common Interest Materials.

(e)   <u>Joint Experts</u>. Parties may jointly retain one or more experts in furtherance of the Litigation Claims and in the defense of the Counterclaims. All Common Interest Materials transmitted to the joint experts, as well as any work product generated by the joint experts in any form whatsoever shall be subject to this Agreement. No joint expert shall publish or disseminate any information, theories, opinions, or conclusions based upon Common Interest Materials in any way other than in furtherance of the Litigation Claims and in the defense of the Counterclaims without advance written approval by all of Parties by whom the expert is retained.

(f)   <u>Individual Experts</u>. Nothing herein shall preclude any of Parties from individually retaining an expert. Any Common Interest Materials or work product related to or generated by the individually retained expert shall be subject to this Agreement.

(g)   <u>Joinder of Experts to Agreement</u>. No Common Interest Materials exchanged pursuant to this Agreement shall be disclosed or distributed in any way to any joint or individually retained expert until (i) such person shall have read a copy of this Agreement and shall have signed a Confidentiality Agreement agreeing to be bound by the terms of this Agreement, and (ii) advance written approval is obtained from the party whose information is to be given, shown, made available or communicated to the expert in furtherance of the Litigation Claims.

(h)   <u>Discovery of Common Interest Materials</u>. If any person or entity requests or demands, by subpoena or otherwise, any Common Interest Materials received by any Party pursuant to this Agreement, the recipient of the demand shall immediately notify all other Parties. Each Party against whom the request or demand of said Common Interest Materials is directed shall take all steps necessary to permit the assertion of all applicable rights and privileges with respect to said Common Interest Materials, and shall cooperate fully with Parties in any judicial or other proceeding relating to the disclosure of said Common Interest Materials.

(i)   <u>Withdrawal from Agreement</u>. Parties also agree that, if any Party to this Agreement no longer has interests in common with the other Parties, such party shall immediately notify, in writing, attorneys for the other Parties and promptly withdraw from this Agreement. Withdrawal from this Agreement shall not terminate Parties' mutual obligation to hold confidential all Common Interest Materials previously exchanged among the same. At the request of a withdrawing party, documents furnished by such withdrawing party shall be returned to the same; provided, however, that such withdrawing party also returns all Common Interest Materials disclosed to it pursuant to this Agreement, and, further, destroys any internal notes, memoranda, analyses or other work product based upon or relating to Common Interest Materials produced by another party; provided, however, if a withdrawing party has received a subpoena or similar legal demand that would require production of any Common Interest Materials, the obligations imposed by this sentence shall be deferred until the discovery demand is resolved in accordance with the procedures outlined in this Agreement.

(j)   <u>Electronic Communications</u>. Parties further agree that electronic communication (via the internet or other network) among themselves may involve the

8

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007    RECEIVED NYSCEF: 01/19/2026

DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

communication of Common Interest Materials. By engaging in electronic communications during the course of the Litigation Claims, Parties do not intend to waive or in any way weaken any statutory, common law or other privileges or protections to which the Common Interest Materials would otherwise be entitled.

(k)    Continuation of Agreement. This Agreement is not terminated by the conclusion through trial (including appeals) or settlement or other resolution of the Litigation Claims, and Parties shall keep all Common Interest Materials confidential as directed by the terms of this Agreement, unless all Parties consent in writing to the disclosure of said Common Interest Materials. Nothing in this Agreement, however, shall preclude any Party from disclosing their own privileged or work product materials at any time.

9.    **Provisions Solely to Define Relative Rights.**

(a)    The provisions of this Agreement are intended solely for the purpose of defining the rights of Parties. Without limiting the generality of the provisions hereof, there are no third party beneficiaries of this Agreement. Without limiting the generality of the foregoing, no other person or entity, including any Litigation Party or any affiliate or creditor thereof, shall have any rights or benefits hereunder or shall otherwise be entitled in any manner whatsoever to rely on any of the provisions hereof. Nothing contained herein is intended to or shall impair the rights of either Party against any non-party, including any Litigation Party.

(b)    This Agreement, including, inter alia, Section 3(f) hereof, shall not waive, release, or impair the rights of either Party against any other Party with respect to separate business relationships or other claims or causes of action any Party may have against other Party unrelated to the Litigation Claims, Counterclaims, Defendants, or any of the proceedings described in the Recitals hereto. Any and all current or future claims or causes of actions of one Party against other Party are expressly preserved, and Parties do not intend to effect or impair such claims or causes of action as part of their Agreement hereunder.

10.    **General Terms.**

(a)    Time is of the Essence. Parties agree that time is of the essence with respect to each of the terms and conditions of this Agreement.

(b)    Waivers, Amendments, Etc. The provisions of this Agreement may from time to time be amended, modified or waived, if such amendment, modification or waiver is in writing and consented to by each Party. No waiver or approval by any Party under this Agreement shall, except as may be otherwise stated in such waiver or approval, be applicable to subsequent transactions. No waiver or approval hereunder shall require any similar or dissimilar waiver or approval thereafter to be granted hereunder.

(c)    Notices. All notices and other communications provided to any Party hereto under this Agreement shall be in writing (except as otherwise specifically provided in this Agreement) and sent by first class mail, by overnight delivery service, or by facsimile and addressed, delivered or transmitted to such Party at its address or facsimile number set forth below its signature hereto or at such other address or facsimile number as may be designated by such Party in a notice to the other Parties. Any notice, if mailed and properly addressed with

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM     INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                          RECEIVED NYSCEF: 01/19/2026

DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

postage prepaid or if properly addressed and sent by pre-paid courier service, shall be deemed given when received; any notice, if transmitted by facsimile, shall be deemed given when transmitted and the Party giving such notice shall have received (including either through telephonic communication initiated by it or telephonic communication received by it) telephonic, machine, or other confirmation that such notice has been received by the intended recipient.

(d)     No Implied Right to Notice; Nonwaiver; Cumulative Remedies. No notice to or demand on any of the parties hereto in any case shall entitle them to any notice or demand in similar or other circumstances. No failure to exercise, no delay in exercising, and no single or partial exercising, on the part of either Party, of any right, power or privilege hereunder shall operate as a waiver thereof or otherwise preclude any other or further exercise thereof or the exercise of any other right, power or privilege. The rights and remedies of Parties herein provided are cumulative and not exclusive of any rights or remedies provided by law.

(e)     Successors; Survival of Agreements. All agreements, representations, warranties, and covenants made herein shall survive the consummation of this Agreement.

(f)     No Third Party Beneficiaries. This Agreement shall be binding upon, inure to the benefit of, and be enforceable by, Parties and their respective successors and assigns. No other person or entity shall be entitled to claim or assert (including as a defense to any liability) any right or benefit hereunder, including the status of being an express or implied third party beneficiary of this Agreement.

(g)     Captions. Captions in this Agreement are for convenience of reference only and shall not define or limit any of the terms or provisions hereof. References herein to Sections or provisions without reference to the document in which they are contained are references to this Agreement.

(h)     Counterparts; Signatures. This Agreement may be executed by Parties on any number of separate counterparts, and by each Party on separate counterparts; each counterpart shall be deemed an original instrument; and all of the counterparts taken together shall be deemed to constitute one and the same instrument. To facilitate execution of this Agreement, Parties may execute and exchange facsimile or electronic mail (e-mail) executed counterparts of this Agreement. Facsimile signatures and signatures exchanged by electronic mail (e-mail) shall be deemed valid and binding to the same extent as the original.

(i)     Expenses. Without limiting the right of any Party to apply any Litigation Proceeds received by it in accordance with the provisions of this Agreement in satisfaction of any such expenses, each Party hereto shall be responsible for the payment of its own fees and expenses, unless otherwise set forth herein.

(j)     Entire Agreement. This Agreement, together with the exhibits and schedules hereto, contains the entire agreement between Parties with respect to the matters addressed herein. There are no agreements, restrictions, promises, representations, warranties, covenants or undertakings, written or oral, other than those expressly set forth herein. This Agreement supersedes all prior agreements and understandings between Parties (if any) with respect to the matters addressed herein.

10

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007

RECEIVED NYSCEF: 01/19/2026

DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

(k)    Interpretation. The use of the masculine, feminine or neuter gender or the singular or plural form of words herein shall not limit any provision of this Agreement.  The use of the terms "including" or "include" shall in all cases herein mean "including, without limitation" or "include, without limitation," respectively.  Reference to any person or entity includes such person's or entity's successors and assigns to the extent such successors and assigns are permitted by the terms of this Agreement, and reference to a person or entity in a particular capacity excludes such person or entity in any other capacity or individually. Reference to any agreement (including this Agreement), document or instrument means such agreement, document or instrument as amended or modified and in effect from time to time in accordance with the terms thereof and, if applicable, the terms hereof.  Reference to any law means such law as amended, modified, codified, replaced or re-enacted, in whole or in part, and in effect on the date hereof, including rules, regulations, enforcement procedures and any interpretations promulgated thereunder. Underscored references to Sections, clauses, Exhibits or Schedules shall refer to those portions of this Agreement, and any underscored references to a clause shall, unless otherwise identified, refer to the appropriate clause within the same Section in which such reference occurs.  The use of the terms "hereunder", "hereof", "hereto" and words of similar import shall refer to this Agreement as a whole and not to any particular Section or clause of or Exhibit or Schedule to this Agreement.  All terms defined in this Agreement shall have the above-defined meanings when used in any certificate, report or other document made or delivered pursuant to this Agreement, unless the context therein shall clearly otherwise require.  In the computation of periods of time in this Agreement from a specified date to a later specified date, the word "from" means "from and including" and the words "to" and "until" each means "to, but not through." This Agreement and the other documents relating to this Agreement are the result of negotiations among and have been reviewed by counsel to Parties, and are the products of all Parties. Accordingly, they shall not be construed against (or in favor of) either Party merely because of such Party's involvement (or non-involvement, as the case may be) in their preparation.

(l)    APPLICABLE LAW. THIS AGREEMENT AND ANY OTHER WRITING EXECUTED IN CONNECTION HEREWITH SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED THEREIN WITHOUT GIVING EFFECT TO PRINCIPLES OF CONFLICTS OF LAW. COURTS SITTING IN NEW YORK STATE SHALL HAVE EXCLUSIVE JURISDICTION OVER ANY AND ALL ACTIONS BROUGHT BY THE PARTIES RELATING IN ANY WAY TO THIS AGREEMENT.

(m)    WAIVER OF RIGHT TO JURY TRIAL. EACH OF THE PARTIES IRREVOCABLY HEREBY WAIVES ANY RIGHT IT MAY HAVE TO TRIAL BY JURY IN ANY AND ALL SUITS, ACTIONS OR OTHER PROCEEDINGS THAT ARISE FROM, OR CONSIST OF, A CLAIM FOR DAMAGES UNDER, A CLAIM OF A BREACH OF, OR A DECLARATORY JUDGMENT ACTION FOR THE INTERPRETATION OF, THIS AGREEMENT.

**[Signature Pages Follows]**

11

DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

IN WITNESS WHEREOF, the parties hereto have caused this Common Interest and Joint Litigation Agreement to be executed by their respective officers thereunto duly authorized as of the day and year first above written.

HI BAR CAPITAL, LLC

By: _____ *Yisroel Herbst*
Name: Yisroel Herbst
Its: Owner

Contact Address:
HI Bar Capital, LLC
1825 65th Street
Brooklyn, NY 11204
ATTN: Yisroel Herbst
        Mordi Herbst
Email: ymherbst@gmail.com
        mordi@hibarcapital.com

With a copy to:
Law Office of Michael Ehrenreich PLLC
555 Willow Avenue, Suite 105
Cedarhurst, NY 11516
Attention: Michael Ehrenreich
Email: me@ehrenreichlaw.com

[Signature Page to Common Interest and Joint Litigation Agreement]

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 811 of 976

DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

SPIN CAPITAL, LLC

By: _____

Name: Arvumi Lubin

Its: President

Contact Address:
Spin Capital, LLC
1460 Arboretum Parkway
Lakewood, NJ 08701
ATTN: Josh Lubin
Email: josh@spincapital.com

With a copy to:
Bryan Cave Leighton Paisner LLP
161 North Clark Street, Suite 4300
Chicago, Illinois 60601
ATTN: Jason J. DeJonker
Email: Jason.Dejonker@bclplaw.com

[Signature Page to Common Interest and Joint Litigation Agreement]

Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 812 of 976

DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

**Schedule 1**

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                    RECEIVED NYSCEF: 01/19/2026

DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

## Schedule 2

- Bryan Cave Leighton Paisner LLP

- Feldman Law Group, P.A.

- Wells Law P.C.

- Foley & Lardner LLP

- Proskauer Rose LLP

- Law Office of Michael Ehrenreich

- Law Offices of Steven Zakharyayev

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007
RECEIVED NYSCEF: 01/19/2026

# Exhibit N

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1007                                              RECEIVED NYSCEF: 01/19/2026



201 South Biscayne Blvd.
Suite 2700
Miami, Florida 33131

305.341.3155 tel
305.397.1168 fax
www.letolawfirm.com

April 3, 2024

**Via Email**
Bernie Egozi
Egozi & Bennett, P.A.
2999 NE 191st Street
Aventura View, Suite 407
Aventura, Florida 3318

> Re:    Common Interest and Joint Litigation Agreement
>        Hi Bar/Spin Capital

Dear Mr. Egozi:

As you are aware, the undersigned represents Hi Bar Capital, LLC, Yisroel Herbst, and Mordi Herbst. I am writing to you in your capacity as counsel for Josh Lubin and Spin Capital, LLC.

On January 28, 2022, Spin Capital and Hi Bar Capital entered into a Common Interest and Joint Litigation Agreement ("the JDA"). Pursuant to the JDA, Spin Capital was obligated to pay for all litigation costs associated with various legal proceedings. In exchange, Spin Capital retained the right to prosecute and settle certain claims (subject to Hi Bar's consent) and was also entitled to a certain waterfall payout in the event any funds were recovered. Later, Mr. Lubin personally (along with Spin) incorporated the terms of the JDA into a fee agreement with my law firm for additional cases, including the FVP Action and an Adversary Action filed in the Excell Bankruptcy case. Under the Fee Agreement with my law firm and the JDA, Mr. Lubin and Spin were obligated to pay all legal fees and costs incurred on behalf of Hi Bar and the Herbst's that were associated with the cases identified in the JDA and in the Fee Agreement.

Notwithstanding those written agreements to pay fees and costs, on several occasions during the week of March 18, 2024, Mr. Lubin expressly severed the attorney-client relationship with my firm and stated that he would no longer pay the legal fees and costs incurred by Hi Bar or the Herbst's in any action going forward. In addition, while he committed to paying the outstanding invoices incurred to date, Mr. Lubin has failed to tender payment. Finally, and for reasons unknown and without any factual basis, Mr. Lubin has taken litigation positions that are adversarial to Hi Bar.

Those actions, singularly and collectively, constitute a breach of the JDA. Based upon Mr. Lubin and Spin's breach of the JDA and Fee Agreement, Hi Bar is no longer obligated to perform under any of the provisions set forth therein, including but not limited to the obligation

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1007                                                    RECEIVED NYSCEF: 01/19/2026

that allows Spin and/or Mr. Lubin the right engage in settlement discussions and case strategy or Spin's right to receive payment under Section 3 of the JDA. To be clear, given Mr. Lubin and Spin's breach, in the event Hi Bar resolves any of the pending matters, Spin is not entitled to payment under the Priority of Distribution Section and all funds will be paid to Hi Bar. *See e.g. Markham Gardens L.P. v. 511 9th LLC*, 38 Misc. 3d 325, 331, 954 N.Y.S.2d 811, 815 (Sup. Ct. 2012)("When one party commits a material breach of a contract, the other party to the contract is relieved, or excused, from further performance under the contract."); *JP Pizza Eastport LLC v. Luigi's Main St. Pizza Inc.*, 75 Misc. 3d 427, 433, 166 N.Y.S.3d 485, 489–90 (N.Y. Sup. Ct. 2022)("A party will not be able to prevail on a breach-of-contract claim unless it proves, by a preponderance of the evidence, that it performed its own obligations under the contract. Thus, a party is relieved of its duty to perform under a contract when the other party has committed a material breach.")

It is unfortunate that Mr. Lubin has taken these recent actions. Nevertheless, that is the situation he has unilaterally created. Please instruct Mr. Lubin to govern himself accordingly.

Sincerely,

MATTHEW P. LETO

*Matthew P. Leto*

LETO LAW FIRM

cc:    Yisroel Herbst
       Mordi Herbst

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

In re: EXCELL AUTO GROUP, INC., Debtor.
Case No. 22-12790-EPK (Chapter 7)

NICOLE-TESTA MEHDIPOUR, as Chapter 7 Trustee for Excell Auto Group, Inc., Plaintiff,
v.
HI BAR CAPITAL, LLC, et al., Defendants.
Adv. Proc. No. 23-01132-EPK

---

# SUB-EXHIBIT 18-F

Motion to Determine Confidentiality of Court Records and to File Under Seal (Broward Cty., Fla., Case No. CACE-22-005125, Filing No. 239422279, filed Jan. 13, 2026).

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022

NYSCEF DOC. NO. 1008 RECEIVED NYSCEF: 01/19/2026

**SUPREME COURT OF THE STATE OF NEW YORK** Index No. 650582/2022
**COUNTY OF NEW YORK** Third-Party Index No. 595367/2022

Hon. Nancy M. Bannon, J.S.C. (Part 61M)

TETON LIFE LLC as Assignee of the Rights of Spin Capital, LLC,
Plaintiff,
-against-
GOLDEN FOOTHILL INSURANCE SERVICES, LLC et al.,
Defendants.

-------------------------------------------------X

GOLDEN FOOTHILL INSURANCE SERVICES, LLC et al.,
Third-Party Plaintiffs,
-against-
SPIN CAPITAL, LLC, and AVRUMI LUBIN,
Third-Party Defendants.

-------------------------------------------------X

# EXHIBIT F

**Defendant Avrumi ("Josh") Lubin's Motion to Determine Confidentiality of Court Records and to File Exhibit F Under Seal**

Broward Cty. Fla., Case No. CACE-22-005125, Filing No. 239422279, filed Jan. 13, 2026.

*Cover page for NYSCEF exhibit attachment (for ease of reference)*

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 2394    E-Filed 01/13/2026 04:46:45 PM    RECEIVED NYSCEF: 01/19/2026

## IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

### CASE NO. CACE-22-005125

FVP OPPORTUNITY FUND III, LP, a Delaware limited partnership;
et al.,

                              Plaintiffs,

v.


KARMA OF BROWARD, INC., a Florida corporation,
 et al.,


                              Defendants.

_____/


HI BAR CAPITAL, LLC, a New York limited liability company,


                              Plaintiff,

v.                                              Consolidated Case no. CACE-22-006401


KARMA OF PALM BEACH, INC., a Florida corporation
et al.,


_____/


### DEFENDANT AVRUMI ("JOSH") LUBIN'S MOTION TO DETERMINE CONFIDENTIALITY OF COURT RECORDS AND TO FILE EXHIBIT F UNDER SEAL

#### (Fla. R. Gen. Prac. & Jud. Admin. 2.420)

Defendant, Avrumi ("Josh") Lubin ("Movant"), pursuant to Florida Rule of General Practice and Judicial Administration 2.420, moves to determine that Exhibit F to Movant's contemporaneously-filed Motion for Fraud Upon the Court is confidential and may be maintained under seal, and states:

Movant seeks a confidentiality determination limited to a single document: the executed Settlement Agreement ("Exhibit F"). Exhibit F is clearly marked "HIGHLY CONFIDENTIAL,"

and contains non-public settlement terms, financial allocations, and other sensitive information that the parties designated to be kept from public release.

Public disclosure of Exhibit F would cause substantial, concrete harm to the parties and potentially to non-parties referenced in the document, without advancing the merits of the pending dispute. Movant is not seeking to prevent access by parties or counsel of record; Movant seeks only to restrict public access.

The requested sealing is narrowly tailored: it applies only to Exhibit F (and, if necessary, unredacted quotations of the same). Less restrictive alternatives (such as filing Exhibit F publicly) would not adequately protect the interests at issue. To the extent the Court determines partial disclosure is appropriate, Movant requests leave to file a redacted public version and an unredacted sealed version.

Movant requests entry of an order (i) determining Exhibit F confidential under Rule 2.420, (ii) directing the Clerk to maintain Exhibit F under seal, and (iii) permitting filing of Exhibit F as a sealed exhibit.

## CERTIFICATION (Rule 2.420(e)(1))

Movant certifies that this Motion is made in good faith and is supported by a sound factual and legal basis.

Respectfully submitted,


__/s/ Avrumi Lubin_____

**AVRUMI "JOSH" LUBIN, Movant**

1460 Arboretum Pkwy

Lakewood, NJ 08701

Email: josh@spincapital.com


## CERTIFICATE OF SERVICE

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022

NYSCEF DOC. NO. 1008                                      RECEIVED NYSCEF: 01/19/2026

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on all counsel of record and parties via the Florida Courts E-Filing Portal and/or electronic mail service pursuant to Fla. R. Jud. Admin. 2.516 on this 13 day of January, 2026.


   /s/ Avrumi Lubin

AVRUMI "JOSH" LUBIN

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022

NYSCEF DOC. NO. 1008

RECEIVED NYSCEF: 01/19/2026

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

In re: EXCELL AUTO GROUP, INC., Debtor.

Case No. 22-12790-EPK (Chapter 7)

NICOLE-TESTA MEHDIPOUR, as Chapter 7 Trustee for Excell Auto Group, Inc., Plaintiff,

v.

HI BAR CAPITAL, LLC, et al., Defendants.

Adv. Proc. No. 23-01132-EPK

---

# SUB-EXHIBIT 18-G

Verified Emergency Motion to Vacate Aug. 14, 2025 Order Procured by Fraud Upon the Court; Motion to Correct Record; and related relief (Broward Cty., Fla., Case No. CACE-22-005125, Filing No. 239422279, filed Jan. 13, 2026).

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022
NYSCEF DOC. NO. 1009
RECEIVED NYSCEF: 01/19/2026

**SUPREME COURT OF THE STATE OF NEW YORK** Index No. 650582/2022
**COUNTY OF NEW YORK** Third-Party Index No. 595367/2022

Hon. Nancy M. Bannon, J.S.C. (Part 61M)

TETON LIFE LLC as Assignee of the Rights of Spin Capital, LLC,
Plaintiff,
-against-
GOLDEN FOOTHILL INSURANCE SERVICES, LLC et al.,
Defendants.

-----------------------------------------------x

GOLDEN FOOTHILL INSURANCE SERVICES, LLC et al.,
Third-Party Plaintiffs,
-against-
SPIN CAPITAL, LLC, and AVRUMI LUBIN,
Third-Party Defendants.

-----------------------------------------------x

# EXHIBIT G

**Verified Emergency Motion to Vacate August 14, 2025 Order Procured by Fraud Upon the Court; Motion to Correct the Record; Motion for Evidentiary Hearing and Sanctions; and Incorporated Memorandum of Law**

Broward Cty. Fla., Case No. CACE-22-005125, Filing No. 239422279, filed Jan. 13, 2026.

*Cover page for NYSCEF exhibit attachment (for ease of reference)*

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 299    RECEIVED NYSCEF: 01/19/2026

NYSCEF #0239422279 E-Filed 01/13/2026 04:46:45 PM

# IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

## CASE NO. CACE-22-005125

FVP OPPORTUNITY FUND III, LP, a Delaware limited partnership; et al.,

Plaintiffs,

v.

KARMA OF BROWARD, INC., a Florida corporation, et al.,

Defendants.

_____/

HI BAR CAPITAL, LLC, a New York limited liability company,

Plaintiff,

v.                                          Consolidated Case no. CACE-22-006401

KARMA OF PALM BEACH, INC., a Florida corporation et al.,

_____/

## JUDGE: HON. DAVID A. HAIMES

## VERIFIED EMERGENCY MOTION TO VACATE AUGUST 14, 2025 ORDER PROCURED BY FRAUD UPON THE COURT; MOTION TO CORRECT THE RECORD; MOTION FOR EVIDENTIARY HEARING AND SANCTIONS; AND INCORPORATED MEMORANDUM OF LAW

Movant, AVRUMI "JOSH" LUBIN ("Movant" or "Mr. Lubin"), respectfully moves this Court—invoking its inherent authority to protect the integrity of its proceedings and Florida Rule of Civil Procedure 1.540—to VACATE the "Order on Joint Motion to Endorse Settlement"

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1009                                    RECEIVED NYSCEF: 01/19/2026

entered August 14, 2025 (the "August 14 Order"), because it was procured through an unconscionable, record-corrupting scheme that deprived Movant of due process, inserted non-rulings as "findings," and then weaponized this Court's signature to trigger the immediate federal disbursement of $2,107,548.61 from the U.S. Bankruptcy Court registry.

This motion does not seek reconsideration of any ruling actually made by the Court. Rather, it seeks correction of specific factual "findings" inserted into the written Order that the Court later questioned on the record and acknowledged were broader than what it intended to rule. It seeks correction of record language that was inserted into the August 14, 2025 Order and that goes materially beyond the Court's oral rulings, as the Court itself later acknowledged on the record. The challenged language has since been treated as a binding factual determination by a bankruptcy court and used to authorize the distribution of over $2.1 million, creating concrete and irreparable consequences based on findings the Court expressly questioned and did not intend to make.

This Motion is intentionally direct. Fraud upon the Court is not a "litigation tactic." It is an attack on the judicial function itself. When counsel submits a proposed order ex parte, packs it with brand-new "findings" that were not noticed, not litigated, and (as the transcript later confirms) not even intended as findings, the result is not "harmless error." It is a deliberate misuse of the Court's order-entry process to obtain relief that could not have been granted through an adversarial, noticed proceeding.

Movant requests (i) immediate vacatur (or, at minimum, striking and correction) of the August 14 Order; (ii) an evidentiary hearing on the fraud upon the Court; (iii) an order compelling production of the submission history, communications, and drafts used to procure the August 14 Order; (iv) interim injunctive relief preserving the Net Proceeds from dissipation; and (v) sanctions—including fees and appropriate referral—against the responsible parties and counsel.

## I. RELEVANT BACKGROUND AND THE INTERNAL CONTRADICTIONS IN THE COURT'S OWN RECORD

1. The U.S. Bankruptcy Court declined to adjudicate the competing claims to the Net Proceeds and directed the parties to obtain a ruling from a court of competent jurisdiction. (Ex. A; see also Ex. B).

2. The Settling Parties (Hi Bar and the FVP/Franklin parties) then presented an eleventh-hour "Joint Motion" to "Endorse Settlement," and obtained a short-noticed hearing on August 13, 2025. (Ex. C; Sealed Ex. F).

3. At that hearing, this Court stated it was granting the Joint Motion based on the common-interest agreement language and a termination letter, and because it did not see how Mr. Lubin had the right to stand in and contest the settlement—while expressly recognizing Mr.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1009    RECEIVED NYSCEF: 01/19/2026

Lubin may have separate claims against Hi Bar that were not being adjudicated. (Ex. C at 41:1-25).

4. The next day, August 14, 2025, this Court entered the August 14 Order. (Ex. D).

5. The August 14 Order, as entered, went materially further than the Court's oral ruling and did so in a way that created purported 'findings' and 'ORDERED' provisions engineered for downstream use. Specifically, it: (a) recites findings about termination and standing (paras. 8-9); (b) declares this Court to be the 'court of competent jurisdiction' (para. 10); (c) purports to determine that neither Mr. Lubin nor any affiliated entities have any rights to the Net Proceeds (para. 11); (d) directs distribution to the trust account of counsel for the FVP Parties (para. 13); (e) contemplates filing this Order in the U.S. Bankruptcy Court to trigger registry disbursement (para. 14); and (f) denies any stay and makes the Order immediately effective (para. 16). (Ex. D paras. 8-11, 13-14, 16; Ex. E). Critically, Paragraph 8 purports to make an express factual "finding" that the Common Interest Agreement was terminated—language the Court later confirmed was not intended as a finding at all.

6. The August 14 Order was, in fact, used for that purpose. On August 27, 2025, the Bankruptcy Court entered an order directing the Clerk to disburse $2,107,548.61 to Schwartz Breslin, PLLC trust account, expressly relying on this Court's August 14 Order and its statements that Mr. Lubin and his affiliates had "no rights to the Net Proceeds." (Ex. E).

7. Movant promptly sought reconsideration/clarification and a stay, explaining that the proposed order had been submitted to chambers without being furnished to Movant (in contravention of Fla. R. Jud. Admin. 2.516(h)(1) and Local Rule 8), and that the proposed order contained findings not reached, not briefed, and not noticed. (Ex. G at paras. 3-6).

8. On September 3, 2025, the transcript reflects this Court acknowledged that at least one of the core disputed statements in the August 14 Order—Paragraph 8's statement that the Court "finds" the Common Interest Agreement was terminated—was not intended as a finding at all, and the Court stated it would amend "finds" to "notes." (Ex. H at 22:9-20). Accordingly, Paragraph 8 of the August 14 Order is materially inaccurate on its face: it states that the Court "finds" termination where the Court later acknowledged on the record that no such finding was intended. That internal contradiction alone requires correction or vacatur to conform the written order to the Court's actual ruling.

9. On September 10, 2025, the Court further recognized that the termination letter referenced in the August 14 Order was directed to Spin, not to Mr. Lubin personally, and that the Court's intent on August 13 was not to adjudicate Mr. Lubin's separate claims against Hi Bar. (Ex. I at 40:17-41:2). This confirmation directly contradicts the August 14 Order's implicit premise that termination applied to Mr. Lubin personally, rather than to Spin, and underscores that the written order overstated the scope of what the Court intended to decide.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1009                                           RECEIVED NYSCEF: 01/19/2026

## II. GOVERNING LAW: FRAUD UPON THE COURT, DUE PROCESS, AND RULE 1.540

A. Fraud upon the Court is an extraordinary doctrine reserved for extraordinary misconduct. It applies where a party "has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense." Cox v. Burke, 706 So. 2d 43, 46 (Fla. 5th DCA 1998). Submitting a proposed order that materially expands an oral ruling, without notice to an affected party, and then using that order to obtain immediate financial relief in another court constitutes precisely the type of unconscionable scheme Cox condemns.

B. Florida Rule of Civil Procedure 1.540(b)(3) permits relief from an order for "fraud … misrepresentation, or other misconduct of an adverse party" within one year; and the rule expressly preserves the Court's power to set aside an order for "fraud upon the court." Fla. R. Civ. P. 1.540(b); see also Pino v. Bank of New York, 121 So. 3d 23 (Fla. 2013).

Because this Motion alleges fraud upon the Court itself—conduct that corrupts the judicial process and results in an order that does not reflect the Court's actual rulings—it is not subject to the one-year limitation applicable to intrinsic fraud under Rule 1.540(b)(3). Instead, Movant invokes this Court's inherent authority and continuing obligation to vacate orders procured through fraud upon the Court in order to preserve the integrity of its proceedings.

C. Fraud upon the Court includes extrinsic fraud—conduct that prevents an unsuccessful party from fully presenting his case. DeClaire v. Yohanan, 453 So. 2d 375, 377 (Fla. 1984) (distinguishing extrinsic vs. intrinsic fraud).

D. Due process is violated where a court grants relief beyond what was noticed or litigated. Bluebone Dev., LLC v. Malibu Bay Cmty. Ass'n, Inc., 289 So. 3d 515, 516 (Fla. 3d DCA 2019) (reversing where trial court expanded scope and ruled on matters not noticed).

E. Orders procured through fraud upon the Court are voidable at any time, and trial courts possess both broad discretion and an affirmative duty to vacate orders that misstate the record, exceed the scope of the Court's actual rulings, or are entered without due process. Where the written order materially diverges from the oral ruling and is later acknowledged by the Court not to reflect its intent, corrective action is required to preserve the integrity of the judicial process.

## III. ARGUMENT

### A. The August 14 Order is infected with due-process defects and relief beyond the noticed issues.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1009                                          RECEIVED NYSCEF: 01/19/2026

Movant is not here arguing about "semantics." Movant is challenging the entry of an order that (i) was drafted and submitted in violation of the basic requirement that proposed orders be circulated to all parties; (ii) injected new adjudicative "findings" beyond the hearing notice and beyond the record; and (iii) was then used to strip Movant of $2.1 million in a different court before Movant could obtain a hearing on his timely record-correction motion.

Movant's contemporaneous Motion for Reconsideration/Clarification documented that the proposed order was submitted to chambers without first being furnished to counsel for Mr. Lubin, contrary to Fla. R. Jud. Admin. 2.516(h)(1) and Local Rule 8, and that it contained "several findings that were not reached, were not briefed, and were not noticed." (Ex. G at paras. 3-6).

That alone warrants vacatur or correction. Relief that was not noticed and not litigated is a due-process violation. Bluebone, 289 So. 3d at 516.

Movant does not suggest any improper judicial conduct; the issue is that the order-submission process failed in a way that allowed non-record findings to be entered without notice or opportunity to be heard.

This Motion does not allege judicial error. It alleges a corrupted order-entry process. Where a proposed order is submitted without service, embeds extra-record findings, and is later acknowledged by the Court not to reflect its intent, the integrity of the judicial process—not merely the correctness of the ruling—is implicated.

**B. The record confirms the August 14 Order contains "findings" the Court did not intend to make—and that mattered.**

Paragraph 8 of the August 14 Order states: "The Court finds that the Common Interest Agreement was terminated by Hi Bar on April 3, 2024." (Ex. D para. 8).

Yet on September 3, 2025, when Movant called out this record corruption, the Court expressly acknowledged that this statement was "not meant to be a finding" and stated it would amend "finds" to "notes." (Ex. H at 22:9-20).

If the Court did not intend to make a finding, then an order stating that the Court 'finds' that fact is materially inaccurate and does not reflect the Court's ruling. The error is not semantic; it converted a non-ruling into an adjudicative fact and supplied the factual predicate for the downstream "no rights to Net Proceeds" determination. And it is not harmless. Paragraphs 10 and 11 then escalate the mischief by purporting to determine—globally and conclusively—that Mr. Lubin and all of his affiliates have "no rights to the Net Proceeds." (Ex. D paras. 10-11). Those paragraphs are not independent rulings; they are derivative of Paragraph 8's termination language. Once the termination "finding" collapses—as the Court itself acknowledged—the downstream "no rights to Net Proceeds" determination has no factual foundation.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1009                                          RECEIVED NYSCEF: 01/19/2026

Nothing in the August 13, 2025 oral ruling adjudicated ownership, entitlement, or extinguishment of Mr. Lubin's or any affiliate's rights to the Net Proceeds. Paragraphs 10 and 11 of the August 14 Order therefore exceed a standing determination and purport to resolve substantive property rights that were neither noticed, litigated, nor argued. Such relief is void for lack of due process and cannot stand.

The oral ruling on August 13 confirms the narrow purpose: the Court granted the Joint Motion and stated it did not see how Mr. Lubin had any right to stand in and contest the settlement, while recognizing Mr. Lubin "may have claims against Hi Bar … but that has nothing to do with the settlement." (Ex. C at 41:1-25).

On September 10, 2025, the Court further acknowledged that the termination letter referenced in the August 14 Order was directed to Spin, not to Mr. Lubin personally. (Ex. I at 40:17-41:2). These transcript admissions matter because they confirm what Movant has said from day one: the August 14 Order, as drafted and entered, overstated and mischaracterized the Court's ruling.

**C. This was not an academic dispute; the August 14 Order was immediately relied upon by the Bankruptcy Court to authorize disbursement of $2.1 million from the registry.**

The August 14 Order was not merely entered; it was immediately operationalized as an enforcement instrument. The Order expressly contemplated—and was drafted to enable—its filing in the Bankruptcy Court to trigger registry disbursement of the Net Proceeds. (Ex. D paras. 14, 16). The Bankruptcy Court did not independently adjudicate these issues; it relied on the August 14 Order as an authoritative state-court determination—demonstrating why accuracy of this Court's record is not optional.

That is exactly what occurred. The Bankruptcy Court's August 27, 2025 order directed the Clerk to disburse $2,107,548.61 to Schwartz Breslin, PLLC, relying on the August 14 Order's determinations regarding Mr. Lubin's alleged lack of rights. (Ex. E).

Thus, a short-noticed state-court order—procured through an ex parte proposed-order submission and containing non-record "findings"—became the mechanism for immediate transfer of $2.1 million. This is precisely the kind of extrinsic fraud and systemic interference that the fraud-upon-the-court doctrine exists to deter and remedy.

**D. The confidential settlement agreement itself underscores the scheme and why the Court must intervene.**

The settlement agreement is stamped "HIGHLY CONFIDENTIAL," and it expressly disclaims any rights by Mr. Lubin or Spin, while containing factual representations about termination and alleged breaches of the Spin/Hi Bar Common Interest Agreement. (Sealed Ex. F §§ 7, 20-21).

Those representations were then echoed—verbatim in substance—in the August 14 Order as "findings." (Ex. D para. 8). The chain is unmistakable: confidential settlement terms and

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1009    RECEIVED NYSCEF: 01/19/2026

one-sided assertions were converted into court "findings" through an ex parte proposed order process, then used to unlock and distribute registry funds. This Court should not permit its process to be used as a mechanism for effecting a non-adversarial transfer of registry funds through a materially inaccurate record.

**E. Relief and sanctions are warranted; at minimum, an evidentiary hearing is mandatory.**

When fraud upon the Court is credibly alleged, the Court must protect its integrity. Because the submission history, communications with chambers, and timing of the Bankruptcy Court filing are outside the four corners of the docket, resolution on affidavits alone would be inadequate. Movant requests an evidentiary hearing at which the Court can determine, on a complete record, (i) who drafted the August 14 Order; (ii) when and how it was transmitted to chambers; (iii) whether it was furnished to Movant before submission; (iv) what communications occurred with the JA/judge regarding the content; (v) why the order contains findings the Court later acknowledged were not intended; and (vi) how quickly the order was deployed in the Bankruptcy Court to obtain disbursement.

Following an evidentiary hearing and factual findings, Movant respectfully requests that the Court consider whether sanctions are appropriate, including fees incurred to correct the record and protect the Court from being used as a conduit for relief that exceeded the Court's actual rulings

**IV. REQUEST FOR RELIEF**

WHEREFORE, Movant respectfully requests that this Court enter an order:

1. VACATING the August 14, 2025 Order on Joint Motion to Endorse Settlement (Ex. D) in its entirety or alternatively striking and correcting Paragraphs 8–11 and any derivative 'no rights' determinations entered therefrom nunc pro tunc to conform the written order to the Court's actual rulings;

2. Setting an EXPEDITED, IN-PERSON evidentiary hearing (with live testimony and cross-examination) on fraud upon the Court and record corruption, with a court reporter present;

3. Ordering the Settling Parties and their counsel to PRODUCE (for in camera review if necessary) all drafts, redlines, submission emails, e-portal uploads, and communications with chambers relating to the proposed August 14 Order;

4. Entering interim injunctive relief requiring that the Net Proceeds be preserved (no disbursement, transfer, or dissipation), including requiring the recipients to maintain all funds in trust pending further order;

5. Directing the Settling Parties to promptly file any corrected/amended order in the Bankruptcy Court and to notify that court that the August 14 Order has been vacated or materially corrected;

6. Awarding Movant his attorneys' fees and costs (or, if pro se, taxable costs) incurred in bringing this motion and protecting the record;

7. Issuing an Order to Show Cause why sanctions should not be imposed for fraud upon the Court and violation of the proposed-order submission rules; and

8. Granting such other and further relief as this Court deems just and proper.

## VERIFICATION

I declare under penalty of perjury that I have read the foregoing Motion and that the factual statements contained in it are true and correct to the best of my knowledge, information, and belief, based on the record and the exhibits referenced herein.

Dated: January 13, 2026

__/s/ Avrumi Lubin_____

**AVRUMI "JOSH" LUBIN, Movant**

1460 Arboretum Pkwy

Lakewood, NJ 08701

Email: josh@spincapital.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on all counsel of record and parties via the Florida Courts E-Filing Portal and/or electronic mail service pursuant to Fla. R. Jud. Admin. 2.516 on this 13 day of January, 2026.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM        INDEX NO. 650582/2022

NYSCEF DOC. NO. 1009                                    RECEIVED NYSCEF: 01/19/2026

___/s/ Avrumi Lubin_____

AVRUMI "JOSH" LUBIN

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1009                                                          RECEIVED NYSCEF: 01/19/2026

<u>**PROPOSED ORDER**</u>

**IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT**

**IN AND FOR BROWARD COUNTY, FLORIDA**

**CASE NO.: CACE-22-005125**

**ORDER GRANTING VERIFIED EMERGENCY MOTION TO VACATE ORDER
PROCURED BY FRAUD UPON THE COURT**

THIS CAUSE came before the Court on Movant Avrumi "Josh" Lubin's Verified Emergency Motion to Vacate August 14, 2025 Order Procured by Fraud Upon the Court; Motion to Correct the Record; Motion for Evidentiary Hearing and Sanctions (the "Motion"). The Court, having reviewed the Motion, the record, and being otherwise fully advised, hereby ORDERS and ADJUDGES as follows:

1. The Motion is GRANTED.

2. The Court's August 14, 2025 "Order on Joint Motion to Endorse Settlement" is VACATED in its entirety as procured by fraud upon the Court. Alternatively, and at minimum, Paragraphs 8-11 and 14 (and any related findings) are STRICKEN and deemed void.

3. An IN-PERSON evidentiary hearing on fraud upon the Court and record corruption is set for _____ at _____ a.m./p.m., to be held in open court (not telephonic), with a court reporter.

4. The Settling Parties and their counsel shall preserve all documents, communications, drafts, redlines, and submission materials relating to the August 14 Order and shall produce them to Movant and/or the Court as directed in a separate scheduling order.

5. Pending further order, all persons/entities in possession of any portion of the Net Proceeds shall maintain those funds in a segregated trust/escrow account and shall not disburse, transfer, encumber, or dissipate the funds.

6. Jurisdiction is reserved to award sanctions, fees, and costs and to enter any further relief necessary to protect the integrity of the Court.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1009    RECEIVED NYSCEF: 01/19/2026

DONE AND ORDERED in Chambers in Broward County, Florida on _____,
2026.


_____

**HON. DAVID A. HAIMES**

CIRCUIT COURT JUDGE

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1009    RECEIVED NYSCEF: 01/19/2026

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

In re: EXCELL AUTO GROUP, INC., Debtor.
Case No. 22-12790-EPK (Chapter 7)

NICOLE-TESTA MEHDIPOUR, as Chapter 7 Trustee for Excell Auto Group, Inc., Plaintiff,
v.
HI BAR CAPITAL, LLC, et al., Defendants.
Adv. Proc. No. 23-01132-EPK

---

# SUB-EXHIBIT 18-H

Verified Emergency Motion for Order to Show Cause and for Civil Contempt (Enforcement of Apr. 14, 2022 Oral Freeze Order) and for Accounting, etc. (Broward Cty., Fla., Case No. CACE-22-005125, Filing No. 239729527, filed Jan. 17, 2026).

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1010                               RECEIVED NYSCEF: 01/19/2026

**SUPREME COURT OF THE STATE OF NEW YORK** Index No. 650582/2022
**COUNTY OF NEW YORK**        Third-Party Index No. 595367/2022

Hon. Nancy M. Bannon, J.S.C. (Part 61M)

TETON LIFE LLC as Assignee of the Rights of Spin Capital, LLC,
Plaintiff,
-against-
GOLDEN FOOTHILL INSURANCE SERVICES, LLC et al.,
Defendants.
-------------------------------------------------X
GOLDEN FOOTHILL INSURANCE SERVICES, LLC et al.,
Third-Party Plaintiffs,
-against-
SPIN CAPITAL, LLC, and AVRUMI LUBIN,
Third-Party Defendants.
-------------------------------------------------X

# EXHIBIT H

**Defendant Avrumi ("Josh") Lubin's Verified Emergency Motion for Order to Show Cause and for Civil Contempt (Enforcement of April 14, 2022 Oral Freeze Order), and for Accounting, Turnover/Escrow of Proceeds, Sanctions, and Other Ancillary Relief**

Broward Cty. Fla., Case No. CACE-22-005125, Filing No. 239729527, filed Jan. 17, 2026.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 297 E-Filed 01/17/2026 09:35:13 PM RECEIVED NYSCEF: 01/19/2026

# IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

## CASE NO. CACE-22-005125

FVP OPPORTUNITY FUND III, LP, a Delaware limited partnership;
FVP INVESTMENTS, LLC, a Delaware limited liability company; and
FVP SERVICING, LLC, a Delaware limited liability company,

       Plaintiffs,

v.

KARMA OF BROWARD, INC., a Florida corporation, et al.,

       Defendants.

_____/


HI BAR CAPITAL, LLC, a New York limited liability company,

       Plaintiff,

v.                                Consolidated Case No. CACE-22-006401

KARMA OF PALM BEACH, INC., a Florida corporation, et al.,

       Defendants.

_____/


JUDGE: HON. DAVID A. HAIMES
DIVISION: 07


**DEFENDANT AVRUMI "JOSH" LUBIN'S VERIFIED EMERGENCY MOTION
FOR ORDER TO SHOW CAUSE AND FOR CIVIL CONTEMPT
(ENFORCEMENT OF APRIL 14, 2022 ORAL FREEZE ORDER),
AND FOR ACCOUNTING, TURNOVER/ESCROW OF PROCEEDS,
SANCTIONS, AND OTHER ANCILLARY RELIEF**

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010                                            RECEIVED NYSCEF: 01/19/2026

COMES NOW Defendant Avrumi "Josh" Lubin ("Lubin" or "Movant"), and files this Verified Emergency Motion for entry of an Order to Show Cause and for civil contempt for violation of the Court's April 14, 2022 Oral Freeze Order, and in support states:

## I. INTRODUCTION

1. This case involves court-ordered preservation of certain vehicle collateral (the "Vehicle Collateral").

2. On April 14, 2022, the Court entered an Oral Freeze Order (the "Oral Freeze Order") intended to preserve the status quo and prevent dissipation of the Vehicle Collateral and/or its proceeds.

3. On June 7, 2022, the Court entered a written Order denying the motion to dissolve the April 14, 2022 Oral Freeze Order and reserving jurisdiction to enforce the Order. (Exhibit A).

4. Movant has learned facts indicating that, after entry of the Oral Freeze Order and while it remained in effect, one or more Respondents (defined below) sold, transferred, or otherwise disposed of Vehicle Collateral and/or its proceeds in violation of the Oral Freeze Order, and that proceeds have not been preserved, accounted for, or deposited as required.

5. Immediate Court intervention is necessary to (a) stop further dissipation, (b) compel a sworn VIN-by-VIN accounting, (c) require turnover/escrow of proceeds, and (d) set a prompt evidentiary hearing.

## II. THE ORDER(S) TO BE ENFORCED

6. The April 14, 2022 Oral Freeze Order is reflected in the April 14, 2022 hearing transcript filed in the court record by Plaintiffs. (See Exhibit E). Movant will rely on the transcript at the Show Cause Hearing.

7. The Court's June 7, 2022 written order (Exhibit A) confirms the existence of the April 14, 2022 Oral Freeze Order, denied dissolution, and expressly reserved jurisdiction to enforce.

## III. MOVANT'S INTEREST AND THE VEHICLES AT ISSUE

8. Movant is a Defendant in this matter and has a direct, substantial interest in preservation of the Vehicle Collateral and proceeds, including by virtue of Movant's senior creditor / lienholder posture as to certain vehicles and/or proceeds (as will be proven at hearing). Movant is also the assignee of certain judgment and enforcement rights and related interests, including rights arising from and/or documented in: (i) the Common Interest and Joint Litigation Agreement between Spin Capital, LLC and Hi Bar Capital, LLC (effective January 28, 2022); and (ii) an absolute assignment to Movant of Spin Capital, LLC's rights and interests. (Exhibit F).

9. The Vehicle Collateral includes, without limitation, vehicles reflected on the inventory lists attached as Exhibit B (the "Vehicle List"), including the Palm Beach and Broward inventory groupings, and any additional non-enumerated vehicles owned/controlled by the Karma entities or their affiliates during the relevant period.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010
RECEIVED NYSCEF: 01/19/2026

## IV. RESPONDENTS AND ADDITIONAL APPEARANCES

10. Movant seeks an Order to Show Cause directed to the following persons/entities (collectively, "Respondents"), each of whom had notice of the Oral Freeze Order and/or acted in concert with parties bound by it:

   a. FVP Opportunity Fund III, LP; FVP Investments, LLC; FVP Servicing, LLC;

   b. Franklin Capital Funding, LLC; Franklin Capital Group, LLC; Franklin Capital Management, LLC d/b/a Wing Lake Capital;

   c. Jerrell "Jerry" Breslin, Esq., individually and/or in his capacity as counsel/agent for the above, to the extent he directed, caused, facilitated, or controlled any sale/transfer and proceeds;

   d. Any other person/entity to be identified through the sworn accounting and document production ordered herein who participated in or received proceeds from the sale/transfer of Vehicle Collateral.

11. Movant will present evidence at hearing that Respondents had notice of the Oral Freeze Order, including notice reflected in the record and the parties' litigation participation.

11A. Movant further requests that the Court require the following parties/entities to appear through an authorized representative with knowledge and to bring responsive documents identified in Exhibit C for fact-finding and tracing purposes (without any initial contempt designation absent further findings): Hi Bar Capital, LLC; Yisroel Herbst; Mordechai Herbst. These entities are appropriate record custodians in light of their documented common-interest/joint litigation relationship with Spin Capital, LLC in connection with this consolidated litigation. (Exhibit F). Movant also requests that the Court require the Trustee's limited appearance (through counsel) for fact-finding and document production, or in the alternative, that the Court authorize expedited subpoenas to the Trustee as a nonparty record custodian.

## V. THE VIOLATIONS (FACTS TO BE PROVEN)

12. On information and belief, after entry of the Oral Freeze Order and while it remained in effect, Respondents caused the sale/transfer of Vehicle Collateral and/or distributed sale proceeds.

13. Movant will present evidence that the sales included vehicles on the Vehicle List (Exhibit B) and that the aggregate value at issue is in the multi-million-dollar range.

14. Admissions / statements. Movant will present testimony and documentary support that:

   a. Movant's counsel was informed by Mr. Breslin that vehicles were sold after the TRO/freeze was in effect;

   b. Movant personally heard a phone call in which counsel Morgan Edelboim instructed/demanded that Mr. Breslin turn over the vehicles to Movant (and referenced, in

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010                                    RECEIVED NYSCEF: 01/19/2026

substance, that Franklin had lost its fraud claim against Spin in Michigan), and Mr. Breslin stated the vehicles were sold and invited Movant to meet in person to "explain what happened;" and

c. During that same call, Mr. Edelboim stated that Hi Bar never gave permission to Mr. Breslin/FVP to sell the vehicles.

(See Exhibit D, Affidavit of Avrumi "Josh" Lubin.)

15. Despite demands, Respondents have not provided a complete sworn accounting identifying (a) which vehicles were sold, (b) to whom, (c) the gross and net proceeds, and (d) where proceeds are currently held.

## VI. LEGAL STANDARD (CIVIL CONTEMPT)

16. Florida courts have inherent authority to enforce their lawful orders through civil contempt.

17. Civil contempt is appropriate where there is (a) a valid order, (b) knowledge/notice, and (c) willful noncompliance or violation. Here, the Court's Oral Freeze Order (and the June 7, 2022 written order confirming it and reserving enforcement jurisdiction) supply the enforceable directive(s).

18. Movant seeks coercive and compensatory remedies designed to restore the status quo, preserve proceeds, and ensure compliance, including a sworn accounting, turnover/escrow, and fees/costs.

## VII. RELIEF REQUESTED

WHEREFORE, Movant respectfully requests that the Court enter an Order:

A. Finding Movant has made a prima facie showing and issuing an ORDER TO SHOW CAUSE why Respondents should not be held in civil contempt for violating the April 14, 2022 Oral Freeze Order;

B. Setting an expedited evidentiary hearing and requiring Respondents' personal appearance;

C. Ordering Respondents, within 48 hours (or other short deadline), to provide a sworn VIN-by-VIN accounting in the form of Schedule A (Exhibit C) covering all vehicles listed on Exhibit B and any additional non-enumerated vehicles within scope;

D. Ordering Respondents to produce the documents identified in Schedule B (Exhibit C), including all sale/transfer records and all records tracing proceeds;

E. Ordering immediate preservation, including (i) no further sale/transfer/encumbrance of any remaining Vehicle Collateral and (ii) immediate deposit of all proceeds currently held into the Registry of the Court or a segregated escrow subject to Court control pending further order;

F. Awarding Movant fees and costs incurred in bringing this enforcement motion; and

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010                                        RECEIVED NYSCEF: 01/19/2026

G. Granting such other and further relief as the Court deems just and proper (including appointment of a special master/receiver for the limited purpose of locating and preserving collateral/proceeds, if warranted).

## VIII. VERIFICATION

I, Avrumi "Josh" Lubin, declare under penalty of perjury that I have read the foregoing Motion and that the facts stated in it are true and correct to the best of my personal knowledge, or are based on information and belief where so stated.

Dated: January 17, 2026

/s/ Avrumi "Josh" Lubin

AVRUMI "JOSH" LUBIN, Movant (pro se)

1460 Arboretum Parkway

Lakewood, NJ 08701

Email: josh@spincapital.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via the Florida Courts E-Filing Portal and/or email service pursuant to Fla. R. Jud. Admin. 2.516 on all counsel/parties of record on this 17th day of January, 2026.

/s/ Avrumi "Josh" Lubin

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM       INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010                                    RECEIVED NYSCEF: 01/19/2026

# EXHIBIT A

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 510    E-Filed 06/07/2022 06:48:16 PM

RECEIVED NYSCEF: 01/19/2026

**IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
IN AND FOR BROWARD COUNTY, FLORIDA**

CASE NO. <u>CACE22005125</u>  DIVISION: **21**  JUDGE: <u>**Singer, Michele Towbin (21)**</u>

**FVP Opportunity Fund III, LP, et al**

Plaintiff(s) / Petitioner(s)

v.

**Scott Zankl, et al**

Defendant(s) / Respondent(s)

_____/

## <u>Order on Defendants' Motion to Dissolve April 14, 2022 Oral Freeze Order</u>

THIS CAUSE comes before the Court on Defendants, MOSHE FARACHE, AUTO WHOLESALE OF BOCA, LLC and MMS ULTIMATE SERVICES, INC.'s (the "Farache Defendants") on Defendants' Motion to Dissolve April 14, 2022 Oral Freeze Order Pursuant to Fla. R. Civ. P. 1.610(d) Within 5 Days. In response to the motion, the Court scheduled a hearing on the motion for June 3, 2022 at which hearing counsel for the Plaintiffs and the Farache Defendants appeared and the Court having heard the arguments of Counsel and the Court being otherwise fully advised in the premises, it is hereby

ORDERED AND ADJUDGED

1. The motion of the Farache Defendants to dissolve the injunction is Denied, without prejudice, for the reasons stated by the Court on the record.

2. This Court will hold a full evidentiary hearing and has scheduled two (2) full days for the hearing on the Plaintiffs' Motion for Injunction, Plaintiffs Motion to Appoint a Receiver, Plaintiffs Rule to Show Cause in Replevin and the Farache Defendants Motion to Dissolve the Injunction. The hearing will be held on July 25, 2022 and July 26, 2022.

3. This Courts' Order of May 25, 2022 entitled "ORDER SCHEDULING EVIDENTIARY HEARING ON DEFENDANTS' MOTION TO DISSOLVE APRIL 14, 2022 ORAL FREEZE ORDER AND ON PLAINTIFFS' MOTION FOR TEMPORARY INJUNCTION AND APPOINTMENT OF RECEIVER, AND SHOW CAUSE IN REPLEVIN" is hereby modified only to the extent that the date of the hearing is

*** FILED: BROWARD COUNTY, FL  BRENDA D. FORMAN,  CLERK 06/07/2022 06:48:16 PM.****

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1010                                              RECEIVED NYSCEF: 01/19/2026

Case Number: CACE22005125

rescheduled from July 8, 2022 to July 25, 2022 and July 26, 2022.

4. The Court on June 3, 2022 also heard the Plaintiffs' *ore tenus* motion to compel the discovery due from the Farache Defendants as ordered by the Court on April 14, 2022 as well as the production requested by the Plaintiffs on the Farache Defendants on April 18, 2022. In response the parties agreed as follows:

   a. The Farache Defendants shall supply the ordered discovery and supply the discovery requested in the Plaintiffs' discovery requests by close of business June 15, 2022.

   b. The Plaintiffs shall comply with production requests from the Farache Defendants within ten (10) days of the request or by close of business June 15, 2022, whichever is later.

   c. The Court ratifies the agreement of the parties and orders the parties to comply with the Agreement to supply discovery.

   d. To the extent that there are any disputes regarding the discovery, either party shall set the dispute on the next available motion calendar date and notify opposing counsel of the date and the Court will resolve the dispute. It is the intent of the Court for discovery to be exchanged well in advance of the hearings scheduled for July 25, 2022 and July 26, 2022.

5. The Court reserves jurisdiction to enforce this Order as required.

**DONE AND ORDERED** in Chambers at Broward County, Florida on 7th day of June, 2022.

CACE22005125 Ot

CACE22005125 06-07-2022 2:34 PM
Hon. Michele Towbin Singer
**CIRCUIT JUDGE**
Electronically Signed by Singer, Michele Towbin (21)

**Copies Furnished To:**
Alan R Crane , E-mail : rrivera@furrcohen.com
Alan R Crane , E-mail : staff1@furrcohen.com
Alan R Crane , E-mail : acrane@furrcohen.com
Bradford M Cohen , E-mail : bmc@floridajusticefirm.com
Bradford M Cohen , E-mail : service@floridajusticefirm.com
Bradley S Shraiberg , E-mail : dwoodall@slp.law
Bradley S Shraiberg , E-mail : bss@slp.law

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010                                      RECEIVED NYSCEF: 01/19/2026

Case Number: CACE22005125

Bradley S Shraiberg , E-mail : pmouton@slp.law
Cory Mauro , E-mail : cory@maurolawfirm.com
Cory Mauro , E-mail : service@maurolawfirm.com
Cory Mauro , E-mail : cory.mauro@maurolawfirm.com
Evan Appell , E-mail : evan@maurolawfirm.com
Henry B Handler , E-mail : hbh@whcfla.com
Henry B Handler , E-mail : filings@whcfla.com
Henry B Handler , E-mail : jn@whcfla.com
Jay L Farrow , E-mail : service@farrowlawfirm.com
Jay L Farrow , E-mail : stephanie@farrowlawfirm.com
Jerrell Andrew Breslin , E-mail : jerrellbreslin@gmail.com
Jerrell Andrew Breslin , E-mail : jb@richardbaronlaw.com
Jerrell Andrew Breslin , E-mail : eservice@richardbaronlaw.com
Joel L. Wiegert, Esq. , E-mail : Joel.Wiegert@KutakRock.com
Jonathan Noah Schwartz , E-mail : jnsesquire@gmail.com
Jonathan Noah Schwartz , E-mail : JNS.NGQB@case.prolific.com
Jonathan Schwartz, Esq. , E-mail : jschwartz@jonschwartzlaw.com
Jose J Teurbe-Tolon , E-mail : jose@xanderlaw.com
Jose J Teurbe-Tolon , E-mail : service@xanderlaw.com
Keith Lee , E-mail : klee@feenixpartners.com
Mark C Perry , E-mail : mark@markperrylaw.com
Mark C Perry , E-mail : maureen@markperrylaw.com
Mark J Wolfson , E-mail : CRowell@foley.com
Mark J Wolfson , E-mail : mwolfson@foley.com
Matthew Pilkington , E-mail : mpilkington@feenixpartners.com
Michael A. Mullavey , E-mail : mmullavey@mcper.com
Michael James McMullen , E-mail : Service@FloridaJusticeFirm.com
Michael James McMullen , E-mail : Michael@FloridaJusticeFirm.com
Patrick Dorsey , E-mail : pdorsey@slp.law
Thomas U Graner , E-mail : kristin@granerlaw.com
Thomas U Graner , E-mail : ivy@granerlaw.com
Thomas U Graner , E-mail : tom@granerlaw.com
Xavier A Franco , E-mail : docketclerk@mcper.com
Xavier A Franco , E-mail : xfranco@mcper.com

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010 RECEIVED NYSCEF: 01/19/2026

# EXHIBIT B

INDEX NO. 650582/2022
NYSCEF DOC. NO. 1010
RECEIVED NYSCEF: 01/19/2026

**Karma of Palm Beach Inventory List**

03/12/22 List

| # | Year | Make | Model | VIN | Color | Price | Date |
|---|------|------|-------|-----|-------|-------|------|
| 1 | 2021 | FERRARI | SF90 | ZFF95NLA7M0265077 | BLACK | $ 865,000 | Jan-22 |
| 2 | 2019 | FERRARI | PISTA | ZFF90HLA8K0245966 | GRAY | $ 465,000 | Feb-22 |
| 3 | 2021 | lamborghini | URUS | ZPBUA1ZL1MLA12270 | WHITE | $ 490,000 | Feb-22 |
| 4 | 2021 | rolls royce | CULLINAN | SLATV8C09MU204097 | WHITE | $ 400,000 | Nov-21 |
| 5 | 2018 | lamborghini | HURICAN | ZHWUS4ZF5JLA10303 | GREEN | $ 350,000 | Jan-22 |
| 6 | 2020 | MERCEDES | G WAGON | W1NYC7HJ6LX362080 | BLUE | $ 340,000 | Jan-22 |
| 7 | 2020 | MCLAREN | 720 | SBM14FCA1LW005247 | ORANGE | $ 335,000 | Dec-21 |
| 8 | 2014 | lamborghini | AVENTADOR | ZHWUR1ZD7ELA02931 | WHITE | $ 325,000 | Feb-22 |
| 9 | 2020 | MCLAREN | 720 | SBM14FCA5LW004229 | WHITE | $ 325,000 | Feb-22 |
| 10 | 2017 | FERRARI | F12 | ZFF74UFA7H0221036 | RED | $ 300,000 | Feb-22 |
| 11 | 2021 | FERRARI | ROMA | ZFF98RNA3M0263662 | BLACK | $ 285,000 | Nov-21 |
| 12 | 2018 | MCLAREN | 720 S | SBM14DCA7JW001804 | WHITE | $ 282,000 | Jul-21 |
| 13 | 2020 | lamborghini | URUS | ZPBUA1ZLXLLA06529 | WHITE | $ 255,000 | Feb-22 |
| 14 | 2017 | rolls royce | WRAITH | SCA665C51HUX86688 | BLUE | $ 235,000 | Jan-22 |
| 15 | 2021 | REZVANI | TANK | 1C4HJXDGXMW647833 | GRAY | $ 200,000 | Feb-22 |
| 16 | 2016 | RHINO | RHINO | 1FDUF4HT2GEB79768 | BLACK | $ 180,000 | Dec-21 |
| 17 | 2020 | Audi | R8 COUPE | WUAKBAFX5L7900209 | GRAY | $ 170,000 | Feb-22 |
| 18 | 2016 | FERRARI | CALIFORNIA | ZFF77XJA4G0218626 | GRAY | $ 168,000 | Feb-22 |
| 19 | 2016 | RHINO | RHINO | 1FDUF4HT0GEC58209 | BLACK | $ 160,000 | Dec-21 |
| 20 | 2017 | MCLAREN | 570 | SBM13DAAXHW002610 | BLACK | $ 128,000 | Dec-21 |
| 21 | 2020 | LANDROVER | RANGE ROVER | SALWZ2RE3LA720006 | BLACK | $ 126,000 | Nov-21 |
| 22 | 2021 | PORSCHE | 718 CAYMAN | WP0AC2A82MK289016 | BLACK | $ 125,000 | Feb-22 |
| 23 | 2000 | RADICAL | SR8 RX | SR800239 | WHITE | $ 105,000 | Nov-21 |
| 24 | 2020 | KARMA | REVERO | 50GK43SB7LA000141 | WHITE | $ 98,000 | Dec-21 |
| 25 | 2020 | KARMA | REVERO | 50GK43SB6LA000129 | WHITE | $ 98,000 | Dec-21 |
| 26 | 2014 | PORSCHE | 911 | WP0AB2A94ES121195 | BLACK | $ 95,000 | Jan-22 |
| 27 | 2020 | KARMA | REVERO | 50GK43SB2LA000094 | SILVER | $ 91,455 | Dec-21 |
| 28 | 2019 | bmw | X7 | 5UXCX4C56KLS39222 | BLUE | $ 80,000 | Feb-22 |
| 29 | 2018 | bmw | M5 | WBSJF0C57JB282131 | BLACK | $ 73,000 | Dec-21 |
| 30 | 2018 | bmw | 7 SERIES | WBA7H6C58JG614866 | BLACK | $ 69,000 | Dec-21 |
| 31 | 2021 | AERO BUILD | TRAILER | 4A9U1E615MN143050 | MULTI | $ 57,000 | Jul-21 |
| 32 | 2018 | CADILLAC | ESCALADE | 1GYS4BKJXJR261612 | BLUE | $ 55,000 | Jan-22 |
| 33 | 2019 | GMC | YUKON | 1GKS1CKJ8KR354378 | WHITE | $ 48,000 | Dec-21 |
| 34 | 2014 | PORSCHE | CAYENNE | WP1AA2A22ELA00731 | BLACK | $ 30,000 | Feb-22 |
| 35 | 2021 | MOKE | | 71803 | WHITE | $ 22,000 | Dec-21 |
| 36 | 2021 | MOKE | | 83111 | WHITE | $ 22,000 | Dec-21 |
| 37 | 2021 | MOKE | | 83112 | WHITE | $ 22,000 | Dec-21 |
| 38 | 2021 | MOKE | | 83113 | WHITE | $ 22,000 | Dec-21 |
| 39 | 2022 | MOKE | | 83114 | WHITE | $ 22,000 | Dec-21 |
| 40 | 2022 | MOKE | | 83115 | BLACK | $ 22,000 | Dec-21 |
| 41 | 2022 | MOKE | | 83116 | BLACK | $ 22,000 | Dec-21 |
| 42 | 2022 | MOKE | | 83117 | WHITE | $ 22,000 | Dec-21 |
| 43 | 2022 | MOKE | | 83118 | WHITE | $ 22,000 | Dec-21 |
| 44 | 2022 | MOKE | | 83119 | BLACK | $ 22,000 | Dec-21 |
| 45 | 2022 | MOKE | | 83120 | BLACK | $ 22,000 | Dec-21 |
| 46 | 2022 | MOKE | | 83121 | BLACK | $ 22,000 | Dec-21 |
| 47 | 2022 | MOKE | | 83122 | BLACK | $ 22,000 | Dec-21 |
| 48 | 2022 | MOKE | | 110333 | WHITE | $ 22,000 | Dec-21 |
| 49 | 2022 | MOKE | | 110334 | WHITE | $ 22,000 | Dec-21 |
| 50 | 2021 | MOKE | | 120832 | BLUE | $ 22,000 | Dec-21 |
| 51 | 2021 | MOKE | | 183111 | BLACK | $ 22,000 | Dec-21 |
| 52 | 2021 | MOKE | | 183112 | BLACK | $ 22,000 | Dec-21 |
| 53 | 2021 | MOKE | | 183113 | WHITE | $ 22,000 | Dec-21 |
| 54 | 2021 | MOKE | | 183114 | BLACK | $ 22,000 | Dec-21 |
| 55 | 2021 | MOKE | | 183115 | WHITE | $ 22,000 | Dec-21 |
| 56 | 2021 | MOKE | | 183116 | WHITE | $ 22,000 | Dec-21 |
| 57 | 2021 | MOKE | | 183117 | WHITE | $ 22,000 | Dec-21 |
| 58 | 2021 | MOKE | | 183118 | WHITE | $ 22,000 | Dec-21 |

| Number of cars in above list | 58 | | Total | $ 7,936,455 |
|---|---|---|---|---|

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022
NYSCEF DOC. NO. 1010
RECEIVED NYSCEF: 01/19/2026

**Karma Broward**

3/12/2022

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 | 2019 | ASTON MARTIN | DB 11 CONV | SCFRMFCW6KGMO7671 | TAN | $ 175,000 |
| 2 | 2019 | BENTLY | BENTAYGA | SJAAM2ZV7KC027489 | WHITE | $ 160,000 |
| 3 | 2020 | BENTLEY | GT | SCBCG2ZG0LC0LC075842 | WHITE | $ 230,000 |
| 4 | 2021 | JEEP | GLADIATOR | 1C6HJTAG1ML571540 | BLACK | $ 107,047 |
| 5 | 2021 | JEEP | GLADIATOR | 1C6HJTAG1ML576110 | SILVER | $ 99,513 |
| 6 | 2020 | KARMA | REVERO | 50GK43SB9LA000027 | WHITE | $ 72,000 |
| 7 | 2017 | LAMBORGHINI | HURACAN | ZHWUR2Z8HLA08121 | RED | $ 240,000 |
| 8 | 2019 | LAMBORGHINI | HURACAN | ZHWUR2ZF5KLA11842 | WHITE | $ 255,000 |
| 9 | 2020 | LAMBORGHINI | URUS | ZPBUA1ZL6LLA09315 | BLUE | $ 293,000 |
| 10 | 2019 | MCLAREN | 600lt | SBM13RAA6KW006772 | BLUE | $ 227,000 |
| 11 | 2018 | MCLAREN | 720s | SBM14DCA8JW000905 | BLACK | $ 255,000 |
| 12 | 2018 | MCLAREN | 720s | SBM14DCA9JW000606 | WHITE | $ 255,000 |
| 13 | 2019 | MCLAREN | SPIDER | SBM14FCA9KW003714 | ORANGE | $ 281,436 |
| 14 | 2019 | MCLAREN | 600lt | SBM13RAA6KW006903 | PURPLE | $ 230,000 |
| 15 | 2021 | MERCEDES | G63 | W1NYC7H12MX416055 | BLUE | $ 273,000 |
| 16 | 2021 | MERCEDES | G63 | W1NYC7HJOMX390328 | WHITE | $ 265,000 |
| 17 | 2020 | MERCEDES | G63 | W1NYC7HJOMX334940 | BLUE | $ 225,000 |
| 18 | 2021 | MERCEDES | GLE | 4JGFD6BB0MA396703 | WHITE | $ 103,000 |
| 19 | 2020 | MERCEDES | G WAGON | W1NYC7HJ6LX362080 | BLUE | $ 340,000 |
| 20 | 2016 | MERCEDES | MAYERBACH | ends 65762 | BLACK | $ 80,000 |
| 21 | 2018 | MERCEDES | METRIS | WD4PG2EE2J3366588 | BLACK | $ 90,000 |
| 22 | 2019 | MERCEDES | S63 | ddxk8jb1ka037679 | BLACK | $ 132,000 |
| 23 | 2021 | REZVANI | TANK | 1c4hJxg9nw139855 | BLACK | $ 205,736 |
| 24 | 2017 | ROLLS ROYCE | DAWN | SCA666D51HU107006 | WHITE | $ 240,000 |
| 25 | 2017 | ROLLS ROYCE | WRAITH | SCA665C54HUX86636 | BLUE | $ 245,000 |
| 26 | 2015 | ROLLS ROYCE | WRAITH | SCA665C52FUX85546 | WHITE | $ 185,000 |
| 27 | 2019 | RANGE ROVER | SVR | SALWZ2SE8KA817050 | GREY | $ 115,000 |

Number of cars in the above list     27     **Total     $ 5,378,732**

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010                                           RECEIVED NYSCEF: 01/19/2026

# EXHIBIT C

# EXHIBIT C

## SCHEDULE A – VIN-BY-VIN ACCOUNTING FORM

Instructions: This Schedule must be completed under oath for each vehicle that was (i) listed on Exhibit B (Vehicle List) and (ii) any other vehicle owned, possessed, controlled, titled in the name of, or held for the benefit of Karma of Broward, Karma of Palm Beach, Excell-related entities, or their agents/representatives during the period January 1, 2021 through the present, whether or not enumerated on Exhibit B. Add rows/pages as necessary.

| Line | Entity | Year | Make | Model | VIN | Color | Status (Held/Sold/Transferred) | Date of Sale/Transfer | Buyer/Transferee (name/contact) | Sale Channel | Gross Price | Net Proceeds | Proceeds Destination (bank/escrow, last 4, wire ref) | Supporting Docs (BOS, run sheet, wire, title) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | | | | | | | |
| 2 | | | | | | | | | | | | | | |
| 3 | | | | | | | | | | | | | | |
| 4 | | | | | | | | | | | | | | |
| 5 | | | | | | | | | | | | | | |
| 6 | | | | | | | | | | | | | | |
| 7 | | | | | | | | | | | | | | |
| 8 | | | | | | | | | | | | | | |
| 9 | | | | | | | | | | | | | | |
| 10 | | | | | | | | | | | | | | |

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010    RECEIVED NYSCEF: 01/19/2026

## Certification

I declare under penalty of perjury that the above accounting is true, correct, and complete to the best of my knowledge after reasonable inquiry, and that all responsive documents have been produced or identified.

Date: _____ Name/Title: _____

Signature: _____

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010                                                    RECEIVED NYSCEF: 01/19/2026

## SCHEDULE B – DOCUMENT DEMANDS

1. All documents reflecting the acquisition, title, registration, insurance, storage, and possession of any vehicle identified on Exhibit B and any non-enumerated vehicles within the scope of Schedule A.

2. For each vehicle sold or transferred: bills of sale, purchase orders, buyer's order, odometer disclosures, auction run sheets, settlement statements, transport records, and any condition reports.

3. All title transfer documents (including applications, reassignments, dealer transfers, DMV records, and any power of attorney used for title work).

4. All records showing receipt, holding, and disbursement of sale proceeds, including wire/ACH confirmations, deposit slips, bank statements, general ledgers, and escrow/trust ledgers.

5. A list identifying every bank account, escrow account, or trust account into which any proceeds were deposited (bank name, account name, and last four digits).

6. All communications (email, text, messaging apps) concerning: (i) the April 14, 2022 Oral Freeze Order / TRO; (ii) any authorization to sell vehicles; (iii) any actual or proposed sale/transfer; (iv) disposition of proceeds.

7. All communications between any of FVP/FVP entities and Franklin/Wing Lake, Hi Bar and its principals, and any auction house/dealer/transport company relating to the vehicles or proceeds.

8. All documents reflecting any claimed lien, payoff, or priority regarding the vehicles or proceeds, including UCC filings, promissory notes, payoff letters, and distributions to any creditor.

9. All documents reflecting the current location and custodian of any remaining vehicle collateral, including storage agreements, key logs, and GPS/telemetry records (if any).

10. All documents identifying any insurance claims, theft reports, repossessions, impounds, or losses relating to any vehicle within scope.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010    RECEIVED NYSCEF: 01/19/2026

# EXHIBIT D

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010                                    RECEIVED NYSCEF: 01/19/2026

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CASE NO. CACE-22-005125

FVP OPPORTUNITY FUND III, LP, a Delaware limited partnership;
FVP INVESTMENTS, LLC, a Delaware limited liability company; and
FVP SERVICING, LLC, a Delaware limited liability company,

        Plaintiffs,

v.

KARMA OF BROWARD, INC., a Florida corporation, et al.,

        Defendants.

_____/


HI BAR CAPITAL, LLC, a New York limited liability company,

        Plaintiff,

v.                                Consolidated Case No. CACE-22-006401

KARMA OF PALM BEACH, INC., a Florida corporation, et al.,

        Defendants.

_____/


JUDGE: HON. DAVID A. HAIMES
DIVISION: 07


## AFFIDAVIT OF AVRUMI "JOSH" LUBIN


BEFORE ME, the undersigned authority, personally appeared Avrumi "Josh" Lubin, who being first duly sworn, deposes and states:

1. I am Avrumi "Josh" Lubin. I am over 18 years old, competent to testify, and have personal knowledge of the facts stated in this affidavit.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1010

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

2. On or about July 25, 2023, which was a few days before Mr. Edelboim withdrew as counsel for Hi Bar Capital, LLC in this case, I personally heard a telephone call in real time involving:

   a. Morgan Edelboim, Esq. ("Edelboim"); and

   b. Jerrell "Jerry" Breslin, Esq. ("Breslin").

3. During that call, Mr. Edelboim instructed/demanded that Mr. Breslin turn over the vehicles to me (Avrumi "Josh" Lubin) and referenced, in substance, that Franklin had lost its fraud claim against Spin in Michigan. Mr. Edelboim's instruction/demand related to vehicles that were the subject of ongoing litigation and the Court's freeze order, including vehicles associated with Karma of Broward and/or Karma of Palm Beach.

4. Mr. Breslin responded in substance that the vehicles had already been sold, and stated words to the effect of: "the cars were all sold" and "come meet me in person and I will explain what happened," to the best of my recollection.

5. Mr. Edelboim responded in substance that Hi Bar never gave Mr. Breslin and/or the FVP side any permission or authorization to sell the vehicles.

6. I make this affidavit for use in the pending Broward County litigation (Case No. CACE-22-005125 and related consolidated matters) in support of enforcement of the Court's freeze order and an Order to Show Cause / civil contempt relief.

7. I submit this affidavit in support of Defendant Avrumi "Josh" Lubin's Verified Emergency Motion for Order to Show Cause and for Civil Contempt and the Court's issuance of an Order to Show Cause requiring in-person appearance and a sworn accounting.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010    RECEIVED NYSCEF: 01/19/2026

FURTHER AFFIANT SAYETH NAUGHT.

DATED: 1/17/26

Avrumi "Josh" Lubin

1460 Arboretum Parkway

Lakewood, NJ 08701

Email: josh@spincapital.com

Sworn to (or affirmed) and subscribed before me by means of ☒ physical presence or ☐ online notarization, this 17 day of January, 20 26 by Avrumi "Josh" Lubin, who is ☐ personally known to me or ☒ produced identification.



Notary Public, State of Florida

Print Name: Carlos Albelo

My Commission Expires: 8/6/29

Notary Public State of Florida
Carlos Manuel Albelo
My Commission HH 707442
Expires 8/6/2029

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022
NYSCEF DOC. NO. 1010
RECEIVED NYSCEF: 01/19/2026

# EXHIBIT E

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 530 E-Filed 06/02/2022 10:45:26 AM
INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

IN THE CIRCUIT COURT OF THE SEVENTEENTH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

CASE NO.: CACE-22-05125

FVP OPPORTUNITY FUND III, LP, a Delaware limited partnership; FVP INVESTMENTS, LLC, a Delaware limited liability company; and FVP SERVICING, LLC, a Delaware limited liability company,

Plaintiffs,

vs.

KARMA OF BROWARD, INC., a Florida corporation; KARMA OF PALM BEACH, INC., a Florida corporation; SCOTT ZANKL, an individual; KRISTEN ZANKL, an individual; MOSHE FARACHE, an individual; AUTO WHOLESALE OF BOCA, LLC, a Florida limited liability company; MMS ULTIMATE SERVICES, INC., a Florida corporation; EXCELL AUTO SPORT AND SERVICE, INC., a Florida corporation; and EXCELL AUTO FINANCE, LLC, a Florida limited liability company,

Defendants.

_____/

## NOTICE OF FILING TRANSCRIPT OF APRIL 14, 2022 HEARING

COME NOW the Plaintiffs, FVP Opportunity Fund III, LP, a Delaware limited partnership (the "FVP Fund"), FVP Investments LLC, a Delaware limited liability company ("FVP Investments"), and FVP Servicing, LLC, a Delaware limited liability company ("FVP Servicing") (collectively, the "Plaintiffs"), by and through their undersigned counsel, and hereby file of record the hearing transcript of the Hearing held in this matter on April 14, 2022 (attached hereto and incorporated herein as Exhibit A).

Page 1 of 2

*** FILED: BROWARD COUNTY, FL BRENDA D. FORMAN, CLERK 06/02/2022 10:45:26 AM.****

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022
NYSCEF DOC. NO. 1010
RECEIVED NYSCEF: 01/19/2026

<u>Certificate of Service</u>

    I HEREBY CERTIFY that a true and correct copy of the foregoing document was filed with the Clerk of the Courts and served via email through the Florida Courts eFiling Portal in accordance with Rule 2.516 of the Florida Rules of Judicial Administration upon all counsel of record.

    On June 2, 2022

Respectfully submitted,

**/s/ Jerry Breslin**

Jerry Breslin Esq.
Fla. Bar # 269573
Email: JB@RichardBaronLaw.com
Baron, Breslin & Sarmiento, Attorneys at Law
The DuPont Building
169 East Flagler Street
Suite 700
Miami, Fl 33131
Tel.: 305-577-4626
Fax.: 305-577-4630

**/s/ Jonathan Noah Schwartz, Esq.**

Jonathan Noah Schwartz, Esq.
Florida Bar No. 1014596
Jonathan Schwartz Law PLLC
10200 NW 25th Street, Suite 111
Doral, FL 33172
Tel.: (973) 936-2176
Fax: (786) 338-7435
E-mails: jschwartz@jonschwartzlaw.com
        JNSEsquire@gmail.com

**COHEN & MCMULLEN, P.A.**

**/s/ Bradford Cohen, Esq.**

**/s/ Michael J. McMullen, Esq.**

Counsel for Plaintiffs
1132 SE 3rd Avenue
Fort Lauderdale, Florida 33316
Telephone: (954) 523-7774
Facsimile: (954) 523-2656

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010    RECEIVED NYSCEF: 01/19/2026

# EXHIBIT A

**Exhibit A**

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM       INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010                                    RECEIVED NYSCEF: 01/19/2026

1

IN THE CIRCUIT COURT OF THE SEVENTEENTH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA


FVP OPPORTUNITY FUND III, LP, a        )
Delaware limited partnership; FVP      )
INVESTMENTS, LLC, a Delaware limited   )
liability company; and FVP SERVICING,  )
LLC, a Delaware limited liability      )
company,                               )
                                       )
                 Plaintiffs,           )
                                       )
vs.                                    )  No. CACE22005125
                                       )
KARMA OF BROWARD, INC., a Florida      )
corporation; KARMA OF PALM BEACH,      )
INC., a Florida corporation; SCOTT     )
ZANKL, an individual; KRISTEN ZANKL,   )
an individual; MOSHE FARACHE, an       )
individual; AUTO WHOLESALE OF BOCA,    )
LLC, a Florida limited liability       )
company; MMS ULTIMATE SERVICES,        )
INC., a Florida corporation; EXCELL    )
AUTO SPORT AND SERVICE, INC., a        )
Florida corporation; and EXCELL        )
AUTO FINANCE, LLC, a Florida           )
limited liability company,             )
                                       )
                 Defendants.           )
------------------------------------------

                          Broward County Courthouse
                          Fort Lauderdale, Florida
                          April 14th, 2022
                          3:46 P.M. - 4:39 p.m.

                          HEARING


     The above-styled cause came on for hearing

before the Honorable Michele Towbin Singer, Presiding

Judge, at the Broward County Courthouse, Fort

Lauderdale, Broward County, Florida, on the 14th day of

April, 2022.

Prestige Reporting Service, Inc. 633 South Andrews Avenue | Suite 202 | Fort Lauderdale,
FL 33301 (954) 764-7297 | info@prestigereportingservice.com

APPEARANCES:

          COHEN & McMULLEN, P.A.
          1132 S.E. 3rd Avenue
          Fort Lauderdale, FL 33316-1110
          (954)523-7774
          michael@floridajusticefirm.com
          bradford@floridajusticefirm.com
          By BRADFORD M. COHEN, ESQ.
             MICHAEL J. McMullen, ESQ.
                    and
          BARON, BRESLIN & SARMIENTO
          The DuPont Building
          169 E. Flagler Street, Suite 700
          Miami, FL 33131-1203
          (305)577-4626
          jb@richardbaronlaw.com
          By JERRY BRESLIN, ESQ.
                    and
          JONATHAN SCHWARTZ LAW PLLC
          10200 N.W. 25th Street, Suite 111
          Doral, FL 33172-5919
          (973)936-2176
          jschwartz@jonschwartzlaw.com
          By JONATHAN N. SCHWARTZ, esq.
          Attorneys for the Plaintiffs

          WEISS, HANDLER & CORNWELL, P.A.
          2255 Glades Road, Suite 218A
          Boca Raton, FL 33431-7391
          (561)997-9995
          hbh@whcfla.com
          By HENRY B. HANDLER, ESQ.
          Attorney for Karma of Palm Beach

          KURKIN FOREHAND BRANDES LLP
          18851 N.E. 29th Avenue, Suite 303
          Aventura, FL 33180-2813
          (305)929-8500
          cblinderman@kfb-law.com
          mbrandes@kfb-law.com
          By CRAIG H. BLINDERMAN, ESQ.
             MARC E. BRANDES, ESQ.
          Attorneys for Moshe Farache and
          Auto Wholesale of Boca

     Also Present:  Mr. Moshe Farache
                    Mr. Keith Lee
                    Investigator Robert Crispin

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010    RECEIVED NYSCEF: 01/19/2026

3

(Whereupon, the following proceedings were had:)

THE COURT:  Can the parties state their names for the record.

MR. SCHWARTZ:  Yes, Judge.  Good afternoon.  Jonathan Noah Schwartz, Jerry Breslin, Bradford Cohen and Michael McMullen, on behalf of the plaintiffs, FVP Opportunity Fund III, LP, FVP Investments, LLC, and FVP Servicing, LLC.

THE COURT:  Thank you.

MR. HANDLER:  Good afternoon, Judge.  Henry Handler, from Weiss Handler & Cornwell,  on behalf of Karma of Palm Beach, Inc.

MR. BLINDERMAN:  Good afternoon, Your Honor.  Craig Blinderman and Marc Brandes, on behalf of defendants Moshe Farache, individually, Auto Wholesale of Boca, LLC and Ultimate Services, Inc.

THE COURT:  Okay.  Anybody else want to state their name for the record?  If not, we can proceed.

Who do you have on Zoom?  Are these all witnesses?

MR. BRESLIN:  Judge, one of the people on

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010                                                   RECEIVED NYSCEF: 01/19/2026

Zoom is Joel Wiegert, he's an attorney at Kutak Rock, in Nebraska. He's a potential witness, so --

THE COURT: Okay.

MR. BRESLIN: -- I would ask that Mr. Wiegert not listen to any of the argument or testimony until we notify him that he may be called as a witness.

THE COURT: Okay. I'm gonna put you in the waiting room then, okay, Mr. Wiegert.

Okay. Anybody else that's on Zoom that needs to be put in the waiting room?

MR. BRESLIN: Judge, our plaintiff representative, Mr. Keith Lee, is present in the courtroom. We'd ask that he be able to remain in the courtroom.

THE COURT: Of course.

MR. BLINDERMAN: Your Honor, Mr. Farache is also present in the courtroom.

THE COURT: Okay. Again, I'm gonna rely on the parties, the lawyers, to let me know if there's anybody who is here that they don't want to be here, that shouldn't be here. Okay?

All right. Hearing nothing, I guess we can proceed.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010                                RECEIVED NYSCEF: 01/19/2026

If the parties want to give some brief --

MR. BRESLIN:  Yes, Judge.

THE COURT:   -- count down.

MR. BRESLIN:  If I can.  We are the movant here.  I represent, as Mr. Schwartz indicated, the plaintiffs.

Judge, what we have he is we've filed an emergency motion for -- we filed it ex-parte and now we're before the Court with an evidentiary -- potential evidentiary hearing if necessary, if Your Honor deems it necessary to take evidence, on our motion for injunction and to appoint a receiver.

We are here, Your Honor, under the Florida Uniform Fraudulent Transfer Act -- excuse me, the Florida Fraudulent Transfer Act.  So what we are seeking Your Honor to do today is to appoint a receiver because there's prima facie evidence of fraudulent transfers here and we want to receiver to be appointed by Your Honor to basically stop the absolute lawlessness that has been going on.

And if you've taken a look at the motion that was filed by the plaintiffs in this case, we're asking the Court to act on an emergency basis.  And I think when we go through the

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010                                    RECEIVED NYSCEF: 01/19/2026

exhibits and I talk to you a little bit about the evidence that is stated in the exhibits, that I hope Your Honor will agree that a receiver should be appointed in this case.

I uploaded the motion itself, as well as all of the exhibits to give you a --

THE COURT: Oh, there some other people in the waiting room. Should I let them in? Cory Mauro, for example?

MR. BRESLIN: Yes, Judge.

THE COURT: Okay. And then there's somebody 646-499- -- I don't know who that is. Anybody recognize that?

MR. SCHWARTZ: Judge, there were going to be parties of our client joining, non-witnesses. It's quite possible considering that's a New York area code.

THE COURT: Okay. I'll let them in and have them identify themselves before we continue.

Can the party at the phone number 1-646-499-0292 please identify yourself?

(No verbal response.)

THE COURT: If you don't identify yourself, I'm going remove you. So I'm going to give you another chance to identify yourself.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010    RECEIVED NYSCEF: 01/19/2026

The phone number showing -- oh, there you go.

Hello.  Yes?

COURT REPORTER:  I can't hear him, Your Honor.

THE COURT:  Okay.  Tom who?

MR. SCHWARTZ:  He's with our client, Your Honor.  It's a client representative.

THE COURT:  Okay.  All right.  Very well.

And then there's somebody else from 1-646-417-0743.  Can you identify yourself?

(No verbal response.)

THE COURT:  Whoever is at the phone number 646-417-0743, please identify yourself.

MR. BAKER:  Your Honor, this is William Baker.

MR. SCHWARTZ:  Your Honor, he's with us.

THE COURT:  Okay.  Very well.  We just wanted to make sure that whoever was here should be here or can be here.

Okay.  Very well.  Welcome.

You may continue.

MR. BRESLIN:  Thank you, Judge.

THE COURT:  By the way, earlier I looked over your motion, that's why you got a hearing so quickly, right?  Otherwise, believe me, I

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022
NYSCEF DOC. NO. 1010
RECEIVED NYSCEF: 01/19/2026

wouldn't have carved out time for that hearing.

MR. BRESLIN: Thank you, Judge.

THE COURT: Okay.

MR. BRESLIN: Judge to summarize what is outlined in the motion.

We represent the plaintiffs in this case.

We did an investigation and a valuation of a loan for seven-and-a-half million dollars to several companies; one is located in Palm Beach, one is located in Broward. It's Karma of Palm Beach. There's Karma of Broward.

And at the end of the --

THE COURT: I'm sorry, should I let this other person in, 561-703-3375?

MR. BRESLIN: Judge, you can let them in.

THE COURT: I'll let that person in, too. Sorry.

MR. BRESLIN: Thank you.

And so they loaned, between the end of January and the middle of February, seven-and-a-half million dollars.

THE COURT: Uh-huh.

MR. BRESLIN: And before they loaned them this money, they did very thorough UCC evaluations and searches. They required that

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010
RECEIVED NYSCEF: 01/19/2026

certain parties amend their UCCs, so they would have clean security interest in the collateral at both of these businesses.  And so after all that was done and the UCCs were filed and the loan docs were filed, that's what I've uploaded to Your Honor, seven-and-a-half million dollars was loaned.  Six weeks later all of that money was gone.

And so as we sit here today, Judge, I believe there was 34 cars in Palm Beach, correct?

MR. LEE:  Correct.

MR. BRESLIN:  And how many in Broward?

MR. LEE:  Twenty-seven.

MR. BRESLIN:  There was 34 cars in Palm Beach and 27 in Broward.  As we sit here today, there's eight cars this Broward.

All seven-and-a-half million dollars is gone.  All of those cars are gone.  And the reason that they are gone, Your Honor, is that one of the defendants, Mr. Farache, took it upon himself to just take the cars.  So what he did was he went to the dealership in Palm Beach, and what we allege in the complaint and is outlined in the investigative report by Mr. Crispin, who is present and available to testify, that we

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022
NYSCEF DOC. NO. 1010
RECEIVED NYSCEF: 01/19/2026

believe that he did it by force and extortion.

So what we have here is that a substantial amount of collateral was fraudulently transferred.  Because under the Fraudulent Transfer Act, it's very clear, if you have a claim and then your collateral is transferred, it's a fraudulent transfer by definition.  And under the law that entitles us to a receiver.  We can talk about the law later.

But looking at the facts, Judge, if you take a look at all the exhibits that I've uploaded to Your Honor, we have all the loan documents that go through Exhibit G.

We have our UCC filings at Exhibit H.

They're all on the CMS system.

Exhibit I is the second UCC filing.

We have an intercreditor agreement.

And then we get to Exhibit K.  And let me explain why Exhibit K is important.  Mr. Farache has several companies, one of which he is a landlord of the -- where the Karma of Palm Beach was located.  Part of the documents that our clients, the lenders, required before they gave this loan was that the landlord give them a document that indicates on its face that if our

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1010

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026
11

client is going to go in and try to recovery any of it's collateral that the landlord would not interfere.  That was signed by Mr. Farache's wife.  Now that is relevant, Your Honor, because when you start to look at some of the documents that have been filed by the defendants in this case, they're taking the position, I believe, and they'll make their own arguments that, you know, they had some claim to some of this collateral. What's relevant and important about that landlord waiver document is that Mr. Farache's wife, and he's listed in there, his email is on it, makes very clear that they were aware that this loan was going on.

Additionally, if Mr. Wiegert is necessary to testify -- if it's necessary that he testify, he will testify as to one of our later exhibits that we filed and that is is that one of the UCCs filed by Mr. Farache's company, and some other collateral that they were claiming in other companies, that their UCC was modified to accommodate this loan.

So what happened was everybody got out of the way for this loan, for a seven-and-a-half-million-dollar loan.  So Zankl,

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1010

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

12

Scott Zankl executed the loan docs, his wife executed the loan docs, both of his companies, Palm Beach and Broward executed the loan docs, UCCs were filed and now the plaintiffs felt comfortable giving them seven-and-a-half million knowing that that money was gonna go into cars that were gonna go to two those two companies. And the minute those cars were bought by those two companies, there is a security interest in those cars and then -- so it's all collateralized. So all that happened. All that was lined up and ready to go.

Unfortunately what happened was, you know, they funded these loaned, cars were bought and now we're finding out that the titles -- you know, cars were transferred to other companies, they went from other companies to Mr. Farache's companies. There's just -- there's just -- it's just a what plate of spaghetti what happened to the money and the cars.

And, you know, the defendants have filed, you know, a few titles for some of the cars showing that there were some transactions right around the time that these cars were taken.

THE COURT: I suggest that we hear from

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022
NYSCEF DOC. NO. 1010
RECEIVED NYSCEF: 01/19/2026

13

them 'cause I understand your argument.  Let me hear from them and we may have rebuttal, if necessary.  Because if we find we need an evidentiary hearing, we only have half an hour left.

MR. BRESLIN:  Right.  All right.  So but, in any event, Judge, what I filed after the documents that were attached to the complaint was Mr. Crispin's investigative report.  The comparison of the collateral representative, samples of a couple of -- of a couple of vehicles where we absolutely can establish without question that our money went into those vehicles and then it was fraudulently transferred.

And more importantly, Judge, when it comes to whether or not Your Honor is gonna issue -- appoint a receiver in this case, a media article that was published yesterday, and that is -- it was on the T.V., and they had a couple of people standing outside this dealership in Palm Beach saying, my car's gone, you know, the doors are closed and my cars are gone.

So there are multiple victims here and there's gonna be multiple lawsuits here, Judge. So I think it's critical that -- that an

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1010

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

14

independent third party, neutral, take control of all of this, because the defendants agree that they took thirty-some cars -- their argument is gonna be that they're entitled to take them. But, you know, one thing that you need to look at, and that's one of the exhibits we filed, they filed -- they took the cars and then a week later they filed a lawsuit in Palm Beach. All right. In that lawsuit in Palm Beach they say, Judge, we want you to allow us to go get these cars. They already had them. So they filed a lawsuit that was in essence a fraud upon the Court. So they said, we believe that the cars are at this location in Palm Beach, they weren't 'cause he already took them. So they went to the court in Palm Beach to try to absolve their actions, their self-help actions that they weren't entitled to take.

So, you know, to the extent that the defendants want to raise some arguments, I'm happy to respond. But you've read -- you've looked at all the exhibits, Judge --

THE COURT: Yeah, I haven't read them carefully. I've reviewed them. There was a lot of documents. So my goal was to get you a

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010                                      RECEIVED NYSCEF: 01/19/2026

hearing as soon as possible.

MR. BRESLIN:  All right.  Thank you, Judge.  All right.  I'll just let them go ahead.

THE COURT:  Go ahead.

MR. BLINDERMAN:  Good afternoon, Your Honor.  There's a lot to impact from what Mr. Breslin presented to the Court.  What he didn't tell you is that my clients had dealings with this gentleman by the name of Scott Kyzel --

MR. BRANDES:  Zankl.

MR. BLINDERMAN:  Zankl, I'm sorry about that.

THE COURT:  How do you spell that, please?

MR. BLINDERMAN:  Z-A-N-K-L.

THE COURT:  Okay.

MR. BLINDERMAN:  And Mr. Zankl and his wife, Kristen, owned a company called Excell Auto Group.  And my clients purchased automobiles from Excell Auto Group, who is not a party to this lawsuit.  And I believe they had filed for bankruptcy.  And my clients tendered over $6.6 million to that entity to purchase vehicles.

And in the affidavit of Mr. Farache, which I filed for affidavit and the exhibits, you will see evidence of 27 vehicles that currently are in

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022
NYSCEF DOC. NO. 1010
RECEIVED NYSCEF: 01/19/2026
16

Mr. Farache's possession.  They're being held in an air conditioned secure location.  Mr. Farache has taken out a general liability policy on each vehicle up to $500,000 per vehicle, per occurrence.  We filed a copy of the insurance certificate.  That is not exactly a man who's in the business of trying to seek writ or move or sell or dispose of, quote, unquote, collateral.

The important thing to understand, Judge, and the picture here is that Mr. Breslin's client's a victim of that gentleman and his wife. We are, too.

The issue becomes who is the rightful owner of vehicles that -- that the plaintiffs in this case claim are theirs and that we claim are ours.

But what Mr. Breslin didn't inform the Court is that back in 2021, when we had our dealings with Excell Auto Group, in order -- and in abundance of caution, because we didn't see money coming back, we secured a UCC-1 on those vehicles before their loan was even processed. Their loan was processed in, I believe, in February of 2022.  Now, some of the vehicle that we had or purchased after February of 2022, but a

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1010

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

17

significant portion of them were either close -- early on in 2022 or 2021. And we had secured notes. And we had an unconditional guarantee from Scott and his wife and Excell Auto Group. And when we saw money wasn't coming in, we acted upon our rights, which were under the note, which is we could go back and get the vehicles that we purchased that they were holding and selling. So there is an argument that I think is legitimate as to who has a superior interest in these vehicles.

But what Mr. Breslin did, with all due respect, is he basically invented a fraud case so that he could come before you and claim that there is fraud and, therefore, you're going to appoint a receiver.

Judge, every piece of evidence that he's presenting that backs up his alleged fraud is all self-serving. They hired a private investigator who put together an investigation and took statements from the -- excuse me, Excell Auto Group and the husband and the wife. They're the ones who committed the fraud. That's like going and asking Bernie Madoff for a statement about crimes that he committed. They're not going to

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010                                    RECEIVED NYSCEF: 01/19/2026

18

contest that those two individuals should be indicted and go to jail and we don't think so either. However, we had title to all the vehicles that we're holding. We had paid for them contemporaneously, we have proof of that.

THE COURT: Are you saying that your client bought these cars before they -- they got money from the plaintiffs, right?

MR. BLINDERMAN: No. The plaintiffs in this case have nothing to do with us. The individual Scott --

THE COURT: Who did the plaintiffs loan the money to, the $7 million?

MR. BLINDERMAN: They loaned the money to Karma of Palm Beach and Scott and his wife.

THE COURT: Oh, okay.

MR. BLINDERMAN: We don't have anything do with that.

What we're saying, Judge, is that prior to that loan, we, for some of what we're alleging are the same vehicles, we paid value. We had title and held possession of those vehicles. And we're arguing that we have superior right to the vehicles, not the plaintiffs. And we're out $6.6 million to the same fraudsters as the plaintiffs

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010    RECEIVED NYSCEF: 01/19/2026

in this case.

Now, what's important here is the only way that a receiver can really be appointed in this case, because it's an extraordinary remedy, is for there to be some evidence of fraud. And what they did, the plaintiffs in this case, is they got an investigator together, he took statements from the people who perpetrated the fraud on them and us, they went and took photographs and allegedly came up with this individual who is a muscle man of my client but never ever attached any text messages they allege he sent threatening them, and they made all these --

THE COURT: Okay. Well, let me just ask you this, so your client has 27 cars that are in an air conditioned garage, right?

MR. BLINDERMAN: Right now.

THE COURT: Okay. So how would -- as a starting point, what would be the plaintiffs' position if the Court -- if they agree and the Court ordered that they keep those cars in that air conditioned garage with sufficient insurance that covers the valve the cars and that they not transfer them or do anything else and if you want to go inspect the cars to it make sure they're --

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1010
INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

20

MR. BRESLIN:  Well, Judge, I think that should happen as an absolute minimum.  Okay.

THE COURT:  All right.  Then let's start --

MR. BRESLIN:  But that is not what we are -- that's not what we're asking.

THE COURT:  I know that's not everything. But let's see if we can --

MR. BRESLIN:  Right.  But more importantly --

THE COURT:  Hold on.

MR. BLINDERMAN:  Let me just finish up.

THE COURT:  Hold on.

Would your client agree to that?

MR. BLINDERMAN:  My clients have offered that before we came to court today, Judge.  And we were more than happy to agree to that.

The bigger problem here is that we don't -- as we sit here today, I don't know what the plaintiffs in this case are claiming that we owe them or that we're holding for them.

We only have these 27 vehicles.  The other vehicles were sold.

And my last thought on this, Judge, is, and then I'll be quiet on this, is in their

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010                                    RECEIVED NYSCEF: 01/19/2026

verified complaint in this case, they filed this in Broward County because Karma of Broward was one defendant, however, they filed in Count XI a replevin, where they literally have an action to reclaim the property they believe they're entitled to.

THE COURT:  Right.

MR. BLINDERMAN:  These vehicles are stored in Palm Beach County.  Your Honor, you have no jurisdiction over a replevin claim.  Palm Beach County does.

Well, I told Mr. Breslin, why don't we go to Palm Beach County and you can bring your replevin action and we'll litigate in front of a judge or a magistrate about who has what, who's entitled to what, and if you're entitled to vehicles that we're holding, we're going to give them to you because there will be a court order telling us to do that.  There is no -- this is all manufactured that these vehicles that were being -- that we're holding are going to be destroyed or sold out from under them.

And the last thing, Your Honor, if that was true, which it's not, they have a remedy in money.  These cars are not so unique that -- I

NYSCEF DOC. NO. 1010 RECEIVED NYSCEF: 01/19/2026

22

mean, they're expensive, yeah, they're Ferraris, but they're not so unique that they are only one in a million. If they're right and we're wrong, they can get money damages, which they've sued us for. So how do you get an injunction and how do you get a receivership where -- and the bottom line is that it's -- the property is in Palm Beach County and there's money, there's money available.

THE COURT: All right. So --

MR. BRESLIN: Judge -- Judge --

THE COURT: Yeah, you'll get a chance.

So what good is the receiver going to do, tell me?

MR. BRESLIN: Well, Judge, let me respond to that. We have moved for a receiver -- if you take a look at Exhibit W. If you appoint receiver, the receiver can act in multiple counties.

Judge, here's what we have, we gave seven-and-a-half million dollars to the Zankls and their companies. They bought cars with that money. Those cars were transferred somehow to Mr. Farache's client and we got no money.

THE COURT: Hold on one second. I got it.

Prestige Reporting Service, Inc. 633 South Andrews Avenue | Suite 202 | Fort Lauderdale, FL 33301 (954) 764-7297 | info@prestigereportingservice.com

Case 23-01132-EPK   Doc 383-1   Filed 01/22/26   Page 885 of 976

I understand now.  So, but the receiver, what's the receiver --

MR. BRESLIN:  The receiver will take control of all the cars.

Here's what I want Your Honor --

THE COURT:  You say all of the cars --

MR. BRESLIN:  All of the cars.

THE COURT:  The 27 cars?

MR. BRESLIN:  Well, there's 27 left.  He took 33.  They sold -- he told me they sold two, now apparently they've sold six.  Thirty-three cars were moved and that was a week ago since I filed this lawsuit.  So I guess six cars are now gone.  That's why we need a receiver.

Judge, we need a receiver to take control of the cars that are sitting in --

THE COURT:  The 27 cars.

MR. BRESLIN:  What's that?

THE COURT:  The 27 cars.

MR. BRESLIN:  Whatever is left.

THE COURT:  Right.

MR. BRESLIN:  Whatever is left.  Take the cars off the Broward lot, there's six or eight cars there.  To prevent the Zankls from --

THE COURT:  Who currently is claiming

Case 23-01132-EPK   Doc 383-1   Filed 01/22/26   Page 886 of 976

possession of those cars right now?

MR. BRESLIN:  We claim possession of all of them.

THE COURT:  Who else?  Anybody else?

MR. BRESLIN:  Not that's been filed in this case.

THE COURT:  Well --

MR. BRESLIN:  And just so you know, Judge, they filed a lawsuit in Palm Beach that hasn't been served yet.

THE COURT:  Okay.  All right.  Hold on. Hold on.  I'm just trying to figure out -- to me, I don't see - -if they agree to keep those 27 cars in the garage and to keep them properly insured, et cetera, I don't see what else the receiver can do toward those 27 cars.

MR. SCHWARTZ:  I'll tell you, Your Honor, 'cause it was over the weekend that Mr. Crispin's investigative team was actually -- see, we had spoke to Mr. --

THE COURT:  Let me cut you off.

If anything happens to those 27 cars, they can be held in contempt of court for violating the Court's order.  What is the receiver going to do?

Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 887 of 976
NYSCEF DOC. NO. 1010 RECEIVED NYSCEF: 01/19/2026

25

MR. SCHWARTZ: I understand, Judge, but historically we spoke to Mr. Brandes Saturday morning. Over the weekend, we have pictures that we filed of record, that Mr. Crispin will testify to today, that shows Mr. Farache at the property, after we were assured all of this, we had spoken to Mr. Brandes on Saturday, trying to take more cars. The police were called. It's in our report. There is a clear risk here --

THE COURT: And how is a receiver -- so you're saying you want the receiver to take the cars from that lot and put them somewhere else?

MR. SCHWARTZ: And safeguard them, correct. So at the risk of --

THE COURT: So, hold on a second, did you have -- there was no agreement between the parties that they weren't going to move or sell those cars, was there?

MR. SCHWARTZ: There was. There was an assurance, Your Honor.

THE COURT: A verbal assurance.

MR. SCHWARTZ: We spoke to Mr. Brandes Saturday morning.

Mr. Breslin and I, since we became hired on this case, have been working nonstop to try to

Case 23-01133-EPK    Doc 383-1    Filed 01/22/26    Page 888 of 976

put the pieces together, Your Honor.  Every day it unfolds.  And I think that one of the things Your Honor really needs to look is the fact that notwithstanding the fact that Mr. Farache had lawyers that came in that were talking to us, we filed of record bad faith attempts to go and take more cars.

Your Honor, all we're asking for here is a neutral third party to take this so Your Honor can sort this out and so that none of that will happen.  And we'd love if Your Honor would --

THE COURT:  I know that's what you're asking.  You've said it several times.  But the defense is correct, a receivership is an extreme remedy.  Also, you're asking for injunctive relief.  Cars can't -- I don't see the unique -- I don't care how special the Ferrari is, they're a dime a dozen in South Florida.

MR. SCHWARTZ:  May a submit case law to Your Honor?

THE COURT:  Yes.  Sure.

MR. SCHWARTZ:  May I approach?

THE COURT:  Yes.

You also have to show the substantial likelihood, you know, on the merits, et, cetera

Case 23-01132-EPK   Doc 383-1   Filed 01/22/26   Page 889 of 976

which we don't have time for it today.

MR. BLINDERMAN:  I have case law to present to the Court as well --

THE COURT:  Hold on.

MR. BLINDERMAN:  -- if you don't mind.

THE COURT:  Hold on.

MR. SCHWARTZ:  So what you're looking at is a Fourth DCA case called First Valley Bank -- Warrington versus First Valley Bank, and it sets forth the four prongs.  And, you know, prong two is really a salient prong.  It's very simple, Your Honor, it says that it must appear that the claimant has a title or lien upon the property.  That's exactly what's the case --

THE COURT:  I understand.  That's exactly what you're saying you have in those 27 cars.  And he's saying those 27 cars were even bought before the loan or --

MR. BLINDERMAN:  Some of them were before the loan, some of them were after, but they were all done contemporaneously.

THE COURT:  We can have an evidentiary hearing and we'll be done in 15 minutes and I'll get nothing done.  I mean, don't know what else you want me to do.  We don't have court tomorrow.

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 890 of 976

28

I'm starting a trial Monday morning.

MR. SCHWARTZ: I understand, Your Honor. But based upon what's transpired here, I do perceive --

THE COURT: You have to show me what's transpiring and you have 10 minutes left.

And, by the way, what you're telling me is that Mr. Farache, et cetera, is going to risk being held in contempt of court, violate a court order --

MR. SCHWARTZ: Your Honor, this is something we've alleged to have --

THE COURT: -- to move those 27 cars and not keep them, that's what you're telling me?

MR. SCHWARTZ: Your Honor, this is somebody that's alleged to have walked into a dealership with a strong man, have allowed that strong man to come and intimidate employees, scramble through Mr. Farache's things and -- excuse me, Mr. Zankl's drawers --

THE COURT: Right.

MR. SCHWARTZ: -- and then came to the dealership and said unless you sign me over these titles, I will make your husband disappear.

MR. BLINDERMAN: Judge, those are just

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 891 of 976

allegations.  They are manufactured.

And, honestly, Judge, if that was Mr. Farache's mentality, why would he be holding these vehicles?  Why wouldn't he try to sell every one of them as fast as he could to defraud these people?

THE COURT:  Why would he even admit that he has them?

MR. BRESLIN:  Judge, can we find out what happened -- we were told that two cars were sold. Now we're told -- how many cars have been sold?

THE COURT:  Well, let me ask a question, did you have an agreement with the plaintiff that, before the weekend, that there was --

MR. BLINDERMAN:  Mr. Brandes can speak to that.

MR. BRANDES:  Your Honor, I spoke to opposing counsel initially -- I got notified Saturday --

THE COURT:  Yeah.

MR. BRANDES:  -- and suit was filed Monday.

THE COURT:  Right.

MR. BRANDES:  And I asked what cars are you looking for that we may have.  We gave you a

NYSCEF DOC. NO. 1010
RECEIVED NYSCEF: 01/19/2026

30

list.  Well, the list kept changing and the goal post kept getting bigger and bigger.  Next thing you know is everything you have, Mr. Brandes.

I don't know which cars or what.  But meanwhile, I have my list of cars that they alleged that are theirs.  I said to my client you can't touch those cars.  But the cars that no one is making a claim on that you've got clear title to, you paid contemporaneously for, sell it.  Well, that's what Mr. Farache has done.  And it's only been, I believe, two cars.

And in all candor, Your Honor, besides these gentlemen, I'm getting inundated with four or five new calls a day from various people, nothing to do with lawsuit or the one that we filed, saying, hey, that's my car.  I told my client he can't sell that car because there's someone else out in left field making a claim.

We've done everything we could in light of this ridiculously crazy lawsuit, as well as other lawsuits and/or claims, to be a good corporate representative to this Court and to opposing side.  We've done nothing but be honest and fair.  But, Your Honor, the cars that we did sell, they were not ones that were claimed by the

Case 23-01132-EPK   Doc 383-1   Filed 01/22/26   Page 893 of 976

31

plaintiffs, that no one put a claim in and they were contemporaneously purchased, we have title and buyer. That's why there were two that were sold. The rest we have.

THE COURT: Do you want to respond to that?

MR. BRESLIN: Yes, Judge. I see how Your Honor is inclined to rule. So here's what I am concerned about, if you appointed a receiver, a receiver would have broad powers. The receiver would have the same powers that their -- they filed a lawsuit in Palm Beach and asked for a receiver. So they asked the judge in Palm Beach to do the exact same thing, over the exact same collateral that I'm asking of Your Honor.

THE COURT: All right. Let me ask them why.

MR. BRANDES: There's a major distinction, Your Honor.

THE COURT: What?

MR. BRANDES: The distinction is that we are the lender in our lawsuit up there.

THE COURT: Well, they are the lender, too.

MR. BRANDES: Understood. But they're

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 894 of 976

asking -- this is only the two lenders. Up in Palm Beach it's between a lender and a dealer who is out of trust, meaning we lent the money and as the cars were being sold out the door, they never paid us. Being out of trust triggers our event. But I would probably run into the same problem up in Palm Beach that we're having here.

But nonetheless, Your Honor, only because I asked for it up there doesn't mean that our argument is going to be any different down here.

THE COURT: Yeah, but if you're asking for one, why not ask me for one? Why not reach an agreement?

MR. BRANDES: Because at this point, Your Honor, either two things are going to happen, you can appoint a receiver and they have to post a large bond or my other suggestion is going through car by car appointing a general master to go through a replevin count and, each one, they can address the replevin issue and we can post a bond for one-and-a-half times the value of the car.

MR. COHEN: Judge, may I?

THE COURT: Yes.

MR. COHEN: Hi, Judge. Brad Cohen, on

Case 23-01132-EPK   Doc 383-1   Filed 01/22/26   Page 895 of 976

33

behalf of the plaintiffs.

Judge, when you look at what's going on here, they're asking for a receiver up in Palm Beach, we're asking for a receiver --

THE COURT: I heard that. Got it.

MR. COHEN: The core here is when you appoint a receiver, not only will he be overlooking the vehicles but overlooking the paperwork that's associated with the vehicles. If you look at what they filed just recently -- I think maybe 30 minutes ago, they filed an affidavit with several documents attached to it -- one of those documents, although they say they loaned money on these cars, one of those documents is associated with purchasing now some of those cars. One of the checks isn't even signed. It's -- you don't have a check that has been cashed. Now that title has been changed. And why that's so important is the title was changed a day before those cars were all taken. This shows that there was an intent there. So not only is the receiver overlooking the vehicles, which I understand your argument that -- and I'm a car guy so I would argue that I really like some of those cars and they are

Case 23-01132-EPK   Doc 383-1   Filed 01/22/26   Page 896 of 976

34

unique and the reason why they are unique is because they go up in value some of these cars. There not just your average --

THE COURT: That's right. But you know what, you can still value them.

MR. COHEN: Yes, I understand. I understand, Judge.

But what's more important is to oversee the transfer of the paperwork, to oversee all of the transactions. And what was very important, what opposing counsel said was, I'm getting inundated from calls from all kinds of people that are making claims.

THE COURT: Right.

MR. COHEN: So why would you not a appoint a receiver to field all those calls, to sort out what Mr. Breslin said, this spaghetti.

THE COURT: You know, we can't actually -- I would but we don't have time for me to -- you know, they're objecting and there's certain hoops that you have to go through --

MR. COHEN: Understood, Judge.

THE COURT: -- that I have to go through that I don't think I'm going to be able to in this short amount of time.

So what I'd like to do is put like a freeze frame on everything, freeze everything, which would include not just keeping those cars in garage, et cetera, but ordering that there be nothing done, you know, regarding selling those cars, buying those cars, anything, no transactions relating to those cars.

MR. COHEN: Two things, Judge.

THE COURT: Yes.

MR. COHEN: One is I would ask that we be included -- if that is the way the Court is leaning, that our client be included on the insurance because we're probably not a named insured. So if this thing burns down, only one person's gonna get paid on those cars. That's Number one. Number two is we would like access to make sure we can document all the vehicles, check the VIN numbers, check the paperwork that's associated.

THE COURT: That's fine. I would --

MR. BLINDERMAN: Your Honor, can I briefly respond to that?

THE COURT: Now, as for the name on the insurance, I'm just gonna order that no insurance money be paid out. That's going to be one of the

issues of who gets -- who is entitled to these cars. So whether the cars are physically there or they're not there and the insurance is gonna be paid out --

MR. BLINDERMAN: The insurance is in case the cars are damaged.

THE COURT: Right. No, I know. I understand. Damages or stolen, right?

MR. COHEN: Right.

MR. BLINDERMAN: Right, damaged or stolen.

MR. COHEN: Or that place burns down.

MR. BLINDERMAN: Yes, exactly. It's a general liability policy.

THE COURT: Okay. So I'm going to -- it sound like we can at least have an agreement -- I know the plaintiffs would prefer a receiver but we're not going to have time for me to do a whole hearing and make that decision. So in lieu of that, for time being, until I can have a longer hearing, I'm gonna say everything is frozen regarding these cars and other cars that the plaintiff --

MR. BRESLIN: All cars, all collateral that we're claiming, frozen. Can't --

MR. BLINDERMAN: No, Judge, we object to

Case 23-01132-EPK   Doc 383-1   Filed 01/23/26   Page 899 of 976

that.

THE COURT:  Why?

MR. BLINDERMAN:  Because the problem here is that they cast such a wide net.  We don't know what cars they're claiming.  We don't --

THE COURT:  They have to identify that to you.

MR. BLINDERMAN:  Okay, Judge.  But for a receivership it has to be actual property.

THE COURT:  I'm not ordering a receivership.

MR. SCHWARTZ:  That's why they don't want a receiver because --

THE COURT:  Hold on.  Hold on.  I'm not ordering --

COURT REPORTER:  Guys, guys, I need one a time, please.

THE COURT:  Thank you.

All right.  I'm not ordering a receivership right now, but I am ordering that everything be frozen.  So if they're are other cars or property or collateral that you think they have, you need to identify it.

MR. BRESLIN:  Right.  And will --

THE COURT:  And also I'm going to tell you

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1010                                          RECEIVED NYSCEF: 01/19/2026

38

guys -- hold on.

MR. BRESLIN:  We will identify -- we will identify it, Judge.

But at the same time, we would ask that Your Honor -- because a receiver would be able to go in and evaluate and take an accounting of these transactions that occurred with these cars, I would like you to also order them to provide to us the transaction documents regarding or relating to any of the cars that have been sold since were taken off the lot in Palm Beach. Because what happened, all --

THE COURT:  Hold on.  Hold on.

MR. BRESLIN:  -- all the vehicles were taken off the lot.

MR. BLINDERMAN:  Can I respond to that, Judge?

THE COURT:  Yes.

MR. BLINDERMAN:  They didn't even plead that relief in their emergency motion.  All they asked for was an appointment of a receiver to take control and safeguard the property.

THE COURT:  All right.  I understand that's --

MR. BLINDERMAN:  He's asking for relief

Case 23-01132-EPK   Doc 382-1   Filed 01/22/26   Page 901 of 976

39

that's --

THE COURT: They're going to get it in discovery.

MR. BLINDERMAN: What we would agree to is to hold the vehicles that we have possession to and not touch the paperwork that is involved with those vehicles until the Court orders otherwise.

THE COURT: Okay.

MR. BLINDERMAN: What's wrong with that?

THE COURT: Hold on. How about any cars that were taken from the Zankl car lot, the Excell Auto Group, to let them know, give them information about that?

MR. BLINDERMAN: As to what period of time?

MR. BRANDES: I'm happy to give them all the cars in our possession, all the paperwork, in fact, I have set here.

THE COURT: Right. Not only the cars in your possession but cars -- any documentation, any vehicles --

MR. BRESLIN: Including the ones that were sold.

THE COURT: Excuse me.

-- cars that were taken from the Excell

Case 23-01132-EPK   Doc 383-1   Filed 01/22/26   Page 902 of 976

40

Auto Group.

MR. BRANDES:  That's gonna be vehicles also that were sold out of trust from us, so cars that are missing.

THE COURT:  Right.  Right.

MR. BRANDES:  Fine.  I'll give you all of them.

MR. BRESLIN:  Judge, just so we're clear, Judge, so the record is abundantly clear --

THE COURT:  Yes.

MR. BRESLIN:  -- we will be suing their client for every car, including the ones they sold, okay, because that was our collateral.  If he sold it, he did it at his own peril.  We would simply like a freeze frame, as Your Honor has ordered, we would like all the paperwork relating to anything that they took and anything that they sold for the past two weeks.

THE COURT:  Okay.  So they narrowed it, within the past two weeks.

MR. BRESLIN:  Does that work?  Does that work, the past two weeks?

THE COURT:  So when you say "anything," what do you mean by "anything"?  Any cars?

Excuse me.  Do you mean any cars from the

Excell Auto Group or broader than that?

MR. SCHWARTZ:  Broader than that, Your Honor.

THE COURT:  Okay.

MR. SCHWARTZ:  Because our collateral, if you were to look at our security interest, it covers everything on those lots, in addition to the specific cars.

THE COURT:  So anything that was on the Excell Auto Group car lots.

MR. SCHWARTZ:  Yes, and Karma of Broward lot and Karma of Palm Beach.

THE COURT:  Okay.  So --

MR. BRESLIN:  Judge and since we have paperwork that they submitted that is occurred around the end of the March, there was -- 'cause what happened is there is a lot of title transfers going on at the end of March --

THE COURT:  Yes.

MR. BRESLIN:  -- so how about the last 30 days?  So if their client took possession of any cars off of that lot within the last 30 days, all the paperwork regarding or relating to it.

THE COURT:  Okay.  Anything that the defendants took or sold from the Excell Auto

Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 904 of 976

42

Group. Name the others.

MR. BLINDERMAN: Why-- Why --

MR. BRESLIN: Karma of Palm Beach and Karma of Broward.

MR. BRANDES: Why does Excell have anything to do with this?

MR. BRESLIN: Because you're claiming that Excell gave you those cars or otherwise sold you those cars for excell owed you money.

THE COURT: But you don't have a UCC with the --

MR. BRESLIN: No, we have a UCC on the --

BRANDES: Karma.

MR. BRESLIN: -- Karma cars.

MR. BRANDES: That's correct.

MR. BRESLIN: And it's our position that every one of those cars was a Karma car.

MR. BLINDERMAN: Oh, so there's that.

MR. BRANDES: So even though I have documentation that says we worked with Excell --

MR. BRESLIN: Right.

THE COURT: Don't interrupt.

COURT REPORTER: Guys. Guys.

THE COURT: Stop interrupting.

MR. BRANDES: -- that we paid Excell

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 905 of 976

43

contemporaneously and we got a title from Excell, what does that have to do with the vehicles that they're alleging that they have a UCC on that stems from Karma?  They're two different entities.

THE COURT:  Right.  Except that they're alleging that Karma cars were taken or sold to Excell.  Okay.

MR. BRANDES:  Okay.  That's fine, Your Honor.

THE COURT:  Okay.  So I think we have an agreement.  Let's say it one more time for the record.  All right.  All right.  So anything, not even cars, it's broader than that, anything that the defendants took from the car lots at Excell Auto Group or -- what were the other two places?

MR. SCHWARTZ:  Karma of Broward and Karma of Palm Beach.

THE COURT:  -- from either those cars lots or from those three entities.

MR. SCHWARTZ:  Or from the Zankls personally, Your Honor.

THE COURT:  Or from the Zankls personally. Anything within the past 30 days that they took or they sold or they bought, you have to disclose

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022
NYSCEF DOC. NO. 1010
RECEIVED NYSCEF: 01/19/2026

44

that information, documents to the plaintiffs. And you also need to show the insurance documents and any other documents to the 27 cars that are in that AC garage. And that you're going to not do anything, not change the status quo of everything that is existing at this moment. It's not gonna change.

MR. BRESLIN: Not sell or --

MR. COHEN: Two things, Judge.

MR. BRANDES: And plaintiff will provide the defendant or at least the three defendants here, there list of vehicles that they claim that they have an interest in.

THE COURT: Yes.

MR. COHEN: Hi, Judge.

THE COURT: Yes.

MR. COHEN: Judge, two things, one is we need to put the exact address where the vehicles are kept right now, that they won't be moved from that address. Second thing is I would -- actually there's gonna be three things, I lied to you, I'm sorry. The second thing is we need access to inspect those vehicles. And then the third thing is that we can, at our own expense hire a security guard to stay on the property

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1010                                RECEIVED NYSCEF: 01/19/2026

45

without an objection from the defendant.

THE COURT: To stay outside.

MR. COHEN: Outside the property but on the -- in the parking lot or -- I don't know where this is.

THE COURT: Why not?

MR. BLINDERMAN: Well, my client doesn't own that facility, Judge, where these vehicles are being stored so we don't have ability --

THE COURT: They don't have any objection to it.

MR. COHEN: Okay. Perfect.

THE COURT: So you can -- they're not gonna object to have a security guard paid by you to guard outside there.

MR. COHEN: Great.

THE COURT: As long as that security guard allows everybody that --

MR. COHEN: Sure.

THE COURT: -- the defendants want to enter that garage.

MR. COHEN: Sure.

THE COURT: Okay. But in terms of who you guys want to go into that garage, I'm going to allow it, you know, one time to go into that

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM          INDEX NO. 650582/2022
NYSCEF DOC. NO. 1010                                  RECEIVED NYSCEF: 01/19/2026

46

garage.  And who do you want to go into that garage to check out the cars?

MR. COHEN:  We're going -- that's going to be determined 'cause we're probably going to need someone who's an expert to make sure that the cars are in good condition.

THE COURT:  Okay.  And that will be coordinated between the parties in good faith.

MR. BLINDERMAN:  Sure.

MR. BRANDES:  Sure.

THE COURT:  Okay.  Anything else?

MR. HANDLER:  Yes, Your Honor.  May I be heard?

THE COURT:  Yes.

MR. HANDLER:  Thank you very much.

MR. COHEN:  Judge, there's one other thing -- I'm sorry, did you have to say something?

THE COURT:  Yes.

MR. HANDLER:  Yes.

MR. COHEN:  Oh, I apologize.  Go ahead. Let him talk first, I've talked a lot.

THE COURT:  Okay.

MR. HANDLER:  I don't think anybody has advised you, because they've introduced the

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1010   RECEIVED NYSCEF: 01/19/2026

47

notion of in the name of Excell Auto Group, Inc., Excell Auto Group, Inc. filed bankruptcy last week.  There's already a bankruptcy judge assigned and a trustee assigned.

And so, Your Honor, while I understand that your order is going to be limited to information gathering and sharing, I just wanted to least be the one here to advise the Court that there's probably little else that you can do in connection with that particular entity and its assets that are principally located in Palm Beach County.

Now, I think it's been explained to you, and it's been alleged, that these assets were primarily shopped and shown in Broward County, and that's a fair distinction to make.

On behalf of my client and its principles, I didn't want to leave today with just the notion that everyone is free to point the finger at them and claim that they are the perpetrators of fraud.

We think that this whole problem -- I'm sorry, that this problem in large part stems from excessive self-help in the middle of a transactional history that's unique to this kind

Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 910 of 976

48

of car vending business. And so I wanted to let you know that when it comes times to the presentation of evidence, you're going to hear evidence to that effect.

We were -- we did come in here today in sport of the receivership because we think order needs to be restored here, that these vehicles taken off with out our permission needs to be -- need to be located and found and their status identified to the Court and to the owners. And so we're happy that we're reaching this conclusion, but I just don't want, with all of the flurry of blame and the mixing of names, to it have the Court go down the path of factoring in an entity already in bankruptcy.

THE COURT: Thank you. That was very helpful. I appreciate that.

MR. BRESLIN: Judge, the only thing I would like to add, if there's no objection, you know, we're happy to have -- you said there would be a one-time inspection of the vehicle, if this is gonna be, you know, protracted, we would like to inspect the collateral, you know, periodically, say every 30 days.

THE COURT: I would hope that the other --

Case 23-01132-EPK   Doc 383-1   Filed 01/22/26   Page 911 of 976

that the defense would agree to that.

MR. BRANDES:  I have no objection to that, Your Honor.

In all candor, I hope this matter is resolved more expeditiously than having a long-winded expensive and needless lawsuit.

MR. COHEN:  And we need the address on the record for the cars.

MR. BRANDES:  I have to ask the client.

MR. COHEN:  Go ahead.

MR. BLINDERMAN:  Thank you for the permission, Brad.  I appreciate that.

MR. COHEN:  You're welcome.

MR. HANDLER:  Your Honor, while that question's being posed, I take it your order will allow for the sharing of the information to include all of defendants in this case.

THE COURT:  Yes.

MR. HANDLER:  Thank you.

MR. COHEN:  And, Judge, because of -- and Brad Cohen, for the record, I'm sorry, for the plaintiffs.

Because of the nature of these vehicles, Mr. Crispin did an investigation.  Some of these vehicles were kept outside at the defendant's

Case 23-01132-EPK   Doc 383-1   Filed 01/22/26   Page 912 of 976

50

house.  I just want to make sure that all those vehicles are in the warehouse, they're not being driven around because, as you know, the high-end vehicles, when you put miles on them --

THE COURT:  Oh, I know.

MR. COHEN:  Okay.

THE COURT:  I recently just did a bench trial with, you know -- I don't even remember if it was a Lamborghini or Ferrari that was worth, you know, 300 or 400,000.

MR. COHEN:  Every mile's a couple of dollars.

THE COURT:  Yeah.

MR. COHEN:  So we ask that any vehicles that are at his house -- all these vehicles should be stored in one location and not driven around.

THE COURT:  Well, it's my understanding that all of the cars, 27 cars, are in the air conditioned garage.

MR. COHEN:  That's what was represented.

MR. SCHWARTZ:  The affidavit says that.

MR. BLINDERMAN:  Yes, those cars on the list are in this facility.

The address, Your Honor, is 5471 North

Dixie Highway, Suite 1 and 2, in Boca Raton Florida.

MR. SCHWARTZ:  I just want to be clear, those are all 27 remaining cars?

MR. BLINDERMAN:  Yeah.

MR. SCHWARTZ:  Okay.  Thank you.

THE COURT:  Now, what address did you -- were you saying that cars were in front of a house?

MR. SCHWARTZ:  Yes, at Mr. Farache's house.  If you look at our investigative report, there's a number of high-end exotic vehicles that were parked there.  In addition, our investigator --

THE COURT:  What's the address of that house?

MR. SCHWARTZ:  Mr. Crispin?

MR. CRISPIN:  270 Silver Palm Road --

MR. SCHWARTZ:  Your Honor, 270 Silver Palm Road --

MR. CRISPIN:  In Boca Raton.

MR. SCHWARTZ:  -- in Boca Raton.

MR. COHEN:  And those were kept outside, that was my main concern.  It was like Rolls-Royces and stuff that are outside his

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1010                                   RECEIVED NYSCEF: 01/19/2026

52

house.

THE COURT:  Right.

MR. COHEN:  I'm just concerned.  I want to make sure they're all in the warehouse, the ones that we're making claim for.

THE COURT:  Well, I'm just -- they're saying that all 27 cars are in that air conditioned --

MR. BLINDERMAN:  Hold on, Judge.  We're going over this.  We have a list and we want to make sure we're accurate.  We are not trying to pull anything over on anybody.

THE COURT:  Okay.  You can have this case back and give it to me next time, if you want.

MR. COHEN:  I'll go get it for you.

MR. SCHWARTZ:  Thanks.

MR. COHEN:  He used to work for me, now I work for him.  See how that works, Judge.

MR. SCHWARTZ:  As much as he wants to patronize me, it doesn't work.  But, yes, I did start my --

MR. COHEN:  Now I carry his briefcase, Judge.  That's how it goes when you get old.

MR. BRANDES:  Your Honor, I need to -- I need to sit down with my client and go through

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010    RECEIVED NYSCEF: 01/19/2026

53

car by car exactly.  It's been a moving puzzle. Not because there's any type of fraud or funny business going on, just because there's a lot of inventory, but I can assure you they're all safe and we will get an exact count.

MR. SCHWARTZ:  Are you saying that the 27 cars are not in one location?

MR. BRANDES:  Didn't I just -- I just said that.

MR. SCHWARTZ:  Right.  But you filed an affidavit of record stating just that.

MR. COHEN:  That is true.

THE COURT:  All right.  How many cars are in the garage of Mr. Farache?

MR. BRANDES:  I need to go through each one with him, Your Honor.  We'll be happy to sit outside --

THE COURT:  I can't wait.  I have to go.

But are there fewer than 27 cars in the garage or what?  How many cars are in the garage?

MR. SCHWARTZ:  Your Honor, this is the issue I was trying to highlight.

THE COURT:  Wait.

MR. BRESLIN:  Judge, while they're speaking, is it your intent to give us some more

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022
NYSCEF DOC. NO. 1010
RECEIVED NYSCEF: 01/19/2026

54

time when we can present --

THE COURT:  Yeah, but I don't know when that will be.  You'll have to coordinate with my secretary.

MR. BRANDES:  Your Honor, some of the vehicles, I'm advised, are actually sitting in Broward Karma.

THE COURT:  Are sitting where?

MR. BRANDES:  Sitting in Broward -- Karma of Broward's facility, which we don't have access to.  So --

THE COURT:  Okay.  Well, identify those.

How many cars are in the garage that you have control of?

MR. FARACHE:  I can go tonight and -- I mean, somebody can come with me, I open.  And I have two vehicles in my parking lot at my own house.  So anything I have.  I'm not here to -- I'm the guy who is responded to picking up every vehicle, to protect the assets of both parties before anybody took it and we don't do nothing wrong.

THE COURT:  All right.  Okay.  All right. Well, then, look, as long as you're being honest and you follow my order, you're not gonna get in

Case 23-01132-EPK   Doc 383-1   Filed 01/22/26   Page 917 of 976

trouble with me.  Okay.

MR. FARACHE:  But it's not fair because I spent last week close to $40,000 to collect every one of --

THE COURT:  All right.  Well, it hasn't been determined yet who has --

MR. FARACHE:  I know but all of my money is sitting in these cars and I have family.  It's not fair.

MR. COHEN:  Judge --

THE COURT:  All right.

MR. BRANDES:  I wouldn't be able to accurately represent what we have but I can't assure the Court that --

MR. FARACHE:  They can drive with me tonight and I hope it and show them.  I'm not here to bullshit anybody.  I just want to protect my assets.

MR. BRANDES:  You can't say that.

THE COURT:  Okay.

MR. BRANDES:  Judge, I'm happy to go from the courthouse now with opposing counsel and Mr. Farache, we'll drive right now up there.

THE COURT:  All right.  Why don't you do that.

Case 23-01133-EPK Doc 383-1 Filed 01/22/26 Page 918 of 976

56

MR. BRESLIN: All right. Mr. Crispin will accompany them.

THE COURT: Okay.

MR. COHEN: And, Judge, I just want to make sure that the record is clear, there was an affidavit provided -- this is the only thing that we were going on, that there was 27 cars in that location.

THE COURT: It may have been at the time the affidavit was filed.

MR. COHEN: It was filed today.

MR. SCHWARTZ: It was filed ten minutes ago.

MR. BRANDES: Your Honor, this is what -- it was represented to me by my client. I wasn't doing it to try to be --

MR. SCHWARTZ: It's not your affidavit.

MR. BRANDES: It wasn't my affidavit, it was his, but it wasn't --

COURT REPORTER: Guys, I need one at a time.

THE COURT: All right. Guys, that's it. We're in recess. We're in recess.

Thank you.

MR. BRESLIN: Judge, is Your Honor's order

Case 23-01132-EPK    Doc 383-1    Filed 01/22/26    Page 919 of 976

57

as stated on the record?  There's not going to be a written order, right?

MR. BLINDERMAN:  We should do it, enter an order.  Enter an record.

MR. BRESLIN:  All right.  But for the time being, can we rely on the order that you announced in the record --

THE COURT:  Yes.  The written order --

MR. BRESLIN:  -- until it's superseded?

THE COURT:  The written order should be the same --

MR. BLINDERMAN:  Exactly what the Court proclaimed.

MR. BRESLIN:  Thank you.

THE COURT:  And just so we're clear, I don't know how many cars are in that garage.  It doesn't matter.  However many cars are in that garage stay in that the garage in the same condition.  And if Mr. Farache has any cars or trucks or any other vehicles anywhere else, he needs to put them in the garage, in that garage and gets insurance coverage and everything else.

MR. BRESLIN:  All right.  And there's going to be no more sales, no --

THE COURT:  Right.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1010                                RECEIVED NYSCEF: 01/19/2026

58

MR. BRESLIN:  -- no nothing?

THE COURT:  That is correct.

MR. BRESLIN:  All right.  Thank you.

MR. SCHWARTZ:  Thank you, Your Honor.

MR. COHEN:  Thank you, Judge.

MR. BLINDERMAN:  Thank you, Judge.

MR. BRANDES:  Thank you, Your Honor.

THE COURT:  All right.  Have a good evening.

- - -

(Whereupon, the proceedings were concluded at 4:38 o'clock p.m.)

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM          INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010                                        RECEIVED NYSCEF: 01/19/2026

CERTIFICATE

STATE OF FLORIDA          )
                          : SS
COUNTY OF BROWARD         )


I, VICTORIA PAEZ NEIL, Shorthand Reporter, certify that

I was authorized to and did stenographically report the

foregoing proceedings and that the transcript is a true

and complete record of my stenographic notes.


Dated this 19th day of April, 2022.

VICTORIA PAEZ NEIL
Notary Public - State of Florida
My Commission No. GG 338908
My Commission Expires: 7-20-23

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1010                                          RECEIVED NYSCEF: 01/19/2026

60

| | | | | |
|---|---|---|---|---|
| **$40000** 55:3 | 51:13 | **although** 33:13 | 44:3,19 45:9 46:6 | 43:16 47:1,2 (18) |
| **$500000** 16:4 | **additionally** | **am** 31:8 37:20 | 47:11,20 | **automobiles** |
| **$66** 15:21 18:24 | 11:15 | **amend** 9:1 | 50:2,15,19,24 | 15:18 |
| **$7** 18:13 | **address** 32:20 | **amount** 10:3 | 51:4,25 52:7,11 | **available** 9:25 |
| **&** 2:2,6,14 3:13 | 44:18,20 49:7 | 34:25 | 53:6,7,13,19,20 | 22:9 |
| (4) | 50:25 51:7,15 (7) | **andor** 30:21 | 54:6,8,13 57:16,17 | **avenue** 2:1132,19 |
| **'cause** 13:1 14:14 | **admit** 29:7 | **announced** 57:7 | (63) | **average** 34:3 |
| 24:18 41:16 46:4 | **advise** 47:8 | **another** 6:25 | **area** 6:17 | **aware** 11:13 |
| (5) | **advised** 46:25 | **anybody** 3:20 | **argue** 33:24 | **b** 2:17 |
| **14th** 1:18,24 | 54:6 | 4:11,22 6:13 24:4 | **arguing** 18:23 | **back** 16:18,21 |
| **19th** 59:19 | **affidavit** | 46:24 52:12 54:21 | **argument** 4:6 | 17:7 52:14 (4) |
| **218a** 2:15 | 15:23,24 33:12 | 55:17 (9) | 13:1 14:3 17:9 | **backs** 17:18 |
| **25th** 2:11 | 50:22 53:11 | **anything** 18:17 | 32:10 33:23 (6) | **bad** 26:6 |
| **29th** 2:19 | 56:6,10,17,18 (9) | 19:24 24:22 35:6 | **arguments** 11:8 | **baker** 7:14,15 |
| **3rd** 2:1132 | **after** 9:3 13:7 | 40:17,17,23,24 | 14:20 | **bank** 27:8,9 |
| **ability** 45:9 | 16:25 25:6 27:20 | 41:9,24 42:6 | **around** 12:24 | **bankruptcy** |
| **able** 4:15 34:24 | (5) | 43:13,14,24 44:5 | 41:16 50:3,17 (4) | 15:21 47:2,3 |
| 38:5 55:12 (4) | **afternoon** | 46:11 52:12 54:18 | **article** 13:17 | 48:15 (4) |
| **about** 6:1 10:9 | 3:6,12,15 15:5 (4) | (18) | **ask** 4:5,15 19:14 | **baron** 2:6 |
| 11:10 15:11 17:24 | **again** 4:20 | **anywhere** 57:20 | 29:12 31:16 32:12 | **based** 28:3 |
| 21:15 31:9 | **ago** 23:12 33:11 | **apologize** 46:21 | 35:10 38:4 49:9 | **basically** 5:20 |
| 39:10,13 41:20 | 56:13 | **apparently** 23:11 | 50:14 (10) | 17:13 |
| (10) | **agree** 6:3 14:2 | **appear** 27:12 | **asked** 29:24 | **basis** 5:25 |
| **abovestyled** 1:21 | 19:20 20:14,17 | **appearances** 2:1 | 31:12,13 32:9 | **beach** 1:9 2:17 |
| **absolute** 5:21 | 24:13 39:4 49:1 | **appoint** 5:12,17 | 38:21 (5) | 3:14 8:9,11 |
| 20:2 | (8) | 13:17 17:16 22:17 | **asking** 5:24 | 9:10,15,22 10:21 |
| **absolutely** 13:12 | **agreement** 10:17 | 32:16 33:7 34:15 | 17:24 20:6 | 12:3 13:20 |
| **absolve** 14:16 | 25:16 29:13 32:13 | (8) | 26:8,13,15 31:15 | 14:8,9,14,16 18:15 |
| **abundance** 16:20 | 36:15 43:12 (6) | **appointed** 5:20 | 32:1,11 33:3,4 | 21:9,10,13 22:8 |
| **abundantly** 40:9 | **ahead** 15:3,4 | 6:4 19:3 31:9 (4) | 38:25 (12) | 24:9 31:12,13 |
| **ac** 44:4 | 46:21 49:10 (4) | **appointing** 32:18 | **assets** 47:11,14 | 32:2,7 33:4 38:11 |
| **access** 35:16 | **air** 16:2 19:16,22 | **appointment** | 54:20 55:18 (4) | 41:12 42:3 43:18 |
| 44:23 54:10 | 50:19 52:7 (5) | 38:21 | **assigned** 47:4,4 | 47:11 (31) |
| **accommodate** | **allegations** 29:1 | **appreciate** 48:17 | **associated** | **became** 25:24 |
| 11:22 | **allege** 9:23 19:12 | 49:12 | 33:9,15 35:19 | **because** 5:18 |
| **accompany** 56:2 | **alleged** 17:18 | **approach** 26:22 | **assurance** | 10:4 11:4 13:3 |
| **accounting** 38:6 | 28:12,16 30:6 | **april** 1:18,25 | 25:20,21 | 14:2 16:20 19:4 |
| **accurate** 52:11 | 47:14 (5) | 59:19 | **assure** 53:4 55:14 | 21:2,18 30:17 |
| **accurately** 55:13 | **allegedly** 19:10 | **are** 3:23 | **assured** 25:6 | 32:8,14 34:2 |
| **act** 5:15,16,24 | **alleging** 18:20 | 5:4,14,16 9:18,19 | **attached** 13:8 | 35:13 37:3,13 |
| 10:5 22:18 (5) | 43:3,7 | 13:21,22,23 14:13 | 19:11 33:12 | 38:5,12 40:13 |
| **acted** 17:5 | **allow** 14:10 | 15:25 16:12,15,15 | **attempts** 26:6 | 41:5 42:7 46:25 |
| **action** 21:4,14 | 45:25 49:16 | 18:6,21 19:15 | **attorney** 2:17 4:1 | 48:6 49:20,23 |
| **actions** 14:16,17 | **allowed** 28:17 | 20:6,20 21:8,21,25 | **attorneys** 2:13,22 | 50:3 53:2,3 55:2 |
| **actual** 37:9 | **allows** 45:18 | 22:2 23:13,16 | **authorized** 59:6 | (29) |
| **actually** 24:19 | **already** 14:11,15 | 28:25 29:1,24 | **auto** 1:11,13,14 | **becomes** 16:13 |
| 34:18 44:21 54:6 | 47:3 48:15 (4) | 30:6 31:22,23 | 2:23 3:18 | **before** 1:22 5:9 |
| (4) | **also** 2:24 4:19 | 32:15 33:25 | 15:17,19 16:19 | 6:19 8:23 10:23 |
| **add** 48:19 | 26:15,24 37:25 | 34:1,13 36:2,6 | 17:4,21 39:12 | 16:22 17:14 18:7 |
| **addition** 41:7 | 38:8 40:3 44:2 (8) | 37:21 40:4 | 40:1 41:1,10,25 | 20:16 27:18,19 |

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1010    RECEIVED NYSCEF: 01/19/2026
61

29:14 33:20 54:21 (14)
**behalf** 3:8,14,17 33:1 47:17 (5)
**being** 16:1 21:21 28:9 32:4,5 36:19 45:9 49:15 50:2 54:24 57:6 (11)
**believe** 7:25 9:10 10:1 11:7 14:13 15:20 16:23 21:5 30:11 (9)
**bench** 50:7
**bernie** 17:24
**besides** 30:12
**between** 8:19 25:16 32:2 46:8 (4)
**bigger** 20:18 30:2,2
**bit** 6:1
**blame** 48:13
**blinderman** 2:21 3:15,16 4:18 15:5,11,14,16 18:9,14,17 19:17 20:12,15 21:8 27:2,5,19 28:25 29:15 35:21 36:5,10,12,25 37:3,8 38:16,19,25 39:4,9,14 42:2,18 45:7 46:9 49:11 50:23 51:5 52:9 57:3,12 58:6 (44)
**boca** 1:11 2:23 3:18 51:1,21,22 (6)
**bond** 32:17,21
**both** 9:3 12:2 54:20
**bottom** 22:6
**bought** 12:8,14 18:7 22:22 27:17 43:25 (6)
**brad** 32:25 49:12,21
**bradford** 2:5 3:7
**bradford@florid ajusticefirmcom**

2:4
**brandes** 2:18,22 3:16 15:10 25:2,7,22 29:15,17,21,24 30:3 31:18,21,25 32:14 39:16 40:2,6 42:5,13,15,19,25 43:9 44:10 46:10 49:2,9 52:24 53:8,15 54:5,9 55:12,19,21 56:14,18 58:7 (40)
**breslin** 2:6,9 3:7,25 4:5,13 5:2,4 6:10 7:22 8:2,4,15,18,23 9:12,14 13:6 15:2,7 16:17 17:12 20:1,5,9 21:12 22:11,15 23:3,7,9,18,20,22 24:2,5,8 25:24 29:9 31:7 34:17 36:23 37:24 38:2,14 39:22 40:8,11,21 41:14,20 42:3,7,12,14,16,21 44:8 48:18 53:24 56:1,25 57:5,9,14,23 58:1,3 (68)
**breslin's** 16:10
**brief** 5:1
**briefcase** 52:22
**briefly** 35:21
**bring** 21:13
**broad** 31:10
**broader** 41:1,2 43:14
**broward** 1:2,9,17,23,24 8:10,11 9:12,15,16 12:3 21:2,2 23:23 41:11 42:4 43:17 47:15 54:7,9 59:3 (21)
**broward's** 54:10

**building** 2:7
**bullshit** 55:17
**burns** 35:14 36:11
**business** 16:7 48:1 53:3
**businesses** 9:3
**buyer** 31:3
**buying** 35:6
**cace22005125** 1:8
**called** 4:8 15:17 25:8 27:8 (4)
**calls** 30:14 34:12,16
**came** 1:21 19:10 20:16 26:5 28:22 (5)
**can** 3:3,21 4:25 5:4 6:20 7:10,19 8:15 10:9 13:12 19:3 20:8 21:13 22:4,18 24:16,23 26:10 27:22 29:9,15 32:16,20,20 34:5 35:17,21 36:15,19 38:16 44:24 45:13 47:9 52:13 53:4 54:1,15,16 55:15 57:6 (40)
**can't** 7:3 26:16 30:7,17 34:18 36:24 53:18 55:13,19 (9)
**candor** 30:12 49:4
**car** 30:16,17 32:18,18,22 33:24 39:11 40:12 41:10 42:17 43:15 48:1 53:1,1 (14)
**car's** 13:21
**care** 26:17
**carefully** 14:24
**carry** 52:22
**cars** 9:10,14,16,18,21 12:6,8,10,14,16,20, 22,24 13:22

14:3,7,10,13 18:7 19:15,21,23,25 21:25 22:22,23 23 :4,6,7,8,12,13,16,1 7,19,23,24 24:1,14,16,22 25:8,12,18 26:7,16 27:16,17 28:13 29:10,11,24 30:4,5,7,7,11,24 32:4 33:14,16,20,25 34:2 35:3,6,6,7,15 36:2,2,6,21,21,23 37:5,22 38:7,10 39:10,17,19,20,25 40:3,24,25 41:8,22 42:8,9,14,17 43:7,14,19 44:3 46:2,6 49:8 50:19,19,23 51:4,8 52:7 53:7,13,19,20 54:13 55:8 56:7 57:16,17,19 (116)
**carved** 8:1
**case** 5:23 6:4 8:6 11:7 13:17 16:15 17:13 18:10 19:1,4,6 20:20 21:1 24:6 25:25 26:19 27:2,8,14 36:5 49:17 52:13 (22)
**cashed** 33:18
**cast** 37:4
**cause** 1:21
**caution** 16:20
**cblinderman@kf blawcom** 2:20
**certain** 9:1 34:20
**certificate** 16:6 59:1
**certify** 59:5
**cetera** 24:15 26:25 28:8 35:4 (4)
**chance** 6:25 22:12
**change** 44:5,7
**changed**

33:18,20
**changing** 30:1
**check** 33:17 35:18,18 46:2 (4)
**checks** 33:16
**circuit** 1:1,1
**claim** 10:6 11:9 16:15,15 17:14 21:10 24:2 30:8,18 31:1 44:12 47:20 52:5 (13)
**claimant** 27:13
**claimed** 30:25
**claiming** 11:20 20:20 23:25 36:24 37:5 42:7 (6)
**claims** 30:21 34:13
**clean** 9:2
**clear** 10:5 11:13 25:9 30:8 40:8,9 51:3 56:5 57:15 (9)
**client** 6:15 7:6,7 11:1 18:7 19:11,15 20:14 22:24 30:6,17 35:12 40:12 41:21 45:7 47:17 49:9 52:25 56:15 (19)
**client's** 16:11
**clients** 10:23 15:8,18,21 20:15 (5)
**close** 17:1 55:3
**closed** 13:22
**cms** 10:15
**code** 6:17
**cohen** 2:2,5 3:7 32:23,25,25 33:6 34:6,15,22 35:8,10 36:9,11 44:9,15,17 45:3,12,16,19,22 46:3,16,21 49:7,10,13,20,21 50:6,11,14,21 51:23 52:3,15,17,22 53:12 55:10

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1010                                  RECEIVED NYSCEF: 01/19/2026

62

56:4,11 58:5 (44)
**collateral** 9:2
10:3,6 11:2,9,20
13:10 16:8 31:15
36:23 37:22 40:13
41:5 48:23 (14)
**collateralized**
12:11
**collect** 55:3
**come** 17:14 28:18
48:5 54:16 (4)
**comes** 13:15 48:2
**comfortable** 12:5
**coming** 16:21
17:5
**commission**
59:18,7
**committed**
17:23,25
**companies** 8:9
10:20 11:21
12:2,7,9,16,17,18
22:22 (10)
**company**
1:5,6,12,15 11:19
15:17 (6)
**comparison**
13:10
**complaint** 9:23
13:8 21:1
**complete** 59:8
**concern** 51:24
**concerned** 31:9
52:3
**concluded** 58:11
**conclusion** 48:12
**condition** 46:6
57:19
**conditioned** 16:2
19:16,22 50:20
52:8 (5)
**connection** 47:10
**considering** 6:16
**contemporaneous**
**ly** 18:5 27:21
30:9 31:2 43:1 (5)
**contempt** 24:23
28:9
**contest** 18:1
**continue** 6:19

7:21
**control** 14:1
23:4,15 38:22
54:14 (5)
**coordinate** 54:3
**coordinated** 46:8
**copy** 16:5
**core** 33:6
**cornwell** 2:14
3:13
**corporate** 30:21
**corporation**
1:9,10,13,14 (4)
**correct** 9:10,11
25:14 26:14 42:15
58:2 (6)
**cory** 6:8
**could** 17:7,14
29:5 30:19 (4)
**counsel** 29:18
34:11 55:22
**count** 5:3 21:3
32:19 53:5 (4)
**counties** 22:19
**county**
1:2,17,23,24
21:2,9,11,13 22:8
47:12,15 59:3 (12)
**couple**
13:11,11,19 50:11
(4)
**course** 4:17
**court** 1:1
3:3,11,20
4:4,9,17,20
5:3,9,24
6:7,11,18,23
7:3,5,8,12,17,23
8:3,13,16,22 12:25
14:12,15,23
15:4,7,13,15 16:18
18:6,12,16
19:14,18,20,21
20:3,7,11,13,16
21:7,18
22:10,12,25
23:6,8,17,19,21,25
24:4,7,11,21,23
25:10,15,21
26:12,21,23

27:3,4,6,15,22,25
28:5,9,9,13,21
29:7,12,20,23
30:22
31:5,16,20,23
32:11,24 33:5
34:4,14,18,23
35:9,11,20,23
36:7,14 37:2,6,10,
14,16,18,25
38:13,18,23
39:2,7,8,10,19,24
40:5,10,19,23
41:4,9,13,19,24
42:10,22,23,24
43:6,11,19,23
44:14,16 45:2,6,10
,13,17,20,23
46:7,11,14,19,23
47:8
48:10,14,16,25
49:18 50:5,7,13,18
51:7,15 52:2,6,13
53:13,18,23
54:2,8,12,23
55:5,11,14,20,24
56:3,9,20,22
57:8,10,12,15,25
58:2,8 (186)
**court's** 24:24
**courthouse**
1:17,23 55:22
**courtroom**
4:15,16,19
**coverage** 57:22
**covers** 19:23 41:7
**craig** 2:21 3:16
**crazy** 30:20
**crimes** 17:25
**crispin** 2:25 9:24
25:4 49:24
51:17,18,21 56:1
(8)
**crispin's** 13:9
24:18
**critical** 13:25
**currently** 15:25
23:25
**cut** 24:21
**damaged** 36:6,10

**damages** 22:4
36:8
**day** 1:24 26:1
30:14 33:20 59:19
(5)
**days** 41:21,22
43:24 48:24 (4)
**dca** 27:8
**dealer** 32:2
**dealership** 9:22
13:20 28:17,23 (4)
**dealings** 15:8
16:19
**decision** 36:18
**deems** 5:11
**defendant** 21:3
44:11 45:1
**defendant's**
49:25
**defendants** 1:16
3:17 9:20 11:6
12:21 14:2,20
41:25 43:15 44:11
45:20 49:17 (12)
**defense** 26:14
49:1
**definition** 10:7
**defraud** 29:5
**delaware** 1:4,4,5
**destroyed** 21:22
**determined** 46:4
55:6
**didn't** 15:8
16:17,20 38:19
47:18 53:8 (6)
**different** 32:10
43:4
**dime** 26:18
**disappear** 28:24
**disclose** 43:25
**discovery** 39:3
**dispose** 16:8
**distinction**
31:18,21 47:16
**dixie** 51:1
**docs** 9:5 12:1,2,3
(4)
**document** 10:25
11:11 35:17
**documentation**

39:20 42:20
**documents**
10:13,22 11:5
13:8 14:25
33:12,13,15 38:9
44:1,2,3 (12)
**does** 21:11
40:21,21 42:5
43:2 (5)
**doesn't** 32:9 45:7
52:20 57:17 (4)
**doing** 56:16
**dollars** 8:8,21
9:6,17 22:21
50:12 (6)
**done** 9:4
27:21,23,24
30:10,19,23 35:5
(8)
**door** 32:4
**doors** 13:21
**down** 5:3 32:10
35:14 36:11 48:14
52:25 (6)
**dozen** 26:18
**drawers** 28:20
**drive** 55:15,23
**driven** 50:3,16
**due** 17:12
**dupont** 2:7
**e** 2:169,22
**each** 16:3 32:19
53:15
**earlier** 7:23
**early** 17:2
**effect** 48:4
**eight** 9:16 23:23
**either** 17:1 18:3
32:15 43:19 (4)
**else** 3:20 4:11 7:9
19:24 24:4,4,15
25:12 27:24 30:18
46:11 47:9
57:20,22 (14)
**email** 11:12
**emergency**
5:8,24 38:20
**employees** 28:18
**end** 8:12,19
41:16,18 (4)

Prestige Reporting Service, Inc. 633 South Andrews Avenue | Suite 202 | Fort
Lauderdale, FL 33301 (954) 764-7297 | info@prestigereportingservice.com

Case 23-01132-EPK Doc 383-1 Filed 01/22/26 Page 925 of 976

63

enter 45:21 57:3,4
entities 43:5,20
entitled 14:4,17 21:6,16,16 36:1 (6)
entitles 10:8
entity 15:22 47:10 48:15
esq 2:5,5,9,13,17,21,22 (7)
essence 14:12
establish 13:12
et 24:15 26:25 28:8 35:4 (4)
evaluate 38:6
evaluations 8:25
even 16:22 27:17 29:7 33:16 38:19 42:19 43:14 50:8 (8)
evening 58:9
event 13:7 32:5
ever 19:11
every 17:17 26:1 29:5 40:12 42:17 48:24 50:11 54:19 55:3 (9)
everybody 11:23 45:18
everyone 47:19
everything 20:7 30:3,19 35:2,2 36:20 37:21 41:7 44:6 57:22 (10)
evidence 5:11,18 6:2 15:25 17:17 19:5 48:3,4 (8)
evidentiary 5:9,10 13:4 27:22 (4)
exact 31:14,14 44:18 53:5 (4)
exactly 16:6 27:14,15 36:12 53:1 57:12 (6)
example 6:9
excell 1:13,14 15:17,19 16:19 17:4,21 39:12,25

41:1,10,25 42:5,8,9,20,25 43:1,8,15 47:1,2 (22)
except 43:6
excessive 47:24
excuse 5:15 17:21 28:20 39:24 40:25 (5)
executed 12:1,2,3
exhibit 10:13,14,16,18,19 22:17 (6)
exhibits 6:1,2,6 10:11 11:17 14:6,22 15:24 (8)
existing 44:6
exotic 51:12
exparte 5:8
expeditiously 49:5
expense 44:24
expensive 22:1 49:6
expert 46:5
expires 59:7
explain 10:19
explained 47:13
extent 14:19
extortion 10:1
extraordinary 19:4
extreme 26:14
face 10:25
facie 5:18
facility 45:8 50:24 54:10
fact 26:3,4 39:18
factoring 48:14
facts 10:10
fair 30:23 47:16 55:2,9 (4)
faith 26:6 46:8
family 55:8
farache 1:11 2:22,24 3:17 4:18 9:20 10:19 15:23 16:2 25:5 26:4 28:8 30:10 53:14 54:15 55:2,7,15,23

57:19 (20)
farache's 11:3,11,19 12:17 16:1 22:24 28:19 29:3 51:10 (9)
fast 29:5
february 8:20 16:24,25
felt 12:4
ferrari 26:17 50:9
ferraris 22:1
few 12:22
fewer 53:19
field 30:18 34:16
figure 24:12
filed 5:7,8,23 9:4,5 11:6,18,19 12:4,21 13:7 14:6,7,8,11 15:20,24 16:5 21:1,3 23:13 24:5,9 25:4 26:6 29:21 30:16 31:12 33:10,11 47:2 53:10 56:10,11,12 (35)
filing 10:16
filings 10:14
finance 1:14
find 13:3 29:9
finding 12:15
fine 35:20 40:6 43:9
finger 47:19
finish 20:12
first 27:8,9 46:22
five 30:14
fl 2:3,8,33172,33 431,33180 (5)
flagler 2:169
florida 1:2,9,10,1 2,13,14,14,17,24 5:14,16 26:18 51:2 59:2,17 (15)
flurry 48:13
follow 54:25
following 3:1
force 10:1
foregoing 59:7

forehand 2:18
fort 1:17,23 2:3
forth 27:10
found 48:9
four 27:10 30:13
fourth 27:8
frame 35:2 40:15
fraud 14:12 17:13,15,18,23 19:5,8 47:21 53:2 (9)
fraudsters 18:25
fraudulent 5:15,16,19 10:4,7 (5)
fraudulently 10:3 13:14
free 47:19
freeze 35:2,2 40:15
front 21:14 51:8
frozen 36:20,24 37:21
fund 1:3 3:8
funded 12:14
funny 53:2
fvp 1:3,4,5 3:8,9,9 (6)
g 10:13
garage 19:16,22 24:14 35:4 44:4 45:21,24 46:1,2 50:20 53:14,20,20 54:13 57:16,18,18,21,21 (19)
gathering 47:7
gave 10:23 22:20 29:25 42:8 (4)
general 16:3 32:18 36:13
gentleman 15:9 16:11
gentlemen 30:13
get 10:18 14:10,25 17:7 22:4,5,6,12 27:24 35:15 39:2 52:15,23 53:5 54:25 (15)

gets 36:1 57:22
getting 30:2,13 34:11
gg 59:18
give 5:1 6:6,25 10:24 21:17 39:12,16 40:6 52:14 53:25 (10)
giving 12:5
glades 2:15
go 5:25 7:1 10:13 11:1 12:6,7,12 14:10 15:3,4 17:7 18:2 19:25 21:12 26:6 32:19 34:2,21,23 38:6 45:24,25 46:1,21 48:14 49:10 52:15,25 53:15,18 54:15 55:21 (32)
goal 14:25 30:1
goes 52:23
going 5:21 6:14,24,24 11:1,14 17:15,23,25 21:17,21 22:13 24:24 25:17 28:8 32:10,15,17 33:2 34:24 35:25 36:14,17 37:25 39:2 41:18 44:4 45:24 46:3,3,4 47:6 48:3 52:10 53:3 56:7 57:1,24 (38)
gone 9:8,18,18,19 13:21,22 23:14 (7)
gonna 4:9,20 12:6,7 13:16,24 14:4 35:15,24 36:3,20 40:2 44:7,21 45:14 48:22 54:25 (17)
good 3:5,12,15 15:5 22:13 30:21 46:6,8 58:8 (9)
got 7:24 11:23 18:7 19:7 22:24,25 29:18 30:8 33:5 43:1

(10)
great 45:16
group 15:18,19 16:19 17:4,22 39:12 40:1 41:1,10 42:1 43:16 47:1,2 (13)
guarantee 17:3
guard 44:25 45:14,15,17 (4)
guess 4:24 23:13
guy 33:24 54:19
guys 37:16,16 38:1 42:23,23 45:24 56:20,22 (8)
h 2:21 10:14
half 13:4
handler 2:14,17 3:12,13,13 46:12,15,20,24 49:14,19 (11)
happen 20:2 26:11 32:15
happened 11:23 12:11,13,19 29:10 38:12 41:17 (7)
happens 24:22
happy 14:21 20:17 39:16 48:11,20 53:16 55:21 (7)
has 5:21 10:20 16:3 17:10 19:15 21:15 27:13 29:8 30:10 33:17,18 37:9 40:15 46:24 55:6 57:19 (16)
hasn't 24:9 55:5
haven't 14:23
having 32:7 49:5
hbh@whcflacom 2:16
he 4:7,15 5:7 9:21,22 10:1,20 11:16,17 14:14 15:7 17:13,14,25 19:7,12 23:9,10 29:3,4,5,7,8 30:17 33:7 40:14,14 52:17,19 57:20

(30)
he's 4:1,2 7:6,16 11:12 17:17 27:17 38:25 (8)
hear 7:3 12:25 13:2 48:3 (4)
heard 33:5 46:13
hearing 1:19,21 4:24 5:10 7:24 8:1 13:4 15:1 27:23 36:18,20 (11)
held 16:1 18:22 24:23 28:9 (4)
hello 7:2
helpful 48:17
henry 2:17 3:13
here 4:22,23,23 5:5,14,19 7:18,19,19 9:9,15 10:2 13:23,24 16:10 19:2 20:18,19 25:9 26:8 28:3 32:7,10 33:3,6 37:3 39:18 44:12 47:8 48:5,7 54:18 55:17 (33)
here's 22:20 23:5 31:8
hey 30:16
hi 32:25 44:15
highend 50:3 51:12
highlight 53:22
highway 51:1
him 4:7 7:3 46:22 52:18 53:16 (5)
himself 9:21
hire 44:25
hired 17:19 25:24
his 11:12 12:1,2 15:16 16:11 17:4,18 18:15 40:14 50:15 51:25 52:22 56:19 (13)
historically 25:2
history 47:25
hold 20:11,13 22:25 24:11,12 25:15 27:4,6

37:14,14 38:1,13,13 39:5,10 52:9 (16)
holding 17:8 18:4 20:21 21:17,21 29:3 (6)
honest 30:23 54:24
honestly 29:2
honor 3:16 4:18 5:11,14,17,20 6:3 7:4,7,14,16 9:6,19 10:12 11:4 13:16 15:6 21:9,23 23:5 24:17 25:20 26:1,3,8,9,11,20 27:12 28:2,11,15 29:17 30:12,24 31:8,15,19 32:8,15 35:21 38:5 40:15 41:3 43:10,22 46:12 47:5 49:3,14 50:25 51:19 52:24 53:16,21 54:5 56:14 58:4,7 (59)
honor's 56:25
honorable 1:22
hoops 34:20
hope 6:3 48:25 49:4 55:16 (4)
hour 13:4
house 50:1,15 51:9,11,16 52:1 54:18 (7)
how 9:12 15:13 19:18 22:5,5 25:10 26:17 29:11 31:7 39:10 41:20 52:18,23 53:13,20 54:13 57:16 (17)
however 18:3 21:3 57:17
husband 17:22 28:24
i'd 35:1
i'll 6:18 8:16 15:3 20:25 24:17 27:23 40:6 52:15 (8)
i'm 4:9,20

6:24,24 8:13 14:20 15:11 24:12 28:1 30:13 31:15 33:24 34:11,24 35:24 36:14,20 37:10,14,19,25 39:16 44:22 45:24 46:17 47:22 49:21 52:3,6 54:6,18,19 55:16,21 (34)
i've 9:5 10:11 14:24 46:22 (4)
identified 48:10
identify 6:19,21,23,25 7:10,13 37:6,23 38:2,3 54:12 (11)
iii 1:3 3:9
impact 15:6
important 10:19 11:10 16:9 19:2 33:19 34:8,10 (7)
importantly 13:15 20:10
inc 1:9,10,13,13 3:14,19 47:1,2 (8)
inclined 31:8
include 35:3 49:17
included 35:11,12
including 39:22 40:12
independent 14:1
indicated 5:5
indicates 10:25
indicted 18:2
individual 1:10,11,11 18:11 19:10 (5)
individually 3:17
individuals 18:1
inform 16:17
information 39:13 44:1 47:7 49:16 (4)
initially 29:18
injunction 5:12 22:5
injunctive 26:15

inspect 19:25 44:23 48:23
inspection 48:21
insurance 16:5 19:22 35:13,24,24 36:3,5 44:2 57:22 (9)
insured 24:15 35:14
intent 33:21 53:25
intercreditor 10:17
interest 9:2 12:9 17:10 41:6 44:13 (5)
interfere 11:3
interrupt 42:22
interrupting 42:24
intimidate 28:18
into 12:6 13:13 28:16 32:6 45:24,25 46:1 (7)
introduced 46:25
inundated 30:13 34:12
invented 17:13
inventory 53:4
investigation 8:7 17:20 49:24
investigative 9:24 13:9 24:19 51:11 (4)
investigator 2:25 17:19 19:7 51:14 (4)
investments 1:4 3:9
involved 39:6
is 4:1,14,19,22 5:7,17 6:2,12 7:12,14 8:4,9,10 9:17,19,23,25 10:2,6,16,19,20 11:1,4,11,12,15,18,1 8 12:9 13:16,18 14:3 15:8,19 16:6,10,13,18 17:7,9,9,13,15,18

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1010 RECEIVED NYSCEF: 01/19/2026
65

18:19 19:2,4,6,10 20:5,18,24,25 21:19,19 22:7,7,13 23:20,22,25 24:24 25:9,10 26:3,8,14,14,17 27:8,11 28:7,8,11,15 30:3,8 31:8,21 32:1,3,10,17 33:6,15,19,22 34:1,8 35:1,10,11,11,16 36:1,3,5,20 37:4 39:4,6 40:9 41:15,17,17 44:6,17,20,22,24 45:5 47:6,19 48:22 49:4 50:25 53:12,21,25 54:19 55:8 56:5,6,14,25 58:2 59:7 (128)

isn't 33:16

issue 13:16 16:13 32:20 53:22 (4)

issues 36:1

its 10:25 47:10,17

itself 6:5

j 2:5

jail 18:2

january 8:20

jb@richardbaro nlawcom 2:9

jerry 2:9 3:6

joel 4:1

joining 6:15

jonathan 2:10,13 3:6

jschwartz@jonsc hwartzlawcom 2:12

judge 1:23 3:5,12,25 4:13 5:2,7 6:10,14 7:22 8:2,4,15 9:9 10:10 13:7,15,24 14:9,22 15:3 16:9 17:17 18:19 20:1,16,24 21:15 22:11,11,15,20

23:15 24:8 25:1 28:25 29:2,9 31:7,13 32:23,25 33:2 34:7,22 35:8 36:25 37:8 38:3,17 40:8,9 41:14 44:9,15,17 45:8 46:16 47:3 48:18 49:20 52:9,18,23 53:24 55:10,21 56:4,25 58:5,6 (71)

judicial 1:1

jurisdiction 21:10

just 7:17 9:21 12:18,18,19 15:3 19:14 20:12 24:8,12 28:25 33:10 34:3 35:3,24 40:8 47:7,18 48:12 50:1,7 51:3 52:3,6 53:3,8,8,11 55:17 56:4 57:15 (31)

k 10:18,19

karma 1:9,9 2:17 3:14 8:10,11 10:21 18:15 21:2 41:11,12 42:3,4,13,14,17 43:4,7,17,17 54:7,9 (22)

keep 19:21 24:13,14 28:14 (4)

keeping 35:3

keith 2:24 4:14

kept 30:1,2 44:19 49:25 51:23 (5)

kind 47:25

kinds 34:12

know 4:21 6:12 11:8 12:13,16,21,22 13:21 14:5,19 20:7,19 24:8 26:12,25 27:10,24 30:3,4 34:4,18,20 35:5 36:7,16 37:4 39:12 45:4,25

48:2,20,22,23 50:3,5,8,10 54:2 55:7 57:16 (40)

knowing 12:6

kristen 1:10 15:17

kurkin 2:18

kutak 4:1

kyzel 15:9

lamborghini 50:9

landlord 10:21,24 11:2,10 (4)

large 32:17 47:23

last 20:24 21:23 41:20,22 47:2 55:3 (6)

later 9:7 10:9 11:17 14:7 (4)

lauderdale 1:17,24 2:3

law 2:10 10:8,9 26:19 27:2 (5)

lawlessness 5:21

lawsuit 14:8,9,11 15:20 23:13 24:9 30:15,20 31:12,22 49:6 (11)

lawsuits 13:24 30:21

lawyers 4:21 26:5

leaning 35:12

least 36:15 44:11 47:8

leave 47:18

lee 2:24 4:14 9:11,13 (4)

left 13:5 23:9,20,22 28:6 30:18 (6)

legitimate 17:9

lender 31:22,23 32:2

lenders 10:23 32:1

lent 32:3

let 4:21 6:8,18 8:13,15,16 10:18 13:1 15:3 19:14

20:12 22:15 24:21 29:12 31:16 39:12 46:22 48:1 (18)

let's 20:3,8 43:12

liability 1:5,5,12,15 16:3 36:13 (6)

lied 44:21

lien 27:13

lieu 36:18

light 30:19

like 17:23 33:25 35:1,1,16 36:15 38:8 40:15,16 48:19,22 51:24 (12)

likelihood 26:25

limited 1:4,4,5,12,15 47:6 (6)

line 22:7

lined 12:12

list 30:1,1,5 44:12 50:24 52:10 (6)

listed 11:12

listen 4:6

literally 21:4

litigate 21:14

little 6:1 47:9

llc 1:4,5,12,14 3:9,10,18 (7)

llp 2:18

loan 8:8 9:4 10:12,24 11:13,22,24,25 12:1,2,3 16:22,23 18:12,20 27:18,20 (17)

loaned 8:19,23 9:7 12:14 18:14 33:14 (6)

located 8:9,10 10:22 47:11 48:9 (5)

location 14:14 16:2 50:16 53:7 56:8 (5)

long 45:17 54:24

longer 36:19

longwinded 49:6

look 5:22 10:11 11:5 14:5 22:17 26:3 33:2,10 41:6 51:11 54:24 (11)

looked 7:23 14:22

looking 10:10 27:7 29:25

lot 14:24 15:6 23:23 25:12 38:11,15 39:11 41:12,17,22 45:4 46:22 53:3 54:17 (14)

lots 41:7,10 43:15,19 (4)

love 26:11

lp 1:3 3:9

m 2:5

made 19:13

madoff 17:24

magistrate 21:15

main 51:24

major 31:18

make 7:18 11:8 19:25 28:24 35:17 36:18 46:5 47:16 50:1 52:4,11 56:5 (12)

makes 11:12

making 30:8,18 34:13 52:5 (4)

man 16:6 19:11 28:17,18 (4)

manufactured 21:20 29:1

many 9:12 29:11 53:13,20 54:13 57:16,17 (7)

marc 2:22 3:16

march 41:16,18

master 32:18

matter 49:4 57:17

mauro 6:9

may 4:7 7:21 13:2 26:19,22 29:25 32:23 46:12 56:9 (9)

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1010

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

66

maybe 33:11
mbrandes@kfblawcom 2:21
mcmullen 2:2,5 3:7
me 4:21 5:15 7:25 10:18 13:1 17:21 19:14 20:12 22:14,15 23:10 24:12,21 27:25 28:5,7,14,20,23 29:12 31:16 32:12 34:19 36:17 39:24 40:25 52:14,17,20 54:16 55:1,15 56:15 (33)
mean 22:1 27:24 32:9 40:24,25 54:16 (6)
meaning 32:3
meanwhile 30:5
media 13:17
mentality 29:3
merits 26:25
messages 19:12
miami 2:8
michael 2:5 3:7
michael@floridajusticefirmcom 2:4
michele 1:22
middle 8:20 47:24
mile's 50:11
miles 50:4
million 8:8,21 9:6,17 12:5 15:22 18:13,25 22:3,21 (10)
mind 27:5
minimum 20:2
minute 12:8
minutes 27:23 28:6 33:11 56:12 (4)
missing 40:4
mixing 48:13
mms 1:12
modified 11:21
moment 44:6

monday 28:1 29:22
money 8:24 9:7 12:6,20 13:13 16:21 17:5 18:8,13,14 21:25 22:4,8,8,23,24 32:3 33:14 35:25 42:9 55:7 (21)
more 13:15 20:9,17 25:7 26:7 34:8 43:12 49:5 53:25 57:24 (10)
morning 25:3,23 28:1
moshe 1:11 2:22,24 3:17 (4)
motion 5:8,12,22 6:5 7:24 8:5 38:20 (7)
movant 5:4
move 16:7 25:17 28:13
moved 22:16 23:12 44:19
moving 53:1
much 46:15 52:19
multiple 13:23,24 22:18
muscle 19:11
must 27:12
my 13:21,22 14:25 15:8,18,21 19:11 20:15,24 30:5,6,16,16 32:17 45:7 47:17 50:18 51:24 52:21,25 54:3,17,17,25 55:7,18 56:15,18 59:8,18 (30)
n 2:13
name 3:21 15:9 35:23 42:1 47:1 (5)
named 35:13
names 3:4 48:13
narrowed 40:19
nature 49:23
ne 2:19

nebraska 4:2
necessary 5:10,11 11:15,16 13:3 (5)
need 13:3 14:5 23:14,15 37:16,23 44:2,18,22 46:4 48:9 49:7 52:24,25 53:15 56:20 (16)
needless 49:6
needs 4:12 26:3 48:7,8 57:21 (5)
neil 59:5,17
net 37:4
neutral 14:1 26:9
never 19:11 32:4
new 6:16 30:14
next 30:2 52:14
no 1:8 6:22 7:11 18:9 21:9,19 22:24 25:16 30:7 31:1 35:6,24 36:7,25 42:12 48:19 49:2 57:24,24 58:1 59:18 (21)
noah 3:6
none 26:10
nonetheless 32:8
nonstop 25:25
nonwitnesses 6:15
north 50:25
notary 59:17
note 17:6
notes 17:3 59:8
nothing 4:24 18:10 27:24 30:15,23 35:5 54:21 58:1 (8)
notified 29:18
notify 4:7
notion 47:1,18
notwithstanding 26:4
now 5:9 11:4 12:4,15 16:24 19:2,17 23:1,11,13 24:1 29:11

33:15,18 35:23 37:20 44:19 47:13 51:7 52:17,22 55:22,23 (23)
number 6:20 7:1,12 35:16,16 51:12 (6)
numbers 35:18
nw 2:11
o'clock 58:12
object 36:25 45:14
objecting 34:20
objection 45:1,10 48:19 49:2 (4)
occurred 38:7 41:15
occurrence 16:5
off 23:23 24:21 38:11,15 41:22 48:8 (6)
offered 20:15
oh 6:7 7:1 18:16 42:18 46:21 50:5 (6)
old 52:23
one 3:25 8:9,10 9:20 10:20 11:17,18 14:5,6 21:3 22:2,25 26:2 29:5 30:7,15 31:1 32:12,12,19 33:13,14,16 35:10,14,16,25 37:16 42:17 43:12 44:17 45:25 46:16 47:8 50:16 53:7,16 55:4 56:20 (39)
oneandahalf 32:21
ones 17:23 30:25 39:22 40:12 52:4 (5)
onetime 48:21
only 13:4 19:2 20:22 22:2 30:11 32:1,8 33:7,22 35:14 39:19 48:18 56:6 (13)

open 54:16
opportunity 1:3 3:8
opposing 29:18 30:22 34:11 55:22 (4)
order 16:19 21:18 24:24 28:10 35:24 38:8 47:6 48:6 49:15 54:25 56:25 57:2,4,6,8,10 (16)
ordered 19:21 40:16
ordering 35:4 37:10,15,19,20 (5)
orders 39:7
other 6:7 8:14 11:19,20 12:16,17 20:22 30:20 32:17 36:21 37:21 43:16 44:3 46:16 48:25 57:20 (16)
others 42:1
otherwise 7:25 39:7 42:8
our 4:13 5:12 6:15 7:6 10:14,22,25 11:17 13:13 16:18 17:6 25:8 31:22 32:5,9 35:12 39:17 40:13 41:5,6 42:16 44:24 48:8 51:11,13 (25)
ours 16:16
out 8:1 11:23 12:15 16:3 18:24 21:22 24:12 26:10 29:9 30:18 32:3,4,5 34:16 35:25 36:4 40:3 46:2 48:8 (19)
outlined 8:5 9:23
outside 13:20 45:2,3,15 49:25 51:23,25 53:17 (8)
over 7:24 15:21 21:10 24:18 25:3 28:23 31:14

Prestige Reporting Service, Inc. 633 South Andrews Avenue | Suite 202 | Fort Lauderdale, FL 33301 (954) 764-7297 | info@prestigereportingservice.com

52:10,12 (9)
**overlooking**
33:8,8,22
**oversee** 34:8,9
**owe** 20:21
**owed** 42:9
**own** 11:8 40:14
44:24 45:8 54:17
(5)
**owned** 15:17
**owner** 16:14
**owners** 48:10
**pa** 2:2,14
**paez** 59:5,17
**paid** 18:4,21 30:9
32:5 35:15,25
36:4 42:25 45:14
(9)
**palm** 1:9 2:17
3:14 8:9,10
9:10,14,22 10:21
12:3 13:20
14:8,9,14,16 18:15
21:9,10,13 22:7
24:9 31:12,13
32:2,7 33:3 38:11
41:12 42:3 43:18
47:11 51:18,19
(33)
**paperwork** 33:9
34:9 35:18
39:6,17 40:16
41:15,23 (8)
**parked** 51:13
**parking** 45:4
54:17
**part** 10:22 47:23
**particular** 47:10
**parties** 3:3 4:21
5:1 6:15 9:1 25:17
46:8 54:20 (8)
**partnership** 1:4
**party** 6:20 14:1
15:19 26:9 (4)
**past** 40:18,20,22
43:24 (4)
**path** 48:14
**patronize** 52:20
**people** 3:25 6:7
13:19 19:8 29:6

30:14 34:12 (7)
**per** 16:4,4
**perceive** 28:4
**perfect** 45:12
**peril** 40:14
**period** 39:14
**periodically**
48:24
**permission** 48:8
49:12
**perpetrated** 19:8
**perpetrators**
47:20
**person** 8:14,16
**person's** 35:15
**personally**
43:22,23
**phone** 6:20
7:1,12
**photographs**
19:9
**physically** 36:2
**picking** 54:19
**picture** 16:10
**pictures** 25:3
**piece** 17:17
**pieces** 26:1
**place** 36:11
**places** 43:16
**plaintiff** 4:13
29:13 36:22 44:10
(4)
**plaintiffs** 1:7
2:13 3:8 5:6,23
8:6 12:4 16:14
18:8,9,12,24,25
19:6 20:20 31:1
33:1 36:16 44:1
49:22 (20)
**plaintiffs'** 19:19
**plate** 12:19
**plead** 38:19
**please** 6:21 7:13
15:13 37:17 (4)
**pllc** 2:10
**pm** 1:3,3 58:12
**point** 19:19 32:14
47:19
**police** 25:8
**policy** 16:3 36:13

**portion** 17:1
**posed** 49:15
**position** 11:7
19:20 42:16
**possession** 16:1
18:22 24:1,2
39:5,17,20 41:21
(8)
**possible** 6:16
15:1
**post** 30:2
32:16,20
**potential** 4:2
5:10
**powers** 31:10,11
**prefer** 36:16
**present** 2:24
4:14,19 9:25 27:3
54:1 (6)
**presentation**
48:3
**presented** 15:7
**presenting** 17:18
**presiding** 1:22
**prevent** 23:24
**prima** 5:18
**primarily** 47:15
**principally** 47:11
**principles** 47:17
**prior** 18:19
**private** 17:19
**probably** 32:6
35:13 46:4 47:9
(4)
**problem** 20:18
32:6 37:3
47:22,23 (5)
**proceed** 3:22
4:25
**proceedings** 3:1
58:11 59:7
**processed**
16:22,23
**proclaimed**
57:13
**prong** 27:10,11
**prongs** 27:10
**proof** 18:5
**properly** 24:14
**property** 21:5

22:7 25:5 27:13
37:9,22 38:22
44:25 45:3 (9)
**protect** 54:20
55:17
**protracted** 48:22
**provide** 38:8
44:10
**provided** 56:6
**public** 59:17
**published** 13:18
**pull** 52:12
**purchase** 15:22
**purchased** 15:18
16:25 17:8 31:2
(4)
**purchasing** 33:15
**put** 4:9,12 17:20
25:12 26:1 31:1
35:1 44:18 50:4
57:21 (10)
**puzzle** 53:1
**question** 13:13
29:12
**question's** 49:15
**quickly** 7:25
**quiet** 20:25
**quite** 6:16
**quo** 44:5
**quote** 16:8
**raise** 14:20
**raton** 2:33431
51:1,21,22 (4)
**reach** 32:12
**reaching** 48:11
**read** 14:21,23
**ready** 12:12
**really** 19:3 26:3
27:11 33:25 (4)
**reason** 9:19 34:1
**rebuttal** 13:2
**receiver**
5:13,18,19 6:3
10:8 13:17 17:16
19:3
22:13,16,18,18
23:1,2,3,14,15
24:16,24 25:10,11
31:9,10,10,13
32:16 33:3,4,7,22

34:16 36:16 37:13
38:5,21 (35)
**receivership** 22:6
26:14 37:9,11,20
48:6 (6)
**recently** 33:10
50:7
**recess** 56:23,23
**reclaim** 21:5
**recognize** 6:13
**record** 3:4,21
25:4 26:6 40:9
43:13 49:8,21
53:11 56:5
57:1,4,7 59:8 (14)
**recovery** 11:1
**regarding** 35:5
36:21 38:9 41:23
(4)
**relating** 35:7
38:10 40:16 41:23
(4)
**relevant** 11:4,10
**relief** 26:16
38:20,25
**rely** 4:20 57:6
**remain** 4:15
**remaining** 51:4
**remedy** 19:4
21:24 26:15
**remember** 50:8
**remove** 6:24
**replevin**
21:4,10,14
32:19,20 (5)
**report** 9:24 13:9
25:9 51:11 59:6
(5)
**reporter** 7:3
37:16 42:23 56:20
59:5 (5)
**represent** 5:5 8:6
55:13
**representative**
4:14 7:7 13:10
30:22 (4)
**represented**
50:21 56:15
**required** 8:25
10:23

resolved 49:5
respect 17:13
respond 14:21
22:15 31:5 35:22
38:16 (5)
responded 54:19
response 6:22
7:11
rest 31:4
restored 48:7
reviewed 14:24
ridiculously
30:20
right 4:24 7:8,25
12:23 13:6,6 14:8
15:2,3 18:8,23
19:16,17 20:3,9
21:7 22:3,10
23:21 24:1,11
28:21 29:23 31:16
34:4,14
36:7,8,9,10
37:19,20,24 38:23
39:19 40:5,5
42:21 43:6,13,13
44:19 52:2
53:10,13 54:23,23
55:5,11,23,24
56:1,22
57:2,5,23,25
58:3,8 (59)
rightful 16:13
rights 17:6
risk 25:9,14 28:8
road 2:15
51:18,20
robert 2:25
rock 4:2
rollsroyces 51:25
room 4:10,12 6:8
rule 31:8
run 32:6
safe 53:4
safeguard 25:13
38:22
said 14:13 26:13
28:23 30:6
34:11,17 48:20
53:8 (8)
sales 57:24

salient 27:11
same 18:21,25
31:11,14,14 32:6
38:4 57:11,18 (9)
samples 13:11
sarmiento 2:6
saturday
25:2,7,23 29:19
(4)
saw 17:5
say 14:9 23:6
33:13 36:20 40:23
43:12 46:17 48:24
55:19 (9)
saying 13:21
18:6,19 25:11
27:16,17 30:16
51:8 52:7 53:6
(10)
says 27:12 42:20
50:22
schwartz 2:10,13
3:5,6 5:5 6:14
7:6,16 24:17
25:1,13,19,22
26:19,22 27:7
28:2,11,15,22
37:12 41:2,5,11
43:17,21 50:22
51:3,6,10,17,19,22
52:16,19
53:6,10,21
56:12,17 58:4 (41)
scott 1:10 12:1
15:9 17:4
18:11,15 (6)
scramble 28:19
se 2:1132
searches 8:25
second 10:16
22:25 25:15
44:20,22 (5)
secretary 54:4
secure 16:2
secured 16:21
17:2
security 9:2 12:9
41:6 44:25
45:14,17 (6)
see 15:25 16:20

20:8 24:13,15,19
26:16 31:7 52:18
(9)
seek 16:7
seeking 5:17
selfhelp 14:17
47:24
selfserving 17:19
sell 16:8 25:17
29:4 30:9,17,24
44:8 (7)
selling 17:8 35:5
sent 19:12
served 24:10
service 1:13
services 1:12
3:19
servicing 1:5 3:9
set 39:18
sets 27:9
sevenandahalf
8:8,21 9:6,17 12:5
22:21 (6)
sevenandahalfmil
liondollar 11:25
seventeenth 1:1
several 8:9 10:20
26:13 33:12 (4)
sharing 47:7
49:16
shopped 47:15
short 34:25
shorthand 59:5
should 6:3,8 7:18
8:13 18:1 20:2
50:16 57:3,10 (9)
shouldn't 4:23
show 26:24 28:5
44:2 55:16 (4)
showing 7:1
12:23
shown 47:15
shows 25:5 33:21
side 30:23
sign 28:23
signature 59:16
signed 11:3 33:17
significant 17:1
silver 51:18,19
simple 27:11

simply 40:15
since 23:12 25:24
38:11 41:14 (4)
singer 1:22
sit 9:9,15 20:19
52:25 53:16 (5)
sitting 23:16
54:6,8,9 55:8 (5)
six 9:7
23:11,13,23 (4)
so 4:3 5:16 6:24
7:24 8:19
9:1,3,9,21 10:2
11:23,25 12:10,11
13:6,23,25
14:11,12,15,19,25
17:8,13 18:2
19:15,18 21:25
22:2,5,10,13
23:1,13 24:8
25:10,14,15
26:9,10 27:7
31:8,13
33:19,21,24 34:15
35:1,14 36:2,14,18
37:21
40:3,8,9,19,23
41:9,13,20,21
42:18,19 43:11,13
45:9,13 47:5
48:1,11 50:14
54:11,18 57:15
(75)
sold 20:23 21:22
23:10,10,11
29:10,11 31:4
32:4 38:10 39:23
40:3,13,14,18
41:25 42:8
43:7,25 (19)
some 5:1 6:7
11:5,9,9,19
12:22,23 14:20
16:24 18:20 19:5
27:19,20 33:15,25
34:2 49:24 53:25
54:5 (20)
somebody 6:12
7:9 28:16 54:16
(4)

somehow 22:23
someone 30:18
46:5
something 28:12
46:18
somewhere 25:12
soon 15:1
sorry 8:13,17
15:11 44:22 46:17
47:23 49:21 (7)
sort 26:10 34:16
sound 36:15
south 26:18
spaghetti 12:19
34:17
speak 29:15
speaking 53:25
special 26:17
specific 41:8
spell 15:13
spent 55:3
spoke 24:20
25:2,22 29:17 (4)
spoken 25:6
sport 1:13 48:6
ss 59:3
standing 13:20
start 11:5 20:4
52:21
starting 19:19
28:1
state 3:3,21
59:2,17 (4)
stated 6:2 57:1
statement 17:24
statements 17:21
19:7
stating 53:11
status 44:5 48:9
stay 44:25 45:2
57:18
stems 43:4 47:23
stenographic
59:8
stenographically
59:6
still 34:5
stolen 36:8,10
stop 5:20 42:24
stored 21:8 45:9

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM          INDEX NO. 650582/2022
NYSCEF DOC. NO. 1010                                       RECEIVED NYSCEF: 01/19/2026

69

50:16
street 2:16 9,11
strong 28:17,18
stuff 51:25
submit 26:19
submitted 41:15
substantial 10:2 26:24
such 37:4
sued 22:4
sufficient 19:22
suggest 12:25
suggestion 32:17
suing 40:11
suit 29:21
suite 2:16 9,11,15,19 51:1 (5)
summarize 8:4
superior 17:10 18:23
superseded 57:9
sure 7:18 19:25 26:21 35:17 45:19,22 46:5,9,10 50:1 52:4,11 56:5 (13)
system 10:15
take 5:11 9:21 10:11 14:1,4,18 22:17 23:3,15,22 25:7,11 26:6,9 38:6,22 49:15 (17)
taken 5:22 12:24 16:3 33:20 38:11,15 39:11,25 43:7 48:8 (10)
taking 11:7
talk 6:1 10:9 46:22
talked 46:22
talking 26:5
team 24:19
tell 15:8 22:14 24:17 37:25 (4)
telling 21:19 28:7,14
ten 56:12
tendered 15:21
terms 45:23

testify 9:25 11:16,16,17 25:4 (5)
testimony 4:7
text 19:12
than 20:17 41:1,2 43:14 49:5 53:19 (6)
thank 3:11 7:22 8:2,18 15:2 37:18 46:15 48:16 49:11,19 51:6 56:24 57:14 58:3,4,5,6,7 (18)
thanks 52:16
that's 4:11 6:16 7:24 9:5 14:6 17:23 20:6,7 23:14 24:5 26:12 27:14,15 28:14,16 30:10,16 31:3 33:9,19 34:4 35:15,18,20,25 37:12 38:24 39:1 40:2 42:15 43:9 46:3 47:16,25 50:21 52:23 56:22 (37)
their 3:3,21 9:1 11:8,21 14:3,16,16 16:22,23 20:25 22:22 31:11 38:20 40:11 41:21 48:9 (17)
theirs 16:15 30:6
them 6:8,18,19 8:15,23 10:24 12:5 13:1,2 14:4,11,15,23,24 15:3 17:1 18:5 19:8,13,24 20:21,21 21:18,22 24:3,14 25:12,13 27:19,20 28:14 29:5,8 31:16 34:5 38:8 39:12,12,16 40:7 47:19 50:4 55:16 56:2 57:21 (45)
themselves 6:19

there's 4:22 5:18 6:11 7:9 8:11 9:16 12:18,18 13:24 15:6 22:8,8 23:9,23 30:17 31:18 34:20 42:18 44:21 46:16 47:3,9 48:19 51:12 53:2,3 57:1,23 (28)
therefore 17:15
these 3:23 9:3 12:14,24 14:10 17:10 18:7 19:13 20:22 21:8,20,25 28:23 29:4,6 30:13 33:14 34:2 36:1,21 38:7,7 45:8 47:14 48:7 49:23,24 50:15 55:8 (29)
they'll 11:8
they're 10:15 11:7 14:4 16:1 17:22,25 19:25 21:5 22:1,1,2,3 26:17 31:25 33:3 34:20 36:3 37:5,21 39:2 43:3,4,6 45:13 50:2 52:4,6 53:4,24 (29)
they've 22:4 23:11 46:25
thing 14:5 16:9 21:23 30:2 31:14 35:14 44:20,22,24 46:17 48:18 56:6 (12)
things 26:2 28:19 32:15 35:8 44:9,17,21 (7)
think 5:25 13:25 17:9 18:2 20:1 26:2 33:11 34:24 37:22 43:11 46:24 47:13,22 48:6 (14)
third 14:1 26:9 44:24
thirtysome 14:3

thirtythree 23:11
thorough 8:24
those 9:18 12:7,8,8,10 13:13 16:21 18:1,22 19:21 22:23 24:1,13,16,22 25:18 27:16,17 28:13,25 30:7 33:13,14,16,20,25 34:16 35:3,5,6,7,15 39:7 41:7 42:8,9,17 43:19,20 44:23 50:1,23 51:4,23 54:12 (45)
though 42:19
thought 20:24
threatening 19:12
three 43:20 44:11,21
through 5:25 10:13 28:19 32:18,19 34:21,23 52:25 53:15 (9)
time 8:1 12:24 27:1 34:19,25 36:17,19 37:17 38:4 39:15 43:12 45:25 52:14 54:1 56:9,21 57:5 (17)
times 26:13 32:21 48:2
title 18:3,22 27:13 30:8 31:2 33:18,19 41:17 43:1 (9)
titles 12:15,22 28:24
today 5:17 9:9,15 20:16,19 25:5 27:1 47:18 48:5 56:11 (10)
together 17:20 19:7 26:1
told 21:12 23:10 29:10,11 30:16 (5)
tom 7:5
tomorrow 27:25

tonight 54:15 55:16
too 8:16 16:12 31:24
took 9:20 14:3,7,15 17:20 19:7,9 23:10 40:17 41:21,25 43:15,24 54:21 (14)
touch 30:7 39:6
toward 24:16
towbin 1:22
transaction 38:9
transactional 47:25
transactions 12:23 34:10 35:7 38:7 (4)
transcript 59:7
transfer 5:15,16 10:5,7 19:24 34:9 (6)
transferred 10:4,6 12:16 13:14 22:23 (5)
transfers 5:19 41:18
transpired 28:3
transpiring 28:6
trial 28:1 50:8
triggers 32:5
trouble 55:1
trucks 57:20
true 21:24 53:12 59:7
trust 32:3,5 40:3
trustee 47:4
try 11:1 14:16 25:25 29:4 56:16 (5)
trying 16:7 24:12 25:7 52:11 53:22 (5)
tv 13:19
twentyseven 9:13
two 12:7,7,9 18:1 23:10 27:10 29:10 30:11 31:3 32:1,15 35:8,16

Prestige Reporting Service, Inc. 633 South Andrews Avenue | Suite 202 | Fort Lauderdale, FL 33301 (954) 764-7297 | info@prestigereportingservice.com

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1010                                  RECEIVED NYSCEF: 01/19/2026
70

40:18,20,22 43:4,16 44:9,17 54:17 (21)
**type** 53:2
**ucc** 8:24 10:14,16 11:21 42:10,12 43:3 (7)
**ucc1** 16:21
**uccs** 9:1,4 11:18 12:4 (4)
**uhhuh** 8:22
**ultimate** 1:12 3:18
**unconditional** 17:3
**under** 5:14 10:4,8 17:6 21:22 (5)
**understand** 13:1 16:9 23:1 25:1 27:15 28:2 33:23 34:6,7 36:8 38:23 47:5 (12)
**understanding** 50:18
**understood** 31:25 34:22
**unfolds** 26:2
**unfortunately** 12:13
**uniform** 5:15
**unique** 21:25 22:2 26:16 34:1,1 47:25 (6)
**unless** 28:23
**unquote** 16:8
**until** 4:7 36:19 39:7 57:9 (4)
**up** 12:12 16:4 17:18 19:10 20:12 31:22 32:1,6,9 33:3 34:2 54:19 55:23 (13)
**uploaded** 6:5 9:5 10:12
**upon** 9:20 14:12 17:6 27:13 28:3 (5)
**us** 7:16 10:8 14:10 18:10 19:9

21:19 22:4 26:5 32:5 38:9 40:3 53:25 (12)
**used** 52:17
**valley** 27:8,9
**valuation** 8:7
**value** 18:21 32:21 34:2,5 (4)
**valve** 19:23
**various** 30:14
**vehicle** 16:4,4,24 48:21 54:20 (5)
**vehicles** 13:11,13 15:22,25 16:14,22 17:7,11 18:4,21,22,24 20:22,23 21:8,17,20 29:4 33:8,9,23 35:17 38:14 39:5,7,21 40:2 43:2 44:12,18,23 45:8 48:7 49:23,25 50:2,4,14,15 51:12 54:6,17 57:20 (43)
**vending** 48:1
**verbal** 6:22 7:11 25:21
**verified** 21:1
**versus** 27:9
**very** 7:8,17,20 8:24 10:5 11:13 27:11 34:10 46:15 48:16 (10)
**victim** 16:11
**victims** 13:23
**victoria** 59:5,17
**vin** 35:18
**violate** 28:9
**violating** 24:23
**vs** 1:8
**w** 22:17
**wait** 53:18,23
**waiting** 4:10,12 6:8
**waiver** 11:11
**walked** 28:16
**want** 3:20 4:22 5:1,19 14:10,20 19:24 23:5 25:11

27:25 31:5 37:12 45:20,24 46:1 47:18 48:12 50:1 51:3 52:3,10,14 55:17 56:4 (24)
**wanted** 7:18 47:7 48:1
**wants** 52:19
**warehouse** 50:2 52:4
**warrington** 27:9
**wasn't** 17:5 56:15,18,19 (4)
**way** 7:23 11:24 19:2 28:7 35:11 (5)
**we'd** 4:15 26:11
**we'll** 21:14 27:23 53:16 55:23 (4)
**we're** 5:9,24 12:15 18:4,19,20,23,24 20:6,21 21:17,17,21 22:3 26:8 29:11 32:7 33:4 35:13 36:17,24 40:8 46:3,4 48:11,11,20 52:5,9,11 56:23,23 57:15 (33)
**we've** 5:7 28:12 30:19,23 (4)
**week** 14:7 23:12 47:3 55:3 (4)
**weekend** 24:18 25:3 29:14
**weeks** 9:7 40:18,20,22 (4)
**weiss** 2:14 3:13
**welcome** 7:20 49:13
**well** 6:5 7:8,17,20 19:14 20:1 21:12 22:15 23:9 24:7 27:3 29:12 30:1,10,20 31:23 45:7 50:18 52:6 54:12,24 55:5 (22)
**went** 9:22 12:17 13:13 14:15 19:9

(5)
**weren't** 14:14,17 25:17
**what's** 11:10 19:2 23:1,18 27:14 28:3,5 33:2 34:8 39:9 51:15 (11)
**whatever** 23:20,22
**when** 5:25 11:5 13:15 16:18 17:5 33:2,6 40:23 48:2 50:4 52:23 54:1,2 (13)
**where** 10:21 13:12 21:4 22:6 44:18 45:5,8 54:8 (8)
**whereupon** 3:1 58:11
**whether** 13:16 36:2
**which** 10:20 15:23 17:6,6 21:24 22:4 27:1 30:4 33:23 35:3 54:10 (11)
**while** 47:5 49:14 53:24
**who** 3:23 4:22 6:12 7:5 9:24 15:19 16:13 17:10,20,23 18:12 19:8,10 21:15 23:25 24:4 32:2 36:1,1 45:23 46:1 54:19 55:6 (23)
**who's** 16:6 21:15 46:5
**whoever** 7:12,18
**whole** 36:17 47:22
**wholesale** 1:11 2:23 3:18
**why** 7:24 10:19 21:12 23:14 29:3,4,7 31:3,17 32:12,12 33:19 34:1,15 37:2,12

42:2,2,5 45:6 55:24 (21)
**wide** 37:4
**wiegert** 4:1,6,10 11:15 (4)
**wife** 11:4,11 12:1 15:17 16:11 17:4,22 18:15 (8)
**will** 6:3 11:17 15:24 21:18 23:3 25:4 26:10 28:24 33:7 37:24 38:2,2 40:11 44:10 46:7 49:15 53:5 54:3 56:1 (19)
**william** 7:14
**within** 40:20 41:22 43:24
**without** 13:12 45:1
**witness** 4:2,8
**witnesses** 3:24
**won't** 44:19
**work** 40:21,22 52:17,18,20 (5)
**worked** 42:20
**working** 25:25
**works** 52:18
**worth** 50:9
**would** 4:5 9:1 11:2 19:18,19 20:14 26:11 29:3,7 31:10,11 32:6 33:24 34:15,19 35:3,10,16,20 36:16 38:4,5,8 39:4 40:14,16 44:20 48:19,20,22,25 49:1 (32)
**wouldn't** 8:1 29:4 55:12
**writ** 16:7
**written** 57:2,8,10
**wrong** 22:3 39:9 54:22
**xi** 21:3
**yeah** 14:23 22:1,12 29:20

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1010

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

71

32:11 50:13 51:5 54:2 (8)
**yes** 3:5 5:2 6:10 7:2 26:21,23 31:7 32:24 34:6 35:9 36:12 38:18 40:10 41:11,19 44:14,16 46:12,14,19,20 49:18 50:23 51:10 52:20 57:8 (26)
**yesterday** 13:18
**yet** 24:10 55:6
**york** 6:16
**you'll** 22:12 54:3
**you're** 17:15 21:16 25:11 26:12,15 27:7,16 28:7,14 32:11 42:7 44:4 48:3 49:13 54:24,25 (16)
**you've** 5:22 14:21,21 26:13 30:8 (5)
**your** 3:15 4:18 5:11,14,17,20 6:3 7:3,6,14,16,24 9:6,19 10:6,12 11:4 13:1,16 15:5 18:6 19:15 20:14 21:9,13,23 23:5 24:17 25:20 26:1,3,8,9,11,20 27:12 28:2,11,15,24 29:17 30:12,24 31:7,15,19 32:8,14 33:23 34:3 35:21 38:5 39:20 40:15 41:2 43:9,22 46:12 47:5,6 49:3,14,15 50:25 51:19 52:24 53:16,21,25 54:5 56:14,17,25 58:4,7 (75)
**yourself** 6:21,24,25 7:10,13 (5)
**zankl** 1:10,10

11:25 12:1 15:10,11,14,16 39:11 (9)
**zankl's** 28:20
**zankls** 22:21 23:24 43:21,23 (4)
**zoom** 3:23 4:1,11
**270** 51:18,19
**300** 50:10
**303** 2:19
**438** 58:12
**439** 1:3
**700** 2:169
**2021** 16:18 17:2
**2022** 1:18,25 16:24,25 17:2 59:19 (6)
**2255** 2:15
**5471** 50:25
**10200** 2:11
**18851** 2:19
**72023** 59:7
**338908** 59:18
**400000** 50:10
**646499** 6:12
**331311203** 2:8
**331725919** 2:33172
**331802813** 2:33180
**333161110** 2:3
**334317391** 2:33431
**3059298500** 2:20
**5617033375** 8:14
**5619979995** 2:16
**6464170743** 7:13
**9739362176** 2:12
**16464170743** 7:10
**16464990292** 6:21

Prestige Reporting Service, Inc. 633 South Andrews Avenue | Suite 202 | Fort Lauderdale, FL 33301 (954) 764-7297 | info@prestigereportingservice.com

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1010

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

# EXHIBIT F

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM                INDEX NO. 650582/2022

NYSCEF DOC. NO. 220954829 E-Filed 04/15/2025 04:08:35 PM                RECEIVED NYSCEF: 01/19/2026

IN THE CIRCUIT COURT OF THE 15TH
JUDICIAL CIRCUIT IN AND FOR PALM
BEACH COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.:

AVRUMI LUBIN, Assignee of SPIN
CAPITAL, LLC,

       Plaintiff,

v.

KARMA OF PALM BEACH, INC.,
AUTOMOTIVE SERVICE SYSTEMS, INC.,
KZ CONSULTANTS, INC.,
MISS KRISS, LLC,
EXCELL AUTO LEASING, INC.,
EXCELL AUTO WHOLESALE, INC.,
DEALER SOUQ USA, LLC,
EAG WHOLESALE, LLC,
KARMA OF BROWARD, INC.,
LAVISH HERO FUND, INC.,
APPLE 3 INVESTMENTS, INC.,
KZ CONSULTANTS, INC.,
EXCELL AUTO SPORT AND SERVICE, INC.,
KRISTEN ZANKL, and
SCOTT THOMAS ZANKL,

       Defendants.

_____/

## AFFIDAVIT OF AVRUMI LUBIN IN SUPPORT OF THE FILING OF FOREIGN JUDGMENT

STATE OF FLORIDA     )
                   )SS:
COUNTY OF BROWARD  )

**BEFORE ME**, this day personally appeared Avrumi Lubin as assignee of Spin Capital,

LLC, who after being duly sworn, deposes and says:

FILED: PALM BEACH COUNTY, FL, JOSEPH ABRUZZO, CLERK, 04/15/2025 04:08:35 PM

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010

RECEIVED NYSCEF: 01/19/2026

1.      My name is Avrumi Lubin, assignee of Spin Capital, LLC, Plaintiff and judgment creditor ("Plaintiff").

2.      My address is 1276 50th Street, Brooklyn, New York, 11219.

3.      I make this affidavit pursuant to Fla. Stat. §55.503 in support of filing the attached Judgment[1] dated September 13, 2023 ("Judgment") on the record of the instant case. — *see* *"Exhibit A" attached hereto*

4.      After a summary judgment was entered against the Defendants in the New York Case, the Judgment was entered and docketed, jointly and severally, in the aggregate amount of $3,136,071.44 against all of the Defendants, to wit: KARMA OF PALM BEACH, INC., AUTOMOTIVE SERVICE SYSTEMS, INC., KZ CONSULTANTS, INC., MISS KRISS, LLC, EXCELL AUTO LEASING, INC., EXCELL AUTO WHOLESALE, INC., DEALER SOUQ USA, LLC, EAG WHOLESALE, LLC, KARMA OF BROWARD, INC., LAVISH HERO FUND, APPLE 3 INVESTMENTS, INC., KZ CONSULTANTS, INC., EXCELL AUTO SPORT AND SERVICE, INC., KRISTEN ZANKL, and SCOTT THOMAS ZANKL (collectively, the "Defendants" or "Judgment Debtors").

5.      Upon and information and belief, the last known addresses of the Defendants are as follows:

    a.  KARMA OF PALM BEACH, INC. with a last known address of 1001 Clint Moore Road, Suite 103, Boca Raton, FL 33487;

    b.  AUTOMOTIVE SERVICE SYSTEMS, INC. with a last known address of 6023 Town County Drive, Suite #223, Boca Raton, FL 33433;

---

[1] State of New York, County of Kings, index number 502846/2022 ("New York Case")

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010

RECEIVED NYSCEF: 01/19/2026

c.  KZ CONSULTANTS, INC. with a last known address of 16937 Pierre Circle, Delray Beach, FL 33446;

d.  MISS KRISS, LLC with a last known address of 1001 Clint Moore Road, Suite 103, Boca Raton, FL 33487;

e.  EXCELL AUTO LEASING, INC. with a last known address of 1001 Clint Moore Road, Suite 103, Boca Raton, FL 33487;

f.  EXCELL AUTO WHOLESALE, INC. with a last known address of 1001 Clint Moore Road, Suite 103, Boca Raton, FL 33487;

g.  EXCELL AUTO WHOLESALE, INC. with a last known address of 1001 Clint Moore Road, Suite 103, Boca Raton, FL 33487;

h.  DEALER SOUQ USA, LLC with a last known address of 1001 Clint Moore Road, Suite 103, Boca Raton, FL 33487;

i.  EAG WHOLESALE, LLC with a last known address of 1001 Clint Moore Road, Suite 103, Boca Raton, FL 33487;

j.  KARMA OF BROWARD, INC. with a last known address of 22255 Blades Road, Suite 205E, Boca Raton, FL 33431;

k.  LAVISH HERO FUND, INC. with a last known address of 1001 Clint Moore Road, Suite 103, Boca Raton, FL 33487;

l.  APPLE 3 INVESTMENTS, INC., with a last known address of 1001 Clint Moore Road, Suite 103, Boca Raton, FL 33487;

m.  KZ CONSULTANTS, INC., with a last known address of 16937 Pierre Circle, Delray Beach, FL 33446;

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010

RECEIVED NYSCEF: 01/19/2026

n.  EXCELL AUTO SPORT AND SERVICE, INC., with a last known address of 5471 North Dixie Hwy., Suite 5, Boca Raton, FL;

o.  KRISTEN ZANKL with a last known address of 16937 Pierre Circle, Delray Beach, FL 33446; and

p.  SCOTT THOMAS ZANKL with a last known address of 16937 Pierre Circle, Delray Beach, FL 33446.

6.  Pursuant to The Common Interest and Joint Litigation Agreement by and between Spin Capital, LLC and Hi Bar Capital, LLC ("Hi Bar"), the latter assigned certain rights and claims (subject to the parties' agreement), including, without limitation, Hi Bar's rights and claims in the New York Case. - *see "Exhibit B" attached hereto*

7.  The Defendants' time to appeal the Judgement has expired, and neither the Supreme Court of the State of New York, Kings County, nor any other court of the State of New York has granted a stay of execution of the Judgment. No part of the Judgment has been satisfied by the Defendants.

8.  By way of an Absolute Assignment of Interests and Rights, Plaintiff is the owner and holder of the Judgment against the Defendants, which remains in full force and effect. -- *see "Exhibit C" attached hereto,*

9.  Deponent respectfully requests on behalf of Plaintiff that the Judgment entered and docketed in the Supreme Court of the State of New York, Kings County, index number 502846/2022 against the Defendants in the amount of $3,136,071.44, plus post-judgment interest, be accepted and filed by the Clerk of this Court.

**FURTHER AFFIANT SAYETH NAUGHT.**

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010                                                  RECEIVED NYSCEF: 01/19/2026

Avrumi Lubin, Assignee of Spin Capital, LLC

I HEREBY CERTIFY that on this 25th day of March, 2025, before me, an officer duly authorized to administer oaths and take acknowledgments, appeared Avrumi Lubin in whose name the foregoing instrument was executed, and that he severally acknowledged executing the same, freely and voluntarily.

✓ Appeared In Person
___ Appeared Virtually

**NOTARY PUBLIC**

Alexander Alvarez

Printed name of Notary Public

My Commission Expires: 11/7/25

ALEXANDER ALVAREZ
Notary Public · State of Florida
Commission # HH 95871
My Comm. Expires Nov 7, 2025
Bonded through National Notary Assn.

✓ Personally known
✓ Produced identification
___ Type of identification produced __State Drivers license__

**Notice - Recording of Foreign Judgment**
This notice is pursuant to provisions under F.S. Chapter 55.
The foregoing reflects the name & address of the Judgment
Creditor & their attorney, if any. Mailed by Registered
Mail # __RF 292 124 137 US__ on
this __3__ day of __April__ __2025__.
JOSEPH ABRUZZO
Clerk of the Circuit Court & Comptroller
By _____ D.C.

* RF 292 124 145 US
* RF 292 124 154 US
* RF 292 124 168 US    * RF 292 124 213 US
* RF 292 124 171 US    * RF 292 124 287 US
* RF 292 124 165 US
* RF 292 124 199 US
* RF 292 124 208 US
* RF 292 124 211 US
Page 5 of 5 * RF 292 124 225 US
* RF 292 124 234 US
* RF 292 124 242 US
* RF 292 124 250 US
* RF 292 124 260 US

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010

RECEIVED NYSCEF: 01/19/2026

## EXHIBIT "A"

No. 4770497

## Certification

**STATE OF NEW YORK, COUNTY OF KINGS, SS:**

I, Nancy T. Sunshine, County Clerk and Clerk of Supreme Court Kings County,

do hereby certify that on November 19, 2024 I have compared

the document attached hereto,

Index# 502846/2022, Judgment, Filed 09/14/2023 page(s) 1-7

with the originals filed in my office and the same is a correct transcript

therefrom and of the whole of such original in witness

whereto I have affixed my signature and seal.

*Nancy T. Sunshine*

NANCY T. SUNSHINE
KINGS COUNTY CLERK

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010

RECEIVED NYSCEF: 01/19/2026

FILED: KINGS COUNTY CLERK 09/14/2023 12:11 PM

INDEX NO. 502846/2022

NYSCEF DOC. NO. 216

RECEIVED NYSCEF: 09/14/2023

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

HI BAR CAPITAL, LLC

Plaintiffs,

-against-

EXCELL AUTO GROUP, INC.; KARMA OF
PALM BEACH INC.; AUTOMOTIVE SERVICE
SYSTEMS, INC.; KZ CONSULTANTS, INC.;
MISS KRISS, LLC; EXCELL AUTO LEASING
INC.; EXCELL AUTO WHOLESALE INC.;
DEALER SOUQ USA LLC; EAG WHOLESALE
LLC; KARMA OF BROWARD, INC.; LAVISH
HERO FUND; KARMA OF PALM BEACH, INC.;
APPLE 3 INVESTMENTS, INC.; KZ
CONSULTANTS INC.; EXCELL AUTO SPORT
AND SERVICE, INC.; and KRISTEN ZANKL,
SCOTT THOMAS ZANKL.

Defendants,

Index No.: 502846/2022

JUDGMENT

**Plaintiff's Address:**
1825 65th Street
Brooklyn NY 11204

WHEREAS, this action this action having been commenced by the filing of a Summons
and Verified Complaint on January 28, 2022 (NYSCEF Doc. No. 1);

WHEREAS, the Summons and Verified Complaint in the above-entitled action have been
served upon defendants, EXCELL AUTO GROUP, INC.; KARMA OF PALM BEACH INC.;
AUTOMOTIVE SERVICE SYSTEMS, INC.; KZ CONSULTANTS, INC.; MISS KRISS, LLC;
EXCELL AUTO LEASING INC.; EXCELL AUTO WHOLESALE INC.; DEALER SOUQ
USA LLC; EAG WHOLESALE LLC; KARMA OF BROWARD, INC.; LAVISH HERO FUND;
KARMA OF PALM BEACH, INC.; APPLE 3 INVESTMENTS, INC.; KZ CONSULTANTS
INC.; EXCELL AUTO SPORT AND SERVICE, INC.; and KRISTEN ZANKL, SCOTT
THOMAS ZANKL, on January 31, 2022;

1

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010    RECEIVED NYSCEF: 01/19/2026

FILED: KINGS COUNTY CLERK 09/14/2023 12:11 PM    INDEX NO. 502846/2022

NYSCEF DOC. NO. 216    RECEIVED NYSCEF: 09/14/2023

WHEREAS, the Summons and Verified Complaint in this action have been served upon Defendants and proofs of service thereof have been filed with the Court and additional copies of the Summons and Verified Complaint have been mailed;

WHEREAS, on March 18, 2022, and EXCELL AUTO GROUP, INC.; KARMA OF PALM BEACH INC.; AUTOMOTIVE SERVICE SYSTEMS, INC.; KZ CONSULTANTS, INC.; MISS KRISS, LLC; EXCELL AUTO LEASING INC.; EXCELL AUTO WHOLESALE INC.; DEALER SOUQ USA LLC; EAG WHOLESALE LLC; KARMA OF BROWARD, INC.; LAVISH HERO FUND; KARMA OF PALM BEACH, INC.; APPLE 3 INVESTMENTS, INC.; KZ CONSULTANTS INC.; EXCELL AUTO SPORT AND SERVICE, INC.; and KRISTEN ZANKL, SCOTT THOMAS ZANKL ("Defendants") filed an Amended Answer and Counterclaims (NYSCEF Doc. Nos. 30-36);

WHEREAS, pursuant to a Stipulation Regarding Discontinuance this action was discontinued without prejudice as against Defendant Excell Auto Group, Inc. on October 26, 2022 on account of Excell Auto Group, Inc. having filed for bankruptcy relief (NYSCEF Doc. No. 133);

WHEREAS, on April 6, 2022, Plaintiff made a motion for summary judgment (the "Motion for Summary Judgment") pursuant to CPLR § 3212 (NYSCEF Doc. Nos. 57-70) seeking judgment against Defendants KARMA OF PALM BEACH INC., AUTOMOTIVE SERVICE SYSTEMS, INC.; KZ CONSULTANTS, INC.; MISS KRISS, LLC; EXCELL AUTO LEASING INC.; EXCELL AUTO WHOLESALE INC.; DEALER SOUQ USA LLC; EAG WHOLESALE LLC; KARMA OF BROWARD, INC.; LAVISH HERO FUND; KARMA OF PALM BEACH, INC.; APPLE 3 INVESTMENTS, INC.; KZ CONSULTANTS INC.; EXCELL AUTO SPORT AND SERVICE, INC., KRISTEN ZANKL & SCOTT THOMAS ZANKL (collectively, the "Remaining Defendants"), and dismissing the Remaining Defendants' Counterclaims;

2

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1010

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

INDEX NO. 502846/2022

FILED: KINGS COUNTY CLERK 09/14/2023 12:11 PM

NYSCEF DOC. NO. 216

RECEIVED NYSCEF: 09/14/2023

WHEREAS, the Remaining Defendants submitted opposition to the Motion for Summary Judgment on September 14, 2022 (NYSCEF Doc. Nos. 108-122) and Plaintiff submitted its reply to the Remaining Defendants' opposition to the Motion for Summary Judgment on September 19, 2022 (NYSCEF Doc. Nos. 123-137);

WHEREAS, pursuant to a Decision and Order dated January 13, 2023 (NYSCEF Doc. No. 149), the Court granted the Motion for Summary Judgment to the extent of dismissing the Remaining Defendants' Counterclaims for breach of contract, fraudulent inducement, criminal usury and unjust enrichment, but otherwise denied the motion;

WHEREAS, on February 10, 2023, Plaintiff filed a motion to reargue the Court's denial of Plaintiff's Motion for Summary Judgment (NYSCEF Doc. Nos. 153-155);

WHEREAS, on April 17, 2023, the Remaining Defendants filed their opposition to the Motion to Reargue (NYSCEF Doc. No. 164) and a cross-motion to reargue the dismissal of the Remaining Defendants' counterclaims against Plaintiff (NYSCEF Doc. Nos. 165-166) and Plaintiff filed its reply in further support of the Motion for Reargument and opposition to the Remaining Defendants' Cross-Motion for Reargument on May 3, 2023 (NYSCEF Doc. No. 175);

WHEREAS, pursuant to a Decision and Order entered on May 11, 2023 (NYSCEF Doc. No. 177), Plaintiff's Motion to Reargue was granted, and upon reargument, the Court granted the Motion for Summary Judgment and directed Plaintiff to submit a judgment on notice within 30 days itemizing the outstanding balance due on the Stipulation, accrued interest, any fees, and Plaintiff's request for attorneys' fees, and the Remaining Defendants' Cross-Motion to Reargue the dismissal of their Counterclaims was denied.

WHEREAS, the itemization of the amounts for which Plaintiff seeks judgment pursuant to the Stipulation (NYSCEF Doc. No. 61) are as follows:

3

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1010

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

FILED: KINGS COUNTY CLERK 09/14/2023 12:11 PM

NYSCEF DOC. NO. 216

INDEX NO. 502846/2022

RECEIVED NYSCEF: 09/14/2023

| Unpaid Settlement Amount | $2,500,000.00 (Settlement Amount less $1,300,000) |
| Interest at 16% (2/11/22-09/13/23) | $   635,616.44 (Section 3 of Stipulation) |
| Costs and Disbursements | $       455.00 (Bill of Costs) |
| TOTAL | $3,136,071.44 |

Now, on motion of Steven Zakharyayev, Esq. attorney for HI BAR CAPITAL, LLC, it is

ADJUDGED that HI BAR CAPITAL, LLC, located at 1825 65th Street Brooklyn NY 11204, have judgment and recover from Defendants, (i) KARMA OF PALM BEACH INC., with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (ii) AUTOMOTIVE SERVICE SYSTEMS, INC., with an address at 6023 Town Country Drive, Suite #223, Boca Raton, FL 33433; (iii) KZ CONSULTANTS, INC., with an address at 16937 Pierre Cir., Delray Beach, FL 33446; (iv) MISS KRISS, L.L.C. with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (v) EXCELL AUTO LEASING INC., with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (vi) EXCELL AUTO WHOLESALE INC., with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (vii) DEALER SOUQ USA LLC, with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (viii) EAG WHOLESALE LLC, with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (ix) KARMA OF BROWARD, INC., with an address at 1699 SE 17th Street, Fort Lauderdale, FL 33316; (x) LAVISH HERO FUND, with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (xi) KARMA OF PALM BEACH, INC., with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (xii) APPLE 3 INVESTMENTS, INC., with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (xiii) KZ CONSULTANTS INC., with an address at 16937 Pierre Cir., Delray Beach, FL 33446; (xix) EXCELL AUTO SPORT AND SERVICE, INC., with an address at 5471 N. Dixie Hwy., Suite 5, Boca Raton, FL 33487, (xx) KRISTEN ZANKL, who

4

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1010

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

FILED: KINGS COUNTY CLERK 09/14/2023 12:11 PM
NYSCEF DOC. NO. 216

INDEX NO. 502846/2022
RECEIVED NYSCEF: 09/14/2023

resides at 16937 Pierre Cir., Delray Beach, FL 33446; and (xxi) SCOTT THOMAS ZANKL, who resides at 16937 Pierre Cir., Delray Beach, FL 33446, jointly and severally, the sum of $2,500,000.00, plus interest at the rate of 16% per annum from interest from February 11, 2022, in the amount of $ __635,616.44__ , plus $455 in costs and disbursements as taxed by the Clerk, amounting in all to the sum of $ __3,136,071.44__ , and the Plaintiff have execution therefore; and it is further

ADJUDGED that the Counterclaims against Plaintiff HI BAR CAPITAL, LLC, located at 1825 65th Street Brooklyn NY 11204, by Defendants (i) KARMA OF PALM BEACH INC., with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (ii) AUTOMOTIVE SERVICE SYSTEMS, INC., with an address at 6023 Town Country Drive, Suite #223, Boca Raton, FL 33433; (iii) KZ CONSULTANTS, INC., with an address at 16937 Pierre Cir., Delray Beach, FL 33446; (iv) MISS KRISS, LLC, with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (v) EXCELL AUTO LEASING INC., with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (vi) EXCELL AUTO WHOLESALE INC., with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (vii) DEALER SOUQ USA LLC, with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (viii) EAG WHOLESALE LLC, with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (ix) KARMA OF BROWARD, INC., with an address at 1699 SE 17th Street, Fort Lauderdale, FL 33316; (x) LAVISH HERO FUND, with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (xi) KARMA OF PALM BEACH, INC., with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (xii) APPLE 3 INVESTMENTS, INC., with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (xiii) KZ CONSULTANTS INC., with an address at 16937 Pierre Cir., Delray Beach, FL 33446; (xix) EXCELL AUTO SPORT AND SERVICE, INC., with

5

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1010

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

FILED: KINGS COUNTY CLERK 09/14/2023 12:11 PM

NYSCEF DOC. NO. 216

INDEX NO. 502846/2022

RECEIVED NYSCEF: 09/14/2023

an address at 5471 N. Dixie Hwy., Suite 5, Boca Raton, FL 33487, (xx) KRISTEN ZANKL, who resides at 16937 Pierre Cir., Delray Beach, FL 33446; and (xxi) SCOTT THOMAS ZANKL, who resides at 16937 Pierre Cir., Delray Beach, FL 33446, are dismissed.

ENTER

Date: 9/13/23

_____
Hon, Reginald A. Boddie, J.S.C.

HON. REGINALD A. BODDIE
J.S.C.

_____
CLERK

FILED

2023 SEP 14 PM 12:05

KINGS COUNTY CLERK

FEE _____

NOT A CERTIFIED COPY

6

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1010

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

FILED: KINGS COUNTY CLERK 08/04/2023 08:45 PM

NYSCEF DOC. NO. 286

INDEX NO. 502846/2022

RECEIVED NYSCEF: 08/04/2023

SUPREME COURT OF THE STATE OF NEW YORK COUNTY OF KINGS

HI BAR CAPITAL., LLC

-against-                                        Plaintiffs,

EXCELL AUTO GROUP, INC, et al.

Defendants

Index No.: 502846/2022

**BILL OF COSTS**

Costs and Disbursements:

| | |
|---|---|
| Cost by Statue | $200.00 |
| Filing Fee (CPLR 8018[a]): | $210.00 |
| Entering and Docketing Judgment CPLR 8301(a)(7), 8016(a)(2) | $45.00 |
| Total: | $455.00 |

**Attorney Affirmation**

The undersigned, an attorney admitted to practice law in the State of New York, affirms under penalty of perjury that I am the Managing Attorney at WELLS LAW P.C., attorneys for HI BAR CAPITAL, LLC, and that the disbursements specified above are true, correct, and have been or will necessarily be incurred herein and are reasonable in amount.

Dated: June 1, 2023
New York, New York

/s/ Steven W. Wells
Steven W. Wells
WELLS LAW P.C.
229 Warner Road
Lancaster, New York 14086
(716) 983-4750
steve@wellspc.com

**FILED**

2023 SEP 14 PH 12:05

**KINGS COUNTY CLERK**

FEE _____

1 of 1

NOT CERTIFIED COPY

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1010
DocuSign Envelope ID: 62C6B345-12AC-4E6A-A100-EED467629F92

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

EXHIBIT "B"

EXECUTION COPY

## COMMON INTEREST AND JOINT LITIGATION AGREEMENT

This COMMON INTEREST AND JOINT LITIGATION AGREEMENT (this "Agreement") is effective as of January 28, 2022 (the "Effective Date"), by and among SPIN CAPITAL, LLC, a New Jersey limited liability company ("Spin Capital"), and HI BAR CAPITAL, LLC, a New York limited liability company ("Hi Bar"). Spin Capital and Hi Bar shall be referred to each as a "Party" and collectively as "Parties."

## RECITALS

A.      On January 28, 2022, Hi Bar initiated an action captioned *Hi Bar Capital, LLC v. Excell Auto Group, Inc., et al.*, in the Supreme Court of the State of New York, County of Kings (the "NY Court"), as Index No. 502846/2022 (the "NY Litigation").

B.      On May 2, 2022, Hi Bar initiated an action captioned *Hi Bar Capital, LLC v. Karma of Palm Beach Inc., et al.*, in The Circuit Court of The Seventeenth Judicial Circuit, Broward County, Florida (the "Florida Court"), as Case No. 22-006401 (the "FL Litigation").

C.      In addition to Excell Auto Group, Inc. and Karma of Palm Beach Inc., the defendants in the FL Litigation include each of the following (collectively with Excell Auto Group, Inc. and Karma of Palm Beach Inc., "Defendants"): Automotive Service Systems, Inc.; Kz Consultants, Inc.; Miss Kris, LLC; Excell Auto Leasing Inc.; Excell Auto Wholesale Inc.; Dealer Souq USA LLC; Eag Wholesale LLC; Karma of Broward, Inc.; Lavish Hero Fund Inc.; Apple 3 Investments, Inc.; KZ Consultants Inc.; Excell Auto Sport And Service, Inc.; FVP Opportunity Fund III, LP; FVP Investments, LLC; FVP Servicing, LLC; Franklin Capital Group, LLC; Franklin Capital Management, LLC; Auto Wholesale of Boca, LLC; MMS Ultimate Services, Inc.; and Moshe Farache.

D.      In addition to the NY Litigation and the FL Litigation, one of the initial Defendants in the FL Litigation, Auto Wholesale of Boca, LLC ("AWB Debtor"), has filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida, Case No. 22-15627-EPK (the "Bankruptcy Case"). In connection with the Bankruptcy Case, Hi Bar, along with FVP Opportunity Fund III, LP, FVP Investments, LLC, and FVP Servicing, LLC (collectively, "FVP Entities"), initiated an adversary proceeding against AWB Debtor in the Bankruptcy Case, Adversary Case No. 22-01218-EPK (the "Adversary Proceeding," collectively with the Bankruptcy Case, the "Bankruptcy Proceedings").

E.      In conjunction with the NY Litigation, FL Litigation and the Bankruptcy Proceedings, (1) some or all of Defendants were indebted and liable to Hi Bar in the aggregate amount of $3,227,739.73 (the "Hi Bar MCA/Obligation") as of April 28, 2022, and (2) certain Defendants granted to Hi Bar a lien and security interest in certain vehicles, including those described on Schedule 1 hereto (the "Vehicle Collateral"), which secured the Hi Bar MCA/Obligation (the "Hi Bar Secured Claim").

F.      Hi Bar possesses or may possess claims, causes of action, and can seek certain relief against Defendants, and any entities affiliated with or owned by Defendants (collectively, "Litigation Parties") resulting or related to the Hi Bar MCA/Obligation, the Hi Bar Secured Claims, and the Vehicle Collateral, including, *inter alia*, claims, causes of action, and motion practice seeking relief for foreclosure, replevin, fraudulent transfer and avoidance claims arising under the

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010                                          RECEIVED NYSCEF: 01/19/2026
DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and applicable state and federal law. The foregoing claims, causes of action, and motion practice seeking relief against Litigation Parties that HI Bar may have or may be able to assert against Litigation Parties in the NY Litigation, the FL Litigation, the Bankruptcy Proceedings, shall collectively be referred to as the "Hi Bar Claims."

G.    In addition, as the holder of a portion of the Hi Bar MCA/Obligation and the Hi Bar Secured Claim, Spin Capital possesses or may possess certain claims and causes of action against certain of Litigation Parties resulting or related to the Hi Bar MCA/Obligation and the Hi Bar Secured Claims, including, *inter alia*, claims, causes of action, and motion practice seeking relief for foreclosure, replevin, fraudulent transfer and avoidance claims arising under the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and applicable state and federal law (collectively, the "Spin Capital Claims," with Hi Bar Claims, the "Litigation Claims").

H.    In the NY Litigation, on or about March 18, 2022: (x) Excell Auto Group, Inc. filed a verified third-party complaint against Spin Capital asserting certain claims and causes of action against Spin Capital; and (y) certain Defendants filed counterclaims against Hi Bar. On or about March 25, 2022, Franklin Capital Group, LLC ("FCG LLC") initiated an action captioned *Franklin Capital Group, LLC v. Spin Capital, LLC and Hi Bar Capital, LLC*, in the United States District Court for the Eastern District of Michigan (the "MI Court"), as Case No. 2022-193300-CB (the "Michigan Litigation").[1] Consequently, as part of and in conjunction with the NY Litigation and the Michigan Litigation (and potentially in the FL Litigation and Bankruptcy Proceedings ), certain Defendants and FCG LLC have asserted, and may assert in the future, claims, causes of action, and counterclaims against one or both Parties (collectively, the "Counterclaims").

I.    Parties have had discussions and negotiations regarding an agreement providing for the collective pursuit of the Litigation Claims and the defense of the Counterclaims for the benefit of both Parties. In light of Spin Capital's interest in the Hi Bar MCA/Obligation and the Hi Bar Secured Claim and its willingness to fund the litigation to recover against Litigation Parties (and to defend Parties against Counterclaims), Parties have determined that (x) the collective pursuit of the Litigation Claims by Hi Bar with the assistance and participation of Spin Capital and (y) the collective defense by Parties against the Counterclaims is in Parties' best interests. Parties have now reached an agreement regarding the pursuit of the Litigation Claims and the defense of the Counterclaims, subject to the terms and conditions set forth herein.

J.    Each Party has concluded that the execution of this Agreement is in its respective best interest, and acknowledges that the terms and provisions hereof are fair and reasonable, that each has had the opportunity to consult with legal counsel, and that each is receiving a substantial and valuable benefit if the transactions contemplated herein are consummated.

NOW, THEREFORE, in consideration of the mutual covenants and conditions contained in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.    **Recitals**. The recitals hereinbefore set forth constitute an integral part of this Agreement, evidencing the intent of the parties in executing this Agreement, and describing the

---

[1]    FGC LLC initially filed the Michigan Litigation in the Sixth Judicial Circuit Court of Oakland County, Michigan. Thereafter, Parties removed the Michigan Litigation to the MI Court.

2

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1010                                 RECEIVED NYSCEF: 01/19/2026
DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

circumstances surrounding its execution. Accordingly, said recitals are, by express reference, made a part of this Agreement, and this Agreement shall be construed in the light thereof. Nothing contained in the recitals shall limit the scope of or damages sought with respect to the Bankruptcy Proceedings Hi Bar Claims.

2.  **Prosecution and Settlement of Litigation Claims and Defense of Counterclaims.**

(a)  From and after the Effective Date, Hi Bar hereby assigns to Spin Capital any and all Hi Bar Claims, subject to the terms and conditions of this Agreement, including but not limited to, Spin Capital's obligation to assign all Hi Bar Claims back to Hi Bar in the event it exercises its rights pursuant to Section 2(f) hereof.

(b)  From and after the Effective Date, Spin Capital will have full authority to prosecute and settle the Litigation Claims, and may settle such Litigation Claims in whole or in part against some or all of Litigation Parties, in its discretion. Nothing contained in this Agreement is intended or shall be deemed in any manner whatsoever to govern the manner in which Spin Capital pursues (or elects not to pursue) the Litigation Claims related to Litigation Parties. Notwithstanding the foregoing, Spin Capital will cooperate with Hi Bar and keep Hi Bar abreast of the status of its pursuit of Litigation Claims and potential recoveries therefrom. Any settlement of the Litigation Claims will be subject to Hi Bar's written consent (which consent it shall not unreasonably withhold).

(c)  From and after the Effective Date, Spin Capital will have full authority to defend the Counterclaims and will use commercially reasonable efforts to defend the Counterclaims on advice of counsel for the benefit of Parties. Notwithstanding the foregoing, Spin Capital will cooperate with Hi Bar and keep Hi Bar abreast of the status of its defense of the Counterclaims. Spin Capital may settle Counterclaims in conjunction with a global settlement of the Litigation Claims, but any eventual settlement may not result in Hi Bar being required to make any out of pocket payments to any Defendants, and any settlement of any Counterclaim must be paid from recoveries collected in the Litigation Claims. Any settlement of the Counterclaims will be subject to Hi Bar's written consent (which consent it shall not unreasonably withhold).

(d)  Until termination of this Agreement (as provided in Section 2(f) hereof), Spin Capital shall pay all past, present, and future Professional Fee Claims (as defined below) as they become due. For purposes hereof, "Professional Fee Claims" shall mean all legal and professional fees owed to counsel (and any expert witnesses and consultants retained by counsel), which professionals are retained to represent Hi Bar and the interests of Spin Capital in the prosecuting the Litigation Claims and defense of the Counterclaims. For purposes hereof, Professional Fee Claims shall include fees owed to those counsel identified on **Schedule 2** hereof, with all such retained professionals referred to hereinafter as "Retained Professionals".

(e)  Spin Capital and Hi Bar agree that, with respect to the Litigation Claims, Hi Bar will continue to be the plaintiff or claimant for purposes of pursuing recoveries against Litigation Parties. Hi Bar shall execute all pleadings and affidavits/declarations as requested by Spin Capital with respect to either the Litigation Claims or the Counterclaims.

(f)  **Termination Provisions:**

3

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1010
DocuSign Envelope ID: 62C6B345-12AC-4E6A-A100-EED467629F92
INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

(i)     In the event that Spin Capital in its absolute discretion determines that it no longer wishes to actively pursue the recovery of any Litigation Claims, it will inform Hi Bar in writing of such decision, whereupon (and thereafter), Hi Bar shall be entitled to take the lead in pursuing the Hi Bar Claims and shall be entitled to make any decisions as to any matter relating to such pursuit (or non-pursuit) of such Hi Bar Claims.  Spin Capital shall provide written notice of such decision, which shall result in a termination of this Agreement as of the date of such notice ("SC Termination Date").  If, on or before the one (1) year anniversary of the SC Termination Date (and provided Hi Bar has not theretofore breached the terms of this Agreement), Spin Capital settles or obtains recovers on any Litigation Claims, then either Spin Capital or escrow agent (if applicable) shall provide payments to Hi Bar as provided in Section 3(a) hereof.

(ii)     In the event Hi Bar in its absolute discretion is not satisfied with Spin Capital's management of defense of Counterclaims against Hi Bar, then Hi Bar shall provide written notice of such decision, which shall result in a termination of this Agreement as of the date of such notice ("HB Termination Date"), and Hi Bar shall be entitled to continue pursuing its Hi Bar Claims and Spin Capital shall be entitled to continue pursuing Spin Capital Claims.  If, on or before the one (1) year anniversary of the HB Termination Date (and provided Spin Capital has not theretofore breached the terms of this Agreement), Hi Bar settles or obtains recovers on any of its Litigation Claims, then either Hi Bar or escrow agent (if applicable) shall provide payments to Spin Capital as provided in Section 3(a) hereof.

(g)     To the extent that Counterclaims continue to be asserted against Parties after either SC Termination Date or the HB Termination Date, then each Party shall be required to defend itself against such Counterclaims, and no Party shall have an obligation to other Party to defend such Counterclaims after the termination of this Agreement.

3.     **Agreement of Priority of Distribution.**

(a)     Parties shall direct Litigation Parties to pay any cash or other recoveries obtained from Litigation Parties (including any judgment recoveries from or settlements of any claims against Litigation Parties and the liquidation of any Vehicle Collateral) as a result of any Litigation Claims (collectively, "Litigation Proceeds") to an escrow account designated by Parties, which shall be subject to an escrow agreement between Parties.  Escrow agent of such escrow account shall pay and distribute Litigation Proceeds as provided below:

(i)     First, all funds necessary to reimburse Spin Capital for all Professional Fee Claims;

(ii)     Second, subject to Section 3(d) hereof, all funds (if any) necessary to resolve or settle all Counterclaims;

(iii)     Third, the balance if any, after payment of the Professional Fee Claims and the Counterclaims ("Net Litigation Proceeds"), shall be paid as follows: (x) thirty percent (30%) shall be paid to Hi Bar; and (y) seventy percent (70%) shall be paid to Spin Capital of the first $1,100,000 in net Litigation Proceeds (i.e., up to $330,000 to be paid to Hi Bar and up to $770,000 to be paid to Spin Capital from the first $1,100,000 in net Litigation Proceeds);

4

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010    RECEIVED NYSCEF: 01/19/2026
DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

(iv)    Fourth, fifteen percent (15%) shall be paid to Hi Bar and eighty-five percent (85%) shall be paid to Spin Capital of the next $900,000 in net Litigation Proceeds (*i.e.*, up to $135,000 to be paid to Hi Bar and up to $765,000 to be paid to Spin Capital from the next $900,000 in net Litigation Proceeds); and

(v)    Fifth, ten percent (10%) shall be paid to Hi Bar and ninety percent (90%) shall be paid to Spin Capital of all net Litigation Proceeds after the recovery by Parties of the first $2,000,000 in total net Litigation Proceeds.

By way of example only, payouts from total Net Litigation Proceeds would be as follows (assuming net Litigation Proceeds (after payment of Professional Fee Claims and Counterclaims) in the amounts set forth below):

| Total net Litigation Proceeds | Aggregate Amount to Hi Bar | Aggregate Amount to Spin Capital |
|---|---|---|
| $500,000 | $150,000 | $350,000 |
| $1,000,000 | $300,000 | $700,000 |
| $1,500,000 | $390,000 | $1,110,000 |
| $2,000,000 | $465,000 | $1,535,000 |
| $2,500,000 | $515,000 | $1,985,000 |
| $3,000,000 | $565,000 | $2,435,000 |
| $3,500,000 | $615,000 | $2,885,000 |
| $4,000,000 | $665,000 | $3,335,000 |

(b)    Notwithstanding the provisions of Section 3(a) hereof, to the extent any Party breaches this Agreement before the recovery of any Litigation Proceeds by the other Party, then breaching Party shall not be entitled to recoveries as provided in Section 3(a) to the extent of damages incurred by non-breaching Party relating to the breach, and non-breaching Party shall be entitled to direct any Litigation Parties to transfer so much of the recoveries as required to cover damages relating to the breach, directly to non-breaching Party for its own account.

(c)    Nothing contained herein is intended or shall be deemed to obligate or otherwise compel either Party to accept any non-cash payment or other non-cash distribution of any Litigation Proceeds in partial or full satisfaction of any of Litigation Claims.

(d)    To the extent all Counterclaims are not resolved at the time of the receipt of Litigation Proceeds, then the escrow agent shall hold all Litigation Proceeds until all such Counterclaims are either (x) resolved in favor of Parties or (y) liquidated or settled to an amount certain owed by Parties. Notwithstanding the foregoing, Parties may order escrow agent to release Litigation Proceeds in advance of resolution of all Counterclaims subject to a further written agreement between them.

(e)    To the extent insufficient Litigation Proceeds are recovered to pay any damages awarded with respect to all Counterclaims, then Parties agree that such damages in excess of the Litigation Proceeds shall be paid seventy percent (70%) by Spin Capital and thirty percent (30%) by Hi Bar.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010    RECEIVED NYSCEF: 01/19/2026

DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

(f)     For all Professional Fees Claims incurred through the earlier of (x) the SC Termination Date, (y) the HB Termination Date, and/or (z) the resolution and settlement of all Litigation Claims and Counterclaims, and to the extent sufficient Litigation Proceeds are not recovered to pay Spin Capital in full for all Professional Fee Claims paid through such date, then Parties agree that: (i)

(I)     HI Bar paid or must pay thirty (30%) of such amounts;

(II)    Spin Capital paid or must pay seventy (70%) of such amounts; and

(III)   Hi Bar shall pay Spin Capital for its proportion of these legal fees on submission of a written request by Spin Capital, provided that Spin Capital may only make such a written request on the termination of this Agreement or resolution in full of all Litigation Claims and Counterclaims (and the receipt by Parties of insufficient Litigation Proceeds to pay all Professional Fee Claims in full after resolution of all Counterclaims).

On or before the one (1) year anniversary of the date of such written request, HI Bar shall make payment in full to Spin Capital. To the extent Hi Bar fails to pay Spin Capital for any amounts owed pursuant to this Section 3(f), Spin Capital may initiate litigation to recover such amounts, but may not pursue litigation until the one (1) year anniversary of the date in which Spin Capital provides written notice to Hi Bar as provided in Section 3(f)(iii).

4.      **Further Assurances and Clawbacks.** Parties shall reasonably cooperate with each other and shall coordinate their activities in respect of all actions reasonably necessary to consummate or obtain orders approving this Agreement. HI Bar shall deliver such other documents, instruments or agreements as Spin Capital may reasonably request in order to effect fully the grant of authority to prosecute the HI Bar Claims. Spin Capital, in its sole discretion, shall advance monies and funds for payment of fees and expenses of Retained Professionals, as incurred by HI Bar in conjunction with the prosecution of the Litigation Claims and defense of Counterclaims against Litigation Parties. In the event that any of the Litigation Proceeds paid out to any of the parties hereto are subsequently disgorged by any Party, or in the event that after Parties are paid Net Litigation Proceeds, either Party incurs further liability relating to a Counterclaim, then each Party shall fund any clawback/disgorgement or Counterclaim liability in the same proportions as their receipt of the Net Litigation Proceeds as set forth in Section 3. Parties' obligations to pay back Net Litigation Proceeds to fund any clawback/disgorgement or liability relating to counterclaims shall survive termination of this Agreement.

5.      **Relationship of Parties.** Nothing contained herein shall be construed to impose any fiduciary duty on either Party in favor of the other Party or any other person or entity. Except as expressly set forth herein, neither Party shall have any duty or obligation to the other Party by virtue of this Agreement, and without limiting the generality of the foregoing, there are no implicit duties or obligations imposed on either Party in favor of the other Party or any other person or entity by virtue of this Agreement.

6.      **Representations and Warranties.** Each Party hereby represents and warrants to the other Party that its execution, delivery, and performance of this Agreement are within its respective powers, have been duly authorized by all necessary corporate action, and that this Agreement, when so executed and delivered shall constitute its legal, valid, and binding obligations, enforceable against it in accordance with its terms, subject to applicable bankruptcy,

6

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1010
DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467620F92

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

insolvency and similar laws and general equitable principles. Neither Party makes any representations or warranties to the other party regarding the recoverability, existence, or value of the Litigation Claims. Except as expressly set forth in this Section 6, neither Party makes any representations or warranties, express or implied, to the other Party by virtue of this Agreement.

7. **Effectiveness of This Agreement**. This Agreement shall be effective as of the date hereof conditioned only upon the execution and delivery of this Agreement by all Parties.

8. **Common Interest**.

(a) In order to pursue the Litigation Claims and defend the Counterclaims effectively, Parties have determined that their common interests may be best served by sharing documents, factual material, mental impressions, memoranda, interview reports, and other information, including the confidences of each of them, pursuant to this Agreement (collectively, the "Common Interest Materials") *provided, however,* that no Party shall be obligated to share or disclose any Common Interest Materials with or to any other Party solely by virtue of entering into this Agreement. Any document produced as Common Interest Materials shall be stamped or otherwise labeled as "privileged" or "confidential." Parties agree that Common Interest Materials obtained from any of them shall remain confidential and shall be protected from disclosure to any third party except as provided herein. Parties further agree that they will not disclose Common Interest Materials received from each other to anyone except, as applicable, their respective attorneys, representatives, employees, or agents involved in the Litigation Claims, without first obtaining the express consent of one or more of the parties who produced such Common Interest Materials. It is understood that all work performed and to be performed has been and shall be accomplished by the law firms, their attorneys, employees and agents with regard to their representations shall be accomplished pursuant to the work product and the attorney client privileges and to the "common interest doctrine" and all other applicable rights and privileges, including those recognized in *United States v. Evans,* 113 F.3d 1457 (7th Cir. 1997); *United States v. McPartlin,* 595 F.2d 1321 (7th Cir. 1979); *Hunydee v. United States,* 355 F.2d 183 (9th Cir. 1965); and *Continental Oil Co. v. United States,* 330 F.2d 347 (9th Cir. 1964).

(b) No Waiver. The joint interest and defense effort undertaken by Parties, by virtue of its purpose, operation and use, is attorney work product and has required, and may in the future require, the exchange of Common Interest Materials subject to work product protection, attorney-client, joint defense and/or other privileges. Parties do not, by virtue of entering into this Agreement, waive any privilege as to any communication or as to any sharing of work product.

(c) Permissive, Not Mandatory. This Agreement is intended to allow, but not require, each party to this Agreement, in its sole and exclusive discretion, to exchange with the other Parties Common Interest Materials, which are subject to work product protection, attorney-client, joint defense and/or other privileges. Parties are not required to agree to any particular litigation strategy or position taken before any court by virtue of having entered into this Agreement.

(d) Use. It is further agreed that any Common Interest Materials exchanged among Parties shall be used solely in connection with the Litigation Claims and the defense of the Counterclaims. Each Party specifically agrees that, in any subsequent litigation or action that

7

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022
NYSCEF DOC. NO. 1010                                                        RECEIVED NYSCEF: 01/19/2026
DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

may be brought, they will not attempt to discover or offer as evidence any Common Interest Materials exchanged between them relating to the foregoing absent court order or written consent by one or more of Parties producing such Common Interest Materials.

(e)     Joint Experts. Parties may jointly retain one or more experts in furtherance of the Litigation Claims and in the defense of the Counterclaims. All Common Interest Materials transmitted to the joint experts, as well as any work product generated by the joint experts in any form whatsoever shall be subject to this Agreement. No joint expert shall publish or disseminate any information, theories, opinions, or conclusions based upon Common Interest Materials in any way other than in furtherance of the Litigation Claims and in the defense of the Counterclaims without advance written approval by all of Parties by whom the expert is retained.

(f)     Individual Experts. Nothing herein shall preclude any of Parties from individually retaining an expert. Any Common Interest Materials or work product related to or generated by the individually retained expert shall be subject to this Agreement.

(g)     Joinder of Experts to Agreement. No Common Interest Materials exchanged pursuant to this Agreement shall be disclosed or distributed in any way to any joint or individually retained expert until (i) such person shall have read a copy of this Agreement and shall have signed a Confidentiality Agreement agreeing to be bound by the terms of this Agreement, and (ii) advance written approval is obtained from the party whose information is to be given, shown, made available or communicated to the expert in furtherance of the Litigation Claims.

(h)     Discovery of Common Interest Materials. If any person or entity requests or demands, by subpoena or otherwise, any Common Interest Materials received by any Party pursuant to this Agreement, the recipient of the demand shall immediately notify all other Parties. Each Party against whom the request or demand of said Common Interest Materials is directed shall take all steps necessary to permit the assertion of all applicable rights and privileges with respect to said Common Interest Materials, and shall cooperate fully with Parties in any judicial or other proceeding relating to the disclosure of said Common Interest Materials.

(i)     Withdrawal from Agreement. Parties also agree that, if any Party to this Agreement no longer has interests in common with the other Parties, such party shall immediately notify, in writing, attorneys for the other Parties and promptly withdraw from this Agreement. Withdrawal from this Agreement shall not terminate Parties' mutual obligation to hold confidential all Common Interest Materials previously exchanged among the same. At the request of a withdrawing party, documents furnished by such withdrawing party shall be returned to the same; provided, however, that such withdrawing party also returns all Common Interest Materials disclosed to it pursuant to this Agreement, and, further, destroys any internal notes, memoranda, analyses or other work product based upon or relating to Common Interest Materials produced by another party; provided, however, if a withdrawing party has received a subpoena or similar legal demand that would require production of any Common Interest Materials, the obligations imposed by this sentence shall be deferred until the discovery demand is resolved in accordance with the procedures outlined in this Agreement.

(j)     Electronic Communications. Parties further agree that electronic communication (via the internet or other network) among themselves may involve the

8

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010

RECEIVED NYSCEF: 01/19/2026

DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

communication of Common Interest Materials. By engaging in electronic communications during the course of the Litigation Claims, Parties do not intend to waive or in any way weaken any statutory, common law or other privileges or protections to which the Common Interest Materials would otherwise be entitled.

    (k)    <u>Continuation of Agreement</u>. This Agreement is not terminated by the conclusion through trial (including appeals) or settlement or other resolution of the Litigation Claims, and Parties shall keep all Common Interest Materials confidential as directed by the terms of this Agreement, unless all Parties consent in writing to the disclosure of said Common Interest Materials. Nothing in this Agreement, however, shall preclude any Party from disclosing their own privileged or work product materials at any time.

9.    **Provisions Solely to Define Relative Rights**.

    (a)    The provisions of this Agreement are intended solely for the purpose of defining the rights of Parties. Without limiting the generality of the provisions hereof, there are no third party beneficiaries of this Agreement. Without limiting the generality of the foregoing, no other person or entity, including any Litigation Party or any affiliate or creditor thereof, shall have any rights or benefits hereunder or shall otherwise be entitled in any manner whatsoever to rely on any of the provisions hereof. Nothing contained herein is intended to or shall impair the rights of either Party against any non-party, including any Litigation Party.

    (b)    This Agreement, including, *inter alia*, Section 3(f) hereof, shall not waive, release, or impair the rights of either Party against any other Party with respect to separate business relationships or other claims or causes of action any Party may have against other Party unrelated to the Litigation Claims, Counterclaims, Defendants, or any of the proceedings described in the Recitals hereto. Any and all current or future claims or causes of actions of one Party against other Party are expressly preserved, and Parties do not intend to effect or impair such claims or causes of action as part of their Agreement hereunder.

10.    **General Terms**.

    (a)    <u>Time is of the Essence</u>. Parties agree that time is of the essence with respect to each of the terms and conditions of this Agreement.

    (b)    <u>Waivers, Amendments, Etc</u>. The provisions of this Agreement may from time to time be amended, modified or waived, if such amendment, modification or waiver is in writing and consented to by each Party. No waiver or approval by any Party under this Agreement shall, except as may be otherwise stated in such waiver or approval, be applicable to subsequent transactions. No waiver or approval hereunder shall require any similar or dissimilar waiver or approval thereafter to be granted hereunder.

    (c)    <u>Notices</u>. All notices and other communications provided to any Party hereto under this Agreement shall be in writing (except as otherwise specifically provided in this Agreement) and sent by first class mail, by overnight delivery service, or by facsimile and addressed, delivered or transmitted to such Party at its address or facsimile number set forth below its signature hereto or at such other address or facsimile number as may be designated by such Party in a notice to the other Parties. Any notice, if mailed and properly addressed with

9

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1010
DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92
INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

postage prepaid or if properly addressed and sent by pre-paid courier service, shall be deemed given when received; any notice, if transmitted by facsimile, shall be deemed given when transmitted and the Party giving such notice shall have received (including either through telephonic communication initiated by it or telephonic communication received by it) telephonic, machine, or other confirmation that such notice has been received by the intended recipient.

(d)    No Implied Right to Notice; Nonwaiver; Cumulative Remedies. No notice to or demand on any of the parties hereto in any case shall entitle them to any notice or demand in similar or other circumstances. No failure to exercise, no delay in exercising, and no single or partial exercising, on the part of either Party, of any right, power or privilege hereunder shall operate as a waiver thereof or otherwise preclude any other or further exercise thereof or the exercise of any other right, power or privilege. The rights and remedies of Parties herein provided are cumulative and not exclusive of any rights or remedies provided by law.

(e)    Successors; Survival of Agreements. All agreements, representations, warranties, and covenants made herein shall survive the consummation of this Agreement.

(f)    No Third Party Beneficiaries. This Agreement shall be binding upon, inure to the benefit of, and be enforceable by, Parties and their respective successors and assigns. No other person or entity shall be entitled to claim or assert (including as a defense to any liability) any right or benefit hereunder, including the status of being an express or implied third party beneficiary of this Agreement.

(g)    Captions. Captions in this Agreement are for convenience of reference only and shall not define or limit any of the terms or provisions hereof. References herein to Sections or provisions without reference to the document in which they are contained are references to this Agreement.

(h)    Counterparts; Signatures. This Agreement may be executed by Parties on any number of separate counterparts, and by each Party on separate counterparts; each counterpart shall be deemed an original instrument; and all of the counterparts taken together shall be deemed to constitute one and the same instrument. To facilitate execution of this Agreement, Parties may execute and exchange facsimile or electronic mail (e-mail) executed counterparts of this Agreement. Facsimile signatures and signatures exchanged by electronic mail (e-mail) shall be deemed valid and binding to the same extent as the original.

(i)    Expenses. Without limiting the right of any Party to apply any Litigation Proceeds received by it in accordance with the provisions of this Agreement in satisfaction of any such expenses, each Party hereto shall be responsible for the payment of its own fees and expenses, unless otherwise set forth herein.

(j)    Entire Agreement. This Agreement, together with the exhibits and schedules hereto, contains the entire agreement between Parties with respect to the matters addressed herein. There are no agreements, restrictions, promises, representations, warranties, covenants or undertakings, written or oral, other than those expressly set forth herein. This Agreement supersedes all prior agreements and understandings between Parties (if any) with respect to the matters addressed herein.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1010
DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

(k)    Interpretation. The use of the masculine, feminine or neuter gender or the singular or plural form of words herein shall not limit any provision of this Agreement. The use of the terms "including" or "include" shall in all cases herein mean "including, without limitation" or "include, without limitation," respectively. Reference to any person or entity includes such person's or entity's successors and assigns to the extent such successors and assigns are permitted by the terms of this Agreement, and reference to a person or entity in a particular capacity excludes such person or entity in any other capacity or individually. Reference to any agreement (including this Agreement), document or instrument means such agreement, document or instrument as amended or modified and in effect from time to time in accordance with the terms thereof and, if applicable, the terms hereof. Reference to any law means such law as amended, modified, codified, replaced or re-enacted, in whole or in part, and in effect on the date hereof, including rules, regulations, enforcement procedures and any interpretations promulgated thereunder. Underscored references to Sections, clauses, Exhibits or Schedules shall refer to those portions of this Agreement, and any underscored references to a clause shall, unless otherwise identified, refer to the appropriate clause within the same Section in which such reference occurs. The use of the terms "hereunder", "hereof", "hereto" and words of similar import shall refer to this Agreement as a whole and not to any particular Section or clause of or Exhibit or Schedule to this Agreement. All terms defined in this Agreement shall have the above-defined meanings when used in any certificate, report or other document made or delivered pursuant to this Agreement, unless the context therein shall clearly otherwise require. In the computation of periods of time in this Agreement from a specified date to a later specified date, the word "from" means "from and including" and the words "to" and "until" each means "to, but not through." This Agreement and the other documents relating to this Agreement are the result of negotiations among and have been reviewed by counsel to Parties, and are the products of all Parties. Accordingly, they shall not be construed against (or in favor of) either Party merely because of such Party's involvement (or non-involvement, as the case may be) in their preparation.

(l)    APPLICABLE LAW. THIS AGREEMENT AND ANY OTHER WRITING EXECUTED IN CONNECTION HEREWITH SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED THEREIN WITHOUT GIVING EFFECT TO PRINCIPLES OF CONFLICTS OF LAW. COURTS SITTING IN NEW YORK STATE SHALL HAVE EXCLUSIVE JURISDICTION OVER ANY AND ALL ACTIONS BROUGHT BY THE PARTIES RELATING IN ANY WAY TO THIS AGREEMENT.

(m)    WAIVER OF RIGHT TO JURY TRIAL. EACH OF THE PARTIES IRREVOCABLY HEREBY WAIVES ANY RIGHT IT MAY HAVE TO TRIAL BY JURY IN ANY AND ALL SUITS, ACTIONS OR OTHER PROCEEDINGS THAT ARISE FROM, OR CONSIST OF, A CLAIM FOR DAMAGES UNDER, A CLAIM OF A BREACH OF, OR A DECLARATORY JUDGMENT ACTION FOR THE INTERPRETATION OF, THIS AGREEMENT.

**[Signature Pages Follows]**

11

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010

RECEIVED NYSCEF: 01/19/2026

DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

IN WITNESS WHEREOF, the parties hereto have caused this Common Interest and Joint Litigation Agreement to be executed by their respective officers thereunto duly authorized as of the day and year first above written.

HI BAR CAPITAL, LLC

DocuSigned by:

By: _Yisroel Herbst_

Name: Yisroel Herbst

Its: Owner

Contact Address:
HI Bar Capital, LLC
1825 65th Street
Brooklyn, NY 11204
ATTN: Yisroel Herbst
       Mordi Herbst
Email: ymherbst@gmail.com
       mordi@hibarcapital.com

*With a copy to:*
Law Office of Michael Ehrenreich PLLC
555 Willow Avenue, Suite 105
Cedarhurst, NY 11516
Attention: Michael Ehrenreich
Email: me@ehrenreichlaw.com

NOT A CERTIFIED COPY

[Signature Page to Common Interest and Joint Litigation Agreement]

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010    RECEIVED NYSCEF: 01/19/2026
DocuSign Envelope ID: 62C6B345-12AC-4E5A-A100-EED467629F92

SPIN CAPITAL, LLC

By: _____
Name: Arvumi Lubin
Its: President


Contact Address:
Spin Capital, LLC
1460 Arboretum Parkway
Lakewood, NJ 08701
ATTN: Josh Lubin
Email: josh@spincapital.com

*With a copy to:*
Bryan Cave Leighton Paisner LLP
161 North Clark Street, Suite 4300
Chicago, Illinois 60601
ATTN: Jason J. DeJonker
Email: Jason.Dejonker@bclplaw.com

NOT A CERTIFIED COPY

[Signature Page to Common Interest and Joint Litigation Agreement]

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010

DocuSign Envelope ID: 62C6B345-12AC-4E6A-A100-EED467629F92

RECEIVED NYSCEF: 01/19/2026

## Schedule 2

- Bryan Cave Leighton Paisner LLP

- Feldman Law Group, P.A.

- Wells Law P.C.

- Foley & Lardner LLP

- Proskauer Rose LLP

- Law Office of Michael Ehrenreich

- Law Offices of Steven Zakharyayev

NOT A CERTIFIED COPY

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1010                                              RECEIVED NYSCEF: 01/19/2026

# EXHIBIT "C"

## ABSOLUTE ASSIGNMENT OF INTERESTS AND RIGHTS

This ABSOLUTE ASSIGNMENT is entered into this _17_ day of _MARCH_, 20_25_ is between SPIN CAPITAL, LLC, a New Jersey limited liability company (hereinafter "SPIN") and AVRUMI LUBIN a/k/a JOSH LUBIN, an individual, and/or his assigns (hereinafter "LUBIN"), together, hereinafter called the "Parties".

### RECITALS

WHEREAS, SPIN is the current and sole owner of that certain rights, title and interest under that certain Common Interest And Joint Litigation Agreement dated January 28, 2022 between SPIN and Hi-Bar Capital, LLC (hereinafter "JLA"), including any and all claims, rights or actions SPIN may have (whether known or unknown, contingent, collateral or otherwise) to SPIN as of the date hereof) against any third party arising in connection with, or otherwise related to the JLA and the underlying claims contemplated under the JLA (altogether "Rights");

WHEREAS, Lubin is a person desirous of acquiring the Rights from SPIN and asserting such rights in an action captioned *Hi Bar Capital, LLC v. Karma of Palm Beach Inc., et al.*, in The Circuit Court of The Seventeenth Judicial Circuit, Broward County, Florida (the "Florida Court"), as Case No. 22-006401 (the "FL Litigation") and in the United States Bankruptcy Court for the Southern District of Florida, Case No. 22-15627-EPK (the "Bankruptcy Case") and in the Bankruptcy Case, Adversary Case No. 22-01218-EPK (the "Adversary Proceeding," collectively with the Bankruptcy Case, the "Bankruptcy Proceedings") or any other action or court proceeding anywhere deemed necessary by Lubin to assert such rights;

NOW THEREFORE, that SPIN, for and in consideration of TEN DOLLARS ($10.00) and other good and valuable consideration to SPIN, in hand and paid for by Lubin, the receipt and sufficiency whereof is hereby acknowledged and bestows upon SPIN a benefit which is material and acknowledged as such by SPIN, has GRANTED to, bargained, transferred, sold, conveyed, and assigned over exclusively to Lubin any and all rights, title, interest, possession, privileges or any other interests of any kind, whatsoever, SPIN may possess in the JLA, or any derivative thereof, along with any rights or privileges SPIN may have under, in law or equity.

SPIN has agreed and contemplated the contents of this Assignment and has given up his rights in a bargained for exchange as contained herein and has done so willfully, freely without duress or coercion and has acted with a reasonable understanding of the consequences of surrendering said rights and interests.

SPIN GRANTS any and all rights, powers, interests, privileges, whether executory or not, available or not, and conveys such ability to Lubin to use, deploy, exercise, commence, or otherwise perform as if SPIN was executing it itself, in the complete and sole discretion of Lubin, without reserve.

SPIN represents and warrants that it owns or otherwise is seized of all ownership interests, in law or equity, of any and all interests, or any derivative thereof, in the JLA and has full right and privilege to dispose of such in any manner it deems appropriate and proper, in its sole discretion. Further, SPIN represents and warrants that no other person, party or parties have, possess, maintain or otherwise maintains a valid claim or interest, recorded or unrecorded, in the JLA or any and all rights, privileges or claims which SPIN may personally have by virtue of said ownership thereof, other than such claims, interests or rights which have already been previously disclosed to Lubin or are a matter of public record.

SPIN has entered into this Assignment voluntarily and in good faith with the full intent that this Assignment be binding between the Parties. SPIN has been advised to seek review of this Assignment with competent legal counsel and has either pursued or waived such right. This Assignment shall be governed by New York law and subject thereto. Any portion hereof not compliant is to be severed without effect on any remainder.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1010

INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

In any and all events, interpretation should be given to this instrument to accomplish the intent to perform a complete assignment from SPIN to Lubin of any and all rights, title, interest, possession, privileges or any other interests of any kind, whatsoever, SPIN may possess in the JLA; and no other.

It is the intention of the Parties that this arrangement is to be confidential and does not require recordation in any public record to be binding, obligatory and effective between the Parties as to the Parties themselves, to the fullest extent permitted under law, and SPIN waives any challenge or contest as to the intent of this instrument. No third-party witness or official is necessary to witness or otherwise authenticate this instrument for it to be binding upon and between the Parties.

**EXECUTED AS OF THE DATE LISTED ABOVE**

FOR SPIN CAPITAL, LLC, a New Jersey limited liability company:

/s/ _____
By: Arvumi Lubin,
Its Manager and Managing Member

EFFECT IS TO BE GIVEN TO THIS INSTRUMENT TO ACCOMPLISH THE INTENT OF THE PARTIES AND ANY OMISSION, DEFECT, ERROR, MISAPPLICATION OR LEGAL DEFICIENCY OF ANY KIND SHOULD BE INTERPRETED TO GIVE LEGAL EFFECT TO THE INTENTION OF THE PARTIES UNDER THIS INSTRUMENT WHICH IS TO GRANT TO, TRANSFER, SALE, CONVEY, OR OTHERWISE ASSIGN OVER EXCLUSIVELY TO LUBIN ANY AND ALL RIGHTS, TITLE, INTEREST, POSSESSION, PRIVILEGES OR ANY OTHER INTERESTS OF ANY KIND, WHATSOEVER, SPIN MAY POSSESS IN THE JLA, OR ANY DERIVATIVE THEREOF, ALONG WITH ANY RIGHTS OR PRIVILEGES SPIN MAY HAVE UNDER, IN LAW OR EQUITY.

**NOTORIAL ACKNOWLEDGEMENT**

State/Country of _NEW YORK_
County/Province of _NEW YORK_
City/Municipality of _____

The foregoing instrument is acknowledged before me on this _17_ day of _MARCH_, 20_25_ by Arvumi Lubin, the duly authorized person for SPIN CAPITAL, LLC, who is [ ] personally known to me or [ ] who has/have produced a valid [ ] drivers license or [ ] state issued identification card as identification and had physically appeared before me.

Witness my signature and official seal in the aforesaid state and county.

/s/ _____                        [SEAL]
Notary Public

My Comm. Expires: _____

BRET SABLOSKY
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01SA6362823
Qualified in New York County
Commission Expires August 7, 2025

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010

RECEIVED NYSCEF: 01/19/2026

No. 4770497

CFN 20250115044
OR BK 35650 PG 1087
RECORDED 4/3/2025 12:40 PM
Palm Beach County, Florida
Joseph Abruzzo, Clerk
Pgs 1087 - 1093 (7pgs)

## Certification

**STATE OF NEW YORK, COUNTY OF KINGS, SS:**

I, Nancy T. Sunshine, County Clerk and Clerk of Supreme Court Kings County,

do hereby certify that on November 19, 2024 I have compared

the document attached hereto,

Index# 502846/2022, Judgment, Filed 09/14/2023 page(s) 1-7

with the originals filed in my office and the same is a correct transcript

therefrom and of the whole of such original in witness

whereto I have affixed my signature and seal.

NANCY T. SUNSHINE
KINGS COUNTY CLERK

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1010

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

FILED: KINGS COUNTY CLERK 09/14/2023 12:11 PM

NYSCEF DOC. NO. 216

RECEIVED NYSCEF: 09/14/2023

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

HI BAR CAPITAL, LLC

Plaintiffs,

-against-

EXCELL AUTO GROUP, INC.; KARMA OF
PALM BEACH INC.; AUTOMOTIVE SERVICE
SYSTEMS, INC.; KZ CONSULTANTS, INC.;
MISS KRISS, LLC; EXCELL AUTO LEASING
INC.; EXCELL AUTO WHOLESALE INC.;
DEALER SOUQ USA LLC; EAG WHOLESALE
LLC; KARMA OF BROWARD, INC.; LAVISH
HERO FUND; KARMA OF PALM BEACH, INC.;
APPLE 3 INVESTMENTS, INC.; KZ
CONSULTANTS INC.; EXCELL AUTO SPORT
AND SERVICE, INC.; and KRISTEN ZANKL,
SCOTT THOMAS ZANKL.

Defendants

Index No.: 502846/2022

**JUDGMENT**

**Plaintiff's Address:**
1825 65th Street
Brooklyn NY 11204

WHEREAS, this action this action having been commenced by the filing of a Summons and Verified Complaint on January 28, 2022 (NYSCEF Doc. No. 1);

WHEREAS, the Summons and Verified Complaint in the above-entitled action have been served upon defendants, EXCELL AUTO GROUP, INC.; KARMA OF PALM BEACH INC.; AUTOMOTIVE SERVICE SYSTEMS, INC.; KZ CONSULTANTS, INC.; MISS KRISS, LLC; EXCELL AUTO LEASING INC.; EXCELL AUTO WHOLESALE INC.; DEALER SOUQ USA LLC; EAG WHOLESALE LLC; KARMA OF BROWARD, INC.; LAVISH HERO FUND; KARMA OF PALM BEACH, INC.; APPLE 3 INVESTMENTS, INC.; KZ CONSULTANTS INC.; EXCELL AUTO SPORT AND SERVICE, INC.; and KRISTEN ZANKL, SCOTT THOMAS ZANKL., on January 31, 2022;

1

1 of 7

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM         INDEX NO. 650582/2022

NYSCEF DOC. NO. 1010                                      RECEIVED NYSCEF: 01/19/2026

FILED: KINGS COUNTY CLERK 09/14/2023 12:11 PM

NYSCEF DOC. NO. 216                                      RECEIVED NYSCEF: 09/14/2023

WHEREAS, the Summons and Verified Complaint in this action have been served upon Defendants and proofs of service thereof have been filed with the Court and additional copies of the Summons and Verified Complaint have been mailed;

WHEREAS, on March 18, 2022, and EXCELL AUTO GROUP, INC.; KARMA OF PALM BEACH INC.; AUTOMOTIVE SERVICE SYSTEMS, INC.; KZ CONSULTANTS, INC.; MISS KRISS, LLC; EXCELL AUTO LEASING INC.; EXCELL AUTO WHOLESALE INC.; DEALER SOUQ USA LLC; EAG WHOLESALE LLC; KARMA OF BROWARD, INC.; LAVISH HERO FUND; KARMA OF PALM BEACH, INC.; APPLE 3 INVESTMENTS, INC.; KZ CONSULTANTS INC.; EXCELL AUTO SPORT AND SERVICE, INC.; and KRISTEN ZANKL, SCOTT THOMAS ZANKL ("Defendants") filed an Amended Answer and Counterclaims (NYSCEF Doc. Nos. 30-36);

WHEREAS, pursuant to a Stipulation Regarding Discontinuance this action was discontinued without prejudice as against Defendant Excell Auto Group, Inc. on October 26, 2022 on account of Excell Auto Group, Inc. having filed for bankruptcy relief (NYSCEF Doc. No. 133);

WHEREAS, on April 6, 2022, Plaintiff made a motion for summary judgment (the "Motion for Summary Judgment") pursuant to CPLR § 3212 (NYSCEF Doc. Nos. 57-70) seeking judgment against Defendants KARMA OF PALM BEACH INC., AUTOMOTIVE SERVICE SYSTEMS, INC.; KZ CONSULTANTS, INC.; MISS KRISS, LLC; EXCELL AUTO LEASING INC.; EXCELL AUTO WHOLESALE INC.; DEALER SOUQ USA LLC; EAG WHOLESALE LLC; KARMA OF BROWARD, INC.; LAVISH HERO FUND; KARMA OF PALM BEACH, INC.; APPLE 3 INVESTMENTS, INC.; KZ CONSULTANTS INC.; EXCELL AUTO SPORT AND SERVICE, INC., KRISTEN ZANKL & SCOTT THOMAS ZANKL (collectively, the "Remaining Defendants"), and dismissing the Remaining Defendants' Counterclaims;

2

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
NYSCEF DOC. NO. 1010
INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

FILED: KINGS COUNTY CLERK 09/14/2023 12:11 PM
.NYSCEF DOC. NO. 216
RECEIVED NYSCEF: 09/14/2023

WHEREAS, the Remaining Defendants submitted opposition to the Motion for Summary Judgment on September 14, 2022 (NYSCEF Doc. Nos. 108-122) and Plaintiff submitted its reply to the Remaining Defendants' opposition to the Motion for Summary Judgment on September 19, 2022 (NYSCEF Doc. Nos. 123-137);

WHEREAS, pursuant to a Decision and Order dated January 13, 2023 (NYSCEF Doc. No. 149), the Court granted the Motion for Summary Judgment to the extent of dismissing the Remaining Defendants' Counterclaims for breach of contract, fraudulent inducement, criminal usury and unjust enrichment, but otherwise denied the motion;

WHEREAS, on February 10, 2023, Plaintiff filed a motion to reargue the Court's denial of Plaintiff's Motion for Summary Judgment (NYSCEF Doc. Nos. 153-155);

WHEREAS, on April 17, 2023, the Remaining Defendants filed their opposition to the Motion to Reargue (NYSCEF Doc. No. 164) and a cross-motion to reargue the dismissal of the Remaining Defendants' counterclaims against Plaintiff (NYSCEF Doc. Nos. 165-166) and Plaintiff filed its reply in further support of the Motion for Reargument and opposition to the Remaining Defendants' Cross-Motion for Reargument on May 3, 2023 (NYSCEF Doc. No. 175);

WHEREAS, pursuant to a Decision and Order entered on May 11, 2023 (NYSCEF Doc. No. 177), Plaintiff's Motion to Reargue was granted, and upon reargument, the Court granted the Motion for Summary Judgment and directed Plaintiff to submit a judgment on notice within 30 days itemizing the outstanding balance due on the Stipulation, accrued interest, any fees, and Plaintiff's request for attorneys' fees, and the Remaining Defendants' Cross-Motion to Reargue the dismissal of their Counterclaims was denied.

WHEREAS, the itemization of the amounts for which Plaintiff seeks judgment pursuant to the Stipulation (NYSCEF Doc. No. 61) are as follows:

3

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1010
RECEIVED NYSCEF: 01/19/2026

FILED: KINGS COUNTY CLERK 09/14/2023 12:11 PM

.NYSCEF DOC. NO. 216
RECEIVED NYSCEF: 09/14/2023

| | |
|---|---|
| Unpaid Settlement Amount | $2,500,000.00 (Settlement Amount less $1,300,000) |
| Interest at 16% (2/11/22-09/13/23) | $ 635,616.44 (Section 3 of Stipulation) |
| Costs and Disbursements | $ 455.00 (Bill of Costs) |
| **TOTAL** | **$3,136,071.44** |

Now, on motion of Steven Zakharyayev, Esq. attorney for HI BAR CAPITAL, LLC, it is

ADJUDGED that HI BAR CAPITAL, LLC, located at 1825 65th Street Brooklyn NY 11204, have judgment and recover from Defendants, (i) KARMA OF PALM BEACH INC., with an address at 1001 Clint Moore Road #101, Boca Raton, FL. 33487; (ii) AUTOMOTIVE SERVICE SYSTEMS, INC., with an address at 6023 Town Country Drive, Suite #223, Boca Raton, FL 33433; (iii) KZ CONSULTANTS, INC., with an address at 16937 Pierre Cir., Delray Beach, FL 33446; (iv) MISS KRISS, LLC, with an address at 1001 Clint Moore Road #101, Boca Raton. FL 33487; (v) EXCELL AUTO LEASING INC., with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (vi) EXCELL AUTO WHOLESALE INC., with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (vii) DEALER SOUQ USA LLC, with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (viii) EAG WHOLESALE LLC, with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (ix) KARMA OF BROWARD, INC., with an address at 1699 SE 17th Street, Fort Lauderdale, FL 33316; (x) LAVISH HERO FUND, with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (xi) KARMA OF PALM BEACH, INC., with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (xii) APPLE 3 INVESTMENTS, INC., with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (xiii) KZ CONSULTANTS INC., with an address at 16937 Pierre Cir., Delray Beach, FL 33446; (xix) EXCELL AUTO SPORT AND SERVICE, INC., with an address at 5471 N. Dixie Hwy., Suite 5, Boca Raton, FL 33487, (xx) KRISTEN ZANKL, who

4



FILED: KINGS COUNTY CLERK 09/14/2023 12:11 PM

NYSCEF DOC. NO. 216

RECEIVED NYSCEF: 09/14/2023

resides at 16937 Pierre Cir., Delray Beach, FL 33446; and (xxi) SCOTT THOMAS ZANKL, who resides at 16937 Pierre Cir., Delray Beach, FL 33446, jointly and severally, the sum of $2,500,000.00, plus interest at the rate of 16% per annum from interest from February 11, 2022, in the amount of $ **635,616.44** , plus $455 in costs and disbursements as taxed by the Clerk, amounting in all to the sum of $ **3,136,071.44** , and the Plaintiff have execution therefore; *and it is further*

ADJUDGED that the Counterclaims against Plaintiff HI BAR CAPITAL, LLC, located at 1825 65th Street Brooklyn NY 11204, by Defendants (i) KARMA OF PALM BEACH INC., with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (ii) AUTOMOTIVE SERVICE SYSTEMS, INC., with an address at 6023 Town Country Drive, Suite #223, Boca Raton, FL 33433; (iii) KZ CONSULTANTS, INC., with an address at 16937 Pierre Cir., Delray Beach, FL 33446; (iv) MISS KRISS, LLC, with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (v) EXCELL AUTO LEASING INC., with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (vi) EXCELL AUTO WHOLESALE INC., with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (vii) DEALER SOUQ USA LLC, with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (viii) EAG WHOLESALE LLC, with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (ix) KARMA OF BROWARD, INC., with an address at 1699 SE 17th Street, Fort Lauderdale, FL 33316; (x) LAVISH HERO FUND, with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (xi) KARMA OF PALM BEACH, INC., with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (xii) APPLE 3 INVESTMENTS, INC., with an address at 1001 Clint Moore Road #101, Boca Raton, FL 33487; (xiii) KZ CONSULTANTS INC., with an address at 16937 Pierre Cir., Delray Beach, FL 33446; (xix) EXCELL AUTO SPORT AND SERVICE, INC., with

5



FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM
INDEX NO. 650582/2022
RECEIVED NYSCEF: 01/19/2026

FILED: KINGS COUNTY CLERK 09/14/2023 12:11 PM
NYSCEF DOC. NO. 216
RECEIVED NYSCEF: 09/14/2023

an address at 5471 N. Dixie Hwy., Suite 5, Boca Raton, FL 33487, (xx) KRISTEN ZANKL, who

resides at 16937 Pierre Cir., Delray Beach, FL 33446; and (xxi) SCOTT THOMAS ZANKL, who

resides at 16937 Pierre Cir., Delray Beach, FL 33446, are dismissed.

ENTER

Date: 9/13/23

_____

Hon.  Reginald A. Boddie, J.S.C.

HON. REGINALD A. BODDIE
J.S.C.

CLERK

## FILED

2023 SEP 14 PM 12:05

## KINGS COUNTY CLERK

FEE _____

STATE OF FLORIDA, COUNTY OF MIAMI-DADE
I hereby certify that the foregoing is a
true and correct copy of the original on
file in this office ___/___ A.D. 20___
. . . ZANKL . . . OLIS, Clerk of the
. . . and Comptroll . . . iami-Dade County

Miriam Perdomo #311459

6

NOT A CERTIFIED COPY

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

In re: EXCELL AUTO GROUP, INC., Debtor.
Case No. 22-12790-EPK (Chapter 7)

NICOLE-TESTA MEHDIPOUR, as Chapter 7 Trustee for Excell Auto Group, Inc., Plaintiff,
v.
HI BAR CAPITAL, LLC, et al., Defendants.
Adv. Proc. No. 23-01132-EPK

---

# SUB-EXHIBIT 18-I

Emergency Motion for Entry of (I) Preservation Order, (II) Protective Order, and (III) Limited Continuance (S.D. Fla. Bankr., Adv. Proc. No. 23-01132-EPK, Doc. 368, filed Jan. 13, 2026).

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1011

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

**SUPREME COURT OF THE STATE OF NEW YORK** Index No. 650582/2022
**COUNTY OF NEW YORK**      Third-Party Index No. 595367/2022

Hon. Nancy M. Bannon, J.S.C. (Part 61M)

TETON LIFE LLC as Assignee of the Rights of Spin Capital, LLC,
Plaintiff,
-against-
GOLDEN FOOTHILL INSURANCE SERVICES, LLC et al.,
Defendants.

-----------------------------------------------x

GOLDEN FOOTHILL INSURANCE SERVICES, LLC et al.,
Third-Party Plaintiffs,
-against-
SPIN CAPITAL, LLC, and AVRUMI LUBIN,
Third-Party Defendants.

-----------------------------------------------x

# EXHIBIT I

**Emergency Motion for Entry of (I) Preservation Order, (II) Protective Order, and (III) Limited Continuance or, in the Alternative, Expedited Status Conference and Scheduling Guardrails**

S.D. Fla. Bankr., Adv. Proc. No. 23-01132-EPK, Doc. 368, filed Jan. 13, 2026.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1011    RECEIVED NYSCEF: 01/19/2026

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

EXCELL AUTO GROUP, INC.,

Debtor.

_____/

NICOLE TESTA MEHDIPOUR,

as Chapter 7 Trustee for

Excell Auto Group, Inc.,

Plaintiff,

v,

HI BAR CAPITAL, LLC, et al.,

Defendants.

_____/

Case No. 22-12790-EPK

Chapter 7

Adv. Pro. No. 23-01132-EPK

FILED-USBC, FLS-MIA
'26 JAN 13 AM10:00

### EMERGENCY MOTION FOR ENTRY OF (I) PRESERVATION ORDER, (II) PROTECTIVE ORDER, AND (III) LIMITED CONTINUANCE OR, IN THE ALTERNATIVE, EXPEDITED STATUS CONFERENCE AND SCHEDULING GUARDRAILS

Avrumi (Josh) Lubin (the "Movant"), a Defendant appearing pro se in his individual capacity only, respectfully submits this Emergency Motion seeking three discrete, severable forms of procedural relief: (I) entry of a Preservation Order, (II) entry of a Protective Order, and (III) limited scheduling relief or, in the alternative, an expedited status conference.
This Motion is structured so the Court may grant the Preservation Order and Protective Order promptly on the papers, and address the scheduling request separately (including at a short status conference) if the Court prefers.

### BACKGROUND AND CURRENT POSTURE

Trial in this adversary proceeding is currently scheduled to commence on January 29, 2026 and continue through February 6, 2026. On December 30, 2025, during the hearing on former counsel's emergency motion to withdraw (Dkt. No. 343), the Court continued that motion to the January 14, 2026 motion calendar and stated on the record that, if withdrawal were granted, the

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM    INDEX NO. 650582/2022
NYSCEF DOC. NO. 1011    Case 23-01132-EPK   Doc 368   Filed 01/13/26   Page 2 of 4    RECEIVED NYSCEF: 01/19/2026

trial would not proceed on the then-scheduled dates and the Court would likely move the trial (while also making clear it would not grant a 90-day delay).

On January 5, 2026, the Court entered its Order granting the emergency motion to withdraw, canceling the continued January 14 hearing, and denying Movant's request to delay trial (Dkt. No. 360). Movant is therefore proceeding pro se in his individual capacity, and the entity defendant, Spin Capital LLC, cannot appear except through licensed counsel.

This Motion does not seek reconsideration of prior merits rulings and does not request merits-based relief. It seeks only targeted procedural guardrails needed to preserve potentially relevant records, protect confidential and third-party information, and ensure trial readiness is addressed in an orderly manner as the trial date approaches.

## I. EMERGENCY MOTION FOR ENTRY OF PRESERVATION ORDER

### A. Preservation Relief Is Procedural and Party-Directed

Parties to litigation have an ongoing duty to preserve documents and electronically stored information ("ESI") relevant to the claims and defenses in the proceeding. The Court has authority to enter a preservation order under, among other provisions, Fed. R. Bankr. P. 7016 and 7026 (incorporating Fed. R. Civ. P. 16 and 26) and the Court's inherent authority to manage litigation and prevent spoliation.
Given the proximity of trial and the posture of this case, a short, party-directed order confirming and standardizing preservation steps is appropriate and narrowly tailored.
Movant seeks entry of a Preservation Order confirming preservation duties, requiring reasonable suspension of auto-delete or purge practices for relevant custodians and systems, prohibiting alteration or destruction of potentially relevant information, and requiring short-form preservation certifications.

### B. Relief Requested

Movant respectfully requests entry of the proposed Preservation Order submitted concurrently herewith, which:
- Confirms preservation obligations applicable to the parties and those acting under their control;
- Requires reasonable suspension of auto-delete, purge, or retention-cycling policies for relevant custodians and systems;
- Prohibits alteration or destruction of potentially relevant information; and
- Requires short-form preservation certifications within seventy-two (72) hours.
This relief is procedural in nature and does not adjudicate any merits issue.

## II. EMERGENCY MOTION FOR ENTRY OF PROTECTIVE ORDER

### A. Protective Relief Is Narrow and Facilitates Orderly Trial Preparation

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM

NYSCEF DOC. NO. 1011

INDEX NO. 650582/2022

RECEIVED NYSCEF: 01/19/2026

Fed. R. Bankr. P. 7026 (incorporating Fed. R. Civ. P. 26(c)) authorizes protective orders for good cause. Fed. R. Evid. 502(d) permits entry of a non-waiver order regarding inadvertent disclosure of privileged material, and the Court may protect confidential information from public filing under, among other provisions, Fed. R. Bankr. P. 9018.

As trial approaches, discovery materials and filings may include confidential business information, sensitive personal information, and/or material subject to privilege. A narrowly tailored protective order is a routine procedural mechanism to avoid unnecessary public disclosure, reduce motion practice, and permit the parties to exchange and use materials for litigation purposes without waiving rights.

Movant seeks a narrowly tailored Protective Order addressing (i) confidentiality designations for discovery materials; (ii) privilege protection and inadvertent production (clawback) without waiver; and (iii) protection against public filing of third-party personal contact information (including non-party email addresses and phone numbers) absent a specific order permitting unredacted filing.

## B. Relief Requested

Movant respectfully requests entry of the proposed Protective Order submitted concurrently herewith, which:

- Establishes a standard confidentiality framework for discovery materials;
- Provides for clawback of inadvertently produced privileged material without waiver; and
- Requires redaction of third-party personal contact information from public docket filings, absent a specific order permitting unredacted filing.

This relief is procedural and intended solely to facilitate orderly trial preparation.

## III. LIMITED CONTINUANCE OR, IN THE ALTERNATIVE, EXPEDITED STATUS CONFERENCE AND SCHEDULING GUARDRAILS

### A. Scheduling Relief Is Requested in the Alternative Only

Movant recognizes the Court's January 5, 2026 ruling and does not seek reconsideration. This request is made solely in light of the imminent trial date, Movant's pro se posture, and the unresolved entity-counsel issue for Spin Capital LLC.

Under Fed. R. Bankr. P. 7016 (incorporating Fed. R. Civ. P. 16), the Court may hold conferences and enter scheduling directives to ensure that trial proceeds in an orderly manner.

Movant respectfully requests either (i) a brief, limited continuance as the Court deems appropriate, or (ii) an expedited status conference to clarify trial readiness, scheduling guardrails, and the procedural posture applicable if Spin Capital LLC does not appear through counsel.

### B. Relief Requested

If the Court elects to reach scheduling issues, Movant respectfully requests entry of the proposed Scheduling Order submitted concurrently herewith, or such other relief as the Court deems appropriate, including setting a prompt status conference and clarifying deadlines and requirements for appearance of counsel for Spin Capital LLC.

FILED: NEW YORK COUNTY CLERK 01/19/2026 05:06 PM   INDEX NO. 650582/2022
NYSCEF DOC. NO. 1011   Case 23-01132-EPK   Doc 368   Filed 01/13/26   Page 4 of 4   RECEIVED NYSCEF: 01/19/2026

## CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court:
1. Enter the proposed Preservation Order;
2. Enter the proposed Protective Order; and
3. Address scheduling relief separately, including by setting an expedited status conference, if the Court prefers.

Movant respectfully requests that the Court grant the Preservation and Protective relief immediately and treat the scheduling request as severable.

DATED: January 12, 2026

Respectfully submitted,

_____

Avrumi (Josh) Lubin
Defendant, Pro Se (Individual Capacity Only)
1460 Arboretum Pkwy
Lakewood, NJ 08701
Email: josh@spincapital.com
Phone: (732) 608-4905

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on all counsel of record and parties entitled to notice via the Court's CM/ECF system (and/or by such other means as required) on ___01/12___, 2026.

_____

Avrumi (Josh) Lubin