UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

FILED-USBC FLS-FTL
'26 JUN 4 AM 10:54

In re:
EXCELL AUTO GROUP, INC.,
 Debtor.

Case No. 22-12790-EPK
Chapter 7

_____/

NICOLE TESTA MEHDIPOUR, as Chapter 7 Trustee for
Excell Auto Group, Inc.,
 Plaintiff,
v.

Adv. Pro. No. 23-01132-EPK

HI BAR CAPITAL, LLC, SPIN CAPITAL LLC,
YISROEL HERBST, MORDECHAI DOV BER HERBST
a/k/a MORDI HERBST, AVRUMI LUBIN a/k/a JOSH
LUBIN, FRANKLIN CAPITAL FUNDING, LLC and
FRANKLIN CAPITAL GROUP, LLC d/b/a WING LAKE
CAPITAL,
 Defendants.

_____/

## DEFENDANT AVRUMI LUBIN A/K/A JOSH LUBIN'S INDIVIDUAL PROPOSED

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. Defendant Avrumi Lubin a/k/a Josh Lubin ("Lubin"), individually and pro se, submits these proposed findings of fact and conclusions of law in response to Plaintiff Nicole Testa Mehdipour, as Chapter 7 Trustee for Excell Auto Group, Inc. (the "Trustee").

2. This filing is made by Lubin individually only. It is not filed on behalf of Spin Capital LLC, Hi Bar Capital LLC, Franklin Capital Funding, LLC, Franklin Capital Group, LLC, or any other entity.

3. The Court required proposed findings of fact and conclusions of law in individually numbered paragraphs, with each statement of fact supported by admitted trial evidence or official trial transcript page and line citations, and later extended the deadline for Lubin, Spin Capital LLC, and the Hi Bar Defendants to 5:00 p.m. on June 4, 2026. ECF Nos. 461, 485.

4. Lubin respectfully requests judgment in his favor individually on all claims asserted against him, and respectfully requests that no RICO judgment, money judgment, declaratory judgment, avoidance judgment, preference judgment, or recovery judgment be entered against him personally.

## PROPOSED FINDINGS OF FACT

**A. Trial record, remaining claims, and issues presented**

5. Trial was held on January 29, 2026, January 30, 2026, February 2, 2026, February 3, 2026, February 4, 2026, and February 6, 2026. ECF No. 461 at 1.

6. The Trustee filed a post-trial brief stating that she is no longer seeking relief on Counts 1, 2, 3, 4, and 17, and is dropping claims under Florida Statutes Section 726.105(1)(b) in Counts 13, 18, and 22. Plaintiff Post-Trial Brief, ECF No. 477 at 1.

7. The Trustee does not present Count 9 as a separate basis for affirmative relief against Lubin individually in her post-trial brief. Plaintiff Post-Trial Brief, ECF No. 477 at 1, 32-58.

8. The Trustee presents the RICO claims against Lubin individually in Counts 5, 6, 7, and 8. Plaintiff Post-Trial Brief, ECF No. 477 at 32-58.

9. The Trustee presents Counts 10 through 15 as fraudulent-transfer claims against Spin Capital LLC, not as claims against Lubin individually. Plaintiff Post-Trial Brief, ECF No. 477 at 59-75.

10. The Trustee presents Counts 18 through 25 as fraudulent-transfer and recovery claims against Hi Bar Capital LLC, not as claims against Lubin individually. Plaintiff Post-Trial Brief, ECF No. 477 at 75-91.

11. The Trustee presents Count 26 as a preference theory concerning Hi Bar transfers, not as a transfer claim against Lubin individually. Plaintiff Post-Trial Brief, ECF No. 477 at 91-93.

12. Plaintiff's Exhibit Register identifies the key exhibits relevant to Lubin individually, including the Third Spin Contract, Wing Lake assignment documents, Hi Bar balance-transfer documents, wire records, First Hi Bar Contract, settlement documents, transfer schedules, New York litigation documents, and Franklin settlement statement. Plaintiff Exhibit Register at 4, 6-8, 13, 20-22.

13. The Court previously emphasized in this adversary proceeding that briefing should be focused, should not incorporate by reference, and should follow the order of presentation to facilitate the Court's review. Mar. 13, 2024 Oral Ruling Tr. 5:17-8:24; ECF No. 461 at 2-3.

**B. Third Spin Contract and risk allocation**

14. Plaintiff's Exhibit 21 is the Third Spin Contract dated August 31, 2021. PX 21 at 1; Plaintiff Exhibit Register at 4.

15. The Third Spin Contract identifies Spin Capital as purchaser/buyer and identifies Excell Auto Group, Inc. and other listed entities as merchants/sellers. PX 21 at 1 and Ex. A.

16. The Third Spin Contract lists Kristen Zankl and Scott Thomas Zankl as guarantors. It does not list Lubin as a merchant, seller, borrower, or guarantor. PX 21 at 1.

17. The Third Spin Contract states a purchase price of $2,000,000, a purchased percentage of 20%, a purchased amount of $2,998,000, and weekly remittance of $150,000. PX 21 at 1.

18. The Third Spin Contract states that the merchant is selling a portion of a future revenue stream to Spin at a discount, and is not borrowing money from Spin. PX 21 at 1.

19. The Third Spin Contract states that there is no interest rate and no time period during which the purchased amount must be collected. PX 21 at 1.

20. The Third Spin Contract states that the remittance is a good-faith estimate of Spin's share of the merchant's future revenue stream. PX 21 at 1.

21. The Third Spin Contract contains reconciliation and remittance-adjustment provisions. PX 21 Sections 1.3-1.4.

22. The Third Spin Contract states that the merchant going bankrupt, going out of business, experiencing a slowdown, or experiencing a delay in collecting receivables does not, in and of itself, constitute a breach of the agreement. PX 21 at 1.

23. The Third Spin Contract states that Spin entered the agreement knowing the risks that the merchant's business may not perform as expected or may fail, and that Spin assumes those risks. PX 21 at 1.

24. The Third Spin Contract states that Spin acknowledges it may never receive the purchased amount if the merchant does not generate sufficient revenue. PX 21 at 1.

25. The Third Spin Contract states that the guarantors guarantee performance and do not guarantee payment of the purchased amount. PX 21 at 1.

26. The Third Spin Contract addendum/balance transfer references the August 31, 2021 transaction and states that earlier Spin balances of $281,062.50 and $469,500.00 would be paid from funds received from the new August 31, 2021 merchant agreement. PX 21 Balance Transfer Agreement / Addendum.

## C. Franklin / Wing Lake assignment and the Third Spin Contract

27. Plaintiff's Exhibit 33 is the signed Wing Lake/Franklin assignment with DocuSign certificate. PX 33; Plaintiff Exhibit Register at 6.

28. The Franklin/Wing Lake assignment was executed by Spin Capital LLC as assignor and Franklin Capital Group, LLC as assignee. PX 33 at 1.

29. Lubin signed the Franklin/Wing Lake assignment in a representative capacity for Spin Capital LLC, with the signature block identifying him as President. PX 33 at 3.

30. The recitals to the Franklin/Wing Lake assignment identify two specific Spin merchant agreements: the Revenue Purchase Agreement dated June 1, 2021 and the Revenue Purchase Agreement dated July 9, 2021. PX 33 at 1.

31. The Franklin/Wing Lake assignment defines the June 1, 2021 and July 9, 2021 agreements, and related specified documents, as the assigned merchant documents. PX 33 at 1.

32. The Franklin/Wing Lake assignment does not specifically identify the August 31, 2021 Third Spin Contract by date in the paragraph defining the assigned merchant documents. PX 33 at 1.

33. The evidence-of-assignment document likewise references the June 1, 2021 and July 9, 2021 Spin revenue purchase agreements and does not specifically identify the August 31, 2021 Third Spin Contract by date. PX 33 at 5.

34. The Franklin/Wing Lake assignment states that the purchase price for the assignment was $1.00 and that the total amount of outstanding obligations as of October 21, 2021 was $1.00. PX 33 at 1.

35. The Franklin/Wing Lake assignment provides that it becomes effective upon receipt by Spin of the purchase price. PX 33 at 1-2.

36. The DocuSign certificate for Plaintiff's Exhibit 33 states that Lubin viewed the assignment on October 26, 2021 at 12:27 p.m. Pacific time. PX 33 DocuSign Certificate; Feb. 3 Trial Tr. 796:22-797:4.

37. Lubin testified that the $1.00 outstanding-obligation language referred to the enumerated obligations specifically listed in the assignment. Feb. 3 Trial Tr. 797:9-798:4.

38. Lubin testified that he did not provide the Third Spin Contract directly to Franklin and did not provide any Spin contracts to Franklin. Feb. 3 Trial Tr. 796:7-13.

39. Lubin testified that before signing the Franklin/Wing Lake assignment he communicated with Scott Zankl, not directly with Franklin or Wing Lake personnel. Feb. 3 Trial Tr. 778:9-16; 795:8-17; 796:14-18.

40. The DocuSign certificate for Plaintiff's Exhibit 33 states that Lubin signed the assignment on November 1, 2021 at 1:13 p.m. Pacific time. PX 33 DocuSign Certificate; Feb. 3 Trial Tr. 812:15-18.

41. Lubin testified that 1:13 p.m. Pacific time was 4:13 p.m. Eastern time. Feb. 3 Trial Tr. 812:15-18.

42. The Court previously ruled at summary judgment that, looking only at the four corners of the Wing Lake assignment document and related evidence-of-assignment document, the Court was unable to conclude whether the Third Spin Contract was assigned to Wing Lake, and that parol evidence was required. June 11, 2025 Oral Ruling Tr. 7:1-20.

43. The Court also ruled that the limited parol evidence then presented was not sufficient to permit a ruling for either side on whether the Third Spin Contract was assigned to Wing Lake. June 11, 2025 Oral Ruling Tr. 7:14-20.

**D. Hi Bar transfer documents, First Hi Bar Contract, and settlement chain**

44. Plaintiff's Exhibit 34 is the Hi Bar Capital balance-transfer agreement dated October 27, 2021. PX 34; Plaintiff Exhibit Register at 6; Feb. 4 Trial Tr. 1051:16-24.

45. The Hi Bar balance-transfer agreement states that the balance being transferred from Spin to Hi Bar was $2,114,312.50. PX 34; Feb. 4 Trial Tr. 1051:21-24.

46. Plaintiff's Exhibit 41 and/or Plaintiff's Exhibit 129 includes the First Hi Bar Contract, prepayment discount addendum, Hi Bar transfer agreement, and DocuSign certificate. PX 41; PX 129; Plaintiff Exhibit Register at 7, 13.

47. The First Hi Bar Contract states a purchase price of $2,120,000 and a purchased amount of $3,177,880. PX 41/PX 129 at 1; Feb. 4 Trial Tr. 1051:1-6.

48. The First Hi Bar Contract states that the merchant is selling a portion of a future revenue stream to Hi Bar at a discount and is not borrowing money from Hi Bar. PX 41/PX 129 at 1.

49. The First Hi Bar Contract states that there is no interest rate and no time period during which the purchased amount must be collected. PX 41/PX 129 at 1.

50. The First Hi Bar Contract contains reconciliation and remittance-adjustment provisions. PX 41/PX 129 Sections 1.3-1.4.

51. The First Hi Bar Contract states that the merchant going bankrupt, going out of business, experiencing a slowdown, or experiencing a delay in collecting receivables does not, in and of itself, constitute a breach. PX 41/PX 129 at 1.

52. The First Hi Bar Contract states that Hi Bar payment of the purchase price shall be deemed acceptance and performance by Hi Bar. PX 41/PX 129 at 1; Jan. 30 Trial Tr. 266:23-267:11.

53. At trial, Scott Zankl confirmed that the First Hi Bar Contract was dated October 27, 2021. Jan. 30 Trial Tr. 265:1-10.

54. Scott Zankl testified that Kristen Zankl did not personally sign the DocuSign document and that he signed for her. Jan. 30 Trial Tr. 265:11-20.

55. Scott Zankl testified that he signed for Kristen Zankl on October 28, 2021, but did not sign for himself until November 1, 2021 at 11:39. Jan. 30 Trial Tr. 266:6-12.

56. Scott Zankl testified that his understanding was that Hi Bar accepted the First Hi Bar Contract through funding of the agreement. Jan. 30 Trial Tr. 267:8-11.

57. The trial record reflects that no money from Hi Bar actually went into an Excell Auto Group bank account, a Karma entity account, or any other merchant account on account of the First Hi Bar Contract. Feb. 4 Trial Tr. 1051:7-12.

58.     Plaintiff's Exhibit 45 is the First Settlement Agreement dated December 19, 2021.

PX 45; Plaintiff Exhibit Register at 7.

59.     Plaintiff's Exhibit 46 is the Second Settlement Agreement dated February 1, 2022.

PX 46; Plaintiff Exhibit Register at 7.

**E. November 1, 2021 wire sequence**

60.     Plaintiff's Exhibit 37 is the TD Bank Payment Archive and Research Center Query

Results Report concerning wire transfers between Spin and Hi Bar on November 1, 2021.

PX 37; Plaintiff Exhibit Register at 6.

61.     The wire records and trial testimony show that Spin wired $2,114,312.50 to Hi Bar

on November 1, 2021 at approximately 3:22 p.m. Eastern time. PX 37; Feb. 3 Trial Tr.

811:16-812:12.

62.     The wire records and trial testimony show that Hi Bar wired the same $2,114,312.50

back to Spin on November 1, 2021 at approximately 4:06 p.m. Eastern time. PX 37; Feb. 3

Trial Tr. 812:20-813:9.

63.     The Hi Bar wire back to Spin at approximately 4:06 p.m. Eastern time occurred

before Lubin signed the Franklin/Wing Lake assignment at approximately 4:13 p.m.

Eastern time. PX 33; PX 37; Feb. 3 Trial Tr. 812:15-813:9.

64.     The November 1 wire records identify entity-to-entity wires between Spin and Hi

Bar and do not identify Lubin individually as recipient of either wire. PX 37.

65.     Lubin testified that, although he was a broker/participant in the Hi Bar transaction,

the money was wired to Hi Bar. Feb. 3 Trial Tr. 814:24-815:7.

66.     Lubin testified that he heard on or about November 4, 2021 that Wing Lake had

funded, but he had not seen the Franklin/Wing Lake loan documents at that time. Feb. 3

Trial Tr. 814:3-815:7.

## F. Evidence concerning broker activity and participation

67. Lubin testified that he collected on behalf of companies to which he brokered deals, and that he tried to help deals perform because funders liked that he stayed on top of brokered transactions. Feb. 3 Trial Tr. 815:8-19.

68. Lubin testified that he had a financial incentive for the Hi Bar deal to perform, including commissions and participation. Feb. 3 Trial Tr. 815:20-24.

69. Lubin also testified that he did not have an agreement authorizing him to collect for Hi Bar and that he was acting as a broker seeking to help the deal perform. Feb. 3 Trial Tr. 815:13-19; 815:25-816:5.

70. During trial, testimony and Plaintiff's Exhibit 133 addressed a January 10, 2022 letter that referred to Hi Bar Capital as a 30% participant and Spin Capital as a 70% participant in the first Hi Bar matter. Feb. 4 Trial Tr. 1047:14-25; 1048:1-25; 1050:13-25; 1051:1-6.

71. The same testimony reflects that the listed 70% was attributed to Spin Capital and potentially persons or entities to whom Spin had obligations, not to Lubin individually. Feb. 4 Trial Tr. 1048:9-25; 1049:1-5; 1052:6-23.

72. The same testimony does not identify Lubin individually as the owner of Hi Bar, as a contracting party to the First Hi Bar Contract, or as the recipient of the $2,114,312.50 wire. Feb. 4 Trial Tr. 1047:14-1052:23; PX 37.

## G. New York Hi Bar rulings and judgment

73. In the New York action, Hi Bar sued Excell Auto Group, Inc., Karma of Palm Beach, Inc., and other defendants, and Excell filed a third-party complaint against Spin Capital LLC. Hi Bar Capital, LLC v. Excell Auto Group, Inc., Index No. 502846/2022, January 12, 2023 Decision (NYSCEF Doc. 149, filed Jan. 13, 2023) at 3-4.

74.     The January 12, 2023 New York decision states that, because of Excell's pending bankruptcy proceeding, Spin's motion to dismiss Excell's third-party complaint had to be stayed. January 12, 2023 Decision (NYSCEF Doc. 149, filed Jan. 13, 2023) at 4.

75.     The January 12, 2023 New York decision describes the Hi Bar Purchase Agreement as an October 27, 2021 agreement under which Hi Bar agreed to purchase $3,177,880 of future receivables for an upfront purchase price of $2,120,000. January 12, 2023 Decision (NYSCEF Doc. 149, filed Jan. 13, 2023) at 2.

76.     The January 12, 2023 New York decision describes the December 19, 2021 Settlement Agreement as resolving default under the Purchase Agreement and setting a settlement amount of $4,016,820. January 12, 2023 Decision (NYSCEF Doc. 149, filed Jan. 13, 2023) at 2.

77.     The January 12, 2023 New York decision describes the February 1, 2022 Stipulation of Settlement as resolving default under the Settlement Agreement. January 12, 2023 Decision (NYSCEF Doc. 149, filed Jan. 13, 2023) at 2-3.

78.     The January 12, 2023 decision is cited here only for procedural background. It denied Hi Bar summary judgment on the usury defense and only dismissed the criminal-usury counterclaim; the favorable New York merits ruling came on reargument. January 12, 2023 Decision (NYSCEF Doc. 149, filed Jan. 13, 2023) at 4; May 12, 2023 Reargument Decision (NYSCEF Doc. 177) at 3-4.

79.     On reargument, the New York court held that the Hi Bar Purchase Agreement was enforceable and not void as civil or criminal usury because the repayment terms, rather than being absolute, were contingent. May 12, 2023 Reargument Decision (NYSCEF Doc. 177) at 3.

80.     On reargument, the New York court further held that even if the Purchase Agreement, Settlement Agreement, and Stipulation were viewed as loans, New York usury

law did not apply because those agreements concerned amounts greater than $2.5 million. May 12, 2023 Reargument Decision (NYSCEF Doc. 177) at 3-4.

81.    The New York court held that the defendants' criminal-usury defense failed as a matter of law and granted summary judgment to Hi Bar on reargument. May 12, 2023 Reargument Decision (NYSCEF Doc. 177) at 4.

82.    The New York judgment entered judgment in favor of Hi Bar against the remaining non-debtor defendants in the total amount of $3,136,071.44, consisting of $2,500,000 unpaid settlement amount, $635,616.44 in interest at 16%, and $455 in costs and disbursements. September 14, 2023 Judgment (NYSCEF Doc. 216) at 4-5.

83.    The New York judgment reflects that the action had been discontinued without prejudice against Excell Auto Group, Inc. because Excell filed for bankruptcy relief, and the judgment was entered against the non-debtor Remaining Defendants; Lubin was not listed as a defendant in that New York action. September 14, 2023 Judgment (NYSCEF Doc. 216) at 1-5.

**H. Trial evidence concerning RICO injury and damages**

84.    At closing, the Trustee's counsel described the civil RICO damages model as a net-winner/net-loser or net-benefit analysis - how much more the debtor paid than it received. Feb. 6 Trial Tr. 1162:18-1163:7.

85.    The Court questioned whether the Trustee would have claims against certain defendants where the debtor appeared to have received more than it paid out to those parties. Feb. 6 Trial Tr. 1163:11-15.

86.    The Court observed, based on the trial evidence and testimony, that vis-a-vis Spin the estate appeared to have received more from Spin than it paid back to Spin. Feb. 6 Trial Tr. 1165:3-7.

87. The Court also stated that it had previously ruled New York law applies and that there is no affirmative right to relief for usury under New York law, and therefore there would be no state-law damages, without foreclosing federal RICO damages if otherwise proven. Feb. 6 Trial Tr. 1166:4-1167:17.

88. The Trustee's stated path to damages against Lubin and Spin depended on aggregating all funds received and paid across the entire alleged enterprise and imposing joint and several liability against all defendants. Feb. 6 Trial Tr. 1163:16-1165:25; 1291:13-18.

89. Spin's counsel argued that Spin did not even recoup the amount extended and that, even if there were a RICO finding, there would be no positive balance for a damages finding against Spin. Feb. 6 Trial Tr. 1290:12-18.

90. The Court stated that the Trustee's aggregate joint-and-several damages theory appeared to blur the line between the person and the enterprise, and that the Court was not then aware what case law would support that approach. Feb. 6 Trial Tr. 1291:13-1292:20.

**I. Prior bankruptcy-court rulings relevant to trial issues**

91. At the pleading stage, the Court declined to apply res judicata or collateral estoppel against the Trustee based on the New York judgment because the New York action was stayed as to Excell and the New York judgment did not rule on any claim held by Excell against anyone, including Spin. Mar. 13, 2024 Oral Ruling Tr. 9:23-11:21.

92. At the February 12, 2025 hearing, the Court ruled that the Hi Bar contractual choice-of-law provision was binding and that New York law applied to Hi Bar. Feb. 12, 2025 Oral Ruling Tr. 49:1-9, 50:1-17.

93. At the June 11, 2025 summary-judgment ruling, the Court concluded, based on undisputed evidence offered by Spin, that New York law applies to Spin as well because

Spin was authorized to do business in New York, its only office and place of business was in Brooklyn, New York, and it conducted its business with the debtor through its sole member who then resided in New York. June 11, 2025 Oral Ruling Tr. 10:6-14, 10:24-11:4.

94. At the June 11, 2025 summary-judgment ruling, the Court stated that Plaintiff must look to New York law to address all usury concerns, including remedies. June 11, 2025 Oral Ruling Tr. 14:11-20.

95. At the June 11, 2025 summary-judgment ruling, the Court stated that Count 29 could not be successful with regard to anyone and invited summary judgment for Spin on Count 29 based on the Court's choice-of-law ruling. June 11, 2025 Oral Ruling Tr. 31:21-32:24.

96. At the May 28, 2025 summary-judgment ruling, the Court ruled that the Court must examine the substance of the transaction, risk allocation, and whether the merchant remained liable despite a downturn or failure of its enterprise. May 28, 2025 Oral Ruling Tr. 10:24-11:24.

97. At the May 28, 2025 summary-judgment ruling, the Court identified Plaintiff's argument that the agreements were immediately in default and that reconciliation or adjustment provisions might be illusory, but the Court did so on a summary-judgment record and denied summary judgment rather than entering judgment for Plaintiff. May 28, 2025 Oral Ruling Tr. 12:1-24; 13:7-20.

98. At the May 28, 2025 summary-judgment ruling, the Court recognized that passing the Principis factors is not automatically dispositive and that the agreements and relevant circumstances must be scrutinized more closely. May 28, 2025 Oral Ruling Tr. 12:19-13:20.

**J. Findings specific to Lubin individually**

99. Lubin was not the merchant, seller, borrower, or guarantor under the Third Spin Contract. PX 21 at 1.

Page 13

100.   Lubin signed the Franklin/Wing Lake assignment in representative capacity for Spin, not individually. PX 33 at 3.

101.   The relevant November 1, 2021 wire records show wires between Spin and Hi Bar, not wires to Lubin personally. PX 37.

102.   The Trustee did not prove that Lubin individually received the purchase price under the Third Spin Contract. PX 21; PX 37; Feb. 3 Trial Tr. 812:2-813:9.

103.   The Trustee did not prove that Lubin individually received the $2,114,312.50 transferred between Spin and Hi Bar on November 1, 2021. PX 37; Feb. 3 Trial Tr. 812:2-813:9.

104.   The Trustee did not prove that Lubin personally was the initial transferee, subsequent transferee, or beneficiary of any transfer sought to be avoided in Counts 10 through 15, 18 through 25, or 26. PX 37; Plaintiff Post-Trial Brief, ECF No. 477 at 59-93.

105.   The Trustee did not prove that Lubin individually was a party to the First Hi Bar Contract, the Hi Bar transfer agreement, or the Hi Bar settlement documents. PX 34; PX 41/PX 129; PX 45; PX 46.

106.   The Trustee did not prove that Lubin individually owned or controlled Hi Bar Capital LLC. PX 34; PX 41/PX 129; Feb. 4 Trial Tr. 1047:14-1052:23.

## PROPOSED CONCLUSIONS OF LAW

### A. Governing standards

107.   After a bench trial, the Court makes findings of fact and conclusions of law under Federal Rule of Civil Procedure 52, made applicable by Federal Rule of Bankruptcy Procedure 7052. Fed. R. Civ. P. 52(a); Fed. R. Bankr. P. 7052.

108.   The Trustee bears the burden to prove each remaining claim by a preponderance of the evidence unless a more specific statute or rule provides otherwise. Grogan v. Garner, 498 U.S. 279, 286 (1991).

109. Civil RICO requires proof of injury to business or property by reason of a RICO violation, and also requires proximate causation. 18 U.S.C. Section 1964(c); Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985); Holmes v. Securities Investor Prot. Corp., 503 U.S. 258, 268 (1992); Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 457 (2006).

110. RICO defines an unlawful debt as a debt unenforceable in whole or in part because of usury law and incurred in connection with the business of lending money or a thing of value at a usurious rate at least twice the enforceable rate. 18 U.S.C. Section 1961(6).

111. Under Section 1962(c), a defendant must participate, directly or indirectly, in the conduct of an enterprise's affairs. The Supreme Court construes that phrase to require operation or management of the enterprise itself. 18 U.S.C. Section 1962(c); Reves v. Ernst & Young, 507 U.S. 170, 179 (1993).

112. A RICO association-in-fact enterprise requires at least a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit the associates to pursue the enterprise's purpose. Boyle v. United States, 556 U.S. 938, 946 (2009).

113. A RICO conspiracy claim under Section 1962(d) requires proof of agreement to participate in a RICO violation. 18 U.S.C. Section 1962(d); Salinas v. United States, 522 U.S. 52, 65 (1997). Civil RICO conspiracy liability also requires injury caused by an act independently wrongful under RICO. Beck v. Prupis, 529 U.S. 494, 505-07 (2000).

**B. Plaintiff's abandoned and non-pursued counts**

114. Judgment should not be entered against Lubin on Counts 1, 2, 3, 4, and 17 because Plaintiff's post-trial brief states that Plaintiff is no longer seeking relief on those counts. Plaintiff Post-Trial Brief, ECF No. 477 at 1; Fed. R. Civ. P. 52; Fed. R. Bankr. P. 7052.

115. Judgment should not be entered against Lubin on any Florida Statutes Section 726.105(1)(b) theory in Counts 13, 18, or 22 because Plaintiff's post-trial brief states that

Plaintiff is dropping those theories. Plaintiff Post-Trial Brief, ECF No. 477 at 1; Fed. R. Civ. P. 52; Fed. R. Bankr. P. 7052.

116.    Count 9 should not supply a separate judgment against Lubin because Plaintiff does not present Count 9 as a separate basis for affirmative relief against him in the operative post-trial presentation. Plaintiff Post-Trial Brief, ECF No. 477 at 1, 32-58.

117.    Count 29 also should not supply any judgment against Lubin individually. The Court ruled after its summary-judgment analysis that Count 29 could not be successful with regard to anyone, and Count 29 is not pursued in Plaintiff's post-trial brief. June 11, 2025 Oral Ruling Tr. 31:21-32:24; Plaintiff Post-Trial Brief, ECF No. 477.

**C. Jurisdiction and venue**

118.    Lubin does not contest that this Court has subject-matter jurisdiction over this adversary proceeding under 28 U.S.C. Sections 1334 and 157, subject to all defenses to liability, remedies, causation, and proof as to Lubin individually.

119.    Jurisdiction and venue do not establish liability. The Trustee must still prove every element of each claim against Lubin individually. Grogan, 498 U.S. at 286; Fed. R. Civ. P. 52; Fed. R. Bankr. P. 7052.

**D. Threshold loan/recharacterization and unlawful-debt issues**

120.    The Trustee's RICO theory depends on proving that the relevant Spin and Hi Bar transactions were loans and that the resulting obligations were unlawful debts under 18 U.S.C. Section 1961(6).

121.    The Court has already concluded that New York law applies to Spin and that Plaintiff must look to New York law for usury issues and remedies. June 11, 2025 Oral Ruling Tr. 10:6-14, 10:24-11:4, 14:11-20.

122.    The Court should find after trial that the Trustee did not prove that the Third Spin Contract was a loan rather than a sale of future receipts. The contract states it is not a

loan, has no interest rate, has no fixed time for collection, contains reconciliation and adjustment provisions, states that bankruptcy or business failure is not itself a breach, states that Spin assumes the risk of non-performance, and states that Spin may never collect the purchased amount. PX 21 at 1, Sections 1.3-1.4; 18 U.S.C. Section 1961(6).

123.    The Court should likewise find that the Trustee did not prove that the First Hi Bar Contract was a loan rather than a sale of future receipts. That contract includes materially similar risk-allocation language, no-interest language, no fixed collection-period language, no automatic bankruptcy default, reconciliation and adjustment language, and express language that payment of the purchase price constitutes Hi Bar's acceptance and performance. PX 41/PX 129 at 1, Sections 1.3-1.4; 18 U.S.C. Section 1961(6).

124.    A recent New York Appellate Division decision involving Spin Capital confirms the same New York-law result. In Spin Capital, LLC v. Bridgelink Engineering, LLC, the Second Department affirmed summary judgment for Spin and dismissal of RICO counterclaims where the defendants argued that a Spin future-receivables agreement was a criminally usurious loan. The court held that the agreement was a purchase of future receivables and not a criminally usurious loan because it contained a clause adjusting remittances based on receipts, had an indefinite term, and did not provide that bankruptcy was an event of default. Spin Capital, LLC v. Bridgelink Engg., LLC, 2026 N.Y. Slip Op. 02296, *2-*3 (App. Div. 2d Dep't Apr. 15, 2026) (Nos. 2024-04928, 2024-06248).

125.    The Bridgelink lower court reached the same result under the LG Funding / Principis analysis, holding that the documentary evidence established the transaction was not a loan and dismissing usury/RICO counterclaims before entering judgment for Spin. Spin Capital, LLC v. Bridgelink Engineering, LLC, Index No. 614675/2022, Decision & Order at 3-6 (Sup. Ct. Nassau Cnty. Jan. 23, 2024), aff'd, 2026 N.Y. Slip Op. 02296 (App. Div. 2d Dep't Apr. 15, 2026).

Page 17

126.    Bridgelink is persuasive here because Plaintiff's Exhibit 21 contains the same core New York-law features the Second Department treated as defeating criminal usury: sale of future receipts, reconciliation and adjustment provisions, no fixed collection period, and no automatic bankruptcy default. PX 21 at 1, Sections 1.3-1.4; Bridgelink, 2026 N.Y. Slip Op. 02296, *2-*3.

127.    The Trustee's "immediate default" and "illusory reconciliation" theory does not carry her trial burden. The Court previously identified that theory as sufficient to defeat defendants' summary judgment motion, but the Court did not enter judgment for Plaintiff. After trial, the written agreements and the trial record still do not prove that Lubin individually incurred or collected any debt that was unenforceable because of usury law. May 28, 2025 Oral Ruling Tr. 12:1-24, 13:7-20; 18 U.S.C. Section 1961(6).

128.    Even if the Court treats any agreement as a loan, the Trustee still must prove the additional RICO requirement that the usurious rate was at least twice the enforceable rate. 18 U.S.C. Section 1961(6). The Trustee did not prove that requirement against Lubin individually.

129.    Under New York law, loans or forbearances of $2.5 million or more are excluded from the criminal-usury defense. N.Y. Gen. Oblig. Law Section 5-501(6)(b); 72nd Ninth LLC v. 753 Ninth Ave Realty LLC, 168 A.D.3d 597, 598 (1st Dep't 2019). The New York court applied that rule to the Hi Bar Purchase Agreement, Settlement Agreement, and Stipulation and held that criminal usury failed as a matter of law. May 12, 2023 Reargument Decision (NYSCEF Doc. 177) at 3-4.

130.    The New York ruling also held that the Hi Bar Purchase Agreement was enforceable and not void as a matter of civil or criminal usury because repayment was contingent. May 12, 2023 Reargument Decision (NYSCEF Doc. 177) at 3. That ruling strongly supports rejection of the unlawful-debt predicate based on the Hi Bar instruments.

131. Matter of Jackson further supports the conclusion that later enforceable obligations matter under New York law. There, the Appellate Division held that if parties abandon a usurious obligation and execute a new obligation for the actual debt, free from usury and bearing only legal interest, the second obligation purges the first of usurious taint and is valid and enforceable. Matter of Jackson, 120 A.D.2d 309, 313-14, 508 N.Y.S.2d 671 (3d Dep't 1986) (citing Weaver Hardware Co. v. Solomovitz, 235 N.Y. 321 (1923)).

132. The Court need not give the New York judgment full preclusive effect against the Trustee to rely on the New York rulings as persuasive New York-law authority. Even if the automatic stay prevents strict claim or issue preclusion against the estate, the New York rulings remain persuasive on the enforceability and New York usury analysis of the Hi Bar instruments. Mar. 13, 2024 Oral Ruling Tr. 9:23-11:21; May 12, 2023 Reargument Decision (NYSCEF Doc. 177) at 3-4.

133. For all of these reasons, the Trustee did not prove the threshold unlawful-debt predicate required for judgment against Lubin individually under Counts 5, 6, 7, or 8. 18 U.S.C. Sections 1961(6), 1962(c), 1962(d), 1964(c).

**E. No RICO injury or proximate cause as to Lubin / Spin**

134. Civil RICO requires injury to business or property by reason of the alleged RICO violation, including proximate causation. 18 U.S.C. Section 1964(c); Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268 (1992); Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 457-61 (2006).

135. The Trustee's own closing explanation described the civil RICO damages model as a net-benefit analysis - how much more the debtor paid than it received. Feb. 6 Trial Tr. 1162:18-1163:7.

136. Under that model, the Trustee did not prove net RICO injury or proximate causation as to Lubin individually. The Court questioned whether Plaintiff would have claims against

certain defendants where the debtor appeared to have received more than it paid out, and observed that vis-a-vis Spin the estate appeared to have received more from Spin than it paid back to Spin. Feb. 6 Trial Tr. 1163:11-15; 1165:3-7.

137.    Nor did the Trustee prove state-law usury damages as a substitute route to injury. The Court stated that New York law applies, that New York law provides no affirmative right to relief for usury, and therefore there would be no state-law damages. Feb. 6 Trial Tr. 1166:4-1167:17.

138.    The Trustee's remaining damages theory depended on aggregating all funds across all defendants and imposing joint and several liability on that aggregate number. But the Court expressly questioned that theory, noting that it appeared to blur the line between the person and the enterprise and that the Court was not then aware what case law would support it. Feb. 6 Trial Tr. 1291:13-1292:20.

139.    Because the Trustee did not prove defendant-specific RICO injury or proximate cause as to Lubin, and did not prove a legally supported basis to aggregate entity-level transactions across all defendants against Lubin individually, the RICO claims against Lubin fail independently of the loan-vs-sale and unlawful-debt issues. 18 U.S.C. Section 1964(c); Holmes, 503 U.S. at 268; Anza, 547 U.S. at 457-61.

**F. Count 5 - RICO claim against Lubin through Spin as enterprise**

140.    Count 5 fails against Lubin individually because the Trustee did not prove that Lubin personally incurred, owned, or collected an unlawful debt. 18 U.S.C. Sections 1961(6), 1962(c), 1964(c). Count 5 also fails for lack of RICO injury and proximate cause for the reasons set forth above. 18 U.S.C. Section 1964(c); Holmes, 503 U.S. at 268.

141.    Count 5 also fails because the Third Spin Contract identifies Spin as the purchaser and the Zankls as guarantors, and does not identify Lubin individually as merchant, borrower, seller, guarantor, lender, or transferee. PX 21 at 1.

142.    Count 5 further fails because the Trustee did not prove that Lubin individually received the Third Spin purchase price, the purchased amount, or any of the November 1, 2021 Spin/Hi Bar wire proceeds. PX 21; PX 37; Feb. 3 Trial Tr. 812:2-813:9.

143.    Count 5 also fails under Reves because Plaintiff did not prove that Lubin individually operated or managed a RICO enterprise through unlawful-debt collection, as opposed to acting as Spin's representative and as a broker with a financial incentive in brokered transactions. Reves, 507 U.S. at 179; Feb. 3 Trial Tr. 815:8-816:5.

144.    The Court should enter judgment in favor of Lubin individually on Count 5. 18 U.S.C. Sections 1961(6), 1962(c), 1964(c); Reves, 507 U.S. at 179.

**G. Count 6 - RICO claim through alleged Spin / Hi Bar association-in-fact enterprise**

145.    Count 6 requires proof that Lubin individually conducted or participated in the conduct of an association-in-fact enterprise's affairs through collection of unlawful debt. 18 U.S.C. Sections 1961(4), 1961(6), 1962(c), 1964(c); Boyle, 556 U.S. at 946; Reves, 507 U.S. at 179. Count 6 also requires RICO injury and proximate cause, which the Trustee did not prove as to Lubin individually. 18 U.S.C. Section 1964(c); Anza, 547 U.S. at 457-61.

146.    Count 6 fails because the Trustee did not prove an unlawful debt. The Third Spin Contract and First Hi Bar Contract contain sale-of-future-receipts and risk-allocation language, and the New York Hi Bar ruling held the Hi Bar Purchase Agreement enforceable and outside criminal usury. PX 21; PX 41/PX 129; May 12, 2023 Reargument Decision (NYSCEF Doc. 177) at 3-4.

147.    Count 6 also fails because broker activity and economic interest in a deal are not the same thing as operating or managing a RICO enterprise. Lubin testified that he helped collect for brokered deals because he had an incentive to help deals perform, not that he

controlled Hi Bar or operated a separate unlawful enterprise. Feb. 3 Trial Tr. 815:8-816:5; Reves, 507 U.S. at 179.

148.    The testimony concerning a 30% Hi Bar / 70% Spin participation does not establish personal RICO liability against Lubin. At most, that testimony concerns entity-level economics between Hi Bar and Spin and possible persons or entities behind Spin; it does not identify Lubin individually as the obligor, owner of Hi Bar, transferee, or personal recipient of funds. Feb. 4 Trial Tr. 1047:14-1052:23; PX 37.

149.    If Plaintiff treats Spin and Hi Bar as a single collection chain, then the enforceable Hi Bar settlement chain and New York judgment defeat or materially narrow the alleged unlawful-debt predicate. If Plaintiff treats Spin and Hi Bar separately, Plaintiff still did not prove that Lubin individually is liable under RICO. 18 U.S.C. Sections 1961(4), 1961(6), 1962(c); Reves, 507 U.S. at 179.

150.    The Court should enter judgment in favor of Lubin individually on Count 6. 18 U.S.C. Sections 1961(4), 1961(6), 1962(c), 1964(c).

**H. Count 8 - RICO claim through Hi Bar as enterprise**

151.    Count 8 attempts to impose RICO liability against Lubin through Hi Bar as the enterprise. The Trustee must prove that Lubin individually conducted or participated in the conduct of Hi Bar's affairs through collection of an unlawful debt. 18 U.S.C. Sections 1961(4), 1961(6), 1962(c), 1964(c); Reves, 507 U.S. at 179. To the extent Count 8 depends on the same aggregation theory, it also fails for lack of RICO injury and proximate cause as to Lubin individually. 18 U.S.C. Section 1964(c).

152.    The Trustee did not prove that Lubin owned Hi Bar, controlled Hi Bar, managed Hi Bar, or had authority to operate Hi Bar's affairs. PX 34; PX 41/PX 129; Feb. 3 Trial Tr. 815:25-816:5.

153. The Trustee did not prove that Lubin individually was a party to the First Hi Bar Contract, the Hi Bar transfer agreement, the First Settlement Agreement, or the Second Settlement Agreement. PX 34; PX 41/PX 129; PX 45; PX 46.

154. The Trustee did not prove that Lubin individually received the Hi Bar purchase price or the November 1, 2021 Spin/Hi Bar wire proceeds. PX 37; Feb. 3 Trial Tr. 812:2-813:9.

155. The New York court held that the Hi Bar Purchase Agreement was enforceable and not void as civil or criminal usury, and that the Purchase Agreement, Settlement Agreement, and Stipulation concerned amounts greater than $2.5 million. May 12, 2023 Reargument Decision (NYSCEF Doc. 177) at 3-4. That holding defeats or materially undermines Count 8's unlawful-debt theory.

156. The Court should enter judgment in favor of Lubin individually on Count 8. 18 U.S.C. Sections 1961(4), 1961(6), 1962(c), 1964(c).

**I. Count 7 - RICO conspiracy**

157. Count 7 fails because the Trustee did not prove a substantive RICO violation against Lubin individually under Counts 5, 6, or 8. Beck, 529 U.S. at 505-07. It also fails because the Trustee did not prove RICO injury and proximate cause against Lubin individually.

158. Count 7 also fails because the Trustee did not prove that Lubin individually agreed to collect an unlawful debt or agreed to participate in a RICO enterprise. 18 U.S.C. Section 1962(d); Salinas, 522 U.S. at 65.

159. The documents show entity transactions and entity wires. They do not show an individual agreement by Lubin to violate RICO. PX 21; PX 33; PX 34; PX 37; PX 41/PX 129.

160. The Court should enter judgment in favor of Lubin individually on Count 7. 18 U.S.C. Section 1962(d); Beck, 529 U.S. at 505-07.

### J. Franklin assignment and third Spin Contract issues

161.    The Franklin/Wing Lake assignment does not create individual liability against Lubin. The assignment identifies Spin as assignor and was signed by Lubin only in representative capacity as Spin's President. PX 33 at 1, 3.

162.    The assignment specifically identifies the June 1, 2021 and July 9, 2021 Spin merchant agreements and does not specifically identify the August 31, 2021 Third Spin Contract by date. PX 33 at 1, 5.

163.    The Franklin/Wing Lake assignment issue turns on the text and, because the Court already determined parol evidence is required, the trial extrinsic evidence. General contract principles look to the parties' intent as expressed in the agreement; where the text is ambiguous, the factfinder may consider extrinsic evidence rather than rewrite the parties' contract. Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 569 (2002); W.W.W. Assocs., Inc. v. Giancontieri, 77 N.Y.2d 157, 162 (1990); May 28, 2025 Oral Ruling Tr. 18:4-21:10; June 11, 2025 Oral Ruling Tr. 7:1-20.

164.    The trial extrinsic evidence supports Lubin's reading. Lubin testified that the $1.00 outstanding-obligation language referred to the enumerated obligations specifically listed in the assignment, and that he did not provide the Third Spin Contract or any Spin contracts to Franklin. Feb. 3 Trial Tr. 796:7-13; 797:9-798:4.

165.    The timing evidence also supports Lubin's position that the Third Spin Contract / Hi Bar balance issue was not transferred to Franklin through the Wing Lake assignment. Hi Bar wired the same $2,114,312.50 back to Spin at approximately 4:06 p.m. Eastern time, before Lubin signed the Wing Lake assignment at approximately 4:13 p.m. Eastern time. PX 33; PX 37; Feb. 3 Trial Tr. 812:15-813:9.

166.    Even if the Court finds that the timing was intended to make the assignment's $1.00 representation accurate, that finding would not establish RICO liability, would not make

Page 24

Lubin personally a party to the contract, and would not prove Lubin personally received estate property. 18 U.S.C. Sections 1961(6), 1962(c); 11 U.S.C. Section 550(a).

## K. Counts 10 through 15 - Fraudulent transfer claims against Spin

167.    Plaintiff's order of presentation treats Counts 10 through 15 as fraudulent-transfer claims against Spin, not Lubin individually. Plaintiff Post-Trial Brief, ECF No. 477 at 59-75.

168.    To the extent Plaintiff seeks any recovery against Lubin individually based on Counts 10 through 15, Plaintiff did not prove that Lubin was an initial transferee, the entity for whose benefit a transfer was made, or an immediate or mediate transferee under 11 U.S.C. Section 550(a). 11 U.S.C. Section 550(a); In re Harwell, 628 F.3d 1312, 1322-23 (11th Cir. 2010); In re Chase & Sanborn Corp., 904 F.2d 588, 599 (11th Cir. 1990).

169.    The relevant transfer evidence identifies Spin and Hi Bar as entities involved in the November 1, 2021 wire transfers; it does not identify Lubin individually as transferee. PX 37.

170.    The Court should not impose any judgment against Lubin individually on Counts 10 through 15. 11 U.S.C. Sections 544, 548, 550; Fla. Stat. Sections 726.105, 726.106.

## L. Counts 18 through 24 - Fraudulent transfer claims against Hi Bar

171.    Plaintiff's order of presentation treats Counts 18 through 24 as fraudulent-transfer claims against Hi Bar, not Lubin individually. Plaintiff Post-Trial Brief, ECF No. 477 at 75-90.

172.    To the extent Plaintiff seeks any findings or recovery against Lubin individually based on Counts 18 through 24, Plaintiff did not prove that Lubin personally received the Hi Bar transfers or was an initial transferee, beneficiary, or subsequent transferee under 11 U.S.C. Section 550(a). 11 U.S.C. Section 550(a); Harwell, 628 F.3d at 1322-23; Chase & Sanborn, 904 F.2d at 599.

Page 25

173.    The entity wire evidence does not identify Lubin as transferee. PX 37.

174.    The Court should not impose any judgment against Lubin individually on Counts 18 through 24. 11 U.S.C. Sections 544, 548, 550; Fla. Stat. Sections 726.105, 726.106.

**M. Count 25 - Money judgment against Hi Bar under 11 U.S.C. Section 550(a)(1)**

175.    Plaintiff's Count 25 seeks a money judgment against Hi Bar under 11 U.S.C. Section 550(a)(1), not against Lubin individually. Plaintiff Post-Trial Brief, ECF No. 477 at 90-91.

176.    Section 550(a) permits recovery only from an initial transferee, the entity for whose benefit the transfer was made, or an immediate or mediate transferee. 11 U.S.C. Section 550(a); Harwell, 628 F.3d at 1322-23.

177.    Plaintiff did not prove that Lubin individually falls within any Section 550(a) category for Count 25. The Court should not impose any Count 25 judgment against Lubin individually. 11 U.S.C. Section 550(a).

**N. Count 26 - Preference theory against Hi Bar**

178.    Plaintiff's preference theory is presented against Hi Bar, not Lubin individually. Plaintiff Post-Trial Brief, ECF No. 477 at 91-93.

179.    A preference claim requires proof of the elements in 11 U.S.C. Section 547(b), including a transfer of an interest of the debtor in property to or for the benefit of a creditor, on account of antecedent debt, while the debtor was insolvent, within the statutory look-back period, that enables the creditor to receive more than it would receive in a Chapter 7 liquidation. 11 U.S.C. Section 547(b).

180.    Plaintiff did not prove those preference elements against Lubin individually and did not prove that Lubin individually was the recipient or beneficiary of the alleged Hi Bar preference payments. 11 U.S.C. Sections 547(b), 550(a).

181.    The Court should not impose any preference judgment against Lubin individually. 11 U.S.C. Sections 547(b), 550(a).

## O. Affirmative defenses

182. Lubin preserves his individual defenses raised in his operative answer to the extent applicable to the remaining claims against him. Fed. R. Civ. P. 8(b), 8(c); Fed. R. Bankr. P. 7008.

183. The defenses most directly supported by the trial record are failure to prove individual liability, failure to prove RICO unlawful debt, failure to prove operation or management of an enterprise, failure to prove RICO causation and injury as to Lubin individually, failure to prove personal receipt of transfers, entity separateness, and the enforceability and persuasive effect of the New York Hi Bar rulings and judgment. 18 U.S.C. Sections 1961(6), 1962(c), 1964(c); 11 U.S.C. Section 550(a); Reves, 507 U.S. at 179; Matter of Jackson, 120 A.D.2d at 313-14.

184. Any affirmative defense that the Court treats as duplicative of a denial should be treated as preserving Lubin's denial of Plaintiff's prima facie elements, not as an admission or waiver. Fed. R. Civ. P. 8(b), 8(c); Fed. R. Bankr. P. 7008.

185. No affirmative defense should be deemed waived based on this brief's focus on Lubin's highest-value individual defenses, because the Court's post-trial order requires a concise, non-incorporative presentation within the page limit. ECF No. 461 at 2-3.

## REQUESTED RELIEF

186. For the reasons stated above, the Court should enter judgment in favor of Avrumi Lubin a/k/a Josh Lubin individually on Counts 5, 6, 7, and 8. 18 U.S.C. Sections 1961(6), 1962(c), 1962(d), 1964(c).

187. The Court should also rule that Plaintiff is not entitled to any money judgment, avoidance recovery, transferee recovery, preference recovery, or other relief against Lubin individually on Counts 10 through 15, Counts 18 through 24, Count 25, Count 26, or any

abandoned or non-pursued count. 11 U.S.C. Sections 544, 547, 548, 550; Fla. Stat. Sections 726.105, 726.106.

188.   The Court should maintain the distinction between Lubin individually and Spin Capital LLC and should not enter any finding or judgment that collapses Spin, Hi Bar, Franklin, or any other entity into Lubin individually absent proof satisfying the applicable legal standard.

189.   Lubin respectfully requests all further relief the Court deems just and proper consistent with the trial record, the Bankruptcy Code, the Bankruptcy Rules, and applicable law. Fed. R. Civ. P. 52(a); Fed. R. Bankr. P. 7052.

**Respectfully submitted,**

_____

Avrumi Lubin a/k/a Josh Lubin

Defendant, individually and pro se

Email: josh@tetonfunding.com

Address: 1460 Arboretum Parkway, Lakewood, NJ 08701

Telephone: (718) 570-3796

Dated: June 3, 2026

**CERTIFICATE OF SERVICE**

I certify that on June 3, 2026, I served a true and correct copy of the foregoing by email and/or U.S. Mail on all parties entitled to service.

_____

Avrumi Lubin a/k/a Josh Lubin